# UNREPORTED OPINIONS

Westlaw.
1988 WL 155634                                                                                    Page 1
Not Reported in F.Supp., 1988 WL 155634 (D.Del.)
(Cite as: 1988 WL 155634 (D.Del.))

C

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
JOHNSON & JOHNSON CONSUMER
PRODUCTS, INC., Plaintiff,
v.
ORMCO CORPORATION, Defendant,
v.
JOHNSON & JOHNSON CONSUMER
PRODUCTS, INC., Counterclaim Defendant.
Civ.A. Nos. 87-341-JJF, 87-547-JJF.

Sept. 29, 1988.

Stephen P. Judlowe, Francis J. Murphy, Eve Kunen, and Rita Irani, of Hopgood, Calimafde, Kalil, Blaustein & Judlowe, New York City, James M. Mulligan, Jr., of Connolly, Bove, Lodge & Hutz, Wilmington, Del., for plaintiff and counterclaim defendant.

Paul C. Van Slyke, of Pravel, Gambrell, Hewitt, Kimball & Krieger, Houston, Tex., Bruce M. Stargatt, and Richard H. Morse, of Young, Conaway, Stargatt & Taylor, Wilmington, Del., for defendant.

OPINION

FARNAN, District Judge.

INTRODUCTION

*1 Johnson & Johnson Dental Products Company ("Dental Products") brought an action in this Court on June 23, 1987, seeking a declaratory judgment that Ormco Corporation's ("Ormco") United States Patent No. 4,415,330 ("the Daisley Patent") is invalid. Ormco then brought a counterclaim against Dental Products, Johnson & Johnson, and "A"-Company (referred to collectively as "Johnson & Johnson") alleging that Johnson & Johnson's new STARFIRE (R) orthodontic bracket infringes the Daisley Patent.

On June 24, 1987, Dental Products filed an action in the Central District of California alleging that Ormco willfully infringed United States Patent No. 4,639,218 ("the Jones Patent") which is owned by Dental Products, and requested certain injunctive and monetary relief. The California action was transferred to this Court on October 6, 1987. This Court consolidated the cases for purposes of discovery and for trial scheduled to commence on October 3, 1988.

Both Johnson & Johnson and Ormco have filed motions for a preliminary injunction. Johnson & Johnson seeks an Order preventing Ormco from manufacturing and selling Ormco's GEM orthodontic bracket. Johnson & Johnson asserts that the GEM (R) bracket infringes the Jones Patent. Similarly, Ormco requests that Johnson & Johnson be prevented from manufacturing and selling its STARFIRE (R) orthodontic bracket. Ormco asserts that the STARFIRE (R) bracket infringes on the Daisley Patent. For the reasons that follow, both requests for a preliminary injunction will be granted.

FACTS

Both Ormco and Johnson & Johnson are manufacturers and sellers of various orthodontic products. The products of importance in these actions are Johnson & Johnson's STARFIRE (R) bracket and Ormco's GEM (R) bracket. Both are orthodontic brackets made of synthetic sapphire (monocrystalline alumina).

Orthodontic brackets are used to straighten or move teeth that have an improper position or orientation in the mouth. The brackets are attached to each tooth and a wire called the arch wire is "woven" through the brackets and used to exert forces to move the teeth. Traditionally, brackets were made of metal. The orthodontic industry has long sought a bracket made of either a clear substance such as plastic or a substance closer in color to the tooth such as ceramic so that braces would not be so unsightly. The sapphire brackets such as the STARFIRE (R) and GEM (R) brackets are clear brackets which apparently have more potential than metal, plastic or ceramics both aesthetically and in their strength.

Generally, the Jones Patent claims an orthodontic bracket made of single crystal alumina. Claims 1, 2, 3 and 4 are representative of the patent and read as follows:

1. An orthodontic bracket comprising a base member for attaching to a tooth and a body member extending from the base member, said body member including walls defining an arch wire groove, wherein said walls comprise crystalline

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

alumina.

2. The orthodontic bracket of Claim 1 wherein said bracket is made entirely of crystalline alumina.

*2 3. The orthodontic bracket of Claim 1 wherein said crystalline alumina is crystalline alpha-alumina.

4. The orthodontic bracket of Claim 2 wherein said crystalline alumina is crystalline alpha-alumina.

The Jones Patent encompasses various types of brackets all made of crystalline alumina.

The Daisley Patent does not claim an orthodontic bracket made of any specific material, but teaches a certain configuration of the bracket which shows a rhomboidal shape. The bracket has one or two tie wings which define a slot through which the archwire is introduced. The entire bracket assembly is then affixed to the tooth. While the binding pad is generally rectangular, the bracket assembly and the tie wings form a rhomboidal configuration. The shape of the tie wings allows for easier reference to the tooth long axis and the occlusal plane without sacrificing strength. The rhomboidal shape allows the orthodontist to affix the bracket to the tooth more easily than a bracket of rectangular shape because the angles provide references for alignment of the bracket with the occlusal plane and the crown long axis while still properly placing the bracket on the tooth. Thus, the orthodontist is able to place the orthodontic bracket more accurately. The Daisley Patent specifies certain recommended angles for placement of the bracket for each maxillary (upper) and mandibular (lower) tooth. The Daisley Patent has only one claim and it reads as follows:

1. An orthodontic bracket assembly for use with an archwire to impart corrective forces on a tooth, including: a base pad for attachment to the tooth, a distal tie wing fixed to said base pad and including a gingival tip and an occlusal tip defining between them an arch wire slot, a mesial tie wing fixed to said base pad and including a gingival tip and an occlusal tip defining between them an arch wire slot, each of said distal a:nd mesial tie wings having parallel distal and mesial sides, said arch wire slots being in mutual alignment and providing a reference line for orientation parallel to the occlusal plain of a patient, said sides of said tie wings are inclined at an oblique angle to said reference line, whereby said tie wings can be generally vertically disposed parallel to the tooth long axis and still be inclined at an oblique angle to said reference line,

said gingival and said occlusal tips of said tie wings having respectively top and bottom surfaces which are in mutual alignment parallel to said reference line and substantially equidistant therefrom,

whereby said tie wings together form a rhomboidal configuration and the axis of said arch wire slots bisects said tie wings so that said gingival tips and said occlusal tips are of equal size.

Johnson & Johnson's STARFIRE (R) bracket is made of sapphire and it is of rhomboidal shape. Ormco claims that the rhomboidal shape infringes on the Daisley Patent. The GEM (R) bracket, manufactured by Ormco, is not of rhomboidal shape but is made of sapphire. Johnson & Johnson claims that since the GEM (R) bracket is made of sapphire it infringes on the Jones patent. However, rather than a patent infringement dispute, this case appears to be a cross-licensing disagreement as each party wants to use the subject of the other party's patent in order to make an aesthetically better orthodontic bracket.

