IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LG.PHILIPS LCD CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> TATUNG COMPANY; <br> TATUNG COMPANY OF AMERICA, INC.; <br> CHUNGHWA PICTURE TUBES, LTD.; <br> AND VIEWSONIC CORPORATION, <br><br> Defendants. | Civil Action No. 05-292 (JJF) |

## NOTICE OF RULE 30(b)(6) DEPOSITION
## OF TATUNG COMPANY

TO:

Robert W. Whetzel, Esq.
Matthew W. King, Esq.
Richards, Layton & Finger
One Rodney Sqare
P.O. Box 551
Wilmington, DE 19899

Christine A. Dudzik, Esq.          Teresa M. Corbin, Esq.
Thomas W. Jenkins, Esq.            Glenn W. Rhodes, Esq.
Howrey LLP                         Howrey LLP
321 North Clark Street             525 Market Street
Suite 3400                         Suite 3600
Chicago, IL  60610                 San Francisco, CA  94105

    PLEASE TAKE NOTICE that Plaintiff LG.Philips LCD Co., Ltd. ("LPL") will take the deposition of Defendant Tatung Company ("Tatung"), pursuant to Fed. R. Civ. P. 30(b)(6), beginning on Tuesday, March 21, 2006, at 9:00 a.m. and continuing through Friday, March 24, 2006.  The deposition will take place at The Bayard Firm, 222 Delaware Avenue, 9th Floor, Wilmington, DE 19899-5130.  The deposition will be taken before a notary public or court reporter, duly authorized to administer oaths and

611670v1

transcribe the testimony of the deponent(s). The deposition will be videotaped and will continue from day to day until completed or adjourned if authorized by the Court or stipulated by the parties. The subjects covered in the deposition will include (but are not limited to) the subjects listed on Attachment A to this Notice.

Pursuant to Fed. R. Civ. P. 30(b)(6), Tatung is required to designate one or more persons to testify at the deposition as to the matters known or reasonably available to Tatung.

December 14, 2005

THE BAYARD FIRM

/s/ Richard D. Kirk (rk0922)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899-5130
(302) 429-4208

Counsel for Plaintiff
LG.PHILIPS LCD CO., LTD.

OF COUNSEL:

Gaspare J. Bono
Matthew T. Bailey
Andrew J. Park
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, D.C. 20006
(202) 496-7500

611670v1

2

## ATTACHMENT A

## DEFINITIONS

For purposes of this Attachment, you should use the following definitions for the terms used herein. These definitions of terms are for purposes of discovery only, and not to be construed as limiting or reflecting LPL's position in this case regarding claim construction or any other issue. LPL specifically reserves the right to use different terms, or to assert different meanings, for all purposes in this case (including, for example, with respect to claim construction, infringement analysis, and validity analysis).

1. "Tatung," "you," and "your" as used herein, means Defendant Tatung Company and all persons or entities acting or purporting to act on your behalf, and any of your affiliates, including, for example, Tatung Company of America, Inc.

2. "Plaintiff" refers to the Plaintiff in the above-captioned lawsuit as well as its affiliates.

3. "The '121 Patent" means United States Patent No. 6,738,121, entitled "Tape carrier package with dummy bending part and liquid crystal display employing the same," attached as Exhibit A to the Plaintiff's Complaint in Civil Action No. 05-292 (JJF).

4. "The '002 Patent" means United States Patent No. 5,019,002, entitled "Method of manufacturing flat panel backplanes including electrostatic discharge prevention and displays made thereby," attached as Exhibit B to the Plaintiff's Complaint in Civil Action No. 05-292 (JJF).

5. "Patents-in-Suit" refers either individually or collectively to United States Patent No. 6,738,121 and United States Patent No. 5,019,002.

6. "Affiliate(s)" means any corporation or other entity that controls, is controlled by or is under common control with the identified corporation or entity, including without limitation partnerships, parents, subsidiaries and divisions.

7. "Any" means each and every.

8. The connectives "and," "or," and "and/or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these interrogatories (or, if applicable, document requests) all information that might otherwise be construed to be outside of their scope.

9. "Communication" means, without limitation, every manner or means of statement, utterance, notation, disclaimer, transfer or exchange of information between two or more persons of any nature whatsoever, by or to whomever, whether oral or written or whether face-to-face, by telephone, email, mail, personal delivery or otherwise, including but not limited to, e-mails, letters, correspondence, conversations, memoranda, dialogue, discussions, meetings, interviews, consultations, agreements and other understandings.

