# EXHIBIT A

LG Philips LCD Co., LTD    v.
Tatung Company, et al.

1
IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
LG PHILIPS LCD CO LTD ,
        Plaintiff,
                                    :
                                    : Civil Action
                                    : No 05-292
v                                   :
TATUNG COMPANY, TATUNG COMPANY OF :
AMERICA, INC., CHUNGHWA PICTURE :
TUBES LTD , and VIEWSONIC :
CORPORATION,                        :
        Defendants                  :
                    Wednesday, February 8, 2006
                    12:30 p m
                    Courtroom 4B
                    844 King Street
                    Wilmington, Delaware
BEFORE: THE HONORABLE JOSEPH J FARNAN, JR
        United States District Court Judge
APPEARANCES:
    THE BAYARD FIRM
        BY:  RICHARD D KIRK, ESQ
        -and-
    McKENNA LONG & ALDRIDGE
        BY:  GASPARE J BONO, ESQ
        BY:  CASS W CHRISTENSON, ESQ
            Counsel for the Plaintiff
APPEARANCES CONTINUED:
    RICHARDS, LAYTON & FINGER
        BY:  MATTHEW W KING, ESQ
        -and-
    HOWREY, LLP
        BY:  JULIE S GABLER, ESQ
        BY:  J JAMES LI, ESQ
            Counsel for the Defendant
                    3

[1] THE COURT: All right. Be seated, [2] please. You can step up.

[3] Okay. Do you want to announce [4] your appearance so the court reporter can get [5] them down.

[6] MR. KIRK: Good afternoon, Your [7] Honor. Richard Kirk from The Bayard Firm for [8] the plaintiff, LG. Philips LCD Company, Limited.

[9] With me today from the firm of [10] McKenna, Long & Aldridge in Washington are [11] Gaspare Bono and Cass Christenson.

[12] THE COURT: Good afternoon.

[13] MR. KING: Good afternoon, Your [14] Honor. Matt King with Richards, Layton & Finger [15] on behalf of the defendants. With me here today [16] from the Howrey firm are Julie Gabler and James [17] Li.

[18] THE COURT: Good afternoon.

[19] MR. KING: Your Honor, [20] unfortunately Christine Dudsac who is —

[21] THE COURT: I heard. Do you see [22] this thing over here, we don't have it working [23] correctly, I think partially because of the [24] white noise thing they installed, so I

Page 4

[1] apologize, we can't really do it well. [2] Hopefully we'll be technologically advanced in [3] about another sixty days.

[4] MS. GABLER: We should be fine. [5] And Christine obviously apologizes. There was [6] that issue with the UPS fire

at the Philadelphia [7] Airport this morning that caused her to be [8] unable to come in.

[9] THE COURT: I was reading that [10] during my trial on the AOL news, they showed a [11] picture of the fire of the cargo plane, right?

[12] MS. GABLER: Yes.

[13] THE COURT: It was amazing. Thank [14] you and welcome and thank you, Mr. King.

[15] All right. I took a look at your [16] letters and just a couple of notes that I made [17] that I thought if I address might be helpful. [18] The first item is that we have a July 17, 2006 [19] trial date, and which we will not lose or pass [20] or modify, or extend, shorten, it's July 17.

[21] If you look at the calendar, I [22] don't know if you're allowed to see those [23] anymore, but there is another bench trial [24] scheduled, but don't pay attention to that

Page 5

[1] because that's going to go later or [2] earlier or [2] away, so you are the only trial in July, whether [3] it's a bench trial, a jury trial, it really [4] doesn't matter to me.

[5] So that brings me to my concern, [6] which I see that you have gotten a lot of [7] the matters resolved, but as is typical in [8] these type of cases, there is a little bit of [9] tension not between you, but with the kind of [10] work you have to get accomplished in the time [11] frame, so [11] it looks to me like we've missed the early [12] February — what was it, February 3rd?

[13] MS. GABLER: Yes.

[14] THE COURT: To    complete    document [15] production, which is not a good thing in my [16] world.

[17] MS. GABLER: The defendants have [18] met the date, Your Honor. We completed our [19] production on Friday.

[20] THE COURT: Right. But if we all [21] don't meet it —

[22] MS. GABLER: Right, then we all [23] have a problem, yes.

[24] THE COURT: Exactly, we all have a

Page 6

[1] problem. So the first thing I want to [2] address [3] is when you have a July 17th trial date, and I [3] understand all the translation issues and the [4] review issues and that we have to get, before we [5] go any further, all document production [6] resolved. And I know there is some implications [7] of interrogatory answers as it may pertain to, [8] you know, hopefully scheduled depositions, but [9] we really got to find out what is the drop dead [10] date because in this case with that July 17th [11] date, any doc-

ument found that should have been [12] produced is going to cost a lot of money for the [13] party that finds it. And any document that goes [14] against the party, any document found that helps [15] a party won't help you once we get by the drop [16] dead date. So this is an important matter which [17] I guess I need to hear from plaintiff on.

[18] MR. BONO: Yes, Your Honor.

[19] THE COURT: You can do it from [20] there.

[21] MR. BONO: Very well, Your Honor. [22] We appreciate the significance of the timing [23] here and we have worked very, very hard to try [24] to meet — I would like to meet the deadline. I

Page 7

[1] would like to say — we don't believe the [2] defendants have completed their document [3] production. We have done an initial review and [4] there are some items that appear to be deficient [5] which we would like to raise with the Court, so [6] although they did make a fairly large production [7] on Friday, we don't believe it is complete, [8] either.

[9] From our point of view, Your [10] Honor, I would propose the following to see if [11] this is acceptable to the Court. We are in the [12] process of finishing up our document review and [13] getting some few remaining documents, because [14] we have had several discussions with the other [15] side on trying to work out some issues.

[16] We will be prepared to produce [17] additional documents this Friday. We anticipate [18] being — producing some additional documents on [19] Monday, and we believe we can complete our [20] document production one week from today, next [21] Wednesday.

[22] And as I said, there are some [23] other issues with the defendants' production [24] which I believe they're going to — which I

Page 8

[1] would like to raise and I believe they're going [2] to need a little bit of time to go back and look [3] at that as well, so we believe we can complete [4] our production by I guess —

[5] THE COURT: So our date is [6] February 15?

[7] MR. BONO: Yes, Your Honor, if [8] that's all right with the Court.

[9] THE COURT: You know, I take the [10] view, my life isn't that stressful, believe it [11] or not. I mean, there is a lot of work here, [12] managing 300 and some cases, but I always feel [13] empathy for lawyers. So, you know, if you told [14] me February 22nd was your date, as long as it's [15] the date that you're going to drop dead on

[16] document production and you understand all the [17] consequences on both sides, that's okay.

[18] So you feel real comfortable with [19] February 15th, and I tell you what we are going [20] to do with your concern about their deficient [21] production.

[22] MR. BONO: I would feel more [23] comfortable with next Friday, but I think I can [24] meet Wednesday.

Page 9

[1] THE COURT: We'll make it next [2] Friday. Actually you know what we'll do, we'll [3] give you a weekend to have all those associates [4] in there billing. This is like the bane of [5] their existence, and the thrill of partners [6] existence, Mr. King understands, all that extra [7] cash coming in. It's great, isn't it? So we'll [8] do so we got Wednesday the 15th, so we have [9] Thursday the 16th, 17th, 18th, the 20th is a [10] federal holiday, so we'll give you that, so they [11] can bill double time if they do that, and we'll [12] make it the 21st of February.

[13] MR. BONO: Your Honor, I [14] appreciate the extra time from the Court. I [15] don't think that should affect — if the [16] defendants are going to talk about —

[17] THE COURT: Hold on a second, I [18] want to get to that problem. I'm going to get [19] you to yelling at each other after February [20] 21st. In other words, you're going to cleanse [21] your soles by February 21st of all that you [22] think you should have produced, you're going to [23] write all those neat letters back and forth [24] about you didn't do this, you didn't do that,

Page 10

[1] we're not happy with that, then I'm going to see [2] you within a week of February 21st about [3] deficiencies.

[4] MR. BONO: That's very well, but [5] Your Honor, before we pick that date, I'm happy [6] with that, I don't want that to be — for the [7] defendants to bootstrap that into an excuse to [8] delay depositions.

[9] THE COURT: Well, it is. They've [10] already gotten that by having to get beyond [11] February 3rd or 2nd or whatever.

[12] MR. BONO: Your Honor, but in the [13] proposals we've exchanged proposed deposition [14] schedules among the parties.

[15] THE COURT: Well, if you agree.

[16] MR. BONO: I just want to say —

[17] THE COURT: It's okay.

[18] MR. BONO: — the way the [19] proposals — we have to have a conference call [20] tomorrow to firm up the schedule, but the [21] proposed dates are we

have offered our witnesses [22] starting March 8th, okay, March 8th, our [23] 30(b)(6) witnesses, and we have a couple of fact [24] witnesses that will also be scheduled right

Page 11

[1] around that time.

[2] They have proposed that we can [3] start taking Tatung Company of America and [4] Viewsonic, which are the U.S. companies which [5] are going to have minimal technical information, [6] they're really only going to have some product [7] information, some sales information, and they [8] have proposed that those depositions start [9] during the weeks of February 21 and 28.

[10] And what I'm suggesting is the [11] completion of our document production which [12] really, really should not affect the scheduling [13] of the beginning of those depositions in those [14] weeks because they're basically U.S. and sales [15] companies.

