# EXHIBIT B

```
 1              IN THE UNITED STATES DISTRICT COURT

 2              IN AND FOR THE DISTRICT OF DELAWARE

 3                           - - -

 4   L.G. PHILIPS LCD CO., Ltd          :    CIVIL ACTION
                                        :
 5                                      :
              Plaintiff                 :
 6                                      :
          vs.                           :
 7                                      :
     TATUNG                             :
 8                                      :
              Defendant                 :    NO. 05-292 (JJF)
 9
                             - - -
10
                                    Wilmington, Delaware
11                                  December 8, 2005
                                    1:30 o'clock, p.m.
12                                  Scheduling Conference

13                           - - -

14   BEFORE:  HONORABLE JOSEPH J. FARNAN, JR., U.S.D.C.J.

15                           - - -

16   APPEARANCES:

17        THE BAYARD FIRM
          BY:  RICHARD D. KIRK ESQ. and
18             ASHLEY STITZER, ESQ.

19             -and-

20        McKENNA LONG & ALDRIDGE LLP
          BY:  GASPARE J. BONO, ESQ.,
21             MATTHEW T. BAILEY.
               (Washington, DC)
22
                    Counsel for Plaintiff
23

24                                  Leonard A. Dibbs
                                    Official Court Reporter
25
```

```
                                                              2
 1   APPEARANCES (Continued):
              RICHARDS, LAYTON & FINGER
 2         BY:   ROBERT W. WHETZEL, ESQ and
                 MATTHEW W. KING, ESQ
 3

 4                      and
         HOWREY LLP
 5       BY:   CHRISTINE A. DUDZIK, ESQ and
               GLENN W. RHODES, ESQ
 6             (Chicago, IL)

 7                  (Counsel for Defendants)

 8                P R O C E E D I N G S

 9         (Proceedings commenced at 1:34 p.m., and the
     following occurred.)
10

11

12              THE COURT:  All right.  Good afternoon.

13         Be seated, please.

14         We're here for the scheduling conference in the
15   case of 05-292, L.G. Philips vs. Tatung.

16         I received your proposed order.  If you want to
17   announce your appearances, let's do that now.

18         MR. KIRK:  Good afternoon, your Honor, Richard
19   Kirk from The Bayard Firm for the plaintiff.

20         With me is my colleague from The Bayard Firm,
21   Ashley Stitzer.  My colleague from the Washington law firm of
22   McKenna Long & Aldridge, Gaspare Bono, who will be our
23   spokesman today.

24         MR. WHETZEL:  For the defendants and with me
25   today is Matthew King of Richards, Layton & Finger.
```

1    With me also is trial counsel in the case,
2  Christine Dudzik, from the Howrey firm out of Chicago.
3    THE COURT: Good afternoon.
4    THE COURT: All right.
5    All the dates that you have suggested are fine
6  with me. We have the trial starting on July 17th.
7    I don't know if this was on when we talked last
8  time, but there's a bench trial that is on for a couple days
9  that week. I'll either move it or somehow accommodate it if
10 it doesn't resolve, then we can start on Monday the 17th.
11   The other important date is your Markman hearing
12 that you have scheduled for March 6th, 2006.
13   And then a little unrelated to that date is your
14 expert reports by March 31st, which means that there will be
15 the hearing and then a decision.
16   I guess once your experts get that instruction,
17 which I can get them within a week or so, that will be pretty
18 close to being able to comply with the March 31st date.
19   If it has to be extended by a few days, that's
20 okay, too.
21   When I looked at the order everything was fine.
22 The only thing that I was going to talk with you about of
23 adding from my perspective was the -- you have February 3rd,
24 I think. Where did I see that? I saw February 3rd
25 somewhere.

1    MR. BONO: Paragraph 3A, your Honor.
2    THE COURT: 3A.
3        You have -- Oh, there it is after your completion
4    of fact witnesses and document production, identification
5    of.
6        What I was going to suggest, although, I don't
7    think this is going to be necessary, but out of an abundance
8    of caution and rather than have you at least until that point
9    be concerned about a discovery dispute, just give you a
10   hearing, time and date.
11       Today is like the 8th. A month would be like
12   January 8th. If you are having trouble you'll be -- you'll
13   reconcilably be broken by that time and so maybe have you
14   come over, if you have a need to get some things resolved
15   sometime during the week of the 9th or 16th of January.
16       MS. DUDZIK: Fine, I like that.
17       That is a good idea, instead of waiting.
18       THE COURT: As you go along, fine.
19       If you are not going along, you'll know. You
20   won't have to file something and wait for time. It will all
21   come to a head in mid-January. It's always about documents
22   where you fight, not depositions.
23       What's good for you, the week of the 9th or week
24   of the 16th?
25       MR. BONO: The week of the 9th would work for

