# THE BAYARD FIRM
## ATTORNEYS

222 DELAWARE AVENUE, SUITE 900
P.O. BOX 25130
WILMINGTON, DE 19899
ZIP CODE FOR DELIVERIES: 19801

MERITAS LAW FIRMS WORLDWIDE
www.bayardfirm.com
302-655-5000
(FAX) 302-658-6395
WRITER'S DIRECT ACCESS

(302) 429-4208
rkirk@bayardfirm.com

FILED ELECTRONICALLY

February 28, 2006

The Honorable Joseph J. Farnan, Jr.
United States District Court
844 North King Street
Wilmington, DE 19801

      RE:    *LG.Philips LCD Co., Ltd. v. Tatung Company of America, c et al.*
              C.A. No. 05-292-JJF

Dear Judge Farnan:

      On behalf of plaintiff LG.Philips LCD Co., Ltd. ("LPL") I respectfully submit this letter in advance of tomorrow's hearing to update the Court on developments in this case since the most recent discovery hearing on February 8, and to identify certain deficiencies in the document production by Defendants[1] for which LPL seeks the Court's assistance.

**Progress of the Case Since the February 8 Discovery Hearing**

      During the February 8 hearing, the Court made absolutely clear that February 21 was the firm deadline for document production. Further, the Court emphasized that the February 21 deadline applied to both party and third-party documents. *See* Tr. of Feb. 8, 2006 Hearing at 20-21 (Ex. A). As the Court expressly stated, "all the documents in the case are going to be [produced] by February 21st or they're not in the case." *Id.* at 20. The Court recently denied Defendants' request to extend third-party document discovery. *See* Feb. 24, 2006 Letter from the Court to Richard Kirk and Robert Whetzel at 1 (Ex. B).

---

[1] "Defendants" in this case are Tatung Company ("Tatung"), Tatung Company of America, Inc. ("Tatung America"), Chunghwa Picture Tubes, Ltd. ("CPT"), and ViewSonic Corporation ("ViewSonic"). The two "Patents-in-Suit," U.S. Patent No. 6,738,121 ("the '121 Patent") and U.S. Patent No. 5,019,002 ("the '002 Patent"), relate to the design and manufacture of liquid crystal display ("LCD") modules. Specifically, the '121 Patent relates to a Tape Carrier Package ("TCP"), and the '002 Patent relates to electrostatic discharge ("ESD") guard rings.

THE BAYARD FIRM

The Honorable Joseph J. Farnan, Jr.
February 28, 2006
Page 2

Accordingly, between February 15 and 21, LPL produced more than thirty boxes of documents to Defendants on a rolling basis.[2] LPL's document production was comprehensive and included LPL's responsive documents. LPL has logged only thirty-five (35) privileged documents.[3]

At the February 8 hearing, Defendants represented to the Court that they had already "completed [their] production on Friday [February 3]." Ex. A at 5. After the February 8 hearing, however, Defendants produced additional documents, including, for example, three boxes of documents that arrived on February 21. Indeed, despite Defendants' representation that their document production was complete, Defendants have continued to produce documents and issue subpoenas up to and beyond the Court's February 21 deadline. LPL has objected to Defendants' untimely discovery efforts and requests that the Court quash the outstanding subpoenas. In addition, LPL requests that the Court order Defendants to produce the outstanding discovery discussed below.

**Deficiencies in Defendants' Production of Documents and Things**

As stated in LPL's February 7, 2006 letter to the Court (Ex. C), LPL needs critical discovery which still has not been produced, including, as discussed below, the following:

- physical product samples to assess which products may be representative;

- a list, in English, of which LCD modules and products use which types of TCPs;

- a list, in English, of which LCD modules and products are manufactured using ESD guard rings;

- product information, including, for example, information on the manufacturing process relating to the motherglass used to make LCD panels;

- discovery related to products and technical issues; and

- discovery related to damages issues.

