EXHIBIT A

| LG Philips LCD Co., LTD   v. | Hearing |
| --- | --- |
| Tatung Company, et al. | February 8, 2006 |

```
                 1
    IN THE UNITED STATES DISTRICT COURT
      FOR THE DISTRICT OF DELAWARE
   LG PHILIPS LCD CO LTD,    :
       Plaintiff,            :
                             : Civil Action
                             : No. 05-292
   v                         :
   TATUNG COMPANY, TATUNG COMPANY OF :
   AMERICA, INC., CHUNGHWA PICTURE :
   TUBES LTD., and VIEWSONIC :
   CORPORATION,              :
       Defendants            :
           Wednesday, February 8, 2006
           12:30 p.m.
           Courtroom 4B
           844 King Street
           Wilmington, Delaware
   BEFORE: THE HONORABLE JOSEPH J. FARNAN, JR.
       United States District Court Judge
   APPEARANCES:
       THE BAYARD FIRM
         BY: RICHARD D. KIRK, ESQ
            -and-
       McKENNA LONG & ALDRIDGE
         BY: GASPARE J. BONO, ESQ
         BY: CASS W CHRISTENSON, ESQ.
            Counsel for the Plaintiff
                 2
   APPEARANCES CONTINUED:
       RICHARDS, LAYTON & FINGER
         BY: MATTHEW W KING, ESQ
            -and-
       HOWREY, LLP
         BY: JULIE S GABLER, ESQ
         BY: J. JAMES LI, ESQ.
            Counsel for the Defendant
                 3
```

[1] THE COURT: All right. Be seated, [2] please. You can step up.

[3] Okay. Do you want to announce [4] your appearance so the court reporter can get [5] them down.

[6] MR. KIRK: Good afternoon, Your [7] Honor. Richard Kirk from The Bayard Firm for [8] the plaintiff, LG. Philips LCD Company, Limited.

[9] With me today from the firm of [10] McKenna, Long & Aldridge in Washington are [11] Gaspare Bono and Cass Christenson.

[12] THE COURT: Good afternoon.

[13] MR. KING: Good afternoon, Your [14] Honor. Matt King with Richards, Layton & Finger [15] on behalf of the defendants. With me here today [16] from the Howrey firm are Julie Gabler and James [17] Li.

[18] THE COURT: Good afternoon.

[19] MR. KING: Your Honor, [20] unfortunately Christine Dudsac who is —

[21] THE COURT: I heard. Do you see [22] this thing over here, we don't have it working [23] correctly, I think partially because of the [24] white noise thing they installed, so I

Page 4

[1] apologize, we can't really do it well. [2] Hopefully we'll be technologically advanced in [3] about another sixty days.

[4] MS. GABLER: We should be fine. [5] And Christine obviously apologizes. There was [6] that issue with the UPS fire at the Philadelphia [7] Airport this morning that caused her to be [8] unable to come in.

[9] THE COURT: I was reading that [10] during my trial on the AOL news, they showed a [11] picture of the fire of the cargo plane, right?

[12] MS. GABLER: Yes.

[13] THE COURT: It was amazing. Thank [14] you and welcome and thank you, Mr. King.

[15] All right. I took a look at your [16] letters and just a couple of notes that I made [17] that I thought if I address might be helpful. [18] The first item is that we have a July 17, 2006 [19] trial date, and which we will not lose or pass [20] or modify, or extend, shorten, it's July 17.

[21] If you look at the calendar, I [22] don't know if you're allowed to see those [23] anymore, but there is another bench trial [24] scheduled, but don't pay attention to that

Page 5

[1] because that's going to go later or earlier or [2] away, so you are the only trial in July, whether [3] it's a bench trial, a jury trial, it really [4] doesn't matter to me.

[5] So that brings me to my concern, [6] which I see that you have gotten a lot of the [7] matters resolved, but as is typical in these [8] type of cases, there is a little bit of tension [9] not between you, but with the kind of work you [10] have to get accomplished in the time frame, so [11] it looks to me like we've missed the early [12] February — what was it, February 3rd?

[13] MS. GABLER: Yes.

[14] THE COURT: To complete document [15] production, which is not a good thing in my [16] world.

[17] MS. GABLER: The defendants have [18] met the date, Your Honor. We completed our [19] production on Friday.

[20] THE COURT: Right. But if we all [21] don't meet it —

[22] MS. GABLER: Right, then we all [23] have a problem, yes.

[24] THE COURT: Exactly, we all have a

Page 6

[1] problem. So the first thing I want to address [2] is when you have a July 17th trial date, and I [3] understand all the translation issues and the [4] review issues and that we have to get, before we [5] go any further, all document production [6] resolved. And I know there is some implications [7] of interrogatory answers as it may pertain to, [8] you know, hopefully scheduled depositions, but [9] we really got to find out what is the drop dead [10] date because in this case with that July 17th [11] date, any document found that should have been [12] produced is going to cost a lot of money for the [13] party that finds it. And any document that goes [14] against the party, any document found that helps [15] a party won't help you once we get by the drop [16] dead date. So this is an important matter which [17] I guess I need to hear from plaintiff on.

[18] MR. BONO: Yes, Your Honor.

[19] THE COURT: You can do it from [20] there.

[21] MR. BONO: Very well, Your Honor. [22] We appreciate the significance of the timing [23] here and we have worked very, very hard to try [24] to meet — I would like to meet the deadline. I

Page 7

[1] would like to say — we don't believe the [2] defendants have completed their document [3] production. We have done an initial review and [4] there are some items that appear to be deficient [5] which we would like to raise with the Court, so [6] although they did make a fairly large production [7] on Friday, we don't believe it is complete, [8] either.

[9] From our point of view, Your [10] Honor, I would propose the following to see if [11] this is acceptable to the Court. We are in the [12] process of finishing up our document review and [13] getting some few remaining documents, because we [14] have had several discussions with the other side [15] on trying to work out some issues.

[16] We will be prepared to produce [17] additional documents this Friday. We anticipate [18] being — producing some additional documents on [19] Monday, and we believe we can complete our [20] document production one week from today, next [21] Wednesday.

[22] And as I said, there are some [23] other issues with the defendants' production [24] which I believe they're going to — which I

Page 8

[1] would like to raise and I believe they're going [2] to need a little bit of time to go back and look [3] at that as well, so we believe we can complete [4] our production by I guess —

[5] THE COURT: So our date is [6] February 15?

