**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| LG. PHILIPS LCD CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | C. A. No. 05-292 (JJF) |
| | ) | |
| v. | ) | **REDACTED - PUBLIC VERSION** |
| | ) | |
| TATUNG COMPANY; | ) | |
| TATUNG COMPANY OF AMERICA, INC.; | ) | |
| CHUNGHWA PICTURE TUBES, LTD.; | ) | |
| AND VIEWSONIC CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

**MOTION FOR RECONSIDERATION OF THE COURT'S FEBRUARY 24**
**AND MARCH 1, 2006 ORDERS CONCERNING THIRD PARTY DISCOVERY**

Of Counsel:

Christine A. Dudzik
Thomas W. Jenkins
Howrey LLP
321 North Clark Street, Suite 3400
Chicago, Illinois 60610
(312) 595-1239


Dated:  March 13, 2006

Robert W. Whetzel (#2288)
whetzel@rlf.com
Matthew W. King (#4566)
king@rlf.com
Richards, Layton & Finger
One Rodney Square, P.O. Box 551
Wilmington, DE 19899
(302) 651-7700
Attorney for Defendants/Counterclaimants
Tatung Company, Tatung Company of
America, Chunghwa Picture Tubes, Ltd. and
ViewSonic Corporation

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................. ii

INTRODUCTION ............................................................................................... 1

FACTUAL BACKGROUND .................................................................................. 3

    I.    Original On-Sale Evidence re: CPT modules CLAA141XB01 and
        CLAA150XA03 ...................................................................................... 3

    II.   CPT's Continued Diligent Search for Additional On-Sale Modules ........................... 3

    III.  CPT's Discovery of Additional On-Sale Modules Manufactured by
        Sharp and Mitsubishi Representing Different, Preferred
        Embodiments of the '121 Patent ................................................................. 4

    IV.  LPL's February 21 Document Production .................................................... 5

ARGUMENT ..................................................................................................... 6

    I.    Reconsideration Is Appropriate ................................................................ 7

    II.   A Brief Extension Of the Discovery Schedule Is Warranted Here ........................... 10

        A.    CPT Has Diligently Sought Third Party Evidence In Support of
                Its On-Sale Bar Defense .................................................................. 11

        B.    Documentary Evidence of the Pre-March 23, 2000 Sales of the
                Sharp, Mitsubishi and LPL Modules and the Texas
                Instruments' TCPs Is Critical to CPT's Invalidity Defense ........................... 13

        C.    LPL Will Not Be Prejudiced by the Requested Extension ............................... 15

        D.    The Requested Extension will Not Necessitate a Continuance
                of the Trial Date ........................................................................... 16

CONCLUSION .................................................................................................. 16

# TABLE OF AUTHORITIES

## CASES

*Alt v. Medtronic, Inc.,*
C.A. No. 04-370, 2006 WL 278868 (E.D. Tex. Feb. 1, 2006) ...................................................10, 11

*Cardinal Chem. Co. v. Morton Int'l, Inc.,*
508 U.S. 83 (1993)....................................................................................................................10

*Ciena Corp. v. Corvis Corp.,*
352 F. Supp.2d 526 (D. Del. 2005)...............................................................................................7

*Enzo Life Sciences, Inc. v. Digene Corp.,*
270 F. Supp.2d 484 (D. Del. 2003)..............................................................................................10

*Max's Seafood Caf v. Quinteros,*
176 F.3d 669 (3d Cir.1999)...........................................................................................................7

*Nestier Corp. v. Menasha Corp.-Lewisystems Div.,*
739 F.2d 1576 (Fed. Cir. 1984)........................................................................................7, 10, 15

*Poly-America, L.P. v. GSE Lining Tech., Inc.,*
383 F.3d 1303 (Fed. Cir. 2004)....................................................................................................6

*Rent-A-Center, Inc. v. 47 Mamaroneck Ave. Corp.,*
215 F.R.D. 100 (S.D.N.Y. 2003) ................................................................................................10

## STATUTES

35 U.S.C. § 102(b) .......................................................................................................................6

Fed. R. Civ. P. 16(b) ..................................................................................................................10

