# EXHIBIT A

### King, Matthew W.

**From:** Dudzik, Christine [DudzikC@howrey.com]
**Sent:** Thursday, March 16, 2006 2:34 PM
**To:** King, Matthew W.
**Subject:** FW: Markman Schedule

Matt
Here is the "paper" trial regarding reply briefs.

---

**From:** Bono, Gaspare [mailto:gbono@mckennalong.com]
**Sent:** Friday, February 10, 2006 2:02 PM
**To:** Gabler, Julie
**Cc:** Dudzik, Christine; Li, James
**Subject:** RE: Markman Schedule

Julie: Thank you for your e-mail. Your phrasing of items one and two is not accurate as set forth at the hearing (see the transcript), although the dates are fine. Also, the dates for the opening and reply briefs are fine, and of course the hearing date and time is also fine. The in-person meet and confer, however, will not work for us, so we can go back to your original date of March 2 by telephone. Here is our proposal regarding Markman schedule:

2/17   The parties exchange terms that each side is proposing would be subject to construction in the Markman proceeding;

2/24   The parties exchange proposed definitions of the terms they are proposing for construction;

3/2   Meet and confer by telephone to try to work out and narrow the terms for construction, at 2:00pm EST, 1:00pm CST, 10:00am PST.

3/8   Opening cross-Markman briefs are due.

3/15  Cross-Markman reply briefs are due.

3/20  Markman Hearing at 4:00pm EST.

Let me know if this is OK with you. Best Regards, Gap

---

**From:** Gabler, Julie [mailto:GablerJ@howrey.com]
**Sent:** Friday, February 10, 2006 1:39 PM
**To:** Bono, Gaspare
**Cc:** Dudzik, Christine; Li, James
**Subject:** Markman Schedule

Gap:

Following-up on our call yesterday, here is our counter-proposal on Markman scheduling:

    **2/17:** Parties identify disputed terms for Markman construction

3/17/2006

**2/24:** Exchange of definitions for disputed terms

**3/1 @2pm EST in-person in Delaware after the hearing:** Meet and confer re: terms/definitions to try to narrow terms to be briefed

**3/8:** Opening cross-Markman briefs due

**3/15:** Cross-Markman reply briefs due

**3/20 @4pm EST:** Markman Hearing

Thanks, Julie

---

This email and any attachments contain information from the law firm of Howrey LLP, which may be co
The information is intended to be for the use of the individual or entity named on this email.
If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the con
If you receive this email in error, please notify us by reply email immediately so that we can arrange for

CONFIDENTIALITY NOTICE:
This e-mail and any attachments contain information from the law firm of McKenna Lon

# EXHIBIT B

RLF1-2834345-1

Westlaw.

Not Reported in F.Supp.2d                                                                                        Page 1

Not Reported in F.Supp.2d, 2002 WL 531555 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

▷
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
ROCKWELL TECHNOLOGIES, LLC, Plaintiff,
v.
SPECTRA-PHYSICS LASERS, INC. and Opto
Power Corporation, Defendants.
**No. Civ.A.00-589 GMS.**

March 26, 2002.

*MEMORANDUM AND ORDER*

SLEET, J.

### I. INTRODUCTION

*1 The plaintiff, Rockwell Technologies, LLC ("Rockwell") filed the above-captioned action against Spectra-Physics Lasers, Inc. ("Spectra") and Opto Power Corporation ("Opto") on June 16, 2000. In its complaint, Rockwell alleges that Spectra and Opto are infringing U.S. Patent No. 4,368,098 ("the '098 patent").

Presently before the court is Rockwell's motion for partial summary judgment. In this motion, Rockwell asks the court to find that the '098 patent is not invalid due to alleged inequitable conduct that occurred in the prosecution of the patent application. For the reasons that follow, the court will grant this motion in part and deny it in part.

### II. STANDARD OF REVIEW

The court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Boyle v. County of Allegheny, Pennsylvania,* 139 F.3d 386, 392 (3d Cir.1998). Thus, the court may grant summary judgment only if the moving party shows that there are no genuine issues of material fact that would permit a reasonable jury to find for the non-moving party. *See Boyle,* 139 F.3d at 392. A fact is material if it might affect the outcome of the suit. *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-248 (1986)). An issue is genuine if a reasonable jury could possibly find in favor of the non-moving party with regard to that issue. *Id.* In deciding the motion, the court must construe all facts and inferences in the light most favorable to the non-moving party. *Id.; see also Assaf v. Fields,* 178 F.3d 170, 173-174 (3d Cir.1999).

With these standards in mind, the court will describe the facts and procedural history that led to the motion presently before the court.

### III. BACKGROUND

A. Prosecution of the '098 Patent

The patent-in-suit relates to a process for forming " an epitaxial film of group III-V semiconductor disposed on a single crystal substrate." Dr. Harold Manasevit ("Manasevit") developed the process described in the '098 patent. On February 13, 1968, Rockwell filed a patent application with the United States Patent and Trademark Office ("PTO"). As the application contained both process and product claims, the PTO required that Rockwell choose one to proceed with first. Rockwell elected to give precedence to the product claims.

In 1978, Rockwell retained the law firm of Staas and Halsey to prosecute the Manasevit patent application with respect to the process claims. Jack Staas ("Staas") was the Staas and Halsey attorney primarily responsible for this prosecution. On April

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 2
Not Reported in F.Supp.2d, 2002 WL 531555 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

7, 1978, Rockwell filed a divisional application seeking a patent for the process claims. This application issued as the '098 patent on January 11, 1983. It expired on January 11, 2000.

B. Alleged Prior Art

*2 In 1957, Thomas R. Scott obtained patents from Japan (the "Japanese Scott patent") and the United Kingdom (the "UK Scott patent"). Spectra and Opto allege that the UK Scott patent came to the attention of Rockwell's in-house patent attorneys while Rockwell was prosecuting the Manasevit process patent application in Great Britain. In response to that application, the UK Patent Office identified the UK Scott patent and five other prior art references. The UK Patent Office directed Rockwell's attention to those references.

Rockwell's UK patent counsel informed Rockwell's in-house patent counsel Robert Rogers ("Rogers") of the UK Scott patent and the five other references on September 29, 1972. In response to the UK patent counsel's request on how to respond to that information, Rockwell employee Martin E. Gerry prepared detailed instructions for amending Rockwell's claims to avoid the cited references. The UK patent counsel subsequently informed Rogers that it was removing from the application the original prior art cited in the application because the UK Scott patent and the other references constituted "the closest prior art."

Rockwell also applied for a Japanese patent on Manasevit's invention. On that application, Rockwell listed Frederick Hamann ("Hamann") as its representative. Hamann supervised Rockwell's in-house patent department from 1970 to 1995. As in the prosecution of the UK patent application, Scott's work was cited against the Japanese patent application.

