## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

LG.PHILIPS LCD CO., LTD.,

               Plaintiff/Counterclaim Defendant,

    v.

TATUNG COMPANY;
TATUNG COMPANY OF AMERICA, INC.;
CHUNGHWA PICTURE TUBES, LTD.;
AND VIEWSONIC CORPORATION,

            Defendants/Counterclaim Plaintiffs.

Civil Action No. 05-292 (JJF)

---

**PLAINTIFF'S ANSWER IN OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S FEBRUARY 24 AND MARCH 1, 2006 ORDERS CONCERNING THIRD PARTY DISCOVERY**

THE BAYARD FIRM
Richard D. Kirk (#922)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899-5130
(302) 429-4208

Counsel for Plaintiff
LG.PHILIPS LCD CO., LTD.

OF COUNSEL:
Gaspare J. Bono
Matthew T. Bailey
Cass W. Christenson
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C. 20006
(202) 496-7500 (Telephone)
(202) 496-7756 (Facsimile)

March 20, 2006

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................... 1

FACTUAL BACKGROUND ...................................................................................... 3

    A.    The Parties Agreed to an Expedited Schedule and a July 17 Trial
           Date .......................................................................................................... 3

    B.    Defendants Asserted an On-Sale Defense Against the '121 Patent
           Relying on One Third-Party Subpoena to Pixelworks ............................. 4

    C.    Defendants' Counsel Expressly Confirmed that the February 21
           Deadline Applied to Third-Party Documents ......................................... 5

    D.    Defendants' Last Minute, New Third-Party Discovery Efforts ............... 7

    E.    The Court's Prior Denials of Defendants' Identical Requests to
           Extend the February 21 Deadline ......................................................... 10

ARGUMENT ........................................................................................................... 11

I.    DEFENDANTS' MOTION SHOULD BE DENIED AS IMPROPER AND
    UNTIMELY ...................................................................................................... 11

    A.    Defendants Cannot Seek Reconsideration of an Undisputed Deadline ................. 11

    B.    Defendants' Motion is Untimely Under Local Rule 7.1.5 ..................... 13

II.    DEFENDANTS' MOTION SHOULD BE DENIED BECAUSE LACK OF
    DILIGENCE DOES NOT SATISFY ANY OF THE LIMITED GROUNDS FOR
    RECONSIDERATION ...................................................................................... 14

    A.    Defendants' Failure to Act does not Make Evidence "Newly
           Available" or Support Reconsideration ............................................... 16

    B.    Defendants' "Manifest Injustice" Argument is Misplaced and
           Unavailing ............................................................................................. 21

III.    DEFENDANTS' MERITS ARGUMENT IS PREMATURE AND UNPERSUASIVE .. 23

    A.    It is Premature to Consider Defendants' Rule 16 Argument ................. 23

    B.    Defendants Fail to Demonstrate Good Cause Under Rule 16 ............... 24

1.    Defendants' Failure to Pursue Discovery Until the Last
       Minute is Fatal to an Extension ............................................................25

2.    Defendants' Untimely Produced Documents Fail to Establish
       an On-Sale Bar Defense............................................................................26

3.    Reopening Third-Party Discovery Would Prejudice LPL .........................27

4.    The July 17 Trial Date Precludes Further Delay .......................................28

CONCLUSION.......................................................................................................................28

# TABLE OF AUTHORITIES

Page

## CASES

*Abbott Labs. v. TorPharm, Inc.*,
   No. 97C7515, 2003 WL 22462611 (N.D. Ill. Oct. 29, 2003) ................................25, 27, 28

*Alt v. Medtronic, Inc.*,
   C.A. No. 04-370, 2006 WL 278868 (E.D. Tex. Feb. 1, 2006) ..........................................26

*Armco, Inc. v. Cyclops Corp.*,
   791 F.2d 147 (Fed. Cir. 1986) ........................................................................................27

*Brambles USA, Inc. v. Blocker*,
   735 F. Supp. 1239 (D. Del. 1990) ...............................................................................14, 15

*Corning Inc. v. SRU Biosystems*,
   No. Civ.A.03-633-JJF, 2006 WL 155255 (D. Del. Jan. 20, 2006) ........................... *passim*

*DAG Enters., Inc. v. Exxon Mobil Corp.*,
   226 F.R.D. 95 (D.D.C. 2005) ................................................................................... *passim*

*Dana Corp. v. Am. Axle & Mfg., Inc.*,
   279 F.3d 1372 (Fed. Cir. 2002) .......................................................................................26

*Finch v. Hercules, Inc.*,
   No. Civ.A.92-251MMS, 1995 WL 785100 (D. Del. Dec. 22, 1995) ...............................22

*Gonzalez v. Comcast Corp.*,
   No. Civ.A.03-445-KAJ, 2004 WL 2009366 (D. Del. Aug. 25, 2004)...............................24

*Inline Connection Corp. v. AOL Time Warner Inc.*,
   395 F. Supp. 2d 115 (D. Del. 2005)..................................................................................14

*Johnson v. Mammoth Recreations, Inc.*,
   972 F.2d 604 (9th Cir. 1992) ...........................................................................................24

*Kinberg v. Colorforms*,
   Nos. 89Civ.1156(PKL), *et al.*, 1991 WL 285621 (S.D.N.Y. Dec. 31, 1991)...................25

*Leonard v. University of Delaware*,
   No. Civ.A.96-360-GMS, 2002 WL 1467370 (D. Del. July 9, 2002) ................................14

*Lucent Techs., Inc. v. Extreme Networks, Inc.*,
   231 F.R.D. 453 (D. Del. 2005) ...................................................................................19, 20

*Max's Seafood Café v. Quinteros,*
    176 F.3d 669 (3d Cir. 1999)..................................................................................14

*McNerney v. Archer Daniels Midland Co.,*
    164 F.R.D. 584 (W.D.N.Y. 1995)............................................................21, 22

*Minnesota Supply Co. v. Raymond Corp.,*
    Civ.No. 99-832, 2002 WL 31898162 (D. Minn. Dec. 27, 2002).......................21

*Moretti v. C.I.R.,*
    77 F.3d 637 (2d Cir. 1996)..................................................................................22

*Mortgage Info. Servs., Inc. v. Kitchens,*
    210 F.R.D. 562 (W.D.N.C. 2002).......................................................................21

*Oglesby v. Penn Mut. Life Ins. Co.,*
    877 F. Supp. 872 (D. Del. 1995)...................................................................14, 15

*Praxair, Inc. v. ATMI, Inc.,*
    231 F.R.D. 457 (D. Del. 2005) ................................................................. *passim*

*Quaker Alloy Casting v. Gulfco Indus., Inc.,*
    123 F.R.D. 282 (N.D. Ill. 1988).....................................................................15, 20

*Ryan v. Asbestos Workers Union Local 42 Pension Fund,*
    No. Civ.A.97-604-GMS, 2000 WL 1239958 (D. Del. Aug. 25, 2000) .......15, 20

*Scaltech Inc. v. Retec/Tetra L.L.C.,*
    178 F.3d 1378 (Fed. Cir. 1999)..........................................................................26

*Secord v. Cockburn,*
    747 F. Supp. 779 (D.D.C. 1990) ........................................................................25

*Smith-Wilson Co. v. Trading and Dev. Establishment,*
    Civ.A.No. 90-1125(CCR), 1991 WL 171689 (D.D.C. Aug. 20, 1991)............13

*Springer v. Henry,*
    No. C.A.00-885GMS, 2004 WL 2127172 (D. Del. Sept. 16, 2004) ................14

*United States v. 68.94 Acres of Land,*
    918 F.2d 389 (3d Cir. 1990)................................................................................22

