# EXHIBIT 1

LG Philips LCD Co., LTD    v.
Tatung Company, et al.

Hearing
February 8, 2006

---

1
IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
LG PHILIPS LCD CO. LTD. ,
        Plaintiff,
                            : Civil Action
y.                          : No. 05-292
TATUNG COMPANY, TATUNG COMPANY OF :
AMERICA, INC., CHUNGHWA PICTURE :
TUBES LTD., and VIEWSONIC :
CORPORATION,
        Defendants
            Wednesday, February 8, 2006
            12:30 p.m.
            Courtroom 4B
            844 King Street
            Wilmington, Delaware
BEFORE: THE HONORABLE JOSEPH J. FARNAN, JR.
        United States District Court Judge
APPEARANCES:
        THE BAYARD FIRM
        BY: RICHARD D. KIRK, ESQ.
            -and-
        McKENNA LONG & ALDRIDGE
        BY: GASPARE J. BONO, ESQ.
        BY: CASS W. CHRISTENSON, ESQ.
            Counsel for the Plaintiff
                    2
APPEARANCES CONTINUED:
        RICHARDS, LAYTON & FINGER
        BY: MATTHEW W. KING, ESQ.
            -and-
        HOWREY, LLP
        BY: JULIE S. GABLER, ESQ.
        BY: J. JAMES LI, ESQ.
            Counsel for the Defendant
                    3

[1] THE COURT: All right. Be seated, [2] please. You can step up.

[3] Okay. Do you want to announce [4] your appearance so the court reporter can get [5] them down.

[6] MR. KIRK: Good afternoon, Your [7] Honor. Richard Kirk from The Bayard Firm for [8] the plaintiff, LG. Philips LCD Company, Limited.

[9] With me today from the firm of [10] McKenna, Long & Aldridge in Washington are [11] Gaspare Bono and Cass Christenson.

[12] THE COURT: Good afternoon.

[13] MR. KING: Good afternoon, Your [14] Honor. Matt King with Richards, Layton & Finger [15] on behalf of the defendants. With me here today [16] from the Howrey firm are Julie Gabler and James [17] Li.

[18] THE COURT: Good afternoon.

[19] MR. KING: Your Honor, [20] unfortunately Christine Dudsac who is —

[21] THE COURT: I heard. Do you see [22] this thing over here, we don't have it working [23] correctly, I think partially because of the [24] white noise thing they installed, so I

---

Page 4

[1] apologize, we can't really do it well. [2] Hopefully we'll be technologically advanced in [3] about another sixty days.

[4] MS. GABLER: We should be fine. [5] And Christine obviously apologizes. There was [6] that issue with the UPS fire

---

at the Philadelphia [7] Airport this morning that caused her to be [8] unable to come in.

[9] THE COURT: I was reading that [10] during my trial on the AOL news, they showed a [11] picture of the fire of the cargo plane, right?

[12] MS. GABLER: Yes.

[13] THE COURT: It was amazing. Thank [14] you and welcome and thank you, Mr. King.

[15] All right. I took a look at your [16] letters and just a couple of notes that I made [17] that I thought if I address might be helpful. [18] The first item is that we have a July 17, 2006 [19] trial date, and which we will not lose or pass [20] or modify, or extend, shorten, it's July 17.

[21] If you look at the calendar, I [22] don't know if you're allowed to see those [23] anymore, but there is another bench trial [24] scheduled, but don't pay attention to that

---

Page 5

[1] because that's going to go later or earlier or [2] away, so you are the only trial in July, whether [3] it's a bench trial, a jury trial, it really [4] doesn't matter to me.

[5] So that brings me to my concern, [6] which I see that you have gotten a lot of the [7] matters resolved, but as is typical in these [8] type of cases, there is a little bit of tension [9] not between you, but with the kind of work you [10] have to get accomplished in the time frame, so [11] it looks to me like we've missed the early [12] February — what was it, February 3rd?

[13] MS. GABLER: Yes.

[14] THE COURT: To complete document [15] production, which is not a good thing in my [16] world.

[17] MS. GABLER: The defendants have [18] met the date, Your Honor. We completed our [19] production on Friday.

[20] THE COURT: Right. But if we all [21] don't meet it —

[22] MS. GABLER: Right, then we all [23] have a problem, yes.

[24] THE COURT: Exactly, we all have a

---

Page 6

[1] problem. So the first thing I want to address [2] is when you have a July 17th trial date, and I [3] understand all the translation issues and the [4] review issues and that we have to get, before we [5] go any further, all document production [6] resolved. And I know there is some implications [7] of interrogatory answers as it may pertain to, [8] you know, hopefully scheduled depositions, but [9] we really got to find out what is the drop dead [10] date because in this case with that July 17th [11] date, any document found that should have been [12] produced is going to cost a lot of money for the [13] party that finds it. And any document that goes [14] against the party, any document found that helps [15] a party won't help you once we get by the drop [16] dead date. So this is an important matter which [17] I guess I need to hear from plaintiff on.

[18] MR. BONO: Yes, Your Honor.

[19] THE COURT: You can do it from [20] there.

[21] MR. BONO: Very well, Your Honor. [22] We appreciate the significance of the timing [23] here and we have worked very, very hard to try [24] to meet — I would like to meet the deadline. I

---

Page 7

[1] would like to say — we don't believe the [2] defendants have completed their document [3] production. We have done an initial review and [4] there are some items that appear to be deficient [5] which we would like to raise with the Court, so [6] although they did make a fairly large production [7] on Friday, we don't believe it is complete, [8] either.

[9] From our point of view, Your [10] Honor, I would propose the following to see if [11] this is acceptable to the Court. We are in the [12] process of finishing up our document review and [13] getting some few remaining documents, because [14] we have had several discussions with the other [15] side on trying to work out some issues.

[16] We will be prepared to produce [17] additional documents this Friday. We anticipate [18] being — producing some additional documents on [19] Monday, and we believe we can complete our [20] document production one week from today, next [21] Wednesday.

[22] And as I said, there are some [23] other issues with the defendants' production [24] which I believe they're going to — which I

---

Page 8

[1] would like to raise and I believe they're [2] going to need a little bit of time to go back and look [3] at that as well, so we believe we can complete [4] our production by I guess —

[5] THE COURT: So our date is [6] February 15?

[7] MR. BONO: Yes, Your Honor, if [8] that's all right with the Court.

[9] THE COURT: You know, I take the [10] view, my life isn't that stressful, believe it [11] or not. I mean, there is a lot of work here, [12] managing 300 and some cases, but I always feel [13] empathy for lawyers. So, you know, if you told [14] me February 22nd was your date, as long as it's [15] the date that you're going to drop dead on

---

[16] document production and you understand all the [17] consequences on both sides, that's okay.

[18] So you feel real comfortable with [19] February 15th, and I tell you what we are going [20] to do with your concern about their deficient [21] production.

[22] MR. BONO: I would feel more [23] comfortable with next Friday, but I think I can [24] meet Wednesday.

Page 9

[1] THE COURT: We'll make it next [2] Friday. Actually you know what we'll do, we'll [3] give you a weekend to have all those associates [4] in there billing. This is like the bane of [5] their existence, and the thrill of partners [6] existence, Mr. King understands, all that extra [7] task coming in. It's great, isn't it? So we'll [8] do so we spot Wednesday the 15th, so we have [9] Thursday the 16th, 17th, 18th, the 20th is a [10] federal holiday, so we'll give you that, so they [11] can bill double time if they do that, and we'll [12] make it the 21st of February.

[13] MR. BONO: Your Honor, I [14] appreciate the extra time from the Court. I [15] don't think that should affect — if the [16] defendants are going to talk about —

[17] THE COURT: Hold on a second, I [18] want to get to that problem. I'm going to get [19] you to yelling at each other after February [20] 21st. In other words, you're going to cleanse [21] your soles by February 21st of all that you [22] think you should have produced, you're going to [23] write all those neat letters back and forth [24] about you didn't do this, you didn't do that,

Page 10

[1] we're not happy with that, then I'm going to see [2] you within a week of February 21st about [3] deficiencies.

[4] MR. BONO: That's very well, but [5] Your Honor, before we pick that date, I'm happy [6] with that, I don't want that to be — for the [7] defendants to bootstrap that into an excuse to [8] delay depositions.

[9] THE COURT: Well, it is. They've [10] already gotten that by having to get beyond [11] February 3rd or 2nd or whatever.

[12] MR. BONO: Your Honor, but in the [13] proposals we've exchanged proposed deposition [14] schedules among the parties.

[15] THE COURT: Well, if you agree.

[16] MR. BONO: I just want to say —

[17] THE COURT: It's okay.

[18] MR. BONO: — the way the [19] proposals — we have to have a conference call [20] tomorrow to firm up the schedule, but the [21] proposed dates are we

have offered our witnesses [22] starting March 8th, okay, March 8th, our [23] 30(b)(6) witnesses, and we have a couple of fact [24] witnesses that will also be scheduled right

Page 11

[1] around that time.

