## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

LG.PHILIPS LCD CO., LTD.,

                Plaintiff/Counterclaim Defendant,

    v.

TATUNG COMPANY;
TATUNG COMPANY OF AMERICA, INC.;
CHUNGHWA PICTURE TUBES, LTD.;
AND VIEWSONIC CORPORATION,

                Defendants/Counterclaim Plaintiffs.

Civil Action No. 05-292 (JJF)

## PLAINTIFF LG.PHILIPS LCD CO. LTD.'S PRE-HEARING SUBMISSION
## REGARDING THE COURT'S MARCH 1, 2006 DISCOVERY RULINGS

THE BAYARD FIRM
Richard D. Kirk (rk0922)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899-5130
(302) 655-5000
rkirk@bayardfirm.com
Counsel for Plaintiff
LG.PHILIPS LCD CO., LTD.

OF COUNSEL:
Gaspare J. Bono
Matthew T. Bailey
Cass W. Christenson
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C. 20006
(202) 496-7500

March 31, 2006

Plaintiff LG.Philips LCD Co., Ltd. ("LPL"), respectfully submits this pre-hearing submission regarding the Court's March 1, 2006 discovery rulings.[1] This submission summarizes the relevant facts concerning the parties' document production and discovery efforts in this case. LPL respectfully requests that the Court order Defendants to provide additional information and to reimburse LPL for its fees and costs related to the hearings.[2]

## INTRODUCTION

At the March 1, 2006 discovery hearing, the Court ordered the parties to produce certain specific documents and things by March 17, 2006. *See* Tr. of March 1, 2006 Hearing at 4-6 (Ex. 1) (D.I. 131). As set forth below, LPL has worked diligently and complied with the Court's Order by confirming that LPL's documents were produced. Additionally, LPL has provided several summaries of relevant information stored electronically in LPL's computer systems. LPL has specifically responded to *every* discovery issue raised by Defendants at the March 1 hearing and every issue raised by Defendants *after* the hearing before the March 17 deadline. LPL's counsel has explained to Defendants' counsel what documents do exist and what documents do not exist within LPL.

Further, LPL's counsel has conferred in good faith regarding Defendants' remaining concerns and provided *additional* information as requested, to the extent such information is reasonably available at LPL. Nevertheless, Defendants insist on forcing LPL and its counsel to

---

[1] The Court has scheduled evidentiary discovery hearings for April 5 and 6. Due to a family emergency today, however, LPL's counsel is requesting a short postponement of the hearing dates.

[2] "Defendants" in this case are Tatung Company ("Tatung"), Tatung Company of America, Inc. ("Tatung America"), Chunghwa Picture Tubes, Ltd. ("CPT"), and ViewSonic Corporation ("ViewSonic"). The two "Patents-in-Suit," U.S. Patent No. 6,738,121 ("the '121 Patent") and U.S. Patent No. 5,019,002 ("the '002 Patent"), relate to the design and manufacture of liquid crystal display ("LCD") modules. Generally, the '121 Patent relates to a Tape Carrier Package ("TCP"), and the '002 Patent relates to electrostatic discharge ("ESD") guard rings.

defend against an unnecessary discovery hearing. Defendants, moreover, have not cooperated regarding basic information that LPL needs.

For months, for example, LPL has requested basic information in the form of a list identifying which LCD modules and products use which types of TCPs, and a similar list regarding LCD modules and ESD guard ring information. This information is necessary to identify representative products and claims for trial as the Court has instructed counsel to do. Additionally, there is a discrepancy concerning Defendants' production of motherglass samples, as ordered by the Court, and mask work files, which Defendants admit are critical. Defendants have produced corresponding mask files and motherglass samples that do not match, indicating that LPL is still missing mask files and samples. LPL's counsel also has identified several examples of missing mask files that should be produced. The extent of Defendants' deficiency is unknown, however, in part because Defendants refuse to state the time period for which mask files were produced.

In addition, Defendants only recently identified as their most relevant technical documents more than 2,000 pages of "operational specifications" in Chinese that need to be further translated and analyzed. Yet, Defendants have not agreed to provide an index requested by LPL to confirm the sufficiency of these operational specifications. Although LPL has attempted to resolve these issues informally, Defendants insist on proceeding with the discovery hearings. LPL therefore respectfully requests that the Court:[3]

- order Defendants to provide a list, in English, of which LCD modules and products use which types of TCPs;

---

[3] LPL also objects to Defendants' attempt -- yet again -- to produce after the document discovery deadline new documents that this Court has ruled are excluded from the case, including, for example, documents subpoenaed from third-parties, prior art documents, and invoices. Defendants' production violates the Court's prior rulings quashing outstanding subpoenas and excluding untimely produced documents.

- order Defendants to provide a list, in English, of which LCD modules and products are manufactured using ESD guard rings;

- order Defendants to produce all outstanding motherglass, including samples that correspond to the mask (or .str) files that Defendants have produced;

- order Defendants to produce all outstanding mask works files and related information, including, but not limited to, as set forth in LPL's March 16, 2006 letter (Ex. 15), and a comprehensive index for Defendants' mask works files that indicates which file(s) relate to which product(s);

- order Defendants to produce a list or index that cross-references the "CLAA" numbers used to identify Defendants' modules with the "LSN" numbers used on CPT's Chinese operational specifications;

- allow LPL to raise any other deficiencies in Defendants' production concerning technical discovery needed as to TCPs and the '121 patent, and/or ESD guard rings and the '002 patent, pending translation and analysis; and

- reimburse LPL for all fees and costs incurred regarding the discovery hearings.

