# Exhibit 1

**LG Philips LCD Co., LTD    v.**
**Tatung Company, et al.**

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LG. PHILIPS LCD CO. LTD., :
   Plaintiff, :
          : Civil Action
          : No. 05-292
v.         :
TATUNG COMPANY, TATUNG COMPANY OF :
AMERICA, INC., CHUNGHWA PICTURE :
TUBES LTD., and VIEWSONIC :
CORPORATION, :
   Defendants. :
      Wednesday, March 1, 2006
      12:30 p.m.
      Courtroom 4B
      844 King Street
      Wilmington, Delaware
BEFORE: THE HONORABLE JOSEPH J. FARNAN, JR.
    United States District Court Judge
APPEARANCES:
    THE BAYARD FIRM
    BY: RICHARD D. KIRK, ESQ.
       -and-
    McKENNA LONG & ALDRIDGE
    BY: GASPARE J. BONO, ESQ.
    BY: CASS W. CHRISTENSON, ESQ.
      Counsel for the Plaintiff

2

APPEARANCES CONTINUED:
    RICHARDS, LAYTON & FINGER
    BY: ROBERT W. WHETZEL, ESQ.
       -and-
    HOWREY, LLP
    BY: JULIE S. GABLER, ESQ.
      Counsel for the Defendant

3

[1] **THE COURT:** All right. Be seated, [2] please.

[3] Good afternoon.

[4] **MR. BONO:** Good afternoon.

[5] **MS. GABLER:** Good afternoon.

[6] **THE COURT:** I have taken a look at [7] the letters that were filed and we're going to [8] have to work through this quickly because I'm in [9] the middle of a trial.

[10] What I'm going to do is give you [11] some rulings and some remedies, and then in the [12] time frame I'll give you, you'll have the [13] opportunity to try to work out your differences [14] on a shorter time frame, but if you don't, we'll [15] have you back for the hearings.

[16] Now, what I'm going to do first is [17] any subpoena issued by any party for documents [18] that is — that was issued after February 21, [19] 2006 is quashed. And any requests for [20] production or any document provided after [21] February 21 is excluded.

[22] With regard to — we'll turn first [23] the letter from defendants, which essentially [24] when I read through it has a lot to do with

Page 4

[1] discovery requests largely with regard to the [2] question of damages.

[3] I'm going to stay for a short [4] period of time all damages discovery and with [5] regard to defendants' claims on the questions [6] that relate to validity, which are the questions [7] of commercial

success and questions related to [8] the on sale issue, and questions related to the [9] prosecution, questions related to the public use [10] matter, all of the requests are going to on [11] those issues are granted for discovery.

[12] And the plaintiff will have until [13] March — it's a Friday, March 17, 2006 to [14] respond to that order. And the order is being [15] issued pursuant to Rule 37, but with no [16] sanctions at this time.

[17] And if there is any dispute [18] concerning the order, there will be a hearing on [19] March — this is a Wednesday, March 29th at 4:00 [20] o'clock, at which time defendants will have an [21] opportunity — and I'll set a time allocation if [22] the hearing becomes necessary, it will be [23] certain hours allocated to the prosecution of [24] the contempt, and certain time allocated to the

Page 5

[1] defense of the contempt will have an opportunity [2] to present its evidence that the Rule 37 order [3] on matters of invalidity as cited in this [4] defendants' letter in conjunction with this [5] hearing, February 28, 2006 letter, haven't [6] been complied with.

[7] Now, with regard to defendants' [8] request for documents related to declaration of [9] William K. Bohanan, the application is denied.

[10] Now, with regard to plaintiff, the [11] request for the mother glass samples is granted [12] as requested on page four of plaintiff's letter. [13] Specifically it's granted that defendants [14] produce one, mother glass samples for each of [15] CPT's LCD products, and two, the nineteen [16] product samples that have been withheld.

[17] Again, that order is pursuant to [18] Rule 37 and the production shall occur by March [19] 17, 2006. If it isn't produced, there will be a [20] hearing at which plaintiff can present its [21] evidence. The hearing will be held on March the [22] 30th, I'm trying to reduce your stress of [23] travel, so you'll be here in the afternoon on [24] the 29th, so I'm going to bring you on the

Page 6

[1] morning of the 30th at 9:30 a.m.

[2] And again, if that hearing is [3] necessary, I'll allocate time. In each case, I [4] should interpose this, letters or what we'll [5] call prehearing briefing presenting the proposed [6] evidence and the noncompliance facts will be due [7] on Friday, March the 24th, 2006.

[8] Again, the damages information or [9] discovery requested is separated and I'll deal [10] with that separately.

[11] The plaintiff's request for its [12]

captioned Critical Discovery Related to Products [13] and Technical Issues is granted and ordered to [14] be produced by the March 17th, 2006 date.

[15] However, on this order, the [16] defendant can rather than respond by March 17th, [17] can before March 17th set forth detailed [18] objections to each — what do you call those [19] dots? Bullets. Bullets — to the bullet items, [20] you know, you just use the language after each [21] bullet as a caption and defendant can file [22] instead detailed objections to the requests and [23] then I'll consider those and then enter a [24] further order either granting or denying, and I

Page 7

[1] really think what I'm trying to do there is give [2] you more time to talk about that.

[3] Some of the items that are [4] detailed there appear to me simply to be [5] discoverable, I don't know why they haven't been [6] given over, and others appear to just be pushing [7] against the wall, and it's a three-layer brick [8] wall, but I don't know enough from the papers I [9] have to make a final decision, but we'll put [10] that process in place and one way or the other [11] we'll get it resolved. It's kind of on the same [12] time frame as these other issues.

[13] And I think what takes cares of [14] what I'm interested in resolving that was [15] presented in the letters. And I'll give each an [16] opportunity to comment or ask me a question, and [17] you're already jumping out of your seat.

[18] **MR. BONO:** I just have two [19] clarifications, Your Honor. If they do file [20] objections, would we have an opportunity to [21] respond to them before Your Honor rules?

[22] **THE COURT:** I'm going to read [23] their objections first and then I'll tell you [24] what we're going to do, we're either going to go

Page 8

[1] to a hearing on those objections or we're [2] going to get together again.

[3] **MR. BONO:** Very good.

[4] **THE COURT:** But I want to give you [5] all a chance to talk more and if you can't work [6] it out, I want to see in detail what their [7] objections are to those requests and then I'll [8] decide, you know, whether we ought to go [9] immediately to a hearing or we ought to have [10] something further such as, you know, more [11] exposition on the matter.

[12] **MR. BONO:** Very well. Your Honor, [13] just a clarification, Your Honor has granted our [14] request for the mother glass on each product, [15] and to clarify, there are two mother glasses for [16] each

product, and they are different whether one [17] is called the TFT side, one is called I think [18] the CF side, and we need both. And I didn't [19] want there to be any ambiguity in the Court's [20] granting it as to the mother glass for each [21] product.

[22] THE COURT: It's granted as [23] requested.

[24] MR. BONO: All right. We had

Page 9

[1] specified both sides.

[2] THE COURT: Right.

[3] MR. BONO: Thank you.

[4] THE COURT: It's granted as [5] requested.

[6] MS. GABLER: Your Honor, we would [7] actually like to be heard on that issue.

[8] THE COURT: I'm not going to hear [9] anything right now on it. I'm going to put you [10] all at risk to the hearing. In other words, [11] I'll hear you at the hearing. If you don't [12] produce, we're going to have a contempt hearing [13] and you can make those presentations then.   [14] That's the vehicle for it.

[15] You know, we're kind of like in an [16] a amorphous state here, one side says one thing, [17] the other side says the other, the mechanism for [18] truly getting those resolved is one of two [19] options, you go to a master, or I'm getting to [20] kind of like both sides here, so I'm going to [21] keep you with me, and I'm going to conduct the [22] hearing that the master would have conducted. [23] You'll have a chance, for instance, if you think [24] that's a nonsense request, don't produce, take

Page 10

[1] your chance at the hearing, it's going to be [2] ugly. If you prevail, it will be ugly.

[3] MS. GABLER: Okay.

[4] THE COURT: I think that — in [5] other words, in these discovery disputes the [6] older I get, the more I realize that we decide [7] them with no information. And it's a little bit [8] of gamesmanship by the Court.

[9] So if I have the time, I'm going [10] to conduct the hearings when I get it down to [11] discernible issues, or I'm going to send folks [12] to the magistrate. We don't have a magistrate [13] judge, but if we get the second one there, or to [14] a master, which is why I have kind of carved out [15] the damage.

[16] What you all are talking about is [17] damages discovery. You may have to go spend [18] thirty or forty-five days with a master and have [19] a lot of hearings and exchange of papers and [20] things like that, but what I want to get settled [21] is infringement and validity discovery, to

the [22] extent you're engaged in it now, and put you at [23] risk for your decisions.

[24] MS. GABLER: I understand that

Page 11

[1] point, Your Honor. In these letter briefs [2] obviously they were only one sided, each side [3] did not have an opportunity to rebut, and so we [4] do have some concerns about that.

[5] I would like to have one point of [6] clarification in terms of production. And [7] particularly in regard to the samples and the [8] mother glass, is an offer for inspection [9] considered production by Your Honor? Because in [10] some instances, for example, within those [11] samples, there are some of them where there is [12] only one available, so if we produce it to LPL, [13] that's it, we don't have one, we can't get [14] another one, this is the one that's available, [15] those are the reasons we offer them for [16] inspection.

[17] THE COURT: If that is true — [18] well, I was going to order all produced at the [19] Washington D.C. office, but I stayed out of that [20] in the one instance where that was a discussion [21] because I can't believe the lawyers can't figure [22] that out themselves.

[23] In other words, if I'm on his side [24] and if what you just told me is correct, I got

Page 12

[1] to agree to go inspect, don't I?

[2] MS. GABLER: I would think so.

[3] THE COURT: Otherwise —

[4] MS. GABLER: We haven't been able [5] to reach that agreement.

[6] THE COURT: Otherwise I'm either [7] in need of serious care or, you know, I ought to [8] be — my father drove a truck, I ought to be [9] driving a truck like my dad and he didn't have [10] all that stress every day, he just made sure he [11] made his four deliveries.

