# RICHARDS, LAYTON & FINGER
A PROFESSIONAL ASSOCIATION
ONE RODNEY SQUARE
920 NORTH KING STREET
WILMINGTON, DELAWARE 19801
(302) 651-7700
FAX (302) 651-7701
WWW.RLF.COM

MATTHEW W. KING

DIRECT DIAL NUMBER
302-651-7881
KING@RLF.COM

March 31, 2006

**VIA ELECTRONIC MAIL**          REDACTED - PUBLIC VERSION

The Honorable Joseph J. Farnan, Jr.
United States District Court
District of Delaware
844 King Street
Wilmington, DE  19801

Re:   **L.G. Philips LCD Co. Ltd. v. Tatung Company et. al.**
      **Civil Action No. 05-292 (JJF)**

Dear Judge Farnan:

Pursuant to this Court's Order dated March 2, 2006, Defendants, Tatung Company, Tatung Company of America, Chunghwa Picture Tubes, LTD., and ViewSonic Corporation (herein "CPT") submit this letter to address the remaining deficiencies in Plaintiff, LG Philips Company, LTD., (herein "LPL") document production. CPT will address these issues for the Court's consideration at the Evidentiary Hearing to be scheduled and CPT has requested a knowledgeable LPL representative be present at the Hearing. The parties met and conferred on March 28th and 30th, 2006 in an attempt to resolve outstanding issues regarding document production deficiencies. The parties resolved many of their issues, yet some remain and only those most vital to CPT's invalidity defense are addressed below.

I.   **BACKGROUND**

The discovery at issue seeks evidence relevant to CPT's invalidity issues under 35 U.S.C. § 102(b) related to the '121 patent. That patent is directed to a Tape Carrier Package ("TCP") which has a portion of the base film removed at a particular location of the TCP used to connect the Driving-Integrated Circuit ("D-IC") to the printed circuit board ("PCB") and the liquid crystal panel. The '121 patent was allegedly invented at LPL by several LPL engineers beginning in mid-1999. The priority patent application was filed on March 31, 2000 in Korea and on March 23, 2001 in the United States. Thus, CPT's section 102(b) invalidity defense centers on whether LPL or other third parties sold a TCP falling within the scope of the '121 patent more than one year before the U.S. filing date - - namely, March 23, 2000.

The Honorable Joseph J. Farnan, Jr.
March 31, 2006
Page 2

There are serious gaps in LPL's production related to its first production and sale of an LCD module incorporating a TCP falling within the scope of the '121 patent. In fact, virtually no manufacturing or production documents were produced related to the issue, and particularly absent are documents dated after 1999. Documents dated prior to the March 23, 2000 critical date are highly relevant to the on-sale bar issues. Also, no sales related documents, including purchase orders or invoices were produced by LPL or its U.S. subsidiary LG. Philips of America. Although these documents are highly relevant to CPT's on-sale defense, LPL claims all relevant documents were produced. Only a computer-generated print-out was produced showing summary sales information. When asked at the March 30th meet and confer whether the additional requested documents were destroyed through a document retention policy, or otherwise no longer exist, LPL's counsel did not respond other than to say that all relevant documents have been produced.

LPL claims that the only documents related to this issue that could be located after a reasonable search have been produced. It is unclear whether a further thorough search by LPL would locate the documents sought by CPT and, thus CPT seeks this Court's assistance by way of an Evidentiary Hearing. What is clear, however, are the following facts related to the distinct category of documents sought here.

