## RICHARDS, LAYTON & FINGER
A PROFESSIONAL ASSOCIATION
ONE RODNEY SQUARE
920 NORTH KING STREET
WILMINGTON, DELAWARE 19801
(302) 651-7700
FAX (302) 651-7701
WWW.RLF.COM

MATTHEW W. KING

DIRECT DIAL NUMBER
302-651-7881
KING@RLF.COM

May 8, 2006

**VIA ELECTRONIC FILING**
The Honorable Joseph J. Farnan, Jr.
United States District Court
District of Delaware
844 King Street
Wilmington, DE 19801

Re: **L.G. Philips LCD Co. Ltd. v. Tatung Company et. al., C.A. No. 05-292 (JJF)**

Dear Judge Farnan:

Defendants Chunghwa Picture Tubes, Ltd. ("CPT"), Tatung Company ("Tatung"), Tatung Company of America, Inc. ("Tatung USA") and ViewSonic Corporation ("ViewSonic") respectfully submit their letter to address the status of damages discovery, both in response to LG.Philips LCD Co., Ltd.'s ("LPL's") letter of May 3 and to affirmatively identify deficiencies in LPL's production.

On February 28, 2006, the parties submitted deficiency letters to this Court identifying the specific document discovery deficiencies existing in the other parties' productions. At the March 1 hearing on these issues, this Court divided the issues raised by the parties into two groups: damages related discovery and everything else. The Court issued an order concerning the non-damages related discovery, but stayed the issues raised concerning damages discovery. At no point between March 1 and April 25 did the Court suggest to either party that they could broaden the scope of their respective February 28 letters as to damages issues or otherwise seek additional damages discovery not identified in those letters. Thus, it is defendants' position that the parties are limited to seeking damages discovery specifically raised in their February 28 submissions to the Court. On April 25, LPL sent an email to defendants purporting to raise a host of new "deficiencies" in defendants' productions that either were not raised on February 28 or were not raised with anything resembling the type of specificity required to put defendants' on notice of the actual nature of LPL's claimed deficiencies. As such, defendants expressly object to LPL's April 25 attempt to recharacterize and expand upon their February 28 submission.

**Agreements Reached**

Since April 25, the parties have reached the following agreements concerning outstanding damages discovery:

The Honorable Joseph J. Farnan, Jr.
May 8, 2006
Page 2

- **Supplementation of data concerning sales, price, revenue, cost and profit information**: The parties previously had produced this information through December 31, 2005. The parties have agreed to supplement their previous productions by providing this data through March 31, 2006. The exact date for the exchange of this information has not been set, but the parties have agreed that this information will be simultaneously exchanged shortly. Thus, defendants believe the parties' issues concerning this information are resolved.

  CPT has further agreed to re-produce their pre-2005 sales data in a slightly different format than it was originally produced. Specifically, CPT originally provided this data organized by customer, listing all sales transactions with customer #1, then all sales transactions with customer #2, etc. LPL has requested that CPT provide this data organized by product number rather than by customer (e.g. all sales of a particular module, then all sales of the next module, etc.). CPT has agreed to re-produce this information in the new format requested by LPL.

  Additionally, CPT has agreed to provide subtotals by module and totals for all modules of units sold and dollars received. CPT does not maintain this information in its documents as they are maintained in the ordinary course of business. However, CPT has agreed to provide this information to LPL when it re-produces it pre-2005 sales data organized by product, rather than by customer.

- **Production by LPL of Display Search Data in Electronic Form**: LPL previously had provided thousands of pages in hard copy of marketshare data from third-party Display Search. CPT requested that this information be provided in electronic form, rather than hard copy. LPL has agreed to produce this information in electronic form under the Attorneys Eyes Only designation. Defendants have not yet received this promised production. When LPL produces the complete set of information as requested, this issue will be resolved.

- **Supplementation of License Agreement**: Both parties have agreed to provide any additional TFT LCD related licenses entered into in 2006. It is not yet known whether any party has additional licenses to produce, but to the extent they exist, the parties have agreed to promptly supplement. Defendants believe the parties' issues concerning the production of licenses are resolved.

- **Rebates and Discounts**: Both parties have agreed to investigate whether any additional documents are available concerning rebates or other discounts that might effect actual net pricing to some or all customers. Should any additional documents be located, the parties have agreed to produce those documents promptly.

- **Product/User Manuals**: The customer defendants have agreed to re-verify that their productions of product/user manuals reflect all new models in which accused CPT panels may be incorporated into some, but not necessarily all units, whether

The Honorable Joseph J. Farnan, Jr.
May 8, 2006
Page 3

or not those units are sold in the United States. Should any additional documents be located, the customer defendants have agreed to produce those documents promptly.

- **OEM Agreements**: The customer defendants have agreed to re-verify that their productions of OEM Agreements are complete. Should any additional documents be located, the customer defendants have agreed to produce those documents promptly.

