# EXHIBIT 5

# McKenna Long
# & Aldridge LLP
### Attorneys at Law

Atlanta

Denver

Los Angeles

Philadelphia

1900 K Street, NW • Washington, DC 20006
202.496.7500 • Fax: 202.496.7756
www.mckennalong.com

San Diego

San Francisco

Washington, DC

Brussels

CASS W. CHRISTENSON
(202) 496-7218

EMAIL ADDRESS
cchristenson@mckennalong.com

May 8, 2006

**By E-Mail**

Julie S. Gabler, Esq.
Howrey LLP
525 Market Street, #3600
San Francisco, CA 94105-2708

Steven Yovits, Esq.
Howrey LLP
321 North Clark Street, #3400
Chicago, IL 60610

Re:    *LG.Philips LCD Co., Ltd. v. Tatung Co., et al.*; CA No. 05-292 (JJF)

Dear Julie and Steve:

Last week, we discussed clarifying deposition topics and issues concerning the parties' pending Rule 30(b)(6) deposition notices, with the goal of focusing and narrowing the depositions and avoiding unnecessary disputes. As agreed, I write to provide clarification concerning the topics in plaintiff's Rule 30(b)(6) deposition notices. We look forward to receiving further clarification concerning the topics in Defendants' Rule 30(b)(6) deposition notices, including to reflect LPL's withdrawal of claims concerning the '121 patent.

## Clarification Regarding Withdrawal of Claims Concerning the '121 Patent

Because LPL has withdrawn its claims regarding the '121 patent, LPL does not seek testimony from Defendants concerning the '121 patent.

## Clarification Regarding Topics 1-3

Topics 1-3 relate to identifying all of the products that each defendant made, imported to the U.S., used, offered for sale, and sold since May 1999. For example, LPL need to identify all CPT modules and to confirm which LCD products have used which CPT modules, as well as how many of each product were made, imported, and sold, both in total and specifically related to the U.S., on a product-by-product basis. As another example, LPL needs product pricing information for each product.

Julie S. Gabler, Esq.
Steven Yovits, Esq.
May 8, 2006
Page 2

## Clarification Regarding Technical Topics and Issues

LPL needs testimony for Topics 4-6 to CPT and Topics 5-7 to Tatung, Tatung America and ViewSonic, and LPL intends to explore these topics fully at the depositions. These topics, which include design, development, making, and production, will necessarily address all relevant issues, for example:

- correlating LCD modules (e.g., by product designations such as CLAA170EA07) to: (i) mask design documents (e.g., electronic files with .str extensions such as F170EC3.str); and (ii) all specifications and procedures for removing the ESD guard ring;

- the identification, function and operation of structures (e.g., guard ring components, marks used at least in part for alignment) depicted in CPT's documents including the .str electronic files;

- the function, operation, and physical characteristics of an overall ESD guard ring structure and of each component or material layer therein (e.g., for a given structure such as a TFT and layers comprising the TFT, this topic relates to (i) the function or purpose of the structure or component, (ii) the operation or performance parameters such as threshold voltage or voltage versus current levels, and (iii) physical characteristics such as resistivity or layer thickness;

- functional and performance considerations or tradeoffs leading to the selection of an ESD guard ring design including components within that design;

- specifications and procedures for a given LCD module related to (i) manufacturing ESD guard rings, (ii) removing an ESD guard ring including identification of structures removed, and (iii) assembly of the LCD module including front and back planes.

- authentication and discussion of relevant documents and things, including as produced by defendants.

## Clarification Regarding Infringement and Validity Topics

The parties previously agreed that depositions will not address contentions of parties concerning infringement, validity, and enforceability. Instead, for these contentions, the parties agreed to exchange discovery in the form of interrogatory answers. Accordingly, LPL does not intend to seek contention testimony and will not pursue topics 7-8 (CPT deposition) and topics 8-9 (Tatung, Tatung America, ViewSonic depositions) on these issues. LPL does, however, intend to pursue topic 9 (CPT) and topic 10 (Tatung, Tatung America, ViewSonic) to identify all prior art that Defendants deem relevant, without addressing specific contentions concerning alleged prior art.

