# EXHIBIT E

RICHARDS, LAYTON & FINGER

A PROFESSIONAL ASSOCIATION

ONE RODNEY SQUARE

920 NORTH KING STREET

WILMINGTON, DELAWARE 19801

(302) 651-7700

FAX (302) 651-7701

WWW.RLF.COM

MATTHEW W. KING

DIRECT DIAL NUMBER
302-651-7634
KING@RLF.COM

February 28, 2006

**VIA ELECTRONIC MAIL**

The Honorable Joseph J. Farnan, Jr.
United States District Court
District of Delaware
844 King Street
Wilmington, DE 19801

Re:    L.G. Philips LCD Co. Ltd. v. Tatung Company et. al., C.A. No. 05-292
(JJF)

Dear Judge Farnan:

Defendants respectfully submit this letter setting out the deficiencies in Plaintiff's production of documents in the above-captioned case. The deficiencies are as follows:

**I.    Damages Related Documents**

Defendants propounded twenty-three (23) document requests seeking information relevant to LPL's claims for monetary and injunctive relief. In response to these twenty-three Requests, LPL produced only three kinds of information: (1) selected annual reports, (2) data showing some revenue, cost and profit information for the period ending December 31, 2004 and (5) many boxes containing hard copy reports of data LPL purchased from Display Search. While LPL's production of reems and reems of Display Search data gives the appearance from a purely quantity perspective that LPL timely produced lots of information "concerning damages," in fact LPL produced very little in the way of information relevant to a reasonable royalty analysis under *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *modified and aff'd*, 446 F.2d 295 (2d Cir. 1971), no information relevant to a lost profits analysis, no information relevant to a claim for post-judgment interest and no information relevant to a claim for injunctive relief. As such, LPL's document production in response to these twenty-three Requests seek information relevant to damages is grossly inadequate.

The Honorable Joseph J. Farnan, Jr.
November 14, 2005
Page 2

**Revenues, Costs And Profits**

Request Nos. 36[1], 37[2] and 39[3] seek information related to revenues, costs and/or profits associated with LPL's products that are comparable to the accused products. LPL's document production in response to these Requests is deficient because LPL did not produce revenue, cost or profit information by model number for the period January 1, 2005 through the present. LPL has acknowledged the relevance of this information because it did produce the information sought for the pre-January 2005 time period relevant to this case. *See, e.g.,* LPL II 01420-01556. This information is just as relevant for the January 1, 2005 through the present period as it is for the pre-January 2005 time period.

**Marketshare Data**

Request No. 34 called for "All documents and things describing the markets in which LPL products that are comparable to the accused products are sold, including but not limited to documents describing LPL's market share and the market share of all competitors with respect to each product, the effect on LPL and the TFT LCD device market due to the entry of one or more competitors or competitive products into the market, the demand for such products, factors that affect market demand for such products, competition between LPL and the Defendants with respect to the patents-in-suit and any product alleged to be made thereby, comparisons between LPL products and the accused products, the identity, products, and prices of competitors in such markets, competitive analyses, and analysis regarding the targeted markets and distribution networks of LPL."

In response to this request, LPL produced a large number of reports from Display Search, *e.g.* LPL II 085892-089638, in hard copy form. Defendants request that this data be provided in electronic form.

---

[1] **Request No. 36** called for "All documents and things relating or referring to the costs associated with any LPL products that are comparable to the accused products, including but not limited to production costs, standard costs and/or manufacturing costs by model, variances from standard costs, distribution costs, selling costs, general administrative costs, raw material costs, fixed costs, direct and indirect labor costs, overhead charges, research and development expenses, other related expenses, and LPL's cost accounting procedures for these products."

[2] **Request No. 37** called for "All documents and things sufficient to calculate the profits and gross margins derived from LPL products that are comparable to the accused products licensed, produced, distributed, offered for sale, or sold by LPL since the commencement of such sales; including but not limited to special reports such as break even analyses that relate to cost and/or profitability, rate of investment studies and capital budgets for comparable LPL products."

[3] **Request No. 39** called for "All documents and things relating or referring to LPL's actual and projected net and gross revenues; sales volumes, in dollars and units; and returns, allowances, and discounts, since the period of alleged infringement, with respect to each LPL product that is comparable to any of the accused products, by country of origin and sale."

The Honorable Joseph J. Farnan, Jr.
November 14, 2005
Page 3

       LPL did not produce any information other than hard copy reports from Display Search in response to this Request. The Request was not limited to data from Display Search or other similar third party vendors. The Request also sought internal LPL documents including "comparisons between LPL products and the accused products, the identity, products, and prices of competitors in such markets, competitive analyses, and analysis regarding the targeted markets and distribution networks of LPL." These documents are even more relevant that Display Search data because they show LPL's evaluation of these issues. LPL should be ordered to produce these documents immediately.

The Honorable Joseph J. Farnan, Jr.
November 14, 2005
Page 4

## Licensing and Royalties

Request Nos. 8[4], 43[5], 53-56[6] and 75[7] all call for the production of various documents relating to licensing of TFT LCD technology or products, including but not limited to the patents-in-suit, or technology that are comparable to the accused products, and the licensing fees and/or applicable royalty rates. In response to these Requests, LPL produced some licenses in this case (and had previously produced some licenses in the California case), but did not produced any documents about licensing programs or negotiations, licensing strategy or policies or any policies, practices, or any information concerning the relevant factors that LPL has used when negotiating potential license agreements. These missing documents relating to LPL's licensing activities are relevant both for purposes of damages and also as evidence of the commercial success (or lack thereof) of the claimed invention. *See Georgia-Pacific Corp.*, 318

---

[4] **Request No. 8** called for "All documents referring or relating to the licensing of the patents-in-suit, each foreign counterparts, or related family patent rights, or any products, processes, or methods sold thereunder, including but not limited to documents sufficient to *identify* each past or present licensee; documents; periodic reports or summaries sufficient to reflect all royalties and other payments made by such licensees; forecasts, projections, and estimates of future royalty payments; and all documents referring or relating to any licensing agreements, plans or programs to license or not to license, licensing negotiations, or offers or attempts to license the patents-in-suit."

[5] **Request No. 43** called for "All documents and things referring or relating to any licenses by LPL of TFT LCD technology or products, including but not limited to licenses for LPL products or technology that are comparable to the accused products."

