# Exhibit 1

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE


LG.PHILIPS CO., LTD.,        )
        Plaintiff,           )
vs.                          )
TATUNG COMPANY; TATUNG       ) No. CV-05-292 (JJF)
COMPANY OF AMERICA, INC.;    )
CHUNGHWA PICTURE TUBES,      )
LTD.; and VIEWSONIC          )
CORPORATION,                 )
        Defendants.          )

- - - - -

CONFIDENTIAL - ATTORNEYS EYES ONLY

RULE 30(b)(6) DEPOSITION OF VIEWSONIC CORPORATION

VIDEOTAPED DEPOSITION OF JONG HWAN KIM

WASHINGTON, D.C.

JUNE 6, 2006

The videotaped deposition of JONG HWAN KIM was convened on Tuesday, June 6, 2006, commencing at 9:13 a.m., at the offices of Howrey LLP, 1299 Pennsylvania Avenue, N.W. Washington, D.C.,

Page 2

1  before Paula G. Satkin, Registered Professional

2  Reporter and Notary Public.

3

4              -     -     -     -     -

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20  ------------------------------------------------

                    DIGITAL EVIDENCE GROUP
21            1111 16th Street, NW Suite 410
                   Washington, DC  20036
22                    (202) 232-0646

6-6-2006     L.G. Phillips LCD v. Tatung Co. of America et al Jong Hwam Kim
Confidential-Attorneys Eyes Only

Page 3

1      A P P E A R A N C E S

2

3    ON BEHALF OF THE PLAINTIFF LG.PHILIPS LCD CO.,

4    LTD.:

5      GASPARE J. BONO, ATTORNEY AT LAW

6      SONG K. JONG, ATTORNEY AT LAW

7      McKENNA LONG & ALDRIDGE

8      1900 K Street, N.W.

9      Washington, D.C. 20006

10     (202) 496-7211

11

12   ON BEHALF OF THE DEFENDANT VIEWSONIC

13   CORPORATION:

14     SUZANNE B. DRENNON, ATTORNEY AT LAW

15     HOWREY LLP

16     550 South Hope Street

17     Suite 1100

18     Los Angeles, CA 90071

19     (213) 892-1901

20

21

22

1    ALSO PRESENT:
2      Joey Thrower, Videographer
3      Yongwoo Cho, LG.Philips
4      Nisha Mody, Howrey
5      Jin Hee Kim, Interpreter
6      Ann Park, Interpreter
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

6-6-2006      L.G. Phillips LCD v. Tatung Co. of America et al Jong Hwam Kim
Confidential-Attorneys Eyes Only

Page 5

1                    C O N T E N T S

2

3   JONG HWAN KIM                         EXAMINATION

4

5   BY MS. DRENNON................... 9
6   BY MR. BONO......................192

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

Page 6

1                            E X H I B I T S

2    KIM EXHIBIT NO:                              PAGE NO:

3      1......................................... 72

4      2......................................... 88

5      3......................................... 91

6      4......................................... 95

7      5.........................................111

8      6.........................................120

9      7.........................................126

10     8.........................................131

11     9.........................................136

12    10.........................................138

13    11.........................................144

14    12.........................................149

15    13.........................................154

16    14.........................................160

17    15.........................................163

18    16.........................................166

19    17.........................................171

20    18.........................................175

21    19.........................................188

22     ** Exhibits retained by counsel.

Page 7

1   THE VIDEOGRAPHER:  This is tape
2   number one of the videotaped deposition of Jong
3   Hwan Kim taken by defendants in the matter of
4   LG.Philips LCD Company, Limited versus Tatung
5   Company of America, et al. in the United States
6   District Court for the District of Delaware,
7   Case Number CV 05-292 JJF.  This deposition is
8   being held at the law offices of Howrey LLP,
9   1299 Pennsylvania Avenue, Northwest, Washington,
10  D.C. on June 6th, 2006.  The time on the video
11  screen is 9:13 a.m.
12              My name is Joey Thrower.  I'm the
13  legal videographer from Digital Evidence Group.
14              The court reporter is Paula Satkin
15  in association with Digital Evidence Group.
16              Will counsel and others please
17  introduce themselves for the record.
18              MS. DRENNON:  Suzanne Drennon for
19  Howrey LLP for defendants.
20              MS. MODY:  Nisha Mody from Howrey.
21              MR. BONO:  My name is Gaspare J.
22  Bono with McKenna Long & Aldridge for the

