### 4.3.3   LEVEL OF ORDINARY SKILL

Next, you are to determine the level of ordinary skill in the art to which the claimed invention pertains at the time the claimed invention was made.  Factors to be considered in determining the level of ordinary skill in the pertinent art include the educational level of the inventor, the types of problems encountered in the art, the prior art patents and publications, the activities of others and prior art solutions to the problems encountered by the inventor, the sophistication of the technology and the education of others working in the field.  *Graham v. John Deere Co.*, 383 U.S. 1 (1966); *Orthopedic Equipment Co. v. United States*, 702 F.2d 1005 (Fed. Cir. 1983); *Environmental Designs Ltd. v. Union Oil Co.*, 713 F.2d 693 (Fed. Cir. 1983), *cert. denied*, 464 U.S. 1043 (1984).

Source

Uniform Jury Instructions for Patent Cases In The United States District Court For The District Of Delaware (1993).

### 4.3.4   OBJECTIVE CRITERIA CONCERNING OBVIOUSNESS

In making your decision as to the obviousness or unobviousness of the claimed invention, you must consider the following objective evidence which may tend to show unobviousness of the claims at issue:

1.    Commercial success of products covered by the Patent In Suit;

2.    A long felt need in the art which was satisfied by the invention of the Patent In Suit;

3.    The failure of others to make the invention;

4.    Copying of the invention by others in the field;

5.    Unexpected results achieved by the invention;

6.    Praise of the invention by the infringer or others in the field;

7.    Expressions of disbelief by those skilled in the art upon learning of the invention;

8.    The taking of licenses under the patent by others.

However, there must be a connection between the evidence showing any of these factors and the claimed invention if this evidence is to be given weight by you in arriving at your conclusion on the obviousness issue.  For example, if commercial success is due to advertising, promotion, salesmanship or the like, or is due to features of the product other than those claimed in the Patent In Suit, then any commercial success may have no relation to the issue of obviousness.

It is inappropriate to disregard any proper evidence relating to the issue of obviousness. Although some parts of the evidence may weigh more heavily than others, your decision of obviousness or non-obviousness should be held in abeyance, until all of the evidence has been introduced. *Graham v. John Deere Co.*, 383 U.S. 1 (1966); *Stratoflex, Inc. v. Aeroquip Corp.*,

713 F.2d 1530 (Fed. Cir. 1983); *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888

(Fed. Cir.), *cert. denied*, 469 U.S. 857 (1984).

Source

Uniform Jury Instructions For Patent Cases In The United States District Court For The District Of Delaware (1993); *United States v. Adams*, 383 U.S. 39, 52 (1966); *Environmental Designs, Ltd. v. Union Oil Co.*, 713 F.2d 693 (Fed. Cir. 1983), *cert. denied*, 464 U.S. 1043 (1984).

### 4.3.5   MOTIVATION TO COMBINE

Once the prior art is assembled and considered, you should determine whether the prior art, considered as a whole, suggests the claimed invention.  Prior art references maybe combined to show obviousness if there is some motivation or suggestion to combine the references and if the combination would be reasonably likely to achieve the goal of the invention.  The suggestion or motivation to combine and the expectation of success must be found in either: the prior art itself, the knowledge of persons of ordinary skill in the art, or, in some cases, the nature of the problem to be solved.

Source

Draft Uniform Jury Instructions For Patent Cases In The United States District Court For The District Of Delaware (2003) (citing *In re Dembiczak*, 175 F.3d 994, 999 (Fed. Cir. 1999); *C.R. Bard, Inc. v. M3 Sys. Inc.*, 157 F.3d 1340, 1352 (Fed. Cir. 1998); *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1579 (Fed. Cir. 1997); *In re Rouffet*, 149 F.3d 1577, 1557-58 (Fed. Cir. 2000)).

### 4.3.6   OBVIOUSNESS - HINDSIGHT

The question of nonobviousness is simple to ask, but difficult to answer. A person of ordinary skill in the art is presumed to have knowledge of the relevant prior art at the time of the patentee's invention. If you find the available prior art shows each of the elements of the claims in suit, you must determine whether it would then have been obvious to a person of ordinary skill in the art to combine or coordinate these elements in the same manner as the claims in suit.

The difficulty that attaches to all honest attempts to answer this question can be attributed to the strong temptation to rely on hindsight while undertaking this evaluation. It is wrong to use the Patent In Suit as a guide through the maze of prior art references, combining the right references in the right way so as to achieve the result of the claims in suit. Rather, you must cast your mind back to the time of the invention and consider only the thinking of one of ordinary skill in the art, guided only by the prior art and what was known in the field.

