IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LG. PHILIPS LCD CO., LTD., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> TATUNG COMPANY; ) <br> TATUNG COMPANY OF AMERICA, INC.; ) <br> CHUNGHWA PICTURE TUBES, LTD.; ) <br> AND VIEWSONIC CORPORATION, ) <br> ) <br> Defendants. ) | C.A. No. 05-292 (JJF) <br><br> REDACTED - PUBLIC VERSION |

**REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION *IN LIMINE* (No. 6) TO PRECLUDE LPL FROM USING ANY
DOCUMENTS IN ITS FAVOR AT TRIAL THAT IT PRODUCED AFTER THE
FEBRUARY 21 DOCUMENT PRODUCTION CUT-OFF**

**I.   INTRODUCTION**

As required by the Court's ruling during the February 8, 2006 hearing, LPL should be precluded from using documents produced after the February 21, 2006 discovery cut-off. Contrary to LPL's contentions, the Defendants' motion *in limine* is narrowly tailored. Defendants are seeking to exclude two specific sets of documents, both of which were improperly produced after the Court-ordered date, namely: (A) HON-D 158-166, produced on June 13, 2006 (Exh. C) and (B) LPL II 103171-103192, produced on June 5, 2006 (Exh. B).[1] As a direct result of LPL's dilatory tactics and selective waiver of privilege in the eleventh hour and disclosure of key information that it finds helpful to its case, the Defendants have suffered

---

[1] Defendants' June 19, 2006 Motion in Limine (No. 6) incorrectly references the untimely Honeywell documents as HON-D 158-160. The range for the Honeywell documents is HON-D 158-166. Defendants' Corrected Motion *in Limine* (No. 6) To Preclude LPL From Using Any Documents in its Favor at Trial That It Produced After The February 21 Document Production Cut-Off, which is being filed concurrently with this Reply, corrects for the typographical error and includes a complete set of the exhibits.

severe prejudice and have been unable to adequately pursue discovery on key issues on the '002 patent.

## II. LPL'S UNTIMELY PRODUCTION RESULTED IN SEVERE PREJUDICE TO THE DEFENDANTS

### A. The Honeywell Documents (HON-D 158-166)

First, the documents — HON-D 158-166, produced on June 13, 2006 (Exh. C) — are plainly relevant to this litigation and should have been produced at the outset when LPL filed suit on the '002 patent in May 2005. Mr. Holmberg is the sole inventor named in the '002 patent. Documents relating to Mr. Holmberg's conception, reduction to practice of the claimed invention are clearly relevant to the litigation, especially in view of LPL's last minute contention raised (for the first time in its expert's report on June 16, 2006) that "the documents establish that the invention predates certain alleged prior art." Opp. at p. 4.

Second, LPL's assertion that it recently became aware of the Honeywell documents at issue in this motion is misleading. LPL, via its affiliate LGE, purchased the '002 patent from Honeywell in [1995]. LPL, as the owner of this patent, plainly controls the assertion of attorney-client privilege over prosecution of the patent application that issued as the '002 patent, including the contents of the patent prosecution attorney's file from his prosecution of this application and whether to waive privilege in this litigation.

LPL not only controls the patent prosecution file in which HON-D 158-166 reside, in fact as became clear during the inventor's June 15 deposition, *LPL's attorneys have possession of the original documents* in that file that are the subject of this motion.

**REDACTED**

During the June 15 deposition, LPL's counsel produced the original of pages HON-D 158-159 and 163-166 confirming that LPL's counsel, not Honeywell, has possession of these documents.

**REDACTED**

Third, the record is clear that LPL knew of these documents since at least February 6, 2006 if not earlier, but first arranged to selectively waive privilege and produce these documents on June 13, 2006.[2] The prejudice resulting from LPL's failure to adequately investigate earlier and its improper use of privilege and then impermissible selective waiver of privilege rests squarely on LPL's shoulders and should **not** be placed at CPT's feet. In addition, the prosecution files for the '002 patent were within LPL's control at all times during this litigation. Moreover, LPL had access to these documents months ago. LPL was well aware that the documents were (improperly) listed on Honeywell's privilege log with a description that clearly identified the documents proving that they were accessible to LPL as early as February 2006. *See* February 6, 2006 Letter from Mr. Kurt A. Luther producing privilege log to Mr. Salmaan Quader (Exh. J). The document numbered HON-D 160-162, for example, is a three-page letter written on the letterhead of the patent attorney who prosecuted the '002 patent and is described on the privilege log as a letter from John Winburn, Esq. To Richard Flasck (President of Alphasil) "summarizing meeting between patent counsel and inventor on May 5 and May 6,

---

[2] LPL produced most of these documents, HON-D 158-159 and 163-166 in an unintelligible form on the night of June 13 immediately prior to the June 15 deposition of the inventor Mr. Holmberg despite the fact that LPL had in its possession the originals of these documents, as CPT counsel learned at the June 15 deposition. LPL subsequently produced a readable version of HON-D 158-159 half way through the June 15 deposition on the lunch break and produced a readable version of HON-D 158-159 after the deposition on June 22, 2006. (Exhibit P.)

