**EXHIBIT D**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LG PHILIPS LCD CO , LTD ,

Plaintiff,

v.

TATUNG COMPANY;
TATUNG COMPANY OF AMERICA, INC ;
CHUNGHWA PICTURE TUBES, LTD ;
AND VIEWSONIC CORPORATION,

Defendants

Civil Action No  05-292 (JJF)

## PLAINTIFF'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO DEFENDANTS' FIRST AND SECOND SETS OF INTERROGATORIES

Plaintiff LG Philips LCD Co , Ltd ("LPL"), by counsel and pursuant to Fed  R  Civ  P

33, hereby supplements certain answers to Defendants Tatung Company ("Tatung"), Tatung

Company of America, Inc  ("Tatung America"), Chunghwa Picture Tubes, Ltd  ("CPT"), and

ViewSonic Corporation ("ViewSonic") (collectively referred to herein as "Defendants") First Set

of Interrogatories and Second Set of Interrogatories

### PRELIMINARY STATEMENT AND INCORPORATION OF OBJECTIONS

1    LPL makes the supplemental objections and answers herein (collectively

"Answers") based solely on its current knowledge, understanding, and belief as to the facts and

the information available to it as of the date of the Answers  Additional discovery and

investigation may lead to additions to, changes in, or modifications of these Answers  LPL

reserves the right to produce subsequently discovered information and to introduce such

subsequently discovered information at the time of any hearing or trial in this action

2.    LPL does not waive any objection made in these Answers, nor any claim of privilege, whether expressly asserted or not, by providing any information or identifying any document or thing in the Answers  Any inadvertent disclosure of information or inadvertent identification or production of any document shall not constitute waiver of any applicable privilege

3.    LPL incorporates by reference all of the General Objections set forth in LPL's prior objections and answers to interrogatories dated January 17, 2006 and February 6, 2006, to the same extent as previously asserted, and to be deemed included within each of the individual Objections and Answers to these Interrogatories  All Answers are made subject to each and without waiving any of such objections  LPL's specific Objections are not intended to preclude, override, or withdraw any of the General Objections to that Interrogatory.

## INTERROGATORIES

### INTERROGATORY NO. 1

Identify and describe in detail all acts constituting the conception, actual reduction to practice, and constructive reduction to practice for each asserted claim of each of the patents-in-suit, including the inventor or inventors responsible for such conception, all persons who participated in or witnessed such acts, and all documents that refer or relate to such acts and all persons having knowledge of the event concerning these acts

### OBJECTIONS AND ANSWER

LPL objects to this interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. LPL also objects because Defendants mischaracterize as one interrogatory multiple interrogatories on separate subjects; in responding, LPL counts this interrogatory as multiple interrogatories  LPL further objects to this

Interrogatory because it is overly broad and not reasonably calculated to lead to the discovery of admissible evidence. The effort to detail all facts and circumstances concerning conception, actual reduction to practice, and constructive reduction to practice would be unduly burdensome. LPL's employees did not first conceive or reduce to practice the invention(s) reflected in the '002 patent. LPL also objects to the extent that this Interrogatory seeks a legal conclusion. Subject to and without waiving these objections and the general objections, LPL states as follows:

LPL will produce non-privileged, relevant invention records and documents, if any, related to the Patents-in-Suit

### INTERROGATORY NO. 2

Separately, for each claim of the patents-in-suit asserted against Defendants, state how LPL construes that claim, including but not limited to, how LPL construes each element of that claim, and provide a detailed description of all intrinsic and all extrinsic evidence upon which LPL relies in support of its construction. Such description shall include, but should not be limited to, an identification and citation of each and every specific passage in the specification and prosecution history of the patents-in-suit upon which LPL relies to construe that claim and/or element and an identification of any and all extrinsic evidence upon which LPL relies to construe that claim and/or element. Such description should also include an analysis of the scope of equivalents under the doctrine of equivalents to which LPL contends the claim and/or element is entitled.

### OBJECTIONS AND ANSWER

LPL objects to this interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. Further, LPL objects because Defendants

mischaracterize as one interrogatory multiple interrogatories on separate subjects; in responding, LPL counts this Interrogatory as multiple interrogatories. LPL also objects to this Interrogatory in that it seeks construction of the claims at issue in this litigation, which is premature. LPL also objects to this Interrogatory as overly broad and unduly burdensome. LPL also objects to this Interrogatory because the terms "intrinsic" and "extrinsic" are vague and ambiguous. LPL also objects that "identification and citation of each and every specific passage" is unduly burdensome. Subject to and without waiving these objections and the general objections, and based upon the information presently available, LPL states as follows:

LPL has filed an expert declaration of Mr. Bohannon regarding the '121 patent. LPL will provide more detailed information regarding the asserted claims and claim construction at the appropriate time, possibly including, for example, in *Markman* briefing and/or expert reports. LPL reserves the right to supplement this interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise.

### INTERROGATORY NO. 3

Describe all communications, whether oral or written, by and between employees, representatives, agents and independent contractors of LPL or between third parties and LPL, their agents, representatives or independent contractors which in any way refer or relate to the patents-in-suit or which refer or relate to matters or issues raised in this lawsuit.

### OBJECTIONS AND ANSWER

LPL objects to this interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. Further, LPL objects because Defendants mischaracterize as one interrogatory multiple interrogatories on separate subjects; in responding, LPL counts this Interrogatory as multiple interrogatories. LPL also objects to this Interrogatory

as vague, ambiguous, overly broad, and unduly burdensome in that it calls for "all communications ... which in any way refer or relate to the patents-in-suit or which refer or relate to matters or issues raised in this lawsuit " Subject to and without waiving these objections and the general objections, LPL states as follows:

LPL will produce non-privileged, relevant documents, if any, reflecting communications that reference the Patents-in-Suit.

### INTERROGATORY NO. 4

Identify when LPL first learned of facts causing them to believe, suspect or become aware, that each of the Defendants infringed one or more claims of the patents-in-suit, stating the facts that were discovered, the date of the discovery, and the persons involved in the discovery

### SUPPLEMENTAL OBJECTIONS AND ANSWER

LPL objects to this interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. LPL also objects because mere belief or suspicion of infringement is not relevant and facts regarding belief or suspicion are not reasonably calculated to lead to the discovery of admissible evidence. LPL also objects to this Interrogatory as vague and ambiguous, including, for example, with respect to the terms "believe, suspect or become aware " Subject to and without waiving these objections and the general objections, and based upon the information presently available, LPL states as follows:

It is presently believed that LPL first suspected that Defendants may be infringing one or more claims of the '121 Patent no earlier than mid-2004.

