## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LG. PHILIPS LCD CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 05-292 (JJF) |
| | ) | |
| v. | ) | **DEMAND FOR JURY TRIAL** |
| | ) | |
| TATUNG COMPANY; TATUNG | ) | |
| COMPANY OF AMERICA, INC.; | ) | **REDACTED - PUBLIC VERSION** |
| CHUNGHWA PICTURE TUBES, LTD.; | ) | |
| AND VIEWSONIC CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE EXPERT OPINION OFFERED BY LPL'S REPORT OF COBB & ASSOCIATES, LTD., THE NON-OBVIOUSNESS OPINION OFFERED IN THE EXPERT REPORT OF DR. ELLIOTT SCHLAM REGARDING VALIDITY OF U.S. PATENT NO. 5,019,002, AND ANY PROFFERED SUBSEQUENT TESTIMONY

OF COUNSEL:

Teresa M. Corbin
Glenn W. Rhodes
Howrey LLP
525 Market Street, Suite 3600
San Francisco, California 94105
(415) 848-4900

Julie S. Gabler
Howrey LLP
550 South Hope Street, Suite 1100
Los Angeles, California 90071
(213) 892-1800

Robert W. Whetzel (#2288)
whetzel@rlf.com
Steven J. Fineman (#4025)
fineman@rlf.com
Matthew W. King (#4566)
king@rlf.com
Richards, Layton & Finger
One Rodney Square, P.O. Box 551
Wilmington, DE 19899
(302) 651-7700
Attorneys for Defendants/Counterclaimants
Tatung Company, Tatung Company of
America, Chunghwa Picture Tubes, Ltd, and
Viewsonic Corporation

Dated: July 7, 2006

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... ii

I.    INTRODUCTION. ............................................................................1

II.   MR. COBB HAS NOT FORMED AN INDEPENDENT OPINION
      REGARDING YIELD RATES. ........................................................2

      A.    Mr. Cobb Lacks Basic Knowledge About LPL's Yield Rate
            Calculations..........................................................................4

      B.    Mr. Cobb's Entire Opinion On Yield Rates Depends On The
            Multi-Layered Testimony of Two LPL Engineers. ...................5

      C.    On July 6, 2006, LPL Announced That It May Not Call Mr. Cho
            Or Mr. Kim At Trial...............................................................6

      D.    LPL Has Not Produced Any Documents To Support The Yield
            Increase Percentages. ............................................................6

      E.    Mr. Cobb Does Not Know If LPL's Yield Rates Increased After
            Implementing The '002 Patent.................................................7

      F.    Mr. Cobb Does Not Know If The '002 Inventor's Yield Rates
            Increased After Implementing The '002 Patent...........................8

      G.    Mr. Cobb Has No Basis To Believe That LPL Controlled For Any
            Other Factor That Could Affect Yield. ......................................8

      H.    Mr. Cobb Did Not Investigate Non-Infringing Alternatives. ..........9

      I.    No Recorded Data Supports Mr. Lee's Estimations Regarding
            Yield Increase. .....................................................................9

III.  LEGAL PRINCIPLES ..................................................................11

IV.   ARGUMENT................................................................................12

      A.    The Cobb Report Is Untested, Unreliable And Unfounded.............14

            1.    The Central Assumption Underlying The Cobb Report's
                  Damages Figures Has No Factual Support. ......................14

            2.    The Asserted Increase In Yield Is Not Based On Any
                  Identified Scientific Methodology. ................................15

RLF1-3034379-1

a.   Mr. Cobb's Proffered Expert Opinions Should Be Excluded Because They Are Based Solely On Hearsay That Is NOT Of The Type Experts In The Field Would Normally Rely Upon. ................................... 17

b.   Mr. Cobb's Proffered Expert Opinions Should Be Excluded Because They Are Based On Unsubstantiated Statements, Unsupported By Documents, That Have Not Been Tested (And Cannot Be Tested By Defendants) ................................... 19

