# RICHARDS, LAYTON & FINGER

A PROFESSIONAL ASSOCIATION
ONE RODNEY SQUARE
920 NORTH KING STREET
WILMINGTON, DELAWARE 19801
(302) 651-7700
FAX (302) 651-7701
WWW.RLF.COM

ROBERT W WHETZEL
DIRECTOR

DIRECT DIAL NUMBER
302-651-7634
WHETZEL@RLF COM

July 12, 2006

**VIA E-FILE AND HAND DELIVERY**

The Honorable Joseph J. Farnan, Jr.
United States District Court
District of Delaware
844 King Street
Wilmington, DE  19801

      Re:    L.G. Philips LCD Co. Ltd. v. Tatung Company et. al.,
             C.A. No. 05-292 (JJF)

Dear Judge Farnan:

     On behalf of defendants, I write in response to LPL's letter of today's date concerning LPL's proposed changes to the expert opinions previously offered by its damages expert, Mr. Cobb.

     As an initial matter, as set forth in defendants' pending Motion to Exclude Expert Opinion Offered by LPL's Report of Cobb & Associates, the Non-Obviousness Opinion Offered in the Expert Report of Dr. Elliott Schlam Regarding Validity of U.S. Patent Np. 5,019,002, and Any Proffred Subsequent Testimony (hereinafter, the "Daubert motion"), defendants believe that Mr. Cobb failed to exercise a reliable or scientific methodology to arrive at the opinions he proposes to offer in this case, and thus should be precluded from testifying. Defendants further believe that, to the extent Dr. Schlam relies on Mr. Cobb, Dr. Schlam should be precluded from offering opinions at trial which rely on Mr. Cobb's unreliable and unscientific "methodology." Defendants respectfully urge the Court to grant their motion prior to the start of trial on Monday.

     At his deposition, Mr. Cobb made it clear that he intended to update any number of his opinions and to put forth entirely undisclosed opinions, criticisms of Mr. Wagner and new damages numbers at trial. Defendants continue to believe such conduct is inappropriate and understood the Court to agree with that position. In fact, defendants understood the Court to say that a party is at its peril to bear the entire cost of this trial if it offered previously undisclosed expert testimony at trial. By this, defendants understood the Court to mean that no party should offer opinions not previously disclosed in full. Defendants do not believe that statements in an expert report to the affect that an expert may consider other information and may update his opinions in undisclosed ways or may offer new opinions to meet the pre-trial disclosure

RLF1-3035982-1

The Honorable Joseph J. Farnan, Jr.
July 12, 2006
Page 2

requirements. Were it otherwise, an expert could testify at trial to anything he wanted to claiming those new opinions were properly "disclosed" because he had disclosed he might consider new information and might arrive at new opinions. This is not the law and is not what defendants understood Your Honor to be saying on July 7 at the Pretrial Conference.

In direct response to LPL's letter of today's date, defendants object to the updating of the expert reports proposed by LPL. In this case, the parties agreed to exchange transaction level data through March 30, 2006. In the California cases, transaction level data was produced through April 30, 2006 and interrogatory responses summarizing that data were update in May 2006. No other sales data has been produced in any of the pending litigations. This is the sum total of transaction level data available in this case.

LPL now seeks to update the Cobb report, a report that relied on transaction level data, with summary data (i.e. non-transaction level data) included in a recent public filing. See Exhibit 2 to LPL's letter. This summary data is not specific to the United States and was not produced in this case. *Id.* Thus, Mr. Cobb's statement that he intended to consider additional unidentified information concerning "sales of CPT products into the United States" is irrelevant to this issue because the data LPL now seeks to use does not itemize sales to the United States.

As explained in the portion of defendants' correspondence with LPL that was omitted from LPL's Exhibit 5, the parties dispute the appropriateness of the "methodology" employed by Mr. Cobb and the correct royalty base to be applied for a single US patent. See Exhibit A. LPL is now seeking an order from this Court that "it is necessary" to present to the jury worldwide sales data, not broken down by country and not limited to the United States. This is not a dispute about whether or not the parties should be required to update their transaction level data document production. This is an attempt to get the Court to endorse LPL's use of a worldwide royalty base for a single US patent. Defendants are not maintaining that, should LPL prove infringement, that LPL's damages are capped at April 30, 2006. However, transaction level data after that date, by agreement of the parties, is simply not available in this case and a Court order authorizing LPL's expert to change his damage numbers by relying on non-US sale data is not appropriate or justified.

