**3.2    CONSTRUCTION OF CLAIMS**

It is often difficult to describe an invention in scientifically precise terms.  For that reason, the Patent Law allows the inventor to use his own terms in describing his invention.  Thus, the meaning of a claim can be construed in connection with the patent specification, the patent's prosecution history, and prior art to determine what the claims cover.  You should consider the drawings and specifications to determine what the inventor intended to cover by the claims of the patent.

In addition, the parties have asked the Court to define specific terms used in the Patent-in-Suit.  It is my job as judge to provide to you the meaning of any claim language that must be interpreted.  You must accept the following meanings I give you and use them when you decide whether any claim of the patent has been infringed and whether any claim is invalid.  I will now tell you the meanings of the following words and groups of words from the patent claims.


[READ STIPULATIONS AND COURT'S CLAIM CONSTRUCTIONS]


You should give the rest of the words in the claims their ordinary meaning in the context of the patent specification and prosecution history.

Source

Uniform Jury Instructions for Patent Cases In The United States District Court For The District Of Delaware (1993); AIPLA Model Patent Jury Instructions (2005) (citing *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005); *Markman v. Westview Instruments, Inc.,* 52 F.3d 967 (Fed. Cir. 1995) (en banc).

### 3.3    DEPENDENT AND INDEPENDENT CLAIMS

The Parties could not agree upon the language for the instruction regarding "DEPENDENT AND INDEPENDENT CLAIMS."  Following are each of LPL's and Defendants' respective forms of this jury instruction.

### 3.3.1    LPL'S PROPOSED INSTRUCTION ON "DEPENDENT AND INDEPENDENT CLAIMS"

There are two different types of claims in the patent.  The first type is called an independent claim.  An independent claim does not refer to any other claim of the patent. An independent claim is read separately to determine its scope.

On the other hand, a dependent claim refers to at least one other claim in the patent and thus incorporates whatever that other claim says.  Accordingly, to determine what a dependent claim covers, you must read both the dependent claim and the claim or claims to which it refers.

For example, Claim 1 is an independent claim.  You know this because this claim mentions no other claim.  Accordingly, the words of this claim are read by themselves in order to determine what the claim covers.

Claim 8, on the other hand, is a dependent claim.  Accordingly, the words of Claims 1 and 8 must be read together in order to determine what the dependent claim, claim8, covers.

Claim 1 of the '002 patent  is broader than claim  8.  You are not to imply the limitations or words of the narrower dependent claim 8 into a broad independent claim 1 if claim 1 does not include the same limitations.


Source

Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware, at § 3.3 (1993) (citing 35 U.S.C. § 112; *Fromson v. Advance Offset Plate, Inc*., 720 F.2d 1565, 219 U.S.P.Q. 1137 (Fed. Cir. 1983)).

### 3.3.2    DEFENDANTS' PROPOSED INSTRUCTION ON "DEPENDENT AND INDEPENDENT CLAIMS"

There are two different types of claims in the patent.  One type of claim is called an independent claim.  The other type of claim is called a dependent claim.

An independent claim is a claim that does not refer to any other claim of the patent.  An independent claim must be read separately from the other claims to determine the scope of the claim.

A dependent claim is a claim that refers to at least one other claim in the patent.  A dependent claim incorporates all of the steps of the claim to which the dependent claim refers, as well as the steps recited in the dependent claim itself.

For example, Claim1 is an independent claim and recites several steps.  Claim 8 is a dependent claim that refers to Claim 1 and includes an additional limitation.  Claim 8 requires each of the steps of Claim 1, as well as the additional steps identified in Claim 8 itself.

To establish literal infringement of Claim 8, LPL must show that it is more likely than not that the accused methods include each and every step of Claim 8 and Claim 1.

If you find that Claim 1 from which Claim 8 depends is not literally infringed, then you cannot find that Claim 8 is literally infringed.

