<u>*Source*</u>

Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware, at § 6.1 (1993).

### 5.1.2    DEFENDANTS' PROPOSED INSTRUCTION ON "DAMAGES -- GENERALLY"

If you find that the accused products and methods infringe any of the claims of the patent, and that these claims are not invalid, you must determine the amount of damages to be awarded for infringement.  The amount of damages must be adequate to compensate LPL for the infringement.  On the other hand, if you find that each of the asserted patent claims is either invalid or is not infringed, then you need not address damages in your deliberations.

You must consider the amount of injury suffered by LPL without regard to defendants' gains or losses from the infringement.  You may not add anything to the amount of damages to punish the accused infringer or to set an example.

LPL has the burden of proving each element of its damages by a preponderance of the evidence.

The fact that I am instructing you as to the proper measure of damages should not be construed as intimating any view of the Court as to which party is entitled to prevail in this case. Instructions as to the measure of damages are given for your guidance in the event you find the evidence in favor of LPL.

Source

AIPLA Model Instructions, Version 1.1, February 2006

**5.2    FORESEEABILITY**

The Defendants do not believe that an instruction on "FORESEEABILITY" should be included.  LPL submits the following instruction on "FORESEEABILITY".

(a)    LPL'S PROPOSED INSTRUCTION ON "FORESEEABILITY"

The fact that any of the Defendants did not foresee that it would cause LPL's damage at the time it infringed is irrelevant to the computation of damages.

<u>Source</u>

Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware, at § 6.2 (1993).

**5.3    REASONABLE CERTAINTY**

The Defendants do not believe that an instruction on "REASONABLE CERTAINTY" should be included.  LPL submits the following instruction on "REASONABLE CERTAINTY".

      5.3.1    LPL'S PROPOSED INSTRUCTION ON "REASONABLE CERTAINTY"

Once the fact of damages has been proven by a finding of infringement, you must determine the extent of damages.  Under the patent law, LPL is entitled to all damages that can be proven with "reasonable certainty."  On one hand, reasonable certainty does not require proof of damages with mathematical precision.  Mere difficulty in ascertaining damages is not fatal to LPL.  On the other hand, LPL is not entitled to speculative damages, that is, you should not award any amount for loss, which, although possible, is wholly remote or left to conjecture and/or guess.  You may base your evaluation of "reasonable certainty" on opinion evidence.

Finally, any doubts regarding the computation of the amount of damages should be resolved against Defendants.

<u>Source</u>

Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware, at § 6.3 (1993).

### 5.4    ENTIRE MARKET VALUE RULE

The Defendants do not believe that an instruction on "ENTIRE MARKET VALUE RULE" should be included.  LPL submits the following instruction on "ENTIRE MARKET VALUE RULE".

#### 5.4.1    LPL'S PROPOSED INSTRUCTION ON "ENTIRE MARKET VALUE RULE"

The "entire market value rule" allows for the recovery of damages based on the value of an entire apparatus containing several features, even though only one feature is patented when: the patentee can normally anticipate the sale of the unpatented components with the patented component; that is, the feature patented constitutes the basis for consumer demand of the unpatented feature.


*Source*

Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware, at § 6.4 (1993).

**5.5    REASONABLE ROYALTY AS A MEASURE OF DAMAGES**

The Parties could not agree upon the language for the instruction regarding

"REASONABLE ROYALTY AS A MEASURE OF DAMAGES."  Following are each of

LPL's and Defendants' respective forms of this jury instruction.

      5.5.1    LPL'S PROPOSED INSTRUCTION ON "REASONABLE ROYALTY AS A MEASURE OF DAMAGES"

If you find that LPL is not entitled to lost profits, then LPL is entitled to a reasonable

royalty.  A reasonable royalty is the minimum permissible measure of damages set by the patent

laws and is not necessarily the actual measure of damages, but is merely the floor below which

damages should not fall.  Accordingly, you may find damages in excess of a reasonable royalty if

you find that the facts so warrant.

