Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

LG.PHILIPS LCD CO., LTD.,           )
                                    )
            Plaintiff,              )
                                    )
      v.                            ) C.A. No. 05-292 (JJF)
                                    )
TATUNG COMPANY; TATUNG              )
COMPANY OF AMERICA, INC.;           )
CHUNGHWA PICTURE TUBES,             )
LTD.; and TATUNG COMPANY OF         )
AMERICA, INC.,                      )
                                    )
            Defendants.             )
                                    )

CONFIDENTIAL - ATTORNEYS EYES ONLY

RULE 30(b)(6) DEPOSITION OF

TATUNG COMPANY OF AMERICA, INC.

DEPOSITION OF MIKE LEE

FRIDAY, JUNE 23, 2006

9:07 A.M.

Reported By:

Lindsay Pinkham, CSR 3716, RPR, CRP, CRR

---

DIGITAL EVIDENCE GROUP

1111 16th Street, NW Suite 410

Washington, DC 20036

(202) 232-0646

## LEE, MIKE 2006-06-23
Lee, Mike Merged PA DC

```
 2   No. 5019002?
 3   A. Yes.
 4   Q. So Tatung America first learned of the '002
 5      patent on or about May 13, 2005; correct?
 6   A. That's correct.
 7   Q. Which is around the time that LPL filed its
 8      complaint in this case; correct?
 9   A. That's correct.
10   Q. Has Tatung America had any communications with
11      LPL concerning the '002 patent?
12   A. No.
13   Q. Since the time that Tatung America learned of
14      the '002 patent, has Tatung America made any effort to
15      make sure that Tatung America is not selling products
16      that infringe the '002 patent?
17   A. We took the complaints very seriously, so we
18      consult with Tatung Taipei and retain our attorney for
19      this case.
20   Q. Has Tatung America relied on its attorneys
21      to -- well, let me ask you this way. Other than any
22      advice from attorneys, has Tatung America done anything
23      to insure that it is not infringing the '002 patent?
24   A. Yes, through Tatung Taipei we get a message
25      from CPT through Tatung Taipei there's no patent
161: 1   infringement on this case.
 2      MS. FAN: The witness -- to preserve
 3      attorney-client privilege, the witness is instructed not
 4      to answer about the substance of communications made
 5      with attorneys or with legal departments
 6      THE WITNESS: This is the communication between
 7      Tatung UA and Tatung Taipei.
 8   Q. BY MR. CHRISTENSON: And that's not a
 9      communication involving attorneys; correct?
10      MS. FAN: Or legal departments. The witness is
11      instructed.
12   Q. BY MR. CHRISTENSON: What type of communication
13      did Tatung America have with Tatung Taipei concerning
14      whether products infringed the '002 patent?
15      MS. FAN: The witness may only answer with
16      respect to communications that are outside of the legal
17      department of Tatung Taipei. If it's a communication
18      with the legal department or with attorneys of Tatung
19      Taipei, then the witness is instructed not to answer.
20   Q. BY MR. CHRISTENSON: Earlier, Mr. Lee, you
21      referred to communications between Tatung America and
22      Tatung Taipei; correct?
23   A. Tatung Taipei's legal department.
24      MR. CHRISTENSON: So are you instructing him
25      not to answer to that question?
162: 1      MS. FAN: I'm sorry. Which question? I don't
 2      know which question you're referring to.
 3   Q. BY MR. CHRISTENSON: What type of communication
 4      did Tatung America have with Tatung Taipei concerning
 5      whether products infringed the '002 patent?
 6      MS. FAN: Yes, I instruct the witness not to
 7      answer based on attorney-client communication, work
 8      product, and also joint defense privilege.
 9   Q. BY MR. CHRISTENSON: Will you follow that
10      instruction?
11   A. Yes. I have to follow that.
12   Q. Other than anything done by attorneys or legal
13      departments, has Tatung America had any communication
14      concerning whether its products infringe the '002
15      patent?
16   A. No.
17   Q. Other than anything done by attorneys or legal
18      departments, has Tatung America done any analysis
19      concerning whether products infringe the '002 patent?
20      MS. FAN: The witness to instructed to answer
21      yes or no.
22      THE WITNESS: No.
23   Q. BY MR. CHRISTENSON: Other than anything done
24      by attorneys or legal departments, has Tatung America
25      done any investigation regarding whether products
163: 1      infringe the '002 patent?
 2      MS. FAN: The witness is instructed to answer
 3      "yes" or "no."
 4   A. No.
 5   Q. BY MR. CHRISTENSON: Other than anything done
 6      by attorneys or legal departments, has Tatung America
 7      done any analysis or investigation regarding the
 8      validity of any claims in the '002 patent?
 9      MS. FAN: The witness is instructed to answer
10      yes or no.
11      THE WITNESS: No.
12   Q. BY MR. CHRISTENSON: Other than anything done
13      by attorneys or legal departments, has Tatung America
14      done any analysis or investigation regarding the
15      enforceability of the '002 patent?
16      MS. FAN: The witness is instructed to answer
17      yes or no.
18      THE WITNESS: No.
19   Q. BY MR. CHRISTENSON: Since Tatung America
20      learned of the '002 patent, has Tatung America continued
21      to use CPT modules in some of the products that Tatung
22      America sells in the U.S.?
23   A. Yes.
24   Q. Has Tatung America asked CPT to change the way
25      that CPT makes any of the modules that it supplies for
164: 1      Tatung America's products since the time that Tatung
 2      America learned of the '002 patent?
 3   A. No.
 4      MR. CHRISTENSON: Counsel, can I assume that
 5      Tatung America is standing on attorney-client privilege
 6      and not relying on advice of counsel for part of its
 7      defense in this case?
 8      MS. FAN: That's correct as of this date.
 9      MR. CHRISTENSON: Well, this is the date that
10      we're deposing Tatung America, so if Tatung America
11      plans to waive advice of counsel -- excuse me -- if
12      Tatung America plans to rely on advice of counsel and
13      waive the privilege, I need to know that now.
14      MS. FAN: Right now Tatung America has no
15      plans, right now.
```

