IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LG. PHILIPS LCD CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 05-292 (JJF) |
| | ) | |
| v. | ) | |
| | ) | **DEMAND FOR JURY TRIAL** |
| TATUNG COMPANY; | ) | |
| TATUNG COMPANY OF AMERICA, INC.; | ) | |
| CHUNGHWA PICTURE TUBES, LTD.; | ) | **REDACTED - PUBLIC VERSION** |
| AND VIEWSONIC CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' OPPOSITION TO MOTION TO EXCLUDE EVIDENCE OF LITIGATION RELATED TO OTHER PATENTS

Of Counsel:
Julie S. Gabler
Howrey LLP
550 South Hope Street, Suite 1100
Los Angeles, CA 90071
(213) 892-1800

Glenn W. Rhodes
Teresa M. Corbin
Howrey LLP
525 Market Street, Suite 3600
San Francisco, California 94105
(415) 848-4900

Dated: July 12, 2006

Robert W. Whetzel (#2288)
whetzel@rlf.com
Steven J. Fineman (#4025)
fineman@rlf.com
Matthew W. King (#4566)
king@rlf.com
Richards, Layton & Finger
One Rodney Square, P.O. Box 551
Wilmington, DE 19899
(302) 651-7700

Attorney for Defendants/Counterclaimants
Tatung Company, Tatung Company of
America, Chunghwa Picture Tubes, Ltd. and
ViewSonic Corporation

# TABLE OF CONTENTS

Page

Table of Authorities .................................................................................................... ii

I. INTRODUCTION ................................................................................................. 1

II. STATEMENT OF FACTS .................................................................................... 3

III. ARGUMENT ......................................................................................................... 3

    A. Evidence Of LPL's Litigation Against CPT In The District Court In California At The Time That LPL Asserted The '002 Patent Against CPT Is Probative And Necessary For The Jury To Understand CPT's State Of Mind To Rebut Plaintiff's Claim For Willful Infringement In This Action ............ 3

        1. Evidence Of The Existence Of The California Litigation Is Probative Of CPT's State Of Mind And Necessary To Rebut Plaintiff's Claim For Willful Infringement In This Action. ........................ 3

        2. Evidence of the Existence of the California Litigation Is Probative of The Date that LPL Provided Sufficient Actual Notice to Start the Damages Period. ........................................................................ 6

    B. Evidence of LPL's Assertion of the '002 Patent Against CPT's Customers, Who Were Not Parties to LPL and CPT's Licensing Negotiations, is Relevant to Willful Infringement and is Probative of LPL's Bad Faith Litigation Conduct for Proving that this is an Exceptional Case Under Section 285 .......................................................................................................... 8

    C. LPL's Pursuit, And Ultimate Abandonment, of U.S. Patent No. 6,738,121 is Highly Probative of LPL's Bad Faith Litigation Tactics To Establish That this is An "Exceptional Case". .................................................................. 8

    D. Impeachment ................................................................................................. 12

V. CONCLUSION .................................................................................................... 13

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Aeration Processes, Inc. v. Walter Kidde & Co.*,
   177 F.2d 772 (2d Cir. 1949)..................................................................................................11

*Amsted Industrial Inc. v. Buckeye Steel Castings Co.*,
   24 F.3d 178 (Fed. Cir. 1994)....................................................................................................6

*Applera Corp. v. MJ Research, Inc.*,
   303 F. Supp. 2d 130 (D. Conn. 2004).......................................................................................5

*Brooks Furniture Manufacturing, Inc. v. Dutailer International, Inc.*,
   393 F.3d 1378 (Fed. Cir. 2005)..............................................................................................10

*Cybor Corp. v. FAS Techs.*,
   138 F.3d 1448 (Fed. Cir. 1998)..............................................................................................10

*In re Diet Drugs Products Liability Litigation*,
   369 F.3d 293 (3d.Cir. 2004).............................................................................................2, 12

