# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LG. PHILIPS LCD CO., LTD., ) | |
| ) | |
| Plaintiff, ) | C.A. No. 05-292 (JJF) |
| ) | |
| v. ) | DEMAND FOR JURY TRIAL |
| ) | |
| TATUNG COMPANY; ) | **FILED UNDER SEAL** |
| TATUNG COMPANY OF AMERICA, INC.; ) | |
| CHUNGHWA PICTURE TUBES, LTD.; ) | |
| AND VIEWSONIC CORPORATION, ) | |
| ) | |
| Defendants. ) | |

## DEFENDANTS' PROFFER OF EVIDENCE OF LITIGATION RELATED TO OTHER PATENTS

| | |
|---|---|
| Of Counsel: | Robert W. Whetzel (#2288) |
| Julie S. Gabler | whetzel@rlf.com |
| Howrey LLP | Steven J. Fineman (#4025) |
| 550 South Hope Street, Suite 1100 | fineman@rlf.com |
| Los Angeles, CA 90071 | Matthew W. King (#4566) |
| (213) 892-1800 | king@rlf.com |
| | Richards, Layton & Finger |
| Glenn W. Rhodes | One Rodney Square, P.O. Box 551 |
| Teresa M. Corbin | Wilmington, DE 19899 |
| Howrey LLP | (302) 651-7700 |
| 525 Market Street, Suite 3600 | |
| San Francisco, California 94105 | |
| (415) 848-4900 | |
| | Attorney for Defendants/Counterclaimants Tatung Company, Tatung Company of America, Chunghwa Picture Tubes, Ltd. and ViewSonic Corporation |
| Dated: July 12, 2006 | |

RLF1-3036525-1

Defendants Chunghwa Picture Tubes, Ltd. ("CPT"), ViewSonic Corporation ("ViewSonic"), Tatung Company ("Tatung"), and Tatung Company of America ("Tatung USA") will offer the documentary and testimonial evidence set forth below relating to prior or pending litigation between these same parties. Specifically, Defendants proffer that (i) two representatives of defendant CPT's legal department, (ii) defendant ViewSonic's Chief Financial Officer ("CFO") and (iii) defendant Tatung's Senior Sales Manager for Display Business Unit, will testify and provide foundation for documentary evidence as follows:

### LPL's Initial Correspondence With CPT Regarding Its Portfolio Of Patents From February 2002 Through July 2002.

1. On February 8, 2002, LPL's Intellectual Property Vice-President sent a letter to CPT promoting LPL's "accomplishments" in LCD products. *See* Letter of February 8, 2002 from Jeong Hwan Lee to Cheng-Yuan Lin, attached hereto as Exhibit A.

2. In its letter, LPL identifies some examples from its "portfolio of patents" available for license, specifically: U.S. Patent Nos. 4,624,737 ("the '737 patent"); 5,019,002 ("the '002 patent"); 5,856,816; 4,885,616; 5,825,449 ("the '449 patent"); 5,835,139 ("the '139 patent"); 5,926,237 ("the '237 patent"); and 6,002,457 ("the '457 patent"). No products, patent claims, or infringement arguments were provided.

3. CPT agreed to meet with LPL to discuss LPL's offer.

4. On June 11, 2002, LPL met with CPT, and presented its infringement claims in claim charts and powerpoint slides. *See* June 11, 2002 Claim Charts and LPL's Powerpoint Slides, attached hereto as Exhibit B. These claim charts did not include the '002 patent and several other listed patents. *Id.*

5. Instead, LPL presented information about other patents mentioned in its initial February 8, 2002 letter, including its side mounting patents - the '237 patent, '457 patent, as well as U.S. Patent No. 6,373,537 ("the '537 patent") - and its process patents - the '737 patent and the '449 patent. *See* June 11, 2002 Claim Charts.

- 1 -

6. In July 2002, LPL followed up with a letter asking CPT to decide whether it would execute a licensing agreement for LPL's technology. *See* Letter of July 5, 2002 from Jeong Hwan Lee to Hsiang-Kuei Chung, attached hereto as Exhibit C.

7. CPT replied, asking for more time to study LPL's claim charts and more information. *See* Letter of July 22, 2002 from Hsiang-Kuei Chung to Jeong Hwan Lee, attached hereto as Exhibit D. In particular, CPT asked LPL for a list of the patents that LPL demanded CPT license so that CPT could estimate the value of LPL's patent portfolio. *Id.*

8. LPL responded by expressing its frustration with CPT's request for more time to study LPL's claims but simultaneously enclosed a table of 447 patents, one of which was the '002 patent, that it wanted CPT to license. *See* Letter of July 30, 2002 from Won Jun Choi to Hsiang-Kuei Chung, attached hereto as Exhibit E. LPL wrote that it expected a substantive response from CPT in the "very near future."

