EXHIBIT H



Priority
Send        ✓
Enter       ✓
Closed
JS-5/JS-6   ✓
JS-2/JS-3
Scan Only

FILED
CLERK, U S DISTRICT COURT

SEP 20 2005

CENTRAL DISTRICT OF CALIFORNIA
BY                        DEPUTY

ENTERED
CLERK, U.S. DISTRICT COURT

SEP 21 2005

CENTRAL DISTRICT OF CALIFORNIA
BY                        DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| LG PHILIPS LCD CO., LTD.,<br><br>           Plaintiff<br><br>v.<br><br>TATUNG CO. OF AMERICA,<br>TATUNG COMPANY and<br>CHUNGHWA PICTURE TUBES, LTD.,<br><br>           Defendants. | No. CV 02-6775 CBM (JTLx)<br><br>**ORDER RE: CHUNGHWA PICTURE TUBE, LTD.'S MOTION FOR SUMMARY JUDGMENT TO DISMISS SIDE-MOUNT PATENT INFRINGEMENT CLAIMS FOR LACK OF STANDING.** |

DOCKETED ON CM

SEP 2 1 2005

BY                        001

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

    The matter before the Court is Defendant Chunghwa Picture Tubes Ltd.'s

Motion for Summary Judgment to Dismiss Plaintiff's Side-Mount Patent

Infringement Claims for Lack of Standing.

### JURISDICTION

    The Court has jurisdiction over this case pursuant to 28 U.S.C. §1331.

### FACTUAL AND PROCEDURAL BACKGROUND

    Plaintiff L.G. Philips LCD Co., Ltd. ("LPL") filed this action on August 29,

2002, alleging that Defendants Tatung Co., Tatung Co. of America (collectively

"Tatung"), and Chunghwa Picture Tubes ("CPT") infringed on its patents. As to

1  Defendant CPT, LPL alleged infringement of six patents: two semiconductor
2  patents and four side-mount patents. On December 20, 2002, CPT filed an
3  Answer and Counterclaims. On June 21, 2004, CPT filed its first Motion for
4  Leave to Amend Answer and Counterclaims and to Join LG Electronics, Inc.
5  ("LGE") as a party, which the Court granted in part.  On March 28, the Court
6  granted CPT's Second Motion for Leave to Amend Answer and Counterclaims.
7  Trial on both the semiconductor and the side-mount patent claims is currently set
8  for February 28, 2006.

9        On May 2, 2005, CPT filed the instant Motion for Summary Judgment to
10 Dismiss Plaintiff's Side-Mount Patent Infringement Claims for Lack of Standing,
11 in which Defendant Tatung subsequently joined. On May 9, 2005, LPL filed an
12 Opposition.[1] CPT filed a Reply on May 16, 2005. Tatung filed a separate Reply on
13 May 18, 2005.

14       On May 23, 2005, the Court heard oral argument in connection with the
15 Motion. The Court granted leave to counsel to attempt to obtain the
16 administrative record from the U.S. Patent and Trademark Office ("PTO")
17 concerning 1971 amendments to 37 C.F.R. § 1.321 and to file supplemental briefs,
18 pursuant to Fed. R. Civ. P. 56(f). The hearing was continued until August 15,
19 2005.

20       On June 27, 2005, the parties submitted a Joint Status Report informing the
21 Court that a subpoena duces tecum was served upon the PTO requesting the
22 administrative record pertaining to 1971 rule-making; the PTO responded that it is
23 unable to locate any such record. Based on this information and the parties'
24 request, the Court vacated the August 15, 2005 hearing and the supplemental
25 briefing schedule pertaining thereto and deemed CPT's Motion for Summary
26 Judgment fully submitted on the record before the Court.

27 _____

28 [1]       LPL later filed a supplemental opposition to Tatung's joinder in the motion.

# STANDARD OF LAW

Summary judgment against a party is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) (emphasis added). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the nonmoving party will have the burden of proof at trial, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case. *See id.* If the moving party meets its initial burden, the nonmoving party must then set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence and draws all inferences in the light most favorable to the nonmoving party. *T.W. Elec. Svc., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987). The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Pub. Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

# DISCUSSION

## I. Findings of Undisputed Material Fact

1. On July 3, 1997, LG Electronics, Inc. ("LGE") filed patent application Serial No. 888,164 (the '164 application) with the PTO. The '164 ultimately

- 3 -

1  issued as the '139 patent.

2  2.      On January 13, 1998, the five named LGE inventors of the '164 patent

3  assigned 100% of their ownership in the '164 application to LPL.  This

4  assignment was recorded with the PTO by LGE.

5  3.      On September 1, 1998, LGE filed patent application Serial No. 09/145,357

6  (the '357 application), which was a continuation application based on the '164

7  application.  The '357 application ultimately issued as U.S. Patent No. 5,926,237

8  (the '237 patent).

