EXHIBIT 7

'09-11-02    15:06    From-                    T-555  P.002/011  F-958

1  JEFFREY N. BROWN (CA SBN 105520)
   MORGAN, LEWIS & BOCKIUS LLP
2  300 South Grand Avenue
   Twenty-Second Floor
3  Los Angeles, CA  90071-3132
   Tel:  (213) 612-2500
4  Fax:  (213) 612-2554

5  ANN A. BYUN (CA SBN 161593)
   MORGAN, LEWIS & BOCKIUS LLP
6  1701 Market Street
   Philadelphia, PA  19103
7  Tel: (215) 963-5000
   Fax: (215) 963-5299

8
   Attorneys for Plaintiff
9  LG.PHILIPS LCD CO., LTD.

10

11                UNITED STATES DISTRICT COURT

12             CENTRAL DISTRICT OF CALIFORNIA

13

14  LG.PHILIPS LCD CO., LTD.,          Case No.  02 - 6775 CBM JTLx

15                  Plaintiff,          COMPLAINT FOR PATENT
                                        INFRINGEMENT
16          vs.
                                        [DEMAND FOR JURY TRIAL]
17  TATUNG CO. OF AMERICA,
    TATUNG COMPANY AND CHUNGHWA
18  PICTURE TUBES, LTD.,

19                  Defendants.

20

21      Plaintiff LG.Philips LCD Co., Ltd. ("LPL"), by its

22  undersigned attorneys, complains of Defendants and alleges as

23  follows:

24              JURISDICTION AND VENUE

25      1.   This is an action for patent infringement, arising

26  under the patent laws of the United States, Title 35 of the

27  United States Code, § 1, et seq.  This court has jurisdiction

28

1-LA/823037.1

1  over the subject matter of this action pursuant to Title 28 of

2  the United States Code, §§ 1331 and 1338(a).

3      2.    Venue is proper in this judicial district under Title

4  28 of the United States Code, §§ 1391(b), 1391(c), 1391(d) and

5  1400(b).

6                              **PARTIES**

7      3.    Plaintiff LPL is a corporation organized under the laws

8  of the Republic of Korea having a place of business located in

9  Seoul, Korea.

10     4.    LPL is informed and believes, and on that basis

11 alleges, that Defendant Tatung Co. of America ("Tatung America")

12 is a corporation existing under the laws of the State of

13 California having a place of business located at 2850 El Presidio

14 Street, Long Beach, California.

15     5.    LPL is informed and believes, and on that basis

16 alleges, that Defendant Tatung Company ("Tatung") is a

17 corporation existing under the laws of Taiwan and is the parent

18 company of Tatung America.

19     6.    LPL is informed and believes, and on that basis

20 alleges, that Defendant Chunghwa Picture Tubes, Ltd. ("CPT") is a

21 corporation existing under the laws of Taiwan and is a subsidiary

22 of Defendant Tatung.  LPL is informed and believes, and on that

23 basis alleges, that CPT maintains a sales office at 550 Nutman

24 Street, Santa Clara, California.

25                     **LPL'S PATENTS-IN-SUIT**

26     7.    LPL is the owner by assignment of all rights, title and

27 interest in and to United States Patent No. 4,624,737 ("the '737

28 patent"), issued on November 25, 1986, entitled "Process for

1  Producing Thin-Film Transistor." A true and correct copy of the

2  '737 patent is attached hereto as Exhibit "A."

3      8.   LPL is the owner by assignment of all rights, title and

4  interest in and to United States Patent No. 5,825,449 ("the '449

5  patent"), issued on October 20, 1998, entitled "Liquid Crystal

6  Display Device and Method of Manufacturing the Same." A true and

7  correct copy of the '449 patent is attached hereto as Exhibit

8  "B."

9      9.   LPL is the owner by assignment of all rights, title and

10  interest in and to United States Patent No. 6,373,537 ("the '537

11  patent"), issued on April 16, 2002, entitled "Computer Having

12  Liquid Crystal Display Between Frames Attached at the Edges."

13  A true and complete copy of the '537 patent is attached as

14  Exhibit "C."

15      10.  LPL is the owner by assignment of all rights, title and

16  interest in and to United States Patent No. 6,020,942 ("the '942

17  patent"), issued on February 1, 2000, entitled "Computer Having

18  Liquid Crystal Display." A true and complete copy of the '942

19  patent is attached as Exhibit "D."

20      11.  LPL is the owner by assignment of all rights, title and

21  interest in and to United States Patent No. 6,002,457 ("the '457

22  patent"), issued on December 14, 1999, entitled "Computer Having

23  Liquid Crystal Display." A true and complete copy of the '457

24  patent is attached as Exhibit "E."

25      12.  LPL is the owner by assignment of all rights, title and

26  interest in and to United States Patent No. 5,926,237 ("the '237

27  patent"), issued on July 20, 1999, entitled "Computer Having

28

1-LA/625037.1

3

1    Liquid Crystal Display."  A true and complete copy of the '237

2    patent is attached as Exhibit "F."

