IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LG.PHILIPS LCD CO., LTD., <br><br> Plaintiff/Counterclaim Defendant, <br><br> v. <br><br> TATUNG COMPANY; <br> TATUNG COMPANY OF AMERICA, INC.; <br> CHUNGHWA PICTURE TUBES, LTD.; <br> AND VIEWSONIC CORPORATION, <br><br> Defendants/Counterclaim Plaintiffs. | Civil Action No. 05-292 (JJF) <br><br> **REDACTED** |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* (No. 6)
SEEKING TO PRECLUDE LPL FROM USING ANY DOCUMENTS IN ITS FAVOR AT
TRIAL THAT IT PRODUCED AFTER THE FEBRUARY 21 DOCUMENT
PRODUCTION CUT-OFF**

THE BAYARD FIRM
Richard D. Kirk (#922)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899-5130
(302) 429-4208

Counsel for Plaintiff
LG.PHILIPS LCD CO., LTD.

OF COUNSEL:
Gaspare J. Bono
Matthew T. Bailey
Cass W. Christenson
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C. 20006
(202) 496-7500 (Telephone)
(202) 496-7756 (Facsimile)

June 30, 2006

Plaintiff LG.Philips LCD Co., Ltd. ("LPL"), hereby opposes "Defendants' Motion *in Limine* (No. 6) Precluding LPL from Using Any Document in its Favor at Trial That it Produced After the February 21 Document Production Cut-off" (the "Motion"). The Court should deny Defendants' Motion in all respects.

## I. DEFENDANTS' MOTIONS *IN LIMINE* IMPROPERLY SEEK LEGAL RULINGS ON BROAD ISSUES AND FAIL TO SHOW UNDUE PREJUDICE

Defendants have filed seven (7) motions in limine on broad subjects. Pretrial motions to exclude evidence lack trial context and are rarely granted. *See In re Diet Drugs Prods. Liab. Litig.*, 369 F.3d 293, 314 (3d Cir. 2004) (pretrial exclusion under FRE 403 "is an extreme measure"); *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 859 (3d Cir. 1990). Defendants' motions improperly seek to undercut LPL's ability to argue and present its case, instead of presenting narrow evidentiary issues. *See TVT Records v. Island Def Jam Music Group*, 250 F. Supp. 2d 341, 344 (S.D.N.Y. 2003) (motions in limine should not be used "as preemptive weapons . . . to strike in shotgun fashion at whole topics," effectively requiring "a form of advance trial of substantive" issues). Further, Defendants' motions fail to establish any undue prejudice. *See Ansell v. Green Acres Contracting Co.*, 347 F.3d 515, 525 (3d Cir. 2003) (explaining that "[p]rejudice does not simply mean damage to the opponent's cause[,]" otherwise, "most relevant evidence would be deemed prejudicial.") (quoting *Goodman v. Pa. Turnpike Comm'n*, 293 F.3d 655, 670 (3d Cir. 2002)). This Motion broadly and impermissibly seeks to foreclose LPL from using documents produced after the February 21 document production cut-off, even when the documents were produced pursuant to an agreement with Defendants, and should be denied.

629192v1

## II.    LPL PROPERLY PRODUCED THE SEL LICENSE AGREEMENT IN RESPONSE TO A MEET AND CONFER WITH DEFENDANT

During a meet and confer in May, both LPL and Defendants agreed to further investigate whether any licenses had not been produced so that the parties could make any necessary supplemental production of license agreements. *See* Ex. 1, Letter from Matthew W. King to the Honorable Judge Joseph J. Farnan, May 8, 2006 at 1-2.

LPL promptly informed Defendants about the license agreement and that LPL was seeking permission          to produce it, as required by the confidentiality provision in the agreement. *See* Ex. 2, Letter from Cass W. Christenson to Julie S. Gabler, May 16, 2006.    Shortly thereafter, LPL produced license agreement to Defendants.

