# EXHIBIT 1

LG Philips LCD Co., LTD   v.
Tatung Company, et al.

Hearing
November 16, 2005

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
LG PHILIPS LCD CO LTD, )
    Plaintiff, )
              ) C A NO: 05-292 JJF
v             )
TATUNG COMPANY, TATUNG )
COMPANY OF AMERICA, INC., )
CHUNGWA PICTURE TUBES LTD, )
and VIEWSONIC CORPORATION, )
    Defendants )

United States District Court
844 King Street
Wilmington, Delaware
Courtroom 4B
Wednesday, November 16, 2005
2:30 p m
BEFORE: THE HONORABLE JOSEPH J FARNAN, JR
    United States District Court Judge
APPEARANCES:
    RICHARD D KIRK, ESQ
    THE BAYARD FIRM
    and GAP BONO, ESQ
    McKENNA, LONG & ALDRICH
        For the Plaintiff
    ROBERT W WHETZEL, ESQ
    and MATTHEW W. KING, ESQ.
    RICHARDS, LAYTON & FINGER
        and
    CHRISTINE A DUDZIK, ESQ
    HOWREY, LLP
        For the Defendants

Page 2

[1] THE COURT: Be seated, please. Good [2] afternoon.

[3] MR. WHETZEL: Your Honor, if I [4] would begin with introductions. Robert Whetzel [5] appearing for the defendants. It's my pleasure [6] to introduce the court Christine Dudzik from [7] the Howrey firm, my co-counsel. Your Honor may [8] know Mr. King from my office as well.

[9] THE COURT: Good afternoon.

[10] MR. KIRK: Good afternoon, Your [11] Honor. Richard Kirk from the Bayard Firm for [12] the Plaintiff, LG. Philips Ltd. Company [13] Limited. I am here today with Gap Bono from [14] the firm of McKenna, Long and Aldrich in [15] Washington.

[16] THE COURT: Thank you. Good [17] afternoon.

[18] I got your papers and some letters. [19] And essentially what we're here about is the — [20] now that service has been accomplished, the [21] plaintiff's motion for a preliminary [22] injunction, which the defendant has asked for [23] some additional time. So, in essence, we're [24] here on defendants application for the

Page 3

[1] additional time.

[2] MS. DUDZIK: Good afternoon, Your [3] Honor. We are asking for a two months [4] extension of time in which to file our [5] responsive brief to the preliminary injunction [6] motion.

[7] We believe that this time is [8] reasonable and necessary to formally prepare [9] the papers that we need to respond to the [10] motion. Particularly to say for the local [11] counsel has said that we needed to prepare for [12] the declarations that we need to prepare to [13] show the invalidity basis for the patent in [14] suit.

[15] They have claimed that they're [16] entitled to a presumption of validity in this [17] case, which is one of those standards for the [18] preliminary injunction. We have evidence and [19] have found substantiated proof that there are [20] documents showing that the patent is invalid [21] under 102(b) for on sale bar. We are working [22] up that evidence. Most of that documentation, [23] however, is located in China and Taiwan because [24] the defendant, CPT and Tatung, are both Taiwan

Page 4

[1] corporations. The plaintiff is a Korean [2] corporation and the other two defendants were [3] Tatung USA and Viewsonic.

[4] The evidence we have discovered is [5] located in Taiwan. We are having those [6] documents translated. We believe that they'll [7] show the product was on sale a year before the [8] filing date in the United States, which would [9] be a statutory bar to the validity.

[10] From there we will need to prepare [11] declaration. The witness will be — most [12] likely that we will need will be, only manner [13] in speaking, we'll need the translations done [14] for him as well.

[15] We believe that we also have [16] evidence in the United States from the [17] third-party supplier that we would be able to [18] substantiate the on sale in the United States. [19] We are presently locating and talking with [20] those third-party suppliers that they can go [21] back to their documentation to substantiate the [22] sale in the United States.

[23] So those are some of the issues [24] that we need to prepare. We think the two

Page 5

[1] month time period is reasonable to work up [2] these defenses that we will have to prepare [3] declarations to rebut the plaintiff showing.

[4] We would also like the opportunity [5] to depose both of the declarants in the [6] preliminary junction motion. One of them is an [7] expert. He has put in, I believe, a 33 page — [8] a 25 page expert report that we would like to [9] have an opportunity to take his deposition.

[10] We would also like the opportunity [11] to take the deposition of their other declarant [12] who has made claims that the company will be [13] irreparably harmed if this injunction does not [14] go forward. And for those, I think that on [15] those bases the two month extension of time is [16] reasonable.

[17] We also on top of that, just to [18] show some of the work that needs to be done to [19] respond to this, we do believe and we've been [20] told by Tatung USA that they quit supplying [21] this specific product that is subject to this [22] injunction in 2003, that they are no longer [23] supplying it to the United States.

[24] Whether or not third parties have

Page 6

[1] that product that's still being sold, we're not [2] — we can't substantiate that yet. But as far [3] as Tatung is concerned, they are no longer [4] supplying it in the United States.

[5] As far as Viewsonic is concerned [6] with their specific product, we have been [7] informed by the client that they quit [8] incorporating the CPT monitor into their [9] product a while back and it's no longer being [10] sold with the CPT panel in it.

