IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LG.PHILIPS LCD CO., LTD.,

    Plaintiff/Counterclaim Defendant,

    v.

TATUNG COMPANY;
TATUNG COMPANY OF AMERICA, INC.;
CHUNGHWA PICTURE TUBES, LTD.;
AND VIEWSONIC CORPORATION,

    Defendants/Counterclaim Plaintiffs.

Civil Action No. 05-292 (JJF)

**REDACTED PUBLIC VERSION**

## PLAINTIFF LPL'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR PERMANENT INJUNCTION

THE BAYARD FIRM
Richard D. Kirk (#922)
Ashley B. Stitzer (#3891)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899-5130
(302) 655-5000
rkirk@bayardfirm.com
Counsel For Plaintiff,
LG.PHILIPS LCD CO., LTD.

OF COUNSEL:
Gaspare J. Bono
Matthew T. Bailey
Cass W. Christenson
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C. 20006
(202) 496-7500 (Telephone)
(202) 496-7756 (Facsimile)

September 1, 2006

## TABLE OF CONTENTS

I.     NATURE AND STAGE OF THE PROCEEDINGS ....................................................... 1

II.    SUMMARY OF ARGUMENT ...................................................................................... 2

III.   THE COURT SHOULD ENTER A PERMANENT INJUNCTION TO
PROTECT LPL'S PATENT RIGHTS AND IN THE INTERESTS OF EQUITY........... 3

     A.    This Court Should Issue a Permanent Injunction to Protect LPL from
Ongoing Infringement by Defendants and their Customers .................................. 4

     B.    A Permanent Injunction Is Necessary and Appropriate To Protect LPL's
Interests and Prevent Further Irreparable Harm Due to Infringement................... 9

          1.    LPL Lacks a Legal Remedy and the Jury's Verdict of Willful
Infringement of Claims 1 and 8 Supports Entry of an Injunction............ 9

          2.    An Injunction Is Necessary To Avoid Further Irreparable Harm to
LPL ........................................................................................................ 11

          3.    The Balance of Hardships Favors Entry of a Permanent Injunction ....... 15

          4.    An Injunction Is Appropriate To Promote the Public Interest................. 17

IV.   CONCLUSION............................................................................................................ 18

# TABLE OF AUTHORITIES

## Cases

*02 Micro Int'l Ltd. v. Sumida Corp.*, No. Civ. A. 2:03-CV-07, 2006 WL
981987 (E.D. Tex. Apr. 12, 2006) ........................................................................5, 6

*California Med. Prods., Inc. v. Emergency Med. Prods., Inc.*, 796 F. Supp.
640 (C.D. Cal. 1992).................................................................................................14

*Ciena Corp. v. Corvis Corp.*, 334 F. Supp. 2d 610 (D. Del. 2004) .........................5, 15

*Corning Inc. v. SRU Biosystems*, 418 F. Supp. 2d 596 (D. Del.
2006) ..........................................................................................................................4

*Crane by Crane v. Indiana High School Athletic Ass'n*, 975
F.2d 1315 (7th Cir. 1992) .........................................................................................9

*C.R. Bard, Inc. v. United States Surgical Corp.*, 258 F. Supp. 2d 355
(D. Del. 2003) .........................................................................................................4, 5

*Crutchfield v. United States Army Corps of Engineers*, 192 F. Supp. 2d 444
(E.D. Va. 2001)..........................................................................................................9

*Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 28 U.S.P.Q.2d
1362 (D. Del. 1993) .............................................................................................14, 17

*Eaton Corp. v. Parker-Hannifin Corp.*, 292 F. Supp. 2d 555 (D. Del. 2003) ............4, 5

*eBay, Inc. v. MercExchange, L.L.C.*, 126 S. Ct. 1837 (2006)................................3, 9, 15

*E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 659 F. Supp. 92
(D. Del. 1987) ............................................................................................................4

*Fisher-Price, Inc. v. Safety 1st, Inc.*, 279 F. Supp. 2d 526 (D. Del. 2003) ........... passim

*Genentech, Inc. v. Wellcome Foundation Ltd.*, 826 F. Supp. 828 (D.
Del. 1993) ..................................................................................................................5

*H.H. Robertson Co. v. United Steel Deck, Inc.*, 820 F.2d 384 (Fed. Cir.
1987) ..........................................................................................................................15

*Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 397 F. Supp. 2d 537
(D. Del. 2005) .................................................................................................... passim

*In re Cole Patent Litig.*, 606 F. Supp. 45 (D. Del. 1984).............................................15

*Jeneric/Pentron, Inc. v. Dillon Co., Inc.*, 259 F. Supp. 2d 192, 195 (D. Conn. 2003) ....................................................................................................8, 10, 11

*Johnson & Johnson Consumer Prods., Inc. v. Ormco Corp.*, Nos. 87-341 & 87-547-JJF, 1988 WL 155634 (D. Del. Sept. 29, 1988)..........................................14

*Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. De C.V.*, 240 F. Supp. 2d 963 (S.D. Iowa 2003) .....................................................................11

*KSM Fastening Sys. v. H.A. Jones Co.*, 776 F.2d 1522 (Fed. Cir. 1985) .......................8

*Lambton Mfg. Ltd. v. Young, 833 F. Supp.* 610 (W.D. Ky. 1993)................................11

*Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 976 (Fed. Cir. 1996) ...................10, 14

*Rohm & Haas Co. v. Mobil Oil Corp.*, 718 F. Supp. 274 (D. Del. 1989)....................4, 5

*Shields v. Zuccarini*, 254 F.3d 476 (3d Cir. 2001)............................................................9

*Smith Int'l, Inc. v. Hughes Tool Co.*, 718 F.2d 1573 (Fed. Cir. 1983) .....................4, 15

*Stolt-Nielsen, S.A. v. United States*, 442 F.3d 177 (3d Cir. 2006) ................................11

*TiVo Inc. v. EchoStar Commc'ns. Corp.*, No. 2:04 CV1DF, -- F. Supp. 2d --, 2006 WL 2398681 (E.D. Tex. Aug. 17, 2006) ............................................12, 13, 14

*Tristrata Tech., Inc. v. ICN Pharms., Inc.*, No. Civ. A. 01-150 JJF, 2004 WL 856595 (D. Del. Apr. 12, 2004)................................................4, 5, 6, 8

*Tristrata Tech., Inc. v. Mary Kay, Inc.*, 423 F. Supp. 2d 456 (D. Del. 2006) ....................................................................................................4

*Wald v. Mudhopper Oilfield Servs., Inc.*, No. CIV-04-1693-C,  2006 WL 2128851 (W.D. Okla. July 27, 2006).............................................................9, 13, 14

*Wesley Jessen Corp. v. Bausch & Lomb, Inc.*, 209 F. Supp. 2d 348  (D. Del. 2002) ...................................................................................................17

*Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995  (Fed. Cir.1986)...........................................................................................15

**Statutes and Constitutional Provisions**

U.S. Const. art. I, § 8.....................................................................................................4

35 U.S.C. § 271 ..............................................................................................................7

35 U.S.C. § 283 ..............................................................................................................3

**Rules**

Fed. R. Civ. P. 65 ..................................................................................................................... 3

Plaintiff LG.Philips LCD Co., Ltd. ("LPL") respectfully submits this Memorandum of Law in Support of its Motion for entry of a Permanent Injunction following the jury's verdict of willful infringement against Defendants Chunghwa Picture Tubes, Ltd. ("CPT"), Tatung Company ("Tatung"), Tatung Company of America, Inc. ("Tatung America"), and ViewSonic Corporation ("ViewSonic") (collectively, "Defendants"). The jury concluded that Defendants, and third parties that they induce, are making, using, importing, offering and/or selling in the U.S. many products containing infringing LCD modules. This continuing infringement by Defendants, and their sales and distribution networks, is irreparably harming LPL. LPL seeks a permanent injunction to prevent further, ongoing infringement by Defendants and their customers, to protect LPL's patent rights and its status and reputation in the LCD industry.

## I.    NATURE AND STAGE OF THE PROCEEDINGS

In May 2005, LPL filed its Complaint alleging that Defendants CPT, Tatung, Tatung America, and ViewSonic directly and indirectly infringe U.S. Patents No. 5,019,002 ("the '002 Patent") and No. 6,738,121 ("the '121 Patent"). *See* D.I. 1. In general, the '002 Patent, entitled "Method of Manufacturing Flat Panel Backplanes including Electrostatic Discharge Prevention and Displays Made Thereby," involves technology that protects against damage from electrostatic discharge during and after the manufacture of flat panel displays called thin-film-transistor liquid crystal displays ("TFT-LCDs" or "LCDs"). The '002 Patent improves manufacturing yield rates and thus reduces manufacturing costs. The parties agreed to an expedited schedule for trial and the Court scheduled an expedited trial.

Depositions began on May 18, 2006, and continued through June 2006. The Court conducted a Pre-trial Conference on July 7, 2006. Defendants declined to stipulate as to representative products or representative patent claims. The Court instructed LPL to determine how to focus its trial presentation within the time limits to be established for trial.

On July 13, 2006, the Court issued its Trial Management Order limiting each side to a total of twenty-one (21) hours for opening statements and to present its case at trial. *See* D.I. 364. On July 14, 2006, LPL provided Defendants with a Covenant Not To Sue on all claims of the '002 Patent except for claims 1 and 8. *See* D.I. 370, 407. The trial focused solely on those two claims.

