# EXHIBIT 4

Westlaw.

Slip Copy                                                                                        Page 1
Slip Copy, 2006 WL 981987 (E.D.Tex.)
**(Cite as: 2006 WL 981987 (E.D.Tex.))**

<u>Motions, Pleadings and Filings</u>

Only the Westlaw citation is currently available.

United States District Court,
E.D. Texas, Marshall Division.
O2 MICRO INTERNATIONAL LIMITED
v.
SUMIDA CORPORATION, et al.
No. Civ.A. 2:03-CV-07.

April 12, 2006.

<u>Otis W. Carroll, Jr.</u>, Jack Wesley Hill, Ireland Carroll & Kelley, PC, Tyler, TX, <u>Charlie Chang</u>, Attorney at Law, Santa Clara, CA, <u>Duane H. Mathiowetz</u>, <u>Kfir B. Levy</u>, <u>Rick Chang</u>, Howrey Simon Arnold & White, <u>Korula T. Cherian</u>, Howrey LLP, San Francisco, CA, <u>Frank P. Cote</u>, Howrey LLP, Irvine, CA, <u>Franklin Jones, Jr.</u>, Jones & Jones, Marshall, TX, <u>Rickey Lawrence Faulkner</u>, Rickey L. Faulkner, P.C., <u>Sidney Calvin Capshaw, III</u>, Brown McCarroll, Longview, TX, <u>Vinay V. Joshi</u>, Howrey LLP, East Palo Alto, CA, for Plaintiff.

<u>Steven Bradley Harris</u>, Squire Sanders & Dempsey, Houston, TX, <u>Brian S. Mudge</u>, Kenyon & Kenyon, Washington, DC, <u>Joseph A. Meckes</u>, <u>Nathan Lane, III</u>, Squire Sanders & Dempsey LLP, San Francisco, CA, <u>Philip J. McCabe</u>, <u>Ronald E. Prass, Jr.</u>, <u>Stephen T. Neal</u>, Kenyon & Kenyon, San Jose, CA, <u>Eric Miller Albritton</u>, Attorney at Law, Longview, TX, for Defendant.

<u>D. Scott Hemingway</u>, Hemingway & Hansen LLP, Dallas, TX, for Movant.

*MEMORANDUM OPINION AND ORDER*

<u>WARD</u>, J.

**\*1** This memorandum opinion and order resolves the various motions remaining in this case.

I. Defendant's Amended Renewed Motion for Judgment as a Matter of Law

Taiwan Sumida Electronics ("TSE") has filed an amended renewed motion for judgment as a matter of law. That motion (# 250) is granted in part and denied in part.

A. Standard for judgment as a matter of law

A motion for judgment as a matter of law should be granted only if, on reviewing the entire record, there is no legally sufficient basis for a reasonable jury to find for the non-moving party on an issue. <u>Fed.R.Civ.P. 50(a)</u>; <u>Harris Corp. v. Ericsson, Inc., 417 F.3d 1241, 1248 (Fed.Cir.2005)</u>; <u>DP Solutions, Inc. v. Rollins, Inc., 353 F.3d 421, 427 (5th Cir.2003)</u>. The court must make all reasonable inferences in favor of the non-movant. <u>Dresser-Rand Co. v. Virtual Automation, Inc., 361 F.3d 831, 838 (Fed.Cir.2004)</u>. Credibility calls are for the jury. <u>DP Solutions, Inc., 353 F.3d at 427</u>. The court should allow the verdict to stand unless there is a lack of substantial evidence, viewed in the light most favorable to the successful party, to support the jury's factual findings, or if the legal conclusions implied from the verdict cannot be supported by those findings. <u>Am. Home Assur. Co. v. United Space Alliance, 378 F.3d 482, 487 (Fed.Cir.2004)</u>.

B. Contributory infringement

TSE contends that it is entitled to judgment as a matter of law on plaintiff's claim for contributory infringement. The basis for TSE's argument is that it only sold inverter modules outside the United States and did not control the actual importation of the devices (laptop computers) which incorporated the infringing components into the United States. According to TSE, Dell imported the laptops into the United States, and it is responsible for any infringement that occurred within the territory of the United States. The court agrees with TSE.

Although some courts have suggested that a party causing direct infringement in the United States may be liable for contributory infringement for acts taken outside the United States, *see Trustees of Columbia Univ. in City of New York v. Roche, 150 F.Supp.2d 191 (D.Mass.2001)*, TSE correctly observes that the contributory infringement statute provides clear territorial limitations. The statute, <u>35 U.S.C. § 271(c)</u>, provides:

> Whoever offers to sell or sells *within the United States* or imports *into the United States* a component of a patented machine, manufacture, combination or composition, or a material or

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 981987 (E.D.Tex.)
(Cite as: 2006 WL 981987 (E.D.Tex.))

apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use, shall be liable as an infringer.

35 U.S.C. § 271(c)(emphasis added); *Medtronic Vascular, Inc. v. Boston Scientific Corp.,* 348 F.Supp.2d 316 (D.Del.2004); *Cybiotronics, Ltd. v. Golden Source Elecs., Ltd.,* 130 F.Supp.2d 1152, 1166 n. 35 (N.D.Cal.2001). Accordingly, the court agrees with TSE that it is not liable for contributory infringement under 35 U.S.C. § 271(c) because TSE's sales of its inverter modules occurred overseas. The court grants TSE's motion for judgment as a matter of law on this point.

C. Induced infringement

*2 TSE also moves for judgment as a matter of law on the jury's finding of induced infringement. The inducement statute, section 271(b), does not include the same territorial limitations of the contributory infringement statute. Moreover, it is well-settled that inducement may be shown by circumstantial evidence. *Metabolite Labs., Inc. v. Lab Corp. Am.,* 370 F.3d 1354, 1365 (Fed.Cir.2004).

The evidence supports the jury's verdict of induced infringement. The evidence reflects that TSE knowingly committed acts directed toward the United States to induce the importation of laptops containing TSE's inverter modules. The correspondence between TSE and Dell provides evidence from which a jury could infer that TSE knew its modules would be imported into the United States and sought to meet Dell's specifications to exploit the domestic market. Dell sells computers worldwide and is headquartered in Texas. The evidence reflects that TSE manufactured a component product and sought to meet Dell's specification with an eye that the product be incorporated into Dell laptops and sold everywhere Dell sells--including the United States. An e-mail from Patrick Goh dated June 17, 2003, confirmed that the "actual buyer" of TSE's inverters was Dell. PX 370. Another TSE witness, Dalton Wu, testified that he personally met with Dell representatives in Austin. That witness further testified that TSE sells directly to Samsung, which, in turn, sells to Dell. Wu testified that although Dell was not TSE's direct customer, his purpose in meeting with Dell was to increase TSE's sales to Samsung, the intermediate purchaser. Other evidence was offered that TSE communicated directly with Dell and

provided information to Dell regarding the accused components. *See MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.,* 420 F.3d 1369, 1373-75 (Fed.Cir.2005). Although TSE contends that the decision to import was ultimately Dell's, the jury could reasonably have concluded that TSE knowingly committed acts designed to influence Dell's decision to import laptops containing TSE's modules into the United States and, in any event, intended for its modules to be incorporated into Dell laptops to exploit the United States market.

TSE contends that *Dynacore Holdings Corp. v. U.S. Philips Corp.,* 363 F.3d 1263, 1276 n. 6 (Fed.Cir.2004) precludes a finding of inducement in this case. According to TSE, *Dynacore* stands for the proposition that "sale of a lawful product by lawful means, with the knowledge that an unaffiliated, third party may infringe, cannot, in and of itself, constitute inducement of infringement." The statements in *Dynacore* must, however, be read in context. The case imposed strict limitations on inducement claims when an accused product is capable of substantial non-infringing uses. TSE relies on the language in *Dynacore* as though its own products are capable of substantial non-infringing uses. To this end, TSE argues, in a footnote, that:

*3 No Dell laptops with TSE modules that are sold and used in China, Japan, Taiwan, Europe, Australia or any other place outside of the United States can infringe the '722 patent. Thus, the modules plainly have substantial non-infringing uses.

TSE's Reply, at 6, n. 7. This view of substantial non-infringing uses is unaccompanied by any case citation. The omission of supporting authority is not accidental--the case law rejects this position. *Lucas Aerospace, Ltd. v. Unison Indus., L.P.,* 899 F.Supp. 1268, 1287 (D.Del.1995)(rejecting argument in context of contributory infringement case); *see also LG Electronics, Inc. v. Asustek Computer, Inc.,* 2002 WL 31996860 *12 (N.D.Cal.2002)(rejecting argument in context of patent exhaustion case). A substantial non-infringing use is one which does not practice the patent. The court has considered the arguments made by TSE and is persuaded that sufficient evidence supports the jury's verdict of inducement. TSE's motion for judgment as a matter of law on this point is denied.

