--- F.Supp.2d ----                                                                    Page 4

--- F.Supp.2d ----, 2006 WL 2398681 (E.D.Tex.)
(Cite as: --- F.Supp.2d ----)

According to Defendants, monetary damages will fully compensate Plaintiff for all of the existing placements of infringing DVRs. *Id.* at 10. Defendants argue that Plaintiff's counsel at trial represented that injunctive relief would only apply to new DVR placements *Id.* at 11 citing trial transcript. This, according to Defendants, amounted to an admission that monetary relief is an adequate remedy for existing placements. *Id.* Defendants then argue that the same rate of compensation for the existing placements must also be adequate for any future placements *Id.* And, based on Plaintiff's counsel's representation, Defendants argue that Plaintiff cannot now seek an injunction on existing placements. *Id.*

Defendants argue that the public interest would not be served by an injunction. *Id.* at 12. According to Defendants, the injunction Plaintiff proposes " would immediately remove DVRs from three million families who are innocent of any wrongdoing... [depriving] those families of DVRs and force[ing] them to incur significant disruption and expense in order to replace them " *Id.* at 12. Defendants argue this is contrary to the public interest. *Id.* Denying an injunction, however, does " not harm the public interest in maintaining the integrity of the patent system" and, according to Defendants, will still leave Plaintiff in a better position than if Defendants had not infringed or if Defendants engaged in a business relationship with Plaintiff. *Id.* at 12-13.

Lastly, Defendants argue that the balance of hardships weighs against an injunction. *Id.* at 13 According to Defendants, Plaintiff faces no hardship if an injunction does not issue because monetary relief provides an adequate remedy at law. *Id.* However, Defendants argue, an injunction will cause them "severe and irremediable" harm. *Id.*

Defendants argue that enjoining their DVR sales will impact its ability to compete in the market for subscribers, leading to a "high risk of losing a significant percentage of existing subscribers, and... significantly impair [ing] [their] attracting new subscribers " *Id.* at 14. Defendant argues that small authorized distributors will also be severely impacted. *Id.*

*5 Regarding the form of an injunction, Defendants argue only new placements should be enjoined because, at trial, Plaintiff's counsel represented that Plaintiff would seek only to enjoin new placements. *Id.* at 15-16. Now, Defendant argues, Plaintiff is bound to this limitation on injunctive relief. *Id.* Defendants also argue that because their DVRs have substantial non-infringing uses, Plaintiff's requested injunction is "improperly broad." *Id.* at 16. And, Defendants argue, the injunction should not extend to DVRs already distributed but not placed because they cannot infringe until the infringing software is downloaded. *Id.* at 17. Lastly, Defendants argue the injunction should extend only to the specific devices for which the jury found infringement. *Id.* at 17.

Should an injunction issue, Defendants argue a stay is warranted Defendants argue that it is likely to prevail on its appeal of the infringement verdict *Id.* at 19. Defendants list a number of claim construction and evidentiary rulings that they plan to appeal. *Id.* at 19-29. Largely reciting the same factors set forth in the discussion of the balance of hardships, Defendants argue they will be irreparably harmed absent a stay but that Plaintiff does not face such harm in the event of a stay *Id.* at 29-31 Again, reciting many of the arguments set forth above, Defendant argue that the public interest warrants a stay. *Id.* at 32-33.

In reply, Plaintiff defends the form of injunction it requests. Plaintiff points out that Defendant does not dispute that it can turn off the DVR functionality of the already placed infringing DVRs. Dkt. No. 747 at 10. Plaintiff argues that its counsel did not represent that the injunctive relief Plaintiff would seek was as limited as Defendants argue. " instead, Plaintiff's counsel represented only that no injunction would be pursued on the infringing units for which lost profit damages are received. *Id.* at 12.

Plaintiff also argues that a stay is not warranted because of the severe irreparable harm it faces in the interim. *Id.* at 12-13, 22-24. Further, because the jury found that Defendants willfully infringe, their alleged injury absent a stay is the result of their own deliberate doing. *Id.* at 13. Plaintiff addresses Defendants' list of appellate points and disputes that

© 2006 Thomson/West No Claim to Orig. U.S. Govt. Works

--- F.Supp.2d ----

--- F.Supp.2d ----, 2006 WL 2398681 (E.D.Tex.)
(Cite as: --- F.Supp.2d ----)

Page 5

there is any reason to conclude that Defendant has a likelihood of success on any of its points. *Id.* at 13-22. Thus, Plaintiff argues, the present is not an exceptional case wherein a stay of injunctive relief is warranted.

In surreply, Defendants argue that the public interest in maintaining the status quo pending appeal favors entry of a stay. Dkt. No. 754 at 5-6.

## IV. DISCUSSION

### A. Permanent Injunction

Following the traditional four-factor test for equitable relief, the Court concludes that a permanent injunction is warranted.

Plaintiff has demonstrated both that it continues to suffer irreparable harm in the absence of an injunction and that there is no adequate remedy at law. Defendants compete directly with Plaintiff-Defendants market their infringing products to potential DVR customers as an alternative to purchasing Plaintiff's DVRs. The availability of the infringing products leads to loss of market share for Plaintiff's products. Loss of market share in this nascent market is a key consideration in finding that Plaintiff suffers irreparable harm-Plaintiff is losing market share at a critical time in the market's development, market share that it will not have the same opportunity to capture once the market matures.

*6 One thing the parties agree on is that DVR customers are "sticky customers," that is they tend to remain customers of the company from which they obtain their first DVR. Dkt. No. 737 at 30 (EchoStar); Dkt. No. 747 at 1 (Tivo). Thus, the impact of Defendants' continued infringement is shaping the market to Plaintiff's disadvantage and results in long-term customer loss. This is particularly key where, as is the case here, Plaintiff's primary focus is on growing a customer base specifically around the product with which Defendants' infringing product competes. And, as Plaintiff is a relatively new company with only one

primary product, loss of market share and of customer base as a result of infringement cause severe injury. Thus, the Court concludes that the full impact of Defendants' infringement cannot be remedied by monetary damages.

Plaintiff's "delay" in bringing this lawsuit, which Defendants argue demonstrates there is no irreparable injury, was due to Plaintiff's attempts to enter into a business arrangement with Defendants. *See* Dkt No. ___, Findings of Fact and Conclusions of Law. It does not demonstrate that there is no irreparable harm. Plaintiff's motives in bringing the lawsuit are irrelevant-the jury found Plaintiff's patent valid and infringed by Defendants' DVRs. The Court also finds the statement by Plaintiff's counsel cited by Defendants does not amount to an admission that monetary relief is adequate.

The balance of hardships weighs in favor of granting a permanent injunction. As discussed, Plaintiff faces ongoing irreparable injury as Defendants' infringement continues. As a relatively new and small company, every day of Defendants' infringement affects Plaintiff's business. And, as discussed above, Plaintiff's primary product, its DVRs, are those with which Defendants' infringing products directly compete. The harm caused by such infringement weighs heavily in favor of an injunction.

Enjoining Defendants will likely cause some harm-but on balance, Defendants will endure less harm than Plaintiff. The infringing products do not form the core of Defendants' satellite transmission business. And the injunction will not interfere with Defendants' satellite transmission.

The hardship of disabling DVR capabilities to Defendants' DVR customers is a consequence of Defendants' infringement and does not weigh against an injunction. Defendants do not dispute that, with software updates transmitted directly to the infringing products, the DVR capabilities of the infringing products can be disabled. This process, though cumbersome, is not on balance a weighty hardship for Defendants. Similarly, any impact of the injunction on Defendant's authorized distributors is also a consequence of Defendants'

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                          Page 6

--- F.Supp.2d ----, 2006 WL 2398681 (E.D.Tex.)
(Cite as: --- F.Supp.2d ----)

infringement and does not weigh against an injunction. Again, distributors' sales of Defendants' core products will not be affected by the injunction.

Lastly, the public interest would not be disserved by a permanent injunction. The public has an interest in maintaining a strong patent system. This interest is served by enforcing an adequate remedy for patent infringement --- in this case, a permanent injunction. The infringing products are not related to any issue of public health or any other equally key interest; they are used for entertainment. The public does not have a greater interest in allowing Defendants' customers' to continue to use their infringing DVRs.

### B. Stay of a Permanent Injunction

*7 A stay of the permanent injunction is not warranted.

Defendants' identification of issues and rulings it plans to appeal is lengthy. Upon review, it seems that the Court has previously considered each at length. Although Defendants may prevail on some of the issues, they have not demonstrated a strong likelihood of success on appeal that would overturn the jury's verdict on all infringed claims.

Defendants raise appellate points regarding the Court's claim construction, but identify only one term, "decoder," common to both the hardware and software claims. Defendants' argue the proper construction of the term would "mandate a finding of non-infringement." Dkt. No. 737 at 26; Dkt. No. 754 at 14. In the half-page Defendants devote to this term in their brief, Defendants do not detail their argument for overturning the construction of this term. Dkt. No. 737 at 25-26.

As far as the exclusion of certain evidence, Defendants do not demonstrate that reversals of either of the rulings they identify for appeal will lead to overturning the infringement verdict on each of the asserted claims. In particular, the exclusion of the Merchant & Gould opinion letters is primarily related to the jury's willfulness determination, and overturning this ruling may amount to a retrial on

this issue alone.

Although the injunction will likely result in some degree of customer loss and will impact Defendants' ability to compete in the market, Defendants will not be irreparably harmed. Again, Defendants' core business is not the supply of DVRs. Defendants have not demonstrated that an injunction on the infringing products would have a severe financial impact on their core business or will lead to loss of employees. Defendants' authorized retailers will still be able to sell and service Defendants' non-infringing products. Conversely, absent a stay, Plaintiff faces ongoing irreparable injury as detailed above.

