# EXHIBIT 3

Westlaw.

Slip Copy                                                        Page 1

Slip Copy, 2005 WL 3454283 (D Del )
(Cite as: Slip Copy)

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Delaware
ADVANCED MEDICAL OPTICS, INC., a
Delaware corporation, Plaintiff,
v.
ALCON LABORATORIES, INC., a Delaware
corporation, and Alcon Manufacturing, Ltd, a Texas
Limited Partnership, Defendants.
No. Civ.A. 03-1095-KAJ.

Dec. 16, 2005.

Richard L. Horwitz, David E. Moore, Potter
Anderson & Corroon LLP, Wilmington, Delaware,
for Plaintiff, A. James Isbester, Gillian W. Thackray
, Isbester & Associates, Berkeley, California, of
Counsel
Josy W. Ingersoll, Melanie K. Sharp, Young
Conaway Stargatt & Taylor, LLP, Wilmington,
Delaware, for Defendants, Robert G. Krupka,
Kirkland & Ellis LLP, Los Angeles, California,
Linda S. Resh, Kirkland & Ellis LLP, Chicago,
Illinois, of Counsel.

MEMORANDUM OPINION
JORDAN, J.

I. INTRODUCTION

*1 American Medical Optics, Inc ("AMO")
brought this patent infringement suit against Alcon
Laboratories, Inc and Alcon Manufacturing, Inc
(collectively, "Alcon") After a two week trial, the
jury found that Alcon had willfully infringed two of
AMO's patents, U.S. Patent Nos. 5,700,240 (issued
Dec 23, 1997) (the " '240 patent") and 6,059,765
(issued May 9, 2000) (the " '765 patent") and that
neither of the patents were invalid Before me now
are several post-trial motions brought by Alcon
seeking: (1) Judgment as a Matter of Law of
Noninfringement of the Asserted Claims of the '240

Patent or in the Alternative, a New Trial (Docket
Item ["D.I."] 337); (2) Judgment as a Matter of Law
of Obviousness of the Asserted Claims of the '240
Patent or in the Alternative, a New Trial (D.I.339);
(3) New Trial Based on the Exclusion of a Rebuttal
Witness (D.I.343); (4) Judgment as a Matter of Law
of Noninfringement of the Asserted Claims of the
'765 Patent or in the Alternative, a New Trial
(D.I.341); (5) Judgment as a Matter of Law
Regarding the Jury's Willfulness Finding or in the
Alternative, a New Trial (D.I.335); and (6)
Judgment as a Matter of Law on Damages or in the
Alternative, a New Trial (D.I.334) Also before me
are AMO's Motions for Attorney Fees and
Enhanced Damages (D.I.312) and for a Permanent
Injunction (D.I.310), and Alcon's Motion for a Stay
of Injunction pending appeal (D.I.316) For the
reasons set forth herein, I will deny all of Alcon's
motions for judgment as a matter of law and a new
trial, I will grant AMO's motions for enhanced
damages, attorneys' fees, and a permanent
injunction, and I will grant Alcon's motion for a stay
of injunction pending appeal

II. BACKGROUND

The background of this case has been set forth in a
prior opinion, and will not be set forth in detail
here. *See Advanced Med Optics, Inc v. Alcon Inc*.
361 F Supp.2d 370, 373-75 (D Del 2005) (claim
construction opinion)

Both patents cover apparatuses and methods related
to the surgical removal of cataracts using
phacoemulsification "The '240 patent discloses a
method and apparatus for varying the ultrasonic
power delivered to the surgical handpiece during a
phacoemulsification procedure." *Id.* at 375 (citing
the '240 patent). The feature claimed by the '240
patent was referred to at trial as "occlusion mode " (
*See, e g ,* Trial Transcript ["Tr "] at C-205:2-5 ) "
The '765 patent relates to a fluid management
apparatus [and a] ... method for reducing

© 2006 Thomson/West No Claim to Orig U S Govt Works

Slip Copy

Slip Copy, 2005 WL 3454283 (D Del.)
(Cite as: Slip Copy)

Page 2

expandable gas in ... a fluid management system "
*Advanced Med Optics,* 361 F.Supp 2d at 375
(citing the '765 patent)

The parties tried the issues of infringement and
invalidity to a jury in a two week trial At the end of
the trial, the jury returned a verdict finding that the
accused Alcon AdvanTec Legacy and Infiniti
devices infringed claims 5 and 6 of the '240 patent,
that Alcon had induced infringement of claims 1
and 3 of the '240 patent, and that Alcon had
contributed to infringement of claims 5 and 6 of the
'240 patent by selling consumables used as part of
the Infiniti device (Tr at J-8:8-18 ) The jury also
found that the Infiniti infringed claim 13 of the '765
patent, that Alcon induced infringement of claim 19
of the '765 patent, and that Alcon had contributed to
infringement of claim 19 by selling the Infiniti and
associated consumables (Tr. at J-8:19-9:2 ) The
jury found that the infringement of both patents was
willful (Tr. at J-9:22-25 ) Finally, the jury found
that none of the asserted claims were invalid (Tr.
at J-9:3-12.) The jury awarded lost profits and
reasonable royalties for the infringement of the '240
patent and reasonable royalties for the infringement
of the '765 patent (Tr at J-9:13-21.)

### III STANDARD OF REVIEW

*2 Judgment as a matter of law should be granted
when "there is no legally sufficient evidentiary basis
for a reasonable jury to find for [the prevailing]
party " Fed R Civ P. 50(a). The review of the
sufficiency of the evidence must take the record as
presented to the jury *Lightning Lube, Inc v Witco
Corp,* 4 F 3d 1153, 1199 (3d Cir 1993) The proper
question is "whether there is evidence upon which a
reasonable jury could properly have found its
verdict " *Johnson v Campbell,* 332 F 3d 199, 204
(3d Cir 2003) (quoting *Gomez v Allegheny Health
Servs . Inc .* 71 F 3d 1079, 1083 (3d Cir 1995))

"A new trial may be granted to all or any of the
parties and on all or part of the issues in an action in
which there has been a trial by jury, for any of the
reasons for which new trials have heretofore been
granted in actions at law in the courts of the United
States " Fed.R.Civ P. 59(a) The court may order a

new trial "where there is insufficient evidence to
support the verdict or where the verdict is against
the weight of the evidence " *Greenleaf v Garlock,
Inc ,* 174 F.3d 352, 365 (3d Cir 1999). The court
may also order a new trial if a party has been
prejudiced by the improper exclusion of evidence
*Meyers v Pennypack Woods Home Ownership
Ass'n,* 559 F 2d 894, 904-05 (3d Cir 1977)

### IV. DISCUSSION

#### A. '240 Patent Infringement

The jury concluded that Alcon's AdvanTec Legacy
and Infiniti phacoemulsification devices infringed
claims 1, 3, 5, and 6 of the '240 patent Alcon asks
for judgment as a matter of law that these claims
were not infringed, or alternatively, for a new trial
Because the weight of the evidence before the jury
supported its conclusion that Alcon's devices
infringe, I will deny Alcon's motion

Alcon first argues that the verdict cannot stand
because it is based on expert testimony that failed to
apply the correct legal standard for patent
infringement. (D.I 338 at 11-13 ) According to
Alcon, the infringement analysis by AMO's expert,
Harold Walbrink, ignored my construction of the
'240 claims. (*Id*) Alcon argues that Walbrink was
required to explain the claim construction language
and to testify explicitly in terms of that language
But, while that may be the better method, Alcon
points to no case requiring that structural formality.
Walbrink's testimony shows that he used the claim
construction in his analysis of the '240 patent (Tr.
at C-148:11-13, 150:23-25 ) Thus, his expert
opinion was based on the claims as construed, and
that opinion, coupled with the construed claims
given to the jury and the facts presented concerning
the accused devices, was more than sufficient to
support a finding of infringement based on the
correct legal standard

Alcon next argues that AMO has presented no
evidence that any doctor ever used the accused
occlusion mode feature on the Alcon devices. (D.I
338 at 14-20 ) As a result, according to Alcon, the

© 2006 Thomson/West No Claim to Orig U S Govt Works

Slip Copy                                                                                           Page 3

Slip Copy, 2005 WL 3454283 (D.Del.)
(Cite as: Slip Copy)

jury's conclusions of indirect infringement of method claims 1 and 3 (*id* at 14-17) and direct infringement as well as contributory infringement of apparatus claims 5 and 6 (*id* at 17-20) are not supported by any evidence. Alcon's main argument on this point is that AMO's direct evidence (*see* Plaintiff's Trial Exhibit ["PTX"] 278; Tr. at E-6:3-21, E-7:13-22, E-10:6-9) shows doctors using pulse mode, and that mode does not infringe the '240 claims because it merely turns the power on and off, which is outside the scope of the construed '240 claims. AMO counters that enabling pulse mode should be interpreted as a decrease in power rather than switching the power on and off, an interpretation that has some support in the trial record. (*See, e g*, PTX 181 at ALDE015347; PTX 207 at AMO00714 (Alcon operating manuals each describing power reduction resulting from changing either the stroke length or the pulse time).) But even if Alcon infringes only when the devices are used to decrease power in continuous mode, the jury was presented with considerable evidence that the devices are so used

*3 First, it is uncontested that, when enabled and set by the user, the accused devices all allow the user to vary the power. (Tr. at H-87:1-6, H-88:11-15.) Second, Alcon's operating manuals for the accused devices instruct customers on how to vary the power (PTX 181 at ALDE015376-77; PTX 207 at AMO00714; Tr. at C-158:16-163:24.) Finally, Alcon advertised its occlusion mode features (PTX 354; Tr. at F-196:25-197:16, F-219:25-227:6.) This circumstantial evidence supports the conclusion not only that the devices are capable of an infringing mode, but that they were actually used in that mode

Alcon's pointing to individual doctors who do not use the mode does not require a different conclusion. The circumstantial evidence that doctors did use the accused devices in an infringing mode supports the jury's conclusion of direct infringement of claims 5 and 6 and indirect infringement of contributory infringement of claims 1 and 3. The conclusion of contributory infringement of claims 5 and 6 is supported by the sale of handpieces and packs that are elements of the claimed invention and can only be used with the Infiniti device. Alcon's contention that the devices may be used in a noninfringing

mode does not overcome the jury's implicit conclusion that the devices are, in fact, used in an infringing mode.

Alcon further argues that AMO provided no evidence that the Alcon devices were used to change the power when the vacuum reached a " particular numeric value," as required by the pertinent claim constructions. (D.I. 338 at 15; D.I. 363 at 16-17.) The cited evidence supporting the conclusion that doctors actually used the infringing mode overcomes that argument as well

The jury's verdict was based on the correct legal analysis and was not against the weight of the evidence. Therefore, Alcon's motion for judgment as a matter of law of noninfringement of the asserted '240 claims or, alternatively, for a new trial will be denied

### B. *Obviousness of the '240 Claims*

The jury concluded that the claims of the '240 patent were nonobvious in light of the prior art. Alcon asks for judgment as a matter of law that the asserted claims of the '240 patent are obvious, or alternatively, for a new trial. Because the weight of the evidence before the jury supports its conclusion that Alcon had failed to prove obviousness by clear and convincing evidence, I will deny Alcon's motion

Alcon brings this motion despite the fact that it failed to make a motion on this issue under Federal Rule of Civil Procedure 50 at the close of the evidence. Opposing AMO's motion on validity (Tr. at H-79:25-80:17), renewing its own motions on infringement (Tr at H-179:2-3), and attempting to later include "the rebuttal against [its own] direct case" in these renewed motions (Tr. at I-3:18-25) are not sufficient for Alcon to squarely bring its invalidity arguments to the court's attention. By failing to make a Rule 50 motion on the issue at the close of evidence, Alcon waived the right to challenge the verdict on obviousness. *See. e g*, *Hopp v. City of Pittsburgh*. 194 F.3d 434, 440 (3d Cir 1999) (finding that a party waived an argument that it failed to include in its pre-verdict Rule 50

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                      Page 4

Slip Copy, 2005 WL 3454283 (D.Del.)
**(Cite as: Slip Copy)**

motion); *Duro-Last, Inc. v. Custom Seal, Inc.* 321 F.3d 1098, 1108 (Fed.Cir.2003) (same).

*4 But even if Alcon had preserved the obviousness issue, its motion for judgment as a matter of law would be denied because the jury had before it a record sufficient to conclude that Alcon had failed to prove obviousness of the '240 patent by clear and convincing evidence. Alcon's obviousness argument depended on combinations of prior art that included a Japanese patent application (the "Shimizu Reference"). AMO presented evidence that the Shimizu Reference was outside the scope of pertinent prior art because it does not teach a method for phacoemulsification or for eye surgery (Tr. at B-33:22-34:15, B-34:21-35:15) and may actually be inconsistent with the teaching of the '240 patent (Tr. at B-36:21-37:2). As a result, the jury could reasonably conclude that persons having ordinary skill in the art would not be motivated to combine the Shimizu Reference with prior art phacoemulsification systems. That conclusion on its own defeats Alcon's obviousness position.

The alternative motion for a new trial also fails because the weight of the evidence concerning the inapplicability of the Shimizu Reference supports the jury's conclusion that Alcon had failed to prove obviousness by clear and convincing evidence.[FN1]

> FN1. In this motion on obviousness, Alcon also seeks, in the guise of a motion for a new trial, a reconsideration of my construction of the terms "variably controlling" and "for varying the ultrasonic power" in claims 1 and 5 of the '240 patent (D.I. 340 at 28-29; D.I. 364 at 19-20.) Whether or not this is a proper issue for this post-trial motion, Alcon's arguments that the '240 prosecution history and the recent decision in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed.Cir.2005) require a change in my construction fail. The construction was based on the language of the claim itself, which stated that the power was "being provided" already and was inconsistent with power being turned on and off in response to the vacuum

sensor. *Advanced Med. Optics.* 361 F.Supp.2d at 382.

Therefore, Alcon's motion for judgment as a matter of law of obviousness of the asserted '240 claims or, alternatively, for a new trial will be denied.

### C. Exclusion of Shimizu as a Rebuttal Witness

Alcon seeks a new trial based on the exclusion of Kimiya Shimizu as a rebuttal witness. At trial, Alcon sought to call Shimizu, the author of the eponymous prior art reference used in Alcon's obviousness case, to rebut the testimony of B.J. Barwick, one of the inventors named on the '240 patent. Barwick testified that he had discussed phacoemulsification and occlusion mode with Shimizu but that Shimizu did not suggest the idea for occlusion mode and was not involved in its development. (Tr. at B-132:22-136:12.) Alcon claims that Shimizu would have contradicted Barwick's testimony and that this was relevant not for the issue of inventorship, but for the issue of obviousness based on the Shimizu Reference. (D.I. 344 at 5-6, 11; D.I. 362 at 7-8, 11.) According to Alcon, Barwick's surprising testimony made Shimizu's testimony necessary, and Shimizu's exclusion prejudiced Alcon to such an extent that a new trial is warranted. (D.I. 344 at 8-11.)

