# Tab A

Westlaw.

Not Reported in F.Supp.2d                                                            Page 1
Not Reported in F.Supp.2d, 2002 WL 1489555 (N.D.Tex.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
   United States District Court, N.D. Texas, Dallas
                        Division.
ADVANCED DISPLAY SYSTEMS, INC. Plaintiff,
                          v.
KENT STATE UNIVERSITY, et al. Defendants.
   **Nos. 3-96-CV-1480-BD, 3-96-CV-1608-BD.**


                     July 10, 2002.

Company that developed and promoted polymer-free
liquid crystal displays (LCDs) brought action against
patent owner and its licensee seeking declaration of
patent invalidity. Owner and licensee brought action
for infringement, and actions were consolidated.
Following initial judgment for company and reversal
by Court of Appeals, 212 F.3d 1272, jury in second
trial found patent was valid, enforceable, and
infringed by company's devices and methods. Patent
owner and licensee moved for entry of judgment on
the verdict, and company moved for judgment as a
matter of law or for a new trial. The District Court,
Kaplan, United States Magistrate Judge, held that: (1)
patent terms were sufficiently definite to meet
enablement requirement; (2) verdicts finding both
literal infringement and infringement under the
doctrine of equivalents were not fatally inconsistent;
(3) reasonable royalty for infringement was
improperly calculated; (4) owner and licensee were
entitled to enhanced damages; (5) owner and licensee
were entitled to prejudgment interest on award of
compensatory damages; (6) injunction was
sufficiently specific; and (7) declaration of validity
would not be limited to those defenses actually
rejected by the jury.

Ordered accordingly.

                     West Headnotes

**[1] Patents 291 ☞101(6)**

291 Patents
   291IV Applications and Proceedings Thereon
       291k101 Claims
           291k101(6) k. Ambiguity, Uncertainty or
Indefiniteness. Most Cited Cases
Patent claim directed to polymer-free liquid crystal
display (LCD) device, which defined "visible

spectrum" to include wavelengths between about 350
nanometers (nm) and 850 nm, was sufficiently
definite to meet enablement requirement, even if light
with wavelength above 750 nm was infrared and thus
not visible, in view of testimony that patent included
broader range to account for individual differences in
ability to perceive the visible spectrum and
supporting testimony regarding the phenomenon of
"psychophysics." 35 U.S.C.A. § 112, para. 2.

**[2] Patents 291 ☞101(6)**

291 Patents
   291IV Applications and Proceedings Thereon
       291k101 Claims
           291k101(6) k. Ambiguity, Uncertainty or
Indefiniteness. Most Cited Cases
Term "stable," as used in limitation requiring that cell
wall structure and liquid crystal cooperate to form
focal conic and twisted planar textures that were
stable in the absence of a field, in patent claim
directed to polymer-free liquid crystal display (LCD)
device, was sufficiently definite to meet enablement
requirement, although patent did not specify how
long cell had to remain stable in the absence of a
field, as one skilled in the art could still determine the
meaning of the term. 35 U.S.C.A. § 112, para. 2.

**[3] Patents 291 ☞101(6)**

291 Patents
   291IV Applications and Proceedings Thereon
       291k101 Claims
           291k101(6) k. Ambiguity, Uncertainty or
Indefiniteness. Most Cited Cases
Term "pulse" as used in limitation describing electric
field pulse of a specified magnitude, in patent claim
directed to polymer-free liquid crystal display (LCD)
device, was sufficiently definite to meet enablement
requirement; testimony of patentee's experts that
allegedly similar patent did not involve a "pulse" did
not show ambiguity in term, as distinction between
patents was adequately explained by one skilled in
the art, who testified that, unlike patent at issue,
similar patent did not specify any particular
magnitude. 35 U.S.C.A. § 112, para. 2.

**[4] Patents 291 ☞101(6)**

291 Patents
   291IV Applications and Proceedings Thereon

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1489555 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

291k101 Claims
291k101(6) k. Ambiguity, Uncertainty or Indefiniteness. Most Cited Cases
Limitation in patent claim directed to polymer-free liquid crystal display (LCD) device requiring a means for addressing said liquid crystal material was sufficiently definite to meet enablement requirement; patent provided that addressing means could be of any type known in the art, and, in describing preferred embodiments of the patent, specification made clear that material could be addressed in various ways and incorporated in other types of cells. 35 U.S.C.A. § 112, para. 2.

[5] Patents 291 ☞314(6)

291 Patents
    291XII Infringement
        291XII(C) Suits in Equity
            291k314 Hearing
                291k314(6) k. Findings and Determination. Most Cited Cases
Although the requirements of literal patent infringement and infringement under the doctrine of equivalents are unquestionably different, they are not necessarily fatally inconsistent, and jury verdict finding both types of infringement did not require a new trial, although verdict would be reformed and court would enter judgment only on finding of literal infringement.

[6] Patents 291 ☞319(1)

291 Patents
    291XII Infringement
        291XII(C) Suits in Equity
            291k319 Damages
                291k319(1) k. In General. Most Cited Cases
Reasonable royalty damages awarded to patent owner and licensee for infringement could not include amount based on up-front payments paid to infringer by licensees of infringing technology, absent evidence that such payments reflected amount that patent owner and licensee would have demanded for patented technology in a hypothetical negotiation with infringer, at the time the infringement occurred. 35 U.S.C.A. § 284.

[7] Patents 291 ☞319(3)

291 Patents
    291XII Infringement
        291XII(C) Suits in Equity

291k319 Damages
    291k319(3) k. Right to Increase Damages Awarded. Most Cited Cases
Patent owner and licensee were entitled to treble damages for competitor's willful infringement of patent directed to polymer-free liquid crystal display (LCD) device, as jury implicitly found that competitor did not rely on competent legal advice when it took infringing actions, and, although jury in first trial had found in favor of competitor, competitor used improper litigation tactics to secure that verdict. 35 U.S.C.A. § 284.

[8] Patents 291 ☞319(4)

291 Patents
    291XII Infringement
        291XII(C) Suits in Equity
            291k319 Damages
                291k319(4) k. Interest. Most Cited Cases
Patent owner and licensee were entitled to prejudgment interest on award of compensatory damages representing reasonable royalty rate in patent infringement action, as there was no evidence that royalty rate included prejudgment interest; interest would be awarded at average prime rate from date that patent issued and infringement commenced, until the date of judgment.

[9] Patents 291 ☞319(4)

291 Patents
    291XII Infringement
        291XII(C) Suits in Equity
            291k319 Damages
                291k319(4) k. Interest. Most Cited Cases
Pre-judgment interest was not recoverable on award of enhanced damages in patent infringement action. 35 U.S.C.A. § 284.

[10] Patents 291 ☞287(6)

291 Patents
    291XII Infringement
        291XII(C) Suits in Equity
            291k287 Persons Liable
                291k287(6) k. Corporate Officers, Agents, and Stockholders. Most Cited Cases
President of patent infringer who willfully induced infringement was jointly and severally liable for compensatory and enhanced damages awarded to patent owner and licensee for infringement.

[11] Patents 291 ☞317

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1489555 (N.D.Tex.)
**(Cite as: Not Reported in F.Supp.2d)**

291 Patents
   291XII Infringement
     291XII(C) Suits in Equity
      291k317 k. Permanent Injunction. Most
Cited Cases
Permanent injunction entered in patent infringement
action, which referred to claims of patent and
prohibited any further infringement by competitor,
was sufficiently specific to provide adequate notice
of conduct enjoined, even if it did not include
limiting language requested by competitor to exclude
competitor's new product, since any determination
that new product did not infringe patent would be
premature. Fed.Rules Civ.Proc.Rule 65(d), 28
U.S.C.A.

[12] Declaratory Judgment 118A &#8606;385

118A Declaratory Judgment
   118AIII Proceedings
     118AIII(G) Judgment
      118Ak385 k. Declaratory Relief. Most
Cited Cases
Declaratory relief requested by patent owner and
licensee in their successful infringement action, as to
validity of patent, would not be limited to those
defenses that were actually considered and rejected
by the jury; rather, owner and licensee were entitled
to declaration that patent was valid and enforceable
in all respects, as patents were entitled to
presumption of validity until adjudged invalid, and,
to extent that other defenses existed, infringer was
precluded from litigating them under doctrine of
collateral estoppel. 35 U.S.C.A. § 282.

*MEMORANDUM OPINION AND ORDER*
KAPLAN, Magistrate J.
**\*1** Kent Display Systems, Inc. ("KDS"), Kent State
University ("KSU") and Kent Research Corporation
("KRC"), collectively referred to as "Kent," have
filed a motion for entry of judgment on the verdict
and other relief in this patent case. Advanced Display
Systems, Inc. ("ADSI") and Dr. Bao Gang Wu
("Wu"), collectively referred to as "ADS," have filed
a motion for judgment as a matter of law or,
alternatively, for a new trial. For the reasons stated
herein, both motions are granted in part and denied in
part.

I.

KSU owns a patent on a polymer-free liquid crystal

display ("LCD") device using cholesteric visible
material that is stimulated and sustained through a
single electric field pulse of sufficient duration and
voltage to create a contrast between the material's
light reflecting and light scattering textures. (U.S.
Patent No. 5,453,863, also known as the "West
patent"). [FN1] The patent is licensed through KRC to
KDS. In early 1996, Kent learned that ADSI was
promoting a polymer-free LCD and threatened suit to
enforce its patent. This prompted ADSI to file a
declaratory judgment action to declare the West
patent invalid. After settlement negotiations failed,
Kent sued ADSI and its president, Dr. Bao Gang Wu,
for infringement. The two cases were consolidated
and proceeded to trial in November 1997.

    FN1. LCDs are used in a variety of electro-
    optic products, such as digital watches and
    notebook computer screens, to display
    images and information.

Following two weeks of testimony and extensive
deliberations, a jury found that the West patent was
invalid for anticipation and obviousness and was not
infringed. The court entered a final judgment in favor
of ADS. On appeal, the Federal Circuit Court of
Appeals reversed and remanded for a new trial.
*Advanced Display Systems, Inc. v. Kent State
University,* 212 F.3d 1272 (Fed.Cir.2000), *cert.
denied,* 532 U.S. 904, 121 S.Ct. 1226, 149 L.Ed.2d
136 (2001). This decision was based, in large part, on
the deposition testimony of Hongxi "Victor" Zhou, a
former ADSI engineer, taken in another case. Zhou
testified that ADSI's own efforts to develop a
polymer-free LCD had been wholly unsuccessful
until Dr. Zvi Yaniv, the former president of KDS,
visited ADSI in early 1994 and brought with him a
prototype of Kent's cholesteric LCD and its electrical
driver. While Yaniv was at lunch, Zhou and other
ADSI engineers were instructed to surreptitiously
disassemble the prototype, photograph its component
parts, and then reassemble the device in such a
manner so as to avoid any indication of tampering.
Within a month, ADSI had replicated the circuitry
necessary to operate the device and filed its own
patent application for a polymer-free LCD.

Although Zhou testified to essentially the same facts
during the first trial, his prior deposition was never
produced to Kent. In fact, ADSI's former counsel
claimed that Zhou's deposition was subject to an oral
protective order by a state court judge and
characterized the photograph of Kent's prototype as
"attorney work product" on its privilege log.[FN2] The

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1489555 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

Federal Circuit found this evidence potentially outcome determinative on the issues of non-obviousness and infringement and chastised ADSI's counsel for their role in the cover-up. In reversing and remanding the case for a new trial, the court wrote:

> FN2. Despite the fact that this photograph was taken more than two years before ADSI filed suit, counsel refused to produce the picture because the original print was photocopied by attorney. The Federal Circuit condemned this conduct as an "egregious discovery ploy." *Advanced Display Systems,* 212 F.3d at 1288-89 ("This court ... is unable to find any legal principle that even remotely supports the notion that an otherwise discoverable document alchemically metamorphisizes into privileged work product simply because an attorney photocopies it.").

*2 From the record below, it appears to this court that ADS's development of its LCD technology consisted of deceitful and conniving machinations that amounted to nothing short of corporate espionage. Regretfully, the conduct of ADS's counsel in defending such actions was equally egregious. Indeed, to say that counsel's conduct during discovery raises the collective eyebrow of this court would be to understate the severity of their transgressions. *Id.* at 1288.