STANDARD FOR GRANTING PRELIMINARY INJUNCTION

*3 Although traditionally a strict standard has been invoked to evaluate whether a preliminary injunction should be granted in patent infringement cases, the Federal Circuit has definitively stated that the standards applied in patent cases should be no more stringent than those applied in other areas of the law. _H.H. Robertson, Co. v. United Steel Deck, Inc._, 820 F.2d 384, 387 (Fed. Cir.1987). To be successful on a motion for a preliminary injunction the movant must show (1) a reasonable likelihood of success on the merits and (2) that the movant will suffer irreparable harm if a preliminary injunction is not granted. The court should also take into consideration the possible harm to others if the preliminary injunction is granted (more generally known as balancing the hardships) and the public interest. _Id. See also Upjohn Co. v. Riahom Corp._, 641 F.Supp. 1209, 1217 (D. Del.1986) (citing _Roper Corp. v. Litton Systems, Inc._, 757 F.2d 1266 (1985)).

In this action, then, it is each patentee's burden to show a reasonable likelihood that it will prevail at trial on the issues of validity and infringement. In addition, each patentee must show that it will suffer irreparable harm in the absence of granting a preliminary injunction and that the balance of the hardships and the public interest favor the granting of a preliminary injunction. The presumptions and the burdens that would inure at trial on the merits must also be used when considering a motion for a preliminary injunction. _H.H. Robertson, Co._, 820 F.2d at 388 (citing _Anderson v. Liberty Inc._, 106

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

S.Ct. 2505, 2512 (1986)). At trial the party who is claiming the patent is invalid has the burden to prove that the patent is invalid. However, on a motion for a preliminary injunction, the patentee must show that there is a reasonable likelihood that the other party will not carry that burden. As for infringement, it is the patentee's burden both at preliminary injunction and at trial to show that its patent is infringed.

The Court of Appeals for the Federal Circuit has established that "where validity and continuing infringement have been clearly established ... immediate irreparable harm is presumed." _Smith International v. Huges Tool Co., 718 F.2d 1573, 1581 (1983)_. This presumption will not be invoked if only a reasonable likelihood of success on the merits is proven. _Roper Corp. v. Litton Systems, Inc., 757 F.2d at 1271._ Therefore, if the patentee shows that there is a reasonable likelihood of success on validity and infringement, but not a clear showing of success on the merits, the patentee must make a separate showing of irreparable harm. _Roper, 757 F.2d at 1272. See also Upjohn Co. v. Riahom Corp., 641 F.Supp. at 1217._ Finally, all four of the factors must be considered and weighed.

DISCUSSION

Since both parties have moved for a preliminary injunction, each party must show the likelihood of success on the merits of both the validity and the infringement issues. In this case, Johnson & Johnson must show that Ormco will not carry its burden of proving the invalidity of the Jones Patent and that Ormco, by manufacturing and selling the GEM (R) bracket, has infringed on the valid Jones Patent. Similarly, Ormco must show that Johnson & Johnson will not carry its burden at trial of proving that the Daisley Patent is invalid, and that by manufacturing the STARFIRE (R) bracket, Johnson & Johnson has infringed on the valid Braisley Patent. Since each party has asserted an action against the other party's patent, the Court will analyze each patent separately. However, the applicable law in each case is identical, with the exception of Ormco's claim that the Jones Patent is unenforceable due to Johnson & Johnson's alleged breach of their duty of candor when prosecuting the Jones Patent.

*4 A patent is presumed valid and one who challenges the validity of a patent has the burden of establishing its invalidity. _35 U.S.C. § 282. See Roper Corp. v. Litton Systems, Inc., 757 F.2d 1266, 1270 (Fed. Cir.1985)_. However, this presumption of validity is procedural and not substantive. It requires "the decision maker to employ a decisional approach that starts with acceptance of the patent claims as valid and that looks to the challenger for proof of the contrary." _Stratoflex, Inc. v. Aeroquip Corp., 713 F.2d 1530, 1534 (Fed. Cir.1983)._ The burden of persuasion is always upon the party asserting invalidity. _American Hoist & Derrick Co. v. Sowa & Sons, 725 F.2d 1350, 1358 (Fed. Cir.1984)._ In a motion for a preliminary injunction, therefore, the movant has the burden of showing that there is a reasonable likelihood that the attack on validity will fail. _H.H. Robertson Co. v. United Steel Deck, Inc., 820 F.2d 384, 387 (Fed. Cir.1987)._

There are a number of ways to attack the validity of a patent. However, in this action both parties claim that the inventions challenged were obvious under 35 U.S.C. § 103 in light of the prior art, and, therefore, the patents are invalid under 35 U.S.C. 5282(2). In addition, Ormco claims that the Jones Patent is invalid because Johnson & Johnson breached its duty of candor when it presented the prior art to the Patent and Trademark Office ("PTO"). Of course, each party counters that the most significant prior art was before the Patent Office at the time of application, and that the inventions were not obvious in light of the prior art.

Section 103 of Title 35 of the United States Code provides, in part, that "a patent may not be obtained ... if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." _35 U.S.C. § 103._ An analysis under § 103 must begin with the criteria set forth in _Graham v. John Deere Co., 383 U.S. 1 (1965)._

> Under Section 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unresolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy.

_383 U.S. at 17, 18._ The challenger's burden of persuasion is less easily carried when the prior art

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

relied upon consists only of that considered by the patent examiner. *Hughes Aircraft Co. v. United States,* 717 F.2-d 1351, 1359 (Fed. Cir.1983) (citing Solder Removal Co. v. ITC, 582 F.2d 628, 633 (Cust. & Pat. App.1978)). However, the challenger's burden may be more easily carried if the prior art introduced is more relevant than that which was before the examiner. *Stratoflex,* 713 F.2d at 1534. Furthermore, evidence of secondary considerations must always be considered before the final determination of obviousness if such evidence is presented. *Id.* at 1538 (citing *In Re Sernaker,* 702 F.2d 989 (Fed. Cir.1983)).

*5 When a court evaluates whether a patent is valid in light of prior art, "a court must view the prior art without reading into that art the patent's teachings ... and must analyze and consider the references as a whole." *Vandenberg v. Dairy Equipment Co.,* 740 F.2d 1560, 1564 (Fed. Cir.1984) (citing *In Re Sponoble,* 405 F.2d 578, 585 (C.C.Pa.1969); *In Re Shuman,* 361 F.2d 1008, 1012 (C.C.Pa.1966)). Any facts that support a determination of obviousness must be proven by clear and convincing evidence. *Carella v. Starlight Archery and Proline Co.,* 804 F.2d 135, 138 (Fed. Cir.1986) (citing *RCA Corp. v. Applied Digital Data Systems, Inc.,* 730 F.2d 1440, 1444 (Fed. Cir.1984)).