10. "Concern" and "concerning" are used in their broadest sense and embrace all matter relating to, referring to, describing, discussing, evidencing or constituting the referenced subject.

11. "Discuss," "discussing," "relate to," "relating to," "support," or "supporting" means in any way directly or indirectly, in whole or in part, discussing,

referring to, regarding, constituting, concerning, about, pertaining to, relating to, reflecting, considering, underlying, modifying, amending, confirming, mentioning, endorsing, evidencing, summarizing, memorializing, describing, discussing, analyzing, evaluating, representing, supporting, qualifying, terminating, revoking, canceling, or negating.

12. "Document" means all types of documents and things embraced within Federal Rule of Civil Procedure 34 and includes, without limitation, any writing and each original, or a copy in the absence of the original, and every copy bearing notes or markings not present on the original or copy, of the following items, however produced or reproduced, namely: books, accounting records of any nature whatsoever, agreements, communications, correspondence, facsimiles, telegrams, emails, cable, telexes, memoranda, recordings, studies, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, diaries, letters, forecasts, statistical statements, graphs, laboratory or engineering reports and records, notebooks, charts, plans, sketches, drawings, video tapes, films, slides, information bearing photographic products of any nature whatsoever, photo-records, microfilms, tape recordings, minutes or records of meetings or conferences, expressions or statements of policy, lists of persons attending meetings or conferences, reports or summaries of interviews, reports or summaries of investigations, opinions or reports of consultants, patent studies, or opinions of counsel, records, reports or summaries of negotiations, sales literature of any nature whatsoever, brochures, catalogues, catalogue sheets, pamphlets, periodicals, advertisements, circulars or trade letters, press releases, trade releases, publicity releases, new product releases, reprints, drafts of any documents,

working papers, indices, original or preliminary notes, computer printouts, floppy disks, hard drives, CD-ROMs, magnetic tapes and other data compilations from which information can be obtained or translated, if necessary by the defendant through detection devices into reasonably usable form. The term document also refers to any tangible object other than a document as described above, and includes objects of every kind and nature such as, but not limited to, prototypes, models, and specimens.

13. "Identify" used in respect to a company or corporate entity means to set forth:

    A.    the full name of the company;

    B.    the full name of the division or office involved, if applicable; and

    C.    the address of the company and of the division or office involved, if applicable.

14. "Identify" used in respect to a document or thing means:

    A.    to provide a brief description of such document or thing, including date, author, recipients, type, and content or substance;

    B.    to identify the custodian of the document or thing;

    C.    to identify the place where the document or thing may be inspected; and

    D.    if a copy of the document has been supplied to Plaintiff, to so state and specifically identify the copy supplied by reference to production numbers or other identifying information.

15. "Identify" used with respect to a natural person means to state:

   A. the full name;

   B. the present or last known business and residence addresses;

   C. the last known employer or job affiliation; and

   D. the last known occupation and business position or title held.

16. As to present or former government employees, state the government employer for each position held, the starting and ending date for each position, and the job description and title for each position held. Also, state the person's responsibilities with regard to any contract specified in the interrogatory.

17. "Import" or "importation" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

18. "LCD display module" means the module including an LCD display panel, a backlight unit, driver ICs, and any related components.

19. "LCD display panel" means two substrates with liquid crystal material between the substrates.

20. "LCD display product" means any device that contains an LCD display module. An LCD computer monitor, LCD television, laptop computer, and any telephone or other portable or handheld product incorporating an LCD display module are examples of LCD display products. This includes all such devices, regardless of brand name, and thus includes, but is not limited to, Tatung brand and ViewSonic brand products.

21. "Machine" has the same meaning as in U.S. patent law and applicable case law.

22. "Make" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

23. "Manufacture" has the same meaning as in U.S. patent law and applicable case law.

24. "Offer to sell" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

25. "Part number" means a name or alpha-numeric identifier by which a part or product, for example an LCD display product, LCD display module, LCD display panel, or components thereof, in general, can be bought, sold, or identified.

26. "Person" means any natural person, firm, association, partnership, corporation, or other form of legal entity.

27. "Prior art" has the same meaning as in U.S. patent law, including in 35 U.S.C. §§ 102 and 103, and applicable case law.