[16] THE COURT: See, you're making it [17] too complicated for kind of an intellectual [18] deficient person like myself. Let me make it [19] clear to you, I don't care, so start taking [20] depositions as long as you all agree. But if [21] somebody objects, then the way my world works [22] since I manage the case attempting to make your [23] lives less stressful, you got to get beyond the [24] document production problems and then you can

Page 12

[1] have at each other on depositions because what I [2] don't want to hear is in April or May that we [3] got to go back and depose somebody because this [4] just happened or that just happened because [5] in my world, that doesn't happen. In my world, [6] February 21 is when all documents should be [7] produced.

[8] I'm going to give you an [9] expeditious come back to Court, tell me your [10] problems about deficiencies, put everything on a [11] short leash for the further production or the [12] representation that there is no further [13] production, and typically in my world [14] depositions would begin.

[15] If you can get them to agree to [16] start the week of the 28th, that's fine, but if [17] I'm asked to delay depositions because the [18] document production isn't complete, then I do [19] it. Because the way I order things if you don't [20] have all your documents and the drop dead date [21] and all the disputes resolved, how can you go to [22] depositions? I don't know, but sometimes you [23] can.

[24] If you can agree to do that, go

Page 13

[1] ahead and go. But if you can't agree to do [2] that, then it stops. But it doesn't get pushed [3] out until April, it gets pushed out from [4] February 28th to what's it, March 2nd or [5] something.

[6] MR. BONO: I appreciate, Your [7] Honor, under the Court's — I don't want to make [8] it —

[9] THE COURT: Stressful.

[10] MR. BONO: Under the Court's [11] current scheduling order, we have agreed and the [12] Court endorsed it that we would complete [13] 30(b)(6) depositions and fact depositions by [14] March 17th. And so —

[15] THE COURT: I don't mean to [16] interrupt you, but just let me ask this [17] question: What else did you agree to? [18] February 3rd was document production.

[19] MR. BONO: Your Honor, I [20] appreciate that.

[21] THE COURT: Okay.

[22] MR. BONO: If we could work out a [23] situation where that date moves back a week, I'm [24] not arguing about that.

Page 14

[1] THE COURT: I know you're not.

[2] MR. BONO: I really —

[3] THE COURT: I just —

[4] MR. BONO: I'll be happy to work [5] it out.

[6] THE COURT: I just keep trying to [7] bring it back to how I view things. If there is [8] disputes and I have to work them out, because [9] that's the only way I can be consistent — I [10] hate the word — fair, but consistent, let's [11] just say even if I'm unfair, at least I'm [12] consistent, the only way I can do that is if I [13] have a perspective that certain things close, [14] other things begin, unless the parties agree.

[15] But see, you already have gone [16] past, not you personally, if they're deficient, [17] they have gone by it, too, you all will have [18] gone by February 3rd, you all ultimately you [19] have gone past my world dates.

[20] MR. BONO: I understand, Your [21] Honor.

[22] THE COURT: Okay.

[23] MR. BONO: I understand, and I'll [24] try to work it out with the other side.

Page 15

[1] THE COURT: So you may go by March [2] 17th.

[3] MR. BONO: Very well, I don't have [4] an issue with that per se in working this out.

[5] THE COURT: Okay. Or you can [6] agree.

LG Philips LCD Co., LTD   v.
Tatung Company, et al.

Hearing
February 8, 2006

[7] MS. GABLER: Your Honor, we would [8] prefer to hold the depositions sched- [9] ule, we did [9] exchange dates.

[10] THE COURT: So you ought to be [11] able to make it.

[12] MS. GABLER: Counsel was correct, [13] that was in the process of moving it [14] forward, [14] but it's definitely our posi- [15] tion that we want [15] the document [16] issues resolved before we proceed [16] with depositions.

[17] THE COURT: So the date is [18] February 21st, a Tuesday, by five o'clock, [19] Wilmington, Delaware time when every- [20] thing has to [20] be produced, which [20] means that if there is [21] deficiencies — [22] and these are all documents in [22] the [22] case; right?

[23] MS. GABLER: Yes. Can I flag one [24] issue in this area, Your Honor, before we [24] go on?

Page 16

[1] THE COURT: Sure.

[2] MS. GABLER: It's maybe a point of [3] clarification with counsel. I know you [4] are [4] translating documents right now [5] to determine [5] whether or not certain [6] things are relevant and [6] will be pro- [7] duced, but you intend to produce them [7] as foreign language documents; is that [8] correct?

[8] MR. BONO: Yes.

[9] MS. GABLER: Yes. Okay. So our [10] concern is that if their production is [11] continuing through the 21st, and I have [12] asked [12] Mr. Bono to estimate how many [13] pages or boxes of [13] documents he [14] anticipates adding to his [14] production, [15] currently it's about one-third of a [15] box [16] which they produced, and he told me it [16] was [16] closer to one box than ten boxes [17] and was unable [17] to estimate beyond [18] that, and has represented [18] that a [19] substantial portion of these documents [19] are going to be foreign language [20] documents, so [20] if that, in fact, is the [21] case, we are going to [21] need more than [22] seven or ten days to figure out [22] what [23] we have to know if we have a dispute [23] about [23] what's in their production.

[24] They have the bulk of our

Page 17

[1] documents now and to the extent that [2] they think [2] there are deficiencies, [3] whatever additional [3] production we're [4] making would be very small, so [4] basically they have this whole time [5] period to [5] figure out if they have got [6] issues with things [6] that we produced as [7] foreign language documents, [7] but if [8] we're now in a situation where we're [8] only [8] going to have seven days to figure [9] out what's in [9] possibly up to ten boxes [10] of foreign language [10] documents, we'- [11] re probably not going to be able [11] to

identify disputes by the 28th.

[12] MR. BONO: Your Honor, my best [13] estimate at this point is we're talking [14] about a [14] box to a box-and-a-half, not [15] ten boxes.

[15] THE COURT: In Korean?

[16] MR. BONO: I would say probably [17] three quarters of a box to a box would be [18] in [18] Korean, yes. That's my best es- [19] timate at this [19] point.

[20] THE COURT: Three quarters of a [21] box ought to be able to be translated in a [22] week. [22] I have had cases where you [23] had German and [23] Japanese.

[24] MS. GABLER: Right.

Page 18

[1] THE COURT: Actually answering [2] documents and they were able to do it.

[3] MR. BONO: Just so we know, I'm [4] not going to hold off the rest of the [5] production [5] until the 21st, as soon as [6] documents —

[6] THE COURT: As soon as you have [7] them you are going to produce them, [8] you have a [8] drop dead date of the 21st.

[9] MR. BONO: I'm going to produce [10] some of these on a rolling basis as soon as [11] they're ready to be produced, so it [12] will be not [12] be at the 21st when you [13] get all these documents.

[13] MS. GABLER: Well, assuming that [14] that representation holds true and we [15] receive [15] the bulk of them or all of [16] them by the 15th, [16] we're obviously [17] much more likely by the 28th to [17] have [18] gotten them all translated and then [18] reviewed them to know if we have a [19] dispute.

[19] THE COURT: You have to hire more [20] people. I mean, I hate to say that, but if — [21] I [21] assume you're already set up for the [22] translation?

[23] MS. GABLER: Yes, we do have an [24] firm, an outside firm.

Page 19

[1] THE COURT: This is just great for [2] the economy.

[3] MS. GABLER: It is. Isn't it [4] fabulous?

[5] THE COURT: I feel like —

[6] MS. GABLER: All of us who didn't [7] learn our parents' native languages are [8] regretting it now.

[9] THE COURT: That's fantastic. I'm [10] trying to learn my thousand words in [11] Italian and [11] my mother and gran- [12] dmother spoke Italian in the [12] house [13] except when we were present. Isn't that [13] something? What were they think- [14] ing.

[14] But anyway, you're going to file [15] your deficiency letters against each [16] other on [16] the 28th and I'm going to see [17] you on the 1st of [17] March, which is a

Wednesday, at 12:30.

[18] Actually, you know what I'll do? [19] I'm in a trial, I'll make it for 12:30. There [20] might be some minor adjustment [21] based on the [21] nature of that trial, but [22] we'll schedule for [22] March the 1st at [23] 12:30 to get your answers on [23] your [23] disputes that will be filed by the close of [24] business on the 28th.

Page 20

[1] MS. GABLER: Your Honor, can we [2] ask for another question?

[3] THE COURT: Sure.

[4] MS. GABLER: There are some [5] third-party subpoenas that have been [6] issued and [6] those productions are [7] pending and for the ones [7] we issued, [8] we're pretty optimistic we are going [8] to get those documents in by the end of [9] February [9] and will produce them. Is [10] that February 21st [10] date going to be [11] considered the drop dead as [11] applied [11] to third parties, also?

[12] THE COURT: All the documents in [13] this case, all the documents in the [14] case are [14] going to be here by February [15] 21st or they're not [15] in the case.

[16] MS. GABLER: Okay.

[17] THE COURT: You know, as lawyers, [18] that whole third-party subpoena [19] thing is a real [19] problem for judges to [20] manage. So I have decided [20] over the [21] last year to just make it part of [21] document production. If you don't get it, [22] you [22] don't get it. Cases are finite pieces [23] of litigation for parties and they [24] ought to be [24] cutoff dates. I mean, I'm [24] sure if we allowed

Page 21

[1] discovery for ten years, there is [2] something out [2] there that we would be [2] able to find.

[3] MS. GABLER: No problem, I just [4] wanted to make sure that we were clear.

[5] THE COURT: We are all clear. Any [6] document that's in this case is the 21st.

[7] MS. GABLER: Okay.

[8] THE COURT: Nothing will be in [9] this case after that. So with all that notice [10] and warning and all the understanding [11] no matter [11] how prejudicial, how [12] beneficial, they just won't [12] be in the [13] case. Everybody should be fully [13] alert.