1  me.  The 16th, I have some problems.
2           I'm flexible the entire week of the 9th,
3  actually.
4           THE COURT:  So you want to come like a
5  Wednesday?  I know you're not from Wilmington.
6           Where do you come from?
7           MR. BONO:  I come up from Washington.
8           MS. DUDZIK: Chicago.
9           THE COURT:  You are the problem.
10          How about if we schedule it for 2:00 o'clock,
11 which allows you to fly in with all the problems having to
12 come from Chicago and still get out by eight or nine o'clock
13 at night?
14          MS. DUDZIK:  Yes.
15          THE COURT:  Washington, you can catch a ride with
16 the President.
17          Anybody coming up 95, you're in good shape.
18          I'll put it on for 2:00 o'clock, Wednesday, the
19 11th.
20          It would be helpful since I don't want to tie up
21 your associates on New Year's weekend, if they could prepare
22 something that you're disputing and get it here by close of
23 Monday the 9th.  That gives them that weekend after they
24 recuperate to work on that document and get it here by the
25 close of business on the 9th.

1  I'll read it and talk to you on the 11th to see
2  what your problems are.
3  Some disputes seem to keep coming up. In the
4  document production dispute, it's helpful in your request
5  that you make it real clear what issue you want the documents
6  for and why you think those documents pertain.
7  Okay.
8  I think that's all I saw.
9  Anything on behalf of plaintiff?
10  MR. BONO: I have one issue that may help cut
11  through the document production since we're on an expedited
12  schedule.
13  I haven't had a chance to talk to opposing
14  counsel about this. I apologize.
15  There is a case that your Honor I think is
16  familiar with in California. There's a dispute going on
17  between most if not all the same parties.
18  There has been a lot of discovery produced in
19  that case. There's a Protective Order entered in that case,
20  which means documents exchanged between the parties can only
21  be used in that case.
22  Everybody, I thought -- it might be a good idea
23  if we could have a provision that says the documents -- many
24  of them will be the documents that are relevant in this case,
25  involve the same products and some of the same issues, some

1  of the sales information is the same, is that we just have a
2  stipulation that permits the discovery that has been produced
3  in that case to be shared in this case.
4          I'm not suggesting that anybody waive any rights
5  to relevancy or not. That is something down the road.
6          I don't want to restart the wheel at the
7  beginning in terms of discovery. I know much of what their
8  is would be helpful in this case. It's already been produced
9  by both sides.
10         That case is heading for trial at the end of
11 February of next year. I've done this in other cases where
12 you have similar cases.
13         THE COURT: That case is going to trial February,
14 2006.
15         MR. BONO: February 28th in California.
16         As I understand it in that case, the discovery is
17 basically completed.
18         I just want -- I'm suggesting that we provide
19 that the discovery in that case be shared in this case and
20 governed by a similar Protective Order in this case, of
21 course.
22         There won't be any loss of protection, any
23 confidentiality, just the use of that information.
24         MS. DUDZIK: In principle, I don't dispute that
25 at all. We can work on that.

1              The only issue I have is the documents that we're
2    going to be needing from the plaintiffs will require document
3    production.  I don't believe some of the documents that we
4    will want to request are not going to be in that production.
5    We can share whatever we can.
6              MR. BONO:  I wasn't suggesting that there be any
7    limitation.
8              Both sides need, in this case, additional
9    documents.
10             I certainly think there are a good number of
11   documents and discovery in that case that can be carried over
12   into this case without having to reinvent the wheel.
13             THE COURT:  With that understanding, it doesn't
14   restrict in any way discovery requests in this case.
15             You'll enter into a stipulation that anything
16   discovered in the California case is considered discovered
17   here pursuant to the same Protective Order.
18             MS. DUDZIK:  We'll work that out, your Honor.
19             THE COURT:  That will hopefully cut it down.
20             MS. DUDZIK:  There was another issue that we
21   haven't talked to counsel yet.
22             If we could -- both of the parties could talk
23   about narrowing our requests for documents.
24             Originally, your Honor had mentioned talking
25   about representative products and representative patent

1  claims.
2           THE COURT: We're definitely doing that in this
3  case.
4           I thought I made that real clear to both sides.
5           If you can agree, good. If you can't, then I
6  will impose the limits. It's probably better if you can
7  agree.
8           MS. DUDZIK: Especially with the products.
9           We can talk and maybe we'll be in a position by
10 what was the next meeting in front of your Honor?
11          THE COURT: January 11th.
12          MR. BONO: I've been working on that. I'm not
13 able to limit the claims today or address particular
14 products.
15          I understand your Honor's suggestion. I've been
16 giving that a substantial amount of thought. I'm not in a
17 position to make yet a definitive proposal.
18          THE COURT: That's good.
19          Work on it and get that on over. That will
20 direct any knew discovery requests that get contested.
21          I'll need to have that by the time that I have to
22 schedule a discovery dispute conference.
23          We're going to have representative claims and
24 products.
25          Anything else on behalf of the plaintiffs?