---

[2] In connection with related litigation in California involving LPL and Defendants (the "California case"), LPL and Defendants agreed to a stipulation and protective order allowing documents and things produced in the California case to be used in this litigation.

[3] The parties agreed not to include on their privilege logs litigation-related documents.

608796v1

THE BAYARD FIRM

The Honorable Joseph J. Farnan, Jr.
February 28, 2006
Page 3

1.  **<u>Defendants Have Not Produced Motherglass and Product Samples</u>**

For months, LPL has requested production of certain product samples, including motherglass and modules. *See, e.g.*, Defendant CPT's Responses to Plaintiff's First Set of Requests for Production of Documents and Things at Request & Response Nos. 2-3, 8-9, 12-13, 19 (Ex. D). In general terms, the motherglass is a large panel used during the manufacturing process from which individual LCD panels are created. More specifically, the motherglass is used to construct multiple individual LCD panels or modules, which eventually are cut out of the motherglass. When intact, the motherglass will include ESD guard rings and other structures or components that are critical to show that CPT's manufacturing methods infringe the '002 Patent. Thus, the motherglass is essential because it conveys, in a single three-dimensional object, every structure present on both sides of an LCD panel.

Repeatedly, LPL's counsel has discussed these requests for motherglass samples with Defendants' counsel, and LPL's counsel previously brought these requests to the Court's attention prior the February 8 hearing. *See* Ex. C at 3. After the February 8 hearing, LPL again contacted Defendants' counsel regarding production of these items.[4] Defendants did not object to producing motherglass samples to LPL's counsel or to the Court until February 20, the day before the document discovery deadline. Defendants now argue, for the first time, that LPL has not "propounded a document request that describes the mother glass samples 'with reasonable particularity.'"[5] Feb. 24, 2006 Letter from James Li to Michael Angert at 2 (Ex. E). Equally surprising, Defendants now contend, after multiple discussions and correspondence, that LPL's requests were too "informal;" that "legally speaking LPL has never even propounded a request for mother glass samples;" and that shipping the samples is too difficult. *Id.* This change in position

---

[4] LPL requested motherglass discovery and samples in LPL's Document Requests served in December; during subsequent meet and confer teleconferences; in LPL's February 7 letter to the Court; in Mr. Christenson's February 14 letter to Ms. Gabler; and in Mr. Angert's communications with Mr. Li prior to the February 21 deadline for production of documents and things.

[5] Yet, the definitions that correspond to LPL's document requests clearly state that "[t]he term document also refers to any tangible object ... and includes objects of every kind and nature such as, but not limited to, prototypes, models, and specimens." Thus, several document requests, individually and collectively, encompass the motherglass samples. *See, e.g.*, Ex. D at Nos. 2-3, 8-9, 12-13, 19. Moreover, Request No. 2 specifically seeks "[o]ne sample of each type of LCD display panel made or sold by or for you since May 13, 1999," and LPL has defined "LCD display panel" as "two substrates with liquid crystal material between the substrates." As LPL's counsel explained to Defendants' counsel, a motherglass panel, which comprises two separate substrates with liquid crystal between them, fits LPL's definition of an LCD display panel. Although LPL's counsel expressed their willingness for Defendants to ship one sample *each* of the TFT and C/F sides of a motherglass panel, Defendants' counsel apparently misinterpreted this to mean that LPL's definition of motherglass entails only one substrate, either a TFT substrate or a C/F substrate. That is incorrect, and the excerpt of LPL's request upon which Defendants rely – in which LPL seeks "one sample each of the TFT and C/F sides of *a* mother glass" – confirms this. Ex. E at 1 (emphasis added). LPL has repeatedly referred to a motherglass as having two substrates, consistent with LPL's definition of an LCD display panel.