[7] MR. BONO: Yes, Your Honor, if [8] that's all right with the Court.

[9] THE COURT: You know, I take the [10] view, my life isn't that stressful, believe it [11] or not. I mean, there is a lot of work here, [12] managing 300 and some cases, but I always feel [13] empathy for lawyers. So, you know, if you told [14] me February 22nd was your date, as long as it's [15] the date that you're going to drop dead on

[16] document production and you understand all the [17] consequences on both sides, that's okay.

[18] So you feel real comfortable with [19] February 15th, and I tell you what we are going [20] to do with your concern about their deficient [21] production.

[22] MR. BONO: I would feel more [23] comfortable with next Friday, but I think I can [24] meet Wednesday.

Page 9

[1] THE COURT: We'll make it next [2] Friday. Actually you know what we'll do, we'll [3] give you a weekend to have all those associates [4] in there billing. This is like the bane of [5] their existence, and the thrill of partners [6] existence, Mr. King understands, all that extra [7] cash coming in. It's great, isn't it? So we'll [8] do so we got Wednesday the 15th, so we have [9] Thursday the 16th, 17th, 18th, the 20th is a [10] federal holiday, so we'll give you that, so they [11] can bill double time if they do that, and we'll [12] make it the 21st of February.

[13] MR. BONO: Your Honor, I [14] appreciate the extra time from the Court. I [15] don't think that should affect — if the [16] defendants are going to talk about —

[17] THE COURT: Hold on a second, I [18] want to get to that problem. I'm going to get [19] you to yelling at each other after February [20] 21st. In other words, you're going to cleanse [21] your soles by February 21st of all that you [22] think you should have produced, you're going to [23] write all those neat letters back and forth [24] about you didn't do this, you didn't do that,

Page 10

[1] we're not happy with that, then I'm going to see [2] you within a week of February 21st about [3] deficiencies.

[4] MR. BONO: That's very well, but [5] Your Honor, before we pick that date, I'm happy [6] with that, I don't want that to be — for the [7] defendants to bootstrap that into an excuse to [8] delay depositions.

[9] THE COURT: Well, it is. They've [10] already gotten that by having to get beyond [11] February 3rd or 2nd or whatever.

[12] MR. BONO: Your Honor, but in the [13] proposals we've exchanged proposed deposition [14] schedules among the parties.

[15] THE COURT: Well, if you agree.

[16] MR. BONO: I just want to say —

[17] THE COURT: It's okay.

[18] MR. BONO: — the way the [19] proposals — we have to have a conference call [20] tomorrow to firm up the schedule, but the [21] proposed dates are we have offered our witnesses [22] starting March 8th, okay, March 8th, our [23] 30(b)(6) witnesses, and we have a couple of fact [24] witnesses that will also be scheduled right

Page 11

[1] around that time.

[2] They have proposed that we can [3] start taking Tatung Company of America and [4] Viewsonic, which are the U.S. companies which [5] are going to have minimal technical information, [6] they're really only going to have some product [7] information, some sales information, and they [8] have proposed that those depositions start [9] during the weeks of February 21 and 28.

[10] And what I'm suggesting is the [11] completion of our document production which [12] really, really should not affect the scheduling [13] of the beginning of those depositions in those [14] weeks because they're basically U.S. and sales [15] companies.

[16] THE COURT: See, you're making it [17] too complicated for kind of an intellectual [18] deficient person like myself. Let me make it [19] clear to you, I don't care, so start taking [20] depositions as long as you all agree. But if [21] somebody objects, then the way my world works [22] since I manage the case attempting to make your [23] lives less stressful, you got to get beyond the [24] document production problems and then you can

Page 12

[1] have at each other on depositions because what I [2] don't want to hear is in April or May that we [3] got to go back and depose somebody because this [4] just happened or that just happened because in [5] my world, that doesn't happen. In my world, [6] February 21 is when all documents should be [7] produced.

[8] I'm going to give you an [9] expeditious come back to Court, tell me your [10] problems about deficiencies, put everything on a [11] short leash for the further production or the [12] representation that there is no further [13] production, and typically in my world [14] depositions would begin.

[15] If you can get them to agree to [16] start the week of the 28th, that's fine, but if [17] I'm asked to delay depositions because the [18] document production isn't complete, then I do [19] it. Because the way I order things if you don't [20] have all your documents and the drop dead date [21] and all the disputes resolved, how can you go to [22] depositions? I don't know, but sometimes you [23] can.

[24] If you can agree to do that, go

Page 13

[1] ahead and go. But if you can't agree to do [2] that, then it stops. But it doesn't get pushed [3] out until April, it gets pushed out from [4] February 28th to what's it, March 2nd or [5] something.

[6] MR. BONO: I appreciate, Your [7] Honor, under the Court's — I don't want to make [8] it —

[9] THE COURT: Stressful.

[10] MR. BONO: Under the Court's [11] current scheduling order, we have agreed and the [12] Court endorsed it that we would complete [13] 30(b)(6) depositions and fact depositions by [14] March 17th. And so —

[15] THE COURT: I don't mean to [16] interrupt you, but just let me ask this [17] question: What else did you agree to? February [18] 3rd was document production.

[19] MR. BONO: Your Honor, I [20] appreciate that.

[21] THE COURT: Okay.

[22] MR. BONO: If we could work out a [23] situation where that date moves back a week, I'm [24] not arguing about that.

Page 14

[1] THE COURT: I know you're not.

[2] MR. BONO: I really —

[3] THE COURT: I just —

[4] MR. BONO: I'll be happy to work [5] it out.

[6] THE COURT: I just keep trying to [7] bring it back to how I view things. If there is [8] disputes and I have to work them out, because [9] that's the only way I can be consistently — I [10] hate the word — fair, but consistent, let's [11] just say even if I'm unfair, at least I'm [12] consistent, the only way I can do that is if I [13] have a perspective that certain things close, [14] other things begin, unless the parties agree.

[15] But see, you already have gone [16] past, not you personally, if they're deficient, [17] they have gone by it, too, you all have gone by [18] February 3rd, so ultimately you have gone past [19] my world dates.

[20] MR. BONO: I understand, Your [21] Honor.

[22] THE COURT: Okay.

[23] MR. BONO: I understand, and I'll [24] try to work it out with the other side.

Page 15

[1] THE COURT: So you may go by March [2] 17th.