This motion concerns highly relevant patent invalidity evidence uncovered within days of the Court's February 21, 2006 document production cut-off date. Some of the uncovered evidence was known to LG Philips LCD Co., Ltd ("LPL") and withheld by LPL until the February 21st cut-off date. Accordingly, Defendants Chunghwa Picture Tubes Ltd., ViewSonic Corporation, Tatung Company of America and Tatung Company (collectively, "CPT") respectfully move this Court under Delaware Local Rule 7.1.5 for reconsideration of its February 24 and March 1, 2006 Orders concerning third party discovery. Specifically, CPT seeks reconsideration of this Court's February 24th Order denying CPT's request for a short extension of the document discovery cut-off to allow for the completion of third party discovery concerning the on-sale bar to U.S. Patent 6,738,121 ("the '121 Patent"). CPT also seeks reconsideration of this Court's March 1st Order quashing all outstanding third-party subpoenas and excluding all third-party documents produced after February 21, 2006. Justice requires affording a limited extension of time to obtain this highly relevant evidence, the existence of which has only recently become known to CPT.

## INTRODUCTION

As addressed during oral argument on March 1st, CPT seeks to conduct third-party discovery on four issues: (1) LPL's pre-March 23, 2000 sales of modules, including but not limited to the LB121S1-A2, incorporating tape carrier packages ("TCPs") embodying some or all of the claims of the '121 Patent, (2) LPL's pre-March 23, 2000 purchases of TCPs from Texas Instruments Korean Limited ("Texas Instruments"), (3) Sharp Electronics' ("Sharp's") pre-March 23, 2000 sales of modules incorporating TCPs embodying some or all of the claims of the '121 Patent, including but not limited to the LQ15X01W, LQ150X1DG11 and the LQ12S41 modules and (4) Mitsubishi's pre-March

1

23, 2000 sales of modules incorporating TCPs embodying some or all of the claims of the '121 Patent, including but not limited to the AA11SB6C-ADFD and the AA121SJ23 modules.

CPT did not learn that each of these modules and TCPs embodied some or all of the claims of the '121 Patent and that each was offered for sale or sold prior to the March 23, 2000 critical date until **after** the February 8th hearing at which the Court set the February 21st document production cut-off. Specifically, the need for CPT to pursue third-party discovery on items (1) and (2) above was not apparent until after the February 21st discovery cut-off because of two separate acts of discovery misconduct by LPL: first, LPL failed to disclose in its Rule 26(a) Initial Disclosure Statement either the pre-March 23, 2000 sales of its LB121S1-A2 module or that Texas Instruments was LPL's pre-March 23, 2000 TCP supplier **and** second LPL withheld all documents evidencing these facts until February 21st. CPT, although diligently pursuing such evidence, did not uncover the need to pursue third-party discovery on items (3) and (4) until February 16th. Since then, CPT has uncovered additional modules manufactured by Sharp and Mitsubishi that embody some or all of the claims of the '121 Patent and were on-sale prior to the critical date.

The discovery conducted to date (some of which was halted under the Court's March 1st Order) reveals a likelihood that at least an additional six independent and non-cumulative bases exist to invalidate the '121 Patent under the on-sale bar defense. CPT believes that a limited amount of additional discovery (largely to be conducted through the subpoenas quashed by the Court's March 1 Order) will yield this critical evidence Consistent with both the United States Supreme Court's and the Court of Appeals for the

2

Federal Circuit's emphasis on protecting the public's interest in eliminating invalid patents from the marketplace, and in the interests of fairness to CPT in light of LPL's withholding of critical documents until the February 21 cutoff date, the Court should extend document discovery for the limited purpose of allowing CPT to conduct discovery on the issues itemized above.

**FACTUAL BACKGROUND**

## I.  ORIGINAL ON-SALE EVIDENCE RE: CPT MODULES CLAA141XB01 AND CLAA150XA03

Several months ago, CPT made this Court aware that it believed that the '121 Patent was invalid for violation of the on-sale bar. At that time, CPT's belief was based solely on two CPT modules (CLAA141XB01 and CLAA150XA03) that were sold to Paneltronix, a California company, on February 16, 2000. CPT timely conducted the necessary discovery to substantiate its on-sale bar defense only as to these two modules. CPT timely produced those modules and an invoice evidencing the February 16, 2000 sales to Paneltronix by the February 21 deadline. *See* Ex. A. The present motion for reconsideration does not pertain to those two modules.