On June 18, 1974, the Japanese patent office issued a rejection against the pending claims in Rockwell's Japanese patent application. [FN1] Rockwell's Japanese patent counsel sent the rejection to Hamann on July 6, 1974, along with a discussion of the Japanese Scott patent. The Japanese counsel also sent Hamann a copy of this patent. Rockwell's in-house patent counsel G. Donald Weber ("Weber") responded by asking for an English abstract of the Japanese Scott patent. The Japanese patent counsel complied on August 8, 1974. Weber subsequently sent them instructions on how to amend Rockwell's Japanese claims in light of the Scott patent.

> FN1. Spectra and Opto allege that the claims in Rockwell's Japanese patent application were substantively the same as the claims in the '098 patent.

C. Procedural History

On August 30, 1993, Rockwell brought an action against the United States in the United States Court of Federal Claims. In May 1995, Rockwell initiated an action against Spectra in the Northern District of California. Spectra then intervened in the Court of Federal Claims action as a third-party defendant. The Northern District of California stayed its action pending a resolution of that action.

In 1998, the United States and Rockwell settled. This settlement deprived the Claims Court of jurisdiction over the dispute between Rockwell and Spectra. Thus, on January 13, 1999, the Northern District of California court lifted its stay and reopened the matter. On July 24, 2001, the court denied Rockwell's motion for partial summary judgment on the issue of inequitable conduct.

Rockwell brought the present infringement action on June 16, 2000.

IV. DISCUSSION

*3 Spectra and Opto assert that the inventor, Dr. Harold M. Manasevit, and Rockwell's attorney Jack Staas were guilty of inequitable conduct by failing to disclose material references to the PTO. [FN2]

> FN2. Spectra and Opto deny basing their inequitable conduct claims on the Rule 132 Declaration that Manasevit filed with the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                        Page 3

Not Reported in F.Supp.2d, 2002 WL 531555 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

PTO (the "Manasevit Declaration") Further, in their opposition papers, Spectra and Opto state that they do not oppose the portion of Rockwell's summary judgment motion directed to the Manasevit Declaration. Likewise, they deny alleging that Rockwell itself, as a corporate entity, could be liable for inequitable conduct. Accordingly, it is undisputed that only Manasevit's and counsel for Rockwell's conduct is at issue.

As an initial matter, Rockwell argues for the first time in its reply brief that Spectra and Opto failed to plead inequitable conduct with particularity in their answer to the complaint and have thus waived their right to assert this affirmative defense. However, Rockwell's tactic of reserving new arguments for its reply brief amounts to impermissible "sandbagging." *See Jordan v. Bellinger,* 2000 U.S. Dist. LEXIS 19233, *18 (D. Del. April 28, 2000) (declining to address new arguments reserved for the reply brief); *see also* D. Del. L.R. 7.1.3(c)(2) (1995). Accordingly, the court declines to address Rockwell's arguments on this issue and will turn instead to the substantive merits of the motion.

Patent applicants and their legal representatives have a duty to prosecute applications with candor, good faith, and honesty. *See Molins PLC v. Textrom, Inc.,* 48 F.3d 1172, 1178 (Fed.Cir.1995). Breach of this duty can lead to a finding that the applicant engaged in inequitable conduct before the PTO. *See Life Tech., Inc. v. Clontech Lab., Inc.,* 224 F.3d 1320, 1324 (Fed.Cir.2000). The effect of such inequitable conduct is to render the affected patent unenforceable. *See id.*

In order to prove inequitable conduct, the defendants bear the burden of providing clear and convincing evidence that: (1) omitted or false information was material; (2) the applicant had knowledge of the existence and material nature of the information; and (3) the applicant intended to deceive the PTO. *See Molins,* 48 F.3d at 1178. " Materiality and intent to deceive are distinct factual inquiries, and each must be shown by clear and convincing evidence." *Life Tech,* 224 F.3d at 1324. Information is considered material "when there is a substantial likelihood that a reasonable examiner would have considered the information important in deciding whether to allow the application to issue as a patent." *Molins,* 48 F.3d at 1179. The court may infer intent from the facts and circumstances surrounding the applicant's overall conduct. *See Merck & Co. v. Danbury Pharmacal, Inc.,* 873 F.2d 1418, 1422 (Fed.Cir.1989). However, in making its inferences, the court must be aware that "[a]lthough the intent element of fraud or inequitable conduct may be proven by a showing of acts the natural consequence of which were presumably intended by the actor, this requires the fact finders to evaluate all the facts and circumstances in each case. Such an evaluation is rarely enabled in summary proceedings." *KangaROOS U.S.A., Inc. v. Caldor, Inc.,* 778 F.2d 1571, 1577 (Fed.Cir.1985) (citation omitted).

In its moving papers, Rockwell declines to address the materiality of the Scott references. The Scott patents, however, were cited by foreign patent offices against Manasevit's process. This raises at least an inference that the references are material. *See Molins,* 48 F.3d at 1180. Further, Rockwell amended the claims in its foreign patents to overcome the Scott references. Accordingly the court finds that there is a triable issue of fact with regard to the materiality of the Scott patents.

*4 The court likewise concludes that granting summary judgment on the issue of intent would be improvident. Rockwell submits that Manasevit and Staas have each stated that they were unaware of the Scott patents. The Federal Circuit has stated, however, that "[f]ailure to cite to the PTO a material reference cited elsewhere in the world justifies a strong inference that the withholding was intentional." *Molins,* 48 F.3d at 1182. Moreover, the court expresses concern over Rockwell's argument that the named inventor of the '098 patent, who is also the named inventor of the British and Japanese patents that were amended in light of the Scott patents, was not aware of the Scott patents.

When faced with a similar motion for summary judgment based on inequitable conduct with regard to these parties, the District Court for the Northern District of California explicitly reserved judgment

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 4
Not Reported in F.Supp.2d, 2002 WL 531555 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

on whether the actions of Staas and his fellow Rockwell attorneys were inequitable. [FN3] *See Rockwell v. SDL, Inc.,* No. C-95-1729, at 12, n. 11 (N.D.Cal. July 24, 2000). That court further expressed a concern identical to that which the court has in the present case arising from Manasevit's failure to disclose the Scott patents to the PTO.

> FN3. Based on the California court's denial of summary judgment on a similar issue, Spectra and Opto argue that Rockwell is now collaterally estopped from further litigating this issue. The court must disagree because a determination that there remain genuine issues of material fact is not a "final decision." *See Johnson v.. Jones,* 515 U.S. 304, 313 (1995); *see also Whitford v. Boglino,* 63 F.3d 527, 530 (7th Cir.1995) (stating that the denial of summary judgment is not a final judgment, but rather an interlocutory order in the *res judicata* context.)

While mindful of the heavy burden the defendants bear, the court is persuaded that there remain substantial questions regarding Manasevit's and Staas's knowledge and intent that are better left to trial. *See Baker Oil Tools, Inc. v. Geo Vann, Inc.,* 828 F.2d 1558, 1566 (Fed.Cir.1988) (noting that, " [i]f the facts of materiality or intent are reasonably disputed the issue is not amenable to summary disposition.")