*Workman v. Frito-Lay, Inc.,*
    165 F.3d 460 (6th Cir. 1999) ..............................................................................22

## STATUTES AND RULES

35 U.S.C. § 102...................................................................................................................4

Fed. R. Civ. P. 16...................................................................................................22, 23, 24

Fed. R. Civ. P. 26.................................................................................................................19

Fed. R. Civ. P. 45.........................................................................................................18, 22

Local Rule 7.1.5........................................................................................................... *passim*

## OTHER

2 Donald S. Chisum, *Chisum on Patents* § 6.02[7] (2003) ..........................................................27

Plaintiff LG.Philips LCD Co., Ltd. ("LPL"), pursuant to Local Rule 7.1.5, respectfully submits this Answer in Opposition to the Motion for Reconsideration of the Court's February 24 and March 1, 2006 Orders Concerning Third Party Discovery filed by Defendants.[1]

## INTRODUCTION

For the *third* time, Defendants ask the Court to extend the document discovery deadline in this case so that Defendants can pursue a new area of third-party discovery to support a newly created argument for their alleged "on-sale bar" defense. Defendants failed to pursue this discovery until after the February 3 discovery deadline, on the eve of the February 21 discovery extension. At the February 8, 2006 hearing, the Court extended the February 3 discovery deadline to February 21 so that the parties could complete their document productions regarding existing discovery requests and Defendants' two pending subpoenas that were issued before the February 3 deadline. At the February 8 hearing, Defendants' counsel *accepted* the February 21 deadline for all documents, specifically including documents related to Defendants' third-party subpoenas. Between February 15 and 21, however, Defendants issued seven new subpoenas, and, Defendants have repeatedly attempted to produce documents after February 21. The Court properly quashed Defendants' untimely subpoenas and excluded documents not produced by February 21, consistent with the Court's discovery deadlines and scheduling order. *See, e.g., Praxair, Inc. v. ATMI, Inc.*, 231 F.R.D. 457, 464 (D. Del. 2005). Defendants fail to show any basis for reconsideration.

---

[1] "Defendants" in this case are Tatung Company ("Tatung"), Tatung Company of America, Inc. ("Tatung America"), Chunghwa Picture Tubes, Ltd. ("CPT"), and ViewSonic Corporation ("ViewSonic"). The two "Patents-in-Suit," U.S. Patent No. 6,738,121 ("the '121 Patent") and U.S. Patent No. 5,019,002 ("the '002 Patent"), relate to the design and manufacture of liquid crystal display ("LCD") modules.

Reconsideration motions are not intended to excuse a party's knowing failure to act or to reargue for extensions already denied on the same record. The Court properly rejected Defendants' first request for reconsideration and an extension on February 24, 2006. The Court reaffirmed this ruling at the March 1, 2006 discovery hearing when the Court quashed Defendants' untimely subpoenas and again excluded from the case documents produced after the deadline. LPL respectfully requests that the Court once again reaffirm its multiple rulings and orders enforcing the document discovery deadlines.

The discovery that Defendants now seek so emphatically -- contrary to multiple Court orders -- relates to a new "on-sale bar" argument first concocted as discovery was closing. Defendants issued only one subpoena related to "on-sale bar" discovery before February 15. Defendants' sole subpoena was to Pixelworks, the successor to a company that purportedly purchased a module from Defendant CPT before the critical date for the on-sale bar. Defendants relied on this one subpoena to support their "on-sale bar" defense based on an alleged sale from CPT to Paneltronix (the company that was acquired by Pixelworks). In mid-February, however, after Paneltronix was unable to produce any documents supporting this defense, Defendants then embarked on a last-minute campaign to manufacture an entirely new "on-sale bar" defense. On February 17, Defendants asked the Court to reconsider the February 21 deadline, and the Court denied that request on February 24.

On the last day of the discovery extension, February 21, Defendants desperately issued a flurry of subpoenas that could not possibly lead to documents until after the deadline for producing third-party documents. On February 23 and 24, after the deadline,

2

Defendants notified LPL of five third-party subpoenas, to Sharp Electronics, Arrow Electronics, Ram Electronic Sales, Raylar Design, and Audio International. At the March 1, 2006 hearing, the Court quashed Defendants' untimely subpoenas and excluded untimely produced documents from the case.

Remarkably, disregarding the deadlines and the Court's orders, Defendants have continuously pursued their third party subpoenas and produced third party documents to LPL after the February 21 deadline, including as recently as March 17. Despite the Court's clear warning that the deadline was firm and ignoring the Court's repeated rulings denying an extension, Defendants still refuse to accept the consequences of their own inaction and seek an extension yet again. Defendants had many months to pursue third-party discovery, but failed to do so. Indeed, Defendants raised their alleged on-sale bar defense in their Answers filed back in September 2005. By mid-February, five months after alleging their "on-sale bar" defense, Defendants had served only one subpoena related to that defense. Given their lack of diligence, Defendants are not entitled to complain and certainly cannot show the limited exceptions that would support reconsideration under Local Rule 7.1.5.

## FACTUAL BACKGROUND

### A.    The Parties Agreed to an Expedited Schedule and a July 17 Trial Date

At the Court's suggestion, the parties agreed to an expedited pretrial schedule and an expedited July 17, 2006 trial date. *See* Nov. 21 Letter from Richard D. Kirk to the Court at 1 (advising the Court that all parties elected to proceed to trial within nine

months) (D.I. 33).[2]  The Court has repeatedly made clear that the July 17, 2006 trial date

is firm and will not be delayed.  *See* Tr. of Dec. 8, 2005 Hearing at 12 ("We're going to

trial in July. . . .  Nothing is going to stop that from happening.") (D.I. 55); Tr. of Feb. 8,

2006 Hearing at 4 ("[W]e have a July 17, 2006 trial date, . . . which we will not lose or

pass or modify, or extend, [or] shorten, it's July 17.") (D.I. 115) (Ex. 1).  The parties

agreed to prompt discovery deadlines to meet the trial date.  *See* Joint Rule 16 Scheduling

Order (D.I. 62).

**B.**    **Defendants Asserted an On-Sale Defense Against the '121 Patent**
         **Relying on <u>One</u> Third-Party Subpoena to Pixelworks**

Defendants asserted an on-sale bar defense in their first pleadings filed on

September 2, 2005.  *See, e.g.,* Answer and Counterclaim on Behalf of Defendant CPT at

¶ 34 (alleging that the '121 Patent is invalid under 35 U.S.C. § 102) (D.I. 12).  Shortly

thereafter, in a November 14, 2005 letter to the Court, Defendants again asserted that the

'121 Patent was invalid under the on-sale bar.  *See* Nov. 14, 2005 Letter from Robert W.

Whetzel to the Court at 2 (D.I. 30).  In this letter, Defendants' counsel stated that the on-

sale bar defense was based on a specific and known "invalidating act that occurred more

than a year prior to the filing date of the ['121] patent," and that Defendants were

"developing this defense."  *Id.*  At the Scheduling Conference on December 8, 2005,

Defendants' counsel repeated that Defendants already had evidence warranting "an early

Summary Judgment Motion on the on-sale bar," based on "an actual sale with a[n]

invoice."  Tr. of Dec. 8, 2005 Hearing at 13-14 (D.I. 55).  Defendants made these claims

based solely on the alleged sale of CPT's own products.  *See* Def. Mot. at 3 & Ex. A

---

[2] In exchange for an expedited trial, LPL withdrew the preliminary injunction motion that it had filed.  *See* Nov. 18, 2005 Order (giving the parties the option of either continuing to litigate LPL's preliminary injunction or proceeding to trial within nine months) (D.I. 32).

(asserting that "[s]everal months ago," CPT's on-sale bar defense "was based <u>solely</u> on two CPT modules . . . that were sold to Paneltronix") (emphasis in original).