[2] They have proposed that we can [3] start taking Tatung Company of America and [4] Viewsonic, which are the U.S. companies which [5] are going to have minimal technical information, [6] they're really only going to have some product [7] information, some sales information, and they [8] have proposed that those depositions start [9] during the weeks of February 21 and 28.

[10] And what I'm suggesting is the [11] completion of our document production which [12] really, really should not affect the scheduling [13] of the beginning of those depositions in those [14] weeks because they're basically U.S. and sales [15] companies.

[16] THE COURT: See, you're making it [17] too complicated for kind of an intellectual [18] deficient person like myself. Let me make it [19] clear to you, I don't care, so start taking [20] depositions as long as you all agree. But if [21] somebody objects, then the way my world works [22] since I manage the case attempting to make your [23] lives less stressful, you got to get beyond the [24] document production problems and then you can

Page 12

[1] have at each other on depositions because what I [2] don't want to hear is in April or May that we [3] got to go back and depose somebody because this [4] just happened or that just happened because in [5] my world, that doesn't happen. In my world, [6] February 21 is when all documents should be [7] produced.

[8] I'm going to give you an [9] expeditious come back to Court, tell me your [10] problems about deficiencies, put everything on a [11] short leash for the further production or the [12] representation that there is no further [13] production, and typically in my world [14] depositions would begin.

[15] If you can get them to agree to [16] start the week of the 28th, that's fine, but if [17] I'm asked to delay depositions because the [18] document production isn't complete, then I do [19] it. Because the way I order things if you don't [20] have all your documents and the drop dead date [21] and all the disputes resolved, how can you go to [22] depositions? I don't know, but sometimes you [23] can.

[24] If you can agree to do that, go

Page 13

[1] ahead and go. But if you can't agree to do [2] that, then it stops. But it doesn't get pushed [3] out until April, it gets pushed out from [4] February 28th to what's it, March 2nd or [5] something.

[6] MR. BONO: I appreciate, Your [7] Honor, under the Court's — I don't want to make [8] it —

[9] THE COURT: Stressful.

[10] MR. BONO: Under the Court's [11] current scheduling order, we have agreed that [12] Court endorsed it that we would complete [13] 30(b)(6) depositions and fact depositions by [14] March 17th. And so —

[15] THE COURT: I don't mean to [16] interrupt you, but just let me ask this [17] question: What else did you agree to? February [18] 3rd was document production.

[19] MR. BONO: Your Honor, I [20] appreciate that.

[21] THE COURT: Okay.

[22] MR. BONO: If we could work out a [23] situation where that date moves back a week, I'm [24] not arguing about that.

Page 14

[1] THE COURT: I know you're not.

[2] MR. BONO: I really —

[3] THE COURT: I just —

[4] MR. BONO: I'll be happy to work [5] it out.

[6] THE COURT: I just keep trying to [7] bring it back to how I view things. If there is [8] disputes and I have to work them out, because [9] that's the only way I can be consistently — I [10] hate the word — fair, but consistent, let's [11] just say even if I'm unfair, at least I'm [12] consistent, the only way I can do that is if I [13] have a perspective that certain things close, [14] other things begin, unless the parties agree.

[15] But see, you already have gone [16] past, not you personally, if they're deficient, [17] they have gone by it, too, you all have gone by [18] February 3rd, so ultimately you have gone past [19] my world dates.

[20] MR. BONO: I understand, Your [21] Honor.

[22] THE COURT: Okay.

[23] MR. BONO: I understand, and I'll [24] try to work it out with the other side.

Page 15

[1] THE COURT: So you may go by March [2] 17th.

[3] MR. BONO: Very well, I don't have [4] an issue with that per se in working this out.

[5] THE COURT: Okay. Or you can [6] agree.

LG Philips LCD Co., LTD   v.
Tatung Company, et al.

Hearing
February 8, 2006

[7] MS. GABLER: Your Honor, we would [8] prefer to hold the depositions schedule, we did [9] exchange dates.

[10] THE COURT: So you ought to be [11] able to make it.

[12] MS. GABLER: Counsel was correct, [13] that was in the process of moving it forward, [14] but it's definitely our position that we want [15] the document issues resolved before we proceed [16] with depositions.

[17] THE COURT: So the date is [18] February 21st, a Tuesday, by five o'clock, [19] Wilmington, Delaware time when everything has to [20] be produced, which means that if there is [21] deficiencies — and these are all documents in [22] the case; right?

[23] MS. GABLER: Yes. Can I flag one [24] issue in this area, Your Honor, before we go on?

### Page 16

[1] THE COURT: Sure.

[2] MS. GABLER: It's maybe a point of [3] clarification with counsel. I know you are [4] translating documents right now to determine [5] whether or not certain things are relevant and [6] will be produced, but you intend to produce them [7] as foreign language documents; is that correct?

[8] MR. BONO: Yes.

[9] MS. GABLER: Yes. Okay. So our [10] concern is that if their production is [11] continuing through the 21st, and I have asked [12] Mr. Bono to estimate how many pages or boxes of [13] documents he anticipates adding to his [14] production, currently it's about one-third of a [15] box which they produced, and he told me it was [16] closer to one box than ten boxes and was unable [17] to estimate beyond that, and has represented [18] that a substantial portion of these documents [19] are going to be foreign language documents, so [20] if that, in fact, is the case, we are going to [21] need more than seven or ten days to figure out [22] what we have to know if we have a dispute about [23] what's in the documents. [24] They have the bulk of our

### Page 17

[1] documents now and to the extent that they think [2] there are deficiencies, whatever additional [3] production we're making would be very small, so [4] basically they have this whole time period to [5] figure out if they have got issues with things [6] that we produced as foreign language documents, [7] but if we're now in a situation where we're [8] only going to have seven days to figure out [9] what's in [9] possibly up to ten boxes of foreign language [10] documents, we'[11] re probably not going to be able [11] to

identify disputes by the 28th.

[12] MR. BONO: Your Honor, my best [13] estimate at this point is we're talking about a [14] box to a box-and-a-half, not ten boxes.

[15] THE COURT: In Korean?

[16] MR. BONO: I would say probably [17] three quarters of a box to a box would be in [18] Korean, yes. That's my best estimate at this [19] point.

[20] THE COURT: Three quarters of a [21] box ought to be able to be translated in a [22] week. I have had cases where you had German and [23] Japanese.

[24] MS. GABLER: Right.

### Page 18

[1] THE COURT: Actually answering [2] documents and they were able to do it.

[3] MR. BONO: Just so we know, I'm [4] not going to hold off the rest of the production [5] until the 21st, as soon as documents —

[6] THE COURT: As soon as you have [7] them you are going to produce them, you have a [8] drop dead date of the 21st.

[9] MR. BONO: I'm going to produce [10] some of these on a rolling basis as soon as [11] they're ready to be produced, so it will be not [12] be at the 21st when you get all these documents.

[13] MS. GABLER: Well, assuming that [14] that representation holds true and we receive [15] the bulk of them or all of them by the 15th, [16] we're obviously much more likely by the 28th to [17] have gotten them all translated and then [18] reviewed them to know if we have a dispute.

[19] THE COURT: You have to hire more [20] people. I mean, I hate to say that, but if— [21] I assume you're already set up for the [22] translation?

[23] MS. GABLER: Yes, we do have an [24] firm, an outside firm.

### Page 19

[1] THE COURT: This is just great for [2] the economy.

[3] MS. GABLER: It is. Isn't it [4] fabulous?

[5] THE COURT: I feel like —

[6] MS. GABLER: All of us who didn't [7] learn our parents' native languages are [8] regretting it now.

[9] THE COURT: That's fantastic. I'm [10] trying to learn my thousand words in Italian and [11] my mother and grandmother spoke Italian in the [12] house except when we were present. Isn't that [13] something? What were they thinking.

[14] But anyway, you're going to file [15] your deficiency letters against each other on [16] the 28th and I'm going to see you on the 1st of [17] March, which is a

Wednesday, at 12:30.

[18] Actually, you know what I'll do? [19] I'm in a trial, I'll make it for 12:30. There [20] might be some minor adjustment based on the [21] nature of that trial, but we'll schedule for [22] March the 1st at 12:30 to get your answers on [23] your disputes that will be filed by the close of [24] business on the 28th.

### Page 20

[1] MS. GABLER: Your Honor, can we [2] ask for another question?

[3] THE COURT: Sure.

[4] MS. GABLER: There are some [5] third-party subpoenas that have been issued and [6] those productions are pending and for the ones [7] we issued, we're pretty optimistic we are going [8] to get those documents in by the end of [9] February and will produce them. Is that February 21st [10] date going to be considered the drop dead as [11] applied to third parties, also?

[12] THE COURT: All the documents in [13] this case, all the documents in the case are [14] going to be here by February 21st or they're not [15] in the case.

[16] MS. GABLER: Okay.

[17] THE COURT: You know, as lawyers, [18] that whole third-party subpoena thing is a real [19] problem for judges to manage. So I have decided [20] over the last year to just make it part of [21] document production. If you don't get it, you [22] don't get it. Cases are finite pieces of [23] litigation for parties and they ought to be [24] cutoff dates. I mean, I'm sure if we allowed

### Page 21

[1] discovery for ten years, there is [2] something out there that we would be able to find.