I.    **LPL HAS COMPLIED WITH THE COURT'S DISCOVERY RULINGS**

A.    **LPL's Production of Discovery Ordered at the March 1 Hearing**

During the March 1, 2006 discovery hearing, as set forth in the Court's subsequent March 2 order, the Court granted Defendants' "requests for production relating to validity, questions on commercial success, on-sale issues, prosecution, and public use." *See* March 2, 2006 Order at 1 (D.I. 132). The specific discovery granted and sought by Defendants is set forth in Section II of Defendants' pre-hearing letter to the Court. *See* Feb. 28, 2006 Letter from Matthew W. King to the Court at 9-14 (D.I. 129).[4]

Immediately after the March 1 hearing, LPL began its compliance efforts. LPL's counsel also sent Defendants' counsel a letter confirming that LPL would address each specific category

---

[4] The Court stayed damages-related discovery, including as sought in Defendants' February 28 letter, and denied Defendants' requests for documents related to one of LPL's experts. *See* Tr. of March 1, 2006 Hearing at 4-5 (Ex. 1) (D.I. 131).

of documents sought by Defendants in their February 28 letter. *See* March 7, 2006 Letter from Cass W. Christenson to Christine A. Dudzik (Ex. 2). The confirming letter by LPL's counsel tracked the relevant section of Defendants' February 28 letter to the Court nearly verbatim to ensure LPL's compliance with the Court's order. *Compare id., with* D.I. 129 at 9-14.

LPL employees have worked diligently to ensure that, with respect to each category sought by Defendants, LPL had produced or would produce all responsive documents. *See* March 27, 2006 Letter from Cass W. Christenson to Julie S. Gabler and Christine A. Dudzik (discussing LPL's efforts to comply with each of Defendants' requests) (Ex. 3). After further review, LPL confirmed that it had already produced the responsive documents related to the Patents-in-Suit by February 21, the prior document production deadline. *See id.* at 1-4. With respect to a single category of documents that related not to the Patents-in-Suit but to an unrelated Korean Patent Application (No. 2001-0065166), LPL located and produced additional documents by March 17. *See id.* at 2.

In order to cooperate fully, moreover, LPL did not merely produce all existing documents in its possession – LPL took the extra step of creating and producing certain charts and summaries to provide additional information. Indeed, with respect to Defendants' request for documents related to LPL's first sale or other public disclosure of the invention claimed in the '121 Patent, after confirming that any existing, responsive documents had already been produced, LPL generated and provided several additional charts and summaries based on information stored electronically in LPL's computer systems. The summaries that LPL produced included, for example, the following information related to sales, shipments, LPL products, and TCPs:

          1.    a summary of worldwide shipment information, by product / model, for the period of December 1, 1999 to March 31, 2000 (*see* LPLII 102292-102327);

          2.    a summary of U.S. shipment information, by product / model, for the period from December 1, 1999 to December 31, 2005 (*see* LPLII 102328-102753);

          3.    a list of all tape carrier packages (by part no. / supplier) that have used the '121 invention and the LPL products (by model) that have used each of those TCPs (*see* LPLII 102754-102758); and

          4.    a chart showing LPL's orders of TCP "Part 56" from Texas Instruments, including dates ordered and received (*see* LPLII 102785-102786); [5]

*Id.* at 4.

Upon completion of LPL's thorough review for any additional documents that might be responsive to Defendants' requests, and LPL's supplemental document production (including the summaries set forth above), LPL's counsel confirmed for Defendants' counsel that LPL had fully complied with the Court's discovery rulings and that, accordingly, "we do not believe there is any reason to conduct an evidentiary hearing next week concerning LPL's compliance." *Id.* at 1. LPL's counsel also invited Defendants' counsel to resolve informally any questions regarding compliance during a meet and confer teleconference. *Id.* at 6.  On March 28, counsel had a teleconference to address discovery issues and LPL's counsel subsequently agreed to provide additional documents and information.  For example, LPL's counsel agreed to Defendants' request that LPL supplement two shipment summaries to include a broader date range.[6]

---

[5] "Part 56" refers to the first example of a TCP used by LPL with the '121 invention.  The LB121S1-A2 refers to the only LPL module that ever used any Part 56 TCPs.

[6] The summaries go back to December 1, 1999, which predates the first shipment of Part 56 to LPL.  Defendants' counsel asked for further shipment information going back to August 1, 1999.  LPL has agreed, and is producing this additional information.

Additionally, LPL's counsel have agreed to address and consider additional requests in an attempt to avoid disputes. These discussions are continuing.

**B.     LPL Also Responded to Defendants' Additional Discovery Requests**

After the March 1 hearing, by letter of March 7, Defendants' counsel requested additional documents and things from LPL not addressed at the March 1 hearing. *See* March 7, 2006 Letter from Julie S. Gabler to Cass. W. Christenson (Ex. 4). Defendants' counsel raised new discovery issues for the first time in the March 7 letter, including requests for samples of LPL products and TCPs. *See id.* at 2-3. Defendants had never previously requested such samples in any documents requests, letters, meet and confer discussions, communications with the Court, or discovery hearings. *See* March 9, 2006 Letter from Cass W. Christenson to Julie S. Gabler at 2 (Ex. 5).