[12] So that's the kind of thing I'm [13] giving you an opportunity to talk with each [14] other about. But if someone is illogical or [15] irrational and that's your defense that they [16] wouldn't accept inspection and there is only one [17] of the items, you're going to be successful at [18] the hearing.

[19] Am I making sense here?

[20] MS. GABLER: You are making sense [21] as to the samples, it does really bring me back [22] to the mother glass issue that I really would [23] like Your Honor's indulgence to be heard.

[24] THE COURT: They want it, they

Page 13

[1] think they're entitled to it, why would

I know [2] more than the both of you about what ought to be [3] produced? And I only ought to decide if it [4] should be produced or not be produced in the [5] context of a penalty if I have a full [6] evidentiary expedition and I wouldn't get that [7] listening to you today. I have read the [8] letters. How many exchanges have both of you [9] had?

[10] MS. GABLER: Several.

[11] THE COURT: So I have this silly [12] notion that you can rely on experienced lawyers [13] to do the right thing and discovery all those [14] rules was intended to be a nonjudicial [15] intervention process. Wasn't that the thought? [16] But somehow it's become the game.

[17] So I want to do it on an [18] evidentiary record. And I'm not a harsh guy, [19] but if somebody didn't produce something that it [20] becomes clear after hearing witnesses that they [21] should have produced, they're going to pay a lot [22] of money for not having done it.

[23] I ordered somebody to pay for a [24] trial because they wouldn't listen to my orders

Page 14

[1] during the trial. Why should I get stressed [2] during the trial? If you want to keep violating [3] my orders during evidence, you wait to the end, [4] you brief it, if the transcript shows you didn't [5] do what you were supposed to do in the context [6] of my orders, you just pay for the next trial. [7] And you go appeal and whatever they do, they do.

[8] But we got to get this system back [9] to some response from lawyers to be rationale [10] and logical.

[11] But you understand there is only [12] one, she can't give it to you, you got to go [13] inspect it.

[14] MR. BONO: I'll try to work that [15] out, Your Honor. I thought a reasonable [16] compromise on that would be they would produce [17] it in the local counsel's office so we could [18] have reasonable access to it and they would [19] maintain possession of it as a reasonable [20] compromise. That would be my thought, but I'll [21] address that with counsel.

[22] MS. GABLER: Counsel, we discussed [23] that back and forth. Part of it is they're [24] disassembled and things we had to buy on the

Page 15

[1] open market, we had to buy online, so it's [2] putting it back together and risking damaging it [3] and shipping it is an issue in terms of where it [4] actually sits in Chicago versus bringing it to [5] Delaware. And I don't think it helps any of us [6] to have a sample damaged.

LG Philips LCD Co., LTD    v.
Tatung Company, et al.

**Hearing**
**March 1, 2006**

[7] **THE COURT:** Don't you all want to [8] get through this so we can get to trial? That's [9] the fun part.

[10] **MR. BONO:** I'll be happy to [11] discuss that. That's the first I have heard [12] that there is a damage question and they were [13] already disassembled. I was not apprised of [14] that information until a moment ago.

[15] **THE COURT:** So the more you talk, [16] the more you may work towards some solutions. I [17] have a feeling we're going to have a hearing at [18] least on some issues on each side and that's [19] fine, I'll allocate time, we can — you know, [20] very important people can tell you their whole [21] life in 185 pages. How long did it take for you [22] to tell me what's going on here, an [23] hour-and-a-half?

[24] So this — but what we're going to

Page 16

[1] do is we're going to get you to the trial and [2] we're going to try and be as fair as we can in [3] hearing your disputes so you have the evidence [4] that you want, but we really want to work to not [5] arguing over silly things, but to get you to a [6] trial.

[7] That takes care of your issues. [8] It doesn't take care of your issues because [9] yours are kind of reserved for the hearing if [10] it's essentially in the context of an objection, [11] which is fine.

[12] **MR. GABLER:** Right.

[13] **THE COURT:** And we'll hear them [14] then, if you don't work them out. Is there [15] anything you don't understand about the process [16] or the nature of the process, in other words, [17] what the orders are asking you to do?

[18] **MR. BONO:** I understand that.

[19] **MS. GABLER:** Yes, we understand [20] them.

[21] **THE COURT:** Okay. I'll put an [22] order in place that sets all these dates for [23] you. You have the transcript to refer to if [24] there is, you know, any detail you need. I'm

Page 17

[1] just going to put the dates in the order of what [2] you're supposed to do.

[3] **MR. BONO:** One final [4] clarification, Your Honor. There is just three [5] dates looming up in Your Honor's original [6] scheduling order that I believe are off the [7] table now in light of this ruling, which were [8] the deposition deadline that originally was [9] March 17, the expert report deadline, March 31, [10] and the expert deposition deadline of April 28. [11] I would assume that those dates are no longer [12] applicable and that we'll — there will be new [13] dates assigned at the appropriate time?

[14] **THE COURT:** They're going to get [15] pushed out proportionately to the M-arch 29 and [16] 30th dates, which isn't a whole lot of time. [17] It's basically about thirty days is what I [18] figured.

[19] **MR. BONO:** So we could assume [20] those are pushed out about thirty days at this [21] point?

[22] **THE COURT:** We are going to have [23] to get this discovery worked out first.

[24] **MS. GABLER:** The other date —

Page 18

[1] **THE COURT:** All the dates that [2] were key to the February 21st date essentially [3] will be pushed out to allow this process to [4] occur.

[5] **MS. GABLER:** Your Honor, just to [6] clarify, I believe all the dates that Mr. Bono [7] just read plus the one I raised were all [8] actually key to the February 3rd date, not the [9] February 21st date. None of the dates that [10] Mr. Bono just discussed were discussed at our [11] last hearing, instead we just indicated that [12] depositions would not begin until document [13] issues had been resolved.

[14] **THE COURT:** So we're not going to [15] get resolution until let's say March 30th, so [16] that's the date that will be operable to push [17] out from. And it will be about the same amount [18] of time that it took to get the resolution, [19] which is the month of March, thirty days.

[20] **MS. GABLER:** Okay. Is Your Honor [21] willing to hear any argument this morning on the [22] third-party subpoena issue?

[23] **THE COURT:** What would I want to [24] hear?

Page 19

[1] **MS. GABLER:** Our concern, Your [2] Honor, is that we have several issues that we're [3] concerned with in that regard.

[4] First of all, in production that [5] they completed on the 21st and the documents [6] that they actually produced on the 21st, there [7] are indications of some LPL on sale panels that [8] were not produced and that we have now been able [9] to go ahead and buy one of those online and [10] indicated that that clearly was on sale and does [11] embodiment of the '121 patent in it.

[12] Not only did they not produce [13] sufficient documents, but also we now didn't go [14] out and try to subpoena any third parties who [15] would have been involved in those transactions [16] because we didn't have that information from LPL [17] until the last day of the document discovery.

[18] Additionally, in their documents, [19] it has been indicated that Texas Instruments is [20] a TCB supplier to LPL. That was not revealed in [21] their initial

disclosures or in any other [22] location. We again discovered that on the 21st. [23] We had no reason to subpoena Texas Instruments [24] prior to receiving those documents so we never

Page 20

[1] subpoenaed them either. They lead us to believe [2] now that they would have relevant information.

[3] And finally, in terms of the [4] various other third-party subpoenas regarding on [5] sale documents, prior to our last hearing it was [6] not our understanding that the February 3rd date [7] applied to anybody but the parties, and we were [8] aggressively doing third-party discovery, but I [9] think it might have been a little unclear in the [10] various letter briefs that went back and forth [11] there that the on sale discovery that we're [12] pursuing those subpoenas is not the on sale [13] discovery that Ms. Dudzac had referenced in [14] earlier hearings, but there was an additional [15] panel, a new panel, a Sharp panel that we [16] discovered and have turned over, did turn over [17] at least one document and offered the panel for [18] inspection by February 21st.

[19] But we have received and been [20] producing many other documents that clearly [21] evidence that that panel was on sale and it does [22] appear to be the preferred embodiment of the [23] '121 that would invalidate that entire patent. [24] The Federal Circuit is certainly

Page 21

[1] interested in prioritizing, in validating a [2] patent rather than having an invalid patent be [3] enforced in a litigation and then, you know, [4] potentially try to be enforced against others in [5] the future, so we really think there is a due [6] process here in regards to that limited area of [7] discovery.

[8] We plan to seek reconsideration of [9] Your Honor's ruling on that point, but we would [10] like you to consider not quashing those [11] subpoenas right now and letting us let those [12] subpoena productions go forward, let us be heard [13] on our motion for reconsideration, at that point [14] if you maintain your position, we can deal with [15] whatever is going to happen in terms of quashing [16] the subpoena, but in the meantime letting those [17] productions go forward so those aren't ruled [18] out.

[19] **MR. BONO:** Your Honor, just [20] briefly. Your Honor has now ruled no fewer than [21] three times on this issue. You ruled at the [22] hearing we had last time in front of Your Honor, [23] you ruled in your letter ruling last week, and [24] you ruled again this morning.

---

Page 22

[1] She's now asking for a fourth [2] reconsideration. I think it's — I think Your [3] Honor has made the position clear, especially [4] since Ms. Gabler had an understanding back in [5] February 3rd whether Your Honor's February 21 [6] deadline applied to third-party production.

[7] The only other point I would like [8] to make, Your Honor, is anytime you set a [9] deadline, there will always be documents you [10] could have achieved after that deadline, all [11] these arguments are simply the effect of [12] establishing any sort of deadline in the case, [13] so I would ask Your Honor to deny the request.

[14] THE COURT: All right. The motion [15] to quash — I mean the order to quash will [16] remain in place. Is this the three boxes that [17] you got or something? What was this, what was [18] the February 21 you got?

[19] MS. GABLER: On February 21, they [20] produced several, many, many boxes of documents, [21] but within that on February 21 there were three [22] boxes of documents that contained all of Korean [23] documents and within those documents were the [24] first indication that we had that the LPL TCP

---

Page 23

[1] were being provided by Texas Instruments, and of [2] the panel, the LPL panel that we now understand [3] has been — was sold prior to the critical date.