### A. Documents Relating to LPL's Own On-Sale Bar of the Subject Matter Claimed in the '121 Patent

The limited number of documents produced by LPL tells an incomplete story of the events leading up to the invention of the TCP claimed in the '121 patent and the go-ahead for mass production. What CPT seeks are documents telling the complete story of when the TCP of the invention (known as **Redacted** ) was incorporated into an LCD module and first sold in the United States. The documents requested by CPT are encompassed in CPT's Request for Documents Nos. 10-16, 19-20 and 22 and the same documents ordered produced by the Court on March 2, 2006. (Ex. 1). The facts that are known are as follows:

In mid-1999, LPL was engaged in an effort to solve an alleged problem with a brightness difference in the LCD screen, particularly with model **Redacted** (Ex. 2).[1] LPL engineers allegedly solved this problem by using a TCP having a "dummy bending" part formed by removing the base film between the pad part and the Driving-Integrated Circuit ("D-IC") to distribute a stress applied to the liquid crystal panel during thermal pressing the TCP onto the lower glass substrate. (Ex. 3). By **Redacted**
(Ex. 4). believed to be the TCP which led to the invention described in the '121 patent. Later that same month, evaluation resulted

---

[1] The attached Exhibits of LPL documents have been designated "Confidential Attorney Eyes Only" and are therefore filed under seal pursuant to the Protective Order in this case. Additionally, because these documents are in Korean, CPT is attaching the English translation.

The Honorable Joseph J. Farnan, Jr.
March 31, 2006
Page 3

in LPL stating **Redacted** (Ex. 5). On **Redacted** (Ex. 6). The following documents were specifically requested by LPL at that meeting: **Redacted** *Id.* many of these documents are not found in LPL's production, and are sought by CPT here.

Thus, by **Redacted** (Ex. 5). A computer print-out provided by LPL demonstrates at **Redacted** (Ex. 7). Other modules **Redacted** (Ex. 7). More shipments of this module to **Redacted** (Ex. 7). Thus, by the critical date of March 23, 2000, over **Redacted** modules valued at over **Redacted** were shipped to **Redacted** LPL's documents also demonstrate that **Redacted** (Ex. 8). Details of these sales are lacking in LPL's production.

Also of concern is the fact that documents generated *after* December, 1999 are also virtually absent in LPL's production. Particularly relevant are documents evidencing the mass production of: **Redacted** module with the **Redacted** of the '121 invention; TCP specifications from LPL's suppliers; drawings; assembly documents and other documents describing LPL's use of TCP in the **Redacted** module or its use of other TCP's falling within the scope of the '121 patent before the March 23, 2000 critical date. None of these types of documents requested by LPL on **Redacted** which evidently did exist, were produced by LPL.[2] (Ex. 6).

In view of the above, LPL's production is suspect. The requested, but not produced, documents bear directly on critical questions of patent invalidity under the on-sale bar and would unequivocally show that LPL *itself* sold an LCD product with a TCP falling within the claims of the '121 patent before March 23, 2000, the critical date.[3] LPL does not dispute that

---

[2] LPL did produce 26 TCP blueprints on March 17, 2006. However, no other documents were produced that describe when these particular TCPs were incorporated into LPL products.

[3] CPT's on-sale bar defense with respect to LPL's sale of a TCP falling under the claims of the '121 patent should not be confused with CPT's additional on-sale bar defense with respect to products sold by other third-parties. The documents sought here relate to a sale of an LCD module by LPL. The LG. Philips America sales information was not known to CPT until LPL, under Court Order, produced documents on March, 17th. As the Court is aware, there is also evidence that other third-parties sold LCD modules with a TCP falling under the scope of the
(Continued)

The Honorable Joseph J. Farnan, Jr.
March 31, 2006
Page 4

the documents sought by CPT are relevant. The only answer offered by LPL in response is its contention that all documents have been produced and that there are no other documents. This seems implausible particularly in view of the fact that virtually no LPL documents relating to this issue are dated after December, 1999. Why earlier documents exist, while later ones are missing, is left unanswered.

### B. LPL Database

During the March 28, 2006 meet and confer, CPT discovered that LPL maintains a database with relevant information regarding the sales of LPL LCD product sold prior to the critical date. This database apparently contains the LCD model number, date of sales, date of shipping, country of sale, and quantity sold, among other things. (Ex. 7). It is not known what other information is contained in that database that is relevant to the on-sale bar or other invalidity issues. From what little documentation that was produced by LPL in this case, this database becomes potentially the most crucial source of sales information regarding LPL's first sale of a TCP falling under the claims of the '121 patent. LPL has refused to allow CPT access to this database, or produce a copy to CPT, but instead asks CPT what additional information it might want. LPL asks that CPT place an order without the benefit of the menu.