### Issues Outstanding in LPL's Damages-Related Document Production

Defendants continue to seek the following additional damages-related documents from LPL, as identified in defendants' February 28 submission to the Court:

**1.     Internal LPL documents including comparisons between LPL products and the accused products, the identity, product, and prices of competitors in such markets, competitive analyses, and analyses regarding the targeted markets and distribution networks of LPL as called for by Request No. 34[1] and sought on page 2 of defendants' February 28 deficiency letter.**

LPL has not produced a single document in this category. The only marketshare/competitive analysis information LPL has produced is the information it purchased from third-party Display Search. Defendants naturally question the completeness of a production that does not contain a single document evidencing any internal analyses of this information or any other competitive information LPL acquires in the market place. In 2002, LPL embarked on an aggressive patent license program, including bringing suit against companies who refused to immediately take a license to LPL's patents, many of which have now been shown to be invalid and/or are so strongly suspected to be invalid that LPL has withdrawn pending infringement claims on those patents. It is hard to imagine that LPL did not perform any competitive or marketshare analyses prior to or as part of their licensing program. Defendants renew their request that LPL be ordered to produce all documents in this category.

---

[1] **Request No. 34** called for "All documents and things describing the markets in which LPL products that are comparable to the accused products are sold, including but not limited to documents describing LPL's market share and the market share of all competitors with respect to each product, the effect on LPL and the TFT LCD device market due to the entry of one or more competitors or competitive products into the market, the demand for such products, factors that affect market demand for such products, competition between LPL and the Defendants with respect to the patents-in-suit and any product alleged to be made thereby, comparisons between LPL products and the accused products, the identity, products, and prices of competitors in such markets, competitive analyses, and analysis regarding the targeted markets and distribution networks of LPL."

The Honorable Joseph J. Farnan, Jr.
May 8, 2006
Page 4

2.    **Documents supporting LPL's claim for injunctive relief (Request No. 69[2]) and post-judgment interest (Request No. 70[3]) as called for by Request Nos. 69 and 70 and sought on page 6 of defendants' February 28 deficiency letter.**

In the parties' recent meet and confer discussions on this issue, LPL's counsel represented that LPL does not intend to rely on any documents not already produced or otherwise publicly available (e.g. published interest rates) in support of its requests for injunctive relief and post-judgment interest. In light of LPL's representation, defendants ask this Court to enter an order expressly barring LPL from supporting its requests for injunctive relief and post-judgment interest to those documents produced on or before May 17, 2006 and those produced pursuant to the agreements recently reached between the parties as described above in the "Agreements Reached" section.

3.    **Reasonable Royalty Documents**

LPL has not produced any documents showing the value of the '002 invention. Documents in this category are relevant to *Georgia Pacific* factors 6 and 8-10, 12-13. *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *modified and aff'd*, 446 F.2d 295 (2d Cir. 1971).[4] LPL has elected to pursue a reasonable royalty theory of damages. As such, LPL must produce all documents in its possession, custody or control, whether or not it intends to rely on them, tending to show the value of the invention at issue vis-à-vis other components of all final products embodying the invention and vis-à-vis other finished products that don't include the invention. LPL must also produce all documents, whether or not it intends to rely on them, tending to show the profitability of the invention, or lack thereof. LPL should be ordered to produce these documents immediately.

---

[2] **Request No. 69** called for "All documents and things supporting or refuting Plaintiff's assertion that Plaintiff has experienced, and continues to suffer, economic and irreparable harm as a result of Defendant's alleged individual and collective infringement of the Patents in suit as asserted in Plaintiff's Initial Disclosures."

[3] **Request No. 70** called for "All documents and things supporting or refuting any computation of damages for Defendants' alleged infringement of the Patents in Suit including any determination of a reasonable royalty, lost profits, and/or post-judgment interest."

[4] *Georgia Pacific* factors 6 and 8-10, 12-13 are: (6) the effect of selling the patented specialty in promoting sales of other products of the licensee; the existing value of the invention **to the licensor** as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales, (8) the **established profitability of the product made under the patent**; its commercial success; and its current popularity, (9) the **utility and advantages** of the patent property over the old modes or devices, if any, that had been used for working out similar results, (10) the nature of the patented invention; the character of the commercial embodiment of it **as owned and produced by the licensor**; and the benefits to those who have used the invention, (12) the **portion of the profit or of the selling price** that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions, (13) the **portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements**, the manufacturing process, business risks, or significant features or improvements added by the infringer. (emphasis added)

RLF1-3011780-1

The Honorable Joseph J. Farnan, Jr.
May 8, 2006
Page 5

### Defendants' Responses to LPL's Assertion of Continued Deficiencies in their Productions

In defendants' view, LPL's May 3 submission included a host of issues that already had been resolved by the parties. To the extent defendants have listed issues raised by LPL in the "Agreements Reached" section of this letter, it is defendants' position that no issue remains for the Court.