## Clarification Regarding Sales, Damages, and Related Topics

Julie S. Gabler, Esq.
Steven Yovits, Esq.
May 8, 2006
Page 3

LPL intends to pursue each of these topics fully at the depositions, as these topics are defined, including CPT topics 14-17 and 19-29, and Tatung, Tatung America, and ViewSonic topics 15-18 and 20-30.  LPL needs to know, for example, the total products sold by each Defendant since May 1999, and to which customers, as well as corresponding revenue, cost, and profitability / gross margin information, on a product-by-product basis (by module for CPT, and by products incorporating CPT modules for all other defendants).   Further, LPL needs information regarding licensing agreements and practices, as well as royalty rates and payments concerning such agreements.  As another example, and in no way limiting the existing topics, LPL needs to know all facts related to the importation, offer, and sale of products in or to the U.S., and the U.S. market for defendants' products, such as facts since 1999 concerning:

- attendance at U.S. trade or industry shows, meetings and/or conferences (including, for example, trips by CPT personnel to or from the U.S.);

- surveys or other information concerning the U.S. market for any of defendants' products, including consumer preferences regarding LCD products

- product design, service, and/or support regarding defendants' products sold or marketed in the U.S., including, for example, on-site design, development, or other support in the U.S.;

- promotion, demonstration, advertising, and marketing regarding Defendants' products sold or marketed in the U.S.;

- product-related shipments and/or business travel to the U.S.;

- offices, divisions, branches, partners, affiliates, locations, representatives, agents, and/or employees in or responsible for the U.S. market, customers, and/or brands;

- U.S. regulatory approval for Defendants' products;

- contracts, negotiations, meetings, and/or transactions with or regarding U.S. brands, customers, and/or products;

- which brands use which OEMs to make products using CPT modules, for which brands and products, and in what quantity;

- relationship-building and promotion with U.S. brands / companies, and/or their OEMs;

- how CPT products are ordered and purchased, including by brands, customers, and OEMs;

- who at CPT is responsible for sales of modules used in LCD products sold in or to the U.S.;

Julie S. Gabler, Esq.
Steven Yovits, Esq.
May 8, 2006
Page 4

- the identity of each defendant's customers and accounts, product sales to each customer / account, and management of those customers / accounts;

- defendants' accounting methods and methodologies, including their database(s) and report(s) concerning sales, revenue, and cost information; and

- authentication and discussion of relevant documents, including as produced by defendants

## Other Deposition Topics

LPL's also needs deposition discovery regarding Defendants' duty of due care and knowledge of the '002 Patent  (See CPT topics 10-11; Tatung, Tatung America, ViewSonic topics 11-12); Defendants' efforts in responding, and responses, to LPL's discovery requests (See CPT topics 12-13; Tatung, Tatung America, ViewSonic topics 13-14); and the corporate and organizational structure regarding each defendant so that LPL can identify relevant offices, business units, employees, etc. and understand their corresponding relationship and hierarchy (See CPT topics 18; Tatung, Tatung America, ViewSonic topic 19).

We look forward to your cooperation regarding these topics and the depositions.

Very truly yours,

Cass W. Christenson

CWC:ea
cc:     Christine A. Dudzik, Esq.
         Matthew W. King, Esq.
         Richard D. Kirk, Esq.
         Gaspare J. Bono, Esq.

# EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LG.PHILIPS LCD CO., LTD.,

Plaintiff,

v.

TATUNG COMPANY;
TATUNG COMPANY OF AMERICA, INC.;
CHUNGHWA PICTURE TUBES, LTD.;
AND VIEWSONIC CORPORATION,

Defendants.

Civil Action No. 05-292 (JJF)

## NOTICE OF RULE 30(b)(6) DEPOSITION
## OF VIEWSONIC CORPORATION

TO:

Robert W. Whetzel, Esq.
Matthew W. King, Esq.
Richards, Layton & Finger
One Rodney Sqare
P.O. Box 551
Wilmington, DE 19899

Christine A. Dudzik, Esq.
Thomas W. Jenkins, Esq.
Howrey LLP
321 North Clark Street
Suite 3400
Chicago, IL 60610

Teresa M. Corbin, Esq.
Glenn W. Rhodes, Esq.
Howrey LLP
525 Market Street
Suite 3600
San Francisco, CA 94105

PLEASE TAKE NOTICE that Plaintiff LG.Philips LCD Co., Ltd. ("LPL") will

take the deposition of Defendant ViewSonic Corporation ("ViewSonic"), pursuant to Fed.