[6] **Request No. 53** called for "All documents relating to any former, current, or proposed LG Philips patent licensing policy or strategy from May 28, 1991 to the present."

**Request No. 54** called for "All documents related to the actual, proposed or potential sale, license, or other assignment of any rights in any LPL intellectual property relating to LCD panels or modules, including the patents-in-suit, whether alone or in conjunction with other patents, and negotiations for such sales, licenses, or assignments, whether or not those negotiations led to a sale, license or other assignment of rights, including the identity of all persons to LPL has sold, licensed, sought to license, or sought to sell the intellectual property, the revenue received by LPL in return for such rights, the royalty rates at which such rights were granted, and other terms of such grant of rights from May 28, 1991 to the present."

**Request No. 55** called for "All documents related to any royalty rates offered or accepted from May 28, 1991 to the present for use of inventions in the same field claimed in the patents-in-suit."

**Request No. 56** called for "All documents related to any licenses, contracts, agreements, covenants not to sue or settlement agreements which concern any technology relating to the subject matter of the patents-in-suit, including actual or proposed licenses, contracts, agreements, covenants not to sue, or settlement agreements."

[7] **Request No. 75** called for "All documents reflecting any policies, practices, or relevant factors that Plaintiff has used when negotiating potential license agreements."

The Honorable Joseph J. Farnan, Jr
November 14, 2005
Page 5

F. Supp at 1120 (factors 1-6 and 15). LPL should be ordered to produce these documents immediately.

## LPL's Theory or Theories of Damages

Request Nos. 29[8], 30[9], 31-32[10], 58[11], 69[12] and 70 all call for the production of documents relating to Plaintiffs' theory of damages. As of this writing, LPL has maintained its refusal to elect a theory of damages (lost profits or reasonable royalty). Standing alone, this refusal to elect a theory of damages has injured Defendants ability to begin preparing that aspect of their case for trial. However, when LPL's refusal to elect a theory of damages is coupled with its refusal to produce documents relevant to any theory until it makes its election, the prejudice to Defendants is substantially compounded

LPL has not produced any documents relevant to a lost profits damages analysis as called for by Request No. 29. Although Defendants believe that LPL cannot pursue a claim

---

[8] **Request No. 29** called for "To the extent that LPL intends to prove a lost profits theory of recovery, produce all supporting documents and things with respect to each claim of the patents-in-suit that LPL contends is infringed by Defendants' product, system, or process, or method of manufacture including but not limited to all documents and things concerning the amount of damages that LPL contends it should be awarded if Defendants are found liable for infringement, the methodology used to reach that conclusion, and the facts on which it is based."

[9] **Request No. 30** called for "To the extent that LPL intends to prove a reasonable royalty theory of recovery, produce all documents and things concerning any reasonable royalties, royalty rates, or reasonable royalty damages to which LPL contends it is entitled and the basis for its computation, including without limitation all documents and things pertaining to any of the fifteen factors given for determining a reasonably royalty in *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F Supp. 1116, 1120 (S D N Y 1970), *modified and aff'd*, 446 F.2d 295 (2d Cir 1971)."

[10] **Request No. 31** called for "All documents and things relating or referring to the details regarding whether the sales or profits of any product upon which LPL bases its claim for damages can be attributed to any invention claimed in the patents-in-suit."
**Request No. 32** called for "All documents relating to any effect of Defendants' alleged infringement of the patents-in-suit on LPL's marketing or sale of, competition regarding, or actual or potential customers for any of the products upon which LPL bases its claim for damages or convoyed sales, including but not limited to documents relating to any sales that LPL contends were lost and any erosion of prices."

[11] **Request No. 58** called for "All documents and things relating or referring to the existence or absence of acceptable non-infringing alternatives to any products upon which LPL bases its claim for damages, and the features of such alternatives "

[12] **Request No. 69** called for "All documents and things supporting or refuting Plaintiff's assertion that Plaintiff has experienced, and continues to suffer, economic and irreparable harm as a result of Defendant's alleged individual and collective infringement of the Patents in suit as asserted in Plaintiff's Initial Disclosures "

The Honorable Joseph J Farnan, Jr
November 14, 2005
Page 6

for lost profits because it did not mark its products, LPL has refused to waive a lost profits claim. As such, all documents relevant to a determination and analysis of a claim for lost profits are relevant and must be produced.

Similarly, LPL also has not produced any documents responsive to Request Nos. 31 and 32. These Requests seek documents supporting any claims by LPL that it lost particular sales as a result of Defendants' alleged infringement of the patents-in-suit and that those sales and/or profits upon which LPL bases its claim for damages can attributed to any invention claimed in the patents-in-suit. This type of information is relevant to both a lost profits calculation and a reasonably royalty analysis. *Georgia-Pacific Corp*, 318 F. Supp. at 1120 (factors 6, 8-13). LPL should be ordered to produce these documents immediately.

In Response to Request No. 58, which sought information concerning the "existence or absence of acceptable non-infringing alternatives to any products upon which LPL bases its claim for damages, and the features of such alternatives," LPL some documents proposing different approaches to solving the problem of brightness difference, but the documents do not make clear which approaches, if any, were actually tested and thus qualify as "acceptable non-infringing alternatives." If LPL has documentation concerning what testing was actually performed and which, if any, tests tends to show "existence or absence of acceptable non-infringing alternatives," then LPL must produce those documents immediately. These documents are relevant to damages because the presence or absence of such alternatives impacts the amount of lost profits or reasonable royalty.

In addition to not withholding documents relevant to a lost profits determination, LPL has also withheld documents relevant to a reasonable royalty determination as called for by Request No. 30. The *Georgia-Pacific* case sets forth fifteen factors that should be used to determine a reasonable royalty. 318 F. Supp. at 1120. Those fifteen factors are: (1) the royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty, (2) the rates paid by the licensee for the use of other patents comparable to the patent in suit, (3) the nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold, (4) the licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly, (5) the commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter, (6) the effect of selling the patented specialty in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales, (7) the duration of the patent and the term of the license, (8) the established profitability of the product made under the patent; its commercial success; and its current popularity, (9) the utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results, (10) the nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention, (11) the extent to which the infringer has made use of the invention; and any evidence probative of the value of that use, (12) the portion of the

The Honorable Joseph J. Farnan, Jr
November 14, 2005
Page 7

profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions, (13) the portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer, (14) the opinion testimony of qualified experts, and (15) the amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee -- who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention -- would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license. **LPL has not produced information relevant to any of the above-listed 15 factors under *Georgia-Pacific*.**

In addition to its claims for monetary damages, LPL also seeks injunctive relief. As such, it should be required to produce documents establishing that it "has experienced, and continues to suffer, economic and irreparable harm as a result of Defendant's alleged individual and collective infringement of the Patents in suit as asserted in Plaintiff's Initial Disclosures" as called for by Request No. 69. LPL has not produced any documents in response to this Request. LPL must either formally abandon its claim for injunctive relief or immediately produce all documents responsive to Request No. 69.