Page 8

1  plaintiffs, LG.Philips LTD.  With me is my
2  partner, Song Jung, also of the McKenna law
3  firm.
4              INTERPRETER KIM:  I'm Jin Kim, I'm
5  the main interpreter for this case.
6              INTERPRETER PARK:  Ann Park, check
7  interpreter.
8              THE VIDEOGRAPHER:  Will the court
9  reporter please swear in the interpreters and
10 the witness.
11 Whereupon --
12              JIN HEE KIM and ANN PARK
13 were sworn to interpret English into Korean and
14 Korean into English.
15
16 Whereupon--
17
18              JONG HWAN KIM
19 a witness, called for examination, having been
20 first duly sworn, was examined and testified as
21 follows:
22

1  receiving a Notice of Acknowledgment signed by
2  her in this case and now you're introducing
3  Confidential, Attorneys Eyes Only documents in
4  this matter.  I don't wish to be disruptive, but
5  I do need to ask that the requirements of the
6  Protective Order be maintained, so can you
7  clarify that for me one way or the other?  If
8  she has we can proceed, but if she hasn't I'm
9  going to have to ask her to leave the
10 deposition.
11            MS. MODY:  I have signed a
12 Protective Order for this case, but I am a
13 Howrey employee.
14            MR. BONO:  My question is there is
15 a particular --
16            MS. DRENNON:  She has signed the
17 Protective Order in this case.
18            MR. BONO:  Have you provided us
19 with the signed Notice of Acknowledgment.
20            MS. DRENNON:  I can check at lunch
21 or we can take a break now.
22            MR. BONO:  Why don't you check so

1   we can proceed one way or the other.
2               MS. DRENNON:  Okay.  You know it's
3   a quarter to noon.  Would you like to take lunch
4   now and come back a little early?
5               MR. BONO:  Why don't we do that.
6               THE VIDEOGRAPHER:  We're going off
7   the record.  The time is 11:49.  This marks the
8   end of videotape number two in the continuing
9   deposition of Jong Hwan Kim.
10              (Whereupon, at 11:49 p.m., a lunch
11  recess was taken.)
12
13
14
15
16
17
18
19
20
21
22

1       AFTERNOON SESSION
2              (1:07 p.m.)
3              THE VIDEOGRAPHER:  This marks the
4    beginning of videotape number three in the
5    continuing deposition of Jong Hwan Kim.  We're
6    going back on the record.  The time is 1:07.
7              MS. DRENNON:  Before we took a
8    break Mr. Bono asked if Nisha and myself had
9    signed the acknowledgment required the
10   Protective Order.  We have copies signed today,
11   which we're happy to give to you.
12             MR. BONO:  I appreciate this.  And
13   my question is were these signed over the lunch
14   break?
15             MS. DRENNON:  Those particular
16   copies in your hand, yes, were signed today over
17   the lunch break.
18             MR. BONO:  Okay.  I don't have any
19   concern, Ms. Drennon, about your acknowledgments
20   since you're an attorney with Howrey, but I have
21   a very, very large concern over Ms. Mody, who I
22   understand is not an attorney, she is employed

```
1    with a company called Cap Analysis.
2                MS. DRENNON:  To clarify, Cap
3    Analysis is a subsidiary of Howrey, so Ms. Mody
4    is a Howrey employee.
5                MR. BONO:  I appreciate your
6    argument on that, but I would expect Ms. Mody is
7    an employee of Cap Analysis since Cap Analysis
8    is put out as a separate entity providing
9    economic consulting services, including in the
10   intellectual property area.
11               And as I understand it Cap
12   Analysis performs its services and consulting
13   work for not only Howrey clients at times, but
14   also has -- does such services for independent
15   clients of Cap Analysis, and so they really are
16   acting as an independent economic consulting
17   firm.
18               MS. DRENNON:  I have to interrupt
19   and disagree with your characterization.  Howrey
20   LLP pays for Ms. Mody's paycheck.  She's
21   employed by Howrey and, regardless, she's signed
22   the Protective Order.  If she were otherwise she
```