<u>Source</u>

Uniform Jury Instructions for Patent Cases In The United States District Court For The District Of Delaware (1993); *Orthopedic Equipment Co. v. United States*, 702 F.2d 1005 (Fed. Cir. 1983); *In re Dembiczak*, 175 F.3d 994, 999 (Fed. Cir. 1999).

### 4.3.7 TEACHING AWAY OF PRIOR ART

If the patentee proceeds contrary to accepted wisdom of prior art, this is strong evidence of non-obviousness. *W.L. Gore & Associates, Inc. v. Garlock, Inc.*, 721 F.2d 1540, 220 U.S.P.Q. 303 (Fed. Cir. 1983), *cert. denied*, 469 U.S. 851 (1984).

<u>Source</u>

Uniform Jury Instructions for Patent Cases In The United States District Court For The District Of Delaware (1993).

### 4.3.8   OBVIOUS TO TRY

The evidence might indicate to you that what the inventors did was obvious to try.  If so, this does not indicate the patent is invalid for obviousness.  "Obvious to try" is not the standard, rather it is whether the invention as a whole would have been obvious to those of ordinary skill in the inventor's field at the time he or she made his invention.  *In re Yates*, 663 F.2d 1054 (CCPA 1981); *Novo Industri A/S v. Travenol Laboratories, Inc.*, 677 F.2d 1202 (7th Cir. 1982).

Source

Uniform Jury Instructions for Patent Cases In The United States District Court For The District Of Delaware (1993).

### 4.3.9    INDEPENDENT INVENTION BY OTHERS

In reaching your determination on the issue of obviousness, you should consider whether the subject matter of the invention was also invented independently by other persons, either before the inventor of the Patent In Suit or at about the same time. Just as the failure of others to make the invention can be evidence of unobviousness, independent making of the invention by persons other than the inventor prior to or about the same time can be evidence that the invention would have been obvious.

The simultaneous or near simultaneous invention by two or more persons working independently may or may not be an indication of obviousness when considered in light of all the circumstances. *In re Farrenkopf*, 713 F.2d 714 (Fed. Cir. 1983); *Orthopedic Equipment Co. v. United States*, 702 F.2d 1005 (Fed. Cir. 1983); *Stewart-Warner Corp. v. City of Pontiac*, Slip Opinion No. 84-1026 (Fed. Cir. July 18, 1985); *Simmonds Precision Products, Inc. v. United States*, 153 U.S.P.Q. 465 (Ct. Cl. 1967); *Lindemann Maschinenfabrik GmbH v. American Hoist & Derrick Co.*, 730 F.2d 1452 (Fed. Cir. 1984).

Source

Uniform Jury Instructions for Patent Cases In The United States District Court For The District Of Delaware (1993).

5.    **VALIDITY DEFENSES -- Defendants' Proposed Instructions**

The Parties could not agree upon the language for instructions regarding validity. LPL's proposed instructions regarding validity are in the preceding Section 4, and Defendants' proposed instructions on validity are following in this Section 5.

### 5.1    INVALIDITY – BURDEN OF PROOF

You must decide the issue of validity or invalidity of the patent claims. In deciding the issue you must give the claim language the scope and meaning I have provided it. The grant of the '002 patent by the patent by the U.S. Patent and Trademark Office carries with it a presumption that the claims are valid. However, this presumption is weakened by showing that the patent examiner was not aware of pertinent prior art. Defendants may prove that the '002 patent is invalid by providing clear and convincing evidence showing invalidity. There can be no liability for infringement of an invalid patent.

Source:

35 U.S.C. § 282; *Lear Siegler, Inc. v. Aeroquip Corp.*, 733 F.2d 881, 885 (Fed. Cir. 1984); *Applied Materials, Inc. v. Advanced Semiconductor America, Inc.*, 98 F.3d 1563, 1569 (Fed. Cir. 1996); *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1360 (Fed. Cir. 1984).

### 5.2    WRITTEN DESCRIPTION REQUIREMENT

Defendants can meet the burden of proving that a patent claim is invalid by showing that the patent does not contain an adequate written description of the claimed invention. In the course of the prosecution of the patent application, the claims may be changed between the time the patent application is first filed and the time the patent is finally granted. An inventor may amend the claims in his or her original application or add new claims. The changes may narrow or broaden the scope of the claims. The purpose of the written description requirement is to make sure that the inventor had the invention as ultimately claimed in the issued patent in mind at the time the application for the patent was first filed.

In deciding whether the patent meets the written description requirement, you must consider the viewpoint of a person of ordinary skill in the field of technology relevant to this case. The written description requirement is satisfied if such a person reading the patent application as originally filed would recognize that it described the invention finally claimed in the issued patent. The written description requirement may be satisfied by the words, structures, figures, diagrams, formulas, etc. in the patent application, as understood by one of ordinary skill in the field. A requirement in a claim need not be specifically disclosed in the patent application as originally filed if persons of ordinary skill would understand that the missing requirement is necessarily implied in the patent application.