1988 and reflecting attorney's advice." (Exh. J, document no. 3)  Similarly, HON-D 0163 to 0166, four sheets of a ruled legal pad notebook dated May 5 and 6, is described on the privilege log as "handwritten attorney notes relating to preparation of patent application" and stating that they are authored by John Winburn, the attorney who prosecuted the '002 patent application. (Exh. J, document nos. 1 and 2)  HON-D 0158 and 159, two hand drawn sketches, are also identified on the privilege log appearing to be identified as "[h]and drawn sketches of patent application figures reflecting legal analysis" authored by John Winburn. (Exh. J, document no. 28.)  It was not until months afterward – when faced with the prospect of invalidity based on prior art – that LPL chose to selectively waive privilege less than 48 hours before the June 15 deposition of the inventor Mr. Holmberg.

Fourth, having waived privilege, LPL then chose to further evade its discovery obligations by taking an improperly narrow view of that privilege waiver.

REDACTED

RLF1-3033894-1

REDACTED LPL's retraction of its selective waiver literally in the final minute at the end of a two day deposition could not make up for months of tactical delay and strategic stalling. LPL waited months to produce the documents (that were under its control) and then precluded testimony on this issue on not one but two separate depositions of Mr. Holmberg. LPL cannot now claim there is no prejudice by allowing minutes of testimony about one aspect of the document during the last moments of the deposition.

Similarly disturbing is LPL's own assertion that it chose not to investigate and instead was content to rely on Honeywell's representation that the document was privileged. LPL does not dispute that it had access to the Honeywell documents at all times. In fact, under the Purchase and Sales Agreement through which LPL's predecessor LG Electronics, Inc. acquired Honeywell's rights to this patent, Honeywell was obligated to furnish information about the '002 patent to LPL. *See* LPLII 01307 (Exh. L). At the eleventh hour, LPL then chose to *selectively* waive privilege and produce the document days before Mr. Holmberg's deposition but limit the Defendants' discovery of issues surrounding the documents. Similarly unavailing (and misinformed) is LPL's contention that the Defendants have had the opportunity to fully inquire into the documents. Although CPT did serve a subpoena on Honeywell to investigate the document, LPL's acts have not allowed sufficient time. *See* July 3, 2006 letter from Mr. Salmaan Quader to Mr. Matthew L. Woods (Exh. M). LPL foreclosed discovery on this issue by the Defendants and now intends to rely on late produced documents at trial.

***Simply put: LPL cannot use privilege as a sword and a shield.*** *See CP Kelco United States, Inc. v. Pharmacia Corp.*, 213 F.R.D. 176, 179 (D. Del. 2003) ("Hence the truism that a privilege cannot be used as both a shield and a sword.") As raised in Defendants' motion *in limine,* the document contains information which falls squarely within the subject matter

requested in the Defendants' discovery requests. LPL's assertion that it was unaware should not excuse LPL's late production of this responsive information. The Defendants have been more than prejudiced by this late disclosure, and should not be penalized for LPL's tactics.

### B. The Patent License Agreement with SEL (LPL II 103171-103192)

Similarly alarming would be LPL's improper reliance on a late produced license agreement. LPL characterizes its untimely production of the SEL license agreement as complying with an agreement with counsel. This is not true. While LPL did notify the Defendants of its intention to produce an additional license agreement after the parties' meet and confer, the Defendants did not agree or imply that it would agree to any extended delay in producing this document. In a letter dated May 16, 2006, LPL notified Defendants of the license agreement and its intention to produce that agreement "as soon as appropriate." Opp. at Exh. 2. LPL was aware of the upcoming deposition of LPL's witness on licensing issues and the Defendants' requests for responsive license agreements. Yet, LPL did not deem it appropriate to produce the agreement until nearly *three weeks later* – on June 5, 2006, the day before the Defendants' 30(b)(6) deposition of LPL's witness on licenses.

There is no dispute that the SEL license agreement should have been produced for the deposition.