With respect to the '002 Patent, LPL sent a February 8, 2002 letter to CPT referring to the '002 Patent, at which time LPL suspected that CPT might be infringing It is presently believed that LPL first suspected that Tatung and Tatung America may be infringing one or more

claims of the '002 Patent no earlier than mid-2004  It is also presently believed that LPL first

suspected that ViewSonic may be infringing one or more claims of the '002 Patent no earlier

than April 2005

Mr  Won-Jun Choi was involved in LPL's infringement analysis regarding the '121

patent. Mr  Young-Woo Cho was involved in LPL's infringement analysis regarding the '002

patent. LPL reserves the right to supplement this Interrogatory answer, if appropriate, when and

if additional information becomes available, or otherwise

### INTERROGATORY NO. 5

If LPL intends to rely upon any secondary considerations of non-obviousness (e g ,

commercial success, failure of others, copying, or long-felt need) to support the patentability of

any claim of any of the patents-in-suit, identify, for each applicable claim, the facts or documents

upon which LPL relies or intends to rely for proof of such secondary considerations of

patentability, and identify all persons having knowledge thereof

### OBJECTIONS AND ANSWER

LPL objects to this interrogatory to the extent that it seeks information protected by the

attorney-client privilege or the work product doctrine. LPL also objects to this Interrogatory

because LPL is unaware of any prior art that would rebut the presumption of validity of the

patents-in-suit and require LPL to show secondary considerations of obviousness to support

patentability of any claims of any of the patents-in-suit, making this Interrogatory premature and

unduly burdensome  LPL is awaiting discovery from Defendants and reserves the right to

supplement this Interrogatory answer, if appropriate, when and if additional information

becomes available, or otherwise

## INTERROGATORY NO. 6

Identify each license and assignment offered, granted, refused to be granted, or requested concerning any of the patents-in-suit owned by LPL, stating (1) the royalty, duration, and exclusivity of any license, (2) the amount or consideration paid for any license or assignment, (3) the names of the actual prospective parties thereto, (4) the date of such offer, grant, refusal or request concerning the license or assignment and (5) the persons involved.

### SUPPLEMENTAL OBJECTIONS AND ANSWER

LPL objects to this interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. LPL further objects to this Interrogatory as vague and ambiguous, including regarding scope and time period and the phrase "concerning any of the patents-in-suit." Subject to and without waiving these objections and the general objections, and based upon the information presently available, LPL states as follows:

LPL has not granted any licenses or assigned any rights specifically related to the Patents-in-Suit. Generally, LPL has entered into various license agreements and LPL has produced copies of license agreements and related documents (*see, for example*, LPL 018290-018311 and LPL 021908-022082). LPL reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise.

## INTERROGATORY NO. 7

Identify any past or present lawsuits concerning any of the patents-in-suit and any threats or notices of infringement concerning any of the patents-in-suit made to any third party.

### SUPPLEMENTAL OBJECTIONS AND ANSWER

LPL objects to this interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. LPL also objects to this Interrogatory

because the terms "any threats or notices of infringement" are vague and ambiguous. LPL further objects that this Interrogatory lacks any time frame, is overly broad, and is not reasonably calculated to lead to discovery of admissible evidence. Subject to and without waiving these objections and the general objections, and based upon the information presently available, LPL states that:

LPL is not aware of any other lawsuits involving the '121 patent. LPL is aware of prior lawsuits that may involve the '002 patent, including Civil Action No. 99-726-RRM in the U.S. District Court for the District of Delaware, and/or Civil Action No. 3:98-CV-03624-MMC in the U.S. District Court for the Northern District of California. LPL reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise.

### INTERROGATORY NO. 8

Identify each person who expressed an opinion to LPL regarding patentability, unpatentability, infringement, non-infringement, validity, invalidity, enforceability, or unenforceability of any of the patents-in-suit, whether written or oral, and for each such opinion, identify all recipients of the opinion, all documents embodying the opinion, the date of the opinion and the substance of the opinion.

### OBJECTIONS AND ANSWER

LPL objects to this interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. LPL also objects to this Interrogatory as not relevant and not reasonably calculated to lead to the discovery of admissible evidence. LPL also objects to this Interrogatory because the term "opinion" is vague and ambiguous. LPL further objects to this Interrogatory as overly broad, unduly burdensome, and premature. LPL

reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise

### INTERROGATORY NO. 9

Describe in detail each instance prior to March 23, 2000, when the subject matter of the '121 patent was disclosed to anyone other than LPL employees or agents, or an inventor of the '121 patent; when such subject matter was tested or used; when a product or process incorporating, encompassing, embodying, or intended for use in practicing said subject matter was offered for sale or sold; and when such subject matter was disclosed in a printed publication; and identify all persons who participated in such disclosure, testing, use, offer for sale, sale, or publication; and identify all documents which refer or relate thereto

### SUPPLEMENTAL OBJECTIONS AND ANSWER

LPL objects to this interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. LPL also objects to this Interrogatory because of ambiguity in terms such as "subject matter", "disclosed", "product", and "process" in the context of this Interrogatory. Further, LPL objects because Defendants mischaracterize as one interrogatory multiple interrogatories on separate subjects; in responding, LPL counts this Interrogatory as multiple interrogatories. Subject to and without waiving these objections and the general objections, and based upon the information presently available, LPL states as follows:

LPL is not aware of any printed publication or public disclosure, any testing or public use in the U.S., offer for sale in the U.S., or sale in the U.S., of the subject matter claimed in the '121 patent, prior to March 23, 2000. LPL reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise

618911vl

9

## INTERROGATORY NO. 10

Identify all prior art known to LPL or LPL's representatives relating to the patents-in-suit, including but not limited to all prior art provided, discussed, or mentioned by any person in connection with the patents-in-suit, whether or not such prior art was cited or presented to the Patent and Trademark Office during the prosecution of the patents-in-suit.