3.   The Cobb Report Relies On An Incorrect Legal Assumption. ...................................20

B.   Dr. Schlam Relies Solely Upon The Cobb Report To Conclude That The '002 Patent Is A Commercial Success, And Therefore, Non-Obvious. ...................................21

CONCLUSION ...................................23

# TABLE OF AUTHORITIES

## CASES

*Bourjaily v. U.S.,*
483 U.S. 171 (1987).............................................................................................11

*Calhoun v. Yamaha Motor Corp.,*
350 F.3d 316 (3d Cir. 2003)..............................................................11, 12, 15

*DSU Medical v. JMS Co., Ltd.,*
296 F. Supp. 2d 1140 (N.D. Cal. 2003) .............................................................21

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
509 U.S. 579 (1993)................................................................................... *passim*

*Deepsouth Packing Co. v. Laitram Corp.,*
406 U.S. 518 (1972)............................................................................................21

*EZ Dock, Inc. v. Schafer Systems, Inc.,*
2003 WL 16107813 (D. Minn. Mar. 8, 2003) .....................................................1

*Georgia-Pacific Corp. v. United States Plywood,*
318 F. Supp. 1116 (S.D.N.Y. 1970)..................................................................20

*Imonex Services, Inc. v. W.H. Munzprufer Dietmar Trenner GmbH,*
408 F.3d 1374 (Fed. Cir. 2005)..........................................................................14

*Kumho Tire Co. v. Carmichael,*
526 U.S. 137 (1999).....................................................................................12, 19

*Lindemann Maschinenfabrik GmbH v. American Hoist & Derrick Co.,*
895 F.2d 1403 (Fed. Cir. 1990)..........................................................................12

*Montgomery County v. Microvote Corp.,*
320 F.3d 440 (3d Cir. 2003)........................................................................19, 20

*In re Paoli R.R. Yard PCB Litig.,*
35 F.3d 717 (3d. Cir. 1994)......................................................................16, 17, 18

*Riles v. Shell Exploration and Production Co.,*
298 F.3d 1302 (Fed. Cir. 2002)..........................................................................14

*Standard Havens, Prods. v. Gencor Indus.,*
953 F.2d 1360 (Fed. Cir. 1992)..........................................................................21

## OTHER AUTHORITIES

35 U.S.C. § 271 ......................................................................................................21

FRCP 30(b)(6) .....................................................................................................6, 7

Fed R. Evid. 104(a) ..............................................................................................11

Fed. R. Evid. 702 ..................................................................................................11

RLF1-3034379-1

## I.    INTRODUCTION.

In March 2003, Arthur Cobb, Plaintiff LG. Phillips LCD Co., Ltd's ("LPL's") damages

expert, was precluded from offering testimony on lost profits at the trial of a patent infringement

action on the ground that his analysis was insufficient under Federal Rule of Evidence 702 and

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590 (1993). *EZ Dock, Inc. v.*

*Schafer Systems, Inc.*, 2003 WL 1610781 at, *3-*6 (D. Minn. Mar. 8, 2003). Specifically, Judge

Kyle took issue with Mr. Cobb's unscientific decision to read and rely on the opinions of a third

party without undertaking an independent investigation or analysis of those opinions. *Id.* at *4,

*6. On these facts, Judge Kyle found that "[T]here is simply too great an analytical gap between

the data and the opinion proffered" and ruled that "[Plaintiff] has failed to meet its burden of

proving that Cobb's proposed expert testimony satisfies the criteria of Federal Rule of Evidence

702." *Id.* at *6 (quoting *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

Apparently, Mr. Cobb did not learn his lesson. Here, as in *EZ Dock, Inc.*, Mr. Cobb has

based his proffered expert opinion *solely* on another person's representations of the facts. In this

case, Mr. Cobb has relied *solely* on *one telephone call* with *someone who spoke to someone*

about LPL's undocumented manufacturing yield rates. As was true in *EZ Dock, Inc.*, Mr. Cobb

freely admits that he did not conduct any independent investigation or analysis of the opinions of