Respectfully,

Robert W. Whetzel

RWW/lmg

cc:   Clerk of Court (By Electronic Filing)
      Richard D. Kirk, Esquire (By Electronic Filing and Hand Delivery)
      Gaspare J. Bono, Esquire (By e-mail)

RLF1-3035982-1

# EXHIBIT A

**From:** Gabler, Julie [GablerJ@howrey.com]
**Sent:** Tuesday, July 11, 2006 12:46 PM
**To:** Bono, Gaspare
**Cc:** Corbin, Terry; Rhodes, Glenn; Yovits, Steven; Christenson, Cass; Goodwyn, Tyler
**Subject:** RE: Proposed Agreement on Ending Date of Damages Period

Dear Gap: The issue you are raising now goes to disputes about appropriate methodology and royalty base. The parties have exchanged actual transactional level data in this case. CPT's public reporting is outside the case, not produced in this litigation, and not transaction level data. We will have objections to Mr. Cobb's use of this data on a number of grounds. We view this as a transparent attempt to circumvent the court's order and bolster Mr. Cobb's severly deficient report. We will raise all available objections.

Mr. Wagner will be presenting his opinions as disclosed. If, on cross, you want to point out that Mr. Wagner uses only actual data provided in the case, that's certainly fine with us. Mr. Wagner has not opined and will not be opining that should LPL prove infirngement, LPL is not entitled to any damages after April 30, 2006.

Best, Julie

-----Original Message-----
From: Bono, Gaspare [mailto:gbono@mckennalong.com]
Sent: Tuesday, July 11, 2006 7:45 AM
To: Gabler, Julie
Cc: Corbin, Terry; Rhodes, Glenn; Yovits, Steven; Christenson, Cass; Goodwyn, Tyler
Subject: RE: Proposed Agreement on Ending Date of Damages Period

Dear Julie: Your position is not reasonable. For example, yesterday CPT published its actual data for the first time on its sales through June 30, 2006, so your initial objection on lack of actual data is now invalid. The court's comments about experts were directed to the expert's opinions expressed in their reports. Mr. Cobb will not be changing his opinions, in conformity with the court's comments, but your position that actual sales data cannot be brought forward to the time of trial is meritless. LPL is entitled to damages based upon sales up to the time of trial. Please be advised that we will object to Mr. Wagner offering an opinion at trial based on incomplete and outdated sales data. As stated above, updating the sales data to near the time of trial (here June 30, 2006) would not change in any way Mr. Cobb's opinions, and if Mr. Wagner does not do so, his opinions would be based on incomplete data, making it objectionable. We intend to raise this issue with the Court. Best Regards, Gap

-----Original Message-----
From: Gabler, Julie [mailto:GablerJ@howrey.com]
Sent: Tuesday, July 11, 2006 10:18 AM
To: Bono, Gaspare
Cc: Corbin, Terry; Rhodes, Glenn; Yovits, Steven; Christenson, Cass; Goodwyn, Tyler
Subject: RE: Proposed Agreement on Ending Date of Damages Period

Dear Gap:

The Court has already made it very clear that no experts can deviate from their reports and testimony. Consistent with the Court's order, we do not agree that Mr. Cobb can come to trial and sponsor any number that was not included in his report. LPL and Mr. Cobb made their decisions on time period and must now stick with them.