Source

AIPLA Model Instructions, Version 1.1, February 2006

### 3.4    PATENT INFRINGEMENT -- GENERALLY

The Parties could not agree upon the language for the instruction regarding "PATENT INFRINGEMENT -- GENERALLY."  Following are each of LPL's and Defendants' respective forms of this jury instruction.

### 3.4.1    LPL'S PROPOSED INSTRUCTION ON "PATENT INFRINGEMENT -- GENERALLY"

A patent owner may enforce its right to exclude others from making, using, selling, offering to sell, or importing in or to the United States a product made using the patented process by filing a lawsuit for patent infringement.  Here, LPL, the patent owner, has sued the Defendants, the accused infringers, CPT, Tatung, Tatung America, and ViewSonic.  LPL has alleged that CPT's LCD modules infringe claims 1 and 8 of the '002 patent.  LPL also alleges that Defendants Tatung, Tatung America's and ViewSonic infringe the '002 Patent by using, selling, offering for sale, and importing into the United States LCD products that use infringing CPT modules.

Patent law provides that any person or business entity which makes, uses, sells, offers to sell, or import without the patent owner's permission, any product, apparatus or method legally protected by at least one claim of a patent within the United States before the patent expires, infringes the patent.

There is more than one way to infringe a patent.  One may: (1) directly infringe a patent; and/or (2) induce others to infringe a patent, in which case the inducer is liable for infringement as well as the direct infringer.  Next I will explain each type of infringement more completely.

Source

Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware, at § 3.4 (1993) (citing 35 U.S.C. §§ 281, 271).

630273v1

### 3.4.2    DEFENDANTS' PROPOSED INSTRUCTION ON "PATENT INFRINGEMENT -- GENERALLY"

A patent owner may enforce its right to exclude others from making, using, selling, offering to sell, or importing into the U.S. a product made using the patented process by filing a lawsuit for patent infringement. Here, LPL, the patent owner, has sued CPT, Tatung, Tatung America, and ViewSonic, the accused infringers, and has alleged that their LCD products infringe one or more claims of LPL's U.S. Patent No. 5,019,002.  Defendants deny that they have infringed the patent and assert that the patent is invalid.

Patent Law provides that any person or business entity which makes, uses, or sells in or imports into the United States without the patent owner's permission, any product, apparatus or method legally protected by at least one claim of a patent within the United States before the patent expires, infringes the patent.

Infringement may be direct or by inducement.  Next, I will explain both types of infringement.

Source

Uniform Jury Instructions for Patent Cases In The United States District Court For The District Of Delaware (1993) (citing 35 U.S.C. § 281, 271).

**3.5    DIRECT INFRINGEMENT -- KNOWLEDGE OF PATENT OR INTENT TO INFRINGE IS IMMATERIAL**

The Parties could not agree upon the language for the instruction regarding "DIRECT INFRINGEMENT -- KNOWLEDGE OF PATENT OR INTENT TO INFRINGE IS IMMATERIAL."  Following are each of LPL's and Defendants' respective forms of this jury instruction.

### 3.5.1    LPL'S PROPOSED INSTRUCTION ON "DIRECT INFRINGEMENT -- KNOWLEDGE OF PATENT OR INTENT TO INFRINGE IS IMMATERIAL"

Defendants would be liable for directly infringing LPL's patent if you find that LPL has proven that it is more likely than not that (1) Defendants have made, used, offered to sell, sold, or imported in or to the United States any product made by the process defined in at least one claim of LPL's patent, regardless of where the product was made, and (2) that the product was neither materially changed by subsequent processes nor a nonessential component of another product.

Defendants may directly infringe a patent without knowledge that what they are doing is an infringement of the patent.  They also may infringe even though in good faith they believe that what they are doing is not an infringement of any patent.

Source

American Intellectual Property Law Association's Model Patent Jury Instructions, at § 3.1 (2005); 35 U.S.C. § 271(g).