A reasonable royalty in this case is the amount of money that would be agreed to in a

hypothetical arm's-length negotiation between the owner of a patent and the infringer, with both

operating under the assumption that the negotiated patent is valid and is being infringed, i.e., that

absent the "reasonable royalty" payment, that the infringer would respect the patent.

In determining a reasonable royalty, you should place yourself at the point in time at

which you believe the arms length negotiation that I just referred to would have been likely to

have occurred.  This is typically just before liability for infringement would begin, which in this

case would be the 1999 time period.

 In the hypothetical arms-length negotiation, you must assume that the person negotiating

on behalf of defendant, and who was willing to take a license, would have known that LPL's

patent was valid, was enforceable and was infringed by the Defendants.  You should also assume

that both LPL and the Defendants knew all pertinent information at the time of the hypothetical

negotiations.  Having that in mind, you may consider any relevant fact in determining the

reasonable royalty for Defendants' use of the patented invention, including the opinion testimony

of experts.

<u>Source</u>

Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware, at § 6.10 (1993).

### 5.5.2    DEFENDANTS' PROPOSED INSTRUCTION ON "REASONABLE ROYALTY AS A MEASURE OF DAMAGES"

The patent law specifically provides that the amount of damages that Defendants must pay LPL for infringing LPL's patent may not be less than a reasonable royalty for the use that Defendants made of LPL's invention.

A royalty is a payment made to the owner of a patent by a non-owner in exchange for rights to make, use, or sell the claimed invention.  A reasonable royalty is the royalty that would have resulted from a hypothetical negotiation between the patent owner and a company in the position of Defendants taking place just before the infringement began. You should also assume that both parties to that negotiation understood the patent to be valid and infringed and were willing to enter into a license.

Source

AIPLA Model Instructions, Version 1.1, February 2006

**5.6     FACTORS FOR DETERMINING REASONABLE ROYALTY**

The Parties could not agree upon the language for the instruction regarding "FACTORS

FOR DETERMINING REASONABLE ROYALTY."  Following are each of LPL's and

Defendants' respective forms of this jury instruction.

5.6.1    LPL'S PROPOSED INSTRUCTION ON "FACTORS FOR
DETERMINING REASONABLE ROYALTY"

In determining such a reasonable royalty, some of the factors that should be considered

are:  [NOTE:  LIST ONLY THOSE FACTORS SUPPORTED BY EVIDENCE IN THE CASE]

1.      the royalties received by the patentee for the licensing of others under the Patent

in Suit;

2.      the rates paid by the licensee for the use of other patents comparable to the Patent

in Suit;

3.      the nature and scope of the license, as exclusive or non-exclusive; or as restricted

or nonrestricted in terms of territory or with respect to whom the manufactured product may be

sold;

4.      the licensor's established policy and marketing program to maintain his patent

exclusivity by not licensing others to use the invention or by granting licenses under special

conditions designed to preserve that exclusivity;

5.      the commercial relationship between the licensor and licensee, such as, whether

they are competitors in the same territory in the same line of business; or whether they are

inventors or promotors;

6.      the effect of selling the patented specialty in promoting sales of other products of

the licensee, the existing value of the invention to the licensor as a generator or sales of his non-

patented items, and the extent of such derivative or convoyed sales;

7.      the duration of the patent and the term of the licenses;

8.      the established profitability of the product made under the patent, its commercial success, and its current popularity;

9.      the utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results;

10.     the nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention;

11.     the extent to which the infringer has made use of the invention, and any evidence probative of the value of that use;

12.     the portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;

13.     the portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer;

14.     the opinion testimony of qualified experts; and

15.     any other economic factor that a normally prudent businessman would, under similar circumstances, take into consideration in negotiating the hypothetical license.


<u>Source</u>

Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware, at § 6.11 (1993).

### 5.6.2    DEFENDANTS' PROPOSED INSTRUCTION ON "FACTORS FOR DETERMINING REASONABLE ROYALTY"

In determining the value of a reasonable royalty, you may consider evidence on any of the following factors:

1. Any royalties received by the licensor for the licensing of the '002 patent, proving or tending to prove an established royalty.