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

LG. PHILIPS LCD CO., LTD.,         )
                                   )
        Plaintiff,                )
                                   )
                                   )
vs.                                ) No. CA-05-292 (JJF)
                                   )
TATUNG COMPANY; TATUNG COMPANY OF  )
AMERICA, INC., CHUNGHWA PICTURE    )
TUBES, LTD.; and VIEWSONIC         )
CORPORATION,                       )
                                   )
        Defendants.               )

CONFIDENTIAL - ATTORNEYS EYES ONLY

RULE 30 (b) (6) DEPOSITION OF CHUNGHWA PICTURE TUBES

BELLE CHANG

TUESDAY, MAY 23, 2006

9:17 A.M.

Reported By:

Dave Stewart, CSR 4543

---

DIGITAL EVIDENCE GROUP

1111 16th Street, NW Suite 410

Washington, DC 20036

(202) 232-0646

## Page 102

1  for identification.)
2       THE VIDEOGRAPHER: We're back on the record,
3  the time is 4:25
4  BY MR. CHRISTENSON:
5    Q  After CPT received LPL's February 2002 letter,
6  did CPT take any steps to determine whether any of its
7  products were manufactured in a way that infringed the
8  002 Patent?
9       MR. YOVITS: Objection, the question seeks
10 privileged information and I instruct the witness not to
11 answer that.
12 BY MR. CHRISTENSON:
13   Q  Other than communicating with any attorneys,
14 did CPT do anything after receiving the February 8,
15 2002 letter to determine whether its products were
16 manufactured in a way that infringed any claim in the 002
17 Patent?
18      MR. YOVITS: Objection, the question seeks
19 privileged information and I instruct the witness not to
20 answer it.
21      MR. CHRISTENSON: So the record is clear, what
22 is the basis of the instruction? Is it attorney-client
23 privilege?
24      MR. YOVITS: The attorney-client privilege.
25 Probably also work product