*Electro Medical System, S.A. v. Cooper Life Sciences, Inc.*,
   34 F.3d 1048 (Fed. Cir. 1994)..................................................................................................4

*Eltech System Corp. v. PPG Industrial, Inc.*,
   903 F.2d 805 (Fed. Cir. 1990)................................................................................................10

*Gart v. Logitech, Inc.*,
   254 F.3d 1334 (Fed. Cir. 2001)................................................................................................6

*George P. Converse & Co., Inc. v. Standard Packaging Corp.*,
   125 U.S.P.Q. (BNA) 55 (D.N.J. 1959) ..................................................................................11

*Hughes v. Novi America, Inc.*,
   724 F.2d 122 (Fed. Cir. 1984)................................................................................................11

*ID Sec. System Can., Inc. v. Checkpoint System, Inc.*,
   198 F. Supp. 2d 598 (E.D. Pa. 2002) .......................................................................................5

*Kessler v. Eldred*,
   206 U.S. 285 (1907).................................................................................................................8

*Loctite Corp. v. Fel-Pro, Inc.*,
   667 F.2d 577 (7th Cir. 1981) .................................................................................................11

*Mendenhall v. Cedarapids, Inc.*,
   5 F.3d 1557 (Fed. Cir. 1993) ................................................................................ 6

*Orthokinetics Inc. v. Safety Travel Chairs, Inc.*,
   806 F.2d 1565 (Fed. Cir. 1986) ............................................................................ 4

*Plymouth Rubber Co. v. Minn. Mining and Manufacturing Co.*,
   203 F. Supp. 595 (D. Mass. 1962) ........................................................................ 8

*Read Corp. v. Portec, Inc.*,
   970 F.2d 816 (Fed. Cir. 1992) .............................................................................. 4

*SRI International, Inc. v. Advanced Tech. Laboratories, Inc.*,
   127 F.3d 1462 (Fed. Cir. 1997) ............................................................................ 6

*Stephens v. Tech International, Inc.*,
   393 F.3d 1269 (Fed. Cir. 2004) .......................................................................... 10

*Tristrata Tech., Inc. v. ICN Phar., Inc.*,
   313 F. Supp. 2d 405 (D. Del. 2004) ..................................................................... 4

**STATUTES**

35 U.S.C. § 285 ................................................................................................... 1, 3, 8, 9

35 U.S.C. § 287(a) ....................................................................................................... 6

35 U.S.C. § 287(b)(2) .................................................................................................. 6

I.  **INTRODUCTION**

Defendants Chunghwa Picture Tubes, Ltd. ("CPT"), ViewSonic Corporation ("ViewSonic"), Tatung Company ("Tatung"), and Tatung Company of America ("Tatung USA") (collectively "Defendants") proffer the testimony of four witnesses, and a limited number of exhibits to rebut Plaintiff's willful infringement claim and prove that this is an exceptional case under 35 U.S.C. § 285. (*See Defendants' Proffer.*)[1] Both issues - Defendant's good faith defense for willful infringement and affirmative fees claim based on Plaintiff's bad faith - require an examination of Defendants' and LPL's state of mind. Both issues can be established by the same set of facts. Thus, Defendants are offering limited and narrowly tailored testimony and select exhibits necessary for proving three discrete and important issues:

First, Defendants proffer the testimony of a CPT employee knowledgeable about LPL's pre-litigation demand that CPT take a license to LPL's patent portfolio of four hundred and forty seven LPL patents, which included in that list the '002 patent. This employee will testify that after CPT received this list of patents from LPL in the summer of 2002, LPL filed suit against CPT and CPT's customers in California federal district court on August 29, 2002 asserting that CPT infringes a different set of patents. Significantly LPL did *not* accuse CPT of infringing the '002 patent until three years later when it filed this action. This evidence provides important context for the jury to understand CPT's state of mind as to whether CPT believed that LPL was accusing CPT of infringing the '002 patent, and is highly probative of LPL's claim for willful infringement. (*See Defendants' Proffer.*)