9. This same table of patents was sent to other manufacturers, such as AU Optronics Corporation, against whom LPL never brought suit. *See* Letter of May 8, 2002 from Won Jun Choi to James Chen, attached hereto as Exhibit F.

### LPL's Suit Against All Defendants On LPL's Unenforceable Sidemount Patents.

10. On August 29, 2002, two months after LPL presented its claim charts on the '237, '457, '537, '737 and '449 patents to CPT, LPL filed suit against CPT, Tatung and Tatung USA in the Central District of California on six patents, including all five patents listed in the June 11, 2002 claim charts. *See* Complaint for Patent Infringement ("Side mount Complaint"), attached hereto as Exhibit G. LPL did not assert the '002 patent.

11. The majority of the patents-in-suit in the California action, four out of six, were unenforceable at the inception of the suit as confirmed by Chief Judge Marshall's order granting summary judgment against LPL in the California action on grounds that the asserted patents were unenforceable at the time that the California action was filed. *See* Order Re: Chunghwa Picture Tubes, Ltd.'s Motion for Summary Judgment To Dismiss Side-Mount Patent Infringement Claims for Lack of Standing ("Order") at 10, attached hereto as Exhibit H.

12. LPL's unenforceable side mount patents - the '237, '457, '942, and '537 patents - were also unenforceable at the time that LPL presented its claims charts to CPT two months earlier in June 2002.

13. Notably, the '002 patent was not named in the August 29, 2002 complaint that LPL filed against CPT in the Central District of California. *See* Side mount Complaint.

14. On April 24, 2003, LPL first sued Viewsonic on the basis of these same unenforceable side mount patents, alleging that CPT and Viewsonic were acting in concert to infringe LPL's unenforceable patents. *See LPL v. Viewsonic Corporation*, Case No. 03-2886, attached hereto as Exhibit I. Again, the '002 patent was not named in this suit.

15. That same day, on April 24, 2003, LPL also filed three more nearly identical complaints against five other companies on the same unenforceable patents, with no mention of the '002 patent. *See LPL v. TPV Technology, Ltd. and Envision Peripherals, Inc.*, Case No. 03-2885; *LPL v. Jean Company Ltd.*, Case No. 03-2866, and *LPL v. Lite-On Technology Corp. and Lite-On Technology International Incorporated*, Case No. 03-2884, attached hereto as Exhibit J.

16. On October 17, 2003, CPT propounded discovery on LPL, seeking the "first date on which you allege infringement damages against CPT began to accrue." Order at ¶ 30.

17. LPL responded that it had not yet determined the date. *Id.* For more than a year, CPT sought an answer, before finally filing a motion to compel LPL to answer. Order at ¶ 31-33.

18. On January 25, 2005, LPL was ordered to answer. Order at ¶ 34.

19. LPL responded that it was not seeking "damages for any alleged infringement of the side mount patents prior to July 1, 2003, a date," the Court observed in the Order, "that is nearly a year after LPL filed its Complaint against CPT in August 2002." Order at ¶ 35. This response acknowledge that LPL knew the sidemount patents were unenforceable prior to that date, yet LPL refused to acknowledge its lack of standing.

20. LGE's first side mount patent, United States Patent No.5,835,139 ("the '139 patent or "parent") issued in 1998.

21.	Attorney Song Jung, on behalf of LGE, and later LPL, filed continuation applications, based on the parent, for the four other side mount patents, claiming similar inventions and sharing the same specifications as the parent side mount patent.

22.	CPT undertook an investigation that uncovered a divided ownership arrangement between LG Electronics, Inc. ("LGE") and its assignee, LPL, that violated the common ownership requirement in the terminal disclaimers governing all four side mount patents at issue, and LPL's June 2003 effort to cure the legal consequences of divided title. *See* Order at ¶ 11-12, 16, 24.

23.	Song Jung also filed terminal disclaimers for the applications that ultimately issued as the four patents-in-suit in the California lawsuits to overcome double patenting rejections that would otherwise have barred the issuance of those patents. *See* Terminal Disclaimers Filed in the Patent Applications that Ultimately Issued as U.S. Patent Nos. 5,926,237 ("'237 Patent"); 6,002,457 ("'457 Patent"); 6,020,942 ("'942 Patent"); and 6,373,537 ("'537 Patent"), attached hereto as Exhibit K.

24.	On September 21, 1999, after only the '237 patent had issued, LGE assigned all of its side mount patent applications to LPL but retained 50% ownership of the parent side mount patent. *See* Order at ¶ 17.