9  4.      On October 26, 1998, LGE filed patent application Serial No. 09-178,832

10  (the '832 application), which was a continuation application based on the '164

11  application.  The '832 application ultimately issued as U.S. Patent No. 6,002,457

12  (the '457 patent).

13  5.      On October 26, 1998, LGE filed patent application Serial No. 09/178,711

14  (the '711 application), which was a continuation application based on the '164

15  application.  The '711 application ultimately issued as U.S. Patent No. 6,020,942

16  (the '942 patent).

17  6.      On November 10, 1998, the '164 application issued as U.S. Patent No. 5,

18  835,139 (the '139 patent).

19  7.      On or around December 15, 1998, the PTO examiner conducted an

20  interview LGE's patent attorney, Mr. Song Jung, to discuss double-patenting

21  issues in connection with the pending claims of the '357 application.

22  8.      The summary of the interview with the PTO states that "the claims [of the

23  '357 application] seem to contain the same features as the parent application

24  ['164] which has been allowed."

25  9.      On or about December 17, 1998, LGE submitted a "Terminal Disclaimer to

26  Obviate A Double-Patenting Rejection" in the '357 application.  This terminal

27  disclaimer provides, in relevant part:

28          LG Electronics Inc. hereby disclaims the terminal part of a

-4-

SCANNED

1  patent granted on the ['357] application, which would
2  extend beyond the expiration date of the full statutory term
   of [the '139 patent] . . . and hereby agree [sic] that any
3  patent so granted on the ['357] application shall be
   enforceable only for and during such period that the legal
4  title to said patent shall be the same as the legal title to [the
   '139 patent] this agreement to run with any patent granted
5  on the ['357] application and to be binding upon the
   grantor, its successors or assigns.

6  10.    On February 16, 1999, the examiner for the '357 application allowed the

7  claims, giving the following reasons:

8  [The] claims of the present invention claim the identical
   allowable subject matter disclosed in the allowed
9  application 08/888164. Applicant has filed a terminal
   disclaimer to obviate a double patenting rejection.

10
11 11.    On February 12, 1999, LGE submitted a "Terminal Disclaimer to Obviate A

12 Double-Patenting Rejection" in the '832 application, which states in relevant part:

13 LG Electronics Inc. hereby disclaims the terminal part of a
   patent granted on the ['832] application, which would
14 extend beyond the expiration date of the full statutory term
   of [the '139 patent] . . . and hereby agree [sic] that any
15 patent so granted on the ['832] application shall be
   enforceable only for and during such period that the legal
16 title to said patent shall be the same as the legal title to [the
   '139 patent] this agreement to run with any patent granted
17 on the ['832] application and to be binding upon the
   grantor, its successors or assigns.

18 12.    On February 12, 1999 LGE also submitted a "Terminal Disclaimer to

19 Obviate A Double-Patenting Rejection" in the '711 application, which states in

20 relevant part:

21 LG Electronics Inc. hereby disclaims the terminal part of a
   patent granted on the ['711] application, which would
22 extend beyond the expiration date of the full statutory term
   of [the '139 patent] . . . and hereby agree [sic] that any
23 patent so granted on the ['711] application shall be
   enforceable only for and during such period that the legal
24 title to said patent shall be the same as the legal title to [the
   '139 patent] this agreement to run with any patent granted
25 on the ['711] application and to be binding upon the
   grantor, its successors or assigns.

26 13.    After receipt of the Terminal Disclaimer in the '832 application, the PTO
27 allowed the pending claims in the '832 application. The Notice of Allowance was
28

- 5 -

1   sent to Mr. Jung on September 9, 1999. The patent examiner provided the

2   following reasons for allowance:

3           [The] present continuation application claims the
            allowable subject matter disclosed in the allowed ['164
4           application]. [LGE] has filed a terminal disclaimer to
            obviate an obviousness double patenting rejection.

5

6   14.    After receipt of the Terminal Disclaimer in the '711 application, the PTO

7   allowed the pending claims in the '711 application. The Notice of Allowance was

    sent to Mr. Jung on September 9, 1999. The patent examiner provided the
8
    following reasons for allowance:
9
            [The] present application claims the allowable subject
10          matter disclosed in the allowed ['164 application].
            Applicant has filed a terminal disclaimer to obviate an
11          obviousness double patenting rejection.

12  15.    On June 7, 1999, while the '357, '832 and '711 continuation applications

13  were still pending, Mr. Jung submitted a fourth continuation application to the

14  PTO, Serial No. 09/326,540 (the '540 application), which eventually issued as U.S.

15  Patent No. 6, 373,537 (the '537 patent).

16  16.    On September 21, 1999, before the '832 and '711 continuation applications

17  had issued as the '457 and '942 patents, LGE signed an agreement that assigned

18  full or partial ownership in a large portfolio of patents and patent applications from

19  LGE to LPL. Mr. Jung, LGE's and LPL's patent attorney, recorded the LGE/LPL

20  assignment agreement at the PTO on September 29, 1999.