### DEFENDANTS' INFRINGEMENT OF LPL'S PATENTS

4        13.   LPL is informed and believes, and on that basis

5    alleges, that Defendant CPT manufactures liquid crystal display

6    ("LCD") panels that infringe LPL's patents as set forth in the

7    claims that follow, and that at least Tatung incorporates those

8    LCD panels into computer products, such as monitors.  LPL is

9    informed and believes, and on that basis alleges, that at least

10   Tatung America, Tatung's sales and distribution subsidiary,

11   imports into and sells in the United States, including within

12   this judicial district, computer products that include such CPT

13   LCD panels.

14       14.   LPL is informed and believes, and on that basis

15   alleges, that CPT maintains a sales representative in California,

16   has demonstrated and offered for sale LCD products in this

17   judicial district, and sells to California customers LCD panels

18   (and/or products with LCD panels incorporated therein) that

19   infringe LPL's patents as set forth in the claims that follow.

20       15.   LPL is informed and believes, and on that basis

21   alleges, that Tatung, Tatung America, and CPT are working in

22   concert to import and sell in the United States infringing LCD

23   panels (and/or products with infringing LCD panels incorporated

24   therein).

### FIRST CLAIM FOR RELIEF

### (INFRINGEMENT OF THE '737 PATENT)

27       16.   LPL incorporates by this reference paragraphs 1 through

28   15 above, as though fully set forth herein.

17.   Defendants have infringed and are infringing the '737
patent by making, using, selling, offering for sale and/or
importing into the United States products manufactured by a
process covered by one or more claims of the '737 patent, by
actively inducing and encouraging others to do so and/or by
contributing to such infringement.

18.   Defendants have infringed and are infringing the '737
patent with knowledge of LPL's patent rights and without a
reasonable basis for believing that Defendants' conduct is
lawful.  Defendants' acts of infringement have been willful,
deliberate, and in reckless disregard of LPL's patent rights, and
will continue unless enjoined by this Court.

19.   By reason of the foregoing, LPL has been damaged and
will continue to sustain damages in an amount to be determined at
trial and has suffered and will continue to suffer irreparable
loss and injury.

### SECOND CLAIM FOR RELIEF

### (INFRINGEMENT OF THE '449 PATENT)

20.   LPL incorporates by this reference paragraphs 1 through
15 above, as though fully set forth herein.

21.   Defendants have infringed and are infringing the '449
patent by making, using, selling, offering for sale and/or
importing into the United States products covered by one or more
claims of the '449 patent, by making, using, selling, offering
for sale and/or importing into the U.S. products manufactured by
a process covered by one or more claims of the '449 patent, by
actively inducing and encouraging others to do so and/or by
contributing to such infringement.

1-LA/629037.1

5

1   22.  Defendants have infringed and are infringing the '449

2   patent with knowledge of LPL's patent rights and without a

3   reasonable basis for believing that Defendants' conduct is

4   lawful.  Defendants' acts of infringement have been willful,

5   deliberate, and in reckless disregard of LPL's patent rights, and

6   will continue unless enjoined by this Court.

7       23.  By reason of the foregoing, LPL has been damaged and

8   will continue to sustain damages in an amount to be determined at

9   trial and has suffered and will continue to suffer irreparable

10  loss and injury.

11                    THIRD CLAIM FOR RELIEF

12              (INFRINGEMENT OF THE '537 PATENT)

13      24.  LPL incorporates by this reference paragraphs 1 through

14  15 above, as though fully set forth herein.

15      25.  CPT has infringed and is infringing the '537 patent by

16  making, using, selling, offering for sale and/or importing into

17  the United States products covered by one or more claims of the

18  '537 patent, by actively inducing and encouraging others to do so

19  and/or by contributing to such infringement.

20      26.  CPT has infringed and is infringing the '537 patent

21  with knowledge of LPL's patent rights and without a reasonable

22  basis for believing that its conduct is lawful.  CPT's acts of

23  infringement have been willful, deliberate, and in reckless

24  disregard of LPL's patent rights, and will continue unless

25  enjoined by this Court.

26      27.  By reason of the foregoing, LPL has been damaged and

27  will continue to sustain damages in an amount to be determined at

28

1-LA/625037.1

6

1  trial and has suffered and will continue to suffer irreparable

2  loss and injury.

3  ### FOURTH CLAIM FOR RELIEF

4  ### (INFRINGEMENT OF THE '942 PATENT)

5      28.  LPL incorporates by this reference paragraphs 1 through

6  15 above, as though fully set forth herein.

7      29.  CPT has infringed and is infringing the '942 patent by

8  making, using, selling, offering for sale and/or importing into

9  the United States products covered by one or more claims of the

10  '942 patent, by actively inducing and encouraging others to do so

11  and/or by contributing to such infringement.

12      30.  By reason of the foregoing, LPL has been damaged and

13  will continue to sustain damages in an amount to be determined at

14  trial and has suffered and will continue to suffer irreparable

15  loss and injury.

16  ### FIFTH CLAIM FOR RELIEF

17  ### (INFRINGEMENT OF THE '457 PATENT)

18      31.  LPL incorporates by this reference paragraphs 1 through

19  15 above; as though fully set forth herein.