Defendants, however, clearly ignored the meet and confer agreement and did not notify LPL whether any additional license agreements existed. During depositions, LPL learned of several agreements not previously produced by Defendants. CPT witness Belle Chang, for example, identified agreements that had not been produced. *See* Ex. 3, Letter from Cass W. Christenson to Steven Yovits, June 8, 2006 at 2.    LPL has repeatedly requested license agreements and related documents identified during Defendants' depositions. Defendants have produced some, but not all, of these documents. LPL should not be penalized simply for complying with an agreement between counsel.

REDACTED

### III.    LPL PROPERLY PRODUCED DOCUMENTS RELATED TO THE '002 PATENT AND HONEYWELL'S PRIVILEGED DOCUMENTS ARE PROTECTED

LPL fully and diligently responded to Defendants' many broad requests for production of documents and the Court's related order by producing documents related to the '002 patent. Defendants separately sought documents related to the '002 patent from Honeywell. While LPL received Honeywell's production documents, it never received or was informed of the specific contents of Honeywell's privilege log. LPL also did not receive copies of Honeywell's privilege log until approximately June 12, 2006.

LPL only became aware of the documents listed in Honeywell's privilege log in preparation for the June 15 deposition of the inventor of the '002 patent, Scott Holmberg. Mr. Holmberg previously worked for Alphasil, a company acquired by Honeywell. As stated in the attached Declaration of Song K. Jung, LPL learned of the contents of the documents on Honeywell's privilege log on or about June 8, 2006. *See* Ex. 4. The nine (9) pages of Honeywell documents were used for the sole purpose of refreshing Mr. Holmberg's recollection about the date of a meeting recorded in the Honeywell documents. LPL's counsel learned of the relevance of these documents while preparing with Mr. Holmberg for his June 15, 2006 deposition. As soon as LPL's counsel learned of the relevance of the documents, LPL immediately produced the documents to Defendants on that same day, June 12, 2006. These documents were produced without bates numbering to avoid delay, and then reproduced the next day with bates numbers. Thus, LPL diligently produced the Honeywell documents after becoming aware of them. Only nine (9) pages are in dispute, and Defendants cannot show any prejudice. Because the documents establish that the invention predates certain alleged prior art, the documents are significant and should be admitted at trial.

629192v1

4

Defendants' assertion of prejudice with respect to all aspects of discovery of the Honeywell documents is unpersuasive. Defendants have been aware of Honeywell's privilege log since February 6, 2006, as noted in Defendants' Motion, and have never attempted to challenge Honeywell's privilege or depose any related witnesses. Defendants have also fully inquired into the documents in the deposition of Mr. Holmberg.

## IV.    CONCLUSION

Accordingly, for all the foregoing reasons, Defendants' Motion should be denied.

June 30, 2006

THE BAYARD FIRM

/s/ Richard D. Kirk (rk0922)
Richard D. Kirk (#922)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899-5130
(302) 655-5000
rkirk@bayardfirm.com

Counsel for Plaintiff
LG.PHILIPS LCD CO., LTD.

OF COUNSEL:
Gaspare J. Bono
Matthew T. Bailey
Cass W. Christenson
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C. 20006
(202) 496-7500

629192v1

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on June 30, 2006, he electronically filed

the foregoing document with the Clerk of the Court using CM/ECF, which will send

automatic notification of the filing to the following:

Robert W. Whetzel, Esq.
Matthew W. King, Esq.
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

The undersigned counsel further certifies that copies of the foregoing document

were sent on June 30, 2006 by email and by hand to the above counsel and by email and

first class mail to the following non-registered participants:

| | |
|---|---|
| Christine A. Dudzik, Esq. | Teresa M. Corbin, Esq. |
| Thomas W. Jenkins, Esq. | Glenn W. Rhodes, Esq. |
| Howrey LLP | Julie Gabler, Esq. |
| 321 North Clark Street | Howrey LLP |
| Suite 3400 | 525 Market Street |
| Chicago, IL 60610 | Suite 3600 |
| | San Francisco, CA 94105 |