[11] In fact, two of the panels that are [12] being sold in that monitor, actually have an [13] approved sale from the plaintiff themselves to [14] put into the monitor the infringing — [15] allegedly infringing monitor.

[16] So there's a lot of factual work up [17] that needs to be done, and the two month time [18] period I think is the time that we will be able [19] to rebut the showing of irreparable harm and [20] we'll be able to rebut the showing of presumed [21] validity of the patent.

[22] THE COURT: The two accused [23] products which are the subject of this lawsuit?

[24] MS. DUDZIK: No, there's a —

Page 7

[1] THE COURT: Of this motion?

[2] MS. DUDZIK: This motion we have [3] found out they have alleged two specific [4] products.

[5] THE COURT: Do you contest the [6] infringement claims against those two products?

[7] MS. DUDZIK: Yes, we will be [8] contesting infringement on that.

[9] THE COURT: But the client tells you [10] they stopped selling?

[11] MS. DUDZIK: Yes, they stopped [12] selling it. The specific model, the Tatung [13] model, I believe it's the L17AMTN, which is [14] also the monitor, if Your Honor recalls, in the [15] other pending suit in front of Your Honor that [16] was the subject of a preliminary injunction [17] that you entered an order earlier this year [18] denying injunction on that monitor. It's the [19] same monitor.

[20] THE COURT: Now, if we're dealing [21] only in the context of the preliminary

[22] injunction motion and you're con- [23] testing infringement but you don't — you represent [24] that you don't sell them any longer in the

Page 8

[1] United States, is your client prepared to enter [2] into an order that says that they don't and [3] won't sell them in the United States?

[4] MS. DUDZIK: No, I think the issue [5] is a little broader than that. I don't think [6] it's possible to do that because as far as [7] Viewsonic is concerned, they are selling the [8] product. They are not selling the product with [9] the CPT panel in it. They are a contract [10] manufacturer.

[11] THE COURT: The panel with the [12] accused product, are they willing to agree not [13] to sell that form of the product in the United [14] states?

[15] MS. DUDZIK: Well, in that [16] particular model they're not and they probably [17] could, but that doesn't resolve the lawsuit [18] because —

[19] THE COURT: No, because you still [20] got contributory negligence to face if you got [21] people running around selling thing you gave [22] them in 2003. I'm just trying to understand [23] what the real issues are in the preliminary [24] injunction motion. The rest of the world to

Page 9

[1] this lawsuit is something that the two of you [2] can argue about for the next 18 months.

[3] So I think the answer to my [4] question is no.

[5] MS. DUDZIK: No, that we —

[6] THE COURT: No that your client [7] won't enter into a consent order that says that [8] they will not — that says that they've stopped [9] and they won't, from this day forward, sell the [10] accused product either alone or in combination [11] with other products.

[12] MS. DUDZIK: No, I don't think it [13] works that way, the way it's structured, [14] because it's not just the product. They can't [15] say we're not going to sell the product. [16] They're going to have to do the next step [17] forward, that we won't incorporate this panel. [18] But that doesn't resolve the infringement [19] potentially of other suppliers of that panel. [20] We don't know they're going to try to allege [21] they're also infringement, so I think it's a [22] little more complicated to say that I won't do [23] that anymore.

[24] THE COURT: And your invalidity

Page 10

[1] defense is such that it focuses only on an on [2] sale monitor?

[3] MS. DUDZIK: That's the major one [4] we're pursuing right now. We believe there's [5] other invalidity.

[6] THE COURT: I'm not talking about [7] those. That's another universe.

[8] MS. DUDZIK: Right.

[9] THE COURT: I'm just talking about [10] in this preliminary injunction motion. The [11] only one I'm going to have to hear is the on [12] sale bar because you think that would defeat [13] the burdens that the plaintiff has on the [14] preliminary injunction?

[15] MS. DUDZIK: Well, at this moment [16] that's our major focus. We are, also, at the [17] same time, doing a prior art search on other [18] pieces of art that are on a 103 defense. We [19] have found some references; however, again, the [20] majority of the art is in Japan.

[21] THE COURT: But that's not what [22] you're asking me to grant you the extension [23] for?

[24] MS. DUDZIK: No, it is part of all

Page 11

[1] the same degree but the presumption of [2] validity. There's the 102 defense and there's [3] also the 103 defense. Right now we know for [4] sure we could go forward on the 102 defense. [5] By the time we should get our prior art search [6] done probably and translated in the next week [7] or two, there may be 103 art, also, that would [8] be part of our rebutting the presumption of [9] validity. [10] The problem with that, again, is [11] the translation problems. We have a stack of [12] prior patents that are all needed to be [13] translated and that's what's slowing us down. [14] I'm not going to say that we will find 103 for [15] sure in that translated bunch, but right now [16] that is still open.

[17] THE COURT: All right. Let me hear [18] from the plaintiff.

[19] MR. BONO: Thank you, Your Honor. [20] May it please the Court. I think there are [21] fundamentally two issues in front of the Court [22] today. One is the question of an extension of [23] time to respond to our preliminary injunction [24] papers. Separate I think from that is there

Page 12

[1] are separate requests for discovery, including [2] depositions, before they respond to our [3] preliminary injunction motion.