Trial was conducted before a jury from July 17, 2006 through July 27, 2006. On July 27, the jury returned a verdict in favor of LPL and against each of the Defendants, finding that each Defendant infringed both claims 1 and 8 directly, indirectly, and willfully, and rejecting Defendants' validity challenges to both claims. *See* D.I. 405. On August 3, LPL provided Defendants with a Covenant Not To Sue on all claims of the '121 Patent, mooting all claims and issues related to that patent.[1] *See* D.I. 418.

LPL is filing a separate motion requesting entry of final judgment and an award of enhanced damages, attorneys' fees and expenses, and interest. In this motion, LPL seeks a permanent injunction against ongoing and future infringement by Defendants and their customers. The form of injunction proposed by LPL is attached as Exhibit 1 to LPL's Motion for Permanent Injunction.

## II.    SUMMARY OF ARGUMENT

1.    LPL is entitled to a permanent injunction against all of the Defendants. All of the relevant equitable factors support a permanent injunction in this case.

---

[1] During discovery, disputes had arisen concerning various issues, including the Defendants' contentions that the '121 Patent was subject to an "on-sale bar" defense. LPL disputed those contentions, and the Court gave LPL the option of avoiding further protracted and disputed discovery on the '121 Patent by dropping that patent from the case. On May 1, 2006, LPL elected to drop the '121 Patent. *See* D.I. 180.

2.    First, LPL is suffering irreparable harm, including, for example, harm to LPL's reputation, market position, and status as a patent holder and industry leader.

3.    Further, LPL lacks any adequate remedy at law and an injunction is needed to protect LPL's core right to exclude Defendants and their customers from using the invention in the '002 Patent.  LPL's harm is particularly great because CPT is a direct competitor and is exploiting LPL's technology to gain unfair competitive advantages.  CPT also lacks assets in the U.S., making an injunction even more important to protect LPL's rights and interests.

4.    Whereas LPL faces severe hardships without an injunction, Defendants can continue their business after an injunction is entered.  Defendants are sophisticated companies that sell many types of products in many different countries.  In addition, Defendants failed to exercise due care and should not be heard to complain about any impact of an injunction on their businesses.  The balance of hardships, therefore, weighs in favor of an injunction.

5.    A permanent injunction is consistent with the public's interest in a strong patent system.  As the jury concluded, LPL's patent is valid and infringed.  The public interest is best served by an injunction.

## III.    THE COURT SHOULD ENTER A PERMANENT INJUNCTION TO PROTECT LPL'S PATENT RIGHTS AND IN THE INTERESTS OF EQUITY

Congress expressly has provided for injunctions as a remedy to protect patent rights.  The Court may grant an injunction "in accordance with the principles of equity to prevent the violation of any right secured by patent."  35 U.S.C. § 283; *see also* Fed. R. Civ. P. 65(d) (establishing requirements for injunctions issued by federal courts).  The United States Supreme Court recently confirmed that injunctions in patent cases are to be granted in the Court's discretion "consistent with traditional principles of equity" and "the traditional four-factor framework that governs the award of injunctive relief."  *eBay, Inc. v. MercExchange, L.L.C.*, 126

S. Ct. 1837, 1841 (2006). When issuing an injunction, therefore, the Court considers four equitable factors: (1) whether LPL "has suffered an irreparable injury"; (2) whether "remedies available at law, such as monetary damages, are inadequate to compensate for that injury"; (3) "the balance of hardships" between LPL and Defendants; and (4) whether "the public interest would not be disserved" by an injunction. *Id.* at 1839; *see also Eaton Corp. v. Parker-Hannifin Corp.*, 292 F. Supp. 2d 555, 582 (D. Del. 2003) (court considers "the adequacy of the legal remedy, irreparable injury, whether the public interest would be served, and the hardship on the parties and third parties.") (quoting *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 659 F. Supp. 92, 94 (D. Del. 1987)). All four factors support a permanent injunction.

### A.  This Court Should Issue a Permanent Injunction To Protect LPL from Ongoing Infringement by Defendants and their Customers

It is well settled that "[t]he essence of the property right granted by a patent is the right to exclude." *Tristrata Tech., Inc. v. ICN Pharms., Inc.*, No. Civ. A. 01-150 JJF, 2004 WL 856595, at *1 (D. Del. Apr. 12, 2004)[2]. LPL's right to exclude others from practicing the '002 patented invention emanates from the Constitution of the United States and is the core right of a patent owner. *See Eaton Corp.*, 292 F. Supp. 2d at 581-82 (citing U.S. Const. art. I, § 8); *see also Smith Int'l, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1577 (Fed. Cir. 1983); *C.R. Bard, Inc. v. United States Surgical Corp.*, 258 F. Supp. 2d 355, 359 (D. Del. 2003); *Rohm & Haas Co. v. Mobil Oil Corp.*, 718 F. Supp. 274, 332 (D. Del. 1989) ("The principal value of a patent is its statutory right to exclude others from the unlicensed practice of the invention."). This Court regularly grants injunctive relief when, as in this case, Defendants are found to infringe a valid patent. *See, e.g., Tristrata Tech., Inc. v. Mary Kay, Inc.*, 423 F. Supp. 2d 456, 470 (D. Del. 2006); *Corning*

---

[2] Copies of all unpublished opinions cited herein are attached as Ex. 4.