D. Evidence of direct infringement, validity, and willfulness

The evidence on direct infringement was conflicting. The jury heard evidence from both parties' experts

Slip Copy
Slip Copy, 2006 WL 981987 (E.D.Tex.)
(Cite as: 2006 WL 981987 (E.D.Tex.))

and various other individuals concerning the operations of the accused products. The plaintiff's expert, Dr. Rhyne, testified that, in his opinion, the accused devices met all of the claim limitations of the asserted claims of the '722 patent. Although TSE points to certain admissions made by Dr. Rhyne on cross-examination, the jury could have credited Dr. Rhyne's testimony on infringement, including those portions the plaintiff pointed to in support of the existence of a second state and the other limitations of the asserted claims. There was also evidence from which the jury could have concluded that Dr. Rhyne had superior skill in the art. The jury was entitled, therefore, to credit Dr. Rhyne's direct infringement opinions over his counterpart called by TSE. As such, sufficient evidence exists to support a finding of literal infringement of the asserted claims.

Likewise, the court is persuaded that it properly vacated the summary judgment ruling respecting the "only if" limitation contained in the '722 patent. The plaintiff was not estopped from pursuing that claim at trial and the evidence, viewed in the light most favorable to the plaintiff, supports the jury's verdict.

As for invalidity, the evidence was such that the jury could have failed to find that the patent was invalid. The jury had before it sufficient evidence of Dr. Lin's conception of his invention, together with corroborating evidence. *Singh v. Brake,* 222 F.3d 1362, 1368 (Fed.Cir.2000). Sufficiency of corroboration is determined by using a "rule of reason" analysis, under which all pertinent evidence is examined when determining the credibility of an inventor's testimony. *Medichem, S.A. v. Rolabo, S.L.,* 437 F.3d 1157, 1170 (Fed.Cir.2006)(*citing Price v. Symsek,* 988 F.2d 1187, 1195 (Fed.Cir.1993)). Whether or not corroboration exists is a question of fact. *Medichem,* 437 F.3d at 1171. TSE urges that plaintiff should have brought more evidence and witnesses to corroborate Dr. Lin's testimony. However, whether there could have been more or better evidence is not the question. There was sufficient evidence of corroboration in this case to support the jury's verdict on invalidity. The court has considered, but ultimately, rejects, the balance of the defendant's invalidity points. The evidence, viewed in the light most favorable to the plaintiff, supports the jury's findings that the '722 patent was not invalid.

*4 Finally, the court rejects the defendant's motion for judgment as a matter of law on willful infringement. Willful infringement must be shown by clear and convincing evidence. *E.I. Du Pont de Nemours & Co. v. Phillips Petroleum Co.,* 849 F.2d 1430, 1440 (Fed.Cir.1988). Much of TSE's argument is that the jury should have credited its explanation concerning the data sheets and boards obtained by MPS. The court rejects this argument. The jury had before it sufficient proof that would have permitted it to conclude that TSE and MPS together shared the plaintiff's confidential information to the plaintiff's disadvantage. This evidence was relevant to show that TSE's state of mind was such that it acted willfully and in disregard for the plaintiff's rights under the '722 patent. TSE suggests that this conduct occurred approximately two years before the issuance of the '722 patent and implies that this renders the evidence irrelevant. The court disagrees. The weight to be given this evidence was for the jury, who had before it the facts concerning the timing of this conduct in relation to the date of issuance of the patent. The motion for judgment as a matter of law on this point is denied.

2. Defendant's Motion for New Trial

The defendant moves for a new trial under Rule 59 and Rule 61. That motion (# 247) is denied. The bulk of defendant's motion is its argument that the court erred by allowing the jury to hear evidence of trade secret misappropriation. The court remains convinced that the evidence was admissible to show willful infringement, and the court is not persuaded that the evidence was unduly prejudicial such that it should have been excluded. The court also rejects the argument that the jury's verdict was against the great weight of the evidence. No new trial is warranted.

3. Plaintiff's Motion to Enhance Damages and Declare the Case Exceptional

The court grants the plaintiff's motion to enhance damages and declare the case exceptional (# 251). As the plaintiff points out, the jury in this case found the defendant liable on sufficient evidence for willful infringement of the asserted claims of the '722 patent. In general, when a jury finds willful infringement, an enhancement of damages is appropriate. *Read Corp. v. Portec, Inc.,* 970 F.2d 816, 826 (Fed.Cir.1992), *abrogated on other grounds, Markman v. Westview Inst., Inc.,* 52 F.3d 967 (Fed.Cir.1995)(en banc), *aff'd,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). *Read* counsels the court to consider such factors as (1) whether the infringer deliberately copied the ideas of another; (2) whether the infringer investigated the scope of the patent and formed a good faith belief that it was invalid or not infringed; (3) the infringer's behavior as a party to the litigation; (4) the defendant's size and financial condition; (5)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 981987 (E.D.Tex.)
(Cite as: 2006 WL 981987 (E.D.Tex.))

Page 4

the closeness of the case; (6) the duration of the defendant's misconduct; (7) remedial action by the defendant; and (8) the defendant's motivation for harm. The court has considered these factors and holds that enhanced damages are appropriate.

*5 Primarily, the court's decision is based on the evidence that a former employee of TSE obtained one of the plaintiff's products, went to work for O2's competitor, Monolithic Power Systems ("MPS"), and disclosed confidential information to MPS. The evidence supports a determination that MPS and TSE misappropriated the plaintiff's intellectual property and thus supports the jury's finding of willfulness. In addition, TSE engaged in no remedial action, and, through an indemnity agreement, put itself into a financial condition effectively equal to MPS. It is true that the issues in the case were close and there was an investigation into infringement and validity. Nevertheless, the court agrees that enhanced damages are appropriate and awards the full amount of $4,000,000 in accordance with the parties' stipulation.

The court also declares the case exceptional and awards attorney's fees and costs. A finding of willful infringement supports a finding of an exceptional case. *Amsted Indus., Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 184 (Fed.Cir.1994). There is no apparent reason for denying a fee award in this case, and the court therefore declares the case exceptional and awards attorney's fees and costs.

The plaintiff requests a $3 million fee award, the maximum available under the parties' agreement. The plaintiff argues that its fees actually exceed that amount, so the maximum amount available under the agreement is proper. The defendant objects, however, because the plaintiff has not supported its request. Based on the objection, the court declines to find that the plaintiff is entitled to a $3 million fee award without supporting documentation and proof. The plaintiff may submit a fully supported fee application in accordance with the rules.

4. Plaintiff's Motion for Permanent Injunction

The court grants plaintiff's motion for permanent injunction (# 240). In doing so, the court rejects the defendant's argument that an injunction is inappropriate in this case. General principles of patent law provide that an injunction should issue on a finding of infringement. *Richardson v. Suzuki Motor Co.*, 868 F.2d 1226, 1247 (Fed.Cir.1989)(noting that it is a "general rule that an injunction will issue when infringement has been

adjudged, absent a sound reason for denying it."). The court rejects the argument that the plaintiff may be adequately compensated at law as well as the position that an injunction is not in the public interest.

The injunction will not have an inappropriate extraterritorial effect. The plaintiff concedes it does not seek an injunction against TSE's manufacture and sale in Taiwan of its inverter modules. As a result, the court will not issue an injunction barring all extraterritorial sales of the accused products. But the plaintiff is entitled to an injunction directed toward TSE's activities which cause domestic infringement as well as the activities of those persons or companies acting *in concert with* TSE. Therefore, the court will issue an injunction that enjoins TSE from making, using, selling, or importing into the United States any of the accused products as well as from otherwise infringing or inducing others to infringe the claims of the '722 patent. *See Spindelfabrik Suessen-Schurr v. Schubert & Salzer Maschinenfabrik AG*, 903 F.2d 1568, 1577 (Fed.Cir.1990). Given that the jury's finding of induced infringement and TSE's contention that it does not (and, implicitly, cannot) control the ultimate destination of its inverter modules, the plaintiff is also entitled to an injunction requiring TSE to label prominently those products found to be infringing and their accompanying literature "Not for Sale in, Use in, or Importation into the United States." *Id.* These terms preserve TSE's ability to sell its products for use outside the United States while placing potential purchasers and importers on notice that the importation or sale of such products within the United States is prohibited. The court has today issued a final judgment and permanent injunction in accordance with the evidence in this case.

Slip Copy, 2006 WL 981987 (E.D.Tex.)

Motions, Pleadings and Filings (Back to top)

• 2006 WL 1181308 (Trial Motion, Memorandum and Affidavit) TSE's Reply in Support of Amended Renewed Motion for Judgment as A Matter of Law (Mar. 6, 2006)Original Image of this Document with Appendix (PDF)

• 2006 WL 813859 (Trial Motion, Memorandum and Affidavit) Taiwan Sumida'S Reply in Support of Motion for New Trial (Feb. 24, 2006)Original Image of this Document (PDF)

• 2006 WL 813860 (Trial Motion, Memorandum and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 981987 (E.D.Tex.)
(Cite as: 2006 WL 981987 (E.D.Tex.))