Lastly, Defendants' argument that the public interest in maintaining the status quo-allowing Defendants' current DVR customers and its retailers to continue business as usual-is served by granting a stay. Without a stronger showing that the jury's verdict will be overturned in its entirety on appeal, however, allowing the ongoing infringement is not within the public's interest.

### C. Form of the Injunction

The Court will issue an injunction explicitly subject to 28 U.S.C. § 1498 contemporaneously with this order and its final judgment.

### V. CONCLUSION

For all the above reasons, Plaintiff TiVo's Motion for Entry of Judgment and Permanent Injunction, Dkt. No. 733, is hereby GRANTED and Defendants' Cross-Motion to Stay Any Injunction Pending Appeal, Dkt. No. 737, is hereby DENIED.

> FN1. The following of Defendants' DVR receivers were found to infringe: DP-501; DP-508; DP-510; DP-522; DP-625; DP-721; DP-921; and the DP-942

E.D.Tex.,2006.
TiVo Inc. v. EchoStar Communications Corp.
--- F.Supp.2d ----, 2006 WL 2398681 (E.D.Tex.)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works

--- F.Supp.2d ----                                                            Page 7

--- F.Supp.2d ----, 2006 WL 2398681 (E.D.Tex.)
**(Cite as: --- F.Supp.2d ----)**

Briefs and Other Related Documents (Back to top)

• 2006 WL 1004924 (Trial Motion, Memorandum and Affidavit) TiVo's Opposition to Echostar's Renewed Motion for Judgment as a Matter of Law (Apr. 12, 2006) Original Image of this Document (PDF)
• 2006 WL 1503233 (Trial Motion, Memorandum and Affidavit) Tivo's Opposition to Echostar's Renewed Motion for Judgment as a Matter of Law (Apr. 12, 2006) Original Image of this Document (PDF)
• 2006 WL 1004923 (Trial Motion, Memorandum and Affidavit) Echostar's Motion for Judgment as a Matter of Law (Apr. 11, 2006) Original Image of this Document (PDF)
• 2006 WL 1503232 (Trial Motion, Memorandum and Affidavit) Echostar's Motion for Judgment as a Matter of Law (Apr. 11, 2006) Original Image of this Document (PDF)
• 2006 WL 1181342 (Trial Motion, Memorandum and Affidavit) Echostar's Opposition to Tivo's Motion for Reconsideration of Magistrate Judge's Rulings (Mar. 30, 2006) Original Image of this Document (PDF)
• 2006 WL 1181341 (Trial Motion, Memorandum and Affidavit) TIVO'S Motion for Reconsideration of Magistrate Judge's Rulings (Mar. 29, 2006) Original Image of this Document (PDF)
• 2006 WL 1004922 (Trial Motion, Memorandum and Affidavit) Plaintiff TiVo Inc.'s Motion to Exclude the Testimony of Defendants' Witness Homer Knearl and all Reference to his Opinion Work (Mar. 24, 2006) Original Image of this Document (PDF)
• 2006 WL 1004921 (Trial Motion, Memorandum and Affidavit) TiVo's Motion for Reconsideration of Magistrate Judge's Ruling on Admissibility of Exhibits on TiVo's Products (Mar. 20, 2006) Original Image of this Document (PDF)
• 2006 WL 1181340 (Trial Motion, Memorandum and Affidavit) TiVo's Motion for Reconsideration of Magistrate Judge's Ruling on Admissibility of Exhibits on Tivo's Products (Mar. 20, 2006) Original Image of this Document (PDF)
• 2006 WL 1004920 (Trial Motion, Memorandum and Affidavit) TiVo's Motion for Reconsideration of the Court's February 27, 2006 Order Denying Leave to Amend the Proposed Joint Pre-Trial Order

(Mar. 3, 2006) Original Image of this Document (PDF)
• 2006 WL 1181339 (Trial Motion, Memorandum and Affidavit) Tivo's Motion for Reconsideration of the Court's February 27, 2006 Order Denying Leave to Amend the Proposed Joint Pre-Trial Order (Mar. 3, 2006) Original Image of this Document (PDF)
• 2006 WL 1004917 (Trial Motion, Memorandum and Affidavit) TiVo's Motion for Reconsideration of Magistrate Judge's Ruling on TiVo Trial Exhibits 1514, 1515, 1683, 1703, 1705, and 1709 (Feb. 22, 2006) Original Image of this Document (PDF)
• 2006 WL 813706 (Trial Motion, Memorandum and Affidavit) Tivo's Motion for Reconsideration of Magistrate Judge's Ruling on Tivo Trial Exhibits 1514, 1515, 1683, 1703, 1705, and 1709 (Feb. 22, 2006) Original Image of this Document (PDF)
• 2006 WL 814167 (Trial Pleading) Defendants Echostar Technologies Corporation, Echosphere Limited Liability Company, and Echostar Satellite LLC's Second Amended Answer to Second Amended Complaint for Patent Infringement and Counterclaims for Declaratory Relief of Invalidity, Non-Inf ringement and Unenforceability and Related Counterclaims (Feb. 9, 2006) Original Image of this Document (PDF)
• 2006 WL 814195 (Trial Pleading) Defendants Echostar Communications Corporation and Echostar DBS Corporation's Second Amended Answer to Second Amended Complaint for Patent Infringement; Defendant Echostar Communications Corporation's Counterclaims for Declaratory Relief of Invalidit y, Non-Infringement and Unenforceability and Related Counterclaims (Feb. 9, 2006) Original Image of this Document (PDF)
• 2006 WL 1004918 (Trial Motion, Memorandum and Affidavit) TiVo's Brief in Support of its Objections to Defendants' Trial Exhibits (Jan. 30, 2006) Original Image of this Document (PDF)
• 2006 WL 1004919 (Trial Motion, Memorandum and Affidavit) TiVo's Brief in Opposition to Echostar's Objections to TiVo's Trial Exhibits (Jan 30, 2006) Original Image of this Document (PDF)
• 2006 WL 502210 (Trial Motion, Memorandum and Affidavit) Tivo Inc.'s Sur-Reply to Echostar's Motion to Reconsider the Court's Order of December 21, 2005 ŸDocket #4091 (Jan. 6, 2006) Original Image of this Document (PDF)
• 2005 WL 4170700 (Trial Motion, Memorandum

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                Page 8

--- F.Supp.2d ----, 2006 WL 2398681 (E.D.Tex.)
(Cite as: --- F.Supp.2d ----)

and Affidavit) Motion to Reconsider the Court's Order of December 21, 2005. (Dec. 29, 2005) Original Image of this Document (PDF)
• 2005 WL 2666703 (Trial Motion, Memorandum and Affidavit) Echostar's Reply to Motion in Limine No. 1 - To Preclude Reference To, Use Of, And Reliance Upon The Expert Report and Testimony of John R. Hauser (Sep. 9, 2005) Original Image of this Document (PDF)
• 2005 WL 2666704 (Trial Motion, Memorandum and Affidavit) Echostar's Reply re Motion in Limine No. 10 - to Preclude Reference to, use of and Reliance upon other Echostar Litigation (Sep. 9, 2005) Original Image of this Document (PDF)
• 2005 WL 2666749 (Trial Motion, Memorandum and Affidavit) Echostar's Reply in Support of its Motion in Limine No. 5 to Preclude Reference to, Use of, and Reliance on the Expert Testimony and Opinion of Alan Gordon on Willfulness (Sep. 9, 2005) Original Image of this Document (PDF)
• 2005 WL 2666750 (Trial Motion, Memorandum and Affidavit) Defendants' Motion to Strike Tivo Inc.'s Cross Motion Re: Partial Summary Judgment of Infringement of Claims 31 and 61 (Sep. 9, 2005) Original Image of this Document (PDF)
• 2005 WL 2667084 (Trial Motion, Memorandum and Affidavit) Echostar's Reply re Motion in Limine No 9 -- to Preclude Evidence on Doctrine of Equivalents (Sep. 9, 2005) Original Image of this Document (PDF)
• 2005 WL 2666702 (Trial Motion, Memorandum and Affidavit) Echostar's Reply in Support of its Motion for Partial Summary Judgment of Invalidity Due to Indefiniteness (Sep. 7, 2005) Original Image of this Document (PDF)
• 2005 WL 2666745 (Trial Motion, Memorandum and Affidavit) Echostar's Opposition to Tivo'S Motion IN Limine No. 1: to Preclude Defendants from Introducing Evidence or Making Arguments Regarding Agreements Wholly between Non-Parties (Sep. 7, 2005) Original Image of this Document (PDF)
• 2005 WL 2666746 (Trial Motion, Memorandum and Affidavit) Echostar's Motion for a Protective Order Prohibiting Tivo from Pursuing Discovery in other Jurisdictions (Sep. 7, 2005) Original Image of this Document (PDF)
• 2005 WL 2667082 (Trial Motion, Memorandum and Affidavit) Echostar's Opposition to Tivo's