Alcon argues that the exclusion of Shimizu's testimony allowed AMO to argue that the Shimizu Reference was not related to phacoemulsification and so did not support Alcon's argument that the claims of the '240 patent were obvious (*Id.* at 11; D.I. 362 at 7-8.) This argument fails for at least two reasons. First, the relevance of Shimizu's proposed testimony to the obviousness argument is tenuous at best. Alcon argued to the jury that the reference was relevant prior art even without this testimony, and the scope of that reference is necessarily independent of the author's alleged involvement in the development of occlusion mode. Second, even if the testimony were relevant for obviousness, as Alcon argues, nothing in Barwick's testimony suddenly made such testimony necessary. As I said during trial, I do not accept Alcon's argument that it was surprised. (Tr. at F-48:11-23.) Alcon is the one

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 5

Slip Copy, 2005 WL 3454283 (D Del )
(Cite as: Slip Copy)

that raised the Shimizu Reference as a critical piece of invalidity evidence, and, if Shimizu's testimony were truly important, then Alcon could and should have included him as a witness in their case in chief, thereby allowing AMO to prepare for his testimony

*5 Therefore, Alcon's motion for a new trial based on the exclusion of Shimizu's testimony will be denied

### D '765 Patent Infringement

The jury concluded that Alcon infringed claims 13 and 19 of the '765 patent. Alcon asks for judgment as a matter of law that these claims were not infringed, or alternatively, for a new trial Because the weight of the evidence before the jury supported its conclusion of infringement, I will deny Alcon's motion

Alcon first argues that the jury had insufficient evidence to conclude that the accused device had an outlet "disposed along the housing longitudinal axis, " as required by claims 13 and 19 (D I 342 at 7-11 ) I construed that limitation to mean "placed through, on, over, or continuously beside or on a line or course parallel with or close to the lengthwise centerline of the housing " Advanced Med Optics, 361 F Supp 2d at 387 According to Alcon, AMO's infringement analysis effectively eliminated that limitation from the claims, by eliminating the need for the outlet to be "close to" the centerline (id at 7-9), and also improperly combined it with the limitation requiring the outlet to be below the pump (id at 9-11) On the first point, the jury was presented with testimony from AMO's expert, Walbrink, that the outlet is one inch away from, and therefore "close to," the centerline (Tr at C-184:5-188:7 ) While Alcon's expert disagreed that one inch is "close to" the centerline, the jury was entitled to credit Walbrink's testimony and its own judgment that one inch was close enough to satisfy the claim limitation On the second point, while Walbrink testified that he believed the Infiniti outlet was positioned where it was so that it was below the pump (Tr at C-187:21-188:2), he never testified that he concluded that the outlet met the " disposed along" limitation because it was below the

pump Thus, contrary to Alcon's assertion, Walbrink did not improperly combine claim limitations

Alcon also argues that the jury had insufficient evidence to conclude that the accused device had a structure equivalent to the one disclosed in the '765 patent as corresponding to the "means for engaging and holding" limitation in claim 13 (D I 342 at 11-15 ) The structure corresponding to this means-plus-function claim is the frame, hinge mounted to a face, latch, and lip structures found in Figure 4 of the '765 patent Advanced Med Optics, Inc v Alcon Inc, 361 F Supp 2d 404, 412 (D Del 2005) (summary judgment opinion). Contrary to Alcon's position, Walbrink testified that Alcon's Infiniti device had a structure that was equivalent and interchangeable with the structure disclosed in the patent (Tr at C-174:17-21, C-190:11-191:5 )

Alcon contends that Walbrink's testimony is insufficient (D I 342 at 13-15) because it fails to provide the "particularized testimony and linking argument" about the insubstantiality of differences required for the jury to decide the issue of infringement under the doctrine of equivalents Tex Instruments Inc v Cypress Semiconductor Corp, 90 F 3d 1558, 1566-67 (Fed Cir 1996); Lear Siegler, Inc v Sealy Mattress Co, 873 F 2d 1422, 1426 (Fed Cir 1989) Indeed, the jury must receive guidance on a limitation-by-limitation basis as to how an accused product infringes under the doctrine of equivalents Tex Instruments, 90 F 3d at 1566-67 . However, the issue presented here is literal infringement of a means-plus-function claim While the necessary analysis may be similar to that under the doctrine of equivalents, the Federal Circuit has yet to impose a heightened evidentiary requirement in the context of means-plus-function structural equivalents See Lucent Techs . Inc v Newbridge Networks Corp, 168 F Supp 2d 181, 211-12 (D Del 2001) ("[M]ore generalized testimony from expert witnesses has been sufficient to establish literal infringement where Section 112, Paragraph 6 limitations are involved ") (citing Symbol Techs, Inc v Opticon, Inc, 935 F 2d 1569 (Fed Cir 1991) ) Even so, unlike the witnesses in Texas Instruments, 90 F 3d at 1567-68, and Lear Siegler, 873 F 2d at 1426, Walbrink directly addressed the

© 2006 Thomson/West No Claim to Orig U S Govt Works

Slip Copy                                                    Page 6

Slip Copy, 2005 WL 3454283 (D Del )
(Cite as: Slip Copy)

issue of structural equivalence, and his testimony, coupled with the other evidence about the accused devices, was enough to support the jury's conclusion of literal infringement

*6 Because the jury's infringement verdict was supported by the weight of the evidence, Alcon's motion for judgment as a matter of law of noninfringement of the asserted '765 claims or, alternatively, for a new trial will be denied

Alcon also seeks a new trial because the conclusion that the '765 patent reads on the Infiniti device means both that the "disposed along" limitation is indefinite (D I. 342 at 15-17) and that claims 13 and 19 are anticipated by the Alcon Legacy (*id.* at 17-26). Both arguments fail. First, the fact that Alcon disagrees with the jury's implicit factual determination that the Infiniti outlet was "close to" the centerline does not render the claim term indefinite. Second, as to anticipation, the jury was presented with evidence that the Legacy lacked a chamber (Tr. at H-153:18-24), that if it did have a chamber it would not be vertically oriented (Tr. at H-154:6-14), and that if it did have a chamber it was not generally circular as required by the claim construction (Tr. at H-154:17-155:7). Again while Alcon's expert disagreed, the jury was entitled to credit this testimony. Because the jury's conclusion does not go against the weight of the evidence, Alcon's motion for a new trial on indefiniteness and anticipation will be denied FN2

> FN2. As for the '240 patent, Alcon seeks, in the guise of a motion for a new trial, a reconsideration of my construction of the term "disposed along." (D I. 342 at 29-30.) Again, Alcon fails to show that the recent decision in *Phillips v AWH Corp.* 415 F.3d 1303 (Fed Cir 2005) made my construction incorrect as a matter of law. *Advanced Med Optics,* 361 F Supp 2d at 387-90

### E. *Willfulness*

The jury found that Alcon had willfully infringed the '240 and '765 patents Alcon asks for judgment

as a matter of law that its infringement was not willful, or, in the alternative, for a new trial. Because the jury's decision on willfulness was supported by the weight of clear and convincing evidence, I will deny Alcon's motion

### 1. *The '240 Patent*

For the '240 patent, Alcon argues that it discovered the patent on its own, and obtained opinions from in-house and outside counsel that the patent was invalid before it implemented occlusion mode on its machines (D I. 336 at 9-10.) However, a finding of willfulness is based on the totality of the circumstances, and an opinion from counsel is not an automatic shield. *Comark Communications, Inc v Harris Corp.,* 156 F 3d 1182, 1190-91 (Fed Cir 1998) Here, the jury was presented with clear and convincing evidence that Alcon intentionally copied the occlusion mode from AMO's Sovereign machine, that the opinions of counsel were inadequate, and that Alcon did not rely on the opinions

Before it introduced occlusion mode on its machines, Alcon had access both to the '240 patent (Tr. at E-81:21-23, H-85:5-6) and to an AMO Sovereign that it received through a third party (Tr at D-25:3-29:17) Alcon prepared an extensive report on the Sovereign, including the implementation of occlusion mode. (PTX 127 at 4.) While Alcon argues that it made this report on the Sovereign occlusion mode only after receiving the invalidity opinion from outside counsel (D I. 336 at 16), it is still evidence to support the jury's conclusion that infringement was willful

Concerning the invalidity opinions, AMO presented evidence that the lawyers' reliance on the Shimizu Reference was not only incorrect but also incompetent because the reference was not in the relevant field (Tr. at E-103-05, G-21-23, G-60-61), and that Alcon did not rely on the opinion of outside counsel because it continued its development efforts after learning of the '240 patent but before the opinion letter was received (PTX 46; PTX 94). On the latter point, while Alcon's in-house counsel testified that he knew what the outside

© 2006 Thomson/West No Claim to Orig U S Govt Works

Slip Copy                                                                                          Page 7

Slip Copy, 2005 WL 3454283 (D.Del.)
**(Cite as: Slip Copy)**

counsel's opinion would be before the letter was formally written (Tr. at F-241:2-24), the jury was entitled to discredit his testimony. Even with that offered explanation, however, the evidence of continuing work on occlusion mode supports the conclusion that Alcon was bent on copying that patented feature and did not actually rely on the opinion of counsel concerning the '240 patent.

### 2. The '765 Patent

*7 For the '765 patent, Alcon argues that it learned of the '765 patent when AMO brought this lawsuit, and it promptly obtained an opinion from outside counsel that its machines did not infringe the patent (D.I. 336 at 16-18.) But the jury was presented with clear and convincing evidence that Alcon intentionally copied the fluidics system from AMO's Sovereign machine before it sought an opinion letter.

Alcon had access to a Sovereign machine that it received through a third party. (Tr. at D-25:3-29:17.) Alcon tested forty Sovereign tubing packs, which incorporated the fluidics system claimed by the '765 patent, (PTX 132; Tr. at D-58), and photographed the Sovereign cassette (PTX 132 at 7). Along with the machine, Alcon had access to the Sovereign operator's manual (*see* PTX 127 at AL.DE052477; PTX 131 at AL.DE052531 (documents reviewed by Alcon engineers that refer to the manual)), and the manual listed the patents covering the Sovereign, which included the '765 patent (Tr. at E-24:18-22).[FN3] AMO presented evidence that the design of Alcon's fluidics system changed after Alcon had access to the Sovereign. (Tr. at E-58-59; PTX 124.) All of this occurred before this lawsuit was filed and before Alcon sought an opinion of counsel concerning infringement. Based on all of the evidence, the jury was entitled to conclude that Alcon intentionally copied the Sovereign system, while knowing from the manual that the system was patented.

> FN3. While the manual listing is not sufficient to meet the marking requirements of 35 U.S.C. § 287, it is

sufficient to show notice in support of willfulness. *See Stryker Corp. v. Intermedics Orthopedics, Inc.*, 96 F.3d 1409, 1415 (Fed.Cir.1996) (finding that notice from the Patent Office Official Gazette could support a finding of willfulness)

### 3. Conclusion

Accordingly, as to both the '240 and '765 patents, the jury's determination of willfulness was supported by evidence that a rational jury could view as clear and convincing. Therefore, Alcon's motion for judgment as a matter of law or, alternatively, for a new trial will be denied.

### F. Damages

#### 1. Lost Profits for the '240 Patent

The jury awarded lost profits for a percentage of the sales of Alcon AdvanTec Legacy and Infiniti phacoemulsification devices as a remedy for the infringement of the '240 patent. Alcon seeks judgment as a matter of law that AMO is not entitled to any lost profits for infringement of the '240 patent, or, alternatively, for a new trial, because according to Alcon, AMO has failed to establish the absence of acceptable non-infringing substitutes (D.I. 331 at 8-19.) Because the jury's implicit conclusion on this issue is supported by the weight of the evidence, Alcon's motion will be denied.

Alcon's argument is based on the alleged availability of an "ultra pulse" feature, which was described at trial as being similar to AMO's technology (Tr. at B-25:10-21.) Randall Olson, M.D., testified that because he used a specific AMO feature called "Whitestar," he did not need to use occlusion mode. (Tr. at B-24:13-24.) According to Alcon, Olson's testimony establishes that Whitestar, and Alcon's own similar ultra pulse, are acceptable non-infringing substitutes for the '240 invention. (D.I. 331 at 9-10.) Alcon also argues that AMO's

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                              Page 8

Slip Copy, 2005 WL 3454283 (D. Del.)
(Cite as: Slip Copy)

damages expert, Jonathan Putnam, gave misleading testimony about the behavior of the market because he ignored the impact of ultra pulse and attributed increased sales by Alcon to occlusion mode instead (*Id.* at 13-19.) These arguments depend on ultra pulse being an acceptable substitute, which in turn depends on whether the market is defined to include any method of reducing injury from wound burn, as Alcon contends, or includes methods of automatically controlling ultrasound power. The jury was presented with testimony from Putnam that doctors who demanded the infringing occlusion mode would only consider products that allowed for automatic control of power, and that the AMO machines were the only such alternative (Tr. at D-110:24-111:18.) Despite Olson's testimony that he did not use occlusion mode, the jury was entitled to credit Putnam's interpretation of the market, in which, for some percentage of doctors, the only acceptable substitute machines would be those with occlusion mode. Putnam conceded that this would be less than half of all doctors (Tr at D-111:25-115:19), and so lost profits were requested for only a fraction of Alcon's sales.

**\*8** Because the jury was entitled to credit Putnam's interpretation of the market and the results of his analysis, Alcon's motion for judgment as a matter of law that lost profits should not be awarded, or, alternatively, for a new trial will be denied.

Alcon also seeks a new trial based on the argument that the jury's award of lost profits depends on implicit findings of demand for occlusion mode and AMO's capacity to meet such demand and that those findings are against the weight of the evidence. (D.I. 331 at 20-26.) First, on the demand issue, Alcon argues that the sales trends discussed by Putnam do not show any increase due to occlusion mode (*Id.* at 21-26.) Putnam, of course, disagreed. (Tr. at D-113:17-18.) Moreover, the sales trend is only part of the evidence of demand. Both AMO and Alcon advertised the feature. (PTX 226; PTX 278; PTX 284; PTX 285; PTX 289; PTX 310; Tr. at D-100:16-101:10.) Doctors promoted its use (Tr. at B-23:2-19, C-207:15-17.) Finally, Alcon surveyed doctors and found that they considered the feature to be useful. (PTX 34.) Thus, the conclusion that there was demand for occlusion mode was not

against the weight of the evidence. [FN4]

> FN4 Alcon's assertion that Putnam's testimony on demand was misleading because he did not consider the AMO Diplomax machine was addressed during cross-examination. The jury could permissibly rely on his explanation that he did not consider the Diplomax to be in the relevant market (Tr. at D-180:13-181:23).

Second, on the capacity issue, Alcon contends that AMO would not have been able to make the additional sales for which it received lost profits, because this would have doubled AMO's sales and would have required AMO to sell in markets where it had no sales presence (D.I. 331 at 26.) However, AMO's Chief Marketing Officer testified that AMO had the capacity to make these sales with its current sales force (Tr. at C-252:3-253:5), and Putnam testified similarly (Tr. at D-108:12-18). Again, the conclusion that AMO had sufficient marketing capacity was not against the weight of the evidence.

Accordingly, Alcon's motion for a new trial based on the jury's award of lost profits will be denied.