After the parties conducted additional limited discovery, a second trial was held from December 3-20, 2001. This time, the jury found that the West patent was valid and enforceable and that 22 devices or methods made, used, or sold by ADSI infringed claims 1-8 and 10 of the patent both literally and under the doctrine of equivalents. The jury also found that ADSI and Wu induced others to infringe the patent and acted willfully. A total of $1.5 million in damages was awarded as a reasonable royalty to compensate KDS for such infringement. Kent now moves for entry of judgment on the verdict while ADS seeks judgment as a matter of law or, alternatively, a new trial. Both motions have been briefed by the parties and are ripe for determination.

II.

The jury returned a verdict in favor of Kent and

against ADS as to all claims and defenses raised in this case. As a result, the court is required to "promptly approve the form of the judgment and the clerk shall thereupon enter it." Fed. R. Civ. P. 58. By contrast, a party is entitled to judgment as a matter of law if "there is no legally sufficient evidentiary basis" to submit an issue to the jury. Fed. R. Civ. P. 50(a)(1); *Conkling v. Turner,* 18 F.3d 1285, 1300 (5th Cir.1994). A mere "scintilla" of evidence is insufficient. There must be a conflict in substantial evidence to create an issue of material fact. *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (en banc). A Rule 50(a) motion should be granted only "if the facts and inferences point so strongly and overwhelmingly in favor of the moving party ... that reasonable jurors could not have arrived at a contrary verdict." *Crist v. Dickson Welding, Inc.,* 957 F.2d 1281, 1285 (5th Cir.), *cert. denied,* 506 U.S. 864, 113 S.Ct. 187, 121 L.Ed.2d 132 (1992); *Shipman,* 411 F.2d at 374. The entire record must be viewed in the light most favorable to the party opposing the motion. *Resolution Trust Corp. v. Cramer,* 6 F.3d 1102, 1109 (5th Cir.1993).

III.

Five issues are raised by the cross-motions filed by Kent and ADS: (1) whether the West patent is invalid for indefiniteness; (2) whether a new trial is required because of inconsistent verdicts on the claims of literal infringement and infringement under the doctrine of equivalents; (3) whether the evidence supports damages in the amount of $1.5 million; (4) whether Kent is entitled to enhanced damages, pre-judgment and post-judgment interest, and injunctive and declaratory relief; and (5) whether Wu is jointly and severally liable for any damage award. The court will address each issue in turn.

A.

*3 The West patent claims, *inter alia*:
A light modulating polymer-free reflective cell comprising cell wall structure and a chiral nematic liquid crystal light modulating material having positive dielectric anisotropy and a pitch length effective to reflect light in the *visible spectrum,* said cell wall structure and liquid crystal cooperating to form focal conic and twisted planar textures that are *stable* in the absence of a field, and a *means for addressing* said liquid crystal material, said means adapted to selectively establish an electric field *pulse* of a magnitude effective to transform at least a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 5
Not Reported in F.Supp.2d, 2002 WL 1489555 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

portion of said liquid crystal from a focal conic texture to a light reflecting twisted planar texture, and an electric field *pulse* of a magnitude effective to transform at least a portion of the liquid crystal from a light reflecting twisted planar texture to a focal conic texture

(ADS App. at 300-01) (emphases added). ADS contends that the patent is invalid because the terms "visible spectrum," "stable," "pulse," and "addressing means" lack a clear and definite meaning.[FN3]

> FN3. In an attempt to impose reasonable limits on post-trial briefing, the court restricted the opening briefs of each party to 30 pages. *See* Order, 1/29/02 at 1, ¶ 2. ADS now requests an opportunity to submit additional briefing on the issue of invalidity for indefiniteness in order to provide "more detailed support from the record and supporting case law ..." (ADS Mem. at 24-26, n. 48-51). Ordinarily, the court would not hesitate to modify these briefing limitations to allow for a full and fair presentation of the issues. However, ADS has elected to devote the first five pages of its opening brief to attacking opposing counsel and rehashing arguments that already have been rejected by the Federal Circuit and this court. Had ADS been more prudent in its briefing decisions, it could have adequately presented its arguments and authorities in the space allotted.

1.

A patent specification must contain "a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains ... to make and use the same ..." 35 U.S.C. § 112, ¶ 2. More particularly, the specification must "distinctly claim[ ] the subject matter which the applicant regards as his invention." *Id.* The claims must have a clear and definite meaning when construed in light of the entire patent document. *Miles Laboratories, Inc. v. Shandon Inc.,* 997 F.2d 870, 874-75 (Fed.Cir.1993), *cert. denied,* 510 U.S. 1100, 114 S.Ct. 943, 127 L.Ed.2d 232 (1994) A claim is sufficiently definite if one skilled in the art would understand the bounds of the claim when read in light of the specification. *North American Vaccine, Inc. v. American Cyanamid Co.,* 7

F.3d 1571, 1579 (Fed.Cir.1993), *cert. denied,* 511 U.S. 1069, 114 S.Ct. 1645, 128 L.Ed.2d 365 (1994); *Miles Laboratories,* 997 F.2d at 875. A patent that fails to meet this requirement is invalid for indefiniteness. *See Exxon Research and Engineering Co. v. United States,* 265 F.3d 1371, 1375 (Fed.Cir.2001). However, a patent is presumed to be valid once it has issued. In order to overcome this presumption, a party must present clear and convincing evidence of invalidity. 35 U.S.C. § 282; *North American Vaccine,* 7 F.3d at 1579.

2.

[1] The West patent defines the "visible spectrum" to include wavelengths between "about 350 [nanometers] and 850 [nanometers]." (ADS App. at 296). ADS argues that this term is indefinite because light with a wavelength above 750 nm is infrared and, therefore, not visible. (*See* ADS Sur-Reply at 9). The court disagrees. Although there is some evidence that the visible spectrum encompasses a range of wavelengths with an upper limit of 750 nm, Dr. West testified that his patent includes a broader range to account for individual differences in the ability to perceive the visible spectrum. (Kent Reply App. at 987). This conclusion is supported by Dr. Meyer's testimony regarding the phenomenon of "psychophysics." (*See* ADS Reply App. at 54)[FN4] ADS has failed to show by clear and convincing evidence that the wavelengths contained in the West patent do not encompass the "visible spectrum" as that term is used in the specification.

> FN4. In technical terms, psychophysics is "[t]he science of the general relations between mind and body" such as "the investigation of the relations between physical stimuli and psychic action in the production of sensations." Oxford English Dictionary Online, *http: // dictionary.oed.com/cgi/entry/00191666/001 91666se2.* As more simply explained by Dr. Meyer, the phenomenon involves "testing of many people to see what they would report ..." (ADS Reply App. at 54).

3.

*4 [2] Next, ADS contends that the term "stable" is indefinite because the West patent does not specify how long the cell must remain stable in the absence of a field. Although the patent itself does not

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1489555 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

expound on the stability requirement, one skilled in the art may still be able to determine the meaning of the term. Claims may be sufficiently definite even when some degree of testing or experimentation is required to define the boundaries of the claimed invention. See *Exxon Research and Engineering, 265 F.3d at 1380* (claim limitation specifying that catalyst should be treated "for a period sufficient to increase substantially the initial catalyst activity" not invalid for indefiniteness where persons skilled in the art could perform periodic activity checks to determine if limitation was met); *Application of Caldwell, 50 C.C.P.A. 1464, 319 F.2d 254, 258 (U.S.Ct. Cust. & Pat.App.1963)* (upholding claim language referring to aspirin dosage in "an effective amount ... for stimulating growth"). The mere fact that the West patent does not specify how long the cell must remain stable in the absence of a field does not make the patent invalid for indefiniteness.

4.

[3] ADS further contends that the term "pulse" as used in the West patent is ambiguous and therefore indefinite. In support of this argument, ADS points out that although the West patent and the Haas patent both apply voltages above and below the nematic threshold to achieve changes in state, Kent's experts testified that only the method described in the West patent involves a "pulse." Without a more precise definition of this critical term, ADS maintains that it is impossible to determine "what kind of electrical signal can be used without infringement." (ADS Mem. at 25).

This simplistic argument ignores the plain language of the patent specification. The West patent claims an "electric field pulse of a magnitude effective to transform at least a portion of said liquid crystal from a focal conic texture to a light reflecting twisted planar texture" and back again. (ADS App. at 300-01). As Dr. Meyer testified, the Haas patent does not describe a pulse because it does not specify any particular magnitude. (*Id.* at 42, 319 F.2d 254). In light of this logical explanation by one skilled in the art, the court is not persuaded that the term "pulse" is indefinite.

5.

[4] Finally, ADS contends that the West patent is indefinite because it fails to describe a specific "means for addressing" the liquid crystal material.

Such is not the case. The patent provides that "[t]he addressing means can be of any type known in the art, such as an active matrix, a multiplexing circuit, electrodes and lasers ..." (*Id.* at 296, 319 F.2d 254). In describing the preferred embodiments of the patent, the specification makes clear that:

[T]he material can be addressed in various ways and incorporated in other types of cells. For example, instead of being addressed by externally activated electrodes, the material can be addressed by an active matrix, a multiplexing scheme or other type of circuitry, all of which will be evident to those working in the art.

**\*5** (*Id.* at 297, 319 F.2d 254). This description is more than adequate to satisfy the requirements of section 112.

In sum, ADS has failed to prove by clear and convincing evidence that the West patent is invalid for indefiniteness. Judgment as a matter of law is not proper on this ground.

B.

Alternatively, ADS seeks a new trial because the jury found that all the accused devices infringed claims 1-8 and 10 of the West patent both literally and under the doctrine of equivalents. (Jury Charge at 44, 46). According to ADS, these verdicts are "fatally inconsistent" because the doctrine of equivalents applies only where there is no literal infringement.

The court agrees that the doctrine of equivalents applies only where there is no literal infringement. See *Hormone Research Foundation v. Genetech, Inc., 904 F.2d 1558, 1564 (Fed.Cir.1990), cert. denied, 499 U.S. 955, 111 S.Ct. 1434, 113 L.Ed.2d 485 (1991)*. A patent is infringed if every limitation set forth in a claim is present in an accused product either literally or by a substantial equivalent. *Seal Flex, Inc. v. Athletic Track and Court Construction, 172 F.3d 836, 842 (Fed.Cir.1999); Jurgens v. McKasy, 927 F.2d 1552, 1560 (Fed.Cir.), cert. denied, 502 U.S. 902, 112 S.Ct. 281, 116 L.Ed.2d 232 (1991)*. Literal infringement occurs when every element of the patented device is literally present in the accused device. *Texas Instruments v. U.S. International Trade Commission, 805 F.2d 1558, 1562 (Fed.Cir.1986)*. By contrast, the equitable doctrine of equivalents permits a finding of infringement where the accused device, although not literally infringing, performs the same function in substantially the same way to achieve the same result

as the patented device. *Graver Tank & Manufacturing Co. v. Linde Air Products Co.*, 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950); *Malta v. Schulmerich Carillons, Inc.*, 952 F.2d 1320, 1325 (Fed.Cir.1991), *cert. denied*, 504 U.S. 974, 112 S.Ct. 2942, 119 L.Ed.2d 566 (1992). Stated differently, infringement under the doctrine of equivalents is shown if the differences between the accused and patented devices are insubstantial to one of ordinary skill in the art. *Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 40, 117 S.Ct. 1040, 1053, 137 L.Ed.2d 146 (1997); *Catalina Marketing International, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 812 (Fed.Cir.2002).

[5] Although the requirements of literal infringement and infringement under the doctrine of equivalents are unquestionably different, they are not necessarily "fatally inconsistent." Indeed, the Federal Circuit has tacitly approved the common practice of submitting patent cases under both theories. *See, e.g. Southwest Software, Inc. v. Harlequin Inc.*, 226 F.3d 1280, 1282 (Fed.Cir.2000); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1575 (Fed.Cir.1996); *Laitram Corp. v. NEC Corp.*, 62 F.2d 1388, 1395 (Fed.Cir.1995); *Joy Technologies v. Flakt, Inc.*, 820 F.Supp. 802, 807-08 (D.Del.1993), *aff'd*, 38 U.S.P.Q.2d 1216, 1218 (Fed.Cir.1995), *cert. denied*, 516 U.S. 1172, 116 S.Ct. 1264, 134 L.Ed.2d 212 (1996); *Goodwall Construction Co. v. Beers Construction Co.*, 824 F.Supp. 1044, 1054-55 (N.D.Ga.1992), *aff'd*, 991 F.2d 751, 757-58 (Fed.Cir.1993). Absent controlling authority to the contrary, the court will not disturb the verdict merely because the jury found both literal infringement and infringement under the doctrine of equivalents. Instead, the court will reform the verdict and enter judgment on the finding of literal infringement.