The second step in the analysis of likelihood of success on the merits is to analyze the issue of infringement. There are essentially three steps to determining whether a patent is being infringed. The court must (1) interpret the language of the patent claim; (2) assess the nature of the accused infringer's acts; and (3) apply the claims as construed to those acts. *Upjohn Co. v. Riahom Corp.,* 641 F.Supp. 1209, 1219 (D.Del.1986) (citing *Roper Corp. v. Litton Systems, Inc.,* 757 F.2d at 1270-71)). It is the burden of the patentee to show that its patent has been infringed.

If the court determines that there has been a clear showing of validity and infringement then irreparable harm may be presumed. *Smith International v. Hughes Tool Co.,* 718 F.2d 1573, 1581 (Fed. Cir.1983). However, if the patentee merely carries its burden of showing that there is a reasonable likelihood of success on the merits, and does not offer enough evidence for a clear showing of validity and infringement then a separate showing of irreparable harm is necessary. Finally, the Court must consider the balance of the hardships as well as the public interest before the Court can grant a preliminary injunction. All four factors must then be considered and weighed against one another.

A. *The Daisley Patent.*

1. *Likelihood of Success on the Merits.*

*Validity.*

Johnson & Johnson states that Ormco cannot demonstrate a likelihood of success on the merits on the issue of validity because Johnson & Johnson will introduce at trial prior art and prior sales more relevant than the prior art considered by the Patent Office. Johnson & Johnson states that its maxillary first molar convertible combination bracket/triple buccal tube ("TBT"), which is rhomboidal in shape, was used as early as 1975, as evidenced by a catalog of "A" Company's. The TBT is an orthodontic bracket mounted on the maxillary first molar. Johnson & Johnson has submitted with its affidavits pictures of the TBT allegedly showing its rhomboidal shape. Johnson & Johnson states that since this evidence was not considered by the patent examiner as prior art and clearly shows a rhomboidal shaped bracket that predates the issuance of the Daisley Patent, it proves the invalidity of the Daisley Patent.

Ormco counters, however, that the evidence offered by Johnson & Johnson is not valid because it is inadmissible at trial. Furthermore, Ormco asserts that neither the TBT nor the catalog offers the teachings of the Daisley Patent.

*6 The Daisley Patent itself sets forth an entire system of placement of its rhomboidal shaped brackets, and an explanation of how the rhomboidal shape assists in orthodontics. Furthermore, the evidence offered by Ormco particularly states that the rhomboidal shaped bracket assists in the placement of orthodontic appliances particularly on the incisors and the cuspids since those teeth are rhomboidal. The molars, on the other hand, are generally rectangular in shape and, therefore, the rhomboidal configuration is not as advantageous on the molars as it is on the front teeth. The TBT is designed exclusively for the first molar, a tooth which the evidence shows does not necessarily benefit by the rhomboidal shape.

Although the TBT may generally show a rhomboidal shape, Johnson & Johnson offers no evidence that this rhomboidal shape was to provide the function that the Daisley Patent provides. The Daisley Patent offers two tie wings which also facilitate in the placement of the bracket as well as various

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

angulations for each particular tooth. There is no mention in Johnson & Johnson's literature that the TBT's rhomboidal shape has any function whatsoever, if the rhomboidal shape actually exists. (The Court cannot state conclusively that the photographs offered show a rhomboidal shaped bracket). The photographs and catalog excerpts that Johnson & Johnson offers as evidence are not nearly sufficient to show that prior art existed which rendered the invention obvious. At this juncture the Court cannot find that the TBT had any bearing on the Daisley invention or that it encompasses the claim of the Daisley invention. In comparing the TBT to the Daisley Patent claim, it is clear that the TBT does not anticipate each element of the Daisley Patent as would be required under 35 U.S.C. § 102(g). *Hybritech v. Monoclonal Antibodies, Inc.*, 802 F.2d 367, 379 (Fed. Cir.1986).

The evidence of the TBT is all that Johnson & Johnson offers at this juncture to establish the invalidity of the Daisley Patent. The Court finds that Ormco has shown a likelihood of success on the merits on the issue of validity because Johnson & Johnson's evidence of the TBT is not sufficient to rebut the presumption of validity under § 282. Furthermore Ormco also shows substantial direct technical evidence that establishes the validity of the patent. Ormco has offered various affidavits evidencing expert opinion of the patent's novelty and usefulness. Finally, Ormco has introduced evidence of public acquiescence since Ormco has granted at least four licenses under the patent and, in fact, Johnson & Johnson has negotiated for a license in the past. The Court concludes that this evidence is enough to establish a strong showing of validity.

*Infringement.*

Ormco asserts that the sale of the STARFIRE (R) bracket manufactured by Johnson & Johnson infringes the Daisley Patent. Ormco initially asserted in its motion for a preliminary injunction that Johnson & Johnson would concede infringement. Recently Ormco asserted that Johnson & Johnson's answers to certain interrogatories also conceded infringement. However, Johnson & Johnson strenuously disputes that the STARFIRE (R) bracket infringes on the Daisley Patent. Johnson & Johnson claims that since the STARFIRE (R) bracket is one extruded piece it does not have a base pad which is an element of the Daisley claim. However, the Jones Patent makes direct reference to a base and although the STARFIRE (R) bracket is one piece, it is obvious that it has a base for attachment to the tooth. There is no requirement in the Daisley Patent that the base pad be a component completely separate from the rest of the bracket assembly. There is no indication in the claim itself that a bracket made of one piece would not satisfy the elements of the patent claim. The Court finds persuasive Ormco's assertion that the STARFIRE (R) bracket directly infringes on the Daisley Patent. Ormco has demonstrated this infringement by supplying the Court with a tracing of Johnson & Johnson's product that clearly shows the rhomboidal configuration and the evidence that each bracket has a degree of angulation suggested by Johnson & Johnson that is within the tolerances of those suggested in the Daisley Patent. Ormco has supplied to the Court a copy of this tracing and next to it has placed the claim of the Daisley Patent. By way of illustration, Ormco placed numerical references on the tracing which correspond directly to each element of the Daisley claim. At this juncture, for the purposes of preliminary injunction, the Court finds this evidence persuasive and concludes that it clearly establishes that the STARFIRE (R) bracket infringes on the Daisley Patent.

2. *Irreparable Harm.*

*7 Having determined that Ormco has shown a reasonable likelihood to succeed on the merits and has provided evidence to clearly establish both validity and infringement, the Court concludes that the presumption of irreparable harm under *Smith International v. Hughes Tool Co.*, 718 F.2d 1573 (Fed. Cir.1983), should be invoked. Of course, the presumption is rebuttable if Johnson & Johnson can show that irreparable harm to Ormco would not occur if the motion for a preliminary injunction is denied.