28. "Process" has the same meaning as in U.S. patent law and applicable case law.

29. "Sell" or "sale" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

30. "Specification" means anything that discusses, illustrates, defines, prescribes, or present procedures concerning, in whole or in part, any aspect of how

something can or will be made, inspected, or tested. Specifications include, for example, textual documents, drawings, photographs, blueprints, and/or illustrations.

31. "Type of LCD display product," "Type of LCD display module," and "Type of LCD display panel" means the name or alpha-numeric identifier by which a given LCD display product, module, or panel is identified. This includes, but is not limited to a part number, product code, material code, stock number, bar code number, or any other type of alpha-numeric identifier by which an item is bought, sold, or identified.

32. The use of the singular form of any word includes the plural and vice versa.

33. "Used" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

## TOPICS TO BE ADDRESSED AT THE DEPOSITION

1. Each type of LCD display product made, used, sold, and/or offered for sale, by or for you, each month since May 13, 1999.

2. The quantity and price (including suggested resale and retail prices) of each type of LCD display product made, used, sold, and/or offered for sale, by or for you, each month since May 13, 1999.

3. The quantity and price (including suggested resale and retail prices) of each type of LCD display product made, used, sold and/or offered for sale, in the United States, and/or or imported into the United States, by or for you, each month since May 13, 1999.

4.  For each type of LCD display product made, used, sold, and/or offered for sale, by or for you, since May 13, 1999, the identity of the manufacturer(s) of the LCD display module used for each type of LCD display product, and the quantity and price (including suggested resale and retail prices) of the LCD display modules that each manufacturer supplied for that use.

5.  The design, development, making, assembly, production, testing, inspection, and/or qualification of LCD display products, LCD display modules, and/or LCD display panels made, bought, or sold, by or for you since May 13, 1999, including but not limited to optical, mechanical, and electrical testing and inspection.

6.  All documents associated with the conception, design, and development of your LCD display products, LCD display modules, and LCD display panels, including, for example, design or engineering documentation.

7.  All specifications relating to your LCD display products, LCD display modules, LCD display panels, including, but not limited to, all specifications related to tape carrier packages and all specifications related to circuits and/or structures concerning electrostatic discharge protection of thin film transistors of LCD panels.

8.  Your contentions regarding whether or not you are infringing the Patents-in-Suit, whether directly, under the doctrine of equivalents, or otherwise.

9.  Your contentions regarding the validity and/or enforceability of the Patents-in-Suit, including, for example, your contentions regarding "an invalidating act that occurred more than a year prior to the filing date of the asserted patent."

10. All prior art that you contend is relevant to the Patents-in-Suit, including, for example, any prior art that you contend invalidates the Patents-in-Suit, individually or collectively.

11. The date that you first became aware of the Patents-in-Suit and the circumstances surrounding your first knowledge of the Patents-in-Suit, including, but not limited to, the date of your first actual notice of the Patent-in-Suit, the form of such notice, the source of such notice, identification of the person employed by you who first learned of the Patents-in-Suit and from what source, explaining the manner in which that person learned of the Patents-in-Suit, and identifying all documents that reflect when and how you learned of the Patents-in-Suit, any discussions internal to you regarding the Patents-in-Suit, communications with third parties (including vendors, customers, or others) regarding the Patents-in-Suit, actions you took upon becoming aware of the Patents-in-Suit, including, without limitation, product modification(s), design-around efforts, conducting non-infringement and/or invalidity investigation(s), and/or seeking advice of counsel.

12. Your efforts to avoid infringing the Patents-in-Suit since the time that you first learned of the Patents-in-Suit, including, but not limited to all attempts, by or for you, to design around the Patents-in-Suit.

13. The efforts you took to gather and search for information and documents responsive to the Interrogatories and Requests for Production of Documents and Things, propounded to you by Plaintiff, including the locations for responsive information and documents, the persons interviewed regarding the responsiveness of such information

611670v1

11

and documents, and the manner in which you searched for electronic information, documents or records.

14. The information and documents referenced in your answers to Interrogatories propounded to you by Plaintiff.

15. The types and categories of documents that you receive, create, generate, or maintain concerning the manufacture, importation, purchase, distribution, sale, offer for sale, receipt, or advertisement of your LCD display products.

16. Your worldwide sales or shipments of LCD display products to any persons, including the amount of revenue and profit you have derived from your LCD display products and sales or shipments to the United States.