[14] Now, so when I looked at that, I [15] said if we don't have document pro- [16] duction, these [16] other matters, and a lot [17] of what was in issue [17] had to do with [18] that, the deposition matters I'm [18] just [19] not going to take up yet. I'm just not [19] going to address them because I'm not [20] through [20] the other part.

[21] There are the interrogatories and [22] answers issue. One of the disputes is are [23] interrogatories okay, I guess in the

Case 1:05-cv-00292-JJF    Document 119-2    Filed 02/21/2006    Page 5 of 14

Hearing                                                    LG Philips LCD Co., LTD    v.
February 8, 2006                                           Tatung Company, et al.

first [24] instance over a 30(b)(6) response. You know,

### Page 22

[1] again, in my world, yes, except if they're [2] inadequate.

[3] **MR. BONO:** Your Honor, let me [4] address that because that was a proposal made by [5] the defendants and as I indicated in the letter [6] to the Court, we would find that amenable and we [7] would agree because they have outlined certain [8] issues, they call contingent issues on the [9] issues of infringement, validity, [10] enforceability, prior art, the defendants have [11] taken the position that they believe they have [12] answered that by way of interrogatory and [13] therefore it should be off limits for 30(b)(6) [14] witnesses. I don't have a problem with that. [15] And we would agree to supplement our [16] interrogatory answers as long as the agreement [17] goes both ways.

[18] **THE COURT:** See, you have just hit [19] on it. That is the problem, they are able to [20] supplemented. If you cut off that — if you cut [21] off interrogatories and their answers from [22] exposure to deposition, then you are left with [23] the remedy of supplementation. [24] Now, if you both agree to that and

### Page 23

[1] you're never going to come back to me, I'll go [2] along with that, but again, in my view, my [3] world, I have to cut off the management problem [4] of supplements, case management problem of [5] supplements. But if you agree to it, that's [6] okay with me.

[7] **MS. GABLER:** Our problem now, Your [8] Honor, is that defendants have provided their [9] contingents and prior art references, et cetera, [10] and plaintiff has not, and has not identified [11] which claims are going to be in dispute, has not [12] identified anything about what their disputed [13] terms are, which claims they're asserting, which [14] they're not, they still have not identified any [15] products other than the two listed in the [16] complaint that they even are contending —

[17] **THE COURT:** But they're saying [18] they're willing to do that; right?

[19] **MR. BONO:** Your Honor, now counsel [20] has gone on to a related — it's a little [21] different. I guess the initial proposal by the [22] defendants was as far as presenting each side's [23] contentions and positions with respect to these, [24] the issues of infringement, enforceability,

### Page 24

[1] validity and prior art, they said we can't — [2] they have given us their

interrogatory answers [3] and they object to us taking 30(b)(6) witnesses [4] on those topics.

[5] And in order to try to cooperate [6] and move this case along, streamline [7] depositions, we are amenable to supplementing [8] our interrogatory answers because we had for the [9] most part objected to that, but we will give you [10] our positions and our contentions on those [11] topics like the defendants have done, we will do [12] it in interrogatory answers and then those [13] subjects will be off limits for 30(b)(6) [14] witnesses, because — and if that applies both [15] directions, we're happy to do that.

[16] **MS. GABLER:** I think as long as [17] we're talking about 30(b)(6) witnesses, yes, I [18] believe the parties are willing to do that, [19] although we are concerned about imposing a time [20] limit.

[21] **THE COURT:** Contention [22] interrogatories are party related, so obviously [23] they would be covered by 30(b)(6). Now, if [24] you're saying is we would like to ask individual

### Page 25

[1] witnesses about parties answers to contention [2] interrogatories, that's where you might have a [3] problem.

[4] **MR. BONO:** Yes, Your Honor.

[5] **THE COURT:** So you can't do that.

[6] **MS. GABLER:** I would say there is [7] a category of questions that depending on how [8] we're talking about contentions and prior art, [9] for example, the inventors are all witnesses on [10] their side.

[11] **THE COURT:** You don't ask them [12] about the interrogatory answer, you can ask them [13] about prior art.

[14] **MS. GABLER:** But things that might [15] be part of the content of the interrogatory [16] answer, we wouldn't be asking them as phrased, [17] but if there is prior art in there.

[18] **THE COURT:** If they give you [19] twenty pieces of prior art, you can ask them [20] about prior art, but you can't ask them about [21] the party's answer to the interrogatories and [22] that's what you understand and that's what [23] you're concerned about.

[24] **MR. BONO:** Exactly.

### Page 26

[1] **THE COURT:** I think you have it [2] right, plaintiff has it right, that if it's [3] interrogatories to a party for their [4] contentions, you get them, but you can't [5] examine an individual witness. And you have [6] given up [6] the one area you can do it in, the 30(b)(6) [7] area, because that's the party representative, [8] you have put that all over into interrogatories. [9] Now you'll have individual witnesses in and you [10] can ask them

questions about the subject matter, [11] but not about the specific interrogatory [12] responses.

[13] **MS. GABLER:** I don't think there [14] is any disagreement with that. There is one [15] other issue, though, with the interrogatories, [16] and that's in many of our interrogatories are [17] styled as what they knew at the time they filed [18] the complaint and, therefore, they have a Rule [19] 11 aspect to them.

[20] **THE COURT:** Is that still in [21] existence? There is a Rule 11? Come on.

[22] **MS. GABLER:** There is a Rule 11.

[23] **THE COURT:** Did you find that? [24] Who did that research? There is somebody that's

### Page 27

[1] awfully good at your firm.

[2] **MS. GABLER:** Yes, there you go.

[3] **THE COURT:** I have been here [4] twenty-one years. I don't remember a Rule 11. [5] I mean, people talked about it years ago. Have [6] you ever been in a case where it actually [7] happened?

[8] **MS. GABLER:** No, I have not.

[9] **THE COURT:** There you go. So [10] don't worry about those implications, just get [11] the information so we can get to the trial with [12] the jury. That's the fun of this profession. [13] Have you heard of one?

[14] **MR. LI:** Yes, we have a claim [15] regarding an exceptional case, but that's [16] exceptional cases.

[17] **THE COURT:** I have heard [18] exceptional cases, but the Third Circuit doesn't [19] really look at it like everybody else in the [20] world does, but Rule 11 implications, don't [21] worry about those, because that's amazing that [22] rule is still there. Do you remember when that [23] was the hottest thing in the legal community? [24] What was it, about a decade ago?

### Page 28

[1] **MR. BONO:** Two decades ago.

[2] **THE COURT:** That long ago? They [3] actually had us do reports on how many we did [4] and it got so embarrassing because there were [5] none to report that nobody knew what to do, so I [6] thought the rule went away, it floated off into [7] law school library lore or something. But [8] exceptional case, different story, facts on [9] that, that's the kind of information, but Rule [10] 11, don't be too concerned about that.

[11] The rule I found that's good is a [12] motion for a new trial in patent cases when you [13] don't pay attention to the orders of the Court [14] or you have a bad case to begin with and then [15] you try to play around with it at trial, give a [16] new

trial and assessing all the costs against [17] the losing party, that motion, that's a great [18] rule, very, very forceful.

[19] So you both understand what your [20] doing with that, and that's what you wanted to [21] get to, so you have a common understanding. [22] It's on the record, I understand it, everybody [23] here today understands it, and I think we can [24] move forward using interrogatory technique.

---

**Page 29**

[1] Depositions, I'm not going to [2] discuss that because I'm not ready to.

[3] MS. GABLER: Can we get a date on [4] the interrogatories?

[5] THE COURT: Well, I assume you [6] would need it before you started depositions, so [7] I would assume it's going to be sometime around [8] the 21st of February to the 28th.

[9] MR. BONO: The 28th would be fine, [10] Your Honor.

[11] THE COURT: 28th. Because you'll [12] need them to be able to conduct your [13] depositions, so we'll make February 28th the [14] drop dead date on interrogatories.

[15] I gave you a date to come here, [16] March 1st. You don't have to use that if you [17] can work things out.

[18] Privilege, in this document [19] production, you all know, Mr. Kirk and Mr. King [20] can help you if you don't, how we do our [21] privilege logs in this district. It requires [22] you to be detailed. It requires you to have an [23] efficient privilege log.

[24] I'm going to try to shortcut it

---

**Page 30**

[1] for you have so we don't have a lot of back and [2] forth between you. If there are questions where [3] you challenge the assertion of a privilege, what [4] I think would be helpful is if each side in the [5] privilege log categorizes the nature of the [6] privilege. So in other words, section one would [7] be attorney/client, section two would be work [8] product, you know, whatever you have.

[9] And then if there is a challenge, [10] how I'm going to resolve it is in the categories [11] of the privilege log, section one or part one, [12] part two, I'll allow the challenging side to [13] make a random selection of a percentage number [14] of documents that I'll review in camera rather [15] quickly and how that turns out will determine [16] how your privilege log — I mean how your [17] privilege assertion is going to fair in this [18] particular piece of litigation.

[19] So do your privilege logs [20] according to the detail we use here, except [21]

---

break them out in parts by the nature of the [22] privilege. If you have a dispute, all you have [23] to do, you know, I'm going to hear it in camera, [24] pick out what it is, the part that you think

---

**Page 31**

[1] that they have been insincere about and then all [2] I'll need to give you is the number of documents [3] that you're going to require them or I'm going [4] to require them to produce randomly so I can do [5] an in camera review.

[6] Are there any questions, Mr. Kirk [7] or Mr. King? Okay.

[8] And that will get us through I [9] think the bulk of what typically comes up in [10] document issue and get us ready for depositions [11] to start up in March.

[12] MS. GABLER: When do you want the [13] privilege log disputes flagged for Your Honor?