1     MR. BONO: The only other issue, your Honor, we
2  haven't addressed, is whether the trial is going to be a jury
3  or nonjury trial.
4     I understand the Court would have greater
5  flexibility if it was a nonjury trial?
6     I suspect the number of trial days needed would
7  be somewhat less if it was nonjury.
8     I haven't had the opportunity to discuss this
9  issue.
10    I think your Honor raised it the last time that
11 we were in front of the Court, that that is something the
12 parties ought to focus on.
13    Perhaps counsel should see if they agree on it
14 one way or the other. If either party demands a jury trial,
15 that doesn't matter.
16    THE COURT: I wish I remember what I said.
17    What I was thinking was that I didn't want you to
18 feel that the only way you could get this quick trial date
19 was if you waived your jury trial right.
20    I wanted you to feel comfortable that would be
21 preserved.
22    Remember, I have in my opening letter on cases,
23 if you want to get out of here in nine months or something,
24 and you're willing to waive a jury, we can work faster with
25 you and get that done.

```
                                                              11

 1              In some cases they lend themselves to getting to
 2    the Federal Circuit, particularly, more quickly.  That's
 3    really where they want to be, whatever the issue in the
 4    cases.
 5              I'll leave that to you.  I'm okay either way.
 6              I get a lot of rest during jury trials.
 7              It's like sustained, overruled.  I don't want you
 8    to feel compelled one way or another.  I want you to do what
 9    your client thinks and you think is in their best interests.
10              I don't really understand the dispute.  It's kind
11    of interesting to me that you have these different disputes.
12              It's like sometimes you'll learn later that
13    somebody was trying to buy the other company.  Sometimes
14    you'll learn it's about the market and nothing to do with the
15    patents.
16              I don't understand what you're fighting about.  I
17    hope it has to do with the claims in the patent.  That's what
18    I'll be presiding over mostly.
19              The other side of that is you shouldn't be
20    ashamed to tell me what the real fight is and then suggest
21    things that might help you get closer to having it out or
22    resolved, depending on what I can do for you procedurally.
23              I offer you that broad opportunity to take up
24    what you want.
25              You're thinking now though about a jury trial,
```

1  right?
2           MR. BONO: Yes, your Honor.
3           I've also be thinking about the possibility of a
4  nonjury trial.
5           That's why I raised the issue. You had raised
6  that subject last time around.
7           THE COURT: Sure.
8           The defendant is thinking about a jury trial.
9           MS. DUDZIK: Right.
10          THE COURT: You want confusion, I understand.
11 It's okay to say it.
12          You would be surprised, I'm sometimes much more
13 confused. You can really screw up my records and get
14 yourself to the Court of Appeals.
15          I'm really open to whatever you want to do.
16          What I want to do is make sure that I've offered
17 you this and you accepted it.
18          We're going to trial in July. That's the one
19 thing that is going to happen here. Whatever we've got to
20 do, we'll do.
21          I don't want to mislead you in any way. Nothing
22 is going to stop that from happening.
23          How about defendants?
24          MS. DUDZIK: There is one issue that I raised
25 earlier with counsel that I just want to bring the Court's

13

1  attention.
2           We are still interested in streamlining this
3  case. One of the ways we were contemplating was to
4  potentially file an early Summary Judgement Motion on the
5  on-sale bar.
6           We could do that and get a ruling quickly on
7  that. We may be able to dispose of one of the patents in the
8  case.
9           That was our thought that potentially by the end
10 of January or so to have a Summary Judgement Motion ready to
11 go on that and inform the Court that we would like to be able
12 to present it early on, to see if that would work.
13          THE COURT: Are the facts undisputed?
14          MS. DUDZIK: I think they will be when we get
15 them together. We'll know -- if there is going to be a big
16 dispute on it, we won't file a Summary Judgement Motion that
17 we don't think we're going to win. Let's put it that way.
18          From what I've seen so far they are looking
19 pretty promising for us. I want to alert the Court that that
20 is something that we are contemplating. It's a way of
21 streamlining the case.
22          THE COURT: And I have a high regard for true
23 Summary Judgement Motions and have actually been able to
24 dispose of them expeditiously.
25          As experienced practioners though, 98 percent are