THE BAYARD FIRM

The Honorable Joseph J. Farnan, Jr.
February 28, 2006
Page 4

is troubling given that LPL has produced documents in response to so-called "informal" requests from Defendants' counsel, and has produced an appendix and copies of relevant documents from the California case, all for the convenience of Defendants' counsel.[6]

On February 21, LPL finally received some modules (for which LPL would be billed), but learned that five (5) additional product samples would be made "available for [LPL's] inspection at Howrey, LLP in Chicago," and another fourteen (14) modules would not be produced at all in this case. CPT refuses to produce these modules, even at LPL's expense, because they purportedly "were previously produced" to another law firm in the California case. After LPL reiterated its request for the nineteen (19) items that Defendants did not produce, Defendants' counsel indicated that the withheld items either constituted the only samples available for a given product or had been produced in the California case and, in any event, none of the nineteen (19) items would be produced here. Although the parties agreed to use discovery from the California case here, one set of product samples cannot be used in both cases. The samples in California were, or will be, tested or reverse engineered in a way that renders them unusable in this case. Additionally, this case involves distinct infringement issues and requires separate testing and analysis of samples.

Defendants' refusal to produce motherglass and module samples leaves LPL without critical evidence. LPL needs this discovery to identify representative products and claims for trial, and to complete LPL's infringement analysis. Thus, LPL respectfully requests that Defendants be ordered to produce to LPL's counsel in Washington, D.C.:

    (i)    motherglass samples for each of CPT's LCD products; and

    (ii)    the nineteen (19) product samples that have been withheld (and, to the extent that only one sample of any product exists, Defendants should produce such sample for inspection at the offices of Delaware counsel).

### 2. Defendants Have Not Produced Critical Discovery Related to Products and Technical Issues

After the February 8 hearing, at Defendants' request, LPL sent Defendants a letter reiterating LPL's need for additional discovery. This discovery includes:

- an index for the mask works files related to ESD rings that have been produced, indicating which file(s) relate(s) to which product(s);

---

[6] Further, sophisticated technology companies, like Defendants, routinely ship these types of items and take appropriate precautions when doing so.

608796v1

THE BAYARD FIRM

The Honorable Joseph J. Farnan, Jr.
February 28, 2006
Page 5

- identification of each layer of mask works so that we can determine which file goes with each layer and what each layer represents;
- documents detailing the steps of production for motherglass sheets;
- documents concerning scribing, cutting, or marking of substrates;
- detailed mechanical drawings of the motherglass;
- documents sufficient to determine the placement of inner and outer guard rings and the cutting of outer guard rings from the motherglass;
- documents related to assembly specifications of LCD display modules;
- mechanical drawings for various layers of any TCP;
- documents sufficient to determine the cutting procedures and specifications for cutting individual panels from a mother panel;
- operational specifications regarding cutting and processing of the motherglass[7]; and
- documents and specifications related to TCPs.

See Feb. 14, 2006 Letter from Cass Christenson to Julie Gabler at 1-2 (Ex. F).[8]

This discovery is critical to LPL's ability to determine representative products and claims, as well as its ability to fully understand the extent and specific manner in which Defendants' products infringe the Patents-in-Suit (which relate to TCPs and ESD guard rings). Defendants have produced electronic mask files, and some other technical documents which they contend are sufficient. However, these files are insufficient for several reasons. First, the mask files and other discovery received to date do not show all of the technical detail described above. Second, Defendants' discovery does not show all needed information and detail concerning structures, components, and manufacturing methods used by CPT. Additionally, the numerous mask files lack any identifying information regarding what each layer represents and/or what product(s) relate to each file. Thus, LPL respectfully asks that Defendants be ordered to produce this discovery.

### 3. Defendants Have Not Produced Critical Discovery Related to Damages

While Defendants have produced some documents relevant to damages, they have refused to produce other critical information. For example, in LPL's letter to the Court before the February 8 hearing, LPL noted that Defendants have failed to produce documents reflecting Defendants' methodology or basis used, during the relevant time

---

[7] Defendants' counsel claims to have produced documents called "operational specifications," however, LPL's counsel has not been able to locate these documents. If these documents have indeed been produced, Defendants' counsel should identify the relevant bates numbers.