[3] MR. BONO: Very well, I don't have [4] an issue with that per se in working this out.

[5] THE COURT: Okay. Or you can [6] agree.

[7] MS. GABLER: Your Honor, we would [8] prefer to hold the depositions schedule, we did [9] exchange dates.

[10] THE COURT: So you ought to be [11] able to make it.

[12] MS. GABLER: Counsel was correct, [13] that was in the process of moving it forward, [14] but it's definitely our position that we want [15] the document issues resolved before we proceed [16] with depositions.

[17] THE COURT: So the date is [18] February 21st, a Tuesday, by five o'clock, [19] Wilmington, Delaware time when everything has to [20] be produced, which means that if there is [21] deficiencies — and these are all documents in [22] the case; right?

[23] MS. GABLER: Yes. Can I flag one [24] issue in this area, Your Honor, before we go on?

Page 16

[1] THE COURT: Sure.

[2] MS. GABLER: It's maybe a point of [3] clarification with counsel. I know you are [4] translating documents right now to determine [5] whether or not certain things are relevant and [6] will be produced, but you intend to produce them [7] as foreign language documents; is that correct?

[8] MR. BONO: Yes.

[9] MS. GABLER: Yes. Okay. So our [10] concern is that if their production is [11] continuing through the 21st, and I have asked [12] Mr. Bono to estimate how many pages or boxes of [13] documents he anticipates adding to his [14] production, currently it's about one-third of a [15] box which they produced, and he told me it was [16] closer to one box than ten boxes and was unable [17] to estimate beyond that, and has represented [18] that a substantial portion of these documents [19] are going to be foreign language documents, so [20] if that, in fact, is the case, we are going to [21] need more than seven or ten days to figure out [22] what we have to know if we have a dispute about [23] what's in their production.

[24] They have the bulk of our

Page 17

[1] documents now and to the extent that they think [2] there are deficiencies, whatever additional [3] production we're making would be very small, so [4] basically they have this whole time period to [5] figure out if they have got issues with things [6] that we produced as foreign language documents, [7] but if we're now in a situation where we're only [8] going to have seven days to figure out what's in [9] possibly up to ten boxes of foreign language [10] documents, we're probably not going to be able [11] to identify disputes by the 28th.

[12] MR. BONO: Your Honor, my best [13] estimate at this point is we're talking about a [14] box to a box-and-a-half, not ten boxes.

[15] THE COURT: In Korean?

[16] MR. BONO: I would say probably [17] three quarters of a box to a box would be in [18] Korean, yes. That's my best estimate at this [19] point.

[20] THE COURT: Three quarters of a [21] box ought to be able to be translated in a week. [22] I have had cases where you had German and [23] Japanese.

[24] MS. GABLER: Right.

Page 18

[1] THE COURT: Actually answering [2] documents and they were able to do it.

[3] MR. BONO: Just so we know, I'm [4] not going to hold off the rest of the production [5] until the 21st, as soon as documents —

[6] THE COURT: As soon as you have [7] them you are going to produce them, you have a [8] drop dead date of the 21st.

[9] MR. BONO: I'm going to produce [10] some of these on a rolling basis as soon as [11] they're ready to be produced, so it will be not [12] be at the 21st when you get all these documents.

[13] MS. GABLER: Well, assuming that [14] that representation holds true and we receive [15] the bulk of them or all of them by the 15th, [16] we're obviously much more likely by the 28th to [17] have gotten them all translated and then [18] reviewed them to know if we have a dispute.

[19] THE COURT: You have to hire more [20] people. I mean, I hate to say that, but [21] I assume you're already set up for the [22] translation?

[23] MS. GABLER: Yes, we do have an [24] firm, an outside firm.

Page 19

[1] THE COURT: This is just great for [2] the economy.

[3] MS. GABLER: It is. Isn't it [4] fabulous?

[5] THE COURT: I feel like —

[6] MS. GABLER: All of us who didn't [7] learn our parents' native languages are [8] regretting it now.

[9] THE COURT: That's fantastic. I'm [10] trying to learn my thousand words in Italian and [11] my mother and grandmother spoke Italian in the [12] house except when we were present. Isn't that [13] something? What were they thinking.

[14] But anyway, you're going to file [15] your deficiency letters against each other on [16] the 28th and I'm going to see you on the 1st of [17] March, which is a Wednesday, at 12:30.

[18] Actually, you know what I'll do? [19] I'm in a trial, I'll make it for 12:30. There [20] might be some minor adjustment based on the [21] nature of that trial, but we'll schedule for [22] March the 1st at 12:30 to get your answers on [23] your disputes that will be filed by the close of [24] business on the 28th.

Page 20

[1] MS. GABLER: Your Honor, can we [2] ask for another question?

[3] THE COURT: Sure.

[4] MS. GABLER: There are some [5] third-party subpoenas that have been issued and [6] those productions are pending and for the ones [7] we issued, we're pretty optimistic we are going [8] to get those documents in by the end of February [9] and will produce them. Is that February 21st [10] date going to be considered the drop dead as [11] applied to third parties, also?

[12] THE COURT: All the documents in [13] this case, all the documents in the case are [14] going to be here by February 21st or they're not [15] in the case.

[16] MS. GABLER: Okay.

[17] THE COURT: You know, as lawyers, [18] that whole third-party subpoena thing is a real [19] problem for judges to manage. So I have decided [20] over the last year to just make it part of [21] document production. If you don't get it, you [22] don't get it. Cases are finite pieces of [23] litigation for parties and they ought to be [24] cutoff dates. I mean, I'm sure if we allowed

Page 21

[1] discovery for ten years, there is something out [2] there that we would be able to find.

[3] MS. GABLER: No problem, I just [4] wanted to make sure that we were clear.

[5] THE COURT: We are all clear. Any [6] document that's in this case is the 21st.

[7] MS. GABLER: Okay.

[8] THE COURT: Nothing will be in [9] this case after that. So with all that notice [10] and warning and all the understanding no matter [11] how prejudicial, how beneficial, they just won't [12] be in the case. Everybody should be fully [13] alert.

[14] Now, so when I looked at that, I [15] said if we don't have document production, [16] these other matters, and a lot of what was in issue [17] had to do with that, the deposition matters I'm [18] just not going to take up yet. I'm just not [19] going to address them because I'm not through [20] the other part.