## II.  CPT'S CONTINUED DILIGENT SEARCH FOR ADDITIONAL ON-SALE MODULES

CPT has diligently continued a search for other modules embodying some or all of the claims of the '121 Patent to ensure its ability to meet the clear and convincing evidence standard for an on-sale bar defense. Such a "needle in a hay stack" search is difficult, particularly where LPL has obstructed discovery by withholding relevant documents called for in CPT's requests for documents relevant to the on-sale bar. Nonetheless, CPT diligently pursued this evidence by purchasing (second hand) stand-alone modules, laptops and monitors that were first offered for sale prior to March 23,

2000. As of the original close of party discovery on February 3, CPT had not discovered any additional modules embodying some or all of claims of the '121 Patent that it could prove were sold or offered for sale prior to the March 23, 2000 critical date.

At the February 8 discovery hearing, this Court for the first time set the February 21st date for the close of third-party discovery. Prior to this hearing, CPT did not believe the Court had established a cut-off for third-party discovery.

## III.    CPT'S DISCOVERY OF ADDITIONAL ON-SALE MODULES MANUFACTURED BY SHARP AND MITSUBISHI REPRESENTING DIFFERENT, PREFERRED EMBODIMENTS OF THE '121 PATENT

After the February 8 hearing, CPT continued its efforts to identify additional on-sale modules embodying some or all of claims of the '121 Patent. The reward came on February 16th (just 5 calendar days, but only one business day, before the newly established third-party document production cut-off) when CPT first discovered the LQ15X01W module manufactured by Sharp. This panel appeared to have been offered for sale prior to the March 23, 2000 critical date. CPT immediately contacted Sharp and several of its customers seeking transactional documents reflecting sales of these two modules prior to March 23, 2000.

In response to both informal requests and subpoenas, Sharp and three of its customers – Ram Electronics ("Ram"), Raylar Design, Inc. ("RD") and Audio International, Inc. ("AI") – produced documents evidencing that almost 1000 units of Sharp's LQ15X01W module were sold to RD, AI and others prior to the March 23, 2000 critical date. CPT produced these documents to LPL on February 21st (RAM-D 0001 and CPT-D 027844-66, the later received from RD and inadvertently assigned a CPT-D bates label), February 23 (RD-D 0001-0045), February 24th (SHARP-D 001-011) and

February 28th (AUD-D 0001-0003). *See* Exs. C-G. CPT also offered the LQ15X01W
Sharp module for inspection by the February 21 deadline. *See* Exs. H & I.

While investigating pre-March 23, 2000 sales of Sharp's LQ15X01W module,
CPT uncovered two additional Sharp modules (the LQ150X1DG11 and the LQ12S41)
that also appeared to have been on-sale prior to March 23, 2000. CPT has continued to
pursue discovery from third-parties to uncover transactional documents concerning these
sales.

CPT's continuing investigation of on-sale modules also lead to the discovery of
two Mitsubishi modules – the AA11SB6C-ADFD and the AA121SJ23, as incorporated
into the HP Omnibook XE2. These modules were offered for inspection by the February
21st deadline. *See* Ex.H.

Another Sharp customer has notified CPT that it also has documents reflecting its
pre-March 23, 2000 purchases of Sharp modules. This third-party is ready and willing to
produce documents.

In addition to promptly seeking third-party discovery on pre-March 23, 2000 sales
of the Sharp and Mitsubishi modules, CPT alerted the Court by letter of the newly
discovered evidence and proactively sought a short extension of the impending February
21st cut-off. LPL opposed CPT's request and the Court denied that request on February
24th.

## IV.    LPL'S FEBRUARY 21 DOCUMENT PRODUCTION

On February 21, LPL produced <u>for the first time</u> documents suggesting that ***LPL
itself*** sold the LB121S1-A2 module prior to the March 23, 2000 critical date and that
***LPL*** purchased TCPs from Texas Instruments prior to March 23, 2000. *See* Exs. J-L.
**One document produced by LPL on February 21 shows that LPL received "Buyer**

Comment" on the LB121S1-A2 module from a "Buyer: Open Market" on or before December 27, 1999. Ex. J (LPL II 012010-11). Another document produced by LPL on February 21 is an LPL bill of materials dated October 12, 1999 showing that LPL used a Texas Instruments TCP in the LB121S1-A2 module prior the critical date. *See* Ex. L at LPL 11 07098. No facts concerning either LPL's pre-March 23, 2000 sales of modules incorporating TCPs embodying some or all of the claims of the '121 Patent or LPL's purchases of TCPs from Texas Instruments were previously disclosed by LPL in either its Rule 26(a) Initial Disclosure Statement or its discovery responses. *See* Ex. B.