Finally, Rockwell requests leave to file a further motion for summary judgment on inequitable conduct. Rockwell contends that this is appropriate because it was waiting for Spectra's and Opto's expert reports assessing the materiality of additional prior art references that were allegedly not disclosed to the PTO. However, as Spectra and Opto argue, the references at issue are articles that Manasevit himself wrote. Manasevit's and Rockwell's own experts were surely capable of assessing the materiality of Manasevit's work. Accordingly, the court declines to grant Rockwell additional time to file a motion that could have been filed with the instant motion for summary judgment.

V. CONCLUSION

The parties do not dispute that the corporate entity Rockwell is not being accused of inequitable conduct. Nor do they dispute that the charges of inequitable conduct are not based on the Manasevit Declaration. Thus, the court will grant Rockwell's motion with regard to these issues. However, there remain genuine issues of material fact with regard to the remaining inequitable conduct allegations.

For these reasons, IT IS HEREBY ORDERED that:
1. Rockwell's motion for partial summary judgment (D.I.149) is GRANTED in part and DENIED in part.
2. Rockwell's request to file a further motion for summary judgment on inequitable conduct (D.I.149) is DENIED.

D.Del.,2002.
Rockwell Technologies, LLC. v. Spectra-Physics Lasers, Inc.
Not Reported in F.Supp.2d, 2002 WL 531555 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:00CV00589 (Docket) (Jun. 19, 2000)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT C

Case 1:05-cv-00292-JJF   Document 149-2   Filed 03/17/2006   Page 10 of 20

Page 2
2000 U.S. Dist. LEXIS 19233, *

5 of 5 DOCUMENTS

MICHAEL JORDAN, Plaintiff, v. CAPTAIN BELLINGER, et al., Defendants.

Civil Action No. 98-230-GMS

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2000 U.S. Dist. LEXIS 19233

August 28, 2000, Decided
August 28, 2000, Filed

**DISPOSITION:** [*1] Defendants' Motion to Dismiss GRANTED IN PART. Plaintiff's claim that his constitutional right of access to courts violated by seizure of his legal documents and his constitutional right of due process violated by confiscation of his personal property by Defendants Bellinger, Tailor and Burton DISMISSED. Plaintiff's Motion to Amend GRANTED IN PART and DENIED IN PART.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** In plaintiff's suit arising from defendants prison officials' search of his cell and alleged destruction and seizure of his property, defendants filed a motion to dismiss plaintiff's due process, denial of access to the courts, and conversion claims; plaintiff moved to amend his complaint and to compel production of discovery; defendants moved for protective orders from the discovery requests.

**OVERVIEW:** Plaintiff prisoner filed a complaint alleging that defendants correctional officers violated his constitutional rights while conducting a search of his cell. He alleged violations of his U.S. Const. amend. IV rights, violations of due process, violations of his right to access to the courts, and conversion. Defendants filed a motion to dismiss, plaintiff filed a motion to amend and to compel discovery, and defendants filed a motion for protective orders from the discovery motion. The court found that, in light of favorable court rulings in his case, plaintiff failed to allege actual injury for his access to court claim. Also, he was granted a post-deprivation hearing regarding his seized property. The court therefore granted the motion to dismiss as to the access and due process claims. The court found defendants' immunity defense to the conversion claim was not applicable, so that claim, along with the U.S. Const. amend. IV claim, which defendants did not challenge, remained. The court allowed plaintiff to amend his complaint and granted the motion to compel where such allowance was not futile as a result of the court's dismissal rulings.

**OUTCOME:** The court granted: (1) the motion to dismiss the access to courts claim, finding plaintiff did not prove actual injury; (2) the motion to dismiss the due process claim, finding plaintiff was afforded a post-deprivation hearing; (3) plaintiff's motion to compel, finding, where the request was not made moot by defendants motion to dismiss, the information sought was relevant; the court denied the motion to dismiss the conversion claim.

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Supporting Papers & Affidavits*
*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action*
[HN1] A *Fed. R. Civ. P. 12(b)(6)* motion can be converted into a motion for summary judgment when the parties attach materials outside of the pleadings to their papers.

*Civil Procedure > Summary Judgment > Summary Judgment Standard*
[HN2] Under *Fed. R. Civ. P. 56(c)*, the court can only grant summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. An issue is "genuine" if, given the evidence, a reasonable jury could return a verdict in favor of the non-moving party. A fact is "material" if, under the governing law, it might affect the outcome of the case.

Case 1:05-cv-00292-JJF   Document 149-2   Filed 03/17/2006   Page 11 of 20

Page 3
2000 U.S. Dist. LEXIS 19233, *

*Civil Procedure > Summary Judgment > Burdens of Production & Proof*
[HN3] On summary judgment, the court must look at the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences and resolving all reasonable doubts in favor of that party.

*Constitutional Law > Civil Rights Enforcement > Civil Rights Act of 1871 > Coverage*
[HN4] The plaintiff must demonstrate that his efforts to pursue a legal claim were actually hindered in asserting a *42 U.S.C.S. § 1983* action.

*Constitutional Law > Procedural Due Process > Scope of Protection*
[HN5] An unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the United States Constitution if a meaningful post-deprivation remedy for the loss is available. For intentional deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable post-deprivation remedy.

*Torts > Intentional Torts > Conversion*
[HN6] Under the common law, the tort of conversion is an act of willful interference with the dominion or control over a chattel, done without lawful justification, by which any person entitled to the chattel is deprived of its use and possession. The tort is predicated on the interference with dominion or control over the chattel incident to some general or special ownership rather than on damage to the physical condition of the chattel. A person not in lawful possession of a chattel may commit conversion by intentionally dispossessing the lawful possessor of the chattel by disposing of a chattel by an unauthorized sale with the intent to transfer a proprietary interest in it, or by refusing to surrender a chattel on demand to a person entitled to lawful possession.

*Torts > Intentional Torts > Conversion*
[HN7] The modern law remedy for conversion has emerged from the common law action of trover, which was premised on the theory that the defendant had appropriated the plaintiff's chattel for which he must pay. A plaintiff who proved conversion in a common law trover action was entitled to damages equal to the full value of the chattel at the time and place of the conversion.

*Torts > Public Entity Liability > Immunity*
[HN8] The Delaware Tort Claims Act, *Del. Code Ann. tit. 10, § 4011*, expressly exempts willful or intentional acts from coverage. *Del. Code Ann. tit. 10, § 4011(c)*.

*Criminal Law & Procedure > Postconviction Proceedings > Imprisonment & Prisoner Rights*
[HN9] Prison inmates do not retain a constitutionally-protected right of privacy in their prison cells, which can be searched at random at any time. Nevertheless, these searches must still be conducted in a reasonable manner.