At the December 8 hearing, the Court put Defendants on notice that the on-sale bar is "a hard thing to prove unless you've got the invoice *and* delivery." D.I. 55 at 15 (emphasis added). Accordingly, on January 20, 2006, Defendants issued a subpoena to Greg Zafiris of Pixelworks (D.I. 80). The Pixelworks subpoena sought evidence to establish delivery of CPT's products to Paneltronix prior to the critical date for the on-sale bar. *See id.* Pixelworks is the successor entity to Paneltronix, as Pixelworks acquired Paneltronix in or around December 2000. The subpoena sought documents related to a single transaction "reflected in CPT Invoice No. K00224." *Id.* And, the subpoena required Pixelworks to produce documents by February 3, the document discovery deadline under the Scheduling Order. *Id.* Mr. Zafiris has informed LPL's counsel that Pixelworks did not have any documents responsive to Defendants' subpoena.[3]

### C.    Defendants' Counsel Expressly Confirmed that the February 21 Deadline Applied to Third-Party Documents

On February 8, the Court held a hearing to address the status of discovery. As of the February 8 hearing, five months after alleging their on-sale bar defense, Defendants had issued one third-party subpoena, to Pixelworks, concerning that defense. Defendants had also issued one other subpoena, which related to the '002 Patent.[4]

---

[3] LPL's counsel confirmed Pixelworks' lack of documents in a letter to Defendants' counsel. *See* February 27, 2006 Letter from Cass W. Christenson to Christine A. Dudzik at 1 n.1 (Ex. 2).

[4] The other subpoena, issued on January 20, was directed to Honeywell International (D.I. 79). The Honeywell subpoena sought prosecution and research and development documents related to the '002 Patent, which LPL acquired from Honeywell – it did not seek on-sale evidence. *Id.*

At the February 8 hearing, the Court extended the document production deadline from February 3 to and including February 21, so that the parties could supplement their document productions.[5] Tr. of Feb. 8, 2006 Hearing at 15 ("So the date is February 21st, a Tuesday, by five o'clock Wilmington, Delaware time when everything has to be produced . . . .") (D.I. 115) (Ex. 1). Defendants' counsel specifically discussed the fact that two third-party subpoenas were pending, but never mentioned any need or intention to subpoena any additional third-party information. The Court emphasized that the February 21 production deadline would not change, and confirmed that the deadline applied to *all* documents, specifically including documents subpoenaed from third-parties. Defendants' counsel, Ms. Gabler, responded that applying the February 21 deadline to third-parties was agreeable, stating: "*No problem, I just wanted to make sure that we were clear.*" *Id.* at 21 (emphasis added). The Court confirmed that "*We are all clear. Any document that's in this case is [produced by] the 21st,*" and "*[n]othing will be in this case after that . . . no matter how prejudicial, [or] how beneficial, they just won't be in the case*":

> MS. GABLER: Your Honor, can we ask for [sic] another question?
>
> THE COURT: Sure.
>
> MS. GABLER: There are some third-party subpoenas that have been issued . . . we're pretty optimistic we are going to get those documents in by the end of February and will produce them. *Is that February 21st date going to be considered the drop dead as applied to third parties also?*
>
> THE COURT: *All the documents in this case . . . are going to be here by February 21st or they're not in the case.*

---

[5] At the hearing, Defendants represented that they had "met the [February 3] date" and "completed [their document] production." Ex. 1, Tr. of Feb. 8, 2006 Hearing at 5 (D.I. 115). Subsequently, however, the Court ordered Defendants to produce additional discovery. *See* Tr. of March 1, 2006 Hearing at 5-6 (D.I. 131). The Court also ordered Defendants to produce, or assert specific objections, regarding critical technical discovery still not received by LPL. *See id.*

MS. GABLER: *Okay.*

THE COURT: You know, … that whole third-party subpoena thing is a real problem for judges to manage. So I have decided … to just make it part of document production. *If you don't get it, you don't get it. Cases are finite pieces of litigation for parties and [there] ought to be cutoff dates. I mean, I'm sure if we allowed discovery for ten years, there is something out there that we would be able to find.*

MS. GABLER: *No problem, I just wanted to make sure that we were clear.*

THE COURT: *We are all clear. Any document that's in this case is [produced by] the 21st.*

MS. GABLER: *Okay.*

THE COURT: Nothing will be in this case after that. So with all that notice and warning and all the understanding *no matter how prejudicial, [or] how beneficial, they just won't be in the case. Everybody should be fully alert.*

*Id.* at 20-21 (emphasis added).

After the hearing, LPL worked diligently to complete its production on time.

Between February 15, 2006 and February 21, 2006, LPL made supplemental document

productions to Defendants on a rolling basis, including overnight shipments of documents

to Defendants' counsel on February 15, 16, 17, 18, and 20. The documents that CPT

complains it received on February 21 actually were received on February 16 and 17.[6]

### D.    Defendants' Last Minute, New Third-Party Discovery Efforts

As of February 8, Defendants had not issued any subpoena to any third-party

regarding sales by parties other than CPT. Between the December 8 hearing and the

---

[6] CPT claims to have received the following documents on February 21: LPLII 12010-11 [Def. Mot. Ex. J]; LPLII 11602-10 [Def. Mot. Ex. K]; and LPLII 11611-15, LPLII 6681-84, LPLII 7096-98, LPLII 7164-65, LPLII 7166-71, LPL II 7108-09, LPLII 6875-76 [Def. Mot. Ex. L]. *See* Def. Mot. at 5-6, 8.    LPL shipped those documents on February 15 and 16. *See* Feb. 15 & 16, 2006 Letters from Cass W. Christenson to Christine A. Dudzik with corresponding airbills and delivery reports (Ex. 3). They were delivered on February 16 and 17. *See id.*

February 8 hearing, Defendants issued only one third-party subpoena related to the '121

Patent, seeking documents concerning the purported sale of CPT's own products to

Paneltronix (n/k/a Pixelworks). Pixelworks did not produce any documents in response

to Defendants' subpoena.

Defendants then switched course. In mid-February, Defendants issued two new

subpoenas seeking evidence of sales of CPT modules involving two other CPT

customers, Quanta Computer USA, Inc. ("Quanta") and Hewlett-Packard Co. ("HP").

On February 15, Defendants issued a subpoena to Quanta, with a return date of February

20, seeking information related to U.S. sales of LCD products manufactured by CPT and

Quanta (D.I. 116). On February 16, Defendants issued a subpoena to HP, with a return

date of February 21, seeking information related to U.S. sales of products manufactured

by CPT and HP (D.I. 117). Defendants produced no Quanta documents, and only one HP

document, by February 21.

On February 17, 2006, for the first time, Defendants issued a subpoena regarding

sales of Sharp modules. Specifically, Defendants issued a subpoena to Sharp Electronics

Corp., with a return date of February 21 (D.I. 121). The subpoena sought documents

related to U.S. sales of an LCD product incorporating a Sharp module. *Id.* Defendants

did not produce any Sharp documents by February 21.

Defendants never discussed with LPL's counsel any extension of the February 21

document deadline. Yet, on February 17, Defendants filed a letter asking the Court to

extend the February 21 deadline so that they could seek additional third-party

documents.[7]  *See* Feb. 17, 2006 letter from Robert W. Whetzel to the Court, at 1 (D.I.

118) (Ex. 4).  Defendants indicated that they had located two new but unspecified LCD

panels that might have been sold before the critical date for the on-sale bar, and asked the

Court for an extension of the "discovery cut-off as to the third parties relevant to on sale

panels."  *Id.*  LPL objected to the requested extension, including because it was

inconsistent with the February 8 hearing at which the February 21 deadline was

established and confirmed without objection.  *See* D.I. 119 (Ex. 5).