[3] MS. GABLER: No problem, I just [4] wanted to make sure that we were clear.

[5] THE COURT: We are all clear. Any [6] document that's in this case is the 21st.

[7] MS. GABLER: Okay.

[8] THE COURT: Nothing will be in [9] this case after that. So with all that notice [10] and warning and all the understanding no matter [11] how prejudicial, how beneficial, they just won't [12] be in the case. Everybody should be fully [13] alert.

[14] Now, so when I looked at that, I [15] said if we don't have document production, these [16] other matters, and a lot of what was in issue [17] had to do with that, the deposition matters I'm [18] just not going to take up yet. I'm just not [19] going to address them because I'm not through [20] the other part.

[21] There are the interrogatories and [22] answers issue. One of the disputes is are [23] interrogatories okay, I guess in the

first [24] instance over a 30(b)(6) response. You know,

## Page 22

[1] again, in my world, yes, except if they're [2] inadequate.

[3] MR. BONO: Your Honor, let me [4] address that because that was a proposal made by [5] the defendants and as I indicated in the letter [6] to the Court, we would find that amenable and we [7] would agree because they have outlined certain [8] issues, they call contingent issues on the [9] issues of infringement, validity, [10] enforceability, prior art, the defendants have [11] taken the position that they believe they have [12] answered that by way of interrogatory and [13] therefore it should be off limits for 30(b)(6) [14] witnesses. I don't have a problem with that. [15] And we would agree to supplement our [16] interrogatory answers as long as the agreement [17] goes both ways.

[18] THE COURT: See, you have just hit [19] on it. That is the problem, they are able to be [20] supplemented. If you cut off that — if you cut [21] off interrogatories and their answers from [22] exposure to deposition, then you are left with [23] the remedy of supplementation.

[24] Now, if you both agree to that and

## Page 23

[1] you're never going to come back to me, I'll go [2] along with that, but again, in my view, my [3] world, I have to cut off the management problem [4] of supplements, case management problem of [5] supplements. But if you agree to it, that's [6] okay with me.

[7] MS. GABLER: Our problem now, Your [8] Honor, is that defendants have provided their [9] contingents and prior art references, et cetera, [10] and plaintiff has not, and has not identified [11] which claims are going to be in dispute, has not [12] identified anything about what their disputed [13] terms are, which claims they're asserting, which [14] they're not, they still have not identified any [15] products other than the two listed in the [16] complaint that they even are contending —

[17] THE COURT: But they're saying [18] they're willing to do that; right?

[19] MR. BONO: Your Honor, now counsel [20] has gone on to a related — it's a little [21] different. I guess the initial proposal by the [22] defendants was as far as presenting each side's [23] contentions and positions with respect to these, [24] the issues of infringement, enforceability,

## Page 24

[1] validity and prior art, they said we can't — [2] they have given us their

interrogatory answers [3] and they object to us taking 30(b)(6) witnesses [4] on those topics.

[5] And in order to try to cooperate [6] and move this case along, streamline [7] depositions, we are amenable to supplementing [8] our interrogatory answers because we had for the [9] most part objected to that, but we will give you [10] our positions and our contentions on those [11] topics like the defendants have done, we will do [12] it in interrogatory answers and then those [13] subjects will be off limits for 30(b)(6) [14] witnesses, because — and if that applies both [15] directions, we're happy to do that.

[16] MS. GABLER: I think as long as [17] we're talking about 30(b)(6) witnesses, yes, I [18] believe the parties are willing to do that, [19] although we are concerned about imposing a time [20] limit.

[21] THE COURT: Contention [22] interrogatories are party related, so obviously [23] they would be covered by 30(b)(6). Now, if [24] you're saying is we would like to ask individual

## Page 25

[1] witnesses about parties answers to contention [2] interrogatories, that's where you might have a [3] problem.

[4] MR. BONO: Yes, Your Honor.

[5] THE COURT: So you can't do that.

[6] MS. GABLER: I would say there is [7] a category of questions that depending on how [8] we're talking about contentions and prior art, [9] for example, the inventors are all witnesses on [10] their side.

[11] THE COURT: You don't ask them [12] about the interrogatory answer, you can ask them [13] about prior art.

[14] MS. GABLER: But things that might [15] be part of the content of the interrogatory [16] answer, we wouldn't be asking them as phrased, [17] but if there is prior art in there.

[18] THE COURT: If they give you [19] twenty pieces of prior art, you can ask them [20] about prior art, but you can't ask them about [21] the party's answer to the interrogatories and [22] that's what you understand and that's what [23] you're concerned about.

[24] MR. BONO: Exactly.

## Page 26

[1] THE COURT: I think you have it [2] right, plaintiff has it right, that if it's [3] interrogatories to a party for their [4] contentions, you get them, but you can't [5] examine [5] an individual witness. And you have given up [6] the one area you can do it in, the 30(b)(6) [7] area, because that's the party representative, [8] you have put that all over into interrogatories. [9] Now you'll have individual witnesses in and you [10] can ask them

questions about the subject matter, [11] but not about the specific interrogatory [12] responses.

[13] MS. GABLER: I don't think there [14] is any disagreement with that. There is one [15] other issue, though, with the interrogatories, [16] and that's in many of our interrogatories are [17] styled as what they knew at the time they filed [18] the complaint and, therefore, they have a Rule [19] 11 aspect to them.

[20] THE COURT: Is that still in [21] existence? There is a Rule 11? Come on.

[22] MS. GABLER: There is a Rule 11.

[23] THE COURT: Did you find that? [24] Who did that research? There is somebody that's

## Page 27

[1] awfully good at your firm.

[2] MS. GABLER: Yes, there you go.

[3] THE COURT: I have been here [4] twenty-one years. I don't remember a Rule 11. [5] I mean, people talked about it years ago. Have [6] you ever been in a case where it actually [7] happened?

[8] MS. GABLER: No, I have not.

[9] THE COURT: There you go. So [10] don't worry about those implications, just get [11] the information so we can get to the trial with [12] the jury. That's the fun of this profession. [13] Have you heard of one?

[14] MR. LI: Yes, we have a claim [15] regarding an exceptional case, but that's [16] exceptional cases.

[17] THE COURT: I have heard [18] exceptional cases, but the Third Circuit doesn't [19] really look at it like everybody else in the [20] world does, but Rule 11 implications, don't [21] worry about those, because that's amazing that [22] rule is still there. Do you remember when that [23] was the hottest thing in the legal community? [24] What was it, about a decade ago?

## Page 28

[1] MR. BONO: Two decades ago.

[2] THE COURT: That long ago? They [3] actually had us do reports on how many we did [4] and it got so embarrassing because there were [5] none to report that nobody knew what to do, so I [6] thought the rule went away, it floated off into [7] law school library lore or something. But [8] exceptional case, different story, facts on [9] that, that's the kind of information, but Rule [10] 11, don't be too concerned about that.

[11] The rule I found that's good is a [12] motion for a new trial in patent cases when you [13] don't pay attention to the orders of the Court [14] or you have a bad case to begin with and then [15] you try to play around with it at trial, give a [16] new

LG Philips LCD Co., LTD   v.
Tatung Company, et al.

Hearing
February 8, 2006

---

trial and assessing all the costs against [17] the losing party, that motion, that's a great [18] rule, very, very forceful.

[19] So you both understand what your [20] doing with that, and that's what you wanted to [21] get to, so you have a common understanding. [22] It's on the record, I understand it, everybody [23] here today understands it, and I think we can [24] move forward using interrogatory technique.

Page 29

[1] Depositions, I'm not going to [2] discuss that because I'm not ready to.

[3] MS. GABLER: Can we get a date on [4] the interrogatories?

[5] THE COURT: Well, I assume you [6] would need it before you started depositions, so [7] I would assume it's going to be sometime around [8] the 21st of February to the 28th.

[9] MR. BONO: The 28th would be fine, [10] Your Honor.

[11] THE COURT: 28th. Because you'll [12] need them to be able to conduct your [13] depositions, so we'll make February 28th the [14] drop dead date on interrogatories.

[15] I gave you a date to come here, [16] March 1st. You don't have to use that if you [17] can work things out.

[18] Privilege, in this document [19] production, you all know, Mr. Kirk and Mr. King [20] can help you if you don't, how we do our [21] privilege logs in this district. It requires [22] you to be detailed. It requires you to have an [23] efficient privilege log.

[24] I'm going to try to shortcut it

Page 30

[1] for you have so we don't have a lot of back and [2] forth between you. If there are questions where [3] you challenge the assertion of a privilege, what [4] I think would be helpful is if each side in the [5] privilege log categorizes the nature of the [6] privilege. So in other words, section one would [7] be attorney/client, section two would be work [8] product, you know, whatever you have.

[9] And then if there is a challenge, [10] how I'm going to resolve it is in the categories [11] if of the privilege log, section one or part one, [12] part two, I'll allow the challenging side to [13] make a random selection of a percentage number [14] of documents that I'll review in camera rather [15] quickly and how that turns out will determine [16] how your privilege log — I mean how your [17] privilege assertion is going to fair in this [18] particular piece of litigation.