Despite LPL's objection to Defendants' new requests, in the spirit of cooperation, LPL's counsel nevertheless investigated whether LPL had additional documents and things responsive to the March 7 letter. And, LPL employees worked diligently to ensure that any responsive documents and things were produced. LPL determined, however, that the requested samples for products sold before March 23, 2000 do not exist.

LPL's counsel confirmed in writing the results of LPL's supplemental search and production efforts. *See* Ex. 3 at 4-6. LPL's counsel specifically addressed every single category of documents and things sought by Defendants in their February 28 *and* March 7 letters, including documents relevant to commercial success and any alleged on-sale bar activity. LPL's counsel explained that LPL had produced LPL's responsive documents to the extent they exist. *Id.* Additionally, LPL's counsel noted that LPL had created and produced summary information

to supplement LPL's production and provide information that was the subject of documents that did not exist. *Id.* at 6.

Thus, LPL has complied fully with the Court's instructions at the March 1, 2006 hearing and the Court's March 2, 2006 order. LPL also has cooperated further and addressed discovery that was not ordered by the Court. LPL and its counsel have worked diligently to identify, collect, and produce any responsive documents for those categories of production ordered by the Court. LPL also has provided additional information by creating and producing several summaries responsive to Defendants' discovery requests. And, LPL responded to Defendants' letter requests, even where those requests sought new discovery not ordered by the Court or even previously requested. LPL has acted diligently and in good faith to comply with both the letter and spirit of the Court's instructions, and with Defendants' discovery requests.

### C.     Defendants' Insistence on Unnecessary Discovery Hearings

Attempting to avoid the need for evidentiary hearings, LPL's counsel arranged two meet and confer teleconferences with Defendants' counsel, on March 28 and 30. In light of LPL's documented, good faith efforts to comply with the Courts' discovery rulings and Defendants' discovery requests, LPL's counsel hoped to resolve any points of disagreement without involving the Court. Early during the first teleconference, however, Defendants' counsel would not accept LPL's representations and insisted on discovery hearings.

Defendants argue that LPL must produce documents and things that do not exist at LPL. Additionally, Defendants now contend that LPL should produce its entire computer database used to prepare summaries, even though this database is beyond the scope of discovery and was never even requested during discovery. Defendants have no basis to insist that LPL produce documents that either do not exist at LPL or that Defendants never requested during discovery.

The Court instructed the parties to work toward informal resolution of their differences and to have contempt hearings only as a last resort. *See, e.g.*, Ex. 1 at 8 (imploring the parties "to talk more and ... work it out"); *id.* at 16 ("we really want to work [on] not arguing over silly things, but to get you to a trial"); *id.* at 25 ("hopefully we won't see you at the end of March") (D.I. 131). Instead, Defendants make unreasonable demands for five discovery areas. In three areas, LPL has produced its responsive documents. The other two areas raise new issues and are outside the scope of Defendants' discovery requests or Rule 34. Therefore, the Court should deny any relief to Defendants.

**D.    Defendants Fail to Show Non-Compliance in the Five Disputed Areas**

By letter of March 29, 2006, Defendants' counsel identified five areas for which "CPT believes documents exist and should be produced." March 29, 2006 Letter from Christine A. Dudzik to Cass W. Christenson at 1 (Ex. 6). Those areas are: (1) documents relating to the development and first sale of an LPL LCD incorporating a TCP falling within the scope of the '121 Patent; (2) documents regarding LPL's analysis of Defendants' accused products; (3) LPL's database; (4) Honeywell documents; and (5) LG.Philips America documents. *See id.* at 1-2. All of this discovery either has been produced or is unwarranted.

**1.    LPL Cannot Produce Documents That Do Not Exist**

LPL cannot produce documents that it does not have, and LPL has produced its documents related to areas (1), (2), and (4) above. For example, with respect to Defendants' request for documents describing LPL's first sale or public use of the invention claimed in the '121 Patent, LPL produced its existing responsive documents and created additional responsive

summaries. *See* Ex. 3 at 3-4. Likewise, LPL has produced its documents related to Defendants' accused products and the acquisition of the '002 Patent from Honeywell. *See id.* at 2-3.[7]

### 2.    LPL's Detailed Summaries Comply Fully with Rule 34

Defendants' counsel acknowledges that the summaries created and provided by LPL provide useful and relevant information. As set forth below, however, Defendants refuse to produce similar summary of information requested by LPL. Defendants' position is contradictory, and LPL's summaries, which provide the relevant and responsive information from LPL's computer system, are entirely appropriate. Further, LPL's counsel has offered to consider supplementing the summaries to provide any specific additional information requested by Defendants. During the March 28 teleconference, however, Defendants' counsel refused to discuss this alternative and demanded production of LPL's entire database.

### 3.    Defendants' New Request for LPL's Entire Database is Unreasonable

Defendants' last-minute demand for LPL's database is unreasonable. LPL has not yet had sufficient time to determine the total number or size of the electronic files and systems implicated by Defendants' request for databases. What is clear, however, is that LPL's computer system from which it extracted relevant information contains a tremendous volume of business, financial, and technical information that has nothing to do with this case. LPL does not have a discrete database that is limited to relevant information that can be easily produced. Nor is there any showing of need for such a database, even if it existed.