[4] THE COURT: That's what I [5] understood, it was in the three boxes.

[6] MS. GABLER: Yes, we did those [7] boxes. It's not three boxes of documents.

[8] THE COURT: No.

[9] MS. GABLER: It's more like an [10] inch-and-a-half.

[11] THE COURT: It's three boxes and [12] that's where it came from, that's what I [13] understood from reading. So the order to quash [14] will remain, and you certainly can file a formal [15] motion setting forth both why you believe [16] further discovery should be permitted and [17] specifically what discovery that is.

[18] And you can also argue, I mean, [19] any other issue you want. The due process issue [20] about if this case fails to get evidence that [21] could show a patent invalid, and it's fully [22] adjudicated and down the road there is a patent [23] running around that may be invalid for the kinds [24] of reasons you're talking about, I think that

---

Page 24

[1] happens a lot.

[2] I have had patent cases where two [3] other judges have heard them and then I remember [4] once I was presented with an on sale bar and [5] granted all of a sudden this patent, everybody [6] paid royalties, then you get into that whole did [7] they defraud the people or was it good faith, so [8] I'm not too interested in that for purposes of [9] your case, but I would be interested in hearing [10] your motion to reconsider and then if I agree [11] with you after hearing from the other side, [12] you'll brief it on the local rules, I will allow [13] you some limited opportunity to go get it.

[14] But you have to put it in a formal [15] motion.

[16] MS. GABLER: We will do that. [17] Thank you.

[18] THE COURT: All right. Anything [19] else?

[20] MR. BONO: No, Your Honor.

[21] THE COURT: Anything else?

[22] MS. GABLER: No, I believe that's [23] it, Your Honor.

[24] THE COURT: Okay. Thank you and

---

Page 25

[1] hopefully we won't see you at the end of March.

[2] By the way, the fact that I [3] separated out these disputes about damages [4] doesn't mean that I have stopped any of you from [5] talking about them to try and reach resolution, [6] but the complexity of that issue, my current [7] thinking is you may have to get more time than I [8] have available. But if you can work them out, [9] my order doesn't stop you from talking about it, [10] it just keeps them out of my purview for the [11] time being.

[12] MR. BONO: Very well, Your Honor. [13] Thank you.

[14] (Court recessed at 12:58 p.m.)

---

Page 26

State of Delaware        )
New Castle County        )

CERTIFICATE OF REPORTER

I, Dale C. Hawkins, Registered Merit Reporter and Notary Public, do hereby certify that the foregoing record is a true and accurate transcript of my stenographic notes taken on March 1, 2006, in the above-captioned matter.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this 1st day of March, 2006, at Wilmington.

Dale C. Hawkins, RMR

---

**Min-U-Script®**

LG Philips LCD Co., LTD   v.
Tatung Company, et al.

# 1

**121** 19:11; 20:23
**12:58** 25:14
**17** 4:13; 5:19; 17:9
**17th** 6:14, 16, 17
**185** 15:21

# 2

**2006** 195:21
**2006** 4:13; 5:5, 19; 6:7, 14
**21** 1814
**21** 214
**21** 22:5, 18, 19, 21
**21st** 18:2, 9; 19:5, 6, 22; 20:18
**24th** 6:7
**28** 5:5; 17:10
**29** 17:15
**29th** 4:19; 5:24

# 3

**30th** 5:22; 6:1; 17:16; 18:15
**31** 17:9
**37** 4:15; 5:2, 18
**3rd** 18:8; 20:6; 22:5

# 4

**4:00** 4:19

# 9

**9:30** 6:1

# A

**a.m** 6:1
**able** 12:4; 19:8
**accept** 12:16
**access** 14:18
**achieved** 22:10
**actually** 9:7; 15:4; 18:8; 19:6
**additional** 20:14
**Additionally** 19:18
**address** 14:21
**adjudicated** 23:22
**afternoon** 33:22
**afternoon** 4:22
**afternoon** 522
**afternoon** 5:23
**Again** 5:17; 6:2, 8; 8:2; 19:22; 21:24
**against** 7:7; 21:4
**aggressively** 20:8

**ago** 15:14
**agree** 12:1; 24:10
**agreement** 12:5
**ahead** 19:9
**allocate** 6:3; 15:19
**allocated** 4:23, 24
**allocation** 4:21
**allow** 18:3; 24:12
**always** 22:9
**ambiguity** 8:19
**amorphous** 9:16
**amount** 18:17
**appeal** 14:7
**appear** 7:4, 6; 20:22
**applicable** 17:12
**application** 5:9
**applied** 20:7; 22:6
**apprised** 15:13
**appropriate** 17:13
**April** 17:10
**area** 21:6
**argue** 23:18
**arguing** 16:5
**argument** 18:21
**arguments** 22:11
**around** 23:23
**assigned** 17:13
**assume** 17:11, 19
**available** 11:12, 14; 25:8

# B

**back** 1525:8
**back** 12:21; 14:8, 23; 15:2; 20:10; 22:4
**bar** 24:4
**basically** 17:17
**become** 13:16
**becomes** 4:22; 13:20
**begin** 18:12
**bit** 10:7
**Bohanan** 5:9
**BONO** 4:9
**BONO** 7:18; 8:3, 12, 24; 9:3; 14:14; 15:10; 16:18; 17:3, 19; 18:6, 10; 21:19; 24:20; 25:12
**both** 8:18; 9:1, 20; 13:2, 8; 23:15
**boxes** 22:16, 20, 22; 23:5, 7, 7, 11
**brick** 7:7
**brief** 14:4; 24:12
**briefing** 6:5
**briefly** 21:20
**briefs** 11:1; 20:10
**bring** 5:24; 12:21
**bringing** 15:4
**bullet** 6:19, 21
**Bullets** 6:19, 19
**buy** 14:24; 15:1; 19:9

# C

**call** 6:5, 18
**called** 8:17, 17
**came** 23:12
**can** 5:20; 6:16, 17, 21; 9:13; 13:12; 15:8, 19, 20; 16:2; 21:14; 23:14, 18; 25:8
**caption** 6:21
**captioned** 6:12
**care** 12:7; 16:7, 8
**cares** 7:13
**carved** 10:14
**case** 6:3; 22:12; 23:20; 24:9
**cases** 24:2
**certain** 4:23, 24
**certainly** 20:24; 23:14
**CF** 8:18
**chance** 8:5; 9:23; 10:1
**Chicago** 15:4
**Circuit** 20:24
**cited** 5:3
**claims** 4:5
**clarification** 8:13; 11:6; 17:4
**clarifications** 7:19
**clarify** 8:15; 18:6
**clear** 13:20; 22:3
**clearly** 19:10; 20:20
**comment** 7:16
**commercial** 4:7
**completed** 19:5
**complexity** 25:6
**complied** 5:6
**compromise** 14:16, 20
**concern** 19:1
**concerned** 19:3
**concerning** 4:18
**concerns** 11:4
**conduct** 9:21; 10:10
**conducted** 9:22
**conjunction** 5:4
**consider** 6:23; 21:10
**considered** 11:9
**contained** 22:22
**contempt** 4:24; 5:1; 9:12
**context** 13:5; 14:5; 16:10
**counsel** 14:21, 22
**counsel's** 14:17
**COURT** 14:17
**COURT** 6:17
**COURT** 7:22; 8:4, 22; 9:2, 4, 8; 10:4, 8; 11:17; 12:3, 6, 24; 13:11; 15:7, 15; 16:13, 21; 17:14, 22; 18:1, 14, 23; 22:14; 23:4, 8, 11; 24:18, 21, 24; 25:14
**Court's** 8:19
**CPT's** 5:15

**Critical** 6:12; 23:3
**current** 25:6

# D

**D.C** 11:19
**dad** 12:9
**damage** 10:15; 15:12
**damaged** 15:6
**damages** 4:2, 4; 6:8; 10:17; 25:3
**damaging** 15:2
**date** 6:14; 17:24; 18:2, 8, 9, 16; 20:6; 23:3
**dates** 16:22; 17:1, 5, 11, 13, 16; 18:1, 6, 9
**day** 12:10; 19:17
**days** 10:18; 17:17, 20; 18:19
**deadline** 17:8, 9, 10; 22:6, 9, 10, 12
**deal** 6:9; 21:14
**decide** 8:8; 10:6; 13:3
**decision** 7:9
**decisions** 10:23
**declaration** 5:8
**defendant** 6:16, 21
**defendants** 2321
**defendants** 4:5, 20; 5:4, 7, 13
**defense** 5:1; 12:15
**defraud** 24:7
**Delaware** 15:5
**deliveries** 12:11
**denied** 5:9
**deny** 22:13
**denying** 6:24
**deposition** 17:8, 10
**depositions** 18:12
**detail** 8:6; 16:24
**detailed** 6:17, 22; 7:4
**differences** 137:4
**different** 8:16
**disassembled** 14:24; 15:13
**discernible** 10:11
**disclosures** 19:21
**discoverable** 7:5
**discovered** 19:22; 20:16
**discovery** 4:1, 4, 11; 6:9, 12; 10:5, 17, 21; 13:13; 17:23; 19:17; 20:8, 11, 13; 21:7; 23:16, 17
**discuss** 15:11
**discussed** 14:22; 18:10, 10
**discussion** 11:20
**dispute** 4:17
**disputes** 10:5; 16:3; 25:3
**document** 2025:3
**document** 18:12; 19:17; 20:17

**documents** 1720:17
**documents** 5:8; 19:5, 13, 18, 24; 20:5, 20; 22:9, 20, 22, 23, 23; 23:7
**done** 13:22
**dots** 6:19
**down** 10:10; 23:22
**driving** 12:9
**drove** 12:8
**Dudzac** 20:13
**due** 6:6; 21:5; 23:19
**during** 14:1, 2, 3

# E

**earlier** 20:14
**effect** 22:11
**either** 6:24; 7:24; 12:6; 20:1
**else** 24:19, 21
**embodiment** 19:11; 20:22
**end** 14:3; 25:1
**enforced** 21:3, 4
**engaged** 10:22
**enough** 7:8
**enter** 6:23
**entire** 20:23
**entitled** 13:1
**especially** 22:3
**essentially** 232:3
**essentially** 16:10; 18:2
**establishing** 22:12
**everybody** 24:5
**evidence** 5:2, 21; 6:6; 14:3; 16:3; 20:21; 23:20
**evidentiary** 13:6, 18
**example** 11:10
**exchange** 10:19
**exchanges** 13:8
**excluded** 213:8
**expedition** 13:6
**experienced** 13:12
**expert** 17:9, 10
**exposition** 8:11
**extent** 10:22