The breadth of information contained in this database cannot be known by CPT, but it is believed to contain much more detailed information than revealed in the computer print-outs produced by LPL here. For instance, in the co-pending case between the parties in California (02-CV-6775) LPL produced documents bearing production nos. Redacted . which appears to be a chart of LPL LCD products and shows: Redacted
(See Ex. 9). Thus, critical information regarding the first date of manufacture and first sales in the U.S. is likely to be contained within this database. This is precisely the information sought by CPT for its on sale defense relating to Redacted but not produced by LPL.

### C. LG. Philips America

The computer print-outs produced by LPL regarding sales of LPL product also indicates that Redacted before the critical date, yet no documents have been produced. During the March 28th meet and confer, LPL's counsel indicated that they did not produce any LG. Philips America documents, nor did they seek to produce any LG. Philips America documents here. At the March 30th meeting, LPL counsel again reiterated that LPL refuses to produce documents in the possession of LG. Philips America because they believe they are considered a third party. This

---

'121 patent. The discovery sought related to these specific third-party on-sale bars has been stayed and is currently pending this Court's ruling on CPT's Motion for Reconsideration filed March 6, 2006.

The Honorable Joseph J. Farnan, Jr.
March 31, 2006
Page 5

is particularly troublesome under these circumstances because of the complete failure by LPL to produce any underlying sales documents found in its own possession.

Relevant documents in the possession of LG. Philips America should have been produced. LG. Philips America is a subsidiary of LPL. (See, LPL Form 6-K attached as Ex. 10). CPT's Request for Documents requested all relevant documents in LPL's possession, custody or control. LPL has control over LG. Philips America who acts as its U.S. sales distributor and is LPL's authorized U.S. representative as reported to the SEC. Under these circumstances, courts have ordered production of documents held by another corporation where there is a parent-subsidiary relationship. *Afros S.P.A. v. Krauss-Maffei Corp.*, 113 F.R.D. 127, 130 (D. Del. 1986).

LPL admits that it has failed to seek highly relevant on-sale bar documents in the possession of its own subsidiary. Because documents in the possession of LG. Philips America are relevant to show that     **Redacted**     modules shipped to it before the critical date were subsequently sold to other third parties in the United States, those documents should have been produced. If LPL continues to disregard the Court's Orders, an adverse finding of fact should be made against LPL on this issue.

LPL should be ordered to produce documents in the possession of its subsidiary, and to ensure full and complete production should be compelled to produce a 30(b)(6) witness to testify concerning the search for and production of requested documents. In the alternative, the Court can allow CPT to serve third party discovery requests upon LG. Philips America for the documents LPL has failed to produce here.

## II.   CONCLUSION

For the foregoing reasons, CPT requests this Court to conduct an Evidentiary Hearing to probe the completeness of LPL's document production on the above identified documents.

Respectfully submitted,

Matthew W. King

MKW:ps
Enclosure
cc:   Christine A. Dudzik, Esq. (via e-mail)
      Glenn Rhodes (via e-mail)
      Julie Gabler (via e-mail)
      Richard D. Kirk, Esq. (via hand delivery)
      Gaspare J. Bono, Esq. (via e-mail)

RLF1-2998339-1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 6, 2006, I electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send notification of such filing, and hand delivered to the following:

> Richard D. Kirk
> The Bayard Firm
> 222 Delaware Avenue, Suite 900
> P.O. Box 25130
> Wilmington, DE 19899

I hereby certify that on April 6, 2006, I sent the foregoing document by Electronic Mail, to the following non-registered participants:

> Gaspare J. Bono
> Matthew T. Bailey
> Andrew J. Park
> Adrian Mollo
> McKenna Long & Aldridge LLP
> 1900 K Street, NW
> Washington, DC 20006

> Matthew W. King (#4566)
> king@rlf.com
> Richards, Layton & Finger
> One Rodney Square
> P.O. Box 551
> Wilmington, DE 19899

RLF1-2917974-1