LPL's May 3 submission also raised a host of issues that LPL did not preserve in its February 28 submission. Specifically, in its February 28 submission, LPL raised only three deficiencies with defendants' damages-related document products: (i) "all documents reflecting Defendants' methodology or basis used, during the relevant time period, to negotiate or calculate royalty rates for patents comparable to the Patents-in-suit, including any and all license agreements involving Defendants' modules and liquid crystal displays"; (ii) "all documents reflecting Defendants' efforts to market and sell products in or to the U.S." and (iii) "all documents reflecting Defendants' worldwide and U.S. sales and profit information, by customer and product, for the relevant time period (including forecasts and projections), to the extent not already produced in this case." *See* LPL's February 28 letter at pages 6-7 (i-iii). **The defendants have no additional responsive documents to these three categories, except to the extent they already have agreed to produce additional documents pursuant to the "Agreements Reached" section above.** As such, defendants believe that all issues with their productions timely preserved by LPL have been resolved.

For the few remaining issues between the parties, which defendants do not believe were timely raised, defendants offer the following response:

1.   **Profitability Information**

As LPL admits, defendants have produced profitability information as it is maintained by each of them in the ordinary course of business. LPL is apparently unhappy that the defendants do not maintain this information at the product level. LPL's unhappiness about this fact, however, does not create a discovery dispute where the only requests at issue are requests for <u>documents</u>. The defendants simply do not maintain this information at the product level for any product. Defendants have produced this information at the most micro level available. Nothing more can be required by a <u>document request</u>.

2.   **Sales Information**

LPL raises two issues here: (a) its belief that defendants' sales information is not uniform and/or inaccurate and (b) that defendants produced documents as they are maintained in the ordinary course of business (e.g. complaining that a Taiwanese company that does business in Chinese and maintains its documents in Chinese produced documents dated under the Chinese calendar). Defendants have produced their sales information through December 31, 2005 and will be exchanging sales information through March 31, 2006 with LPL shortly, at an agreed upon exchange date. If LPL believes there are inconsistencies across the various documents

RLF1-3011780-1

produced, it should explore those issues during the upcoming fact and expert depositions. LPL has not (and cannot) accuse defendants of withholding source documents. Thus, if defendants' source documents are actually not uniform or inaccurate, then those are just the facts of the case.

Additionally, defendants do not believe LPL has any legitimate complaints concerning the use of Chinese calendar dating conventions by a Chinese company in Chinese language documents. The defendants produced documents as they are maintained in the ordinary course of business. Nothing more is required.

### 3. Documents Regarding Relationships and Sales Relevant to the U.S. and Active Inducement

LPL already has explored this issue at length in depositions taken in the California cases. CPT's knowledge on this issue is clear: system brand owners do no inform CPT about which products sold in the United States contain CPT modules. CPT sells its modules to OEMs in Asia, not to system brand owners in the Unites States. The decision of which module to include in which unit of which product and where those units are eventually shipped for sale happens well after a module leaves CPT's possession. Indeed, in the '810 litigation, LPL is maintaining that it also does not know which system brand owners include LPL modules in which products or units of that product sold in the United States. As such, CPT questions LPL's motives in trying to raise this well settled issue again in this litigation. CPT has produced information in its possession relevant to this issue. The customer defendants have produced this information as to their products. To the extent new products have been introduced by the customer defendants, they have agreed to supplement their production of product/user manuals. These documents reflect which modules (generally more than one module manufactured by more than one supplier) can be used in the product.

LPL also includes in this category documents concerning willfulness. As LPL acknowledges, defendants already have listed any opinion letters received on their privilege logs. Defendants are not waiving privilege on these opinions and are not asserting advice of counsel as a defense. Defendants previously have informed LPL on several occasions that they are not relying on an advice of counsel defense. Defendants do not believe there is any issue for the Court to resolve.

Defendants remain available for the previously scheduled May 17 hearing should the Court desire to hold a hearing on the outstanding damages discovery issues between the parties.

Respectfully,

Matthew W. King

RLF1-3011780-1

The Honorable Joseph J. Farnan, Jr.
May 8, 2006
Page 7


cc: Glenn Rhodes (via e-mail)
    Christine A. Dudzik, Esq. (via e-mail)
    Julie S. Gabler (via e-mail)
    Richard D. Kirk, Esq. (via e-mail)
    Gaspare J. Bono, Esq. (via e-mail)

The Honorable Joseph J. Farnan, Jr.

RLF1-3011780-1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 8, 2006, I electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send notification of such filing, and hand delivered to the following:

> Richard D. Kirk
> The Bayard Firm
> 222 Delaware Avenue, Suite 900
> P.O. Box 25130
> Wilmington, DE 19899

I hereby certify that on May 8, 2006, I sent the foregoing document by Electronic Mail, to the following non-registered participants:

> Gaspare J. Bono
> Matthew T. Bailey
> Andrew J. Park
> Adrian Mollo
> McKenna Long & Aldridge LLP
> 1900 K Street, NW
> Washington, DC 20006

/s/ Matthew W. King
Matthew W. King (#4566)
king@rlf.com
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899