R. Civ. P. 30(b)(6), beginning on Tuesday, March 7, 2006, at 9:00 a.m. and continuing

through Thursday, March 7, 2006. The deposition will take place at The Bayard Firm,

222 Delaware Avenue, 9th Floor, Wilmington, DE 19899-5130. The deposition will be

taken before a notary public or court reporter, duly authorized to administer oaths and

611672v1

transcribe the testimony of the deponent(s). The deposition will be videotaped and will

continue from day to day until completed or adjourned if authorized by the Court or

stipulated by the parties. The subjects covered in the deposition will include (but are not

limited to) the subjects listed on Attachment A to this Notice.

Pursuant to Fed. R. Civ. P. 30(b)(6), ViewSonic is required to designate one or

more persons to testify at the deposition as to the matters known or reasonably available

to ViewSonic.

December 14, 2005                              THE BAYARD FIRM


                                              /s/ Richard D. Kirk (rk0922)
                                              222 Delaware Avenue, Suite 900
                                              P.O. Box 25130
                                              Wilmington, DE  19899-5130
                                              (302) 429-4208

                                              Counsel for Plaintiff
                                              LG.PHILIPS LCD CO., LTD.

OF COUNSEL:

Gaspare J. Bono
Matthew T. Bailey
Andrew J. Park
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, D.C. 20006
(202) 496-7500

611672v1

2

## ATTACHMENT A

### DEFINITIONS

For purposes of this Attachment, you should use the following definitions for the terms used herein. These definitions of terms are for purposes of discovery only, and not to be construed as limiting or reflecting LPL's position in this case regarding claim construction or any other issue. LPL specifically reserves the right to use different terms, or to assert different meanings, for all purposes in this case (including, for example, with respect to claim construction, infringement analysis, and validity analysis).

1.      "ViewSonic," "you," and "your" as used herein, means Defendant ViewSonic Corporation and all persons or entities acting or purporting to act on your behalf, and any of your affiliates.

2.      "Plaintiff" refers to the Plaintiff in the above-captioned lawsuit as well as its affiliates.

3.      "The '121 Patent" means United States Patent No. 6,738,121, entitled "Tape carrier package with dummy bending part and liquid crystal display employing the same," attached as Exhibit A to the Plaintiff's Complaint in Civil Action No. 05-292 (JJF).

4.      "The '002 Patent" means United States Patent No. 5,019,002, entitled "Method of manufacturing flat panel backplanes including electrostatic discharge prevention and displays made thereby," attached as Exhibit B to the Plaintiff's Complaint in Civil Action No. 05-292 (JJF).

5.    "Patents-in-Suit" refers either individually or collectively to United States Patent No. 6,738,121 and United States Patent No. 5,019,002.

6.    "Affiliate(s)" means any corporation or other entity that controls, is controlled by or is under common control with the identified corporation or entity, including without limitation partnerships, parents, subsidiaries and divisions.

7.    "Any" means each and every.

8.    The connectives "and," "or," and "and/or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these interrogatories (or, if applicable, document requests) all information that might otherwise be construed to be outside of their scope.

9.    "Communication" means, without limitation, every manner or means of statement, utterance, notation, disclaimer, transfer or exchange of information between two or more persons of any nature whatsoever, by or to whomever, whether oral or written or whether face-to-face, by telephone, email, mail, personal delivery or otherwise, including but not limited to, e-mails, letters, correspondence, conversations, memoranda, dialogue, discussions, meetings, interviews, consultations, agreements and other understandings.

10.    "Concern" and "concerning" are used in their broadest sense and embrace all matter relating to, referring to, describing, discussing, evidencing or constituting the referenced subject.

11.    "Discuss," "discussing," "relate to," "relating to," "support," or "supporting" means in any way directly or indirectly, in whole or in part, discussing,

referring to, regarding, constituting, concerning, about, pertaining to, relating to, reflecting, considering, underlying, modifying, amending, confirming, mentioning, endorsing, evidencing, summarizing, memorializing, describing, discussing, analyzing, evaluating, representing, supporting, qualifying, terminating, revoking, canceling, or negating.