Finally, LPL has not produced documents in response to Request No. 70 which sought "All documents and things supporting or refuting any computation of damages for Defendants' alleged infringement of the Patents in Suit including any determination of a reasonable royalty, lost profits, and/or post-judgment interest." While certain aspects of this Request overlap with some of the above-discussed Requests, this Request also seeks documents relevant to the determination of post judgment interest. No such documents have been produced. As such, LPL must either formally abandon its claim for post judgment interest or immediately produce all documents responsive to Request No. 70.

## Evidence of Commercial Success and LPL's Sales of Comparable Products

The Honorable Joseph J. Farnan, Jr.
November 14, 2005
Page 8

   Request Nos. 35[13], 38[14] and 40-42[15] all call for the production of documents relating to evidence of the commercial success of LPL's claimed invention and/or LPL's sales of comparable products. All of these Requests seek information relevant to both a determination of a reasonable royalty and also to a determination of obviousness, and thus are relevant to the claims and defenses in this case. *See Georgia-Pacific Corp*, 318 F. Supp. at 1120 (factors 6, 8-13) LPL should be ordered to produce these documents immediately. LPL has produced a limited amount of sales information for some of its products for the period ending December 31, 2004 LPL has not produced any sales information for any of its products for the period January 1, 2005 through the present.

   Additionally, LPL has not identified any of its products as "comparable to the accused products," has not produced any documents concerning marking or promotion as called for by Request No. 35

---

  [13] **Request No. 35** called for "All documents and things relating or referring to the *marketing, promotion, or sale of LPL products that are comparable to the accused products*, including but not limited to documents describing strategic plans, marketing plans, budgets and forecasts, customer preferences, customer surveys, executive committee or other committee meeting minutes, internal, external and/or commissioned studies, customer studies, promotional plans and advertisements."

  [14] **Request No. 38** called for "All documents and things relating or referring to the details regarding whether the sales or profits of any LPL products that are comparable to the accused products can be attributed to any invention claimed in the patents-in-suit."

  [15] **Request No. 40** called for "All documents and things relating to LPL's determination of pricing of LPL products that are comparable to any of the accused products, including but not limited to average net selling prices, dealer agreements, direct agreements, rebate policies, price supports, guarantees, and the relationship between pricing of competitive products and pricing of LPL's products "

  **Request No. 41** called for "All documents relating to LPL's expectations with respect to LPL products that are comparable to the accused products, including but not limited to pricing, future sales, market share potential and/or demand estimates, market penetration, costs, capital investment requirements, and profit."

  **Request No. 42** called for "All documents relating to any alleged commercial success of LPL products that are comparable to the accused products, including but not limited to documents relating to the nexus between the alleged commercial success and the subject matter of the patents-in-suit; licensing revenue attributed to licensing of the patents; the total market in which the relevant products compete and the percent of the market (based on units or dollars) which is attributable to such products; commendation or tribute by competitors, customers, or others in the industry to any alleged advance attributed to any of the relevant products; actual savings achieved by use of any of the relevant products and the basis for computing such savings; ratings of the Defendants' allegedly infringing products; and significance of brand name or trademark in this market."

The Honorable Joseph J. Farnan, Jr
November 14, 2005
Page 9

       Further, LPL has not produced any documents responsive to Request Nos. 38 and 40-41  These Requests seek various documents relating to pricing (including discounts, rebates, etc  that might effect actual net pricing), pricing strategy, dealers contracts, profits and whether or not the sales or profits of any LPL products that are comparable to the accused products can be attributed to any invention claimed in the patents-in-suit. All of this information is relevant to damages and to the issues of commercial success and obviousness.

## II.    <u>Technical and Patent Documents</u>

       Defendants' propounded thirty three (33) document requests related to the research and development, conception and reduction to practice, and incorporation of the alleged inventions of the patents in suit into LPL products and first offers for sale, public use or disclosures of the '121 patented invention  In response, only approximately two boxes of Korean language were produced in response to these requested range in dates from late 1998 to December 1999. No relevant technical related documents appear to have been produced that were generated after December 27, 1999. Relevant documents generated up until the filing of this lawsuit should be produced  The deficiencies of each specific request are set out below.

### <u>Documents Related to Defendant's Accused Products</u>

       Requests Nos. 1[16], 2[17], 33[18], 36[19], 44-48[20], 57[21], 66[22] all call for documents related to Defendant's products accused of infringing the '121 patent. These Requests seek information

---

[16] **Request No. 1** called for "All documents and things relating or referring to or discussing the Defendants or Defendant's accused products."

[17] **Request No. 2** called for "All documents and things relating to, referring to, supporting any allegation of, or discussing infringement or claims of infringement of the patents-in-suit, their foreign counterparts, or related family patent rights by any entity or individual "

[18] **Request No. 33** called for "All documents relating to LPL's first awareness of CPT, Tatung Company, or Tatting Co. of America products that LPL contends satisfies the limitations of the patents-in-suit."

[19] **Request No. 36** called for "All documents and things relating or referring to the costs associated with any LPL products that are comparable to the accused products, including but not limited to production costs, standard costs and/or manufacturing costs by model, variances from standard costs, distribution costs, selling costs, general administrative costs, raw material costs, fixed costs, direct and indirect labor costs, overhead charges, research and development expenses, other related expenses, and LPL's cost accounting procedures for these products."

[20] Request No. 44 called for "All documents that tend to support, tend to contradict, or otherwise relate to, the allegations, or any subset of the allegations set forth in paragraph 20 of LPL's Complaint "

Request No. 45 called for "All documents that tend to support, tend to contradict, or otherwise relate to, the allegations, or any subset of the allegations set forth in paragraph 23 of LPL's Complaint "

Request No. 46 called for "All documents that tend to support, tend to contradict, or otherwise relate to, the allegations or any subset of the allegations set forth in paragraph 24 of LPL's Complaint."