1   would still be able to be here.
2              MR. BONO:  No, that's not correct,
3   and that's the second point.  Had she been an
4   attorney with Howrey that would be correct, as
5   I'm not making any issue with respect to your
6   acknowledgment, which maybe had fallen through
7   the cracks before, but with respect to Cap
8   Analysis and economic consultants, the
9   Protective Order provides that we were entitled
10  to receive notice of -- to whom Howrey and CPT
11  intended to disclose LPL's confidential
12  information, in order to have certain
13  disclosures made to us, since the highly
14  sensitive confidential information of LPL is
15  being disclosed to this outside entity in order
16  for us to analyze --
17             MS. DRENNON:  I object to your
18  characterization of it as an outside entity.
19             MR. BONO:  Well, you call it Cap
20  Analysis, you do not call it Howrey LLP, but
21  beyond that, we are entitled to have had notice
22  provided to us in a 10-day period in which to

1   view the disclosures made with respect to Cap
2   Analysis, including the disclosures as to the
3   work they have done in the LCD industry, the
4   work they may have done with respect to
5   competitors of LPL, their ongoing relationship
6   with competitors of LPL in the LCD industry.
7   And so we view this as a very serious issue
8   because we don't have any of the proper
9   disclosures.  And until that requirement of the
10  Protective Order is met I'm going to have to
11  ask, under the circumstances, that Ms. Mody
12  leave the deposition so the deposition can
13  continue and you can ask whatever questions you
14  want relating to confidential information.  And
15  I'm also going to ask that it would be apparent
16  to me that certain confidential information has
17  already been disclosed to Cap Analysis, and I
18  would ask that under the circumstances that Cap
19  Analysis be instructed to perform no further
20  work in this matter until it complies with the
21  requirements of the Protective Order and makes
22  the appropriate disclosures and allows us to

1  exercise our rights on whether to object or not,
2  because it is a very, very serious issue with
3  Cap Analysis performing economic analysis and
4  work in the intellectual property area and in
5  the LCD area, when LPL's highly sensitive
6  confidential information is being given to them.
7              MS. DRENNON:  Ms. Mody has
8  performed her job as an employee of Howrey.  We
9  understand your concern.  We will proceed with
10 the rest of the deposition without Ms. Mody.  As
11 for the rest of your issues we well get -- had
12 to address those at a later date.
13             MR. BONO:  I appreciate that, but
14 I would like -- I would like for us to have --
15 in light of this serious issue to have a
16 standstill agreement that no further work be
17 done by Cap Analysis until the appropriate
18 disclosures have been made, because I
19 understand --
20             MS. DRENNON:  I cannot agree to
21 that.
22             MR. BONO:  Well then we'll have to

Page 80

1   take this matter up immediately with the court
2   at the appropriate time.
3                   MS. DRENNON:  At this time I'm not
4   authorized to make --
5                   MR. BONO:  I'm telling you, you
6   proceed at your own risk because you have
7   violated the court's order by not disclosing Cap
8   Analysis to us and now they have in their
9   possession confidential information of LPL, and
10  it is clear that they may very well be doing
11  economic analysis, advise, valuation work for
12  direct competitors of LPL.
13                  MS. DRENNON:  I think your
14  objection is clear on the record and I would
15  like to proceed with the deposition.
16                  MR. BONO:  Thank you.
17                  MS. DRENNON:  Have you and
18  Mr. Sung Jung both signed the Protective Order?
19                  MR. BONO:  Yes.
20                  MS. DRENNON:  Do you have copies
21  available?
22                  MR. BONO:  No.  Not with me, but

Page 195

1   Q.   Did LPL perform any valuation of
2   any group of patents within that package?
3   A.   There is no valuation, whatsoever,
4   that was conducted with respect to Honeywell
5   patents.
6   Q.   And my last question. Did LPL
7   perform any valuation of the '002 patent,
8   itself?
9   A.   No.
10   MR. BONO:   I have no further
11   questions.
12   MS. DRENNON:   I have no further
13   questions.
14   MR. BONO:   Pursuant to the
15   Protective Order that's been entered in this
16   case, plaintiff designates this transcript as
17   confidential, attorneys only, and I would ask
18   the court reporter and the videographer to so
19   designate the transcript and the videotape as
20   confidential, attorneys only, and I would ask
21   the court reporter to place that designation on
22   the cover page of the transcript as well as each

Page 196

1   of the pages of the transcript.

2           THE VIDEOGRAPHER: This marks the
3   end of videotape number six. We're going off
4   the record. The time is 6:25. This is the
5   conclusion of this deposition of Jong Hwan Kim.

6           (Reading and signature not
7   waived.)

8           (Whereupon, at 6:25 p.m., the
9   deposition was concluded.)

10                  -  -  -  -  -