Source:

Federal Circuit Bar Association Model Jury Instructions, March 5, 2006

### 5.3    ENABLEMENT

Defendants can meet the burden of proving that a patent claim is invalid by showing that the patent does not contain a sufficiently full and clear description of the claimed invention that would allow persons of ordinary skill in the field of technology relevant to this case to make and use the invention at the time the patent application was filed. This is known as the "enablement" requirement. If a patent claim is not enabled, it is invalid.

The patent is enabling if it would permit persons of ordinary skill in the field of technology relevant to this case to make and use the invention without having to do excessive experimentation. Some amount of experimentation to make and use the invention is allowable. The factors you may consider in deciding whether the amount of experimentation necessary to make or use the invention is excessive include:

    1.    the time and cost of any necessary experimentation;

    2.    how routine any necessary experimentation is in the field of [identify field];

    3.    whether the patent discloses specific working examples of the claimed invention;

    4.    the amount of guidance presented in the patent;

    5.    the nature and predictability of the field;

    6.    the level of ordinary skill in the field of [identify field]; and

    7.    the scope of the claimed invention.

Source:

Federal Circuit Bar Association Model Jury Instructions, March 5, 2006

### 5.4    ANTICIPATION

A patent claim is invalid if the claimed invention is not new. For the claim to be invalid because it is not new, all of the requirements of that claim must be in a single previous device or method, or described in a single previous printed publication or patent. We call these things "prior art." The description in a reference does not have to be in the same words as the claim, but all the requirements must be there, either stated or necessarily implied, so that someone of ordinary skill in the field of technology relevant to this case looking at that one reference would be able to make and use the claimed invention.

Here is a list of the ways that Defendants can show that a patent claim was not new:

–        if the claimed invention was already publicly known or publicly used by others in the United States before the application for the patent in suit

–        if the claimed invention was already patented or described in a printed publication anywhere in the world before the application for the patent in suit

Source:

Federal Circuit Bar Association Model Jury Instructions, March 5, 2006

### 5.5    OBVIOUSNESS

Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable the invention must not have been one that would have been obvious to a person of ordinary skill in the field of technology relevant to the case at the time it was made.  In this case, Defendants contend that the patent is invalid because the invention it describes would have been obvious to one having ordinary skill in the art at the time it was made.

To determine whether the invention would have been obvious at the time it was made to one having ordinary skill in the art, you must answer the following questions:

8.    What is the scope and content of the prior art?;

9.    What are the differences, if any, between the invention(s) and what you find to be the prior art?;

10.    What was the level of ordinary skill in the art at the time the invention(s) was(were) made?; and

11.    What evidence is there, if any, of certain additional considerations relating to the invention(s)?

In addition to these four questions, you also must answer the following question:

12.    Would a person having ordinary skill in the art at the time the invention was made have been motivated to combine this prior art and arrive at the invention  made by the inventor?

After you have answered these questions, you must then decide in view of all the answers whether the invention, considered as a whole, would have been obvious to one having ordinary skill in the art at the time the invention was made. (You must make this determination for each of the patented inventions described.) I will explain more to you in a moment about how each of the questions are to be answered.

Before doing so, however, note that evidence tending to show that the invention would have been obvious to try at the time it was made is not sufficient, by itself, to prove that the invention is invalid for obviousness. Also note that it is not permissible to use hindsight in assessing whether the invention is invalid for obviousness. Rather, you must place yourself in the shoes of a person having ordinary skill in the field of technology relevant to this case at the time the invention was made who is trying to address the issue or solve the problem faced by the inventor and ignore the knowledge you now have of the invention and the patent asserted in this case because neither of them would have been known to you or one having ordinary skill in the field at the time.

Source:

Federal Circuit Bar Association Model Jury Instructions, March 5, 2006

### 5.5.1   SCOPE AND CONTENT OF THE PRIOR ART

As I just instructed you, in arriving at your decision on the issue of whether or not the

claimed invention is obvious to one of ordinary skill in the art, you must first determine the

scope and content of the prior art.  This means that you must determine what prior art is

reasonably pertinent to the particular problem with which the inventor was faced. The prior art

includes the following:

13.    Prior patents anywhere in the world that issued before the date of

invention;

14.    Prior publications having a publication date before July 12, 1987;

15.    U.S. Patents that have a filing date prior to July 12, 1988;

16.    Anything in public use or on sale in the United States before July 12,

1988;

17.    Anything that was publicly known or used by others in this country before

the date of invention of the Patent In Suit; and

18.    Anything that was made or built or any process that was used in this

country by another person before the date of invention of the Patent In Suit, where the thing

made or built or the process used was not abandoned, suppressed or concealed.