REDACTED

Tellingly, LPL makes no mention of the prejudice Defendants have suffered as a direct result of LPL's untimely production. Because of the delayed production, the Defendants had almost no time to review the license agreement before Mr. Kim's deposition. Defendants had almost no time to investigate the facts relating to the license agreement. Further, the Defendants had limited time to prepare for Mr. Kim's deposition. As a result, LPL's untimely production – coupled with its eleventh hour notification that Mr. Kim would be designated to testify on the topic of licenses - has severely limited the Defendants' ability to explore this issue during discovery. *See* Letter from Mr. Cass Christenson to Mr. Steve Yovits dated June 5, 2006 (Opp. Exhs. O and P).

The Delaware District Court readily excluded evidence produced under nearly identical circumstances. *Philips Elecs. N. Am. Corp. v. Contec Corp.*, 2004 U.S. Dist. LEXIS 5839 (D. Del. 2004). In that case, Contec produced documents after the discovery cutoff, including the documents produced at the deposition of Contec's president. *Id.* at *4. The key question for the court was: "Is there any reasonable excuse for [Contec's] delay in bringing forward the material it wants to rely upon now?" *Id.* at *4-5. The court granted Philip's motion *in limine* after noting that Contec failed to persuade the court that the documents could not have been produced. *Id.* at *4. Rather, Contec argued that it should be permitted to use the documents because Philips failed to take steps to mitigate the effects of Contec's late production by moving to compel extension of the deposition. *Id.* The court thoroughly rejected this argument because that would put the "onus for late production on the wronged party," which would be inconsistent with the purpose of Rule 37(c)(1), which is to provide "a strong inducement" for the disclosing party to abide by the rules. *Id.*, quoting Advisory Comm. Note to 1993 Amendments.

Here, LPL has come forward with no justification why a document was in its possession for at least five months could not have been produced earlier than the eve of Mr. Kim's deposition, much less by the agreed-upon discovery cutoff. As such, LPL should not be allowed to rely on such late produced documents at trial. *Id.*; *see also* Fed. R. Civ. P. 37(c)(1) ("...[a] party that without justification fails to disclose information required [by rules of discovery] is not, unless such failure is harmless, permitted to use as evidence at trial...information not so disclosed.")

## III. CONCLUSION

For the foregoing reasons, CPT respectfully requests that LPL be precluded from using the Honeywell and SEL license documents produced after the Court-ordered February 21, 2006 discovery cut-off.

Of Counsel:
Christine A. Dudzik
Thomas W. Jenkins
Howrey LLP
321 North Clark Street, Suite 3400
Chicago, IL 60610
(312) 595-1239

Julie S. Gabler
Howrey LLP
550 South Hope Street, Suite 1100
Los Angeles, CA 90071
(213) 892-1800

Teresa M. Corbin
Glenn W. Rhodes
Howrey LLP
525 Market Street, Suite 3600
San Francisco, CA 94105
(415) 848-4900

Dated: July 6, 2006

Robert W. Whetzel (#2288)
whetzel@rlf.com
Steven J. Fineman (#4025)
fineman@rlf.com
Matthew W. King (#4566)
king@rlf.com
Richards, Layton & Finger
One Rodney Square, P.O. Box 551
Wilmington, DE 19899
(302) 651-7700
Attorneys for Defendants/Counterclaimants
Tatung Company, Tatung Company of
America, Chunghwa Picture Tubes, Ltd. and
ViewSonic Corporation

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 6, 2006, I electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send notification of such filing, and hand delivered to the following:

>Richard D. Kirk
>The Bayard Firm
>222 Delaware Avenue, Suite 900
>P.O. Box 25130
>Wilmington, DE 19899

I hereby certify that on July 6, 2006, I sent the foregoing document by Electronic Mail, to the following non-registered participants:

>Gaspare J. Bono
>Matthew T. Bailey
>Andrew J. Park
>Adrian Mollo
>McKenna Long & Aldridge LLP
>1900 K Street, NW
>Washington, DC 20006

>Matthew W. King (#4566)
>king@rlf.com
>Richards, Layton & Finger
>One Rodney Square
>P.O. Box 551
>Wilmington, DE 19899

RLF1-2917974-1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 12, 2006, I electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send notification of such filing, and hand delivered to the following:

>Richard D. Kirk
>The Bayard Firm
>222 Delaware Avenue, Suite 900
>P.O. Box 25130
>Wilmington, DE 19899

I hereby certify that on July 12, 2006, I sent the foregoing document by Federal Express, to the following non-registered participants:

>Gaspare J. Bono
>Matthew T. Bailey
>Andrew J. Park
>Adrian Mollo
>McKenna Long & Aldridge LLP
>1900 K Street, NW
>Washington, DC 20006

>Matthew W. King (#4566)
>king@rlf.com
>Richards, Layton & Finger
>One Rodney Square
>P.O. Box 551
>Wilmington, DE 19899

RLF1-2917974-1