## SUPPLEMENTAL OBJECTIONS AND ANSWER

LPL objects to this interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. LPL further objects to the term "LPL's representatives" as vague, ambiguous, and unduly burdensome. LPL also objects to the term "all prior art . relating to the Patents-in-Suit" as vague, ambiguous, and overly broad. Subject to and without waiving these objections and the general objections, and based upon the information presently available, LPL states as follows:

LPL is aware of the following prior art "provided, discussed, or mentioned by any person in connection with the Patents-in-Suit," none of which renders any claim of the Patents-in-Suit invalid or unenforceable:

Regarding '121 Patent

U S Patent No 4,287,525, September 1981, Tagawa 347/148;
U S. Patent No 4,474,432, October 1984, Takamatsu et al , 349/150;
U S Patent No 5,362,547, November 1994, Yamazaki, 428/167;
U S Patent No 5,398,128, March 1995, Tajima et al , 349/150;
U S. Patent No 5,528,403, June 1996, Kawaguchi et al , 349/149;
U S Patent No 5,668,700, September 1997, Tagusa et al , 361/779;
U S. Patent No 5,670,994, September 1997, Kawaguchi et al , 345/206;
U S Patent No. 6,104,464, August 2000, Adachi et al , 349/150;
JP 40,430,4427, October 1992; and
JP 11271795, October 1999

Regarding '002 Patent

U S Patent No 4,455,739, June 1984, Hynecek 427/8;

618911v1

U.S. Patent No. 4,586,242, May 1986, Harrison 437/8;
U.S. Patent No. 4,714,949, December 1987, Simmons et al., 357/23;
U.S. Patent No. 4,736,271, April 1988, Mack et al., 357/23; and
U.S. Patent No. 4,803,536, February 1989, Tuan 357/23

By way of further response, LPL has produced additional patent references (*see, for example*, LPL II 00396-464 and 2332-5792), including the following patents and applications:

Patent/Application Number:

4,287,525
4,455,739
4,474,432
4,526,818
4,586,242
4,714,949
4,736,271
4,803,536
4,824,808
5,266,824
5,317,919
5,342,426
5,362,547
5,374,595
5,395,788
5,398,128
5,422,516
5,521,523
5,528,403
5,561,539
5,572,346
5,596,349
5,644,373
5,652,633
5,668,700
5,670,994
5,672,826
5,741,746
5,744,664
5,781,264
5,784,040
5,854,152
5,854,153
5,956,106
5,968,857

618911v1

5,995,181
6,049,094
6,060,168
6,104,464
6,115,092
6,149,760
6,157,480
6,160,663
6,175,396
6,181,392
6,184,952
6,184,953
6,188,454
6,195,193
6,252,608
6,368,450
6,388,375
6,414,394
6,461,465
6,473,146
6,480,322
6,522,374
6,559,834
6,572,941
6,592,226
6,602,132
6,614,493
6,619,785
6,762,396
EP 0,242,025
EP 0,316,089
EP 0,510,543
EP 0,607,865
EP 0,645,661
EP 0,653,384
EP 0,673,898
EP 0,714,862
EP 0,729,922
EP 0,745,834
EP 0,851,270
EP 0,864,910
EP 0,869,105
EP 0,997,445
EP 1,058,205
EP 1,081,636
EP 1,118,032

618911v1

12

EP 1,193,751
JP 10-117049
JP 10-68964
JP 10-72237
JP 11-119684
JP 11-271795
JP 11-317575
JP 1-177018
JP 1-295223
JP 2-131287
JP 2-15849
JP 2-185176
JP 2-221922
JP 2-223929
JP 2-33124
JP 2-52602
JP 2-61612
JP 2-85992
JP 3-274526
JP 3-293629
JP 3-75804
JP 4-100014
JP 4-139419
JP 4-156429
JP 4-163425
JP 4-212742
JP 4-212743
JP 4-212744
JP 4-212745
JP 4-212746
JP 4-212773
JP 4-304427
JP 4-43789
JP 4-55822
JP 4-9923
JP 5-143024
JP 5-160200
JP 5-203942
JP 5-297344
JP 5-328265
JP 5-34655
JP 56-167125
JP 5-80327
JP 59-126663
JP 6-109762
JP 6-130907

JP 6-138454
JP 6-148615
JP 61-59269
JP 6-1677
JP 6-18914
JP 6-202130
JP 62-187885
JP 6-230402
JP 63-10558
JP 6-59253
JP 7-13176
JP 7-168167
JP 7-302064
JP 7-311384
JP 8-213721
JP 8-221003
JP 8-23180
JP 8-46305
JP 8-76098
JP 9-121078
JP 9-146080
JP 9-211479
JP 9-225665
JP 9-281471
US 2001/0047762
US 2002/0131149
WO 00/17702
WO 01/20391
WO 03/052501
WO 03/100508
WO 98/53484

Regarding the '121 patent, none of the above prior art, and none of the prior art identified in Defendants' answers to interrogatories, either standing alone or in combination, teaches or suggests each and every element of any asserted claim in the '121 patent

Regarding the '002 patent, none of the above prior art, and none of the prior art identified in Defendants' answers to interrogatories, either standing alone or in combination, teaches or suggests each and every element of any asserted claim in the '002 patent

LPL reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise.

## INTERROGATORY NO. 11

With respect to LPL's allegations that each of the Defendants have willfully infringed the patents-in-suit, identify each and every fact known to LPL which supports or refutes these allegations, including without limitation all factual bases for LPL's allegations, all documents and things that LPL will rely on (or has relied on) in support of its allegations, and the person(s) most knowledgeable concerning LPL's stated factual bases.

### SUPPLEMENTAL OBJECTIONS AND ANSWER

LPL objects to this interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. LPL also objects to this Interrogatory as premature and seeking information in the Defendants' possession and that is the subject of LPL's discovery requests. Subject to and without waiving these objections and the general objections, and based upon the information presently available, LPL states as follows:

Defendants are mass producing, marketing, and selling products known to infringe the Patents-in-Suit, have done so, and continue to do so, including after LPL filed this lawsuit and after LPL put CPT on notice of the '002 patent by letter dated February 8, 2002. Defendants' conduct, in disregard of LPL's allegations, is willful and the totality of Defendants' conduct, which is the subject of ongoing investigation and discovery, warrants enhanced damages, attorneys' fees, and other appropriate relief. LPL currently is unable to identify the most knowledgeable persons on this subject, as such persons are employed by and/or affiliated with Defendants, and LPL is awaiting discovery from Defendants. LPL reserves the right to

supplement this Interrogatory answer, if appropriate, when and if additional information

becomes available, or otherwise

### INTERROGATORY NO. 12

Identify on a claim by claim basis, each person who made an inventive contribution to

each asserted claim of the patents-in-suit, the substance of that person's contribution, and

whether that contribution was made independently from or jointly with another person or persons

### OBJECTIONS AND ANSWER

LPL objects to this interrogatory to the extent that it seeks information protected by the

attorney-client privilege or the work product doctrine. LPL also objects to the term "inventive

contribution" as vague and ambiguous. LPL further objects because there is no dispute

regarding inventorship in this case and this Interrogatory is not relevant nor reasonably

calculated to lead to the discovery of admissible evidence. Subject to and without waiving these

objections and the general objections, and based upon the information presently available, LPL

states as follows:

The Patents-in-Suit name the respective inventors, Sai-Chang Yun and Eun-Yeong An

for the '121 patent, and Scott Holmberg for the '002 patent. LPL is not aware of any other

inventors regarding the Patents-in-Suit. LPL reserves the right to supplement this Interrogatory

answer, if appropriate, when and if additional information becomes available, or otherwise