Mr. Y.C. ("Jason") Cho and Mr. J.H. ("John") Kim, the two individuals he spoke with on the

phone. Mr. Cobb also admits that there are no documents supporting or confirming the opinions

of Mr. Cho and Mr. Kim, on which he relies. Instead, as he did in *EZ Dock, Inc.*, Mr. Cobb

simply accepted the opinions of others -- opinions that were presented to him as multi-layer

hearsay -- without engaging in any evaluation of those opinions. Mr. Cobb's blind reliance on

the untested and unverified opinions of others evidences a complete absence of scientific method

or analysis as required by Rule 702. As such, this Court should follow the example of the

District of Minnesota and preclude Mr. Cobb from offering an expert opinion at trial. Additionally, this Court should strike the portions of Dr. Elliott Schlam's proffered opinions, namely those concerning commercial success, that are based solely on Mr. Cobb's report.

## II.    MR. COBB HAS NOT FORMED AN INDEPENDENT OPINION REGARDING YIELD RATES.

REDACTED

(Declaration of Julie S. Gabler in Support of Motion ("Gabler Decl."), Ex. 1). Neither the '002 patent itself, nor LPL, has any written evidence of yield increases attributable to the '002 patent. *See,* United States Patent No. 5,019,002, June 19, 2006 letter from Adrian Mollo to Steven Yovits ("Mollo Ltr."), June 29, 2006 Deposition of Arthur Cobbs ("Cobb Tr.") at 42:24-43:19; 45:1-5; 58:8-12 (Gabler Decl., Exs. 2, 13, 3)

REDACTED

Nevertheless, Mr. Cobb relies on the claimed but unproven benefits of the '002 technology to

2

grossly inflate the calculation of the damages to which LPL claims entitlement.  *See*, Cobb Report at 22-23; Cobb Tr. at 160:9-166:7 (Gabler Decl., Exs. 1, 3).

REDACTED

REDACTED

Mr. Cobb did not review any documents in connection with this conclusion. *See*, Mollo Ltr. (Gabler Decl.,Ex. 13). He bases the conclusion on one "general discussion" with two LPL representatives. Mr. Cobb does not know if either gentleman *ever* worked at either the Gumi fab or the Paju fab. *See*, Cobb Tr. at 12:23-13:17; 46:19-25; 47:2-5; 47:10-13; 76:8-10; 76:13-14 (Gabler Decl., Ex. 3). In fact, LPL does not place a specific value or specific tracking on a day-to-day basis of the yield savings related to the '002 patent. *Id.* at 97:9-14.

REDACTED

**A.    Mr. Cobb Lacks Basic Knowledge About LPL's Yield Rate Calculations.**

REDACTED

REDACTED

Mr. Cobb relied solely on LPL representations regarding yield improvement. *Id.* at 27:17-18.

    **B.**    **Mr. Cobb's Entire Opinion On Yield Rates Depends On The Multi-Layered Testimony of Two LPL Engineers.**

REDACTED

**C.    On July 6, 2006, LPL Announced That It May Not Call Mr. Cho Or Mr. Kim At Trial.**

On July 6, 2006, LPL announced that it "may call Young Woo Cho and Jong Hwan Kim" at trial. *See*, July 6, 2006, email from Adrian Mollo to Steven Yovits (Gabler Decl., Ex. 16). If LPL does not call these witnesses at trial, then Mr. Cobb *will be the only* testifying witness with knowledge of the *only telephone call* that formed the basis of his expert opinion.

LPL designated Youngwoo Cho as the person most knowledgeable about "the engineering and commercial values of the implementation of the '002 patent." *See*, June 5, 2006 letter from Gaspare Bono to Steven Yovits and Defendants' Amended Notice of Deposition of Plaintiff under FRCP 30(b)(6) (Gabler Decl., Exs. 6, 7). LPL did not designate Mr. Kim as having any knowledge on this subject. *Id.*

Mr. Cho works in LPL's IP Department managing litigation. Mr. Cho does not know, and did not conduct any investigation into whether LPL's yield rate increased from 1995 to the present. *See*, June 9, 2006 Deposition of Youngwoo Cho ("Cho Tr.") at 46:6-9 (Gabler Decl., Ex. 8).                    REDACTED

However, Mr. Cho does not now, nor has he ever had any responsibility for measuring or improving yield.