Best, Julie

-----Original Message-----
From: Bono, Gaspare [mailto:gbono@mckennalong.com]
Sent: Monday, July 10, 2006 10:22 AM
To: Gabler, Julie
Cc: Corbin, Terry; Rhodes, Glenn; Yovits, Steven; Christenson, Cass; Goodwyn, Tyler
Subject: RE: Proposed Agreement on Ending Date of Damages Period

Dear Julie: It is my recollection that your expert Wagner used data through April 30, 2006. Why don't we agree to April 30? Let me know. Gap

-----Original Message-----
From: Gabler, Julie [mailto:GablerJ@howrey.com]
Sent: Monday, July 10, 2006 11:09 AM
To: Bono, Gaspare
Cc: Corbin, Terry; Rhodes, Glenn; Yovits, Steven; Christenson, Cass; Goodwyn, Tyler
Subject: RE: Proposed Agreement on Ending Date of Damages Period

Dear Gap: We do not agree with your proposal. No party has provided actual data through June 30, 2006.

Best regards, Julie

-----Original Message-----
From: Bono, Gaspare [mailto:gbono@mckennalong.com]
Sent: Sunday, July 09, 2006 7:27 AM
To: Gabler, Julie
Cc: Corbin, Terry; Rhodes, Glenn; Yovits, Steven; Christenson, Cass; Goodwyn, Tyler
Subject: Proposed Agreement on Ending Date of Damages Period

Dear Julie: I know we disagree on the beginning date for the damages period in this case, and that that is a disagreement that may or may not be answered by the Judge before the trial, and thus if not resolved, may require the presentation of two different damage models by our respective experts at trial, at least at to the starting date of the damages period. Regardless, however, I think it would make sense for us to agree on an ending date for the damages period that our respective expert damages witnesses will address in their testimony at trial so the jury is presented with a clear choice to make in assessing damages. I propose that we agree that our respective damages experts testify as to damages for a damage period with an ending date as of June 30, 2006. In this way, both experts would be talking about the same thing insofar as the ending date of the damages period. This makes sense to me, since it would avoid our experts talking about two different ending dates, while preserving both parties positions as to the start dates of the damages period. Let me know if you agree. Thanks. Best Regards, Gap

CONFIDENTIALITY NOTICE:
This e-mail and any attachments contain information from the law firm of McKenna Long & Aldridge LLP, and are intended solely for the use of the named recipient or recipients. This e-mail may contain privileged attorney/client communications or work product. Any dissemination of this e-mail by anyone other than an intended recipient is strictly prohibited. If you are not a named recipient, you are prohibited from any further viewing of the e-mail or any attachments or from making any use of the e-mail or attachments. If you believe you have received this e-mail in error, notify the sender immediately and permanently delete the e-mail, any attachments, and all copies thereof from any drives or storage media and destroy any printouts of the e-mail or attachments.

------------------------------------------------------------------------
--------------------------
This email and any attachments contain information from the law firm of Howrey LLP, which may be confidential and/or privileged.
The information is intended to be for the use of the individual or entity named on this email.
If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this email is prohibited.
If you receive this email in error, please notify us by reply email immediately so that we can arrange for the retrieval of the original documents at no cost to you.


CONFIDENTIALITY NOTICE:
This e-mail and any attachments contain information from the law firm of McKenna Long & Aldridge LLP, and are intended solely for the use of the named recipient or recipients. This e-mail may contain privileged attorney/client communications or work product. Any dissemination of this e-mail by anyone other than an intended recipient is strictly prohibited. If you are not a named recipient, you are prohibited from any further viewing of the e-mail or any attachments or from making any use of the e-mail or attachments. If you believe you have received this e-mail in error, notify the sender immediately and permanently delete the e-mail, any attachments, and all copies thereof from any drives or storage media and destroy any printouts of the e-mail or attachments.



CONFIDENTIALITY NOTICE:

7/12/2006

This e-mail and any attachments contain information from the law firm of McKenna Long & Aldridge LLP, and are intended solely for the use of the named recipient or recipients. This e-mail may contain privileged attorney/client communications or work product. Any dissemination of this e-mail by anyone other than an intended recipient is strictly prohibited. If you are not a named recipient, you are prohibited from any further viewing of the e-mail or any attachments or from making any use of the e-mail or attachments. If you believe you have received this e-mail in error, notify the sender immediately and permanently delete the e-mail, any attachments, and all copies thereof from any drives or storage media and destroy any printouts of the e-mail or attachments