### 3.5.2    DEFENDANTS' PROPOSED INSTRUCTION ON "DIRECT INFRINGEMENT -- KNOWLEDGE OF PATENT OR INTENT TO INFRINGE IS IMMATERIAL"

CPT, Tatung, Tatung America, and ViewSonic would be liable for directly infringing LPL' s patent if you find that LPL has proven by a preponderance of the evidence that Defendants have imported into the United States or offered to sell, sold, or used within the united States a product which was made by a process patented in the United States, if the importation, offer to sell, sale, or use of the product occurred during the term of LPL's patent.  If you find that even one sale, offer to sell or import of an infringing product occurred in the United States, then you have found direct infringement.

Source

35 U.S.C. § 271(g).

**3.6    INDUCING PATENT INFRINGEMENT**

The Parties could not agree upon the language for the instruction regarding "INDUCING PATENT INFRINGEMENT." Following are each of LPL's and Defendants' respective forms of this jury instruction.

3.6.1    LPL'S PROPOSED INSTRUCTION ON "INDUCING PATENT INFRINGEMENT"

LPL asserts that each Defendant has actively induced another defendant or others to infringe the patent. To show induced infringement, LPL must prove that it is more likely than not that someone has directly infringed the '002 patent and that any Defendant has actively and knowingly aided and abetted that direct infringement. LPL must show that Defendants actually intended to cause the acts that constitute direct infringement and that the Defendants knew or should have known that each of their respective actions would induce actual infringement.

It is not necessary to show that all of the Defendants have each directly infringed as long as you find that someone has directly infringed. If there is no direct infringement by anyone, Defendants have not induced infringement. If Defendants provided instructions and directions to perform the infringing act through labels, advertising, or other sales methods or by supplying the components used in an infringing product or method with the knowledge and intent that its customer would use the components to make, use, sell, offer to sell, or import a product made by the patented process, this may be evidence of inducement to infringe.

Source

American Intellectual Property Law Association's Model Patent Jury Instructions, at § 3.2 (2005).

### 3.6.2    DEFENDANTS' PROPOSED INSTRUCTION ON "INDUCING PATENT INFRINGEMENT"

LPL asserts that defendants have actively induced others to infringe the patent. To show induced infringement, LPL must prove that it is more likely than not that someone has directly infringed the patent and that defendants actively and knowingly aided and abetted that direct infringement. LPL must show that defendants actually intended to cause the acts that constitute direct infringement and that defendants knew or should have known that their actions would induce actual infringement.

It is not necessary to show that defendants have directly infringed as long as you find that someone has directly infringed. If there is no direct infringement by anyone, defendants have not induced infringement. If defendants provided instructions and directions to perform the infringing act through labels, advertising, or other sales methods or by supplying the components used in an infringing product or method with the knowledge and intent that their customers would use the components to make, use, or sell the patented invention, this may be evidence of inducement to infringe.

Source

AIPLA Model Instructions, Version 1.1, February 2006.

### 3.7    LITERAL INFRINGEMENT

There are two ways in which a patent claim may be directly infringed.  First, a claim may be literally infringed.  Second, a claim may be infringed under what is called the "doctrine of equivalents," which I will address shortly.

For one of the accused products to literally infringe any one of LPL's patent claims, the subject matter of the patent claim must be found in that accused product. In other words, LPL's patent claim(s) is literally infringed if the accused product was manufactured using each method step in LPL's patent claim.  If CPT's LCD Module omits any single step recited in LPL's patent claim, CPT's LCD Module does not literally infringe that claim.  You must determine literal infringement with respect to each patent claim individually.

Remember, the question is whether the accused product infringes any claim of LPL's patent, and not whether the accused product is similar or even identical to a product made by LPL.  Accordingly, you must be certain to compare each of the accused products, and the process used to manufacture those accused products, with the claims they are alleged to infringe and not with any product made by LPL.


Source

Uniform Jury Instructions for Patent Cases In The United States District Court For The District Of Delaware (1993).

### 3.8     DOCTRINE OF EQUIVALENTS

The Parties could not agree upon the language for the instruction regarding "DOCTRINE OF EQUIVALENTS."  Following are each of LPL's and Defendants' respective forms of this jury instruction.