2. The rates paid by Defendants to license other patents comparable to the '002 patent.

3. The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

4. The licensor's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity.

5. The commercial relationship between the licensor and the licensee, such as whether or not they are competitors in the same territory in the same line of business.

6. The effect of selling the patented product in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of its non-patented items; and the extent of such collateral sales.

7. The duration of the '002 patent and the term of the license.

8. The established profitability of the product made under the patent; its commercial success; and its current popularity.

9. The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results.

10. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

11. The extent to which Defendants have made use of the invention; and any evidence that shows the value of that use.

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13. The portion of the profit that arises from the patented invention itself as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.

14. The opinion testimony of qualified experts.

15. The amount that a licensor and a licensee would have agreed upon if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to use the patented method—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

16. Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

Source

AIPLA Model Instructions, Version 1.1, February 2006

**5.7     COST SAVINGS AS A BASIS FOR REASONABLE ROYALTY**

The Defendants do not believe that an instruction on "COST SAVINGS AS A BASIS FOR REASONABLE ROYALTY" should be included. LPL submits the following instruction on "COST SAVINGS AS A BASIS FOR REASONABLE ROYALTY".

5.7.1    LPL'S PROPOSED INSTRUCTION ON "COST SAVINGS AS A BASIS FOR REASONABLE ROYALTY"

In determining the amount of reasonable royalties, you should also consider cost savings that the infringer achieves by using the patented process. "Reliance upon estimated cost savings from use of the infringing product is a well settled method of determining a reasonable royalty." *Hanson v. Alpine Valley Ski Area Inc.*, 718 F.2d 1075, 1081 (Fed. Cir. 1983).

Going back to the hypothetical negotiation, the willing licensor and licensee would have set a royalty rate that would include consideration of all economic benefits to the licensee. Cost savings is a very important economic benefit and represents the amount that a licensee would be willing to pay for a license and are objective evidence of a reasonable royalty.

During deliberations, you should consider whether the use of the '002 Patent increased the number of units that Defendants were able to manufacture and subsequently sell in determining the reasonable royalties. You should also compare the cost of using the method described in the '002 Patent versus the traditional method that Defendants would otherwise have used. If you find that a difference exists in the costs associated with each method, you may consider cost savings as one measure of reasonable royalties.

Source

*See Hanson v. Alpine Valley Ski Area Inc.*, 718 F.2d 1075 (Fed. Cir. 1983); *Leesona v. United States*, 599 F.2d 958, 971 (1979), *cert. denied*, 444 U.S. 991 (1979); *A.C. Auckerman Co. v. R.L. Chaides Constr. Co.*, 29 U.S.P.Q.2d 1054, 1059 (N.D. Calif. 1993); *Idacon Inc. v. Central Forest Prod. Inc.*, 3 U.S.P.Q.2d 1079, 1093 (E.D. Okla. 1986); *Smith Int'l, Inc. v. Huges Tool*

*Co.*, 229 U.S.P.Q. 81, 96 (C.D. Calif. 1986), *appeal dismissed as moot*, 839 F.2d 663 (Fed. Cir. 1988); *Tights, Inc. v. Kayser-Roth Corp.*, 442 F. Supp. 159, 163 (M.D. N.C. 1977).

### 5.8    THE DATE DAMAGES BEGIN

LPL does not believe that an instruction on "THE DATE DAMAGES BEGIN" should be included.  Defendants submit the following instruction on "THE DATE DAMAGES BEGIN".

### 5.8.1    DEFENDANTS' PROPOSED INSTRUCTION ON "DEFINITENESS"

The date(s) that LPL first gave notice to each of the Defendants of its claim of patent infringement is (are) the date(s) at which patent damages begin to be calculated.  These dates are in dispute here, and it is up to you to determine what those dates are.  LPL has the burden to prove by a preponderance of the evidence the date(s) it gave notice to each of the Defendants.