## Page 103

1       MR. CHRISTENSON: We disagree but --
2    Q  Miss Chang, will you follow your attorney's
3  instruction and refuse to answer that question?
4    A  Yes, I will follow my attorney's instruction.
5       MR. CHRISTENSON: Mr. Yovits, it's my intention
6  to ask the witness questions to determine what, if
7  anything, CPT may have done to avoid willfully infringing
8  the 002 Patent. Do I understand that it is your
9  intention to instruct the witness not to answer those
10 questions on grounds of privilege?
11      MR. YOVITS: My intention is to instruct the
12 witness not to answer questions regarding confidential
13 communications with the Legal Department and regarding
14 instructions given by the Legal Department.
15 BY MR. CHRISTENSON:
16   Q  Miss Chang, other than confidential
17 communications with the Legal Department and instructions
18 by the Legal Department, did CPT do anything to insure
19 that it was not willfully infringing the 002 Patent after
20 receiving the February 8, 2002 letter?
21      MR. YOVITS: Objection, calls for privileged
22 information, instruct the witness not to answer
23 BY MR. CHRISTENSON:
24   Q  Miss Chang, will you follow Counsel's
25 instruction and decline to answer that question?

## Page 104

1    A  Yes, I will follow my attorney's instruction
2       MR. CHRISTENSON: Mr. Yovits, the problem that
3  we have now is that we cannot assess CPT's conduct after
4  learning of the patent suit, which is prejudicial and
5  which will prevent us from addressing the issue of
6  willfulness in this case
7       So if you continue to refuse to allow the
8  witness to answer these questions, we will have to seek
9  appropriate relief from the Court on this issue.
10      MR. YOVITS: To this point, Defendants have not
11 elected to waive any privilege, in defense of any
12 allegations of willful infringement. So we're just not
13 prepared to waive the privilege at this point.
14      MR. CHRISTENSON: I think the problem that we
15 have is you're instructing the witness not to answer
16 questions when I'm not asking about advice of counsel.
17      Do you continue to -- do you intend to continue
18 to do so?
19      MR. YOVITS: I believe that your questions are
20 designed to get at instructions from the Legal Department
21 and that is why I'm instructing not to answer. Those
22 questions seek privileged information. And I will stand
23 on those objections.
24      MR. CHRISTENSON: I guess we'll have to a
25 address it with the Court.

## Page 105

1    Q  Miss Chang, did CPT obtain any advice of
2  counsel concerning the 002 Patent after it received the
3  February 8, 2002 letter?
4       MR. YOVITS: The witness may answer "yes" or
5  "no"
6       THE WITNESS: Not after the letter dated in
7  February of 2002.
8  BY MR. CHRISTENSON:
9    Q  Apart from working with -- strike that
10   Independent of any advice of counsel, did CPT
11 internally conduct any investigation of its products
12 related to the 002 Patent after receiving the February 8,
13 2002 letter?
14      MR. YOVITS: The witness may respond as to
15 whether or not there was anything done independently of
16 the Legal Department. Without instructions from the
17 Legal Department.
18      THE WITNESS: Other than the instruction from
19 the Legal Department, no.
20 BY MR. CHRISTENSON:
21   Q  What did CPT do internally at the instruction
22 of counsel after receiving the February 8, 2002 letter?
23      MR. YOVITS: Objection, the question seeks
24 privileged information and I instruct the witness not to
25 answer it.

Pages 102 to 105
www.digitalevidencegroup.com   Digital Evidence GroupC'rt 2006   (202) 232-0646
7836fb33-aecb-4a25-b7d2-b582439daada