Second, Defendants proffer the testimony of a CPT employee knowledgeable that LPL filed suit against not only CPT, but also CPT's customers, asserting that these disinterested

---

[1] Defendant's Proffer of Evidence of Litigation Related to Other Patents, attached hereto as Exhibit 1.

companies, who were not privy to LPL and CPT's licensing dispute, infringe LPL's patents by incorporating CPT's panels into their products. This evidence of LPL's coercive conduct is directly supportive and highly probative of LPL's subjective bad faith in connection with its litigation conduct for proving that this is an exceptional case under Section 285. Defendants offer Exhibits I and J in support of this testimony. (*See Defendants' Proffer.*)

Third, Defendants proffer the testimony of a CPT employee who is knowledgeable and would testify that LPL asserted and then subsequently withdrew the '121 patent in this action when faced with formidable evidence that LPL sold products embodying the '121 invention more than a year before the critical date. This evidence is highly probative of both CPT's and LPL's states of mind when this action was filed in Delaware federal district court. (*See Defendants' Proffer.*)

Defendants have elected to withdraw the vast majority of exhibits that are the subject of Plaintiff's motion in light of the Court's ruling limiting the quantity of exhibits that each party is permitted to offer at trial. Contrary to Plaintiff's assertion, Defendants do not plan to offer testimony in Defendants' case-in-chief about (a) LPL's prior litigation with non-party NEC Corporation, (b) LPL's declaratory judgment action filed against the inventors of CPT's patents, (c) LPL's patent action filed in the United Kingdom, or (d) the testimony of certain inventors of some of CPT's patents.[2] (*See Plaintiff's Motion In Limine ("MIL") at 1, 3-4.*) This moots the vast majority of Plaintiff's motion. The remaining "parade of horribles" in Plaintiff's motion about how Defendants will unduly expand the length of trial and scope of issues in dispute, focus

---

[2] Defendants have no plans to use this evidence in its case-in-chief. However, Defendant's respectfully request that the Court's order makes it clear that Defendants are not barred from using LPL's party admissions made in this or prior litigation as necessary for impeachment purposes. *See In re Diet Drugs Products Liability Litigation*, 369 F.3d 293, 316 (3d. Cir. 2004).

on irrelevant topics that will confuse the jury, prejudice LPL, and "change[] this trial from a one-patent case to a multiple patent case at the eleventh hour" is empty rhetoric.

## II. STATEMENT OF FACTS

Defendants proffer the testimony of two employees in CPT's legal department, ViewSonic's CFO and Tatung's Senior Sales Manager for Display Business Unit and a limited number of exhibits to rebut Plaintiff's willful infringement claim and to prove that this is an exceptional case under 35 U.S.C. § 285. Defendants' proposed testimony and exhibits are set forth with specificity in Defendants' proffer attached hereto as Exhibit 1. (*See Defendants' Proffer.*)

## III. ARGUMENT

### A. Evidence Of LPL's Litigation Against CPT In The District Court In California At The Time That LPL Asserted The '002 Patent Against CPT Is Probative And Necessary For The Jury To Understand CPT's State Of Mind To Rebut Plaintiff's Claim For Willful Infringement In This Action.

#### 1. Evidence Of The Existence Of The California Litigation Is Probative Of CPT's State Of Mind And Necessary To Rebut Plaintiff's Claim For Willful Infringement In This Action.

Defendants proffer the testimony of a CPT employee knowledgeable about LPL's pre-litigation demand that CPT license LPL's patent portfolio of 447 patents in July 2002. In connection with that testimony, Defendants also proffer testimony of CPT's employee that LPL shortly thereafter filed suit against CPT and CPT's customers in California federal district court on August 29, 2002, asserting that CPT infringes a *different* set of patents, and significantly *did not* accuse CPT of infringing the '002 patent until three years later when it filed this action. This evidence, which Plaintiff seeks to exclude in this motion, provides important context for the jury to understand CPT's state of mind about whether LPL was asserting the '002 patent, which is a

critical component of CPT's defense to Plaintiff's claim for willful infringement. (*See Defendants' Proffer.*)