25.	Neither LGE nor LPL took action to advise the Patent Trademark Office that the applications for the '457 and the '942 patents no longer met the common ownership requirement as of September 21, 1999. *See* Order at ¶¶ 11, 12, 20.

26.	Attorney Jung, now LPL's patent prosecution attorney, a partner with the McKenna Long & Aldridge firm, filed a terminal disclaimer for the application that issued as the '537 patent on November 30, 2000, *see* Order at ¶ 24, at a time when the common ownership requirement was clearly not met.

27.	This split in ownership in September 1999 rendered all four side mount patents at issue in the California case unenforceable from September 21, 1990 until June 23, 2003 when LGE transferred the remainder of its interest in the parent side mount patent to LPL. Order at ¶¶ 12, 14-15. CPT still believes the unenforceability of the side-mount patents cannot be cured by a post-unenforceability transfer of the patents.

- 4 -

28. CPT moved for summary judgment based on the divided ownership and won.

29. It is undisputed that the side mount patents upon which LPL sued CPT, Tatung, and Tatung USA and ViewSonic were dismissed because Chief Judge Consuelo Marshall, District Judge in the Central District of California held, "Under the terminal disclaimer, this meant that the '237, '457, '942, and '537 patents were unenforceable at the time that this lawsuit was filed." Order at 10.

30. On September 21, 2005, Judge Marshall dismissed LPL's side mount claims against CPT for lack of standing.

31. On December 10, 2005, Judge Marshall also dismissed LPL's sidemount infringement claims against Viewsonic, and the five other parties LPL sued, *see supra* ¶ 15, on the basis of her ruling that the sidemount patents were unenforceable when sued upon. *See* Amended Order Re: Chunghwa Picture Tubes, Ltd's Motion For Summary Judgment To Dismiss Side-Mount Patent Infringement Claims for Lack of Standing, attached hereto as Exhibit L. Judge Marshall ruled, "[A]ll of the Complaints against those Defendants were filed before July 7, 2003 and thus, were filed during the time which the Court finds . . . . that the side-mount patents were unenforceable and LPL lacked standing to assert its claims of infringement." Id. at 2.

### LPL's Pursuit, And Ultimate Abandonment, Of U.S. Patent No. 6,738,121 ("'121 Patent").

32. Nearly four months after LPL was compelled to disclose information to CPT, Tatung, Tatung USA and ViewSonic in the California side mount litigation that would show that LPL's side mount patents were unenforceable when sued upon, LPL filed its complaint in this Court against those same companies (CPT, Tatung, Tatung USA and ViewSonic). *See* Complaint for Patent Infringement ("'002 Patent Complaint"), D.I. No. 1.

33. On May 13, 2005, LPL alleged that Defendants infringed its '121 patent and '002 patent. *Id.*

34. In its haste to file suit, LPL alleged infringement of the '002 patent by one product that never existed. LPL alleged that one of the infringing products was a ViewSonic monitor ES710, offered for sale and sold in Delaware. '002 and '121 Patent Complaint at ¶ 28. However,

as ViewSonic's Chief Financial Officer James Morlan will testify, ViewSonic does not now, nor has it ever, sold a ES710 monitor.

35.     LPL's aggressive pursuit of its infringement claims for the '121 Patent is evidenced by its motion for preliminary injunction on November 1, 2005. *See* Plaintiff's Motion for Preliminary Injunction filed November 1, 2005, D.I. No. 21.

36.     In its motion, LPL represented that a preliminary injunction was necessary because there was a substantial likelihood that LPL would succeed on the merits of its patent infringement claim. In particular, it represented that "LPL likely will withstand any challenge to the validity of the '121 patent," and that LPL would likely show that "Defendants' invalidity arguments lack substantial merit." *See* Plaintiff's Memorandum In Support of Its Motion For Preliminary Injunction ("the '121 Memo"), D.I. No. 22, at 21-22.

37.     LPL further argued that on the basis of its representations about its likelihood of success on the merits, including the issue of validity, the Court should presume irreparable harm to LPL. '121 Memo at 22, 24.

38.     Defendants sought discovery from LPL after it determined that LPL had sold 7,000 units of the product containing the technology embodied in the '121 to its American subsidiary prior to the patent's critical date. *See* Transcript of April 25, 2006 Hearing, attached hereto as Exhibit M, at 4:1-6.

39.     Rather than provide discovery on its on-sale bar activities, LPL filed its Notice of Voluntary Withdrawal of Claims Relating to U.S. Patent No. 6,738,121. *See* Notice of Voluntary Withdrawal of Claims Relating to U.S. Patent No. 6,738,121, D.I. No. 80.

40.     LPL abandoned its '121 patent infringement claim when pressed by Plaintiffs for discovery on its on-sale bar activities.