21  17.    Pursuant to the September 1999 assignment agreement, LGE assigned to

22  LPL and its successors 50% of the entire right, title and interest in the '139 patent,

23  including but not limited to the right to sue for past, present and future

24  infringement, and 100% of the entire right, title and interest in the '711, '832, '357,

25  and '540 continuation applications, including but not limited to the right to sue for

26  past, present, and future infringement.

27  18.    On July 20, 1999, the '357 application issued as the '237 patent.

28  19.    On October 12, 1999, LPL paid the issue fees for both the '832 and '711

applications.  At the time LPL paid these issue fees, it was the new owner of 100% of these applications.

20.     Besides filing the September 21, 1999 assignment agreement with the PTO, neither LGE nor LPL took any other action to advise the examiner of the difference in ownership between the '832 and '711 applications on the one hand and the '139 patent on the other hand.

21.     On December 14, 1999, the '832 application issued as the '457 patent.

22.     On February 1, 2000, the '711 application issued as the '942 patent.

23.     During the prosecution of the '540 continuation application, the PTO examiner conducted an interview with LPL's patent attorney, Mr. Jung, and requested that LPL file a terminal disclaimer to overcome a potential double patenting rejection.

24.     As a result of the PTO examiner's request, on November 30, 2000, Mr. Jung filed a Terminal Disclaimer in the '540 application, which states in relevant part:

> LG. Philips LCD Co, Ltd. [h]ereby disclaims the terminal part of any patent granted on the ['540] application, which would extend beyond the expiration date of the full statutory term as presently shortened by any terminal disclaimer of Patent No. 5,835,129 [sic], and hereby agrees that any patent so granted on said ['540] application shall be enforceable only for and during such period that the legal title to said patent shall be the same as the legal title to United States Patent 5,835,129 [sic], this agreement to run with any patent granted on the ['540] application and to be binding upon the grantor, its successors or assigns.

25.     The November 30, 2000 disclaimer mistakenly disclaimed the '540 application against U.S. Patent No. 5,835,129 (instead of 5,835,139), an unrelated patent.  That patent was never owned by LGE or LPL, but was owned by a completely unrelated company.

26.     On April 16, 2002, the '540 application issued as the '537 patent.

27.     On August 29, 2002, LPL filed the instant lawsuit against Defendants CPT and Tatung, initially alleging infringement of the '237, '457, '942 and '537 patents (the "side-mount patents") only against CPT and not the other Defendants.

28.    On June 23, 2003, LGE executed an assignment that purportedly transferred its 50% ownership in the '139 patent to LPL. This assignment was recorded by the PTO on July 7, 2003.

29.    In the fall of 2003, LPL amended its Complaint to assert new claims of infringement of the side-mount patents against the Tatung Defendants.

30.    On October 17, 2003, CPT served Interrogatory No. 9 on LPL, which requested, "[f]or each of the patents-in-suit, identify the first date on which you allege infringement damages against CPT began to accrue." LPL responded that "it has not determined the date from which it will seek damages fro CPT's [alleged[ infringement of the side-mount patents."

31.    On December 5, 2003, CPT met and conferred with LPL's counsel regarding LPL's response to this interrogatory. During the meet and confer, LPL stated that it had not yet completed its analysis and declined to provide an estimate when it would be providing a response regarding the date from which it would seek damages for the side-mount patents. A year passed, and LPL did not provide its supplemental response.

32.    On December 3, 2004, CPT wrote to LPL and asked for its supplemental response to Interrogatory No. 9. Despite LPL's representations that it would supplement its response, by the end of December 2004, LPL had still failed to respond with the date from which it would seek damages for the side-mount patents.

33.    On January 18, 2005, CPT and LPL filed a Joint Stipulation in support of CPT's Motion to Compel LPL to Supplement its Response to Interrogatory No. 9.

34.    On January 25, 2005, CPT and LPL conducted a telephone hearing before Magistrate Lum regarding, among other matters, CPT's Motion to Compel LPL to Supplement its Response to Interrogatory No. 9. At the hearing, Magistrate Judge Lum ordered LPL to provide the dates from which it contended it was entitled to damages for the alleged infringement of the side-mount patents.

35.    LPL responded on January 28, 2005 that it was not seeking damages for any alleged infringement of the side-mount patents prior to July 1, 2003—a date that is nearly a year after LPL filed its Complaint against CPT in August 2002.