20      32.  CPT has infringed and is infringing the '457 patent by

21  making, using, selling, offering for sale and/or importing into

22  the United States products covered by one or more claims of the

23  '457 patent, by actively inducing and encouraging others to do so

24  and/or by contributing to such infringement.

25      33.  CPT has infringed and is infringing the '457 patent

26  with knowledge of LPL's patent rights and without a reasonable

27  basis for believing that its conduct is lawful.  CPT's acts of

28  infringement have been willful, deliberate, and in reckless

1-LA/625037.1

'09-11-02   15:07   From-                                    T-555  P.009/011  F-959

1  disregard of LPL's patent rights, and will continue unless

2  enjoined by this Court.

3      34.  By reason of the foregoing, LPL has been damaged and

4  will continue to sustain damages in an amount to be determined at

5  trial and has suffered and will continue to suffer irreparable

6  loss and injury.

7                    SIXTH CLAIM FOR RELIEF

8              (INFRINGEMENT OF THE '237 PATENT)

9      35.  LPL incorporates by this reference paragraphs 1 through

10 15 above, as though fully set forth herein.

11     36.  CPT has infringed and is infringing the '237 patent by

12 making, using, selling, offering for sale and/or importing into

13 the U.S. products manufactured by a process covered by one or

14 more claims of the '237 patent, by actively inducing and

15 encouraging others to do so and/or by contributing to such

16 infringement.

17     37.  CPT has infringed and is infringing the '237 patent

18 with knowledge of LPL's patent rights and without a reasonable

19 basis for believing that its conduct is lawful.  CPT's acts of

20 infringement have been willful, deliberate, and in reckless

21 disregard of LPL's patent rights, and will continue unless

22 enjoined by this Court.

23     38.  By reason of the foregoing, LPL has been damaged and

24 will continue to sustain damages in an amount to be determined at

25 trial and has suffered and will continue to suffer irreparable

26 loss and injury.

27

28

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff LPL prays for relief against Defendants Tatung America, Tatung and CPT as follows:

1.   For a judgment that Defendants have infringed LPL's United States Patent Nos. 4,624,737 and 5,825,449;

2.   For a judgment that CPT has also infringed LPL's U.S. Patent Nos. 6,373,537, 6,020,942, 6,002,457, and 5,926,237;

3.   For preliminary and permanent injunctive relief against Defendants' further infringement of LPL's United States patents;

4.   For an award of damages for Defendants' infringement of LPL's patents, together with interest, costs and disbursements as fixed by this Court under Title 35 of the United States Code § 284;

5.   For a determination that Defendants' infringement is willful, and an award of trebled damages under Title 35 of the United States Code § 284, for infringement of LPL's patents;

6.   For a determination that this is an exceptional case within the meaning of Title 35 of the United States Code § 285 and an assessment of LPL's reasonable attorneys' fees; and

7.   For such other and further relief as the Court deems just and proper.

Dated:  August 29, 2002          MORGAN, LEWIS & BOCKIUS LLP


                                 By _____
                                    Jeffrey N. Brown
                                    Attorneys for Plaintiff
                                    LG.PHILIPS LCD CO., LTD.

1-LA/823037.1

9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## JURY TRIAL DEMAND

Plaintiff LG.Philips LCD Co., Ltd. hereby demands a trial by jury on all issues properly triable by jury.

Dated:  August 29, 2002

MORGAN, LEWIS & BOCKIUS LLP

By _____
Jeffrey W. Brown
Attorneys for Plaintiff
LG.PHILIPS LCD CO., LTD.

1-LA/629037.1

10

EXHIBIT 8

## PATENT LICENSE AGREEMENT

This Agreement is entered into, as of the _____ day of _____, 2002, by and between LG Philips LCD Co., Ltd., having its principal office and place of business at [at] 20 Yeoido-dong, Youngdungpo-ku Seoul, Korea (hereinafter referred to as "LG.Philips") and [_____], having an office at [insert address] (hereinafter referred to as "Licensee").

WHEREAS, LG.Philips owns and has rights in various patents issued, and applications for patents pending, in various countries of the world; and

WHEREAS, Licensee desires to acquire licenses to such rights as hereinafter provided.

NOW THEREFORE, in consideration of the mutual covenants and conditions hereinafter set forth, it is agreed as follows:

### ARTICLE 1

### DEFINITIONS

1.1    "Effective Date" shall mean the date first set forth above, subject to execution of this Patent License Agreement ("Agreement") by all parties and, if required, necessary approval of this Agreement by government authority.

1.2    "Licensee Subsidiary" shall mean any company, corporation or other business entity controlled either directly or indirectly by Licensee, or Licensee's parent company if the Licensee is itself a subsidiary, through ownership or control of fifty percent or more of voting stock or other voting interest. Provided, however, that in any country where the Licensee or its parent company is not permitted by law to own fifty percent (50%) or more of the voting stock or other voting interest of a local company, then such local company shall be deemed a subsidiary for purposes of this Agreement if the Licensee or its parent company owns the maximum voting stock or other voting interest that a foreign investor may own and if the business activities of the local company are substantially controlled by the Licensee or its parent company. Aforementioned company shall be deemed to be a Subsidiary only so long as such a direct or indirect ownership or control of shares exists between the Licensee and such company, corporation or other business entity.