/s/ Richard D. Kirk (rk0922)
Richard D. Kirk

**Exhibit 1**

RICHARDS, LAYTON & FINGER

A PROFESSIONAL ASSOCIATION

ONE RODNEY SQUARE

920 NORTH KING STREET

MATTHEW W. KING

WILMINGTON, DELAWARE 19801

(302) 651-7700

FAX (302) 651-7701

WWW.RLF.COM

DIRECT DIAL NUMBER

302-651-7881

KING@RLF.COM

May 8, 2006

**VIA ELECTRONIC FILING**

The Honorable Joseph J. Farnan, Jr.
United States District Court
District of Delaware
844 King Street
Wilmington, DE  19801

Re:   L.G. Philips LCD Co. Ltd. v. Tatung Company et. al., C.A. No. 05-292 (JJF)

Dear Judge Farnan:

Defendants Chunghwa Picture Tubes, Ltd. ("CPT"), Tatung Company ("Tatung"), Tatung Company of America, Inc. ("Tatung USA") and ViewSonic Corporation ("ViewSonic") respectfully submit their letter to address the status of damages discovery, both in response to LG.Philips LCD Co., Ltd.'s ("LPL's") letter of May 3 and to affirmatively identify deficiencies in LPL's production.

On February 28, 2006, the parties submitted deficiency letters to this Court identifying the specific document discovery deficiencies existing in the other parties' productions. At the March 1 hearing on these issues, this Court divided the issues raised by the parties into two groups: damages related discovery and everything else. The Court issued an order concerning the non-damages related discovery, but stayed the issues raised concerning damages discovery. At no point between March 1 and April 25 did the Court suggest to either party that they could broaden the scope of their respective February 28 letters as to damages issues or otherwise seek additional damages discovery not identified in those letters. Thus, it is defendants' position that the parties are limited to seeking damages discovery specifically raised in their February 28 submissions to the Court. On April 25, LPL sent an email to defendants purporting to raise a host of new "deficiencies" in defendants' productions that either were not raised on February 28 or were not raised with anything resembling the type of specificity required to put defendants' on notice of the actual nature of LPL's claimed deficiencies. As such, defendants expressly object to LPL's April 25 attempt to recharacterize and expand upon their February 28 submission.

**Agreements Reached**

Since April 25, the parties have reached the following agreements concerning outstanding damages discovery:

The Honorable Joseph J. Farnan, Jr.
May 8, 2006
Page 2

- **Supplementation of data concerning sales, price, revenue, cost and profit information**: The parties previously had produced this information through December 31, 2005. The parties have agreed to supplement their previous productions by providing this data through March 31, 2006. The exact date for the exchange of this information has not been set, but the parties have agreed that this information will be simultaneously exchanged shortly. Thus, defendants believe the parties' issues concerning this information are resolved.

  CPT has further agreed to re-produce their pre-2005 sales data in a slightly different format than it was originally produced. Specifically, CPT originally provided this data organized by customer, listing all sales transactions with customer #1, then all sales transactions with customer #2, etc. LPL has requested that CPT provide this data organized by product number rather than by customer (e.g. all sales of a particular module, then all sales of the next module, etc.). CPT has agreed to re-produce this information in the new format requested by LPL.

  Additionally, CPT has agreed to provide subtotals by module and totals for all modules of units sold and dollars received. CPT does not maintain this information in its documents as they are maintained in the ordinary course of business. However, CPT has agreed to provide this information to LPL when it re-produces it pre-2005 sales data organized by product, rather than by customer.

- **Production by LPL of Display Search Data in Electronic Form**: LPL previously had provided thousands of pages in hard copy of marketshare data from third-party Display Search. CPT requested that this information be provided in electronic form, rather than hard copy. LPL has agreed to produce this information in electronic form under the Attorneys Eyes Only designation. Defendants have not yet received this promised production. When LPL produces the complete set of information as requested, this issue will be resolved.

- **Supplementation of License Agreement**: Both parties have agreed to provide any additional TFT LCD related licenses entered into in 2006. It is not yet known whether any party has additional licenses to produce, but to the extent they exist, the parties have agreed to promptly supplement. Defendants believe the parties' issues concerning the production of licenses are resolved.

- **Rebates and Discounts**: Both parties have agreed to investigate whether any additional documents are available concerning rebates or other discounts that might effect actual net pricing to some or all customers. Should any additional documents be located, the parties have agreed to produce those documents promptly.