[4] The only thing I've heard counsel [5] say was their request to depose two of our [6] declarants. They have already served us with a [7] set of document requests on Monday, which I [8] assume that's part of their request for [9] discovery prior to responding.

[10] Let me address the extension of [11] time first, if I may, but I want to speak [12] separately to the discovery request. As far [13] as the extension of time concerned, we've already [14] had over two weeks since our motion was filed, [15] and I would submit the extension for another [16] 60 days is unreasonable.

[17] And while I'm not here saying there [18] shouldn't be a reasonable amount of time for [19] the defendants to respond, I think extending [20] this out another 60 days is not justified. And [21] if —

[22] THE COURT: You're not going to win [23] that argument, so help yourself and move on. [24] Because if I go the preliminary injunction

Page 13

[1] route, and I assume you've been through a [2] number of them. I've been through a number of [3] them. I've actually had blackout periods and [4] granted some, and, you know, it's a tough [5] review in the federal circuit on the grant of a [6] preliminary injunction, so it's very important [7] to moreso understand what the issues of the [8] injunction were, or the injunction application [9] were. More important to understand, how much [10] discovery, because you're going to have to [11] allow some, that you're going to allow, tie to [12] the issues or the breadth of the application [13] and getting it done in a manner that preserves [14] the integrity of preliminary injunctions and [15] doesn't convert them into essentially full [16] merit trials.

[17] So with my limited experience, [18] you've got to talk about what it is that you [19] want the breadth of the application to be. And [20] then I'll determine how much discovery, because [21] they're going to be entitled to some, they're [22] going to be allowed, and then we'll have the [23] issue of whether there's going to be a need for [24] evidentiary hearing or can we do it on the

Page 14

[1] papers. And I think that's a better [2] discussion.

[3] MR. BONO: Yes, Your Honor, and I [4] can go right to that.

[5] Your Honor, from what counsel said [6] as far as the issues are concerned, none of the [7] issues that were raised this morning that they [8] need to work on are issues that they need [9] discovery from LG. Philips on.

[10] THE COURT: No, I agree.

[11] MR. BONO: Thank you, Your Honor.

[12] THE COURT: The only issue that I [13] heard, because I'm not really paying attention [14] to the 103 art because it's too negligible. [15] The only thing I heard was about an on sale [16] bar. And I don't

think they need discovery [17] from you on that at all. I would give them the [18] right to depose any declarant that you put in [19] place in support of your application.

[20] MR. BONO: Correct. Well, let [21] me —

[22] THE COURT: Because they ought to [23] have a chance to probe the declarant.

[24] MR. BONO: I think the declarants

---

Page 15

[1] are separate, Your Honor, and let me explain. [2] As far as the Mr. Bohanan's declaration, I [3] think the Court should examine exactly what [4] Mr. Bohanan testified to in his declaration and [5] what he didn't in the context of this case.

[6] Mr. Bohanan testified that he [7] reviewed the patent and that he examined the [8] two products at issue that were purchased here [9] in Delaware. And in looking at the patent [10] claims and he set out his — the limitations [11] that he saw the patent and then compared that [12] to what he physically saw in the products and [13] then concluded that each of the limitations for [14] the claims he set out were there in the actual [15] products.

[16] This patent, we're not talking [17] about an overly sophisticated patent here. [18] It's something — it's a tape carrier package [19] that has what's called a dummy folding unit [20] which means there literally is a cutout of this [21] plastic that's attached to the LCD which [22] prevents there being light brightness [23] variations on the edges of the LCD display. [24] That's what it is. That's what the patent

---

Page 16

[1] addresses. It's a pretty simple patent given [2] the way patents are these days and it's [3] something that's either in their product or it [4] isn't. And he did a very common sense approach [5] to claim construction and he examined their [6] products and saw it and took pictures and he [7] said there it is. Here are all the pieces.

[8] Now, in that context I really don't [9] believe they need a deposition of Mr. Bohanan [10] because if the issues is going to be on the [11] claim construction items, they obviously will [12] put in an expert on their part to either [13] contest the claim construction or not. And I [14] think there will be many parts of the claim [15] construction that won't be contested. And in [16] doing that it will narrow the issues for the [17] Court. And of course the issue for claim [18] construction is for Your Honor to determine.

[19] So I really don't see that they [20] need Mr. Bohanan's deposition on claim [21] construction at this point until they put in [22] their own and we may find that there's a [23] narrowing of issues or no issue on claim [24] construction. Both parties may agree, yes,

---

Page 17

[1] that's the appropriate claim construction or [2] the only dispute are these two limitations and [3] that can be presented to the court without [4] going through the time and expense of [5] depositions which obviously will go both ways [6] and delay this whole process considerably.

[7] With respect to the observation [8] that Mr. Bohanan made on the physical products, [9] I assume they know what their products have and [10] their experts know and they will either say, [11] yes, we have it, or, no, we don't have it.

[12] And, therefore, there's nothing to [13] be gained by taking Mr. Bohanan's deposition. [14] And we don't even know whether they'll contest [15] it. They may have to come in court and say [16] well, yes, we do have a tape carrier package [17] that has a dummy folding unit and it does, in [18] the purpose for which it's put there, is to [19] prevent variations in brightness on the edges [20] of the liquid crystal screen. We don't know [21] yet whether we even have any dispute.