*Inc. v. SRU Biosystems*, 418 F. Supp. 2d 596, 602-03 (D. Del. 2006); *Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 397 F. Supp. 2d 537, 550 (D. Del. 2005); *Ciena Corp. v. Corvis Corp.*, 334 F. Supp. 2d 610, 614 (D. Del. 2004), *reconsideration granted*, 352 F. Supp. 2d 526, 527 (D. Del. 2005) (broadening injunction); *Tristrata Tech., Inc. v. ICN Pharms., Inc.*, 2004 WL 856595, at *3 (D. Del. Apr. 12, 2004); *Eaton Corp.*, 292 F. Supp. 2d at 582-83; *Fisher-Price, Inc. v. Safety 1st, Inc.*, 279 F. Supp. 2d 526, 528-29 (D. Del. 2003); *C.R. Bard, Inc.*, 258 F. Supp. 2d at 364; *Genentech, Inc. v. Wellcome Foundation Ltd.*, 826 F. Supp. 828, 831 (D. Del. 1993); *Rohm & Haas Co.*, 718 F. Supp. at 332-33.

In this case, an injunction is necessary to prevent further unauthorized use, importation, sale, or offers for sale in or to the United States, by Defendants or their customers, of any LCD modules made by CPT using the methods taught in claims 1 and 8 of the '002 Patent. This Court previously has required an infringing manufacturer to "provide sufficient instruction to its customers to prevent future infringement" of specified patent claims. *C.R. Bard, Inc.*, 258 F. Supp. 2d at 364. Similarly, in this case, CPT should be ordered to avoid any conduct that would infringe claims 1 or 8 of the '002 Patent and to communicate with its customers to prevent downstream infringing conduct. Specifically, CPT should be compelled to inform all past, future, and prospective customers and brands that infringing modules -- and any LCD products using or incorporating those modules -- cannot be used, imported, offered for sale, or sold in or to the United States. *See id.*; *see also 02 Micro Int'l Ltd. v. Sumida Corp.*, No. Civ. A. 2:03-CV-07, 2006 WL 981987, at *5 (E.D. Tex. Apr. 12, 2006).

As one court recently ordered, the injunction should target all infringing activities, including activities of those "acting in concert" with CPT. *02 Micro*, 2006 WL 981987, at *5. This Court likewise has entered injunctions against infringers and "those persons in active

concert or participation with them" against infringing patents, "either directly, by contribution, or by inducement." *Tristrata Tech., Inc. v. ICN Pharms., Inc.*, 2004 WL 856595, at *4; *see also Honeywell Int'l, Inc.*, 397 F. Supp. 2d at 551. The injunction should, therefore, prohibit CPT from "making, using, selling, or importing into the United States any of the accused products as well as from otherwise infringing or inducing others to infringe the claims" of LPL's patent. *See Tristrata Tech., Inc. v. ICN Pharms., Inc.*, 2004 WL 856595, at *4; *see also 02 Micro*, 2006 WL 981987, at *5. And, the injunction should require prominent labeling on all infringing products and related documents warning against the sale, use, or importation of CPT's modules in the United States:

> Given the jury's finding of induced infringement and [Taiwanese defendant's] contention that it does not (and, implicitly, cannot) control the ultimate destination of its inverter modules, the plaintiff is also entitled to an injunction requiring [defendant] to label prominently those products found to be infringing and their accompanying literature "Not for Sale in, Use in, or Importation into the United States." These terms preserve [defendant's] ability to sell its products for use outside the United States while placing potential purchasers and importers on notice that the importation or sale of such products within the United States is prohibited.

*02 Micro*, 2006 WL 981987, at *5 (internal citation omitted).

REDACTED MATTER

REDACTED MATTER

As the jury concluded, CPT actively induces many others REDACTED MATTER

to infringe by importing, offering, and selling in the U.S. products with infringing CPT modules made by the '002 methods. *See* D.I. 405 (Special Verdict Form).