Affidavit) Reply Brief of 02 Micro International Limited'S Motion to Enhance Damages and Motion to Declare the Case Exceptional (Feb 24, 2006)Original Image of this Document (PDF)

• 2006 WL 813856 (Trial Motion, Memorandum and Affidavit) 02 Micro International Limited'S Opposition to Taiwan Sumida'S Motion for New Trial (Feb. 6, 2006)Original Image of this Document (PDF)

• 2006 WL 813857 (Trial Motion, Memorandum and Affidavit) 02 Micro International Limited'S Opposition to Taiwan Sumida'S Amended Renewed Motion for Judgment as a Matter of Law (Feb. 6, 2006)Original Image of this Document (PDF)

• 2006 WL 813858 (Trial Motion, Memorandum and Affidavit) Taiwan Sumida'S Sur-Reply to 02 Micro'S Motion for Permanent Injunction (Feb 6, 2006)Original Image of this Document (PDF)

• 2005 WL 3691550 (Verdict and Settlement Summary) (Nov 17, 2005)

• 2005 WL 3733144 (Trial Motion, Memorandum and Affidavit) TSE's Motion for Judgment as a Matter of Law After the Close of All Evidence and Memorandum in Support of Thereof (Nov. 16, 2005)Original Image of this Document (PDF)

• 2005 WL 3337263 (Trial Motion, Memorandum and Affidavit) Defendant Taiwan Sumida Electronics, Inc's Response to O2 Micro International Ltd's Motion for Partial Reconsideration (Nov 9, 2005)Original Image of this Document (PDF)

• 2005 WL 3337259 (Trial Motion, Memorandum and Affidavit) O2 Micro International Limited's Motion for Partial Reconsideration of the Court's Order Dated November 3, 2005 Granting Defendant's Motion for Summary Judgement Number 1 (Collateral Estoppel/Only 1f) (Nov 7, 2005)Original Image of this Document (PDF)

• 2005 WL 2666682 (Trial Motion, Memorandum and Affidavit) Plaintiff O2 Micro International Limited's Motions in Limine (Aug. 24, 2005)Original Image of this Document (PDF)

• 2005 WL 1593975 (Trial Motion, Memorandum and Affidavit) Reply to Plaintiff's Opposition to Summary Judgment #3 (Claims 39-40) (May 26, 2005)Original Image of this Document (PDF)

• 2005 WL 1365280 (Trial Motion, Memorandum and Affidavit) Plaintiff's Opposition to Defendant's Motion for Summary Judgment Number 5 (Marking) (May 9, 2005)Original Image of this Document (PDF)

• 2005 WL 1365282 (Trial Motion, Memorandum and Affidavit) Plaintiff's Opposition to Summary Judgment Number 3 (Invalidity of Claims 39 & 40) (May 9, 2005)Original Image of this Document (PDF)

• 2005 WL 1365277 (Trial Motion, Memorandum and Affidavit) Defendant's Motion to Strike Plaintiff's Amended Preliminary Infringement Contentions (Apr. 25, 2005)Original Image of this Document (PDF)

• 2005 WL 1365272 (Trial Motion, Memorandum and Affidavit) Declaration of Rick Chang in Support of O2 Micro's Response to Taiwan Sumida's Motion for Continuance (Apr. 18, 2005)Original Image of this Document with Appendix (PDF)

• 2005 WL 3733145 (Trial Motion, Memorandum and Affidavit) Taiwan Sumida's Motion for New Trial (Jan. 9, 2005)Original Image of this Document (PDF)

• 2005 WL 3733146 (Trial Motion, Memorandum and Affidavit) TSE's Renewed Motion for Judgment as a Matter of Law (Jan 9, 2005)Original Image of this Document (PDF)

• 2005 WL 3733147 (Trial Motion, Memorandum and Affidavit) TSE's Amended Renewed Motion for Judgment as a Matter of Law (Jan 9, 2005)Original Image of this Document (PDF)

• 2005 WL 3818668 (Trial Motion, Memorandum and Affidavit) Taiwan Sumida's Opposition to 02 Micro's Motion for Permanent Injunction (Jan. 9, 2005)Original Image of this Document (PDF)

• 2004 WL 3358990 (Trial Motion, Memorandum and Affidavit) Taiwan Sumida Electronics, Inc's Reply to O2 Micro International Limited's Opposition to Motion to Transfer, or in the Alternative, to Stay This Action (Sep. 2, 2004)Original Image of this Document (PDF)

• 2004 WL 3685098 (Trial Motion, Memorandum and Affidavit) Taiwan Sumida Electronics, Inc's Reply to O2 Micro International Limited's

© 2006 Thomson/West. No Claim to Orig. U.S Govt. Works

Page 6

Slip Copy
Slip Copy, 2006 WL 981987 (E.D.Tex.)
(Cite as: 2006 WL 981987 (E.D.Tex.))

Opposition to Motion to Transfer, or in the Alternative, to Stay This Action (Sep. 2, 2004)Original Image of this Document (PDF)

• 2004 WL 3359860 (Trial Motion, Memorandum and Affidavit) 02 Micro International Limited's Opposition to Taiwan Sumida Electronics Inc.'s Motion to Transfer, or in the Alternative, to Stay This Action (Aug. 23, 2004)Original Image of this Document (PDF)

• 2004 WL 3359856 (Trial Pleading) Sumida Corporation and Taiwan Sumida Electronics, Inc. Answer to O2 Micro's Complaint (Apr. 5, 2004)Original Image of this Document (PDF)

• 2004 WL 3685099 (Trial Pleading) Sumida Corporation and Taiwan Sumida Electronics, Inc. Answer to O2 Micro's Complaint (Apr. 5, 2004)Original Image of this Document (PDF)

• 2003 WL 24254087 (Trial Motion, Memorandum and Affidavit) Motion for Entry of a Protective Order (Sep. 30, 2003)Original Image of this Document with Appendix (PDF)

• 2003 WL 24080473 (Trial Motion, Memorandum and Affidavit) O2 Micro International, Limited's Surreply to Taiwan Sumida Electronics Inc.'s Reply Memorandum in Support of Motion to Dismiss for Lack of Personal Jurisdiction (Jun. 17, 2003)Original Image of this Document (PDF)

• 2003 WL 24254086 (Trial Motion, Memorandum and Affidavit) O2 Micro International, Limited's Surreply to Taiwan Sumida Electronics Inc.'s Reply Memorandum in Support of Motion to Dismiss for Lack of Personal Jurisdiction (Jun. 17, 2003)Original Image of this Document (PDF)

• 2003 WL 24080466 (Trial Motion, Memorandum and Affidavit) Sumida Corporation's Reply Memorandum in Support of Motion to Dismiss for Lack of Personal Jurisdiction (May 28, 2003)Original Image of this Document with Appendix (PDF)

• 2003 WL 24254084 (Trial Motion, Memorandum and Affidavit) Sumida Corporation's Reply Memorandum in Support of Motion to Dismiss for Lack of Personal Jurisdiction (May 27, 2003)Original Image of this Document with Appendix (PDF)

• 2003 WL 24254085 (Trial Motion, Memorandum and Affidavit) Taiwan Sumida Electronics Inc.'s Reply Memorandum in Support of Its Motion to Dismiss for Lack of Personal Jurisdiction (May 27, 2003)Original Image of this Document with Appendix (PDF)

• 2003 WL 24080467 (Trial Motion, Memorandum and Affidavit) Taiwan Sumida Electronics Inc.'s Reply Memorandum in Support of Its Motion to Dismiss for Lack of Personal Jurisdiction (May 23, 2003)Original Image of this Document with Appendix (PDF)

• 2003 WL 24254083 (Trial Motion, Memorandum and Affidavit) O2 Micro International, Limited's Response to Sumida Corporation and Taiwan Sumida Electronics, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction (May 9, 2003)Original Image of this Document with Appendix (PDF)

• 2003 WL 24254082 (Trial Motion, Memorandum and Affidavit) Taiwan Sumida Electronics, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction and Memorandum of Points and Authorities in Support Thereof (Apr. 23, 2003)Original Image of this Document (PDF)

• 2003 WL 24254081 (Trial Motion, Memorandum and Affidavit) Sumida Corporation's Motion to Dismiss for Lack of Personal Jurisdiction and Memorandum of Points and Authorities in Support Thereof (Apr. 8, 2003)Original Image of this Document (PDF)

• 2003 WL 24080458 (Trial Pleading) Complaint for Patent Infringement (Jan. 6, 2003)Original Image of this Document with Appendix (PDF)

• 2003 WL 24254088 (Trial Pleading) Complaint for Patent Infringement (Jan. 6, 2003)Original Image of this Document with Appendix (PDF)

• 2:03cv00007 (Docket) (Jan. 6, 2003)

• 2003 WL 24094276 (Trial Motion, Memorandum and Affidavit) Motion for Summary Judgment Number 3 (Invalidityof Claims 39 and 40) (2003)Original Image of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.

Page 1

Not Reported in F.Supp., 1988 WL 155634 (D.Del.)
(Cite as: Not Reported in F.Supp.)

C
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
JOHNSON & JOHNSON CONSUMER
PRODUCTS, INC., Plaintiff,
v.
ORMCO CORPORATION, Defendant,
v.
JOHNSON & JOHNSON CONSUMER
PRODUCTS, INC., Counterclaim Defendant.
Civ.A. Nos. 87-341-JJF, 87-547-JJF.

Sept. 29, 1988.