Motion in Limine No 2: to Preclude Evidence/Argument in Front of the Jury Regarding Echostar's Inequitable Conduct Defense (Sep. 7, 2005) Original Image of this Document (PDF)
• 2005 WL 2666743 (Trial Motion, Memorandum and Affidavit) Tivo Inc.'s Opposition to Echostar's Motion Inlimine No. 3: to Preclude any Reference To use Of. and Reliance upon Pto Museum Display. or Alternatively to Allow Discovery (Sep. 6, 2005) Original Image of this Document (PDF)
• 2005 WL 2666741 (Trial Motion, Memorandum and Affidavit) Echostar's Surreply Brief in Support of its Motion for Partial Summary Judgment of Non-Infringement: (1)No Infringement by Echostar's 7100/7200 Devices; and (2) No Infringement under the Doctrine of Equivalents (Sep. 1, 2005) Original Image of this Document (PDF)
• 2005 WL 2666701 (Trial Motion, Memorandum and Affidavit) Tivo Inc.'s Opposition to Echostar's Motion Inlimine No 4: to Preclude Tivo from Denying the Existence of Non-Infringing Alternatives (Aug. 31, 2005) Original Image of this Document (PDF)
• 2005 WL 2666738 (Trial Motion, Memorandum and Affidavit) Tivo's Opposition to Echostar's Motion in Limine No. 2: Re: Written Opinion of Counsel (Aug. 31, 2005) Original Image of this Document (PDF)
• 2005 WL 2667080 (Trial Motion, Memorandum and Affidavit) TiVo Inc.'s Opposition to Echostar's Motion in Limine No. 6 - to Preclude Reference to, Use of, or Reliance Upon the Preamble of any Asserted Claim as A Limitation (Aug. 31, 2005) Original Image of this Document (PDF)
• 2005 WL 3966207 (Trial Motion, Memorandum and Affidavit) Defendants' Protective Motion for Reconsideration of the Court's Order of August 17, 2005 (Aug. 31, 2005) Original Image of this Document (PDF)
• 2005 WL 4170699 (Trial Motion, Memorandum and Affidavit) Two Inc.'s Opposition to EchoStar's Motion in Limine No. 11: to Preclude ""Late Disclosed" Exhibits (Aug. 31, 2005) Original Image of this Document (PDF)
• 2005 WL 2666700 (Trial Motion, Memorandum and Affidavit) TiVo Inc.'s Opposition to Echostar's Motion For Partial Summary Judgment of Invalidity due to Indefiniteness (Aug. 30, 2005) Original

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                Page 9

--- F.Supp.2d ----, 2006 WL 2398681 (E.D.Tex.)
(Cite as: --- F.Supp.2d ----)

Image of this Document (PDF)
• 2005 WL 2666736 (Trial Motion, Memorandum and Affidavit) Tivo Inc.'s Motions in Limine Nos. 3A-3C (Aug. 26, 2005) Original Image of this Document (PDF)
• 2005 WL 2667079 (Trial Motion, Memorandum and Affidavit) Tivo's Motion in Limine No. 2: To Preclude Evidence/Argument in Front of the Jury Regarding Echostar's Inequitable Conduct Defense (Aug. 26, 2005) Original Image of this Document (PDF)
• 2005 WL 3966206 (Trial Motion, Memorandum and Affidavit) Notice of Motion, Motion and Memorandum in Support of Motion for Partial Summary Judgment of Invalidity Due to Indefiniteness (Aug. 18, 2005) Original Image of this Document (PDF)
• 2005 WL 2666735 (Trial Motion, Memorandum and Affidavit) Tivo's Reply in Support of its Second Motion to Compel (Aug. 15, 2005) Original Image of this Document (PDF)
• 2005 WL 2299387 (Trial Motion, Memorandum and Affidavit) Plaintiff Tivo Inc.'s Third Motion to Compel (Aug. 10, 2005) Original Image of this Document (PDF)
• 2005 WL 3966205 (Trial Motion, Memorandum and Affidavit) Plaintiff TiVo Inc.'s Third Motion to Compel (Aug. 10, 2005) Original Image of this Document (PDF)
• 2005 WL 2299384 (Trial Motion, Memorandum and Affidavit) Defendants' Opposition to Tivo's Second Motion to Compel (Aug. 9, 2005) Original Image of this Document (PDF)
• 2005 WL 2666748 (Trial Motion, Memorandum and Affidavit) Echostar's Reply in Support of Its Motion in Limine No 2 - To Exclude Reference to Or Evidence Regarding Written Opinion of Counsel (Aug. 9, 2005) Original Image of this Document (PDF)
• 2005 WL 3966204 (Trial Motion, Memorandum and Affidavit) Defendants' Opposition to TiVo's Second Motion to Compel (Aug. 9, 2005) Original Image of this Document (PDF)
• 2005 WL 2299381 (Trial Motion, Memorandum and Affidavit) Echostar's Reply Brief in Support of Motion for Partial Summary Judgment of non-Infringement: (1) no Infringement by Echostar's 7100/7200 Devices; And (2) no Infringement Under the Doctrine of Equivalents (Aug. 3, 2005) Original

Image of this Document (PDF)
• 2005 WL 3966203 (Trial Motion, Memorandum and Affidavit) Echostar's Reply Brief in Support of Motion for Partial Summary Judgment of Non-Infringement: (1) No Infringement by Echostar's 7100/7200 Devices; and (2) No Infringement Under the Doctrine of Equivalents (Aug. 3, 2005) Original Image of this Document (PDF)
• 2005 WL 2299376 (Trial Motion, Memorandum and Affidavit) Tivo's Opposition to Defendants' Eighth Motion to Compel (Jul. 28, 2005) Original Image of this Document (PDF)
• 2005 WL 2299373 (Trial Motion, Memorandum and Affidavit) Tivo's Opposition to Defendants' Eighth Motion to Compel; Request for Sanctions (Jul. 27, 2005) Original Image of this Document with Appendix (PDF)
• 2005 WL 2299377 (Trial Motion, Memorandum and Affidavit) Tivo Inc's Opposition to Echostar's Motion for Partial Summary Judgment of Non-Infringement: (1) No Infringement by Echostar's 7100/7200 Devices; And (2) No Infringement Under the Doctrine of Equivalents (Jul. 27, 2005) Original Image of this Document (PDF)
• 2005 WL 2299368 (Trial Motion, Memorandum and Affidavit) Reply in Support of Echostar's Motion to Enforce May 24, 2005 Resolution and for a Court Order Concerning Motions to Compel (Jul. 26, 2005) Original Image of this Document (PDF)
• 2005 WL 2299371 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Points and Authorities in Support of Echostar's Seventh Motion to Compel (Jul. 26, 2005) Original Image of this Document (PDF)
• 2005 WL 3966202 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Points and Authorities in Support of Echostar's Seventh Motion to Compel (Jul. 26, 2005) Original Image of this Document (PDF)
• 2005 WL 2299354 (Trial Motion, Memorandum and Affidavit) Tivo's Opposition to Defendants' Motion to Enforce May 24, 2005 Resolution (Jul. 20, 2005) Original Image of this Document (PDF)
• 2005 WL 2299364 (Trial Motion, Memorandum and Affidavit) Tivo's Opposition to Defendants' Seventh Motion to Compel (Jul. 20, 2005) Original Image of this Document (PDF)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F Supp.2d ----

--- F.Supp.2d ----, 2006 WL 2398681 (E.D.Tex.)
(Cite as: --- F.Supp.2d ----)

• 2005 WL 3966201 (Trial Motion, Memorandum and Affidavit) TiVo's Opposition to Defendants' Seventh Motion to Compel (Jul 20, 2005) Original Image of this Document (PDF)
• 2005 WL 3966200 (Trial Motion, Memorandum and Affidavit) Notice of Motion and Memorandum in Support of Motion for Partial Summary Judgment of Non-Infringement: (1) No Infringement by Echostar's 7100/7200 Devices; and (2) No Infringement Under the Doctrine of Equivalents (Jul. 15, 2005) Original Image of this Document (PDF)
• 2005 WL 3966199 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of Echostar's Seventh Motion to Compel (Jul. 8, 2005) Original Image of this Document (PDF)
• 2005 WL 1924060 (Trial Motion, Memorandum and Affidavit) Defendants' Reply Brief in Support of the Sixth Motion to Compel (Jun. 23, 2005) Original Image of this Document (PDF)
• 2005 WL 3966198 (Trial Motion, Memorandum and Affidavit) Defendants' Reply Brief in Support of the Sixth Motion to Compel (Jun. 23, 2005) Original Image of this Document (PDF)
• 2005 WL 1924059 (Trial Motion, Memorandum and Affidavit) Tivo's Opposition to Defendants' Sixth Motion to Compel (Jun. 16, 2005) Original Image of this Document (PDF)
• 2005 WL 3966197 (Trial Motion, Memorandum and Affidavit) TiVo's Opposition to Defendants' Sixth Motion to Compel (Jun 16, 2005) Original Image of this Document (PDF)
• 2005 WL 1594133 (Trial Motion, Memorandum and Affidavit) Defendants' Sixth Motion to Compel (Jun. 2, 2005) Original Image of this Document (PDF)
• 2005 WL 1594131 (Trial Motion, Memorandum and Affidavit) Tivo's Opposition to Defendants' Fifth Motion to Compel (May 23, 2005) Original Image of this Document (PDF)
• 2005 WL 1594132 (Trial Motion, Memorandum and Affidavit) Tivo's Sur-Reply to Defendants' Third Motion to Compel (May 23, 2005) Original Image of this Document (PDF)
• 2005 WL 3966196 (Trial Motion, Memorandum and Affidavit) TiVo's Opposition to Defendants' Fifth Motion to Compel (May 23, 2005) Original Image of this Document (PDF)