### 2. *Reasonable Royalty for the '240 and '765 Patents*

Alcon also seeks a new trial because the jury's award of reasonable royalty damages for infringement of the '240 and '765 patents is not supported by evidence showing that the royalty base should include the entire value of the AdvanTec Legacy and Infiniti machines (D.I. 331 at 27-29.) According to Alcon, the royalty base should be limited to the value of the upgrades that enabled occlusion mode (for the '240 patent) and the value of the fluidics cassettes (for the '765 patent) because these are the new features that embody the inventions (*Id.* at 27.) This argument fails because for both the '240 and '765 patents, the asserted claims cover elements found throughout the phacoemulsification devices, including, for example, handpieces and pumps ('240 patent at 7:33-57, 7:62-8:2, 8:18-37; '765 patent at 6:3-27, 6:44-63.) Therefore, the royalty base presented to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works

Slip Copy                                                                                           Page 9

Slip Copy, 2005 WL 3454283 (D Del )
**(Cite as: Slip Copy)**

the jury was proper.

Accordingly, Alcon's motion for a new trial based
on the jury's award of reasonable royalties will be
denied

### G. Enhanced Damages and Attorneys' Fees

**\*9** Based largely on the jury's determination of
willful infringement, AMO seeks enhanced
damages and attorneys' fees. After review, I agree
that this is an exceptional case, that the damages
award should be trebled, and that reasonable
attorneys' fees should be awarded

In exceptional cases of patent infringement, a court "
may increase the damages up to three times." 35
U.S.C. § 284 This provision reflects "the tortious
nature of patent infringement and the public interest
in a stable patent right." *SRI Int'l, Inc v. Advanced
Tech Labs, Inc*, 127 F.3d 1462, 1464
(Fed.Cir 1997) Enhanced damages are appropriate
if the "infringer is guilty of conduct upon which
increased damages may be based," and if the "
totality of the circumstances" supports an enhanced
award. *Jurgens v CBK, Ltd*. 80 F.3d 1566, 1570
(Fed Cir 1996) (citing *Read Corp v Portec, Inc*.
970 F 2d 816, 826-27 (Fed Cir 1992)). While the
court must decide whether enhanced damages are
appropriate, *Brooktree Corp v. Advanced Micro
Devices, Inc*. 977 F 2d 1555, 1581 (Fed Cir 1992),
a jury's finding of willful infringement is relevant to
that decision, *see Knorr-Bremse Systeme Fuer
Nutzfahrzeuge GmbH v Dana Corp*, 383 F 3d
1337, 1348 (Fed Cir 2004). Furthermore, "[w]here
a jury has found willful infringement, a district
court must provide reasons for refusing to enhance
damages [and] ... must take care to avoid second
guessing the jury or contradicting its findings."
*Applied Med Res Corp v US Surgical Corp*,
967 F.Supp. 861, 863 (E.D Va 1997) (citing
*Jurgens*. 80 F 3d at 1572-74)

Here, the jury's conclusion that infringement was
willful shows that Alcon was guilty of conduct upon
which increased damages may be based The "
totality of the circumstances" may be addressed by
considering certain factors suggested by the Federal

Circuit in *Read,* 970 F 2d at 827 (listing nine
factors) In this case, I find the most relevant *Read*
factors to be: (1) "whether the infringer deliberately
copied the ideas or design of another;" (2) "whether
the infringer, when he knew of the other's patent
protection, investigated the scope of the patent and
formed a good-faith belief that it was invalid or that
it was not infringed;" and (3) "defendant's size and
financial condition." *Id*

First, as discussed in Section IV E, AMO presented
evidence that Alcon copied the '240 and '765
inventions Alcon not only had access to AMO's
Sovereign machine (Tr. at D-25-29), it prepared
reports on the Sovereign's operation (PTX 127;
PTX 132), photographed the fluidics system (PTX
132 at 7), and changed its own fluidics design after
viewing the Sovereign (Tr. at E-58-59; PTX 124)
This evidence of copying, which supported the
jury's finding of willfulness, also supports an
enhanced damages award

Second, AMO presented evidence that Alcon's
investigation of the '240 patent was less than
complete and competent (Tr. at E-103-05, G-21-23,
G-60-61) and that Alcon continued to develop its
infringing system before the opinion letter was
received (PTX 46; PTX 94) This lack of an
appropriate investigation, which again supported
the jury's finding of willfulness, also supports an
enhanced damages award

**\*10** Third, according to Alcon's SEC filings for
calender year 2004, Alcon's sales of cataract
surgery products was about $1 5 billion (D I. 313,
Ex 2 at 21 ) For four years of infringement, the jury
awarded about $94.8 million Considering the
annual sales of cataract surgery equipment, which
appears in large measure to consist of sales of the
infringing devices and consumables (*id.* at 10, Ex. 2
at 21), an enhanced award is appropriate to deter
and punish willful infringement

Based on the evidence of copying of both the '240
and '765 inventions, the lack of appropriate
investigation of the '240 patent, and the amount of
Alcon's phacoemulsification sales, I conclude that
the damages award should be trebled.[FN5]

© 2006 Thomson/West No Claim to Orig U.S Govt Works

Slip Copy                                                    Page 10

Slip Copy, 2005 WL 3454283 (D Del )
(Cite as: Slip Copy)

FN5 Because of an issue that arose during trial concerning marking under 35 U S C § 287, the parties agreed to a post-trial hearing before the court For the amount of the judgment, see the accompanying Post-Trial Findings of Fact and Conclusions of Law issued in this matter today

In exceptional cases of patent infringement, a court may also "award reasonable attorney fees to the prevailing party" 35 U S C § 285 An award of attorneys' fees and costs is typical in cases of willful infringement. *See, e g.* *Knorr-Bremse*, 383 F 3d at 1347. In fact, a trial court must explain why fees were not awarded "in the face of its express finding of willful infringement " *S C Johnson & Son, Inc v Carter-Wallace, Inc*, 781 F 2d 198, 201 (Fed.Cir.1986) "[T]he Court may consider the factors relevant to an enhanced damages award in determining whether attorneys' fees should be granted." *nCUBE Corp v. SeaChange Int'l, Inc*, 313 F Supp 2d 361, 391 (D Del 2004)

The evidence of willful infringement already noted supports an award of reasonable attorneys' fees and costs in this case.[FN6]

FN6 I have already stated that the fees and costs associated with the hearing on the marking issue will be assessed to Alcon (Tr at G-15-16 )

### H Permanent Injunction

After a patent is found to be valid and infringed, the "general rule" is that the court will issue an injunction against future infringement pursuant to 35 U S C § 283 *Richardson v Suzuki Motor Co*, 868 F 2d 1226, 1247 (Fed Cir 1989) The past willful infringement of the '240 and '765 patents shows a likelihood of future harm that justifies a permanent injunction in this case. Therefore, AMO's motion for permanent injunction will be granted The parties agree that the injunction may only apply to the parties and limited non-parties according to Fed R Civ P 65(d) (D I 315 at 22-23; D I 321 at 1 ) The injunction will cover not only

each of the devices found to infringe the '240 and '765 patents, but also others "not more than colorably different" from those devices *See Int'l Rectifier Corp v IXYS Corp*, 383 F 3d 1312, 1316 (Fed Cir 2004) The parties shall confer and, within ten days, submit a form of judgment order giving effect to the foregoing conclusions.

### 1 Stay of Injunction

Alcon seeks to stay the injunction pending appeal to the extent that it covers future infringement of the '765 patent.[FN7] In considering whether to grant a stay, the court must apply four factors:

FN7 Because the feature that infringed the '240 patent has been removed from its machines, Alcon does not move for a stay of the injunction to the extent that it covers future infringement of the '240 patent.

(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits;
(2) whether the applicant will be irreparably injured absent a stay;
*11 (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and
(4) where the public interest lies

*Standard Havens Prods. Inc v Gencor Indus, Inc*. 897 F 2d 511, 512 (Fed Cir 1990) "Each factor need not be given equal weight " *Id* "When harm to the applicant is great enough, a court will not require a strong showing that applicant is likely to succeed on the merits " *Id* at 513 (citation omitted). Importantly for this case, "provided the other factors militate in movant's favor," a stay is appropriate where the movant can "demonstrate a substantial case on the merits," even without showing a strong likelihood of success *Id* (citation omitted)

Taking the factors in reverse order, Alcon has shown that the public interest strongly favors granting a stay. Alcon's sales of the Infiniti device represent "approximately 75% of the new

© 2006 Thomson/West No Claim to Orig U S Govt Works

Slip Copy    Page 11

Slip Copy, 2005 WL 3454283 (D Del )
(Cite as: Slip Copy)

phacoemulsification machines now sold in the
United States." (D.I. 315 at 10, Ex D at ¶ 3.) If
that share of the market cannot be replaced in a
timely manner, surgeons and patients will be left
without important medical equipment The evidence
at trial showed that AMO certainly could not fill a
market-share gap of that magnitude, nor does it
appear that any other supplier or combination of
suppliers could Even if AMO or another supplier
could immediately step in, Alcon contends that
noninfringing safety features of the Infiniti would
be forced off the market by an injunction (Id at
11 ) While AMO contends that its Sovereign
machine is also safe, it does not contend that it can
replace these additional features. In short, it is clear
that it will take time for the market to adapt

On the issue of injury to the nonmoving party,
AMO claims that it will be irreparably harmed by a
stay because it will lose market share, reputation,
and the right to exclusivity protected by the patent
laws (D.I. 325 at 9-10 ) However, AMO did not
show that it could have made additional sales but
for Alcon's infringement of the '765 patent because
it conceded that the fluidics system protected by
that patent does not drive demand for the Alcon
machines Accordingly, AMO was adequately
compensated for past infringement by a reasonable
royalty on the infringing devices I am persuaded
that AMO's market share will not likely be damaged
by a stay because the demand for the Infiniti
devices is not driven by the patented fluidics feature
found in AMO's Sovereign. While AMO will lose
its right to exclusivity pending appeal and may
suffer some injury to its reputation as a company
that enforces its patent rights, a temporary stay is
not likely to cause irreparable harm.

By contrast, denying the stay will certainly cause
Alcon to lose, for some period of time, all of its
Infiniti sales, which account for approximately 75%
of the sales of new phacoemulsification machines in
the United States (D.I. 315 at 10, Ex D at ¶ 3 ) In
2004, sales of the Infiniti totaled over $30 million in
the United States and over $60 million worldwide. (
Id at 17, Ex D at ¶ 8.) Additional revenue would
be lost from the associated sales of cassettes and
other consumables. (Id ) If Alcon were to prevail on
appeal, those losses could not be compensated

*12 Finally, while Alcon has not made a strong
showing of likelihood of success on appeal, it has
shown that it has a substantial case Alcon points
specifically to the construction of the claim terms "
disposed along" and "chamber shape means" and to
the lack of evidence supporting infringement (Id
at 5-10 ) As AMO notes, these issues have been
argued already, and the finding of infringement is
based on the jury's factual determinations (D.I. 325
at 1-8 ) But Alcon at least has a substantial case on
appeal, and a stay is warranted while the Federal
Circuit reviews the many vigorously contested
issues in the case

Because three of the four factors favor Alcon, and
because Alcon has shown that it has a substantial
case on appeal, Alcon's motion for a stay of
injunction to the extent that it covers infringement
of the '765 patent will be granted In effect, this
results in a compulsory license for the '765 patent
while the appeal is pending, because, if Alcon loses
its appeal, it will be required to pay reasonable
royalty damages on the infringing sales made during
that time. Alcon will post a bond in the amount of
$1.8 million, corresponding to one year's royalties
for '765 patent infringement according to AMO's
damages expert,[FN8] as security during the
pendency of the appeal [FN9]

> FN8 The royalty requested by AMO at the
> trial is an appropriate basis for this bond
> because the jury awarded 98% of the
> amount requested for '765 patent royalties
> (D.I. 302; Tr at E-155:23-156:1) See
> Post-Trial Findings of Fact at ¶¶ 12-13.
> Thus, the bond value is only slightly
> greater than the damages award for one
> year. Also, Alcon itself proposed the bond
> amount (D.I. 315 at 20 )

> FN9 AMO did not ask for leave to submit
> supplemental material in support of its
> motion for injunction, and so Alcon's
> Motion to Strike the submission (D.I.371)
> will be granted In any event, AMO's
> allegations about statements made to
> Alcon customers would not change my
> conclusion that a stay is appropriate in this

© 2006 Thomson/West No Claim to Orig. U.S Govt Works

Slip Copy                                                        Page 12

Slip Copy, 2005 WL 3454283 (D.Del.)
(Cite as: Slip Copy)

case AMO's Motion for Post Trial Discovery related to these allegations (D.I.373) will be denied.

## V. CONCLUSION

For the reasons set forth herein, I will deny Alcon's Motions for:
(1) Judgment as a Matter of Law of Noninfringement of the Asserted Claims of the '240 Patent or in the Alternative, a New Trial (D.I.337);
(2) Judgment as a Matter of Law of Obviousness of the Asserted Claims of the '240 Patent or in the Alternative, a New Trial (D.I.339);
(3) New Trial Based on the Exclusion of a Rebuttal Witness (D.I.343);
(4) Judgment as a Matter of Law of Noninfringement of the Asserted Claims of the '765 Patent or in the Alternative, a New Trial (D.I.341);
(5) Judgment as a Matter of Law Regarding the Jury's Willfulness Finding or in the Alternative, a New Trial (D.I.335); and
(6) Judgment as a Matter of Law on Damages or in the Alternative, a New Trial (D.I.334).

I will grant AMO's Motions for Attorney Fees and Enhanced Damages (D.I.312) and for a Permanent Injunction (D.I.310). The parties shall confer and, within ten days, submit a form of judgment order for the permanent injunction giving effect to the foregoing conclusions.

I will also grant Alcon's Motion for a Stay of Injunction pending appeal (D.I.316).

Finally, I will grant Alcon's Motion to Strike AMO's Supplemental Submission (D.I.371) and will deny AMO's Motion for Post Trial Discovery (D.I.373). An order will follow.

D.Del.,2005.
Advanced Medical Optics, Inc. v. Alcon Laboratories, Inc.
Slip Copy, 2005 WL 3454283 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 1930256 (Trial Motion, Memorandum

and Affidavit) Alcon's Opposition to Amo's Brief in Support of its Motion to Strike the Purported Scientific Testimony of Joseph Beller and Raphael Gordon (Apr. 3, 2006) Original Image of this Document (PDF)
• 2006 WL 1930257 (Trial Motion, Memorandum and Affidavit) Alcon's Opposition to Amo's Motion to Strike Alcon's Reply Papers or, in the Alternative, for Leave to File A Sur-Reply (Apr. 3, 2006) Original Image of this Document (PDF)
• 2006 WL 1930258 (Trial Motion, Memorandum and Affidavit) Alcon's Reply to Amo's Opposition to Alcon's Motion to Strike in Part the Declarations of Paul Rockley; Thomas Buico; B.J. Barwick, Jr.; Mark Steen; James J. Little, M.D.; Richard Thorlakson; Gillian Thackray; and Hal Walbrink (Mar. 29, 2006) Original Image of this Document (PDF)
• 2006 WL 1930238 () Second Declaration of Hal Walbrink in Support of AMO's Opposition to Motion for New Trial (Mar. 20, 2006) Original Image of this Document (PDF)
• 2006 WL 1930236 () Second Declaration of Richard J. Mackool, M.D. in Support of Alcon's Motion for New Trial (Mar. 8, 2006) Original Image of this Document (PDF)
• 2006 WL 1930249 (Trial Motion, Memorandum and Affidavit) Alcon's Reply Brief in Support of its Motion for A New Trial on the "240 Patent Based on Newly Discovered Evidence (Mar. 8, 2006) Original Image of this Document (PDF)
• 2006 WL 1930250 (Trial Motion, Memorandum and Affidavit) Declaration of Raphael Gordon in Support of Alcon's Motion for New Trial (Mar 8, 2006) Original Image of this Document (PDF)
• 2006 WL 1930251 (Trial Motion, Memorandum and Affidavit) Alcon's Memorandum in Support of Motion to Strike in Part the Declarations of Paul Rockley; Thomas Buico; B.J. Barwick, Jr.; Mark Steen; James H. Little, M.D.; Richard Thorlakson; Gillian Thackray; and Hal Walbrink (Mar. 8, 2006) Original Image of this Document (PDF)
• 2006 WL 1930237 () Declaration of Richard P. Kratz, M.D. in Support of Alcon's Motion for New Trial (Mar. 7, 2006) Original Image of this Document (PDF)
• 2006 WL 1930234 () Declaration of Paul Rockley in Support of Amo's Opposition to Alcon's Motion for New Trial (Feb. 23, 2006) Original Image of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works

Westlaw.