### C.

**\*6** At the conclusion of the trial, the jury awarded $1.5 million in damages to KDS as compensation for the infringing activities of ADS. (Jury Charge at 49). This sum is based largely on the testimony of Ed J. Lynch, a certified public accountant, and purportedly represents reasonable royalty damages. ADS now contends that this damage award is not supported by the evidence.

### 1

Section 284 of the Patent Act provides, in pertinent part:

Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.

35 U.S.C. § 284. Compensatory damages under this statute may be established by one of three methods: (1) lost profits; (2) an established royalty; or (3) a reasonable royalty. *Mobile Oil Corp. v. Amoco Chemicals Corp.*, 915 F.Supp. 1333, 1340 (D.Del.1994). In the absence of an established royalty, a reasonable royalty may be determined by reference to "a hypothetical royalty resulting from arm's length negotiations between a willing licensor and a willing licensee." *Trell v. Marlee Electronics Corp.*, 912 F.2d 1443, 1445 (Fed.Cir.1990) (citation omitted).

### 2.

[6] The evidence adduced at trial showed that ADSI realized $881,000 from the foreign and domestic sales of its 22 accused devices. According to Lynch, a reasonable royalty for the alleged infringement of the West patent was five percent of these sales, or $44,073. (ADS App. at 81; ADS Reply App. at 122, 143). ADS does not dispute this aspect of the damage calculation. However, Lynch also noted that, unlike Kent, ADSI included other types of fees in its license agreements. For example, ADSI received $10,305,500 in up-front "technology transfer fees," "license fees," and "development fees" from third-party licensees. (*See* ADS App. at 84, 87). Lynch concluded that "a 50 percent sharing ratio of these paid-up fees is appropriate and that amount is $2,082,750." (*Id.* at 101).[FN5] The jury ultimately awarded KDS $1.5 million in reasonable royalty damages.

> FN5. Some of these fees were not considered by Lynch in calculating damages "[b]ecause of the nature of the payment." (ADS App. at 101).

ADS argues that "[t]he methodology used and the assumptions employed by Mr. Lynch clearly did not meet the standards for expert testimony established by *Daubert* ..." (ADS Mem. at 5). In response, Kent maintains that the damages suggested by Lynch represent a reasonable "lump-sum" royalty payment

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

that KDS could have demanded in addition to a running royalty. *See Studiengesellschaft Kohle. m.b.H. v. Dart Industries, Inc.,* 862 F.2d 1564, 1568 (Fed.Cir.1988), citing *Stickle v. Heublein, Inc.,* 716 F.2d 1550, 1561-63 (Fed.Cir.1983). Although "lump-sum" payments may be used to calculate a reasonable royalty, there is no evidence that any of the $10.3 million in fees paid to ADSI qualified as such. In fact, Lynch eschewed any analogy to a "lump sum paid-up royalty," instead referring to his 50 percent figure as a "sharing ratio" or "forced sharing." (*Id.* at 76, 84-85, 101, 107).

*7 Moreover, Lynch's damages figure was derived from two faulty premises. The first was that ADSI's licensing arrangements were relevant to the calculation of what *KDS* would have demanded in a hypothetical negotiation between the parties. (*Id.* at 137-138). *See Leesona Corp. v. United States,* 220 Ct.Cl. 234, 599 F.2d 958, 969 (Ct.Cl.), cert. denied, 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979) ("The proper measure [of damages] is what the [patent] owner has lost, not what the taker has gained."). A hypothetical royalty cannot be based on something that the patentee itself never insisted upon. *See Dow Chemical Co. v. United States,* 226 F.3d 1334, 1348 (Fed.Cir.2000). The second shortcoming in Lynch's analysis was his reliance on Victor Zhou's deposition. According to Lynch, this deposition:

played a great role in looking at what a forced sharing should be, in my opinion, because it was-the way the deposition read, and I'm speaking particularly of the '97 deposition that I read, shows that there was a copying and photographing and a taking.

So if I assume that what I am being told is right about the basis and the alleged infringement of the West patent, it influenced what percentage sharing between a patent holder and an alleged infringer that I came to. And, in fact, I have never come to a ratio this high for sharing, nor did I ever expect I would, but I have never seen circumstances quite like I've seen in this case.

(ADS App. at 107). Assuming *arguendo* that Lynch's "sharing ratio" constitutes a royalty, that figure was based on what the parties might have negotiated had they known the facts that had come to light *by the time of trial.* (*See id.* at 112, 137) (testifying that "the payment for the two million really comes from subsequent things that happened" and that "[b]ased on what we know today," parties "should have agreed" to a forced sharing). However, "[a] reasonable royalty determination for purposes of making a damages evaluation must relate to *the time*

*infringement occurred,* and not be an after-the-fact assessment." *Unisplay, S.A. v. American Electronic Sign Co.,* 69 F.3d 512, 518 (Fed.Cir.1995) (emphasis added). Lynch's opinion testimony, formulated with the wisdom of 20-20 hindsight, violated this cardinal rule. *See id.*

Kent counters that the $1.5 million jury verdict can be upheld even without Lynch's testimony based on ADSI's license agreements and a 1994 business plan projecting millions of dollars in anticipated sales. As previously noted, the license agreements are not relevant to the calculation of damages. Moreover, the only evidence linking these agreements or the ADSI business plan to a hypothetical royalty was Lynch's testimony. The documents themselves cannot support the jury award in a vacuum. *See Unisplay, S.A.,* 69 F.3d at 518-19.

For these reasons, the evidence is insufficient to support an award of compensatory damages in excess of $44,037. The court will reform the verdict accordingly.

### D.

*8 Kent also seeks enhanced damages under section 284 of the Patent Act. This statute authorizes the court to "increase the amount of damages up to three times the amount found or assessed." 35 U.S.C. § 284. The determination whether to award such damages involves a two-step process. First, there must be a factual determination that the infringer has engaged in conduct warranting an award of enhanced damages. *Jurgens v. CBK, Ltd.,* 80 F.3d 1566, 1570 (Fed.Cir.1996); *Read Corp. v. Portec, Inc.,* 970 F.2d 816, 826 (Fed.Cir.1992). A finding of willful infringement, such as was rendered in this case, is sufficient to meet the first prong of the test. *Jurgens,* 80 F.3d at 1570. Next, the court must determine whether and to what extent to increase damages. *Id.; Read Corp.,* 970 F.2d at 826. Factors relevant to this decision include:

(1) whether the infringer deliberately copied the ideas or design of another, (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed, (3) the infringer's behavior as a party to the litigation, (4) the infringer's size and financial condition, (5) the closeness of the case, (6) the duration of the infringer's misconduct, (7) any remedial action by the infringer, (8) the infringer's motivation for harm, and (9) whether the infringer attempted to conceal its

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 9
Not Reported in F.Supp.2d, 2002 WL 1489555 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

misconduct.

*Johns Hopkins University v. CellPro, Inc.*, 152 F.3d 1342, 1352, n. 16 (Fed.Cir.1998), *citing Read Corp.*, 970 F.2d at 827. Although the court has discretion in making this determination, it must articulate reasons for not enhancing a damage award where there has been a finding of willful infringement. *Tate Access Floors, Inc. v. Maxcess Technologies, Inc.*, 222 F.3d 958, 972 (Fed.Cir.2000); *Jurgens*, 80 F.3d at 1572.

[7] Despite the findings of willful infringement and willful inducement of infringement, ADS argues that damages should not be enhanced because it mounted a good faith challenge to the West patent based on the opinions of counsel and a prior jury verdict in its favor. As to the first argument, the jury was specifically instructed to consider whether ADSI and Wu relied in good faith on the opinions of counsel in determining the issue of willfulness. (Jury Charge at 33-34.) [FN6] Given the resolution of this issue in light of these instructions, the court will not disturb the implicit finding that ADS did not rely on competent legal advice in acting as it did. *Jurgens*, 80 F.3d at 1572.

> FN6. The jury instruction read, in pertinent part:
> The affirmative duty of care normally entails obtaining advice of legal counsel, although the absence of such advice does not mandate a finding of willfulness. Exercising due care, ADS may continue the accused infringement without risk of being found on that basis alone a willful infringer, if in good faith it believes it had a legitimate defense ...
> In deciding whether ADS and Wu had a reasonable basis for reaching a good faith conclusion that they could act as they did, you may consider whether ADS and Wu received and relied upon an opinion of counsel, and whether or not that opinion was competent ...
> (Jury Charge at 33-34.) The jury was also instructed that oral opinions could be accorded less weight than written ones and that any opinion was not relevant unless ADSI and Wu specifically relied on it in acting as they did. (*Id* at 34.)

Nor could ADS have justifiably relied on the prior jury verdict. Any such reliance was tainted by the improper litigation tactics used to secure that verdict. Indeed, the gross misconduct of ADS and its former counsel in this litigation is the overriding factor militating in favor of a full award of enhanced damages. These tactics, which were soundly condemned by the Federal Circuit, need not be reiterated in this opinion. *See Advanced Display Systems*, 212 F.3d at 1276-80, 1285-86, 1288-89. Suffice it to say that the actions of ADS and its former counsel in covering up knowledge of potentially relevant evidence were sufficiently egregious to warrant the imposition of treble damages. *See Read*, 970 F.2d at 827, 831 (bad faith in conduct of litigation may be considered in assessing degree of culpability of infringer once willfulness is found). The court will treble the amount of actual damages legally recoverable and award KDS enhanced damages in the sum of $132,219.

E.

*9 As part of its motion, Kent seeks pre-judgment interest on all compensatory damages awarded by the jury and post-judgment interest on all sums provided in the judgment. ADS concedes that Kent is entitled to post-judgment interest. Such interest is due on "any money judgment in a civil case," including punitive damages. 28 U.S.C. § 1961(a); *see also Brown v. Petrolite Corp.*, 965 F.2d 38, 51 (5th Cir.1992)

[8][9] However, ADS opposes any award of pre-judgment interest because the jury was asked to determine "[w]hat amount of money, *if paid now in cash,* would represent a reasonable royalty adequate to compensate KDS for such infringement or inducement of infringement." (Jury Charge at 49) (emphasis added). This argument is rendered moot by virtue of the fact that the court has reformed the verdict to award damages based only on a reasonable royalty for infringing sales. There is absolutely no evidence that these royalties, totaling $44,073, include pre-judgment interest. Therefore, KDS is entitled to interest on this sum "to ensure that [it] is placed in as good a position as [it] would have been had the infringer entered into a reasonable royalty agreement." *Electro Scientific Industries, Inc. v. General Scanning, Inc.*, 247 F.3d 1341, 1354 (Fed.Cir.2001) [FN7] Pre-judgment interest will be awarded at the average prime rate from September 26, 1995, the date the West patent issued and the infringement commenced, until the date of judgment. *See Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1066 (Fed.Cir.1983) (district court properly exercised discretion in awarding interest at prime rate

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 10
Not Reported in F.Supp.2d, 2002 WL 1489555 (N.D.Tex.)
**(Cite as: Not Reported in F.Supp.2d)**

where patent holder was shown to have borrowed money at or above prime rate).

> FN7. Pre-judgment interest is not recoverable on the award of enhanced damages. *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1066 (Fed.Cir.1983).

F.

[10] The jury found that Wu willfully induced infringement of the West patent. (Jury Charge at 47-48). Consequently, he is jointly and severally liable for compensatory and enhanced damages. *See Crystal Semiconductor Corp. v. TriTech Microelectronics International, Inc.*, 246 F.3d 1336, 1361 (Fed.Cir.2001) Wu's argument that any jury award against him is precluded by the mandate rule has been raised previously and rejected by the court.

G.

The remaining issues involve the scope of injunctive or declaratory relief in this case. ADS recognizes that, based on the jury's verdict, Kent is entitled to a permanent injunction and a declaratory judgment. However, ADS maintains that any injunction must be limited to the accused devices and any other products or methods that "use cholesteric liquid crystals with a pitch length that reflects visible color." (ADS Mem. at 27). ADS further contends that the West patent should be declared valid and enforceable only with respect to those defenses that were actually litigated at trial.