The Court disagrees with Johnson & Johnson's statement that the grant of licenses is incompatible with the right to exclude that is fundamental to every patent owner. While Johnson & Johnson may be correct that Ormco is not now selling a comparable product and therefore is not losing market share on this specific product, Ormco's argument that Johnson & Johnson is gaining in the market and that Ormco's reputation may be harmed by the continuation of the sale of the STARFIRE (R) bracket is more persuasive to the Court. The evidence offered by Johnson & Johnson is not sufficient to rebut the presumption of irreparable harm. Ormco is correct in stating that just because it is a licensor does not mean that they and, in fact, all licensors have given up the right to a preliminary injunction. *See Atlas Powder Co. v. Ireco Chemicals*, 773 F.2d 1230, 1233 (1985). Finally, the law in *Smith International, supra*, clearly

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

states the policy of the United States Court of Appeals for the Federal Circuit that a strong showing of validity and infringement is enough to show presumption of irreparable harm.

3. *Balance of Hardships.*

Ormco has shown that it will suffer harm without the injunction. While the Court believes that Johnson & Johnson will certainly be affected by the grant of the preliminary injunction, the Court does not believe that the balance of hardships weighs in its favor to the extent that the preliminary injunction should be denied.. Johnson & Johnson will simply have to cease selling its STARFIRE (R) bracket in the rhomboidal shape. Since Ormco has shown evidence that Johnson & Johnson directly infringes the Daisley Patent through its production of the STARFIRE (R) bracket, the balance of equities clearly indicates that a preliminary injunction should be granted. Johnson & Johnson's claim that Ormco is trying to keep Johnson & Johnson out of the sapphire bracket business is blatantly incorrect since Johnson & Johnson holds the patent for the sapphire bracket and, in fact, could produce the bracket in another shape. Since the Court has found a strong showing of validity and infringement' the balance of the equities weighs in favor of granting the preliminary injunction.

4. *Public Interest.*

While the public may have an interest in a rhomboidal shaped sapphire bracket, which at present is produced only by Johnson & Johnson, the public interest here is not strong enough to warrant denying the preliminary injunction when all the other evidence so strongly points in favor of granting the injunction. Furthermore, the public has a strong interest in preventing infringement of valid patents. Finally, even if the public has equal interests in both the grant and the denial of a preliminary injunction, the balance of the public interest with all the other elements clearly indicates that the preliminary injunction should be granted.

B. *The Jones Patent.*

1. *Likelihood of Success on the Merits.*

*Validity.*

\*8 The Jones Patent discloses and claims an orthodontic bracket that is made of synthetic sapphire. Synthetic sapphire is a single crystal (monocrystalline) form of aluminum oxide (alumina). The product currently produced as a result of this patent is Johnson & Johnson's STARFIRE (R). Ormco challenges the validity of the Jones Patent stating that it is overbroad, that it is invalid under 35 U.S.C. § § 102(a), (g), and that its invention was obvious in light of the prior art. To substantiate its claim of invalidity, Ormco states that certain persons in the Ormco research and development division had already produced prototypes of a sapphire bracket in 1979, approximately three years prior to the beginning of the research at Johnson & Johnson. Furthermore, Ormco states that the Hirabayashi invention, which is a patent for sapphire dental implants, also shows that the Jones invention was obvious. In addition, Ormco claims that the Hirabayashi Patent shows that Johnson & Johnson breached its duty of candor when it presented its patent application to the examiner.

The Court has examined all of the papers and supporting affidavits, as well as the evidence of prior art submitted by the parties in support of their positions on the motions for preliminary injunction. First, there is no evidence offered by Ormco to substantiate the claim that the Jones Patent is overbroad. Ormco never specifically addressed this allegation and, in fact, in its papers Ormco claims only that the Jones invention is a substitution of the sapphire for a known material. The Court cannot accept as true Ormco's statement that Dr. Jones knew the strength of the material and only set out to find how to mass produce the end product. In fact, it appears that the strengths were not known to the industry and sapphire's properties were never tested nor used in orthodontics. The Court therefore concludes that Ormco's arguments that the Jones Patent is overbroad and a mere substitution of materials cannot rebut the presumption of validity.

Ormco's second argument, that it had actually produced the sapphire bracket before the Jones application was even made, thereby rendering the patent invalid under § § 102(a), (g), is meritless. Ormco claims that one of its employees, Mr. Andreikio, purchased sapphire and made prototype brackets in 1979. Mr. Andreikio bonded the brackets onto his teeth to determine reactions to the material's aesthetics. However, Ormco conducted a feasibility study and decided later in 1980 that it would not pursue the sapphire bracket; it instead pursued developing and marketing the lingual orthodontic system.

Title 35, Sect ion 102(a) bars a patent where "the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

invention was known or used by others in this country ... before the invention thereof by the applicant for the patent. " The "known or used" language means knowledge or use that is accessible to the public. _Carella v. Starlight Archery and Pro Line Co., 804 F.2d 135, 139 (Fed. Cir.1986)_. Prior knowledge or use must also be reduced to practice. _See Connecticut Valley Enterprises, Inc. v. United States, 348 F.2d 949, 951-52 (Ct.Cl.1965)_. At this stage of the proceedings, Ormco has offered no evidence whatsoever that the Andreikio research was presented to the public or that Johnson & Johnson had access to this information. Moreover, there is no evidence that the brackets were ever used for their intended purpose--to aid in the movement of teeth--which leads the Court to conclude that the "prior invention" was never reduced to practice. Thus, the Court concludes that the Andreikio experiments do not satisfy the criteria under § 102(a).

*9 Section 102(g) bars a patent where "before the applicant's invention thereof the invention was made in this country by another who had not abandoned, suppressed, or concealed it." 35 U.S.C. § 102(g). Reduction to practice is a factor in determining priority of invention. _Id._ However, there is no personal knowledge requirement under § 102(g). _See E. I. DuPont de Nemours & Co. v. Phillips Petroleum Co., 849 F.2d 1430, 1436-37 (Fed. Cir.1988)_. Again, the Court finds that the Andreikio prototypes were not reduced to practice. In addition, the Andreikio work was obviously abandoned or suppressed because it was first pursued in 1979 and not resurrected until 1983 or 1984. Ormco made whatever business decisions were necessary when the Andreikio work was first done and, as a result, that work was abandoned. Therefore, the Court concludes that Ormco has not rebutted the presumption of validity to which the Jones Patent is entitled.

Ormco also asserts that the Hirabayashi Patent, U.S. Patent No. 4,122,605 operates as prior art which renders the invention in the Jones Patent obvious. Ormco argues that the Hirabayashi Patent was not fully before the patent examiner because Johnson & Johnson did not disclose its full claim. The Court finds this argument 'unpersuasive. First, Johnson & Johnson clearly listed the Hirabayashi Patent in the prior art section of the Jones Patent. Ormco claims that describing the Hirabayashi Patent as a "somatic element" as opposed to a "dental implant" is misleading. However, Mr. Peshock, the patent examiner for the Jones Patent, states in his affidavit his familiarity with this area of inventions. Finally, even if the Court found that somehow Johnson & Johnson had misled the patent examiner, the Court would still have to conclude at this juncture that the Hirabayashi Patent has no effect on the invention claimed in the Jones Patent. The invention in the Hirabayashi Patent appears to be only a screw type implant pin. It teaches nothing about the stress factors important to the orthodontic bracket, nor does it make any reference to the desirability to have this type of material in an orthodontic bracket. The patent gives no indication of the material's feasibility in orthodontics. The Court therefore must conclude that in examining the Hirabayashi prior art there is no evidence that it makes the Jones invention obvious.