17. The relationship between or among you and all entities that distribute, supply, market, import, purchase, and/or sell LCD display products manufactured, distributed, or sold, by or for you, the identity of all such entities, any contracts, agreements, or contractual or business arrangements between you and such entities, and the quantity and value of LCD display products involved.

18. All distributors, suppliers, marketers, importers/exporters, purchasers, sellers, and channels or networks through which you have, directly or indirectly, distributed, supplied, marketed, shipped, imported, exported, transferred, purchased, and/or sold LCD display products, LCD display modules, or LCD display modules, including such distribution, supply, marketing, importing/exporting, purchasing, selling in the United States.

19. Your organizational structure, including but not limited to all persons involved in the research, design, manufacture, marketing, distribution, importation,

exportation, purchase, and sale of your LCD display products, and each person's respective role and place in the chain of distribution of any consumer goods or devices containing or relating to such LCD display products.

20.   Your forecasts or projections of sales, revenues from, and profitability of your LCD display products and your actual sales, revenues from, and profitability of your LCD display products, since May 13, 1999.

21.   All efforts you have taken to sell or distribute your LCD display products, and all efforts you have taken to promote, market, and/or advertise your LCD display products and your company, including any parents, subsidiaries, and affiliates.

22.   Meetings, communications, agreements, and contractual and business relationships, that relate to the importation, manufacture, distribution, promotion, marketing, advertising, purchases, or sales of any of your LCD display products.

23.   Communications and/or participation in DisplaySearch and/or the Standard Panels Working Group that relate to the importation, manufacture, distribution, marketing, advertising, purchase, or sale of any of your LCD display products.

24.   All licenses, royalties, and/or technology transfer agreements that pertain to LCD display products, LCD display modules, and/or LCD display panels to which you are a party, assignor, assignee, or beneficiary, as well as any policies, practices, or relevant factors you have used when negotiating potential license agreements.

25.   All contracts and related documents reflecting each order from and sale to United States customers of any types of LCD display products made, sold, or offered for sale, by or for you, since May 13, 1999.

26. All reports and data compilations showing actual monthly sales, by or for you, concerning each type of LCD display product made, sold, or offered for sale, by or for you, since May 13, 1999.

27. For all types of LCD display products made, sold, or offered for sale, by or for you, since May 13, 1999, documents sufficient to determine the quantity of each type of LCD display product that you made, manufactured, shipped, and/or sold each month, and the amount of revenue generated each month for all such shipments and sales since May 13, 1999, including, for example, the per unit gross profit, net profit, and profit margin on each unit sold or transferred.

28. For all types of LCD display products made, sold, or offered for sale, by or for you, since May 13, 1999, documents sufficient to determine the quantity of each type of LCD display product imported into the United States each month, by or for you, and the amount of revenue generated each month for all such importations since May 13, 1999, including, for example, the per unit gross profit, net profit, and profit margin on each unit sold or transferred.

29. All documents reflecting the advertising, marketing, promotion of, and/or offer to sell in the United States since May 13, 1999, any types of LCD display products made, sold, or offered for sale, by or for you, since May 13, 1999, including, without limitation, brochures, marketing plans, sales literature, advertisements, and product descriptions and specifications.

30. Whether each type of LCD display product made, sold, or offered for sale, by or for you, since May 13, 1999, could be lawfully imported and/or sold in the

United States since May 13, 1999, including, for example, documents reflecting any United States regulatory approval and/or compliance.

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on December 14, 2005, he electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will send automatic notification of the filing to the following:

Robert W. Whetzel, Esq.
Matthew W. King, Esq.
Richards, Layton & Finger
One Rodney Sqare
P.O. Box 551
Wilmington, DE 19899

The undersigned counsel further certifies that copies of the foregoing document were sent by email and hand to the above counsel and by email and first class mail to the following non-registered participants:

| | |
|---|---|
| Christine A. Dudzik, Esq.<br>Thomas W. Jenkins, Esq.<br>Howrey LLP<br>321 North Clark Street<br>Suite 3400<br>Chicago, IL  60610 | Teresa M. Corbin, Esq.<br>Glenn W. Rhodes, Esq.<br>Howrey LLP<br>525 Market Street<br>Suite 3600<br>San Francisco, CA  94105 |

/s/ Richard D. Kirk (rk0922)
Richard D. Kirk

602380v1