[14] THE COURT: That probably won't be [15] able to be done by March 1 unless you tell me [16] you can, because of translation and everything [17] else, so I would be okay with it if the [18] objections or the challenges to the logs were [19] here a week later, by March 8, because I expect [20] to get them done in a week or so for you.

[21] MS. GABLER: And the logs [22] themselves on the 21st?

[23] THE COURT: Yes. Does that work [24] for both of you?

---

**Page 32**

[1] MR. BONO: Can we have just a few [2] extra days after the production to have a log [3] done, do you have a problem with that, maybe the [4] 24th, something like that?

[5] THE COURT: Logs will be exchanged [6] on the 24th. And any challenges by the 8th of [7] March. And then local counsel will E-mail me [8] that you need — if there is a challenge you [9] need the number to be produced of random [10] documents and if necessary a date for a hearing, [11] but you just put that in the E-mail under the [12] discovery dispute procedure and we'll get you [13] in. That's all the things, items that I have [14] listed.

[15] MR. BONO: Your Honor, in light of [16] Your Honor's ruling, I guess on the specifics of [17] the document issue, I think it would be best for [18] the parties to discuss it over the next week, I [19] have some points, but I'll discuss it with [20] counsel and she'll be discussing things with me [21] as we work over the next ten days.

[22] I do have one other thing, Your [23] Honor, in terms of scheduling. This was Markman [24] hearing, we did reach an agreement leading up to

---

**Page 33**

[1] the hearing consistent with the Court's order [2] and I wanted to propose it to make sure Your [3] Honor was okay with it.

[4] Your Honor, and if I get the dates [5] wrong, let me know, Julie, but I think I have [6] it.

[7] MS. GABLER: Can I interrupt you [8] before you proceed with the dates?

[9] Given that we have now extended [10] out both interrogatory responses and document [11] requests, I think we would like to ask that we [12] move back the Markman date so that all of that [13] is done and those documents are available for [14] expert consideration before the Markman hearing.

[15] THE COURT: In this case, and I [16] don't have it with me, you have Markman, then [17] you have your expert reports due; right?

[18] MS. GABLER: Yes.

[19] MR. BONO: Yes, Your Honor.

[20] THE COURT: So go ahead. I know [21] what you're saying, an expert for the Markman [22] hearing.

[23] MS. GABLER: Well, right now under [24] the current schedule, the expert reports

---

**Page 34**

[1] actually trail the Markman hearing by about [2] three weeks in essence.

[3] THE COURT: My goal is to get you [4] to construction so your experts have it when [5] they do their opinions on the patent issues in [6] the case.

[7] MS. GABLER: Right. So that's the [8] right — we don't disagree with that order, but [9] the concern is that now that we've moved [10] document production and interrogatory dates [11] under the schedule that Mr. Bono would be [12] providing you in a moment, we would be having [13] opening briefs exchange before the date we just [14] agreed on for the privilege log and two days [15] after the drop dead date on the documents, and

[17] THE COURT: What was your hearing [18] date?

[19] MS. GABLER: March 6th, and you [20] have —

[21] THE COURT: I think I saw that [22] somewhere.

[23] MS. GABLER: And that all briefing [24] was done by March 1, so while we have a number

---

**Page 35**

[1] of dates in Mr. Bono's proposal about when we [2] were going to exchange disputed terms and [3] definitions and things like that, given that we [4] have

now moved these document interrogatory [5] dates by three weeks, I think that should be [6] accounted for in the Markman schedule, so those [7] are now pushed back so those items are done and [8] the interrogatory responses and the documents [9] have been produced before more than two days [10] before we're submitting opening briefs in [11] Markman.

[12] MR. BONO: Your Honor, I don't [13] have a disagreement with this, but obviously [14] it's the Court's schedule that is most [15] important.

[16] THE COURT: Here is what I'm going [17] to do. Except for — my concern is adult spring [18] break, and if any of you have children, [19] children's spring break. I think adult spring [20] break for me is March 9th, 10th, 11th, 12th, [21] 13th, 14th and 15th.

[22] MS. GABLER: For me it's the last [23] week of March.

[24] THE COURT: The last week of

---

Page 36

[1] March? So you have them committed [2] to memory.

[3] MR. BONO: Your Honor, I just have [3] the Friday the 24th and Monday the 27th, which I [4] have blocked out my related children's spring [5] break.

[6] THE COURT: Okay. There you go. [7] So it's important to know that.

[8] MR. BONO: I'm visiting my [9] daughter for parents weekend.

[10] THE COURT: So let's take out the [11] 9th, 10th, 11th, 13th, 14th, 15th of March, that [12] takes out the 24th, and then the week of the [13] 27th.

[14] MS. GABLER: It's actually —[15] let's see here. Yes, that's right. Yes.

[16] THE COURT: That would be the last [17] week of March would be the 27th.

[18] MS. GABLER: Yes.

[19] THE COURT: And you pick any dates [20] you want for the Markman and the only thing [21] you'll be subject to is the time. In other [22] words, it may be late in the date, or early in [23] the day, but you can pick the date you want.

[24] MR. BONO: Your Honor, just

---

Page 37

[1] looking at everybody's schedule, what about [2] Monday the 20th, which would be a two-week [3] extension, does that work?

[4] THE COURT: That's fine with me.

[5] MR. BONO: That's way before.

[6] MS. GABLER: Can I —

[7] MR. BONO: There is no secrets [8] here. You can see my calendar.

[9] THE COURT: Here you go, now you

---

[10] get all the trade secrets out. Does he have the [11] hours that he's billing daily?

[12] MS. GABLER: No.

[13] MR. BONO: I didn't give her that.

[14] THE COURT: Just wondering.

[15] MS. GABLER: What I would actually [16] like to do, I couldn't have the — we can [17] certainly commit to presenting a joint [18] submission by the end of the week to Your Honor [19] about a date.

[20] THE COURT: We'll pick the 20th, [21] just to have a date as we leave here today, and [22] we'll put it on for four o'clock and if it's [23] inconvenient for her, you can change it by [24] agreement.

---

Page 38

[1] MR. BONO: That would be fine.

[2] MS. GABLER: So 3/20, 4:00 p.m. [3] right now.

[4] MR. BONO: 4:00 p.m.

[5] THE COURT: 4:00 p.m. I'm in a [6] bench trial with Forest Lab.

[7] MR. BONO: Your Honor, could the [8] Court —

[9] THE COURT: Mr. Kirk, is that [10] trial going to settle? I don't think it can.

[11] MR. KIRK: If I had to bet, I [12] would say it won't.

[13] THE COURT: So four o'clock.

[14] MR. BONO: Your Honor, since we [15] haven't talked to Ms. Dudsik, were there a [16] couple of other dates that would work for Your [17] Honor?

[18] THE COURT: Other than the ones [19] I've excluded, pick whatever one you want.

[20] MR. BONO: So if she doesn't do it [21] the 20th, the 21st would be acceptable to the [22] Court?

[23] THE COURT: Yes.

[24] MR. BONO: Thank you, Your Honor.

---

Page 39

[1] THE COURT: We'll go away with the [2] 20th at four o'clock. If she can't do the 20th, [3] you pick another date. The only thing you're [4] subjected to is the time of the day.

[5] MS. GABLER: Right, which will be [6] late in the day.

[7] THE COURT: Right, because I have [8] a lot of trials coming up.

[9] MS. GABLER: Do we already have a [10] clear understanding of amount of time per side?

[11] THE COURT: No, because I haven't [12] read your briefs. Do you think I do that [13] arbitrarily? I'm not sure if that was an insult [14] or not.

[15] MS. GABLER: It was not intended [16] to be.

[17] THE COURT: I really do, I take a [18]

---

quick look at the briefs and I don't restrict [19] the parties. If you want to have an expert, I [20] let you have an expert, but I set times, that's [21] the only way I can control, but I have to read [22] the briefs to see what the issues are and then I [23] give you have your allocation and I give you [24] your time.

---

Page 40

[1] Some people argue and put the [2] papers in, some folks bring a witness, and I'll [3] leave that to you. But I'll do it probably —[4] see, I don't know what dates you're going to [5] have the briefs to me, but after I have a chance [6] to look at the briefs to see what you're [7] disputing and how detailed it is and what the — [8] I mean, this is — what is it, plasma screens?

[9] MR. BONO: Your Honor, it's LCD, [10] liquid crystal displays.

[11] THE COURT: So I'm pretty expert [12] in that.

[13] MR. BONO: I understand.

[14] THE COURT: I buy them.

[15] MR. BONO: That's right, we all [16] buy them.

[17] THE COURT: I love this war story. [18] When I was a very, very inexperienced judge, I [19] had a patent case with RCA about digital [20] generation on video screen and all these people [21] like the guy that started Data General, Dr. [22] Wang, came to testify, and I was new enough that [23] I didn't know what you weren't supposed to ask. [24] And with five children, we were buying our first

---

Page 41

[1] computer, so it was a bench trial so after [2] Dr. Wang testified since he appeared at the time [3] to be the most knowledgeable person about all [4] that stuff, I asked him, I said what computer [5] would you buy if you had five children. The [6] oldest was like in the fifth grade and, you [7] know, and he said, Judge, you have to have an [8] Apple 2E with the software and everything.

[9] So I went to the computer store, I [10] was the brightest store customer in the computer [11] store because they all wanted to help you back [12] in those days, this was like in '85 or '86, I [13] have pretty good authority what I'm buying here, [14] and you know what, that Apple 2E, my [15] grandchildren still are playing educational [16] software. It's that good. He's passed away, [17] Dr. Wang, but he obviously knew what was good [18] for that application. So as a customer [19] sometimes you can be pretty astute, I guess.