1  junk.  They are used to educate the Court, narrow the issues
2  and all sorts of other things.
3             As a practioner from the bench, I give them very
4  little deference unless the parties say, Judge, there are
5  really no facts in dispute.  It will resolve a patent or
6  whatever.  If you tell me that's all in play, I'll bring you
7  in and we can get it out very quickly.
8             It's the ones that don't have those kinds of
9  predicates that can take forever.  If you want to present a
10 true, crisp legal issue only, I'll look at it.
11            MS. DUDZIK:  I think that would be the case.
12            It's an actual sale with a invoice, product and
13 it could be very clean.
14            THE COURT:  She's only playing with you, scare
15 you up a little bit.  They don't have the invoice yet.  They
16 are hoping to get one.
17            You wouldn't bring it unless you had that.
18            MS. DUDZIK:  Exactly.
19            Maybe we could talk about it further on the 9th
20 as to where we are on that.
21            THE COURT:  I'll be there when you tell me that's
22 what you have.  I'll be happy to get you a schedule that will
23 deal with it crisply, if it's crisply presented.
24            One of my areas of expertise is actually on-sale
25 bar.  You have researched that and brought it up.

1       My very first patent case was a case that had
2  been handled by every judge in the district.  The patent had
3  been found to have been infringed.  It was the Cole patent
4  for digital generation.  It had been held invalid on
5  anticipation grounds and then reversed and then brought
6  back.
7       I became a new judge.  I became a judge.  When I
8  became a judge, the case drops from Judge Stapleton to me.
9  And the only thing left -- I'm saying this facetiously,
10 pretty close to nothing facetiously was an on-sale bar to the
11 government.  They decided that since I was new that they
12 would confuse me.
13      It was just when jury trials were starting.  They
14 tried it from the bench.
15      When you've had any patent that has been upheld
16 that many times and held infringed that many times, they
17 start telling me on-sale bar which had never been heard of.
18      Because I had never done any patent law and how
19 you get -- they tried to sell it to the military.  I was so
20 new that I decided that it probably was and found on-sale
21 bar.  There was alleged attorney misconduct in which I didn't
22 find.
23      I always thought that.  The point of the whole
24 story is that's a hard thing to prove unless you've got the
25 invoice and delivery, otherwise it's always some other

1  explanation.
2          With that little bit of background and letting
3  you know that I'm an expert.  I'll be anxious to see the
4  motion.  RCA versus Data General is my on-sale bar case.
5          MR. BONO:  I feel compelled.  I don't think it's
6  a legal issue.
7          An on-sale bar defense is highly factual.
8          THE COURT:  That's what -- didn't I just tell her
9  that?
10         MR. BONO:  I feel compelled.
11         THE COURT:  I was trying to be very direct.  If
12 you have all that, it is factual.  That's why I'm an expert.
13 I understand all that.
14         Actually, the best parts of that case, and I hate
15 to tell stories.  This is so good though.
16         I was so new in '85 or '86.
17         '85, it happened in my first year.  It was the
18 first or second patent case.  All these people came to
19 testify.  The guy that started Data General.  Doctor Wang,
20 the guy from Wang computers.  He testified.
21         I was so inexperienced, and we had just had our
22 fifth child.  My wife had decided that it would be a great
23 thing, computers were just coming out and to get him a
24 computer.  Nobody knew what to buy.  PC's were just coming
25 out.  And so after he got done testifying, I said, Doctor

1  Wang, I have a question, but nothing to do with the case.  If
2  you had five children, what computer would you buy.  He said
3  what are their ages, Judge.
4         One computer, Apple 2E, all the educational
5  stuff.  It was a great piece of advise.  I went down to the
6  computer store on Kirkwood Highway.  I lived there at the
7  time.  When I walked in those days everybody wanted to sell
8  you a computer.  I have it on pretty good information that I
9  need to buy an Apple 2E here.
10        It was a real interesting case.
11        All those people that had been in the early
12 computer stuff had come to testify.  That means when he first
13 decided that this wasn't going to be a bad judgeship.  I
14 learned -- I had a guy who invented -- kind of invented the
15 laser on a CD.  It was the Time Warner case.  He came to
16 testify.  He sold all his rights, eighty or ninety, something
17 very small.
18        He came to testify.  He said I'm a man of
19 science.  He wanted to show records better.  It used the
20 bottom beam.  He put the laser on the disk spinning.  When
21 you heard him talking about it, it was fascinating.
22        I mean, if you have something good like that,
23 fine, otherwise, I sleep for the weekend.
24        Okay.
25        The serious thing is you did a lot of good work.

```
                                                              18
1   We have a nice discovery dispute date in place.
2              You have discovery from the other cases?
3              Is there anything else that we should talk
4   about?
5              MR. BONO:  Nothing from us.
6              MS. DUDZIK:  We're okay.
7              THE COURT:  Okay.
8              We'll see you then the next time, which will be
9   in January.
10             We'll be on our way.
11             Court stands in recess.
12             (Proceedings concluded at 2:12 o'clock p.m.)
13
14
15
16
17
18
19
20
21
22
23
24
25
```