[8] LPL's document requests encompass this information related to Defendants' LCD technology and products. See, e.g., Ex. D at Request & Response Nos. 4, 7-23.

608796v1

period, to negotiate or calculate royalty rates for patents comparable to the Patents-in-Suit. *See* Ex. C at 3-4; *see also* Ex. D at Request & Response No. 51. None of the four Defendants have produced this discovery which would be highly relevant to the measure of reasonable royalty damages to which LPL will be entitled once infringement is established.

LPL also has requested from Defendants on several occasions (i) all documents reflecting Defendants' efforts to market and sell products in or to the U.S. (for example, correspondence with U.S. brands and/or customers), and (ii) all documents reflecting Defendants' worldwide and U.S. sales and profit information, by customer and product, for the relevant time period (including forecasts and projections). *See, e.g.,* Ex. F at 2. With respect to Defendants' U.S. marketing and sales efforts, it does not appear that any of the Defendants have provided this discovery which would be relevant to, among other things, establishing their connection to the U.S. market and proving liability.

The sales and profit information that has been produced varies widely as to each Defendant, and is difficult to interpret. For example, CPT has provided sales charts listing products, sale dates and amounts, and customers, but does not appear to have provided any meaningful profitability information. Tatung has produced a chart summarizing profitability of LCD monitors as well as sales charts that contain product, customer, and sales information, but it is not clear that these are comprehensive. Tatung America's entire document production consists of sixty-six (66) pages, all but one of which consists of a chart showing U.S. sales of CPT panels by customer and model number, but no profitability information is included. ViewSonic produced two (2) pages of charts summarizing, on an annual basis, net product sales, by model, manufacturer, and module, but again no profitability information is included and it is not clear that the chart represents all relevant ViewSonic products. LPL needs this information to calculate the reasonable royalties that LPL is owed. While LPL has made consistent and specific requests for this discovery, production by the four Defendants has not been uniform, and it is readily apparent that it is incomplete. In short, LPL is entitled to comprehensive damages discovery from all four Defendants.

These documents described above, while clearly relevant to liability and damages, have not been produced. Thus, LPL respectfully requests that Defendants be ordered to produce:

(i) all documents reflecting Defendants' methodology or basis used, during the relevant time period, to negotiate or calculate royalty rates for patents comparable to the Patents-in-Suit, including any and all license agreements involving Defendants' modules and liquid crystal displays;

(ii) all documents reflecting Defendants' efforts to market and sell products in or to the U.S.; and

608796v1

THE BAYARD FIRM

The Honorable Joseph J. Farnan, Jr.
February 28, 2006
Page 7

    (iii)    all documents reflecting Defendants' worldwide and U.S. sales and profit information, by customer and product, for the relevant time period (including forecasts and projections), to the extent not already produced in this case.

LPL looks forward to addressing these matters with the Court.

Respectfully submitted,

*[signature]*

Richard D. Kirk (rk0922)


RDK/slh
Exhibits
cc:    Clerk of the Court (courtesy copy by hand)
        All counsel as shown on the attached certificate

608796v1

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on February 28, 2006, he electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will send automatic notification of the filing to the following:

Robert W. Whetzel, Esq.
Matthew W. King, Esq.
Richards, Layton & Finger
One Rodney Sqare
P.O. Box 551
Wilmington, DE 19899

The undersigned counsel further certifies that copies of the foregoing document were sent by email and hand to the above counsel and by email and first class mail to the following non-registered participants:

| | |
|---|---|
| Christine A. Dudzik, Esq. | Teresa M. Corbin, Esq. |
| Thomas W. Jenkins, Esq. | Glenn W. Rhodes, Esq. |
| Howrey LLP | Howrey LLP |
| 321 North Clark Street | 525 Market Street |
| Suite 3400 | Suite 3600 |
| Chicago, IL  60610 | San Francisco, CA  94105 |

/s/ Richard D. Kirk (rk0922)
Richard D. Kirk

602380v1