[21] There are the interrogatories and [22] answers issue. One of the disputes is are [23] interrogatories okay, I guess in the

first [24] instance over a 30(b)(6) response. You know,

### Page 22

[1] again, in my world, yes, except if they're [2] inadequate.

[3] MR. BONO: Your Honor, let me [4] address that because that was a proposal made by [5] the defendants and as I indicated in the letter [6] to the Court, we would find that amenable and we [7] would agree because they have outlined certain [8] issues, they call contingent issues on the [9] issues of infringement, validity, [10] enforceability, prior art, the defendants have [11] taken the position that they believe they have [12] answered that by way of interrogatory and [13] therefore it should be off limits for 30(b)(6) [14] witnesses. I don't have a problem with that. [15] And we would agree to supplement our [16] interrogatory answers as long as the agreement [17] goes both ways.

[18] THE COURT: See, you have just hit [19] on it. That is the problem, they are able to be [20] supplemented. If you cut off that — if you cut [21] off interrogatories and their answers from [22] exposure to deposition, then you are left with [23] the remedy of supplementation.

[24] Now, if you both agree to that and

### Page 23

[1] you're never going to come back to me, I'll go [2] along with that, but again, in my view, my [3] world, I have to cut off the management problem [4] of supplements, case management problem of [5] supplements. But if you agree to it, that's [6] okay with me.

[7] MS. GABLER: Our problem now, Your [8] Honor, is that defendants have provided their [9] contingents and prior art references, et cetera, [10] and plaintiff has not, and has not identified [11] which claims are going to be in dispute, has not [12] identified anything about what their disputed [13] terms are, which claims they're asserting, which [14] they're not, they still have not identified any [15] products other than the two listed in the [16] complaint that they even are contending —

[17] THE COURT: But they're saying [18] they're willing to do that; right?

[19] MR. BONO: Your Honor, now counsel [20] has gone on to a related — it's a little [21] different. I guess the initial proposal by the [22] defendants was as far as presenting each side's [23] contentions and positions with respect to these, [24] the issues of infringement, enforceability,

### Page 24

[1] validity and prior art, they said we can't — [2] they have given us their interrogatory answers [3] and they object to us taking 30(b)(6) witnesses [4] on those topics.

[5] And in order to try to cooperate [6] and move this case along, streamline [7] depositions, we are amenable to supplementing [8] our interrogatory answers because we had for the [9] most part objected to that, but we will give you [10] our positions and our contentions on those [11] topics like the defendants have done, we will do [12] it in interrogatory answers and then those [13] subjects will be off limits for 30(b)(6) [14] witnesses, because — and if that applies both [15] directions, we're happy to do that.

[16] MS. GABLER: I think as long as [17] we're talking about 30(b)(6) witnesses, yes, I [18] believe the parties are willing to do that, [19] although we are concerned about imposing a time [20] limit.

[21] THE COURT: Contention [22] interrogatories are party related, so obviously [23] they would be covered by 30(b)(6). Now, if [24] you're saying is we would like to ask individual

### Page 25

[1] witnesses about parties answers to contention [2] interrogatories, that's [3] where you might have a problem.

[4] MR. BONO: Yes, Your Honor.

[5] THE COURT: So you can't do that.

[6] MS. GABLER: I would say there is [7] a category of questions that depending on how [8] we're talking about contentions and prior art, [9] for example, the inventors are all witnesses on [10] their side.

[11] THE COURT: You don't ask them [12] about the interrogatory answer, you can ask them [13] about prior art.

[14] MS. GABLER: But things that might [15] be part of the content of the interrogatory [16] answer, we wouldn't be asking them as phrased, [17] but if there is prior art in there.

[18] THE COURT: If they give you [19] twenty pieces of prior art, you can ask them [20] about prior art, but you can't ask them about [21] the party's answer to the interrogatories and [22] that's what you understand and that's what [23] you're concerned about.

[24] MR. BONO: Exactly.

### Page 26

[1] THE COURT: I think you have it [2] right, plaintiff has it right, that if it's [3] interrogatories to a party for their [4] contentions, you get them, but you can't examine [5] an individual witness. And you have given up [6] the one area you can do it in, the 30(b)(6) [7] area, because that's the party representative, [8] you have put that all over into interrogatories. [9] Now you'll have individual witnesses in and you [10] can ask them questions about the subject matter, [11] but not about the specific interrogatory [12] responses.

[13] MS. GABLER: I don't think there [14] is any disagreement with that. There is one [15] other issue, though, with the interrogatories, [16] and that's in many of our interrogatories are [17] styled as what they knew at the time they filed [18] the complaint and, therefore, they have a Rule [19] 11 aspect to them.

[20] THE COURT: Is that still in [21] existence? There is a Rule 11? Come on.

[22] MS. GABLER: There is a Rule 11.

[23] THE COURT: Did you find that? [24] Who did that research? There is somebody that's

### Page 27

[1] awfully good at your firm.

[2] MS. GABLER: Yes, there you go.

[3] THE COURT: I have been here [4] twenty-one years. I don't remember a Rule 11. [5] I mean, people talked about it years ago. Have [6] you ever been in a case where it actually [7] happened?

[8] MS. GABLER: No, I have not.

[9] THE COURT: There you go. So [10] don't worry about those implications, just get [11] the information so we can get to the trial with [12] the jury. That's the fun of this profession. [13] Have you heard of one?

[14] MR. LI: Yes, we have a claim [15] regarding an exceptional case, but that's [16] exceptional cases.

[17] THE COURT: I have heard [18] exceptional cases, but the Third Circuit doesn't [19] really look at it like everybody else in the [20] world does, but Rule 11 implications, don't [21] worry about those, because that's amazing that [22] rule is still there. Do you remember when that [23] was the hottest thing in the legal community? [24] What was it, about a decade ago?

### Page 28

[1] MR. BONO: Two decades ago.

[2] THE COURT: That long ago? They [3] actually had us do reports on how many we did [4] and it got so embarrassing because there were [5] none to report that nobody knew what to do, so I [6] thought the rule went away, it floated off into [7] law school library lore or something. But [8] exceptional case, different story, facts on [9] that, that's the kind of information, but Rule [10] 11, don't be too concerned about that.

[11] The rule I found that's good is a [12] motion for a new trial in patent cases when you [13] don't pay attention to the orders of the Court [14] or you have a bad case to begin with and then [15] you try to play around with it at trial, give a [16] new

trial and assessing all the costs against [17] the losing party, that motion, that's a great [18] rule, very, very forceful.