Had LPL disclosed either of these facts prior to the last day of the document discovery period, CPT would have pursued third-party discovery from purchasers of the LB121S1-A2 concerning their pre-March 23, 2000 purchases of this module and from Texas Instruments concerning its pre-March 23, 2000 sales of TCPs to LPL. However, LPL did not disclose these facts until February 21 – when it was too late for CPT to pursue third-party document discovery on these issues. CPT suspects that additional, not yet disclosed *LPL* modules incorporating TCPs embodying some or all of the claims of the '121 Patent also may have been offered for sale and/or sold prior to the critical date. LPL's misconduct should not be rewarded; CPT should be allowed to conduct discovery on LPL and the relevant third-parties for pre-March 23, 2000 sales of any modules incorporating TCPs embodying some or all of the claims of the '121 Patent and LPL's pre-March 23, 2000 purchases of TCPs from Texas Instruments.

## ARGUMENT

CPT must meet the clear and convincing standard in order to establish its on-sale bar invalidity defense under 35 U.S.C. § 102(b). *Poly-America, L.P. v. GSE Lining*

6

*Tech., Inc.*, 383 F.3d 1303, 1308 (Fed. Cir. 2004). As such, evidence of pre-critical date sales of the newly discovered modules provides highly relevant and critical evidence, the development of which serves the interests not only of CPT, but the public and the Court, as well. This evidence is in no way cumulative of the earlier discovered CPT panels sold to Paneltronix, because the newly discovered modules all appear to be preferred embodiments of the '121 Patent, while the CPT modules are alternative embodiments.

As the Federal Circuit states, "[t]here is a *stronger* public interest in the elimination of invalid patents than in the affirmation of a patent as valid[.]" *Nestier Corp. v. Menasha Corp.-Lewisystems Div.*, 739 F.2d 1576, 1581 (Fed. Cir. 1984) (emphasis added). Here, it appears that at least eight different modules (including at least one sold by LPL itself!) and at least one TCP, representing several different embodiments of the '121 Patent, were sold prior to the March 23, 2000 critical date. CPT should be granted a short extension of the discovery cut-off to complete its discovery concerning pre-March 23, 2000 sales of modules by LPL, Sharp and Mitsubishi and TCPs by Texas Instruments.

## I. **RECONSIDERATION IS APPROPRIATE**

This Court may reconsider its February 24 and March 1 orders on any of three grounds: "(1) change in the controlling law; (2) newly available evidence; or (3) need to correct a clear error of law or fact to prevent manifest injustice." *Ciena Corp. v. Corvis Corp.*, 352 F. Supp.2d 526, 527 (D. Del. 2005) (citing *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir.1999)). Here, CPT seeks reconsideration based on the second and third grounds.

First, reconsideration is appropriate because there is newly available evidence establishing that the '121 Patent is invalid under the on-sale bar. As discussed above,

7

included within LPL's February 21 document production were several documents that revealed _for the first time_ that (1) LPL offered for sale or sold the LB121S1-A2 module prior to the March 23, 2000 critical date (LPL II 012010-11, 011602-10) and (2) that LPL purchased TCPs from Texas Instruments prior to March 23, 2000 (LPL II 06681-84, 011611-15). _See_ Ex. J (LPL II 012010-11), Ex. K (LPL II 011602-10) & Ex. L (LPL II 011611-15, LPL 681-84, LPL II 07096-98, LPL II 07164-65, LPL II 07166-07171, LPL II 07108-09, LPL II 06875-76). As discussed above, because LPL's production suffered from many deficiencies, CPT believes it is likely that LPL has **_in its possession_** additional documents evidencing pre-March 23, 2000 sales of additional LPL modules that incorporate TCPs embodying some or all of the claims of the '121 Patent.

Additionally, CPT first discovered the first of several on-sale Sharp modules on February 16th – after the February 8th hearing when the Court first established the third-party document discovery cut-off and only one business day prior to the cutoff. CPT also discovered evidence of pre-March 23, 2000 sales of two Mitsubishi modules after the February 8th hearing. Had CPT been aware of any of this evidence at the February 8th hearing, CPT would have advised the Court and asked for an appropriate amount of time to investigate these newly discovered leads.