*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings*
[HN10] Under *Fed. R. Civ. P. 15(a)*, the court must freely grant leave to amend. In fact, under this liberal standard, the court can only deny a motion to amend under a limited number of circumstances.

*Civil Procedure > Pleading & Practice > Pleadings > Interpretation*
[HN11] *Fed. R. Civ. P. 8(a)(2)* requires a plaintiff to set forth a short and plain statement showing that he is entitled to relief.

*Civil Procedure > Pleading & Practice > Filing of Complaint*
[HN12] *Fed. R. Civ. P. 8(a)(3)* explains that the complaint must contain a demand for judgment for the relief sought.

**COUNSEL:** Michael Jordan, Plaintiff, Pro se, Smyrna, Delaware.

For Defendants: Ophelia M. Waters, Esquire, State of Delaware Department of Justice, Wilmington, Delaware.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Gregory M. Sleet

**OPINION:**

**MEMORANDUM OPINION**

August 28, 2000.

Wilmington, Delaware.

**SLEET, District Judge.**

I. INTRODUCTION.

Michael Jordan is presently incarcerated at the Delaware Correctional Center ("DCC") which is located in Smyrna, Delaware. On May 1, 1998, he filed a complaint with this court alleging that several correctional officers at the prison violated his constitutional rights while conducting a search of his cell. *See 42 U.S.C. § 1983* (1994). According to Jordan, these prison guards confiscated several of his legal papers. Jordan [*2] claims that these materials have not yet been returned to him. Jordan also alleges that the prison guards seized or destroyed a number of his personal possessions during the course of their search. Finally, Jordan claims that these guards acted unreasonably in conducting their search in violation of his Fourth Amendment rights. Jordan seeks compensatory damages for these alleged wrongs as well as injunctive relief to prevent similar conduct from occurring in the future. n1 He also seeks to recover for the common law tort of conversion.

---

n1 The court presumes that Jordan is seeking monetary damages from the defendants in their personal capacity and injunctive relief against the defendants in their official capacity. To the extent that Jordan is seeking to recover damages against the defendants in their official capacities, the court will dismiss these claims because the defendants are entitled to sovereign immunity under the Eleventh Amendment. *See, e.g., Pena v. Gardner, 976 F.2d 469, 472-73 (9th Cir. 1992)* (citing, *inter alia, Edelman v. Jordan, 415 U.S. 651, 663, 39 L. Ed. 2d 662, 94 S. Ct. 1347 (1974)); Orum v. Haines, 68 F. Supp. 2d 726, 729 (N.D. W.Va. 1999)* (citing *Will v. Michigan Dep't of State Police, 491 U.S. 58, 71, 105 L. Ed. 2d 45, 109 S. Ct. 2304 (1989))*.

---

[*3]

On April 19, 1999, the defendants filed a motion to dismiss. n2 In it, they argue that Jordan has failed to show that his access to the courts was actually impeded by the confiscation of his legal papers. The defendants also contend that although a number of Jordan's possessions were seized during the search of his cell, he subsequently received a hearing on the matter. Thus, his constitutional right to due process was not violated. Jordan has opposed this motion in addition to moving to amend to assert his claims against two new defendants. He further asks this court to compel the defendants to respond to his numerous discovery requests.

---

n2 In light of this motion, the court will deny the motion for a default judgment which Jordan filed on May 26, 1999. *See Fed. R. Civ. P. 55(a)* (1999) (noting that the party must fail to plead or otherwise defend against the lawsuit).

---

While the court will grant the dispositive motion, this ruling does not dispose of all of Jordan's claims. Those alleging that the search [*4] conducted by the defendants was unreasonable and seeking to recover for the conversion of his property remain. In addition, while a large portion of Jordan's motion to amend will be denied as futile, the court will allow him to assert his due process claims against the officer who presided over his post-deprivation hearing. Finally, in light of these rulings, several of Jordan's discovery requests have become moot. Nevertheless, others seem to request relevant information which appears to be either admissible or reasonably calculated to lead to the discovery of admissible evidence. For this reason, the court will grant Jordan's motion to compel in part. The following sections explain the reasons for this decision more thoroughly.

II. STANDARD OF REVIEW.

Although the defendants filed a motion to "dismiss," they have attached materials outside of the pleadings to this submission. In opposition to this motion, Jordan has also submitted materials outside of the pleadings. He has further argued that when the record is viewed in the light most favorable to him, a reasonable jury could return a verdict in his favor. For these reasons, the court will treat the pending motion to dismiss [*5] as one for summary judgment. *See* Fed. Civ. P. 12(b) (1999) (noting that [HN1] a Rule 12(b)(6) motion can be converted into a motion for summary judgment when the parties attach materials outside of the pleadings to their papers); *See also Neal v. Kelly, 295 U.S. App. D.C. 350, 963 F.2d 453, 455-56 (D.C. Cir. 1992)* (emphasizing that the plaintiff must receive the opportunity to submit its own affidavits or other materials in opposition to the motion before it is converted into one for summary judgment) (citing *Lewis v. Faulkner, 689 F.2d 100, 101 (7th Cir.1982))*.

[HN2] Under Rule 56, he court can only grant summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c)* (1999). An issue is "genuine" if, given the evidence, a reasonable jury

Case 1:05-cv-00292-JJF   Document 149-2   Filed 03/17/2006   Page 13 of 20

Page 5
2000 U.S. Dist. LEXIS 19233, *

could return a verdict in favor of the non-moving party. *See, e.g., Robinson v. Klotz, 1995 U.S. Dist. LEXIS 717, Civ. A. No. 94-1993, 1995 WL 27479*, at *1 (E.D. Pa. Jan 23, 1995) (citing *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*). A fact is "material" if, under the governing law, it might affect the outcome of the case. *See id.* [*6] (citing same). [HN3] On summary judgment, the court must look at the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences and resolving all reasonable doubts in favor of that party-- here, Jordan. *See, e.g., Gutridge v. Chesney, 1998 U.S. Dist. LEXIS 6647, Civ. A. No. 97-3441, 1998 WL 248913*, at *1 n.1 (E.D. Pa. May 8, 1998). With these standards in mind, the court turns to a discussion of the most relevant facts giving rise to this lawsuit.

III. BACKGROUND.

In his complaint, Jordan alleges that three prison guards (Captain Bellinger, Lieutenant Tailor, and Lieutenant Burton) burst into his cell to conduct a search on November 11, 1997. At the time, Jordan claims, he was using the toilet. He was immediately ordered to stand. He was then handcuffed. Jordan also alleges that he was subsequently subjected to a body cavity search, possibly in front of other inmates.

According to Jordan, the correctional officers then began removing all of the items from the cell, including the light fixtures. n3 When they failed to find any contraband, Jordan claims, "they began confiscating legal documents, pictures, [his] socks, and . . . items that [he had purchased] [*7] at the prison store." Jordan alleges that the guards were looking for "anything to make the search legitimate."