While their first request for reconsideration was pending, Defendants continued

issuing last-minute subpoenas related to Sharp LCD modules.  On February 20, the day

before the deadline, Defendants issued subpoenas to Arrow Electronics Components (D.I.

123) and Ram Electronic Sales, Inc. (D.I. 120), both with February 21 return dates,

seeking documents related to the sale of a Sharp LCD module.  On February 21, the day

of the deadline, Defendants issued a subpoena to Raylar Design Inc., returnable on the

same day, seeking documents related to the same Sharp module (D.I. 122).  Also on

February 21, Defendants issued a subpoena to Audio International, Inc., returnable on

February 24 (after the deadline), related to the same Sharp module (D.I. 124).

Defendants did not notify LPL or the Court of the subpoenas to Sharp Electronics, Arrow

Electronics, Ram Electronic Sales, Raylar Design, or Audio International until February

23 and 24, *after* the February 21 deadline had expired.  *See* D.I. Nos. 120-24.  Upon

learning of these subpoenas, LPL promptly objected and requested that Defendants

voluntarily withdraw all untimely subpoenas and documents.  *See* Ex. 2.

---

[7] The Court considered Defendants' request even though their February 17 letter violated the Scheduling Order.  *See* D.I. 62 at ¶ 8 ("The Court will not consider applications and requests submitted by letter or in a form other than a motion.").

Defendants did not withdraw their subpoenas, but instead continued to pursue discovery. Without leave of Court, Defendants repeatedly have produced documents after the February 21 deadline. For example, Defendants produced documents from Raylar Design on or about February 23, from Sharp on or about February 24, from Audio International on or about February 28, and from Arrow Electronics and Sharp on March 17. *See* Def. Mot. at 4-5 (listing dates that documents were sent to LPL) & Ex. 7.[8]

### E.    The Court's Prior Denials of Defendants' Identical Requests to Extend the February 21 Deadline

On February 24, 2006, the Court issued a letter ruling denying Defendants' February 17 request to extend the document deadline. *See* Feb. 24, 2006 Letter from the Court to Richard D. Kirk and Robert W. Wetzel at 1 (D.I. 125) (Ex. 6). The Court ordered that "[n]o extension would be granted . . . for the reasons previously discussed with counsel." *Id*. On February 28, 2006, notwithstanding the Court's letter and ruling, Defendants produced documents from Audio International. *See* Def. Mot. at 5.

LPL promptly objected to Defendants' untimely subpoenas and production and asked the Court to quash all outstanding subpoenas and exclude untimely produced documents from the case. *See* Feb. 28, 2006 Letter from Richard D. Kirk to the Court at 2 (D.I. 128). On March 1, 2006, the Court held a discovery hearing to address document production issues and granted LPL's request, again affirming that "any subpoena issued by any party for documents . . . after February 21, 2006 is quashed. And . . . any document provided after February 21 is excluded." Tr. of March 1, 2006 Hearing at 3 (D.I. 131). Notwithstanding the Court's orders, Defendants again produced additional third-party documents, from Arrow Electronics and Sharp, on March 17. *See* Ex. 7.

---

[8] The dates that documents were sent, as listed in Defendants' motion, are not necessarily the dates when such documents were received by LPL's counsel.

And, despite the Court's consistent rulings, Defendants have filed the motion now before

the Court seeking reconsideration of the third-party discovery deadline – again – on the

same grounds that were previously rejected.[9]

## ARGUMENT

## I.    DEFENDANTS' MOTION SHOULD BE DENIED AS IMPROPER AND UNTIMELY

### A.    Defendants Cannot Seek Reconsideration of an Undisputed Deadline

A motion for reconsideration is not a proper vehicle for a party to revisit a

previously accepted discovery deadline because of a last-minute change in strategy that

requires new discovery.  As set forth above, Defendants' counsel accepted the February

21 discovery deadline for all third party documents.  *See* D.I. 115 at 20-21 (Ex. 1).  This

acceptance of the February 21 deadline was not surprising.  At the December 8, 2005

hearing, CPT's counsel informed the Court that CPT was already planning to file a

summary judgment motion on its on-sale bar defense regarding the '121 Patent.  This

defense was based solely on a purported sale of a CPT module to Paneltronix (n/k/a

Pixelworks).  After the Court pointed out the difficulty of proving that defense, CPT

issued a subpoena to Pixelworks.  The subpoena asked for documents to be produced by

February 3, 2006.  *See* D.I. 80.  Defendants necessarily requested that Pixelworks

produce documents by February 3 because the Scheduling Order originally set a February

3 deadline for all document discovery.  *See* D.I. 62.  Defendants now contend that, prior

to the February 8 hearing, "CPT did not believe the Court had established a cut-off for

---

[9] As the Court has now addressed the third-party discovery deadline several times, when Defendants' counsel raised the issue again at the March 1 hearing, the Court replied:  "What would I want to hear?" D.I. 131 at 18.  Additionally, the Court confirmed that the "order to quash will remain in place."  *Id.* at 23. Nevertheless, the Court stated that it would allow Defendants to file a formal reconsideration motion under the Local Rules.  *Id.* at 24.

third party discovery." Def. Mot. at 4. Both of Defendants' January 20 subpoenas, however, had February 3 return dates, which shows that Defendants were aware of the need to complete third-party discovery by the February 3 deadline. *See* D.I. Nos. 79, 80. The Scheduling Order did not exempt third-party discovery from the deadline, and, as many courts have recognized, "Rule 45 subpoenas are 'discovery' under . . . the Federal Rules of Civil Procedure, and are subject to the same deadlines as other forms of discovery." *DAG Enters. v. Exxon Mobil Corp.*, 226 F.R.D. 95, 104 (D.D.C. 2005) (collecting cases).

Pixelworks, however, had *no* documents responsive to the subpoena or supporting Defendants' on-sale bar defense. CPT then switched course in a desperate attempt to manufacture a completely new on-sale bar defense. First, on February 15 and 16, CPT sought evidence that customers other than Pixelworks (*i.e.*, HP and Quanta) had purchased CPT modules before the critical date. *See* D.I. Nos. 116-17. Then, on February 17, 20, and 21, CPT embarked on a totally new strategy – just as supplemental discovery was closing – to search for evidence of sales of Sharp modules, rather than CPT modules.

Embarking on this newly devised discovery campaign, Defendants issued a flurry of subpoenas at the close of supplemental document discovery. Defendants' failure to get evidence before the deadline is thus a problem of their own making. They knowingly failed to seek the discovery they now contend is necessary, and accepted the February 21 deadline while assuming, incorrectly, that they could establish an on-sale bar using the Pixelworks subpoena.

Defendants' ill-fated strategy and subsequent inaction is fatal to their motion. Courts routinely enforce discovery cut-off dates, especially when those deadlines are clearly established without objection. *See, e.g., DAG Enters.*, 226 F.R.D. at 104 (precluding discovery by untimely issued subpoena where the "Court set a firm deadline ... for the completion of discovery . . . and made plain . . . on the record in open court . . . that there would be '[a]bsolutely no extensions'"); *Smith-Wilson Co. v. Trading and Dev. Establishment*, Civ.A.No. 90-1125(CCR), 1991 WL 171689, at *1 (D.D.C. Aug. 20, 1991) (denying motion for continuance sought to extend discovery where the "Court established a firm discovery cut-off after consulting with counsel for both sides in open court," and "counsel had no objection").[10]  The Court should reject Defendants' attempt to ratify their own ineffective course of action under the guise of reconsideration.