[19] So do your privilege logs [20] according to the detail we use here, except [21]

break them out in parts by the nature of the [22] privilege. If you have a dispute, all you have [23] to do, you know, I'm going to hear it in camera, [24] pick out what it is, the part that you think

Page 31

[1] that they have been insincere about and then all [2] I'll need to give you is the number of documents [3] that you're going to require them or I'm going [4] to require them to produce randomly so I can do [5] an in camera review.

[6] Are there any questions, Mr. Kirk [7] or Mr. King? Okay.

[8] And that will get us through I [9] think the bulk of what typically comes up in [10] document issue and get us ready for depositions [11] to start up in March.

[12] MS. GABLER: When do you want the [13] privilege log disputes flagged for Your Honor?

[14] THE COURT: That probably won't be [15] able to be done by March 1 unless you tell me [16] you can, because of translation and everything [17] else, so I would be okay with it if the [18] objections or the challenges to the logs were [19] here a week later, by March 8, because I expect [20] to get them done in a week or so for you.

[21] MS. GABLER: And the logs [22] themselves on the 21st?

[23] THE COURT: Yes. Does that work [24] for both of you?

Page 32

[1] MR. BONO: Can we have just a few [2] extra days after the production to have a log [3] done, do you have a problem with that, maybe the [4] 24th, something like that?

[5] THE COURT: Logs will be exchanged [6] on the 24th. And any challenges by the 8th of [7] March. And then local counsel will E-mail me [8] that you need — if there is a challenge you [9] need the number to be produced of random [10] documents and if necessary a date for a hearing, [11] but you just put that in the E-mail under the [12] discovery dispute procedure and we'll get you [13] it. That's all the things, items that I have [14] listed.

[15] MR. BONO: Your Honor, in light of [16] Your Honor's ruling, I guess on the specifics of [17] the document issue, I think it would be best for [18] the parties to discuss it over the next week, I [19] have some points, but I'll discuss it with [20] counsel and she'll be discussing things with me [21] as we work over the next ten days.

[22] I do have one other thing, Your [23] Honor, in terms of scheduling. This was Markman [24] hearing, we did reach an agreement leading up to

Page 33

[1] the hearing consistent with the Court's [2] order and I wanted to propose it to make sure Your [3] Honor was okay with it.

[4] Your Honor, and if I get the dates [5] wrong, let me know, Julie, but I think I have [6] it.

[7] MS. GABLER: Can I interrupt you [8] before you proceed with the dates?

[9] Given that we have now extended [10] out both interrogatory responses and document [11] requests, I think we would like to ask that we [12] move back the Markman date so that all of that [13] is done and those documents are available for [14] expert consideration before the Markman hearing.

[15] THE COURT: In this case, and I [16] don't have it with me, you have Markman, then [17] you have your expert reports due; right?

[18] MS. GABLER: Yes.

[19] MR. BONO: Yes, Your Honor.

[20] THE COURT: So go ahead. I know [21] what you're saying, an expert for the Markman [22] hearing.

[23] MS. GABLER: Well, right now under [24] the current schedule, the expert reports

Page 34

[1] actually trail the Markman hearing by about [2] three weeks in essence.

[3] THE COURT: My goal is to get you [4] to construction so your experts have it when [5] they do their opinions on the patent issues in [6] the case.

[7] MS. GABLER: Right. So that's the [8] right — we don't disagree with that order, but [9] the concern is that now that we've moved [10] document production and interrogatory dates [11] under the schedule that Mr. Bono would be [12] providing you in a moment, we would be having [13] opening briefs exchange before the date we just [14] agreed on for the privilege log and two days [15] after the drop dead date on the documents, and

[17] THE COURT: What was your hearing [18] date?

[19] MS. GABLER: March 6th, and you [20] have —

[21] THE COURT: I think I saw that [22] somewhere.

[23] MS. GABLER: And that all briefing [24] was done by March 1, so while we have a number

Page 35

[1] of dates in Mr. Bono's proposal about when we [2] were going to exchange disputed terms and [3] definitions and things like that, given that we [4] have

Hearing
February 8, 2006

LG Philips LCD Co., LTD    v.
Tatung Company, et al.

now moved these document inter-rogatory [5] dates by three weeks, I think that should be [6] accounted for in the Markman schedule, so those [7] are now pushed back so those items are done and [8] the interrogatory responses and the documents [9] have been produced be-fore more than two days [10] before we're submitting opening briefs in [11] Mark-man.

[12] MR. BONO: Your Honor, I don't [13] have a disagreement with this, but ob-viously [14] it's the Court's schedule that is most [15] important.

[16] THE COURT: Here is what I'm going [17] to do. Except for — my concern is adult spring [18] break, and if any of you have children, [19] children's spring break. I think adult spring [20] break for me is March 9th, 10th, 11th, 12th, [21] 13th, 14th and 15th.

[22] MS. GABLER: For me it's the last [23] week of March.

[24] THE COURT: The last week of

Page 36

[1] March? So you have them committed to memory.

[2] MR. BONO: Your Honor, I just have [3] the Friday the 24th and Monday the 27th, which I [4] have blocked out my related children's spring [5] break.

[6] THE COURT: Okay. There you go. [7] So it's important to know that.

[8] MR. BONO: I'm visiting my [9] daugh-ter for parents weekend.

[10] THE COURT: So let's take out the [11] 9th, 10th, 11th, 13th, 14th, 15th of March, that [12] takes out the 24th, and then the week of the [13] 27th.

[14] MS. GABLER: It's actually — [15] let's see here. Yes, that's right. Yes.

[16] THE COURT: That would be the last [17] week of March would be the 27th.

[18] MS. GABLER: Yes.

[19] THE COURT: And you pick any dates [20] you want for the Markman and the only thing [21] you'll be subject to is the time. In other [22] words, it may be late in the date, or early in [23] the day, but you can pick the date you want.

[24] MR. BONO: Your Honor, just

Page 37

[1] looking at everybody's schedule, what about [2] Monday the 20th, which would be a two-week [3] extension, does that work?

[4] THE COURT: That's fine with me.

[5] MR. BONO: That's way before.

[6] MS. GABLER: Can I —

[7] MR. BONO: There is no secrets [8] here. You can see my calendar.

[9] THE COURT: Here you go, now you

[10] get all the trade secrets out. Does he have the [11] hours that he's billing daily?

[12] MS. GABLER: No.

[13] MR. BONO: I didn't give her that.

[14] THE COURT: Just wondering.

[15] MS. GABLER: What I would actually [16] like to do, I couldn't have the — we can [17] certainly commit to presenting a joint [18] submission by the end of the week to Your Honor [19] about a date.

[20] THE COURT: We'll pick the 20th, [21] just to have a date as we leave here today, and [22] we'll put it on for four o'clock and if it's [23] inconvenient for her, you can change it by [24] agreement.

Page 38

[1] MR. BONO: That would be fine.

[2] MS. GABLER: So 3/20, 4:00 p.m. [3] right now.

[4] MR. BONO: 4:00 p.m.

[5] THE COURT: 4:00 p.m. I'm in a [6] bench trial with Forest Lab.

[7] MR. BONO: Your Honor, could the [8] Court —

[9] THE COURT: Mr. Kirk, is that [10] trial going to settle? I don't think it can.

[11] MR. KIRK: If I had to bet, I [12] would say it won't.

[13] THE COURT: So four o'clock.

[14] MR. BONO: Your Honor, since we [15] haven't talked to Ms. Dudsik, were there a [16] couple of other dates that would work for Your [17] Honor?

[18] THE COURT: Other than the ones [19] I've excluded, pick whatever one you want.

[20] MR. BONO: So if she doesn't do it [21] the 20th, the 21st would be acceptable to the [22] Court?

[23] THE COURT: Yes.

[24] MR. BONO: Thank you, Your Honor.

Page 39

[1] THE COURT: We'll go away with the [2] 20th at four o'clock. If she can't do the 20th, [3] you pick another date. The only thing you're [4] subjected to is the time of the day.

[5] MS. GABLER: Right, which will be [6] late in the day.

[7] THE COURT: Right, because I have [8] a lot of trials coming up.

[9] MS. GABLER: Do we already have a [10] clear understanding of amount of time per side?

[11] MS. GABLER: No, because I haven't [12] read your briefs. Do you think I do that [13] arbitrarily? I'm not sure if that was an insult [14] or not.

[15] MS. GABLER: It was not intended [16] to be.

[17] THE COURT: I really do, I take a [18]

quick look at the briefs and I don't restrict [19] the parties. If you want to have an expert, I [20] let you have an expert, but I set times, that's [21] the only way I can control, but I have to read [22] the briefs to see what the issues are and then I [23] give you have your allocation and I give you [24] your time.

Page 40

[1] Some people argue and put the [2] papers in, some folks bring a witness, but I'll [3] leave that to you. But I'll do it probably — [4] I see, I don't know what dates you're going to [5] have the briefs to me, but after I have a chance [6] to look at the briefs to see what you're [7] disputing and how detailed it is and what the — [8] I mean, this is — what is it, plasma screens?