---

[7] In the March 28 teleconference, Defendants' counsel repeatedly accused LPL of failing to produce the purchase agreement related to the '002 Patent, and contended that LPL had produced only the assignment of the '002 Patent found in the prosecution history. Defendants' counsel is mistaken. LPL produced not only the prosecution history, but also assignment and contract documents related to acquisition of the '002 Patent. *See, e.g.,* LPL II 1304-1313.

LPL's summaries contain the relevant information from LPL's computer systems. There is no suggestion that any of the summaries are inaccurate. Further, LPL's counsel repeatedly has offered to consider requests to add other information to the summaries upon reasonable request by Defendants' counsel.[8] Instead, Defendants' counsel demands that LPL produce its database. LPL respectfully requests that the Court deny this demand, including because: (1) Defendants have the relevant information in summary form and have not identified any missing information; (2) Defendants never discussed any need for database production until March 28, 2006, after the close of document discovery; and (3) it is well-recognized that discovery demands to produce an entire database are presumptively overbroad and improper. *See, e.g., In re Ford Motor Co.*, 345 F.3d 1315, 1316 (11th Cir. 2003) ("Rule 34 does not grant unrestricted, direct access to a respondent's database compilations"); *see also Convolve v. Compaq Computer Corp.*, 223 F.R.D. 162, 169 (S.D.N.Y. 2004) (improper to grant direct access to hard drives, servers, and databases, thus "circumventing the normal process of discovery" absent "widespread destruction or withholding of relevant information").

### 4.    Defendants' New Request for LG. Philips America Documents is Unreasonable

Likewise, the Court should reject Defendants' belated attempt to seek from LPL documents in the possession of LPL's subsidiaries. In Defendants' March 29 letter, Defendants requested -- for the first time and after the close of document discovery -- copies of any documents that may belong to LPL's subsidiaries, including LG. Philips America, Inc. ("LPA"). *See* Ex. 6 at 2. LPA is a California corporation with its place of business in California. Defendants have not served any request on LPL for documents of LPA. Further, Defendants

---

[8] On March 30, Defendants' counsel asked whether LPL has any database that reflects which TCPs were used in production before March 23, 2000. LPL's counsel agreed to investigate this issue and is in the process of doing so.

have never served any subpoena on LPA, even though Defendants are aware of LPA from LPL's publicly available SEC reports. *See id*. at 2-3. Attempting an end-run around the discovery deadline, Defendants now attempt belatedly to seek from LPL documents that could and should have been pursued earlier by Defendants.[9]

The deadline for third party subpoenas has expired. The time for document requests also has expired. Recognizing this, and that LPA and LPL are separate entities, Defendants' counsel now attempts to contend that Defendants' document requests to LPL requested documents from both LPL and LPL's affiliates, including subsidiaries, including LPA. The record, however, undermines this contention. Defendants have never requested that LPL produce LPA's documents, and the Court has never ordered LPL to do so. Defendants cannot properly raise this new issue now.

Defendants requested only LPL's own documents in their document requests. Defendants' document requests include the heading "DEFINITIONS AND INSTRUCTIONS" stating: "A. 'LGL' and/or 'Plaintiff' shall mean LG.Philips LCD Co., Ltd." Defendants' First Set of Document Requests (Excerpt) at 2 (Ex. 7). The document requests do not define any other terms. Instead, the following paragraph B. incorporates by reference "definitions and meanings" set forth in Defendants' First Set of Interrogatories to Plaintiff. *See id*. Obviously, this incorporation by reference must refer to terms that are not defined in the document requests, i.e., all terms other than "Plaintiff".

---

[9] This is part of an ongoing pattern in this case to circumvent the discovery deadlines previously established and confirmed repeatedly by the Court. Defendants have filed a motion to reconsider (again) the Court's rulings enforcing the document discovery deadlines in this case, including the Court's rulings prohibiting Defendants from improperly issuing subpoenas and producing third-party documents after the deadline. *See* D.I. 134. LPL has opposed the motion. *See* D.I. 154.

Defendants unconvincingly contend that LPL should ignore the definition of "Plaintiff" as LPL in the document requests and refer instead to the more broadly framed interrogatories. Unlike the document requests, the Defendants' interrogatories define "Plaintiff" and/or "LPL" to mean "the Plaintiff in the above captioned lawsuit, LG Philips LCD Co. Ltd., *and its affiliates*." Defendants' First Set of Interrogatories (Excerpt) at 1 (Ex. 8) (emphasis added). In turn, "Affiliate(s)" is defined to mean "any corporation or other entity that controls, is controlled by or is under common control with the identified corporation or entity, including without limitation partnerships, parents, subsidiaries and divisions." *Id*. at 2.

Defendants thus illogically argue that although they framed their document requests narrowly to <u>exclude</u> LPL's subsidiaries, the requests should be construed broadly to <u>include</u> subsidiaries based on <u>different</u> definitions in a <u>different</u> set of discovery requests (interrogatories). To the extent that these definitions conflict, LPL expressly objected in its responses and confirmed that it was responding based on "the definitions in Paragraph A of the Definitions and Instructions in Defendants' First Set of Document Requests." LPL's Objections and Responses to Defendants' First Set of Document Requests (Excerpt) at 4-5 (General Objection No. 9) (Ex. 9). The Court should reject Defendants' transparent effort to rewrite the document requests in an attempt to compensate for Defendants' failure to seek this discovery.