# F

**fact** 25:2
**facts** 6:6
**fails** 23:20
**fair** 16:2
**faith** 24:7
**father** 12:8
**February** 182:8
**February** 21:8
**February** 5:5; 18:2, 8, 9; 20:6, 18; 22:5, 5, 18, 19, 21
**Federal** 20:24

**feeling** 15:17
**fewer** 21:20
**figure** 11:21
**figured** 17:18
**file** 6:21; 7:19; 23:14
**filed** 7:23:14
**final** 7:9; 17:3
**finally** 20:3
**fine** 15:19; 16:11
**first** 16:16:11
**first** 22:6:11
**first** 7:23; 15:11; 17:23; 19:4; 22:24
**folks** 10:11
**formal** 23:14; 24:14
**forth** 6:17; 14:23; 20:10; 23:15
**forty-five** 10:18
**forward** 21:12, 17
**four** 5:12; 12:11
**fourth** 22:1
**frame** 12:2:1
**frame** 14:1
**frame** 7:12
**Friday** 4:13; 6:7
**front** 21:22
**full** 13:5
**fully** 23:21
**fun** 15:9
**further** 6:24; 8:10; 23:16
**future** 21:5

**G**

**GABLER** 51:5
**GABLER** 9:6; 10:3, 24; 12:2, 4, 20; 13:10; 14:22; 16:12, 19; 17:24; 18:5, 20; 19:1; 22:4, 19; 23:6, 9; 24:16, 22
**game** 13:16
**gamesmanship** 10:8
**given** 7:6
**giving** 12:13
**glass** 5:11, 14; 8:14, 20; 11:8; 12:22
**glasses** 8:15
**Good** 3:15
**Good** 4:15
**Good** 5:5
**good** 8:3; 24:7
**granted** 4:11; 5:11, 13; 6:13; 8:13, 22; 9:4; 24:5
**granting** 6:24; 8:20
**guy** 13:18

**H**

**happen** 21:15
**happens** 24:1
**happy** 15:10

**harsh** 13:18
**hear** 9:8, 11; 16:13; 18:21, 24
**heard** 9:7; 12:23; 15:11; 21:12; 24:3
**hearing** 4:18, 22; 5:5, 20, 21; 6:2; 8:1, 9; 9:10, 11, 12, 22; 10:1; 12:18; 13:20; 15:17; 16:3, 9; 18:11; 20:5; 21:22; 24:9, 11
**hearings** 15:11
**hearings** 10:10, 19; 20:14
**held** 5:21
**helps** 15:5
**Honor** 7:19, 21; 8:12, 13; 9:6; 11:1, 9; 14:15; 17:4; 18:5, 20; 19:2; 21:19, 20, 22; 22:3, 8, 13; 24:20, 23; 25:12
**Honor's** 12:23; 17:5; 21:9; 22:5
**hopefully** 25:1
**hour-and-a-half** 15:23
**hours** 4:23

**I**

**illogical** 12:14
**immediately** 8:9
**important** 15:20
**inch-and-a-half** 23:10
**indicated** 18:11; 19:10, 19
**indication** 22:24
**indications** 19:7
**indulgence** 12:23
**information** 6:8; 10:7; 15:14; 19:16; 20:2
**infringement** 10:21
**initial** 19:21
**inspect** 12:1; 14:13
**inspection** 11:8, 16; 12:16; 20:18
**instance** 9:23; 11:20
**instances** 11:10
**instead** 6:22; 18:11
**Instruments** 19:19, 23; 23:1
**intended** 13:14
**interested** 7:14; 21:1; 24:8, 9
**interpose** 6:4
**intervention** 13:15
**into** 24:6
**invalid** 21:2; 23:21, 23
**invalidate** 20:23
**invalidity** 5:3
**involved** 19:15
**irrational** 15:7
**issue** 4:8; 9:7; 12:22; 15:3; 18:22; 21:21; 23:19, 19; 25:6

**issued** 17:25:6
**issued** 18:5:6
**issued** 4:15
**issues** 4:11; 6:13; 7:12; 10:11; 15:18; 16:7, 8; 18:13; 19:2
**items** 6:19; 7:3; 12:17

**J**

**judge** 10:13
**judges** 24:3
**jumping** 7:17

**K**

**K** 5:9
**keep** 9:21; 14:2
**keeps** 25:10
**key** 18:2, 8
**kind** 7:11; 9:15, 20; 10:14; 12:12; 16:9
**kinds** 23:23
**Korean** 22:22

**L**

**language** 6:20
**largely** 4:1
**last** 18:11; 19:17; 20:5; 21:22, 23
**lawyers** 11:21; 13:12; 14:9
**LCD** 5:15
**lead** 20:1
**least** 15:18; 20:17
**letter** 23:20:17
**letter** 5:4, 5, 12; 11:1; 20:10; 21:23
**letters** 7:21:23
**letters** 6:4; 7:15; 13:8
**letting** 21:11, 16
**life** 15:21
**light** 17:7
**limited** 21:6; 24:13
**listen** 13:24
**listening** 13:7
**litigation** 21:3
**little** 10:7; 20:9
**local** 14:17; 24:12
**location** 19:22
**logical** 14:10
**long** 15:21
**longer** 17:11
**look** 67:11
**looming** 17:5
**lot** 247:5
**lot** 10:19; 13:21; 17:16; 24:1
**LPL** 11:12; 19:7, 16, 20; 22:24; 23:2

**M**

**magistrate** 10:12, 12
**maintain** 14:19; 21:14
**making** 12:19, 20
**many** 13:8; 20:20; 22:20, 20
**March** 4:13, 13, 19, 19; 5:18, 21; 6:7, 14, 16, 17; 17:9, 9, 15; 18:15, 19; 25:1
**market** 15:1
**master** 9:19, 22; 10:14, 18
**matter** 4:10; 8:11
**matters** 5:3
**may** 10:17; 15:16; 23:23; 25:7
**mean** 22:15; 23:18; 25:4
**meantime** 21:16
**mechanism** 9:17
**middle** 9:17
**might** 20:9
**moment** 15:14
**money** 13:22
**month** 18:19
**more** 7:2; 8:5, 10; 10:6; 13:2; 15:15, 16; 23:9; 25:7
**morning** 6:1; 18:21; 21:24
**mother** 5:11, 14; 8:14, 15, 20; 11:8; 12:22
**motion** 21:13; 22:14; 23:15; 24:10, 15

**N**

**nature** 16:16
**necessary** 4:22; 6:3
**need** 8:18; 12:7; 16:24
**new** 17:12; 20:15
**next** 14:6
**nineteen** 5:15
**noncompliance** 6:6
**None** 18:9
**nonjudicial** 13:14
**nonsense** 9:24
**notion** 13:12

**O**

**o'clock** 4:20
**objection** 16:10
**objections** 6:18, 22; 7:20, 23; 8:1, 7
**obviously** 11:2
**occur** 5:18; 18:4
**off** 17:6
**offer** 11:8, 15
**offered** 20:17
**office** 11:19; 14:17

**older** 10:6
**once** 24:4
**one** 5:14; 7:10; 8:16, 17; 9:16, 16, 18; 10:13; 11:2, 5, 12, 13, 14, 14, 20, 20; 12:16; 14:12; 17:3; 18:7; 19:9; 20:17
**online** 15:1; 19:9
**only** 11:2, 12; 12:16; 13:3; 14:11; 19:12; 22:7
**open** 15:1
**operable** 18:16
**opportunity** 138:16
**opportunity** 4:21; 5:1; 7:16, 20; 11:3; 12:13; 24:13
**options** 9:19
**order** 4:14, 14, 18; 5:2, 17; 6:15, 24; 11:18; 16:22; 17:1, 6; 22:15; 23:13; 25:9
**ordered** 6:13; 13:23
**orders** 13:24; 14:3, 6; 16:17
**original** 17:5
**originally** 17:8
**others** 7:6; 21:4
**Otherwise** 12:3, 6
**ought** 8:8, 9; 12:7, 8; 13:2, 3
**out** 133
**out** 7:17; 8:6; 10:14; 11:19, 22; 14:15; 16:14; 17:15, 20, 23; 18:3, 17; 19:14; 21:18; 25:3, 8, 10
**over** 7:6; 16:5; 20:16, 16

**P**

**p.m** 25:14
**page** 5:12
**pages** 15:21
**paid** 24:6
**panel** 20:15, 15, 15, 17, 21; 23:2, 2
**panels** 19:7
**papers** 7:8; 10:19
**Part** 14:23; 15:9
**particularly** 11:7
**parties** 19:14; 20:7
**party** 17:20:7
**patent** 19:11; 20:23; 21:2, 2; 23:21, 22; 24:2, 5
**pay** 13:21, 23; 14:6
**penalty** 13:5
**people** 15:20; 24:7
**period** 4:4
**permitted** 23:16
**place** 7:10; 16:22; 22:16
**plaintiff** 4:12; 5:10, 20
**plaintiff's** 5:12; 6:11
**plan** 21:8
**please** 21:8
**plus** 18:7

LG Philips LCD Co., LTD   v.
Tatung Company, et al.