12.    "Document" means all types of documents and things embraced within Federal Rule of Civil Procedure 34 and includes, without limitation, any writing and each original, or a copy in the absence of the original, and every copy bearing notes or markings not present on the original or copy, of the following items, however produced or reproduced, namely: books, accounting records of any nature whatsoever, agreements, communications, correspondence, facsimiles, telegrams, emails, cable, telexes, memoranda, recordings, studies, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, diaries, letters, forecasts, statistical statements, graphs, laboratory or engineering reports and records, notebooks, charts, plans, sketches, drawings, video tapes, films, slides, information bearing photographic products of any nature whatsoever, photo-records, microfilms, tape recordings, minutes or records of meetings or conferences, expressions or statements of policy, lists of persons attending meetings or conferences, reports or summaries of interviews, reports or summaries of investigations, opinions or reports of consultants, patent studies, or opinions of counsel, records, reports or summaries of negotiations, sales literature of any nature whatsoever, brochures, catalogues, catalogue sheets, pamphlets, periodicals, advertisements, circulars or trade letters, press releases, trade releases, publicity releases, new product releases, reprints, drafts of any documents,

working papers, indices, original or preliminary notes, computer printouts, floppy disks, hard drives, CD-ROMs, magnetic tapes and other data compilations from which information can be obtained or translated, if necessary by the defendant through detection devices into reasonably usable form. The term document also refers to any tangible object other than a document as described above, and includes objects of every kind and nature such as, but not limited to, prototypes, models, and specimens.

13.    "Identify" used in respect to a company or corporate entity means to set forth:

A.    the full name of the company;

B.    the full name of the division or office involved, if applicable; and

C.    the address of the company and of the division or office involved, if applicable.

14.    "Identify" used in respect to a document or thing means:

A.    to provide a brief description of such document or thing, including date, author, recipients, type, and content or substance;

B.    to identify the custodian of the document or thing;

C.    to identify the place where the document or thing may be inspected; and

D.    if a copy of the document has been supplied to Plaintiff, to so state and specifically identify the copy supplied by reference to production numbers or other identifying information.

611672v1

15.  "Identify" used with respect to a natural person means to state:

    A.    the full name;

    B.    the present or last known business and residence addresses;

    C.    the last known employer or job affiliation; and

    D.    the last known occupation and business position or title held.

16.  As to present or former government employees, state the government employer for each position held, the starting and ending date for each position, and the job description and title for each position held. Also, state the person's responsibilities with regard to any contract specified in the interrogatory.

17.  "Import" or "importation" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

18.  "LCD display module" means the module including an LCD display panel, a backlight unit, driver ICs, and any related components.

19.  "LCD display panel" means two substrates with liquid crystal material between the substrates.

20.  "LCD display product" means any device that contains an LCD display module. An LCD computer monitor, LCD television, laptop computer, and any telephone or other portable or handheld product incorporating an LCD display module are examples of LCD display products. This includes all such devices, regardless of brand name, and thus includes, but is not limited to, Tatung brand and ViewSonic brand products.

611672v1

7

21.    "Machine" has the same meaning as in U.S. patent law and applicable case law.

22.    "Make" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

23.    "Manufacture" has the same meaning as in U.S. patent law and applicable case law.

24.    "Offer to sell" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

25.    "Part number" means a name or alpha-numeric identifier by which a part or product, for example an LCD display product, LCD display module, LCD display panel, or components thereof, in general, can be bought, sold, or identified.

26.    "Person" means any natural person, firm, association, partnership, corporation, or other form of legal entity.

27.    "Prior art" has the same meaning as in U.S. patent law, including in 35 U.S.C. §§ 102 and 103, and applicable case law.

28.    "Process" has the same meaning as in U.S. patent law and applicable case law.

29.    "Sell" or "sale" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

30.    "Specification" means anything that discusses, illustrates, defines, prescribes, or present procedures concerning, in whole or in part, any aspect of how

something can or will be made, inspected, or tested. Specifications include, for example, textual documents, drawings, photographs, blueprints, and/or illustrations.