Request No. 47 called for "All documents that tend to support, tend to contradict, or otherwise relate to, the allegations, or any subset of the allegations set forth inn paragraph 25 of LPL's Complaint "

(Continued)

The Honorable Joseph J. Farnan, Jr.
November 14, 2005
Page 10

relevant to the basis for LPL's claim of infringement and Defendants' exceptional case allegation under 35 U.S.C. § 285.

   LPL's document production in response to these Requests is deficient because LPL did not produce any documents related to Defendant's accused products or the alleged infringement thereof  With the exception of Request No. 57, LPL's response to the above requests states "Subject to and without waiving these objections, LPL will produce nonprivileged, relevant documents that are responsive to the Request, to the extent such documents exist." It is difficult to believe that there are no nonprivileged documents in LPL's custody response to the above requests especially in light the fact that it is customary to perform competitive analyses with products of other companies.  *See e.g.* LPLII 06173-06184. Moreover, LPL's privilege log fails to identify any privileged documents related to Defendant's accused products or any other documents describing, comparing, testing or commenting on any CPT products LCD products.  These documents are relevant and should be produced.

## Documents Related to the Research and Development Regarding the '121 and '002 Patents

---

Request No. 48 called for "All documents that tend to support, tend to contradict, or otherwise relate to, the allegations, or any subset of the allegations set forth in paragraph 26 of LPL's Complaint."

[21] Request No. 57 called for "All documents related to any presentations to, or discussions by, the LPL Board of Directors related to any of the defendants products accused in the complaint and/or the patents-in-suit."

[22] **Request No. 66** called for "All documents and information regarding identification and/or manufacturing of allegedly infringing products made, imported, sold, and/or offered for sale by Defendants as identified in Plaintiffs Initial Disclosures."

The Honorable Joseph J. Farnan, Jr
November 14, 2005
Page 11

Requests Nos. 12-16[23], 18[24], 65[25], and 78[26] are related to technical documents describing the conception and reduction to practice of the '121 and '002 patents. The '121 patent documents generated after March, 2000 are clearly relevant because they are related to Defendant's affirmative defenses of invalidity and cover research and development, testing, and evaluations generated during the pendency of the '121 patent and up to the filing of the lawsuit. They also have a direct bearing on the validity arguments presented to the Patent Office to obtain allowance of the '121 patent. As such, the law provides that if the information sought is relevant to issues in the lawsuit, the patentee, here LPL, may not set the discovery cut-off date as the filing date of its priority patent as LPL apparently did here. *Celaneses Corp. v. E.I. DuPont de Nemours & Co.*, 58 F.R.D. 606 (D. Del. 1973).

LPL's document production in response to these Requests is deficient because LPL's production consists of limited documents apparently showing the conception and reduction to practice of the invention claimed in the '121 patent. However, it appears that LPL's document production is limited to identifying problems associated with brightness differences, but no documents describing how the problems are corrected by the claimed invention. LPL failed to provide laboratory notebooks describing experiments related to the '121 patent including how the TCP of the claimed invention reduces a brightness difference of the LCD

---

[23] **Request No. 12** called for "All documents relating to the design and development of any invention claimed in the patents-in-suit, its foreign counterparts, or related family patent rights, which were created on or before the date of said patent application or the priority date relied on for said patent application."
**Request No. 13** called for "All engineering notebooks, laboratory notebooks, records, disclosures, logs, and files relating to any of the inventions claimed in the patents-in-suit, its foreign counterparts, or related family patent rights, which were generated or maintained by or at the direction of any of the inventors to each patent, its foreign counterparts, or related family patent rights; or into which any of these inventors made any entries."
**Request No. 14** called for "All documents and things relating to, referring to, supporting, or discussing the conception, first written description (including in executable or compilable code), reduction to practice, and diligence in the reduction to practice of any of the inventions claimed in the asserted claims of the patents-in-suit."
**Request No. 15** called for "All documents and things relating, referring or describing any tests, experiments, reports, data or other evaluations conducted by LPL or others regarding determining the brightness difference generated between an area where the Tape Carrier Package ("TCP") is adhered onto the LCD panel and an area where the TCP is not adhered onto the LCD panel, including but not limited to the tests disclosed in Table 1 of the '121 patent."
**Request No. 16** called for "All documents and things relating, referring, or describing any tests, experiments, reports, data or other evaluations conducted by LPL or others regarding reducing a thermal expansion force and thermal contraction force generated when thermal-pressing the output pad on to the LCD panel."
[24] **Request No. 18** called for "All published or unpublished articles, papers, manuscripts, technical reports, conference papers, or other publications authored, co-authored, written or co-written by LPL and/or any of the inventors to the patents-in-suit, its foreign counterparts, or related family patent rights; relating to or discussing the subject matter described and/or claimed in each patent, its foreign counterparts, or related family patent rights."
[25] **Request No. 65** called for "All technical documents and specifications published by Defendants as identified in Plaintiffs Initial Disclosures."
[26] **Request No. 78** called for "All documents that confirm, support or refute the following assertions made in the '121 patent at Column 6, Lines 8-22..."

The Honorable Joseph J. Farnan, Jr
November 14, 2005
Page 12

screen, or how a dummy bending part located close to the input pad part reduces a thermal expansion force and a thermal contraction force generated when thermal pressing the output pad part on the LCD as described in the '121 patent. Although, LPL provides a single page document, LPLII 06151, that appears to include similar numbers to that in Table 1 in the '121 patent, this page is presented in a vacuum showing only the raw data numbers with no other pages preceding or following providing no context to the experiment.