Source

Uniform Jury Instructions for Patent Cases In The United States District Court For The District
Of Delaware (1993) (citing 35 U.S.C. §102; *Graham v. John Deere Co.*, 383 U.S. 1 (1966);
*Lindemann Maschinenfabrik GmbH v. American Hoist & Derrick Co.*, 730 F.2d 1452 (Fed. Cir.
1984); *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530 (Fed. Cir. 1983)).

### 5.5.2    DIFFERENCES OVER THE PRIOR ART

The second question you must answer in determining whether the invention was obvious at the time it was is what the differences are, if any, between what you determine the prior art to be and the patented invention. However, you should not focus solely on the differences between the prior art and the invention because the test is not whether there are differences, but whether the invention, as a whole, would have been obvious to one having ordinary skill in view of all the prior art at the time the invention was made.

Source:

Federal Circuit Bar Association Model Jury Instructions, March 5, 2006

### 5.5.3   LEVEL OF ORDINARY SKILL IN THE FIELD

The third question you must answer in determining whether the invention was obvious at the time it was made is what was the level of ordinary skill in the field at the time.  In doing so, you may consider any evidence relating to this issue that is introduced at trial, including in particular any evidence introduced of:

19.    the educational level and experience of the inventor at the time the invention was made;

20.    the education level and experience of other persons working in the field of the invention at the time the invention was made;

21.    the types of problems encountered in the field at the time the invention was made;

22.    the sophistication of the technology in the field at the time the invention was made;

23.    the teachings and disclosures of prior art references such as patents and publications; and

24.    the teachings and disclosures of any references that, while not prior art to the invention, nonetheless contain teachings or disclosures of what the level of ordinary skill in the field may have been at the time the invention was made.

Source:

Federal Circuit Bar Association Model Jury Instructions, March 5, 2006

### 5.5.4   ADDITIONAL CONSIDERATIONS

The fourth question you must answer in determining whether the invention was obvious at the time it was made is what evidence there is, if any, of additional considerations relating to the obviousness or nonobviousness of the invention.  Any evidence you find of the following things constitute additional considerations that you must factor into your analysis of whether the invention would have been obvious at the time it was made:

25.    Making the invention(s) by proceeding in a direction contrary to accepted wisdom in the field;

26.    Long felt but unresolved need in the art that was satisfied by the invention(s);

27.    Failed attempts by others to make the invention(s);

28.    Copying of the invention(s) by others;

29.    Unexpected results achieved by the invention(s);

30.    Praise of the inventions(s) by others;

31.    Taking of licenses by other others to use the invention(s);

32.    Expressions of surprise or disbelief by experts or those skilled in the art at the making of the invention(s);

33.    Commercial success of products incorporating the invention(s); and

34.    Independent making of an invention(s) that is identical to, or very similar to the patented invention(s), by others having ordinary skill in the field at about the same time the inventor(s) made the patented invention(s).

Any evidence you find of items 1 through 8 tends to show that the invention was not obvious at the time it was made.

Any evidence you find of item 9, commercial success, also tends to show that the invention was not obvious at the time it was made if you also find that the success is directly attributable to the unique characteristics of the invention or to the inclusion of the invention in the commercially successful product.  If you do not find that the commercial success of the product is directly attributable to the unique characteristics of the invention or to the inclusion of the invention in the product, then any commercial success of products incorporating the invention has no bearing on whether the invention was obvious.

Any evidence you find of item 10, independent making of the invention by others at about the same time as the inventor, may or may not tend to show that the patented invention was obvious at the time.  Independently developed means developed with no knowledge of the patented invention or the efforts that went into the making of the patented invention.  The weight and relevancy of any independent making of the invention at about the same time as the inventor that you may find depends on all of the circumstances at the time, including the following:

1.    The similarities between the inventor's conception of the patent solution and the independent inventor's conception of the independently developed solution;

2.    The time between the identification of a need for a solution to a problem by the inventor of the patented invention and the conception of the patented solution;

3.    The time between the identification of a need for a solution to a problem by the independent inventor and the conception of the independently developed solution; and

4.    The sequence of and time between the inventor's conception of the patented solution and the independent inventor's conception of the independently developed solution.

Source:

Federal Circuit Bar Association Model Jury Instructions, March 5, 2006

### 5.5.5   MOTIVATION TO SELECT AND COMBINE PRIOR ART

The fifth question you must answer in determining whether the invention was obvious at the time it was made is whether a person having ordinary skill in the field at the time would have been motivated to select and combine the prior art to make the invention made by the inventor. In answering this question you must consider the entire body of knowledge and technical literature in the field, including that which might lead one skilled in the art away from or toward the invention. Thus, even though you may find that every feature of the patented invention can be found in the prior art, this, by itself, does not prove that the patented invention would have been obvious to one having ordinary skill in the field at the time.