### INTERROGATORY NO. 13

For each accused product, state the form of damages, including but not limited to the

reasonable royalty, lost profits, and/or price erosion, that LPL seeks for any alleged infringement

of the patents-in-suit by the accused product

## SUPPLEMENTAL OBJECTIONS AND ANSWER

LPL objects to this interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine  LPL also objects to this Interrogatory as premature because LPL is awaiting discovery from Defendants to identify the full scope of infringing products  Subject to and without waiving these objections and the general objections, and based upon the information presently available, LPL states as follows:

Pursuant to 35 U S C  § 284, LPL seeks all damages and relief to which it is entitled, including, but not limited to, at least a reasonable royalty sufficient to compensate LPL for Defendants' infringement, together with interest and costs as fixed by the Court and a permanent injunction against Defendants' continued infringement of the patents in suit.  LPL is not asserting lost profits and price erosion theories of damages  LPL will provide more detailed damages information at the appropriate time and based on discovery, possibly including, for example, in expert reports  LPL reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise

## INTERROGATORY NO. 14

For each accused product of Defendants, identify all products sold or offered for sale by any person, including but not limited to any product sold or offered for sale by LPL, which LPL contends competes with or is a substitute for that accused product.

### SUPPLEMENTAL OBJECTIONS AND ANSWER

LPL objects to this interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine  LPL further objects to this Interrogatory as overly broad and unduly burdensome in seeking identification of "all products sold or offered for sale by any person "  LPL also objects to this Interrogatory as premature; LPL is awaiting

discovery from Defendants to identify the full scope of infringing products  LPL also objects to this Interrogatory as unduly burdensome and not relevant or reasonably calculated to lead to the discovery of admissible evidence because LPL is not seeking lost profits damages  Subject to and without waiving these objections and the general objections, LPL states as follows:

LPL is not seeking lost profits damages in this case  LPL reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise.

### INTERROGATORY NO. 15

Describe in detail LPL's efforts to comply with the marking provisions of 35 U S C § 287 for each LPL product that embodies or is covered by any claim of any patent-in-suit, including but not limited to the identify of such product and the date(s) that marking commenced for each such product.

### OBJECTIONS AND ANSWER

LPL objects to this interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine  LPL further objects to this interrogatory as irrelevant, burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent that defendants seek information related to marking and patents other than the Patents-in-Suit  Subject to and without waiving these objections and the general objections, and based upon the information presently available, LPL states as follows:

LPL is not aware of products that are marked with the numbers of the Patents-in-Suit. LPL reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise

## INTERROGATORY NO. 16

Describe all facts supporting the claims in paragraphs 23 and 24 of LPL's Complaint,

including but not limited to the claim that Defendants have infringed any claim of the '121

patent-in-suit, including but not limited to the following information:

a)    The product (by name, product number, or other identification) which is allegedly

infringed;

b)    The claim each accused product allegedly infringes;

c)    Whether each accused product allegedly infringed literally or under the doctrine

of equivalents;

d)    If alleging literal infringement, describe how the allegedly infringing products

meets each limitation of the allegedly infringed claim;

e)    If alleging infringement under the doctrine of equivalents, describe how the

allegedly infringing product meets the equivalent of each limitation of the allegedly infringed

claim and how each accused product allegedly performs the identified function, in the same way,

with the same result

## SUPPLEMENTAL OBJECTIONS AND ANSWER

LPL objects to this interrogatory to the extent that it seeks information protected by the

attorney-client privilege or the work product doctrine. LPL further objects to this interrogatory

because defendants mischaracterize as one interrogatory multiple interrogatories on separate

subjects; in responding, LPL counts this interrogatory as multiple interrogatories Also, LPL

objects to this interrogatory as seeking information on claim construction and infringing products

that is premature and unavailable, including because LPL is awaiting discovery from defendants

Subject to and without waiving these objections and the general objections, and based upon the information presently available, LPL states as follows:

LPL is aware of several products that infringe the '121 patent, including, but not limited to, Tatung L17AMTN monitors and ViewSonic VE710s monitors. This interrogatory answer focuses on these examples of infringing products. A complete analysis of all infringing products would be unduly burdensome, and is currently not possible because Defendants have not provided sufficient discovery. The infringed claims include, at least, claims 1, 2, 4-12, 14, and 15, which are infringed literally, or, in the alternative, under the doctrine of equivalents.

Defendants Tatung Co., Tatung Company of America, and/or ViewSonic Corp. purchase, import, use, offer for sale, and/or sell infringing CPT products and/or products that contain infringing CPT products. Tatung L17AMTN monitors and ViewSonic VE710s monitors, for example, both contain infringing CPT modules. Attached hereto as Exhibit I is a photograph of an infringing CPT module, including tape carrier package, in a Tatung L17AMTN monitor. Attached hereto as Exhibit II is a photograph of an infringing CPT module, including tape carrier package, in a ViewSonic VE710s monitor. These photographs are labeled to correspond to the interrogatory answer below.

As summarized below, these CPT modules, and the Tatung and ViewSonic monitors that contain these modules, each infringe several claims of the '121 patent, including at least the claims referenced below.

The Exemplary Products Infringe Claim 1

As recited in independent claim 1, Exhibits I and II show a liquid crystal display device that comprises a liquid crystal panel A, a printed circuit board B, and a tape carrier package C connected to the liquid crystal panel A and the printed circuit board B. The tape carrier package

618911v1                                      20

C includes a base film D mounted with an integrated circuit chip E for applying a signal to the liquid crystal panel A. The tape carrier package C further includes an output pad part F extending from the integrated circuit chip E and having terminals connected to the liquid crystal panel A. The tape carrier package C also includes a dummy bending part G in which a portion of the base film D is removed in a direction perpendicular to the terminals of the output pad part F for reducing a thermal expansion force and a thermal contraction force generated when thermal-pressing the output pad part F onto the liquid crystal panel A. A first bending part H in which a second portion of the base film D is removed exists at a bent position between the dummy bending part G and the integrated circuit chip E. The tape carrier package C also includes an input pad part I extending from the integrated circuit chip E and having terminals connected to the printed circuit board B. The dummy bending part G is formed at a position, close to one of the output pad part F or the input pad part I, where the tape carrier package C is not folded (specifically, in these examples, the dummy bending part G is formed at a position close to the output pad part F where the tape carrier package C is not folded)

The Exemplary Products Infringe Claim 2

As recited in independent claim 2, Exhibits I and II show a liquid crystal display device that comprises a liquid crystal panel A, a printed circuit board B, and a tape carrier package C connected to the liquid crystal panel A and the printed circuit board B. The tape carrier package C includes a base film D mounted with an integrated circuit chip E for applying a signal to the liquid crystal panel A. The tape carrier package C further includes an output pad part F extending from the integrated circuit chip E and having terminals connected to the liquid crystal panel A. The tape carrier package C also includes a dummy bending part G in which a portion of the base film D is removed in a direction perpendicular to the terminals of the output pad part F

for reducing a thermal expansion force and a thermal contraction force generated when thermal-pressing the output pad part F onto the liquid crystal panel A  A first bending part H in which a second portion of the base film D is removed exists at a bent position between the dummy bending part G and the integrated circuit chip E  The tape carrier package also includes an input pad part I extending from the integrated circuit chip E and having terminals connected to the printed circuit board B  The tape carrier package C further includes a second bending part J in which a third portion of the base film D existing at a bent position between the input pad part I and the integrated circuit chip E is removed.