**D.    LPL Has Not Produced Any Documents To Support The Yield Increase Percentages.**

REDACTED

REDACTED

*see also* June 13, 2006 letter from Steven Yovits to Cass Christenson, June 16, 2006 letter from Steven Yovits to Cass Christenson, June 18, 2006 letter from Steven Yovits to Cass Christenson, Mollo Ltr. (Gabler Decl., Exs. 10, 11, 12, 13).

The record is clear, however, that Mr. Cobb did not review *any documents* in connection with production at LPL's Gumi, Korea or Paju, Korea facilities. *See*, Mollo Ltr. (Gabler Decl., Ex. 13).

REDACTED

**E.    Mr. Cobb Does Not Know If LPL's Yield Rates Increased After Implementing The '002 Patent.**

REDACTED

---

[1] If such records exist, they would have been responsive to at least Request Nos. 30, 36, 37, 58, 70 and 75 in Defendants' First Set of Document Requests (1-64) and Defendants' Second Set of Document Requests (65-78). LPL did not produce these documents.

**F.**    **Mr. Cobb Does Not Know If The '002 Inventor's Yield Rates Increased After Implementing The '002 Patent.**

REDACTED

**G.**    **Mr. Cobb Has No Basis To Believe That LPL Controlled For Any Other Factor That Could Affect Yield.**

LPL has not engaged in any scientific testing to isolate '002 technology as the source of any reported yield increase.

REDACTED

8

REDACTED

**H.**    **Mr. Cobb Did Not Investigate Non-Infringing Alternatives.**

REDACTED

**I.**    **No _Recorded Data_ Supports Mr. Lee's Estimations Regarding Yield Increase.**

REDACTED

_See_ June 5, 2006 letter from Gaspare

Bono to Steven Yovits, Plaintiffs' Amended 30(b)(6) Deposition Notice (Gabler Decl., Exs. 6,

7).

9

REDACTED

REDACTED

### III.    LEGAL PRINCIPLES

The district court must determine the qualifications of a witness to testify as an expert. Fed. R. Evid. 104(a). Here LPL, as the proponent of Mr. Cobb's and Dr. Schlam's expert testimony, bears the burden of demonstrating by a preponderance of the evidence that the evidence is admissible. *Daubert*, 509 U.S. at 592 & n.10; *Bourjaily v. U.S.*, 483 U.S. 171, 175-76 (1987).

Under Rule 702, a witness qualified by knowledge, skill, experience, training, or education may offer opinion evidence that will assist the trier-of-fact if the testimony is (1) based upon sufficient facts or data, (2) the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. Fed. R. Evid. 702.

The Supreme Court's opinion in *Daubert* established the standard used in federal courts to determine the admissibility of expert testimony. *See Calhoun v. Yamaha Motor Corp.*, 350 F.3d 316, 320-21 (3d Cir. 2003). Trial courts must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert,* 509 U.S. at 592-93. It is the trial judge's responsibility to ensure that expert testimony is both relevant and reliable. *Id.* at 589. Under the *Daubert* standard, trial courts act as gatekeepers, overseeing the admission of expert testimony. *Calhoun*, 350 F.3d at 321. The focus of the trial court's

11

gatekeeping inquiry "must be *solely on principles and methodology*, not on the conclusions they generate." *Daubert*, 509 U.S. at 595 (emphasis added).