### 3.8.1    LPL'S PROPOSED INSTRUCTION ON "DOCTRINE OF EQUIVALENTS"

If you decide that CPT's manufacturing methods do not literally infringe an asserted patent claim, you must then decide whether CPT's methods infringe an asserted claim under what is called the "doctrine of equivalents."  Under the doctrine of equivalents, the method can infringe an asserted patent claim if it includes steps that are identical or equivalent to the requirements of the claim. If the method is missing an identical or equivalent step to even one step of the asserted patent claim, the method cannot infringe the claim under the doctrine of equivalents.  Thus, in making your decision under the doctrine of equivalents, you must look at each individual requirement of the asserted patent claim and decide whether the method has an identical or equivalent step to that individual claim requirement.

A step of a method is equivalent to a requirement of an asserted claim if a person of ordinary skill in the field would think that the differences between the step and the requirement were not substantial as of the time of the alleged infringement.  One way to decide whether any difference between a requirement of an asserted claim and a step of the method is not substantial is to consider whether, as of the time of the alleged infringement, the step of the method performed substantially the same function, in substantially the same way, to achieve substantially the same result as the requirement in the patent claim.

In deciding whether any difference between a claim requirement and the method is not substantial, you may consider whether, at the time of the alleged infringement, persons of

ordinary skill in the field would have known of the interchangeability of the step with the claimed requirement.  The known interchangeability between the claim requirement and the step of the method is not necessary to find infringement under the doctrine of equivalents.  The same method step of the accused method may satisfy more than one element of a claim.

Source

American Intellectual Property Law Association's Model Patent Jury Instructions, at § 3.8 (2005).

3.8.2    DEFENDANTS' PROPOSED INSTRUCTION ON "DOCTRINE OF EQUIVALENTS"

If you do not find literal infringement you may consider infringement under the "doctrine of equivalents." I have referred to the "doctrine of equivalents" before. Now it is time to explain this term. You may find that one of the accused products infringes claim 1, even if not all of the method steps of the claim are present in that CPT LCD Module. You may find infringement in such circumstances if the accused process used to make the accused product, are equivalent to that claimed in at least one of LPL's patent claims. This is called the doctrine of equivalents.

Application of the doctrine of equivalents is the exception, however, not the rule. Patent claims must be clear enough so that the public has fair notice of what was patented. Notice permits other parties to avoid actions which infringe the patent and to design around the patent. On the other hand, LPL should not be deprived of the benefits of its patent by competitors who appropriate the essence of an invention while barely avoiding the literal language of the patent claims.

The test to determine equivalence under the doctrine of equivalence is whether the methods used by CPT to manufacture LCD Modules perform substantially the same function in substantially the same way to produce substantially the same result compared to each step of the methods claimed in the '002 Patent.

It is not a requirement under doctrine of equivalence infringement that those of ordinary skill in the art knew of the equivalent when the patent application was filed or when the patent issued. The question of whether the method used to produce Defendants' products are equivalent to that defined in LPL's claims is to be determined as of the time of the alleged infringement.

Source

Uniform Jury Instructions for Patent Cases In The United States District Court For The District Of Delaware (1993).

**3.9     SITUATIONS WHERE RESORT TO DOCTRINE OF EQUIVALENTS  IS NOT PERMITTED**

The Parties could not agree upon the language for the instruction regarding

"SITUATIONS WHERE RESORT TO DOCTRINE OF EQUIVALENTS  IS NOT

PERMITTED."  Following are each of LPL's and Defendants' respective forms of this jury

instruction.