One way LPL can provide notice of its patent is to communicate to each of the Defendants a specific charge that the accused products and methods infringed the patent.  This type of notice is effective from the time it is given to a particular defendant.  If you find that LPL, before filing this lawsuit, did not notify one or more of the Defendants by communicating a specific charge that the accused products and methods infringed, then LPL can only recover damages for infringement that occurred after it sued those Defendants on May 13, 2005.

Source

AIPLA Model Instructions, Version 1.1, February 2006; *Amsted Indus. Inc. v. Buckeye Steel Castings Co.,* 24 F.3d 178, 187 (Fed. Cir. 1994); *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1335 (Fed. Cir. 2001); *Philips Electronics North America Corp. v. Contec Corp.*, 312 F.Supp.2d 649, 652 (D. Del. 2004); *SRI Int'l, Inc. v. Advanced Tech. Lb., Inc.*, 127 F.3d 1462, 1469 (Fed. Cir. 1997); 35 U.S.C. § 287(a); *Soverain Software LLC v. Amazon.com, Inc.*, 383 F.Supp.2d 904, 907-08.

**5.9    CLOSING STATEMENT - DAMAGES**

In determining the issue of damages, the Court instructs you that the law does not permit an award of a greater sum than the monetary loss which the patent owner has suffered as a result of the alleged infringement.  If, under the Court's instructions, you find LPL is entitled to damages, in fixing the amount of such damages you may not include and/or add to an otherwise just award any sum for purposes of punishing the defendant or to set an example.

Source

Uniform Jury Instructions for Patent Cases In The United States District Court For The District Of Delaware (1993).

**5.10    CURATIVE INSTRUCTION**

The fact that I have instructed you regarding damages should not be construed as intimating any view of the Court as to which party is entitled to prevail in this case.  Instructions regarding damages are given for your guidance in the event that the evidence leads you to find in favor of LPL.

<u>Source</u>

Uniform Jury Instructions for Patent Cases In The United States District Court For The District Of Delaware (1993).

**6.**    <u>**EXCEPTIONAL CASE**</u>

LPL does not believe that an instruction on "EXCEPTIONAL CASE" should be included.  LPL is not submitting a proposed instruction on this topic because LPL does not believe that the issue of exceptionality is properly submitted to the jury.  Defendants submit the following instruction on "EXCEPTIONAL CASE".

**6.1    DEFENDANTS PROPOSED INSTRUCTION ON "EXCEPTIONAL CASE"**

One of your duties as jurors is to decide whether this is an "exceptional case."  This case is "exceptional" if you find that LPL knew, or should have known with reasonable investigation, that this lawsuit was baseless.  Thus, if you find that LPL sued the Defendants in spite of the fact that it knew (or should have known) the patent was invalid or not infringed, the case is exceptional.  The law allows you to compensate the Defendants for their attorneys' fees in an exceptional case.

<u>Source</u>

*Stephens v. Tech Int'l, Inc.*, 393 F.3d 1269 (Fed. Cir. 2004); *Evident Corp. v. Church & Dwight Co.*, 399 F.3d 1310, 1316 (Fed. Cir. 2005); *Hughes v. Novi American, Inc.*, 724 F.2d 122, 125 (Fed. Cir. 1984); *Realtek Semiconductor Corp. v. Marvell Semiconductor, Inc.*, 2005 WL 3634617 (N.D. Cal. 2005).

7.    **LACHES**

The Defendants do not believe that an instruction on "Laches" should be included. The Defendants informed LPL on the morning of July 19, 2006 that they are not asserting laches as a defense and further noted that laches was not included as a defense in the July 5, 2006 Joint Proposed Pretrial Order (D.I. 279). LPL submits this instruction in light of Defendants' arguments during opening statements, which maintained that LPL had waited an unreasonable period of time before filing suit. LPL submits the following proposed instruction on "Laches."