"Willful infringement is a question of fact, probing whether an infringer held a reasonable belief that the patent it infringed was invalid, not infringed, or unenforceable." *See Tristrata Tech., Inc. v. ICN Phar., Inc.*, 313 F. Supp. 2d 405, 412 (D. Del. 2004); *Orthokinetics Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1580 (Fed. Cir. 1986) (willfulness depends on the totality of the circumstances). In making its willfulness determination, the trier of fact must consider mitigating or ameliorating factors. *See Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed. Cir. 1992). Deliberate purpose to infringe is not found where the validity of the patent and any possible infringement is open to honest doubt. *Id. See also Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1057 (Fed. Cir. 1994) (reversing willful infringement ruling where accused infringer testified as to good faith belief that the patent was invalid or not infringed).

LPL's California sidemount litigation is relevant to whether Defendants reasonably believed they were not infringing the '002 patent and that LPL was not asserting this patent against CPT, a central inquiry in the willful infringement analysis. In February 2002, LPL sent CPT a form letter, listing "exemplary" patents including the '002 patent. In June 2002, LPL first presented its infringement claims to CPT, and notably did not include the '002 patent. All side mount patents listed on LPL's Summer 2002 claim charts were named in the complaint filed by LPL in California in August 2002 (as well as the two process patents mentioned in a 2002 meeting). But when LPL filed suit in California in August 2002, it did not include the '002 patent. When LPL filed four more lawsuits in April 2003, it did not name the '002 patent. The jury need not resolve any disputed issue between these parties in the California litigation.

Rather, this evidence is offered to prove that Defendants had a reasonable basis for believing that LPL was not asserting infringement of the '002 patent and that CPT was not infringing the '002 patent. These undisputed facts are also probative of when CPT had actual notice of infringement of the '002 patent.

LPL's filing of several lawsuits on unenforceable patents proves that Defendants had reason to further doubt LPL's motives and question LPL's good faith intentions.[3] Once Defendants discovered that the side mount patents were unenforceable when LPL first sued CPT, Tatung and Tatung USA in 2002, and LPL refused to withdraw its complaint until CPT filed its summary judgment motion, Defendants became suspicious of LPL's motives. Defendants, in good faith, had good reason to doubt the integrity of LPL's patent portfolio and LPL's motives in bringing these actions against CPT and users of its panels. This evidence goes directly to CPT's state of mind and is highly relevant to LPL's claim for willful infringement.

LPL contends that the California side mount litigation is "unrelated" and that Defendants will seek adjudication of disputed issues in that litigation before this jury.[4] MIL at 3 and 5. This

---

[3] *Defendants' Proffer*, Order Re: Chunghwa Picture Tubes, Ltd.'s Motion for Summary Judgment To Dismiss Side-Mount Patent Infringement Claims for Lack of Standing ("Order") at 10, attached thereto as Exhibit H and Amended Order, attached thereto as Exhibit L, dismissing LPL's sidemount infringement complaints against Viewsonic, and five other companies. Ownership of the side mount technology was addressed by an arbitration panel last month. Contrary to LPL's assertion that the panel found in its favor, *see* MIL at 3 n.2, the panel ruled, "[B]ecause we found that sidemounting was conceived of and reduced to practice under the DMA, and that all of the intellectual property rights flowing therefrom would have accrued to CPT but for the waivers of its predecessors in interest, we deny all counterclaims brought by the LG parties." The panel reached this decision, in part, because, "We do not find credible any of the testimony presented by the LG parties that sidemounting was developed by it separately[.]" The panel also ruled that DEC's rights under the joint development agreement passed to CPT.