## II. Analysis

A. **Whether the '237, '457, '942 and '537 Patents Were Unenforceable When This Lawsuit Was Filed Due to the Terminal Disclaimers**

The present suit was initiated by LPL in August 2002, several years after the September 1999 assignment agreement between LGE and LPL (whereby LGE assigned 50% of the '139 patent to LPL) but before the July 2003 assignment agreement (whereby LGE transferred its remaining 50% interest in the '139 patent to LPL). Thus, at the time this lawsuit was filed, LPL owned only 50% of the rights in the '139 patent. However, pursuant to the September 1999 assignment, LPL owned 100% of the '237, '457, '942 and '537 patents, which are all continuations of the '139 patent. The '237, '457, '942 and '537 patents were each issued subject to a terminal disclaimer stating that the patent "shall be enforceable only for and during such period that the legal title to said patent shall be the same as the legal title to [the '139 patent]."[2] The 1971 Manual of Patent Examining Procedure ("MPEP") explains that when title is split between the terminally disclaimed patent and the patent on which the disclaimer is based, the terminally disclaimed patent becomes unenforceable.[3] This is consistent with 37 C.F.R.

---

[2]    The purpose of the terminal disclaimer is to prevent a double patenting rejection in a patent application or in a reexamination proceeding.

[3]    The 1969 edition of the MPEP stated that "terminal disclaimers should include a provision that the patent shall expire immediately if it ceases to be commonly owned with the other application or patent." While the MPEP does not have the force of law, "it is entitled to judicial notice as an official interpretation of statutes or

§1.321(c), which states that a terminal disclaimer, when filed to obviate a judicially created double patenting rejection, must "include a provision that any patent granted on that application or any patent subject to the reexamination proceeding shall be enforceable only for and during such period that said patent is commonly owned with the application or patent which formed the basis for the rejection." (This is called a "non-alienation provision").

LPL argues that the difference in legal title created by the September 1999 assignment order does not violate the non-alienation provision. The Court finds this argument to be unpersuasive, as the MPEP §706.02 explains that two patents are commonly owned if 100% of each patent is owned by the same entity or entities. According to the MPEP, if a parent company owns 100% of subsidiary A but only 90% of subsidiary B, the inventions of A and B are not "commonly owned" within the meaning of patent law. MPEP §706.02(1)(2) (5th Ed. 2001). Since LPL owned 100% of the '237, 457, '942 and '537 patents but only 50% of the '139 patent at the time the lawsuit was filed, the '139 patent and the other patents were not "commonly owned" at the time the lawsuit was filed. Under the terminal disclaimer, this meant that the '237, 457, '942 and '537 patents were unenforceable at the time that the lawsuit was filed. In fact, LPL asserts that "a temporary lapse-in enforceability" occurred from September 1999 to June 2003.

**B.  <u>Whether LPL Lacks Standing to Bring the Side-Mount Patent Infringement Claims</u>**

Article III of the U.S. Constitution limits the jurisdiction of federal courts to actual "cases" or "controversies." *Allen v. Wright*, 468 U.S. 737, 750-51, 82 L. Ed. 2d 556, 104 S.Ct. 3315 (1984). In order to establish Article III standing, a plaintiff

---

regulations as long as it is not in conflict therewith." *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1180 n.10 (Fed. Cir. 1995). Furthermore, the MPEP has been held to describe procedures on which the public can rely. *In re Kaghan*, 55 C.C.P.A. 844, 387 F.2d 398, 401, 156 U.S.P.Q. (BNA) 2130, 2132 (1967).

- 10 -

1   must show: (1) "an invasion of a legally protected interest" that is "concrete and

2   particularlized" and "actual and imminent"; (2) a causal connection between the

3   injury and the conduct that is the subject of the complaint; and (3) that the injury is

4   likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504

5   U.S. 555, 560-61, 119 L.Ed. 2d 351, 112 S. Ct. 2130 (1992). These requirements

6   apply to patent cases in the same way that they apply to all federal cases. *See, e.g.,*

7   *Paradise Cretaions v. U V Sales Inc.*, 315 F.3d 1304, 1308-10 (Fed. Cir. 2003)

8   (finding that a plaintiff lacked a "cognizable injury necessary to assert standing

9   under Article III of the Constitution" where it "held no enforceable rights

10  whatsoever in the patent at the time it filed suit"). Article III standing is assessed

11  at the time the original complaint was filed and cannot be cured retroactively.

12  *Keene Corp. v. United States*, 508 U.S. 200, 207, 124 L. Ed. 2d 118, 113 S. Ct.

13  2035 (1993); *accord Lujan*, 504 U.S. at 569 n.4 (1992).[4]

14      In the present case, LPL had no enforceable rights in the '237, '457, '942

15  and '537 patents at the time the lawsuit was filed because the '139 patent was no

16  longer commonly owned, as discussed above. In *Paradise Creations, Inc.*, 315

17

18  _____

    [4]     Plaintiff LPL cites to *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 240 F.3d
19  1016 (Fed. Cir. 2001) for the proposition that the standing defect in this case can be
20  cured via amendment of the Complaint. However, *Mentor* involved an issue of
    prudential rather than Article III standing. Prudential standing differs from Article
21  III standing in that it does not derive from the Constitution. For example, the general
22  rule that the patentee should be joined in any infringement action is considered
    prudential standing. Defects in prudential standing, unlike Article III standing, can
23  be cured after the lawsuit is filed. *Mentor H/S, Inc.* 240 F.3d at 1018-19 (holding that
24  an exclusive licensee with less than all substantial rights in the patent did not have the
    right to sue under the Patent Act at the inception of the lawsuit, but could cure the
25  defect by filing a motion to join the patentee as a plaintiff). In *Mentor*, the plaintiff
26  had a cognizable injury at the inception of suit for the purpose of Article III standing
    based on its exclusive license to the patent. In the present case, however, LPL lacked
27  any cognizable injury at the time of suit because the side-mount patents were
28  unenforceable.