*Patent License Agreement*

Licensing Agreement draft

CPT084280
CONFIDENTIAL
ATTORNEYS ONLY

12/06/2002    08:19    +886225915185

IN-12-2002 03:21AM   FROM-TATUNG CO                      +886 2 25915185      T-069  P 013   F-126

1.3    "LG.Philips Subsidiary" shall mean any company, corporation or other business entity controlled either directly or indirectly by LG.Philips through ownership or control of fifty percent or more of voting stock or other voting interest. Provided, however, that in any country where LG.Philips is not permitted by law to own fifty percent (50%) or more of the voting stock or other voting interest of a local company, then such local company shall be deemed a subsidiary for purposes of this Agreement if LG.Philips owns the maximum voting stock or other voting interest that a foreign investor may own and if the business activities of the local company are substantially controlled by LG.Philips. Aforementioned company shall be deemed to be a Subsidiary only so long as such a direct or indirect ownership or control of shares exists between LG.Philips and such company, corporation or other business entity.

1.4    "Licensed Patents" shall mean all classes or types of patents (except design patents), utility models and applications, related to Licensed Products, in all countries of the world, which are issued, published or filed prior to the date of expiration or termination of this Agreement, (i) which are now wholly owned or may hereafter during the term of this Agreement be wholly owned by LG.Philips or its Subsidiaries; or (ii) under which LG.Philips or its Subsidiaries may have or may hereafter during the term of this Agreement acquire the right to grant licenses to Licensee of the scope granted herein, provided however that such grant, or the exercise of rights under such grant, will not result in the payment of royalties or other consideration by LG.Philips or its Subsidiaries to third parties (except for payments to Subsidiaries of LG.Philips or payments to third-parties for inventions developed at or by LG.Philips or its Subsidiaries).

1.5    "Licensee Patents" shall mean all classes or types of patents (except design patents), utility models and applications, related to Licensed Products, in all countries of the world, which are issued, published or filed prior to the date of expiration or termination of this Agreement, (i) which are now wholly owned or may hereafter during the term of this Agreement be wholly owned by Licensee or its Subsidiaries; or (ii) under which Licensee or its Subsidiaries may have or may hereafter during the term of this Agreement acquire the right to grant licenses to LG.Philips of the scope granted herein, provided however that such grant, or the exercise of rights under such grant, will not result in the payment of royalties or other consideration by Licensee or its Subsidiaries to third parties (except for payments to Subsidiaries of Licensee or payments to third-parties for inventions developed at or by Licensee or its Subsidiaries).

*Patent License Agreement*

2

**CPT084281**
**CONFIDENTIAL**
**ATTORNEYS ONLY**

12/06/2002   00:19   +886225915195
(JN-(-3-2002  09:22AM  FROM-TATUNG CO                    +886 2 25915195        T-068  P 034/0`5  F-126

1.6     "LCD Module" shall mean an LCD display unit comprising at a minimum a display panel, driving circuits, interconnects, and a chassis. The display panel may or may not include a light source unit.

1.7     "LCD Panel" shall mean a display panel adapted to include at least a layer of liquid crystal.

1.8     "Licensed Product" shall mean any and all of the following:

    (a) LCD Module; and
    (b) LCD Panel;

1.9     "Net Selling Price" shall mean the invoice price for a Licensed Product which is manufactured and sold in an arm's length transaction by Licensee or its Subsidiaries without any deductions other than (1) insurance fees, packing and transportation charges as invoiced separately to Licensee's customers; (2) sales returned; and (3) duties and sales taxes actually incurred and paid by Licensee in connection with delivery of such Licensed Product, provided, however that the deductions shall be limited to not more than fifteen percent (15%) of such invoice price. In any transfer of Licensed Products between Licensee and one of its Subsidiaries, the Net Selling Price shall be deemed to be equal to the average Net Selling Price as defined above for the same or equivalent Licensed Product sold in arm's length transaction during the current accounting period. In the event that non-monetary consideration is received for any Licensed Products, Net Selling Price with respect to such Licensed Products shall be calculated based on the average Net Selling Price for the same or equivalent Licensed Product sold in an arm's length transaction during the current accounting period.

1.10    "Running Royalty(ies)" shall mean the running royalty per unit of the Licensed Products used, sold, imported, leased or otherwise disposed of by Licensee and/or any of its subsidiaries.

## ARTICLE 2

## RELEASES

2.1     Subject to the obligation of Licensee to make the payment as specified in Article 4.2, LG.Philips hereby releases, acquits and discharges Licensee and its Subsidiaries,

*Patent License Agreement*

3

CPT084282
CONFIDENTIAL
ATTORNEYS ONLY

12/06/2002   08:20   +886225915185
.1N-12-2002  08:22AM   FROM-TATUNG CO                     +886 2 25915185       T-069   P.035/015   F-126

and their customers forever from any and all claims or liability for infringement or alleged infringement of any Licensed Patents, which may have occurred prior to the Effective Date within the scope of the licenses granted in Article 3.1 hereof.