- **Product/User Manuals**: The customer defendants have agreed to re-verify that their productions of product/user manuals reflect all new models in which accused CPT panels may be incorporated into some, but not necessarily all units, whether

The Honorable Joseph J. Farnan, Jr.
May 8, 2006
Page 3

or not those units are sold in the United States. Should any additional documents be located, the customer defendants have agreed to produce those documents promptly.

- **OEM Agreements:** The customer defendants have agreed to re-verify that their productions of OEM Agreements are complete. Should any additional documents be located, the customer defendants have agreed to produce those documents promptly.

**Issues Outstanding in LPL's Damages-Related Document Production**

Defendants continue to seek the following additional damages-related documents from LPL as identified in defendants' February 28 submission to the Court:

**1.     Internal LPL documents including comparisons between LPL products and the accused products, the identity, product, and prices of competitors in such markets, competitive analyses, and analyses regarding the targeted markets and distribution networks of LPL as called for by Request No. 34[1] and sought on page 2 of defendants' February 28 deficiency letter.**

LPL has not produced a single document in this category. The only marketshare/ competitive analysis information LPL has produced is the information it purchased from third-party Display Search. Defendants naturally question the completeness of a production that does not contain a single document evidencing any internal analyses of this information or any other competitive information LPL acquires in the market place. In 2002, LPL embarked on an aggressive patent license program, including bringing suit against companies who refused to immediately take a license to LPL's patents, many of which have now been shown to be invalid and/or are so strongly suspected to be invalid that LPL has withdrawn pending infringement claims on those patents. It is hard to imagine that LPL did not perform any competitive or marketshare analyses prior to or as part of their licensing program. Defendants renew their request that LPL be ordered to produce all documents in this category.

---

[1] Request No. 34 called for "All documents and things describing the markets in which LPL products that are comparable to the accused products are sold, including but not limited to documents describing LPL's market share and the market share of all competitors with respect to each product, the effect on LPL and the TFT LCD device market due to the entry of one or more competitors or competitive products into the market, the demand for such products, factors that affect market demand for such products, competition between LPL and the Defendants with respect to the patents-in-suit and any product alleged to be made thereby, comparisons between LPL products and the accused products, the identity, products, and prices of competitors in such markets, competitive analyses, and analysis regarding the targeted markets and distribution networks of LPL."

RLF1-3011780-1

The Honorable Joseph J. Farnan, Jr.
May 8, 2006
Page 4

2.    **Documents supporting LPL's claim for injunctive relief (Request No. 69[2]) and post-judgment interest (Request No. 70[3]) as called for by Request Nos. 69 and 70 and sought on page 6 of defendants' February 28 deficiency letter.**

In the parties' recent meet and confer discussions on this issue, LPL's counsel represented that LPL does not intend to rely on any documents not already produced or otherwise publicly available (e.g. published interest rates) in support of its requests for injunctive relief and post-judgment interest. In light of LPL's representation, defendants ask this Court to enter an order expressly barring LPL from supporting its requests for injunctive relief and post-judgment interest to those documents produced on or before May 17, 2006 and those produced pursuant to the agreements recently reached between the parties as described above in the "Agreements Reached" section.

3.    **Reasonable Royalty Documents**

LPL has not produced any documents showing the value of the '002 invention. Documents in this category are relevant to *Georgia Pacific* factors 6 and 8-10, 12-13. *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *modified and aff'd*, 446 F.2d 295 (2d Cir. 1971).[4] LPL has elected to pursue a reasonable royalty theory of damages. As such, LPL must produce all documents in its possession, custody or control, whether or not it intends to rely on them, tending to show the value of the invention at issue vis-à-vis other components of all final products embodying the invention and vis-à-vis other finished products that don't include the invention. LPL must also produce all documents, whether or not it intends to rely on them, tending to show the profitability of the invention, or lack thereof. LPL should be ordered to produce these documents immediately.

---

[2] Request No. 69 called for "All documents and things supporting or refuting Plaintiff's assertion that Plaintiff has experienced, and continues to suffer, economic and irreparable harm as a result of Defendant's alleged individual and collective infringement of the Patents in suit as asserted in Plaintiff's Initial Disclosures."