[22] And certainly there's nothing to be [23] gained by taking Mr. Bohanan's deposition at [24] this point, which I would submit really is just

---

Page 18

[1] going to delay things on both sides.

[2] So with respect to the other [3] questions of validity, even as to prior art, [4] Mr. Bohanan doesn't address any of that. He [5] did not present any issue of prior art or [6] invalidity. And whether they're selling it or [7] not, he of course has nothing to say on that.

[8] So I would submit at this point [9] there really is no need to take Mr. Bohanan's [10] deposition at this point in the procedure. [11] That I would respectfully submit that it would [12] seem to me to make sense, since it seems to be [13] most of the issues are something that is solely [14] within their ability to either they know it or [15] they're going to develop it on their own, that [16] whatever time Your Honor says is a reasonable [17] time for them to file their response, that they [18] should file their response and define for us [19] and for the Court what the issues really are [20] here in this case. Because I can see that [21] there may be an issue of claim construction or [22] they may very well not be, or might be a very [23] narrow issue.

[24] Same thing on the question of

---

Page 19

[1] infringement. They may have to concede that [2] under our claim construction their product does [3] contain it and they do infringe. But under [4] their claim construction they do a different [5] one. Maybe it doesn't infringe.

[6] But until we see what their [7] arguments are, and I think it was clear from [8] counsel's argument this morning, they're still [9] developing their arguments and they're not [10] quite sure which way they're going to present [11] the case, whether they challenge claim [12] construction, whether they challenge [13] infringement, or whether they're going to go on [14] this alleged on sale bar to prevent our claim [15] from going forward, or whether or not they can [16] establish that they're no longer selling these [17] products or not. The fact that they may not be [18] selling this particular model is really of no [19] moment, because if they're selling other [20] products that contain the same tape carrier [21] package that infringes our patent, they're [22] still infringing and it really doesn't matter [23] that this particular model may have been [24] replaced with a new and improved model.

---

Page 20

[1] But until they define this for us, [2] I would submit that the question of deposition [3] should be held off until Your Honor can [4] determine, after their papers have been filed [5] and we've replied to it, what exactly are the [6] issues that the parties should now engage in [7] perhaps, deposition discovery, or maybe it's [8] totally unnecessary to go onto deposition [9] discovery because that is going to be a very [10] time consuming and expensive process. To do it [11] now, it's going to be open ended. It's not [12] going to be defined for the parties or for the [13] Court.

[14] Now, on the question of document [15] production, I will concede that I don't have a [16] problem. When they initially approached me [17] with request for discovery it was totally open [18] ended and to that I've said I didn't agree to [19] it. But now that I've seen their document [20] request that they served on Monday, I will [21] agree that we will respond to that document [22] request. Basically they've asked us for [23] documents —

[24] THE COURT: If there is multiple

---

Page 21

[1] models and you have a preliminary injunction, [2] the subject of which is two models, what does [3] the preliminary injunction do for you?

[4] MR. BONO: Your Honor, I don't know [5] whether they're still selling it or not. I [6] submitted evidence to the Court when I got [7] their letter for the first time on Monday that [8] they claim that they

may not be selling it.

[9] THE COURT: Let's assume they're [10] not selling it but they're selling five other [11] models that are infringing but your preliminary [12] injunction doesn't address those other five.

[13] MR. BONO: I assume that after the [14] papers are submitted we have to address this [15] issue with the Court and whether we have to —

[16] THE COURT: Then you're wasting my [17] time.

[18] MR. BONO: To our knowledge these [19] models are still being sold, Your Honor. We've [20] looked at it yesterday and we determined that [21] the models are still being sold.

[22] THE COURT: But you understand that [23] you can only have an application that's [24] directed at not a moving target but a

Page 22

[1] stationary target. The target you've chosen [2] are two models, one each from the defendants?

[3] MR. BONO: Yes, Your Honor. One [4] from Tatung and one Viewsonic, yes, which both [5] contain a CPT module, yes, Your Honor. And to [6] our knowledge —

[7] THE COURT: That's all you're [8] litigating in the preliminary injunction [9] application?

[10] MR. BONO: Yes, Your Honor. [11] Without having any further information, yes.

[12] THE COURT: So you're saying [13] without further information then you don't [14] really have the need for preliminary [15] injunction.

[16] MR. BONO: No, Your Honor. To our [17] knowledge those products are still being sold [18] in the US market, yes.

[19] THE COURT: Well, let's assume that [20] they're selling those two and let's assume [21] they're selling ten other models. Your [22] application is only directed to two. The other [23] ten won't be subject to any order of the court, [24] so what have you gained? Unless you're trying

Page 23

[1] to develop an immediacy in your litigation, [2] then you should be asking for something else. [3] But if it's not going to foreclose them from [4] infringing of your patent claims, what do you [5] gain? That's what I don't understand.

[6] MR. BONO: Your Honor, I don't have [7] sufficient information as to their other models [8] to address that question of the Court. We [9] don't have it at this point. Whether they have [10] other models will infringe or not, I don't [11] know.

[12] THE COURT: If I were them, I [13] wouldn't tell you about them in the context of [14] the preliminary injunction application either. [15] I would understand if I was on the other side [16] of you that all you asked for are these two [17] models to be enjoined.

[18] MR. BONO: I understand, Your [19] Honor.