REDACTED MATTER

LPL respectfully requests a permanent injunction to prevent any further and ongoing infringement and harm resulting from both direct and indirect infringement. *See* Ex. 1 to LPL's Motion for Permanent Injunction. Without an injunction, LPL will continue to suffer competitive

disadvantages and CPT -- LPL's direct competitor -- will gain unfair advantages. As reflected in Mr. Cobb's damages calculations and the trial evidence, and consistent with the jury's verdict, using the '002 methods results in significant cost savings and yield increase benefits when manufacturing LCD products – [3]

REDACTED MATTER

The injunction should cover all of CPT's products manufactured using the outer guard ring technology reflected in claim 1 and the inner and outer guard ring technology reflected in claim 8. Specifically, therefore, the injunction should apply to at least the CPT products identified in PTX 34 (list of Defendants' accused products) (attached as Ex. 1), and to all versions or variations of those products that are not more than colorably different. *See KSM Fastening Sys. v. H.A. Jones Co.*, 776 F.2d 1522, 1526 (Fed. Cir. 1985); *Tristrata Tech., Inc.*, 2004 WL 856595, at *3 n.1; *Jeneric/Pentron, Inc. v. Dillon Co., Inc.*, 259 F. Supp. 2d 192, 197-98 (D. Conn. 2003). In addition, the injunction should cover all LCD products, such as televisions, monitors, and laptop computers, that incorporate any infringing CPT modules. *See* Ex. 1 to LPL's Motion for Permanent Injunction.

---

[3] The trial record reflects REDACTED MATTER

**B.**     **A Permanent Injunction Is Necessary and Appropriate To Protect LPL's Interests and Prevent Further Irreparable Harm Due to Infringement**

      1.     LPL Lacks a Legal Remedy and the Jury's Verdict of Willful Infringement of Claims 1 and 8 Supports Entry of an Injunction

LPL lacks an adequate remedy at law for ongoing and future infringement of claims 1 and 8 of the '002 Patent. The jury's verdict is overwhelmingly in LPL's favor on the merits. The jury concluded that all Defendants directly infringe both claims, that all Defendants actively induce others to infringe, that all Defendants willfully infringe, and that the patent is not invalid for anticipation or obviousness. *See* D.I. 405 (Special Verdict Form). LPL's overwhelming success on the merits supports entry of an injunction.[4]

In addition, LPL has no adequate remedy at law for Defendants' ongoing and future infringement. As explained below, LPL is suffering irreparable harm and this harm by itself establishes that LPL lacks a sufficient legal remedy. *See, e.g., Crane by Crane v. Indiana High School Athletic Ass'n*, 975 F.2d 1315, 1326 (7th Cir. 1992) (showing of irreparable harm itself is not essential, but is one way to establish inadequacy of a legal remedy in support of permanent injunction); *Crutchfield v. United States Army Corps of Engineers*, 192 F. Supp. 2d 444, 456 n. 16 (E.D. Va. 2001) (same). CPT's status as a Taiwanese company, moreover, casts doubt on LPL's ability to collect on its judgment and further establishes the need for an injunction.

Money damages often are not an adequate remedy for patent infringement. *See Honeywell Int'l, Inc.*, 397 F. Supp. 2d at 546; *see also Wald v. Mudhopper Oilfield Servs., Inc.*, No. CIV-04-1693-C, 2006 WL 2128851, at *5 (W.D. Okla. July 27, 2006) (granting permanent injunction where defendants' infringement harmed plaintiff's "reputation for innovation," and

---

[4] The Supreme Court did not refer to success on the merits as one of the four injunction factors in its recent *eBay* decision. *See* 126 S. Ct. at 1839. The U.S. Court of Appeals for the Third Circuit, however, regards a showing of success on the merits as the first of the four permanent injunction factors. *See, e.g., Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001). In any event, to the extent that this factor applies, LPL has overwhelmingly prevailed on the merits against each of the four Defendants.

thus "damages, either awarded by the jury or trebled, do not necessarily take into account other items of loss"). As explained by the Federal Circuit, "because the principal value of the patent is its statutory right to exclude, the nature of the patent grant weighs against holding that monetary damages will always suffice to make the patentee whole." *Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 976 (Fed. Cir. 1996) (citation omitted). Further, damages are for past infringement only and are not intended to compensate for future infringement. *See Honeywell Int'l, Inc.*, 397 F. Supp. 2d at 546 ("Injunctive relief operates to protect the interests of a patentee against future infringement, the market effects of which may not be fully compensable in the form of monetary damages.").

REDACTED MATTER

An injunction is also appropriate because CPT is based in Taiwan and may not have assets available in the United States on which to execute under the judgment. LPL is owed more than fifty million dollars for CPT's past infringement alone, and it would be patently unfair to allow CPT to continue to infringe with impunity while potentially evading its duty to compensate LPL. CPT's lack of assets in the U.S. makes an injunction particularly appropriate to protect LPL's interests. Several courts, including in patent cases, have granted injunctive relief when

the defendant lacked assets in the U.S. to satisfy a judgment. *See, e.g., Lambton Mfg. Ltd. v. Young*, 833 F. Supp. 610, 616-17 (W.D. Ky. 1993); *Jeneric/Pentron*, 259 F. Supp. 2d at 195.[5]  In *Lambton*, for example, the court found that the alleged infringer's lack of "substantial assets in the United States to satisfy a money judgment against it" weighed in favor of a preliminary injunction. 833 F. Supp. at 616-17.  Similarly, in *Jeneric/Pentron*, the defendant's status as a foreign company would "complicat[e] the recovery of any present and future damages" and thus favored entry of a permanent injunction. 259 F. Supp. 2d at 195.