Stephen P. Judlowe, Francis J. Murphy, Eve Kunen,
and Rita Irani, of Hopgood, Calimafde, Kalil,
Blaustein & Judlowe, New York City, James M.
Mulligan, Jr., of Connolly, Bove, Lodge & Hutz,
Wilmington, Del., for plaintiff and counterclaim
defendant.
Paul C. Van Slyke, of Pravel, Gambrell, Hewitt,
Kimball & Krieger, Houston, Tex., Bruce M.
Stargatt, and Richard H. Morse, of Young,
Conaway, Stargatt & Taylor, Wilmington, Del., for
defendant.

OPINION
FARNAN, District Judge.

INTRODUCTION

*1 Johnson & Johnson Dental Products Company ("
Dental Products") brought an action in this Court on
June 23, 1987, seeking a declaratory judgment that
Ormco Corporation's ("Ormco") United States
Patent No. 4,415,330 ("the Daisley Patent") is
invalid. Ormco then brought a counterclaim
against Dental Products, Johnson & Johnson, and "A
"-Company (referred to collectively as "Johnson &
Johnson") alleging that Johnson & Johnson's new
STARFIRE® orthodontic bracket infringes the
Daisley Patent.

On June 24, 1987, Dental Products filed an action
in the Central District of California alleging that
Ormco willfully infringed United States Patent No.
4,639,218 ("the Jones Patent") which is owned by
Dental Products, and requested certain injunctive
and monetary relief. The California action was
transferred to this Court on October 6, 1987. This
Court consolidated the cases for purposes of
discovery and for trial scheduled to commence on
October 3, 1988.

Both Johnson & Johnson and Ormco have filed
motions for a preliminary injunction. Johnson &
Johnson seeks an Order preventing Ormco from
manufacturing      and      selling      Ormco's
GEMorthodontic bracket. Johnson & Johnson
asserts that the GEM® bracket infringes the Jones
Patent. Similarly, Ormco requests that Johnson &
Johnson be prevented from manufacturing and
selling its STARFIRE® orthodontic bracket.
Ormco asserts that the STARFIRE® bracket
infringes on the Daisley Patent. For the reasons
that follow, both requests for a preliminary
injunction will be granted.

FACTS

Both Ormco and Johnson & Johnson are
manufacturers and sellers of various orthodontic
products. The products of importance in these
actions are Johnson & Johnson's STARFIRE®
bracket and Ormco's GEM® bracket. Both are
orthodontic brackets made of synthetic sapphire
(monocrystalline alumina).

Orthodontic brackets are used to straighten or move
teeth that have an improper position or orientation
in the mouth. The brackets are attached to each
tooth and a wire called the arch wire is "woven"
through the brackets and used to exert forces to
move the teeth. Traditionally, brackets were made
of metal. The orthodontic industry has long sought
a bracket made of either a clear substance such as

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1988 WL 155634 (D.Del.)
(Cite as: Not Reported in F.Supp.)

plastic or a substance closer in color to the tooth such as ceramic so that braces would not be so unsightly. The sapphire brackets such as the STARFIRE® and GEM® brackets are clear brackets which apparently have more potential than metal, plastic or ceramics both aesthetically and in their strength.

Generally, the Jones Patent claims an orthodontic bracket made of single crystal alumina. Claims 1, 2, 3 and 4 are representative of the patent and read as follows:
1. An orthodontic bracket comprising a base member for attaching to a tooth and a body member extending from the base member, said body member including walls defining an arch wire groove, wherein said walls comprise crystalline alumina.
2. The orthodontic bracket of Claim 1 wherein said bracket is made entirely of crystalline alumina.
*2 3. The orthodontic bracket of Claim 1 wherein said crystalline alumina is crystalline alpha-alumina.
4. The orthodontic bracket of Claim 2 wherein said crystalline alumina is crystalline alpha-alumina.

The Jones Patent encompasses various types of brackets all made of crystalline alumina.

The Daisley Patent does not claim an orthodontic bracket made of any specific material, but teaches a certain configuration of the bracket which shows a rhomboidal shape. The bracket has one or two tie wings which define a slot through which the archwire is introduced. The entire bracket assembly is then affixed to the tooth. While the binding pad is generally rectangular, the bracket assembly and the tie wings form a rhomboidal configuration. The shape of the tie wings allows for easier reference to the tooth long axis and the occlusal plane without sacrificing strength. The rhomboidal shape allows the orthodontist to affix the bracket to the tooth more easily than a bracket of rectangular shape because the angles provide references for alignment of the bracket with the occlusal plane and the crown long axis while still properly placing the bracket on the tooth. Thus, the orthodontist is able to place the orthodontic bracket more accurately. The Daisley Patent specifies certain recommended angles for placement

of the bracket for each maxillary (upper) and mandibular (lower) tooth. The Daisley Patent has only one claim and it reads as follows:
1. An orthodontic bracket assembly for use with an archwire to impart corrective forces on a tooth, including: a base pad for attachment to the tooth, a distal tie wing fixed to said base pad and including a gingival tip and an occlusal tip defining between them an arch wire slot, a mesial tie wing fixed to said base pad and including a gingival tip and an occlusal tip defining between them an arch wire slot, each of said distal a:nd mesial tie wings having parallel distal and mesial sides, said arch wire slots being in mutual alignment and providing a reference line for orientation parallel to the occlusal plain of a patient, said sides of said tie wings are inclined at an oblique angle to said reference line, whereby said tie wings can be generally vertically disposed parallel to the tooth long axis and still be inclined at an oblique angle to said reference line,
said gingival and said occlusal tips of said tie wings having respectively top and bottom surfaces which are in mutual alignment parallel to said reference line and substantially equidistant therefrom,
whereby said tie wings together form a rhomboidal configuration and the axis of said arch wire slots bisects said tie wings so that said gingival tips and said occlusal tips are of equal size.

Johnson & Johnson's STARFIRE® bracket is made of sapphire and it is of rhomboidal shape. Ormco claims that the rhomboidal shape infringes on the Daisley Patent. The GEM® bracket, manufactured by Ormco, is not of rhomboidal shape but is made of sapphire. Johnson & Johnson claims that since the GEM® bracket is made of sapphire it infringes on the Jones patent. However, rather than a patent infringement dispute, this case appears to be a cross-licensing disagreement as each party wants to use the subject of the other party's patent in order to make an aesthetically better orthodontic bracket.

STANDARD FOR GRANTING PRELIMINARY INJUNCTION

*3 Although traditionally a strict standard has been

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1988 WL 155634 (D.Del.)
(Cite as: Not Reported in F.Supp.)

Page 3

invoked to evaluate whether a preliminary injunction should be granted in patent infringement cases, the Federal Circuit has definitively stated that the standards applied in patent cases should be no more stringent than those applied in other areas of the law. *H.H. Robertson, Co. v. United Steel Deck, Inc.*, 820 F.2d 384, 387 (Fed. Cir.1987). To be successful on a motion for a preliminary injunction the movant must show (1) a reasonable likelihood of success on the merits and (2) that the movant will suffer irreparable harm if a preliminary injunction is not granted. The court should also take into consideration the possible harm to others if the preliminary injunction is granted (more generally known as balancing the hardships) and the public interest. *Id. See also Upjohn Co. v. Riahom Corp.*, 641 F.Supp. 1209, 1217 (D. Del 1986) (citing *Roper Corp. v. Litton Systems, Inc.*, 757 F.2d 1266 (1985)).

In this action, then, it is each patentee's burden to show a reasonable likelihood that it will prevail at trial on the issues of validity and infringement. In addition, each patentee must show that it will suffer irreparable harm in the absence of granting a preliminary injunction and that the balance of the hardships and the public interest favor the granting of a preliminary injunction. The presumptions and the burdens that would inure at trial on the merits must also be used when considering a motion for a preliminary injunction. *H.H. Robertson, Co.*, 820 F.2d at 388 (citing *Anderson v. Liberty Inc.*, 106 S.Ct. 2505, 2512 (1986)). At trial the party who is claiming the patent is invalid has the burden to prove that the patent is invalid. However, on a motion for a preliminary injunction, the patentee must show that there is a reasonable likelihood that the other party will not carry that burden. As for infringement, it is the patentee's burden both at preliminary injunction and at trial to show that its patent is infringed

The Court of Appeals for the Federal Circuit has established that "where validity and continuing infringement have been clearly established . . immediate irreparable harm is presumed." *Smith International v. Huges Tool Co.*, 718 F.2d 1573, 1581 (1983) This presumption will not be invoked if only a reasonable likelihood of success

on the merits is proven. *Roper Corp. v. Litton Systems, Inc.*, 757 F.2d at 1271. Therefore, if the patentee shows that there is a reasonable likelihood of success on validity and infringement, but not a clear showing of success on the merits, the patentee must make a separate showing of irreparable harm. *Roper*, 757 F.2d at 1272. *See also Upjohn Co. v. Riahom Corp.*, 641 F.Supp. at 1217. Finally, all four of the factors must be considered and weighed.