• 2005 WL 3966190 (Trial Pleading) Echostar's Opening Claim Construction Brief (May 18, 2005) Original Image of this Document (PDF)
• 2005 WL 3966193 (Trial Motion, Memorandum and Affidavit) TiVo Inc.'s Opening Brief on Claim Construction (May 18, 2005) Original Image of this Document (PDF)
• 2005 WL 3966194 (Trial Motion, Memorandum and Affidavit) TiVo Inc.'s Opposition Brief on Claim Construction (May 18, 2005) Original Image of this Document (PDF)
• 2005 WL 1594130 (Trial Motion, Memorandum and Affidavit) Defendants' Reply in Support of Its Third Motion to Compel (May 16, 2005) Original Image of this Document (PDF)
• 2005 WL 3966195 (Trial Motion, Memorandum and Affidavit) Defendants' Reply in Support of its Third Motion to Compel (May 16, 2005) Original Image of this Document (PDF)
• 2005 WL 3966220 (Trial Motion, Memorandum and Affidavit) Tivo Inc.'s Opposition Brief on Claim Construction (May 12, 2005) Original Image of this Document (PDF)
• 2005 WL 1365548 (Trial Motion, Memorandum and Affidavit) Tivo's Opposition to Defendants' Third Motion to Compel (May 11, 2005) Original Image of this Document (PDF)
• 2005 WL 1365551 (Trial Motion, Memorandum and Affidavit) Tivo's Sur-Reply to Defendants' Second Motion to Compel (May 11, 2005) Original Image of this Document (PDF)
• 2005 WL 3966219 (Trial Motion, Memorandum and Affidavit) Tivo's Opposition to Defendants' Third Motion to Compel (May 11, 2005) Original Image of this Document (PDF)
• 2005 WL 1365546 (Trial Motion, Memorandum and Affidavit) Defendants' Fifth Motion to Compel (May 9, 2005) Original Image of this Document (PDF)
• 2005 WL 1365544 (Trial Motion, Memorandum and Affidavit) Reply Brief in Support of Defendants' Second Motion to Compel (May 4, 2005) Original Image of this Document (PDF)
• 2005 WL 1365542 (Trial Motion, Memorandum and Affidavit) Defendants' Third Motion to Compel (Apr. 29, 2005) Original Image of this Document (PDF)
• 2005 WL 3966218 (Trial Motion, Memorandum and Affidavit) Defendants' Third Motion to Compel

© 2006 Thomson/West No Claim to Orig U S Govt Works.

--- F.Supp.2d ----

--- F.Supp.2d ----, 2006 WL 2398681 (E.D.Tex.)
**(Cite as: --- F.Supp.2d ----)**

(Apr. 29, 2005) Original Image of this Document (PDF)
• 2005 WL 1365540 (Trial Motion, Memorandum and Affidavit) Tivo's Opposition to Defendants' Second Motion to Compel (Apr. 27, 2005) Original Image of this Document (PDF)
• 2005 WL 3966217 (Trial Motion, Memorandum and Affidavit) Tivo's Opposition to Defendants' Second Motion to Compel (Apr. 27, 2005) Original Image of this Document (PDF)
• 2005 WL 1365538 (Trial Motion, Memorandum and Affidavit) Echostar's Opening Claim Construction Brief (Apr. 11, 2005) Original Image of this Document with Appendix (PDF)
• 2005 WL 3966192 (Trial Pleading) TiVo Inc.'s Opening Brief on Claim Construction (Apr. 11, 2005) Original Image of this Document (PDF)
• 2005 WL 1365536 (Trial Motion, Memorandum and Affidavit) Tivo's Reply to Defendants' Opposition to Tivo's Motion to Compel Echostar's Production of Documents, Interrogatory Responses, and Attendance at Deposition (Apr. 5, 2005) Original Image of this Document (PDF)
• 2005 WL 1365534 (Trial Motion, Memorandum and Affidavit) TiVo's Sur-Reply in Opposition to Echostar's Motion to Compel A More Detailed interrogatory Response (Mar. 30, 2005) Original Image of this Document (PDF)
• 2005 WL 3966216 (Trial Motion, Memorandum and Affidavit) TiVo's Sur-Reply in Opposition to Echostar's Motion to Compel a More Detailed Interrogatory Response (Mar 30, 2005) Original Image of this Document (PDF)
• 2005 WL 1365532 (Trial Motion, Memorandum and Affidavit) Defendants' Opposition to TiVo's Motion to Compel Echostar's Production of Documents, Interrogatory Responses, and attendance at Deposition (Mar. 29, 2005) Original Image of this Document (PDF)
• 2005 WL 3966215 (Trial Motion, Memorandum and Affidavit) Defendants' Responses and Objections to ""First Set of Requests for Admissions to all Defendants (Nos. 1-84) by Plaintiff TiVo Inc." (Mar. 29, 2005) Original Image of this Document (PDF)
• 2005 WL 1365529 (Trial Motion, Memorandum and Affidavit) TiVo's Reply in Support of its Motion to Amend the Scheduling Order (Mar. 24, 2005) Original Image of this Document (PDF)

• 2005 WL 1365526 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Points and Authorities in Support of Echostar Technologies Corporation's and Echosphere Limited Liability Company's Motion to Compel Interrogatory Response (Mar. 23, 2005) Original Image of this Document (PDF)
• 2005 WL 3966214 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Points and Authorities in Support of Echostar Technologies Corporation's and Echosphere Limited Liability Company's Motion to Compel Interrogatory Response (Mar. 23, 2005) Original Image of this Document (PDF)
• 2005 WL 1365521 (Trial Pleading) Defendants Echostar Communications Corporation and Echostar DBS Corporation's Answer to Amended Complaint for Patent Infringement; Defendant Echostar Communications Corporation's Counterclaims for Declaratory Relief of Invalidity, Non-Infringement an d Unenforceability (Mar. 21, 2005) Original Image of this Document (PDF)
• 2005 WL 1365523 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Points and Authorities in Opposition to Plaintiff Tivo Inc.'s Motion to Amend the Scheduling Order (Mar. 21, 2005) Original Image of this Document (PDF)
• 2005 WL 3966191 (Trial Pleading) Defendants Echostar Communications Corporation and Echostar DBS Corporation's Answer to Amended Complaint for Patent Infringement; Defendant Echostar Communications Corporation's Counterclaims for Declaratory Relief of Invalidity, Non-Infringement an d Unenforceability (Mar. 21, 2005) Original Image of this Document (PDF)
• 2005 WL 1365519 (Trial Motion, Memorandum and Affidavit) Tivo's Motion to Compel Echostar's Production of Documents, Interrogatory Responses, and Attendance at Deposition (Mar 17, 2005) Original Image of this Document (PDF)
• 2005 WL 3966211 (Trial Motion, Memorandum and Affidavit) TiVo's Motion to Compel Echostar's Production of Documents, Interrogatory Responses, and Attendance at Deposition (Mar. 17, 2005) Original Image of this Document (PDF)
• 2005 WL 3966212 (Trial Motion, Memorandum and Affidavit) Responses and Objections to ""First Set of Requests for Production of Documents to all Defendants by Plaintiff TiVo,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F Supp 2d ----

--- F Supp 2d ----, 2006 WL 2398681 (E.D Tex.)
(Cite as: --- F.Supp.2d ----)

Inc." (Mar 17, 2005) Original Image of this Document (PDF)
• 2005 WL 4170701 (Trial Motion, Memorandum and Affidavit) Tivo's Opposition to EchoStar's Motion to Compel a More Detailed Interrogatory Response (Mar. 16, 2005) Original Image of this Document (PDF)
• 2005 WL 1365517 (Trial Motion, Memorandum and Affidavit) Echostar Technologies Corporation and Echosphere Limited Liability Company's Motion to Compel Interrogatory Response (Mar. 2, 2005) Original Image of this Document (PDF)
• 2005 WL 3966208 (Trial Motion, Memorandum and Affidavit) Echostar Technologies Corporation and Echosphere Limited Liability Company's Motion to Compel Interrogatory Response (Mar 2, 2005) Original Image of this Document (PDF)
• 2005 WL 3966209 (Trial Motion, Memorandum and Affidavit) Stipulated Protective Order (Feb 7, 2005) Original Image of this Document (PDF)
• 2004 WL 3357083 (Trial Motion, Memorandum and Affidavit) Tivo's Sur-Reply in Support of its Opposition to Motion to Dismiss (Apr 16, 2004) Original Image of this Document (PDF)
• 2004 WL 3768008 (Trial Motion, Memorandum and Affidavit) TiVo's Sur-Reply in Support of its Opposition to Motion to Dismiss (Apr 16, 2004) Original Image of this Document (PDF)
• 2004 WL 3357080 (Trial Motion, Memorandum and Affidavit) Tivo's Sur-Reply in Support of Opposition to Motion to Transfer (Apr 12, 2004) Original Image of this Document (PDF)
• 2004 WL 3768007 (Trial Motion, Memorandum and Affidavit) TiVo's Sur-Reply in Support of Opposition to Motion to Transfer (Apr 12, 2004) Original Image of this Document (PDF)
• 2004 WL 3357075 (Trial Motion, Memorandum and Affidavit) Defendants' Reply Brief in Support of Motion to Transfer (Apr 5, 2004) Original Image of this Document (PDF)
• 2004 WL 3357078 (Trial Motion, Memorandum and Affidavit) Defendants' Reply Brief in Support of Motion to Dismiss (Apr. 5, 2004) Original Image of this Document (PDF)
• 2004 WL 3768005 (Trial Motion, Memorandum and Affidavit) Defendants' Reply Brief in Support of Motion to Transfer (Apr 5, 2004) Original Image of this Document (PDF)
• 2004 WL 3768006 (Trial Motion, Memorandum

and Affidavit) Defendants' Reply Brief in Support of Motion to Dismiss (Apr 5, 2004) Original Image of this Document (PDF)
• 2004 WL 3357067 (Trial Motion, Memorandum and Affidavit) Tivo's Opposition to Motion to Ttransfer (Mar. 26, 2004) Original Image of this Document with Appendix (PDF)
• 2004 WL 3357071 (Trial Motion, Memorandum and Affidavit) Tivo's Opposition to Motion to Dismiss (Mar 26, 2004) Original Image of this Document with Appendix (PDF)
• 2004 WL 3768002 (Trial Motion, Memorandum and Affidavit) TiVo's Opposition to Motion to Transfer (Mar. 26, 2004) Original Image of this Document (PDF)
• 2004 WL 3768003 (Trial Motion, Memorandum and Affidavit) TiVo's Opposition to Motion to Dismiss (Mar. 26, 2004) Original Image of this Document (PDF)
• 2004 WL 3357063 (Trial Pleading) Defendants Echostar Technologies Corporation and Echosphere Limited Liability Company's Answer to Amended Complaint for Patent Infringement and Counterclaims for Declaratory Relief of Invalidity, Non-Infringement and Unenforceability (Mar 1, 2004) Original Image of this Document (PDF)
• 2004 WL 3768001 (Trial Motion, Memorandum and Affidavit) Defendants' Motion to Dismiss and Transfer (Mar. 1, 2004) Original Image of this Document (PDF)
• 2004 WL 3768004 (Trial Motion, Memorandum and Affidavit) Defendants' Motion to Dismiss and Transfer (Mar. 1, 2004) Original Image of this Document (PDF)
• 2004 WL 3357040 (Trial Pleading) Amended Complaint for Patent Infringement (Jan. 15, 2004) Original Image of this Document with Appendix (PDF)
• 2004 WL 3357025 (Trial Pleading) Complaint for Patent Infringement (Jan. 5, 2004) Original Image of this Document with Appendix (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig U.S. Govt Works

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 856595 (D.Del.)
(Cite as: 2004 WL 856595 (D.Del.))