Not Reported in F.Supp.2d                                                    Page 1

Not Reported in F.Supp.2d, 2003 WL 723260 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Only the Westlaw citation is currently available
United States District Court,D. Delaware.
IPPV ENTERPRISES, LLC and MAAST, Inc.,
Plaintiff,
v.
ECHOSTAR COMMUNICATIONS CORP.,
Nagravision, S.A. and Nagrastar, L.L.C., Defendant.
No. Civ.A.99-577-KAJ.

Feb. 27, 2003.

James D. Heisman, Connolly, Bove, Lodge & Hutz
LLP, Wilmington, Delaware; Frederick G.
Michaud, Jr., Samuel C. Miller, III, David M.
Schlitz, Lloyd S. Smith, and Mark R. Kresloff,
Burns, Doane, Swecker & Mathis, L.L.P.,
Alexandria, Virginia; for plaintiffs.
Donald F. Parsons, Jr., and Rodger D. Smith,
Morris, Nichols, Arsht & Tunnell, Wilmington,
Delaware; Philip L. Cohan, John C. Dougherty,
Hugh J. Marbury, James M. Heintz, Piper Marbury
Rudnick & Wolfe LLP, Washington, DC; for
defendants.

MEMORANDUM OPINION
JORDAN, J.

I. INTRODUCTION

**\*1** This opinion addresses six outstanding post-trial
motions pending before the Court in this case: (1)
plaintiff IPPV Enterprises LLC's motion for
prejudgment interest (D.I.221); (2) its motion for
costs, expenses, and attorney fees (D.I.222); (3) its
motion for entry of judgment (D.I.224); (4) its
motion for judgment as a matter of law that
defendants EchoStar Communication Corp.,
NagraVision, S.A., and NagraStar, L.L.C.
(collectively, "defendants") literally infringe claim
4 of U.S. Patent No. 4,225,884 (issued Sept. 30,
1980) (the '884 patent) (D.I.226); (5) plaintiff IPPV
Enterprises LLC's and plaintiff MAAST, Inc.'s

motion for reconsideration of the Court's *Markman*
[FN1] opinion relating to U.S. Patent No. 4,600,942
(issued Jul. 15, 1986) (the '942 patent) (D.I.225);
and (6) defendants' motion for entry of judgment on
the '942 patent (D.I.228)

> FN1. *Markman v. Westview Instruments,*
> *Inc.,* 52 F.3d 967 (Fed.Cir.1995) (en
> banc), *aff'd,* 517 U.S. 370 (1996).

II. BACKGROUND

IPPV Enterprises, LLC ("IPPV"), a Nevada limited
liability corporation, has its principal place of
business in Reno, Nevada and is the assignee of the
'884 patent, as well as U.S. Patents Nos. 4,163,254
(issued Jul. 31, 1979) (the '254 patent), 4,528,589
(issued Jul. 9, 1985) (the '589 patent), and
4,484,217 (issued Nov. 20, 1984) (the '217 patent).
(D.I. 189 at 1.) MAAST, Inc ("MAAST"), a
Delaware corporation, has its principal place of
business in Spark, Nevada and owns the 942 patent.
(*Id.*) It also has an ownership interest in IPPV. (D.I.
280 at 1.) All of the patents involved in this case
relate to the encryption and decryption of
pay-per-view television broadcasts. (*Id.*)

Defendant EchoStar Communications Corp. ("
EchoStar"), a Nevada corporation, has its principal
place of business in Littleton, Colorado. EchoStar
operates the DISH Network, a direct broadcast
satellite subscriber service that transmits signals in
digital format to paying customers (*id.*) using a
secure encryption process (D.I. 280 at 1). The
signals are then decrypted at the subscriber location
for viewing. (*Id.*) Defendant NagraVision, S.A. ("
NagraVision"), a Swiss corporation with its
principle place of business in Cheseaux,
Switzerland, and defendant NagraStar LLC ("
NagraStar"), a Colorado limited liability
corporation, supply EchoStar with technology used
in the DISH Network satellite receivers (*id.* at 2.)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F Supp 2d

Not Reported in F Supp 2d, 2003 WL 723260 (D Del )
**(Cite as: Not Reported in F.Supp.2d)**

On August 26, 1999, IPPV and MAAST initiated this patent infringement case, alleging infringement of the '254, '884, '589, '217, and '942 patents by EchoStar. (D.I.1.) EchoStar, on December 28, 1999, answered the complaint and asserted affirmative defenses. (D.I.20.) Plaintiffs thereafter amended their complaint to add NagraVision and NagraStar as defendants, alleging that they contributorily infringed the '217 and '942 patents. (D.I.60.) EchoStar, NagraVision, and NagraStar then collectively answered plaintiffs' amended complaint on August 24, 2000 and asserted counterclaims. (D.I.68.)

The Court issued two separate *Markman* opinions, dated July 28, 2000 and July 3, 2001, construing the contested language in the patents at issue [FN2] (D.I.62, D.I.189.) Following the Court's claim construction of the '942 patent, the defendants made a motion with regard to that patent for summary judgment of non-infringement. (D.I.76-2.) The Court denied that motion (D.I.93) but, during a July 5, 2001 pre-trial conference, MAAST conceded that, unless the Court reconsidered the claim construction of the '942 patent, the defendants were entitled to an award of summary judgment of non-infringement of that patent. (D.I.280 at 3-4.) Infringement of the '942 patent was thus not an issue at trial (*Id* at 4.)

> FN2. The Court's first Opinion (D.I.62) was directed to resolving a discovery dispute between the parties and was limited to a construction of the phrase " television program signal" as found in the '942 patent (*Id*)

*2 The case went to trial in July of 2001, and, after five days of evidence and argument, the jury found that (1) EchoStar's accused products literally infringe claims 8 and 9 of the '254 patent, and also infringe claim 4 of the '884 patent under the doctrine of equivalents; (2) the '217 patent is not invalid; (3) each defendants' infringement was willful; and (4) a "bundled" damages award of fifteen million dollars should be awarded. [FN3] (*Id* at 4-5.)

> FN3. The Court reduced that award to 7.322 million dollars (D.I.280 at 73-91, D.I.281) and IPPV accepted (D.I.282) that reduction rather than retrying the case.

### III DISCUSSION

#### A *Plaintiff IPPV's Motions*

#### 1 *Motion For Prejudgment Interest*

Pursuant to 35 U.S.C. § 284,[FN4] IPPV moves the Court for prejudgment interest on the jury's award of damages. (D.I.221.) IPPV suggests that the Court award prejudgment interest "at the prime rates during the years in question, compounded quarterly[ ]" based on "spread out ... [bundled license] payments ... from Echostar's launch in March 1996 to September 1997 when the '884 patent expired." (D.I.288 at 3-6.)

> FN4. Section 284 provides in pertinent part:
> Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court

For their part, defendants argue that IPPV is not entitled to prejudgment interest in this case due to its "ambushing" the defendants with a new damages theory during trial and because of IPPV's delay in bringing suit, despite its awareness of the defendants' infringement. (D.I.284 at 3-5.) In the alternative, defendants assert that, if the Court awards IPPV prejudgment interest, the appropriate figures should be calculated based on the Treasury Bill rate in effect during the period in question and payments should be spread out "over the lifetime of the '217 patent[ ]" which would spread payments out through the expiration of the '217 patent on May 11, 2002 since the '217 patent would have been part of the hypothetical license negotiations on which

© 2006 Thomson/West No Claim to Orig U S Govt. Works.

Not Reported in F Supp 2d

Not Reported in F Supp 2d, 2003 WL 723260 (D Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 3

the award of damages in the case is predicated [FN5] ( *Id* at 5-7)

> FN5  The Court on March 27, 2002, determined that the '217 patent was invalid. (D.I. 280 at 54-66, D.I. 281.) IPPV asserts, therefore, that payments should not be based on the life of this patent since damages should be calculated based on the life of the "longest remaining patent [,]" the '884 patent (D.I. 288 at 3-4)

The Supreme Court stated in *General Motors Corp v Devex Corp* that prejudgment interest should ordinarily be awarded in patent infringement cases pursuant to Section 284 where necessary to fully compensate patent owners for losses resulting from infringement, "absent some justification for withholding such an award□" such as when "the patent owner was responsible for undue delay in prosecuting the lawsuit[ ]" or when "other circumstances" exist warranting the withholding of such an award.[FN6]  461 U.S. 648, 655-57 (1983). The Court in *Devex* did not define "undue delay" and provided little guidance as to the "other circumstances" justifying a denial of prejudgment interest *Id* The Court did state, however, that an " award of prejudgment interest will only be set aside if it constitutes an abuse of discretion " *Id* at 657

> FN6  An award of prejudgment interest typically "extends from the date of infringement to the date of judgment." *Honeywell Intern., Inc v Hamilton Sundstrand Corp*, 166 F Supp 2d 1008, 1041 (D Del 2001)

The Federal Circuit in *Crystal Semiconductor Corp v Tritech Microelectronics Int'l, Inc* held that delay alone does not constitute a reason for denying a patent owner prejudgment interest, absent prejudice to the defendants. 246 F 3d 1336, 1361-62 (Fed Cir 2001) (quoting *Lummus Indus, Inc v D M & E. Corp*, 862 F 2d 267, 275 (Fed Cir 1988) While it does not follow that prejudice to a defendant is a *sine qua non* of the denial of prejudgment interest, prejudice clearly is

an important factor to consider any time there is an argument that an award of interest is inappropriate

*3 "The Federal Circuit has given district courts great discretion" when determining the applicable interest rate for an award of prejudgment interest *Phillips Petroleum Co v Rexene Corp*, No. Civ.A 90-208-LON, 1997 WL 781856, *28 (D Del Sept 4, 1997) (citations omitted). Courts sometimes apply a prejudgment interest rate based on the prime rate, to account for the cost of borrowing money *See C R Bard, Inc v Medtronic. Inc.*, C.A No 96-589-SLR 1999 WL 458305, *15 (D Del June 15, 1999), *aff'd in part and vacated in part on other grounds*, 250 F 3d 760 (Fed Cir 2000); *Mars, Inc v Conlux USA Corp*, 818 F Supp 707, 720-721 (D Del 1993), *aff'd*, 116 F 3d 421 (Fed Cir 1993) At other times, courts use the Treasury Bill rate prescribed by the statute authorizing post-judgment interest, 28 U.S.C § 1961 *See, e g Laitram Corp v NEC Corp*, 115 F 3d 947 (Fed Cir 1997); *Phillips*, at *28-29; *Joy Technologies, Inc v Flakt, Inc*. 954 F Supp 796, 808 (D Del 1996)

The defendants have not demonstrated that IPPV should be denied prejudgment interest The three primary reasons they advance for a denial of prejudgment interest are that IPPV delayed filing suit, that IPPV ambushed the defendants during trial by introducing a new damages theory near the close of trial, and that the jury's award made IPPV whole (D.I. 284 at 3-6.) As to the first two reasons, the defendants have not persuaded the Court that, even if their allegations are true, they have suffered such undue prejudice as to warrant a denial of prejudgment interest. In fact, the Court, cognizant of IPPV's shift in damages theory, reduced the jury's initial award of damages by nearly half (*see* D I. 280 at 73-91, D.I. 281), and by analyzing delay in IPPV's bringing suit does not effect the " hypothetical" licensing agreement upon which damages were awarded because those negotiations are based on life of the patents infringed, a fact unaffected by the timing of a lawsuit. (*See id*) Finally, the defendants offer nothing but their bare assertion to support the argument that the jury award is sufficient without prejudgment interest. As already noted, that assertion is counter to

© 2006 Thomson/West. No Claim to Orig. U S Govt Works

Not Reported in F Supp.2d                                              Page 4

Not Reported in F Supp.2d, 2003 WL 723260 (D Del )
**(Cite as: Not Reported in F.Supp.2d)**

controlling authority stating that prejudgment interest ordinarily should be awarded. *Devex,* 461 U S. at 655-57.

The Court is satisfied that the appropriate prejudgment interest rate should be an average of the short term prime lending rates for the period beginning March 1996 and concluding in September 1997, which represents the period that the "hypothetical" license would have encompassed. FN7 *Cf Mars, Inc.* 818 F. Supp at 721 ("[T]he cost of borrowing money-and not the rate of return on investing money-provides a better measure of the harm Mars suffered as a result of the loss of the use of money over time."). Accordingly, the Court awards prejudgment interest to be paid at the average of the short term prime lending rates from March 1996 through September 1997, on seven quarterly payments of 1 046 million dollars beginning in March 1996 and concluding in September 1997, with interest to be compounded annually from the date of infringement to the date of entry of judgment. That interest calculation will adequately compensate for the lost use of royalties which should have been paid.

> FN7 September 1997 was the expiration date of the '884 patent, which the Court accepts as the appropriate end date for the quarterly license payments.