1.

Injunctions in patent cases are subject to the requirements of Rule 65(d) of the Federal Rules of Civil Procedure. This rule provides:
Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

*10 Fed. R. Civ. P. 65(d); *see also KSM Fastening*

*Systems, Inc. v. H.A. Jones Co.*, 776 F.2d 1522, 1525 (Fed.Cir.1985) A permanent injunction must be sufficiently specific to provide adequate notice of the conduct enjoined. *Signtech USA, Ltd. v. Vutek, Inc.*, 174 F.3d 1352, 1359 (Fed.Cir.1999), citing *Additive Controls & Measurement Systems Inc. v. Flowdata Inc.*, 986 F.2d 476, 479-80 (Fed.Cir.1993).

[11] ADS argues that the injunction must include language limiting its scope to the accused devices and any other products or methods that "use cholesteric liquid crystals with a pitch length that reflects visible color." (ADS Mem. at 27). Without this language, ADS fears that it may be subject to contempt for selling a new "Black and White" cholesteric liquid crystal display product that is similar to the patented invention but does not reflect color in the visible spectrum. The court appreciates this concern. However, it is beyond the scope of this proceeding to determine whether this new ADS product infringes the West patent[FN8] Nor does the language requested by ADS make the injunction any more specific or less vague. The patent, as construed by the court, says what it says. The injunction will refer to the claims of the West patent and prohibit any further infringement by ADS. This satisfies the specificity requirements of Rule 65(d). *See KSM Fastening Systems*, 776 F.2d at 1526 (permanent injunction in a patent case enjoins the making, use, or sale both of devices actually found to infringe as well as any other devices that are no more than colorably different from the infringing products).

> FN8. The parties dispute whether "white" is a color in the visible spectrum covered by the West patent. Clearly, this issue cannot be resolved on the basis of letter briefs.

2

[12] ADS also wants to limit the scope of declaratory relief to those defenses that were actually considered and rejected by the jury. Such a declaration would provide that the West patent is "not invalid for obviousness, for failure to name the correct inventors, for failure to contain a sufficient written description, for failure to disclose the best mode, and for failure to obtain an enabling disclosure." (ADS Prop. Jmt. at 2). However, there is no sound reason for the court to enter a declaratory judgment leaving open the possibility that the West patent may be invalid on some other ground. A patent is entitled to a presumption of validity until it is adjudged invalid. 35 U.S.C. § 282; *North American Vaccine*, 7 F.3d at

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 11
Not Reported in F.Supp.2d, 2002 WL 1489555 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

1579. All the invalidity defenses raised by ADS have been rejected by either the court or the jury. [FN9] To the extent that any other defenses exist, ADS is precluded from litigating them under the doctrine of collateral estoppel. *See Pall Corp. v. Fisher Scientific Co.,* 962 F.Supp. 210, 213 (D.Mass.1997), *citing Zip Dee, Inc. v. Dometic Corp.,* 905 F.Supp. 535, 537-38 (N.D.Ill.1995). Accordingly, Kent is entitled to a declaration that the West patent is valid and enforceable in all respects.

> FN9. The court has determined that West patent is not invalid by anticipation or indefiniteness. *See* Orders, 12/3/01 & 12/4/01; *supra* at § III-A. The jury rejected the defenses of obviousness, inequitable conduct, failure to name all inventors, failure to adequately describe the patented invention, failure to meet the enablement requirement, and failure to disclose the best mode for practicing the invention. (Jury Charge at 38-43).

### CONCLUSION

Kent's motion for entry of judgment and ADS's motion for judgment as a matter of law or, alternatively, for new trial are granted in part and denied in part. The court will enter judgment as follows:

**\*11** 1. KDS shall have and recover actual damages against ADSI and Wu, jointly and severally, in the amount of $44,073, together with pre-judgment interest at the average prime rate from September 26, 1995 until the date of judgment, and post-judgment interest at the legal rate until paid;

2. KDS shall have and recover enhanced damages against ADSI and Wu, jointly and severally, in the amount of $132,219, together with post-judgment interest at the legal rate from the date of judgment until paid;

3. ADSI and Wu, along with their officers, agents, servants, employees, attorneys, successors in interest and assigns, and any persons, corporations, organizations, or entities in active concert or participation with them who receive actual notice of this injunction by personal service or otherwise, are hereby permanently enjoined and restrained from directly or indirectly making, using, selling, offering for sale in the United States or importing into the United States, and from causing to be made, used, sold, or offered for sale in the United States or imported into the United States, any devices or methods that may infringe claims 1-8 and 10 of the West patent, including, without limitation, any of the 22 devices accused in this action, and from offering or advertising so to do, and from otherwise in any way infringing or inducing, aiding and abetting, or contributing to the infringement of any claim of the West patent;

4. Claims 1-8 and 10 of the West patent are valid and enforceable in all respects; and

5. All costs of court are taxed against ADSI and Wu, jointly and severally.

The parties are directed to confer on a form of proposed judgment, including the calculation of pre-judgment and post-judgment interest. A proposed final judgment must be hand delivered to the chambers of the magistrate judge by *July 19, 2002*. The judgment must be approved as to form by all counsel of record.

The court determines that this is an exceptional case warranting an award of reasonable attorney's fees to Kent as the prevailing party. *See* 35 U.S.C. § 285. The Supreme Court has admonished that "[a] request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). Ideally, the parties should be able to stipulate to a reasonable fee. *Id.,* 103 S.Ct. at 1941. With this admonishment in mind, counsel are directed to confer on the amount of attorney's fees and costs to be awarded in this case. If agreement cannot be reached, Kent shall file an application for attorney's fees and costs by *August 5, 2002*. The fee application must be supported by detailed and itemized records of the time spent and services performed by each attorney, the hourly rate charged for each service, and the costs incurred in connection with this case. Any fees awarded must be proportionate to the amount of the judgment and the results obtained on behalf of the client. In addition, counsel must exercise appropriate billing judgment in writing-off any excessive, redundant, or otherwise unnecessary time. Kent is directed to keep these and the other *Johnson* factors in mind when preparing its fee request.

**\*12** SO ORDERED.


N.D.Tex.,2002.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                Page 12
Not Reported in F Supp.2d, 2002 WL 1489555 (N.D.Tex.)
**(Cite as: Not Reported in F.Supp.2d)**

Advanced Display Systems, Inc. v. Kent State
University
Not Reported in F.Supp.2d, 2002 WL 1489555
(N.D.Tex.)

Briefs and Other Related Documents (Back to top)

• 3:96cv01480 (Docket) (May. 24, 1996)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# **Tab B**

Westlaw.

Slip Copy                                                                Page 1
Slip Copy, 2005 WL 3454283 (D.Del.)
(Cite as: Slip Copy)

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
ADVANCED MEDICAL OPTICS, INC., a
Delaware corporation, Plaintiff,
v.
ALCON LABORATORIES, INC., a Delaware
corporation, and Alcon Manufacturing, Ltd, a Texas
Limited Partnership, Defendants.
No. Civ.A. 03-1095-KAJ.

Dec. 16, 2005.

Richard L. Horwitz, David E. Moore, Potter
Anderson & Corroon LLP, Wilmington, Delaware,
for Plaintiff, A. James Isbester, Gillian W. Thackray,
Isbester & Associates, Berkeley, California, of
Counsel.
Josy W. Ingersoll, Melanie K. Sharp, Young
Conaway Stargatt & Taylor, LLP, Wilmington,
Delaware, for Defendants, Robert G. Krupka,
Kirkland & Ellis LLP, Los Angeles, California,
Linda S. Resh, Kirkland & Ellis LLP, Chicago,
Illinois, of Counsel.

MEMORANDUM OPINION
JORDAN, J.

I. INTRODUCTION

**\*1** American Medical Optics, Inc. ("AMO") brought
this patent infringement suit against Alcon
Laboratories, Inc. and Alcon Manufacturing Ltd.
(collectively, "Alcon"). After a two week trial, the
jury found that Alcon had willfully infringed two of
AMO's patents, U.S. Patent Nos. 5,700,240 (issued
Dec. 23, 1997) (the " '240 patent") and 6,059,765
(issued May 9, 2000) (the " '765 patent") and that
neither of the patents were invalid. Before me now
are several post-trial motions brought by Alcon
seeking: (1) Judgment as a Matter of Law of
Noninfringement of the Asserted Claims of the '240
Patent or in the Alternative, a New Trial (Docket
Item ["D.I."] 337); (2) Judgment as a Matter of Law
of Obviousness of the Asserted Claims of the '240
Patent or in the Alternative, a New Trial (D.I.339);
(3) New Trial Based on the Exclusion of a Rebuttal
Witness (D.I.343); (4) Judgment as a Matter of Law
of Noninfringement of the Asserted Claims of the

'765 Patent or in the Alternative, a New Trial
(D.I.341); (5) Judgment as a Matter of Law
Regarding the Jury's Willfulness Finding or in the
Alternative, a New Trial (D.I.335); and (6) Judgment
as a Matter of Law on Damages or in the Alternative,
a New Trial (D.I.334). Also before me are AMO's
Motions for Attorney Fees and Enhanced Damages
(D.I.312) and for a Permanent Injunction (D.I.310),
and Alcon's Motion for a Stay of Injunction pending
appeal (D.I.316). For the reasons set forth herein, I
will deny all of Alcon's motions for judgment as a
matter of law and a new trial, I will grant AMO's
motions for enhanced damages, attorneys' fees, and a
permanent injunction, and I will grant Alcon's motion
for a stay of injunction pending appeal.

II. BACKGROUND

The background of this case has been set forth in a
prior opinion, and will not be set forth in detail here.
*See Advanced Med. Optics, Inc. v. Alcon Inc.,* 361
F.Supp.2d 370, 373-75 (D.Del.2005) (claim
construction opinion).

Both patents cover apparatuses and methods related
to the surgical removal of cataracts using
phacoemulsification. "The '240 patent discloses a
method and apparatus for varying the ultrasonic
power delivered to the surgical handpiece during a
phacoemulsification procedure." *Id.* at 375 (citing the
'240 patent). The feature claimed by the '240 patent
was referred to at trial as "occlusion mode." (*See,
e.g.,* Trial Transcript ["Tr."] at C-205:2-5.) "The '765
patent relates to a fluid management apparatus [and
a] ... method for reducing expandable gas in ... a fluid
management system." *Advanced Med. Optics,* 361
F.Supp.2d at 375 (citing the '765 patent).

The parties tried the issues of infringement and
invalidity to a jury in a two week trial. At the end of
the trial, the jury returned a verdict finding that the
accused Alcon AdvanTec Legacy and Infiniti devices
infringed claims 5 and 6 of the '240 patent, that Alcon
had induced infringement of claims 1 and 3 of the
'240 patent, and that Alcon had contributed to
infringement of claims 5 and 6 of the '240 patent by
selling consumables used as part of the Infiniti
device. (Tr. at J-8:8-18.) The jury also found that the
Infiniti infringed claim 13 of the '765 patent, that
Alcon induced infringement of claim 19 of the '765

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

patent, and that Alcon had contributed to infringement of claim 19 by selling the Infiniti and associated consumables. (Tr. at J-8:19-9:2.) The jury found that the infringement of both patents was willful. (Tr. at J-9:22-25.) Finally, the jury found that none of the asserted claims were invalid. (Tr. at J-9:3-12.) The jury awarded lost profits and reasonable royalties for the infringement of the '240 patent and reasonable royalties for the infringement of the '765 patent. (Tr. at J-9:13-21.)

### III. STANDARD OF REVIEW

*2 Judgment as a matter of law should be granted when "there is no legally sufficient evidentiary basis for a reasonable jury to find for [the prevailing] party." Fed.R.Civ.P. 50(a). The review of the sufficiency of the evidence must take the record as presented to the jury. *Lightning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153, 1199 (3d Cir.1993). The proper question is "whether there is evidence upon which a reasonable jury could properly have found its verdict." *Johnson v. Campbell,* 332 F.3d 199, 204 (3d Cir.2003) (quoting *Gomez v. Allegheny Health Servs., Inc.,* 71 F.3d 1079, 1083 (3d Cir.1995)).