Subsumed in this discussion of the Hirabayashi invention is Ormco's assertion that the Jones Patent is unenforceable because the inventors breached their duty of candor to the Patent and Trademark Office. The Court rejects this assertion. The Court concludes that there is no evidence of any fraud, or any intention to mislead the Patent Office especially considering that the Hirabayashi Patent was listed as prior art. As the United States Court of Appeals for the Federal Circuit stated in _J.P. Stevens & Co., Inc. v. Lex Tex Ltd., Inc._:

> Conduct before the PTO that may render a patent unenforceable ["inequitable conduct"] is broader than "common law fraud". It includes failure to disclose material information, or submission of false material information, with an intent to mislead.... "Inequitable conduct" requires proof by clear and convincing evidence of a threshold degree of materiality of the nondisclosed or false information.... Inequitable conduct also requires proof of a threshold intent.... Once the thresholds of materiality and intent are established, the court must balance them and determine as a matter of law whether the scales tilt to a conclusion that inequitable conducted occurred.

*10 _J.P. Stevens & Co., 747 F.2d at 1559-60_ (citations omitted). It is impossible at this juncture to conclude that Ormco has presented clear and convincing evidence of a threshold degree of materiality of the so-called nondisclosed or false information. On the evidence, the Court is convinced that there is not any undisclosed or false information at all.

On the issue of validity and enforceability, therefore, the Court must conclude that there is a reasonable likelihood that Johnson & Johnson will carry its burden at trial. Johnson & Johnson has also offered evidence to establish that there is a strong showing of validity. Johnson & Johnson states that the most

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

significant prior art was before the Patent Office, the patent examiner was very experienced, having researched these classes of patents on numerous occasions, that the testimony of Ormco's own witnesses indicates the validity of the patent, and that all the secondary considerations point to the clear validity of the patent. At this juncture, especially since Ormco has offered no substantive evidence to rebut these assertions of Johnson & Johnson, the Court agrees with Johnson & Johnson. The secondary considerations are particularly strong in this case and as stated in *W.L. Gore & Assoc., Inc. v. Garlock, Inc.*,

> The objective evidence of nonobviousness, i.e., the "indicia" of *Graham* ... may in a given case be entitled to more weight or less, depending on its nature and its relationship to the merits of the invention. it may be the most pertinent, probative, and revealing evidence available to aid in reaching a conclusion on the obvious/nonobvious issue. It should when present always be considered as an integral part of the analysis.

*W.L. Gore*, 721 F.2d 1540, 1555 (Fed. Cir.1983). The secondary considerations offered in this case are Ormco's witnesses who state the desirability and long-felt need in the industry for a clear orthodontic bracket, as well as the immediate demand for the sapphire bracket, and Ormco's inability to keep up with demand on its own GEM (R) sapphire bracket. The clear bracket is undoubtedly an immediate commercial success. Finally, it is well known in the industry that a search for a clear, more aesthetically appealing bracket has existed for over a decade, and that all previous attempts to produce a such a bracket have failed. The invention claimed in the Jones Patent has indeed met this long-felt need in the industry. In conclusion, the Court finds that considering Ormco's challenges to the validity of the Jones Patent together with the evidence offered by both Ormco and Johnson & Johnson, that Johnson & Johnson has not only met its burden of showing that there is a reasonable likelihood of success on the merits, but has also provided a strong showing of the validity of the Jones Patent.

*Infringement.*

Ormco has on many occasions admitted infringement of the Jones Patent through the production and sale of the GEM (R) bracket. Therefore, there is no need for the Court to analyze the infringement issue. Since Ormco has conceded infringement, the Court finds that Johnson & Johnson has met the required showing for this element.

*2. Irreparable Harm.*

*11 Johnson & Johnson has met its burden of showing a reasonable likelihood of success on the merits both as to validity and infringement. In addition, Johnson & Johnson has offered evidence to satisfy the requirement under *Smith International v. Hughes Tool Co.* and, therefore, irreparable harm is presumed. Ormco's assertion that there is a lack of irreparable harm is insufficient to rebut the presumption. Ormco raises the argument that Johnson & Johnson was late in its motion and therefore cannot possibly be irreparably harmed if the injunction is not granted. An examination of the Complaint shows that Johnson & Johnson sought preliminary relief at the time that it filed the claim. Furthermore, the Court concludes that the time of bringing the motion for a preliminary injunction is irrelevant in considering the actual harm that will be suffered.

*3. Balance of Hardships.*

While Ormco raises legitimate concerns about the affect that a preliminary injunction would have on its business, the Court does not find that they are sufficient to outweigh the other factors which indicate that a preliminary injunction should be granted. Although the Court recognizes that Ormco has no substitute product and that it cannot even produce a sapphire bracket while the injunction is in place,;he Court has found that the patent is more than likely valid and cannot condone the admitted continuing infringement of a valid patent.

*4. Public Interest.*

Once again, the public interest weighs in favor of enforcing a patent that has been shown to be valid at this preliminary juncture. While the Court is sympathetic to Ormco's concerns of ceasing the manufacturing process and laying off employees, they are not concerns that weigh heavily enough to cancel either the public's interest in enforcing the patent, nor in the other findings that indicate that a preliminary injunction is proper.

CONCLUSION

The court has carefully considered all of the supporting papers and affidavits and other evidence submitted by the parties in support and against the pending motions for preliminary injunction. Having evaluated all of this information and analyzed the legal standards, the Court concludes that both

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1988 WL 155634
Not Reported in F.Supp., 1988 WL 155634 (D.Del.)
**(Cite as: 1988 WL 155634 (D.Del.))**

Page 9

preliminary injunctions should be granted. There is strong indicia that both patents are valid and both patents are infringed. None of the remaining factors weigh strongly enough to overcome the conclusion that each patentee will succeed on the merits and that irreparable harm has been suffered. After considering the four factors which must be weighed in a preliminary injunction motion with respect to each patent, the Court concludes on the preliminary evidence with which it has been provided for the purposes of these motions that Johnson & Johnson should be prevented from continuing to sell its STARFIRE (R) bracket as long as it maintains the infringing rhomboidal shape and Ormco should be prevented from continuing to sell its GEM (R) sapphire bracket.

The parties are requested to submit a proposed form of order consistent with this Opinion, and may submit memoranda on the issue of bond.

Not Reported in F.Supp., 1988 WL 155634 (D.Del.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 1240849 (D.Minn.)
(Cite as: 2001 WL 1240849 (D.Minn.))

Page 1

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, D. Minnesota.
SMASH, L.L.C., a Minnesota limited liability company, Plaintiff,
v.
NEW ENGLAND POTTERY CO., INC., Defendant.
No. CIV.01-601(DWF/SRN).