[20] Okay.

[21] MR. BONO: One other thing, the [22] scheduling on the Markman, assuming we do go on [23] the 20th, you had in your

---

LG Philips LCD Co., LTD　v.
Tatung Company, et al.

scheduling order, [24] originally you had the final briefing being

---

Page 42

[1] concluded on March 1st, which was the Wednesday [2] before the hearing on the 6th. Should we decide [3] that, or agree that March 15th, which is the [4] Wednesday before the Markman would be all [5] briefing would be concluded by that date.

[6] **THE COURT:** That's fine.

[7] **MR. BONO:** And if that's fine, [8] Your Honor, I would like to let the Court know [9] what we have agreed to. We will adjust the [10] dates accordingly because it's just a matter of [11] moving the dates back two weeks, but what the [12] parties have agreed to is we picked a date for [13] an exchange of terms that each side is proposing [14] would be subject to construction in the Markman [15] proceeding, then we have picked a subsequent [16] date in which each side was going to exchange [17] proposed definitions of the terms they're [18] proposing, and then a time for a meet and confer [19] to try to work, see if we can narrow the terms [20] and the definitions, and then an opening brief [21] that was about a week before the final brief in [22] the Court's order.

[23] And we've generally agreed with [24] that. And I just wanted to make sure that this

---

Page 43

[1] would be okay with the Court.

[2] **THE COURT:** Absolutely.

[3] **MR. BONO:** We are all geared up to [4] have all the briefing concluded and in accord [5] with the order.

[6] **THE COURT:** Absolutely.　[7]　Defendant, anything else?

[8] **MS. GABLER:** No, we agreed, it was [9] a negotiated schedule and that's an accurate [10] representation of how we have laid that out. So [11] once we get the — whether it's the 20th or a [12] different date, I don't anticipate we'll have [13] any problem reaching agreement on that adjusted [14] schedule.

[15] **THE COURT:** Okay. What I'll ask [16] you to do is somebody prepare an order, or do [17] you want me to just so order the transcript?

[18] You're going to get the [19] transcript. I'll just so order the transcript.

[20] **MR. BONO:** That would be [21] sufficient.

[22] **THE COURT:** I will send an order [23] that so orders the transcript that has the dates [24] and all other matters.

---

Page 44

Thank you
(Hearing concluded at 1:20 p.m.)

State of Delaware )
New Castle County )
　　　　CERTIFICATE OF REPORTER
　　I, Dale C Hawkins, Registered Merit Reporter and Notary Public, do hereby certify that the foregoing record, is a true and accurate transcript of my stenographic notes taken on February 8, 2006, in the above-captioned matter.
　　IN WITNESS WHEREOF, I have hereunto set my hand and seal this 9th day of February, 2006, at Wilmington.
　　　　Dale C Hawkins, RMR
　　　　Cert No 112-RPR

**Lawyer's Notes**

## 1

**1** 31:15; 34:24
**10th** 35:20; 36:11
**11** 26:19, 21, 22; 27:4, 20; 28:10
**11th** 35:20; 36:11
**12:30** 19:17, 19, 22
**12th** 35:20
**13th** 35:21; 36:11
**14th** 35:21; 36:11
**15** 8:6
**15th** 8:19; 9:8; 18:15; 35:21; 36:11; 42:3
**16th** 9:9
**17** 4:18, 20
**17th** 6:2, 10; 9:9; 13:14; 15:2
**18th** 9:9
**1st** 19:16, 22; 29:16; 42:1

## 2

**2006** 4:18
**20th** 9:9; 37:2, 20; 38:21; 39:2, 2; 41:23; 43:11
**21** 11:9; 12:6
**21st** 9:12, 20, 21; 10:2; 15:18; 16:11; 18:5, 8, 12; 20:9, 14; 21:6; 29:8; 31:22; 38:21
**22nd** 8:14
**24th** 32:4, 6; 36:3, 12
**27th** 36:3, 13, 17
**28** 11:9
**28th** 12:16; 13:4; 17:11; 18:16; 19:16, 24; 29:8, 9, 11, 13
**2E** 41:8, 14
**2nd** 10:11; 13:4

## 3

**3/20** 38:2
**30(b)(6** 10:23; 13:13; 21:24; 22:13; 24:3, 13, 17, 23; 26:6
**300** 8:12
**3rd** 5:12; 10:11; 13:18; 14:18

## 4

**4:00** 38:2, 4, 5

## 6

**6th** 34:19; 42:2

## 8

**8** 31:19
**85** 41:12
**86** 41:12
**8th** 10:22, 22; 32:6

## 9

**9th** 35:20; 36:11

## A

**able** 15:11; 17:10, 21; 18:2; 21:2; 22:19; 29:12; 31:15
**Absolutely** 43:2, 6
**acceptable** 7:11; 38:21
**accomplished** 5:10
**accord** 43:4
**according** 30:20
**accordingly** 42:10
**accounted** 35:6
**accurate** 43:9
**Actually** 9:2; 18:1; 19:18; 27:6; 28:5; 34:1; 36:14; 37:15
**adding** 16:13
**additional** 7:17, 18; 17:2
**address** 4:17; 6:1; 21:19; 22:4
**adjust** 42:9
**adjusted** 43:13
**adjustment** 19:20
**adult** 35:17, 19
**advanced** 4:2
**affect** 9:15; 11:12
**afternoon** 6:11:12
**afternoon** 12:1:12
**afternoon** 13:12
**afternoon** 18:12
**again** 22:1; 23:2
**against** 6:14; 19:15; 28:16
**ago** 27:5, 24; 28:1, 2
**agree** 10:15; 11:20; 12:15, 24; 13:1, 17; 14:14; 15:6; 22:7, 15, 24; 23:5; 42:3
**agreed** 13:11; 34:14; 42:9, 12, 23; 43:8
**agreement** 22:16; 32:24; 37:24; 43:13
**ahead** 13:1; 33:20
**Airport** 4:7
**Aldridge** 10:7
**alert** 21:13
**allocation** 39:23
**allow** 30:12
**allowed** 4:22; 20:24
**along** 23:2; 24:6

**although** 7:6; 24:19
**always** 8:12
**amazing** 4:13; 27:21
**amenable** 22:6; 24:7
**America** 11:3
**among** 10:14
**amount** 39:10
**announce** 39:10
**answered** 22:12
**anticipate** 7:17; 43:12
**anticipates** 16:13
**anymore** 4:23
**AOL** 4:10
**apologize** 4:1
**apologizes** 4:5
**appear** 7:4
**appearance** 4:4
**appeared** 41:2
**Apple** 41:8, 14
**application** 41:18
**applied** 20:11
**applies** 24:14
**appreciate** 6:22; 9:14; 13:6, 20
**April** 12:2; 13:3
**arbitrarily** 39:13
**area** 15:24; 26:6, 7
**argue** 40:1
**arguing** 13:24
**around** 11:1; 28:15; 29:7
**art** 22:10; 23:9; 24:1; 25:8, 13, 17, 19, 20
**aspect** 26:19
**asserting** 23:13
**assertion** 30:3, 17
**assessing** 28:16
**associates** 9:3
**assume** 18:21; 29:5, 7
**assuming** 18:13; 41:22
**astute** 41:19
**attempting** 11:22
**attention** 4:24; 28:13
**attorney/client** 30:7
**authority** 41:13
**available** 33:13
**away** 5:2; 28:6; 39:1; 41:16
**awfully** 27:1

## B

**back** 8:2; 9:23; 12:3, 9; 13:23; 14:7; 23:1; 30:1; 33:12; 35:7; 41:11; 42:11
**bad** 28:14
**bane** 9:4
**based** 19:20
**basically** 11:14; 17:4
**basis** 18:10
**Bayard** 78:10
**begin** 12:14; 14:14; 28:14

**beginning** 11:13
**behalf** 151:13
**bench** 4:23; 5:3; 38:6; 41:1
**beneficial** 21:11
**best** 17:12, 18; 32:17
**bet** 38:11
**beyond** 10:10; 11:23; 16:17
**bill** 9:11
**billing** 9:4; 37:11
**bit** 5:8; 8:2
**blocked** 36:4
**Bono** 116:4
**BONO** 6:18, 21; 8:7, 22; 9:13; 10:4, 12, 16, 18; 13:6, 10, 19, 22; 14:2, 4, 20, 23; 15:3; 16:8, 12; 17:12, 16; 18:3, 9; 22:3; 23:19; 25:4, 24; 28:1; 29:9; 32:1, 15; 33:19; 34:11; 35:12; 36:2, 8, 24; 37:5, 7, 13; 38:1, 4, 7, 14, 20, 24; 40:9, 13, 15; 41:21; 42:7; 43:3, 20
**Bono's** 35:1
**bootstrap** 10:7
**both** 8:17; 22:17, 24; 24:14; 28:19; 31:24; 33:10
**box** 16:15, 16; 17:14, 17, 17, 21
**box-and-a-half** 17:14
**boxes** 16:12, 16; 17:9, 14
**break** 30:21; 35:18, 19, 20; 36:5
**brief** 42:20, 21
**briefing** 34:23; 41:24; 42:5; 43:4
**briefs** 34:13; 35:10; 39:12, 18, 22; 40:5, 6
**brightest** 41:10
**bring** 14:7; 40:2
**brings** 5:5
**bulk** 16:24; 18:15; 31:9
**business** 19:24
**buy** 40:14, 16; 41:5
**buying** 40:24; 41:13