[19] So you both understand what your [20] doing with that, and that's what you wanted to [21] get to, so you have a common understanding. [22] It's on the record, I understand it, everybody [23] here today understands it, and I think we can [24] move forward using interrogatory technique.

Page 29

[1] Depositions, I'm not going to [2] discuss that because I'm not ready to.

[3] **MS. GABLER:** Can we get a date on [4] the interrogatories?

[5] **THE COURT:** Well, I assume you [6] would need it before you started depositions, so [7] I would assume it's going to be sometime around [8] the 21st of February to the 28th.

[9] **MR. BONO:** The 28th would be fine, [10] Your Honor.

[11] **THE COURT:** 28th. Because you'll [12] need them to be able to conduct your [13] depositions, so we'll make February 28th the [14] drop dead date on interrogatories.

[15] I gave you a date to come here, [16] March 1st. You don't have to use that if you [17] can work things out.

[18] Privilege, in this document [19] production, you all know, Mr. Kirk and Mr. King [20] can help you if you don't, how we do our [21] privilege logs in this district. It requires [22] you to be detailed. It requires you to have an [23] efficient privilege log.

[24] I'm going to try to shortcut it

Page 30

[1] for you have so we don't have a lot of back and [2] forth between you. If there are questions where [3] you challenge the assertion of a privilege, what [4] I think would be helpful is if each side in the [5] privilege log categorizes the nature of the [6] privilege. So in other words, section one would [7] be attorney/client, section two would be work [8] product, you know, whatever you have.

[9] And then if there is a challenge, [10] how I'm going to resolve it is in the categories [11] of the privilege log, section one or part one, [12] part two, I'll allow the challenging side to [13] make a random selection of a percentage number [14] of documents that I'll review in camera rather [15] quickly and how that turns out will determine [16] how your privilege log — I mean how your [17] privilege assertion is going to fair in this [18] particular piece of litigation.

[19] So do your privilege logs [20] according to the detail we use here, except [21] break them out in parts by the nature of the [22] privilege. If you have a dispute, all you [23] have to do, you know, I'm going to hear it in camera, [24] pick out what it is, the part that you think

Page 31

[1] that they have been insincere about and then all [2] I'll need to give you is the number of documents [3] that you're going to require them or I'm going [4] to require them to produce randomly so I can do [5] an in camera review.

[6] Are there any questions, Mr. Kirk [7] or Mr. King? Okay.

[8] And that will get us through I [9] think the bulk of what typically comes up in [10] document issue and get us ready for depositions [11] to start up in March.

[12] **MS. GABLER:** When do you want the [13] privilege log disputes flagged for Your Honor?

[14] **THE COURT:** That probably won't be [15] able to be done by March 1 unless you tell me [16] you can, because of translation and everything [17] else, so I would be okay with it if the [18] objections or the challenges to the logs were [19] here a week later, by March 8, because I expect [20] to get them done in a week or so for you.

[21] **MS. GABLER:** And the logs [22] themselves on the 21st?

[23] **THE COURT:** Yes. Does that work [24] for both of you?

Page 32

[1] **MR. BONO:** Can we have just a few [2] extra days after the production to have a log [3] done, do you have a problem with that, maybe the [4] 24th, something like that?

[5] **THE COURT:** Logs will be exchanged [6] on the 24th. And any challenges by the 8th of [7] March. And then local counsel will E-mail me [8] that you need — if there is a challenge you [9] need the number to be produced of random [10] documents and if necessary a date for a hearing, [11] but you just put that in the E-mail under the [12] discovery dispute procedure and we'll get you [13] in. That's all the things, items that I have [14] listed.

[15] **MR. BONO:** Your Honor, in light of [16] Your Honor's ruling, I guess on the specifics [17] of the document issue, I think it would be best [18] for the parties to discuss it over the next week, [19] I have some points, but I'll discuss it with [20] counsel and she'll be discussing things with me [21] as we work over the next ten days.

[22] I do have one other thing, Your [23] Honor, in terms of scheduling. This was Markman [24] hearing, we did reach an agreement leading up to

Page 33

[1] the hearing consistent with the Court's order [2] and I wanted to propose it to make sure Your [3] Honor was okay with it.

[4] Your Honor, and if I get the dates [5] wrong, let me know, Julie, but I think I have [6] it.

[7] **MS. GABLER:** Can I interrupt you [8] before you proceed with the dates?

[9] Given that we have now extended [10] out both interrogatory responses and document [11] requests, I think we would like to ask that we [12] move back the Markman date so that all of that [13] is done and those documents are available for [14] expert consideration before the Markman hearing.

[15] **THE COURT:** In this case, and I [16] don't have it with me, you have Markman, then [17] you have your expert reports due; right?

[18] **MS. GABLER:** Yes.

[19] **MR. BONO:** Yes, Your Honor.

[20] **THE COURT:** So go ahead. I know [21] what you're saying, an expert for the Markman [22] hearing.

[23] **MS. GABLER:** Well, right now under [24] the current schedule, the expert reports

Page 34

[1] actually trail the Markman hearing by about [2] three weeks in essence.

[3] **THE COURT:** My goal is to get you [4] to construction so your experts have it when [5] they do their opinions on the patent issues in [6] the case.

[7] **MS. GABLER:** Right. So that's the [8] right — we don't disagree with that order, but [9] the concern is that now that we've moved [10] document production and interrogatory dates [11] under the schedule that Mr. Bono would be [12] providing you in a moment, we would be having [13] opening briefs exchange before the date we just [14] agreed on for the privilege log and two days [15] after the drop dead date on the documents, and

[17] **THE COURT:** What was your hearing [18] date?

[19] **MS. GABLER:** March 6th, and you [20] have —

[21] **THE COURT:** I think I saw that [22] somewhere.

[23] **MS. GABLER:** And that all briefing [24] was done by March 1, so while we have a number

Page 35

[1] of dates in Mr. Bono's proposal about when we [2] were going to exchange disputed terms and [3] definitions and things like that, given that we [4] have

now moved these document interrogatory [5] dates by three weeks, I think that should be [6] accounted for in the Markman schedule, so those [7] are now pushed back so those items are done and [8] the interrogatory responses and the documents [9] have been produced before more than two days [10] before we're submitting opening briefs in [11] Markman.