Second, reconsideration is also appropriate here on the independent ground that there is a need to correct a clear error of law or fact to prevent manifest injustice. Specifically, LPL's withheld information concerning both its own pre-March 23, 2000 sales and offers for sale of the LB121S1-A2 module (and quite possibly other as-yet-undisclosed modules) and its purchases of TCPs from Texas Instruments. _See_ Exs. J-L. These facts provide a clear basis for establishing manifest injustice to CPT if LPL is

8

permitted to benefit from its discovery misconduct. Both of these facts should have been disclosed in LPL's Rule 26(a) Initial Disclosure Statement, but were not. *See* Ex. B.

Additionally, CPT believes that the Court denied its request for a limited extension of time to conduct further third-party discovery on the issue of the on-sale bar at least in part based on the assumption that this on-sale evidence was the same on-sale evidence that CPT had first brought to the Court's attention in late 2005. CPT acknowledges that it had plenty of time to pursue evidence about the originally discovered on-sale modules (CLAA141XB01 and CLAA150XA03, both manufactured by CPT and sold to Paneltronix on February 16, 2000) prior to the February 21st cut-off date. However, CPT's request was not directed to those on-sale modules and is not pursuing additional discovery on those sale in this motion

Finally, in view of the LPL's aggressive enforcement of the patent in question, precluding completion of the requested discovery would be unjust to all other potential defendants, and hinder judicial economy.[1] This Court is well-acquainted with the difficulties that can arise when on-sale evidence is presented in litigation following prior adjudications of a patent's validity. Those difficulties can be eliminated entirely by granting the requested relief.

---

[1] LPL is currently the Plaintiff in at least seven other cases many of which are against some of all of the defendants in this case: (1) *LG.Philips LCD Co., Ltd v. Tatung Co., Tatung Co. of America and Chunghwa Picture Tubes, Ltd.* (C.A. No. 02-6775 (CBM)(JTLx) [Consolidated with Case Nos.: CV-03-2884 CBM, CV-03-2885 CBM and CV-03-2886 CBM]; (2) *LG.Philips LCD Co,. Ltd, v. Jean Company, Ltd.*, (C.A. No. 03-2866 CBM); (3) *LG.Philips LCD Co., Ltd. v. Lite-On Technology Corporation and Lite-On Technology International Incorporated*, (C.A. No. 03-2884); (4) *LG.Philips LCD Co., Ltd. v. TPV Technology, Ltd. and Envision Peripherals, Inc.*, (C.A. No. 03-2885 CBM); (5) *LG.Philips LCD Co., Ltd. v. ViewSonic Corporation*, (C.A. No. 03-2886); (6) *LG.Philips LCD v. Frame & Bovio*, (C.A. No. 04 CV 11076), aff'd. (C.A. No. 05-1240); (7) *LG.Philips LCD Co., Ltd. v. Tatung Co., Tatung Co. of America, ViewSonic Corporation.*, (C.A. No. 04-00343-JJF).

RLF1-2988109-1

Thus, for the foregoing reasons and in light of the strong public policy interest in favor of eliminating invalid patents from the marketplace, CPT requests the Court to provide a brief extension to complete its discovery on the above-identified four issues. *See, e.g., Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 100 (1993) (reversing Federal Circuit practice of vacating district court invalidity findings in conjunction with non-infringement findings in light of strong public interest in resolving questions of patent validity); *Nestier Corp.*, 739 F.2d 1576 at 1581 ("There is a *stronger* public interest in the elimination of invalid patents than in the affirmation of a patent as valid.") (emphasis added).

## II.    A BRIEF EXTENSION OF THE DISCOVERY SCHEDULE IS WARRANTED HERE

In relevant part, Rule 16(b) provides that a pretrial Scheduling Order "shall not be modified except upon a showing of good cause and by leave of the District Judge . . . ." Fed. R. Civ. P. 16(b). Thus, this Court may exercise broad discretion to modify its discovery deadlines. *See, e.g., Alt v. Medtronic, Inc.*, C.A. No. 04-370, 2006 WL 278868, at *2 (E.D. Tex. Feb. 1, 2006) (permitting defendant to update its preliminary invalidity contentions after deadline and *Markman* hearing had passed, recognizing the importance of the prior art references to defendant's defense). "[G]ood cause depends on the diligence of the moving party. In other words, the movant must show that the deadlines cannot be reasonably met despite its diligence." *Rent-A-Center, Inc. v. 47 Mamaroneck Ave. Corp.*, 215 F.R.D. 100, 104 (S.D.N.Y. 2003); *see also*, Fed. R. Civ. P. 16 advisory committee note ("[T]he court may modify the schedule on a showing of good cause if [the deadlines] cannot be reasonably met despite the diligence of the party seeking the extension."); *Enzo Life Sciences, Inc. v. Digene Corp.*, 270 F. Supp.2d 484,

10

(D. Del. 2003) (permitting defendant to amend its answer after the deadline upon finding good cause where "there was no undue delay or a likelihood of prejudice to [plaintiff]").