> n3 Jordan contends that, in removing the fixtures, the defendants left several electrical wires exposed. As a result, Jordan claims, he was exposed to the possibility of electrocution in violation of his constitutional right against cruel and unusual punishment. There is no merit to this claim. In order to establish an Eighth Amendment violation, an inmate must show that prison guards or officials acted with deliberate indifference to or reckless disregard for a substantial risk of serious harm to the physical safety of an inmate. *See, e.g., Farmer v. Brennan, 511 U.S. 825, 834, 128 L. Ed. 2d 811, 114 S. Ct. 1970 (1994)*. Here, Jordan only alleges that the defendants left exposed electrical wires in his cell. He has not claimed that he was actually harmed by these wires. Thus, while the situation in his cell may have been something of a nuisance, this minor inconvenience cannot serve as the basis for an Eighth Amendment claim. *See Robinson v. Detella, 1996 U.S. Dist. LEXIS 10440, Civ. A. No. 95-4067, 1996 WL 422154*, at *3 (N.D. Ill. Jul 24, 1996) (finding no cruel or unusual punishment where the plaintiff had not been seriously harmed by exposed wiring) (relying on *Morissette v. Peters, 45 F.3d 1119, 1122 (7th Cir.1995); Harris v. Fleming, 839 F.2d 1232, 1235 (7th Cir.1988)*).

[*8]

Jordan further claims that as these officers were in the process of seizing his legal papers, he told them that he was filing a motion for a rehearing in the Third Circuit Court of Appeals. According to Jordan, Lieutenant Burton responded by telling him "I don't give a damn. You're pissing me off now. Get out of my face." Jordan further alleges that his motion for a rehearing was denied by the Third Circuit as untimely even though his delay was caused by the confiscation of his legal materials.

Jordan next claims that the officers confiscated his reading glasses, his knee and ankle braces, a mirror, a pencil sharpener, his personal letters, a list of the telephone numbers and addresses of his family members, and several magazines. Jordan also alleges that the guards broke his watch during the conduct of their search.

According to Jordan, he filed a grievance but received no response. Later, he was apparently brought before a disciplinary committee which "found both [him and his cellmate] guilty" of possessing contraband. Jordan claims that although his cellmate's items were returned to him, he has yet to receive any of his possessions.

Jordan contends that this conduct violated [*9] his constitutional rights of access to the courts and due process. He also appears to be claiming that the search of his cell and his person was excessive and unreasonable. Finally, he contends that the defendants committed the common law tort of conversion by seizing his personal items. Jordan seeks to recover compensatory damages for his injuries as well as injunctive relief which the "court deem[s] just and proper."

IV. DISCUSSION.

In order to recover on the majority of his claims, Jordan must show that he was deprived of a constitutional right by a person acting under the color of state law. *See 42 U.S.C. § 1983 (1994)*. Here, there is no

Case 1:05-cv-00292-JJF    Document 149-2    Filed 03/17/2006    Page 14 of 20

Page 6
2000 U.S. Dist. LEXIS 19233, *

question that the defendants were acting under the color of state law at the time that the alleged conduct occurred. *See, e.g., Cespedes v. Coughlin, 956 F. Supp. 454, 465 (S.D.N.Y. 1997)*. Instead, the only questions raised by their dispositive motion is whether the defendants' violated any of Jordan's constitutional rights and, if so, whether he can recover against the defendants.

A. Jordan's Claim Concerning His Access To The Courts.

Jordan first claims that he was denied access to the court [*10] because the defendants confiscated his legal documents. As a result, he alleges, his motion for a rehearing was denied by the Third Circuit. The record, however, tells a different story.

After reviewing the materials which Jordan has attached to his pleadings, it is clear that the case to which he is referring is his appeal of the denial of his petition for a writ of habeas corpus as a second or successive petition. *See Jordan v. Snyder*, Civ. A. No. 97-385-SLR, slip op. at 1 (D. Del. July 1, 1997). Contrary to Jordan's allegations, the Third Circuit did not deny his motion for a rehearing in this case. Instead, the appellate court afforded him an additional thirty days to file his motion. *See Jordan v. Snyder*, Civ. A. No. 97-7458, slip op. at 1 (3d Cir. Nov. 12, 1997). While Jordan has stated that he "surely did not expect to be granted an extension of time" because he "was just informing the court [of appeals] of what [had] happened" to his legal documents, he cannot deny that he was in fact granted an extension of time.

Furthermore, the Third Circuit ultimately reversed the ruling which Jordan was appealing, and the district court was instructed to "review the petition [*11] as if it were the first such filing." *See Jordan v. Snyder*, Civ. A. No. 97-7458, slip op. at 1 (3d Cir. Dec. 12, 1997) (relying on *Christy v. Horn, 115 F.3d 201, 208 (3d Cir. 1997)*). In light of these favorable rulings, the court cannot conclude that Jordan has suffered "some actual injury, that is, an instance in which [he] was actually denied access to the courts" before the Third Circuit. *See Hudson v. Robinson, 678 F.2d 462, 466 (3d Cir. 1982); See also Lewis v. Casey, 518 U.S. 343, 351-52, 135 L. Ed. 2d 606, 116 S. Ct. 2174 (1996)* (reaffirming the actual injury requirement). Therefore, the defendants' motion to dismiss (*i.e.*, for summary judgment) will be granted on this claim.

Jordan also appears to claiming that he was denied access to the courts because his legal documents were seized while his "case was fully active in this court" once it was remanded by the Third Circuit. After reviewing the docket in this habeas proceeding, the court notes that Jordan's petition was dismissed. *See Jordan v. Snyder, 2000 U.S. Dist. LEXIS 436, Civ. A. No. 97-385, 2000 WL 52152, at *1 (D. Del. Jan. 5, 2000)*. However, after the respondents submitted their answer to the petition [*12] and portions of the state court record for review, nearly eighteen months passed before the court issued a final ruling on the matter. During this time, Jordan did not submit one filing to the court. For example, he did not request copies of the documents which had been filed in his case. *Cf. Johnson v. Coughlin, 1990 U.S. Dist. LEXIS 12905, Civ. A. No. 89-4237, 1990 WL 150469, at *5 (S.D.N.Y. 1990)*. Nor did he even ask the court for additional time to respond to the answer because his legal materials had been seized.

Moreover, in this litigation, Jordan has not pointed to any perceived point of error in the decision which dismissed his petition for a writ of habeas corpus. Nor has Jordan explained how the judge in that case might have reached a different result if the seized legal materials had been returned. In fact, the only basis for Jordan's claim that he was denied access to the courts is his contention in this lawsuit that the seizure of his legal materials prevented him from fully litigating his case.

However, this general allegation of harm cannot provide the basis for relief in this Section 1983 action, especially when Jordan has not come forward with more specific evidence that his [*13] access to the courts was actually impeded. *See, e.g., Lewis, 518 U.S. at 351* (explaining that [HN4] the plaintiff must demonstrate that his efforts to pursue a legal claim were actually hindered); *Hudson, 678 F.2d at 466* (emphasizing the "actual injury" requirement).