### B.    Defendants' Motion is Untimely Under Local Rule 7.1.5

Defendants' motion seeks reconsideration of the Court's February 8 ruling and, because it was not filed until March 6, it comes too late.[11]  Local Rule 7.1.5 provides that a motion for re-argument "shall be served and filed within 10 days of the Court's opinion or decision." On February 8, the Court ruled that all documents – including documents subpoenaed from third-parties – had to be produced by February 21. *See* D.I. 115 (Ex. 1) at 20-21. Defendants sought reconsideration of that ruling – for the first time and on the same grounds asserted now – by their February 17 letter. *See* D.I. 118, Ex. 4. On February 24, the Court denied reconsideration and reaffirmed the discovery deadline. *See*

---

[10] Copies of all unreported opinions cited herein are attached as Ex. 8.

[11] Defendants styled their motion as one for "Reconsideration of the Court's February 24 and March 1, 2006 Orders," to create the impression that the motion was timely filed. However, as explained herein, the motion clearly seeks reconsideration of the Court's February 8 ruling that established the February 21 document production deadline.

D.I. 125, Ex. 6. At that point, Defendants had exhausted their right to seek
reconsideration within the ten day period under Local Rule 7.1.5. Defendants' March 6
motion is improperly duplicative of their February 17 submission and also should be
rejected as untimely. *See Corning Inc. v. SRU Biosystems*, No. Civ.A.03-633-JJF, 2006
WL 155255, at *2 (D. Del. Jan. 20, 2006 (Farnan, J.) (denying motion for reconsideration
that was not timely filed); *Leonard v. University of Delaware*, No. Civ.A.96-360-GMS,
2002 WL 1467370, at *1 n.1 (D. Del. July 9, 2002) (same).

## II.    DEFENDANTS' MOTION SHOULD BE DENIED BECAUSE LACK OF DILIGENCE DOES NOT SATISFY ANY OF THE LIMITED GROUNDS FOR RECONSIDERATION

Motions for reconsideration "are granted sparingly and only in limited
circumstances." *Inline Connection Corp. v. AOL Time Warner Inc.*, 395 F. Supp. 2d 115,
117 (D. Del. 2005). Such motions may be granted only where the movant establishes one
of three specific grounds. Defendants must show: "(1) a change in the controlling law;
(2) newly available evidence; or (3) the need to correct a clear error of law or fact to
prevent manifest injustice." *Corning*, 2006 WL 155255, at *1 (citing *Max's Seafood
Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)). Motions for reconsideration should
not be granted, therefore, where the movant merely disagrees with the Court's ruling, *see
Oglesby v. Penn Mut. Life Ins. Co.*, 877 F. Supp. 872, 896 (D. Del. 1995), or "where the
matters advanced [by the movant] would not 'reasonably have altered the result
[previously] reached by the Court.'" *Brambles USA, Inc. v. Blocker*, 735 F. Supp. 1239,
1240 (D. Del. 1990) (citation omitted).[12]

---

[12] *See also Springer v. Henry*, No. C.A.00-885GMS, 2004 WL 2127172, at *6 (D. Del. Sept. 16, 2004) ("In this district, these types of motions are granted only if it appears that the court has patently misunderstood a party, has made a decision outside the adversarial issues presented by the parties, or has made an error not of reasoning, but of apprehension. Moreover, even if the court has committed one of these errors, there is

It is well-settled that "[m]otions for reargument or reconsideration … may not be used to rehash arguments . . . considered and decided by the Court." *Corning*, 2006 WL 155255, at *1 (collecting cases); *see also Quaker Alloy Casting v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988) (denying motion to reconsider based on previously rejected arguments because "this Court's opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure"). Accordingly, this Court repeatedly has denied reconsideration motions that merely reassert rejected arguments. *See, e.g.*, *Corning*, 2006 WL 155255, at *2 (denying motion for reconsideration because party had "raised these arguments previously, and they have already been considered by the Court"); *Oglesby*, 877 F. Supp. at 892 (denying reargument and explaining that the Local Rule "should not be used to allow for a never ending polemic between litigants and the Court"); *Brambles USA*, 735 F. Supp. at 1240 (same); *Ryan v. Asbestos Workers Union Local 42 Pension Fund*, No. Civ.A.97-604-GMS, 2000 WL 1239958, at *1 (D. Del. Aug. 25, 2000) (same). Defendants' motion merely replicates their February 17 letter motion, which the Court denied. Indeed, the present motion rehashes the same issues that the Court has rejected twice before – by letter ruling of February 24 and during the March 1 hearing. Defendants' repetitive motion is improper and should be denied. *See Corning*, 2006 WL 155255, at *2.

Defendants purport to seek reconsideration because of newly available evidence and to prevent manifest injustice. *See* Def. Mot. at 7. However, Defendants have not established either ground for the relief sought. Instead, Defendants improperly seek a

---

no need to grant a motion for reconsideration if it would not alter the court's initial decision.") (internal citations omitted).

discovery extension – and wrongly accuse LPL of misconduct – to compensate for their own miscalculations and lack of diligence.

### A.    Defendants' Failure to Act does Not Make Evidence "Newly Available" or Support Reconsideration

Defendants' "newly available evidence" argument is based on mischaracterization of facts and rank speculation, in an attempt to mask Defendants' own lack of diligence. The problem Defendants face is entirely of their own making – not the result of any supposed "misconduct" by LPL.[13]  Defendants knowingly failed to pursue evidence of third-party module sales until the last minute.

Defendants have had ample opportunity to seek on-sale bar evidence, including evidence related to modules made or sold by third-parties.  Defendants, however, knowingly failed to pursue such evidence until the eve of the discovery deadline.  As set forth above, Defendants alleged their on-sale bar defense on September 2, 2005 (D.I. 12). By December 2005, Defendants claimed to have evidence that they deemed sufficient to warrant summary judgment. *See* D.I. 55 at 13-14.  Defendants assumed – incorrectly – that they could rely on a purported sale of a CPT module to Paneltronix.  At the December 8 hearing, however, the Court reminded Defendants of their heavy burden of proof to show clear and convincing evidence of an on-sale bar.  *See* D.I. 55 at 15.  Later, it became apparent that the evidence from Pixelworks that Defendants would need to support the on-sale bar defense does not exist.  At that point, Defendants shifted gears, and, for the first time, considered pursuing new, additional on-sale bar arguments and

---

[13] LPL has acted in good faith by diligently searching for responsive documents and producing them to Defendants in a timely manner.  Defendants' accusations notably lack any particularized factual support, and the Court should disregard the unfounded claims of misconduct so blithely asserted in Defendants' motion. *See, e.g.*, Def. Mot. at 2-3, 9.

evidence related to third-party modules. Defendants simply did not act with the requisite diligence.

Defendants now complain that they need more time to pursue discovery related to four areas: (1) LPL's sales of modules incorporating TCPs embodying the claims of the '121 Patent; (2) LPL's purchases of TCPs from Texas Instruments Korean Limited ("TI-Korea"); (3) Sharp's sales of modules incorporating TCPs embodying the claims of the '121 Patent; and (4) Mitsubishi's sales of modules incorporating TCPs embodying claims of the '121 Patent. *See* Def. Mot. at 1-2. No extension is warranted as to any of these categories.[14]

First, LPL produced the documents related to sales of its modules incorporating TCPs by the February 21 deadline. Further, LPL has supplemented its production to provide summaries of (i) all LPL modules incorporating the relevant TCPs; (ii) all LPL purchases of a TCP known as "Part 56" from TI-Korea; and (iii) sales of all LPL modules since December 1, 1999. LPL's creation and production of these summaries demonstrates LPL's proactive cooperation in the discovery process.[15]

Second, Defendants claim to need evidence from TI-Korea, a company that supplied TCPs to LPL. Yet, Defendants did not focus their discovery on LPL's TCP suppliers. Defendants, for example, never propounded an interrogatory asking for LPL's

---

[14] Defendants incorrectly claim that LPL withheld documents regarding areas (1) and (2) until February 21. *See* Def. Mot. at 3. That allegation is unfounded and LPL timely produced documents related to Defendants' first and second categories. Notably, Defendants do not even attempt to blame LPL for their failure to pursue discovery from Sharp and Mitsubishi (categories (3) and (4)). Nor do Defendants justify waiting until the last minute to seek discovery related to Sharp and Mitsubishi. *See* Def. Mot. at 5.