[9] MR. BONO: Your Honor, it's LCD, [10] liquid crystal displays.

[11] THE COURT: So I'm pretty expert [12] in that.

[13] MR. BONO: I understand.

[14] THE COURT: I buy them.

[15] MR. BONO: That's right, we all [16] buy them.

[17] THE COURT: I love this war story. [18] When I was a very, very inexperienced judge, I [19] had a patent case with RCA about digital [20] generation on video screen and all these people [21] like the guy that started Data General, Dr. [22] Wang, came to testify, and I was new enough that [23] I didn't know what you weren't supposed to ask. [24] and I was buying our first

Page 41

[1] computer, so it was a bench trial so after [2] Dr. Wang testified since he appeared at the time [3] to be the most knowledgeable person about all [4] that stuff, I asked him, I said what computer [5] would you buy if you had five children. The [6] oldest was like in the fifth grade and, you [7] know, and he said, Judge, you have to have an [8] Apple 2E with the software and everything.

[9] So I went to the computer store, I [10] was the brightest store customer in the computer [11] store because they all wanted to help you back [12] in those days, this was like in '85 or '86, I [13] have pretty good authority what I'm buying here, [14] and you know what, that Apple 2E, my [15] grandchildren still are playing educational [16] software. It's that good. He's passed away, [17] Dr. Wang, but he obviously knew what was good [18] for that application. So as a customer [19] sometimes you can be pretty astute, I guess.

[20] Okay.

[21] MR. BONO: One other thing, the [22] scheduling on the Markman, assuming we do go on [23] the 20th, you had in your

Min-U-Script®

LG Philips LCD Co., LTD   v.
Tatung Company, et al.

scheduling order, [24] originally you had the final briefing being

---

Page 42

[1] concluded on March 1st, which was the Wednesday [2] before the hearing on the 6th. Should we decide [3] that, or agree that March 15th, which is the [4] Wednesday before the Markman would be all [5] briefing would be concluded by that date.

[6] THE COURT: That's fine.

[7] MR. BONO: And if that's fine, [8] Your Honor, I would like to let the Court know [9] what we have agreed to. We will adjust the [10] dates accordingly because it's just a matter of [11] moving the dates back two weeks, but what the [12] parties have agreed to is we picked a date for [13] an exchange of terms that each side is proposing [14] would be subject to construction in the Markman [15] proceeding, then we have picked a subsequent [16] date in which each side was going to exchange [17] proposed definitions of the terms they're [18] proposing, and then a time for a meet and confer [19] to try to work, see if we can narrow the terms [20] and the definitions, and then an opening brief [21] that was about a week before the final brief in [22] the Court's order.

[23] And we've generally agreed with [24] that. And I just wanted to make sure that this

---

Page 43

[1] would be okay with the Court.

[2] THE COURT: Absolutely.

[3] MR. BONO: We are all geared up to [4] have all the briefing concluded and in accord [5] with the order.

[6] THE COURT: Absolutely.   [7]   Defendant, anything else?

[8] MS. GABLER: No, we agreed, it was [9] a negotiated schedule and that's an accurate [10] representation of how we have laid that out. So [11] once we get the — whether it's the 20th or a [12] different date, I don't anticipate we'll have [13] any problem reaching agreement on that adjusted [14] schedule.

[15] THE COURT: Okay. What I'll ask [16] you to do is somebody prepare an order, or do [17] you want me to just so order the transcript?

[18] You're going to get the [19] transcript. I'll just so order the transcript.

[20] MR. BONO: That would be [21] sufficient.

[22] THE COURT: I will send an order [23] that so orders the transcript that has the dates [24] and all other matters.

---

Page 44

Thank you
(Hearing concluded at 1:20 p.m.)

---

State of Delaware )
New Castle County )
CERTIFICATE OF REPORTER
I, Dale C. Hawkins, Registered Merit Reporter and Notary Public, do hereby certify that the foregoing record, is a true and accurate transcript of my stenographic notes taken on February 8, 2006, in the above-captioned matter.
IN WITNESS WHEREOF, I have hereunto set my hand and seal this 9th day of February, 2006, at Wilmington.

Dale C. Hawkins, RMR
Cert No. 112-RPR

# EXHIBIT 2

Atlanta

Denver

Los Angeles

Philadelphia

# McKenna Long
# &Aldridge LLP
### Attorneys at Law

1900 K Street, NW • Washington, DC 20006
202.496.7500 • Fax: 202.496.7756
www.mckennalong.com

San Diego

San Francisco

Washington, DC

Brussels

CASS W. CHRISTENSON
(202) 496-7218

February 27, 2006

EMAIL ADDRESS
cchristenson@mckennalong.com

VIA E-MAIL

Christine A. Dudzik, Esq.
Howrey, LLP
321 North Clark Street, Suite 3400
Chicago, IL 60610

     Re:    LG.Philips LCD Co., Ltd. v. Tatung Co., et al. (C.A. No. 05-292 JJF)

Dear Christine:

    I write to address issues related to discovery. We would like to resolve or narrow as many discovery issues as possible before the March 1 discovery hearing. If we cannot resolve these issues, however, we reserve the right to raise them with the Court.

<u>LPL's Objections to Third Party Subpoenas and Documents</u>

    With respect to third party subpoenas, we have received notices of subpoenas directed to the following third parties, with the notice date in parentheses: Honeywell International (January 25); Greg Zafiris, Pixelworks (January 25);[1] Quanta Computer USA Inc. (February 15); Hewlett-Packard Co. (February 16); Sharp Electronics Corp. (February 23), Raylar Design Inc. (February 23), Arrow Electronics Components (February 23), Ram Electronic Sales, Inc. (February 23), and Audio International, Inc. (February 24). Several of these subpoenas were issued in direct contravention of the Court's orders requiring all third party documents to be obtained and produced by February 21, 2006, at 5:00 Wilmington time. Defendants did not produce to us any documents or things regarding these third parties by the February 21, 2006, document production deadline. Defendants cannot use in this case any third party documents or things that were not produced to us by the deadline.

    At the February 8 hearing, the Court specifically confirmed that the February 21 deadline applies to third party documents and things, and that only documents produced by February 21 are considered "in this case" and documents produced after February 21 are "not in the case . . . . If you don't get it [in time from a third party], you don't get it . . . . We are all clear [that] [a]ny document that's in this case is the 21st [and] [n]othing will be in this case after that." Tr. of Feb. 8 Hearing at 20-21. On February 24, 2006, the Court in effect sustained our objection and

---

[1] Mr. Zafiris has informed us that Pixelworks does not have any documents responsive to the subpoena.

Christine A. Dudzik, Esq.
February 27, 2006
Page 2

expressly denied Defendants' request to extend the February 21 deadline for third party documents. Accordingly, we continue to object to Defendants' subpoenas that seek documents after the deadline, in contravention of the Court's specific orders.[2] If you have not already done so, please immediately withdraw all pending subpoenas. If you refuse to withdraw any of these subpoenas, please let us know the basis for your refusal so that we can discuss this tomorrow before our hearing on Wednesday.

Please also confirm that Defendants do not intend to use any third party documents or things in this case that we did not receive by the February 21 deadline. We object to any attempt to use in this case any documents or things (including products) not produced to us by the February 21 deadline, including, for example, Sharp documents (Sharp-D 001-011) or Raylar Design, Inc. documents (RD-D 0001-0045). Under the Court's very clear ruling at the February 8 hearing, and consistent with the Court's February 24 ruling not to extend the February 21 deadline, the Sharp and Raylar Design documents were not produced by February 21 and thus are not part of this case. In addition, we are puzzled by the February 21, 2006 cover letter from your office enclosing the Raylar Design documents, which was sent via Federal Express late last week and delivered to us today, February 27. The February 21 letter date was incorrect. According to the Federal Express website (and envelope) the package was not submitted to Federal Express until February 24, in Washington, D.C., for next business day delivery.[3]

LPL's Repeated Requests for Products and Samples

As stated previously many times, including, for example, in my February 22, 2006 letter, we also request again that Defendants produce all of the product samples so that we can prepare for trial. By letters dated February 21, 2006 and February 23, 2006, you have informed us that (after the deadline) Defendants will make available for inspection in Chicago five (5) product samples,[4] and have refused to provide fourteen (14) CPT module samples in this case.[5] You

---

[2] LPL's objections to the Defendants' subpoenas are not limited to the Defendants' failure to meet the deadline. Because the Court's rulings clearly prohibit the use of any responsive documents after the deadline, however, we have not addressed in this letter other objections. LPL reserves all objections regarding the subpoenas.

[3] LPL reserves all objections regarding the subpoenas and notices of subpoenas. The subpoena to Raylar Design, for example, does not refer to the District Court under whose jurisdiction and authority the subpoena was issued. Further, the rules required Defendants to serve "prior notice" of any document production sought under the subpoena. *See* Fed. R. Civ. P. 45(b)(1) ("Prior notice of any commanded production of documents and things or inspection of premises before trial shall be served on each party in the manner prescribed by Rule 5(b)." Defendants' notice of subpoena to Raylar Design was not served until February 23.