Further, Defendants' attempt to inject this new issue now – long after the discovery deadline has passed – is not reasonable. Moreover, if Defendants sought to obtain documents from LG.Philips America, they could have done so by subpoena. *See* Fed. R. Civ. P. 34 (c) ("A person not a party to the action may be compelled to produce documents and things or to submit to an inspection as provided in Rule 45"). No such subpoena was ever served. Even if Defendants had timely requested LPA's documents from LPL, Defendants have not provided

evidence to show that LPL actually controls any responsive documents at LPA, assuming that any such documents exist. Defendants, therefore, have not carried their burden to show any basis to deem any LPA documents discoverable from LPL. *See, e.g., Gerling Int'l Ins. Co. v. Comm'r of Internal Revenue*, 839 F.2d 131, 140 (3d Cir. 1988) ("In the absence of control by a litigating corporation over documents in the physical possession of another corporation, the litigating corporation has no duty to produce."). For all of these reasons, the Court should reject Defendants' attempt to pursue this new issue.

## II.    DEFENDANTS SHOULD BE ORDERED TO PROVIDE DISCOVERY

As set forth below, LPL seeks the Court's assistance to obtain the following basic discovery items that LPL has sought for months in this case:

- a list, in English, of which LCD modules and products use which types of TCPs;

- a list, in English, of which LCD modules and products are manufactured using ESD guard rings;

- all outstanding motherglass samples, including that correspond to the mask (or .str) files that Defendants have produced;

- a comprehensive index for Defendants' mask works files that indicates which file(s) relate to which product(s);

- all outstanding mask works files and related information, including, but not limited to, as set forth in LPL's March 16, 2006 letter (Ex. 15); and

- a list or index that cross-references the "CLAA" numbers used to identify Defendants' modules with the "LSN" numbers used on CPT's Chinese operational specifications.

### A.    Despite LPL's Repeated Requests, Defendants Have Not Provided Information Necessary to Determine Representative Products and Claims

At the scheduling conference on December 8, 2005, the Court made clear that representative products and claims would be used at trial, and that counsel should work together to reach agreement on these issues:

MS. DUDZIK:  There was another issue that we haven't talked to counsel yet.  If we could – both of the parties could talk about narrowing our requests for documents.  Originally, your Honor had mentioned talking about representative products and representative patent claims.

THE COURT:  We're definitely doing that in this case.  I thought I made that real clear to both sides.  If you can agree, good.  If you can't, then I will impose the limits.  It's probably better if you can agree.

MS. DUDZIK:  Especially with the products.  We can talk and maybe we'll be in a position by what was the next meeting in front of your Honor?

THE COURT:  January 11th.

MR. BONO:  I've been working on that.  I'm not able to limit the claims today or address particular products.  I understand your Honor's suggestion.  I've been giving that a substantial amount of thought.  I'm not in a position to make a definitive proposal.

THE COURT:  That's good.  Work on it and get that over.  That will direct any new discovery requests that get contested.  I'll need to have that by the time that I have to schedule a discovery dispute conference.  We're going to have representative claims and products. . . .

Tr. of Dec. 8, 2005 Hearing at 8-9 (D.I. 55).

As instructed by the Court, shortly after the December 8 hearing, LPL's counsel discussed with Defendants' counsel the issue of representative products and claims, and requested specific product information – for both the '121 and '002 Patents – as a necessary first step in that process.  LPL has requested basic information in the form of a list identifying which LCD modules and products use which types of TCPs, and a similar list regarding LCD modules and ESD guard ring information.  Initially, Defendants' counsel indicated that the requested product information would be provided.  In the ensuing months, LPL has repeatedly requested this information in telephone calls and letters.  Defendants, however, have not provided the information.  As a result, LPL has twice raised this issue with the Court.  *See, e.g.*, Feb. 7, 2006

Letter from Richard D. Kirk to the Court at 3 (D.I. 110); Feb. 28, 2006 Letter from Richard D. Kirk to the Court at 2 (D.I. 128).

By letter of March 15, 2006, Defendants' counsel indicated that the summaries requested by LPL would not be provided. *See* March 15, 2006 Letter from Julie S. Gabler to Cass. W. Christenson at 2 (Ex. 10). Defendants' counsel did not state that the requested information was irrelevant, unavailable, or would be unduly burdensome to collect and produce. Rather, Defendants' counsel stated that the summaries "do not exist [and] [i]f they were created now, they would be work product." *Id.* Defendants' counsel reiterated that position during the March 28 meet and confer.[10] Defendants incorrectly contend that any factual information compiled by counsel is protected work product.