**Hearing**
**March 1, 2006**

point 11:1, 5; 17:21; 21:9, 13; 22:7
position 21:14; 22:3
possession 14:19
potentially 21:4
preferred 20:22
prehearing 6:5
present 5:2, 20
presentations 9:13
presented 7:15; 24:4
presenting 6:5
prevail 10:2
prior 19:24; 20:5; 23:3
prioritizing 21:1
process 7:10; 13:15; 16:15, 16; 18:3; 21:6; 23:19
produce 5:14; 9:12, 24; 11:12; 13:19; 14:16; 19:12
produced 5:19; 6:14; 11:18; 13:3, 4, 4, 21; 19:6, 8; 22:20
producing 20:20
product 5:16; 8:14, 16, 21
production 2021
production 5:18; 11:6, 9; 19:4; 22:6
productions 21:12, 17
products 5:15; 6:12
proportionately 17:15
proposed 6:5
prosecution 4:9, 23
provided 2023
provided 23:1
public 4:9
purposes 24:8
pursuant 4:15; 5:17
pursuing 20:12
purview 25:10
push 18:16
pushed 17:15, 20; 18:3
pushing 7:6
put 7:9; 9:9; 10:22; 16:21; 17:1; 24:14
putting 15:2

**Q**

quash 22:15, 15; 23:13
quashed 1923:13
quashing 21:10, 15
quickly 815

**R**

raised 18:7
rather 6:16; 21:2
rationale 14:9
reach 12:5; 25:5
read 2425:5

read 7:22; 13:7; 18:7
reading 23:13
realize 10:6
really 7:1; 12:21, 22; 16:4; 21:5
reason 19:23
reasonable 14:15, 18, 19
reasons 11:15; 23:24
rebut 11:3
received 20:19
receiving 19:24
recessed 25:14
reconsider 24:10
reconsideration 21:8, 13; 22:2
record 13:18
reduce 5:22
refer 16:23
referenced 20:13
regard 220:13
regard 4:1, 5; 5:7, 10; 11:7; 19:3
regarding 20:4
regards 21:6
relate 4:6
related 4:7, 8, 9; 5:8; 6:12
relevant 20:2
rely 13:12
remain 22:16; 23:14
remedies 1123:14
remember 24:3
report 17:9
request 5:8, 11; 6:11; 8:14; 9:24; 22:13
requested 5:12; 6:9; 8:23; 9:5
requests 199:5
requests 4:1, 10; 6:22; 8:7
reserved 16:9
resolution 18:15, 18; 25:5
resolved 7:11; 9:18; 18:13
resolving 7:14
respond 4:14; 6:16; 7:21
response 14:9
revealed 19:20
right 19:20
right 8:24; 9:2, 9; 13:13; 16:12; 21:11; 22:14; 24:18
risk 9:10; 10:23
risking 15:2
road 23:22
royalties 24:6
Rule 4:15; 5:2, 18
ruled 21:17, 20, 21, 23, 24
rules 7:21; 13:14; 24:12
ruling 17:7; 21:9, 23
rulings 1123
running 23:23

**S**

sale 4:8; 19:7, 10; 20:5, 11, 12, 21; 24:4
same 7:11; 18:17
sample 15:6
samples 5:11, 14, 16; 11:7, 11; 12:21
sanctions 4:16
scheduling 17:6
seat 7:17
seated 1:17
second 10:13
seek 21:8
send 10:11
sense 12:19, 20
separated 6:9; 25:3
separately 6:10
serious 12:7
set 4:1; 5:17; 22:8
sets 16:22
setting 23:15
settled 10:20
Several 13:10; 19:2; 22:20
shall 5:18
Sharp 20:15
shipping 15:3
short 145:3
short 4:3
show 23:21
shows 14:4
side 8:17, 18; 9:16, 17; 11:2, 23; 15:18; 24:11
sided 11:2
sides 9:1, 20
silly 13:11; 16:5
simply 7:4; 22:11
sits 15:4
sold 23:3
solutions 15:16
somebody 13:19, 23
somehow 13:16
someone 12:14
sort 22:12
Specifically 5:13; 23:17
specified 9:1
spend 10:17
state 9:16
stay 4:3
stayed 11:19
stop 25:9
stopped 25:4
stress 5:22; 12:10
stressed 14:1
subpoena 174:1
subpoena 18:22; 19:14, 23; 21:12, 16
subpoenaed 20:1
subpoenas 20:4, 12;

21:11
success 4:7
successful 12:17
sudden 24:5
sufficient 19:13
supplier 19:20
supposed 14:5; 17:2
sure 12:10
system 14:8

**T**

table 17:7
talk 7:2; 8:5; 12:13; 15:15
talking 10:16; 23:24; 25:5, 9
TCB 19:20
TCP 22:24
Technical 6:13
terms 11:6; 15:3; 20:3; 21:15
Texas 19:19, 23; 23:1
TFT 8:17
thinking 25:7
third 19:14
third-party 18:22; 20:4, 8; 22:6
thirty 10:18; 17:17, 20; 18:19
thought 13:15; 14:15, 20
three 17:4; 21:21; 22:16, 21; 23:5, 7, 11
three-layer 7:7
times 21:21
today 13:7
together 8:2; 15:2
told 11:24
took 18:18
towards 15:16
transactions 19:15
transcript 14:4; 16:23
travel 5:23
trial 9:23
trial 13:24; 14:1, 2, 6; 15:8; 16:1, 6
truck 12:8, 9
true 11:17
truly 9:18
try 13:18
try 14:14; 16:2; 19:14; 21:4; 25:5
trying 5:22; 7:1
turn 227:1
turn 20:16
turned 20:16
two 5:15; 7:18; 8:15; 9:18; 24:2

**U**

ugly 10:2, 2

unclear 20:9
understood 23:5, 13
up 17:5
use 4:9; 6:20

**V**

validating 21:1
validity 4:6; 10:21
various 20:4, 10
vehicle 9:14
versus 15:4
violating 14:2

**W**

wait 14:3
wall 7:7, 8
Washington 11:19
way 7:10; 25:2
Wednesday 4:19
week 21:23
what's 15:22
whole 15:20; 17:16; 24:6
William 5:9
willing 18:21
withheld 5:16
within 11:10; 22:21, 23
witnesses 13:20
words 9:10; 10:5; 11:23; 16:16
work 816:16
work 136:16
work 8:5; 14:14; 15:16; 16:4, 14; 25:8
worked 17:23

# Exhibit 2

# McKenna Long
## &Aldridge LLP
### Attorneys at Law

Atlanta

Denver

Los Angeles

Philadelphia

San Diego

San Francisco

Washington, DC

Brussels

1900 K Street, NW • Washington, DC 20006
202.496.7500 • Fax: 202.496.7756
www.mckennalong.com

CASS W. CHRISTENSON
(202) 496-7218

March 7, 2006

EMAIL ADDRESS
cchristenson@mckennalong.com

VIA E-MAIL

Christine A. Dudzik, Esq.
Howrey, LLP
321 North Clark Street, Suite 3400
Chicago, IL  60610

    Re:    LG.Philips LCD Co., Ltd. v. Tatung Co., et al. (C.A. No. 05-292 JJF)

Dear Christine:

    I write to confirm that LG.Philips LCD Co., Ltd. ("LPL") is taking steps to ensure compliance with the Court's instructions at the March 1, 2006 hearing.  LPL already has produced many documents responsive to Defendants' discovery requests, including documents referenced in Defendants' February 28, 2006 letter to the Court.  Nonetheless, we are working diligently to make sure that LPL produces any remaining documents addressed in Section II of the Defendants' February 28, 2006 letter, including:

## Documents Related to Defendants' Accused Products

    1.    Documents related to Defendants' products accused of infringing the '121 Patent, including documents reflecting any competitive analyses or testing of Defendants' accused products.

## Documents Related to Research and Development Regarding the '121 and '002 Patents

    2.    Technical documents describing the conception and reduction to practice of the '121 Patent, including documents generated after March 2000.

    3.    Documents regarding the '121 Patent that describe how problems associated with brightness differences were corrected by the claimed invention, including any laboratory notebooks describing experiments related to the '121 patent and how the TCP reduces brightness difference of the LCD screen, or how a dummy bending part reduces a thermal expansion force and thermal contraction force generated when thermal pressing the output pad part on the LCD.

    4.    Articles, papers, or publications related to the subject matter claimed in the '121 Patent that were authored by the named inventors or other LPL employees, including Korean Patent Application No. 2001-0065166.

Christine A. Dudzik, Esq.
March 7, 2006
Page 2

5.      Technical documents related to the '121 patented technology, including documents generated after December 27, 1999, and including documents that describe the enablement and operability of the claimed invention, or any documents generated by Texas Instruments, including formal specifications, drawings, or protocols of a TCP as claimed in the '121 Patent.

6.      Technical documents related to the conception and reduction to practice of the '002 Patent, including any related documents obtained from Honeywell when LPL acquired the rights to the '002 Patent.

7.      Documents related to the '002 Patent that were obtained from Scott Holmberg.

**Documents Related to the Prosecution and Validity of the '121 and '002 Patents**

8.      Documents related to the validity or enforceability of the '121 and '002 Patents, including documents beyond the publicly available prosecution history.

**Documents Describing LPL's First Sale or Other Public Disclosure of the Invention Claimed in the '121 Patent**

9.      Documents that demonstrate LPL's use of the TCP as claimed in the manufacturing of its LCD panels, or LPL's first public use, offer for sale, sale, printed publication, or other first public disclosure of a TCP as claimed in the '121 Patent.

After we have completed our review, we will confirm for you, with respect to each category above, whether LPL already has produced all responsive documents. If there are additional responsive documents as to any category above, we will also send to you, as soon as possible, those documents. If we discover any additional responsive documents that need to be logged, we will promptly provide you with an updated privilege log.

Very Truly Yours,

Cass W. Christenson

CWC:ea

cc:     Matthew W. King, Esq.
        Richard D. Kirk, Esq.

# Exhibit 3

# McKenna Long
## &Aldridge LLP
#### Attorneys at Law

Atlanta

Denver

Los Angeles

Philadelphia

San Diego

San Francisco

Washington, DC

Brussels

1900 K Street, NW • Washington, DC 20006
202.496.7500 • Fax: 202.496.7756
www.mckennalong.com

CASS W. CHRISTENSON
(202) 496-7218

EMAIL ADDRESS
cchristenson@mckennalong.com

March 27, 2006

BY E-MAIL

Julie S. Gabler, Esq.
Howrey LLP
525 Market Street, #3600
San Francisco, CA 94105-2708

Christine A. Dudzik, Esq.
Howrey LLP
321 North Clark Street, #3400
Chicago, IL 60610

Re:   LG.Philips LCD Co., Ltd. v. Tatung Co., et al. (C.A. No. 05-292 JJF)

Dear Julie and Christine:

To facilitate our teleconference tomorrow, I write to provide information reflecting LPL's compliance with the March 1 hearing and rulings concerning document production. LPL has now fully supplemented its production and provided the responsive documents and things, specifically including the discovery granted by the Court at the March 1 hearing. LPL has complied fully with the Court's March 2 order.