31.    "Type of LCD display product," "Type of LCD display module," and "Type of LCD display panel" means the name or alpha-numeric identifier by which a given LCD display product, module, or panel is identified. This includes, but is not limited to a part number, product code, material code, stock number, bar code number, or any other type of alpha-numeric identifier by which an item is bought, sold, or identified.

32.    The use of the singular form of any word includes the plural and vice versa.

33.    "Used" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

## TOPICS TO BE ADDRESSED AT THE DEPOSITION

1.    Each type of LCD display product made, used, sold, and/or offered for sale, by or for you, each month since May 13, 1999.

2.    The quantity and price (including suggested resale and retail prices) of each type of LCD display product made, used, sold, and/or offered for sale, by or for you, each month since May 13, 1999.

3.    The quantity and price (including suggested resale and retail prices) of each type of LCD display product made, used, sold and/or offered for sale, in the United States, and/or or imported into the United States, by or for you, each month since May 13, 1999.

4.     For each type of LCD display product made, used, sold, and/or offered for sale, by or for you, since May 13, 1999, the identity of the manufacturer(s) of the LCD display module used for each type of LCD display product, and the quantity and price (including suggested resale and retail prices) of the LCD display modules that each manufacturer supplied for that use.

5.     The design, development, making, assembly, production, testing, inspection, and/or qualification of LCD display products, LCD display modules, and/or LCD display panels made, bought, or sold, by or for you since May 13, 1999, including but not limited to optical, mechanical, and electrical testing and inspection.

6.     All documents associated with the conception, design, and development of your LCD display products, LCD display modules, and LCD display panels, including, for example, design or engineering documentation.

7.     All specifications relating to your LCD display products, LCD display modules, LCD display panels, including, but not limited to, all specifications related to tape carrier packages and all specifications related to circuits and/or structures concerning electrostatic discharge protection of thin film transistors of LCD panels.

8.     Your contentions regarding whether or not you are infringing the Patents-in-Suit, whether directly, under the doctrine of equivalents, or otherwise.

9.     Your contentions regarding the validity and/or enforceability of the Patents-in-Suit, including, for example, your contentions regarding "an invalidating act that occurred more than a year prior to the filing date of the asserted patent."

611672v1

10.    All prior art that you contend is relevant to the Patents-in-Suit, including, for example, any prior art that you contend invalidates the Patents-in-Suit, individually or collectively.

11.    The date that you first became aware of the Patents-in-Suit and the circumstances surrounding your first knowledge of the Patents-in-Suit, including, but not limited to, the date of your first actual notice of the Patent-in-Suit, the form of such notice, the source of such notice, identification of the person employed by you who first learned of the Patents-in-Suit and from what source, explaining the manner in which that person learned of the Patents-in-Suit, and identifying all documents that reflect when and how you learned of the Patents-in-Suit, any discussions internal to you regarding the Patents-in-Suit, communications with third parties (including vendors, customers, or others) regarding the Patents-in-Suit, actions you took upon becoming aware of the Patents-in-Suit, including, without limitation, product modification(s), design-around efforts, conducting non-infringement and/or invalidity investigation(s), and/or seeking advice of counsel.

12.    Your efforts to avoid infringing the Patents-in-Suit since the time that you first learned of the Patents-in-Suit, including, but not limited to all attempts, by or for you, to design around the Patents-in-Suit.

13.    The efforts you took to gather and search for information and documents responsive to the Interrogatories and Requests for Production of Documents and Things, propounded to you by Plaintiff, including the locations for responsive information and documents, the persons interviewed regarding the responsiveness of such information

611672v1

11

and documents, and the manner in which you searched for electronic information, documents or records.

14.    The information and documents referenced in your answers to Interrogatories propounded to you by Plaintiff.

15.    The types and categories of documents that you receive, create, generate, or maintain concerning the manufacture, importation, purchase, distribution, sale, offer for sale, receipt, or advertisement of your LCD display products.

16.    Your worldwide sales or shipments of LCD display products to any persons, including the amount of revenue and profit you have derived from your LCD display products and sales or shipments to the United States.

17.    The relationship between or among you and all entities that distribute, supply, market, import, purchase, and/or sell LCD display products manufactured, distributed, or sold, by or for you, the identity of all such entities, any contracts, agreements, or contractual or business arrangements between you and such entities, and the quantity and value of LCD display products involved.