Also, LPL failed to provide articles, papers, or any publications related to the subject matter claimed in the '121 patent authored by the named inventors or other LPL employees. This is highly suspect because the named inventors were absent on email communications discussing the problems allegedly corrected by the claimed invention. Most of the email communications produced by LPL were either to or from Ki-Ryong Jeong, an LPL employee who is not a named inventor on the '121 patent. *See e.g.* LPLII 07583, 07613-07615, 07674, 07676, and 11631-11632. Mr Jeong is, however, the named inventor on Korean Patent Application No. 2001-0065166 ('166 application), which is assigned to LPL and was produced by Defendants, CPT-D 19110-19120, but was not produced by LPL. This document was clearly called for in Defendant's document requests. In fact, the majority of documents produced by LPL to substantiate the conception and reduction to practice of the '121 patent, provide greater support to the '166 application rather than the '121 patent. *See e.g.* LPL 11602-11615. All such documents are clearly relevant because Defendants have recently alleged that the '121 patent is invalid for failure to properly list the correct inventors on the '121 patent

Moreover, no technical documents whatsoever related to the '121 patented technology were produced after December 27, 1999 *See e.g.* LPLII 12010-12011. Documents describing the enablement and operability of the claimed invention are relevant to the issues raised in Defendant's affirmative defenses of invalidity and should be produced. Likewise, documents generated by Texas Instruments, the company apparently involved in the design and supply of the TCP during this time period, including formal specifications, drawings, and protocols of a TCP as claimed in the '121 patent are relevant to issues such as claim construction and invalidity. No such documents have been produced. Moreover, documents generated after the filing date of the patents-in-suit are clearly relevant to these issues.

Finally, no technical documents related to the conception and reduction to practice of the '002 patent has been produced. Although the patent was originally developed at Honeywell, LPL acquired all rights to this patent. Any related document acquired during this acquisition should be produced. Also, Defendants have learned that LPL has retained Scott Holmberg, the inventor of the '002 patent, as a consultant in this litigation. If Mr. Holmberg has any documents related to the '002 patent in his possession, they should be produced.

## Documents Related to the Prosecution, and Validity of the '121 and '002 Patents

The Honorable Joseph J Farnan, Jr.
November 14, 2005
Page 13

   Requests Nos. 3-7[27] and 9[28] are related to the validity of the '121 patent. All of these Requests seek information relevant to Defendant's affirmative defenses.

   LPL's document production in response to these Requests is deficient because LPL failed to produce any documents related to the validity or enforceability of '121 patent beyond the publicly available prosecution history. LPL's privilege log fails to identify any documents related to the validity or enforceability of the '121 patent. These documents should be produced or identified on LPL privilege log.

## Documents Describing LPL's First Sale or Other Public Disclosure of the Invention Claimed in the '121 Patent

   Requests Nos. 10[29], 11[30], 19[31], 20[32], and 72[33] are related to other issues of the validity of the '121 patent. All of these Requests seek information relevant to Defendant's affirmative defense of an on-sale bar.

---

[27] Request No. 3 called for "All documents and things relating to, referring to, supporting any allegation of, or discussing the validity or invalidity of the patents-in-suit, their foreign counterparts, or related family patent rights, including without limitation all documents and things relating to or constituting prior art for each patent, its foreign counterparts, or related family patent rights, all documents related to knowledge of said prior art by anyone associated with the prosecution of each patent, its foreign counterparts, or related family patent rights, and any consideration by said persons with regards to disclosing said prior art to the U S Patent and Trademark Office or foreign patent offices in connection with the prosecution of each patent, its foreign counterparts, or related family patent rights "
Request No. 4 called for "All documents and things relating to, referring to, supporting any allegation of or discussing the enforceability or unenforceability of the patents-in-suit, their foreign counterparts, or related family patent rights "
Request No. 5 called for "All documents and things relating to, referring to, supporting any allegation of, or discussing the patentability or unpatentability of the patents-in-suit, their foreign counterparts, or related family patent rights "
Request No. 6 called for "All documents and things evidencing or relating in any way to the filing, prosecution or issuance of patents directed to the subject matter or relating to any of the claims in the patents-in-suit including without limitation documents relating to the filing, prosecution or issuance of each patent, its foreign counterparts and any related family patent rights, and instructions to U S and foreign patent counsel and patent agents."
Request No. 7 called for "All documents referring or relating to the ownership of the patents-in-suit, each foreign counterparts, or related family patent rights, including but not limited to assignment documents and all documents referring or relating to the acquisition of the patents-in-suit, each foreign counterpart, or related family patent rights."
[28] Request No. 9 called for "All documents and things relating to LPL's contentions as to the scope and content of the prior art, the level of skill in the art, and the differences between the art and the claims of the patents-in-suit "
[29] Request No. 10 called for "All documents relating to the first use, first public use, first offer to sell, first sale, first offer to license, first license, first printed publication containing a description, first written description, first advertisement, and other manner of first disclosure to a third party of any article or process embodying any of the alleged inventions claimed by the patents-in-suit, its foreign counterparts, or related family patent rights "
[30] Request No. 11 called for "All documents relating to each discussion with, disclosure to, or other manner of providing to a third party, or sale of or offer to sell, any invention claimed (Continued)

The Honorable Joseph J. Farnan, Jr
November 14, 2005
Page 14

There are apparently no documents produced after December 27, 1999 related to any technical issues of the TCP of the invention claimed in the '121 patent. There are also no documents produced which demonstrate LPL's use of the TCP as claimed in the manufacturing of its LCD panels, or of LPL's first public use, offer for sale, or sale of a LCD product incorporating the claimed TCP. Defendants have contended in their affirmative defenses that the TCP invention as claimed was offered for sale or sold prior to the critical date. Thus, all documentation evidencing LPL's first use, sale, printed publication, or other first public disclosure of a TCP as claimed is clearly relevant to the issues in this case and must be produced.

## Documents Related to the Declaration of William K. Bohannon

Requests No. 60-63[34] are related to the declaration of William K. Bohannon. Mr. Bohannon provided a declaration in LPL's Motion for a Preliminary Injunction in this case as

---

in the patents-in-suit, its foreign counterparts, or related family patent rights prior to the date of said patent application; including but not limited to contracts, purchase orders, invoices, advertisements, marketing materials, offer letters, beta site testing agreements, and third party or joint development agreements."

[31] **Request No. 19** called for "All documents (including but not limited to contracts, purchase orders, invoices, advertisements, marketing materials, offer letters, beta site testing agreements, and third party or joint development agreements) relating to any discussion with, disclosure to, or other manner of providing to a third party, or sale or offer for sale prior to July 12, 1988 of any product embodying the '002 patent-in-suit, whether or not an actual product existed at the time of such offer for sale."