Features in the prior art may be combined to show obviousness where one having ordinary skill in the field with no knowledge of the patented invention confronting the same problem or issue as the inventor at the time would have been motivated to select and combine those features from the prior art to make the patented invention and have a reasonable expectation of success at solving the problem or addressing the issue. The motivation to select and combine features and the reasonable expectation of success must be found in the teachings of the prior art references themselves, in the nature of the problem to be solved, or in the knowledge of persons having ordinary skill in the field at the time that certain references are of special interest in the field. Evidence that the problem to be solved or the issue to be addressed had been appreciated in the prior art by others and had not led others to make the patented invention tends to show that there was no motivation to select and combine the features of the patented invention from the prior art.

Source:

Federal Circuit Bar Association Model Jury Instructions, March 5, 2006

6.    **DAMAGES -- LPL's Proposed Instructions**

The Parties could not agree upon the language for instructions regarding damages. Following in this Section 6 are LPL's proposed instructions regarding damages, and Defendants' proposed instructions on damages follow in Section 7.

### 6.1    COMPENSATORY DAMAGES IN GENERAL

The Patent Laws provide that in the case of infringement of a valid patent claim, the owner of the patent shall be awarded damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer. Damages are compensation for all losses suffered as a result of the infringement.

It is not relevant to the question of damages whether CPT, Tatung, Tatung America, or ViewSonic benefited from, realized profits from or even lost money as a result of the acts of infringement. The only issue is the amount necessary to adequately compensate LPL for their infringement. Adequate compensation should return LPL to the position it would have occupied had there been no infringement. You must consider the amount of injury suffered by LPL without regard to CPT, Tatung, Tatung America, or ViewSonic's gains or losses from the infringement.

Source

Uniform Jury Instructions for Patent Cases In The United States District Court For The District Of Delaware (1993).

## 6.2    FORESEEABILITY

The fact that one or more of the Defendants did not foresee that it would cause LPL's

damage at the time it infringed is irrelevant to the computation of damages.

Source

Uniform Jury Instructions for Patent Cases In The United States District Court For The District
Of Delaware (1993).

**6.3    REASONABLE CERTAINTY**

Once the fact of damages has been proven by a finding of infringement, you must determine the extent of damages. As you recall, LPL has the burden of proving damages by what is called a preponderance of the evidence. That means that LPL has to produce evidence that, when considered in the light of all the facts, leads you to believe that what LPL claims is more likely true than not. To put it differently, if you were to put LPL's and Defendants' evidence concerning damages on the opposite sides of a scale, the evidence supporting LPL's claims would have to make the scales tip somewhat on its side.

Under the Patent Law, LPL is entitled to all damages that can be proven with "reasonable certainty." On one hand, reasonable certainty does not require proof of damages with mathematical precision. Mere difficulty in ascertaining damages is not fatal to LPL. On the other hand, LPL is not entitled to speculative damages, that is, you should not award any amount for loss, which, although possible, is wholly remote or left to conjecture and/or guess. You may base your evaluation of "reasonable certainty" on opinion evidence.

Finally, any doubts regarding the computation of the amount of damages should be resolved against CPT, Tatung, Tatung America, and ViewSonic.

Source

Uniform Jury Instructions for Patent Cases In The United States District Court For The District Of Delaware (1993); Draft Uniform Jury Instructions For Patent Cases In The United States District Court For The District Of Delaware (2003).

### 6.4    ENTIRE MARKET VALUE RULE

The "entire market value rule" allows for the recovery of damages based on the value of an entire apparatus containing several features, even though only one feature is patented when: the patentee can normally anticipate the sale of the unpatented components with the patented component; that is, the feature patented constitutes the basis for consumer demand of the unpatented feature.

Source

Uniform Jury Instructions for Patent Cases In The United States District Court For The District Of Delaware (1993).

### 6.5    REASONABLE ROYALTY AS A MEASURE OF DAMAGES

In this case, LPL seeks damages in the amount of a reasonable royalty for CPT's, Tatung's, Tatung America's, and ViewSonic's infringement. A royalty is an amount of money that someone pays a patent owner to be able to use the patented invention.

A reasonable royalty in this case is the amount of money that would be agreed to in a hypothetical arms length negotiation between the owner of a patent and the infringer, with both operating under the assumption that the negotiated patent is valid and is being infringed, i.e., that absent the "reasonable royalty" payment, that the infringer would respect the patent.

A reasonable royalty is the minimum permissible measure of damages set by the Patent Laws and is not necessarily the actual measure of damages, but is merely the floor below which damages should not fall. Accordingly, you may find damages in excess of a reasonable royalty if you find that the facts so warrant.