The Exemplary Products Infringe Claim 5

As recited in independent claim 5, Exhibits I and II show a tape carrier package C that comprises a pad part K for connection to a liquid crystal panel A  The tape carrier package C further includes a base film D mounted with an integrated circuit chip E for applying a signal to the liquid crystal panel A, and a dummy bending part G for distributing a stress applied to the liquid crystal panel A according to a thermal expansion of the pad part K by removing a portion of the base film D between the pad part K and the integrated circuit chip E  The dummy bending part G is formed at a position, close to the pad part K, where the tape carrier package C is not folded

The Exemplary Products Infringe Claim 6

Claim 6 depends from claim 5, which is infringed as discussed above  Moreover, as particularly recited in claim 6, Exhibits I and II show a first bending part H in which a second portion of the base film D is removed at a bent position between the dummy bending part G and the integrated circuit chip E

The Exemplary Products Infringe Claim 7

Claim 7 depends from claim 6, which is infringed as discussed above   Moreover, as particularly recited in claim 7, Exhibits I and II show a second pad part L for connection to a printed circuit board B

### The Exemplary Products Infringe Claim 8

As recited in independent claim 8, Exhibits I and II show a tape carrier package C that comprises a pad part K for connection to a liquid crystal panel A   The tape carrier package C further includes a base film D mounted with an integrated circuit chip E for applying a signal to the liquid crystal panel A, and a dummy bending part G for distributing a stress applied to the liquid crystal panel A according to a thermal expansion of the pad part K by removing a portion of the base film D between the pad part K and the integrated circuit chip E   The tape carrier package C also includes a first bending part H in which a second portion of the base film D is removed at a bent position between the dummy bending part G and the integrated circuit chip E; a second pad part L for connection to a printed circuit board B; and a second bending part J in which a third portion of the base film D is removed at a bent position between the second pad part L and the integrated circuit chip E

### The Exemplary Products Infringe Claim 9

Claim 9 depends from claim 5, which is infringed as discussed above   Moreover, as particularly recited in claim 9, Exhibits I and II show a second pad part L for connection to a printed circuit board B

### The Exemplary Products Infringe Claim 14

As recited in independent claim 14, Exhibits I and II show a tape carrier package C that comprises a base film D mounted with an integrated circuit chip E for applying a signal to a liquid crystal panel A   The tape carrier package C also includes a pad part K extending from the

integrated circuit chip E to be connected to the liquid crystal panel A, and at least one bending part H in which a portion of the base film D is removed at an area where the tape carrier package C is folded  The tape carrier package C further includes at least one dummy bending part G, in which a second portion of the base film D is removed at a portion where the tape carrier package C is not folded, thereby reducing a thermal expansion force and a thermal contraction force of the base film D parallel to a longitudinal direction of the integrated circuit chip E

### Defendants Infringe Additional Asserted Claims

In addition to the analysis of several asserted claims above, LPL  also asserts that Defendants infringe additional claims  Documents produced by CPT, for example, suggest that CPT modules infringe the above claims and/or additional claims 4, 10, 11, 12, and/or 15 Further discovery, however, is needed so that infringement of each asserted claim can be confirmed and assessed further, and to determine specifically which products infringe which claims of the '121 patent

### Response to Defendants' Non-infringement Contentions

Defendants' contentions regarding non-infringement are set forth in their answers to LPL's Interrogatory No  5 (for ViewSonic) and No  6 (for CPT, Tatung, and Tatung America) Defendants do not address several claims in the '121 patent, including, for example, claim 14. Further, Defendants assert that claims 1-13 are not infringed by "products which do not have a first bending part between the dummy bending part and the integrated circuit chip " This is not an affirmative denial of infringement, and fails to deny that all or some of Defendants' products do have a first bending part between the dummy bending part and the integrated circuit chip. Several claims, moreover, do not even recite a "first bending part between the dummy bending part and the integrated circuit chip " *See, for example*, claims 5 and 9  And, as shown in

attached Exhibits I and II, at least some of Defendants' products do have a first bending part H between the dummy bending part G and the integrated circuit chip E.

Doctrine of Equivalents

The infringement analysis above shows that Defendants directly infringe several claims In the alternative, Defendants infringe under the doctrine of equivalents

LPL reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise  LPL further reserves the right to modify its infringement analysis regarding additional products

**INTERROGATORY NO. 17**

Describe all facts supporting the claims in paragraphs 28 and 29 of LPL's Complaint, including but not limited to the claim that Defendants have infringed any claim of the '002 patent-in-suit, including but not limited to the following information:

a) The product (by name, product number, or other identification) which is allegedly infringed;

b) The claim each accused product allegedly infringes;

c) Whether each accused product allegedly infringed literally or under the doctrine of equivalents;

d) If alleging literal infringement, describe how the allegedly infringing products meets each limitation of the allegedly infringed claim;

e) If alleging infringement under the doctrine of equivalents, describe how the allegedly infringing product meets the equivalent of each limitation of the allegedly infringed claim and how each accused product allegedly performs the identified function, in the same way, with the same result

## SUPPLEMENTAL OBJECTIONS AND ANSWER

LPL objects to this interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine  LPL further objects to this interrogatory because defendants mischaracterize as one interrogatory multiple interrogatories on separate subjects; in responding, LPL counts this interrogatory as multiple interrogatories  Also, LPL objects to this interrogatory as seeking information on claim construction and infringing products that is premature and unavailable, including because LPL is awaiting discovery from defendants. Subject to and without waiving these objections and the general objections, and based upon the information presently available, LPL states as follows:

LPL is aware of several products that infringe the '002 patent, including, but not limited to, Tatung L17AMTN monitors and ViewSonic VE710s monitors  The infringed claims include, at least, claims 1-9, 12-18, and 35, which are infringed literally, or, in the alternative, under the doctrine of equivalents