To determine whether expert evidence is reliable, the trial court must consider several factors, including, but not limited to:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

*Calhoun*, 350 F.3d at 321. The ultimate goal of the trial court "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterize the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

## IV.   ARGUMENT

All of the defects in Mr. Cobb's analysis go to the admissibility of the evidence because Mr. Cobb has not followed sound scientific principles or methodology to isolate '002 technology as the *sole cause* of the alleged yield rate increase. Damages awards must be established by evidence, not speculation. *Lindemann Maschinenfabrik GmbH v. American Hoist & Derrick Co.*, 895 F.2d 1403, 1406 (Fed. Cir. 1990). Mr. Cobb has constructed a damages model based solely on unreliable hearsay and speculation. None of the following conclusions has any basis in tested fact:

REDACTED

12

REDACTED

A.    **The Cobb Report Is Untested, Unreliable And Unfounded.**

    1.    **The Central Assumption Underlying The Cobb Report's Damages Figures Has No Factual Support.**

To be admitted, an expert's damages theory must be supported by the record evidence. *See Imonex Services, Inc. v. W.H. Munzprufer Dietmar Trenner GmbH*, 408 F.3d 1374, 1380 (Fed. Cir. 2005). Damages analysis under a reasonable royalty theory "requires sound ... factual predicates" and must be supported by record evidence. *See Riles v. Shell Exploration and Production Co.*, 298 F.3d 1302, 1311-13 (Fed. Cir. 2002).

REDACTED

The derivations of damages figures are based entirely on Mr. Cobb's unproven assertion that the '002 technology increases manufacturing yields of LCD panels by three to eight percent. *See*, Cobb Report at 31-31 (Gabler Decl., Ex. 1).

REDACTED

---

14

REDACTED

It is uncontroverted that Mr. Cobb did not review *any documents* to arrive at his conclusion. After receiving the Cobb Report, CPT requested documents demonstrating production at LPL's Gumi, Korea facility, and at LPL's Paju, Korea facility. *See* June 13, 2006 letter from Steven Yovits to Cass Christenson, June 16, 2006 letter from Steven Yovits to Cass Christenson, and June 18, 2006 letter from Steven Yovits to Cass Christenson (Gabler Decl., Ex. 13). Instead of providing any factual support, LPL maintained that "Mr. Cobb did not review any documents in connection with this topic." *See* Mollo Ltr. (Gabler Decl., Ex. 13).

REDACTED

Since the Cobb Report's claim that the '002 patent increases yield by three to five percent is not supported by the evidence, the Cobb Report must be striken under Federal Rule of Evidence 702. *See Calhoun*, 350 F.3d at 323 (affirming exclusion of expert opinion submitted with no supporting scientific, statistical or other evidence).

### 2.    The Asserted Increase In Yield Is Not Based On Any Identified Scientific Methodology.

"Faced with a proffer of expert scientific testimony, ... the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific

15

knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid ...." *Daubert*, 509 U.S. at 592-93, 113 S.Ct. 2786. More recently, the Third Circuit has held that, "*Daubert*'s requirement that the expert testify to scientific knowledge -- conclusions supported by good grounds for each step in the analysis -- means that any step that renders the analysis unreliable under the *Daubert factors renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology*." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d. Cir. 1994) (emphasis in original).

Here, Mr. Cobb conducted no analysis at all.

REDACTED

The IP department is responsible for managing litigation and prosecuting patents. Neither gentleman has ever worked in one of LPL's manufacturing facilities (sometimes called "Fabs"). Despite this lack of personal knowledge, Mr. Cobb relied solely on their beliefs as to the percentage yield increase properly attributable to LPL's use of the '002 patent. *See*, Cobb Tr. at 12:23-13:17, 46:19-25, 47:2-5, 47:10-13, 78:16-20, 75:25-76:7, 76:18-22, 79:15 (Gabler Decl., Ex. 3).

REDACTED

(Gabler Decl., Ex. 3).