3.9.1    LPL'S PROPOSED INSTRUCTION ON "SITUATIONS WHERE RESORT TO DOCTRINE OF EQUIVALENTS  IS NOT PERMITTED"

There are two situations wherein resort to the doctrine of equivalents to find infringement

is not permitted.  First, resort to the doctrine of equivalents to find infringement is not permitted

if you find that Defendants are merely practicing what was in the prior art prior to the patented

invention or that which would have been obvious in light of what was in the prior art.  This is

because a patent owner should not obtain, under the doctrine of equivalents, coverage which he

could not have lawfully obtained from the Patent Office.  Accordingly, to find infringement

under the doctrine of equivalents you must find that the patent owner has proven that he could

have obtained from the Patent Office a hypothetical patent claim, similar to claim 1, but broad

enough to literally cover the accused method of manufacture.

Second, resort to the doctrine of equivalents to find infringement is not permitted if you

find that the patent owner is trying to recapture that which it gave up in the Patent Office to

distinguish the invention from what was in the public domain prior to his invention. In other

words, if during the process of obtaining its patent, it was limited it in some way in order to

argue that it was different from what was in the public domain, then it is not now free to assert a

broader view of its invention by broadening the claims through the doctrine of equivalents in an

effort to recapture that which it surrendered.

Sometimes patent claims, however, are amended, not to avoid what was in the public domain, but to clarify indefinite or ambiguous terms.  If you find that an amendment was made to clarify a claim for that sort of reason and not in an effort to avoid what was in the public domain, the doctrine of equivalents can still be applied.

<u>Source</u>

Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware, at § 3.10 (1993).

### 3.9.2    DEFENDANTS' PROPOSED INSTRUCTION ON "SITUATIONS WHERE RESORT TO DOCTRINE OF EQUIVALENTS IS NOT PERMITTED"

There are two situations wherein resort to the doctrine of equivalents to find infringement is not permitted. First, resort to the doctrine of equivalents to find infringement is not permitted if you find that the defendant is merely practicing what was in the prior art prior to the patented invention or that which would have been obvious in light of what was in the prior art. This is because a patent owner should not obtain, under the doctrine of equivalents, coverage which he could not have lawfully obtained from the Patent Office. Accordingly, to find infringement under the doctrine of equivalents you must find that the patent owner has proven that he could have obtained from the Patent Office a hypothetical patent claim, similar to claim 8, but broad enough to literally cover the method used to manufacture the accused product.  Second, resort to the doctrine of equivalents to find infringement is not permitted if you find that the patent owner is trying to recapture that which he gave up in the Patent Office to distinguish the invention from what was in the public domain prior to his invention. In other words, if the inventor, when he was in the process of obtaining his patent, limited it in some way in order to argue that it was different from what was in the public domain, then he is not now free to assert a broader view of his invention by broadening the claims through the doctrine of equivalents in an effort to recapture that which he surrendered.

Source

Uniform Jury Instructions for Patent Cases In The United States District Court For The District Of Delaware (1993).

### 3.10    OPEN ENDED OR "COMPRISING" CLAIMS

The preamble to claim 1 uses the transitional phrase "A method of manufacturing active matrix display backplanes and displays therefrom, comprising:…"

"Comprising" is interpreted the same as "including" or "containing." In patent claims, comprising means that the claims are open-ended. As such, the claim is not limited to only what is in the claim. Based on this explanation, if you find that one of the CPT's LCD Modules, or the means of manufacturing those LCD Modules, include all of the method steps in any of LPL's patent claims, the fact that it may also include an additional method steps is irrelevant. The presence of additional method steps in the accused product or method of manufacture does not mean that the product or means of manufacture does not infringe a patent claim.

Source

Uniform Jury Instructions for Patent Cases In The United States District Court For The District Of Delaware (1993); Draft Uniform Jury Instructions For Patent Cases In The United States District Court For The District Of Delaware (2003).

### 3.11    WILLFUL INFRINGEMENT

The Parties could not agree upon the language for the instruction regarding "WILLFUL INFRINGEMENT." Following are each of LPL's and Defendants' respective forms of this jury instruction.