7.1    **LPL'S PROPOSED INSTRUCTION ON "LACHES"**

The Defendants raise the affirmative defense of laches; that is, they contend that LPL waited too long in bringing suit and that the defendants were prejudiced by the delay.

To prevail on a laches defense, the defendants must prove two factors by a preponderance of evidence in the case: (1) LPL delayed filing suit for an unreasonable and inexcusable length of time after it knew or reasonably should have known of its cause of action against the defendants; and (2) the defendants were materially prejudiced by the delay. The defense of laches bars recovery of damages for any infringing activity that occurred prior to the filing of suit.

The length of time which may be deemed unreasonable has no fixed boundaries but rather depends on the circumstances. The period of delay is measured from the time LPL knew or reasonably should have known of each Defendant's alleged infringing activities to the date of suit. In determining whether the delay was unreasonable, you should consider any reasons or justification offered by LPL for the delay.

A finding of laches cannot be based on mere delay in bringing suit. Rather, the defendants must show material prejudice resulted from LPL's delay. Material prejudice may either be economic or evidentiary. The defendants may demonstrate evidentiary prejudice by

630273v1

88

showing impairment of its ability to present a full and fair defense on the merits of the case, due to the loss of records, the death of a witness or the unreliability of memories of long past events.

Economic prejudice is a more difficult concept. Economic prejudice may consist of the loss of monetary investments or damages incurred which would have been prevented by earlier suit. Such damages, however, cannot merely be those attributable to a finding of infringement. Rather, the defendants must demonstrate that, during the period of delay, it changed its economic position because of the delay. On the other hand, the law does not permit LPL to intentionally remain silent and allow its damages to escalate, where the defendants, if they had been given notice, could have switched to a noninfringing product.

In determining whether the defense of laches applies, you must take into account all the particular facts and circumstances of the case and weigh the equities of the parties. You should also consider whether LPL has demonstrated that one or more of the defendants was guilty of egregious conduct or committed misdeeds toward LPL which preclude application of the defense in this case. Because laches is an equitable defense, it should be applied only if under the circumstances one or more of the defendants acted in ignorance or good faith.

Source

*A.C. Aukerman Co. v.R.L. Chaides Const. Co.*, 960 F.2d 1020, 1032 (Fed. Cir. 1992); *Sun Studs, Inc. v. ATA - Equipment Leasing, Inc.*, 872 F.2d 978 (Fed. cir. 1989).

630273v1

8.     **DELIBERATION AND VERDICT**

8.1     **INTRODUCTION**

That concludes the part of my instructions explaining the rules for considering some of the testimony and evidence.  Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case.  If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can.  I may have to talk to the lawyers about what you have asked, so it may take me some time to get back to you. Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is Juror No. 1.

One more thing about messages.  Do not ever write down or tell anyone how you stand on your votes.  For example, do not write down or tell anyone that you are split 4- 4, or 6-2, or whatever your vote happens to be.  That should stay secret until you are finished.

Source

Uniform Jury Instructions for Patent Cases In The United States District Court For The District Of Delaware (1993).

**8.2     UNANIMOUS VERDICT**

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges -- judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form. You will then return to the courtroom and your foreperson will give your verdict.

It is proper to add the caution that nothing said in these instructions and nothing in the form of verdict is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find. What the verdict shall be is the sole and exclusive duty and responsibility of the jury.

<u>Source</u>

Uniform Jury Instructions for Patent Cases In The United States District Court For The District Of Delaware (1993).

**8.3     DUTY TO DELIBERATE**

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room.  In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement.  Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say.  Try your best to work out your differences.  Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with.  In the end, your vote must be exactly that -- your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say.  So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

Source

Uniform Jury Instructions for Patent Cases In The United States District Court For The District Of Delaware (1993).

**8.4     COURT HAS NO OPINION**

Let me finish up by repeating something that I said to you earlier.  Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourselves based on the evidence presented.

<u>Source</u>

Uniform Jury Instructions for Patent Cases In The United States District Court For The District Of Delaware (1993).