[4] In support of its argument that all other litigation involving these parties must be excluded, LPL cites and discusses two cases precluding defendants from using prior patent litigation to establish a Sherman Act violation: *Applera Corp. v. MJ Research, Inc.*, 303 F. Supp. 2d 130 (D. Conn. 2004) and *ID Sec. Sys. Can., Inc. v. Checkpoint Sys., Inc.*, 198 F. Supp. 2d 598 (E.D. Pa. 2002). Both *Applera* and *ID Security Systems* are inapposite. Here, Defendants will not use the proffered evidence to assert antitrust violations in this case.

is wrong. Defendants offer only the undisputed facts that LPL filed five lawsuits against Defendants and other parties in August 2002 (CPT, Tatung and Tatung USA) and May 2003 (ViewSonic) based on a set of side mount patents that Judge Marshall held were unenforceable from September 1999 to June 2003. Defendants proffer Judge Marshall's orders so holding and brief testimony of a sponsoring witness. (*Defendants' Proffer*, Exhibits H and I). The case cited by LPL in support of exclusion, *Mendenhall v. Cedarapids, Inc.*, 5 F.3d 1557 (Fed. Cir. 1993), actually supports the admission of this prior ruling for the purpose of proving Defendants' good faith belief that they did not infringe the '002 patent. "[I]t may be appropriate to admit evidence of prior litigation," the *Mendenhall* court ruled, so long as that evidence is relevant and probative of an issue in the second case. 5 F.3d at 1573. Thus, *Mendenhall*, the Federal Circuit affirmed a trial court's decision to allow the introduction of some evidence of a prior ruling involving the same patent infringement plaintiff, and only barred its use for the purpose of proving infringement in the second case. *Id.*

### 2. Evidence of the Existence of the California Litigation Is Probative of The Date that LPL Provided Sufficient Actual Notice to Start the Damages Period.

This evidence is also probative of when LPL provided actual notice of infringement of the '002 patent to the Defendants, and whether it first provided adequate notice upon the filing of this lawsuit.[5] Where, as here, a patentee does not mark its products to notify the public that its product is patented, "damages may be recovered only after actual notice is given." *SRI Int'l, Inc. v. Advanced Tech. Lab., Inc.*, 127 F.3d 1462, 1469 (Fed. Cir. 1997); 35 U.S.C. § 287(a). *See also* 35 U.S.C. § 287(b)(2) (providing that an importer of an infringing product is not liable for infringement under 35 U.S.C. § 271(g) unless it "had notice of infringement with respect to that

product"). Actual notice is given when the patentee affirmatively communicates to the alleged infringer a specific charge of infringement by a specific accused product or device. *See Gart v. Logitech, Inc.*, 254 F.3d 1334, 1345 (Fed. Cir. 2001). The focus of this inquiry is on the affirmative actions of the patentee. *See Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994).

LPL's form notice letters to CPT and other manufacturers is probative of whether LPL provided actual notice of infringement. The fact that LPL sent canned allegations of the value of its patents and the need to review its portfolio to several manufacturers, but did not sue any other manufacturers, would help the jury to determine whether LPL provided actual notice to CPT in its 2002 correspondence, if the Defendants' motion for summary judgment is not granted. The other patents set forth in LPL's initial letter and in its Summer 2002 claim charts must be referenced for the jury to assess whether LPL gave actual notice of infringement of the '002 patent at those times.[6] Moreover, the fact that LPL did not sue on the '002 patent in August 2002 when it first sued CPT, Tatung and Tatung USA or in April 2003 when it first sued ViewSonic indicates that LPL did not provide any Defendant with actual notice that the '002 patent was infringed.

---

[5] Defendants have a motion for summary judgment on this issue pending before this Court. In the event that Defendants' motion fails, this issue will go to the jury.

[6] On this point, LPL itself cannot avoid discussion of other patents. *See* Plaintiff's Answering Brief In Opposition To Defendants' Motion for Partial Summary Judgment On Damages at 4, 6 (representing that "LPL discussed the '002 Patent as well as *others*," and presented detailed claim charts regarding certain *other* LPL patents") (emphasis added).