1    F.3d at 1310, the Federal Circuit found that the appellant "lacked a cognizable

2    injury necessary to assert standing under Article III of the Constitution" because it

3    "held no enforceable rights whatsoever in the patent at the time it filed suit." The

4    Court found that "such a defect in standing cannot be cured after the inception of

5    the lawsuit." *Id. See also Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d

6    1198, 1203 (Fed. Cir. 2005) (holding that "if the original plaintiff lacked Article III

7    initial standing, the suit must be dismissed, and the jurisdictional defect cannot be

8    cured by the addition of a party with standing . . . nor by the subsequent purchase

9    of an interest in the patents in suit") (citations omitted). Therefore, LPL lacks

10    standing to allege infringement of '237, '457, '942 and '537 side-mount patents.[5]

11
12
       **C.   Whether the Claims Pertaining to the Side-Mount Patents Should be Dismissed With or Without Prejudice**

13         "Ordinarily, dismissal for lack of standing is without prejudice." *Fieldturf*

14    *Inc. v. Southwest Rec. Indus.*, 357 F.3d 1226, 1269 (Fed. Cir. 2004). "On occasion,

15    however, a dismissal with prejudice is appropriate, especially where 'it [is] plainly

16    unlikely that the plaintiff [will be] able to cure the standing problem.'" *Id.* (citations

17    omitted). LPL contends that the side-mount patents were only temporarily

18    unenforceable and that this problem was cured in July 2003 when LPL gained

19    100% interest in the '139 patent. In support of this argument, LPL relies on cases

20    where a licensee had insufficient rights to sue without the patent owner as a

21

22    [5]    LPL's argument that it has standing based solely on patent ownership lacks

23    merit. While 35 U.S.C. §281 does provide that "a patentee shall have remedy by civil action for infringement of his patents," the requirements of Article III standing must

24    still be satisfied. LPL's argument that CPT's standing challenge improperly converts an affirmative defense into a standing issue is also unpersuasive. In the typical

25    affirmative defense challenge, there is a justifiable dispute between the parties at the

26    time that the lawsuit was filed regarding whether the patents are valid and enforceable. Here, the side-mount patents became unenforceable before the lawsuit

27    was filed as a result of LPL's and LGE's non-compliance with the non-alienation

28    provision of the terminal disclaimers.

1    plaintiff. In addition, LPL cites *Merck & Co., Inc. v. U.S. Int'l Trade Comm'n*, 774

2    F.2d 483 (Fed. Cir. 1985). *Merck* was an appeal that arose when the International

3    Trade Commission terminated an investigation on the grounds that the plaintiff,

4    Merck, had triggered the expiration provision of a patent's terminal disclaimer.

5    Since the patent at issue in *Merck* was issued before the 1971 amendment to 37

6    C.F.R. §1.321, the Federal Circuit applied the 1970 version of the regulation,

7    which stated that a patent would "expire immediately" if the patents were no longer

8    commonly owned. The court held that, if the patent "expired," it could not be

9    "revived" or "reactivated" by a retroactive assignment of the other patents. *Id.* at

10    485. However, the court commented that under the 1971 amendment, "disclaimers

11    need state only that the patent be unenforceable during the period it is not

12    commonly owned with the other patents recited in the disclaimer." *Id.* at 486. The

13    court described the 1971 amendment as a "less severe" standard. *Id.*

14      While these comments regarding the 1971 amendment were mere dicta, the

15    the plain language of the regulation supports LPL's interpretation. The fact that the

16    phrase "expire immediately" was replaced with a phrase describing when the

17    patents are "enforceable" does indicate that the amendment was intended to soften

18    the consequences of alienation. *See also* Chisum on Patents §9.04[5][a] (stating

19    that in 1971, the Patent Office amended Rule 1.321(b) "to require only that the

20    patent be 'unenforceable' during a period of separate ownership"). Moreover, the

21    language of the 1971 amendment indicates that the patent is enforceable during any

22    period of common ownership. *See United States v. Alvarez -Sanchez*, 511 U.S.

23    350, 356 (1994) ("Statutory interpretation begins with the plain meaning of the

24    statute's language"). The language of §1.321(c)(3) places no restrictions on

25    enforceability during a period of common ownership that follows a period of

26    separate ownership.

27      CPT, however, contends that violation of the non-alienation provision of the

28    terminal disclaimers renders the side-mount patents permanently unenforceable.