2.2    Licensee hereby releases, acquits and discharges LG.Philips and its Subsidiaries, and their customers forever from any and all claims or liability for infringement or alleged infringement of any Licensee Patents, which may have occurred prior to the Effective Date within the scope of the licenses granted in Article 3.5 hereof.

# ARTICLE 3

## LICENSES

3.1    Subject to the terms and conditions of this Agreement, including the obligation of Licensee to make the payments as specified in Article 4.1 and Article 4.2, LG.Philips hereby grants to Licensee, for the term of this Agreement, a non-exclusive, non-transferable license throughout the world under Licensed Patents to make, use, lease, sell, offer for sale, import, or otherwise dispose of Licensed Products. The license granted herein under Licensed Patents shall not extend to having Licensed Products made for Licensee by any entity other than Licensee (and its Subsidiaries, provided Licensee pays the royalties on such products).

3.2    The license granted herein shall include a sublicense to Licensee's Subsidiaries, identified in Appendix A, which are Licensee's Subsidiaries as of the Effective Date of this Agreement. Licensee shall pay and account to LG.Philips for royalties hereunder with respect to the exercise by any Subsidiary of Licensee of the sublicense granted to it hereunder. Sublicenses will be granted to additional Subsidiaries of Licensee during the term of this Agreement upon receipt by LG.Philips of written notices from Licensee setting forth the names and addresses of such additional Subsidiaries to be covered by this Agreement, provided each such notice is given before any sales of Licensed Products by the Subsidiary named therein. Each Subsidiary sublicensed under this Agreement shall be bound by the terms and conditions of this Agreement as if it were named herein in the place of Licensee. Licensee represents to LG.Philips that it has the power to bind each such Subsidiary to the terms and conditions of this Agreement and agrees to take whatever action is necessary to legally bind such Subsidiaries. The sublicense granted to a Subsidiary shall terminate on the date such Subsidiary ceases to be a Subsidiary.

*Patent License Agreement*

4

Licensing Agreement draft

CPT084283
CONFIDENTIAL
ATTORNEYS ONLY

12-06/2002  06:20    +886225915185
JUN-12-2002 03:22AM  PROM-TATUNG CO                    +886 2 25915185        T-089  P.006/015  F-126

3.3     Licensee expressly represents that its Subsidiaries identified in Appendix A.
include all of Licensee's Subsidiaries as of the Effective Date of this Agreement.

3.4     Except as set forth in Article 3.2, Licensee has no right to sublicense third
parties under this Agreement.

3.5     Licensee hereby grants to LG.Philips and its Subsidiaries, for the term of this
Agreement, a non-exclusive, non-transferable license throughout the world under
Licensee Patents to make, use, lease, sell, offer for sale, import, or otherwise dispose of
Licensed Products. The license granted herein under Licensee Patents shall not extend
to having Licensed Products made for LG.Philips or its Subsidiaries by any entity other
than LG.Philips and its Subsidiaries.

3.6     No license is granted to Licensee by LG.Philips in this Article 3.0, either
directly or by implication, estoppel, or otherwise, other than under the Licensed Patents.

3.7     In the event that neither a party nor any of its Subsidiaries has the right to grant
a license of the scope set forth herein under any particular patent, utility model, or
application that falls within the definition of Licensed Patents or Licensee Patents, then
the license granted herein under such patent, utility model, or application shall be of the
broadest scope which the licensing party or any of its Subsidiaries has the right to grant.

3.8     Notwithstanding anything to the contrary contained herein, in the event that
either party or any of its Subsidiaries has or obtains rights to any particular patent,
utility model, or application that would be included within the Licensed Patents or
Licensee Patents but for the fact that such a license would require the party granting
such license to make payments to a third party, such patent, utility model, or application
shall be included within the Licensed Patents or Licensee Patents, as the case may be, if
the party to whom such would be licensed under this Agreement agrees in a separate
written agreement to be bound by, and protect such grantor against, those payment
obligations.

# ARTICLE 4

# ROYALTIES

4.1     In consideration of the licenses and rights granted by LG.Philips and the
licenses and rights granted by Licensee under Article 3.0, Licensee agrees to pay to

*Patent License Agreement*

5

Licensing Agreement draft

CPT084284
CONFIDENTIAL
ATTORNEYS ONLY

LG Philips Running Royalties for all Licensed Products used, sold, imported, leased or otherwise disposed of by Licensee and/or any of its Subsidiaries during the term of this Agreement as follows:

(a) In the event that Licensee or one of its Subsidiaries manufactures and sells a Licensed Product to any third party, or Licensee transfers a Licensed Product to one of its subsidiaries or vice versa, the Running Royalty shall be calculated at the rate 2.5% of the Net Selling price of the Licensed Product; or

(b) In the event that the Licensee or one of its Subsidiaries incorporates a Licensed Product into a display, computer, personal digital assistant, portable information terminal, projector or any other product ("Used"), the Running Royalty shall be calculated at the rate of 2.5% of the average Net Selling Price of the same Licensed Product which the Licensee or its Subsidiary transfers to a third party other than one of Subsidiaries of the Licensee or the Licensee during the current accounting period.