[3] Request No. 70 called for "All documents and things supporting or refuting any computation of damages for Defendants' alleged infringement of the Patents in Suit including any determination of a reasonable royalty, lost profits, and/or post-judgment interest."

[4] *Georgia Pacific* factors 6 and 8-10, 12-13 are: (6) the effect of selling the patented specialty in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales, (8) the **established profitability of the product made under the patent;** its commercial success; and its current popularity, (9) the **utility and advantages** of the patent property over the old modes or devices, if any, that had been used for working out similar results, (10) the nature of the patented invention; the character of the commercial embodiment of it **as owned and produced by the licensor;** and the benefits to those who have used the invention, (12) the **portion of the profit or of the selling price** that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions, (13) the **portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements,** the manufacturing process, business risks, or significant features or improvements added by the infringer. (emphasis added)

The Honorable Joseph J. Farnan, Jr.
May 8, 2006
Page 5

### Defendants' Responses to LPL's Assertion of Continued Deficiencies in their Productions

In defendants' view, LPL's May 3 submission included a host of issues that already had been resolved by the parties. To the extent defendants have listed issues raised by LPL in the "Agreements Reached" section of this letter, it is defendants' position that no issue remains for the Court.

LPL's May 3 submission also raised a host of issues that LPL did not preserve in its February 28 submission. Specifically, in its February 28 submission, LPL raised only three deficiencies with defendants' damages-related document products: (i) "all documents reflecting Defendants' methodology or basis used, during the relevant time period, to negotiate or calculate royalty rates for patents comparable to the Patents-in-suit, including any and all license agreements involving Defendants' modules and liquid crystal displays"; (ii) "all documents reflecting Defendants' efforts to market and sell products in or to the U.S." and (iii) "all documents reflecting Defendants' worldwide and U.S. sales and profit information, by customer and product, for the relevant time period (including forecasts and projections), to the extent not already produced in this case." *See* LPL's February 28 letter at pages 6-7 (i-iii). **The defendants have no additional responsive documents to these three categories, except to the extent they already have agreed to produce additional documents pursuant to the "Agreements Reached" section above. As such, defendants believe that all issues with their productions timely preserved by LPL have been resolved.**

For the few remaining issues between the parties, which defendants do not believe were timely raised, defendants offer the following response:

1.    **Profitability Information**

As LPL admits, defendants have produced profitability information as it is maintained by each of them in the ordinary course of business. LPL is apparently unhappy that the defendants do not maintain this information at the product level. LPL's unhappiness about this fact, however, does not create a discovery dispute where the only requests at issue are requests for documents. The defendants simply do not maintain this information at the product level for any product. Defendants have produced this information at the most micro level available. Nothing more can be required by a document request.

2.    **Sales Information**

LPL raises two issues here: (a) its belief that defendants' sales information is not uniform and/or inaccurate and (b) that defendants produced documents as they are maintained in the ordinary course of business (e.g. complaining that a Taiwanese company that does business in Chinese and maintains its documents in Chinese produced documents dated under the Chinese calendar). Defendants have produced their sales information through December 31, 2005 and will be exchanging sales information through March 31, 2006 with LPL shortly, at an agreed upon exchange date. If LPL believes there are inconsistencies across the various documents

The Honorable Joseph J. Farnan, Jr.
May 8, 2006
Page 6

produced, it should explore those issues during the upcoming fact and expert depositions. LPL has not (and cannot) accuse defendants of withholding source documents. Thus, if defendants' source documents are actually not uniform or inaccurate, then those are just the facts of the case.

Additionally, defendants do not believe LPL has any legitimate complaints concerning the use of Chinese calendar dating conventions by a Chinese company in Chinese language documents. The defendants produced documents as they are maintained in the ordinary course of business. Nothing more is required.