[20] THE COURT: And save all the rest [21] for later.

[22] MR. BONO: For another day.

[23] THE COURT: That's what later is, [24] another day.

Page 24

[1] MR. BONO: Yes, Your Honor.

[2] THE COURT: Tell me this, I know [3] you're frustrated because I read your papers, [4] that you think they engaged in delay on the [5] other side of the case and you think that they [6] are doing that repeatedly in the central [7] district in California and the way they handled [8] the service delay here and in other ways.

[9] And so when you sat down, is that [10] what made you think that a preliminary [11] injunction would be a good idea? Because is it [12] the delay frustration that they're still out [13] there selling and you're not able to get them [14] into a final decision? Because there are other [15] recommendations if that's what you're trying to [16] convince me of.

[17] MR. BONO: No, that was not part of [18] our thinking as far as seeking the preliminary [19] injunction. But as far as our opposition to [20] their claim for the extension and for [21] deposition discovery, yes, that's part of my [22] thinking because I know their game plan.

[23] And I can guarantee to this court [24] as sure as we're sitting here this afternoon,

Page 25

[1] that if you grant them deposition discovery, [2] the preliminary injunction motion will be here [3] next June and it may still not be ready for the [4] Court's decision. Because in terms of [5] scheduling, because I know they'll want to [6] schedule Mr. Bohanan's deposition and we have [7] to work to do that and there will be delays on [8] that. And then when they put in their expert, [9] I'll have to run him around to try to get a [10] time when they are available to produce him. [11] There will be further delays. And every time [12] they put in a declarant. And it will be six [13] months from now and they still will not have [14] filed their opposition to this PI motion.

[15] Because I can guarantee you that [16] something will happen and they'll file another [17] application to this Court because they've had a [18] track record of it time and time again. They [19] do it in every case we've had against them. [20] And it's their modus operandi.

[21] And so my concern is I understand [22] the Court wants to make sure that there's an [23] adequate record on the preliminary injunction [24] motion and I understand that. And the Court

Page 26

[1] want to five them adequate time to develop the [2] defenses they've laid out for the Court. And [3] I'm willing to give them the document they've [4] requested in a reasonable time. We can produce [5] that in two weeks.

[6] THE COURT: Do you want discovery [7] against all the products they sell?

[8] MR. BONO: Your Honor, if they're [9] going to claim that these two products are no [10] longer being sold but they're being sold under [11] a different — but the real situation is [12] they're now being sold under a new product [13] number, a new model number, but it's really [14] essentially the same product, I think that [15] would be an inappropriate defense for this [16] preliminary injunction motion on their part [17] because they're real playing fast and loose [18] with what the point here is.

[19] The point here is we bought these [20] products that were being sold here in Delaware [21] right before we filed this lawsuit and they're [22] available in the market. Now they come in and [23] say, you know, we changed the model number on [24] these products so we're not selling these

Page 27

[1] anymore. Now we're selling the X5s. And low [2] and behold, I can virtually guarantee to the [3] Court that these other products that they're [4] now making have this tape carrier package with [5] the dummy package in it because that's the way [6] things are done now to remove this problem with [7] the brightness variation.

[8] And so what they're basically doing [9] is they changed the package of their product, [10] they put a little bit different model number, [11] maybe they moved the name "Viewsonic" from the [12] left side to right side, they put a little [13] different color gray on the way they package it [14] and say this is our new product so we no longer [15] sell the one you're seeking an injunction [16] against.

[17] I think that's inappropriate [18] because if essentially what's in their product [19] is the same thing, I think that it would be [20] fair for us, just like they want information [21] from us, that we be entitled to have the [22] information on their other products that [23] contain the tape carrier package and the dummy

folding unit in it so Your Honor can have a

Page 28

[1] full record on this motion.
[2] THE COURT: Now, the patent in suit [3] was issued about a year ago?
[4] MR. BONO: May of '04, I think. A [5] year-and-a-half ago.
[6] THE COURT: May of '04?
[7] MR. BONO: Yes, Your Honor.
[8] THE COURT: And the patents in suit [9] in California —
[10] MR. BONO: Those are separate [11] technology.
[12] THE COURT: I understand. What was [13] their issue dates, roughly?
[14] MR. BONO: Let me think for a [15] moment. One was —
[16] THE COURT: I'm trying to [17] understand the timing of the genre here, the [18] technology.
[19] MR. BONO: There are two different [20] classes of patents in the California case. One [21] deals with size mounting technology. The other [22] deals with semiconductor technology. I don't [23] know about the semiconductor.
[24] THE COURT: Are they post 2000

Page 29

[1] patents?
[2] MR. BONO: The size mount patent I [3] believe is '98. I really don't know about the [4] semiconductor patent. And there may be [5] continuations or there may be in the family of [6] the size mount patent there may be some issued [7] later. I don't want to be not lacked for the [8] Court's question.
[9] THE COURT: And how is the case [10] going in California. It doesn't seem to be [11] going too well in the papers.
[12] MR. BONO: It's scheduled for trial [13] February 28th.
[14] THE COURT: And when was it filed?
[15] MR. BONO: Three years ago.
[16] THE COURT: Three years ago?
[17] MR. BONO: I think, yes, Your [18] Honor.
[19] THE COURT: And did you get, as you [20] thought, did you get a lot of summary judgment [21] motions?
[22] MR. BONO: They've all been [23] recently filed, yes. Much.
[24] THE COURT: More than two?