2.    <u>An Injunction Is Necessary To Avoid Further Irreparable Harm to LPL</u>

Further, LPL is suffering irreparable harm to its reputation, goodwill, and status as a patent holder, due to Defendants' ongoing infringement.  LPL's showing of irreparable harm -- based on the nature of its patent rights and intangible market-related factors -- supports entry of an injunction.[6]  As this Court has recognized, "there are certain tangential benefits associated with patent rights, such as a marketplace reputation for enforcing one's patents, the value of which cannot be quantified in monetary damages." *Fisher-Price, Inc.*, 279 F. Supp. 2d at 528.

These intangible market realities are particularly significant in this case.  LPL and CPT are direct competitors in the LCD industry, an industry that is driven by fierce competition.

REDACTED MATTER

---

[5] *See also Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. De C.V.*, 240 F. Supp. 2d 963, 979 (S.D. Iowa 2003) (alleged infringer's lack of substantial assets in the U.S. and the resulting uncertainties regarding collecting damages after trial "is a factor tending to show the potential for irreparable harm" and weighing in favor of preliminary injunction), *rev'd on other grounds*, 93 Fed. Appx. 225, 230 (Fed. Cir. 2004) (reversing district court's analysis regarding success on the merits, but finding "no clear error" in the district court's analysis regarding irreparable harm).

[6] The U.S. Court of Appeals for the Third Circuit has noted recently that "irreparable harm" may not be a necessary factor to obtain a permanent injunction, at least in some cases. *See Stolt-Nielsen, S.A. v. United States*, 442 F.3d 177, 185 n.5 (3d Cir. 2006).  In any event, LPL has established irreparable harm and other evidence that LPL lacks an adequate remedy at law.

A CPT Offering Memorandum confirms that LPL is one of CPT's "main competitors" in the LCD market. PTX 67 at CPT-D 38937.

REDACTED MATTER

The undisputed fact that LPL and CPT directly compete in such a difficult market weighs strongly in favor of a permanent injunction. *See TiVo Inc. v. EchoStar Commc'ns. Corp.*, No. 2:04 CV1DF, -- F. Supp. 2d --, 2006 WL 2398681, at *5 (E.D. Tex. Aug. 17, 2006) (patentee's loss of market share to direct competitor was a "key consideration" in finding irreparable harm and granting permanent injunction).

To succeed in the ultra-competitive LCD market, LPL constantly develops innovations and new technologies. *See id.* at 589:2-590:20 (Ho Lee's testimony regarding LPL's innovative products, resulting awards, and investment in research and development). As the evidence showed, LPL has pioneered many products and received numerous awards, including for its copper bus line technology (which achieves brighter displays in larger-size panels) and cutting-edge 55-inch LCD TV screen (which will soon be available to consumers). *Id.* LPL also won the DisplaySearch Customer Satisfaction Award in 2002, 2003, and 2004. *See* PTX 42 at LPLII 103668. And, LPL has been first to market with numerous products, including several large-size LCDs for computer monitors and TVs. *See* Tr. at 589:19-590:8; *see also* PTX 42 at LPLII 103671-72 (discussing LPL's technology leadership). Indeed, one of LPL's fabs was the first in the world "to process glass substrate sizes greater than one square meter," which enabled LPL to efficiently manufacture several larger-sized LCDs. *See* PTX 42 at LPLII 103669. Recently, LPL unveiled the world's largest size TFT-LCD panel (100 inches). *See* LPL Press Release dated March 8, 2006 (Ex. 3).

REDACTED MATTER

REDACTED MATTER

As a result of its efforts, LPL has established a prominent position as one of the top two companies in the global LCD market. *See* Tr. at 645:11-12 (Ho Lee testified that LPL and Samsung are always competing for first place in the market); *see also* PTX 42 at LPLII 103668 (according to DisplaySearch, LPL has been "the world's leading merchant supplier" of large-size TFT-LCD panels since 2002, with a global market share in 2003 of 22%); *id.* at LPLII 103665 (listing market share information for large-size LCD manufacturers). LPL has earned a hard-fought and well-deserved reputation as an innovator and market leader.

REDACTED MATTER

LPL's market position and reputation is critical to its profitability and success. Courts recognize that harm to reputation and status are the type of losses for which legal remedies are inadequate. *See, e.g., TiVo*, 2006 WL 2398681, at *3; *Wald*, 2006 WL 2128851, at *5.

Accordingly, Courts regularly issue permanent injunctions to protect against harm to reputation in patent cases.[7]  *See, e.g.*, *TiVo*, 2006 WL 2398681, at *5-6; *Wald*, 2006 WL 2128851, at *5.