## DISCUSSION

Since both parties have moved for a preliminary injunction, each party must show the likelihood of success on the merits of both the validity and the infringement issues In this case, Johnson & Johnson must show that Ormco will not carry its burden of proving the invalidity of the Jones Patent and that Ormco, by manufacturing and selling the GEM® bracket, has infringed on the valid Jones Patent. Similarly, Ormco must show that Johnson & Johnson will not carry its burden at trial of proving that the Daisley Patent is invalid, and that by manufacturing the STARFIRE® bracket, Johnson & Johnson has infringed on the valid Braisley Patent. Since each party has asserted an action against the other party's patent, the Court will analyze each patent separately. However, the applicable law in each case is identical, with the exception of Ormco's claim that the Jones Patent is unenforceable due to Johnson & Johnson's alleged breach of their duty of candor when prosecuting the Jones Patent.

*4 A patent is presumed valid and one who challenges the validity of a patent has the burden of establishing its invalidity. 35 U.S.C. § 282. *See Roper Corp. v. Litton Systems, Inc.*, 757 F.2d 1266, 1270 (Fed Cir.1985). However, this presumption of validity is procedural and not substantive. It requires "the decision maker to employ a decisional approach that starts with acceptance of the patent claims as valid and that looks to the challenger for proof of the contrary." *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1534 (Fed. Cir.1983) The burden of persuasion is always upon the party asserting invalidity. *American Hoist & Derrick Co v. Sowa & Sons*, 725 F.2d 1350, 1358 (Fed

© 2006 Thomson/West. No Claim to Orig. U.S Govt. Works.

Not Reported in F Supp

Not Reported in F Supp , 1988 WL 155634 (D Del )
(Cite as: Not Reported in F.Supp.)

Cir 1984). In a motion for a preliminary injunction, therefore, the movant has the burden of showing that there is a reasonable likelihood that the attack on validity will fail. *H H Robertson Co v. United Steel Deck, Inc*, 820 F.2d 384, 387 (Fed. Cir 1987).

There are a number of ways to attack the validity of a patent However, in this action both parties claim that the inventions challenged were obvious under 35 U.S.C. § 103 in light of the prior art, and, therefore, the patents are invalid under 35 U.S.C. 5282(2). In addition, Ormco claims that the Jones Patent is invalid because Johnson & Johnson breached its duty of candor when it presented the prior art to the Patent and Trademark Office ("PTO" ) Of course, each party counters that the most significant prior art was before the Patent Office at the time of application, and that the inventions were not obvious in light of the prior art.

Section 103 of Title 35 of the United States Code provides, in part, that "a patent may not be obtained ... if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains " 35 U.S.C § 103. An analysis under § 103 must begin with the criteria set forth in *Graham v. John Deere Co*. 383 U.S 1 (1965).
Under Section 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined Such secondary considerations as commercial success, long felt but unresolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy.

383 U.S at 17, 18. The challenger's burden of persuasion is less easily carried when the prior art relied upon consists only of that considered by the

patent examiner. *Hughes Aircraft Co v. United States*, 717 F.2d 1351, 1359 (Fed Cir 1983) (citing *Solder Removal Co v ITC*. 582 F 2d 628, 633 (Cust. & Pat. App 1978)). However, the challenger's burden may be more easily carried if the prior art introduced is more relevant than that which was before the examiner. *Stratoflex*, 713 F 2d at 1534. Furthermore, evidence of secondary considerations must always be considered before the final determination of obviousness if such evidence is presented. *Id* at 1538 (citing *In Re Sernaker*. 702 F 2d 989 (Fed Cir 1983))

*5 When a court evaluates whether a patent is valid in light of prior art, "a court must view the prior art without reading into that art the patent's teachings . and must analyze and consider the references as a whole." *Vandenberg v Dairy Equipment Co*, 740 F 2d 1560, 1564 (Fed. Cir 1984) (citing *In Re Sponoble*, 405 F.2d 578, 585 (C.C.Pa.1969); *In Re Shuman*, 361 F.2d 1008, 1012 (C.C.Pa.1966))
Any facts that support a determination of obviousness must be proven by clear and convincing evidence. *Carella v Starlight Archery and Proline Co*, 804 F 2d 135, 138 (Fed. Cir.1986) (citing *RCA Corp v Applied Digital Data Systems, Inc*, 730 F 2d 1440, 1444 (Fed. Cir.1984))

The second step in the analysis of likelihood of success on the merits is to analyze the issue of infringement. There are essentially three steps to determining whether a patent is being infringed The court must (1) interpret the language of the patent claim; (2) assess the nature of the accused infringer's acts; and (3) apply the claims as construed to those acts *Upjohn Co v Riahom Corp*.. 641 F Supp 1209, 1219 (D Del.1986) (citing *Roper Corp v Litton Systems, Inc*, 757 F 2d at 1270-71)) It is the burden of the patentee to show that its patent has been infringed

If the court determines that there has been a clear showing of validity and infringement then irreparable harm may be presumed. *Smith International v. Hughes Tool Co*, 718 F.2d 1573, 1581 (Fed Cir.1983). However, if the patentee merely carries its burden of showing that there is a reasonable likelihood of success on the merits, and does not offer enough evidence for a clear showing

© 2006 Thomson/West No Claim to Orig. U S Govt Works

Not Reported in F Supp.

Not Reported in F.Supp , 1988 WL 155634 (D.Del )
(Cite as: Not Reported in F.Supp.)

Page 5

of validity and infringement then a separate showing of irreparable harm is necessary. Finally, the Court must consider the balance of the hardships as well as the public interest before the Court can grant a preliminary injunction All four factors must then be considered and weighed against one another

### A The Daisley Patent

#### 1. Likelihood of Success on the Merits

##### Validity

Johnson & Johnson states that Ormco cannot demonstrate a likelihood of success on the merits on the issue of validity because Johnson & Johnson will introduce at trial prior art and prior sales more relevant than the prior art considered by the Patent Office. Johnson & Johnson states that its maxillary first molar convertible combination bracket/triple buccal tube ("TBT"), which is rhomboidal in shape, was used as early as 1975, as evidenced by a catalog of "A" Company's. The TBT is an orthodontic bracket mounted on the maxillary first molar. Johnson & Johnson has submitted with its affidavits pictures of the TBT allegedly showing its rhomboidal shape. Johnson & Johnson states that since this evidence was not considered by the patent examiner as prior art and clearly shows a rhomboidal shaped bracket that predates the issuance of the Daisley Patent, it proves the invalidity of the Daisley Patent

Ormco counters, however, that the evidence offered by Johnson & Johnson is not valid because it is inadmissible at trial Furthermore, Ormco asserts that neither the TBT nor the catalog offers the teachings of the Daisley Patent.

*6 The Daisley Patent itself sets forth an entire system of placement of its rhomboidal shaped brackets, and an explanation of how the rhomboidal shape assists in orthodontics Furthermore, the evidence offered by Ormco particularly states that the rhomboidal shaped bracket assists in the

placement of orthodontic appliances particularly on the incisors and the cuspids since those teeth are rhomboidal. The molars, on the other hand, are generally rectangular in shape and, therefore, the rhomboidal configuration is not as advantageous on the molars as it is on the front teeth The TBT is designed exclusively for the first molar, a tooth which the evidence shows does not necessarily benefit by the rhomboidal shape.

Although the TBT may generally show a rhomboidal shape, Johnson & Johnson offers no evidence that this rhomboidal shape was to provide the function that the Daisley Patent provides. The Daisley Patent offers two tie wings which also facilitate in the placement of the bracket as well as various angulations for each particular tooth There is no mention in Johnson & Johnson's literature that the TBT's rhomboidal shape has any function whatsoever, if the rhomboidal shape actually exists. (The Court cannot state conclusively that the photographs offered show a rhomboidal shaped bracket). The photographs and catalog excerpts that Johnson & Johnson offers as evidence are not nearly sufficient to show that prior art existed which rendered the invention obvious. At this juncture the Court cannot find that the TBT had any bearing on the Daisley invention or that it encompasses the claim of the Daisley invention. In comparing the TBT to the Daisley Patent claim, it is clear that the TBT does not anticipate each element of the Daisley Patent as would be required under 35 U.S.C. § 102(g). *Hybritech v Monoclonal Antibodies, Inc* , 802 F 2d 367, 379 (Fed Cir 1986).

The evidence of the TBT is all that Johnson & Johnson offers at this juncture to establish the invalidity of the Daisley Patent. The Court finds that Ormco has shown a likelihood of success on the merits on the issue of validity because Johnson & Johnson's evidence of the TBT is not sufficient to rebut the presumption of validity under § 282. Furthermore Ormco also shows substant ial direct technical evidence that establishes the validity of the patent. Ormco has offered various affidavits evidencing expert opinion of the patent's novelty and usefulness. Finally, Ormco has introduced evidence of public acquiescence since Ormco has granted at least four licenses under the patent and,

© 2006 Thomson/West No Claim to Orig U S Govt Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1988 WL 155634 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

in fact, Johnson & Johnson has negotiated for a license in the past. The Court concludes that this evidence is enough to establish a strong showing of validity.