# H

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware
TRISTRATA TECHNOLOGY, INC., Plaintiff,
v.
ICN PHARMACEUTICALS, INC., Defendant.
No. Civ.A. 01-150 JJF.

April 12, 2004.
Arthur G. Connolly, III, and Francis DiGiovanni, of
Connolly, Bove, Lodge & Hutz LLP, Wilmington,
Delaware, Michael O. Warnecke, David R. Melton,
and Douglas L. Sawyer, of Mayer, Brown, Rowe &
Maw LLP, Chicago, Illinois, Kevin M. McGovern,
and Brian T. Foley, of McGovern & Associates,
Greenwich, Connecticut, for Plaintiff Tristrata
Technology, Inc., of counsel.

Steven J. Balick, of Ashby & Geddes, Wilmington,
Delaware, Raymond A. Kurz, Celine Jimenez
Crowson, and H. Keeto Sabharwal, of Hogan &
Hartson, LLP, Washington, D.C., for Defendant ICN
Pharmaceuticals, Inc., of counsel.

*MEMORANDUM OPINION*

FARNAN, J.

*1 Presently before the Court are two motions,
Tristrata Technology, Inc.'s ("Tristrata") Motion For
Permanent Injunction (D.I.169) and ICN
Pharmaceuticals, Inc.'s ("ICN") Motion To Stay
Entry Of Permanent Injunction Pending The
Outcome Of Appeal. (D.I.190.) For the reasons set
forth below, the Court will grant Tristrata's Motion
and deny ICN's Motion.

## DISCUSSION

I. Tristrata's Motion For Permanent Injunction
(D.I.169)

A. *Parties' Contentions*

Tristrata contends that a permanent injunction is

appropriate in this case because the jury found that its
U.S. Patent Nos. 5,561,157 (the "'157 patent") and
5,665,776 (the "'776 patent") were valid and that
ICN committed willful infringement. Tristrata asserts
that irreparable injury is presumed where, as here, a
patent is found valid and infringed. Further, Tristrata
contends that it has no adequate remedy at law.
Tristrata also asserts that ICN has not provided any
sound reason to deny a permanent injunction.

ICN responds that the Court should deny the Motion
because the patents at issue are invalid as indefinite.
Thus, ICN contends that it would be impossible for it
to avoid violating the permanent injunction because
even Tristrata is unable to define the scope of its
patent rights. Further, ICN contends that the Motion
should be denied because Tristrata's proposed order
for a permanent injunction does not satisfy the
specificity requirements of Rule 65 of the Federal
Rules of Civil Procedure.

B. *Decision*

The essence of the property right granted by a patent
is the right to exclude. *Richardson v. Suzuki Co., Ltd.,*
868 F.2d 1226 (Fed.Cir.1989). Pursuant to 35 U.S.C.
§ 283, district courts may enforce this right by
granting an injunction. The decision of whether to
grant a permanent injunction remains within the
discretion of the district court. *W.L. Gore & Assoc.,*
*Inc. v. Garlock, Inc.,* 842 F.2d 1275, 1281
(Fed.Cir.1988) (citing *Windsurfing Int'l, Inc. V. AMF,*
*Inc.,* 782 F.2d 995, 1002 (Fed.Cir.), *cert. denied,* 477
U.S. 905 (1986)). However, once infringement has
been established, absent a sound reason for denying
it, an injunction should issue. *Id.* (citations omitted);
*Richardson,* 868 F.2d at 1247; *KSM Fastening Sys. v.*
*H.A. Jones Co., Inc.,* 776 F.2d 1522, 1524
(Fed.Cir.1985).

Following the close of evidence, the jury returned a
verdict finding the '157 patent and the '776 patent to
not be invalid and claims 1, 9, 17, and 25 of the '157
patent and claims 19, 20, and 26 of the '776 patent to
be infringed by ICN. Therefore, the only issue before
the Court is whether ICN has presented a sound
reason for denying the issuance of a permanent
injunction. *See W.L. Gore,* 842 F.2d at 1281;
*Richardson,* 868 F.2d at 1247; *KSM,* 776 F.2d at
1524. The Court concludes that it has not.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 856595 (D.Del.)
(Cite as: 2004 WL 856595 (D.Del.))

ICN's justifications for the denial of a permanent injunction are that: 1) the '157 and '776 patents are invalid; and 2) the injunction is not sufficiently specific because Tristrata does not provide a numerical cut-off for what amount of alpha hydroxyacids constitute an "enhancing amount." Both of ICN's contentions have previously been rejected by the Court in the Memorandum Opinion denying ICN's Motion for Reconsideration, Motion for New Trial, and Motion for Judgment as a Matter of Law (the "Post-Trial Motions"). Accordingly, the Court will not revisit ICN's identical objections reasserted in the instant motion.

II. ICN's Motion To Stay Entry Of A Permanent Injunction Pending The Outcome Of Appeal (D.I.190)

A. *Parties' Contentions*

*2 ICN contends that the Court should stay the entry of a permanent injunction pending the appeal because, as argued in its Post-Trial Motions, the claim term "enhancing amount" is invalid as indefinite. ICN also contends that it will be irreparably harmed if the Court denies it a stay because the relief Tristrata seeks is overbroad. ICN maintains that the overbreadth of Tristrata's proposed injunction order is evidenced by the fact that Tristrata seeks to enjoin ICN from making or selling products other than those found to be infringing at trial. Further, ICN contends that refusing to stay the permanent injunction will harm the public interest because the '157 and '776 patents are invalid.

In response, Tristrata contends that ICN continues to incorrectly maintain that Tristrata's patents are invalid despite the fact that the Court denied ICN summary judgment on invalidity and the jury found the '157 and '776 patents to not be invalid. Tristrata also asserts that its proposed order is not overly broad; however, Tristrata requests that if the Court concludes otherwise, the Court should not refuse to issue any injunction, but modify its proposed order. In addition, Tristrata contends that the Court should disregard ICN's suggestions regarding harm to the public interest because its patents are not invalid.

B. *Decision*

A stay of an injunction pending appeal may be granted if a movant demonstrates the appropriateness of a stay under four criteria: 1) whether the movant has made a strong showing that he or she is likely to succeed on the merits on appeal; 2) whether the movant will be irreparably injured by the imposition of a stay; 3) whether the issuance of a stay will irreparably injure other parties interested in the proceedings; and 4) whether there is harm to the public interest. *Standard Havens Prods., Inc. v. Gencor Indus., Inc.,* 897 F.2d 511, 512 (Fed.Cir.1990) (citations omitted); *Fisher-Price, Inc. v. Safety 1st, Inc.,* 279 F.Supp.2d 526, 529 (D.Del.2003) (citations omitted). A court is not required to give equal weight to each factor; instead, courts should use a flexible balancing approach. *Standard Havens,* 897 F.2d at 513. Applying these considerations to ICN's assertion that it is entitled to a stay pending appeal, the Court will deny ICN's Motion.

First, the Court concludes that ICN has not made the type of strong showing of success on the merits on appeal that courts have held weigh in favor of granting a stay. In *Standard Havens,* the Federal Circuit held that a decision by a commissioner of the Patent and Trademark Office (the "PTO") to reexamine the patent at issue, following a jury verdict finding the patent not invalid, raised substantial questions of invalidity. 897 F.2d at 513-15. Similarly, in *E.I. DuPont De Nemours & Co. v. Phillips Petroleum Co.,* 835 F.2d 277 (Fed.Cir.1987), the Federal Circuit held that the PTO's rejection of the patentee's reissue application, the appeal of which was stayed pending the ultimate decision by the district court finding the patent to be not invalid, raised substantial legal questions for appeal. The Court concludes that the instant case is distinguishable from both *Standard Havens* and *E.I. DuPont* in that ICN's arguments that it will be successful on appeal have been rejected by the jury, when it held the '776 and '157 patents to not be invalid, and by the Court in denying ICN's pretrial and Post-Trial Motions. Unlike the movants in *Standard Havens* and *E.I. DuPont,* ICN has not pointed to any special circumstances in this case indicating its likely success on appeal. Thus, the Court concludes that the mere assertion by ICN of appealable issues does not equate to a showing of likely success on the merits on appeal. *See Eaton Corp. v. Parker-Hannifin Corp.,* 292 F.Supp.2d 555, 582 (D.Del.2003) (stating that the "possibility of appellate *de novo* review of its claim construction [did not] constitute[ ] an extraordinary circumstance to merit a stay"). Accordingly, the Court concludes that the first factor weighs against the issuance of a stay.