*2. Motion For Costs Expenses And Attorney Fees*

*4 IPPV moves the Court pursuant to 28 U.S.C. § 1927 for costs, expenses, and attorneys' fees FN8 (D.1 222.) Section 1927 is designed to remedy abuses of the judicial process *Hackman v Valley Fair,* 932 F 2d 239, 242 (3d Cir.1991) FN9 In *Williams v Giant Eagle Markets, Inc.,* the Third Circuit held that a Section 1927 award is warranted when an attorney acted with willful bad faith. 883 F 2d 1184, 1191 (3d Cir.1989) (citing *Baker Indus v Cerberus ltd.* 764 F 2d 204, 209 (3d Cir.1985)) In *Baker,* the Third Circuit explained that the imposition of Section 1927 sanctions should not have the effect of "chilling an attorney's legitimate ethical obligation to represent his client zealously." 764 F 2d at 208. Moreover, explained the Court, "

[t]he power to assess the fees against an attorney should be exercised with restraint lest the prospect thereof chill the ardor of proper and forceful advocacy on behalf of his client." *Id* (quoting *Colucci v. New York Times Co.,* 533 F Supp. 1011, 1014 (S.D N.Y.1982)); *see also Williams,* 883 F 2d at 1193 (imposing sanctions even in a case in which a lawyer raises an obviously losing theory "would deprive a lawyer of his ethical obligation to represent his client zealously.") Thus, a mere failure on the part of a party to succeed on a contention is not tantamount to bad faith or vexatious litigation. *See Colluci,* 533 F Supp. at 1014 However, once bad faith is established, the imposition of sanctions is soundly within the discretion of the Court. *Ford v Temple Hosp.* 790 F 2d 342, 347 (3d Cir 1986)

> FN8. Section 1927 provides that:
> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

> FN9. The law of the regional circuit applies to a request for sanction under section 1927 in a patent infringement case *See Seal-Flex, Inc v Athletic Track and Court Construction,* 172 F.3d 836, 845 (Fed.Cir 1999)

IPPV alleges that defendants acted in bad faith because the defendants' attorneys failed to concede many issues ultimately not disputed at trial (D.1 239 at 7-8.) IPPV contends that the defendants had the opportunity to notify IPPV of uncontested issues but failed to do so. (*Id*)

Defendants counter IPPV's contentions by arguing, in essence, that there is nothing improper in holding a plaintiff to its proof. (D.1. 256 at 12-14.) Moreover, contend the defendants, there is simply no basis in the record for IPPV's argument that they

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d                                                                                                    Page 5

Not Reported in F.Supp.2d, 2003 WL 723260 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

acted in bad faith by concluding prior to trial not to contest certain issue but deciding not to concede those issues either. (*Id* at 15-16.) In fact, they argue the opposite is true: they were at all times reevaluating "all aspects of the trial" and were merely preserving the right to "emphasize[ ] the difference between plaintiff's view of the case and defendant's view..." (*Id* at 16-17.) By not pursuing certain issues, they say, they shortened rather than extended the trial. (*Id* at 18.)

The Court, after considering the totality of the evidence before it, finds that IPPV has not established that the defendants conduct in this case amounts to bad faith sanctionable under Section 1927. Accordingly, plaintiff's motion for costs, expenses, and attorneys' fees (D.I.222) pursuant to Section 1927 is denied.

### 3. Motion For Judgment On The Verdict

\*5 IPPV moves the Court for entry of judgment based on the July 13, 2001 jury verdict. (D.I.224.) The Court has yet to enter a verdict because there existed a potential issue of inequitable conduct in the prosecution of the patents involved in this case (D.I. 229-34 at 804-05.) Since trial concluded, however, defendants have not pursued that issue. The time has past for such a motion and it is appropriate for the Court to consider IPPV's request for entry of judgment (D.I.224). Defendants' oppose the motion as premature, arguing pursuant to Federal Rule of Civil Procedure 54(b) [FN10] that the Court should not enter a judgment on the verdict until a judgment can be rendered with regard to all of the patents involved in this lawsuit. [FN11] (D.I. 251 at 1-2, ¶¶ 1-6.)

> FN10 Rule 54(b) provides, in pertinent part, "[w]hen more than one claim for relief is presented in an action ... or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for

the entry of judgment."

> FN11. Defendants also opposed the motion on the ground that a number of its post-trial motions remained outstanding (D.I. 251 at 2, ¶ 6.) With the filing of this Opinion, however, those motions are no longer still pending.

In this case, the '254, '884, and '217 patents were tried to the jury. The '589 and '942 patents were not. Plaintiffs dropped their allegations of infringement of the '589 patent. (*See* D.I. 280 at 2.) Because the Court in this opinion will completely dispose of the remaining issues in the case regarding the '942 patent, there exists no impediment to the entry of judgment and an analysis under Rule 54(b) is unnecessary. The Court will issue an Order entering judgment.

### 4. Motion For Judgment As A Matter of Law That Defendants Literally Infringe Claim 4 of The '884 Patent

#### a. The Parties' Arguments

On July 25, 2001, IPPV moved pursuant to Federal Rule of Civil Procedure 50(b) for judgment as a matter of law that defendants literally infringed claim 4 of the '884 patent. [FN12] (D.I.226.) At the conclusion of trial, the jury found that the defendants did not infringe claim 4 literally but that they did infringe under the theory of equivalents. IPPV challenges that finding, arguing that the jury should have found that the defendants literally infringed the claim. (D.I.235.)

> FN12. Claim 4 of the '884 patent provides:
> 4. In a pay television system, a method of providing subscriber control over television programs which can be viewed at the subscriber location comprising the steps of:
> transmitting from a remote location a scrambled television program signal;
> inserting a category identification signal

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d                                                                      Page 6

Not Reported in F.Supp.2d, 2003 WL 723260 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

into the scrambled program signal at the
remote location for transmission thereof
with the program signal;
receiving the scrambled program signal,
including the category identification
signal, at the subscriber location;
generating a signal at the subscriber
location identifying at least one category of
programs which are acceptable for viewing;
comparing the received category
identification signal with the generated
signal; and
enabling the received program signal to be
unscrambled if the compared signals
correspond
'884 patent at cols. 11-12, ll. 59-10

In particular, IPPV asserts that the jury incorrectly
determined that the defendants' accused products
did not literally infringe the "step of inserting a
category identification signal into the scrambled
program signal at the remote location for
transmission thereof with the program signal"
(hereinafter the "inserting ... into" step), as found in
claim 4 of the '884. IPPV bases its argument on the
Court's July 3, 2001 Opinion (D.I.189), in which the
Court stated that program signals usually comprise
a video signal, an audio signal and other signals and
codes. (D.I. 235 at 1-4.) IPPV asserts that, given the
Court's statement about program signals in its July
3, 2001 Opinion, defendants' system must literally
infringe the "inserting ... into" step, as a matter of
law, because defendants' system transmits an SI
packet (an "other" signal or code) containing a
private rating descriptor with its program signal,
therefore, a private rating descriptor is inserted into
the television program stream via the SI packet [FN13]
(Id. at 4-6.)

> FN13. The Court construed "inserting ...
> into" step as requiring that the
> identification signal "be placed inside of
> the program signal." (D.I. 189 at 46-47.)

Defendants, in contrast, argue that IPPV is asserting
an erroneous construction of "television program
signal." (D.I. 253 at 5-6.) They contend that even
assuming IPPV's definition of "television program

signal" is adopted, IPPV is still not entitled to
judgment as a matter of law because defendants' "
private rating descriptor is not necessary to process
the television program signal and, therefore, is not
part of the television program signal as defined by
plaintiff." (Id. at 5-6.)

### b  Applicable Standard Of Review

*6 A court may render judgment as a matter of law
on an issue at any time during a jury trial before the
case is submitted to the jury, if a party has been
fully heard on the issue and "there is no legally
sufficient evidentiary basis for a reasonable jury to
find for that party on that issue [ ] ..." Fed.R.Civ.P.
50(a). A party may renew a Rule 50(a) motion after
the case is submitted to the jury, at which point,
under Rule 50(b), the Court has three options,
assuming the jury has returned a verdict: the Court
may "(A) allow the judgment to stand, (B) order a
new trial, or (C) direct entry of judgment as a matter
of law ..." Fed.R.Civ.P. 50(b)(1).

The Court should grant a motion for judgment as a
matter of law only if the evidence, when viewed in
the light most favorable to the nonmoving party,
demonstrates that " 'there is no question of material
fact for the jury and any verdict other than the one
directed would be erroneous under the governing
law.' " Beck v. City of Pittsburgh, 89 F.3d 966, 971
(3d Cir.1996) (quoting Macleary v. Hines, 817 F.2d
1081, 1083 (3d Cir.1987)); see also Embrex, Inc. v.
Service Eng'g Corp., 216 F.3d 1343, 1347
(Fed.Cir.2000). Stated differently, the party moving
for a judgment as a matter of law notwithstanding
the jury's verdict must demonstrate that the jury's
findings were not supported by substantial
evidence, or if they were, that, as a result of the
legal conclusions derived from the jury's findings,
the jury's verdict cannot stand under the applicable
law. Applied Med. Res. Corp v. United States
Surgical Corp., 147 F.3d 1374, 1376 (Fed.Cir.1998)
; Read Corp. v. Portec, Inc., 970 F.2d 816, 821
(Fed.Cir.1992). The Supreme Court has defined "
substantial evidence" as "such relevant evidence as
a reasonable mind might accept as adequate to
support a conclusion." Richardson v. Perales, 402
U.S. 389, 390 (1971). It is less than a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 7

Not Reported in F.Supp.2d, 2003 WL 723260 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

preponderance of evidence and more than a mere
scintilla. *Id.*

### c. *Analysis*

The Court in its prior two *Markman* opinions
(D.I.62, 189) did not construe the phrase "
scrambled program signal" as found in claim 4 of
the '884 patent. (*See* D.I. 189 at 41.) The Court did,
however, in its July 28, 2000 Opinion (D.I.62),
construe the phrase "television program signal" in
claim 21 of the '942 patent to mean an "analog
television program signal." (*Id.* at 24.) The Court
also, in its July 3, 2001 Opinion (D.I.189), held that
a "television program signal," as found in the '942
patent, "comprises audio and video signals that are
broadcast simultaneously to produce the sound and
picture portions of a televised scene." (*Id.* at 48-49.)

In a March 27, 2002 post-trial Opinion (D.I.280)
addressing a similar judgment as a matter of law
motion filed by the defendants (D.I.227), the Court
stated that:
Because the parties never disputed the term "
scrambled television program signal" before trial,
that term was not addressed before the outset of the
trial. As the trial progressed, it became apparent that
for the '254 and '884 patents, the key claim term at
issue was not merely "television signal" or "
television program signal," but "scrambled
television program signal." Because of the timing,
the court elected to treat the parties disputes
regarding this term as an issue that could be decided
by the jury based on examining the claims,
examining the court's definition of "television signal,
" applying their own understanding of the word "
scrambled" based on the evidence before them and
arguments made to them by the parties.
\*7 It is clear from the verdict form that the jury
weighed the evidence and determined that
defendant's transport stream was a "scrambled
television program signal," and therefore satisfied
that element of the claims. Based on the jury
instructions, the evidence set forth by plaintiff's
expert, and the court's claim construction of the
term "television signal," the jury reasonably, and, in
the opinion of the court, correctly determined that
while a television program signal may only contain

audio and video, a scrambled television program
signal must contain, in addition to audio and video,
codes that allow for the unscrambling of the data.

(D.I. 280 at 45-46.)

After making those comments, the Court denied the
defendants' motion (D.I.227), stating that the "jury
properly considered the claim term 'scrambled
television program signal . . . . ' " because "[t]here was
substantial evidence from which the jury could
determine that, under the doctrine of equivalents,
the Echostar DISH Network inserts a category
identification signal into the scrambled television
signal." (*Id.* at 48-49.) The Court went on to reason
that its definition of:
"inserting . . . into" does not mandate that the codes
[identification codes] must be inserted into a
particular portion of the television signal. They do
not have to be inserted directly into a video packet
or directly into an audio packet; it is sufficient for
the category identification code to be placed
between the other components that make up the
scrambled television signal.

(*Id.* at 49-50.)

The Court then stated that "[c]ollectively, these
packets, broadcast on the same carrier, make up the
audio, video, and other signals and codes associated
with the program signal that enable the television
programs to be viewed at the subscriber location." (
*Id.* at 50.) The Court also discussed the doctrine of
equivalents and stated that it was "unsurprising"
that "the jury resorted to the doctrine of equivalents
to determine whether certain claim limitations are
met . . . ." because "the disclosures of the patented
methods were focused on continuous analog signals
and not digital broadcasts [such as the accused
systems] that use packets of information." (*Id.* at
51.)

IPPV now argues that the Court should disturb the
jury's finding that the "inserting . . . into" step of
claim 4 of the '884 patent was infringed under the
doctrine of equivalents. Essentially, plaintiff, in its
post-trial briefing asks the Court to revisit its prior
decision (D.I.280) by adding, in the *Markman* claim
construction mix, the word "scrambled" to the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works

Not Reported in F Supp.2d                                                    Page 8

Not Reported in F Supp.2d, 2003 WL 723260 (D Del )
(Cite as: Not Reported in F.Supp.2d)

phrase "television program signal " (See D I 265 )
IPPV asks the Court to take that step even though
the parties had previously contented themselves
with the Court's construction of the phrase "
television program signal" and despite the Court's
holding that the jury correctly considered the
meaning of the phrase "scrambled television
program signal" as instructed by the Court. (See
D.I. 280 at 42-49 ) IPPV also makes its application
after the Court held, in denying defendants' similar
motion, that the jury had substantial evidence to
support a finding of infringement under the doctrine
of equivalents (Id. at 48-49 )

*8 The Court again declines to disturb the jury's
findings The Court dealt specifically with the
phrase "scrambled program signal" at trial, giving
each party the opportunity to argue the point (D I
280 at 37-54 ) Having satisfied itself that the parties
were content on a proposed method for moving
forward and instructing the jury so as to reach a
verdict in the case, the Court instructed the jury and
proceeded to allow the parties to argue their
theories as to whether the accused devices literally
infringe claim 4 of the '884 patent (Id at 42 ) The
jury was given an adequate framework within which
to render a finding that the accused systems did or
did not literally infringe the "inserting ... into" step
The jury was also properly instructed on the test for
equivalency and had ample facts before it relating
to infringement IPPV was given a full opportunity
to address the phrase "scrambled program signal"
when arguing its case to the jury.

The Court holds that the jury's finding that there
was no literal infringement but that there was
infringement under the doctrine of equivalents was
supported by substantial evidence and was not the
result of the legal error IPPV's motion is therefore
denied.