"A new trial may be granted to all or any of the parties and on all or part of the issues in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed.R.Civ.P. 59(a). The court may order a new trial "where there is insufficient evidence to support the verdict or where the verdict is against the weight of the evidence." *Greenleaf v. Garlock, Inc.,* 174 F.3d 352, 365 (3d Cir.1999). The court may also order a new trial if a party has been prejudiced by the improper exclusion of evidence. *Meyers v. Pennypack Woods Home Ownership Ass'n,* 559 F.2d 894, 904-05 (3d Cir.1977).

### IV. DISCUSSION

#### A. *'240 Patent Infringement*

The jury concluded that Alcon's AdvanTec Legacy and Infiniti phacoemulsification devices infringed claims 1, 3, 5, and 6 of the '240 patent. Alcon asks for judgment as a matter of law that these claims were not infringed, or alternatively, for a new trial. Because the weight of the evidence before the jury supported its conclusion that Alcon's devices

infringe, I will deny Alcon's motion.

Alcon first argues that the verdict cannot stand because it is based on expert testimony that failed to apply the correct legal standard for patent infringement. (D.I. 338 at 11-13.) According to Alcon, the infringement analysis by AMO's expert, Harold Walbrink, ignored my construction of the '240 claims. (*Id.*) Alcon argues that Walbrink was required to explain the claim construction language and to testify explicitly in terms of that language. But, while that may be the better method, Alcon points to no case requiring that structural formality. Walbrink's testimony shows that he used the claim construction in his analysis of the '240 patent. (Tr. at C-148:11-13, 150:23-25.) Thus, his expert opinion was based on the claims as construed, and that opinion, coupled with the construed claims given to the jury and the facts presented concerning the accused devices, was more than sufficient to support a finding of infringement based on the correct legal standard.

Alcon next argues that AMO has presented no evidence that any doctor ever used the accused occlusion mode feature on the Alcon devices. (D.I. 338 at 14-20.) As a result, according to Alcon, the jury's conclusions of indirect infringement of method claims 1 and 3 (*id.* at 14-17) and direct infringement as well as contributory infringement of apparatus claims 5 and 6 (*id.* at 17-20) are not supported by any evidence. Alcon's main argument on this point is that AMO's direct evidence (*see* Plaintiff's Trial Exhibit ["PTX"] 278; Tr. at E-6:3-21, E-7:13-22, E-10:6-9) shows doctors using pulse mode, and that mode does not infringe the '240 claims because it merely turns the power on and off, which is outside the scope of the construed '240 claims. AMO counters that enabling pulse mode should be interpreted as a decrease in power rather than switching the power on and off, an interpretation that has some support in the trial record. (*See, e.g.,* PTX 181 at ALDE015347; PTX 207 at AMO00714 (Alcon operating manuals each describing power reduction resulting from changing either the stroke length or the pulse time).) But even if Alcon infringes only when the devices are used to decrease power in continuous mode, the jury was presented with considerable evidence that the devices are so used.

*3 First, it is uncontested that, when enabled and set by the user, the accused devices all allow the user to vary the power. (Tr. at H-87:1-6, H-88:11-15.) Second, Alcon's operating manuals for the accused devices instruct customers on how to vary the power. (PTX 181 at ALDE015376-77; PTX 207 at

Slip Copy
Slip Copy, 2005 WL 3454283 (D.Del.)
(Cite as: Slip Copy)

Page 3

AMO00714; Tr. at C-158:16-163:24.) Finally, Alcon advertised its occlusion mode features (PTX 354; Tr. at F-196:25-197:16, F-219:25-227:6.) This circumstantial evidence supports the conclusion not only that the devices are capable of an infringing mode, but that they were actually used in that mode.

Alcon's pointing to individual doctors who do not use the mode does not require a different conclusion. The circumstantial evidence that doctors did use the accused devices in an infringing mode supports the jury's conclusion of direct infringement of claims 5 and 6 and indirect infringement of claims 1 and 3. The conclusion of contributory infringement of claims 5 and 6 is supported by the sale of handpieces and packs that are elements of the claimed invention and can only be used with the Infiniti device. Alcon's contention that the devices may be used in a noninfringing mode does not overcome the jury's implicit conclusion that the devices are, in fact, used in an infringing mode.

Alcon further argues that AMO provided no evidence that the Alcon devices were used to change the power when the vacuum reached a "particular numeric value," as required by the pertinent claim constructions. (D.I. 338 at 15; D.I. 363 at 16-17.) The cited evidence supporting the conclusion that doctors actually used the infringing mode overcomes that argument as well.

The jury's verdict was based on the correct legal analysis and was not against the weight of the evidence. Therefore, Alcon's motion for judgment as a matter of law of noninfringement of the asserted '240 claims or, alternatively, for a new trial will be denied.

### B. Obviousness of the '240 Claims

The jury concluded that the claims of the '240 patent were nonobvious in light of the prior art. Alcon asks for judgment as a matter of law that the asserted claims of the '240 patent are obvious, or alternatively, for a new trial. Because the weight of the evidence before the jury supports its conclusion that Alcon had failed to prove obviousness by clear and convincing evidence, I will deny Alcon's motion.

Alcon brings this motion despite the fact that it failed to make a motion on this issue under Federal Rule of Civil Procedure 50 at the close of the evidence. Opposing AMO's motion on validity (Tr. at H-79:25-80:17), renewing its own motions on infringement

(Tr. at H-179:2-3), and attempting to later include "the rebuttal against [its own] direct case" in these renewed motions (Tr. at I-3:18-25) are not sufficient for Alcon to squarely bring its invalidity arguments to the court's attention. By failing to make a Rule 50 motion on the issue at the close of evidence, Alcon waived the right to challenge the verdict on obviousness. See, e.g., Hopp v. City of Pittsburgh, 194 F.3d 434, 440 (3d Cir.1999) (finding that a party waived an argument that it failed to include in its preverdict Rule 50 motion); Duro-Last, Inc. v. Custom Seal, Inc., 321 F.3d 1098, 1108 (Fed.Cir.2003) (same).

*4 But even if Alcon had preserved the obviousness issue, its motion for judgment as a matter of law would be denied because the jury had before it a record sufficient to conclude that Alcon had failed to prove obviousness of the '240 patent by clear and convincing evidence. Alcon's obviousness argument depended on combinations of prior art that included a Japanese patent application (the "Shimizu Reference"). AMO presented evidence that the Shimizu Reference was outside the scope of pertinent prior art because it does not teach a method for phacoemulsification or for eye surgery (Tr. at B-33:22-34:15, B-34:21-35:15) and may actually be inconsistent with the teaching of the '240 patent (Tr. at B-36:21-37:2). As a result, the jury could reasonably conclude that persons having ordinary skill in the art would not be motivated to combine the Shimizu Reference with prior art phacoemulsification systems. That conclusion on its own defeats Alcon's obviousness position.

The alternative motion for a new trial also fails because the weight of the evidence concerning the inapplicability of the Shimizu Reference supports the jury's conclusion that Alcon had failed to prove obviousness by clear and convincing evidence.[FN1]

> FN1. In this motion on obviousness, Alcon also seeks, in the guise of a motion for a new trial, a reconsideration of my construction of the terms "variably controlling" and "for varying the ultrasonic power" in claims 1 and 5 of the '240 patent. (D.I. 340 at 28-29; D.I. 364 at 19-20.) Whether or not this is a proper issue for this post-trial motion, Alcon's arguments that the '240 prosecution history and the recent decision in Phillips v. AWH Corp., 415 F.3d 1303 (Fed.Cir.2005) require a change in my construction fail. The construction was

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 3454283 (D.Del.)
(Cite as: Slip Copy)

based on the language of the claim itself, which stated that the power was "being provided" already and was inconsistent with power being turned on and off in response to the vacuum sensor. *Advanced Med. Optics, 361 F.Supp.2d at 382.*

Therefore, Alcon's motion for judgment as a matter of law of obviousness of the asserted '240 claims or, alternatively, for a new trial will be denied.

## C. Exclusion of Shimizu as a Rebuttal Witness

Alcon seeks a new trial based on the exclusion of Kimiya Shimizu as a rebuttal witness. At trial, Alcon sought to call Shimizu, the author of the eponymous prior art reference used in Alcon's obviousness case, to rebut the testimony of B.J. Barwick, one of the inventors named on the '240 patent. Barwick testified that he had discussed phacoemulsification and occlusion mode with Shimizu but that Shimizu did not suggest the idea for occlusion mode and was not involved in its development. (Tr. at B-132:22-136:12.) Alcon claims that Shimizu would have contradicted Barwick's testimony and that this was relevant not for the issue of inventorship, but for the issue of obviousness based on the Shimizu Reference. (D.I. 344 at 5-6, 11; D.I. 362 at 7-8, 11.) According to Alcon, Barwick's surprising testimony made Shimizu's testimony necessary, and Shimizu's exclusion prejudiced Alcon to such an extent that a new trial is warranted. (D.I. 344 at 8-11.)

Alcon argues that the exclusion of Shimizu's testimony allowed AMO to argue that the Shimizu Reference was not related to phacoemulsification and so did not support Alcon's argument that the claims of the '240 patent were obvious. (*Id.* at 11; D.I. 362 at 7-8.) This argument fails for at least two reasons. First, the relevance of Shimizu's proposed testimony to the obviousness argument is tenuous at best. Alcon argued to the jury that the reference was relevant prior art even without this testimony, and the scope of that reference is necessarily independent of the author's alleged involvement in the development of occlusion mode. Second, even if the testimony were relevant for obviousness, as Alcon argues, nothing in Barwick's testimony suddenly made such testimony necessary. As I said during trial, I do not accept Alcon's argument that it was surprised. (Tr. at F-48:11-23.) Alcon is the one that raised the Shimizu Reference as a critical piece of invalidity evidence, and, if Shimizu's testimony were truly important, then Alcon could and should have included him as a witness in their case in chief, thereby allowing AMO to prepare for his testimony.

**\*5** Therefore, Alcon's motion for a new trial based on the exclusion of Shimizu's testimony will be denied.

## D. '765 Patent Infringement

The jury concluded that Alcon infringed claims 13 and 19 of the '765 patent. Alcon asks for judgment as a matter of law that these claims were not infringed, or alternatively, for a new trial. Because the weight of the evidence before the jury supported its conclusion of infringement, I will deny Alcon's motion.

Alcon first argues that the jury had insufficient evidence to conclude that the accused device had an outlet "disposed along the housing longitudinal axis," as required by claims 13 and 19. (D.I. 342 at 7-11.) I construed that limitation to mean "placed through, on, over, or continuously beside or on a line or course parallel and close to the lengthwise centerline of the housing." *Advanced Med. Optics, 361 F.Supp.2d at 387.* According to Alcon, AMO's infringement analysis effectively eliminated that limitation from the claims, by eliminating the need for the outlet to be "close to" the centerline (*id.* at 7-9), and also improperly combined it with the limitation requiring the outlet to be below the pump (*id.* at 9-11). On the first point, the jury was presented with testimony from AMO's expert, Walbrink, that the outlet is one inch away from, and therefore "close to," the centerline. (Tr. at C-184:5-188:7.) While Alcon's expert disagreed that one inch is "close to" the centerline, the jury was entitled to credit Walbrink's testimony and its own judgment that one inch was close enough to satisfy the claim limitation. On the second point, while Walbrink testified that he believed the Infiniti outlet was positioned where it was so that it would be below the pump (Tr. at C-187:21-188:2), he never testified that he concluded that the outlet met the "disposed along" limitation because it was below the pump. Thus, contrary to Alcon's assertion, Walbrink did not improperly combine claim limitations.

Alcon also argues that the jury had insufficient evidence to conclude that the accused device had a structure equivalent to the one disclosed in the '765 patent as corresponding to the "means for engaging and holding" limitation in claim 13. (D.I. 342 at 11-15.) The structure corresponding to this means-plus-function claim is the frame, hinge mounted to a face, latch, and lip structures found in Figure 4 of the '765

patent. _Advanced Med. Optics, Inc. v. Alcon Inc., 361 F.Supp.2d 404, 412 (D.Del.2005)_ (summary judgment opinion). Contrary to Alcon's position, Walbrink testified that Alcon's Infiniti device had a structure that was equivalent and interchangeable with the structure disclosed in the patent. (Tr. at C-174:17-21, C-190:11-191:5.)