Oct. 15, 2001.

Jon Trembath, Esq., Merchant & Gould, Minneapolis, and Kirstin L. Stoll-DeBell, Esq., Merchant & Gould, Denver, Colorado 50265, appeared on behalf of Plaintiff.

Jay W. Schlosser, Esq., Briggs & Morgan, Minneapolis, and James J. Foster, Esq., Wolf, Greenfield & Sacks, Boston, Massachusetts 02210, appeared on behalf of Defendant.

MEMORANDUM OPINION AND ORDER

FRANK, J.

Introduction

*1 The above-entitled matter came on for hearing before the undersigned United States District Judge on September 21, 2001, pursuant to Plaintiff Smash L.L.C.'s ("Smash") Motion for Preliminary Injunction. In its Complaint, Plaintiff alleges that Defendant New England Pottery Co., Inc. ("NEPCO") is infringing Smash's patent, U.S. Patent No. 5,772,312 ("the '312 patent"), for a Lighted Holiday Ornament. NEPCO contends, however, that: (1) its product, the Starlight Sphere, does not infringe the '312 patent; and (2) the '312 patent is invalid based on certain references of prior art. For the reasons set forth below, Plaintiff's motion is granted.

Background
Patent '312 relates to a lighted ornament, predominantly sold for use during the winter holiday season. The patent was issued on June 30, 1998, to inventors Susan M. Pihl-Niederman, Hollyanne M. Pihl, and Sharon P. Frederickson. On October 7, 1999, the inventors assigned their rights to the '312 patent to Smash, a limited liability corporation established by the inventors. On February 28, 2000, and November 30, 2000, Smash granted a non-exclusive license and an exclusive license, respectively, to George Tsai and his company H.S. Craft Manufacturing Company ("H.S.Craft") for the manufacture, use, and sale of the invention claimed in the '312 patent. Because Smash does not make, use, or sell the invention and has not granted any other license under the '312 patent, H.S. Craft is the exclusive manufacturer of the invention. Smash receives royalties from H.S. Craft based on its sales of the licensed invention. The exclusive license will terminate on November 30, 2001, barring any other authorized reasons for termination.

During the 2000 selling season, Defendant NEPCO bought significant stock of the licensed ornaments from H.S. Craft to be sold through NEPCO's catalog business and through QVC via television and the Internet as "the Starlight Sphere." In the fall of 2000, prior to the grant of H.S. Craft's exclusive license, NEPCO and Smash engaged in discussions about the possibility of a license for NEPCO under the '312 patent, however, no agreement was reached. Since then, NEPCO has not bought any further stock from H.S. Craft. To the contrary, NEPCO has entered into an arrangement with another manufacturer for the production, importation, and sale of an ornament called the Starlight Sphere which Smash alleges to be in complete violation of the '312 patent. NEPCO admits that it has invested significant resources in the production and advertising of the Starlight Sphere for the 2001 holiday season. NEPCO challenges Smash's allegations by arguing that its product does not infringe the '312 patent, particularly in light of the type of corded lights used in the ornament. Moreover, NEPCO contends that the '312 patent is invalid in light of certain references of prior art which the Court will discuss below.

The current motion before the Court is Plaintiff's request for a preliminary injunction.

Discussion
1. Standard of Review

*2 Under Eighth Circuit precedent, a preliminary injunction may be granted only if the moving party can demonstrate: (1) a likelihood of success on the merits; (2) that the balance of harms favors the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2001 WL 1240849 (D.Minn.)  
**(Cite as: 2001 WL 1240849 (D.Minn.))**

Page 2

movant; (3) that the public interest favors the movant; and (4) that the movant will suffer irreparable harm absent the restraining order. See _Dataphase Sys., Inc. v. C L Sys., Inc.,_ 640 F.2d 109, 113 (8th Cir.1981). "None of these factors by itself is determinative; rather, in each case the four factors must be balanced to determine whether they tilt toward or away from granting a preliminary injunction." _West Publ'g Co. v. Mead Data Cent., Inc.,_ 799 F.2d 1219, 1222 (8th Cir.1986), cert. denied, 479 U.S. 1070 (1987). The party requesting the injunctive relief bears the "complete burden" of proving all the factors listed above. _Gelco Corp. v. Coniston Partners,_ 811 F.2d 414, 418 (8th Cir.1987). In the context of a patent suit, the Federal Circuit has stated that while a court must consider all four factors in their totality as listed above, a preliminary injunction should not issue if the first two factors have not been established. _Amazon.com, Inc. v. BarnesandNoble.com, Inc.,_ 239 F.3d 1343, 1350 (Fed.Cir.2001) (citing _Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.,_ 141 F.3d 1084, 1088 (Fed.Cir.1988).

2. Issues

a. Likelihood of Success on the Merits

In order to establish a likelihood of success on the merits, Plaintiff must establish that it will likely be able to prove: (1) that Defendant's product infringes on the '312 patent; and (2) that the '312 patent is likely to withstand Defendant's challenges to its validity.

i. Infringement

In order to establish literal infringement, a patentee must prove that the accused device contains each limitation of the asserted claims. _Bayer AG v. Elan Pharm. Research Corp.,_ 212 F.3d 1241, 1247 (Fed.Cir.2000). In the instant case, the parties focus their infringement analysis on two claims of the '312 patent, claims 1 and 11, which state:

   1. An ornament for use with a string of lights of the type including a plurality of light bulbs disposed on a common cord, the ornament comprising:  
   (a) a hollow shell configured to house a portion of the string of lights with multiple light bulbs disposed within the shell such that the light bulbs housed within the hollow shell illuminate the ornament; and  
   (b) at least one cord aperture defined in an exterior surface of the shell and configured to receive opposing ends of the portion of the string of lights housed within the shell.  
   11. The ornament of claim 1 wherein the hollow shell comprises a pair of shell halves.

Smash contends that NEPCO's product literally infringes on each claim. NEPCO, however, maintains that the string of lights used in its product does not result in the receipt of opposing ends by an aperture in the shell, and thus Smash is not able to meet its burden of proving infringement on each of the limitations of the asserted claims.

*3 First, NEPCO contends that the string of lights to be used with its ornament does not contain a "plurality of lights along a common cord." In support of this contention, NEPCO relies on the distinction between a string of lights wired in series, such as the string used with NEPCO's ornament, and a string of lights wired in parallel, such as that used with Smash's ornament. Briefly, a string wired in series is comprised of a single cord from which all of the lights are wired and which begins and ends in the same plug end, albeit a plug which could contain both the male and female parts. Indeed, the exhibit of NEPCO's ornament presented to the Court contains such a plug so that the ornaments are "interconnectable." On the other hand, a string wired in parallel is comprised of two cords twisted together, both containing lights and attaching together at one end to a female plug and to a male plug at the other.