## C

**calendar** 4:21; 37:8
**call** 10:19; 22:8
**came** 40:22
**camera** 30:14, 23; 31:5
**can** 231:5
**can** 41:5
**can** 6:19; 7:19; 8:3, 23; 9:11; 11:2, 24; 12:15, 21, 23, 24; 14:9, 12; 15:5, 23; 20:1; 25:12, 19; 26:6, 10; 27:11; 28:23; 29:3, 17, 20; 31:4, 16; 32:1; 33:7; 36:23; 37:6, 8, 16, 23; 38:10; 39:21; 41:19; 42:19

**care** 11:19
**cargo** 4:11
**case** 6:10; 11:22; 15:22; 16:20; 20:13, 13, 15; 21:6, 9, 12; 23:4; 24:6; 27:6, 15; 28:8, 14; 33:15; 34:6; 40:19
**cases** 5:8; 8:12; 17:22; 20:22; 27:16, 18; 28:12
**cash** 9:7
**Cass** 11:7
**categories** 30:10
**categorizes** 30:5
**category** 25:7
**caused** 4:7
**certain** 14:13; 16:5; 22:7
**certainly** 37:17
**cetera** 23:9
**challenge** 30:3, 9; 32:8
**challenges** 31:18; 32:6
**challenging** 30:12
**chance** 40:5
**change** 37:23
**children** 35:18; 40:24; 41:5
**children's** 35:19; 36:4
**Christenson** 1136:4
**Christine** 206:4
**Christine** 4:5
**Circuit** 27:18
**claim** 27:14
**claims** 23:11, 13
**clarification** 16:3
**cleanse** 9:20
**clear** 11:19; 21:4, 5; 39:10
**close** 14:13; 19:23
**closer** 16:16
**comfortable** 8:18, 23
**coming** 9:7; 39:8
**commit** 37:17
**committed** 36:1
**common** 28:21
**community** 27:23
**companies** 11:4, 15
**Company** 815
**Company** 11:3
**complaint** 23:16; 26:18
**complete** 5:14; 7:7, 19; 8:3; 12:18; 13:12
**completed** 5:18; 7:2
**completion** 11:11
**complicated** 11:17
**computer** 41:1, 4, 9, 10
**concern** 5:5; 8:20; 16:10; 34:9; 35:17
**concerned** 24:19; 25:23; 28:10
**concluded** 42:1, 5; 43:4
**conduct** 29:12
**confer** 42:18
**conference** 10:19

Hearing
February 8, 2006

LG Philips LCD Co., LTD    v.
Tatung Company, et al.

consequences 8:17
consideration 33:14
considered 20:10
consistent 14:10, 12;
33:1
consistently 14:9
construction 34:4; 42:14
contending 23:16
content 25:15
Contention 24:21; 25:1
contentions 23:23;
24:10; 25:8; 26:4
contingent 22:8
contingents 23:9
continuing 16:11
control 39:21
cooperate 24:5
correctly 234:5
cost 6:12
costs 28:16
Counsel 15:12; 16:3;
23:19; 32:7, 20
couple 4:16; 10:23; 38:16
COURT 138:16
court 48:16
COURT 12:16
COURT 1816
COURT 216
COURT 4:9, 13; 5:14, 20,
24; 6:19; 7:5, 11; 8:5, 8, 9;
9:1, 14, 17; 10:9, 15, 17;
11:16; 12:9; 13:9, 12, 15,
21; 14:1, 3, 6, 22; 15:1, 5,
10, 17; 16:1; 17:15, 20;
18:1, 6, 19; 19:1, 5, 9;
20:3, 12, 17; 21:5, 8; 22:6,
18; 23:17; 24:21; 25:5, 11,
18; 26:1, 20, 23; 27:3, 9,
17; 28:2, 13; 29:5, 11;
31:14, 23; 32:5; 33:15, 20;
34:3, 17, 21; 35:16, 24;
36:6, 10, 16, 19; 37:4, 9,
14, 20; 38:5, 8, 9, 13, 18,
22, 23; 39:1, 7, 11, 17;
40:11, 14, 17; 42:6, 8;
43:1, 2, 6, 15, 22
Court's 13:7, 10; 33:1;
35:14; 42:22
covered 24:23
crystal 40:10
current 13:11; 33:24
currently 16:14
customer 41:10, 18
cut 22:20, 20; 23:3
cutoff 20:24

## D

daily 37:11
Data 40:21
date 4:19; 5:18; 6:2, 10,
11, 16; 8:5, 14, 15; 10:5;
12:20; 13:23; 15:17; 18:8;
20:10; 29:3, 14, 15; 32:10;

33:12; 34:13, 15, 18;
36:22, 23; 37:19, 21; 39:3;
42:5, 12, 16; 43:12
dates 10:21; 14:19; 15:9;
20:24; 33:4, 8; 34:10; 35:1,
5; 36:19; 38:16; 40:4;
42:10, 11; 43:23
daughter 36:9
day 36:23; 39:4, 6
days 4:3; 16:21; 17:8;
32:2, 21; 34:14; 35:9;
41:12
dead 6:9, 16; 8:15; 12:20;
18:8; 20:10; 29:14; 34:15
deadline 6:24
decade 27:24
decades 28:1
decide 42:2
decided 20:19
Defendant 43:7
defendants 153:7
defendants 17:7:2, 23;
9:16; 10:7; 22:5, 10; 23:8,
22; 24:11
deficiencies 10:3; 12:10;
15:21; 17:2
deficiency 19:15
deficient 7:4; 8:20; 11:18;
14:16
definitely 15:14
definitions 35:3; 42:17,
20
Delaware 15:19
delay 10:8; 12:17
depending 25:7
depose 12:3
deposition 10:13; 21:17;
22:22
depositions 6:8; 10:8;
11:8, 13, 20; 12:1, 14, 17,
22; 13:13, 13; 15:8, 16;
24:7; 29:1, 6, 13; 31:10
detail 30:20
detailed 29:22; 40:7
determine 16:4; 30:15
different 23:21; 28:8;
43:12
digital 40:19
directions 24:15
disagree 34:8
disagreement 26:14;
35:13
discovery 21:1; 32:12
discuss 29:2; 32:18, 19
discussing 32:20
discussions 7:14
displays 40:10
dispute 16:22; 18:18;
23:11; 30:22; 32:12
disputed 23:12; 35:2
disputes 12:21; 14:8;
17:11; 19:23; 21:22; 31:13
disputing 40:7
district 29:21

document 5:14; 6:5, 11,
13, 14; 7:2, 12, 20; 8:16;
11:11, 24; 12:18; 13:18;
15:15; 20:21; 21:6, 15;
29:18; 31:10; 32:17;
33:10; 34:10; 35:4
documents 7:13, 17, 18;
12:6, 20; 15:21; 16:4, 7,
13, 18, 19; 17:1, 6, 10;
18:2, 5, 12; 20:8, 12, 13;
30:14; 31:2; 32:10; 33:13;
34:15; 35:8
done 7:3; 24:11; 31:15,
20; 32:3; 33:13; 34:24;
35:7
double 9:11
down 5:11
Dr 40:21; 41:2, 17
drop 6:9, 15; 8:15; 12:20;
18:8; 20:10; 29:14; 34:15
Dudsac 2034:15
Dudsik 38:15
due 33:17
during 4:10; 11:9

## E

E-mail 32:7, 11
earlier 5:1
early 5:11; 36:22
economy 19:2
educational 41:15
efficient 29:23
either 7:8
else 13:17; 27:19; 31:17;
43:7
embarrassing 28:4
empathy 8:13
end 20:8; 37:18
endorsed 13:12
enforceability 22:10;
23:24
enough 40:22
essence 34:2
estimate 16:12, 17;
17:13, 18
et 23:9
even 14:11; 23:16
Everybody 21:12; 27:19;
28:22
everybody's 37:1
Exactly 5:24; 25:24
examine 26:4
example 25:9
except 19:12; 22:1;
30:20; 35:17
exceptional 27:15, 16,
18; 28:8
exchange 15:9; 34:13;
35:2; 42:13, 16
exchanged 10:13; 32:5
excluded 38:19
excuse 10:7

existence 9:5, 6; 26:21
expect 31:19
expeditious 12:9
expert 33:14, 17, 21, 24;
39:19, 20; 40:11
experts 34:4
exposure 22:22
extend 4:20
extended 33:9
extension 37:3
extent 17:1
extra 9:6, 14; 32:2

## F

fabulous 19:4
fact 10:23; 13:13; 16:20
facts 28:8
fair 14:10; 30:17
fairly 7:6
fantastic 19:9
far 23:22
February 5:12, 12; 8:6,
14, 19; 9:12, 19, 21; 10:2,
11; 11:9; 12:6; 13:4, 17;
14:18; 15:18; 20:8, 9, 14;
29:8, 13
federal 9:10
feel 8:12, 18, 22; 19:5
few 7:13; 32:1
fifth 41:6
figure 16:21; 17:5, 8
file 19:14
filed 19:23; 26:17
final 41:24; 42:21
find 6:9; 21:2; 22:6; 26:23
finds 6:13
fine 4:4; 12:16; 29:9; 37:4;
38:1; 42:6, 7
Finger 147
finishing 7:12
finite 20:22
fire 4:6, 11
Firm 711
firm 91
firm 16
firm 10:20; 18:24, 24;
27:1
first 4:18; 6:1; 21:23;
40:24
five 15:18; 40:24; 41:5
flag 15:23
flagged 31:13
floated 28:6
folks 40:2
following 7:10
forceful 28:18
foreign 16:7, 19; 17:6, 9
Forest 38:6
forth 9:23; 30:2
forward 15:13; 28:24

found 6:11, 14; 28:11
four 37:22; 38:13; 39:2
frame 5:10
Friday 5:19; 7:7, 17; 8:23;
9:2; 36:13
fully 21:12
fun 27:12
further 6:5; 12:11, 12