[12] MR. BONO: Your Honor, I don't [13] have a disagreement with this, but obviously [14] it's the Court's schedule that is most [15] important.

[16] THE COURT: Here is what I'm going [17] to do. Except for — my concern is adult spring [18] break, and if any of you have children, [19] children's spring break. I think adult spring [20] break for me is March 9th, 10th, 11th, 12th, [21] 13th, 14th and 15th.

[22] MS. GABLER: For me it's the last [23] week of March.

[24] THE COURT: The last week of

Page 36

[1] March? So you have them committed to memory.

[2] MR. BONO: Your Honor, I just have [3] the Friday the 24th and Monday the 27th, which I [4] have blocked out my related children's spring [5] break.

[6] THE COURT: Okay. There you go. [7] So it's important to know that.

[8] MR. BONO: I'm visiting my [9] daughter for parents weekend.

[10] THE COURT: So let's take out the [11] 9th, 10th, 11th, 13th, 14th, 15th of March, that [12] takes out the 24th, and then the week of the [13] 27th.

[14] MS. GABLER: It's actually — [15] let's see here. Yes, that's right. Yes.

[16] THE COURT: That would be the last [17] week of March would be the 27th.

[18] MS. GABLER: Yes.

[19] THE COURT: And you pick any dates [20] you want for the Markman and the only thing [21] you'll be subject to is the time. In other [22] words, it may be late in the date, or early in [23] the day, but you can pick the date you want.

[24] MR. BONO: Your Honor, just

Page 37

[1] looking at everybody's schedule, what about [2] Monday the 20th, which would be a two-week [3] extension, does that work?

[4] THE COURT: That's fine with me.

[5] MR. BONO: That's way before.

[6] MS. GABLER: Can I —

[7] MR. BONO: There is no secrets [8] here. You can see my calendar.

[9] THE COURT: Here you go, now you

[10] get all the trade secrets out. Does he have the [11] hours that he's billing daily?

[12] MS. GABLER: No.

[13] MR. BONO: I didn't give her that.

[14] THE COURT: Just wondering.

[15] MS. GABLER: What I would actually [16] like to do, I couldn't have the — we can [17] certainly commit to presenting a joint [18] submission by the end of the week to Your Honor [19] about a date.

[20] THE COURT: We'll pick the 20th, [21] just to have a date as we leave here today, and [22] we'll put it on for four o'clock and if it's [23] inconvenient for her, you can change it by [24] agreement.

Page 38

[1] MR. BONO: That would be fine.

[2] MS. GABLER: So 3/20, 4:00 p.m. [3] right now.

[4] MR. BONO: 4:00 p.m.

[5] THE COURT: 4:00 p.m. I'm in a [6] bench trial with Forest Lab.

[7] MR. BONO: Your Honor, could the [8] Court —

[9] THE COURT: Mr. Kirk, is that [10] trial going to settle? I don't think it can.

[11] MR. KIRK: If I had to bet, I [12] would say it won't.

[13] THE COURT: So four o'clock.

[14] MR. BONO: Your Honor, since we [15] haven't talked to Ms. Dudsik, were there a [16] couple of other dates that would work for Your [17] Honor?

[18] THE COURT: Other than the ones [19] I've excluded, pick whatever one you want.

[20] MR. BONO: So if she doesn't do it [21] the 20th, the 21st would be acceptable to the [22] Court?

[23] THE COURT: Yes.

[24] MR. BONO: Thank you, Your Honor.

Page 39

[1] THE COURT: We'll go away with the [2] 20th at four o'clock. If she can't do the 20th, [3] you pick another date. The only thing you're [4] subjected to is the time of the day.

[5] MS. GABLER: Right, which will be [6] late in the day.

[7] THE COURT: Right, because I have [8] a lot of trials coming up.

[9] MS. GABLER: Do we already have a [10] clear understanding of amount of time per side?

[11] THE COURT: No, because I haven't [12] read your briefs. Do you think I do that [13] arbitrarily? I'm not sure if that was an insult [14] or not.

[15] MS. GABLER: It was not intended [16] to be.

[17] THE COURT: I really do, I take a [18] quick look at the briefs and I don't restrict [19] the parties. If you want to have an expert, I [20] let you have an expert, but I set times, that's [21] the only way I can control, but I have to read [22] the briefs to see what the issues are and then I [23] give you have your allocation and I give you [24] your time.

Page 40

[1] Some people argue and put the [2] papers in, some folks bring a witness, but I'll [3] leave that to you. But I'll do it probably — [4] see, I don't know what dates you're going to [5] have the briefs to me, but after I have a chance [6] to look at the briefs to see what you're [7] disputing and how detailed it is and what the — [8] I mean, this is — what is it, plasma screens?

[9] MR. BONO: Your Honor, it's LCD, [10] liquid crystal displays.

[11] THE COURT: So I'm pretty expert [12] in that.

[13] MR. BONO: I understand.

[14] THE COURT: I buy them.

[15] MR. BONO: That's right, we all [16] buy them.

[17] THE COURT: I love this war story. [18] When I was a very, very inexperienced judge, I [19] had a patent case with RCA about digital [20] generation on video screen and all these people [21] like the guy that started Data General, Dr. [22] Wang, came to testify, and I was new enough [23] that I didn't know what you weren't supposed to [24] ask. And with five children, we were buying our first

Page 41

[1] computer, so it was a bench trial so after [2] Dr. Wang testified since he appeared at the time [3] to be the most knowledgeable person about all [4] that stuff, I asked him, I said what computer [5] would you buy if you had five children. The [6] oldest was like in the fifth grade and, you [7] know, and he said, Judge, you have to have an [8] Apple 2E with the software and everything.

[9] So I went to the computer store, I [10] was the brightest store customer in the computer [11] store because they all wanted to help you back [12] in those days, this was like in '85 or '86, I [13] have pretty good authority what I'm buying here, [14] and you know what, that Apple 2E, my [15] grandchildren still are playing educational [16] software. It's that good. He's passed away, [17] Dr. Wang, but he obviously knew what was good [18] for that application. So as a customer [19] sometimes you can be pretty astute, I guess.

[20] Okay.