In *Alt*, the court evaluated four factors to determine that a scheduling order modification was warranted:

> (1) the explanation for the failure to meet the deadline;
> (2) the importance of the thing that would be excluded;
> (3) potential prejudice in allowing the thing that would be excluded; and
> (4) the availability of a continuance to cure such prejudice.

*Id.*, 2006 WL 278868, at *2 (citation omitted). An analysis of these four factors supports granting the brief extension requested by CPT.

### A.    CPT Has Diligently Sought Third Party Evidence In Support of Its On-Sale Bar Defense

As discussed in detail above, CPT <u>first learned</u> of the potential on-sale evidence concerning LPL's pre-March 23, 2000 sales of the LB121S1-A2 (and possibly additional as yet undisclosed modules) and LPL's pre-March 23, 2000 purchases of TCPs from Texas Instruments from documents produced by LPL on February 21. *See* Exs. J-L. LPL did not disclose this highly relevant information in its Rule 26(a) Initial Disclosure Statement prior to the close of document discovery. *See* Ex. B. As such, CPT's failure to seek third-party discovery from LPL's customers and Texas Instruments does not reflect a lack of diligence; it merely reflects the effectiveness of LPL's deceit.

Also as discussed above, CPT <u>first learned</u> of the potential on-sale evidence concerning Sharp's pre-March 23, 2000 sales of the LQ15X01W on February 16 and subsequently learned of and substantiated pre-March 23, 2000 sales of Sharp's LQ150X1DG11 and LQ12S41 modules and Mitsubishi's AA11SB6C-ADFD and AA121SJ23 modules. The timing of CPT's discovery of these five on-sale modules was not the result of a lack of diligence. To the contrary, it was only as a result of CPT's

11

extreme diligence in searching out potential pre-March 23, 2000 on-sale modules that these five modules were discovered at all. Immediately upon discovering each of these five modules, CPT contacted Sharp and Mitsubishi and their customers seeking both formal (subpoena) and informal discovery concerning sales of these three modules prior to the critical date, making every effort to meet the production deadline. The fact that CPT was able to produce any documents reflecting sales of any of these five modules prior to the February 21 cut-off is evidence of its diligence.

Several third-parties produced documents after the February 21 cut-off and CPT has continued to produce those documents to LPL to alleviate any potential prejudice. CPT is aware that at least one additional third-party already has collected and is ready to produce additional documents showing pre-March 23, 2000 sales of Sharp's LQ15X01W and LQ150X1DG11 modules. Production of these documents should be allowed, and that production should be considered timely.

As demonstrated above, as in *Alt*, this is not a case where CPT had knowledge of prior art references and simply neglected to produce them. Rather, this is a case where evidence of prior sales was within the possession of LPL, CPT's competitors (Sharp and Mitsubishi) and third-parties (including LPL's TCP supplier Texas Instruments, LPL's customers and the customers of CPT's competitors, Sharp and Mitsubishi). In the case of LPL, this information was withheld (and likely continues to be withheld) until such time as CPT could not timely conduct third-party discovery. Under these circumstances, the third-party documents produced on February 23 (RD-D 0001-0045), February 24 (SHARP-D 001-011) and February 28 (AUD-D 0001-0003) should be deemed timely produced. *See* Exs. E-H. Further, CPT's outstanding subpoenas to other third-parties

should be reinstated and CPT should be allowed to issue further third-party subpoenas to complete its discovery of the pre-March 23, 2000 sales and offers for sale of modules manufactured by LPL, Sharp and Mitsubishi and TCPs manufactured by Texas Instruments that embody one or more of the claims of the '121.

As this Court is aware, evidence relevant to the existence of an on-sale bar is often elusive and difficult to obtain. CPT has been exceedingly diligent, and seeks only a very short extension of time to conduct follow-up discovery on the newly identified panels and sales that have just come to light. CPT believes it can complete this discovery in three weeks.