For these reasons, Jordan cannot recover on his claim that he was denied access to the courts. Consequently, the court will grant this portion of the defendants' dispositive motion.

B. Jordan's Due Process Claim.

Jordan next claims that his constitutional right to due process was violated when his property was seized without first receiving notice and an opportunity to be heard on the matter. However, as the Supreme Court has held:

> [HN5]
> An unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause . . . if a meaningful post-deprivation remedy for the loss is available. For intentional . . . deprivations of property by state employees, the state's action is not

complete until and unless it provides or refuses to provide a suitable post-deprivation remedy.

*See Hudson v. Palmer, 468 U.S. 517, 533, 82 L. Ed. 2d 393, 104 S. Ct. 3194 (1984).* [*14]

In light of *Hudson*, Jordan's claim that he was entitled to a pre-deprivation hearing before his possessions were confiscated fails as a matter of law, especially since Jordan has admitted that he was afforded a post-deprivation hearing and that he was "found . . . guilty" of possessing prison contraband at this hearing.

Nevertheless, Jordan also contends that the officer who presided over his post-deprivation hearing (Lieutenant Reynolds) withheld ruling on the confiscation of a radio until it could be determined whether this item belonged to Jordan or another inmate. n4 Jordan further claims that, contrary to prison regulations, he was not afforded an opportunity to send his remaining contraband home. n5

> n4 Apparently, prison regulations prohibit inmates from possessing items belonging to other inmates.
>
> n5 While Jordan also claims that Reynolds promised to return his legal documents to him, any claim based on this alleged promise fails as a matter of law. In short, given the court's earlier ruling on Jordan's claim that he was denied access to the courts, any failure to return Jordan's legal materials to him did not cause him to suffer an actual injury. *See* Section IV *supra*.

[*15]

Even if this conduct violated Jordan's constitutional rights, there is no indication that any of the three individuals who are currently named as defendants were involved in any these post-deprivation events. While the three correctional officers may have seized Jordan's items, there is no evidence that they were involved in the hearing which upheld the seizure. Because there is no indication that any of these three defendants were the proximate cause of the conduct which Jordan now claims violated his constitutional rights, the court will grant summary judgment in their favor on the due process claim. n6

> n6 In any event, as the court will discuss, Jordan has brought conversion claims against these three defendants. Because a common law action for conversion provides an adequate post-deprivation remedy for an individual who may have been deprived of his property without notice or an opportunity to be heard, Jordan's due process claims against Bellinger, Tailor, and Burton fail as a matter of law. *See Austin v. Lehman, 893 F. Supp. 448, 454 (E.D. Pa. 1995)* ("To the extent he has any property interest in the . . . cigarettes he was denied, [the p]laintiff still has available a state court action for [this] deprivation. The existence of this remedy . . . forecloses [the p]laintiff's due process claim.") (citations omitted).

[*16]

C. Jordan's Conversion Claim.

Jordan also asserts a claim of conversion against Bellinger, Tailor, and Burton. Given Jordan's underlying federal claim, *42 U.S.C. § 1983*, the court may exercise supplemental jurisdiction over the state law claim. *See 28 U.S.C. § 1367* (1994). As the Third Circuit has explained, [HN6] under the common law, the tort of conversion

> is an act of willful interference with the dominion or control over a chattel, done without lawful justification, by which any person entitled to the chattel is deprived of its use and possession. The tort is predicated on [the] interference with dominion or control over the chattel incident to some general or special ownership rather than on damage to the physical condition of the chattel. A person not in lawful possession of a chattel may commit conversion by intentionally dispossessing the lawful possessor of the chattel . . . , by disposing of a chattel by an unauthorized sale with [the] intent to transfer a proprietary interest in it, or by refusing to surrender a chattel on demand to a person entitled to lawful possession.

[HN7] The modern law remedy for conversion has [*17] emerged from the common law action of trover, which was premised on the theory that the defendant had appropriated the plaintiff's chattel for which he must pay. A plaintiff who proved conversion in a common law trover action was entitled to damages

equal to the full value of the chattel at the time and place of [the] conversion.

*See Baram v. Farugia, 606 F.2d 42, 43-44 (3d Cir. 1979)* (footnotes and citations omitted).

Here, Jordan contends that the three defendants intentionally interfered with his property by seizing it during their search of his cell. In their opening brief, the only relevant defense which Bellinger, Tailor, and Burton raised to Jordan's conversion claim is that they should receive immunity for their actions under the Delaware Tort Claims Act. *See Del. Code Ann. tit. 10, § 4011* (1999). n7 However, [HN8] this statute expressly exempts willful or intentional acts from coverage. *Del. Code Ann. tit. 10, § 4011(c); See also Farris v. Moeckel, 664 F. Supp. 881, 896 (D. Del. 1987)*. As previously explained, according to Jordan, these three defendants acted intentionally when they confiscated his personal property and there is no evidence in the record [*18] to rebut this assertion. For this reason, the court cannot dismiss Jordan's conversion claim at this stage of the proceedings.

> n7 Although the defendants also claim that the property which was seized was "in excess of what was allowable" under the prison rules and, therefore, confiscated pursuant to prison policy, this argument was not raised in the defendants' opening brief. Instead, it was included in their reply brief. However, under the Local Rules, "the party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief." *See D. Del. L.R. 7.1.3(c)(2) (1995)*. Therefore, the court will not consider this argument at this time.

D. Jordan's Unreasonable Search Claim.

Finally, Jordan claims that the excessive or unreasonable manner by which the defendants conducted their search violated his constitutional rights. The defendants have not moved to dismiss this particular claim. Instead, their motion is limited only to Jordan's claims [*19] for denial of access to the courts and denial of due process. Furthermore, at this stage of the proceedings, the court cannot conclude that Jordan's allegations are otherwise frivolous, malicious, made in bad faith, or fail to state a claim upon which relief can be granted. *See 28 U.S.C.A. § 1915(d) (1999)*.

Here, Jordan alleges that when the guards burst into his cell, they ordered him off the toilet and placed him in handcuffs. They then brought him to a common area where he was strip searched. According to Jordan, one of the officers conducted an anal cavity search.