[15] These supplemental documents were not existing documents but, instead, were created by LPL specifically to provide discovery to Defendants in this case. LPL's cooperative approach is in stark contrast to Defendants' refusal to cooperate. For example, Defendants have refused to provide relevant summaries, contending that the creation of such summaries would constitute non-discoverable attorney work product. *See, e.g.*, Objections of Defendants to LG.Philips LCD Co., Ltd.'s February 28, 2006 Deficiency Letter at 2 (Ex. 9).

TCP suppliers. Indeed, Defendants did not even request LPL module and TCP samples until March 7 – weeks after the discovery deadline had passed. *See* March 7, 2006 Letter from Julie S. Gabler to Cass W. Christenson, at 2 (Ex. 10).[16] Moreover, CPT manufactures modules with TCPs and knows which companies supply those components. Defendants thus could have and should have pursued discovery from TCP suppliers like TI-Korea. At this late date, given that TI-Korea is located in another country, it is not feasible for Defendants to subpoena this discovery. Defendants would have to embark on extraterritorial discovery that, even if successful, would take months.[17]

Regarding Sharp and Mitsubishi, Defendants fail to explain in their motion why they did not learn about the allegedly relevant modules until February, but the reason is obvious. Defendants did not pursue third-party discovery regarding Sharp modules until mid-February when the Pixelworks subpoena failed to produce evidence. With respect to Mitsubishi, Defendants made no effort before the discovery deadline to subpoena any documents from any third-party regarding any Mitsubishi module. This is so even though Defendants admit that they knew about the Mitsubishi modules before the February 21 deadline. *See* Def. Mot. at 5 (stating that Defendants offered the Mitsubishi modules for inspection on February 21); *see also id*. at 2 (admitting that Defendants knew of the Mitsubishi modules by February 16). Failing to pursue evidence does not make the evidence newly available. The evidence was always available; it was just never pursued.

---

[16] LPL objected to Defendants' attempt to expand the scope of discovery sought from LPL at this late date. *See* March 9, 2006 Letter from Cass W. Christenson to Julie S. Gabler, at 2 (Ex. 11). Nevertheless, LPL examined this issue and determined that none of the requested samples exist.

[17] Moreover, a U.S. court presumably would not have jurisdiction to enforce a subpoena issued to a Korean company. *See* Fed. R. Civ. P. 45(b)(2).

18

Defendants' unfounded accusations of intentional misconduct against LPL are unprofessional and inaccurate. *See, e.g.*, Def. Mot. at 2-3, 9. Specifically, Defendants complain about documents that they contend (incorrectly) were not received from LPL until the February 21 deadline.[18] *See* Def. Mot. at 5-6. Even if this were true, which it is not, Defendants cannot claim that LPL violated the Court's production order by producing documents *within* the deadline. Further, LPL produced these documents *before* February 21. Defendants had the documents cited in their motion when they filed their February 17 letter seeking reconsideration.[19] Because all of the discovery that Defendants cite in their motion was available before the February 24 and March 1 rulings, Defendants cannot show that those documents are "newly available" evidence.

Defendants cannot meet their burden to show "new evidence *not available when the Court made its decisions.*" *Lucent Techs., Inc. v. Extreme Networks, Inc.*, 231 F.R.D. 453, 455 (D. Del. 2005) (emphasis added). Defendants purport to seek reconsideration of the Court's rulings on February 24 and March 1. Thus, Defendants must show new facts that were not available until after those rulings. Instead, Defendants *admit* that they knew, by February 16, of the "need to pursue third-party discovery" from Sharp and Mitsubishi. Def. Mot. at 2. At the time of their February 17 letter, Defendants also

---

[18] Defendants' other contention – that LPL improperly withheld information from its initial disclosures – is equally without merit. Defendants argue, without citation to any supporting authority, that LPL should have included in its initial disclosures (i) alleged sales of one of its modules and (ii) alleged purchases of TCPs from Texas Instruments. *See* Def. Mot. at 8-9. Rule 26, however, does not apply to any of this information, even assuming it was known to LPL. *See* Fed. R. Civ. P. 26(a)(1) (requiring disclosure of "(A) . . . each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses;" "(B) . . . all documents . . . and tangible things that are in the possession . . . of the party and that the disclosing party may use to support its claims or defenses;" "(C) a computation of any category of damages . . .;" and "(D) . . . any insurance agreement [that may be used] . . . to satisfy part or all of a judgment . . . .").

[19] See note 6 above, and Exhibit 3, providing proof of shipping and receipt dates for documents cited in Defendants' motion.

possessed the TI-Korea documents.  Instead of filing a proper motion specifically

bringing these issues to the Court's attention, however, Defendants filed a vague one

page letter.  Accordingly, reconsideration is unwarranted.  *See Ryan*, 2000 WL 1239958,

at *8 ("[D]efendants are attempting to litigate this matter in a piecemeal fashion by using

their motion for reconsideration as a vehicle for raising new argument based on

previously known facts.  The court will not permit this practice.  On this ground alone,

their motion for reconsideration should be denied."); *Quaker Alloy*, 123 F.R.D. at 288

(denying motion for reconsideration because party "cannot now introduce evidence to

which it had access when it tendered its previous filings.").

Defendants' argument that they were unaware of certain third-party information

as of February 8 is equally unavailing.  *See* Def. Mot. at 2.  As noted above, Defendants'

motion is untimely if measured against the February 8 hearing date.  In any event, all of

the third-party discovery was available before February 8.  Defendants had months to

issue third-party subpoenas.  Defendants' failure to pursue and obtain on-sale evidence

until the eleventh hour does not render such evidence "newly available."  *See Lucent*

*Techs., Inc*, 231 F.R.D. at 455.

Further, Defendants' "public policy" argument regarding the public interest in

invalidating patents is misplaced.  *See* Def. Mot. at 7.  There is no public policy that

supports disregarding the Court's orders and deadlines, as Defendants did in this case.[20]

To the contrary, courts properly exclude evidence that is produced after the close of

---

[20] At the March 1, 2006 hearing, the Court was appropriately skeptical of Defendants' policy argument:
> The due process issue about if this case fails to get evidence that could show a patent invalid, and
> ... down the road there is a patent running around that may be invalid for the kinds of reasons
> you're talking about, I think that happens a lot. . . . [S]o I'm not too interested in that for purposes
> of your case ....

D.I. 131 at 23-24.

discovery, including evidence related to invalidity. *See, e.g., Praxair*, 231 F.R.D. at 464;

*Mortgage Info. Servs., Inc. v. Kitchens*, 210 F.R.D. 562, 568 (W.D.N.C. 2002) (quashing

subpoena issued after discovery deadline: "A reasonable discovery schedule may be

enforced, even if relevant discovery is denied, unless extenuating circumstances compel a

contrary finding.") (citation omitted). Defendants' discovery efforts, like the instant

motion, are too little and too late.

**B.    Defendants' "Manifest Injustice" Argument is Misplaced and Unavailing**

Defendants' "manifest injustice" argument glosses over the lack of any legal or

factual error, and argues unconvincingly that enforcement of the Court's deadline will

somehow constitute an injustice. *See* Def. Mot. at 8-9. Reconsideration is an

extraordinary remedy "to correct a clear error of law or fact to prevent manifest

injustice." *Corning*, 2006 WL 155255, at *1. The Court has made no error of law or fact

in need of correction, however, and Defendants have no basis to challenge the discovery

deadline.