[4] You identified these five (5) products in a February 21 letter from Elsa Doi as follows: (1) CLAA141XB01; (2) CLAA201VA03; (3) LQ15X01W (Sharp); (4) HP Omnibook XE2; and (5) IBM ThinkPad 2640.

Christine A. Dudzik, Esq.
February 27, 2006
Page 3

have not responded to my email requesting information regarding who manufactured the three non-CPT modules. At least one of these five products -- the Sharp LQ15X01W -- is referenced in one of the objectionable subpoenas discussed above, but your February 23 letter states that this product was "purchased" from a third party. Given Defendants' failure to produce these items within the deadline, we object to any attempt by Defendants to use these products in this case. Please produce all emails and other correspondence with third parties and clarify when and how Defendants obtained these products, including why these products were not made available for inspection in advance of the February 21 deadline.

Regarding the five (5) products that you offered to produce in Chicago, would the Defendants agree to produce these five (5) samples at their Delaware counsel's offices in Wilmington? Also, would the Defendants impose any restrictions or limitations on our inspection and evaluation of the products (including, for example, any restrictions regarding the amount of time we spend with each product or our ability to open or partially disassemble products for evaluation purposes)? We would like to inspect these products in Delaware as soon as possible.

Your February 23 letter also refuses to produce the fourteen (14) other CPT module samples, because, you state, Defendants sold samples of those modules to LPL during discovery in a case in California. All of these products appear to be CPT products. You do not dispute the availability of additional samples and you intend to charge LPL for the samples produced. The production of those samples in a prior case is not sufficient for purposes of this case. LPL needs separate samples in each case for obvious reasons, including that each case involves different technical issues and the samples must be separately tested and/or disassembled for purposes of each case. It is our understanding that a set of samples sold to LPL in the California case is not available for our testing and analysis in this case, and one product sample cannot feasibly be used or tested twice. Further, there is no cost problem involved because Defendants already have stated that they will charge LPL for the cost of each module sample. Please produce all remaining samples, including product samples that may have been produced in prior cases.

In addition, we need the motherglass samples that we have requested. As we have discussed several times, the motherglass samples are a critical and necessary part of discovery concerning the '002 patent. Mr. Li's February 20, 2006 letter surprisingly objected for the first time to producing the motherglass and we will respond separately to Mr. Li's letter. Defendants' refusal to provide crucial discovery is unfortunate, and we ask that you reconsider your position so that we can avoid raising this issue with the Court.

---

*(footnote continued from previous page)*

[5] You identified these fourteen (14) products in a February 21 letter from Elsa Doi as follows: (1) CLAA130VA01; (2) CLAA150PB01; (3) CLAA150XC01; (4) CLAA150XE01; (5) CLAA150XG06; (6) CLAA150XG08; (7) CLAA150XG09D; (8) CLAA150XH01; (9) CLAA150XP01; (10) CLAA150XP02; (11) CLAA154WA01; (12) CLAA170EA02; (13) CLAA170EA03; and (14) CLAA170EA07.

Christine A. Dudzik, Esq.
February 27, 2006
Page 4

Further, please note that I have not received complete responses to my February 10 and February 14, 2006 letters to Julie Gabler (although I did receive a partial response to my February 14 letter). I also have not received any response to my February 21, 2006 letter to you. My prior letters raised several issues that I will not repeat here.

Also, please note that we have identified additional problems with Defendants' production, such as poor copy quality and format issues, that hinder our ability to review and use many documents and things. We will address these issues under separate cover.

Thank you in advance for your anticipated response and cooperation.

Very truly yours,

Cass W. Christenson

cc:     Julie Gabler, Esq.
        Matthew W. King, Esq.
        Richard D. Kirk, Esq.

EXHIBIT 3

Atlanta

Denver

Los Angeles

Philadelphia

# McKenna Long & Aldridge LLP
Attorneys at Law

1900 K Street, NW • Washington, DC 20006
202.496.7500 • Fax: 202.496.7756
www.mckennalong.com

San Diego

San Francisco

Washington, DC

Brussels

CASS W. CHRISTENSON
(202) 496-7218

EMAIL ADDRESS
cchristenson@mckennalong.com

February 15, 2006


VIA FEDERAL EXPRESS

Christine A. Dudzik
Howrey LLP
321 North Clark Street, Suite 3400
Chicago, Illinois 60610

> Re:   *L.G. Philips LCD Co., LTD., v. Tatung Company et al.,*
>         Civil Action No. 05-292 (JJF)


Dear Christine:

    Enclosed are documents bates labeled LPLII 01317 through LPLII 08046.  Many of these documents have been designated "CONFIDENTIAL ATTORNEYS ONLY" pursuant to the protective order.

Very truly yours,

Cass W. Christenson


CWC/cmb


cc: Richard D.Kirk, Esq.
     Matthew W.King, Esq

**FedEx Express** US Airbill

**Sender's Copy**

PULL AND RETAIN THIS COPY BEFORE AFFIXING TO THE PACKAGE.

Date 2/15/06

FedEx Tracking Number 8545 5556 6867

Sender's FedEx Account Number 0200-2362-7

**1 From** Please print and press hard.

Sender's Name Cass Christenson    Phone (202) 496-7500

Company MCKENNA LONG & ALDRIDGE LLP

Address 1900 K ST NW STE 100

City WASHINGTON    State DC    ZIP 20006-1102

**2 Your Internal Billing Reference** 07773-0002

**3 To**

Recipient's Name Ms. Dudzik    Phone ( )

Company Howrey LLP

Address 321 North Clark Street

Suite 3400

City Chicago    State IL    ZIP 60610

0321952934

Try online shipping at fedex.com.

**4a Express Package Service** To most SATURDAY Delivery, see Section 4.

☑ FedEx Priority Overnight
☐ FedEx Standard Overnight
☐ FedEx First Overnight

☐ FedEx 2Day
☐ FedEx Express Saver

**4b Express Freight Service** To most SATURDAY Delivery, see Section 4.

☐ FedEx 1Day Freight
☐ FedEx 2Day Freight
☐ FedEx 3Day Freight

**5 Packaging**

☐ FedEx Envelope*
☐ FedEx Pak*
☐ FedEx Box
☐ FedEx Tube
☑ Other

**6 Special Handling**

☐ SATURDAY Delivery
☐ HOLD Weekday
☐ HOLD Saturday

☑ No    ☐ Yes
☐ Yes

☐ Dry Ice

**7 Payment** Bill to:

☑ Sender
☐ Recipient
☐ Third Party
☐ Credit Card
☐ Cash/Check

Total Packages    Total Weight    Total Declared Value $ .00

**8 NEW Residential Delivery Signature Options**

☐ No Signature Required
☐ Direct Signature
☐ Indirect Signature

FedEx Use Only

519

PULL AND RETAIN THIS COPY BEFORE AFFIXING TO THE PACKAGE.

**FedEx.** US Airbill

Express

Sender's Copy

8545 5556 6845

Edward J. / 6

**1** From *Please print and press hard.*

Date 2/15/06   Sender's FedEx Account Number   0200-2362-7

Sender's Name  Cass Christenson   Phone (202) 496-7500

Company  MCKENNA LONG & ALDRIDGE LLP

Address  1900 K ST NW STE 100

City  WASHINGTON   State DC   ZIP 20006-1102

**2** Your Internal Billing Reference *First 24 characters will appear on invoice.*   07773-0096

**3** To
Recipient's Name  Ms Dodzik   Phone ( )

Company  Howrey LLP

Recipient's Address  321 North Clark Street
*We cannot deliver to P.O. boxes or P.O. ZIP codes.*

Address  Suite 3400   State IL   ZIP 60610
*To request a package be held at a specific FedEx location, print FedEx address here.*

City  Chicago

0321952934

**Try online shipping at fedex.com.**

*By using this Airbill you agree to the service conditions on the back of this Airbill and in the current FedEx Service Guide, including terms that limit our liability.*
**Questions?** Go to our Web site at fedex.com
or call 1.800.GoFedEx 1.800.463.3339.

**4a Express Package Service** *To most locations. Delivery commitment may be later in some areas.*

☐ FedEx Priority Overnight   ☐ FedEx Standard Overnight   ☐ FedEx First Overnight

☐ FedEx 2Day   ☐ FedEx Express Saver

**4b Express Freight Service** *To most locations. Delivery commitment may be later in some areas.*

☐ FedEx 1Day Freight   ☐ FedEx 2Day Freight   ☐ FedEx 3Day Freight

Packages up to 150 lbs.

Packages over 150 lbs.

**5 Packaging**

☐ FedEx Envelope   ☐ FedEx Pak   ☐ FedEx Box   ☐ FedEx Tube   ☐ Other

**6 Special Handling**

☐ SATURDAY Delivery   ☐ HOLD Weekday   ☐ HOLD Saturday

Does this shipment contain dangerous goods?