Defendants' position is legally incorrect and the Court should order Defendants to produce the information requested by LPL. Producing factual information from Defendants' computer systems or other sources, even if done at the request of an attorney, would not implicate the work product doctrine. *See, e.g., Government of the Virgin Islands v. Fahie*, 419 F.3d 249, 257 (3d Cir. 2005). In *Fahie*, the U.S. Court of Appeals for the Third Circuit rejected the government's attempt to withhold a report from a database as work product. As the Third Circuit reasoned, a computer-generated printout is not work product when it lacks "mental impressions, conclusions, opinions or legal theories concerning litigation of an attorney or other representative" and does not reveal confidential information regarding strategy. *Id.* Further, Rule 34 contemplates that "'when the data can as a practical matter be made usable by the

---

[10] During the March 30 meet and confer, Defendants' counsel stated that, under certain as yet undefined circumstances, Defendants *might* provide the requested TCP-related information, but that they would not provide the ESD-related information. Defendants might agree to provide information regarding products and TCPs, but will only consider doing so if LPL first agrees that this information will be limited to the time period since the complaint was filed.

discovering party only through respondent's devices, respondent may be required to use his devices to translate the data into usable form. In many instances, this means that respondent will have to supply a printout of computer data.'" *Macrovision Corp. v. VSA Ltd.*, CIV. No. 88-315-FR, 1989 WL 112808, at *3 (D. Or. Sept. 20, 1989) (quoting Fed. R. Civ. P. 34 Advisory Committee Notes); *see also Fahie*, 419 F.3d at 257 (computer-generated printout from a database was not work product). Indeed, as set forth above, LPL did exactly what Defendants refuse to do – LPL created and provided several summaries and charts containing relevant product information in response to Defendants' discovery requests.

CPT does not – and could not fairly – contend that it would be unduly burdensome to produce this readily available information. CPT's counsel acknowledges that it has actual information available, but has stated repeatedly that LPL should take depositions to get this information. LPL respectfully requests that the Court order Defendants to produce the summary information set forth above, including, for example, so that the parties can work toward identifying representative products and claims for trial. In addition, these lists will allow LPL to identify any outstanding products or information that Defendants have not yet produced, including discovery addressed below. Accordingly, LPL requests that the Court order Defendants to produce:

- a list, in English, of which LCD modules and products use which types of TCPs; and

- a list, in English, of which LCD modules and products are manufactured using ESD guard rings.

**B.    Defendants Have Not Provided All Discovery Ordered by the Court**

**1.    Defendants Have Not Produced All Motherglass Samples**

During the March 1, 2006 hearing, the Court ordered Defendants to produce discovery that had previously been withheld and that LPL brought to the Court's attention in its pre-hearing

letter. *See generally* Feb. 28, 2006 Letter from Richard D. Kirk to the Court (D.I. 128). Specifically, the Court ordered Defendants to produce "mother glass samples for each of CPT's LCD products, and . . . the nineteen product samples that have been withheld." Ex. 1 at 5 (D.I. 131).

Despite the Court's ruling, after the March 1 hearing, Defendants continued to resist production of motherglass samples, attempting to force LPL's counsel to travel to Taiwan to inspect such samples. *See, e.g.*, March 7, 2006 Letter from Julie S. Gabler to Gaspare J. Bono (Ex. 11); March 8, 2006 Letter from Julie S. Gabler to Cass W. Christenson (Ex. 12). After LPL's counsel objected to Defendants' unreasonable tactics, Defendants finally agreed to ship samples of motherglass to LPL's counsel. *See* March 9, 2006 Letter from Julie S. Gabler to Cass W. Christenson (Ex. 13).

When the samples arrived, on March 24, several samples were severely damaged.[11] Moreover, upon inspection, LPL's counsel determined that Defendants apparently did not ship all samples as required by the Court. In some cases, Defendants have produced both mask works files (or ".str" files) and corresponding motherglass samples that have <u>different</u> circuitry, indicating that LPL is missing both some mask files and some motherglass samples. LPL's counsel notified Defendants' counsel of these discrepancies and requested all withheld mask files and samples. Defendants' counsel acknowledged this discrepancy between the produced files and samples during the March 30 meet and confer, but would not explain the discrepancies except to say that this is work product and LPL will have to pursue further discovery. Accordingly, LPL requests that the Court order Defendants to produce:

---

[11] The samples are still being inspected and reviewed to assess the extent of the damage.

- all outstanding motherglass samples, including that correspond to the mask (or .str) files produced that Defendants have produced.

## 2.    Defendants' Other Discovery Deficiencies and Untimely Objections

With respect to the "Critical Discovery Related to Products and Technical Issues," that LPL requested in its February 28 letter to the Court, which entailed eleven (11) discovery issues, the Court ruled that Defendants must produce all of this technical discovery "by the March 17th, 2006 date," or file detailed objections "*before* March 17th." Ex. 1 at 6 (emphasis added); *see also* March 2, 2006 Order at 2 (granting LPL's request for "Critical Discovery Related to Products and Technical Issues," but stating that "Defendants may, **before March 17, 2006**, set forth detailed objections") (emphasis in original) (D.I. 132). The Court emphasized that Defendants should try to resolve any objections informally and in advance, explaining "I want to give you all a chance to talk more and if you can't work it out, I want to see in detail what [Defendants'] objections are . . . ." Ex. 1 at 8 (D.I. 131); *see also id.* at 15 ("So the more you talk, the more you may work towards some solutions.").

Defendants' counsel never contacted LPL's counsel to discuss any possible objections regarding these discovery issues.[12] Instead, Defendants waited until March 17 and then filed their objections and responses to the requests in LPL's February 28 letter. *See* D.I. 148. Defendants' objections are thus untimely and in disregard of the Court's expectation that counsel would attempt to resolve informally any disputed issues and objections. *See* D.I. 132 at 2 (ordering Defendants to file their objections "**before March 17, 2006**") (emphasis in original); Ex. 1 at 6 (stating that Defendants may, "before March 17th[,] set forth detailed objections"); *see also id.* at 8, 15 (urging counsel to resolve disputed issues informally) (D.I. 131).