In addition, LPL has created and produced detailed summaries that previously did not exist to provide information that you requested. We provided these summaries to maximize cooperation and full disclosure. Accordingly, we do not believe that there is any reason to conduct an evidentiary hearing next week concerning LPL's compliance.

## I.    LPL HAS PROVIDED THE DISCOVERY ADDRESSED IN SECTION II OF DEFENDANTS' FEBRUARY 28 LETTER TO THE COURT

LPL has diligently addressed and responded to all of the discovery issues summarized in Defendants' February 28 letter to the Court (Section II) and restated in my March 7 letter to you.

Julie S. Gabler, Esq.
Christine A. Dudzik, Esq.
March 27, 2006
Page 2

As reflected below, LPL has now responded fully to every discovery issue in Section II of your February 28 letter. Below is a summary of LPL's compliance regarding these issues.

## Documents Related to Defendants' Accused Products

1.    Documents related to Defendants' products accused of infringing the '121 Patent, including documents reflecting any competitive analyses or testing of Defendants' accused products.

LPL has diligently searched for any additional responsive documents and determined that any documents responsive to this request were produced by February 21. LPL's document production for this category is therefore complete.

## Documents Related to Research and Development Regarding the '121 and '002 Patents

2.    Technical documents describing the conception and reduction to practice of the '121 Patent, including documents generated after March 2000.

LPL has diligently searched for any additional responsive documents and determined that any documents responsive to this request were produced by February 21. LPL's document production for this category is therefore complete.

3.    Documents regarding the '121 Patent that describe how problems associated with brightness differences were corrected by the claimed invention, including any laboratory notebooks describing experiments related to the '121 patent and how the TCP reduces brightness difference of the LCD screen, or how a dummy bending part reduces a thermal expansion force and thermal contraction force generated when thermal pressing the output pad part on the LCD.

LPL has diligently searched for any additional responsive documents and determined that any documents responsive to this request were produced by February 21. LPL's document production for this category is therefore complete.

4.    Articles, papers, or publications related to the subject matter claimed in the '121 Patent that were authored by the named inventors or other LPL employees, including Korean Patent Application No. 2001-0065166.

LPL has diligently searched for any additional responsive documents and determined that any documents responsive to this request, other than documents concerning Korean Patent Application No. 2001-0065166, were produced by February 21.

As part of its recent supplemental production, LPL produced a copy of Korean Patent Application No. 2001-0065166 and any related documents. *See* LPLII 102795-102833. Accordingly, the responsive documents have been produced for this category and LPL's production for this category is therefore complete.

Julie S. Gabler, Esq.
Christine A. Dudzik, Esq.
March 27, 2006
Page 3

   5.   Technical documents related to the '121 patented technology, including documents generated after December 27, 1999, and including documents that describe the enablement and operability of the claimed invention, or any documents generated by Texas Instruments, including formal specifications, drawings, or protocols of a TCP as claimed in the '121 Patent.

   LPL has diligently searched for any additional responsive documents and determined that any documents responsive to this request were produced by February 21. LPL's document production for this category is therefore complete.

   6.   Technical documents related to the conception and reduction to practice of the '002 Patent, including any related documents obtained from Honeywell when LPL acquired the rights to the '002 Patent.

   LPL has diligently searched for any additional responsive documents and determined that any documents responsive to this request were produced by February 21. LPL's document production for this category is therefore complete.

   7.   Documents related to the '002 Patent that were obtained from Scott Holmberg.

   Any responsive documents obtained from Mr. Holmberg were produced by February 21. LPL's document production for this category is therefore complete.

**Documents Related to the Prosecution and Validity of the '121 and '002 Patents**

   8.   Documents related to the validity or enforceability of the '121 and '002 Patents, including documents beyond the publicly available prosecution history.

   LPL has diligently searched for any additional responsive documents and determined that any documents responsive to this request were produced by February 21. LPL's document production for this category is therefore complete.

**Documents Describing LPL's First Sale or Other Public Disclosure of the Invention Claimed in the '121 Patent**

   9.   Documents that demonstrate LPL's use of the TCP as claimed in the manufacturing of its LCD panels, or LPL's first public use, offer for sale, sale, printed publication, or other first public disclosure of a TCP as claimed in the '121 Patent.

   LPL has diligently searched for any additional responsive documents and determined that any existing documents responsive to this request were produced by February 21. Further, after confirming that LPL had no additional existing documents responsive to this request, LPL created and produced several summaries and charts to provide additional information. Although these documents did not previously exist, LPL prepared these documents to provide information

Julie S. Gabler, Esq.
Christine A. Dudzik, Esq.
March 27, 2006
Page 4

sought by Defendants concerning tape carrier packages and LPL products.  Specifically, LPL has provided the following summaries:

   (1) a summary of worldwide shipment information, by product / model, for the period of December 1, 1999 to March 31, 2000 (see LPLII 102292-102327);

   (2) a summary of U.S. shipment information, by product / model, for the period from December 1, 1999 to December 31, 2005 (see LPLII 102328-102753);

   (3) a list of LPL products (by model) that reflect one or more claims of the '121 Patent, and the tape carrier packages (by part no. / supplier) used for such products  (see LPLII 102754-102758);

   (4) TCP drawings related to the various TCPs listed in the above summary (3) (see LPLII 102759-102784); and

   (5) a summary of LPL's orders of TCP "Part 56" from Texas Instruments, including dates (see LPLII 102785-102786).

  Therefore, LPL has provided the documents responsive to this category, as well as several summaries providing additional responsive information regarding this category, and LPL's production for this category is complete..

## II. THE ADDITIONAL DISCOVERY REQUESTED IN YOUR MARCH 7 LETTER

  In your March 7, 2006 letter, you raised several specific types of discovery that Defendants wanted from LPL.  As stated in my March 9, 2006 letter, some of the requests in your March 7 letter raised new discovery issues, including requests for product and TCP samples.  Although we objected to such new requests, in the spirit of cooperation, and without waiving our objections, we investigated the extent to which LPL has responsive documents and things for all of the categories listed in your March 7 letter.  Each category is discussed below.

### Documents Relevant to Commercial Success

  Your March 7 letter addresses "documents going to the commercial success issue."  As indicated in my March 9 letter, LPL already has produced many documents responsive to this request, including sales summaries, profit information, financial statements, annual reports, articles, industry data, and DisplaySearch reports.  Additionally, LPL produced many similar types of documents in the California case.  LPL has diligently searched for any additional responsive documents and determined that any documents responsive to this request were produced by February 21.  LPL's document production for this category is therefore complete.

### Sub-Categories of Documents and Things Included Within Category No. 9

Julie S. Gabler, Esq.
Christine A. Dudzik, Esq.
March 27, 2006
Page 5

Your March 7 letter requests that LPL produce "five sub-categories of documents and things" regarding "Category No. 9" above, corresponding to my March 7 letter. As stated below, LPL has investigated each of your requested "sub-categories" to resolve these issues.

1.    Documents evidencing LPL's first offer for sale, sale, public use, printed publications, and/or other first public disclosure in the U.S. of the LB121S1-A2 module and any other LPL modules using TCP model number TB5657486B (a.k.a. TMC57486BTB56) made by Texas Instruments, or any other TCP embodying any claim of the '121 Patent.

LPL has diligently searched for any additional responsive documents and determined that LPL has no additional documents to produce. As stated above, however, LPL has prepared and produced summaries with responsive information (e.g., which LPL products have which TCPs, and sales of such products since December 1, 1999). LPL's document production for this category is therefore complete.

2.    All correspondence between LPL and Texas Instruments concerning TCP model number TB5657486B (a.k.a. TMC57486BTB56).

LPL has diligently searched for any additional responsive documents and determined that LPL has no additional documents to produce. LPL's document production for this category is therefore complete.

3.    Two product samples of the LB121S1-A2 module and any other LPL modules incorporating Texas Instruments TCPs TB5557486B (a.k.a. TMC57486BTB55) and TB5657486B (a.k.a. TMC47486BTB56).

Without waiving our objections to this belated request, LPL has diligently searched for these samples and determined that the LB121S1-A2 was the only LPL module that used this Texas Instruments TCP and that LPL has no samples to produce. LPL's production for this category is therefore complete.

4.    All sales documents, including but not limited to transaction level documents such as invoices and shipping documents, evidencing pre-March 23, 2000 sales of LPL modules incorporating TCPs.

LPL has diligently searched for any additional responsive documents and determined that LPL has no additional documents to produce, including pre-March 23, 2000 invoices or shipping documents. As stated above, however, LPL has prepared and produced summaries with responsive information (e.g., which LPL products have which TCPs, and sales of such products since December 1, 1999). LPL's document production for this category is therefore complete.

Julie S. Gabler, Esq.
Christine A. Dudzik, Esq.
March 27, 2006
Page 6

    5.   <u>Product samples for all modules incorporating TCPs that were offered for sale, sold, used publicly, disclosed in printed publications and/or otherwise first publicly disclosed prior to March 23, 2000</u>.

    Without waiving our objections to this belated request, LPL has diligently searched for these samples and determined LPL has no such samples to produce. LPL's production for this category is therefore complete.

    LPL has complied fully with the Court's instructions at the March 1, 2006 hearing and the Court's March 2, 2006 Order. LPL has diligently collected and produced all responsive documents. In addition to producing these documents, LPL has provided additional information by creating several summaries responsive to Defendants' discovery requests. As set forth above, without waiving its objections, LPL in good faith responded to the requests in your March 7 letter, even where LPL disagrees with the propriety of those requests.

    We look forward to discussing this with you further in our teleconference tomorrow.

                    Very truly yours,

                    Case W. Christenson

CWC:ea

cc:   Matthew King, Esq.
      Richard Kirk, Esq.