18.    All distributors, suppliers, marketers, importers/exporters, purchasers, sellers, and channels or networks through which you have, directly or indirectly, distributed, supplied, marketed, shipped, imported, exported, transferred, purchased, and/or sold LCD display products, LCD display modules, or LCD display modules, including such distribution, supply, marketing, importing/exporting, purchasing, selling in the United States.

19.    Your organizational structure, including but not limited to all persons involved in the research, design, manufacture, marketing, distribution, importation,

611672v1

12

exportation, purchase, and sale of your LCD display products, and each person's respective role and place in the chain of distribution of any consumer goods or devices containing or relating to such LCD display products.

20.    Your forecasts or projections of sales, revenues from, and profitability of your LCD display products and your actual sales, revenues from, and profitability of your LCD display products, since May 13, 1999.

21.    All efforts you have taken to sell or distribute your LCD display products, and all efforts you have taken to promote, market, and/or advertise your LCD display products and your company, including any parents, subsidiaries, and affiliates.

22.    Meetings, communications, agreements, and contractual and business relationships, that relate to the importation, manufacture, distribution, promotion, marketing, advertising, purchases, or sales of any of your LCD display products.

23.    Communications and/or participation in DisplaySearch and/or the Standard Panels Working Group that relate to the importation, manufacture, distribution, marketing, advertising, purchase, or sale of any of your LCD display products.

24.    All licenses, royalties, and/or technology transfer agreements that pertain to LCD display products, LCD display modules, and/or LCD display panels to which you are a party, assignor, assignee, or beneficiary, as well as any policies, practices, or relevant factors you have used when negotiating potential license agreements.

25.    All contracts and related documents reflecting each order from and sale to United States customers of any types of LCD display products made, sold, or offered for sale, by or for you, since May 13, 1999.

611672v1

13

26.    All reports and data compilations showing actual monthly sales, by or for you, concerning each type of LCD display product made, sold, or offered for sale, by or for you, since May 13, 1999.

27.    For all types of LCD display products made, sold, or offered for sale, by or for you, since May 13, 1999, documents sufficient to determine the quantity of each type of LCD display product that you made, manufactured, shipped, and/or sold each month, and the amount of revenue generated each month for all such shipments and sales since May 13, 1999, including, for example, the per unit gross profit, net profit, and profit margin on each unit sold or transferred.

28.    For all types of LCD display products made, sold, or offered for sale, by or for you, since May 13, 1999, documents sufficient to determine the quantity of each type of LCD display product imported into the United States each month, by or for you, and the amount of revenue generated each month for all such importations since May 13, 1999, including, for example, the per unit gross profit, net profit, and profit margin on each unit sold or transferred.

29.    All documents reflecting the advertising, marketing, promotion of, and/or offer to sell in the United States since May 13, 1999, any types of LCD display products made, sold, or offered for sale, by or for you, since May 13, 1999, including, without limitation, brochures, marketing plans, sales literature, advertisements, and product descriptions and specifications.

30.    Whether each type of LCD display product made, sold, or offered for sale, by or for you, since May 13, 1999, could be lawfully imported and/or sold in the

United States since May 13, 1999, including, for example, documents reflecting any

United States regulatory approval and/or compliance.

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on December 14, 2005, he electronically

filed the foregoing document with the Clerk of the Court using CM/ECF, which will send

automatic notification of the filing to the following:

Robert W. Whetzel, Esq.
Matthew W. King, Esq.
Richards, Layton & Finger
One Rodney Sqare
P.O. Box 551
Wilmington, DE 19899

The undersigned counsel further certifies that copies of the foregoing document

were sent by email and hand to the above counsel and by email and first class mail to the

following non-registered participants:

Christine A. Dudzik, Esq.
Thomas W. Jenkins, Esq.
Howrey LLP
321 North Clark Street
Suite 3400
Chicago, IL  60610

Teresa M. Corbin, Esq.
Glenn W. Rhodes, Esq.
Howrey LLP
525 Market Street
Suite 3600
San Francisco, CA  94105

/s/ Richard D. Kirk (rk0922)
Richard D. Kirk

602380v1

# EXHIBIT 7

# REDACTED

# EXHIBIT 8

# REDACTED