[32] **Request No. 20** called for "All documents (including but not limited to contracts, purchase orders, invoices, advertisements, marketing materials, offer letters, beta site testing agreements, and third party or joint development agreements) relating to any discussion with, disclosure to, or other manner of providing a third party, or sale or offer for sale prior to March 23, 2001 of any product embodying the '121 patent-in-suit, whether or not an actual product existed at the time of such offer for sale."

[33] **Request No. 72** calls for "Documents sufficient to determine the time period that Plaintiff's LCD display products incorporating the technology disclosed in the patents-in-suit were made and sold, including the earliest dates of manufacture and sale for each type of display product incorporating the technology disclosed in the patents-in-suit."

[34] **Request No. 60** called for "All communications between William K. Bohannon and Plaintiff, including any attorney acting on behalf of Plaintiff, that relates to the subject matter of William K. Bohannon's declaration filed in support of Plaintiff's Motion for Preliminary Injunction."

**Request No. 61** called for "All drafts of the declarations of William K. Bohannon, which was filed in support of Plaintiff's Motion for Preliminary Injunction."

**Request No. 62** called for "All documents reviewed and/or relied on by William K. Bohannon for any purpose related to his declaration that was filed in support of Plaintiffs Motion for Preliminary Injunction."

**Request No. 63** called for "All documents that confirm, refute, or relate to any opinion expressed by William K. Bohannon in his declaration filed in support of Plaintiffs Motion for Preliminary Injunction."

The Honorable Joseph J. Farnan, Jr.
November 14, 2005
Page 15

support for LPL's belief that CPT infringed the '121 patent. All of these Requests seek information relevant to the basis for LPL's claim of infringement.

        LPL's document production in response to these Requests is deficient because LPL did not produce any documents related the declaration of William K. Bohannon. Moreover, LPL's privilege log does not identify any privileged documents regarding Mr. Bohannon or his opinions on the '121 patent. LPL also relied on this declaration in its response to Defendants' Interrogatories as evidencing its belief that Defendants' products infringe the '121 patent. These documents are clearly relevant and should be produced.

        Respectfully submitted,

        Matthew W. King

MWK:ps
cc:   Christine A. Dudzik, Esq. (via telecopy)
      Richard D. Kirk, Esq. (via hand delivery)
      Gaspare J. Bono, Esq. (via telecopy)

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 28, 2006, I electronically filed the foregoing

document with the Clerk of Court using CM/ECF which will send notification of such filing, and

hand delivered to the following:

> Richard D. Kirk
> The Bayard Firm
> 222 Delaware Avenue, Suite 900
> P.O. Box 25130
> Wilmington, DE 19899

I hereby certify that on February 28, 2006, I sent the foregoing document by Federal

Express, next business day delivery, to the following non-registered participants:

> Gaspare J. Bono
> Matthew T. Bailey
> Andrew J. Park
> Adrian Mollo
> McKenna Long & Aldridge LLP
> 1900 K Street, NW
> Washington, DC 20006

> Matthew W. King (#4566)
> king@rlf.com
> Richards, Layton & Finger
> One Rodney Square
> P.O. Box 551
> Wilmington, DE 19899

# EXHIBIT F

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LG. PHILIPS LCD CO. LTD.,                    :
                                             :
            Plaintiff,                       :
                                             :
      v.                                     :Civil Action No. 05-292-JJF
                                             :
TATUNG COMPANY, TATUNG COMPANY OF            :
AMERICA, INC., CHUNGHWA PICTURE              :
TUBES LTD., and VIEWSONIC                    :
CORPORATION,                                 :
                                             :
            Defendants.                      :

## ORDER

WHEREAS, the Court conducted a discovery hearing on March 1, 2006;

NOW THEREFORE, IT IS HEREBY ORDERED that:

1.    All discovery on damages is temporarily stayed.

2.    Defendants' requests for production relating to validity,
      questions on commercial success, on-sale issues,
      prosecution, and public use (D.I. 129) are **GRANTED**. This
      Order is issued pursuant to Rule 37. Plaintiff shall
      produce all materials by **March 17, 2006**. If there is a
      dispute over compliance with this Order, the Court will
      conduct an evidentiary hearing on **March 29, 2006 at 4:00pm**
      **in Courtroom 4B**.

3.    Plaintiff's request for motherglass samples is **GRANTED** as
      requested on page four of D.I. 128. This Order is issued
      pursuant to Rule 37, and Defendants shall produce all
      materials by **March 17, 2006**. If there is a dispute over

compliance with this Order the Court will conduct an evidentiary hearing on **March 30, 2006 at 9:30am in Courtroom 4B.**

4. Plaintiff's request for production captioned "Critical Discovery Related to Products and Technical Issues" in its February 28, 2006 letter (D.I. 128) is **GRANTED**. Defendants shall respond by **March 17, 2006**; however, Defendants may, **before March 17, 2006**, set forth detailed objections to each bullet item in Plaintiff's letter pertaining to these issues (D.I. 128).

5. All dates in the Rule 16 Scheduling Order, which are linked to the February 3, 2006 deadline for exchange and completion of contention interrogatories and identification of fact witnesses and document production will be extended **thirty (30) days** from the date of the Court's decision on the disputes addressed in this Order.

March  2 , 2006

_____
UNITED STATES DISTRICT JUDGE

# EXHIBIT G

# REDACTED

# EXHIBIT H

**Honeywell**

**Kurt A. Luther**

Assistant General Counsel
Intellectual Property
Aerospace Law Department

Honeywell
21111 N. 19th Avenue
MS 2i29c3
Phoenix. Arizona 85027

602-436-0464
602-436-3185 Fax
kurt.luther@honeywell.com

*Via First Class Mail*

February 6, 2006

Salmaan Quader, Esq.
Howrey LLP
321 N. Clark Street
Suite 3400
Chicago, IL 60610

Re:   **Honeywell International's Privilege Log**

Dear Mr. Quader:

In response to your subpoena for the production of documents in the matter of *LG Philips LCD Co., Ltd v. Tatung Co., et al.*, I am enclosing Honeywell's log of documents withheld from production under a claim of privilege

Sincerely,

Kurt A. Luther

cc:  David Brafman, Esq.
Enclosures

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

------------------------------------------------

LG Philips LCD Co., Ltd.                    Case No. 05-292 (JJF)

     v.

Tatung Co., et al.