In determining a reasonable royalty, you should place yourself at the point in time at which you believe the arms length negotiation that I just referred to would have been likely to have occurred. This is typically just before liability for infringement would begin, which in this case would be 1999.

In the hypothetical arms-length negotiation, you must assume that the person negotiating on behalf of the Defendants, and who was willing to take a license, would have known that LPL's patent was valid, was enforceable, and was infringed by the Defendants. You should also assume that both LPL and each Defendant knew all pertinent information at the time of the hypothetical negotiations. Having that in mind, you may consider any relevant fact in determining the reasonable royalty for the Defendants' use of the patented invention, including the opinion testimony of experts.

You may consider a defendants' profitability when assessing a reasonable royalty, but you are not required to limit the reasonable royalty based on profitability. *See Applera Corp. v. MJ Research Inc.*, 389 F. Supp.2d 344, 349 (D. Conn. 2005) (*citing Radio Steel & Mfg. Co. v. MTD Products, Inc.*, 788 F.2d 1554, 1557 (Fed. Cir. 1986) ("[t]he determination of a reasonable royalty, however, is based not on the infringer's profit, but on the royalty to which a willing licensor and a willing licensee would have agreed at the time the infringement began."))

Source

Uniform Jury Instructions for Patent Cases In The United States District Court For The District Of Delaware (1993).

## 6.6 FACTORS FOR DETERMINING REASONABLE ROYALTY

In determining such a reasonable royalty, some of the factors that should be considered are:

1. the royalties received by the patentee for the licensing others under the Patent In Suit;

2. the rates paid by the licensee for the use of other patents comparable to the Patent In Suit;

3. the nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold;

4. the licensor's established policy and marketing program to maintain his patent exclusivity by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that exclusivity;

5. the commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventors or promoters;

6. the effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator or sales of his non-patented items, and the extent of such derivative or convoyed sales;

7. the duration of the patent and the term of the licenses;

8. the established profitability of the product made under the patent, its commercial success, and its current popularity;

9. the utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results;

10.    the nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention;

11.    the extent to which the infringer has made use of the invention, and any evidence probative of the value of that use;

12.    the portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;

13.    the portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer;

14.    the opinion testimony of qualified experts; and

15.    any other economic factor that a normally prudent businessman would, under similar circumstances, take into consideration in negotiating the hypothetical license.

You may consider evidence regarding each of these factors, but neither LPL nor the Defendants are required to submit evidence on all of these factors.


Source

Uniform Jury Instructions for Patent Cases In The United States District Court For The District Of Delaware (1993).

### 6.7    COST SAVINGS AS A BASIS FOR REASONABLE ROYALTY

In determining the amount of reasonable royalties, you should also consider cost savings that the infringer achieves by using the patented process. "Reliance upon estimated cost savings from use of the infringing product is a well settled method of determining a reasonable royalty." *Hanson v. Alpine Valley Ski Area Inc.*, 718 F.2d 1075, 1081 (Fed. Cir. 1983).

Going back to the hypothetical negotiation, the willing licensor and licensee would have set a royalty rate that would include consideration of all economic benefits to the licensee. Cost savings is a very important economic benefit and represents the amount that a licensee would be willing to pay for a license and are objective evidence of a reasonable royalty.

During deliberations, you should consider whether the use of the '002 Patent increased the number of units that Defendants were able to manufacture and subsequently sell in determining the reasonable royalties. You should also compare the cost of using the method described in the '002 Patent versus the traditional method that Defendants would otherwise have used. If you find that a difference exists in the costs associated with each method, you may consider cost savings as one measure of reasonable royalties.

Source

*See Hanson v. Alpine Valley Ski Area Inc.*, 718 F.2d 1075 (Fed. Cir. 1983); *Leesona v. United States*, 599 F.2d 958, 971 (1979), *cert. denied*, 444 U.S. 991 (1979); *A.C. Auckerman Co. v. R.L. Chaides Constr. Co.*, 29 U.S.P.Q.2d 1054, 1059 (N.D. Calif. 1993); *Idacon Inc. v. Central Forest Prod. Inc.*, 3 U.S.P.Q.2d 1079, 1093 (E.D. Okla. 1986); *Smith Int'l, Inc. v. Huges Tool Co.*, 229 U.S.P.Q. 81, 96 (C.D. Calif. 1986), *appeal dismissed as moot*, 839 F.2d 663 (Fed. Cir. 1988); *Tights, Inc. v. Kayser-Roth Corp.*, 442 F. Supp. 159, 163 (M.D. N.C. 1977).

**6.8    INTEREST**

LPL's calculations do not include interest.  Therefore, in arriving at your damages calculation, you should not consider interest in any way because it is the function of the Court to award interest.