LPL's allegation of literal infringement is based upon information concerning Defendants' products, consistent with LPL's evaluation of products and LPL's experience in the fields of research, development, and manufacture of active matrix liquid crystal display products ("AMLCD")  The state of the art in the manufacture of AMLCDs has included, for several years, the production of multiple AMLCD panels on a single glass substrate  It is well known that components, circuits, and devices on an AMLCD substrate are susceptible to damage by electrostatic discharge ("ESD") throughout the manufacturing process  The '002 patent claims structures and methods of manufacture to prevent damage by ESD  These structures and methods include those recited in asserted claims 1-9, 12-18, and 35 of the '002 patent

LPL's knowledge and experience regarding AMLCD manufacturing and relevant technology supports LPL's allegations that CPT makes and sells infringing LCD modules using

618911v1

26

the inventions as recited in the asserted claims of the '002 patent LPL examined relevant products before filing this lawsuit and LPL has requested relevant discovery that Defendants have not produced (for example, physical samples of mother glass) that LPL seeks as further proof that Defendants infringe. Based upon the prevailing methods used in the LCD industry, CPT's manufacturing methods infringe the asserted claims of the '002 patent. Further, Defendants Tatung Co., Tatung Company of America, and/or ViewSonic Corp. purchase, import, use, offer for sale, and/or sell infringing CPT products and/or products that contain infringing CPT products.

Alternatively, for the same reasons discussed above, to the extent that any asserted claim is not literally infringed, the claim is infringed under the doctrine of equivalents.

LPL reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise.

### INTERROGATORY NO. 18

Describe in detail all instances in which each Defendant imported, made, offered for sale or sold products that infringe on one or more claims of the patents-in-suit and identify all instances in which Defendants induced or contributed to the infringement of the patents-in-suit identifying all documents that support same.

### OBJECTIONS AND ANSWER

LPL objects to this interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. LPL also objects to this interrogatory as unduly burdensome. LPL further objects to this interrogatory because defendants mischaracterize as one interrogatory multiple interrogatories on separate subjects; in responding, LPL counts this interrogatory as multiple interrogatories. Also, LPL objects to this interrogatory

as seeking information on infringing products that is premature and unavailable, including because LPL is awaiting discovery from defendants; defendants have the information requested by this interrogatory  Subject to and without waiving these objections and the general objections, and based upon the information presently available, LPL states as follows:

LPL is aware of sales of several infringing products imported, made, sold, and offered for sale by defendants, and/or by others whose infringing conduct was induced or contributed to by defendants, for all of which defendants are liable  Best Buy stores, for example, have purchased and sold infringing Tatung L17AMTN monitors  Similarly, the other defendants have made, imported, used, offered for sale, sold, and/or induced and contributed to such infringing conduct by others  Upon information and belief, for example, CPT supplies infringing LCD modules used by Tatung and others to make LCD products for ViewSonic and others that are knowingly imported, used, offered for sale, and sold in substantial quantities in the U.S  LPL will provide more detailed information regarding infringing products and damages at the appropriate time and based on further discovery, possibly including, for example, in expert reports  LPL reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise

### INTERROGATORY NO. 19

Identify and describe all damages LPL suffered as a result of Defendants' alleged infringement of the patents-in-suit and all documents supporting same

### OBJECTIONS AND ANSWER

LPL objects to this interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine  Also, LPL objects to this interrogatory as seeking information on damages that is premature and unavailable, including because LPL is

awaiting discovery from defendants. Subject to and without waiving these objections and the

general objections, and based upon the information presently available, LPL states as follows:

LPL seeks all damages and relief to which it is entitled, including, but not limited to,

compensatory damages, enhanced damages, interest, costs, and attorneys' fees. LPL is aware of

sales of several infringing products imported, made, sold, and offered for sale by defendants,

and/or by others whose infringing conduct was induced or contributed to by defendants, for all of

which defendants are liable. Best Buy stores, for example, have purchased and sold infringing

Tatung L17AMTN monitors. Similarly, the other defendants have made, imported, used, offered

for sale, sold, and/or induced and contributed to infringing conduct by others. Upon information

and belief, for example, CPT supplies infringing LCD modules used by Tatung and others to

make LCD products for ViewSonic and others that are knowingly imported, used, offered for

sale, and sold in substantial quantities in the U.S. LPL will provide more detailed information

regarding infringing products and damages at the appropriate time and based on further

discovery, possibly including, for example, in expert reports. LPL reserves the right to

supplement this Interrogatory answer, if appropriate, when and if additional information

becomes available, or otherwise.

### INTERROGATORY NO. 20

For each of the patents-in-suit, identify the first date on which LPL alleges infringement

damages against each of the Defendants began to accrue.

### OBJECTIONS AND ANSWER

LPL objects to this interrogatory to the extent that it seeks information protected by the

attorney-client privilege or the work product doctrine. Also, LPL objects to this interrogatory as

seeking information on damages that is premature and unavailable, including because LPL is

awaiting discovery from defendants. LPL also objects to the term "accrue" to the extent this Interrogatory calls for a legal conclusion. Subject to and without waiving these objections and the general objections, and based upon the information presently available, LPL states as follows:

As discussed above, LPL is aware of sales of several infringing products imported, made, sold, and offered for sale by defendants, and/or by others whose infringing conduct was induced or contributed to by defendants, for all of which defendants are liable. Upon information and belief, for example, Best Buy sold infringing Tatung L17AMTN monitors as of May 2004 and CompUSA sold infringing ViewSonic VE710s monitors as of April 2005. LPL does not yet know the earliest dates on which Defendants infringed the Patents-in-Suit. LPL will provide more detailed information regarding infringing products and damages at the appropriate time and based on further discovery, possibly including, for example, in expert reports. LPL reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise.

### INTERROGATORY NO. 21

State whether LPL contends that LCD panels/displays or monitors made by parties other than CPT and incorporated into any Defendants LCD products constitute an infringement, literally or under the doctrine of equivalents, under the patents-in-suit. If the answer is yes, please identify all such products and state the basis of LPL's infringement allegations on a claim by claim basis.