REDACTED

In short, Mr. Cobb has based his entire damages theory on unreliable multi-layered hearsay from individuals without personal knowledge in a situation where no one could have personal knowledge because LPL never manufactured a single unit without using the '002 technology, he then unscientifically applied those claimed (but completely unsubstantiated) yield increases to another company without any knowledge about whether that second company's manufacturing processes or its claimed use of the '002 technology differed from LPL's in any manner that could impact any yield increases that could properly be shown to be attributable to the '002 patent. This is not a methodology. This is not science. This is not helpful to the jury in any way. As such, Mr. Cobb should be precluded from offering any testimony to the jury in this case as he was in *EZ Dock, Inc.*

        a.      **Mr. Cobb's Proffered Expert Opinions Should Be Excluded Because They Are Based Solely On Hearsay That Is NOT Of The Type Experts In The Field Would Normally Rely Upon.**

As analyzed by the *Paoli Railroad* Court, although Rule 703 permits experts to rely upon hearsay, this Rule is premised on a certain guarantee of trustworthiness, namely that the expert only rely on hearsay that is of the kind "normally employed by experts in the field." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d at 748. Citing Federal Rule of Evidence 104(a), the *Paoli*

17

*Railroad* Court cautioned that, "the court may not abdicate its independent responsibilities to decide if the bases meet minimum standards of reliability as a condition of admissibility. If the underlying data are so lacking in probative force and reliability that no reasonable expert could base an opinion upon them, an opinion which rests entirely upon them must be excluded." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d at 748.

The *Paoli Railroad* Court went on to explain the analysis the district court judge should engage in when evaluating whether an expert's data is of a type reasonably relied on by experts in the field, stating that "he or she should assess whether there are good grounds to rely on this data to draw the conclusion reached by the expert." *Id.* at 749.

Here, Mr. Cobb simply had no justifiable grounds to rely on the unsubstantiated, unverifiable assertions of Mr. Cho and Mr. Kim (or Mr. Lee). *See*, Cobb Tr. at 42:24-43:19, 45:1-5, 58:6-12 (Gabler Decl., Ex. 3). There are no documents to support their claims. *Id.*; Mollo Ltr. (Gabler Decl., Exs. 3, 13)[3] There is no before and after testing. Cobb Tr. at 59:20-60:8, 68:18-21, 70:15-24, 143:23-144:4 (Gabler Decl., Ex. 3). No consideration has been given to any of the numerous other factors that could influence yield. *Id.* at 155:17-25, 156:1-4, 156:9-14, 156:22-157:14, 157:15-21. No other yield influencing factor has been controlled for. *Id.* There is no evidence they held their present beliefs prior to the initiation of this litigation. *Id.* at 57:19-23. Mr. Cobb has relied upon the least reliable type of hearsay imaginable. And, no expert would reasonably rely on this type of testimony as a basis for a damages model. June 30, 2006 Deposition of Dr. Michael Wagner at 61:15-62:19 (Gabler Decl., Ex. 14). Because this

---

[3] In fact, even LPL did not identify Mr. Kim as a person with knowledge on this subject. June 5, 2006 letter from Gaspare Bono to Steven Yovits, Plaintiff's Amended 30(b)(6) Notice of Deposition (Gabler Decl., Exs. 6, 7).

18

type of hearsay bears none of the hallmarks of trustworthiness necessary to pass muster under Rule 104(a) or Rule 703, it cannot form the *sole basis* for Mr. Cobb's expert opinion.

  **b.**  **Mr. Cobb's Proffered Expert Opinions Should Be Excluded Because They Are Based On Unsubstantiated Statements, Unsupported By Documents, That Have Not Been Tested (And Cannot Be Tested By Defendants).**

Whether a theory or technique can be and has been tested, is a "key question to be answered in determining whether a theory or technique is scientific knowledge that will assist the trier of fact." *Daubert*, 509 U.S. at 593, 113 S.Ct. at 2786.