### 3.11.1 <u>LPL'S PROPOSED INSTRUCTION ON "WILLFUL INFRINGEMENT"</u>

You are instructed that where a potential infringer has actual notice of another's patent rights, he has an affirmative duty of due care not to infringe a valid and enforceable patent. Thus if you find by a preponderance of the evidence that Defendants infringed LPL's patent, either literally or under the doctrine of equivalents, then you must further determine if this infringement was willful. Willfulness must be proven by clear and convincing evidence showing that:

1.     One or more of the Defendants had actual knowledge of LPL's patent, and

2.     Defendants had no reasonable basis for believing (a) that each Defendants' products and methods did not infringe LPL's patent or (b) that LPL's patent was invalid or unenforceable. In making the determination as to willfulness, you must consider the totality of the circumstances. The totality of the circumstances comprises a number of factors, which include, but are not limited to whether any of the Defendants intentionally copied the method used to manufacture the accused product covered by LPL's patent, whether Defendants exercised due care to avoid infringing the patent, and whether Defendants presented a substantial defense to infringement, including the defense that the patent is invalid or unenforceable.

<u>Source</u>

American Intellectual Property Law Association's Model Patent Jury Instructions, at § 13 (2005).

### 3.11.2  DEFENDANTS' PROPOSED INSTRUCTION ON "WILLFUL INFRINGEMENT"

You are instructed that where a potential infringer has actual notice of another's patent rights, he has an affirmative duty of due care not to infringe a valid and enforceable patent.  Thus if you find by a preponderance of the evidence that Defendants infringed LPL's patent, either literally or under the doctrine of equivalents, then you must further determine if this infringement was willful.  Willfulness must be proven by clear and convincing evidence showing that:

1.      Defendants had actual knowledge of LPL's patent, and

2.      Defendants had no reasonable basis for believing (a) that Defendants' method did not infringe LPL's patent or (b) that LPL's patent was invalid.  In making the determination as to willfulness, you must consider the totality of the circumstances.  The totality of the circumstances comprises a number of factors, which include, but are not limited to whether Defendants intentionally copied the method used to manufacture the accused product covered by LPL's patent, whether Defendants exercised due care to avoid infringing the patent, and whether Defendants presented a substantial defense to infringement, including the defense that the patent is invalid.

Source

AIPLA Model Instructions, Version 1.1, February 2006.

**4.**     **VALIDITY DEFENSES**

**4.1     SUMMARY OF INVALIDITY DEFENSE**

Defendants contend that the asserted claims of the Patent-in-Suit are invalid.  Defendants have the burden of proving by clear and convincing evidence that each claim is invalid.

Claims of an issued patent may be found to be invalid.  Thus, you must determine whether each of LPL's claims is invalid.

Defendants contend that Claim 1 and Claim 8 of the '002 patent  are invalid for one or more of the following reasons:

- Anticipation

- Obviousness

- Lack of written description

- Lack of enablement

- Indefiniteness

I will now instruct you in more detail why Defendants allege that the asserted claims of the patent are invalid.

Source

AIPLA Model Instructions, Version 1.1, February 2006

**4.2    PRIOR ART DEFINED**

Prior art includes any of the following items received into evidence during trial:

1. any method that was publicly known or used by others in the United States before the patented inventions were made;

2. patents that issued more than one year before the filing date of the patent or before the invention was made;

3. publications having a date more than one year before the filing date of the patent or before the invention was made;

4. any method that was in public use or on sale in the United States more than one year before the patent was filed;

5. any method that was made by anyone before the named inventor created the patented method where the method was not abandoned, suppressed, or concealed.

In this case, the Defendants contend that the following items are prior art:


[identify prior art by name]

<u>Source</u>

AIPLA Model Instructions, Version 1.1, February 2006

### 4.3    ANTICIPATION

The Parties could not agree upon the language for the instruction regarding

"ANTICIPATION."  Following are each of LPL's and Defendants' respective forms of this jury

instruction.

(a)    LPL'S PROPOSED INSTRUCTION ON "ANTICIPATION"

A person cannot obtain a patent if someone else already has made an identical invention.