**B.      Evidence of LPL's Assertion of the '002 Patent Against CPT's Customers, Who Were Not Parties to LPL and CPT's Licensing Negotiations, is Relevant to Willful Infringement and is Probative of LPL's Bad Faith Litigation Conduct for Proving that this is an Exceptional Case Under Section 285.**

Defendants proffer the testimony of a CPT employee knowledgeable that LPL filed suit against not only CPT, but also CPT's customers, asserting that these disinterested companies, who are not privy to LPL and CPT's licensing dispute, infringe LPL's patents by incorporating CPT's panels into their products. This evidence is directly supportive and highly probative of LPL's subjective bad faith in connection with its litigation conduct for proving that this is an exceptional case under Section 285. Defendants offer Exhibits I and J in support of this testimony. (*See Defendants' Proffer.*)

Evidence of collateral or satellite litigation can support such a finding. *See Plymouth Rubber Co. v. Minn. Mining and Mfg. Co.*, 203 F. Supp. 595, 600-01 (D. Mass. 1962) (finding "exceptional" a case where patentee had instigated litigation against an accused infringer and 13 of its customers in district courts located in three judicial circuits). In *Plymouth*, the Court also noted that no one wishes to buy anything "if with it he must buy a lawsuit." *Id.* at 600 ) quoting *Kessler v. Eldred,* 206 U.S. 285, 289 (1907)). The Court awarded fees to the accused infringer, finding that the patentee's repeated unsuccessful contentions constituted vexatious and unfair litigation. *Id.* at 601.

**C.      LPL's Pursuit, And Ultimate Abandonment, of U.S. Patent No. 6,738,121 is Highly Probative of LPL's Bad Faith Litigation Tactics To Establish That this is An "Exceptional Case."**

On May 13, 2005, LPL alleged that Defendants infringed its '121 patent and '002 patent. (LPL's Complaint.) LPL's aggressive pursuit of its assertion that Defendants infringe the '121 patent is evidenced by its motion for preliminary injunction filed on November 1, 2005. (*See*

- 8 -

Plaintiff's Motion for Preliminary Injunction filed November 1, 2005.) In its motion, LPL represented to this Court that a preliminary injunction was warranted because LPL would succeed on the merits of its patent infringement claim and would withstand any challenge to the validity of the '121 patent. Specifically, LPL represented in connection with the motion at the outset of this case that "Defendants' invalidity arguments lack substantial merit." (*See* Plaintiff's Memorandum In Support of Its Motion For Preliminary Injunction ("the '121 Memo") at 21-22.) LPL asked this Court to presume irreparable harm to LPL on the basis of its representation that it was likely to succeed in proving that the '121 patent is not invalid and is infringed by Defendants. ('121 Memo at 22, 24.)

But thereafter LPL abandoned its '121 patent infringement claim when pressed by Defendants for discovery on its on-sale bar activities. Defendants sought further discovery after it determined that LPL had sold 7,000 units of the product containing the technology embodied in the '121 to its American subsidiary prior to the critical date of the '121 patent. (Tr. of April 25, 2006 Hearing, at 4:1-6., Ex. M.) LPL counsel admitted that he had been "unable to ascertain that fact from the client," despite the fact that his firm is also prosecution counsel for LPL. (Tr. of April 25, 2006 Hearing at 39:10-40:23, Ex. M.) Rather than provide discovery on its on-sale bar activities, LPL filed a Notice of Voluntary Withdrawal of Claims Relating to U.S. Patent No. 6,738,121. *See* Notice of Voluntary Withdrawal of Claims Relating to U.S. Patent No. 6,738,121. (D.I. 180).