1   According to CPT, the notion that the side-mount patents are "temporarily

2   unenforceable" is unworkable, as this would mean that patents could vacillate

3   between periods of enforceability and unenforceability based on changes in

4   ownership, and the public would be left to speculate about whether, on any given

5   day, a patent was enforceable.   While CPT's argument is also persuasive, CPT

6   offers no explanation for why the language of the regulation was amended if the

7   amendment still requires expiration of the patent.  *C.f. Legacy Emmanuel Hosp. &*

8   *Health Ctr. v. Shalala*, 97 F.3d 1261, 1265 (9th Cir. 1996) ("The use of different

9   language by Congress creates a presumption that it intended the terms to have

10  different meanings.") (internal citations omitted).   Moreover, unless CPT shows

11  that the Patent Office intended to protect the public from these types of vacillations

12  in enforceability—which it does not—the plain language of the statute governs.

13      In addition, CPT contends that the side-mount patents should be dismissed

14  with prejudice because of LPL's "unclean hands."  A patent can be found invalid

15  (i.e. permanently unenforceable) if the patentee intentionally makes material

16  misrepresentations to the PTO office.  CPT characterizes LPL's actions as active

17  concealment of the violation of the non-alienation provision from the PTO.

18  According to CPT, certain of the side-mount patents would never have issued if the

19  PTO had known of the violation of the non-alienation provision because they

20  would have barred as "obvious" applications of the '139 patent.  The Court finds

21  this argument unpersuasive, as CPT provides no evidence to support it and the facts

22  regarding "obviousness" are disputed by LPL.  There must be clear and convincing

23  evidence of intentional misrepresentation or withholding of material facts to form

24  the basis of an inequitable conduct charge.  CPT simply fails to present such

25  evidence of intentional misrepresentation.  Thus, the Court lacks any basis for

26  finding the side-mount patents invalid based on inequitable conduct.

27      Since LPL's argument that the patents were unenforceable only during the

28  period of separate ownership is most consistent with the plain language of the

1  statute, the action is dismissed without prejudice.

2  **D.  Joinder of Tatung Company and Tatung Company of America in**
3  **CPT's Motion for Summary Judgment**

4      Tatung Company and Tatung Company of America filed a late, one-page
5  joinder in CPT's Motion for Summary Judgment. In its opposition to the joinder,
6  LPL notes that Tatung did not follow Local Rule 7-3, which required Tatung to
7  meet and confer with LPL prior to filing the motion. More importantly, LPL
8  argues that Tatung is not entitled to summary judgment since LPL did not assert
9  side-mount patent infringement claims against Tatung until October 1, 2003. At
10  that time, by virtue of the June 23, 2003 assignment, LPL owned 100% of the '139
11  patent and 100% of the four succeeding side-mount patents. Since the Court does
12  not find that the patents became permanently unenforceable due to the prior
13  violation fo the non-alienation clause, LPL had standing at the time that it asserted
14  the side-mount infringement claims against Tatung. Therefore, Tatung's motion for
15  summary judgment is denied.

16                              **CONCLUSION**

17      Based on the foregoing, the Court GRANTS CPT's Motion for Summary
18  Judgment to Dismiss Side-Mount Patent Infringement Claims for Lack of Standing
19  with respect to Defendant CPT only. LPL's side-mount patent claims are
20  DISMISSED WITHOUT PREJUDICE with respect to Defendant CPT.

21

22  **IT IS SO ORDERED**

23  **DATE:** September 19, 2005

24                              **CONSUELO B. MARSHALL**

25                              **UNITED STATES DISTRICT JUDGE**

26

27

28

- 15 -

EXHIBIT I

1  JEFFREY N. BROWN (SBN 105520)
   WILFREDO HERNANDEZ, JR. (SBN 200917)
2  MORGAN, LEWIS & BOCKIUS LLP
   300 South Grand Avenue
3  Twenty-Second Floor
   Los Angeles, CA  90071-3132
4  Tel: (213) 612-2500
   Fax: (213) 612-2501
5
   ANN A. BYUN (SBN 161593)
6  MORGAN, LEWIS & BOCKIUS LLP
   1701 Market Street
7  Philadelphia, PA  19103
   Tel: (215) 963-5000
8  Fax: (215) 963-5299

9  Attorneys for Plaintiff and
   Counterclaim Defendant
10 LG. PHILIPS LCD CO., LTD.

11

12                UNITED STATES DISTRICT COURT

13              CENTRAL DISTRICT OF CALIFORNIA

14                      CV 03 - 2886 SVW  PLAx

15  LG.PHILIPS LCD CO., LTD.,        Case No.

16               Plaintiff,          COMPLAINT FOR PATENT
                                     INFRINGEMENT
17          vs.
                                     [DEMAND FOR JURY TRIAL]
18  VIEWSONIC CORPORATION,

19               Defendant.

20

21       Plaintiff LG.Philips LCD Co., Ltd. ("LPL"), by its

22  undersigned attorneys, complains of Defendant and alleges as

23  follows:

24                   JURISDICTION AND VENUE

25       1.   This is an action for patent infringement, arising

26  under the patent laws of the United States, Title 35 of the

27  United States Code, § 1, et seq. This Court has jurisdiction

28

1-LA/681497.1

ENTERED ON ICMS

APR 25 2003

CV

1    over the subject matter of this action pursuant to Title 28 of

2    the United States Code, §§ 1331 and 1338(a).