(c) Running Royalties shall accrue at the time when each of the following occurs:

(i) In the event that a Licensed Product is sold (as evidenced by the applicable invoice or bill) or disposed of by either Licensee or any of its Subsidiaries to a third party without being Used (as defined in Article 4.1(b) hereof), at the time of the sale or the disposal, regardless of whether any payment is received by the Licensee or a Subsidiary of the Licensee sublicensed hereunder; or

(ii) In the event that a Licensed Product is Used (as defined in Article 4.1(b) hereof) before being transferred, sold or disposed of by either Licensee or any of its Subsidiaries to a third party, at the time when the Licensed Product is Used for the first time.

4.2     In additional consideration for the release granted by LG Philips and the release granted by Licensee under Article 2.0, Licensee agrees to pay to LG Philips the sum of _____ within forty five (45) days of the Effective Date

## ARTICLE 5

## REPORTS, PAYMENTS, AND RECORDS

*Patent License Agreement*

6

Licensing Agreement draft

CPT084285
CONFIDENTIAL
ATTORNEYS ONLY

12-06-2002    08:21    +836225915185

.1N-12-2002 03:23AM    FROM-TATUNG CO                        +886 2 25915185        T-069    P.008/0 5    F-126

5.1    Within forty-five (45) days after the end of each March, June, September and December following the Effective Date, Licensee shall furnish to LG.Philips a written royalty report showing product type (for example, module, panel, driver, etc), brand name, model number, Net Selling Price, quantity, and total royalty due of each Licensed Product made, used, sold, imported or otherwise disposed by Licensee and any of its Subsidiaries during the preceding calendar quarter and the computation of the total amounts of royalties payable pursuant to Article 4.1 hereof in accordance with the format with which LG.Philips provides. Within sixty (60) days after the end of each accounting period as specified in Article 5.4 below, Licensee shall pay to LG.Philips the royalties due and payable under this Agreement for each such quarterly period to the account referred to in Article 11.3 (or such other account as LG.Philips shall from time to time indicate in writing to Licensee). Charges and expenses incurred by the payment of royalties or their remittance shall be borne by Licensee.

5.2    Licensee's royalty report shall be certified by an officer of Licensee or by a 'designee of such officer to be correct to the best of Licensee's knowledge and information.

5.3    A Licensed Product shall be considered sold when invoiced, or if not invoiced, delivered to a third party by Licensee or its Subsidiary or otherwise disposed of or put into use by the Licensee or its Subsidiary.

5.4    An accounting period shall end on the last day of each March, June, September and December during the term of this Agreement. The first accounting period under this Agreement shall be for a period commencing as of the Effective Date of this Agreement.

5.5    Licensee shall bear and pay all taxes imposed with respect to the payments under Article 4.0.

5.6    Licensee shall pay royalties and other sums of money due hereunder in United States dollars. Any royalties for an accounting period computed on invoiced amounts in currencies other than United States dollars shall be converted directly into United States dollars without intermediate conversion to any other currency at the rate of conversion published by the Wall Street Journal on the date on which the remittance is made by Licensee.

5.7    Licensee shall be liable for interest at a rate of ten percent (10.0%) on any overdue royalty or other payment set forth in Article 4.0 herein, commencing on the date such royalty or other payment becomes due. If such interest rate exceeds the maximum legal rate in the jurisdiction where a claim therefor is being asserted, the interest rate shall be reduced to such maximum legal rate. Notwithstanding the

*Patent License Agreement*

7

CPT084286
CONFIDENTIAL
ATTORNEYS ONLY

12/06/2002   08:21    +886225915185

IN-12-2002 09:29AM   FROM-TATUNG CO                          +886 2 25915185       T-068  P 09/70-5  F-126

foregoing provision for interest, LG.Philips may terminate this Agreement by giving written notice if such royalty or other payment is not paid beyond ninety (90) days after the end of a calendar quarter.

5.8    The Licensee shall keep, and the Licensee shall cause the Subsidiaries of the Licensee to keep, accurate and complete records and books of account containing regular entries in accordance with the GAAP consistently applied for the purpose of calculating Running Royalties and making royalty reports pursuant to Article 5.1  All the records and books of account relating to a particular fiscal year of the Licensee and such Subsidiaries shall be retained for a period of five (5) years following the close of such fiscal year.  All records and books of account shall contain all information necessary to calculate Running Royalties hereunder and to determine the accuracy of the royalty reports.  LG.Philips shall have the right (which it may not exercise more than once for each year) to cause such records and books of account to be audited by an independent public accounting firm selected by LG.Philips at its sole discretion among any independent public accounting firms which have offices in the Republic of China and a law firm selected by LG.Philips for the sole purpose of determining the accuracy of reports and calculations of Running Royalties.  Such audits shall be made during normal business hours of the Licensee or such Subsidiaries and with at least fifteen (15) day prior notice.  All information disclosed to or obtained by the independent public accounting firm and the law firm during such audit shall not be disclosed to anyone including LG.Philips (except as required by law or by any governmental agency or tribunal, and except as may be necessary or proper in connection with any dispute or proceeding relating to this Agreement) and shall be held in strictest confidence, except that the independent public accounting firm and the law firm may disclose to LG Philips whether a discrepancy in Running Royalty payments has been found, the amount of the discrepancy involved, and the circumstance of the discrepancy, including the basis upon which the discrepancy is determined.  In the event such audit reveals that the Licensee underpaid or under-reported Running Royalties due LG.Philips, the Licensee shall promptly upon demand pay to LG.Philips the deficiency and interest thereon under Article 5.7, and if such deficiency is in excess of five percent (5%) of the amount actually due, the Licensee shall pay to LG.Philips, in addition to the deficiency and interest set forth hereinabove, an amount equivalent to ten percent (10%) of the Running Royalties of the deficiency that should have been paid to LG.Philips as a penalty  The Licensee also upon demand from LG.Philips shall reimburse LG.Philips for the costs and expenses incurred in conducting such audit, if the deficiency is more than 5%.