### 3.    Documents Regarding Relationships and Sales Relevant to the U.S. and Active Inducement

LPL already has explored this issue at length in depositions taken in the California cases. CPT's knowledge on this issue is clear: system brand owners do no inform CPT about which products sold in the United States contain CPT modules. CPT sells its modules to OEMs in Asia, not to system brand owners in the Unites States. The decision of which module to include in which unit of which product and where those units are eventually shipped for sale happens well after a module leaves CPT's possession. Indeed, in the '810 litigation, LPL is maintaining that it also does not know which system brand owners include LPL modules in which products or units of that product sold in the United States. As such, CPT questions LPL's motives in trying to raise this well settled issue again in this litigation. CPT has produced information in its possession relevant to this issue. The customer defendants have produced this information as to their products. To the extent new products have been introduced by the customer defendants, they have agreed to supplement their production of product/user manuals. These documents reflect which modules (generally more than one module manufactured by more than one supplier) can be used in the product.

LPL also includes in this category documents concerning willfulness. As LPL acknowledges, defendants already have listed any opinion letters received on their privilege logs. Defendants are not waiving privilege on these opinions and are not asserting advice of counsel as a defense. Defendants previously have informed LPL on several occasions that they are not relying on an advice of counsel defense. Defendants do not believe there is any issue for the Court to resolve.

Defendants remain available for the previously scheduled May 17 hearing should the Court desire to hold a hearing on the outstanding damages discovery issues between the parties.

Respectfully,

Matthew W. King

The Honorable Joseph J. Farnan, Jr.
May 8, 2006
Page 7


cc:    Glenn Rhodes (via e-mail)
       Christine A. Dudzik, Esq. (via e-mail)
       Julie S. Gabler (via e-mail)
       Richard D. Kirk, Esq. (via e-mail)
       Gaspare J. Bono, Esq. (via e-mail)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 8, 2006, I electronically filed the foregoing document

with the Clerk of Court using CM/ECF which will send notification of such filing, and hand

delivered to the following:

> Richard D. Kirk
> The Bayard Firm
> 222 Delaware Avenue, Suite 900
> P.O. Box 25130
> Wilmington, DE 19899

I hereby certify that on May 8, 2006, I sent the foregoing document by Electronic Mail,

to the following non-registered participants:

> Gaspare J. Bono
> Matthew T. Bailey
> Andrew J. Park
> Adrian Mollo
> McKenna Long & Aldridge LLP
> 1900 K Street, NW
> Washington, DC 20006

> Matthew W. King (#4566)
> king@rlf.com
> Richards, Layton & Finger
> One Rodney Square
> P.O. Box 551
> Wilmington, DE 19899

RLF1-2917974-1

# Exhibit 2

Atlanta

Denver

Los Angeles

Philadelphia

# McKenna Long
# &Aldridge LLP
Attorneys at Law

1900 K Street, NW • Washington, DC 20006
202.496.7500 • Fax: 202.496.7756
www.mckennalong.com

San Diego

San Francisco

Washington, DC

Brussels

CASS W. CHRISTENSON
(202) 496-7218

EMAIL ADDRESS
cchristenson@mckennalong.com

May 16, 2006

BY FEDERAL EXPRESS AND E-MAIL

Julie S. Gabler, Esq.
Howrey LLP
550 South Hope Street, Suite 1100
Los Angeles, CA  90071-2627

Re:    *LG.Philips LCD Co., Ltd. v. Tatung Co., et al.*; CA No. 05-292 (JJF)

Dear Julie:

Enclosed are documents bates labeled LPLII 103026 through LPLII 103164.  Please note that these documents are designated "CONFIDENTIAL ATTORNEYS ONLY" under the protective order in this case.  The enclosed documents include the responsive documents that we recently discussed in our attempts to narrow and resolve discovery issues, and may also include some documents previously produced by LPL in this case or the California case.  Also, we have identified one recent license agreement that was not previously produced.  Because the agreement contains a confidentiality clause with a pre-disclosure notice provision, we have notified the third party of LPL's intent to produce the agreement.  Absent some action by the third party, LPL will produce the agreement as soon as appropriate.

Very truly yours,

Cass W. Christenson

CWC:ea
Enclosures
cc:    Matthew King, Esq. (w/o enc.)
       Richard D. Kirk, Esq. (w/o enc.)