Page 30

[1] MR. BONO: More than two.
[2] THE COURT: A lot?
[3] MR. BONO: Yes. Maybe a dozen or [4] so, yes.

[5] THE COURT: And there's a [6] magistrate judge assigned out there?
[7] MR. BONO: Yes, Your Honor.
[8] THE COURT: And who is it?
[9] MR. BONO: Magistrate Judge Lum.
[10] THE COURT: And who's the judge [11] that has the trial?
[12] MR. BONO: Judge Marshal.
[13] THE COURT: Where did you buy the [14] two products? You can't tell me?
[15] MR. BONO: Somewhere here in [16] Delaware but I don't know precisely. I can't [17] tell you the retailer we bought it from. I [18] just don't know. I could find out, but I just [19] don't know standing here.
[20] THE COURT: Just because if it's [21] like Best Buy it could mean that they're [22] selling them a lot of places, which would, you [23] know, mean that if there is infringement it [24] would be widespread as opposed to CB Joe's here

Page 31

[1] in Delaware or something.
[2] MR. BONO: I think it was fairly —
[3] THE COURT: I forget that guy's [4] name but there's one guy that just has one [5] shop.
[6] MR. BONO: I don't believe they [7] were bought from that kind of shop.
[8] THE COURT: CB Joe's. Okay. Well, [9] you sure have different views of where you are. [10] I do not mind conducting proceedings for [11] preliminary injunction if it has some [12] meaningful end. But if you want to litigate [13] with each other in that procedural framework, [14] the one thing I've learned it has to be very [15] tight. And sometimes the outcome — I'm trying [16] to think, I remember I had a catheter case, and [17] there were more catheters out there than the [18] ones that were the subject to preliminary [19] injunction, but it was all about getting the [20] market tied up. So we went through it, but it [21] turned out not to be that interesting.
[22] It's really not a lot of trouble [23] for me to put you on for argument, give you a [24] couple hours, and issue a decision. One way or

Page 32

[1] the other.
[2] The other side is when parties are [3] really in a furious battle for the marketplace [4] and the patent holder thinks that they're [5] dealing with a really difficult alleged [6] infringer and the alleged infringer thinks [7] they're dealing with a really difficult patent [8] holder who slopped through the patent and [9] trademark office, used all the inadequacies [10] of that office to get these patents issued and [11] they just feel

they're being put apart, then [12] they hire lawyers and they let them battle out [13] three, four, five, six, seven years in court.
[14] If that's what's going on, there [15] are other remedies that we can take to get you [16] to the federal circuit rather quickly, unless [17] there's really a lot of bad faith on both sides [18] and then you just get tied up and it doesn't [19] help you.
[20] It sounds to me in this case that [21] really what you want is as quick as possible [22] final judgment. But you seem to think what you [23] really want is a preliminary injunction against [24] two products. I'm not going to tell you what

Page 33

[1] you want, but I'm going to give you the options [2] that I'm willing to preside over. And they are [3] this, you have a preliminary injunction — you [4] can sit down so you can take some notes on this [5] and ask questions at the end. I'll give you [6] the broad outline.
[7] If it's a preliminary injunction, I [8] would grant the extension for 60 days and I [9] would allow two depositions for each side. The [10] infringement claim would be limited to the two [11] products that are cited. And the invalidity [12] would be limited to a section 102 on sale bar, [13] which is very specific. You'd have to have [14] evidence that they're out there, that they did [15] it a year before. And that's all the [16] preliminary injunction would deal with.
[17] And then we'd enter a scheduling [18] order. And because you got the benefit and [19] jumped ahead of the other 60 some patent cases [20] I have for the preliminary injunction, you [21] would go on the long end of the trial spectrum, [22] somewhere in the range of two years after we [23] got done with the preliminary injunction [24] hearing.

Page 34

[1] So if we had that hearing in [2] February for the present application, 2006, [3] February 2006, the full merits case wouldn't be [4] heard until some time in late 2007 or early [5] 2008.
[6] The other option is that — have [7] you seen this bill? There's a bill floating [8] around. I didn't know about it until I went to [9] this thing to talk in Arizona and then another [10] one of the judges went somewhere and they were [11] talking about it. There's a senate bill [12] floating around, I forget the number of it, a [13] United States senate bill, that said there's a [14] lot of judges that don't like patent cases. I [15] guess that's what it says, sort of. And it [16] says there's a lot of lawyers that do, and a [17] lot of businesses.

[18] And so what they want to do is [19] they're going to target — they're going to [20] have some pile districts or something, if it [21] ever gets past, and what they want to do is [22] they want to put patent cases, because of all [23] the global implications, on the ITC time frame. [24] But only select judges would be allowed to hear

---
Page 35

[1] or try patent cases in the district courts

[2] And they might designate a whole [3] district on they might just designate certain [4] judges in certain districts. And then — of [5] course we would lobby against that happening in [6] Delaware. We would want to be on the opt out. [7] That's a joke.