Further, to preserve its status and reputation in the industry, LPL must enforce its patents against infringers.  LPL thus vigorously protects its patent rights.  *See* Tr. at 602:24-605:10 (testimony regarding LPL's enforcement of the '002 Patent);  REDACTED MATTER PTX 42 at LPLII 103682 (as part of LPL's "ongoing efforts to prevent infringements on [its] intellectual property rights," LPL "closely monitor[s] patent applications" in several countries, including the U.S.).  LPL's patent portfolio includes hundreds of U.S. patents REDACTED MATTER; *see also* PTX 42 at LPLII 103682 (July 2004 letter referencing 795 U.S. patents held by LPL).  LPL's ability to prevent others from infringing this technology is critical to LPL's status and success as an industry innovator.  *See California Med. Prods., Inc.*, 796 F. Supp. at 647 ("The essential value of a patent lies in the right it confers upon a patent holder to exclude others from infringing the invention."); *Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 976 (Fed. Cir. 1996) (same).

Irreparable harm is especially great when, as here, limited time remains until the patent expires.  *See Honeywell Int'l, Inc.*, 397 F. Supp. 2d at 543 & n.20; *see also Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 28 U.S.P.Q.2d 1362, 1370 (D. Del. 1993) ("Because

---

[7] Indeed, courts often issue preliminary injunctions to protect against reputational harm to patent holders even before any adjudication of infringement or validity.  *See Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 28 U.S.P.Q.2d 1362, 1371 (D. Del. 1993) (granting preliminary injunction to protect against potential harm to patentee's "reputation and goodwill as an innovator"); *Johnson & Johnson Consumer Prods., Inc. v. Ormco Corp.*, Nos. 87-341 & 87-547-JJF, 1988 WL 155634, at *7 (D. Del. Sept. 29, 1988); *see also California Med. Prods., Inc. v. Emergency Med. Prods., Inc.*, 796 F. Supp. 640, 647 (C.D. Cal. 1992) (granting preliminary injunction where patentee occupied a significant part of the market and thus denial of the injunction "would cause considerable harm to [patentee's] reputation and threaten its market position"), *aff'd*, No. 92-1492, 1993 WL 57246 (Fed. Cir. Mar. 4, 1993).

patent rights are of finite duration, the mere passage of time creates irremediable harm."). The Supreme Court's recent decision makes clear that the right to exclude does not justify injunctive relief automatically in every case.[8] *See eBay*, 126 S. Ct. at 1840 ("[T]he creation of a right is distinct from the provisions of remedies for violations of that right."). A patent's exclusivity, however, remains a significant and relevant consideration in the injunctive calculus. Indeed, as Chief Justice Roberts noted in his concurring opinion, "the difficulty of protecting a right to exclude through monetary remedies" "often implicates the first two factors of the traditional four-factor test" such that it "is not surprising" that "courts have granted injunctive relief upon a finding of infringement in the vast majority of patent cases" since "at least the early 19th century." *See id.* at 1841 (Roberts, C.J., concurring). Similarly, in this case, an injunction is appropriate to protect LPL.

### 3.    The Balance of Hardships Favors Entry of a Permanent Injunction

As a top-tier company in an ultra-competitive industry, LPL will be severely harmed absent an injunction. In contrast, Defendants are willful infringers and should not be heard to complain of the consequences of their own misconduct. *See In re Cole Patent Litig.*, 606 F. Supp. 45, 48 n.3 (D. Del. 1984) (refusing to deny an injunction because of "adverse economic effects" that injunctive relief might cause an infringer). "Indeed, even evidence that a company is likely to go out of business if an injunction is issued is not a sound reason for denying injunctive relief." *Ciena Corp.*, 334 F. Supp. 2d at 612; *see also Windsurfing Int'l, Inc. v. AMF,*

---

[8] The Supreme Court thus rejected the presumption that had developed in Federal Circuit precedent that favored virtually automatic permanent injunctions in patent cases. The Supreme Court did not, however, specifically address the separate presumption of irreparable harm where a patent is proved valid and infringed. *See, e.g., Fisher-Price, Inc.*, 279 F. Supp. 2d at 528; *Ciena Corp.*, 334 F. Supp. 2d at 612 (citing *H.H. Robertson Co. v. United Steel Deck, Inc.*, 820 F.2d 384, 390 (Fed. Cir. 1987)); *Smith Int'l, Inc.*, 718 F.2d at 1581. This presumption is not crucial to LPL's request for an injunction in this case, because LPL has shown actual irreparable harm and lack of an adequate remedy at law. Notably, however, LPL's clear showing of infringement and validity, and the resulting verdict, further support entry of an injunction in this case. Concerning patent validity, for example, CPT failed to proffer any anticipation defense against one of the claims, and the jury found that *both* claims 1 and 8 were infringed.

*Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir.1986) ("One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected.").