### Infringement

Ormco asserts that the sale of the STARFIRE® bracket manufactured by Johnson & Johnson infringes the Daisley Patent. Ormco initially asserted in its motion for a preliminary injunction that Johnson & Johnson would concede infringement. Recently Ormco asserted that Johnson & Johnson's answers to certain interrogatories also conceded infringement. However, Johnson & Johnson strenuously disputes that the STARFIRE® bracket infringes on the Daisley Patent. Johnson & Johnson claims that since the STARFIRE® bracket is one extruded piece it does not have a base pad which is an element of the Daisley claim. However, the Jones Patent makes direct reference to a base and although the STARFIRE® bracket is one piece, it is obvious that it has a base for attachment to the tooth. There is no requirement in the Daisley Patent that the base pad be a component completely separate from the rest of the bracket assembly. There is no indication in the claim itself that a bracket made of one piece would not satisfy the elements of the patent claim. The Court finds persuasive Ormco's assertion that the STARFIRE® bracket directly infringes on the Daisley Patent. Ormco has demonstrated this infringement by supplying the Court with a tracing of Johnson & Johnson's product that clearly shows the rhomboidal configuration and the evidence that each bracket has a degree of angulation suggested by Johnson & Johnson that is within the tolerances of those suggested in the Daisley Patent. Ormco has supplied to the Court a copy of this tracing and next to it has placed the claim of the Daisley Patent. By way of illustration, Ormco placed numerical references on the tracing which correspond directly to each element of the Daisley claim. At this juncture, for the purposes of preliminary injunction, the Court finds this evidence persuasive and concludes that it clearly establishes that the STARFIRE® bracket infringes on the Daisley

Patent.

### 2. Irreparable Harm

*7 Having determined that Ormco has shown a reasonable likelihood to succeed on the merits and has provided evidence to clearly establish both validity and infringement, the Court concludes that the presumption of irreparable harm under *Smith International v Hughes Tool Co.*, 718 F.2d 1573 (Fed.Cir.1983), should be invoked. Of course, the presumption is rebuttable if Johnson & Johnson can show that irreparable harm to Ormco would not occur if the motion for a preliminary injunction is denied.

The Court disagrees with Johnson & Johnson's statement that the grant of licenses is incompatible with the right to exclude that is fundamental to every patent owner. While Johnson & Johnson may be correct that Ormco is not now selling a comparable product and therefore is not losing market share on this specific product, Ormco's argument that Johnson & Johnson is gaining in the market and that Ormco's reputation may be harmed by the continuation of the sale of the STARFIRE® bracket is more persuasive to the Court. The evidence offered by Johnson & Johnson is not sufficient to rebut the presumption of irreparable harm. Ormco is correct in stating that just because it is a licensor does not mean that they and, in fact, all licensors have given up the right to a preliminary injunction. *See Atlas Powder Co. v. Ireco Chemicals*, 773 F.2d 1230, 1233 (1985). Finally, the law in *Smith International, supra*, clearly states the policy of the United States Court of Appeals for the Federal Circuit that a strong showing of validity and infringement is enough to show presumption of irreparable harm.

### 3. Balance of Hardships

Ormco has shown that it will suffer harm without the injunction. While the Court believes that Johnson & Johnson will certainly be affected by the grant of the preliminary injunction, the Court does not believe that the balance of hardships weighs in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1988 WL 155634 (D.Del.)
(Cite as: Not Reported in F.Supp.)

its favor to the extent that the preliminary injunction should be denied.. Johnson & Johnson will simply have to cease selling its STARFIRE® bracket in the rhomboidal shape. Since Ormco has shown evidence that Johnson & Johnson directly infringes the Daisley Patent through its production of the STARFIRE® bracket, the balance of equities clearly indicates that a preliminary injunction should be granted Johnson & Johnson's claim that Ormco is trying to keep Johnson & Johnson out of the sapphire bracket business is blatantly incorrect since Johnson & Johnson holds the patent for the sapphire bracket and, in fact, could produce the bracket in another shape. Since the Court has found a strong showing of validity and infringement' the balance of the equities weighs in favor of granting the preliminary injunction.

### 4  Public Interest.

While the public may have an interest in a rhomboidal shaped sapphire bracket, which at present is produced only by Johnson & Johnson, the public interest here is not strong enough to warrant denying the preliminary injunction when all the other evidence so strongly points in favor of granting the injunction. Furthermore, the public has a strong interest in preventing infringement of valid patents. Finally, even if the public has equal interests in both the grant and the denial of a preliminary injunction, the balance of the public interest with all the other elements clearly indicates that the preliminary injunction should be granted.

### B. The Jones Patent.

#### 1. Likelihood of Success on the Merits.

##### Validity.

**\*8** The Jones Patent discloses and claims an orthodontic bracket that is made of synthetic sapphire. Synthetic sapphire is a single crystal (monocrystalline) form of aluminum oxide (alumina). The product currently produced as a

result of this patent is Johnson & Johnson's STARFIRE®. Ormco challenges the validity of the Jones Patent stating that it is overbroad, that it is invalid under 35 U.S.C. §§ 102(a), (g), and that its invention was obvious in light of the prior art. To substantiate its claim of invalidity, Ormco states that certain persons in the Ormco research and development division had already produced prototypes of a sapphire bracket in 1979, approximately three years prior to the beginning of the research at Johnson & Johnson Furthermore, Ormco states that the Hirabayashi invention, which is a patent for sapphire dental implants, also shows that the Jones invention was obvious. In addition, Ormco claims that the Hirabayashi Patent shows that Johnson & Johnson breached its duty of candor when it presented its patent application to the examiner.

The Court has examined all of the papers and supporting affidavits, as well as the evidence of prior art submitted by the parties in support of their positions on the motions for preliminary injunction. First, there is no evidence offered by Ormco to substantiate the claim that the Jones Patent is overbroad. Ormco never specifically addressed this allegation and, in fact, in its papers Ormco claims only that the Jones invention is a substitution of the sapphire for a known material. The Court cannot accept as true Ormco's statement that Dr. Jones knew the strength of the material and only set out to find how to mass produce the end product. In fact, it appears that the strengths were not known to the industry and sapphire's properties were never tested nor used in orthodontics. The Court therefore concludes that Ormco's arguments that the Jones Patent is overbroad and a mere substitution of materials cannot rebut the presumption of validity.

Ormco's second argument, that it had actually produced the sapphire bracket before the Jones application was even made, thereby rendering the patent invalid under §§ 102(a), (g), is meritless. Ormco claims that one of its employees, Mr Andreikio, purchased sapphire and made prototype brackets in 1979. Mr. Andreikio bonded the brackets onto his teeth to determine reactions to the material's aesthetics However, Ormco conducted a feasibility study and decided later in 1980 that it

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F Supp.

Not Reported in F Supp., 1988 WL 155634 (D.Del.)
(Cite as: Not Reported in F.Supp.)

would not pursue the sapphire bracket; it instead pursued developing and marketing the lingual orthodontic system.

Title 35, Section 102(a) bars a patent where "the invention was known or used by others in this country ... before the invention thereof by the applicant for the patent " The "known or used" language means knowledge or use that is accessible to the public. *Carella v. Starlight Archery and Pro Line Co*, 804 F.2d 135, 139 (Fed. Cir 1986). Prior knowledge or use must also be reduced to practice. *See Connecticut Valley Enterprises, Inc. v. United States*, 348 F.2d 949, 951-52 (Ct Cl 1965). At this stage of the proceedings, Ormco has offered no evidence whatsoever that the Andreikio research was presented to the public or that Johnson & Johnson had access to this information. Moreover, there is no evidence that the brackets were ever used for their intended purpose-to aid in the movement of teeth-which leads the Court to conclude that the "prior invention" was never reduced to practice Thus, the Court concludes that the Andreikio experiments do not satisfy the criteria under § 102(a)

*9 Section 102(g) bars a patent where "before the applicant's invention thereof the invention was made in this country by another who had not abandoned, suppressed, or concealed it " 35 U.S.C. § 102(g). Reduction to practice is a factor in determining priority of invention. *Id* However, there is no personal knowledge requirement under § 102(g) *See E. I DuPont de Nemours & Co. v. Phillips Petroleum Co*, 849 F.2d 1430, 1436-37 (Fed. Cir 1988). Again, the Court finds that the Andreikio prototypes were not reduced to practice. In addition, the Andreikio work was obviously abandoned or suppressed because it was first pursued in 1979 and not resurrected until 1983 or 1984. Ormco made whatever business decisions were necessary when the Andreikio work was first done and, as a result, that work was abandoned. Therefore, the Court concludes that Ormco has not rebutted the presumption of validity to which the Jones Patent is entitled

Ormco also asserts that the Hirabayashi Patent, U S Patent No. 4,122,605 operates as prior art which

renders the invention in the Jones Patent obvious Ormco argues that the Hirabayashi Patent was not fully before the patent examiner because Johnson & Johnson did not disclose its full claim. The Court finds this argument 'unpersuasive First, Johnson & Johnson clearly listed the Hirabayashi Patent in the prior art section of the Jones Patent. Ormco claims that describing the Hirabayashi Patent as a " somatic element" as opposed to a "dental implant" is misleading. However, Mr. Peshock, the patent examiner for the Jones Patent, states in his affidavit his familiarity with this area of inventions Finally, even if the Court found that somehow Johnson & Johnson had misled the patent examiner, the Court would still have to conclude at this juncture that the Hirabayashi Patent has no effect on the invention claimed in the Jones Patent. The invention in the Hirabayashi Patent appears to be only a screw type implant pin It teaches nothing about the stress factors important to the orthodontic bracket, nor does it make any reference to the desirability to have this type of material in an orthodontic bracket. The patent gives no indication of the material's feasibility in orthodontics The Court therefore must conclude that in examining the Hirabayashi prior art there is no evidence that it makes the Jones invention obvious