*3 Second, the Court finds that ICN will not be irreparably injured if the Court denies it a stay. ICN's

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works

Not Reported in F Supp.2d
Not Reported in F Supp 2d, 2004 WL 856595 (D Del )
(Cite as: 2004 WL 856595 (D.Del.))

Page 3

assertion of irreparable injury is based on the fact that Tristrata's proposed order is, in ICN's opinion, overbroad. However, the Court will address this concern by fashioning an appropriate order. [FN1] The Court also finds that Tristrata would be irreparably injured were the Court to issue a stay pending appeal. Controlling precedent teaches that irreparable injury is presumed where the evidence strongly shows patent validity and infringement. *Richardson,* 868 F.2d at 1247 (quoting *H.H. Robertson Co. v. United Steel Deck, Inc.,* 820 F.2d 384, 290 (Fed.Cir.1987), *overruled on other grounds, Markman v. Westview Instruments, Inc.,* 52 F.3d 967 (Fed.Cir.1995)). In the instant case, the jury found that ICN committed willful infringement and that Tristrata's patents are not invalid These verdicts were further supported by the Court's decisions denying ICN's Post-Trial Motions. Thus, the Court concludes that the second and third factors weigh against the issuance of a stay.

> FN1. In fashioning an appropriate injunction order, the Court will delete the words "but not limited to," in the second to last paragraph of Tristrata's proposed order Tristrata's proposed order seeks to enjoin ICN, and potential collaborators, "from making, using, selling, or offering to sell the products adjudged to have infringed the TTI Patents, including, *but not limited to,* Viquin, Glyquin, and Glyquin XM " (D.I 169) (emphasis added). The products found to have infringed the '157 and '776 patents in this case were Viquin, Glyquin, and Glyquin XM. Thus, the Court will strike the additional language "but not limited to" because there were no other products produced or sold by ICN found to be infringing at trial. *See KSM Fastening Sys., Inc. v. H.A. Jones Co., Inc.,* 776 F.2d 1522, 1526 (Fed.Cir.1985) (noting that the universal rule of "contempt proceedings [is that they] are available only with respect to devices previously admitted or adjudged to infringe, and to other devices which are no more than colorably different therefrom and which clearly are infringements of the patent "); Robert L. Harmon, *Patents and the Federal Circuit* 770-71 (5th ed 2001).

Finally, the Court concludes that ICN's contention that the public interest will be harmed if the Court denies it a stay pending appeal does not support the issuance of a stay Again, ICN's arguments are merely repetitions of arguments previously rejected

by the Court

In sum, the Court concludes that a stay pending appeal is not justified in this case. All four of the *Stanford Havens* factors weigh against the issuance of a stay, and accordingly, the Court will deny ICN's Motion

## CONCLUSION

For the reasons discussed, the Court will grant Tristrata's Motion For Permanent Injunction (D.I.169) and deny ICN's Motion To Stay Entry Of Permanent Injunction Pending The Outcome Of Appeal (D I 190.)

An appropriate Order will be entered.

## ORDER

At Wilmington, this 12th day of April, 2004, for the reasons discussed in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that:
1) Tristrata Technology, Inc 's ("Tristrata") Motion For Permanent Injunction (D I.169) is *GRANTED;*
2) ICN Pharmaceuticals, Inc 's ("ICN"), Motion To Stay Entry Of Permanent Injunction Pending The Outcome Of Appeal (D I.190) is *DENIED.*

## PERMANENT INJUNCTION ORDER

WHEREAS, Plaintiff Tristrata Technology, Inc ("Tristrata") has moved for an Order pursuant to 35 U.S.C. § 283 and Federal Rule of Civil Procedure 65(d), that ICN Pharmaceuticals, Inc ("ICN") be permanently enjoined from further infringing U.S. Patent Nos. 5,561,157 (the " '157 patent") and 5,665,776 (the " '776 patent");

WHEREAS, the Court granted Tristrata's Motion For Permanent Injunction (D.I.169);

WHEREAS, the Court denied ICN's Motion To Stay Entry Of Permanent Injunction Pending The Outcome Of Appeal (D I.190);

WHEREAS, the Court finds and concludes as follows:
1) The jury in this case returned a verdict finding that ICN's Viquin, Glyquin, and Glyquin XM products infringe claims 1, 9, 17 and 25 of the '157 patent;
*4 2) The jury in this case returned a verdict finding that ICN's Viquin, Glyquin, and Glyquin XM products infringe claims 19, 20, and 26 of the '776 patent;

© 2006 Thomson/West. No Claim to Orig. U S. Govt Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 856595 (D.Del.)
(Cite as: 2004 WL 856595 (D.Del.))

Page 4

3) The jury in this case returned a verdict finding that the '157 and '776 patents are not invalid;
4) The jury in this case returned a verdict finding willful infringement of the '157 and '776 patents by ICN;
5) There is no sufficient reason why a permanent injunction is not appropriate in this case;

NOW THEREFORE, IT IS HEREBY ORDERED that ICN, its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, shall be permanently enjoined from infringing, either directly, by contribution, or by inducement, the '157 and '776 patents, and from making, using, selling, or offering to sell the products adjudged to have infringed the '157 and '776 patents, including Viquin, Glyquin, and Glyquin XM

ICN shall take immediate steps to comply with this Order, and shall fully comply within seven (7) days of the date of entry of this Order.

Not Reported in F.Supp.2d, 2004 WL 856595 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 2003 WL 25036781 (Trial Motion, Memorandum and Affidavit) ICN Pharmaceuticals Inc.'s Reply in Further Support of Its Motion to Dismiss (Nov 10, 2003)Original Image of this Document (PDF)

• 2003 WL 25036782 (Trial Motion, Memorandum and Affidavit) Defendant ICN Pharmaceuticals, Inc.'s Motions in Limine (Oct. 24, 2003)Original Image of this Document (PDF)

• 2003 WL 24901160 (Partial Expert Testimony) Deposition of Larry W. Evans (Oct. 23, 2003)Original Image of this Document (PDF)

• 2003 WL 24901159 (Expert Report and Affidavit) Expert Report of Dr. Norman Weiner, PH.D Pursuant to Rule 26(A)(2)(B), FED. R. CIV. P. (Jul. 9, 2003)Original Image of this Document (PDF)

• 2001 WL 35724944 (Expert Report and Affidavit) (Report or Affidavit) (Apr. 11, 2001)Original Image of this Document (PDF)

• 2001 WL 35731799 (Trial Pleading) Complaint and Jury Demand (Mar. 6, 2001)Original Image of this Document (PDF)

• 1:01CV00150 (Docket) (Mar. 06, 2001)

• 2001 WL 35724932 (Expert Trial Transcript) (Transcript) (2001)Original Image of this Document (PDF)

• 2001 WL 35724933 (Expert Trial Transcript) (Transcript) (2001)Original Image of this Document (PDF)

• 2001 WL 35724934 (Expert Trial Transcript) (Transcript) (2001)Original Image of this Document (PDF)

• 2001 WL 35724943 (Expert Report and Affidavit) Expert Report of Roy Weinstein Pursuant to Rule 26(A)(2)(B) Fed.R.CIV.P (2001)Original Image of this Document (PDF)

• 2001 WL 35724945 (Partial Expert Testimony) (Partial Testimony) (2001)Original Image of this Document (PDF)

• 2001 WL 35724946 (Partial Expert Testimony) (Partial Testimony) (2001)Original Image of this Document (PDF)

• 2001 WL 35731798 (Trial Motion, Memorandum and Affidavit) Defendant ICN Pharmaceuticals, Inc.'s Opening Brief in Support of Its Post-Trial Motions and Answering Brief in Opposition to Plaintiff's Motion for a Permanent Injunction (2001)Original Image of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                                              Page 1
Slip Copy, 2006 WL 2128851 (W.D.Okla.)
(Cite as: 2006 WL 2128851 (W.D.Okla.))

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
W.D. Oklahoma.
H. Lester WALD, et al., Plaintiffs,
v.
MUDHOPPER OILFIELD SERVICES, INC., et al.,
Defendants.
No. CIV-04-1693-C.

July 27, 2006.
Gary S. Peterson, Oklahoma City, OK, for Plaintiffs.

Julia C. Rieman, Gungoll Jackson Collins Box &
Devoll, Enid, OK, for Defendants.

*MEMORANDUM OPINION & ORDER*

ROBIN J. CAUTHRON, District Judge.

*1 Following a trial in a patent infringement action,
the jury returned a verdict that Defendants infringed
Plaintiffs' patent (the Wald patent) through sales
activities related to Poly Drill Sticks, a product used
in the treatment of oil wells. The jury awarded
damages in the amount of $76,017.84 for the
infringement based on Defendants' sales of 14,335
Poly Drill Sticks and $1,000.00 based on sales of 200
Hole Sweep Sticks, a similar product that the parties
stipulated infringed the Wald patent. (Dkt. No. 70.)
The jury also found, by special interrogatory, that
Defendants' infringement was willful. (Dkt. No. 69.)

Accordingly, Plaintiffs move for judgment to
include, in addition to the damages awarded by the
jury, an award of prejudgment interest, reasonable
attorney fees, increased damages, costs, and post-
judgment interest. Plaintiffs also ask the Court to
enter an injunction barring sales activities related to
Hole Sweep Sticks, Poly Drill Sticks, or any other
infringing variation of those products and to deny
relief on Defendants' counterclaims. In a
supplemental motion, Plaintiffs also request the Court
to award damages based on sales of Poly Drill Sticks
between January 18, 2006 and the jury's verdict. In
response, Defendants contend that the Court should

deny Plaintiffs' requests for attorney fees, increased
damages, and an injunction and that an award of
damages based on sales after January 18 should be
limited. Defendants further contend that costs should
not be awarded because Plaintiffs were only partially
successful.