### B IPPV's and MAAST's Motion For
### Reconsideration Of The Court's Markman Opinion
### Relating To The '942 Patent

On July 25, 2001, plaintiffs moved the Court to
reconsider its July 3, 2001, Markman Opinion
(D.I 189) construing the claims of the '942 patent

In particular, plaintiffs ask the Court to reconstrue "
television program signal," "encrypting," "with," "
providing," and "utilizing said decode control key
and said transmitted control signal" as found in the
claims of the '942 patent [FN14] (D.I.225 )
Defendants, of course, oppose any reconstruction of
the claims of the '942 patent (D.I 248 )

> FN14 Plaintiffs limited their argument in
> their brief to the phrase "television
> program signal" and the word "encrypting "
> (D I 236 at 2 ) However, the Court's
> analysis applies to all of the '942 claim
> language plaintiffs moved the Court for a
> reconstruction

The Court first addressed the parties' contentions
with regard to the phrase "television program signals
" on July 28, 2000, holding that the phrase means "
analog television program signal." (D.I. 62 at 24 )
Subsequently, the parties requested the Court to
reconsider its construction of this phrase (D I 76,
84 ) On December 11, 2000, the Court heard
argument on that request (see D I 101) but declined
to modify its earlier construction (D I 93 )

In June 2001, the parties submitted their opening
claim construction briefs addressing the remaining
disputed '942 patent claim language (D I 156, 157 )
On July 3, 2001, the Court issued its Markman
claim construction of the '942 patent claims
(D.I 189 ) In that Opinion, the Court reiterated its
construction of "television program signal" and
construed, for the first time, "encryption," "with," "
providing," "control signal," "decode signal," and "
transmitting" or "transmit" as found in the '942
patent (Id at 47-62 ) Plaintiffs then, during a July
5, 2001 pre-trial conference, conceded that under
the Court's claim construction of the '942 patent, the
defendants were entitled to an award of summary
judgment with regard to that patent The Court, in
response, stated that infringement of the '942 patent
was not an issue for trial (D I 195 at 11-14 )

*9 Plaintiffs now, for a second time, request the
Court to revisit its construction of the '942 patent
(D I 62, 189) They argue that the Court
erroneously construed the word "encryption" as

© 2006 Thomson/West No Claim to Orig U S Govt Works

Not Reported in F Supp 2d                                                    Page 9

Not Reported in F.Supp.2d, 2003 WL 723260 (D Del)
**(Cite as: Not Reported in F.Supp.2d)**

having no established plain meaning when, in actuality, the word is readily understood (*Id* at 3-10) They assert further that, since the word is used consistently throughout the '942 specification, a broad meaning should be applied and the Court should not have construed the word to exclude the method of inversion discussed in the written description and understood in the field of art pertaining to the invention. (*Id*) As to the phrase " television program signal," plaintiffs contend that the Court erred by narrowing the meaning of the phrase by including the limitation that the " television program signal" be "analog," when the patent evidences an intent on the part of the inventors to convey a broad, ordinary meaning for the phrase. (*Id* at 10-14) Defendants, in opposing plaintiffs' arguments, declare that the Court's earlier ruling is correct, and, at any rate, the Court should not disturb its earlier ruling since the plaintiffs idly rested on their rights. (D.I. 248 at 4-14)

The plaintiffs' motion to reconsider raises the question of how many bites a party may rightfully expect at the *Markman* claim construction apple The answer, at least in this case, is one less than the plaintiffs want. The Court's earlier construction of the '942 patent was and is legally sound. Disturbing that ruling at this late juncture is both unwarranted and unwise. It would also be, not incidentally, out of keeping with the rules of this Court, which provide that "[a] motion for reargument shall be *served* and *filed* within 10 days after the filing of the Court's opinion or decision " D. Del. LR 7.1.5 (emphasis added) The Court entered two separate *Markman* Opinions in this case (D.I.62, 189) The first on July 28, 2000 (D.I.62). The second on July 3, 2001 (D.I.189) Plaintiffs timely sought reconstruction of the Court's July 28, 2000 construction and lost. Plaintiffs failed to timely seek reconsideration of the Court's July 3, 2001 construction, having filed a request to do so on July 25, 2001 (D.I.225). Accordingly, plaintiffs' motion for reconsideration of the Court's *Markman* Opinions relating to the '942 patent (D.I.225) is denied.

### C. Defendants' Motion

Defendants move the Court pursuant to Federal Rule of Civil Procedure 58 for entry of judgment of non-infringement and invalidity of the '942 patent (D.I.228.) In support of such a judgment, defendants offer "their previously filed Motion for Summary Judgment for Non-Infringement of the '942 Patent (D.I.110-111), Motion for Summary Judgment of Invalidity of the '942 Patent Based Upon the Lee, Guillou and Sechet References (D.I.134), Judge McKelvie's July 3 *Markman* opinion (D.I.189), defendants' July 5, 2001 letter to the Court, and plaintiffs' concessions during the July 5, 2001 pre-trial conference (D.I.195) " [FN15] (D.I.298) (footnotes omitted) As already noted, *supra* at 4, plaintiffs have acknowledged that, unless the Court reconsiders the construction of " encryption" as found in the claims of the '942 patent , entry of judgment of non-infringement of that patent is warranted (D.I. 296 at 2) Plaintiffs argue, however, that the Court should not reach the question of invalidity of the '942 patent, given the Court's statements on that topic at the July 5, 2001 hearing [FN16] (D.I. 296 at 2)

> FN15 This action was originally assigned within this Court to the Honorable Roderick R. McKelvie. (D.I.1) Judge McKelvie retired from the Court in 2002 and the case was referred to Magistrate Judge Mary Pat Thynge (*See* D.I. 291) The case was reassigned to the undersigned on January 6, 2002. (D.I.293)

> FN16 In support of its argument that the Court ruled on the invalidity question, plaintiffs quote the following language from the July 5, 2001 hearing:
> On the issue of validity, I can think about that, too, except that in the past when I've been presented with this issue, I've reached the conclusion, that I don't reach validity if there is no infringement, and especially if there is no counterclaim for declaratory judgment of invalidity
> (D.I. 296 at 2 (quoting D.I. 195 at 11-12))

\*10 The Court has discretion as to whether it will reach the issue of patent invalidity when the issue is

© 2006 Thomson/West No Claim to Orig. U.S. Govt Works

Not Reported in F Supp 2d                                                        Page 10

Not Reported in F Supp 2d, 2003 WL 723260 (D Del )
**(Cite as: Not Reported in F.Supp.2d)**

raised as an affirmative defense, if the dispute giving rise to the issue may be finally disposed of on other grounds. *Multiform Desciccants, Inc v Medzan, Ltd*. 133 F 3d 1473, 1481 (Fed Cir 1998) (citing *Cardinal Chem Co v Morton Int'l Inc*, 508 U S 83 (1993)) The parties both agree that the Court should enter an Order of non-infringement of the '942 patent if the Court does not reconsider its prior construction of "encryption." (*See* D L 296, 298 ) The Court has denied plaintiffs' motion to reconstrue the '942 patent (D L 225), *supra* at 16-19 Plaintiff's allegations of infringement of the '942 patent, therefore, are finally decided Accordingly, the Court in its discretion will not reach the issue of invalidity of the '942 patent [FN17] The Court will issue an order entering judgment of non-infringement of the '942 patent

>       FN17. The Court also need not address whether Judge McKelvie previously ruled that the Court would not address the issue of invalidity of the '942 patent

### IV CONCLUSION

In summary, the Court holds as follows on the various motions: (1) IPPV's motion for prejudgment interest (D L 221) is GRANTED; (2) IPPV's motion for costs, expenses, and attorney fees (D.L 222) is DENIED; (3) IPPV's motion for entry of judgment (D.L 224) is GRANTED; (4) IPPV's motion for judgment as a matter of law that defendants literally infringe claim 4 of the '884 patent (D L 226) is DENIED; (5) IPPV's and MAAST's motion for reconsideration of the Court's *Markman* opinion relating to the '942 patent (D L 225) is DENIED; and (6) defendants' motion for entry of judgment on the '942 patent (D L 228) is GRANTED

An Order will issue

### ORDER

The Court having considered the arguments of the parties with respect to post-trial motions, it is, for the reasons set forth in the Memorandum Opinion of today's date in this case, hereby ORDERED that

(1) IPPV's motion for prejudgment interest (D.L 221) is GRANTED, with interest to be paid at the average of short term prime lending rates from March 1996 through September 1997, on seven quarterly payments of 1 046 million dollars beginning in March 1996 and concluding in September 1997, with interest to be compounded annually from the date of infringement to the date of entry of judgment;

(2) IPPV's motion for costs, expenses, and attorney fees (D L 222) is DENIED;

(3) IPPV's motion for entry of judgment (D L 224) is GRANTED;

(4) IPPV's motion for judgment as a matter of law that defendants literally infringe claim 4 of the '884 patent (D L 226) is DENIED;

(5) IPPV's and MAAST's motion for reconsideration of the Court's *Markman* opinion relating to the '942 patent (D L 225) is DENIED; and

(6) defendants' motion for entry of judgment on the '942 patent (D L 228) is GRANTED to the extent that judgment of non-infringement of the '942 patent will be entered

D Del ,2003.
IPPV Enterprises, LLC v EchoStar Communications Corp.
Not Reported in F Supp 2d, 2003 WL 723260 (D Del )

END OF DOCUMENT

© 2006 Thomson/West No Claim to Orig U S Govt Works

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 34133507 (C.D.Cal.)
**(Cite as: 2001 WL 34133507 (C.D.Cal.))**

▷

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available

United States District Court,
C.D. California
Susan M. MAXWELL, Plaintiff,
v.
ANGEL-ETTS OF CALIFORNIA, Defendant
**No. CV9910516DT(AJWX).**

Filed Oct. 12, 1999.
July 9, 2001.

Albert F. Davis, Quinn Emanuel Urquhart Oliver & Hedges, Los Angeles, CA, Earl D. Reiland, Alan Gerard Gorman, Robert J. Glance, Daniel W. McDonald, Daniel W. McDonald, (See above), Thomas R. Johnson, Merchant & Gould, Minneapolis, MN, for Susan M Maxwell, plaintiff

Frank E. Merideth, Bryan Cave, Santa Monica, CA, Kimberly Lloyd Thigpen, Pfeiffer & Thigpen, Santa Monica, CA, for Angel-Ettes of California Inc, a privately held corp, defendant

Earl D. Reiland, Alan Gerard Gorman, Daniel W. McDonald, Merchant & Gould, Minneapolis, MN, for Susan M Maxwell, counter-defendant

Earl D. Reiland, Alan Gerard Gorman, Daniel W. McDonald, Merchant & Gould, Minneapolis, MN, for Susan M Maxwell, counter-defendant

Albert F. Davis, Quinn Emanuel Urquhart Oliver & Hedges, Los Angeles, CA, Earl D. Reiland, Alan Gerard Gorman, Robert J. Glance, Daniel W. McDonald, Daniel W. McDonald, (See above), Merchant & Gould, Minneapolis, MN, for Susan M Maxwell, counter-defendant

ORDER DENYING DEFENDANT ACI'S MOTION FOR JUDGMENT AS A MATTER OF LAW, OR IN THE ALTERNATIVE, FOR NEW TRIAL

TEVRIZIAN, J.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF SUSAN M. MAXWELL'S MOTION FOR JUDGMENT, TREBLE DAMAGES, ATTORNEY'S FEES, PREJUDGMENT INTEREST, AND INJUNCTIVE RELIEF

I. Background

A. Introduction

*1 Plaintiff Susan M. Maxwell ("Maxwell") brings this action for patent infringement against Defendant Angel-etts of California ("Angel-etts"), also known as ACI International, Inc. ("ACI") [FN1]

> FN1. The parties refer to Defendant most of the time as "ACI," therefore the Court will do the same in order to remain consistent

On April 3, 2001, this case proceeded to jury trial before this Court. On April 19, 2001, the eleventh day of trial, the jury returned a verdict in favor of Plaintiff.

The present motion before the Court is Plaintiff Maxwell's Motion for Judgment, Treble Damages, Attorney's Fees, Prejudgment Interest, and Injunctive Relief, as well as Defendant ACI's Motion for Judgment as a Matter of Law, or in the Alternative, for New Trial.

B. Factual Summary

A portion of the following background is taken from the background of the Federal Circuit Court of Appeal's decision in Maxwell v. J. Baker, Inc., 86 F.3d 1098 (Fed.Cir.1996);

In retail shoe stores, pairs of shoes must be kept together to prevent them from becoming disorganized and mismatched Typically, manufacturers connect pairs of shoes using plastic filaments threaded through each shoe's eyelets. However, some shoes do not have eyelets and cannot be connected in this manner. Thus, manufacturers have resorted to other methods of keeping the shoes together such as making a hole in the side of each shoes and threading a filament through these holes. This method creates problems for retailers and manufacturers because the shoes are damaged by the process

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F Supp.2d
Not Reported in F Supp 2d, 2001 WL 34133507 (C D Cal )
(Cite as: 2001 WL 34133507 (C.D.Cal.))

Plaintiff Susan M. Maxwell ("Plaintiff" or "Maxwell"), an employee at a Target retail store, recognized this problem and invented a system for connecting shoes that do not have eyelets. She secured tabs along the inside of each shoe and connected the shoes with a filament threaded through a loop or hole in each tab. By securing the tabs inside the shoe, she preserved the integrity and appearance of the shoes.

Plaintiff filed a patent application for her invention entitled "System for Attaching Mated Pairs of Shoes Together", United States Patent No. 4,624,060 (the " '060 Patent")

Plaintiff originally filed a Complaint against Defendants Woolworth Corporation; Pamida, Inc ; and Angel-etts of California, Inc., in the United States District Court of the District of Minnesota. In her Complaint, Plaintiff alleged that these defendants infringed the '060 Patent. That United States District Court later severed Plaintiff's claim against Defendant Angel-etts of California, Inc. ("Defendant" or "Angel-etts") for lack of personal jurisdiction. That claim was then transferred to this United States District Court of the Central District of California.

On April 14, 2000, Defendant filed the Motion for Partial Summary Judgment which was granted in part and denied in part on May 15, 2000 The following issues went to trial: Specifically, as a matter of law, this Court held that Defendant could not be held liable for "first cost" transactions. However, it remained for the jury to decide which transactions were in fact "first cost" transactions. Furthermore, the Court found that the attachment system sewn *into* the seam of the inner and outer soles of the A-line slippers does not fall within the scope of the '060 Patent. Accordingly, the Court thereby granted Defendant's motion for partial summary adjudication to that effect. Finally, Defendant's motion for Partial Summary Adjudication on the issue of allegedly infringing items imported into Canada was denied without prejudice to renew at a later date.

C. The Jury's Verdict

*2 On April 3, 2001, the jury was impaneled and sworn and a Jury Trial was commenced before this Court. On April 19, 2001, the eleventh day of trial, the jury returned a verdict in favor of Plaintiff. On that same date, a Special Verdict was filed and entered on April 24, 2001. The Special Verdict returned the following answers to the questions of fact presented to the Jury, as follows:

1. 431,375 is the total number of infringing pairs of shoes that ACI International ("ACI") sold in "landed transactions" (direct infringement) in the United States after Maxwell began complying with the marking and notice statute, and after July 1, 1989.

2. 253,348 is the total number of infringing shoes that ACI induced the sales of in "first cost transactions" (induced infringement) in the United States after Maxwell began complying with the marking and notice statute, and after July 1, 1989.

3. $.06 per pair of shoes is the reasonable royalty per pair of shoes for ACI's infringing activity.

4. Maxwell was damaged in excess of the amount of the reasonable royalty as a result of ACI's infringement.

5. $.15 per pair of shoes is the additional damage per pair of shoes that Maxwell sustained as a result of ACI's infringement.

6. That ACI willfully infringed the Maxwell Patent.

7. 431,375 pairs of shoes were sold after ACI began wilfully infringing.

8. 253,348 pairs of shoes were sold after ACI began wilfully infringing.

9. ACI and Maxwell did not reach a complete agreement which settled their dispute by a preponderance of the evidence.

10. Maxwell did not misuse her patent by a preponderance of the evidence.

D. Procedural History

On June 30, 1995, Plaintiff filed a Complaint and Demand for Jury Trial in the United States District Court of the District of Minnesota against Defendants Woolworth Corporation; Pamida, Inc ; and Angel-etts of California, Inc (the "Minnesota Action").

On October 13, 1998, Defendant ACI filed an Answer to Plaintiff's Complaint in the Minnesota Action.

On December 23, 1998, Plaintiff filed an Amended Complaint in the Minnesota Action.

On September 29, 1999, United States District Court Judge of the District of Minnesota Donovan W. Frank severed Plaintiff's claim against ACI from the Minnesota Action, finding that that court did not have personal jurisdiction over ACI

On October 12, 1999, the United States District Court of the District of Minnesota transferred Plaintiff's claim against ACI to the United States District Court for the Central District of California

Not Reported in F Supp 2d

Not Reported in F Supp 2d, 2001 WL 34133507 (C D Cal )
**(Cite as: 2001 WL 34133507 (C.D.Cal.))**

Subsequently, the claim was assigned to Judge Dickran Tevrizian as Case No. CV 99-10516 DT (AJWx).