Alcon contends that Walbrink's testimony is insufficient (D.I. 342 at 13-15) because it fails to provide the "particularized testimony and linking argument" about the insubstantiality of differences required for the jury to decide the issue of infringement under the doctrine of equivalents. _Tex. Instruments Inc. v. Cypress Semiconductor Corp., 90 F.3d 1558, 1566-67 (Fed.Cir.1996); Lear Siegler, Inc. v. Sealy Mattress Co., 873 F.2d 1422, 1426 (Fed.Cir.1989)._ Indeed, the jury must receive guidance on a limitation-by-limitation basis as to how an accused product infringes under the doctrine of equivalents. _Tex. Instruments, 90 F.3d at 1566-67._ However, the issue presented here is literal infringement of a means-plus-function claim. While the necessary analysis may be similar to that under the doctrine of equivalents, the Federal Circuit has yet to impose a heightened evidentiary requirement in the context of means-plus-function structural equivalents. _See Lucent Techs., Inc. v. Newbridge Networks Corp., 168 F.Supp.2d 181, 211-12 (D.Del.2001)_ ("[M]ore generalized testimony from expert witnesses has been sufficient to establish literal infringement where Section 112, Paragraph 6 limitations are involved.") (citing _Symbol Techs., Inc. v. Opticon, Inc., 935 F.2d 1569 (Fed.Cir.1991)_). Even so, unlike the witnesses in _Texas Instruments, 90 F.3d at 1567-68,_ and _Lear Siegler, 873 F.2d at 1426,_ Walbrink directly addressed the issue of structural equivalence, and his testimony, coupled with the other evidence about the accused devices, was enough to support the jury's conclusion of literal infringement.

*6 Because the jury's infringement verdict was supported by the weight of the evidence, Alcon's motion for judgment as a matter of law of noninfringement of the asserted '765 claims or, alternatively, for a new trial will be denied.

Alcon also seeks a new trial because the conclusion that the '765 patent reads on the Infiniti device means both that the "disposed along" limitation is indefinite (D.I. 342 at 15-17) and that claims 13 and 19 are anticipated by the Alcon Legacy (_id_ at 17-26). Both arguments fail. First, the fact that Alcon disagrees with the jury's implicit factual determination that the

Infiniti outlet was "close to" the centerline does not render the claim term indefinite. Second, as to anticipation, the jury was presented with evidence that the Legacy lacked a chamber (Tr. at H-153:18-24), that if it did have a chamber it would not be vertically oriented (Tr. at H-154:6-14), and that if it did have a chamber it was not generally circular as required by the claim construction (Tr. at H-154:17-155:7). Again while Alcon's expert disagreed, the jury was entitled to credit this testimony. Because the jury's conclusion does not go against the weight of the evidence, Alcon's motion for a new trial on indefiniteness and anticipation will be denied.[FN2]

> FN2. As for the '240 patent, Alcon seeks, in the guise of a motion for a new trial, a reconsideration of my construction of the term "disposed along." (D.I. 342 at 29-30.) Again, Alcon fails to show that the recent decision in _Phillips v. AWH Corp., 415 F.3d 1303 (Fed.Cir.2005)_ made my construction incorrect as a matter of law. _Advanced Med. Optics, 361 F.Supp.2d at 387-90._

### E. _Willfulness_

The jury found that Alcon had willfully infringed the '240 and '765 patents. Alcon asks for judgment as a matter of law that its infringement was not willful, or, in the alternative, for a new trial. Because the jury's decision on willfulness was supported by the weight of clear and convincing evidence, I will deny Alcon's motion.

### 1. _The '240 Patent_

For the '240 patent, Alcon argues that it discovered the patent on its own, and obtained opinions from in-house and outside counsel that the patent was invalid before it implemented occlusion mode on its machines. (D.I. 336 at 9-10.) However, a finding of willfulness is based on the totality of the circumstances, and an opinion from counsel is not an automatic shield. _Comark Communications, Inc. v. Harris Corp., 156 F.3d 1182, 1190-91 (Fed.Cir.1998)._ Here, the jury was presented with clear and convincing evidence that Alcon intentionally copied the occlusion mode from AMO's Sovereign machine, that the opinions of counsel were inadequate, and that Alcon did not rely on the opinions.

Before it introduced occlusion mode on its machines,

Slip Copy
Slip Copy, 2005 WL 3454283 (D.Del.)
(Cite as: Slip Copy)

Page 6

Alcon had access both to the '240 patent (Tr. at E-81:21-23, H-85:5-6) and to an AMO Sovereign that it received through a third party (Tr. at D-25:3-29:17). Alcon prepared an extensive report on the Sovereign, including the implementation of occlusion mode. (PTX 127 at 4.) While Alcon argues that it made this report on the Sovereign occlusion mode only after receiving the invalidity opinion from outside counsel (D.I. 336 at 16), it is still evidence to support the jury's conclusion that infringement was willful.

Concerning the invalidity opinions, AMO presented evidence that the lawyers' reliance on the Shimizu Reference was not only incorrect but also incompetent because the reference was not in the relevant field (Tr. at E-103-05, G-21-23, G-60-61), and that Alcon did not rely on the opinion of outside counsel because it continued its development efforts after learning of the '240 patent but before the opinion letter was received (PTX 46; PTX 94). On the latter point, while Alcon's in-house counsel testified that he knew what the outside counsel's opinion would be before the letter was formally written (Tr. at F-241:2-24), the jury was entitled to discredit his testimony. Even with that offered explanation, however, the evidence of continuing work on occlusion mode supports the conclusion that Alcon was bent on copying that patented feature and did not actually rely on the opinion of counsel concerning the '240 patent.

### 2. The '765 Patent

*7 For the '765 patent, Alcon argues that it learned of the '765 patent when AMO brought this lawsuit, and it promptly obtained an opinion from outside counsel that its machines did not infringe the patent. (D.I. 336 at 16-18.) But the jury was presented with clear and convincing evidence that Alcon intentionally copied the fluidics system from AMO's Sovereign machine before it sought an opinion letter.

Alcon had access to a Sovereign machine that it received through a third party. (Tr. at D-25:3-29:17.) Alcon tested forty Sovereign tubing packs, which incorporated the fluidics system claimed by the '765 patent, (PTX 132; Tr. at D-58), and photographed the Sovereign cassette (PTX 132 at 7). Along with the machine, Alcon had access to the Sovereign operator's manual (see PTX 127 at ALDE052477; PTX 131 at ALDE052531 (documents reviewed by Alcon engineers that refer to the manual)), and the manual listed the patents covering the Sovereign, which included the '765 patent (Tr. at E-24:18-22).[FN3]

AMO presented evidence that the design of Alcon's fluidics system changed after Alcon had access to the Sovereign. (Tr. at E-58-59; PTX 124.) All of this occurred before this lawsuit was filed and before Alcon sought an opinion of counsel concerning infringement. Based on all of the evidence, the jury was entitled to conclude that Alcon intentionally copied the Sovereign system, while knowing from the manual that the system was patented.

> FN3. While the manual listing is not sufficient to meet the marking requirements of 35 U.S.C. § 287, it is sufficient to show notice in support of willfulness. *See Stryker Corp. v. Intermedics Orthopedics, Inc.,* 96 F.3d 1409, 1415 (Fed.Cir.1996) (finding that notice from the Patent Office Official Gazette could support a finding of willfulness).

### 3. Conclusion

Accordingly, as to both the '240 and '765 patents, the jury's determination of willfulness was supported by evidence that a rational jury could view as clear and convincing. Therefore, Alcon's motion for judgment as a matter of law or, alternatively, for a new trial will be denied.

### F. Damages

#### 1. Lost Profits for the '240 Patent

The jury awarded lost profits for a percentage of the sales of Alcon AdvanTec Legacy and Infiniti phacoemulsification devices as a remedy for the infringement of the '240 patent. Alcon seeks judgment as a matter of law that AMO is not entitled to any lost profits for infringement of the '240 patent, or, alternatively, for a new trial, because according to Alcon, AMO has failed to establish the absence of acceptable non-infringing substitutes. (D.I. 331 at 8-19.) Because the jury's implicit conclusion on this issue is supported by the weight of the evidence, Alcon's motion will be denied.

Alcon's argument is based on the alleged availability of an "ultra pulse" feature, which was described at trial as being similar to AMO's technology (Tr. at B-25:10-21). Randall Olson, M.D., testified that because he used a specific AMO feature called "Whitestar," which generated power in short bursts,

Slip Copy
Slip Copy, 2005 WL 3454283 (D.Del.)
**(Cite as: Slip Copy)**

Page 7

he did not need to use occlusion mode. (Tr. at B-24:13-24.) According to Alcon, Olson's testimony establishes that Whitestar, and Alcon's own similar ultra pulse, are acceptable non-infringing substitutes for the '240 invention. (D.I. 331 at 9-10.) Alcon also argues that AMO's damages expert, Jonathan Putnam, gave misleading testimony about the behavior of the market because he ignored the impact of ultra pulse and attributed increased sales by Alcon to occlusion mode instead. (*Id.* at 13-19.) These arguments depend on ultra pulse being an acceptable substitute, which in turn depends on whether the market is defined to include any method of reducing injury from wound burn, as Alcon contends, or includes methods of automatically controlling ultrasound power. The jury was presented with testimony from Putnam that doctors who demanded the infringing occlusion mode would only consider products that allowed for automatic control of power, and that the AMO machines were the only such alternative. (Tr. at D-110:24-111:18.) Despite Olson's testimony that he did not use occlusion mode, the jury was entitled to credit Putnam's interpretation of the market, in which, for some percentage of doctors, the only acceptable substitute machines would be those with occlusion mode. Putnam conceded that this would be less than half of all doctors (Tr. at D-111:25-115:19), and so lost profits were requested for only a fraction of Alcon's sales.

*8 Because the jury was entitled to credit Putnam's interpretation of the market and the results of his analysis, Alcon's motion for judgment as a matter of law that lost profits should not be awarded, or, alternatively, for a new trial will be denied.

Alcon also seeks a new trial based on the argument that the jury's award of lost profits depends on implicit findings of demand for occlusion mode and AMO's capacity to meet such demand and that those findings are against the weight of the evidence. (D.I. 331 at 20-26.) First, on the demand issue, Alcon argues that the sales trends discussed by Putnam do not show any increase due to occlusion mode. (*Id.* at 21-26.) Putnam, of course, disagreed. (Tr. at D-113:17-18.) Moreover, the sales trend is only part of the evidence of demand. Both AMO and Alcon advertised the feature. (PTX 226; PTX 278; PTX 284; PTX 285; PTX 289; PTX 310; Tr. at D-100:16-101:10.) Doctors promoted its use. (Tr. at B-23:2-19, C-207:15-17.) Finally, Alcon surveyed doctors and found that they considered the feature to be useful. (PTX 34.) Thus, the conclusion that there was demand for occlusion mode was not against the weight of the evidence. [FN4]

FN4. Alcon's assertion that Putnam's testimony on demand was misleading because he did not consider the AMO Diplomax machine was addressed during cross-examination. The jury could permissibly rely on his explanation that he did not consider the Diplomax to be in the relevant market (Tr. at D-180:13-181:23).

Second, on the capacity issue, Alcon contends that AMO would not have been able to make the additional sales for which it received lost profits, because this would have doubled AMO's sales and would have required AMO to sell in markets where it had no sales presence. (D.I. 331 at 26.) However, AMO's Chief Marketing Officer testified that AMO had the capacity to make these sales with its current sales force (Tr. at C-252:3-253:5), and Putnam testified similarly (Tr. at D-108:12-18). Again, the conclusion that AMO had sufficient marketing capacity was not against the weight of the evidence.

Accordingly, Alcon's motion for a new trial based on the jury's award of lost profits will be denied.

*2. Reasonable Royalty for the '240 and '765 Patents*

Alcon also seeks a new trial because the jury's award of reasonable royalty damages for infringement of the '240 and '765 patents is not supported by evidence showing that the royalty base should include the entire value of the AdvanTec Legacy and Infiniti machines. (D.I. 331 at 27-29.) According to Alcon, the royalty base should be limited to the value of the upgrades that enabled occlusion mode (for the '240 patent) and the value of the fluidics cassettes (for the '765 patent) because these are the new features that embody the inventions. (*Id.* at 27.) This argument fails because for both the '240 and '765 patents, the asserted claims cover elements found throughout the phacoemulsification devices, including, for example, handpieces and pumps. ('240 patent at 7:33-57, 7:62-8:2, 8:18-37; '765 patent at 6:3-27, 6:44-63.) Therefore, the royalty base presented to the jury was proper.