First, the Court finds no limitation within claim 1 that requires a string of lights to be wired either in series or in parallel. Further, the Court finds no limiting language that would serve to create such a limitation as NEPCO has described. The phrase "disposed on a common cord" instead could be read to include both of the strings described, and thus it is likely that Smash could prove infringement on that issue.

To the extent that this distinction of wiring also raises the issue of whether the aperture in NEPCO's ornament is "configured to receive opposing ends" of the string, the Court also finds that Smash will likely succeed in proving infringement. The limitation requires only that at least one aperture be present and that it be configured in such a way so that it may receive the opposing ends of the string of lights. Indeed, NEPCO's ornament contains one aperture that receives the ends of the string of lights. The fact that NEPCO's string ends in one plug rather than two is not determinative. Whether the opposing ends are interpreted to be the ends of the wires or the male and female plug ends of the cord, both ornaments have an aperture which receives the opposing ends. The plug

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00292-JJF   Document 22-2   Filed 11/01/2005   Page 13 of 15

Not Reported in F.Supp.2d                                                                                    Page 3
Not Reported in F.Supp.2d, 2001 WL 1240849 (D.Minn.)
(Cite as: 2001 WL 1240849 (D.Minn.))

end which feeds through NEPCO's aperture contains both the opposing male and female parts of the plug and the beginning and end of the cord from which the lights are wired. However a fact-finder interprets this claim, it is clear to the Court that Smash will likely prove infringement on this limitation as well.

The parties do not dispute that the NEPCO ornament infringes the '312 patent with respect to its additional limitations that: (1) the ornament be comprised of a hollow shell; (2) that the light bulbs be disposed within the shell so as to illuminate the ornament; and (3) that the shell be comprised of two halves. Accordingly, the Court finds it likely that Smash will prove infringement of these limitations as well. Nonetheless, despite the likelihood that Smash will establish literal infringement of the '312 patent, the Court must next evaluate the strength of NEPCO's claim that the '312 patent is actually invalid.

ii. Invalidity

*4 In order to defeat a motion for preliminary injunction by a challenge of invalidity, the challenger must raise a substantial question of the validity of the patent in suit. Amazon.com, 239 F.3d at 1358-59. While invalidity at summary judgment and at trial must be established by clear and convincing, undisputed evidence, the bar at the preliminary injunction stage is lowered to require only a showing that the proof of validity is indeed vulnerable. Id . Conversely, at the preliminary injunction stage, the patentee need not establish the validity of the patent beyond question but must "present a clear case supporting the validity of the patent in suit." Id. at 1359 (citing Nutrition 21 v. United States, 930 F.2d 867, 871 (Fed.Cir.1991)). By way of example, the Federal Circuit in Amazon.com described two sets of circumstances that could potentially present such a "clear case" by the patentee. Id. (citing 7 Donald S. Chisum, Chisum on Patents § 20.04[1][c], at 20-673 to 20-693 (1998)). The first would involve a patent that had withstood previous validity challenges in other proceedings, and the second would involve a long period of acquiescence within the relevant industry. Id.

In the present case, Smash is unable to rely on either of the two examples set forth by the court in Amazon.com. Instead, NEPCO maintains that certain prior art references anticipated the '312 patent, thus rendering it invalid. At the summary judgment stage, "a prior art reference must disclose 'each and every limitation of the claimed invention." ' Helifix Ltd. v. Blok-Lok, 208 F.3d 1339, 1346 (Fed.Cir.2000) (citing In re Paulsen, 30 F.3d 1475, 1478-79 (Fed.Cir.1994)). However, as the Court noted above, the Federal Circuit in Amazon.com established that prior art that does not disclose all of the limitations for purposes of summary judgment may still be sufficient to prevent issuance of a preliminary injunction if "enough doubt" is cast and if "key limitations" are taught. Amazon.com, 239 F.3d at 1359-60. The Court must now evaluate the prior art references presented by NEPCO as they relate to the claims of the '312 patent and determine whether the requisite vulnerability or clear case of validity has been established. The following prior art has been disclosed and presented to the Court for consideration with respect to this motion: (1) the Gem Lite; (2) the Palmer Patent, U.S. Patent No. 1,832,576; and (3) the Yang Patent, U.S. Patent No. 5,410,459.

The Gem Lite is an unpatented ornament sold by a company operating out of Wood Dale, Illinois. [FN1] The Gem Lite is comprised of about 50 Solo ® drinking cups that have been glued together at their sides to create a large orb. The bottoms of the cups are all at the center of the orb, while the open ends face out. A string of lights is placed within the center of the orb and a single bulb protrudes through the bottom of each cup in order to illuminate the ornament. In effect, the cups act as lamp shade, albeit a clear one, for each bulb. Depending upon the type of plug at the end of the string of lights, it is conceivable that more than one Gem Lite could be strung together or that a single ornament could be illuminated on its own.

> FN1. For purposes of this motion only, Plaintiffs concede that the Gem Lite meets the relevant anticipation requirements established under 35 U.S.C. § 102.

*5 With respect to claim 1 of the '312 patent, the Court finds that the Gem Lite creates a significant question of fact as to whether the limitations contained therein were taught by the prior art. First, the Gem Lite is an ornament for use with a string of lights such that the lights protrude through the ornament so as to illuminate it. Second, while the Gem Lite is certainly different from the ornament in '312, it is not clear to the Court that a fact-finder could not find that the configuration of the drinking cups does not create a hollow shell. The '312 patent does not define shell other than by the limitations that the lights must protrude through it and that the space that the shell creates must be sufficient to contain the string of lights. It would appear that a fact-finder could find the Gem Lite to do just that. It was not

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 4
Not Reported in F.Supp.2d, 2001 WL 1240849 (D.Minn.)
**(Cite as: 2001 WL 1240849 (D.Minn.))**

until the hearing before the Court that Smash represented that a hollow shell must be comprised of a relatively continuous surface. Nowhere in the '312 patent is such language found. And, to the extent that the ornament within the '312 patent is created by a shell that is not a continuous surface, it is possible that a fact-finder could determine that the Gem Lite is comprised of a shell such as that exemplified by the '312 ornament. Third, to the extent that the limitation requiring at least one aperture defined in the exterior surface requires an opening from the interior of the ornament where the lights are contained through to the exterior of the ornament so that the end of the cord may be accessed, a fact-finder could find that the Gem Lite teaches this limitation as well.

The remaining claim argued by the parties is claim 11 which requires that the hollow shell be comprised of two parts. NEPCO maintains that claim 11 is invalidated by both the Palmer and Yang Patents. The Palmer Patent describes a star-shaped ornament that is created by the joinder of two star forms, each with an underside-flange which, when joined with the other, creates a ridge along which a string of lights is run so that the bulbs protrude past the edge in order to illuminate the outline of the ornament. The Yang Patent describes an ornament comprised of two "shells," one is a flat panel that slides into the other which is a three dimensional form, which when meshed together create a channel to encapsulate the string of lights.