## G

Gabler 1612
GABLER 4:4, 12; 5:13,
17, 22; 15:7, 12, 23; 16:2,
9; 17:24; 18:13, 23; 19:3,
6; 20:1, 4, 16; 21:3, 7;
23:7; 24:16; 25:6, 14;
26:13, 22; 27:2, 8; 29:3;
31:12, 21; 33:7, 18, 23;
34:7, 19, 23; 35:22; 36:14,
18; 37:6, 12, 15; 38:2;
39:5, 9, 15; 43:8
Gaspare 1143:8
gave 29:15
geared 43:3
General 40:21
generally 42:23
generation 40:20
German 17:22
gets 13:3
given 24:2; 26:5; 33:9;
35:3
goal 34:3
goes 6:13; 22:17
Good 622:17
Good 22:17
Good 13:17
Good 1817
good 5:15; 27:1; 28:11;
41:13, 16, 17
grade 41:6
grandchildren 41:15
grandmother 19:11
great 9:7; 19:1; 28:17
guess 6:17; 8:4; 21:23;
23:21; 32:16; 41:19
guy 40:21

## H

happen 12:5
happened 12:4, 4; 27:7
happy 10:1, 5; 14:4;
24:15
hard 6:23
hate 14:10; 18:20
hear 6:17; 12:2; 30:23
heard 2130:23
heard 27:13, 17
hearing 32:10, 24; 33:1,
14, 22; 34:1, 17; 42:2
help 6:15; 29:20; 41:11

Case 1:05-cv-00292-JJF    Document 119-2    Filed 02/21/2006    Page 12 of 14

LG Philips LCD Co., LTD    v.                                    Hearing
Tatung Company, et al.                                  February 8, 2006

helpful 4:17; 30:4
helps 6:14
hire 18:19
hit 22:18
Hold 9:17; 15:8; 18:4
holds 18:14
holiday 9:10
Honor 7:10
Honor 1410
Honor 190
Honor 5:18; 6:18, 21;
7:10; 8:7; 9:13; 10:5, 12;
13:7, 19; 14:21; 15:7, 24;
17:12; 20:1; 22:3; 23:8, 19;
25:4; 29:10; 31:13; 32:15,
23; 33:3, 4, 19; 35:12;
36:2, 24; 37:18; 38:7, 14,
17, 24; 40:9; 42:8
Honor's 32:16
Hopefully 4:2; 6:8
hottest 27:23
hours 37:11
house 19:12
Howrey 169:12

**I**

identified 23:10, 12, 14
identify 17:11
implications 6:6; 27:10,
20
important 6:16; 35:15;
36:7
imposing 24:19
inadequate 22:2
inconvenient 37:23
indicated 22:5
individual 24:24; 26:5, 9
inexperienced 40:18
information 11:5, 7, 7;
27:11; 28:9
infringement 22:9; 23:24
initial 7:3; 23:21
insincere 31:1
installed 241:1
instance 21:24
insult 39:13
intellectual 11:17
intend 16:6
intended 39:15
interrogatories 21:21,
23; 22:21; 24:22; 25:2, 21;
26:3, 8, 15, 16; 29:4, 14
interrogatory 6:7; 22:12,
16; 24:2, 8, 12; 25:12, 15;
26:11; 28:24; 33:10;
34:10; 35:4, 8
interrupt 13:16; 33:7
into 10:7; 26:8; 28:6
inventors 25:9
issue 4:6; 15:4, 24; 21:16,
22; 26:15; 31:10; 32:17
issued 20:5, 7

issues 6:3, 4; 7:15, 23;
15:15; 17:5; 22:8, 8, 9;
23:24; 34:5; 39:22
Italian 19:10, 11
item 4:18
items 7:4; 32:13; 35:7

**J**

James 1635:7
Japanese 17:23
joint 37:17
judge 40:18; 41:7
judges 20:19
Julie 160:19
Julie 33:5
July 4:18, 20; 5:2; 6:2, 10
jury 5:3; 27:12

**K**

keep 14:6
kind 5:9; 11:17; 28:9
KING 1328:9
King 148:9
KING 19:9
King 4:14; 9:6; 29:19;
31:7
KIRK 631:7
Kirk 71:7
Kirk 29:19; 31:6; 38:9, 11
knew 26:17; 28:5; 41:17
knowledgeable 41:3
Korean 17:15, 18

**L**

Lab 38:6
laid 43:10
language 16:7, 19; 17:6,
9
languages 19:7
large 7:6
last 20:20; 35:22, 24;
36:16
late 36:22; 39:6
later 5:1; 31:19
law 28:7
lawyers 8:13; 20:17
Layton 1420:17
LCD 80:17
LCD 40:9
leading 32:24
learn 19:7, 10
leash 12:11
least 14:11
leave 37:21; 40:3
left 22:22
legal 27:23
less 11:23

letter 22:5
letters 4:16; 9:23; 19:15
LG 819:15
Li 179:15
Ll 27:14
library 28:7
life 8:10
light 32:15
likely 18:16
limit 24:20
Limited 84:20
limits 22:13; 24:13
liquid 40:10
listed 23:15; 32:14
litigation 20:23; 30:18
little 5:8; 8:2; 23:20
lives 11:23
local 32:7
log 29:23; 30:5, 11, 16;
31:13; 32:2; 34:14
logs 29:21; 30:19; 31:18,
21; 32:5
Long 1032:5
long 8:14; 11:20; 22:16;
24:16; 28:2
look 4:15, 21; 8:2; 27:19;
39:18; 40:6
looked 21:14
looking 37:1
looks 5:11
lore 28:7
lose 4:19
losing 28:17
lot 5:6; 6:12; 8:11; 21:16;
30:1; 39:8
love 40:17

**M**

making 11:16; 17:3
manage 11:22; 20:19
management 23:3, 4
managing 8:12
many 16:12; 26:16; 28:3
March 10:22, 22; 13:4,
14; 15:1; 19:17, 22; 29:16;
31:11, 15, 19; 32:7; 34:19,
24; 35:20, 23; 36:1, 11, 17;
42:1, 3
Markman 32:23; 33:12,
14, 16, 21; 34:1; 35:6, 11;
36:20; 41:22; 42:4, 14
Matt 1414
matter 5:4; 6:16; 21:10;
26:10; 42:10
matters 5:7; 21:16, 17;
43:24
may 6:7; 12:2; 15:1; 36:22
maybe 16:2; 32:3
McKenna 1032:3
mean 8:11; 13:15; 18:20;
20:24; 27:5; 30:16; 40:8

means 15:20
meet 5:21; 6:24, 24; 8:24;
42:18
memory 36:1
met 5:18
might 4:17; 19:20; 25:2,
14
minimal 11:5
minor 19:20
missed 5:11
modify 4:20
moment 34:12
Monday 7:19; 36:3; 37:2
money 6:12
more 8:22; 16:21; 18:16,
19; 35:9
morning 4:7
most 24:9; 35:14; 41:3
mother 19:11
motion 28:12, 17
move 24:6; 28:24; 33:12
moved 34:9; 35:4
moves 13:23
moving 15:13; 42:11
much 18:16
myself 11:18

**N**

narrow 42:19
native 19:7
nature 19:21; 30:5, 21
neat 9:23
necessary 32:10
need 6:17; 8:2; 16:21;
29:6, 12; 31:2; 32:8, 9
negotiated 43:9
new 28:12, 16; 40:22
news 4:10
next 7:20; 8:23; 9:1;
32:18, 21
nobody 28:5
noise 248:5
none 28:5
notes 4:16
notice 21:9
number 30:13; 31:2;
32:9; 34:24

**O**

o'clock 15:18; 37:22;
38:13; 39:2
object 24:3
objected 24:9
objections 31:18
objects 11:21
obviously 4:5; 18:16;
24:22; 35:13; 41:17
off 18:4; 22:13, 20, 21;
23:3; 24:13; 28:6

offered 10:21
oldest 41:6
once 6:15; 43:11
one 7:20; 15:23; 16:16;
21:22; 26:6, 14; 27:13;
30:6, 11, 11; 32:22; 38:19;
41:21
one-third 16:14
ones 20:6; 38:18
only 5:2; 11:6; 14:9, 12;
17:7; 36:20; 39:3, 21
opening 34:13; 35:10;
42:20
opinions 34:5
optimistic 20:7
order 12:19; 13:11; 24:5;
33:1; 34:8; 41:23; 42:22;
43:5, 16, 17, 19, 22
orders 28:13; 43:23
originally 41:24
ought 15:10; 17:21;
20:23
out 6:9; 7:15; 13:3, 3, 22;
14:5, 8, 24; 15:4; 16:21;
17:5, 8; 21:1; 29:17; 30:15,
21, 24; 33:10; 36:4, 10, 12;
37:10; 43:10
outlined 22:7
outside 18:24
over 228:24
over 20:20; 21:24; 26:8;
32:18, 21