[21] MR. BONO: One other thing, the [22] scheduling on the Markman, assuming we do go on [23] the 20th, you had in your

| LG Philips LCD Co., LTD v. Tatung Company, et al. | | Hearing February 8, 2006 |

scheduling order, [24] originally you had the final briefing being

Page 42

[1] concluded on March 1st, which was the Wednesday [2] before the hearing on the 6th. Should we decide [3] that, or agree that March 15th, which is the [4] Wednesday before the Markman would be all [5] briefing would be concluded by that date.

[6] THE COURT: That's fine.

[7] MR. BONO: And if that's fine, [8] Your Honor, I would like to let the Court know [9] what we have agreed to. We will adjust the [10] dates accordingly because it's just a matter of [11] moving the dates back two weeks, but what the [12] parties have agreed to is we picked a date for [13] an exchange of terms that each side is proposing [14] would be subject to construction in the Markman [15] proceeding, then we have picked a subsequent [16] date in which each side was going to exchange [17] proposed definitions of the terms they're [18] proposing, and then a time for a meet and confer [19] to try to work, see if we can narrow the terms [20] and the definitions, and then an opening brief [21] that was about a week before the final brief in [22] the Court's order.

[23] And we've generally agreed with [24] that. And I just wanted to make sure that this

Page 43

[1] would be okay with the Court.

[2] THE COURT: Absolutely.

[3] MR. BONO: We are all geared up to [4] have all the briefing concluded and in accord [5] with the order.

[6] THE COURT: Absolutely. [7] Defendant, anything else?

[8] MS. GABLER: No, we agreed, it was [9] a negotiated schedule and that's an accurate [10] representation of how we have laid that out. So [11] once we get the — whether it's the 20th or a [12] different date, I don't anticipate we'll have [13] any problem reaching agreement on that adjusted [14] schedule.

[15] THE COURT: Okay. What I'll ask [16] you to do is somebody prepare an order, or do [17] you want me to just so order the transcript?

[18] You're going to get the [19] transcript. I'll just so order the transcript.

[20] MR. BONO: That would be [21] sufficient.

[22] THE COURT: I will send an order [23] that so orders the transcript that has the dates [24] and all other matters.

Page 44

Thank you
(Hearing concluded at 1:20 p.m.)

State of Delaware )
New Castle County )
CERTIFICATE OF REPORTER
I, Dale C Hawkins, Registered Merit Reporter and Notary Public, do hereby certify that the foregoing record, is a true and accurate transcript of my stenographic notes taken on February 8, 2006, in the above-captioned matter.
IN WITNESS WHEREOF, I have hereunto set my hand and seal this 8th day of February, 2006, at Wilmington.

Dale C. Hawkins, RMR
Cert No 112-RPR

EXHIBIT B

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

CHAMBERS OF
JOSEPH J. FARNAN, JR.
JUDGE

LOCKBOX 27
844 KING STREET
U.S. COURTHOUSE
WILMINGTON, DELAWARE 19801
(302) 573-6155

February 24, 2006

Richard D. Kirk, Esquire
P. O. Box 25130
Wilmington, DE 19899

Robert W. Whetzel, Esquire
Richards, Layton & Finger
P. O. Box 551
Wilmington, DE 19899

      RE:   LG Philips LCD Co. Ltd. v. Tatung Company, et al.
              Civil Action No. 05-292 JJF

Dear Counsel:

      The Court has Mr. Wetzel's February 17, 2006 letter and Mr. Kirk's February 21, 2006 letter concerning a possible extension of the February 21 document discovery cut off date.

      No extensions will be granted by the Court for the reasons previously discussed with counsel.

Sincerely,

JOSEPH J. FARNAN, JR.

JJFjr:dk
cc: Clerk, U.S. District Court

# EXHIBIT C

# THE BAYARD FIRM
### ATTORNEYS

222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
Zip Code For Deliveries 19801

MERITAS LAW FIRMS WORLDWIDE
www.bayardfirm.com
302-655-5000
(Fax) 302-658-6395
Writer's Direct Access

(302) 429-4208
rkirk@bayardfirm.com

FILED ELECTRONICALLY

February 7, 2006

The Honorable Joseph J. Farnan, Jr.
United States District Court
844 North King Street
Wilmington, DE 19801

    RE: *LG.Philips LCD Co., Ltd. v. Tatung Company of Amercia, et al.*
          C.A. No. 05-292-JJF

Dear Judge Farnan:

    In advance of tomorrow's discovery conference, Plaintiff LG.Philips LCD Co., Ltd. ("LPL") respectfully submits this letter to update the Court on the status of this case, including discovery.

**Brief Background and Progress of the Case**

    LPL brought this action for patent infringement against Defendants Tatung Company ("Tatung"), Tatung Company of America, Inc. ("Tatung America"), Chunghwa Picture Tubes, Ltd. ("CPT"), and ViewSonic Corporation ("ViewSonic") (collectively, "Defendants"). LPL contends that Defendants have infringed two patents owned by LPL, U.S. Patent No. 6,738,121 ("the '121 Patent") and U.S. Patent No. 5,019,002 ("the '002 Patent") (collectively, the "Patents-in-Suit"). The Patents-in-Suit relate to the design and manufacture of liquid crystal display ("LCD") modules used in flat panel display products such as LCD computer monitors and LCD televisions.

    This case is proceeding on an expedited schedule. Trial will begin on July 17, 2006, and the parties remain in discussions regarding whether to have a bench or jury trial. The parties have served and responded to multiple sets of document requests and interrogatories. Additionally, the parties have noticed Rule 30(b)(6) and fact witness depositions, which will begin later this month.

    Regarding the *Markman* hearing set for March 6, 2006, the parties have reached agreement on a schedule for the exchange of claim terms, definitions, and briefs in advance of the hearing. The parties will present their proposal to the Court for approval.

609392v1

THE BAYARD FIRM

The Honorable Joseph J. Farnan, Jr.
February 7, 2006
Page 2

### Discovery Issues Resolved by the Parties

Counsel have met and conferred by phone several times to discuss discovery and case management issues. The parties have reached agreement in several areas and agreed to take other issues under consideration. As a result of counsel's cooperation, for example, the parties have achieved the following:

- submitting a joint protective order and proposed scheduling order;
- agreeing that voluminous discovery exchanged in a pending case in California can be used in this case;
- promptly responding to numerous interrogatories and document requests without extensions of time;
- identifying designees for Rule 30(b)(6) topics and any need for interpreters;
- exchanging proposed deposition dates and working to negotiate a schedule that meets the March 17 fact deposition deadline;
- agreeing to bring 30(b)(6) witnesses to the U.S. for depositions (plaintiff in Washington, D.C. and defendants in Los Angeles);
- attempting to make fact witnesses within each party's control available for deposition in the U.S.;
- agreeing to produce documents to each other received in response to third party subpoenas;
- agreeing on a proposed process and schedule for *Markman* briefing that meets the March 1 briefing deadline;
- agreeing to defer expert discovery until after fact discovery; and
- attempting to identify appropriate representative products and patent claims for trial.