**B.    Documentary Evidence of the Pre-March 23, 2000 Sales of the Sharp, Mitsubishi and LPL Modules and the Texas Instruments' TCPs Is Critical to CPT's Invalidity Defense**

Documentary evidence establishing that one or more of the modules manufactured by LPL, Sharp and Mitsubishi that embody one or more of the claims of the '121 and/or the TCPs manufactured by Texas Instruments that embody one or more of the claims of the '121 was sold prior to the March 23, 2000 critical date would establish an on-sale bar of alternative embodiments disclosed in the '121 Patent, and thus clearly invalidate all of the claims of the '121 Patent. This evidence is not cumulative of the previous on-sale discovery conducted by CPT as to the two CPT panels.

As discussed above, CPT was unaware of the pre-March 23, 2000 offers for sale and sales of LPL's LB121S1-A2 module (and quite possibly offers for sale and sales of other LPL modules that still have not been disclosed) due to LPL's own discovery misconduct. On these facts, CPT should be allowed to conduct third-party discovery to uncover evidence of these sales by LPL that would invalidate some or all of the claims of the '121 Patent.

13

Additionally, it is **undisputed** that documents establishing the pre-March 23, 2000 sale of at least the LQ15X01W module manufactured by Sharp exist in the files of third-parties, as documents evidencing this fact were produced in this case on February 21 (RAM-D 0001 and CPT-D 027844-63, the later received from RD and inadvertently assigned a CPT-D bates label), February 23 (RD-D 0001-0045), February 24 (SHARP-D 001-011) and February 28 (AUD-D 0001-0003). *See* Exs. C-H. Thus, at a minimum, the portion of these documents produced after February 21 should be deemed timely produced. Additional third-parties have been cooperating with CPT, and CPT is <u>certain</u> that at least one additional third-party already has collected and is ready to produce additional documents showing pre-March 23, 2000 sales of both the LQ15X01W module and the LQ150X1DG11 module, also manufactured by Sharp. Production of these documents should be allowed, and that production should be considered timely.

Further, documentary evidence establishing the pre-March 23, 2000 sale of a TCP manufactured by Texas Instruments could invalidate some or all of the claims of the '121 Patent. As is true of the evidence of LPL's own sales of the LB121S1-A2 module, CPT was unaware the Texas Instruments was a pre-March 23, 2000 supplier of TCPs to LPL until February 21. CPT's ignorance of this issue was due entirely to LPL's own discovery misconduct -- namely, failing to disclose this fact (or identify Texas Instruments in any way) in its Initial Disclosures and withholding all evidence of this fact until the close of document discovery. *See* Exs. B & J-L. As such, LPL should not be allowed to gain from its misconduct through this Court's denial of CPT's request for a short extension of time to investigate this newly disclosed information.

**C.    LPL Will Not Be Prejudiced by the Requested Extension**

Granting CPT an additional three weeks to conduct third-party discovery on the above-identified four issues will not cause any prejudice to LPL. To the contrary, rather than prejudicing LPL, this continuance will do no more than to mitigate the unfair advantage LPL gained by withholding until February 21st evidence in its possession concerning *its own* pre-March 23, 2000 sales of the LB121S1-A2 (and possibly additional yet-to-be-disclosed modules) and *its own* pre- March 23, 2000 purchases of TCPs from Texas Instruments. Even LPL's just-under-the-wire February 21st production contained only a few documents evidencing its pre-March 23, 2000 sales of at least the LB121S1-A2 and its pre-March 23, 2000 purchases of TCPs from Texas Instruments, prompting CPT's February 28 deficiency letter and this Court's March 1 Rule 37 Order compelling LPL to supplement its production at risk of sanctions. LPL may produce further documents evidencing additional pre-March 23, 2000 sales of the LB121S1-A2 (and any other modules incorporating TCPs embodying some of all of the claims of the '121 Patent) and purchases of TCPs by March 17th that may illuminate for the first time additional, appropriate avenues of third-party on-sale bar discovery.

LPL will have a full opportunity to evaluate through depositions (for which no deadline has yet been scheduled) the evidence of the pre-March 23, 2000 sales of the three on-sale Sharp modules, the two on-sale Mitsubishi module and *LPL's own* on-sale modules as well as its own pre-March 23, 2000 purchases of TCPs from Texas Instruments.