As the Supreme Court has observed, "[a] detention facility is a unique place fraught with serious security dangers. Smuggling of money, drugs, drugs, weapons, and other contraband is all too common an occurrence." *See Bell v. Wolfish, 441 U.S. 520, 559, 60 L. Ed. 2d 447, 99 S. Ct. 1861 (1978)*. For this reason, [HN9] prison inmates do not retain a constitutionally-protected right of privacy in their prison cells, which can be searched at random at any time. *See Hudson, 468 U.S. at 527-29*. Nevertheless, as the *Bell* Court emphasized, "these searches must [still] be conducted in a reasonable [*20] manner." *441 U.S. at 560*. In *Bell*, the Court ultimately concluded that a visual body cavity search of an inmate could be conducted on less than probable cause given the legitimate security concerns of the institution. *Id.*

In this case, it is not clear whether a visual or physical inspection was conducted. Furthermore, it is not clear what cause the prison guards had to conduct their search in the first place. Because the record on these issues has not yet been developed, the court cannot rule on this claim at this stage of the litigation. *Cf. LeVoy v. Mills, 788 F.2d 1437, 1439 (10th Cir. 1986)* (reversing the dismissal of a complaint under *28 U.S.C. § 1915(d)* because the plaintiff might be able to prove that his body cavity search was unreasonable under the circumstances and, thus, violated his rights under the Fourth Amendment).

E. Jordan's Motion To Amend.

After briefing on the defendants' dispositive motion closed, Jordan moved to amend his complaint. Through his proposed amendment, Jordan primarily seeks to name Reynolds and Robert Snyder (the warden of DCC) as defendants to his claim that he was denied access to [*21] the courts due to the seizure of his legal documents and his claim that he was denied due process during the proceedings which followed the confiscation of his radio. n8

> n8 In this motion, Jordan also seeks to amend the answering brief which he submitted in opposition to the motion to dismiss. Specifically, Jordan seeks to raise new legal arguments that were not presented in his earlier opposition. Even though Jordan is proceeding *pro se*, the court cannot condone the manner in which his new

Case 1:05-cv-00292-JJF   Document 149-2   Filed 03/17/2006   Page 17 of 20

Page 9
2000 U.S. Dist. LEXIS 19233, *

arguments were raised. As the court previously explained, the Local Rules provide that "the party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief." See D. Del. L.R. 7.1.3(c)(2). Likewise, a party should not be allowed to supplement an opposing brief by later moving to amend not only it but also the complaint. Nevertheless, because the arguments which Jordan raises in his motion to amend all fail on the merits, the court will comment on them briefly.

Jordan first argues that the defendants cannot turn his suit against them in their individual capacities to an official capacity suit in order to win a quick dismissal of his case. However, as stated at the outset of this opinion, the court has presumed that Jordan named the defendants in their individual or personal capacities for the purpose of obtaining monetary damages and in their officials capacities for the purposes of obtaining injunctive relief. See Note 1 supra. Thus, this argument raises a moot issue.

Next, Jordan contends that the defendants are not entitled to qualified immunity because they acted in "clear violation of established constitutional law." However, this argument raises a point which is not ripe for decision because the court has concluded that (1) Jordan's right of access to the courts was not violated and (2) the three named defendants were not personally involved in any of the events which occurred at Jordan's post-deprivation hearing and, thus, cannot be held liable for any due process violation which might have occurred during these proceedings. See Sections IV.A and IV.B supra.

Finally, Jordan contends "there must be some merit to [his] claims" because defense counsel went so far as to consult an insurance agent before filing the motion to dismiss. The defendants, however, introduced an affidavit from the State's risk manager to show that Delaware has not insured itself against these types of actions. As a result, the State has not waived its sovereign immunity for these types of claims. See Turnbull v. Fink, 668 A.2d 1370, 1376 (Del. 1995) (explaining that 18 Del. Code § 6511 "provides for the waiver of sovereign immunity only as to risks or losses covered by the State Insurance Coverage Program").

While Jordan contends that the DCC could purchase this type of insurance coverage with the $ 17.5 million which the State has allocated to the prison over the last three years, the fact remains that this type of coverage has not been purchased. Consequently, Delaware has not waived its sovereign immunity against these claims.

Thus, after considering the additional arguments which Jordan has raised in his motion to amend, the court finds them to be without merit. As a result, they fail to provide a basis for successfully opposing the motion to dismiss.

[*22] [HN10]

Under Rule 15 of the Federal Rules of Civil Procedure, this court must freely grant leave to amend. Fed. R. Civ. P. 15(a) (1999). In fact, under this liberal standard, the court can only deny a motion to amend under a limited number of circumstances. See Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962) (explaining that such a motion should only be denied in the face of undue delay, bad faith, unfair prejudice, a repeated failure to cure deficiencies in the pleadings, or futility). Given the court's previous findings, the majority of Jordan's proposed amendments are futile. n9 Therefore, his motion will be denied in large part. See Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 292 (3d Cir.1988) (denying leave to amend because the proposed amendment would not survive a motion to dismiss); Satellite Fin. Planning Corp. v. First Nat'l Bank of Wilmington, 646 F. Supp. 118, 120 (D. Del. 1986) (same).

n9 Here, Jordan has moved to amend at a fairly early stage in these proceedings. Thus, the court cannot conclude that he has acted with undue delay. Nor can the court conclude that he has a dilatory motive since it does not appear as if he is inserting new legal theories into this case that are based on entirely different facts solely for the purpose of drawing out these proceedings. Instead, it seems that Jordan is simply seeking to assert his current claims against two new defendants. The court also cannot conclude that Jordan has acted in bad faith since his motion to amend appears to address some of the deficiencies of his earlier pleading. For all of these reasons, the court cannot conclude that any of the defendants will be prejudiced to the extent that the court allows the amendment. See Howze v. Jones & Laughlin Steel Corp., 750 F.2d 1208, 1212 (3d Cir. 1984) (noting that prejudice is the "touchstone" of this inquiry) (citing Cornell &

*Co., Inc., v. Occupational Safety and Health Review Comm'n, 573 F.2d 820, 823 (3d Cir. 1978)); Hill v. Equitable Bank, N.A., 109 F.R.D. 109, 112 (D. Del. 1985)* (same).

[*23]

1. The claim alleging denial of access to the courts.

As the court has previously explained, Jordan's claim that he was denied access to the courts as a result of the seizure of his legal materials fails as a matter of law because, given the underlying facts of this case, Jordan cannot prove that he suffered an actual injury, that is, an instance where he was actually denied access to the courts. *See* Section IV.A *supra*. Given the futility of the proposed amendment, the court will denial this portion of Jordan's motion to amend.

2. The claim alleging denial of due process.

It is does not appear that Jordan is attempting to assert his due process claim against Snyder. Instead, all of Jordan's allegations concerning Snyder involve the previous claim of denial of access to the courts. n10 To the extent that he is attempting to assert his due process claim against Snyder, Jordan has utterly failed to allege any facts which would indicate that the warden was personally involved in or aware the confiscation of Jordan's personal property or the events which occurred at the subsequent hearing. Because this claim would effectively be an attempt to hold Snyder liable purely on a [*24] *respondeat superior* basis, this portion of his motion to amend will be denied as futile. *See Gay v. Petsock, 917 F.2d 768, 771 (3d Cir. 1990); Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)*.

n10 For example, in the motion to amend, Jordan states that he is "hereby charging . . . Snyder and . . . Reynolds with violating [his] First Amendment right of access to the courts." Jordan also contends that because the warden was named as a party in the habeas action, he "was mailed a copy of every motion filed . . . challenging [Jordan's] confinement." Therefore, Jordan contends, Snyder was "well aware of [his] concern[s about] his legal process" yet "did nothing to stop officials from violating" his constitutional rights.