Likewise, the Court properly quashed untimely subpoenas.[21] *See, e.g., DAG

Enters*, 226 F.R.D. at 108 (refusing to enforce subpoena issued after discovery deadline);

*Minnesota Supply Co. v. Raymond Corp.*, Civ.No. 99-832, 2002 WL 31898162, at *2 (D.

Minn. Dec. 27, 2002) (subpoenas quashed as an "improper attempt to circumvent the

scheduling order and discovery cut-off date"); *McNerney v. Archer Daniels Midland Co.*,

164 F.R.D. 584, 588 (W.D.N.Y. 1995) (subpoena issued after discovery cut-off date

quashed). Additionally, alternative grounds support the order quashing the subpoenas.

---

[21] Defendants purport to seek reconsideration of (i) the Court's order upholding the discovery deadline as well as (ii) its order quashing untimely subpoenas and excluding untimely evidence. *See* Def. Mot. at 1. But, Defendants' motion does not substantively address the latter ruling.

21

*See McNerney*, 164 F.R.D. at 588 (quashing subpoena that did not comply with Rule 45's procedures as "invalid on its face"). For example, the subpoena to Raylar Design (D.I. 122) did not refer to the District Court under whose jurisdiction and authority it was issued. Further, as noted above, several subpoena notices, including Sharp Electronics, Arrow Electronics, Ram Electronic Sales, Raylar Design, and Audio International, were improperly served on LPL after the subpoenas were issued. *See* Fed. R. Civ. P. 45(b)(1) (requiring Defendants to serve "prior notice" of any document production sought under a subpoena).

The Court also properly excluded documents produced after the deadline. *See, e.g.*, *Praxair*, 231 F.R.D. at 463 (citing *United States v. 68.94 Acres of Land*, 918 F.2d 389, 396 (3d Cir. 1990)); Fed. R. Civ. P. 16(f).[22] As this Court has observed, "fidelity to the constraints of Scheduling Orders and deadlines is critical to the Court's case management responsibilities." *Praxair*, 231 F.R.D. at 463 (quoting *Finch v. Hercules, Inc.*, 1995 WL 785100, at *9 (D. Del. 1995)). Further, Defendants' "flouting of discovery deadlines causes substantial harm to the judicial system." *Id.* All parties were given clear notice of the discovery deadline and that "[n]othing will be in this case after [February 21]. So with all that notice and warning and all the understanding *no matter how prejudicial, [or] how beneficial, they just won't be in the case. Everybody should be fully alert.*" D.I. 115 at 21, Ex. 1 (emphasis added). And, Defendants' counsel expressly confirmed and accepted that the February 21 deadline applied to its third-party subpoenas. *Id.* at 20-21. Defendants flouted the Scheduling Order by issuing new

---

[22] *See also Workman v. Frito-Lay, Inc.*, 165 F.3d 460, 466 (6th Cir. 1999) (affirming district court's decision to exclude documents that were not disclosed until after discovery cutoff); *Moretti v. C.I.R.*, 77 F.3d 637, 644 (2d Cir. 1996) (holding that lower court "did not abuse its discretion in excluding documents . . . that were untimely produced under the provisions of the pre-trial order").

subpoenas after the February 8 hearing, even though the February 21 extension -- like the extension in *Praxair* -- was not intended to reopen discovery for new issues or subpoenas. *Praxair*, 231 F.R.D. at 464 ("The motion granted by the court extending discovery was to bring closure to open discovery issues, not to open new discovery issues.").

Moreover, given that LPL respected the deadline and itself did not obtain potentially useful, third-party discovery, that Defendants have disregarded the Court's multiple rulings, and that the trial date has been expedited, it would be unjust to reopen third-party discovery. Such injustice would be compounded if Defendants obtain the relief they seek – *i.e.*, multiple weeks from the Court's future disposition of this motion to serve unlimited subpoenas on unspecified third-parties, possibly followed by even more "follow-up" discovery. *See* Def. Mot. at 15 (stating that further discovery "may illuminate for the first time additional, appropriate avenues of third-party on-sale bar discovery"). Defendants' delays must cease so that this matter can proceed to trial expeditiously.

## III.  DEFENDANTS' MERITS ARGUMENT IS PREMATURE AND UNPERSUASIVE

### A.  It is Premature to Consider Defendants' Rule 16 Argument

Defendants assume that they meet the standard for reconsideration, and thus devote the bulk of their motion to arguing that, under Fed. R. Civ. P. 16(b), good cause exists to modify the Court's discovery schedule. *See* Def. Mot. at 10-16. Defendants' argument on the merits of Rule 16 is premature. *See* Local Rule 7.1.5 ("The Court will determine from the motion and answer whether re-argument will be granted."). As explained above, Defendants' motion is improper. Further, Defendants have not satisfied

the threshold test for reconsideration. Accordingly, the Court can – and should – dispose of Defendants' motion without considering their Rule 16 argument. Even if the Court reaches the merits, however, Defendants' argument is not persuasive.

### B.    Defendants Fail to Demonstrate Good Cause Under Rule 16

Scheduling Orders, including those setting discovery deadlines, are not "'frivolous pieces of paper, idly entered, which can be cavalierly disregarded by counsel without peril.'" *DAG Enters.*, 226 F.R.D. at 104 (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992)). Indeed, "'[d]isregard of the order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier.'" *DAG Enters.*, 226 F.R.D. at 104. Thus, Rule 16(b) makes clear that a scheduling order "shall not be modified except upon a showing of good cause." Fed. R. Civ. P. 16(b); *accord Gonzalez v. Comcast Corp.*, No. Civ.A.03-445-KAJ, 2004 WL 2009366, at *1 (D. Del. Aug. 25, 2004).

To demonstrate "good cause," a party must show "that scheduling deadlines cannot be met despite a party's diligent efforts." *Gonzalez*, 2004 WL 2009366, at *1 (citation omitted); *accord DAG Enters.*, 226 F.R.D. at 105. A party's "carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *DAG Enters.*, 226 F.R.D. at 105 (collecting cases) (citation omitted). And, the mere "'failure on the part of counsel to proceed promptly with . . . discovery and trial preparation should not be considered good cause.'" *Id.* (citation omitted). If a party "did foresee or could have foreseen [an issue], but neglected to gather available materials ... on this issue, then they have failed to exercise diligence required to make a showing of 'good cause.'" *Id.* at 106. Under this standard, Defendants fail to show good cause.

1.    **Defendants' Failure to Pursue Discovery Until the Last Minute is Fatal to an Extension**

Defendants have not been diligent in pursuing on-sale evidence. As explained above, Defendants have known of the need to pursue on-sale bar evidence since the inception of this case. Yet, faced with a clear discovery cut-off, they failed to propound timely discovery to third-parties to obtain what they seek. Accordingly, their complaints of prejudice ring hollow. *See Secord v. Cockburn*, 747 F. Supp. 779, 786 (D.D.C. 1990) ("where a party fails to pursue discovery in the face of a court-ordered cutoff . . . that party may not be heard to plead prejudice resulting from his own inaction"). Considering that the on-sale bar has been at issue since Defendants' first pleading in September 2005, Defendants have not made the requisite showing to warrant an extension. *See DAG Enters.*, 226 F.R.D. at 106 ("[W]hen a line of inquiry is reasonably obvious and important, a diligent party [must] conduct discovery to flesh out the issue and bolster its case within the binding timeframe.").

Numerous courts have denied discovery extensions on similar facts. *See, e.g., id.* at 108 (where party had notice of key issue in case, its "lack of diligence and failure to pursue available discovery within the agreed-upon allotted time ensures that [party] cannot establish the 'good cause' necessary to . . . modify the Scheduling Order"); *Kinberg v. Colorforms*, Nos. 89 Civ.1156(PKL), et al., 1991 WL 285621, at **3-4 (S.D.N.Y. Dec. 31, 1991) (refusing to extend discovery so that movant could pursue on-sale bar evidence because "expeditious discovery of this purportedly new evidence, by thorough investigation of relevant records, was [movant's] responsibility," and untimely discovery of a relevant document "is patently insufficiently to establish good cause"); *Abbott Labs v. TorPharm, Inc.*, No. 97C7515, 2003 WL 22462611, at *4 (N.D. Ill. Oct.

25

29, 2003) (denying motion to amend pretrial order and reopen discovery where party "had not shown that it exercised diligence in pursuing the evidence upon which it bases its motion"). In accordance with its prior rulings, this Court should not countenance Defendants' lack of diligence with an extension.[23]

### 2. Defendants' Untimely Produced Documents Fail to Establish an On-Sale Bar Defense

In their "good cause" argument, Defendants seek to create the impression that their late discovery establishes an on-sale bar. Defendants incorrectly claim that "it is **undisputed** that documents establishing the pre-March 23, 2000 sale of at least the LQ15X01W module manufactured by Sharp exist in the files of third-parties." Def. Mot. at 14 (emphasis in original). The alleged documents in question, however, would fall well short of establishing an on-sale bar.

The on-sale bar must be proved by "clear and convincing evidence." *Dana Corp. v. Am. Axle & Mfg., Inc.,* 279 F. 3d 1372, 1375 (Fed. Cir. 2002). As this Court made clear on December 8, 2005, the on-sale bar is a fact-intensive defense that is difficult to prove. *See* D.I. 55 at 15. In addressing this defense, for example, the Court should determine, among other things, "whether the subject of the barring activity met each of the limitations of the claim, and thus was an embodiment of the claimed invention." *Dana Corp.,* 279 F.3d at 1375-76 (quoting *Scaltech Inc. v. Retec/Tetra L.L.C.,* 178 F.3d 1378, 1383 (Fed.Cir.1999)). Defendants cannot possibly make that showing based on

---

[23] Defendants' heavy reliance upon *Alt v. Medtronic, Inc.,* C.A. No. 04-370, 2006 WL 278868 (E.D. Tex. Feb. 1, 2006), is misplaced. First, *Alt* was not a discovery deadline case; rather, it dealt with whether a party demonstrated good cause to amend its preliminary invalidity contentions to add prior art references. *See id.* at *1. Indeed, the prior art references were disclosed at least four months before the close of discovery. *Id.* at *5. Further, although the opposing party knew of the additional prior art for months, it failed to object. *See id.* Finally, the *Alt* court determined that any resulting prejudice could be cured with a continuance. *See id.* Here, in contrast, LPL has objected vigorously to Defendants' untimely subpoenas and production, and, with the looming trial date, any further continuance of deadlines would only compound – not alleviate – the prejudice to LPL.

their untimely produced documents regarding possible sales of a sharp module (the LQ15X01W). *See* Def. Mot. at Exs. C-H. While the merits of Defendants' purported on-sale bar defense is not now before the Court, even if it were, Defendants' documents do *not* demonstrate – let alone by clear and convincing evidence – any on-sale bar, because, for example, there is no proof that a Sharp module was sold before the critical date *or* that any such sales involved technology that could invalidate any claims in the '121 Patent.[24]

### 3.    Reopening Third-Party Discovery Would Prejudice LPL

Reopening third-party discovery would substantially prejudice LPL. Defendants assert that adding new third-party documents into the case at this late date will not harm LPL because LPL can simply take more depositions and have its experts address the new information. *See* Def. Mot. at 15-16. Of course, Defendants ignore the fact that adding to LPL's discovery workload will put LPL to considerable extra expense – a recognized prejudice. *See, e.g., DAG Enters.*, 226 F.R.D. at 110 (refusing additional discovery where party opposing extension would have to incur added expense resulting in "significant prejudice"); *Abbot Labs*, 2003 WL 22462611, at *4 (refusing to reopen discovery because non-movant "would be seriously prejudiced . . . by having to conduct significant and costly additional discovery"). Further, LPL would be prejudiced because it would lack the ability to counter Defendants' belated third-party discovery now that the discovery deadlines have expired.

---

[24] Additionally, assuming *arguendo* that Defendants could demonstrate sales of the Sharp module, numerous issues of fact and law would still exist – *e.g.*, whether the modules were sold for commercial or experimental purposes – which are critical in determining whether the on-sale bar applies. *See generally* 2 Donald S. Chisum, *Chisum on Patents* § 6.02[7] (2003) ("activity that would otherwise constitute the placing of an invention in 'public use' or 'on sale' will not trigger the . . . statutory bar if the use or sale was incidental to experimentation"); *see also Armco, Inc. v. Cyclops Corp.*, 791 F.2d 147, 151 (Fed. Cir. 1986).

Additionally, extending third-party discovery will prejudice LPL by further delaying these proceedings, including the start of depositions. The Court has made clear that document discovery must be completed before starting depositions. *See* D.I. 115 at 11-12 (advising the parties that "you got to get beyond the document production problems and then you can have at each other on depositions"). To prepare for trial, LPL needs to begin taking depositions. The Court should enforce the discovery deadline to avoid unnecessary delay and expense.

### 4.    The July 17 Trial Date Precludes Further Delay

This burden and expense to LPL if document discovery is extended further would be compounded by the fast-approaching July 17 trial date. In light of the extensions already granted, and the Court's intent not to change the trial date, Defendants must not be allowed to delay this case any further. *See Abbot Labs*, 2003 WL 2246211, at *5 (noting prejudice to party opposing reopening of discovery because "allowing [movant] to amend the pretrial order and introduce [new evidence] will disrupt the progress of this action toward trial"). In sum, there is no valid reason to extend the Court's discovery deadline, and the approaching trial date requires the parties to move forward with depositions and expert discovery rather than continuing third-party document discovery.

### CONCLUSION

Accordingly, for all the foregoing reasons, Defendants' Motion for Reconsideration of the Court's February 24 and March 1, 2006 Orders Concerning Third Party Discovery should be denied.

28

March 20, 2006

THE BAYARD FIRM


/s/ Richard D. Kirk (rk0922)
Richard D. Kirk (No. 0922)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899-5130
(302) 429-4208

Counsel for Plaintiff
LG.PHILIPS LCD CO., LTD.

OF COUNSEL:
Gaspare J. Bono
Matthew T. Bailey
Cass W. Christenson
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C. 20006
(202) 496-7500 (Telephone)
(202) 496-7756 (Facsimile)


DC:50399471.1

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on March 20, 2006, he electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will send automatic notification of the filing to the following:

Robert W. Whetzel, Esq.
Matthew W. King, Esq.
Richards, Layton & Finger
One Rodney Sqare
P.O. Box 551
Wilmington, DE 19899

The undersigned counsel further certifies that copies of the foregoing document were sent by email and hand to the above counsel and by email and first class mail to the following non-registered participants:

Christine A. Dudzik, Esq.                 Teresa M. Corbin, Esq.
Thomas W. Jenkins, Esq.                   Glenn W. Rhodes, Esq.
Howrey LLP                                Howrey LLP
321 North Clark Street                    525 Market Street
Suite 3400                                Suite 3600
Chicago, IL  60610                        San Francisco, CA  94105


                                    /s/ Richard D. Kirk (rk0922)
                                    Richard D. Kirk