☐ No   ☐ Yes   ☐ Yes   ☐ Dry Ice   ☐ Cargo Aircraft Only

**7 Payment** *Bill to:*

☐ Sender   ☐ Recipient   ☐ Third Party   ☐ Credit Card   ☐ Cash/Check

Total Packages   Total Weight   Total Declared Value $

**8 NEW Residential Delivery Signature Options** *If no one is available at recipient's address, we may leave the package.*

☐ No Signature Required   ☐ Direct Signature   ☐ Indirect Signature

519

PULL AND RETAIN THIS COPY BEFORE AFFIXING TO THE PACKAGE.

**FedEx. US Airbill**
Express

Tracking Number  8545 5556 6856

Sender's Copy

**1 From** *Please print and press hard.*

Date 2/15/06        Sender's FedEx Account Number  0200-2362-7

Sender's Name  Cass Christenson        Phone (202) 496-7500

Company  MCKENNA LONG & ALDRIDGE LLP

Address  1900 K ST NW STE 100

City  WASHINGTON    State  DC    ZIP  20006-1102

**2 Your Internal Billing Reference**  07773 - 00612

**3 To**

Recipient's Name  Ms. Dudzik    Phone (   )

Company  Honigman LLP

Recipient's Address  321 North Clark Street

Address  Suite 3400

City  Chicago    State  IL    ZIP  60610

03219529934

**4a Express Package Service** *To most locations*

- [✓] FedEx Priority Overnight
- [ ] FedEx Standard Overnight
- [ ] FedEx First Overnight

- [ ] FedEx 2Day
- [ ] FedEx Express Saver

**4b Express Freight Service** *To most locations*

- [ ] FedEx 1Day Freight
- [ ] FedEx 2Day Freight
- [ ] FedEx 3Day Freight

**5 Packaging**

- [ ] FedEx Envelope
- [ ] FedEx Pak
- [ ] FedEx Box
- [ ] FedEx Tube
- [ ] Other

**6 Special Handling**

- [ ] SATURDAY Delivery
- [ ] HOLD Weekday
- [ ] HOLD Saturday

- [✓] No    [ ] Yes    [ ] Yes    [ ] Dry Ice    [ ] Cargo Aircraft Only

**7 Payment** *Bill to*

- [✓] Sender
- [ ] Recipient
- [ ] Third Party
- [ ] Credit Card
- [ ] Cash/Check

FedEx Acct No.

Total Packages    Total Weight    Total Declared Value    $

**8 NEW Residential Delivery Signature Options**

- [ ] No Signature Required
- [ ] Direct Signature
- [ ] Indirect Signature

519

FedEx | Track

Track Shipments
## Summary Results

 Quick Help

Single piece shipments

| Tracking number | Status | Date/Time | Destination | Service |
|---|---|---|---|---|
| 854555566867 | Delivered | Feb 17, 2006 12:33 PM | | ⊠ FedEx Express |
| 854555566845 | Delivered | Feb 16, 2006 1:37 PM | | ⊠ FedEx Express |
| 854555566856 | Delivered | Feb 16, 2006 1:37 PM | | ⊠ FedEx Express |

Track more shipments

Atlanta

Denver

Los Angeles

Philadelphia

# McKenna Long
# & Aldridge LLP
### Attorneys at Law

1900 K Street, NW • Washington, DC 20006
202.496.7500 • Fax: 202.496.7756
www.mckennalong.com

San Diego

San Francisco

Washington, DC

Brussels

CASS W. CHRISTENSON
(202) 496-7218

EMAIL ADDRESS
cchristenson@mckennalong.com

February 16, 2006

**VIA FEDERAL EXPRESS**

Christine A. Dudzik
Howrey LLP
321 North Clark Street, Suite 3400
Chicago, Illinois 60610

Re:    *L.G. Philips LCD Co., LTD., v. Tatung Company et al.,*
Civil Action No. 05-292 (JJF)

Dear Christine:

Enclosed are documents bates labeled LPLII 08047 through LPLII 12141. Many of these documents have been designated "CONFIDENTIAL ATTORNEYS ONLY" pursuant to the protective order.

Very truly yours,

Cass W. Christenson

CWC/cmb

cc: Richard D. Kirk, Esq.
Matthew W. King, Esq.

PULL AND RETAIN THIS COPY BEFORE AFFIXING TO THE PACKAGE.

**FedEx** USA Airbill — Express

Sender's Copy

7.27  2/17
8361 8855 4008

**1 From**
Date 2/16/06
Sender's FedEx Account Number 0200-2362-7
Sender's Name Cass Christenson  Phone (202) 496-7500
Company MCKENNA LONG & ALDRIDGE LLP
Address 1900 K ST NW STE 100
City WASHINGTON  State DC  ZIP 20006

**2 Your Internal Billing Reference** 07773-0062

**3 To**
Recipient's Name Ms. Dudzik  Phone (   )
Company Howrey LLP
Address 321 North Clark Street
Address Suite 3400
City Chicago  State Illinois  60610

Try online shipping at fedex.com.

Questions? Visit our Web site at fedex.com
or call 1-800-Go-FedEx® 800.463.3339

0222903154

**4a Express Package Service**
- [ ] FedEx Priority Overnight
- [ ] FedEx Standard Overnight
- [ ] FedEx First Overnight
- [ ] FedEx 2Day
- [ ] FedEx Express Saver

**4b Express Freight Service**
- [ ] FedEx 1Day Freight
- [ ] FedEx 2Day Freight
- [ ] FedEx 3Day Freight

**5 Packaging**
- [ ] FedEx Envelope
- [ ] Other

**6 Special Handling**
- [ ] SATURDAY Delivery
- [ ] HOLD Weekday
- [ ] HOLD Saturday
- [ ] Yes
- [X] No
- [ ] Dry Ice
- [ ] Cargo Aircraft Only

**7 Payment** Bill to:
- [X] Sender
- [ ] Recipient
- [ ] Third Party
- [ ] Credit Card
- [ ] Cash/Check

Total Packages    Total Weight    Total Declared Value $     .00

**8 Release Signature**

447

FedEx Use Only

**FedEx® USA Airbill**
Express

FedEx Tracking Number  8361 8855 4019

7:27  2/17

PULL AND RETAIN THIS COPY BEFORE AFFIXING TO THE PACKAGE.

Sender's Copy

**1 From** *Please print and press hard.*

Date 2/16/06    Sender's FedEx Account Number  0200-2362-7

Sender's Name  Cort Christenson    Phone (202) 496-7500

Company  MCKENNA LONG & ALDRIDGE LLP

Address  1900 K ST NW STE 100

City  WASHINGTON    State DC    ZIP  20006

**2 Your Internal Billing Reference**  07773 - 00101241
First 24 characters will appear on invoice.

**3 To**

Recipient's Name  Mr. Dudnik    Phone (    )

Company  Howrey LLP

Address  321 North Clark Street
To "HOLD" at FedEx location, print FedEx address.

Address  Suite 3400

City  Chicago    State IL    ZIP  60610

Try online shipping at fedex.com.

By using this Airbill you agree to the service conditions on the back of this Airbill and in our current Service Guide, including terms that limit our liability.

Questions? Visit our Web site at fedex.com
or call 1.800.Go FedEx® 800.463.3339.

0222903154

**4a Express Package Service**  *Packages over 150 lbs. Delivery commitment may be later in some areas.*
- [ ] FedEx Priority Overnight
- [ ] FedEx Standard Overnight
- [ ] FedEx First Overnight

- [ ] FedEx 2Day
- [ ] FedEx Express Saver

**4b Express Freight Service**  *Packages over 150 lbs. Delivery commitment may be later in some areas.*
- [ ] FedEx 1Day Freight
- [ ] FedEx 2Day Freight
- [ ] FedEx 3Day Freight

**5 Packaging**
- [ ] FedEx Envelope
- [ ] FedEx Pak
- [X] Other

**6 Special Handling**
- [ ] SATURDAY Delivery
- [ ] HOLD Weekday at FedEx Location
- [ ] HOLD Saturday at FedEx Location

Does this shipment contain dangerous goods?
- [X] No
- [ ] Yes
- [ ] Yes (Dry Ice)
- [ ] Cargo Aircraft Only

**7 Payment**  Bill to:
- [X] Sender
- [ ] Recipient
- [ ] Third Party
- [ ] Credit Card
- [ ] Cash/Check

Total Packages  Total Weight  Total Declared Value  $        .00

**8 Release Signature**  Sign to authorize delivery without obtaining signature.

447

FedEx Use Only

FedEx | Track

Track Shipments
## Summary Results

(?) Quick Help

Single piece shipments

| Tracking number | Status | Date/Time | Destination | Service |
|---|---|---|---|---|
| 836188554008 | Delivered | Feb 17, 2006 7:27 AM | | FedEx Express |
| 836188554019 | Delivered | Feb 17, 2006 7:27 AM | | FedEx Express |

Track more shipments

EXHIBIT 4

RICHARDS, LAYTON & FINGER
A PROFESSIONAL ASSOCIATION
ONE RODNEY SQUARE
920 NORTH KING STREET
WILMINGTON, DELAWARE 19801
(302) 651-7700
FAX (302) 651-7701
WWW.RLF.COM

ROBERT W. WHETZEL
DIRECTOR

DIRECT DIAL NUMBER
302-651-7634
WHETZEL@RLF.COM

February 17, 2006

VIA ELECTRONIC FILING

The Honorable Joseph J. Farnan, Jr.
United States District Court, District of Delaware
844 King Street
Wilmington, DE  19801

Re:    L.G. Philips LCD Co. Ltd. v. Tatung Company et. al.,
       C.A. No. 05-292 (JJF)

Dear Judge Farnan:

          As Your Honor is aware, for months now, Defendants have been working diligently to collect on sale bar evidence from third parties  This evidence is often in the form of invoices and other transaction level documents that require many hours on the part of the third parties to locate and produce.  On February 3, CPT produced some transaction level documents that support the on sale bar defense.  Since that time, we have continued our efforts to encourage additional third parties to complete their searches and productions by the February 21 deadline. Just this week, we located two new panels that are marked in such a way as to indicate that the first sales for both of these panels appear to have taken place prior to the critical date.  We are making every effort to get the third parties involved to produce their transaction level documents by February 21.  We write to alert the Court to the possibility that some of these documents may not by available by February 21 and ask that Your Honor consider a limited exception to his ruling on the document discovery cut-off as to the third parties relevant to on sale panels.

          We appreciate your consideration of this issue.

                                             Respectfully submitted,

                                             Robert W. Whetzel

cc:    Clerk of Court (by electronic filing)
       Christine A. Dudzik, Esq. (via telecopy)
       Richard D. Kirk, Esq. (via hand delivery)
       Gaspare J. Bono, Esq. (via telecopy)

RLF1-2982620-1

# EXHIBIT 5

# THE BAYARD FIRM
## A T T O R N E Y S

222 DELAWARE AVENUE, SUITE 900
P.O. BOX 25130
WILMINGTON, DE 19899
ZIP CODE FOR DELIVERIES: 19801

MERITAS LAW FIRMS WORLDWIDE
www.bayardfirm.com
302-655-5000
(FAX) 302-658-6395
WRITER'S DIRECT ACCESS

(302) 429-4208
rkirk@bayardfirm.com

FILED ELECTRONICALLY

February 21, 2006

The Honorable Joseph J. Farnan, Jr.
United States District Court
844 North King Street
Wilmington, DE  19801

RE:    *LG.Philips LCD Co., Ltd. v. Tatung Company of America, c et al.*
          C.A. No. 05-292-JJF

Dear Judge Farnan:

I write on behalf of Plaintiff LG.Philips LCD Co., Ltd. ("LPL"), in response to Mr. Whetzel's February 17, 2006 letter requesting the Court to extend the February 21, 2006 deadline to produce all documents in this case. At the February 8 discovery hearing, the Court made absolutely clear that "the date is February 21st, a Tuesday, by five o'clock, Wilmington, Delaware time when everything has to be produced," and that the February 21 deadline specifically includes third party documents. (Ex. A, Feb. 8, 2006 Transcript at 15.)

LPL opposes the Defendants' request to establish a new document discovery deadline for third parties. As the Court emphasized at the hearing, the July 17, 2006 trial date is firm and will not change. (Ex. A, Transcript at 4.) Therefore, the case is proceeding under an expedited schedule. The Defendants agreed to this expedited schedule, including the deadline for document discovery. At the February 8 hearing, the Court established the document production deadline of February 21, 2006. Further, Defendants' counsel confirmed that the February 21 deadline applies to all document discovery, including third party documents:[1]

---

[1] Indeed, as recently as February 15, 2006, Defendants' counsel, Ms. Gabler, confirmed in an e-mail to Plaintiff's counsel that "February 21 is the document production cut-off date."

605796v1

THE BAYARD FIRM

The Honorable Joseph J. Farnan, Jr.
February 21, 2006
Page 2

**MS. GABLER:** Your Honor, can we ask for another question?

**THE COURT:** Sure.

**MS. GABLER:** There are some third-party subpoenas that have been issued and those productions are pending and for the ones we issued, we're pretty optimistic we are going to get those documents by the end of February and will produce them. Is that February 21st date going to be considered the drop dead as applied to third parties, also?

**THE COURT:** All the documents in this case, all the documents in the case are going to be here by February 21st or they're not in the case.

**MS. GABLER:** Okay.

**THE COURT:** You know, as lawyers, that whole third-party subpoena thing is a real problem for judges to manage. So I have decided over the last year to just make it part of document production. If you don't get it, you don't get it. Cases are finite pieces of litigation for parties and they [sic] ought to be cutoff dates. I mean, I'm sure if we allowed discovery for ten years, there is something out there that we would be able to find.

**MS. GABLER:** No problem. I just wanted to make sure that we were clear.

**THE COURT:** We are all clear. Any document that's in this case is the 21st.

**MS. GABLER:** Okay.

**THE COURT:** Nothing will be in this case after that. So with all that notice and warning and all the understanding no matter how prejudicial, how beneficial, they just won't be in the case. Everybody should be fully alert.

(Ex. A, Feb. 8, 2006 Transcript at 20-21) (emphasis added).

608796v1

THE BAYARD FIRM

The Honorable Joseph J. Farnan, Jr.
February 21, 2006
Page 3

The Court could not have been more clear that all documents, including third party documents, are due on February 21, 2006. Yet, Defendants waited until February 15 and 16 to issue two new subpoenas just a few days before the deadline.[2] These new subpoenas are directed to CPT's own customers and seek documents related to transactions with CPT.[3] Accordingly, CPT could and should have served these subpoenas earlier, and there is no reason for the Court to modify its clear ruling.

For the foregoing reasons, LPL respectfully requests that the Court deny Defendants' request to extend the February 21 document discovery deadline.

Respectfully submitted,

/s/ Richard D. Kirk (rk0922)

RDK/slh
Exhibits
cc:   Clerk of the Court (courtesy copy by hand)
       All counsel as shown on the attached certificate

---

[2] Defendants issued a subpoena to Quanta Computers USA, Inc. on February 15, 2006 and issued a subpoena to Hewlett-Packard Company on February 16, 2006.

[3] Defendants were keenly aware of the need to substantiate prior sales at the first scheduling conference in this matter on December 8, 2005 (Ex. B. Dec. 8 Transcript at p. 14, lines 11-19). Had Defendants acted promptly, they would have had two and a half months to obtain the third-party documents they are seeking.

608796v1

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on February 21, 2006, he electronically

filed the foregoing document with the Clerk of the Court using CM/ECF, which will send

automatic notification of the filing to the following:

Robert W. Whetzel, Esq.
Matthew W. King, Esq.
Richards, Layton & Finger
One Rodney Sqare
P.O. Box 551
Wilmington, DE 19899

The undersigned counsel further certifies that copies of the foregoing document

were sent by email and hand to the above counsel and by email and first class mail to the

following non-registered participants:

Christine A. Dudzik, Esq.
Thomas W. Jenkins, Esq.
Howrey LLP
321 North Clark Street
Suite 3400
Chicago, IL 60610

Teresa M. Corbin, Esq.
Glenn W. Rhodes, Esq.
Howrey LLP
525 Market Street
Suite 3600
San Francisco, CA 94105

/s/ Richard D. Kirk (rk0922)
Richard D. Kirk

60238Dv1

# EXHIBIT 6

## UNITED STATES DISTRICT COURT
### DISTRICT OF DELAWARE

CHAMBERS OF
JOSEPH J. FARNAN, JR.
JUDGE

LOCKBOX 27
844 KING STREET
U.S. COURTHOUSE
WILMINGTON, DELAWARE 19801
(302) 573-6155

February 24, 2006

Richard D. Kirk, Esquire
P. O. Box 25130
Wilmington, DE 19899

Robert W. Whetzel, Esquire
Richards, Layton & Finger
P. O. Box 551
Wilmington, DE 19899

> RE:   LG Philips LCD Co. Ltd. v. Tatung Company, et al.
>       Civil Action No. 05-292 JJF

Dear Counsel:

The Court has Mr. Wetzel's February 17, 2006 letter and Mr. Kirk's February 21, 2006 letter concerning a possible extension of the February 21 document discovery cut off date.

No extensions will be granted by the Court for the reasons previously discussed with counsel.

Sincerely,

JOSEPH J. FARNAN, JR.

JJFjr:dk
cc: Clerk, U.S. District Court

# EXHIBIT 7

# HOWREY LLP

321 North Clark Street
Suite 3400
Chicago, IL 60610
T 312.595.1239
F 312.595.2250
www.howrey.com

Direct Dial 312.595.1037
File 01450.0011.000000

March 17, 2006

VIA EMAIL

Cass W. Christenson, Esq.
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C. 20006

     Re:   *LG. Philips LCD Co., Ltd. v. Tatung Company et al.*
            Civil Action No. 05-292 (JJF)

Dear Mr. Christenson:

    We are sending via courier today documents bearing the bates numbers CPT-D 027893-028841, AR-D 001-003 and SHARP-D 0012-0038. The bates prefixes represent:

      CPT-D:     Chunghwa Picture Tubes, Ltd. – Delaware

      AR-D:      Arrow Electronics, Inc. – Delaware

      SHARP-D:   Sharp Electronics Corporation – Delaware

                Sincerely,

                Elsa M. Doi
                Paralegal