---

[12] LPL's counsel first learned that Defendants might file some objections in a March 15 letter, two days before the production deadline. *See* March 15, 2006 Letter from Julie S. Gabler to Cass W. Christenson (Ex. 10).

621966v1

Defendants' objections regarding LPL's eleven bullet points can be grouped into three areas: (i) mask files and a corresponding index showing which files relate to which products (*see, e.g.*, D.I. 148 at Objection No. 1); (ii) other discovery related to ESD guard rings and the '002 patent; and (iii) discovery related to TCPs and the '121 patent. Regarding area (i), Defendants acknowledged that there was confusion about whether all mask files had been provided and that LPL may not have received all of the mask files. On March 30, CPT's counsel assured LPL's counsel that Defendants would cure this issue by immediately producing two complete mask file disks as received from CPT, but later the *same day* refused to produce these disks and took the position that all files were already produced. In addition, Defendants have pointed to more than 2,000 pages of Chinese-language technical documents that purportedly contain the technical information that is available (*see, e.g., id.* at Objection Nos. 3, 4, 6, 7, 9, 10). LPL requests an opportunity to address in the future any deficiencies in these documents after LPL's counsel has had an opportunity to review and translate these documents.

### a.    Defendants Have Not Produced Mask Files and Related Information

Defendants' Objection No. 1 relates to LPL's request for an index for the mask work files related to ESD guard rings and indicating which file(s) relate(s) to which products. *Id.* at Objection No. 1. LPL needs this index so that LPL can determine both (i) which mask files exist, and (ii) which mask files relate to which products.[13] On March 30, 2006, CPT's counsel informed LPL's counsel that a single mask file may correspond to more than one product.

---

[13] In general, a mask file, which relates to the '002 Patent, is a negative or positive image of the metal, insulator, or semiconductor material that indicates where to deposit or remove these materials on or from the substrate during the LCD manufacturing process. Often, these files are in the form of ".str" files. As Defendants state in their objections, "[m]ask files are THE mechanical drawings of the motherglass, showing each layer in the [manufacturing] process." D.I. 148 at 3 (emphasis in original). Thus, mask files are critical to LPL's infringement analysis regarding the '002 Patent, which relates to ESD rings used in the LCD manufacturing process.

CPT's counsel would not, however, provide a list or index to show which files relate to which products. Further, CPT's counsel refused to disclose the time period for which mask files were produced, stating that LPL would have to seek that information in depositions.

LPL cannot determine whether it has all relevant mask files without the index that Defendants refuse to provide. By reviewing the Defendants' overall production and spending many hours cross-referencing pieces of information, LPL's counsel has identified dozens of mask files, and related information, that appear to be missing from CPT's production. LPL has specifically requested all of the "mask works and files for all of CPT's products." March 13, 2006 Letter from Cass W. Christenson to Christine A. Dudzik at 2 (Ex. 14). In response to a request from CPT's counsel, LPL also has identified many specific examples of mask files that appear to be missing. *See* March 16, 2006 Letter from Gaspare J. Bono to Julie S. Gabler (Ex. 15) (identifying specific mask (or ".str") files that Defendants had not produced, and reiterating LPL's need for a comprehensive listing of Defendants' mask files information, including cross-references between files and products).

Defendants do not contend that they cannot provide the index. Instead, Defendants argue that "no such index exists at CPT" and, if such an index was created, it "would be work product and would not be subject to production in any event." D.I. 148 at 2. Further, Defendants contend that LPL should have sought a mask works index by interrogatory, and that LPL now can can seek the required information only during depositions. *Id.*

Defendants' technical objections are incorrect and unconvincing. Creating and producing an index of factual information from computer files or other sources will not implicate work product concerns. *See, e.g.*, *Fahie*, 419 F.3d at 257. Moreover, during counsel's March 28 and 30 meet and confer discussions, Defendants' counsel failed to resolve these issues. On March

28, Defendants' counsel conceded that he had not even read LPL's March 16 letter setting forth specific mask files apparently not produced. On March 30, Defendants' counsel acknowledged that some of the files in the March 16 letter may not have been produced and offered to produce that day or the next day two disks with the complete set of mask work files to resolve this issue. Later that same day, however, Defendants' counsel reversed course, stating that all files were previously produced and that CPT would not produce the two complete disks.

In addition, on March 30, Defendants' counsel confirmed that certain mask files relate to more than one product. However, Defendants' counsel refused repeatedly to provide an index indicating which file(s) correlate to which product(s). Accordingly, LPL respectfully requests that the Court order Defendants to produce:

- a comprehensive index for Defendants' mask works files that indicates which file(s) relate to which product(s); and

- all outstanding mask works files and related information, including, but not limited to, as set forth in LPL's March 16, 2006 letter (Ex. 15).

### b. LPL Is Continuing To Analyze Defendants' Production

In LPL's February 28 letter to the Court, LPL noted that "Defendants' counsel claims to have produced documents called 'operational specifications,' however, LPL's counsel has not been able to locate these documents." D.I. 128 at 5 n.7. Accordingly, LPL requested that Defendants produce their operational specifications or, if those documents already had been produced, that Defendants' counsel identify the relevant bates ranges. *Id.* Defendants' counsel did not identify the relevant bates ranges until March 17, when Defendants filed their objections with the Court. *See* D.I. 148 at 3-9 (Objection Nos. 3, 4, 6, 7, 9, 10).

LPL's counsel cannot assess the extent to which Defendants' foreign-language technical documents provide the necessary information because there are thousands of pages of Chinese documents. Because the cost and effort that would be required to translate all of these pages on

an expedited basis is prohibitive, during the March 28 meet and confer, LPL's counsel asked

Defendants' counsel to provide a list that would cross-reference Defendants' module numbers to

the "LSN" numbers on the face of the Chinese operational specifications. Such a list would

enable LPL's counsel to determine generally which operational specifications correspond to

which of Defendants' LCD products. Defendants' counsel indicated that the list would not be

provided. LPL will continue to review these documents and analyze the extent of any

deficiencies. If any further deficiencies are found, LPL will attempt to resolve those deficiencies

with Defendants' counsel informally, and resort to the Court only if necessary. To assist LPL's

review, LPL respectfully requests that the Court order Defendants to provide an index matching

the operational specifications to CPT's products.

In addition, on March 31, 2006, LPL's counsel was informed that Defendants previously

produced computer-animated drawings (CAD) files related to TCPs only for the period up to

2003.[14] Defendants' counsel has stated that Defendants are in the process of supplementing the

Defendants' production to include the files for the time period since 2003. This production is

untimely and LPL requests that Defendants produce any and all information related to TCPs as

set forth in LPL's February 28 letter to the Court.

Accordingly, LPL respectfully requests that the Court:

- require Defendants to provide a list or index that cross-references the "CLAA" numbers used to identify Defendants' modules with the "LSN" numbers used on CPT's Chinese operational specifications; and

- allow LPL to raise any other deficiencies in Defendants' production concerning technical discovery needed as to TCPs and the '121 patent, and/or ESD guard rings and the '002 patent, pending translation and analysis.

---

[14] During the March 30 teleconference, Defendants' counsel stated that Defendants already had produced all documents related to how TCPs are connected in Defendants' products.

### III.    DEFENDANTS' CONTINUED IMPROPER PRODUCTION OF DOCUMENTS

In addition to the deficiencies discussed above, Defendants' supplemental production on March 17, 2006 was improper. Defendants' March 17 production, as with previous productions, disregards the deadline for document discovery. At the March 1 hearing, the Court quashed Defendants' untimely subpoenas and excluded all documents produced by Defendants after February 21. *See* Ex. 1 at 3 ("any subpoena issued by any party for documents ... after February 21, 2006 is quashed" and "any document provided after February 21 is excluded.") (D.I. 131). Undaunted, on March 17, Defendants produced more documents that should have been produced by the Court's discovery deadline but were not, including, for example, documents subpoenaed from third-parties, prior art documents, and invoices. *See, e.g.*, SHARP-D 12-13; AR-D 1-3; CPT-D 27893-27905; CPT-D 27943-53. The Court should not allow Defendants to continuously disregard the document deadline in this case. The March 17 deadline was a deadline to produce only those documents compelled by the Court's March 1 ruling under Rule 37. Instead, Defendants treated the March 17 date like a discovery extension. Consistent with its prior rulings, the Court should respond by enforcing its repeated orders and the deadlines in this case.

## CONCLUSION

Accordingly, for all the foregoing reasons, LPL respectfully requests that the Court find that LPL has complied with the Court's discovery rulings, and further requests its reasonable expenses, including attorneys' fees.  LPL also requests that the Court address deficiencies in Defendants' discovery responses and require supplemental information as requested herein.


March 31, 2006

                                            THE BAYARD FIRM


                                            /s/ Richard D. Kirk (rk0922)
                                            222 Delaware Avenue, Suite 900
                                            P.O. Box 25130
                                            Wilmington, DE  19899-5130
                                            (302) 655-5000
                                            rkirk@bayardfirm.com
                                            Counsel for Plaintiff
                                            LG.PHILIPS LCD CO., LTD.

OF COUNSEL:
Gaspare J. Bono
Matthew T. Bailey
Cass W. Christenson
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C. 20006
(202) 496-7500

621966v1

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on March 31, 2006, he electronically filed

the foregoing document with the Clerk of the Court using CM/ECF, which will send

automatic notification of the filing to the following:

Robert W. Whetzel, Esq.
Matthew W. King, Esq.
Richards, Layton & Finger
One Rodney Sqare
P.O. Box 551
Wilmington, DE 19899

The undersigned counsel further certifies that copies of the foregoing document

were sent on March 31, 2006 by email and to the above counsel to the following non-

registered participants, and will be sent by hand to the above counsel and by first class

mail to the following counsel:

Christine A. Dudzik, Esq.              Teresa M. Corbin, Esq.
Thomas W. Jenkins, Esq.                Glenn W. Rhodes, Esq.
Howrey LLP                             Howrey LLP
321 North Clark Street                 525 Market Street
Suite 3400                             Suite 3600
Chicago, IL  60610                     San Francisco, CA  94105

/s/ Richard D. Kirk (rk0922)
Richard D. Kirk