# Exhibit 4

# HOWREY LLP

550 South Hope Street
Suite 1100
Los Angeles, CA 90071-2627
www.howrey.com

Julie S. Gabler
Partner
T 213.892.1852
F 213.892.2300
gablerj@howrey.com

March 7, 2006

**Via Facsimile**

Cass W. Christenson, Esq.
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C. 20006

Re:    *LG. Philips LCD Co., Ltd. v. Tatung Company et al.*
       Civil Action No. 05-292 (JJF)

Dear Mr. Christenson:

I write in response to your letter of today's date concerning the categories of documents LPL intended consider supplementing by March 17. Your letter is inconsistent with the Court's March 1 ruling is several respects. Further, to the extent your letter was intended to place any limits on or in any way alter the Court's order, CPT does not agree with your limitations and characterizations and does not waive its right to seek a contempt holding and sanctions against LPL.

The Court clearly ordered LPL to produce documents relevant to commercial success by March 17 or risk severe sanctions at the contempt hearings. *See* March 1 hearing transcript at 4:3-16. Your letter does not address this category of documents. If LPL does not produce all previously withheld documents going to the commercial success issue, CPT will seek sanctions at the upcoming contempt proceedings.

Second, we want to make clear what documents are included within category No. 9 in your letter. Category No. 9 should include at least the following five sub-categories of documents and things:

(1)    Documents evidencing LPL's first offer for sale, sale, public use printed publications and/or other first public disclosure in the United States of the LB121S1-A2 module and any other LPL modules using TCP model number TB5657486B (a.k.a. TMC57486BTB56) made by Texas Instruments, or any other TCP embodying any claim of the '121 patent. CPT believes that the LPL modules that could be included within this request are at least the LB121S1, LB121S1-A2, LB121S1-A2(S), LB163H1-A1, LC064N1, LCA4VE02A, LCA4VE02A(S), LCB3SE11A(S), LM151X1, LM151X1-B2GW, LM151X1-D2MN, LM151X1-D2MN(S), LM151X2, LM151X2(S), LM151X3-A2, LM181E1, LM181E1-B2MN, LM181E1-B2MN(S), LM181E1-C2MN, LM181E1-C2MN(S), LM181E3, LM181E3-A2, LM181E3-A2(S), LM220W1-A2MN, LM220W1-A2MN(S), LP064V1, LP104S2, LP104S2(S),



Cass W. Christenson, Esq.
March 7, 2006
Page 2

LP104S2-B1AD, LP104S3, LP104V2, LP104V2(S), LP104V2-W, LP104V2-W(S), LP121S1,
LP121S2, LP121S2-A2, LP121S3, LP121S3-A, LP121S3-A(S), LP121S4, LP121SA, LP121SA-
A2QT, LP121SA-A2QT(S), LP121SB, LP121SL, LP121SP, LP121SP-B1PC, LP121SQ,
LP121XQ, LP133X1, LP133X2, LP133X2(S), LP133X2-A, LP133X2-A(S), LP133X2-B,
LP133X2-B(S), LP133X3, LP133X3(S), LP133X4, LP133X4(S), LP133X4-D1PC, LP133X4-
D1PC(S), LP133X4-D1PC, LP133X4-P1, LP133X4-P2, LP133X5, LP133X5-A2|B, LP133X6-
A2|B(S), LP133X6, LP133X7, LP133X7-A2, LP133X7-A2(S), LP133X7-B2DL, LP133X7-
B2DL(S), LP141X2, LP141X2(S), LP141X3, LP141X3(S), LP141X3-A, LP141X4,
LP141X4(S), LP141X4-B1CQ, LP141X4-C1NC, LP141X5, LP141X5-A, LP141X5-B1NC,
LP141X5-B1NC(S), LP141X6, LP141X6-A11B, LP141XA, LP141XA-A1, LP141XA-A1(S),
LP150X1, LP150X1(S), LP157E1-A2TS and LP157E1-A2TS(S);

(2)    All correspondence between LPL and Texas Instruments concerning TCP model
number TB5657486B (a.k.a. TMC57486BTB56);

(3)    Product two samples of the LB121S1-A2 module and any other LPL modules
incorporating Texas Instruments TCPs TB5557486B (a.k.a. TMC57486BTB55) and
TB5657486B (a.k.a. TMC57486BTB56) [i.e., two LB121S1-A2 modules that incorporate the
Texas Instruments' TCP TB5657486B (a.k.a. TMC57486BTB56) and two LB121S1-A2
modules that incorporate the Texas Instruments' TCP TB5557486B (a.k.a. TMC57486BTB55)
plus two samples of any additional LPL modules incorporating either of those above-identified
Texas Instruments TCPs];

(4)    All sales documents, including but not limited to transaction level documents such
as invoices and shipping documents, evidencing pre-March 23, 2000 sales of LPL modules
incorporating TCPs, including but not limited to the LB121S1, LB121S1-A2, LB121S1-A2(S),
LB163H1-A1, LC064N1, LCA4VE02A, LCA4VE02A(S), LCB3SE11A(S), LM151X1,
LM151X1-B2GW, LM151X1-D2MN, LM151X1-D2MN(S), LM151X2, LM151X2(S),
LM151X3-A2, LM181E1, LM181E1-B2MN, LM181E1-B2MN(S), LM181E1-C2MN,
LM181E1-C2MN(S), LM181E3, LM181E3-A2, LM181E3-A2(S), LM220W1-A2MN,
LM220W1-A2MN(S), LP064V1, LP104S2, LP104S2(S), LP104S2-B1AD, LP104S3, LP104V2,
LP104V2(S), LP104V2-W, LP104V2-W(S), LP121S1, LP121S2, LP121S2-A2, LP121S3,
LP121S3-A, LP121S3-A(S), LP121S4, LP121SA, LP121SA-A2QT, LP121SA-A2QT(S),
LP121SB, LP121SL, LP121SP, LP121SP-B1PC, LP121SQ, LP121XQ, LP133X1, LP133X2,
LP133X2(S), LP133X2-A, LP133X2-A(S), LP133X2-B, LP133X2-B(S), LP133X3,
LP133X3(S), LP133X4, LP133X4(S), LP133X4-D1PC, LP133X4-D1PC(S), LP133X4-D1PC,
LP133X4-P1, LP133X4-P2, LP133X5, LP133X5-A2|B, LP133X6-A2|B(S), LP133X6,
LP133X7, LP133X7-A2, LP133X7-A2(S), LP133X7-B2DL, LP133X7-B2DL(S), LP141X2,
LP141X2(S), LP141X3, LP141X3(S), LP141X3-A, LP141X4, LP141X4(S), LP141X4-B1CQ,
LP141X4-C1NC, LP141X5, LP141X5-A, LP141X5-B1NC, LP141X5-B1NC(S), LP141X6,
LP141X6-A11B, LP141XA, LP141XA-A1, LP141XA-A1(S), LP150X1, LP150X1(S),
LP157E1-A2TS and LP157E1-A2TS(S); and

03-07-06    09:44pm    From-HOWREY, LLP                                    T-148    P.004/004    F-507

# HOWREY LLP

Cass W. Christenson, Esq.
March 7, 2006
Page 3

    (5)    Product samples for all modules incorporating TCPs that were offered for sale, sold, used publicly, disclosed in printed publications and/or otherwise first publicly disclosed prior to March 23, 2000.

Very truly yours,

Julie S. Gabler

# Exhibit 5

# McKenna Long
# &Aldridge LLP
Attorneys at Law

Atlanta

Denver

Los Angeles

Philadelphia

San Diego

San Francisco

Washington, DC

Brussels

1900 K Street, NW • Washington, DC 20006
202.496.7500 • Fax: 202.496.7756
www.mckennalong.com

CASS W. CHRISTENSON
(202) 496-7218

EMAIL ADDRESS
cchristenson@mckennalong.com

March 9, 2006

**Via E-Mail and Facsimile**

Julie S. Gabler, Esq.
Howrey LLP
550 South Hope St., Suite 1100
Los Angeles, CA 90071

      Re:    <u>LG.Philips LCD Co., Ltd. v. Tatung Co., et al.</u> (C.A. No. 05-292 JJF)

Dear Julie:

     I write to respond to your March 7, 2006 letter that we received yesterday regarding LPL's supplemental document production.

     Preliminarily, we disagree that my March 7 letter confirming LPL's good faith compliance efforts is inconsistent with the Court's rulings in any way, as you suggest without explanation. The purpose of your letter appears to be to threaten "to seek a contempt holding and sanctions against LPL" regardless of LPL's compliance. My March 7 letter lists all (nine) types of documents that Defendants identified in Section II ("Technical and Patent Documents") of their February 28 letter as alleged areas of deficiencies in LPL's document production. Although we obviously dispute Defendants' assertions in their February 28 letter, we nonetheless intend to address all of the discovery that Defendants identified for supplementation.

     In your March 7 letter, you purport to reserve the right to seek additional and unspecified documents. To the extent that Defendants believe additional documents should be produced, however, we can only understand and respond to the issues identified by you for consideration. Your letter identifies two areas of discovery, commercial success and on-sale bar discovery.

     You threaten sanctions if LPL does not produce unspecified "documents going to the commercial success issue." Because "commercial success" was referenced in Section I ("Damages Related Documents") of Defendants' February 28 letter, I did not refer to this category in my prior letter. Nonetheless, LPL is agreeable to producing documents responsive to this category. LPL already has produced many such responsive documents in this case, including sales summaries, profit information, financial statements, annual reports, articles, industry data and Display Search reports. LPL also has produced many similar documents in the

Julie Gabler
March 9, 2006
Page 2

California case.  Further, we will produce other available information on this issue by the March 17 deadline.

The other area addressed in your letter is category no. 9 in my March 7 letter, which relates to public use and on-sale bar issues.  As stated in my letter, LPL will supplement its production on this issue to provide documents that Defendants requested in their February 28 letter to the Court.  Defendants cannot, however, attempt to recast their discovery requests or make new discovery demands long after the deadline for doing so.

Your March 7 letter, however, unfairly attempts to do just that -- you expand the scope of discovery sought from LPL and introduce entirely new discovery issues.  For the first time, for example, Defendants are requesting (in paragraphs (3) and (5) of your letter) multiple samples of numerous LPL modules, including modules sold before March 23, 2000 and incorporating any tape carrier packages.  Defendants have never previously raised requests for samples in any document requests, letters, meet and confer discussions, or communications with the Court before or during any discovery hearings.  Further, the Court made clear at the March 1 hearing that new requests for production are untimely and not proper.  This last-minute demand for new discovery -- asserted only nine days before the supplemental production deadline -- appears calculated to prejudice LPL and manufacture disputed issues for the contempt hearing.  It is unfair for Defendants to propound new requests for production in the form of paragraphs (3) and (5) of your March 7 letter.

With respect to paragraphs (1), (2), and (4) of your letter, we are continuing to investigate whether any additional discoverable information or documents are available.

Very truly yours,

Cass W. Christenson

cc:     Christine A. Dudzik, Esq.
        Matthew King, Esq.
        Richard D. Kirk, Esq.

# Exhibit 6

# HOWREY LLP

321 North Clark Street
Suite 3400
Chicago, IL 60610
www.howrey.com

**Christine A. Dudzik**
Partner
T 312.595.2254
F 312.595.2250
dudzikc@howrey.com
File 01450.0012.000000

March 29, 2006

Cass W. Christenson
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006

Re:     *LG. Philips LCD Co., Ltd. v. Tatung Company et al.*
        **Civil Action No. 05-292 (JJF)**

Dear Cass:

This letter summarizes the major CPT points in our discussion yesterday during our meet and confer regarding LPL's document production and the areas CPT believes documents exist and should be produced.

1.      Documents Relating to the Development of and First Sale of a LPL
        LCD Incorporating a TCP Falling Within the Scope of the '121 Patent

LPL has produced no documents which evidence when the TCP referred to as Part 56 incorporated into a LPL product was first sold. Nor has LPL produced any documents evidencing when LPL first sold additional LCDs incorporating other TCP's falling within the scope of the '121 patent prior to the critical date. LPL's production of a computer print-out summary of various pre-March 23, 2000 sales information does not fulfill LPL's obligation to produce the underlying documents and information.

We believe documents evidencing LPL's formal change over to TCP Part 56 and other similar TCPs exist at LPL as part of their manufacturing protocol and must be produced. Those documents include documents such as: TCP assembly specifications; TFT Gate and Source Driver Specs and Data Sheets; Material Specifications; Package and Label Information; Approval and Data Sheets for TFTs; TFT Driver Specs; TCP purchase specifications; and TFT/LCD Operational and Manufacturing Specs. At your request, we are providing examples of

AMSTERDAM  BRUSSELS  CHICAGO  EAST PALO ALTO  HOUSTON  IRVINE  LONDON
LOS ANGELES  NORTHERN VIRGINIA  PARIS  SAN FRANCISCO  TAIPEI  WASHINGTON, DC

**HOWREY**

CPT documents showing TCP specifications and assembly information that fall within the category of documents requested by CPT. *See,* for example, CPT-D 2333-340; 23552-71; 23799-803; 23779-798; 23963-82 and 23851-902. These and other similar LPL documents should have been produced regarding the first production and sale of LP121S1-A2 incorporating TCP Part 56. CPT's request also includes documents and samples sufficient to determine the identity of the TCPs incorporated into all other LPL LCDs sold prior to the critical date identified at LPLII 102328-347. This would also include documents describing the TCP and the third-party supplier, including TCP specifications from those third parties.

> 2.    Documents Regarding LPL's Analysis of Defendants' Accused Products

LPL has produced no documents regarding CPT, ViewSonic, Tatung, or Tatung USA or the LCD accused products. Nor is there any indication of any such analysis listed in LPL's Privilege Log. You indicated that you would check to see if the Privilege Log needed supplementation.

> 3.    LPL's Data Base

It became apparent during our conversation that LPL has a data base containing information regarding the identity of the LPL LCD sales and part numbers, including the TCP used in each LCD. We asked that you inquire as to whether LPL will produce that data base to CPT or provide CPT access. This data base contains relevant information and should have been produced, particularly in view of LPL's claims that no "source" documents can be located regarding the first production and sale of a TCP falling within the scope of the '121 patent.

> 4.    Honeywell Documents

The only document evidencing LPL's purchase of the '002 patent is the assignment found in the prosecution history. LPL did not produce the original contract and terms of the agreement, internal correspondence regarding the purchase; press releases; and Honeywell communications regarding the negotiation and purchase of the '002 patent. You indicated you would ask LPL regarding these documents and get back to us.

> 5.    LG. Philips America

It came to our attention that LPL has not produced, nor requested LG. Philips America to produce any relevant documents in this case, particularly documents regarding LPL's first sale of LP121S1-A2 incorporating TCP Part 56 and other LPL sales incorporating a TCP falling under the scope of the '121 patent before the critical date. Sales of LB121S1 to LG. Philips America were made as shown in the computer print-outs supplied by CPT. LG. Philips America falls under the definition of "LPL" and "affiliates" as defined in CPT's First Request for Interrogatories. LG. Philips America is a subsidiary of LPL as indicated in LPL's recent Form 6-

# HOWREY

Cass W. Christenson
March 29, 2006
Page 3

K.  LG. Philips America sales of LPL's LP121S1-A2 to entities in the U.S. are highly relevant to the issues in this case.

Relevant documents from LG. Philips America and any other affiliate, subsidiary, division or other entity that controls or is under control of LPL should have been produced.  We believe this request requires immediate supplementation by LPL, otherwise we intend to pursue this lack of compliance at the hearing next week.

Unless LPL can agree to supplement its production regarding the above categories, CPT requests that a LPL knowledgeable representative be present during the hearings next week to answer any questions the Court or CPT counsel may have regarding the adequacies of LPL's production and the existence of the requested documents.

We look forward to discussing the above on Thursday, March 30th at 3:00 p.m. EST during our meet and confer in an attempt to resolve our disputes with the goal of attempting to narrow the issues or eliminate the hearing altogether.

Very truly yours,

Christine A. Dudzik

CAD:keb

cc:    Glenn Rhodes
       Julie Gabler
       Richard Kirk
       Robert Whetzel

**Exhibit 7**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| LG. PHILIPS LCD CO., LTD., | ) | |
| | ) | |
| | ) | C.A. No. 05-292 (JJF) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TATUNG COMPANY, | ) | |
| TATUNG COMPANY OF AMERICA, INC., | ) | |
| CHUNGHWA PICTURE TUBES, LTD., | ) | |
| AND VIEWSONIC CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS FIRST SET OF DOCUMENT REQUESTS (NOS. 1-64)

Defendants, Chunghwa Picture Tubes, Ltd., Tatung Company, Tatung Company of America Inc., and Viewsonic Corporation (collectively referred to herein as "Defendants") request that Plaintiff produce the documents and things described in the following requests which are within its possession, custody, or control. Defendants will examine the documents at the offices of its counsel, or where the documents are maintained by Plaintiff, or at any other mutually agreeable location where suitable examination and photocopying facilities exist or can be arranged. By accepting photocopies, Defendants are not waiving its right to examine originals where necessary.

Where Plaintiff withholds documents for reasons of attorney-client privilege, work-product immunity or the like, Defendants request that it be served with a list of such documents prepared in accordance with applicable case law, including at least the names and titles or functions of the authors; any recipients; the date; the basis for withholding; and a description of the document and its subject matter sufficient to allow Defendants to contest the claim. Defendants will accept confidential documents under a suitable protective order.

DM_US\8276927.v4

In cases where Plaintiff believes that there is no responsive document, or where it has been destroyed, Defendants ask Plaintiff to produce the best available documents from which the information sought by the request may be derived.

The following definitions are applicable to terms employed in these requests:

## DEFINITIONS AND INSTRUCTIONS

A.    "LGL" and/or "Plaintiff" shall mean LG. Philips LCD Co., Ltd.

B.    Plaintiff should refer to Defendants' First Set of Interrogatories to Plaintiff for the definition or meaning of terms used herein, which definitions and meanings are incorporated herein by reference.

C.    All document requests and corresponding definitions of terms are for purposes of discovery only, and not to be construed as limiting or reflecting Defendants' position in this case regarding claim construction or any other issue. Defendants specifically reserve the right to use different terms, or to assert different meanings, for all purposes in this case (including for example, with respect to claim construction, infringement analysis, and validity analysis).

D.    If Plaintiff believes that any Document Request contained in this set of Document Requests is unclear, unintelligible or because of its wording otherwise prohibits or prevents Plaintiff from responding to that Document Request, Defendants request that Plaintiff immediately request clarification of that Document Request from the Defendants.

E.    In producing documents described below, Plaintiff should furnish all documents within its possession, custody or control or that of any of your agents or representatives.

F.    In response to the following set of Document Requests, as to each document withheld in whole or in part from production on the basis of a claim of privilege or immunity, Defendant shall state the following outlined information. Defendant is requested to submit this information on the date and at the time of production of documents and things responsive to these Requests.

1.   identification of the document being withheld, including separately each copy or draft;

2.   the nature of and basis for the privilege or immunity asserted;

3.   the kind of document (e.g., letter, memorandum, facsimile, etc.);

4.   the number of pages comprising the document;

5.   the present location and custodian of the document;

6.   the date it bears, if any, as well as the date it was prepared if different;

7.   the date the document was prepared;

8.   whether the document was sent, and if so, the date it was sent;

9.   the name, address, and title of its author, its addressee, each person to whom a copy has been sent or who received a copy, and each person known to have read the document; and

10.  a description of the subject matter and/or contents of the document.

G.   These requests shall be deemed to be continuing and responses to these Document Requests are subject to supplementation in accordance with Fed. R. Civ. P. 26(e).

## DOCUMENT REQUESTS

### REQUEST NO. 1:

All documents and things relating or referring to or discussing the Defendants or Defendant's accused products.

### REQUEST NO. 2:

All documents and things relating to, referring to, supporting any allegation of, or discussing infringement or claims of infringement of the patents-in-suit, their foreign counterparts, or related family patent rights by any entity or individual.

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that on December 16, 2005 copies of the foregoing document were served via email and U.S. first class mail to the following:

Richard D. Kirk
The Bayard Firm
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899-5130
Facsimile: (302) 658-6395

Gaspare J. Bono
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C. 20006
Facsimile: (202) 496-7756

_____
Christine A. Dudzik