------------------------------------------------

### THIRD PARTY HONEYWELL INTERNATIONAL'S
### <u>LOG OF DOCUMENTS WITHHELD UNDER CLAIM OF PRIVILEGE</u>

THIRD PARTY HONEYWELL INTERNATIONAL'S
LOG OF DOCUMENTS WITHHELD UNDER CLAIM OF PRIVILEGE

| Doc No. | Date | Document Type | Description | Privilege Type | Author | Recipients | cc Recipients |
|---|---|---|---|---|---|---|---|
| 1 | 5/5/1988 | Handwritten attorney notes | Handwritten attorney notes relating to preparation of patent application. | AC | John Winburn, Esq. | | |
| 2 | 05/06/88 | Handwritten attorney notes | Handwritten attorney notes relating to preparation of patent application. | AC | John Winburn, Esq. | | |
| 3 | 05/09/88 | Letter | Letter summarizing meeting between patent counsel and inventor on May 5 and May 6, 1988 and reflecting attorney's advice. | AC | John Winburn, Esq. | Richard A Flasck | |
| 4 | 05/11/88 | Handwritten attorney notes | Handwritten attorney notes relating to preparation of patent application. | AC | John Winburn, Esq. | | |
| 5 | 06/22/88 | Handwritten attorney notes | Handwritten attorney notes relating to preparation of patent application. | AC | John Winburn, Esq. | | |
| 6 | 06/28/88 | Handwritten attorney notes | Handwritten attorney notes relating to preparation of patent application. | AC | John Winburn, Esq. | | |
| 7 | 07/07/88 | Letter | Letter from J. Winburn, Esq. to R. Flask reflecting legal advice regarding preparation of patent application. | AC | John Winburn, Esq. | Richard A Flasck | |
| 8 | 07/11/88 | Letter | Letter from J. Winburn, Esq. to S. Holmberg reflecting legal advice regarding preparation of patent application. | AC | John Winburn, Esq. | Scott Holmberg | |
| 9 | 07/14/88 | Letter | Letter from J. Winburn, Esq. to R. Flask reflecting legal advice regarding preparation of patent application. | AC | John Winburn, Esq. | Richard A Flasck | |
| 10 | 07/20/88 | Letter | Letter from J. Winburn, Esq. to R. Flask reflecting legal advice regarding preparation of patent application. | AC | John Winburn, Esq. | Richard A Flasck | |
| 11 | 08/15/88 | Letter | Letter from J. Winburn, Esq. to R. Flask reflecting legal advice regarding preparation of patent application. | AC | John Winburn, Esq. | Richard A Flasck | |

THIRD PARTY HONEYWELL INTERNATIONAL'S
LOG OF DOCUMENTS WITHHELD UNDER CLAIM OF PRIVILEGE

| Doc No. | Date | Document Type | Description | Privilege Type | Author | Recipients | cc Recipients |
|---|---|---|---|---|---|---|---|
| 12 | 09/22/88 | Letter | Letter from J. Winburn, Esq. to R. Flask reflecting legal advice regarding status of patent applications. | AC | John Winburn, Esq. | Richard A Flask | |
| 13 | 10/06/88 | Letter | Letter from J. Winburn, Esq. to R. Flask regarding filing of patent application. | AC | John Winburn, Esq. | Richard A Flask | |
| 14 | 02/01/89 | Letter | Letter from J. Winburn, Esq. to R. Flask reflecting legal advice regarding foreign filing of patent application. | AC | John Winburn, Esq. | Richard A Flask | |
| 15 | 04/05/89 | Letter | Letter from J. Winburn, Esq. to R. Flask reflecting legal analysis of first Office Action in prosecution of the patent application. | AC | John Winburn, Esq. | Richard A Flasck; Lance Wallin; Philip S. Warden | |
| 16 | 05/08/89 | Letter | Letter from J. Winburn, Esq. to S. Holmberg regarding recordation of assignment. | AC | John Winburn, Esq. | Scott Holmberg | |
| 17 | 10/13/89 | Letter | Letter from J. Winburn, Esq. to R. Jensen reflecting legal advice regarding revival of patent application. | AC | John Winburn, Esq. | Roger Jensen, Esq. | |
| 18 | 06/25/90 | Letter | Letter from J. Winburn, Esq. to R. Jensen reflecting legal advice regarding revival of patent application. | AC | John Winburn, Esq. | Roger Jensen, Esq. | |
| 19 | 09/05/90 | Letter | Letter from J. Winburn, Esq. to R. Jensen reflecting legal advice regarding revival of patent application. | AC | John Winburn, Esq. | Roger Jensen, Esq. | |
| 20 | 12/21/90 | Letter | Letter from J. Winburn, Esq. to R. Jensen reflecting legal advice regarding allowance of patent application. | AC | John Winburn, Esq. | Roger Jensen, Esq. | |
| 21 | 12/27/90 | Letter | Letter from R. Jensen to J. Winburn, Esq. reflecting legal advice regarding payment of issue fee. | AC | Roger Jensen | John Winburn, Esq. | |
| 22 | 02/25/91 | Letter | Letter from J. Winburn, Esq. to R. Jensen regarding submission of formal drawings and payment of issue fee. | AC | John Winburn, Esq. | Roger Jensen, Esq. | |
| 23 | 05/14/91 | Letter | Letter from J. Winburn, Esq. to R. Jensen reflecting legal advice regarding Issue Notification. | AC | John Winburn, Esq. | Roger Jensen, Esq. | |

2

THIRD PARTY HONEYWELL INTERNATIONAL'S
LOG OF DOCUMENTS WITHHELD UNDER CLAIM OF PRIVILEGE

| Doc No. | Date | Document Type | Description | Privilege Type | Author | Recipients | cc Recipients |
|---|---|---|---|---|---|---|---|
| 24 | 06/07/91 | Letter | Letter from J. Winburn, Esq. to R. Jensen reflecting legal advice regarding issuance of Letters Patent. | AC | John Winburn, Esq. | Roger Jensen, Esq. | |
| 25 | 06/21/91 | Letter | Letter from R. Jensen to J. Winburn, Esq. reflecting legal advice regarding receipt of Letters Patent. | AC | Roger Jensen | John Winburn, Esq. | |
| 26 | 10/24/91 | Letter | Letter from J. Winburn, Esq. to R. Jensen regarding filing of Certificate of Correction. | AC | John Winburn, Esq. | Roger Jensen, Esq. | |
| 27 | 03/05/93 | Letter | Letter from J. Winburn, Esq. to R. Jensen forwarding Certificate of Correction. | AC | John Winburn, Esq. | Roger Jensen, Esq. | |
| 28 | ? | Drawings | Hand drawn sketches of patent application figures reflecting legal analysis. | AC | John Winburn, Esq. | | |
| 29 | 05/12/88 | Draft Patent Application | Draft application with handwritten attorney notes reflecting legal analysis. | AC | John Winburn, Esq. | | |
| 30 | 07/07/88 | Draft Patent Application | Draft application with handwritten attorney notes reflecting legal analysis. | AC | John Winburn, Esq. | | |
| 31 | ? | Draft Claim Set | Draft set of claims reflecting legal analysis. | AC | John Winburn, Esq. | | |
| 32 | ? | Drawings | Hand drawn sketches of patent application figures reflecting legal analysis. | AC | John Winburn, Esq. | | |
| 33 | ? | Draft Terminal Disclaimer | Draft of Terminal Disclaimer document with handwritten notes reflecting legal analysis. | AC | John Winburn, Esq. | | |
| 34 | ? | Manual of Patent Examining Procedure | Pages from the Manual of Patent Examining Procedure including Handwritten attorney notes reflecting legal analysis. | AC | John Winburn, Esq. | | |
| 35 | 01/14/91 | Memo | Request to prepare formal drawings for patent application, prepared at the request of J. Winburn, Esq. | AC | Julie ? | Merlin ? | |
| 36 | ? | Patent | Copy of U.S. Patent No. 5,019,002 with Handwritten attorney notes. | AC | John Winburn, Esq. | | |
| 37 | ? | Drawings | Hand drawn sketches of patent application figures reflecting attorney advice | AC | John Winburn, Esq. | | |

3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LG. PHILIPS LCD CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | C. A. No. 05-292 (JJF) |
| | ) | |
| v. | ) | **DEMAND FOR JURY TRIAL** |
| | ) | |
| TATUNG COMPANY; | ) | |
| TATUNG COMPANY OF AMERICA, INC.; | ) | |
| CHUNGHWA PICTURE TUBES, LTD.; | ) | |
| AND VIEWSONIC CORPORATION, | ) | |
| | | |
| Defendants. | | |

## NOTICE OF SUBPOENA

TO:    Richard D. Kirk                     Gaspare J. Bono
       The Bayard Firm                      Matthew T. Bailey
       222 Delaware Avenue, Suite 900       Andrew J. Park
       P.O. Box 25130                       Adrian Mollo
       Wilmington, DE 19899                 McKenna Long & Aldridge LLP
                                            1900 K Street, NW
                                            Washington, DC 2000

PLEASE TAKE NOTICE that on January 24, 2006, the attached subpoena was served on

Honeywell International Inc., 101 Columbia Road, Morristown, NJ 07962.


                                            Robert W. Whetzel (#2288)
Of Counsel:                                 whetzel@rlf.com
                                            Matthew W. King (#4566)
Christine A. Dudzik                         king@rlf.com
Thomas W. Jenkins                           Richards, Layton & Finger
Howrey LLP                                  One Rodney Square, P.O. Box 551
321 North Clark Street, Suite 3400          Wilmington, DE 19899
Chicago, Illinois 60610                     (302) 651-7700
(312) 595-1239                              Attorneys for Defendants/Counterclaimants
                                            Tatung Company, Tatung Company of
                                            America, Chunghwa Picture Tubes, Ltd, and
Dated: January 25, 2006                     Viewsonic Corporation

RLF1-2973709-1

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
## UNITED STATES DISTRICT COURT

DISTRICT OF ___ New Jersey

LG. Philips LCD Co., Ltd.

V.

Tatung Company, Tatung Company of America, Inc.
Chunghwa Picture Tubes, Ltd., and ViewSonic
Corporation

### SUBPOENA IN A CIVIL CASE

CASE NUMBER:¹ 05-292 (JJF)
District of Delaware

TO: Honeywell International Inc.
   101 Columbia Road
   Morristown, NJ 07962

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): See Exhibit A

| PLACE Honeywell Internatinoal Inc. 101 Columbia Road Morristown, NJ 07962 | DATE AND TIME February 3, 2006 |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Salmaan Quader, Attorney for Defendants | 1/20/2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Howrey LLP
321 N. Clark Street, Suite 3400, Chicago, IL 60610

[See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse]

¹ If action is pending in district other than district of issuance, state district under case number.

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | : |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in

person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## EXHIBIT A

TO THE SUBPOENA FOR PRODUCTION, INSPECTION AND COPYING OF
BOOKS, DOCUMENTS, ELECTRONIC DATA, AND OTHER TANGIBLE THINGS
IN THE POSSESSION, CUSTODY OR CONTROL OF HONEYWELL
INTERNATIONAL INC

DOCUMENTS AND OTHER TANGIBLE THINGS TO BE PRODUCED FOR
INSPECTION AND COPYING

**DEFINITIONS and INSTRUCTIONS:**

1.      "Documents" includes, but is not limited to, the following materials: any
and all papers, documents, correspondence, letters, manuals, computer disks, data,
photographs, videos, surveys, drawings, films, schematics, computer generated
information, handwritten or typewritten notes, charts, graphs, publications, diagrams,
journals, calendars, diaries, logs, log books, messages, reports, or any other papers or
writings or communications or summaries thereof.

**DOCUMENTS**

1.      All documents related to the prosecution of U S Patent No. 5,019,002.

2.      All documents related to research and development leading up to the
conception and reduction to practice of the subject matter disclosed and
claimed in U.S. Patent No. 5,019,002.

3.      All documents related to the acquisition of patent rights to U.S. Patent No.
5,019,002 by Honeywell, Inc. from Alphasil, Inc.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 25, 2006, I electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send notification of such filing, and hand delivered to the following:

> Richard D. Kirk
> The Bayard Firm
> 222 Delaware Avenue, Suite 900
> P.O. Box 25130
> Wilmington, DE 19899

I hereby certify that on January 25, 2006, I sent the foregoing document by Federal Express, next business day delivery, to the following non-registered participants:

> Gaspare J. Bono
> Matthew T. Bailey
> Andrew J. Park
> Adrian Mollo
> McKenna Long & Aldridge LLP
> 1900 K Street, NW
> Washington, DC 20006

Matthew W. King (#4566)
king@rlf.com
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899