**6.9    CLOSING STATEMENT - DAMAGES**

In determining the issue of damages, the Court instructs you that the law does not permit an award of a greater sum than the monetary loss which the patent owner has suffered as a result of the alleged infringement. If, under the Court's instructions, you find LPL is entitled to damages, in fixing the amount of such damages you may not include and/or add to an otherwise just award any sum for purposes of punishing the defendant or to set an example.

Source

Uniform Jury Instructions for Patent Cases In The United States District Court For The District Of Delaware (1993).

### 6.10    CURATIVE INSTRUCTION

The fact that I have instructed you regarding damages should not be construed as intimating any view of the Court as to which party is entitled to prevail in this case. Instructions regarding damages are given for your guidance in the event that the evidence leads you to find in favor of LPL.

Source

Uniform Jury Instructions for Patent Cases In The United States District Court For The District Of Delaware (1993).

7.    **DAMAGES -- Defendants' Proposed Instructions**

The Parties could not agree upon the language for instructions regarding damages. LPL's proposed instructions regarding damages are in the preceding Section 6, and Defendants' proposed instructions on damages are in the following Section 7.

### 7.1    DAMAGES - GENERALLY

If you find that the accused products and methods infringe any of the claims of the patent, and that these claims are not invalid, you must determine the amount of damages to be awarded for infringement. The amount of damages must be adequate to compensate LPL for the infringement. On the other hand, if you find that each of the asserted patent claims is either invalid or is not infringed, then you need not address damages in your deliberations.

You must consider the amount of injury suffered by LPL without regard to defendants' gains or losses from the infringement. You may not add anything to the amount of damages to punish the accused infringer or to set an example.

LPL has the burden of proving each element of its damages by a preponderance of the evidence.

The fact that I am instructing you as to the proper measure of damages should not be construed as intimating any view of the Court as to which party is entitled to prevail in this case. Instructions as to the measure of damages are given for your guidance in the event you find the evidence in favor of LPL.


Source:

AIPLA Model Instructions, Version 1.1, February 2006

### 7.2    DATE DAMAGES BEGIN

The date that LPL first gave notice to defendants of its claim of patent infringement is the date at which patent damages begin to be calculated. That date is in dispute here, and it is up to you to determine what that date is. LPL has the burden to prove by a preponderance of the evidence the date it gave notice.

One way LPL can provide notice of its patent is to communicate to defendants a specific charge that the accused products and methods infringed the patent. This type of notice is effective from the time it is given. If you find that LPL, before filing this lawsuit, did not notify defendants by communicating a specific charge that the accused products and methods infringed, then LPL can only recover damages for infringement that occurred after it sued defendants in May 2005.

When a patented article has been produced by a patentee or its licensee, the amount of damages the patentee can recover in an infringement suit is statutorily limited to those acts of infringement that occurred after the patentee gave the alleged infringer notice of infringement. There are two methods by which a patentee may give notice of infringement: constructive notice, through marking of the article with a patent number, or through actual notice. A party is entitled to damages from the time when it either began marking its products in compliance with the Patent Statute or when it actually notified the infringer of its infringement, whichever is earlier. Actual notice is given when the patentee affirmatively communicates to the alleged infringer a specific charge of infringement by a specified accused product. It is irrelevant whether the defendant knew of the patent or knew of his own infringement. The focus of the inquiry is on the affirmative actions of the patentee, not the knowledge or understanding of the alleged infringer.

Source:

AIPLA Model Instructions, Version 1.1, February 2006; *Amsted Indus. Inc. v. Buckeye Steel Castings Co.,* 24 F.3d 178, 187 (Fed. Cir. 1994); *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1335 (Fed. Cir. 2001); *Philips Electronics North America Corp. v. Contec Corp.*, 312 F.Supp.2d 649, 652 (D. Del. 2004); *SRI Int'l, Inc. v. Advanced Tech. Lb., Inc.*, 127 F.3d 1462, 1469 (Fed. Cir. 1997); 35 U.S.C. § 287(a); *Soverain Software LLC v. Amazon.com, Inc.*, 383 F.Supp.2d 904, 907-08.

### 7.3   REASONABLE ROYALTY

The patent law specifically provides that the amount of damages defendants must pay LPL for infringing the patent, if you find that the patent is valid and that defendants have infringed it, may not be less than a reasonable royalty for the use that defendants made of LPL's invention.

Source:

AIPLA Model Instructions, Version 1.1, February 2006

**7.4    REASONABLE ROYALTY – DEFINITION**

A royalty is a payment made to the owner of a patent by a non-owner in exchange for rights to make, use, or sell the claimed invention.  A reasonable royalty is the royalty that would have resulted from a hypothetical negotiation between the patent owner and a company in the position of defendants taking place just before the infringement began.  You should also assume that both parties to that negotiation understood the patent to be valid and infringed and were willing to enter into a license.

Source:

AIPLA Model Instructions, Version 1.1, February 2006

### 7.5    Reasonable ROYALTY -- RELEVANT FACTORS

In determining the value of a reasonable royalty, you may consider evidence on any of the following factors:

1.    Any royalties received by the licensor for the licensing of the patent-in-suit, proving or tending to prove an established royalty;

2.    The rates paid by defendants to license other patents comparable to the '002 patent;

3.    The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold;

4.    The licensor's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity;

5.    The commercial relationship between the licensor and the licensee, such as whether or not they are competitors in the same territory in the same line of business;

6.    The effect of selling the patented product in promoting sales of other products of the licensee; the existing value of ht invention to the licensor as a generator of sales of its non-patented items; and the extent of such collateral sales;

7.    The duration of the patent and the term of the license;

8.    The established profitability of the product made under the patent; its commercial success; and its current popularity;

9.    The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results;

10.    The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention;

11.    The extent to which defendants have made use of the invention; and any evidence that shows the value of that use;

12.    The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;

13.    The portion of the profit that arises from the patented invention itself as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer;

14.    The opinion testimony of qualified experts;

15.    The amount that a licensor and a licensee would have agreed upon if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee--who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention--would have been willing to pay as a royalty and yet be able to make a reasonable profit and which  amount would have been acceptable by a patentee who was willing to grant a license;

16.    Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

Source:

100

AIPLA Model Instructions, Version 1.1, February 2006

### 7.6    EXCEPTIONAL CASE

One of your duties as jurors is to decide whether this is an "exceptional case." The case is exceptional if you find that the plaintiff engaged in bad faith litigation. In other words, you should find that this is an exceptional case if the plaintiff did not have a good faith basis for suing the Defendants. For example, if you find that the plaintiff sued the Defendants even though plaintiff knew its patent was invalid or not infringed, the case is exceptional. The law allows you to compensate the Defendants for their attorneys' fees in an exceptional case.

Source:

*Evident Corp. v. Church & Dwight Co.,* 399 F.3d 1310, 1316 (Fed. Cir. 2005); *Hughes v. Novi American, Inc.*, 724 F.2d 122, 125 (Fed. Cir. 1984); *Realtek Semiconductor Corp. v. Marvell Semiconductor, Inc.*, 2005 WL 3634617 (N.D. Cal. 2005)

8.    **DELIBERATION AND VERDICT**

8.1    **INTRODUCTION**

That concludes the part of my instructions explaining the rules for considering some of the testimony and evidence. Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take me some time to get back to you. Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is Juror No. 1.

One more thing about messages. Do not ever write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 4- 4, or 6-2, or whatever your vote happens to be. That should stay secret until you are finished.

Source

Uniform Jury Instructions for Patent Cases In The United States District Court For The District Of Delaware (1993).

## 8.2    UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of you deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges -- judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form. You will then return to the courtroom and your foreperson will give your verdict.

It is proper to add the caution that nothing said in these instructions and nothing in the form of verdict is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find. What the verdict shall be is the sole and exclusive duty and responsibility of the jury.

Source

Uniform Jury Instructions for Patent Cases In The United States District Court For The District Of Delaware (1993).

## 8.3    DUTY TO DELIBERATE

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that -- your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

Source

Uniform Jury Instructions for Patent Cases In The United States District Court For The District Of Delaware (1993).

## 8.4    COURT HAS NO OPINION

Let me finish up by repeating something that I said to you earlier.  Nothing that I have

said or done during this trial was meant to influence your decision in any way. You must decide

the case yourselves based on the evidence presented.

Source

Uniform Jury Instructions for Patent Cases In The United States District Court For The District
Of Delaware (1993).

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on July 4, 2006, he electronically filed the

foregoing document with the Clerk of the Court using CM/ECF, which will send

automatic notification of the filing to the following:

Robert W. Whetzel, Esq.
Matthew W. King, Esq.
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899


The undersigned counsel further certifies that copies of the foregoing document

were sent on July 4, 2006 by email and by hand to the above counsel and by email and

first class mail to the following non-registered participants:

Christine A. Dudzik, Esq.                    Teresa M. Corbin, Esq.
Thomas W. Jenkins, Esq.                      Glenn W. Rhodes, Esq.
Howrey LLP                                   Julie Gabler, Esq.
321 North Clark Street                       Howrey LLP
Suite 3400                                   525 Market Street
Chicago, IL 60610                            Suite 3600
                                             San Francisco, CA 94105


                                             /s/ Richard D. Kirk (rk0922)
                                             Richard D. Kirk