### SUPPLEMENTAL OBJECTIONS AND ANSWER

LPL objects to this interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. LPL further objects to this interrogatory

because defendants mischaracterize as one interrogatory multiple interrogatories on separate subjects; in responding to this interrogatory, LPL counts this interrogatory as multiple interrogatories  Also, LPL objects to this interrogatory as seeking information that is premature and unavailable, including because LPL is awaiting discovery from defendants and a list of products and product information from defendants' counsel; defendants have the information requested by this interrogatory  Further, LPL objects to this Interrogatory as ambiguous and unintelligible in seeking information about "panels/displays or monitors" that are "incorporated into any Defendants LCD products "  Subject to and without waiving these objections and the general objections, and based upon the information presently available, LPL states as follows:

LPL has not yet identified all infringing products.  LPL contends that Defendants' infringement is not limited solely to infringing panels or modules made and/or supplied by CPT  Defendants' use of any infringing panel or module, including those of brands other than CPT, is a basis for liability and damages  For purposes of this expedited case, however, LPL is seeking damages related only to infringing CPT modules/products or products that contain infringing CPT modules/products  LPL reserves all other rights, claims, and remedies, including, for example, all claims against Defendants related to infringing LCD modules/products not made by CPT  LPL reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise

### INTERROGATORY NO. 22

Identify the date when LPL contends that the inventions claimed in each patent-in-suit was ready for patenting within the meaning of the patent laws, and all documents and things that support or refute that contention.

## SUPPLEMENTAL OBJECTIONS AND ANSWER

LPL objects to this interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. LPL further objects to this Interrogatory because it is vague, ambiguous, overly broad, unduly burdensome, and calls for a legal conclusion, including, for example, with respect to "the inventions claimed in each patent-in-suit," "ready for patenting," and "all documents and things." Further, LPL objects because Defendants characterize as one interrogatory multiple interrogatories on separate subjects; in responding, LPL counts this interrogatory as multiple interrogatories. Subject to and without waiving these objections and the general objections, LPL states as follows:

LPL has produced documents in response to this interrogatory.

## INTERROGATORY NO. 23

Identify any and all contact information for each of the inventors named in each patent-in-suit.

### OBJECTIONS AND ANSWER

LPL objects to this interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. LPL further objects that this Interrogatory lacks any time frame and is vague and ambiguous including, for example, with respect to the term "all contact information." LPL also objects to any unauthorized and improper contact between any witness and counsel. Subject to and without waiving these objections and the general objections, and based upon information and belief, LPL states as follows:

Scott H. Holmberg
LightSmith, Inc.
3106 Las Palmas Avenue
Escondido, CA 92025

618911v1

32

Mr Sai Chang Yun  (a current employee of LPL)
Senior Engineer
LG Philips LCD Co , Ltd
642-3, Jinpyung-dong, Gumi-si,
Gyungsangbuk-do, 730-726, Korea

Ms. Eun Yeong An  (a former employee of LPL)
102-1002
Daelim Apartment
Sangdo5-dong, Dongjak-gu
Seoul, Korea

## INTERROGATORY NO. 24

Identify the date(s) on which LPL first notified each of the defendants, pursuant to 35 U S C. § 287(a), of each defendant's alleged infringement of each of the patents-in-suit, and describe in detail the methods LPL employed for each such alleged notification(s)

### SUPPLEMENTAL OBJECTIONS AND ANSWER

LPL objects to this interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine  LPL also objects to this Interrogatory to the extent that it calls for a legal conclusion and assumes any duty to notify under 35 U S C. § 287(a). LPL further objects to this Interrogatory as requesting information already in the Defendants' possession; LPL is seeking discovery regarding when Defendants learned of LPL's patents and claims  Subject to and without waiving these objections and the general objections, LPL states as follows:

LPL is currently not aware of any pre-suit notification from LPL to Defendants regarding the '121 patent. LPL sent a February 8, 2002 letter to CPT referencing the '002 patent (*see* LPL 0000217). LPL is currently not aware of any pre-suit notification from LPL to Tatung Co , Tatung Company of America, or ViewSonic Corp regarding the '002 patent  LPL reserves the

right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise

## INTERROGATORY NO. 25

Identify the person(s) at LPL thought most directly responsible for and/or knowledgeable with respect to:

(a)    the research and development or testing and evaluation of a Tape Carrier package with a dummy bending part according to the '121 patent that reduces a brightness difference of the LCD screen

(b)    the research and development or testing and evaluation of a Tape Carrier package with a dummy bending part according to the '121 patent that reduces a thermal expansion force and a thermal contraction force generated when thermal-pressing the output pad part onto the liquid crystal panel

## OBJECTIONS AND ANSWER

LPL objects to this interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. LPL also objects to this Interrogatory as vague and ambiguous, including, for example, with respect to the terms "thought most directly responsible for and/or knowledgeable," "research and development," and "testing and evaluation." Further, LPL objects because Defendants characterize as one interrogatory multiple interrogatories on separate subjects; in responding, LPL counts this interrogatory as multiple interrogatories. Subject to and without waiving these objections and the general objections, and based upon the information presently available, LPL states as follows:

(a)    Mr. Sai Chang Yun was involved in the invention related to the '121 patent and may have discoverable knowledge or information responsive to this Interrogatory.

LPL reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise

(b)    Mr. Sai Chang Yun was involved in the invention related to the '121 patent and may have discoverable knowledge or information responsive to this Interrogatory. LPL reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise.

## INTERROGATORY NO. 26

Identify any and all persons involved in the preparation of LPL's responses to each interrogatory propounded by defendants.

### OBJECTIONS AND ANSWER

LPL objects to this interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. Subject to and without waiving this objection and the general objections, and based upon the information presently available, LPL states as follows:

Youngwoo Cho and Wonjun Choi participated or assisted in responding to Defendants' Interrogatories.

## INTERROGATORY NO. 27

Identify all witnesses that LPL intends to call to testify at trial, including their name, address, and the general subject matter of their testimony.

### OBJECTIONS AND ANSWER

LPL objects to this interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. LPL further objects to this Interrogatory as overly broad, unduly burdensome, and premature to the extent that LPL is awaiting discovery

from Defendants, and witness lists are not yet due  Subject to and without waiving these objections and the general objections, and based upon the information presently available, LPL states as follows:

No determination has been made yet as to witnesses that LPL intends to call to testify at trial  LPL reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise

### INTERROGATORY NO. 28

Identify any and all of defendant's allegedly infringing products by name and model number which incorporate a LCD panel, display and/or module manufactured by LPL that falls under any claim of any of the patents-in-suit; including the number of LCD panels, displays, and/or modules sold and unit price of each such LPL LCD panel, display and/or module

### OBJECTIONS AND ANSWER

LPL objects to this interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine  LPL further objects that this Interrogatory lacks any time frame, is overly broad, not relevant to any claims or defenses, unduly burdensome, and is not reasonably calculated to lead to the discovery of admissible evidence; Defendants have the responsive information  LPL also objects to this Interrogatory as premature because LPL is awaiting discovery from defendants to identify the full scope of infringing products  Subject to and without waiving these objections and the general objections, and based upon the information presently available, LPL states that:

LPL is continuing to investigate and reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise

618911v1

36

## INTERROGATORY NO. 29

Please state whether LPL is seeking lost profits or a reasonably royalty under 35 U.S.C. § 284 for recovery of damages as alleged in LPL's complaint filed in this action, stating in detail the facts and basis underlying its entitlement to each such theory of recovery and identify all documents and things relating thereto.

### SUPPLEMENTAL OBJECTIONS AND ANSWER

LPL objects to this interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine. LPL also objects to the extent that this Interrogatory calls for a legal conclusion and is duplicative of previous interrogatories in this case. LPL further objects to this Interrogatory as overly broad, unduly burdensome, and vague and ambiguous, including, for example, with respect to the term "all documents and things relating thereto." LPL further objects to this Interrogatory as premature to the extent that LPL is awaiting discovery from Defendants and expert reports are not yet due. Subject to and without waiving these objections and the general objections, and based upon the information presently available, LPL states that:

LPL has not yet determined its damages in this case. LPL's claimed damages do include a reasonable royalty. LPL is not seeking lost profits in this case. Please refer also to LPL's answer to Interrogatory No. 13, which is incorporated here by reference. LPL reserves the right to supplement this Interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise.

## INTERROGATORY NO. 30

Please state whether LPL or anyone acting on its behalf ever conducted an investigation into a) the inventorship, or b) priority of the invention(s) claimed in any of the patents-in-suit, or

in any related U S or foreign patent or application  If so, please state when and by whom each

investigation was conducted, to whom the results were communicated, and whether the results of

the investigation were reduced to writing  If such an investigation was conducted, please

identify all documents and things that were considered or evaluated by or on behalf of CPT as to

their potential effect upon the patentability, validity, scope, and/or priority of the subject matter

as claimed in each said patent-in-suit.

### OBJECTIONS AND ANSWER

LPL objects to this interrogatory to the extent that it seeks information protected by the

attorney-client privilege or the work product doctrine. LPL further objects because there is no

dispute regarding inventorship or priority of the invention(s) claimed in any of the patents-in-suit,

or in any related U S or foreign patent or application in this case and this Interrogatory is not

relevant nor reasonably calculated to lead to the discovery of admissible evidence  LPL also

objects to this Interrogatory as vague, ambiguous, overly broad, and unduly burdensome,

including, for example, in lacking any time frame or context, and with respect to "a) the

inventorship, or b) priority of the invention(s) claimed in any of the patents-in-suit, or in any

related U S of foreign patent or application." Further, this Interrogatory is vague and confusing

regarding the reference to "all documents and things that were considered or evaluated by or on

behalf of CPT " Further, LPL objects because Defendants mischaracterize as one interrogatory

multiple interrogatories on separate subjects; in responding, LPL counts this Interrogatory as

multiple interrogatories  LPL reserves the right to supplement this Interrogatory answer, if

appropriate, when and if additional information becomes available, or otherwise

### INTERROGATORY NO. 31

Define the terms "interconnecting substantially all of said row lines to one another and substantially all of said column lines to one another" as used in at least claim 1 of the '002 patent, and state how one should determine whether substantially all of said row or column lines are interconnected

### OBJECTIONS AND ANSWER

LPL objects to this interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine  LPL further objects to this Interrogatory as calling for a legal conclusion  LPL also objects to this Interrogatory in that it seeks construction of a claim term, which is premature  LPL also objects to this Interrogatory as overly broad and unduly burdensome  Subject to and without waiving these objections and the general objections, LPL states as follows:

LPL will provide information regarding the asserted claims and claim construction at the appropriate time, possibly including, for example, in *Markman* briefing and/or expert reports  LPL reserves the right to supplement this interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise.

### INTERROGATORY NO. 32

Define the term "resistance" as claimed in the '002 patent, and where in the specification, prosecution history or elsewhere that definition is supported

### OBJECTIONS AND ANSWER

LPL objects to this interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine  LPL further objects to this Interrogatory as calling for a legal conclusion  LPL also objects to this Interrogatory in that it seeks

construction of a claim term, which is premature  LPL also objects to this Interrogatory as overly broad and unduly burdensome  Subject to and without waiving these objections and the general objections, LPL states as follows:

LPL will provide information regarding the asserted claims and claim construction at the appropriate time, possibly including, for example, in *Markman* briefing and/or expert reports LPL reserves the right to supplement this interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise.

### INTERROGATORY NO. 33

Define the term "shunt switching element" as claimed in the '002 patent, and where in the specification, prosecution history or elsewhere that definition is supported

### OBJECTIONS AND ANSWER

LPL objects to this interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine  LPL further objects to this Interrogatory as calling for a legal conclusion  LPL also objects to this Interrogatory in that it seeks construction of a claim term, which is premature  LPL also objects to this Interrogatory as overly broad and unduly burdensome  Subject to and without waiving these objections and the general objections, LPL states as follows:

LPL will provide information regarding the asserted claims and claim construction at the appropriate time, possibly including, for example, in *Markman* briefing and/or expert reports LPL reserves the right to supplement this interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise

## INTERROGATORY NO. 34

Define the term "dummy bending part" as claimed in the '121 patent, and where in the specification, prosecution history or elsewhere that definition is supported

### OBJECTIONS AND ANSWER

LPL objects to this interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine LPL further objects to this Interrogatory as calling for a legal conclusion LPL also objects to this Interrogatory in that it seeks construction of a claim term, which is premature. LPL also objects to this Interrogatory as overly broad and unduly burdensome Subject to and without waiving these objections and the general objections, LPL states as follows:

LPL will provide information regarding the asserted claims and claim construction at the appropriate time, possibly including, for example, in *Markman* briefing and/or expert reports LPL reserves the right to supplement this interrogatory answer, if appropriate, when and if additional information becomes available, or otherwise

AS TO OBJECTIONS:

February 28, 2006

OF COUNSEL:
Gaspare J Bono
Matthew T Bailey
Cass W Christenson
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
(202) 496-7500

THE BAYARD FIRM

Richard D. Kirk (#922)
222 Delaware Avenue, Suite 900
P O. Box 25130
Wilmington, DE 19899-2306
(302) 655-5000
Attorneys For Plaintiff
LG PHILIPS LCD CO , LTD

618911v1

41

## VERIFICATION

The facts stated in the foregoing interrogatory answers are true to the best of my information, knowledge, and belief.

Young Woo Cho

Manager _____ (Title)

LG Philips LCD Co., Ltd.


Subscribed and sworn to before me this ____ day of February, 2006.


_____

Notary Public

42

# EXHIBIT E

# REDACTED

EXHIBIT F

# REDACTED