As the Third Circuit recently held in *Montgomery County v. Microvote Corp.*, "the testimony of a witness, who is well-qualified by experience, still may be barred if it is not based on sound data." 320 F.3d 440, 448 (3d Cir. 2003) citing *Kumho Tire* 526 U.S. at 153 (1999). In *Microvote*, defendants' expert, Mr. Naegele relied on a document prepared by his client's National Sales Director, in which the National Sales Director who was not present for the April 1996 elections made a "reverse" "guestimate" about the amount of time election machines were down during those elections. *Id.* Mr. Naegele was unable to identify the source or basis of some of the documents he relied upon, including the document drafted by the National Sales Director. *Id.* Further, Mr. Naegele "admitted that he did not measure actual election use data to determine how long the machines were down." *Id.* On this record, the Third Circuit affirmed the district court's exclusion of Mr. Naegele's proffered testimony on the grounds that the data underlying his opinion was so unreliable that no reasonable expert could base an opinion on it. *Microvote*, 320 F.3d at 449.

Here, Mr. Cobb did not rely on any documents at all. *See*, Cobb Tr. at 42:24-43:19, 45:1-5, 58:6-12, 78:16-20, 76:18-22, 79:1-5; Mollo Ltr. (Gabler Decl., Exs. 3, 13). Instead, he relied on information even less reliable than that relied upon by Mr. Naegele -- unsubstantiated multi-

19

level hearsay statements of two members of LPL's IP Department (the department responsible for managing litigation and prosecuting patents) who have never worked in one of LPL's manufacturing facilities concerning their beliefs as to the percentage yield increase properly attributable to LPL's use of the '002 patent. Cobb Tr. at 76:18-80:7; Cobb Report at 34 (Gabler Decl., Ex. 3, 1). Mr. Cobb relies on this unsubstantiated multi-level hearsay despite the fact that he knew LPL had never manufactured a single LCD product without using the '002 invention and thus had no before and after data or other testing data that could possibly reliably attribute any yield rate increase to any source. See, Cobb Tr. at 69:8-70:24; Cobb Report at 34 (Gabler Decl., Exs. 3, 1). Mr. Cobb did not test this information. See, Cobb Tr. at 59:20-21 (Gabler Decl., Ex. 3). LPL did not test this information. Id. Thus, as in Microvote, Mr. Cobb's testimony as to yield increases attributable to the '002 invention should be excluded because it would be based on "data" that is "so unreliable that no reasonable expert could base an opinion on it." Microvote, 320 F.3d at 449.

### 3.  The Cobb Report Relies On An Incorrect Legal Assumption.

Georgia-Pacific Corp. v. United States Plywood, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) enumerates 15 factors to determine a reasonable royalty. The third factor is the nature and scope of the license. Id. The Cobb Report hypothesizes a worldwide license, including non-U.S. sales. The Cobb Report states, "License of the '002 Patent to CPT would be expected to be non-exclusive and would not be expected to be restricted in terms of territory or with respect to whom the manufactured product may be sold." See, Cobb Report at 23 (Gabler Decl., Ex. 1). The Cobb Report also states, " ... negotiations would have included discussions and calculations based on worldwide sales of infringing products." Id. at 27. Not only does Mr. Cobb assume that the rate would be derived from worldwide sales, he also assumes that worldwide sales of LCD modules constitute the royalty base upon which rates would be paid.

20

For purposes of calculating patent damages, a "[r]eliable methodology requires that the legal grounds used by an expert to calculate damages be legally acceptable." *DSU Medical v. JMS Co., Ltd.*, 296 F. Supp. 2d 1140, 1148 (N.D. Cal. 2003) (excluding expert testimony calculating patent infringement damages based on sales of a non-infringing substitute). The claim that the outcome of the hypothetical negotiation between LPL and CPT for the '002 patent would not have been limited geographically defies the basic rule that acts which take place outside the United States are not acts of infringement under U.S. patent law. *See Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518, 527 (1972) ("The statute [35 U.S.C. § 271] makes it clear that it is not an infringement to make or use a patented product outside of the United States. Our patent system makes no claim to extraterritorial effect."); *Standard Havens, Prods. v. Gencor Indus.*, 953 F.2d 1360 (Fed. Cir. 1992) (reversal of damages award based on acts that took place outside the United States). The Cobb Report's assumption that the royalty base could include sales made outside of the U.S. is a fundamental error. Instead, the hypothetical negotiation must assume a license agreement limited to U.S. sales with a royalty base derived from U.S. sales only. *See id.* This legally incorrect assumption alone is a sufficient basis upon which to exclude the Cobb report. *See DSU Medical, supra.*

**B.    Dr. Schlam Relies Solely Upon The Cobb Report To Conclude That The '002 Patent Is A Commercial Success, And Therefore, Non-Obvious.**

REDACTED

21

REDACTED                                                    *Id.*

at ¶¶ 22-24.  Because Dr. Schlam relies solely upon Mr. Cobb's unreliable, undocumented and

unscientific opinions, Dr. Schlam's opinion that the '002 patent is a commercial success and

therefore, is non-obvious is also unreliable, undocumented, and unscientific.  These opinions

should not be presented to the jury.

---

[4]Dr. Schlam also attaches, as an exhibit to his invalidity report, the June 15, 2006 deposition of Scott Holmberg, the purported inventor of the technology claimed by the '002 patent.  Mr. Holmberg's testimony provides no factual support for attributing a three to eight percent increase in yield to the invention claimed in the '002 patent.

REDACTED

## CONCLUSION

For the forgoing reasons, Defendants respectfully move *in limine* to preclude LPL from introducing at trial the expert report offered by Mr. Cobb and Ms. Beukelman and preclude any person at Cobb & Associates, Ltd. from offering testimony regarding the damages to which LPL may be entitled. The Court should also strike those portions of Dr. Schlam's report that rely upon the Cobb Report.

OF COUNSEL:

Teresa M. Corbin
Glenn W. Rhodes
Howrey LLP
525 Market Street, Suite 3600
San Francisco, California 94105
(415) 848-4900

Julie S. Gabler
Howrey LLP
550 South Hope Street, Suite 1100
Los Angeles, California 90071
(213) 892-1800

Dated:  July 7, 2006

Robert W. Whetzel (#2288)
whetzel@rlf.com
Steven J. Fineman (#4025)
fineman@rlf.com
Matthew W. King (#4566)
king@rlf.com
Richards, Layton & Finger
One Rodney Square, P.O. Box 551
Wilmington, DE  19899
(302) 651-7700
Attorneys    for    Defendants/Counterclaimants
Tatung Company, Tatung Company of America,
Chunghwa Picture Tubes, Ltd, and Viewsonic
Corporation

23

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 7, 2006, I electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send notification of such filing, and hand delivered to the following:

> Richard D. Kirk
> The Bayard Firm
> 222 Delaware Avenue, Suite 900
> P.O. Box 25130
> Wilmington, DE 19899

I hereby certify that on July 7, 2006, I sent the foregoing document by Electronic Mail, to the following non-registered participants:

> Gaspare J. Bono
> Matthew T. Bailey
> Andrew J. Park
> Adrian Mollo
> McKenna Long & Aldridge LLP
> 1900 K Street, NW
> Washington, DC 20006

> Steven J. Fineman (#4025)
> fineman@rlf.com
> Richards, Layton & Finger
> One Rodney Square
> P.O. Box 551
> Wilmington, DE 19899

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 12, 2006, I electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send notification of such filing, and hand delivered to the following:

> Richard D. Kirk
> The Bayard Firm
> 222 Delaware Avenue, Suite 900
> P.O. Box 25130
> Wilmington, DE 19899

I hereby certify that on July 12, 2006, I sent the foregoing document by Federal Express, to the following non-registered participants:

> Gaspare J. Bono
> Matthew T. Bailey
> Andrew J. Park
> Adrian Mollo
> McKenna Long & Aldridge LLP
> 1900 K Street, NW
> Washington, DC 20006

> Matthew W. King (#4566)
> king@rlf.com
> Richards, Layton & Finger
> One Rodney Square
> P.O. Box 551
> Wilmington, DE 19899