Simply put, the invention must be new.  An invention that is not new or novel is said to be

"anticipated by the prior art."  Under the U.S. patent laws, an invention that is "anticipated" is

not entitled to patent protection.  To prove anticipation, Defendants must present clear and

convincing evidence showing that the claimed invention is not new.

In this case, Defendants contend that the asserted claims of the '002 patent are

anticipated.  [DESCRIBE BRIEFLY EACH BASIS FOR THE DEFENDANTS' INVALIDITY

DEFENSE, FOR EXAMPLE: "First, Defendants contends that the invention of claims 1, 2, and

3 of the ____ patent was described in the July, 1983 article published by Jones in THE

JOURNAL OF ENDOCRINOLOGY."]

To anticipate a claim, each and every element in the claim must be present in a single

item of prior art.  You may not combine two or more items of prior art to prove anticipation.  In

determining whether every one of the elements of the claimed invention is found in the prior

publication, patent, etc., you should take into account what a person of ordinary skill in the art

would have understood from his or her examination of the particular publication, patent, etc.

In determining whether the single item of prior art anticipates a patent claim, you should

take into consideration not only what is expressly disclosed in the particular item of prior

publication, patent, etc., but also what inherently occurred as a natural result of its practice.  This

is called "inherency."  A party claiming inherency must prove it by clear and convincing

evidence.  To establish inherency, the evidence must make clear that the missing descriptive

matter is necessarily present in the reference and that it would be so recognized by persons of

ordinary skill in the art.  Inherent anticipation, however, does not require that a person of

ordinary skill in the art at the time would have recognized the inherent disclosure.  Thus, the

prior use of the patented invention that was accidental, or unrecognized and unappreciated can

still be an invalidating anticipation.

You must keep these requirements in mind and apply them to each kind of anticipation

you consider in this case.  There are additional requirements that apply to the particular

categories of anticipation that Defendants contend apply in this case. I will now instruct you

about those.

<u>Source</u>

American Intellectual Property Law Association's Model Patent Jury Instructions, at § 6.0
(2005)

(b)    DEFENDANTS' PROPOSED INSTRUCTION ON "ANTICIPATION"

A person cannot obtain a patent if someone else already has made an identical invention. Simply put, the invention must be new.  An invention that is not new or novel is said to be "anticipated by the prior art."  Under the U.S. patent laws, an invention that is "anticipated" is not entitled to patent protection.  To prove anticipation, Defendants must present clear and convincing evidence showing that the claimed invention is not new.

In this case, [the Defendant] contends that the claims of the [abbreviated patent number] patent are anticipated.  [DESCRIBE BRIEFLY EACH BASIS FOR THE DEFENDANTS' INVALIDITY DEFENSE, FOR EXAMPLE: "First, [the Defendant] contends that the invention of claims 1, 2, and 3 of the _____ patent was described in the July, 1983 article published by Jones in THE JOURNAL OF ENDOCRINOLOGY."]

To anticipate a claim, each and every step in the claim must be present in a single item of prior art.  You may not combine two or more items of prior art to prove anticipation.  In determining whether every one of the steps of the claimed invention is found in the prior patent or publication, you should take into account what a person of ordinary skill in the art would have understood from his or her examination of it.

In determining whether the single item of prior art anticipates a patent claim, you should take into consideration not only what is expressly disclosed in the particular item of prior patent or publication, but also what inherently occurred as a natural result of its practice.  This is called "inherency."  A party claiming inherency must prove it by clear and convincing evidence.  To establish inherency, the evidence must make clear that the missing descriptive matter is necessarily present in the reference and that it would be so recognized by persons of ordinary skill in the art.  Inherent anticipation, however, does not require that a person of ordinary skill in the art at the time would have recognized the inherent disclosure.  Thus, the prior use of the patented invention that was accidental, or unrecognized and unappreciated can still be an invalidating anticipation.

630273v1

43

<u>Source</u>

AIPLA Model Instructions, Version 1.1, February 2006