LPL's assertion and ultimate abandonment of its '121 patent claim, under threat of providing discovery that would further expose LPL's on-sale bar activity, is highly probative evidence of LPL's bad faith warranting an award of fees to CPT under 35 U.S.C. § 285. Section 285 provides that the "court in exceptional cases may award reasonable attorneys fees to the

prevailing party." A prevailing accused infringer may recover its fees in exceptional circumstances, such as where the patentee engaged in bad faith litigation. *See Eltech Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d 805, 810 (Fed. Cir. 1990); 35 U.S.C. § 285. The threshold issue of whether a case is exceptional is a question of fact. *See Cybor Corp. v. FAS Techs.*, 138 F.3d 1448, 1460 (Fed. Cir. 1998). The Court then makes the subsequent determination of whether a fee award is appropriate. *See Cybor*, 138 F.3d at 1460. Although LPL contends that the threshold issue of whether this case is exceptional is for the court, not the jury to decide, *see* MIL at 7, LPL cites no authority in support of this proposition.

Here, Defendants are entitled to offer evidence informing the trier of fact that LPL rushed to file this suit and sought to preliminarily enjoin Defendants from infringing the '121 patent, which if granted, would have shut down Defendants' businesses for the duration of this action, and later dropped this same patent from the suit when it became clear that LPL failed to conduct a reasonable investigation of whether there was an on-sale bar before filing this lawsuit. This information was accessible and within LPL's control *before* LPL asserted the '121 patent against Defendants in this case.[7]

A frivolous suit, like LPL's assertion of the '121 patent here, is one which "the patentee knew or, on reasonable investigation, should have known was baseless." *See Stephens v. Tech Int'l, Inc.*, 393 F.3d 1269, 1273-74 (Fed. Cir. 2004). A party's maintenance of an infringement suit on a patent, despite its pre-critical date sales, constitutes an exceptional case under Section

---

[7] In objecting to evidence of other litigation on the exceptional case issue, LPL cites *Brooks Furniture Manufacturing, Inc. v. Dutailer International, Inc.*, 393 F.3d 1378 (Fed. Cir. 2005). LPL's reliance on *Brooks Furniture* is misplaced. First, Defendants here are proffering evidence of Plaintiff's lawsuits against these same Defendants, not solely against "third parties." MIL at 8. Second, contrary to LPL's relevance objection, the *Brooks Furniture* Court seriously considered the facts regarding the patentee's litigation against third parties to make its decision on the exceptional case issue. *See Brooks Furniture*, 393 F.3d at 1384 (because patentee enforced its patent against its larger and smaller competitors alike, patentee did not act in bad faith in suing smaller competitor).

285. *See Hughes v. Novi Am., Inc.*, 724 F.2d 122, 125 (Fed. Cir. 1984) (maintaining an infringement action despite party's on-sale bar sales while giving false responses to interrogatories). Further, discovery abuses, such as a patentee's obstruction of discovery of evidence of on-sale bar activities, committed in the course of a frivolous suit support an exceptional case finding. *See Hughes*, 724 F.2d at 125; *Loctite Corp. v. Fel-Pro, Inc.*, 667 F.2d 577, 584-85 (7th Cir. 1981) (affirming a fee award where patentee only partially answered interrogatories and concealed evidence in discovery).

Defendants should be permitted to offer evidence of the '121 patent litigation to establish that this is an exceptional case under Section 285. LPL's litigation conduct with respect to the '121 patent shows that LPL sued on a patent, made accusations of irreparable harm based on that patent without conducting a reasonable investigation of its on-sale bar activities, and then dropped its claim on that patent to avoid discovery of its on-sale bar activities. Defendants should be able to offer evidence of the significant amount of effort and resources that Defendants expended to obtain discovery on the pre-critical date sales of products embodying the '121 patent from the inception of suit until May 1, 2006, and to otherwise defend itself in this litigation against the '121 patent infringement claim and preliminary injunction motion, only for LPL to abandon this claim, shortly before trial.

LPL's objection to evidence of the '121 patent litigation, on the ground that an inference that the '121 patent claim lacked merit would be impermissible, misses the point. MIL at 2. LPL's last-minute abandonment of the '121 patent *is relevant* to the undue expense borne by Defendants in *this* suit. *See Aeration Processes, Inc. v. Walter Kidde & Co.*, 177 F.2d 772, 773 (2d Cir. 1949) (defendant entitled to expenses for preparing to defend against patent infringement claim abandoned by plaintiff); *George P. Converse & Co., Inc. v. Standard*

*Packaging Corp.*, 125 U.S.P.Q. (BNA) 55, 56 (D.N.J. 1959) (withdrawal of three of five patent claims on eve of trial).

LPL also contends that the '121 patent litigation cannot be used to show that Defendants did not infringe the '002 patent. MIL at 2. However, Defendants do not seek admission of evidence of LPL's '121 patent litigation for the purpose of proving that Defendants do not infringe the '002 patent. This is plainly a "straw man" argument. Rather, as explained in this Opposition, this evidence goes directly to LPL's bad faith state of mind when it filed this lawsuit and whether this is an "exceptional case" under Section 285, supporting a fee award to Defendants. *See Aeration Processes, supra.*

### D. Impeachment

LPL objects to the admission of evidence related to the NEC litigation and settlement in these proceedings and other topics identified in LPL's motion. *See* MIL at 4-5. Defendants have no plans to use this evidence in its case-in-chief. However, Defendants are entitled and Defendants respectfully request that the Court's order is clear that Defendants are not barred from using LPL's party admissions made in this or prior litigation as necessary for impeachment purposes. *See In re Diet Drugs Prods. Liab. Litig.*, 369 F.3d 293, 315-16 (3d Cir. 2004) (broad pretrial order exclusion of evidence impermissible because it barred party from offering rebuttal or impeachment evidence).

## IV.  CONCLUSION

For the foregoing reasons, the Court should admit the evidence proffered by Defendants for the purposes set forth herein.

|  |  |
|---|---|
| Julie S. Gabler<br>Howrey LLP<br>550 South Hope Street, Suite 1100<br>Los Angeles, CA 90071<br>(213) 892-1800<br><br>Glenn W. Rhodes<br>J. James Li<br>Qin Shi<br>Howrey LLP<br>525 Market Street, Suite 3600<br>San Francisco, California 94105<br>(415) 848-4900 | /s/ Robert W. Whetzel<br>_____<br>Robert W. Whetzel (#2288)<br>whetzel@rlf.com<br>Steven J. Fineman (#4025)<br>fineman@rlf.com<br>Matthew W. King (#4566)<br>king@rlf.com<br>Richards, Layton & Finger<br>One Rodney Square, P.O. Box 551<br>Wilmington, DE 19899<br>(302) 651-7700<br>Attorney for Defendants/Counterclaimants<br>Tatung Company, Tatung Company of America, Chunghwa Picture Tubes, Ltd. and ViewSonic Corporation |

Dated:  July 12, 2006

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 12, 2006, I electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send notification of such filing, and hand delivered to the following:

> Richard D. Kirk
> The Bayard Firm
> 222 Delaware Avenue, Suite 900
> P.O. Box 25130
> Wilmington, DE 19899

I hereby certify that on July 12, 2006, I sent the foregoing document by Electronic Mail, to the following non-registered participants:

> Gaspare J. Bono
> Matthew T. Bailey
> Andrew J. Park
> Adrian Mollo
> McKenna Long & Aldridge LLP
> 1900 K Street, NW
> Washington, DC 20006

/s/ Steven J. Fineman

Steven J. Fineman (#4025)
fineman@rlf.com
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

RLF1-2917974-1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 20, 2006, I electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send notification of such filing, and hand delivered to the following:

>   Richard D. Kirk
>   The Bayard Firm
>   222 Delaware Avenue, Suite 900
>   P.O. Box 25130
>   Wilmington, DE 19899

I hereby certify that on July 20, 2006, I sent the foregoing document by Federal Express, to the following non-registered participants:

>   Gaspare J. Bono
>   Matthew T. Bailey
>   Andrew J. Park
>   Adrian Mollo
>   McKenna Long & Aldridge LLP
>   1900 K Street, NW
>   Washington, DC 20006

*/s/ Matthew W. King*
Matthew W. King (#4566)
King@rlf.com
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 651-7700

RLF1-2917974-1