3        2.    Venue is proper in this judicial district under Title

4    28 of the United States Code, §§ 1391(b), 1391(c), 1391(d) and

5    1400(b).

6                              **PARTIES**

7        3.    Plaintiff LPL is a corporation organized under the laws

8    of the Republic of Korea having a place of business located in

9    Seoul, Korea.

10       4.    Plaintiff LPL is informed and believes, and on that

11   basis alleges that Defendant ViewSonic Corporation ("ViewSonic")

12   is a corporation existing under the laws of the State of Delaware

13   having a place of business located at 381 Brea Canyon Road,

14   Walnut, CA 91789.

15                     **LPL'S PATENTS-IN-SUIT**

16       5.    LPL is the owner by assignment of all rights, title and

17   interest in and to United States Patent No. 4,624,737 ("the '737

18   patent"), issued on November 25, 1986, entitled "Process for

19   Producing Thin-Film Transistor."

20       6.    LPL is the owner by assignment of all rights, title and

21   interest in and to United States Patent No. 5,825,449 ("the '449

22   patent"), issued on October 20, 1998, entitled "Liquid Crystal

23   Display Device and Method of Manufacturing the Same."

24       7.    LPL is the owner by assignment of all rights, title and

25   interest in and to United States Patent No. 6,373,537 ("the '537

26   patent"), issued on April 16, 2002, entitled "Computer Having

27   Liquid Crystal Display Between Frames Attached at the Edges."

28

8.    LPL is the owner by assignment of all rights, title and interest in and to United States Patent No. 6,002,457 ("the '457 patent"), issued on December 14, 1999, entitled "Computer Having Liquid Crystal Display."

9.    LPL is the owner by assignment of all rights, title and interest in and to United States Patent No. 5,926,237 ("the '237 patent"), issued on July 20, 1999, entitled "Computer Having Liquid Crystal Display."

### DEFENDANT'S INFRINGEMENT OF LPL'S PATENTS

10.    LPL is informed and believes, and on that basis alleges, that Chunghwa Picture Tubes, Ltd. ("CPT") manufactures liquid crystal display ("LCD") panels that infringe LPL's patents as set forth in a related case No. CV-02-6775 CBM (JTLx).  LPL is informed and believes, and on that basis alleges, that ViewSonic imports into and/or sells in the United States, including within this judicial district, computer products that include such CPT LCD panels.

11.    LPL is informed and believes, and on that basis alleges, that ViewSonic and CPT are working in concert to import and sell in the United States infringing LCD panels (and/or products with infringing LCD panels incorporated therein).

### FIRST CLAIM FOR RELIEF

### (INFRINGEMENT OF THE '737 PATENT)

12.    LPL incorporates by this reference paragraphs 1 through 11 above, as though fully set forth herein.

13.    Defendant has infringed and is infringing the '737 patent by making, using, selling, offering for sale and/or importing into the United States products manufactured by a

1    process covered by one or more claims of the '737 patent, by

2    actively inducing and encouraging others to do so and/or by

3    contributing to such infringement.

4        14.  Defendant has infringed and is infringing the '737

5    patent with knowledge of LPL's patent rights and without a

6    reasonable basis for believing that its conduct is lawful.

7    Defendant's acts of infringement have been willful, deliberate,

8    and in reckless disregard of LPL's patent rights, and will

9    continue unless enjoined by this Court.

10       15.  By reason of the foregoing, LPL has been damaged and

11   will continue to sustain damages in an amount to be determined at

12   trial and has suffered and will continue to suffer irreparable

13   loss and injury.

14                    SECOND CLAIM FOR RELIEF

15               (INFRINGEMENT OF THE '449 PATENT)

16       16.  LPL incorporates by this reference paragraphs 1 through

17   11 above, as though fully set forth herein.

18       17.  Defendant has infringed and is infringing the '449

19   patent by making, using, selling, offering for sale and/or

20   importing into the United States products covered by one or more

21   claims of the '449 patent, by making, using, selling, offering

22   for sale and/or importing into the U.S. products manufactured by

23   a process covered by one or more claims of the '449 patent, by

24   actively inducing and encouraging others to do so and/or by

25   contributing to such infringement.

26       18.  Defendant has infringed and is infringing the '449

27   patent with knowledge of LPL's patent rights and without a

28   reasonable basis for believing that its conduct is lawful.

1-LA/681497.1                          4

1    Defendant's acts of infringement have been willful, deliberate,

2    and in reckless disregard of LPL's patent rights, and will

3    continue unless enjoined by this Court.

4        19.  By reason of the foregoing, LPL has been damaged and

5    will continue to sustain damages in an amount to be determined at

6    trial and has suffered and will continue to suffer irreparable

7    loss and injury.

8                      **THIRD CLAIM FOR RELIEF**

9                  **(INFRINGEMENT OF THE '537 PATENT)**

10       20.  LPL incorporates by this reference paragraphs 1 through

11   11 above, as though fully set forth herein.

12       21.  Defendant has infringed and is infringing the '537

13   patent by making, using, selling, offering for sale and/or

14   importing into the United States products covered by one or more

15   claims of the '537 patent, by actively inducing and encouraging

16   others to do so and/or by contributing to such infringement.

17       22.  Defendant has infringed and is infringing the '537

18   patent with knowledge of LPL's patent rights and without a

19   reasonable basis for believing that its conduct is lawful.

20   Defendant's acts of infringement have been willful, deliberate,

21   and in reckless disregard of LPL's patent rights, and will

22   continue unless enjoined by this Court.

23       23.  By reason of the foregoing, LPL has been damaged and

24   will continue to sustain damages in an amount to be determined at

25   trial and has suffered and will continue to suffer irreparable

26   loss and injury.

27

28

1-LA/681497.1                          5

## FOURTH CLAIM FOR RELIEF

### (INFRINGEMENT OF THE '457 PATENT)

24. LPL incorporates by this reference paragraphs 1 through 11 above, as though fully set forth herein.

25. Defendant has infringed and is infringing the '457 patent by making, using, selling, offering for sale and/or importing into the United States products covered by one or more claims of the '457 patent, by actively inducing and encouraging others to do so and/or by contributing to such infringement.

26. Defendant has infringed and is infringing the '457 patent with knowledge of LPL's patent rights and without a reasonable basis for believing that its conduct is lawful. Defendant's acts of infringement have been willful, deliberate, and in reckless disregard of LPL's patent rights, and will continue unless enjoined by this Court.

27. By reason of the foregoing, LPL has been damaged and will continue to sustain damages in an amount to be determined at trial and has suffered and will continue to suffer irreparable loss and injury.

## FIFTH CLAIM FOR RELIEF

### (INFRINGEMENT OF THE '237 PATENT)

28. LPL incorporates by this reference paragraphs 1 through 11 above, as though fully set forth herein.

29. Defendant has infringed and is infringing the '237 patent by making, using, selling, offering for sale and/or importing into the U.S. products manufactured by a process covered by one or more claims of the '237 patent, by actively

1-LA/681497.1

6

1  inducing and encouraging others to do so and/or by contributing

2  to such infringement.

3       30.  Defendant has infringed and is infringing the '237

4  patent with knowledge of LPL's patent rights and without a

5  reasonable basis for believing that its conduct is lawful.

6  Defendant's acts of infringement have been willful, deliberate,

7  and in reckless disregard of LPL's patent rights, and will

8  continue unless enjoined by this Court.

9       31.  By reason of the foregoing, LPL has been damaged and

10  will continue to sustain damages in an amount to be determined at

11  trial and has suffered and will continue to suffer irreparable

12  loss and injury.

13                          **PRAYER FOR RELIEF**

14       WHEREFORE, Plaintiff LPL prays for relief against Defendant

15  ViewSonic as follows:

16       ·1.   For a judgment that Defendant has infringed LPL's

17  United States Patent Nos. 4,624,737, 5,825,449, 6,373,537,

18  6,002,457, and 5,926,237;

19       2.   For preliminary and permanent injunctive relief against

20  Defendant's further infringement of LPL's United States patents;

21       3.   For an award of damages for Defendant's infringement of

22  LPL's patents, together with interest, costs and disbursements as

23  fixed by this Court under Title 35 of the United States Code §

24  284;

25       4.   For a determination that Defendant's infringement is

26  willful, and an award of trebled damages under Title 35 of the

27  United States Code § 284, for infringement of LPL's patents;

28

1-LA/681497.1                        7

1    5.    For a determination that this is an exceptional case
2  within the meaning of Title 35 of the United States Code § 285
3  and an assessment of LPL's reasonable attorneys' fees; and
4    6.    For such other and further relief as the Court deems
5  just and proper.

6  Dated: April 24, 2003                    MORGAN, LEWIS & BOCKIUS LLP

7

8                                           By _____
9                                              Jeffrey N. Brown
                                               Attorneys for Plaintiff
10                                             LG.PHILIPS LCD CO., LTD.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## JURY TRIAL DEMAND

Plaintiff LG.Philips LCD Co., Ltd. hereby demands a trial by jury on all issues properly triable by jury.

Dated: April 24, 2003

MORGAN, LEWIS & BOCKIUS LLP

By _____
Jeffrey N. Brown
Attorneys for Plaintiff
LG.PHILIPS LCD CO., LTD.