5.9    Within forty-five (45) days after the execution of this Agreement, Licensee shall pay to LG.Philips the sum provided in Article 4.2. In any case, this sum is not refundable and is not creditable toward royalties set forth in this Article 4.1.

*Patent License Agreement*

8.

Licensing Agreement draft

CPT084287
CONFIDENTIAL
ATTORNEYS ONLY

12/06/2002   08:21   +886225915185

JUN-12-2002 08:24AM   FROM-TATUNG CO                              +886 2 25915185      T-069   P.010/013   F-126

# ARTICLE 6

## TERM

6.1     The term of this Agreement shall be five (5) years from the Effective Date of
this Agreement, unless earlier terminated as provided for in Article 7.1 and 7.2, and
shall be automatically renewed for periods of five (5) years thereafter unless either party
gives written notice to the other party at least one (1) month prior to the expiration of
such periods.

6.2     Each party shall give their best efforts to obtain any government approval
required under this Agreement.

# ARTICLE 7

## TERMINATION

7.1     If Licensee at any time during the term of this Agreement shall be in breach or
default of any of the obligations under this Agreement, LG.Philips may terminate this
Agreement by giving written notice to Licensee.   Said termination shall become
effective on the sixtieth (60th) day after mailing of such notice if Licensee shall not
prior thereto have cured such breach or default.   If this Agreement is so terminated, all
rights of the Licensee under this Agreement shall forthwith cease.

7.2     Either party may at its option terminate this Agreement upon the insolvency,
bankruptcy or combination with creditors by Licensee.

7.3     Notwithstanding any provision of this Agreement, the following rights and
obligations shall survive any expiration or termination of this Agreement:

    (1)     The provisions of Articles 5.8, 8.1, 8.2, 9.1, and 10.1; and

    (2)     Licensee's obligation to pay any unpaid royalties and any interest on
such unpaid royalties.

*Patent License Agreement*

9

CPT084288
CONFIDENTIAL
ATTORNEYS ONLY

12/06/2002   00:22   +886225915185
.UN-12-2002  03:24AM   FROM-TATUNG CO                    +886 2 25915185        T-068   P 011/0 5   F-126

# ARTICLE 8

## ASSIGNMENTS

8.1    Neither this Agreement nor any rights or licenses granted or extended hereunder may be assigned, extended or otherwise transferred by either of the parties hereto, nor shall they inure to the benefit of any trustee in bankruptcy, receiver or other successor of such party whether by operation of law or otherwise, without the written consent of the other party. Any assignment or transfer without such consent shall be null and void, and shall constitute a breach of this Agreement.

8.2    In the event that either party is acquired by or merged with or into another company or entity, the licenses and releases granted herein shall not extend to any operations or activities of such other company or entity (whether preexisting or later created) with which either party is or becomes combined, merged, or otherwise grows unnaturally.

# ARTICLE 9

## CONFIDENTIALITY/RESTRICTED COMMUNICATIONS

9.1    Other than revealing the existence of this Agreement, neither party shall divulge the terms and conditions of this Agreement, nor the contents of any discussions or negotiations leading up to this Agreement, to any third party except as required by law or upon the written consent of the other party.   This consent will not be unreasonably withheld.

9.2    Licensee agrees that, during the term of this Agreement, Licensee shall not challenge the validity or enforceability of, nor assist or encourage any other person in challenging the validity or enforceability of, any of the Licensed Patents. Any breach of this provision is agreed to be a material breach of this Agreement for which an inadequate remedy would be available at law justifying injunctive relief in addition to any other remedies available to LG.Philips (including those provided in Article 7.1).

*Patent License Agreement*

10

**CPT084289**
**CONFIDENTIAL**
**ATTORNEYS ONLY**

12/06/2002    08:22    +886225915185
JUN-12-2002  03:24AM  FROM-TATUNG CO                          +886 2 25915185      T-069   P 012/0 5   F-128

## ARTICLE 10

## APPLICABLE LAW

10.1    This Agreement (and any dispute controversy, proceedings, or claim of whatever nature arising out of or in any way relating to this Agreement) shall be governed by and construed in accordance with the laws of the Republic of Korea. All disputes, controversies, or differences which may arise between the parties out of or in relation to or in connection with the Agreement, shall finally settled by arbitration in Seoul, Korea in accordance with the Commercial Arbitration Rules of the Korean Commercial Arbitration Board and under the laws of Korea. The award rendered by arbitration shall be final and binding upon the parties hereto, and may be entered in any court having jurisdiction hereof.

## ARTICLE 11

## NOTICES AND OTHER COMMUNICATIONS

11.1    The Licensee shall state, and shall cause its Subsidiaries to state, in its or their product brochures, catalogs, and promotional and sales materials for the Licensed Products to the effect that the Licensed Products sold by the Licensee or the Subsidiary of the Licensee are made under license of the patents owned by LG.Philips, and shall furnish to LG.Philips a copy of each such product brochure or material.

11.2    All notices and other communications required or permitted to be given hereunder shall be in writing and shall be valid and sufficient if dispatched by registered airmail, prepaid airmail, prepaid air express or by facsimile (confirmed by registered or certified air mail) and shall be effective on the date of receipt by the addressee. Such notice or communication shall be mailed to:


If to LG.Philips:

[INSERT CONTACT INFORMATION]


*Patent License Agreement*

11

CPT084290
CONFIDENTIAL
ATTORNEYS ONLY

12/06/2002    08:22    +886225915185
IN-12-2002 03:25AM    FROM-TATUNG CO                    +886 2 25915185        T-069  P 013/015  F-126

If to Licensee:

[INSERT CONTACT INFORMATION]

11.3    All payments set forth in Article 4.0 of this Agreement shall be paid via bank wire transfer to:

[INSERT BANK INFORMATION]

## ARTICLE 12

## MISCELLANEOUS

12.1    Nothing contained in this Agreement shall be construed as:

(a)    a warranty or representation by either of the parties to this Agreement as to the validity or scope of any Licensed Patents or Licensee Patents; or

(b)    a warranty or representation that any manufacture, sale, lease, import, use or other disposition of Licensed Products hereunder will be free from infringement of any intellectual property right of third parties; or

(c)    an obligation to bring or prosecute actions or suits against third parties for infringement of any patent or conferring any right to bring or prosecute actions or suits against third parties for infringement of any patent; or

(d)    conferring any right to use in advertising, publicity, or otherwise, any trademark, trade name or corporate name, or any contraction, abbreviation or simulation thereof, of either party or its Subsidiaries; or

(e)    conferring upon either party or its Subsidiaries any obligation to file any patent application or to secure any patent or maintain any patent in force; or

(f)    an obligation on the part of either party to furnish any technical information, know-how or trade secrets to the other party.

12.2    EACH PARTY HEREBY DISCLAIMS ANY IMPLIED WARRANTIES WITH RESPECT TO THE PATENTS LICENSED HEREUNDER, INCLUDING

*Patent License Agreement*

12

CPT084291
CONFIDENTIAL
ATTORNEYS ONLY

12/06/2002    06:22    +886225915185
.(N-12-2002  03:25AM   FROM-TATUNG CO                        +886 2 25915185    T-069   P.014/015  F-126

WITHOUT LIMITATION, THE WARRANTIES OF MERCHANTABILITY OR
FITNESS FOR A PARTICULAR PURPOSE.

12.3    Regardless of which party may have drafted this Agreement, no rule of strict
construction shall be applied against either party. If any provision of this Agreement is
determined by a court to be unenforceable, the parties shall deem the provision to be
modified to the extent necessary to allow it to be enforced to the extent permitted by law,
or if it cannot be modified, the provision will be severed and deleted from this
Agreement, and the remainder of the Agreement will continue in effect.

## ARTICLE 13

## ENTIRE AGREEMENT

13.1    This Agreement embodies the entire understanding of the parties with respect
to the subject matter hereof, and merges all prior discussions between them, and neither
of the parties shall be bound by any conditions, definitions, warranties, understandings,
or representations with respect to the subject matter hereof other than as expressly
provided herein. No oral explanation or oral information by either party hereto shall
alter the meaning or interpretation of this Agreement.

13.2    No modification or amendment to this Agreement, nor any waiver of any rights,
will be effective unless assented to in writing by the party to be charged, and the waiver
of any breach or default will not constitute a waiver of any other right hereunder or any
subsequent breach or default.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be
executed by their respective duly authorized representatives on the date written below.

LG.Philips LCD Co. Ltd.                    Licensee

By: _____                    By: _____

Name: _____                  Name: _____

*Patent License Agreement*

13

Licensing Agreement draft

CPT084292
CONFIDENTIAL
ATTORNEYS ONLY

12/06/2002   03:23   +886225915195
.1N-12-2002 03:25AM   FROM-TATUNG CO.                    +886 2 25915195      T-069   P.015/0 5   F-126

Title: _____              Title: _____

Date: _____              Date: _____

*Patent License Agreement*

Licensing Agreement draft

**CPT084293**
**CONFIDENTIAL**
**ATTORNEYS ONLY**

EXHIBIT 9

REDACTED