# Exhibit 3

# McKenna Long
## & Aldridge LLP
### Attorneys at Law

Atlanta

Denver

Los Angeles

Philadelphia

1900 K Street, NW • Washington, DC 20006
202.496.7500 • Fax: 202.496.7756
www.mckennalong.com

San Diego

San Francisco

Washington, DC

Brussels

CASS W. CHRISTENSON
(202) 496-7218

EMAIL ADDRESS
cchristenson@mckennalong.com

June 8, 2006

By E-Mail

Steven Yovits, Esq.
Howrey LLP
321 North Clark Street, Suite 3400
Chicago, IL 60610

Re:    *LG.Philips LCD Co., Ltd. v. Tatung Co., et al.*; CA No. 05-292 (JJF)

Dear Steve:

I write to respond to your June 7, 2006 letter. I will disregard your continuing posturing and rhetoric accusing us of refusing to meet and confer. Our efforts to resolve disputed issues with you are well documented.

## ViewSonic's Discovery Deficiencies

Your letter does not specify which documents ViewSonic is producing in response to the deficiencies we have identified. You merely state that ViewSonic will produce some unspecified "sales documents" on June 8. You have not explained what ViewSonic will produce, so we must wait to see whether ViewSonic produces all of the missing discovery (for example, U.S.-specific sales,                                                                                        and all unproduced documents received from CPT such as road maps, industry and market trend information, pricing information, etc.). If not, we are at an impasse on this issue.

We regret your position that we need to rely on numerous incomplete and partially inaccurate sales summaries. Defendants easily could resolve this issue by producing one complete and accurate sales summary for each defendant. Instead, each Defendant has produced numerous, sometimes inconsistent, documents and supplemental interrogatory answers. We do not understand the lack of cooperation on this point. Unfortunately, we are at an impasse on this issue.

**REDACTED**

Steven Yovits, Esq.
June 8, 2006
Page 2

Thank you for confirming that Bonnie Uphold will testify as a supplemental Rule 30(b)(6) designee on the topics that Ms. Wang was unprepared to address as the prior designee. We assume that Ms. Uphold will testify on all of these topics as identified in my June 3 email (including ViewSonic's various sales summaries, meetings with CPT in the U.S. and Taiwan, licenses and licensing negotiations, and payments to OEMs).

## CPT's Discovery Deficiencies

As stated above regarding ViewSonic, we regret that CPT is not willing to produce a comprehensive sales summary for all product sales, by module, for worldwide sales and U.S.-specific sales. CPT's designee testified that CPT's recent interrogatory answers are incorrect, for example, concerning certain U.S. sales (see Kuan at 208-10), and CPT has revised its worldwide sales figures in the California case to reduce drastically its sales. Further, Mr. Kuan identified discrepancies in sales information (see, e.g., 214-17). We need accurate and complete discovery on CPT sales.

Mr. Kuan's testimony conflicts with CPT's own documents and other testimony on numerous points. Mr. Kuan referred to many documents that we have not seen, and in your June 6 letter you agree to provide bates numbers for documents produced, and to investigate missing documents, as soon as possible. Because the pretrial conference is July 6 and we have already deposed CPT, time is of the essence and we need this discovery immediately.

CPT's refusal to produce a witness to discuss                                             is
extremely prejudicial. At the June 6 deposition of Mr. Tsai, CPT's sales manager, he confirmed that
                                                                                                      We
specifically noticed CPT's deposition on this topic (see Topic 29 in our December 14, 2005 Rule 30(b)(6) deposition notice directed to CPT). Yet, CPT continues to refuse to provide a witness. CPT's attempt to block discovery on                    while arguing that it does not know whether its modules are sold in the U.S. is unfair and we will seek a preclusion order and/or jury instruction on this issue at trial given CPT's misconduct.

Ms. Chang's testimony as a 30(b)(6) designee of CPT was similarly problematic. During her May 23 deposition, for example, we learned of agreements we should have received long ago (e.g., CPT agreements                                                     as well as
). At the deposition (on May 23), you agreed to "look into that right away". As you have not responded to our request, however, it appears that CPT will not produce these agreements absent court order.

Further, you repeatedly instructed Ms. Chang

                                                        As previously stated, therefore, we will
oppose any attempt by CPT to offer evidence at trial concerning
                                                        CPT cannot block discovery and then ambush LPL
at trial. We regret that CPT stubbornly adheres to these positions.

**REDACTED**

Steven Yovits, Esq.
June 8, 2006
Page 3


     Please do not hesitate to call me to discuss these issues further so we can try to narrow the issues for the Court.

Very truly yours,

*Cass W. Christenson*

Cass W. Christenson

CWC:ea
cc:    (by e-mail)
        Julie S. Gabler, Esq.
        Christine A. Dudzik, Esq.
        Matthew W. King, Esq.
        Richard D. Kirk, Esq.
        Gaspare J. Bono, Esq.

**Exhibit 4**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

LG.PHILIPS LCD CO., LTD.,

                Plaintiff/Counterclaim Defendant,

    v.

TATUNG COMPANY;
TATUNG COMPANY OF AMERICA, INC.;
CHUNGHWA PICTURE TUBES, LTD.;
AND VIEWSONIC CORPORATION,

                Defendants/Counterclaim Plaintiffs.

Civil Action No. 05-292 (JJF)

**DECLARATION OF SONG K. JUNG IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* (No. 6) SEEKING TO PRECLUDE LPL FROM USING ANY DOCUMENTS IN ITS FAVOR AT TRIAL THAT IT PRODUCED AFTER THE FEBRUARY 21 DOCUMENT PRODUCTION CUT-OFF**

**FILED UNDER SEAL**

THE BAYARD FIRM
Richard D. Kirk (#922)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899-5130
(302) 429-4208

Counsel for Plaintiff
LG.PHILIPS LCD CO., LTD.

OF COUNSEL:
Gaspare J. Bono
Matthew T. Bailey
Cass W. Christenson
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C. 20006
(202) 496-7500 (Telephone)
(202) 496-7756 (Facsimile)

I, Song K. Jung, declare under penalty of perjury as follows:

1.    I am a partner at the law firm of McKenna Long & Aldridge LLP, 1900 K Street, N.W., Washington, D.C. 20006.  McKenna Long & Aldridge LLP is counsel for Plaintiff LG.Philips LCD Co., Ltd. ("LPL") in this case.  I am admitted to the bars of the State of Maryland and the District of Columbia.

2.    I submit this Declaration in support of Plaintiff's Opposition to Defendant's Motion *in Limine* (No. 6) Seeking to Preclude LPL From Using Any Documents in its Favor at Trial That it Produced After the February 21 Document Production Cut-off.  I have personal knowledge of the facts stated in this declaration, and if called as a witness, could competently testify to them.

3.    It is my understanding that Defendants served a subpoena on Honeywell, in January 2006, requesting documents regarding U.S. Patent No. 5,019,002 ("the '002 patent").

4.    LPL received documents produced by Honeywell in response to the Defendants' subpoena.  However, at that time, LPL did not receive and was not aware of the specific contents of Honeywell's privilege log.

5.    On or about June 8, 2006, I first became aware of the contents of some of the documents in Honeywell's privilege log.

6.    As soon as I became aware that certain documents were relevant to the conception and reduction to practice of the invention of the '002 patent, I promptly emailed copies of these documents in redacted form to Defendants' counsel on June 13, 2006.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this **30** day of June, 2006.

_____
Song K. Jung

DC:50420264.1

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on August 18, 2006, he electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will send automatic notification of the filing to the following:

Robert W. Whetzel, Esq.
Matthew W. King, Esq.
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

The undersigned counsel further certifies that copies of the foregoing document were sent on August 18, 2006 by email and by hand to the above counsel and by email and first class mail to the following non-registered participants:

Christine A. Dudzik, Esq.
Thomas W. Jenkins, Esq.
Howrey LLP
321 North Clark Street
Suite 3400
Chicago, IL  60610

Teresa M. Corbin, Esq.
Glenn W. Rhodes, Esq.
Julie Gabler, Esq.
Howrey LLP
525 Market Street
Suite 3600
San Francisco, CA  94105

/s/ Richard D. Kirk (rk0922)
Richard D. Kirk

602380v1