[8] And then essentially one of the [9] things they want to do is they want to do it in [10] the eastern district of Virginia because [11] somebody thinks it's a good idea to have 90 [12] days of discovery in a patent case no matter [13] how many claims, no matter how many whatever [14] and all this other stuff. And they're really [15] serious about this and it's being put forth by [16] the patent bar through that Sedona group out in [17] Arizona. I actually went to Sedona when I was [18] out there because I figured there had to be [19] something going on there for these ideas to be [20] floating out of there. There's like people [21] standing in the middle of the street with like [22] antennas. It's crazy.

[23] But, anyway, my bottom line is [24] we've offered that here before. I offered in

---
Page 36

[1] my scheduling letter nine months if you don't [2] want a jury. You can have a decision in nine [3] months. I can do that with a jury and that's [4] the option I'd offer you.

[5] If you want to, if either one of [6] you want to be out of here with a final [7] judgment order in nine months as opposed to [8] going through the preliminary injunction that's [9] filed; in other words, it would just be [10] withdrawn, and I would put you on a schedule [11] that everything that would get you to the [12] federal circuit would be done nine months from [13] this month. So what's that? August.

[14] So since it would take some time, [15] let's say by September 2006 you'd have a final [16] order, all post trial motions, everything would [17] be resolved and you'd be in the federal [18] circuit, if you want to do that. So they're [19] your options.

[20] A very rigid preliminary injunction [21] which will push you out because you jumped [22] ahead of the other people and take up more time [23] in the other cases, or if you want to just get [24] a little push or expedited trial schedule I'll

---
Page 37

[1] allow you to jump a little bit ahead of the [2] line, but getting you out of here in nine [3] months. And we'd have to have a discussion [4] again because that would be a serious schedule. [5] We'd have to have another get together in [6] person where we would set the schedule that [7] would get you out of here in nine months. So [8] you're probably looking at a, in that instance, [9] probably at a June trial. June 2006 trial.

[10] But I think that's a fair — I [11] shouldn't say that because that's being modest, [12] but that's a fair way to deal with these kind [13] of issues and it kind of addresses what they're [14] trying to do with this legislation.

[15] I'm not sure if it's workable when [16] you have 60 patent cases assigned to every [17] judge, and of course if you had specified [18] judges they might be carrying a case load of [19] 120. I don't know if people understand how [20] much work it is to get through a patent case, [21] for the lawyers first and then for the court.

[22] Now, you don't have to agree on [23] this. I would listen to both sides as to both [24] options. And then after I heard you, I would

---
Page 38

[1] decide which one made the most sense based on [2] what you wanted to do with the case. And then [3] I would then decide whether you got a [4] preliminary injunction or the nine month [5] federal circuit date. You don't have to decide [6] today.

[7] MR. BONO: Can I ask one question?

[8] THE COURT: Yes.

[9] MR. BONO: Was that with or without [10] a jury or either?

[11] THE COURT: Either way.

[12] MR. BONO: Just didn't know if you [13] were —

[14] THE COURT: No. What I was [15] referencing, in my Rule 16 letter I tell you, [16] and if it's a patent case, that if you want to [17] be out of here in nine months and you're [18] willing to waive the jury, I'll do that. [19] Because it's you know what one of the biggest [20] time consumers is, post trial motions. So if [21] you take that out of it, I'm willing to get you [22] out of here in nine months.

[23] I'm willing to do that for you even [24] with a jury in this case. But I'll be a lot

---
Page 39

[1] harder on you in the preparation of the [2] scheduling order, you know, where I'm a little [3] more progressive. Typically in the scheduling [4] order I give you a little more leeway. You [5] have to really nail down the issues real early [6] by contention. I'm going to really put your [7] feet to the fire. And I'd spend some time with [8] you in a conference and then maybe one more [9] follow-up to be sure what you're doing and send [10] you out. Start with document discovery on a [11] very fast pace.

[12] And it's very likely that you would [13] engage a — after I talk to you more, I'm not [14] sure yet, I might engage a special master for [15] you since you have a lot of disputes. You [16] don't seem to get along. I don't know why. [17] You seem like nice people.

[18] You seem to — maybe it's your [19] clients driving you to be nasty to each other. [20] You seem nice here. But if I thought you were [21] a little contentious just so you could get [22] quick decisions, I would get you — put you on [23] a special master track.

[24] So you'd get out of here in nine

---
Page 40

[1] months with a final order and it could be a [2] jury trial. The jury trial would be some time [3] in around like June of 2006.

[4] Do you have any other questions [5] about the options?

[6] MR. BONO: No, Your Honor. I [7] understand. Do you want comment from us or —

[8] THE COURT: Well, I think you ought [9] to talk to your client, and maybe to each [10] other, and maybe you could actually agree. [11] Wouldn't that be a beautiful thing if you could [12] just agree with each other.

[13] I've decided lawyers have a hard [14] time, particularly in these cases that are [15] contested.

[16] Do you have any questions about it?

[17] MS. DUDZIK: I don't think right [18] off the bat, but I just wanted to bring to the [19] attention there is another patent involved in [20] this lawsuit.

[21] THE COURT: Oh, yeah. Here's what [22] I would also do, if there's two patents, let's [23] say that they get crazy and they insert a host [24] of claims, I'd make them go to representative

---
Page 41

[1] claims. Which I found out when I was at that [2] conference, one of the other people was Judge [3] Rader and he said that's a good thing and the [4] federal circuit doesn't mind district courts [5] doing that. He reinforced it the way he spoke [6] to these folks.

[7] So if they tried to be [8] unreasonable, we'd get it narrowed so we know [9]

exactly that it's a reasonable approach and not [10] just shot gunning you. And the same thing with [11] invalidity defenses, you know, you can't have [12] every picket in the fence. You're going to [13] have to pick two, three most, because we have [14] to have discrete discovery so you can get at [15] what you want to get at.
[16] This is the real lawyer program. [17] You can't just be a litigator to get either of [18] these options.
[19] Do you have any other questions?
[20] MS. DUDZIK: When do you want our [21] answer?
[22] THE COURT: I want you to talk. I [23] would appreciate you talking with each other. [24] If you could agree to it, it would be a good

Page 42

[1] thing for you. Because obviously whatever I do [2] is arbitrate and I don't know as much about [3] your case as you do, particularly early on like [4] this.
[5] If you can't agree, I'd like to [6] hear from you — I'll give you the weekend. [7] I'd like to hear from you Monday by close of [8] business in a letter what your positions are on [9] each option and then I'll select an option from [10] what you tell me your position is if you don't [11] agree. And then we'll get together to nail [12] down what the program is going to be the week [13] after Thanksgiving.
[14] I have trial next week, I think. I [15] have a criminal trial next Monday. Right, next [16] Monday. So we would have you come in the week [17] of the 28th and set the schedule, whether it's [18] the preliminary injunction option or the other [19] one.
[20] MR. BONO: Your Honor, I appreciate [21] all Your Honor's efforts. I'm going to be on [22] vacation that week. Can we do it the week [23] after?
[24] THE COURT: Sure. Write that down,

Page 43

[1] he's delaying.
[2] MR. BONO: But if it's a problem, I [3] can call in via phone.
[4] THE COURT: Don't dare do that on [5] vacation.
[6] We have some children who are [7] lawyers and the went on vacation and they [8] actually took one of their Blackberry's with [9] them. I just don't understand that. I don't [10] get it. But they do. I know your lives are [11] like that. Vacation is not counted as delay, [12] so you can never raise that.
[13] MS. DUDZIK: I'll keep that in my [14] back pocket.
[15] THE COURT: Keep that in mind in [16] case you want one some time.
[17] We can do it today. That would [18] bring it to the week of the seventh. Do you [19] want to come in on the tenth, which is a [20] Thursday?
[21] MR. BONO: That's fine.
[22] THE COURT: And so let's have you [23] come in at eleven o'clock.
[24] Where are you coming from?

Page 44

[1] MS. DUDZIK: Chicago. Later would [2] be perfect.
[3] THE COURT: I'm sorry. We'll [4] definitely do that for you.
[5] And where are you?
[6] MR. BONO: Washington.
[7] THE COURT: So let's make it at one [8] o'clock, that way you can get in in the morning [9] and get here and then get out by the end of the [10] day.
[11] MS. DUDZIK: Great.
[12] THE COURT: One o'clock on Thursday [13] the tenth and you'll tell me by next Monday [14] you'll know what option so you can start [15] preparing what you'd like to be able to do in [16] the option I've given you before you get here.
[17] MR. BONO: Your Honor, I think you [18] were looking at the wrong month.
[19] THE COURT: I was I'm sorry. The [20] week of the fifth, so that would make it [21] December the 8th and we'll make it at I have a [22] one o'clock already on that day, so we'll make [23] it at 1:30 on the eighth, that's a Thursday, [24] December 8th.

Page 45

[1] Just tell me, I have some idea, but [2] everybody here has a lot of associates and [3] other partners in their law firms? There's [4] nobody here that's practicing with just two [5] other people? That's good because that [6] means —
[7] MR. BONO: Your Honor, sometimes [8] I'm sure with Christine, we sometimes often [9] feel that way that we're practicing with only [10] one or two other people.
[11] THE COURT: Well, the bad news is I [12] just looked at the total letterhead. That [13] allows me to be — I keep hearing this story [14] about something I did with a firm in DC years [15] ago. Two weeks before the trial some lawyer [16] said he had somebody that couldn't make it. I [17] said, fine, you got 150 other lawyers, just [18] come for trial.
[19] And they substituted a guy and he [20] actually wound up getting a hung jury in a case [21] that they shouldn't I guess everybody thought [22] maybe not done that well.
[23] But if you're from a large firm, [24] you know, I have less empathy for giving you

a

Page 46

[1] tougher schedule than if you're a couple of [2] people. So knowing that, you know, it will be [3] a tough schedule, but it will accomplish where [4] you both want to be.
[5] Anything else? [6] Thank you very much.
[7] (Hearing concluded at 3:24 p.m.)

Page 47

State of Delaware )
New Castle County )
CERTIFICATE OF REPORTER
I, Stacy L Vickers, Registered Professional Reporter and Notary Public, do hereby certify that the foregoing record is a true and accurate transcript of my stenographic notes taken on November 16, 2005, in the above-captioned matter
IN WITNESS WHEREOF, I have hereunto set my hand and seal this 17th day of January, 2006, at Wilmington
    Stacy L Vickers, RPR
    Cert #: 115-RPR
    Hawkins Reporting Service
715 North King Street - Wilmington, Delaware  19801
    (302)658-6697 FAX(302)658-8418