Even with an injunction, moreover, CPT will be able to continue its business and supply most of its products.  REDACTED MATTER  The injunction will focus on the U.S. market, whereas CPT's business focuses also on other worldwide regions and markets in addition to the U.S.  Also, not all of CPT's LCD modules will be subject to the injunction.  Of the 57 modules identified by CPT, *see* PTX 35 (list of CPT's modules and products manufactured using guard rings), 16 of them (nos. 1-14, 17, and 39 on PTX 35) were not accused of infringement and therefore would not be subject to the injunction.  In addition, CPT sells CRT products and other types of products that do not infringe the '002 Patent.  *See* PTX 67 (CPT Offering Memorandum) at CPT-D 38921, CPT-D 38923 (discussing CPT's leading position in the global CRT market).  CPT will thus be able to continue its business regardless of the entry of a permanent injunction.

Likewise, the other Defendants will be able to sustain their business despite an injunction. REDACTED MATTER

REDACTED MATTER    Further, like CPT, Tatung and ViewSonic target geographic markets outside of the U.S. *See* Tr. at 1760:6-14 (ViewSonic sells its products in 128 countries); PTX 106 (Tatung brochure) at T-D 87 (showing the "Tatung Global Nework," which spans multiple countries and continents). Accordingly, the balance of hardships favors entry of a permanent injunction, particularly given LPL's reputation and goodwill as an innovator in the industry. *See Critikon*, 28 U.S.P.Q.2d at 1371.

4.    An Injunction Is Appropriate To Promote the Public Interest

The public interest is best served by entering an injunction to halt further infringement. Enforcing patent rights, including through injunctive relief, benefits the public by promoting innovation, research, and development in science and technology. *See Honeywell Int'l, Inc.*, 397 F. Supp. 2d at 547. The public's interest in enforcing valid patent rights is so well-established as to be "almost redundant" to discuss. *Fisher-Price, Inc.*, 279 F. Supp. 2d at 528.

Further, the technology involved here relates to consumer electronics, and enjoining infringement thus could not pose "severe medical or environmental consequences." *Wesley Jessen Corp. v. Bausch & Lomb, Inc.*, 209 F. Supp. 2d 348, 404 (D. Del. 2002). Absent such severe consequences and public harm, the public interest factor supports an injunction.[9] *See Honeywell Int'l, Inc.*, 397 F. Supp. 2d at 547; *Fisher-Price, Inc.*, 279 F. Supp. 2d at 528. No public interest would be served by denying an injunction. In contrast, enjoining further infringement would promote the public interest and this factor further supports entry of a permanent injunction.

---

[9] Furthermore, CPT is a lower tier LCD company and enjoining its supply chain into the U.S. would not have any practical impact on consumer electronic markets. Other companies, including but not limited to LPL, manufacture and supply LCD modules for consumer products. Indeed, these other companies currently supply the vast majority of LCD panels worldwide. *See, e.g.*, DisplaySearch Press Release dated May 31, 2006 at Table 1 (ranking suppliers of large-area TFT-LCD modules during Q1 2006) (Ex. 5).

IV.   **CONCLUSION**

For all of the foregoing reasons, LPL respectfully requests that the Court grant LPL's Motion for Permanent Injunction and enter an injunction as proposed by LPL and attached to LPL's Motion for Permanent Injunction, and for such further relief as the Court deems just and proper.

Dated:  September 1, 2006                    THE BAYARD FIRM

                                             /s/ Richard D. Kirk (rk0922)
                                             Richard D. Kirk (rk0922)
                                             Ashley B. Stitzer (as3891)
                                             222 Delaware Avenue, Suite 900
                                             P.O. Box 25130
                                             Wilmington, DE  19899
                                             (302) 655-5000
                                             rkirk@bayardfirm.com
                                             Attorneys for Plaintiff
                                             LG.Philips LCD Co., Ltd.

OF COUNSEL:
Gaspare J. Bono
Matthew T. Bailey
Cass W. Christenson
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, D.C.  20006
(202) 496-7500

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on September 1, 2006, he electronically

filed the foregoing document with the Clerk of the Court using CM/ECF, which will send

automatic notification of the filing to the following:

Robert W. Whetzel, Esq.
Matthew W. King, Esq.
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

The undersigned counsel further certifies that copies of the foregoing document

were sent on September 1, 2006 by email and by hand to the above counsel and by email

and first class mail to the following non-registered participants:

| | |
|---|---|
| Christine A. Dudzik, Esq. | Teresa M. Corbin, Esq. |
| Thomas W. Jenkins, Esq. | Glenn W. Rhodes, Esq. |
| Howrey LLP | Julie Gabler, Esq. |
| 321 North Clark Street | Howrey LLP |
| Suite 3400 | 525 Market Street |
| Chicago, IL  60610 | Suite 3600 |
| | San Francisco, CA  94105 |

/s/ Richard D. Kirk (rk0922)
Richard D. Kirk

602380v1