Subsumed in this discussion of the Hirabayashi invention is Ormco's assertion that the Jones Patent is unenforceable because the inventors breached their duty of candor to the Patent and Trademark Office The Court rejects this assertion. The Court concludes that there is no evidence of any fraud, or any intention to mislead the Patent Office especially considering that the Hirabayashi Patent was listed as prior art. As the United States Court of Appeals for the Federal Circuit stated in *J P. Stevens & Co., Inc. v. Lex Tex Ltd., Inc*
Conduct before the PTO that may render a patent unenforceable ["inequitable conduct"] is broader than "common law fraud" It includes failure to disclose material information, or submission of false material information, with an intent to mislead . "Inequitable conduct" requires proof by clear and convincing evidence of a threshold degree of materiality of the nondisclosed or false information . Inequitable conduct also requires proof of a threshold intent Once the thresholds of

© 2006 Thomson/West No Claim to Orig U S Govt Works

Not Reported in F.Supp                                                    Page 9

Not Reported in F.Supp., 1988 WL 155634 (D.Del.)
(Cite as: Not Reported in F.Supp.)

materiality and intent are established, the court must balance them and determine as a matter of law whether the scales tilt to a conclusion that inequitable conducted occurred.

*10 *J.P. Stevens & Co.*, 747 F.2d at 1559-60 (citations omitted). It is impossible at this juncture to conclude that Ormco has presented clear and convincing evidence of a threshold degree of materiality of the so-called nondisclosed or false information. On the evidence, the Court is convinced that there is not any undisclosed or false information at all.

On the issue of validity and enforceability, therefore, the Court must conclude that there is a reasonable likelihood that Johnson & Johnson will carry its burden at trial. Johnson & Johnson has also offered evidence to establish that there is a strong showing of validity. Johnson & Johnson states that the most significant prior art was before the Patent Office, the patent examiner was very experienced, having researched these classes of patents on numerous occasions, that the testimony of Ormco's own witnesses indicates the validity of the patent, and that all the secondary considerations point to the clear validity of the patent. At this juncture, especially since Ormco has offered no substantive evidence to rebut these assertions of Johnson & Johnson, the Court agrees with Johnson & Johnson. The secondary considerations are particularly strong in this case and as stated in *W.L. Gore & Assoc., Inc. v. Garlock, Inc.*,
The objective evidence of nonobviousness, i.e., the " indicia" of *Graham* ... may in a given case be entitled to more weight or less, depending on its nature and its relationship to the merits of the invention. it may be the most pertinent, probative, and revealing evidence available to aid in reaching a conclusion on the obvious/nonobvious issue. It should when present always be considered as an integral part of the analysis.

*W.L. Gore*. 721 F.2d 1540, 1555 (Fed. Cir.1983) The secondary considerations offered in this case are Ormco's witnesses who state the desirability and long-felt need in the industry for a clear orthodontic bracket, as well as the immediate demand for the sapphire bracket, and Ormco's inability to keep up

with demand on its own GEM® sapphire bracket. The clear bracket is undoubtedly an immediate commercial success. Finally, it is well known in the industry that a search for a clear, more aesthetically appealing bracket has existed for over a decade, and that all previous attempts to produce a such a bracket have failed. The invention claimed in the Jones Patent has indeed met this long-felt need in the industry. In conclusion, the Court finds that considering Ormco's challenges to the validity of the Jones Patent together with the evidence offered by both Ormco and Johnson & Johnson, that Johnson & Johnson has not only met its burden of showing that there is a reasonable likelihood of success on the merits, but has also provided a strong showing of the validity of the Jones Patent.

### Infringement.

Ormco has on many occasions admitted infringement of the Jones Patent through the production and sale of the GEM® bracket. Therefore, there is no need for the Court to analyze the infringement issue. Since Ormco has conceded infringement. the Court finds that Johnson & Johnson has met the required showing for this element.

### 2. Irreparable Harm.

*11 Johnson & Johnson has met its burden of showing a reasonable likelihood of success on the merits both as to validity and infringement. In addition, Johnson & Johnson has offered evidence to satisfy the requirement under *Smith International v. Hughes Tool Co.* and, therefore, irreparable harm is presumed. Ormco's assertion that there is a lack of irreparable harm is insufficient to rebut the presumption. Ormco raises the argument that Johnson & Johnson was late in its motion and therefore cannot possibly be irreparably harmed if the injunction is not granted. An examination of the Complaint shows that Johnson & Johnson sought preliminary relief at the time that it filed the claim. Furthermore, the Court concludes that the time of bringing the motion for a preliminary

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.

Not Reported in F.Supp., 1988 WL 155634 (D.Del.)
(Cite as: Not Reported in F.Supp.)

injunction is irrelevant in considering the actual harm that will be suffered.

### 3. *Balance of Hardships*

While Ormco raises legitimate concerns about the affect that a preliminary injunction would have on its business, the Court does not find that they are sufficient to outweigh the other factors which indicate that a preliminary injunction should be granted. Although the Court recognizes that Ormco has no substitute product and that it cannot even produce a sapphire bracket while the injunction is in place,;he Court has found that the patent is more than likely valid and cannot condone the admitted continuing infringement of a valid patent.

### 4. *Public Interest.*

Once again, the public interest weighs in favor of enforcing a patent that has been shown to be valid at this preliminary juncture. While the Court is sympathetic to Ormco's concerns of ceasing the manufacturing process and laying off employees, they are not concerns that weigh heavily enough to cancel either the public's interest in enforcing the patent, nor in the other findings that indicate that a preliminary injunction is proper.

### CONCLUSION

The court has carefully considered all of the supporting papers and affidavits and other evidence submitted by the parties in support and against the pending motions for preliminary injunction. Having evaluated all of this information and analyzed the legal standards, the Court concludes that both preliminary injunctions should be granted. There is strong indicia that both patents are valid and both patents are infringed. None of the remaining factors weigh strongly enough to overcome the conclusion that each patentee will succeed on the merits and that irreparable harm has been suffered. After considering the four factors which must be weighed in a preliminary injunction

motion with respect to each patent, the Court concludes on the preliminary evidence with which it has been provided for the purposes of these motions that Johnson & Johnson should be prevented from continuing to sell its STARFIRE® bracket as long as it maintains the infringing rhomboidal shape and Ormco should be prevented from continuing to sell its GEM® sapphire bracket.

The parties are requested to submit a proposed form of order consistent with this Opinion, and may submit memoranda on the issue of bond.

D.Del.,1988.
Johnson & Johnson Consumer Products, Inc. v. Ormco Corp.
Not Reported in F.Supp., 1988 WL 155634 (D.Del.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

--- F Supp 2d ----                                              Page 1

--- F.Supp.2d ----, 2006 WL 2398681 (E D Tex.)
(Cite as: --- F.Supp.2d ----)

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,E.D. Texas,Marshall
Division
TIVO INC., Plaintiff,
v.
ECHOSTAR COMMUNICATIONS CORP., et al.
Defendants.
No. 2:04 CV 1 DF.

Aug. 17, 2006.

Alexander C.D. Giza, Andrei Iancu, Adam S.
Hoffman, Christine W S. Byrd, Morgan Chu, Perry
M Goldberg, Richard E. Lyon, Irell & Manella,
Los Angeles, CA, Samuel Franklin Baxter, Attorney
at Law, Marshall, TX, Ben Yorks, Brian Jones,
Michelle Armond, Irell & Manella, Newport Beach,
CA, R Scott Feldmann, Randall I. Erickson, Steven
P. Rice, Van V Nguyen, Crowell & Moring, Irvine,
CA, Garret Wesley Chambers, McKool Smith,
Dallas, TX, for Plaintiff.
Alison M. Tucker, Jason A. Crotty, Rachel Krevans
, Robert M. Harkins, Jr., Harold J. McElhinny,
Kristina Paszek, Morrison & Foerster LLP, San
Francisco, CA, Karl J. Kramer, Emily A. Evans,
Morrison & Foerster, Palo Alto, CA, Damon
Michael Young, John Michael Pickett, Young
Pickett & Lee, Texarkana, TX, for Defendants.

ORDER

FOLSOM, District J.
*1 Before the Court is Plaintiff TiVo's Motion for
Entry of Judgment and Permanent Injunction. Dkt.
No. 733. Also before the Court is Defendants' (1)
Opposition to TiVo's Motion for Entry of Judgment
and Permanent Injunction and (2) Cross-Motion to
Stay Any Injunction Pending Appeal, TiVo's (1)
Reply Re: Motion for Entry of Judgment and
Permanent Injunction and (2) Opposition to
EchoStar's Cross-Motion to Stay Injunction, and
Defendants' Reply in Support of Cross-Motion to

Stay Any Injunction Pending Appeal. Dkt. Nos.
737, 747, 754, respectively. On June 28, 2006 the
Court heard the parties on these motions. Having
considered the motions, all other relevant briefing,
and the applicable law, the Court finds that
Plaintiff's Motion for Injunction should be
GRANTED and Defendants' Motion to Stay Any
Injunction Pending Appeal should be DENIED.

I. BACKGROUND

In this patent infringement action, Plaintiff claimed
a number of Defendants' digital video recorders [FN1]
("DVRs") infringe several claims in Plaintiff's U.S.
Patent No. 6,233,389 (the " '389 patent"). In March
2006-April 2006, the case was tried to a jury. The
jury found that Defendants' accused DVRs infringed
each of the asserted claims and further found that
Defendants' infringement was willful. None of the
asserted claims was found invalid. The jury
awarded Plaintiff $73,991,964 million in
compensatory damages.

Plaintiff now moves for entry of a permanent
injunction. Defendants oppose any injunction and,
alternatively, move to stay any injunction.

II. LEGAL PRINCIPLES

Recently the Supreme Court revisited the propriety
of issuing permanent injunctions as a matter of
course after a finding of infringement in patent
cases. *eBay Inc. v. MercExchange, L.L.C.*, --- U.S.
----, ---- - ----, 126 S.Ct. 1837, 1839-1841, 164
L.Ed.2d 641 (U.S.2006)(hereinafter "*eBay* ").
Observing the existence of a " 'general rule,'
unique to patent disputes" that mandated the
issuance of a permanent injunction once
infringement and validity were decided, the
Supreme Court explored the origins of this general
rule and compared it to other instances in which
courts are faced with deciding whether or not to

© 2006 Thomson/West No Claim to Orig U S Govt Works.

--- F.Supp.2d ----                                    Page 2

--- F.Supp.2d ----, 2006 WL 2398681 (E.D.Tex.)
(Cite as: --- F.Supp.2d ----)

issue equitable relief. *Id.* The Supreme Court determined that equitable relief is not mandatory in patent cases, but instead should be decided in accordance with traditional equitable considerations. *Id.*

To this end, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief:
A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction

*Id.* Further, the Supreme Court held that:[T]he decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and that such discretion must be exercised consistent with traditional principles of equity, in patent disputes no less than in other cases governed by such standards

*2 *Id.* It is clear that the Supreme Court by its decision did not intend to part with long-standing decisions in equity. As noted by Chief Justice Roberts, "there is a difference between exercising equitable discretion pursuant to the established four-factor test and writing on an entirely clean slate. " *Id.* at 1841 (Roberts, C.J.concurring). And, as Justice Kennedy notes in his concurrence, "the existence of a right to exclude does not dictate the remedy for a violation of that right," which aligns equitable decisions in patent cases with other cases. *Id.* at 1842 (Kennedy, J. concurring).

"Once a plaintiff has met its burden in showing that an injunction is necessary, no delay in the issuance of that injunction is appropriate absent extraordinary circumstances." *Boehringer Ingelheim Betmedica, Inc. v Schering-Plough Corp.*, 106 F.Supp.2d 696, 708 (D.N.J.2000) (internal quotation and citation omitted). In determining whether a stay is appropriate, courts consider four factors: "(1) whether the stay applicant has made a strong showing that he is

likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Standard Havens Prods v Gencor Indus., Inc.*, 897 F.2d 511, 512 (Fed.Cir.1990) Each factor is not necessarily entitled to equal weight; a stay is discretionary with the Court

### III. THE PARTIES' POSITIONS

Plaintiff argues that each of the four equitable factors "overwhelmingly weigh [s] in favor of enjoining EchoStar's continuing infringement." Dkt. No. 733 at 7

Regarding the first and second factors, Plaintiff argues that because it is in direct competition with Defendants, their infringement has "direct, severe consequences" on its ability to compete. *Id.* According to TiVo, Defendants specifically target potential TiVo customers and Defendants' competition leads to Plaintiff's loss of critical market share. *Id.* TiVo argues that loss of customers and loss of market share are irreparable injuries that cannot be recouped though monetary awards. *Id.* at 8. Without an immediate injunction, Plaintiff argues, "new DVR customers on the EchoStar platform will likely adopt EchoStar's competing devices instead of TiVo's." According to TiVo, " [t]hese customers are lost, probably for good." *Id.* at 8. TiVo cites evidence that customers tend to stay with their current DVR service providers, i.e. that they are "sticky customers." *Id.*

Plaintiff also argues that, because the DVR market is in its "formative years and is currently growing at exponential rates," Plaintiff risks being marginalized due to Defendants' infringement by the time the market matures. *Id.* at 9. Such marginalization, Plaintiff argues, has been expressly recognized as a type of irreparable harm. *Id.*

Plaintiff further argues that it suffers irreparable harm from price erosion resulting from Defendants' offering the infringing products and service at "less than full value." *Id.* at 9-10. Plaintiff also argued

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----

--- F.Supp.2d ----, 2006 WL 2398681 (E.D.Tex.)                                    Page 3
(Cite as: --- F.Supp.2d ----)

Defendants' infringement has resulted in "value erosion" as potential business partners are reluctant to enter into agreements for the technology Defendants utilize for free. *Id.* at 10. Lastly, Plaintiff argues that Defendants' infringement causes irreparable harm insofar as it encumbers Plaintiff's ability to invest in its business and in additional research and development. *Id.* at 10.

*3 Only an injunction, Plaintiff argues, can remedy the irreparable harm caused by Defendants' infringement. Without an injunction, Plaintiff argues it will lose market share, which is particularly important during the formative years of a market. *Id.* at 11. Such harms, Plaintiff argues, cannot be remedied with monetary damages. Plaintiff also argues that, absent an injunction, ongoing harm to its brand, reputation and good will cannot be remedied. *Id.* And, in the absence of an injunction, Plaintiff argues it will be unfairly forced into a compulsory license. Dkt. No. 747 at 6.

Addressing the third factor, Plaintiff argues that the balance of hardships weighs heavily in favor of enjoining Defendants' infringement. *Id.* at 12. Plaintiff argues that, because of its size and its dependence on its DVR technology, it will become extinct if it cannot exploit its technology in the market. *Id.* By contrast, Plaintiff argues that the EchoStar corporation is a multi-billion-dollar corporation whose primary business is providing satellite television signals. *Id.* Enjoining EchoStar's infringing DVRs will not affect its satellite transmissions, Plaintiff argues. *Id.* Thus, according to Plaintiffs, "an injunction causes EchoStar no hardship that is properly considered in this balancing." *Id.* Plaintiff further argues that, because Defendants' infringement is willful, it cannot complain of hardship. *Id.*

Regarding the public interest, Plaintiff argues that no interest would be served by allowing Defendants' infringement to continue. *Id.* at 13. To the contrary, Plaintiff argues that the public's interest in patent rights and the patent system would be served by enjoining Defendants' infringement. *Id.*

Plaintiff argues, anticipating Defendants will request a stay of any injunction, that the four factors

for determining whether a stay is appropriate each weigh against a stay in this case. *Id.* at 16.

Lastly, Plaintiff addresses the specifics of the injunction they seek. Plaintiff requests that Defendants be immediately enjoined from "making, using, selling, offering for sale, and/or importing into the United States all of its infringing DVR products..." including not only the accused products but also products that are not more than colorably different. 6/28/06 Hr. Tr. at 146:11-18; Dkt. No. 733 at 19 (internal citation omitted). The injunction must extend, Plaintiff argues, to "new placements" (newly sold DVRs) as well as "existing placements" (DVRs already placed with customers). Dkt. No. 733 at 20-21.

In response, Defendants argue Plaintiff faces no irreparable harm absent a permanent injunction. Dkt. No. 737 at 7. According to Defendants, Plaintiff's delay in bringing this lawsuit weighs against an injunction. *Id.* at 8. Defendants also charge that Plaintiff's motive in this lawsuit was only to "give TiVo additional leverage to force EchoStar and TiVo's other prospective business partners to make more favorable deals with TiVo." *Id.* Thus, Defendants argue, it is not reasonable to conclude Plaintiff will be irreparably harmed if Defendants are "allowed to continue providing DVRs to [their] own subscribers." *Id.* at 8.

*4 Defendants cite Plaintiff's "failure to seek a preliminary injunction" as further evidence Plaintiff faces no irreparable harm. *Id.* Defendants then argue that Plaintiff stands to reap more money for its infringement than Plaintiff would make if Defendants were enjoined because, according to Defendants, Plaintiff could not have provided enough DVRs to its customers to accrue the " windfall" awarded by the jury. *Id.* at 8-9.

Defendants also argue that because the DVR market is not a two-player market, Plaintiff's arguments rest on a fallacy. *Id.* at 9. Defendants also cast Plaintiff's price erosion concerns as "mak[ing] little sense." *Id.* And, Defendants argue, Plaintiff's evidence of commercial success while the infringing products have been on the market demonstrate that Plaintiff will not suffer irreparable harm. *Id.* at 10.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.