1. Attorney Fees

35 U.S.C. § 285 permits the Court to "award
reasonable attorney fees to the prevailing party" "in
exceptional cases." Faced with a such a request, the
Court must first determine whether there is clear and
convincing evidence that the case is exceptional.
*Interspiro USA, Inc. v. Figgie Int'l Inc.*, 18 F.3d 927,
933 (Fed.Cir.1994). "A case may be deemed
exceptional when there has been some material
inappropriate conduct related to the matter in
litigation, such as willful infringement, fraud or
inequitable conduct in procuring the patent,
misconduct during litigation, vexatious or unjustified
litigation, conduct that violates [Federal Rule of Civil
Procedure] 11, or like infractions." *Brooks Furniture
Mfg., Inc. v. Dutailier Intern., Inc.*, 393 F.3d 1378,
1381 (Fed.Cir.2005). Second, the Court must
determine whether, in its discretion, an award of
attorney fees is warranted. *Interspiro*, 18 F.3d at 933-
34. In exercising that discretion, the Court must
"weigh the relevant considerations, such as the
closeness of the case, the tactics of counsel, the
flagrant or good faith character of the parties'
conduct, and any other factors contributing to
imposition of punitive sanctions or to fair allocation
of the burdens of litigation." *Frank's Casing Crew &
Rental Tools, Inc. v. Weatherford Intern., Inc.*, 389
F.3d 1370, 1379 (Fed.Cir.2004).

Although there are sufficient reasons to support an
award of increased damages, as set out below, the
Court finds that this case is not "exceptional" and
determines that, even if it were, an award of attorney
fees would not be warranted. The jury found that
Defendants' infringement was willful; however, a
willfulness finding does not mandate an award of
attorney fees. *See Cybor Corp. v. FAS Techs., Inc.*,
138 F.3d 1448, 1461 (Fed.Cir.1998). Defendants
admittedly failed to respond to certain discovery in a
timely fashion, necessitating a motion to compel, and
Defendant Brooks was apparently unable to answer
certain product-related questions in deposition.
However, although that conduct may be relevant to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 2128851 (W.D.Okla.)
(Cite as: 2006 WL 2128851 (W.D.Okla.))

the question of whether continued sales of Poly Drill Sticks was reasonable, it does not rise to the level of litigation misconduct contemplated by 25 U.S.C. § 285. Having considered all of the relevant circumstances, the Court denies Plaintiffs' request for attorney fees

2  Increased Damages

*2 35 U.S.C. § 284 authorizes the Court, following an award of damages to compensate for infringement, to "increase [those] damages up to three times the amount found or assessed " Increased damages are punitive and based on two requirements. *Jurgens v. CBK, Ltd.,* 80 F.3d 1566, 1570 (Fed.Cir.1996). "First, the fact-finder must determine whether an infringer is guilty of conduct upon which increased damages may be based [e g., willful infringement]. If so, the [C]ourt then determines, exercising its sound discretion, whether, and to what extent to increase the damages award given the totality of the circumstances." *Id* Thus, the egregiousness of Defendants' conduct is the focus of this inquiry, in which the Court is guided by the following factors: whether Defendants deliberately copied the ideas or design of Plaintiff Wald; whether Defendants, when they knew of the Wald patent, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; Defendants' behavior as parties to the litigation; Defendants' size and financial condition; the closeness of the case; the duration of Defendants' misconduct; remedial action taken by Defendants; Defendants' motivation for harm; and whether Defendants attempted to conceal their misconduct. *Read Corp. v. Portec, Inc.,* 970 F.2d 816, 827 (Fed.Cir.1992), abrogated on other grounds by *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 975 (Fed.Cir.1995)

Based on a totality of the circumstances, the Court finds that damages should be increased Here, the jury found that Defendants' infringement, related to sales of the Hole Sweep Stick and the Poly Drill Stick, was willful. There was evidence that Defendant Brooks knew about the Wald polymer sticks no later than 2001, and it was undisputed that his initial product, the Hole Sweep Stick, literally infringed the Wald patent. Although Defendants discontinued their sales of the Hole Sweep Stick upon learning of the Wald patent in 2004, they continued to sell the Poly Drill Sticks until the time of trial.

There is ample evidence that Defendants did not promptly investigate the scope of the Wald patent

(with respect to the Poly Drill Stick product) or otherwise have a reasonable basis for continuing their sales of Poly Drill Sticks. Brooks did not know, as late as his deposition, the precise ingredients of his polymer sticks. (Pls.' Ex  2 at 26 ) Although a corporate executive might not normally be expected to know such specifics, under the circumstances, his unfamiliarity shows a lack of investigation Moreover, Defendants proffered different rationales throughout this litigation for why sales of the Poly Drill Stick did not violate the Wald patent, including that the patent was invalid and that the accused product (the Poly Drill Stick) lacked a container. Defendants did not fully explain the basis for their invalidity argument before trial and abandoned it by trial. For whatever reason, Defendants also elected not to pursue a reliance on the advice of counsel defense at trial. [FN1] The failure to articulate or consistently maintain a position with respect to continued sales suggests that Defendants did not have a reasonable or good faith (as opposed to sincere) belief that the sales were not infringing.

> FN1. Considerable attention is paid in the briefs to the October 2004 letter from James Robinson, Defendants' trial counsel, as relevant to the issue of whether continued Poly Drill Stick sales were based on a good faith belief that the Wald patent was not valid. (*See, e g ,* Pls.' Reply at 1-2.) As an initial matter, the copy of this letter, attached as Defs.' Ex  4, to a third-party contains only a cursory conclusion that the Wald patent is invalid. An actual "infringement opinion" is not in the record  Nor did Defendants pursue a reliance on the advice of counsel defense at trial  At most, Defendants' Response suggests that Brooks genuinely believed that he should be and was free to continue selling Poly Drill Sticks  Brooks himself shared this sentiment with the jury at trial  Nevertheless, as explained above, other evidence shows that his belief was not reasonable.

*3 In addition, although there was no clear evidence that Defendants specifically intended to harm Plaintiffs or that they attempted to conceal their sales activities, Defendants' conduct as a party to this litigation was less than desirable. Trial counsel assumed responsibility for the failure to file timely discovery responses or secure an extension that necessitated a motion to compel during the discovery period. (Dkt  No  20.) However, Brooks' own testimony at trial was, in places, in conflict with other evidence, his own deposition testimony, and his

Slip Copy
Slip Copy, 2006 WL 2128851 (W.D.Okla.)
(Cite as: 2006 WL 2128851 (W.D.Okla.))

Page 3

lawyer's representations. The Court considers such behavior indicative of a lack of forthcomingness, which, at a minimum, supports the finding that the continued sales were objectively unreasonable.

Other factors also weigh in favor of increasing Plaintiffs' damages. Defendants continued to sell Poly Drill Sticks for more than a year and half after learning of the Wald patent. There was evidence that Defendant Mudhopper used these sales to promote other products. (Tr. at 239.) This evidence, when considered in conjunction with Mudhopper's size and financial condition, is such that compensatory damages are insufficient. [FN2] Finally, although the Court concluded that the Poly Drill Sticks did not literally infringe the Wald patent, whether or not that ruling rendered the case "close," it does not outweigh the other considerations supporting increased damages.

> FN2. Defendant Brooks testified that Mudhopper was a "one-stop shop," "a one-source provider," and provided better service by offering a range of products as opposed to being a specialty (mud, equipment or chemical) company. (Tr. at 239.) According to Brooks, sales of the Poly Drill Sticks accounted for "[l]ess than one percent" of Mudhopper's total business. (Tr. at 239.)

After determining that damages should be increased, the Court must decide how much to increase the award. The amount to award as increased damages may not exceed twice the amount awarded as compensatory damages, but the amount of that increase is a matter of judicial discretion. See *Hockerson-Halberstadt, Inc. v. Propet USA, Inc.*, 62 Fed. Appx. 322, 331-32 (Fed.Cir.2003) (upholding application of a multiplier of 1.2 rather than 3 when enhancing damages). Again, the Court must consider the goals behind the award of enhanced damages and the Read factors identified above. *Id.*

In this case, the Court finds that the compensatory damages awarded for Defendants' infringement of the Wald patent through sales of Poly Drill Sticks should be trebled. However, the Court will not treble the amount of compensatory damages awarded for the infringement based on sales of the Hole Sweep Sticks. Defendants immediately ceased sales of that product upon learning of the patent and stipulated to infringement at trial. Therefore, although the jury found that infringement to be willful, the Court declines to award increased damages based on those

sales.

3. Accounting for Infringement After January 18, 2006

In a supplemental motion, Plaintiffs ask for an accounting of Defendants' post-January 18, 2006, sales of Poly Drill Sticks and that the Court award damages, compensatory and increased, based on those sales. Defendants agree that an accounting is appropriate (*see* Defs.' Resp. at 11-12); however, they disagree that an award based on those sales should be calculated using the $9.71/stick figure that Plaintiffs propose. Defendants argue that although "the jury accepted the overall lost profits figure calculated by Plaintiffs' expert," "it is too speculative to assume ... that a jury ... would be willing to award Plaintiffs $9.71 per stick, a figure almost twice that of the reasonable royalty [of $5.00 per unit] testified to by Plaintiffs " (Defs.' Resp. at 12.) [FN3] Instead, Defendants contend that the Court should use an average per unit net profit of $5.30/stick, based on Poly Drill sticks sold from December 3, 2003 until January 18, 2006, and Plaintiffs' sales prices and costs during that period (*Id.* at 13.)

> FN3. The difference in per unit net profit calculated for different periods of time is caused by a change in the price at which Plaintiffs sold their product (Tr. at 193.) On September 1, 2005, Plaintiffs increased their sales price from $10.00 per unit to $15.00 per unit

*4 However, Defendants' analysis is flawed. First, Defendants seemingly agree that the jury found that, but for Defendants' infringing sales, Plaintiffs would have sold an additional number of their own products (covered by the Wald patent) equal to the number of Poly Drill sticks that were sold from December 3, 2003 until January 18, 2006, and, thus, Plaintiffs were entitled to lost profits. Yet, Defendants also seem to argue that the jury accepted Plaintiffs' proposed lost profit figure, but only because the average per unit net profit ($5.30/stick) was only moderately more than the reasonable royalty rate. [FN4] This reasoning conflicts with the jury instructions given. The jury was instructed that an award of damages should be in an amount to fairly compensate Plaintiffs for Defendants' infringement, if found:

> FN4. The jury awarded Plaintiffs $76,017.84 for Defendants' sales of Poly Drill Sticks through January 18, 2006. That amount is

© 2006 Thomson/West No Claim to Orig U S Govt Works.

one cent less than the total net profit figure at which Plaintiffs' accounting expert arrived. (Tr. Ex. No. 48.)

The damages awarded to Plaintiffs for infringement can be no less than what would have been received had the infringer been paying a reasonable royalty for the use of the patented invention. However, if Plaintiffs prove damages that are greater than a reasonable royalty, such as lost profits, then you should award them that amount.
(Dkt. No. 68, Jury Instruction No. 8.) The jury was not invited to award reasonable royalty plus some if lost profits were proved.

Second, and more importantly, $5.30/stick would *not* have been the average per unit net profit if the post-January 18 sales had been before the jury (or included in the accountant's spreadsheet). More likely, the average would have been, when additional sales were considered, approximately $5.82 ($94,466.85 total net profit/16,235 total units). Stated another way, in a second lawsuit, the modified version of the accountant's spreadsheet would not include any units for sale at $10.00 or a per unit net profit of less than $9.71. Therefore, if lost profits are recoverable on post-January 18 sales of the Poly Drill Sticks, one could expect damages to be awarded based on the $9.71/stick figure proposed by Plaintiffs but not the $5.30/stick figure suggested by Defendants.

However, although the Court might attempt to make an educated guess about what the jury might have actually awarded if faced with evidence of additional infringing sales, it would still only be a guess. Nor is the Court in a position to award additional damages, on ascertainable, post-January 18 Poly Drill Stick sales, without making independent factual findings (e.g., whether Plaintiffs would have made any or all of those sales but for Defendants' infringing sales). Therefore, notwithstanding the parties' shared interest in avoiding a second lawsuit, the Court will not, over either party's objection, impose additional damages. Plaintiffs' supplemental motion for judgment is denied.

4. Permanent Injunction

Plaintiffs request an injunction barring Defendants (and their agents or employees) from infringing the Wald patent through the manufacture, use, sale, or offer for sale of the Hole Sweep Stick, the Poly Drill Stick, or any colorable variation of those products.

The Patent Act expressly provides that courts "may grant injunctions in accordance with principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283.

*5 According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 126 S.Ct. 1837, 1839 (2006) (confirming that permanent injunctions entered in patent infringement cases must be based on the same analysis and considerations as in other types of cases). A permanent injunction must comply with Federal Rule of Civil Procedure 65(d) and, following a finding of patent infringement, should typically be limited to a prohibition against the "manufacture, use, or sale of the specific infringing device, or to infringing devices no more than colorably different from the infringing device." *Additive Controls & Measurement Sys. Inc. v. Flowdata, Inc.*, 986 F.2d 476, 479-80 (Fed.Cir.1993).

Plaintiffs' request is appropriately limited. And based on the particular facts of this case, a permanent injunction is warranted. As a preliminary matter, the Court finds that Plaintiffs suffered "irreparable harm" for which they have not been compensated. Although "irreparable harm" evades easy definition, it "is often suffered when the injury can[not] be adequately atoned for in money ... or when the district court cannot remedy [the injury] following a final determination on the merits." *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir.2001) (citations and quotations omitted). As a result of Defendants' infringement, Plaintiffs suffered injuries in addition to lost sales. Specifically, Plaintiffs note that they lost market share and "the opportunity to maintain their own polymer stick to as the industry standard" and that their "reputation for innovation" was damaged as a result. (Pls.' Reply at 8-9.) Thus, damages, either awarded by the jury or trebled, do not necessarily take into account other items of loss.

The respective hardships to the parties, when balanced, and the public's interest also weigh in favor

Slip Copy                                                                                   Page 5
Slip Copy, 2006 WL 2128851 (W D Okla )
(Cite as: 2006 WL 2128851 (W.D.Okla.))

of a permanent injunction. Defendants have not identified any specific hardship they might suffer as a result of an injunction. Instead, Defendants' object to an injunction as unnecessary. As support, they note the immediate cessation of Hole Sweep Stick sales upon learning of the Wald patent and profess the intention not to sell Poly Drill Sticks again unless the Court enters a judgment of non-infringement. However, given the finding of willful infringement and because there have been no indications that Defendants do not still possess an inventory of these products or the ability to secure more, the Court is unpersuaded that there is no need for an injunction. *Cf W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 842 F.2d 1275, 1281-82 (Fed .Cir.1988) (noting absence of reason for stopping infringement, failure to profess an intention not to infringe in the future, and the capacity to resume production as supporting the grant of an injunction). Plaintiffs bear the risk of future infringement, while there appears to be no harm to Defendants or the public's interest resulting from an injunction. Therefore, the Court finds that equitable considerations support Plaintiffs' request for a permanent injunction on the terms proposed.

5. Defendants' Counterclaims

*6 Plaintiffs ask the Court to deny relief to Defendants on their counterclaims: one for a declaration of non-infringement and two for a declaration of patent invalidity. In response, Defendants refer to the arguments raised in their motion for judgment as a matter of law and concede that the issue of invalidity was waived. Based on the Court's order denying Defendants' motion, there is no basis on which to argue that Defendants are entitled to relief. Therefore, Plaintiffs' request is granted.

6. Costs and Post-Judgment Interest

Plaintiffs also ask that they be permitted to recover costs as the "prevailing party" in accordance with Federal Rule of Civil Procedure 54(d)(1) and post-judgment interest on the money judgment entered in accordance with 28 U.S.C. § 1961. Defendants do not challenge Plaintiffs entitlement to post-judgment interest at the statutory rate (or prejudgment interest at the rate requested) However, Defendants ask the Court not to award costs.

Rule 54(d)(1) provides, "Except [in situations not applicable here], costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs." Defendants argue that Plaintiffs were not prevailing parties because they

were only partially successful. (Defs' Resp. at 14.) The Court does not agree. Even though Defendants conceded infringement based on sales of the Hole Sweep Sticks, trial was necessary on the issue of damages, which were awarded. The jury also found that Defendants' sales of the Poly Drill Sticks infringed the Wald patent and awarded Plaintiffs damages. In addition, the jury found that Defendants' infringement was willful. Under these circumstances, the Court will not deny Plaintiffs' costs. Those costs may be taxed by the Court Clerk in accordance with Federal and Local Rules

CONCLUSION

Accordingly, Plaintiffs' Motion for Judgment (Dkt. No. 73) is GRANTED in part and DENIED in part. Plaintiffs' Supplemental Motion for Judgment (Dkt No. 76) is DENIED. Judgement will issue in accordance with the rulings announced herein and include, as damages: $1,000.00 awarded by the jury based on Defendants' sales of Hole Sweep Sticks, $76,017 84 awarded by the jury based on Defendants' sales of Poly Drill Sticks, and $152,035.68 as increased damages. Plaintiffs are entitled to recover prejudgment interest at the prime rate compounded monthly, post-judgment interest at the statutory rate, and costs. Plaintiffs are also entitled to a permanent injunction as described above. No accounting will be awarded for sales of Poly Drill Sticks after January 18, 2006, nor will the Court award damages based on those sales for the reasons set forth above. Plaintiffs shall not recover their attorney fees.

IT IS SO ORDERED this 27th day of July, 2006.

Slip Copy, 2006 WL 2128851 (W D Okla.)

**Motions, Pleadings and Filings (Back to top)**

• 2006 WL 1506580 (Expert Report and Affidavit) Declaration (May 3, 2006)Original Image of this Document (PDF)

• 2006 WL 814376 (Trial Motion, Memorandum and Affidavit) Brief in Support of Defendants' Motion for Partial Summary Judgment (Feb 15, 2006)Original Image of this Document (PDF)

• 2006 WL 497655 (Trial Pleading) Answer to Second Amended Complaint (Jan. 13, 2006)Original Image of this Document (PDF)

• 2005 WL 176533 (Trial Pleading) Answer (Jan. 5, 2005)Original Image of this Document (PDF)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works

Slip Copy
Slip Copy, 2006 WL 2128851 (W D Okla )
(Cite as: 2006 WL 2128851 (W.D.Okla.))

Page 6

• 5:04cv01693 (Docket) (Dec. 14, 2004)

• 2004 WL 3139204  (Trial Pleading) Complaint
(2004)Original Image of this Document (PDF)

• 2004 WL 3139216  (Trial Pleading) Amended
Complaint (2004)Original Image of this Document
(PDF)

• 2004 WL 3778215  (Trial Motion, Memorandum
and Affidavit) Plaintiffs' Brief in Opposition to
Motion    for    Partial    Summary    Judgment
(2004)Original Image of this Document (PDF)

• 2004 WL 3778216  (Trial Motion, Memorandum
and Affidavit) Plaintiffs' Trial Brief (2004)Original
Image of this Document (PDF)

• 2004 WL 3804383  (Expert Report and Affidavit)
Declaration (2004)Original Image of this Document
(PDF)

END OF DOCUMENT

© 2006 Thomson/West  No Claim to Orig  U.S  Govt  Works