On November 3, 1999, Defendant ACI filed an Answer to Plaintiff's Amended Complaint.

On December 8, 1999, the Court entered an Order Denying Defendant's Motion for Partial Summary Judgment

On April 7, 2000, the parties submitted a joint motion to extend the discovery motion deadline from April 10, 2000. to May 9, 2000.

*3 On April 14, 2000, Defendant ACI filed the Motion for Partial Summary Judgment which was granted in part and denied in part on May 15, 2000

On September 26, 2000, Plaintiff Maxwell's counsel, Albert F. Davis filed a Notice of Change of Attorney Information changing his law firm association from Arter & Hadden, LLP to Quinn, Emanuel, Urquhart, Oliver & Hedges, LLP

On November 27, 2000, Defendant ACI, formerly known as Angel-etts of California, Inc , filed an Ex Parte Application for an Order Shortening Time for Application to Continue Trial Date which this Court granted on November 28, 2000 and set the trial date for April 3, 2001 The grounds for the continuance were that Steven Jackson, the President of ACI who is expected to be a key witness at trial, had a scheduled total hip replacement surgery on December 5, 2000 and required sixty (60) days to recover fully from his surgery

On February 23, 2001, Plaintiff Maxwell filed a Notice of Motion and Motion for Continuance which was denied by this Court on March 19, 2001.

On April 3, 2001, the jury was impaneled and sworn and the Jury Trial began before this Court On April 19, 2001, the Eleventh day of trial, the jury returned a verdict in favor of Plaintiff. On that same date, a Special Verdict was filed and entered on April 24, 2001

On April 27, 2001, Defendant ACI filed a Notice of Motion and Motion for Judgment as a Matter of Law, or in the Alternative, for New Trial. This Motion is presently before the Court

On May 3, 2001, Plaintiff Maxwell filed a Motion for Judgment, Treble Damages, Attorney's Fees,

Prejudgment Interest, and Injunctive Relief. This Motion is presently before the Court.

II. Discussion

A Standard

1. Motion for Judgment as a Matter of Law

Judgment as a matter of law ("JMOL") is properly granted if the evidence, together with all reasonable inferences in favor of the verdict, are legally insufficient to support the plaintiff's claims and could lead a reasonable person to only one conclusion Fed.R.Civ.P. 50(b); _Gilbrook v. City of Westminster, 177 F.3d 839, 864 (9th Cir.1999)_ JMOL may be granted where the jury's findings could only have been the result of sheer surmise and conjecture. See, _Doctor's Assocs., Inc. v. Weible, 92 F.3d 108, 112 (2nd Cir.1996)_

"If reasonable minds could differ as to the import of the evidence, a verdict should not be directed " _Headwaters Forest Defense v. County of Humboldt, 240 F.3d 1185, 1197 (9th Cir.2000)_ "[A]lthough the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." _Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000)_ The court may not make credibility determinations. _Gilbrook v. City of Westminster, 177 F.3d 839, 856 (9th Cir.1999)_

2. Motion for a New Trial

In ruling on a motion for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure, the court does not presume that the verdict is correct, nor does it view the evidence in the light most favorable to the party in whose favor the verdict was entered _Landes Constr. Co. v. Royal Bank of Canada, 833 F.2d 1365, 1371 (9th Cir.1987)_ Although the existence of evidence may bar a judgment as a matter of law, it does not prevent a court from granting a new trial if the verdict is against the clear weight of the evidence _Id_ A trial judge has a duty to set aside a verdict even though it is supported by substantial evidence if the judge is of the opinion that the verdict is against the clear weight of the evidence, or is based upon evidence which is false or will result in a miscarriage of justice _Wyatt v. Interstate Ocean & Transp. Co., 623 F.2d 888, 891-892 (4th Cir.1980)_.

3 Motion for Enhanced Damages

Not Reported in F Supp 2d
Not Reported in F Supp 2d, 2001 WL 34133507 (C D Cal )
(Cite as: 2001 WL 34133507 (C.D.Cal.))

Page 4

**\*4** Under the patent statute, "the court may increase the damages up to three times the amount found or assessed," 35 U.S.C. Section 284, if it finds willful infringement Datascope Corp. v. SMEC, Inc., 879 F.2d 820, 829 (Fed.Cir.1989). Willful infringement justifies an award of increased damages Lam, Inc. v. Johns-Manville Corp., 668 F.2d 462, 475-76 (10th Cir.1982); Leinoff v. Louis Milona & Sons, Inc., 726 F.2d 734, 742-743 (Fed.Cir.1984)

Further, "[i]t is well-established that a finding of willful infringement alone provides ample justification for an award of treble damages " Johnson & Johnson Assoc., Inc v R E Services Co., 1998 U S Dist LEXIS 20235, at 23 (N D Cal 1998).
> A patent owner is entitled to treble damages in a patent infringement action where the defendant has knowingly, deliberately, intentionally, willfully, or wantonly infringed the patent
> Smith v. Aleyska Pipeline Service G., 538 F.Supp. 977, 986 (D .Del.1982), aff'd, 758 F.2d 668 (Fed.Cir.1985); see, Read Corp., 970 F 2d at 826 (Fed.Cir 1992). While a finding of willful infringement does not mandate enhanced damages, the failure to increase a damages award after a finding of willful infringement would be an abuse of discretion absent the court articulating compelling circumstances S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc. 781 F.2d 198, 201-202 (Fed.Cir.1986) (where trial court refused to award attorney's fees, it was required to explain "why this is not an exceptional case in the face of its express finding of willful infringement")

4 Motion for Attorneys' Fees

Federal Rule of Civil Procedure 54(d)(2)(B) provides that "[u]nless otherwise provided by .. order of the court," Plaintiff was expressly required to "specify .. [the] grounds entitling the moving party to the award .. and [to] state the amount or provide a fair estimate of the amount sought " See. Gates v. Deukmejian, 987 F.2d 1392, 1397 (9th Cir.1993) ("The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked ")

B Analysis

1 Defendant ACI's Motion for Judgment as a Matter of Law, or in the Alternative for New Trial is Denied.

ACI renews its Motion for Judgment as a Matter of

Law ("JMOL"), which it brought at the close of Plaintiff's case, on the grounds that there was and is no legally sufficient, admissible evidence to support the jury's verdict. Specifically, the present Motion for JMOL is sought on the following grounds:
> 1. There was no legally sufficient evidence to support the jury's findings in the special verdict that ACI infringed Plaintiff's Patent by selling 431,375 landed pairs of shoes and 253,347 pairs in first cost transactions that were based solely on the summary page of Plaintiff Maxwell's "expert report," (Exh. 325) which was speculative and unreliable, and therefore inadmissible under Daubert v. Merrel Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).
> **\*5** 2. There was no legally sufficient evidence to support the jury's verdict that ACI actively induced retailers to sell infringing shoes in first cost transactions
> 3. There was no legally sufficient evidence to support the jury's award of damages in excess of the reasonable royalty The amount of the additional 15 cents per pair, exceeds ACI's profit and constitutes an impermissible penalty
> 4. There was no clear and convincing evidence to support the jury's findings that all infringing sales by ACI during 1989 and 1990 were "willful "

Alternatively, ACI files a Motion for New Trial on the grounds that the verdict is against the clear weight of the evidence, and is based on improperly admitted and speculative evidence, which results in injustice to ACI Specifically:
> 1 The jury could not have reached its verdict without relying on the inadmissible cover page from Plaintiff's "expert report" (Exh. 325) and Maxwell's speculative and inadmissible hearsay testimony regarding ACI's alleged infringement.
> 2. Plaintiff admitted that hundreds of thousands of shoes in her report did not infringe, including twin gores', shoes sold to retailers whose orders specified "Do not tie" (Exhs 1048 & 1050), and shoes tied at the top-line of the shoe, through eyelets, or with Swift-taches (Exh 1052), but the jury counted all of them as infringing shoes in its special verdict.
> 3 Plaintiff, over Defendant's objections, was allowed to introduce hearsay and speculative evidence of infringement by shoes retailers, without a showing that ACI ever provided any infringing shoes to them.
> 4 The Court improperly refused to allow the twin gores shoes (Exh. 233) to be cut to confirm to the jury that the loops were sewn into the seam and did not infringe, ruling that this should have been done

Not Reported in F Supp 2d
Not Reported in F Supp 2d, 2001 WL 34133507 (C D Cal )
(Cite as: 2001 WL 34133507 (C.D.Cal.))

in discovery

5. Over Defendant's objections, Plaintiff was allowed to testify about other litigation against retailers, a jury verdict in her favor in the *J Baker* lawsuit, and designs she believed were infringing prior to 1996, when the Federal Circuit drastically reduced the scope of her Patent. The resulting confusion concerning the scope of Plaintiff's patent enabled the jury to find that ACI had "willfully" infringed, based on designs that did not infringe the Patent as a matter of law

6. Plaintiff was permitted to testify about a royalty license with Vision Product, despite the fact that the Court granted ACI's Motion in Limine, ruling the evidence of royalties resulting from actual or threatened litigation was irrelevant and inadmissible.

7. The jury was improperly instructed that it could infer willfulness from ACI's failure to offer a legal opinion supporting its conduct. This was error and unduly prejudicial, because ACI did not raise a defense to alleged infringement based on advice of counsel, and Plaintiff did not allege that ACI infringed by attempting to design around her patent based on legal advice. Therefore, ACI had no duty to produce its counsel's opinion, and the absence of such opinion at trial was legally irrelevant Furthermore, the inference which the instruction invited the jury to make was unjustified, given the overwhelming evidence which showed that ACI acted promptly and in good faith to avoid using Plaintiff's Patent upon actual notice of infringement. In the absence of this erroneous instruction, no reasonable jury could have found that there was clear and convincing evidence of willfulness

a. Defendant's Motion for Judgment as a Matter of Law is Denied.

*6 Judgment as a matter of law is properly granted if the evidence, together with all reasonable inferences in favor of the verdict, are legally sufficient to support the plaintiff's claims and could lead a reasonable person to only one conclusion, namely, that ACI is entitled to judgment. Fed.R.Civ.P. 50; *Gilbrook v. City of Westminster*, 177 F.3d 839, 864 (9th Cir.1999) JMOL may be granted where the jury's findings could only have been the result of sheer surmise and conjecture See, *Doctor's Assocs., Inc. v. Weible*, 177 F.3d 108, 112 (2nd Cir.1996) In *Weisgram v Marley Company* 529 U S 440 (2000), the Supreme Court held that an inadmissible expert opinion should not be considered when a court rules on a JMOL motion because it "contributes nothing to

legally-sufficient evidentiary basis "

In opposition to Defendant's Motion, Plaintiff counters that ACI asks this Court to substitute its judgment for that of the jury. "If reasonable minds could differ as to the import of the evidence, a verdict should not be directed " *Headwaters Forest Defense v. County of Humboldt*, 240 F.3d 1185, 1197 (9th Cir.2000). "[A]lthough a court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe " *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2110 (2000). The court may not make credibility determinations *Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir.1999) Plaintiff contends that this Court agrees that ACI's Brief ignores substantial evidence which supports the jury's verdict Accordingly, this Court denies Defendant's Motion for JMOL.

i. Sherwood Testimony was Properly Admitted

Defendant claims that the Court improperly allowed Plaintiff's expert witness, Philip K. Sherwood to testify before the jury. Sherwood offered testimony about a "consumer survey" he conducted, purportedly to show the value of Plaintiff's design compared to an alternative method of tying shoes together. Defendant contends that the Court erred in allowing Sherwood to testify without conducting a *Daubert* hearing to determine if Sherwood was qualified as an expert to render an opinion. ACI filed a Motion in Limine to exclude Sherwood on the grounds that his opinion was unreliable and irrelevant to the issue in the lawsuit. This Court denied the motion, however, ACI on cross-examination had ample opportunity to question Sherwood's survey and the basis for his opinions

In Opposition, Plaintiff posits that ACI was heard before and during trial on the admissibility of Sherwood's testimony. Glance Decl. Exh 1 at 13-15; Exh 2 at 24-43. This Court agrees that a *Daubert* hearing was unnecessary. This Court properly denied ACI's request to strike the testimony, instead instructing the jury that Sherwood's opinion could only be used to show a "preference in general to loop systems over an intrusive method." Glance Decl Exh 2 at 23:11-12 Other evidence also corroborated the point of consumer preference for loops over holes, including testimony by Hardy. Glance Decl. Exh. 2 at 43A-45 Therefore, this Court finds that admission of the survey was cumulative and any purported error would have been harmless

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F Supp 2d
Not Reported in F Supp 2d, 2001 WL 34133507 (C.D Cal )
(Cite as: 2001 WL 34133507 (C.D.Cal.))

Page 6

ii  The Evidence Supported the Jury's Finding that
ACI Sold 684,723 Pairs of Infringing Shoes

*7 In the Special Verdict, the jury found that ACI
had directly infringed Plaintiff's Patent by selling
431,375 pairs of shoes in landed transactions and that
ACI had induced others to make infringing sales of
253,347 pairs of shoes in first cost transactions
Defendant contends that there is no legally sufficient
evidence to support these findings, and the jury's
reliance on Plaintiff's "expert" testimony and Exhibit
325 were inadmissible under *Daubert* This Court
denied ACI's Motion in Limine to exclude Plaintiff
and her report prior to trial Nevertheless, Defendant
contends that Plaintiff's expert testimony was lax and
her opinions relied on guessing and conjecture and
were rank with speculation.

In opposition, Plaintiff correctly indicates that there
is no dispute on the issue of infringement ACI
admitted to one order of 26,100 infringing sales
Glance Decl, Exh 8 at 171 Defendant concedes that
other evidence proves even more infringement, yet
ACI never provided its own count of these additional
infringements Furthermore, ACI failed to keep
proper records of the amount of infringement, and
thus damages could not and cannot be determined
with precision Glance Decl , Exh 4 at 94-95

Therefore, Plaintiff correctly asserts that damages
were estimated using the available evidence, with all
doubt resolved against the infringer *Sensonics, Inc.
v. Aerosonic Corp.*, 81 F.3d 1566, 1572
(Fed.Cir.1996). If it is impossible to make a
mathematical or approximate apportionment between
infringing and non-infringing shoes, the infringer
bears the burden of this inexactitude *Nickson
Industries, Inc. v. Rol Mfg. Co.,* 847 F.2d 795, 799
(Fed.Cir.1988). Therefore, Plaintiff contends and this
Court agrees that Defendant has no basis on which to
dispute the evidence as to the number of infringing
shoes, which are adequately supported by the record
under the circumstances.

Plaintiff avers that Defendant received sample pairs
of shoes for each order that Plaintiff filled. Glance
Decl., Exh 2 at 48-49. However, even after Maxwell
charged ACI with infringement and complained
about ACI's inaccurate count of infringing pairs of
shoes in 1990, ACI destroyed these sample pairs
Glance Decl Exh 7 at 157-158. Therefore, Plaintiff
correctly asserts that ACI cannot now benefit from its
own destruction of evidence, and cannot complain
that more actual pairs should have been used for the

count In addition, Plaintiff avers that Maxwell
testified as a lay witness under Federal Rule of
Evidence 602, and not as an expert such that
Maxwell's testimony was not required to meet the
standards set forth in *Daubert* Furthermore, Maxwell
was subject to vigorous cross-examination before the
jury who could readily assess her credibility as a
witness As such, this Court holds that the evidence
supports the jury's findings on the number of
infringing pairs of shoes

iii The Evidence Supported the Jury's Verdict that
ACI Induced Retailers to Sell Infringing Shoes

*8 Defendant contends that there was no legally
sufficient evidence presented to support the jury's
finding that ACI induced retailers to sell 253,347
pairs of infringing shoes, or any other number of
shoes in first cost transactions The only evidence
offered by Plaintiff was a purchase order from
Woolworth in 1989 (Exhibit 33), but it called for a
"loop in sock" which is not an infringing method The
record, according to Defendant, is lacking in any
evidence of inducement.

However, Plaintiff maintains that Maxwell testified
in support of inducement Furthermore, Steve
Jackson admitted that ACI sold infringing shoes to
Dollar General Glance Decl , Exh 8 at 171 In
addition, the jury had before them ACI's sales records
for the years 1989 to 1994, which showed that ACI
sales of 97 million pairs of shoes, millions of which
were sold to companies never licensed by Maxwell
ACI now admits that at least some of these millions
of pairs of shoes also infringed Nevertheless, ACI
presented no count of its own, and pointed to no
records at trial that would have supported a contrary
finding Plaintiff correctly asserts that this evidence
was properly construed against ACI, and amply
supports a total of 684,723 infringing sales under the
circumstances

iv There was Sufficient Evidence to Support the
Jury's Verdict that Plaintiff was Entitled to
"Additional Damages"

Defendant contends that in the Special Verdict, the
jury found that Plaintiff was entitled to damages in
excess of the reasonable royalty in the amount of 15
cents per pair, for a total of 21 cents per pair.
Defendant contends that there was no legally
sufficient evidence presented to support these
findings regarding additional damages, which are
speculative and punitive in nature.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F Supp 2d                                                                                              Page 7
Not Reported in F Supp 2d, 2001 WL 34133507 (C D Cal )
(Cite as: 2001 WL 34133507 (C.D.Cal.))

The intended purpose of additional damages, if any, is to "adequately compensate" Maxwell for infringement. *Maxwell v. J. Baker,* 86 F.3d 1098, 1109 (Fed.Cir.1996) The term "compensate" means that plaintiff is being made whole for real losses she sustained There must be evidence of the actual damage sustained by Maxwell as a result of the claimed infringement. As Plaintiff's own jury instruction ("Increased Royalty") stated:

> Your determination of a royalty to compensate for the infringement must take into consideration the actual commercial consequences of the infringement

In *Maxwell v J Baker,* the Federal Circuit explained that the fact-finder must consider evidence of "additional factors" to assist in the determination of adequate compensation These factors relied on by the Federal Circuit were set forth in *Georgia-Pacific Corp. v. U.S. Plywood Corp.,* 318 F.Supp. 1116, 1120 (S.D.N.Y.1970) and included:

> royalties received by the patentee for the licensing of the patent in question, opinion testimony of qualified experts, the patentee's relationship with the infringer, and other factors that might warrant higher damages.

Defendant argues that no other additional factors were set forth by Plaintiff justifying the additional 15 cents per pair to adequately compensate Plaintiff

*9 Plaintiff responds that "a court is not restricted in finding a reasonable royalty to a specific figure put forth by one of the parties." *SmithKline Diagnostics, Inc. v. Helena Laboratories Corp.,* 926 F.2d 1161, 1168 (Fed.Cir.1991) "A jury's choice simply must be within the range encompassed by the record as a whole ." *Unisplay, S.A. v. American Electronic Sign Co., Inc.,* 69 F.3d 512, 519 (Fed.Cir.1995)

Moreover, additional compensation above the "willing parties" reasonable royalty is required if the inventor is to have substantial justice This additional compensation protects against creating compulsory licenses with unwilling licensee infringers that may attempt blatant misappropriation of patented inventions. *Id* at 1109-10. In this instance, Plaintiff contends that the parties did not enter a license, but ACI infringed anyway. ACI's actions contributed to industry-wide lack of respect for Maxwell's patent, crippling license efforts and creating additional damages. Glance Decl Exh 4 at 132-134; Exh 7 at 153-54. Plaintiff contends that this entitles Maxwell to additional damages for adequate compensation, and supports the verdict. Plaintiff further lists the *Georgia-Pacific* factors and applies the facts of the case to those factors in detail and in further support of additional damages The record adequately supports the additional factors warranting the additional 15 cents per pair of shoes infringed.

v. The Evidence Supported the Jury's Verdict that Any Infringement by ACI was Willful

Defendant contends that the Court erroneously allowed the jury to base its finding of willfulness on Maxwell's impermissible testimony based on surmise and speculation, which this Court has previously addressed Furthermore, Defendant states that the only additional evidence of infringement that was independent of Maxwell's testimony and opinions, and related to minor sales to Dollar General and Countess Casual in 1989, before ACI had actual knowledge of the patent (Exhs 20, 24, 315, 316.) Defendant contends that the evidence showed ACI did not have actual knowledge of the patent until 1990, and thus, there was no clear and convincing evidence of willfulness

While Defendant contends that the Jury Instructions were erroneous on the issue of ACI's failure to obtain the opinion of counsel indicating willful infringement, the same instructions also indicated that:

> You should keep in mind, however, that not every failure to seek the opinion of counsel indicates willful infringement

Clearly, the Court gave the proper instructions on the inference of willfulness. Furthermore, Plaintiff contends that notice of the existence of the patent and an idea of its subject matter are sufficient for willfulness *Great Northern Corp. v. Davis Core & Pad Co.,* 782 F.2d 159, 166-67 (Fed.Cir.1986) ACI appears to confuse actual notice of infringement under 35 U.S.C. Section 287 with the awareness of another's patent rights, which may trigger willful infringement under 35 U.S.C. Section 284 Plaintiff avers that in this instance, ACI received all the information it needed by at least April 1987, when it received a letter with the Patent number and a description of the invention Glance Decl., Exh 10 The jury found that ACI continued to sell shoes which infringed Maxwell's Patent years after it received the letter Plaintiff correctly avers that ACI's actions, despite receiving the April 1987 letter, support a finding of willful infringement. *See, Stryker Corp.* 96 F 3d at 1415-16. Accordingly, this Court finds no basis to disturb the jury's verdict

b Defendant's Motion for a New Trial is Denied.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F Supp.2d
Not Reported in F Supp 2d, 2001 WL 34133507 (C D Cal )
(Cite as: 2001 WL 34133507 (C.D.Cal.))

**\*10** Defendant also claims that it is entitled to a new trial, because the jury's verdict is against the clear weight of the evidence, and in some instances, is not supported by any evidence In ruling on a motion for a new trial, the court does not presume that the verdict is correct, nor does it view the evidence in the light most favorable to the party in whose favor the verdict was rendered *Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir.1987)

i The Jury's Verdict is Supported by the Clear Weight of the Evidence

Defendant argues that the jury's verdict is against the clear weight of the evidence primarily because the jury's finding that ACI infringed the Patent by selling more than 680,000 pairs of shoes is unsubstantiated. Specifically, Defendant posits that the only evidence supporting the jury's findings that ACI sold or induced to sell a total of 684, 723 pairs of infringing shoes was the summary page of Maxwell's speculative and unreliable "expert report." (Exh 325.) Furthermore, Defendant provides that ACI made landed sales of fewer than 60,000 pairs of shoes that may have infringed to Dollar General and Countess Casual (Exh 20, 24, 315, 316)

Defendant posits that there is no evidence that ACI actively induced any retailers to sell any infringing shoes, much less 253,347 pair Defendant contends that any testimony was general and did not support a finding that ACI took active steps to induce any retailer to sell any particular infringing shoes, much less that Defendant did so with specific intent or willfulness. Plaintiff counters that the testimony of Hardy and Maxwell provided the jury with ample evidence that it was standard procedure for Defendant ACI in a first cost transaction to directly solicit and secure orders In addition, according to the evidence presented at trial, ACI supervised, controlled and approved design and manufacturing details Before any shoes from a first cost transaction left the factory, ACI had to receive and approve a pair of shoes as an example of what they had ordered on behalf of the retailer Glance Decl Exh 2 at 50-51 Thus, according to the testimony presented, ACI actively aided and abetted the infringement

Moreover, as shown above in the willfulness section, ACI had specific knowledge that its actions would lead to infringement of Maxwell's Patent

Defendant further argues that the 15 cents per pair in "additional damages" was not supported by any "actual commercial consequences" of infringement,

or that Maxwell had sustained losses for which she needed additional compensation.

Each of Defendant's arguments were separately addressed above, therefore, the Court refers to the prior sections for further details on those discussions pertaining to the issues of the number of infringing sales, inducement, "additional damages," and willfulness

ii The Verdict was not the Result of Legal Error

Defendant's argument that the verdict was the result of legal error, because it was based on Maxwell's speculative and unreliable "expert report," her unqualified opinion testimony and the Sherwood testimony, are not substantiated by the evidence Furthermore, these items of evidence have been previously addressed by this Court and found not to have been admitted at trial in error Accordingly, this Court does not find that the verdict is against the clear weight of the evidence.

iii The Court Did not Abuse its Discretion By Imposing Unreasonable Time Limits On ACI's Case

**\*11** Defendant contends that the Court prejudiced its case by imposing an arbitrary time limit on ACI's case that unfairly prejudiced Defendant's ability to rebut Plaintiff's contentions that it sold hundreds of thousands of shoes and acted willfully during 1989 and 1990

Time limits set by a trial court are discretionary *See, Amarel v. Connell*, 102 F.3d 1494, 1513 (9th Cir.1996). It is incumbent upon a party to object as to trial time, and explain its basis for objecting, before the close of evidence. *Monotype Corp. v. Int'l. Typeface Corp.*, 43 F.3d 443, 451 (9th Cir.1994) In this instance, ACI rested its case well before the allotted time expired. Glance Decl Exh 7 at 164:23-24, Exh 8 at 172-173:7 (Court would allow trial to proceed until 1:00 p.m.; jury recessed at 11:38 a.m.)

Plaintiff correctly avers that well before Defendant rested, the Court informed Defendant that the "trial that I had for next week is going to go away." Glance Decl Exh 7 at 149:18-19. Despite this opportunity to request more time, ACI remained silent Having failed to object, ACI has no basis to claim error for denying additional time Furthermore, the time allotted to Defendant was adequate and fair, and does not justify granting Defendant's Motion for a New Trial As such, Defendant's Motion for a New Trial is denied

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2. Plaintiff Maxwell's Motion for Judgment, Treble Damages, Attorney's Fees, Prejudgment Interest, and Injunctive Relief is Granted in Part and Denied in Part

Plaintiff Maxwell contends that based on the jury verdict, the Court should award Maxwell compensatory damages of $143,791 83 and prejudgment interest and costs. Furthermore, Plaintiff argues that the Court should award treble damages and reasonable attorney fees based on 35 U.S.C. § § 284 and 285, the jury's finding that ACI's wilfully infringed Maxwell's Patent, and the other relevant circumstances. Finally, ACI should be enjoined from further infringement of United States Patent No. 4,624,060.

Defendant ACI opposes Plaintiff's Motion for enhanced damages, attorneys' fees, prejudgment interest, and injunctive relief. ACI contends that Plaintiff has not shown--much less by clear and convincing evidence--that this is an "egregious" or "exceptional" case or that ACI is deserving of punishment in the form of treble damages or attorneys' fees. Defendant contends that while the jury found that ACI willfully infringed the patent, this finding could only have been based on unreliable, speculative, and inadmissible evidence, particularly Plaintiff's so-called "expert report." Defendant submits that it presented ample and undisputed evidence demonstrating that it acted in good faith to avoid infringement following actual notice of the claimed patent infringement, including by directing its personnel and agents to avoid using the patented design, coming up with non-infringing alternatives, and meeting with Plaintiff to attempt to resolve the matter

*12 In addition, Defendant avers that construing the evidence in Plaintiff's favor, the evidence established that, at most, the period of "willful infringement" could have lasted only a short time: from April 1990 (when ACI received actual notice of the patent) until the first week of August 1990 (when ACI met with Plaintiff and took steps to avoid all use of the patented design) Moreover, Defendant argues that Plaintiff has already received an award of actual damages which, if it is allowed to stand, more than fully compensates Plaintiff: the jury awarded Plaintiff, on top of a "reasonable royalty" of 6 cents per pair of infringing shoes, unspecified "additional damages" of 15 cents per pair. Thus, no further relief of any kind is necessary or appropriate according to Defendant

a The Factual Record Supports a Finding of Enhanced Damages, Therefore The Court Awards Plaintiff Double Compensatory Damages Based on the Jury's Finding of Willful Infringement, Not Treble Damages as Requested by Plaintiff

Plaintiff contends that the jury was instructed to consider many factors to determine whether ACI's infringement was willful. See. Court's Instructions to Jury at 64-67. ("Declaration of Robert J. Glance in Support of Motion for Judgment, Treble Damages, Attorney Fees, and Prejudgment Interest and Injunctive Relief" Exhibit No. 20 (hereinafter "Glance Decl Exh. # "))

Plaintiff posits that the Federal Circuit repeatedly has approved awards increasing damages up to three times based on a finding of willful infringement. *TWM Manufacturing Co. v. Dura Corp.,* 789 F .2d 895, 902 (Fed.Cir.1986) In this instance, as stated in the Special Verdict, the jury found willfulness, a finding that Plaintiff contends is supported by substantial evidence This Court agrees. In addition, the Court may review all the facts and circumstances relating to Defendant's conduct in determining the amount of the enhancement *Read Corp. v. Portec, Inc.* 970 F.2d 816, 826 (Fed.Cir.1992)

In its Opposition, Defendant correctly states that any enhancement is within the trial court's discretion *Brooktree Corp. v. Advanced Micro Devices, Inc.,* 977 F.2d 1555, 1581 (Fed.Cir.1993) Furthermore, Defendant avers that while a jury's finding of willfulness provides a potential basis for enhancement, the trial court has full discretion to determine whether such relief is appropriate under the circumstances *Odetics, Inc. v. Storage Tech. Corp.,* 185 F.3d 1259, 1274 (Fed.Cir.1999) In addition, the trial court has complete discretion regarding the amount of enhancement, if any that will be awarded *Read Corp. v. Portec, Inc.,* 970 F.2d 816, 826 (Fed.Cir.1992)

Furthermore, Defendant contends that enhanced damages are punitive, not compensatory *Beatrice Foods Co. v. New England Printing and Lithographing Co.,* 923 F.2d 1576, 1579 (Fed.Cir.1991) Thus, the Federal Circuit has held that the "paramount determination in deciding to grant enhancement . is the egregiousness of the defendant's conduct based on all the facts and circumstances." *Read,* 970 F.2d at 826. In this regard, "an infringer may generally avoid enhanced damages with a meritorious good faith defense and a

© 2006 Thomson/West No Claim to Orig. U.S Govt. Works.