Accordingly, Alcon's motion for a new trial based on the jury's award of reasonable royalties will be denied.

*G. Enhanced Damages and Attorneys' Fees*

Slip Copy                                                                                      Page 8
Slip Copy, 2005 WL 3454283 (D.Del.)
**(Cite as: Slip Copy)**

*9 Based largely on the jury's determination of willful infringement, AMO seeks enhanced damages and attorneys' fees. After review, I agree that this is an exceptional case, that the damages award should be trebled, and that reasonable attorneys' fees should be awarded.

In exceptional cases of patent infringement, a court "may increase the damages up to three times." 35 U.S.C. § 284. This provision reflects "the tortious nature of patent infringement and the public interest in a stable patent right." *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.,* 127 F.3d 1462, 1464 (Fed.Cir.1997). Enhanced damages are appropriate if the "infringer is guilty of conduct upon which increased damages may be based," and if the "totality of the circumstances" supports an enhanced award. *Jurgens v. CBK, Ltd.,* 80 F.3d 1566, 1570 (Fed.Cir.1996) (citing *Read Corp. v. Portec, Inc.,* 970 F.2d 816, 826-27 (Fed.Cir.1992)). While the court must decide whether enhanced damages are appropriate, *Brooktree Corp. v. Advanced Micro Devices, Inc.,* 977 F.2d 1555, 1581 (Fed.Cir.1992), a jury's finding of willful infringement is relevant to that decision, *see Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.,* 383 F.3d 1337, 1348 (Fed.Cir.2004). Furthermore, "[w]here a jury has found willful infringement, a district court must provide reasons for refusing to enhance damages [and] ... must take care to avoid second guessing the jury or contradicting its findings." *Applied Med. Res. Corp. v. U.S. Surgical Corp.,* 967 F.Supp. 861, 863 (E.D.Va.1997) (citing *Jurgens,* 80 F.3d at 1572-74).

Here, the jury's conclusion that infringement was willful shows that Alcon was guilty of conduct upon which increased damages may be based. The "totality of the circumstances" may be addressed by considering certain factors suggested by the Federal Circuit in *Read,* 970 F.2d at 827 (listing nine factors). In this case, I find the most relevant *Read* factors to be: (1) "whether the infringer deliberately copied the ideas or design of another;" (2) "whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed;" and (3) "defendant's size and financial condition." *Id.*

First, as discussed in Section IV.E, AMO presented evidence that Alcon copied the '240 and '765 inventions. Alcon not only had access to AMO's Sovereign machine (Tr. at D-25-29), it prepared reports on the Sovereign's operation (PTX 127; PTX

132), photographed the fluidics system (PTX 132 at 7), and changed its own fluidics design after viewing the Sovereign (Tr. at E-58-59; PTX 124). This evidence of copying, which supported the jury's finding of willfulness, also supports an enhanced damages award.

Second, AMO presented evidence that Alcon's investigation of the '240 patent was less than complete and competent (Tr. at E-103-05, G-21-23, G-60-61) and that Alcon continued to develop its infringing system before the opinion letter was received (PTX 46; PTX 94). This lack of an appropriate investigation, which again supported the jury's finding of willfulness, also supports an enhanced damages award.

*10 Third, according to Alcon's SEC filings for calender year 2004, Alcon's sales of cataract surgery products was about $1.5 billion. (D.I. 313, Ex. 2 at 21.) For four years of infringement, the jury awarded about $94.8 million. Considering the annual sales of cataract surgery equipment, which appears in large measure to consist of sales of the infringing devices and consumables (*id.* at 10, Ex. 2 at 21), an enhanced award is appropriate to deter and punish willful infringement.

Based on the evidence of copying of both the '240 and '765 inventions, the lack of appropriate investigation of the '240 patent, and the amount of Alcon's phacoemulsification sales, I conclude that the damages award should be trebled.[FN5]

> FN5. Because of an issue that arose during trial concerning marking under 35 U.S.C. § 287, the parties agreed to a post-trial hearing before the court. For the amount of the judgment, see the accompanying Post-Trial Findings of Fact and Conclusions of Law issued in this matter today.

In exceptional cases of patent infringement, a court may also "award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. An award of attorneys' fees and costs is typical in cases of willful infringement. *See, e.g., Knorr-Bremse,* 383 F.3d at 1347. In fact, a trial court must explain why fees were not awarded "in the face of its express finding of willful infringement." *S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.,* 781 F.2d 198, 201 (Fed.Cir.1986). "[T]he Court may consider the factors relevant to an enhanced damages award in determining whether attorneys' fees should be

granted." *nCUBE Corp. v. SeaChange Int'l, Inc.*, 313 F.Supp.2d 361, 391 (D.Del.2004).

The evidence of willful infringement already noted supports an award of reasonable attorneys' fees and costs in this case.[FN6]

> FN6. I have already stated that the fees and costs associated with the hearing on the marking issue will be assessed to Alcon. (Tr. at G-15-16.)

### H. *Permanent Injunction*

After a patent is found to be valid and infringed, the "general rule" is that the court will issue an injunction against future infringement pursuant to 35 U.S.C. § 283. *Richardson v. Suzuki Motor Co.*, 868 F.2d 1226, 1247 (Fed.Cir.1989). The past willful infringement of the '240 and '765 patents shows a likelihood of future harm that justifies a permanent injunction in this case. Therefore, AMO's motion for permanent injunction will be granted. The parties agree that the injunction may only apply to the parties and limited non-parties according to Fed.R.Civ.P. 65(d). (D.I. 315 at 22-23; D.I. 321 at 1.) The injunction will cover not only each of the devices found to infringe the '240 and '765 patents, but also others "not more than colorably different" from those devices. *See Int'l Rectifier Corp. v. IXYS Corp.*, 383 F.3d 1312, 1316 (Fed.Cir.2004). The parties shall confer and, within ten days, submit a form of judgment order giving effect to the foregoing conclusions.

### I. *Stay of Injunction*

Alcon seeks to stay the injunction pending appeal to the extent that it covers future infringement of the '765 patent.[FN7] In considering whether to grant a stay, the court must apply four factors:

> FN7. Because the feature that infringed the '240 patent has been removed from its machines, Alcon does not move for a stay of the injunction to the extent that it covers future infringement of the '240 patent.

(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits;
(2) whether the applicant will be irreparably injured absent a stay;

*11 (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and
(4) where the public interest lies.

*Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 512 (Fed.Cir.1990). "Each factor ... need not be given equal weight." *Id.* "When harm to the applicant is great enough, a court will not require a strong showing that applicant is likely to succeed on the merits." *Id.* at 513 (citation omitted). Importantly for this case, "provided the other factors militate in movant's favor," a stay is appropriate where the movant can "demonstrate a substantial case on the merits," even without showing a strong likelihood of success. *Id.* (citation omitted).

Taking the factors in reverse order, Alcon has shown that the public interest strongly favors granting a stay. Alcon's sales of the Infiniti device represent "approximately 75% of the new phacoemulsification machines now sold in the United States." (D.I. 315 at 10, Ex. D at ¶ 3.) If that share of the market cannot be replaced in a timely manner, surgeons and patients will be left without important medical equipment. The evidence at trial showed that AMO certainly could not fill a market-share gap of that magnitude, nor does it appear that any other supplier or combination of suppliers could. Even if AMO or another supplier could immediately step in, Alcon contends that noninfringing safety features of the Infiniti would be forced off the market by an injunction. (*Id.* at 11.) While AMO contends that its Sovereign machine is also safe, it does not contend that it can replace these additional features. In short, it is clear that it will take time for the market to adapt.

On the issue of injury to the nonmoving party, AMO claims that it will be irreparably harmed by a stay because it will lose market share, reputation, and the right to exclusivity protected by the patent laws. (D.I. 325 at 9-10.) However, AMO did not show that it could have made additional sales but for Alcon's infringement of the '765 patent because it conceded that the fluidics system protected by that patent does not drive demand for the Alcon machines. Accordingly, AMO was adequately compensated for past infringement by a reasonable royalty on the infringing devices. I am persuaded that AMO's market share will not likely be damaged by a stay because the demand for the Infiniti devices is not driven by the patented fluidics feature found in AMO's Sovereign. While AMO will lose its right to exclusivity pending appeal and may suffer some injury to its reputation as a company that enforces its

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                   Page 10
Slip Copy, 2005 WL 3454283 (D Del.)
**(Cite as: Slip Copy)**

patent rights, a temporary stay is not likely to cause irreparable harm.

By contrast, denying the stay will certainly cause Alcon to lose, for some period of time, all of its Infiniti sales, which account for approximately 75% of the sales of new phacoemulsification machines in the United States. (D.I. 315 at 10, Ex. D at ¶ 3.) In 2004, sales of the Infiniti totaled over $30 million in the United States and over $60 million worldwide. (*Id.* at 17, Ex. D at ¶ 8.) Additional revenue would be lost from the associated sales of cassettes and other consumables. (*Id.*) If Alcon were to prevail on appeal, those losses could not be compensated.

*12 Finally, while Alcon has not made a strong showing of likelihood of success on appeal, it has shown that it has a substantial case. Alcon points specifically to the construction of the claim terms "disposed along" and "chamber shape means" and to the lack of evidence supporting infringement. (*Id* at 5-10.) As AMO notes, these issues have been argued already, and the finding of infringement is based on the jury's factual determinations. (D.I. 325 at 1-8.) But Alcon at least has a substantial case on appeal, and a stay is warranted while the Federal Circuit reviews the many vigorously contested issues in the case.

Because three of the four factors favor Alcon, and because Alcon has shown that it has a substantial case on appeal, Alcon's motion for a stay of injunction to the extent that it covers infringement of the '765 patent will be granted. In effect, this results in a compulsory license for the '765 patent while the appeal is pending, because, if Alcon loses its appeal, it will be required to pay reasonable royalty damages on the infringing sales made during that time. Alcon will post a bond in the amount of $1.8 million, corresponding to one year's royalties for '765 patent infringement according to AMO's damages expert,[FN8] as security during the pendency of the appeal.[FN9]

> FN8. The royalty requested by AMO at the trial is an appropriate basis for this bond because the jury awarded 98% of the amount requested for '765 patent royalties (D.I. 302; Tr. at E-155:23-156:1). *See* Post-Trial Findings of Fact at ¶ ¶ 12-13. Thus, the bond value is only slightly greater than the damages award for one year. Also, Alcon itself proposed the bond amount. (D.I. 315 at 20.)

> FN9. AMO did not ask for leave to submit supplemental material in support of its motion for injunction, and so Alcon's Motion to Strike the submission (D.I.371) will be granted. In any event, AMO's allegations about statements made to Alcon customers would not change my conclusion that a stay is appropriate in this case. AMO's Motion for Post Trial Discovery related to these allegations (D.I.373) will be denied.

## V. CONCLUSION

For the reasons set forth herein, I will deny Alcon's Motions for:
(1) Judgment as a Matter of Law of Noninfringement of the Asserted Claims of the '240 Patent or in the Alternative, a New Trial (D.I.337);
(2) Judgment as a Matter of Law of Obviousness of the Asserted Claims of the '240 Patent or in the Alternative, a New Trial (D.I.339);
(3) New Trial Based on the Exclusion of a Rebuttal Witness (D.I.343);
(4) Judgment as a Matter of Law of Noninfringement of the Asserted Claims of the '765 Patent or in the Alternative, a New Trial (D.I.341);
(5) Judgment as a Matter of Law Regarding the Jury's Willfulness Finding or in the Alternative, a New Trial (D.I.335); and
(6) Judgment as a Matter of Law on Damages or in the Alternative, a New Trial (D.I.334).

I will grant AMO's Motions for Attorney Fees and Enhanced Damages (D.I.312) and for a Permanent Injunction (D.I.310). The parties shall confer and, within ten days, submit a form of judgment order for the permanent injunction giving effect to the foregoing conclusions.

I will also grant Alcon's Motion for a Stay of Injunction pending appeal (D.I.316).

Finally, I will grant Alcon's Motion to Strike AMO's Supplemental Submission (D.I.371) and will deny AMO's Motion for Post Trial Discovery (D.I.373). An order will follow.

D.Del.,2005.
Advanced Medical Optics, Inc. v. Alcon Laboratories, Inc.
Slip Copy, 2005 WL 3454283 (D.Del.)

Briefs and Other Related Documents (Back to top)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 3454283 (D.Del.)
(Cite as: Slip Copy)

• 2006 WL 1930256 (Trial Motion, Memorandum and Affidavit) Alcon's Opposition to Amo's Brief in Support of its Motion to Strike the Purported Scientific Testimony of Joseph Beller and Raphael Gordon (Apr. 3, 2006) Original Image of this Document (PDF)

• 2006 WL 1930257 (Trial Motion, Memorandum and Affidavit) Alcon's Opposition to Amo's Motion to Strike Alcon's Reply Papers or, in the Alternative, for Leave to File A Sur-Reply (Apr. 3, 2006) Original Image of this Document (PDF)

• 2006 WL 1930258 (Trial Motion, Memorandum and Affidavit) Alcon's Reply to Amo's Opposition to Alcon's Motion to Strike in Part the Declarations of Paul Rockley; Thomas Buico; B.J. Barwick, Jr.; Mark Steen; James J. Little, M.D.; Richard Thorlakson; Gillian Thackray; and Hal Walbrink (Mar. 29, 2006) Original Image of this Document (PDF)

• 2006 WL 1930238 () Second Declaration of Hal Walbrink in Support of AMO's Opposition to Motion for New Trial (Mar. 20, 2006) Original Image of this Document (PDF)

• 2006 WL 1930236 () Second Declaration of Richard J. Mackool, M.D. in Support of Alcon's Motion for New Trial (Mar. 8, 2006) Original Image of this Document (PDF)

• 2006 WL 1930249 (Trial Motion, Memorandum and Affidavit) Alcon's Reply Brief in Support of its Motion for A New Trial on the "240 Patent Based on Newly Discovered Evidence (Mar. 8, 2006) Original Image of this Document (PDF)

• 2006 WL 1930250 (Trial Motion, Memorandum and Affidavit) Declaration of Raphael Gordon in Support of Alcon's Motion for New Trial (Mar. 8, 2006) Original Image of this Document (PDF)

• 2006 WL 1930251 (Trial Motion, Memorandum and Affidavit) Alcon's Memorandum in Support of Motion to Strike in Part the Declarations of Paul Rockley; Thomas Buico; B.J. Barwick, Jr.; Mark Steen; James H. Little, M.D.; Richard Thorlakson; Gillian Thackray; and Hal Walbrink (Mar. 8, 2006) Original Image of this Document (PDF)

• 2006 WL 1930235 () Declaration of Hal Walbrink in Support of AMO's Opposition to Alcon's Motion for New Trial (Feb. 23, 2006) Original Image of this Document (PDF)

• 2006 WL 1930248 (Trial Motion, Memorandum and Affidavit) Defendant Alcon's Brief in Support of its Motion for A New Trial Under Fed. R. Civ. P. 59 and 60(b)(2) Based on Newly Discovered Evidence (Feb. 3, 2006) Original Image of this Document (PDF)

• 2006 WL 1930232 () Declaration of Richard J. Mackool, M.D. (Feb. 2, 2006) Original Image of this

Document (PDF)

• 2006 WL 1930233 () Declaration of Joseph H. Beller (Feb. 2, 2006) Original Image of this Document (PDF)

• 2006 WL 1930252 (Trial Motion, Memorandum and Affidavit) Amo's Brief in Support of Its Motion to Strike the Purported Scientific Testimony of Joseph Beller and Raphael Gordon (Jan. 20, 2006) Original Image of this Document (PDF)

• 2006 WL 1930253 (Trial Motion, Memorandum and Affidavit) Surreply of Advanced Medical Optics in Opposition to Motion for New Trial (Jan. 20, 2006) Original Image of this Document (PDF)

• 2006 WL 1930254 (Trial Motion, Memorandum and Affidavit) Brief in Support of Amo's Motion to Strike Reply Papers or, in the Alternative, for Leave to File Surreply in Opposition to Motion for New Trial (Jan. 20, 2006) Original Image of this Document (PDF)

• 2006 WL 1930255 (Trial Motion, Memorandum and Affidavit) Amo's Opposition to Alcon'S Motion to Strike in Part the Declarations of Paul Rockley; Thomas Buico; B.J. Barwick, Jr.; Mark Steen; James HL Little, M.D.; Richard Thorlakson; Gillian Thackray; and Hal Walbrink (Jan. 20, 2006) Original Image of this Document (PDF)

• 2006 WL 1930259 (Trial Motion, Memorandum and Affidavit) Amo's Reply to Alcon's Opposition to Motion to Strike Reply Papers or, in the Alternative, Amo's Motion for Leave to File Surreply in Opposition to Motion for New Trial (Jan. 10, 2006) Original Image of this Document (PDF)

• 2005 WL 3666781 (Trial Motion, Memorandum and Affidavit) Alcon's Opposition to Amo's Supplemental Submission in Support of Motion for Entry of Injunction and Motion to Strike (Oct. 25, 2005) Original Image of this Document (PDF)

• 2005 WL 2603761 (Trial Motion, Memorandum and Affidavit) Alcon's Reply Brief in Support of its Motion for Judgment as A Matter of Law, or in the Alternative A New Trial, on Damages (Sep. 2, 2005) Original Image of this Document (PDF)

• 2005 WL 2603763 (Trial Motion, Memorandum and Affidavit) Alcon's Reply Brief in Support of its Motion for Judgment as A Matter of Law of Non-Infringement of the Asserted Claims of U.S. Patent No. 5,700,240, or in the Alternative, for A New Trial (Sep. 2, 2005) Original Image of this Document (PDF)

• 2005 WL 2603765 (Trial Motion, Memorandum and Affidavit) Alcon's Reply Brief in Support of its Motion for Judgment as A Matter of Law of Obviousness of the Asserted Claims of U.S. Patent No. 5,700,240, or in the Alternative for A New Trial (Sep. 2, 2005) Original Image of this Document

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 3454283 (D.Del.)
**(Cite as: Slip Copy)**

Page 12

(PDF)

• 2005 WL 2603620 (Trial Motion, Memorandum and Affidavit) Amo's Brief in Opposition to Alcon's Motion for Judgment as A Matter of Law or New Trial on the Issue of Willfulness (Aug. 19, 2005) Original Image of this Document (PDF)

• 2005 WL 2603622 (Trial Motion, Memorandum and Affidavit) Amo's Brief in Opposition to Alcon's Motion for Judgment as a Matter of Law, or in the Alternative a New Trial, on Damages (Aug. 19, 2005) Original Image of this Document (PDF)

• 2005 WL 2603624 (Trial Motion, Memorandum and Affidavit) Amo's Brief in Opposition to Alcon's Motion for a New Trial Based on the Exclusion of Dr. Shimizu as a Rebuttal Witness (Aug. 19, 2005) Original Image of this Document (PDF)

• 2005 WL 2603626 (Trial Motion, Memorandum and Affidavit) Amo's Brief in Opposition to Alcon's Motion for Judgment as A Matter of Law of Obviousness of the Asserted Claims of U.S. Patent No. 5,700,240, or in the Alternative, for a New Trial (Aug. 19, 2005) Original Image of this Document (PDF)

• 2005 WL 2603759 (Trial Motion, Memorandum and Affidavit) Amo's Brief in Opposition to Alcon's Motion for Judgment as A Matter of Law of Non-Infringement of the '765 Patent or for A New Trial (Aug. 19, 2005) Original Image of this Document (PDF)

• 2005 WL 2385493 (Trial Motion, Memorandum and Affidavit) Alcon's Brief in Support of its Motion for Judgment as a Matter of Law, or in the Alternative, for a New Trial Regarding the Jury's Willfulness Finding (Jul. 22, 2005) Original Image of this Document (PDF)

• 2005 WL 2385494 (Trial Motion, Memorandum and Affidavit) Alcon's Brief in Support of its Motion for Judgment as a Matter of Law of Obviousness of the Asserted Claims of U.S. Patent No. 5,700,240, or in the Alternative, for a New Trial (Jul. 22, 2005) Original Image of this Document (PDF)

• 2005 WL 2385495 (Trial Motion, Memorandum and Affidavit) Alcon's Brief in Support of its Motion for Judgment as a Matter of Law of Non-Infringement of the Asserted Claims of U.S. Patent No. 6,059,765, or in the Alternative, for a New Trial (Jul. 22, 2005) Original Image of this Document (PDF)

• 2005 WL 2385496 (Trial Motion, Memorandum and Affidavit) Alcon's Brief in Support of its Motion for a New Trial Based on the Exclusion of Dr. Shimizu as a Rebuttal Witness (Jul. 22, 2005) Original Image of this Document (PDF)

• 2005 WL 2385637 (Trial Motion, Memorandum and Affidavit) Alcon's Brief in Support of its Motion

for Judgment as a Matter of Law of Non-Infringement of the Asserted Claims of U.S. Patent No.5,700,240, or in the Alternative, for a New Trial (Jul. 22, 2005) Original Image of this Document (PDF)

• 2005 WL 4168162 (Trial Motion, Memorandum and Affidavit) Alcon's Brief in Support of Its Motion for Judgment as A Matter of Law, or in the Alternative A New Trial, on Damages- Redacted (Jul. 22, 2005) Original Image of this Document (PDF)

• 2005 WL 4168155 () Declaration of Richard J. Mackool, M.D. (Jun. 2005) Original Image of this Document (PDF)

• 2005 WL 2603757 (Trial Motion, Memorandum and Affidavit) AMO's Brief in Opposition to Alcon's Motion for Judgment as a Matter of Law of Noninfringement of the Asserted Claims of U.S. Patent No. 5,700,240, or in the Alternative, for a New Trial (May 6, 2005) Original Image of this Document (PDF)

• 2005 WL 2603760 (Trial Motion, Memorandum and Affidavit) AMO's Response to Alcon's Proposed Findings of Fact and Conclusions of Law Regarding Damages (May 6, 2005) Original Image of this Document (PDF)

• 2005 WL 4168161 (Trial Motion, Memorandum and Affidavit) Plaintiff Amo's Motion to Preclude Testimony of Dr. Kimiya Shimizu (May 2, 2005) Original Image of this Document with Appendix (PDF)

• 2005 WL 4168160 (Trial Motion, Memorandum and Affidavit) Alcon Laboratories, Inc. and Alcon Manufacturing, Ltd.'s Motion to Exclude The Video Presentation of Advanced Medical Optics, Inc.'s Expert, Harold J. Walbrink (Apr. 27, 2005) Original Image of this Document (PDF)

• 2004 WL 4092552 () Declaration of Harold J. Walbrink in Support of AMO's Responses to Motions for Summary Judgment and Motions to Exclude Brought By Defendant Alcon. Jury Trial Demanded (Nov. 16, 2004) Original Image of this Document (PDF)

• 2004 WL 4092558 () Videotaped Deposition of George J. Eilers (Oct. 20, 2004) Original Image of this Document (PDF)

• 2004 WL 4092553 () Videotaped Deposition of Harold J. Walbrink (Oct. 19, 2004) Original Image of this Document (PDF)

• 2004 WL 4092556 () Deposition of: Alan S. Crandall, M.D. (Oct. 13, 2004) Original Image of this Document (PDF)

• 2004 WL 4092551 () Deposition of: Dr. Randall J. Olson (Oct. 11, 2004) Original Image of this Document (PDF)

• 2004 WL 4092555 () Rebuttal By Dr. Randall J.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 13
Slip Copy, 2005 WL 3454283 (D.Del.)
**(Cite as: Slip Copy)**


Olson on Behalf of Plaintiff Amo, Inc. in Response to
Expert Reports of Dr. Alan Crandall and George
Eilers Dated August 23, 2004 (Sep. 21, 2004)
Original Image of this Document (PDF)
• 1:03cv01095 (Docket) (Dec. 3, 2003)
• 2003 WL 24903406 () Expert Report of George
Elders Regarding the Invalidity of U.S. Patent
5,700,240 (2003) Original Image of this Document
(PDF)
• 2003 WL 24903407 () Rebuttal Report of Hal
Walbrink on Behalf of Plaintiff Advanced Medical
Optics, Inc. Regarding Validity (2003) Original
Image of this Document (PDF)
• 2003 WL 24903409 () Expert Rebuttal Report of
Kevin M. Miller, M.D. AMO v. Alcon Laboratories,
Inc. (2003) Original Image of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.