Both patents were cited by the Patent Examiner as references considered in granting the '312 Patent. While the Court has been presented with virtually no prosecution history other than the Palmer and Yang patents themselves, the Patent Examiner apparently found the prior art not to anticipate the patented claims. In general, a patent is presumed to be valid, and a patent examiner's decisions are to be treated with deference. _American Hoist & Derrick Co. v. Sowa & Sons, Inc._, 725 F.2d 1350, 1359-60 (Fed.Cir.1984). That is to say that with respect to evidence bearing on validity that has been considered by the patent examiner, a court should not impose its judgment simply because it disagrees with the evaluation of the relevant evidence. _Id_. While the Yang patent could be read to create a dispute of fact as to whether claim 11 of the '312 patent was anticipated, the Court finds that NEPCO has presented insufficient evidence to persuade the Court that it should not treat the Patent Examiner's decision on this issue with the requisite deference it is due.

*6 While the Court finds that NEPCO has raised substantial questions with respect to some of the key limitations of the '312 patent, NEPCO has not met its burden with respect to the key limitation set forth in claim 11. To the extent that the court in _Amazon.com_ held that prior art need not necessarily teach each and every limitation of the claims at issue in order to defeat a motion for preliminary injunction, the instant facts are distinct because, on one of the key limitations, the prior art before this Court was also considered by the Patent Examiner. Effectively, the key limitation of claim 11 is left unchallenged. NEPCO has not met its burden of overcoming the deference due to the Patent Examiner's decisions, nor has it cast sufficient doubt on the overall validity of the '312 patent. The Court concludes that NEPCO has not raised the requisite substantial question of invalidity, and accordingly, the Court finds that Smash has established a likelihood of success on the merits.

b. Irreparable Harm

To establish the factor of irreparable harm, Smash primarily relies on its establishment of a likelihood of success on the merits. In addition, however, Smash contends that its right to exclude under the '312 patent cannot be adequately remedied by monetary damages. To the contrary, NEPCO maintains that the potential harm of which Smash complains is wholly compensable, and moreover, that Smash delayed for seven months before bringing the current lawsuit, thus indicating a lack of irreparable harm.

When a patentee makes a clear showing of both the infringement and validity of a patent, then there is a presumption that harm is irreparable. _Bio-Technology General Corp. v. Genentech, Inc._, 80 F.3d 1553, 1558 (Fed.Cir.1996) (citing _Atlas Powder Co. v. Ireco Chems._, 773 F.2d 1230, 1233 (Fed.Cir.1985)). The very nature of a patent provides the invaluable right to exclude, a violation of which inherently causes irreparable harm unless certain circumstances can be established, such as: (1) a pattern of granting licenses; (2) evidence that infringement is likely to cease; and (3) evidence of a delay in bringing suit. _Polymer Technologies, Inc. v. Bridwell_, 103 F.3d 970, 975-76 (Fed.Cir.1996).

Evidence of any of the above exceptions has not been presented in this case. First, Smash has only granted an exclusive and a non-exclusive license to the same manufacturer. It is admittedly impossible to predict with certainty what a company may do upon renegotiation of a license and its terms, regardless of the circumstances of the relevant market. However,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00292-JJF   Document 22-2   Filed 11/01/2005   Page 15 of 15

Not Reported in F.Supp.2d                                                                                    Page 5
Not Reported in F.Supp.2d, 2001 WL 1240849 (D.Minn.)
(Cite as: 2001 WL 1240849 (D.Minn.))

the possibility is distinct that H.S. Craft will not renew its exclusive license with Smash if an unlicensed and unrestrained competitor is allowed into the market. There is also no evidence before the Court that NEPCO will cease to infringe the '312 patent. Indeed, both parties have represented that they intend to sell their ornaments for the upcoming holiday season. Finally, the evidence does not support a finding that Smash delayed in bringing the current suit. Over the course of several months, the parties exchanged letters and even met in attempts to settle the current dispute. For these reasons, the Court finds that the presumption of irreparable harm has not been overcome and that this factor also weighs in favor of granting the current motion.

c. Balance of Harms

*7 As the Court has explained above, the potential harm to Smash if the injunction were not to issue would be irreparable. On the other hand, if the injunction were to issue and the outcome at trial to be in favor of NEPCO, then the potential harm to NEPCO would be wholly compensable based on factors such as its lost sales, inventory, and market share. Moreover, the fact that NEPCO knowingly engaged in conduct likely to be found in violation of the '312 patent once its own negotiations for a license were unsuccessful is indicative of NEPCO's assumption of the risk in this case. The Court finds that this factor as well tips in favor of granting the requested injunction.

d. Public Interest

There is a strong public interest in the protection of patent rights. Smith Intern., Inc. v. Hughes Tool Co., 718 F.2d 1573, 1581 (Fed.Cir.1983). Indeed, there is a similarly strong public interest in maintaining the proper scope to these rights so that future innovation and invention may be encouraged and pursued. However, the balance of these interests must be maintained, especially given the possibility that flagrant infringement might otherwise be facilitated. H.H. Robertson Co. v. United Steel Deck, Inc., 820 F.2d 384, 391 (Fed.Cir.1987). The Court is loathe to allow that to occur and finds that, without the requested injunction, the risk of such an occurrence is significant under the facts as they have been presented. Accordingly, the Court finds that the public interest also weighs in favor of granting the injunction.

For the reasons stated, IT IS HEREBY ORDERED THAT:

1. Plaintiff's Motion for Preliminary Injunction (Doc. No. 10) is GRANTED such that:
 a. Defendant New England Pottery Co., Inc. ("NEPCO"), its agents, servants, officers, directors, employees, attorneys, privies, representatives, successors, assigns, and parent and subsidiary corporations, and all persons in active concert or participation with any of them are preliminarily enjoined from making, using, selling, offering for sale, and importing into the United States the ornament known as the "Starlight Sphere," except Defendant is not enjoined from selling any ornaments that it legally purchased from Plaintiff or its licensee H.S. Craft Manufacturing Co .; and
 b. Defendant NEPCO, its agents, servants, officers, directors, employees, attorneys, privies, representatives, successors, assigns, and parent and subsidiary corporations, and all persons in active concert or participation with any of them are preliminarily enjoined from otherwise making, using, selling, offering for sale, and importing into the United States the invention claimed in U.S. Patent No. 5,772,312; and

2. Plaintiff is required to enter a bond in the amount of $100,000; and

3. Consistent with the Court's Memorandum Opinion and Order, the Court is willing to accommodate an expedited trial schedule. If the parties are unable to agree upon a corresponding expedited discovery schedule, the parties should contact Beverly Riches, Magistrate Judge Susan Richard Nelson's Calendar Clerk, at 651-848-1200, to set up a scheduling conference pursuant to Rule 26(f) of the Federal Rules of Civil Procedure.

Not Reported in F.Supp.2d, 2001 WL 1240849 (D.Minn.)

**Motions, Pleadings and Filings (Back to top)**

• 0:01CV00601 (Docket) (Apr. 06, 2001)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.