**P**

p.m 38:2, 4, 5
pages 16:12
papers 40:2
parents 19:7; 36:9
part 20:20; 21:20; 24:9;
25:15; 30:11, 12, 24
partially 2324
particular 30:18
parties 10:14; 14:14;
20:11, 23; 24:18; 25:1;
32:18; 39:19; 42:12
partners 9:5
parts 30:21
party 6:13, 14, 15; 24:22;
26:3, 7; 28:17
party's 25:21
pass 4:19
passed 41:16
past 14:16, 18
patent 28:12; 34:5; 40:19
pay 4:24; 28:13
pending 20:6
people 18:20; 27:5; 40:1,
20
per 15:4; 39:10
percentage 30:13
period 17:4
person 11:18; 41:3

personally 14:16
perspective 14:13
pertain 6:7
Philadelphia 4:6
Philips 8:6
phrased 25:16
pick 10:5; 30:24; 36:19, 23; 37:20; 38:19; 39:3
picked 42:12, 15
picture 4:11
piece 30:18
pieces 20:22; 25:19
plaintiff 825:19
plaintiff 6:17; 23:10; 26:2
plane 4:11
plasma 40:8
play 28:15
playing 41:15
please 21:15
point 7:9; 16:2; 17:13, 19
points 32:19
portion 16:18
position 15:14; 22:11
positions 23:23; 24:10
possibly 17:9
prefer 15:8
prejudicial 21:11
prepare 43:16
prepared 7:16
present 19:12
presenting 23:22; 37:17
pretty 20:7; 40:11; 41:13, 19
prior 22:10; 23:9; 24:1; 25:8, 13, 17, 19, 20
Privilege 29:18, 21, 23; 30:3, 5, 6, 11, 16, 17, 19, 22; 31:13; 34:14
probably 17:10, 16; 31:14; 40:3
problem 5:23; 6:1; 9:18; 20:19; 21:3; 22:14, 19; 23:3, 4, 7; 25:3; 32:3; 43:13
problems 11:24; 12:10
procedure 32:12
proceed 15:15; 33:8
proceeding 42:15
process 7:12; 15:13
produce 7:16; 16:6; 18:7, 9; 20:9; 31:4
produced 6:12; 9:22; 12:7; 15:20; 16:6, 15; 17:6; 18:11; 32:9; 35:9
producing 7:18
product 11:6; 30:8
production 5:15, 19; 6:5; 7:3, 6, 20, 23; 8:4, 16, 21; 11:11, 24; 12:11, 13, 18; 13:18; 16:10, 14, 23; 17:3; 18:4; 20:21; 21:15; 29:19; 32:2; 34:10
productions 20:6

products 23:15
profession 27:12
proposal 22:4; 23:21; 35:1
proposals 10:13, 19
propose 7:10; 53:2
proposed 10:13, 21; 11:2, 8; 42:17
proposing 42:13, 18
provided 23:8
providing 34:12
pushed 13:2, 3; 35:7
put 12:10; 26:8; 32:11; 37:22; 40:1

Q

quarters 17:17, 20
quick 39:18
quickly 30:15

R

raise 7:5; 8:1
random 30:13; 32:9
randomly 31:4
rather 30:14
RCA 40:19
reach 32:24
reaching 43:13
read 39:12, 21
reading 4:9
ready 18:11; 29:2; 31:10
real 8:18; 20:18
really 4:1; 5:3; 6:9; 11:6, 12, 12; 14:2; 27:19; 39:17
receive 18:14
record 28:22
references 23:9
regarding 27:15
regretting 19:8
related 23:20; 24:22; 36:4
relevant 16:5
remaining 7:13
remedy 22:23
remember 27:4, 22
report 28:5
reporter 48:5
reports 28:3; 33:17, 24
representation 12:12; 18:14; 43:10
representative 26:7
represented 16:17
requests 33:11
require 31:3, 4
requires 29:21, 22
research 26:24
resolve 30:10
resolved 5:7; 6:6; 12:21; 15:15
respect 23:23

response 21:24
responses 26:12; 33:10; 35:8
rest 18:4
restrict 39:18
review 6:4; 7:3, 12; 30:14; 31:5
reviewed 18:18
Richard 78:18
Richards 14:18
right 118
right 4:11, 15; 5:20, 22; 8:8; 10:24; 15:22; 16:4; 17:24; 23:18; 26:2, 2; 33:17, 23; 34:7, 8; 36:15; 38:3; 39:5, 7; 40:15
rolling 18:10
Rule 26:18, 21, 22; 27:4, 20, 22; 28:6, 9, 11, 18
ruling 32:16

S

sales 11:7, 14
saw 34:21
saying 23:17; 24:24; 33:21
schedule 10:20; 15:8; 19:21; 33:24; 34:11; 35:6, 14; 37:1; 43:9, 14
scheduled 4:24; 6:8; 10:24
schedules 10:14
scheduling 11:12; 13:11; 32:23; 41:22, 23
school 28:7
screen 40:20
screens 40:8
se 15:4
seated 15:4
second 9:17
secrets 37:7, 10
section 30:6, 7, 11
selection 30:13
send 43:22
set 18:21; 39:20
settle 38:10
seven 16:21; 17:8
several 7:14
short 12:11
shortcut 29:24
shorten 4:20
showed 4:10
side 7:14; 14:24; 25:10; 30:4, 12; 39:10; 42:13, 16
side's 23:22
sides 8:17
significance 6:22
situation 13:23; 17:7
sixty 4:3
small 17:3
software 41:8, 16

soles 9:21
somebody 11:21; 12:3; 26:24; 43:16
sometime 29:7
sometimes 12:22; 41:19
somewhere 34:22
soon 18:5, 6, 10
specific 26:11
specifics 32:16
spoke 9:11
spring 35:17, 19, 19; 36:4
start 11:3, 8, 19; 12:16; 31:11
started 29:6; 40:21
starting 10:22
step 20:22
still 23:14; 26:20; 27:22; 41:15
stops 13:2
store 41:9, 10, 11
story 28:8; 40:17
streamline 24:6
stressful 8:10; 11:23; 13:9
stuff 41:4
styled 26:17
subject 26:10; 36:21; 42:14
subjected 39:4
subjects 24:13
submission 37:18
submitting 35:10
subpoena 20:18
subpoenas 20:5
subsequent 42:15
substantial 16:18
sufficient 43:21
suggesting 11:10
supplement 22:15
supplementation 22:23
supplemented 22:20
supplementing 24:7
supplements 23:4, 5
supposed 40:23
Sure 16:1; 20:3, 24; 21:4; 33:2; 39:13; 42:24

T

talk 9:16
talked 27:5; 38:15
talking 17:13; 24:17; 25:8
Tatung 11:3
technical 11:5
technique 28:24
technologically 4:2
ten 16:16, 21; 17:9, 14; 21:1; 32:21
tension 5:8
terms 23:13; 32:23; 35:2; 42:13, 17, 19

testified 41:2
testify 40:22
therefore 22:13; 26:18
thinking 19:13
third 20:11; 27:18
third-party 20:5, 18
though 26:15
thought 4:17; 28:6
thousand 19:10
three 17:17, 20; 34:2; 35:5
thrill 9:5
Thursday 9:9
times 39:20
timing 6:22
today 9:22
today 1522
today 7:20; 28:23; 37:21
told 8:13; 16:15
tomorrow 10:20
took 8:13
topics 24:4, 11
trade 37:10
trail 34:1
transcript 43:17, 19, 19, 23
translated 17:21; 18:17
translating 16:4
translation 6:3; 18:22; 31:16
trial 4:10, 19, 23; 5:2, 3, 3; 6:2; 19:19, 21; 27:11; 28:12, 15, 16; 38:6, 10; 41:1
trials 39:8
true 18:14
try 6:23; 14:24; 24:5; 28:15; 29:24; 42:19
trying 7:15; 14:6; 19:10
Tuesday 15:18
turns 30:15
twenty 25:19
twenty-one 27:4
two 23:15; 28:1; 30:7, 12; 34:14; 35:9; 42:11
two-week 37:2
type 5:8
typical 5:7
typically 12:13; 31:9

U

U.S 11:4, 14
ultimately 14:18
unable 4:8; 16:10
under 13:7, 10; 32:11; 33:23; 34:11
understands 9:6; 28:23
unfair 14:11
unfortunately 204:11
unless 14:14; 31:15

**up** 231:15
**up** 7:12; 10:20; 17:9;
18:21; 21:18; 26:5; 31:9,
11; 32:24; 39:8; 43:3
**UPS** 4:6
**use** 29:16; 30:20
**using** 28:24

## V

**validity** 22:9; 24:1
**video** 40:20
**view** 7:9; 8:10; 14:7; 23:2
**Viewsonic** 11:4
**visiting** 36:8

## W

**Wang** 40:22; 41:2, 17
**war** 40:17
**warning** 21:10
**Washington** 101:10
**way** 10:18; 11:21; 12:19;
14:9, 12; 22:12; 37:5;
39:21
**ways** 22:17
**Wednesday** 7:21; 8:24;
9:8; 19:17; 42:1, 4
**week** 7:20; 10:2; 12:16;
13:23; 17:21; 31:19, 20;
32:18; 35:23, 24; 36:12,
17; 37:18; 42:21
**weekend** 9:3; 36:9
**weeks** 11:9, 14; 34:2;
35:5; 42:11
**welcome** 4:14
**weren't** 40:23
**what's** 13:4; 16:23; 17:8
**white** 2417:8
**whole** 17:4; 20:18
**willing** 23:18; 24:18
**Wilmington** 15:19
**within** 10:2
**witness** 26:5; 40:2
**witnesses** 10:21, 23, 24;
22:14; 24:3, 14, 17; 25:1,
9; 26:9
**wondering** 37:14
**word** 14:10
**words** 9:20; 19:10; 30:6;
36:22
**work** 5:9; 7:15; 8:11;
13:22; 14:4, 8, 24; 29:17;
30:7; 31:23; 32:21; 37:3;
38:16; 42:19
**worked** 6:23
**working** 22:23
**working** 15:4
**works** 11:21
**world** 5:16; 11:21; 12:5,
5, 13; 14:19; 22:1; 23:3;
27:20

**worry** 27:10, 21
**write** 9:23
**wrong** 33:5

## Y

**year** 20:20
**years** 21:1; 27:4, 5
**yelling** 9:19