### Representative Products and Claims

At the Scheduling Conference on December 8, 2005, the Court indicated that the parties should work to identify representative products and claims for trial. Shortly thereafter, LPL requested product information and samples from Defendants as a necessary first step toward achieving that goal. Regarding the '121 Patent, Defendants have stated that they will provide a listing of all modules by size and application; identify which modules contain Tape Carrier Packages; and identify which type of Tape Carrier Package is used in which module.

Defendants recently produced documents which we are told include, in Chinese, some of the information requested regarding the modules and Tape Carrier Packages relevant to the '121 Patent. However, the listing with information has not yet been provided by Defendants as to products and Tape Carrier Packages.

609392v1

THE BAYARD FIRM

The Honorable Joseph J. Farnan, Jr.
February 7, 2006
Page 3

In addition, Defendants have not yet produced information to identify representative products regarding the '002 Patent. Defendants' counsel has indicated that further information, as well as physical product samples, will be produced. To identify representative products and claims, LPL needs and has requested, at a minimum, the following information:

- physical product samples to assess which products may be representative;

- a list, in English, of which LCD modules and products use which types of Tape Carrier Packages (the '121 Patent relates to a Tape Carrier Package);

- a list, in English, of which LCD modules and products are manufactured using electrostatic discharge ("ESD") guard rings (the '002 Patent relates to ESD guard rings); and

- product information, including, for example, information on the manufacturing process for the motherglass used to make LCD panels (this relates to the '002 Patent).

When LPL receives this information, LPL will work with Defendants to determine representative products and claims.

Discovery Issues for the Court to Address

A.  Document Requests and Production

Both sides have made initial document productions, with additional documents to be produced. LPL has produced some documents, but other documents that may be responsive to some of Defendants' requests have not yet been produced as they are in foreign languages and need to be reviewed by personnel fluent in the relevant language to determine whether they are responsive, non-privileged, and should be produced. This process is time consuming. LPL has worked diligently, including weekends, and will continue to do so to produce responsive, non-privileged documents on a rolling basis as quickly as possible. LPL will be able to produce additional documents no later than Friday, February 10, and will continue to produce documents as they are obtained from the client and reviewed.

With respect to Defendants' document production, LPL recently received Defendants' documents, and the documents are being reviewed. This review process is time consuming and cumbersome because many of the produced documents are in a foreign language. This makes it difficult to determine what information has been provided by Defendants, and what information has not. Defendants have also indicated that they will not produce certain requested documents. The parties have had several discussions regarding document objections, and Defendants have taken some objections under consideration. For example, LPL believes it is entitled to, and that Defendants should be required to produce, documents reflecting Defendants' methodology or basis

609392v1

THE BAYARD FIRM

The Honorable Joseph J. Farnan, Jr.
February 7, 2006
Page 4

used, during the relevant time period, to negotiate or calculate royalty rates for patents or subject matter comparable to the Patents-in-Suit. *See* Defendant CPT's Responses to Plaintiff's First Set of Requests for Production of Documents and Things at Request & Response No. 51 (Ex. 1).[1] These matters may need to be discussed with the Court.

B. **Interrogatories and Answers**

Defendants have requested that LPL answer interrogatories related to which specific claims LPL contends are infringed, and how Defendants' products infringe these claims. LPL is awaiting Defendants' product information and samples so that LPL can identify the appropriate set of products and claims for trial. After LPL receives the necessary information, LPL will be able to supplement its interrogatory answers.

In addition, Defendants informed us that, rather than providing Rule 30(b)(6) witnesses to testify regarding the basis for Defendants' contentions on patent infringement, validity, enforceability, and prior art, Defendants have instead elected to provide interrogatory answers on these topics. Defendants also suggest these topics should be the subject of expert depositions. LPL agrees with Defendants' position that this information should initially be provided pursuant to interrogatories, and then should be the subject of expert depositions, so long as this applies equally to all parties. LPL agrees to supplement its interrogatory answers to provide its position on these subjects so as to streamline the deposition process, as we understand Defendants are proposing.

C. **Rule 30(b)(6) Depositions**

Defendants have initially indicated that no witness will be designated on several topics noticed for deposition by LPL under Rule 30(b)(6). For example, LPL seeks testimony regarding: (a) Defendants' conduct after learning of the Patents-in-Suit, regarding their duty of due care (*see* Defendant CPT's Objections to Plaintiff's Notice of Rule 30(b)(6) Deposition at Topic & Objection Nos. 10, 11 (Ex. 2)[2]); (b) Defendants' agreements and relationships with customers and brands that purchase, sell, distribute, or import Defendants' relevant products (*see id.* at Topic & Objection Nos. 16, 21); and (c) Defendants' compliance with U.S. laws and regulations applicable to the design, manufacture, importation, and sale of Defendants' relevant products (*see id.* at Topic & Objection No. 29). Defendants have also informed us that they are reconsidering some of the topics to which they initially objected. We may need to discuss with the Court the scope of the topics that will be addressed by Defendants' Rule 30(b)(6) designees.

---

[1] LPL's document requests propounded to each of the four Defendants, and Defendants' responses, are substantially the same. For the Court's convenience, LPL refers to CPT's discovery responses and objections, although LPL seeks corresponding discovery from all Defendants. For example, document request no. 44 to CPT corresponds to request no. 48 to Tatung, Tatung America, and ViewSonic.

[2] With respect to Topics 10 and 11, Defendants have agreed to designate a witness, but only "to testify regarding CPT's first awareness of the Patents-in-Suit." LPL does not agree with the limitation Defendants apparently have placed on this topic, and seeks testimony on the topic as framed by LPL.

THE BAYARD FIRM

The Honorable Joseph J. Farnan, Jr.
February 7, 2006
Page 5

Respectfully submitted,

/s/ Richard D. Kirk (rk0922)

RDK/slh
cc:   Clerk of the Court (by hand)
      All counsel as shown on the attached certificate

609392v1