Moreover, since no dates have yet been set for the submission of expert reports or expert depositions, LPL's expert(s) will have every opportunity to opine on whether any or all of the sales of these LPL, Sharp and Mitsubishi modules and/or the Texas

15

Instruments TCPs constitute an on-sale bar. Thus, the continuance sought by CPT can not reasonably be said to prejudice LPL.

**D.    The Requested Extension will Not Necessitate a Continuance of the Trial Date**

Because LPL will suffer no prejudice and will have every opportunity to depose third-party witnesses as well as have the benefit of its expert opinion on the import of the pre-March 23, 2000 sales of the LPL, Sharp and Mitsubishi modules as well as Texas Instruments' pre-March 23, 2000 sales of TCPs, there will be no need for a continuance of any other discovery deadlines. Allowing CPT an additional three weeks to complete this discovery will in no way affect either dispositive motions or the trial date.

## CONCLUSION

The brief extension requested by CPT will serve the interests of justice, without prejudice to LPL, and without affecting the current case schedule. Accordingly, CPT requests the Court to grant this motion in its entirety.

Robert W. Whetzel (#2288)
whetzel@rlf.com
Matthew W. King (#4566)
king@rlf.com
Richards, Layton & Finger
One Rodney Square, P.O. Box 551
Wilmington, DE 19899
(302) 651-7700
Attorney for Defendants/Counterclaimants
Tatung Company, Tatung Company of
America, Chunghwa Picture Tubes, Ltd.
and ViewSonic Corporation

Of Counsel:
Christine A. Dudzik
Thomas W. Jenkins
Howrey LLP
321 North Clark Street, Suite 3400
(312) 595-1239

Dated: March 6, 2006

16

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| LG. PHILIPS LCD CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | C. A. No. 05-292 (JJF) |
| | ) | |
| v. | ) | |
| | ) | |
| TATUNG COMPANY; | ) | |
| TATUNG COMPANY OF AMERICA, INC.; | ) | |
| CHUNGHWA PICTURE TUBES, LTD.; | ) | |
| AND VIEWSONIC CORPORATION, | ) | |
| | | |
| Defendants. | | |

**ORDER**

WHEREAS, Defendants Tatung Company, Tatung Company of America, Inc., Chunghwa Picture Tubes, Ltd. and Viewsonic Corporation have moved this Court for reconsideration of the Court's February 24 and March 3 , 2006 Orders concerning third party discovery,

IT IS HEREBY ORDERED this ___ day of _____, 2006, that the Motion is GRANTED. Defendants Tatung Company, Tatung Company of America, Inc., Chunghwa Picture Tubes, Ltd. and Viewsonic Corporation shall have three (3) weeks from this date to complete third party discovery.

_____
United States District Judge

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 6, 2006, I electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send notification of such filing, and hand delivered to the following:

> Richard D. Kirk
> The Bayard Firm
> 222 Delaware Avenue, Suite 900
> P.O. Box 25130
> Wilmington, DE 19899

I hereby certify that on March 6, 2006, I sent the foregoing document by Federal Express, next business day delivery, to the following non-registered participants:

> Gaspare J. Bono
> Matthew T. Bailey
> Andrew J. Park
> Adrian Mollo
> McKenna Long & Aldridge LLP
> 1900 K Street, NW
> Washington, DC 20006

> Matthew W. King (#4566)
> king@rlf.com
> Richards, Layton & Finger
> One Rodney Square
> P.O. Box 551
> Wilmington, DE 19899

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 13, 2006, I electronically filed the foregoing

document with the Clerk of Court using CM/ECF which will send notification of such filing, and

hand delivered to the following:

> Richard D. Kirk
> The Bayard Firm
> 222 Delaware Avenue, Suite 900
> P.O. Box 25130
> Wilmington, DE 19899

I hereby certify that on March 13, 2006, I sent the foregoing document by Federal

Express, next business day delivery, to the following non-registered participants:

> Gaspare J. Bono
> Matthew T. Bailey
> Andrew J. Park
> Adrian Mollo
> McKenna Long & Aldridge LLP
> 1900 K Street, NW
> Washington, DC 20006

> Matthew W. King (#4566)
> king@rlf.com
> Richards, Layton & Finger
> One Rodney Square
> P.O. Box 551
> Wilmington, DE 19899