Jordan also seeks leave to bring a due process claim against Reynolds. As previously explained, Jordan alleges that Reynolds withheld ruling on the confiscation of his radio until it could be determined whether the radio belonged to Jordan or another [*25] inmate. It is not clear whether this radio was ever returned. In any event, Jordan appears to be seeking damages for the time period during which he was deprived of his property interest in the item. Jordan has also claimed that, contrary to prison regulations, he was not afforded an opportunity to send his remaining contraband home.

However, even if the radio belonged to Jordan and even if Reynolds deprived Jordan of his property interest in this item without first affording him due process, Jordan has an adequate post-deprivation remedy. Specifically, he may bring a common law action for conversion against Reynolds. *See Austin, 893 F. Supp. at 454* ("To the extent he has any property interest in the . . . cigarettes he was denied, the plaintiff still has available a state court action for [this] deprivation. The existence of this remedy . . . forecloses [the p]laintiff's due process claim.") (citations omitted); *See also Murphy v. Collins, 26 F.3d 541, 543-44 (5th Cir. 1994)* (concluding that a prison's violation of its own notice and hearing policies did not violate an inmate's right to due process because he could bring an action for conversion [*26] in state court). Therefore, his due process claim fails as a matter of law. Consequently, while the court will allow Jordan to amend his complaint to assert a claim for conversion against Reynolds, the portion of Jordan's motion to amend which seeks to assert a due process claim against this individual will be denied as futile.

3. The amended complaint.

Finally, because the defendants have objected to the manner in which Jordan has moved to amend, the court will afford him fifteen days to file a revised amended pleading which plainly sets forth the basis for his unreasonable search and seizure claim against Bellinger, Burton, and Tailor as well as his conversion claim against these three defendants and Reynolds. *Cf.* [HN11] *Fed. R. Civ. P. 8(a)(2)* (2000) (requiring a plaintiff to set forth a "short and plain" statement showing that he is entitled to relief). In this revised pleading, Jordan shall also set forth the specific declaratory, monetary, and injunctive relief that he is seeking in this action. *See* [HN12] *Fed. R. Civ. P. 8(a)(3)* (explaining that the complaint must contain a demand for judgment for the relief sought). The court will afford the defendants thirty days to answer or [*27] otherwise respond to Jordan's revised pleading.

F. Jordan's Discovery Requests.

Finally, Jordan has made a number of discovery requests. Given the nature of the court's ruling, several of these requests have become moot. n11 Therefore, the defendants' motion for a protective order will be granted

Page 11

2000 U.S. Dist. LEXIS 19233, *

in part. Nevertheless, substantial portions of Jordan's document requests and interrogatories seem directed at relevant and admissible evidence. At a minimum, these discovery requests appear to be reasonably calculated to lead tot he discovery of admissible evidence. *See Fed. R. Civ. P. 26(b)(1)* (2000).

> n11 For example, Jordan requests for "a copy of all of the steps that are being taken to provide [him] with the . . . legal documents" that were allegedly seized during the search of his cell. He also asks why the prison guards unscrewed the light fixtures in his cell when they conducted their search. He further seeks the identity of the person who "authorized the defendants to seize [his] legal documents."

[*28]

For example, Jordan asks for an official copy of the standard operating procedures which govern the conduct of correctional officers at the DCC. He has also asked for a copy of the disciplinary write up filled out by Burton and a copy of the list of items that were confiscated from his cell during the November 11, 1997 search. He further requests information concerning the radio which was seized during this search. In addition, he seeks information concerning how many boxes of personal items he is allowed to keep in his cell. Jordan has also propounded a number of interrogatories that relate to the manner in which his cell and his person were searched.

Because these discovery requests seek information which appears to be relevant and admissible or, at the very least, reasonably calculated to lead tot he discovery of admissible evidence, the court will deny this portion of the defendants' motion for a protective order. Nevertheless, given the volume of Jordan's discovery requests, the court will afford the defendants sixty days to respond.

V. CONCLUSION.

Jordan has failed to demonstrate that the seizure of his legal documents actually deprived him of his constitutional right [*29] of access to the courts. Therefore, this particular claim will be dismissed and this portion of Jordan's motion to amend will be denied. Furthermore, because Jordan was afforded a post-deprivation hearing and because he still has available to him an action for the common law tort of conversion, his due process claim against Bellinger, Burton, and Tailor fails as a matter of law. Finally, the court cannot rule on Jordan's claims of unreasonable search and seizure at this stage of the proceedings since the record on this point is not fully developed. Consequently, the court will continue to exercise jurisdiction over this claim and supplemental jurisdiction over Jordan's common law claims of conversion. The court, however, will require Jordan to file an amended complaint which plainly sets forth these claims and the relief sought so that the defendants are properly put on notice of the causes of action which have been brought against them. Likewise, the court will require the defendants to respond to Jordan's discovery requests that seek information concerning the search of his cell and the items that were seized. The court will issue an order to this effect in conjunction with this [*30] opinion.

**ORDER**

For the reasons stated in the court's memorandum opinion of this date, IT IS HEREBY ORDERED that:

1. The Defendants' Motion to Dismiss (D.I. 16) is GRANTED IN PART;

2. Plaintiff's claim that his constitutional right of access to the courts was violated by the seizure of his legal documents is DISMISSED;

3. Plaintiff's claim that his constitutional right of due process was violated by the confiscation of his personal property by Defendants Bellinger, Tailor, and Burton is DISMISSED;

4. Plaintiff's Motion to Amend (D.I. 26) is GRANTED IN PART and DENIED IN PART;

5. Within fifteen (15) days of the date of this order, Plaintiff shall file a revised amended complaint which, in accordance with *Federal Rule of Civil Procedure 8(a)*, plainly sets forth the basis for his unreasonable search and seizure claim against Defendants Bellinger, Burton, and Tailor as well as his conversion claim against these three defendants and Reynolds;

6. Plaintiff's revised amended complaint shall also set forth the specific declaratory, monetary, and injunctive relief that Plaintiff is seeking in this action;

7. Within thirty (30) days of the date of this submission, Defendants [*31] shall answer or otherwise respond to the revised amended complaint;

8. Within sixty (60) days of the date of this order, Defendants shall file their responses to Item Nos. 1-8, 11, 13-15, 17-19, 21-23, 26-32 contained in Plaintiff's discovery request of March 29, 1999 (D.I. 14); and

9. Within sixty (60) days of the date of this order, Defendants shall file their responses to Item Nos. 1-12, 14, 16-27 contained in Plaintiff's discovery request of

2000 U.S. Dist. LEXIS 19233, *

April 2, 1999 (D.I. 15).

Date: August 28, 2000

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE