Slip Copy                                                                          Page 19
Slip Copy, 2004 WL 4910334 (N.D.Ga.)
(Cite as: Slip Copy)

*Springs Window Fashions LP v. Novo Indus., LP*, 323 F.3d 989, 995 (Fed.Cir.2003), cannot be read as requiring that this Court treat the subject arguments as "mulligans" in the prosecution history that Coca-Cola was required to expressly disclaim to avoid their restrictive effects. *Compare Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.*, 222 F.3d 951, 957 (Fed.Cir.2000). To the extent that Coca-Cola's arguments can even be seen as "erroneous" statements regarding the patents that ultimately issued, its alteration of the claim language omitting the enumerated characteristics at issue would not allow a reasonable competitor to perceive the arguments as the "surrender" advanced by Defendants.

Likewise, *Phillips Petroleum Co. v. United States Steel Corp.*, 673 F.Supp. 1278, (D.Del.1987), does not support Defendants' position. That case, in a footnote, did reject the proposition that prosecution history estoppel is "inapplicable" in any instance where the claims as ultimately issued were broader than those canceled or rejected before the Patent Office. *See* 673 F.Supp. at 1348, n. 103 (*citing Schriber-Schroth Co.*, 311 U.S. at 221.) That statement was offered by the District of Delaware only in *dicta,* however, and in any event, does not address the question of whether-"applicable" or not-prosecution history estoppel will actually arise in a case where the relevant argument was advanced only in connection with claim language that did not find its way into the patent as ultimately issued.

In sum, the prosecution history cited by Defendants, when viewed in context, is not indicative of the "clear and unmistakable surrender" that would give rise to the estoppel they propose. *See Bayer AG*, 212 F.3d at 1252. Accordingly, insofar as Defendants seek a holding of non-equivalency based on the basis of such arguments, their motion for summary judgment cannot be sustained.


(c) All Elements Rule

Defendants also raise the argument in their Reply brief that Coca-Cola is precluded from relying on the series of protuberances integrated with the bag walls in the Evacufilm Bag as the "liquid passage means" under the so-called all elements rule. (*See* Defs.

Reply No. 2 at 9-10.) Specifically, Defendants assert that the protuberances found on the bag wall cannot simultaneously satisfy the "bag wall means" and "liquid passage means" of the '493 Patent. The Court finds this argument to be without merit.

The "all elements rule" dictates that "an accused device must contain every claimed element of the invention or the equivalent of every claimed element." *Kustom Signals, Inc. v. Applied Concepts, Inc.*, 264 F.3d 1326, 1333 (Fed.Cir.2001). It does not, however, "require equivalency in components"; rather, "[a]n equivalent must be found for every limitation of the claim somewhere in an accused device, but not necessarily in a corresponding component...." *Corning Glass Works v. Sumitomo Elec. USA, Inc.*, 868 F.2d 1251, 1259 (Fed.Cir.1989); *see also Moore USA, Inc. v. Standard Register Co.*, 139 F.Supp.2d 364, 375 (W.D.N.Y.2001).

*24 Defendants have failed to direct the Court to any authority supporting their view that the "all elements rule" holds that a physically integrated structure cannot operate to concomitantly satisfy two limitations within a patent.[FN14] Moreover, the Court notes that it works somewhat of a strain to entirely conflate the protuberances Coca-Cola contends act as the "liquid passage means" and the inner ply wall of the bag on which those protuberances are embossed (the alleged "bag wall means")-physical integration does not seem to vitiate the conceptual distinctness of the two structures.

> FN14. Defendants contend that Coca-Cola's purported reliance on the bag wall embossed with protuberances as both the "bag wall means" and "liquid passage means" is inconsistent with Coca-Cola's position (raised in the context of Defendants' anticipation claim) that the "spout" and "spout opening" cannot be construed as a single structure. To the extent Coca-Cola advances the "all elements rule" in support of that argument, its reliance on the doctrine is indeed somewhat inconsistent with the position taken here. Nevertheless, the Court finds that the "all elements rule" supports neither of the two propositions for which it is cited in the parties' respective papers, and in the context of Coca-Cola's anticipation argument, found the spout to be structurally distinct from the spout opening based on basic principles of patent construction.

Succinctly stated, the Court is unable to conclude, as a matter of law, that the series of protuberances found in Defendants' Evacufilm Bag is not the "equivalent" of the "liquid passage means" referenced in claim 1 of the '493 Patent. Nor can the Court hold that the question of equivalency is foreclosed by either the doctrine of prosecution history estoppel or the "all elements rule." Accordingly, to the extent Defendants seek summary judgment on the absence of a cognizable "liquid passage means" in their product, their request cannot be sustained.

### ii. "Secured Inside of Said Bag"

Defendants next argue that, to the extent that the protuberances in the accused device could be held to constitute the "liquid passage means," they are not "secured inside of said bag" as contemplated by subpart (e) of claim 1. In its *Markman* Order, the Court stated the following with respect to this limitation:
The term "secured inside of said bag" means either adhered or integral with the wall of the bag. The patent does not make any reference to a point of attachment, and the Court will not read any such limitation into the language.

(March 27, 2003 Order [44-1] at 8.) "Integral," moreover, was later defined by the Court to mean "formed as a unit with another part." (March 27, 2003 Order [44-1] at 11.)

Defendants argue that this limitation is not satisfied here because "the Evacufilm [B]ag wall is embossed, and hence carries on the surface of each bag wall the waffle-shaped embossed pattern." (Defs.' Mem. in Supp. of Mot. for Summ. J. (No. 2) [82-1] [hereinafter, "Defs. Mem. No. 2"] at 6-7.) In furtherance of their argument, Defendants again point to the prosecution history of the Coca-Cola Patents wherein Coca-Cola distinguished the Maynard Patent on grounds that, in that device, no additional "step" of affixation (*e.g.,* heat-sealing) was required because the member at issue was "already satisfactorily located in the bag...." (Defs. Mem. No. 2 at 6-7; *see also* Defs. Ex. 19, pp. 58, 72-73, 87, 90-93, 105.) Defendants argue that such prosecution history requires that there be an additional "step" of affixation in the manufacture of any accused device in order to find infringement, stating:
The complete answer to Coca-Cola's argument [that the liquid passage means can be either adhered to or integral with the bag wall] is that the prosecution history limits the application of the limitation

"secured inside the bag" to those instances where it is physically attached and excludes the embodiment in which the ribs are integral with the bag.

*25 (Defs. Reply No. 2 at 16.) The Court finds this argument unpersuasive for two reasons.

First, Defendants' argument that the limitation, "secured inside bag," "excludes the embodiment in which the ribs are integral with the bag" is in manifest disagreement with the construction of the limitation recited in the Court's *Markman* Order. (March 27, 2003 Order [44-1] at 8.) Indeed, the limitation that the liquid passage means be "secured inside of said bag," as construed by the Court, seems to literally "read on" the accused device; the protuberances appear "integral" with the bag wall ("formed as a unit with the wall of the bag"). Notably, moreover, it was Defendants themselves who proposed this construction of the limitation, and their attempt to maneuver around the definition they proposed through reliance on prosecution history is ill-founded. (*See* Joint Claim Construction Statement [29-1].)

Second, Defendants' reliance on prosecution history estoppel to impose an additional requirement that the liquid passage means be "secured" to the bag wall through some *additional* "step" must be rejected for many of the same reasons the doctrine did not apply in the determination of equivalents in the "liquid passage means" context. At the time the subject statements were made by Coca-Cola, the claim it was pursuing before the Patent Office explicitly referenced the existence of a liquid passage member "separate from said bag walls" and recited the step of "heat sealing said member in place inside of said bag." (Defs. Ex. 19 at 56-57.) Claim 1 of the '493 Patent does not recite such a feature or "step." Accordingly, viewed against the prosecution history as a whole, the statements cited by Defendants fail to evince the "clear and unmistakable surrender" necessary to find prosecution history estoppel. *Bayer AG,* 212 F.3d at 1252; *cf. also CAE Screenplates Inc.,* 224 F.3d at 1317; *Al-Site Corp.,* 174 F.3d at 1322-23; *Serrano,* 111 F.3d at 1584.

### b. Claim 14

### i. "Elongated Fluid Passage Member"

Defendants next contend that the accused device lacks the "elongated fluid passage member" recited in

claim 14 of the '493 Patent. In making this argument, Defendants urge that, in the first instance, the accused device lacks a "member," and state that in any event, that "member" is not "elongated" as required by the patent-in-suit. The Court finds neither argument sufficient to sustain summary judgment in Defendants' favor.

First, with respect to Defendants' position that the Evacufilm Bag lacks a fluid passage "member"-a position they predicate on the integration of the aligned protuberances with the wall of the bag-the Court concludes that nothing in the '493 Patent requires that such a "member" be physically separate from the bag wall. Indeed, such a requirement of physical separateness would be in conflict with the interpretation of "secured inside of said bag" advocated by Defendants and accepted by the Court, which expressly encompasses a "member" that is integrated with the wall of the bag.[FN15]

> FN15. Defendants also state in their Reply brief that finding a "member" in the Evacufilm Bag would violate the "all elements rule." (Defs. Reply No. 2 at 18.) This argument fails for all the reasons set forth *supra,* Part II.B.1.a.i.c.

*26 Turning to Defendants' contention that the fluid passage member in the Evacufilm Bag is not "elongated," the Court concludes that Coca-Cola has come forward with sufficient evidence to create a jury question as to the presence of that limitation, either literally or under the doctrine of equivalents, in the accused device. Defendants' argument in support of the absence of the requisite elongation is predicated on the view that the sole structural "member" at issue is a single protuberance on the wall of the bag-a protuberance that extends for only 1 / 25th of an inch. According to Coca-Cola, however, the feature of the accused device that reflects the relevant fluid passage member is the *series* of aligned protuberances extending to the spout of the Evacufilm Bag.

In making its argument in support of literal infringement, Coca-Cola points out that the Court has previously construed "fluid passage member" as "a *structure* capable of channeling or conveying a flow of liquid," (March 27, 2003 Order [44-1] at 10) (emphasis supplied), and further notes that a "structure," by definition, is "something made up of two or more less interdependent elements or parts[.]" Webster's 3rd New Int'l Dictionary (Unabridged)

2267 (1993). It goes on to incorporate the testimony of its expert that such a *series* of protuberances create elongated liquid flow channels in substantially the same way as do the ribs in the patented invention. (Defs. Ex. 38 at 25; Coca-Cola Ex. 16 at 8.)

In light of the foregoing testimony, the Court concludes that a reasonable jury might find that the series of aligned protuberances satisfies the limitation of an *"elongated* fluid passage member" recited in claim 14 of the '493 Patent, either literally or under the doctrine of equivalents, and accordingly declines to grant Defendants summary judgment on that ground.

### ii. "Secured Inside of Said Bag"

Defendants additionally contend that the elongated fluid passage member is not "secured inside of said bag" as required by claim 14 of the '493 Patent. For all the reasons set forth above, Part II.B.1.a.ii, the Court finds that argument unavailing.

### 2. Infringement of the '421 Patent

Defendants additionally seek summary judgment of non-infringement with respect to the '421 Patent. Incorporating arguments directed at the limitations found in the '493 Patent, Defendants assert that the accused device lacks the elements of a "liquid passage member ... having at least one elongated liquid channel," as well as a liquid passage member that is "secured" and "positioned" inside of the bag walls.[FN16] For all the reasons set forth above, the Court finds these arguments insufficient to sustain the entry of summary judgment in Defendants' favor.

> FN16. Defendants seem to predicate their argument that the accused device fails to satisfy the limitation that "said liquid passage member positioned in said walls" on the purported absence of a "liquid passage member," as well as their earlier articulated position that the aligned protuberances and the bag wall are not conceptually distinct elements in the accused device. The Court has previously rejected these two foundational premises with respect to the '493 Patent, and consequently cannot conclude that the Evacufilm Bag lacks this limitation as a matter of law.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                    Page 22
Slip Copy, 2004 WL 4910334 (N.D.Ga.)
(Cite as: Slip Copy)

### 3. Infringement of *the '252 Patent*

Finally, Defendants argue that they are entitled to summary judgment of non-infringement in connection with the '252 Patent, stating that the accused device lacks the elements of an "elongated liquid passage member secured inside of said bag" as well as a "fluid passage member having at least one fluid passageway ... secured to said bag[.]" Defendants' arguments in this regard have already been presented and rejected in connection with the '493 and '421 Patents, and similarly fail to support the entry of summary judgment in Defendants' favor with respect to the '252 Patent. Accordingly, Defendants' Motion for Summary Judgment (No. 2) that the Evacufilm Bag Does Not Infringe [83-1] is DENIED.

### III. Pre-Filing Damages.

**\*27** Defendants next move for summary judgment on the issue of pre-filing damages, arguing that Coca-Cola failed, as a matter of law, to comply with the notice requirements of 35 U.S.C. § 287 with respect to any of the allegedly infringing devices. (See Defs. Mot. for Summ. J. (No. 4) that Coca-Cola Cannot, as a Matter of Law, Recover Pre-Filing Damages [85-1].)

In pertinent part, 35 U.S.C. § 287 provides:
Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them, or importing any patented article into the United States, may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat", together with the number of the patent, or when, from the character of the article, this can not be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice. In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.

35 U.S.C. § 287(a).

Defendants argue that Coca-Cola cannot avail itself of "constructive notice" under the statute because it failed to mark its device with the requisite consistency to give proper notice to the public. *See*

*Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1446 (Fed.Cir.1998) ("In order to satisfy the constructive notice provision of the marking statute, [the patentee] must have shown that substantially all of the [products] being distributed were marked, and that once marking was begun, the marking was substantially consistent and continuous."). Moreover, Defendants urge that Coca-Cola similarly failed to provide "actual notice" of Defendants' alleged infringement, and argue that damages are accordingly limited to those arising after the initiation of this lawsuit. *See* 35 U.S.C. § 287(a) ("Filing of an action for infringement shall constitute ... notice.")

Coca-Cola makes no effort to challenge Defendants' assertion that it failed to give constructive notice through consistent marking, and likewise surrenders any claim for pre-filing damages with respect to Defendants' Evacufilm Bag. (See Coca-Cola Co.'s Opp'n to Defs.' Mot. for Summ. J. (No. 4) [96-1] [hereinafter, "Coca-Cola Resp. No. 4"] at 4, n.1 ("Coca-Cola is not seeking pre-filing damages for the Evacufilm bag.").) Moreover, Coca-Cola does not argue that it is entitled to pre-filing damages with respect to alleged infringement of the '252 Patent. Rather, Coca-Cola's only contentions in response are (i) that it did provide Defendants with actual notice of alleged infringement of the '493 Patent, and (ii) that no notice was required with respect to the '421 Patent, because the only claims as to which it asserts the Tube Bag infringes are method claims immune from the mandates of 35 U.S.C. § 287(a). The Court addresses Coca-Cola's contentions below.

### A. The '493 Patent

**\*28** Coca-Cola asserts that it gave "actual notice" to Defendants with respect to the alleged infringement of the '493 Patent by the Tube Bag prior to filing this lawsuit.

Actual notice under § 287(a) requires that the patentee engage in some affirmative communication to notify the infringer "of a specific charge of infringement by a specific accused product or device." *See Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 186-87 (Fed.Cir.1994). Stated differently, "[t]he actual notice requirement of § 287(a) is satisfied when the recipient is informed of the identity of the patent and the activity that is believed to be an infringement, accompanied by a proposal to abate the infringement, whether by license or otherwise." *SRI Int'l Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1470 (Fed.Cir.1997); *see*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

also _Lans v. Digital Equip. Corp., 252 F.3d 1320, 1327 (Fed.Cir.2001)_ ("The purpose of the actual notice requirement is met when the recipient is notified, with sufficient specificity, that the patent holder believes the recipient of the notice may be an infringer.") (internal quotation omitted).

The focus of the statutory inquiry is on the actions of the patentee; "[i]t is irrelevant ... whether the defendant knew of the patent or knew of his own infringement." _Amsted Indus. Inc., 24 F.3d at 187; see also Lans, 252 F.3d at 1327._ The question of whether a patentee has provided notice pursuant to § 287(a) is one of fact on which the patentee bears the burden of proof, _Maxwell v. J. Baker, Inc., 86 F.3d 1098, 1111 (Fed.Cir.1996),_ and the precise form and content of such notice may vary significantly while still falling within the ambit of the statutory mandate. _See SRI Int'l, Inc., 127 F.3d at 1470._

In the instant case, Coca-Cola states that the required actual notice was provided by communications from its Vice President, Tom Blackstock, to John Schwan of Rapak Packaging Systems. (See Coca-Cola Exs. 28-29; Defs. Ex. 30.) In particular, Coca-Cola emphasizes testimony by Mr. Schwan to the effect that Mr. Blackstock, in a verbal communication, requested from him a sample Rapak bag containing an "offset" dip strip because Mr. Blackstock "felt it conceivably infringed," as well as a memorandum from Mr. Schwan to Pepsi where he recites Mr. Blackstock's statement that any action taken with respect to the bag would lead to an infringement lawsuit. (See Coca-Cola Exs. 28-29.) In addition, Coca-Cola points to a letter from Mr. Blackstock to Mr. Schwan, dated June 21, 1999, in which Mr. Blackstock wrote:
Thank you for sending us the syrup bag that includes evacuation channels. Contrary to your conclusions, we believe that the evacuation channels are transverse to the spout, at least at some times during evacuation, and therefore that your bag infringes our Patent No. 5,749,493.

(Defs.Ex. 30.)

Defendants dispute the statutory sufficiency of the foregoing communications on two grounds. First, Defendants contend that the communications targeted an earlier prototype bag with an offset dip strip, rather than the Tube Bag which instead contains an offset tube. Second, they assert that, irrespective of the sufficiency of notice to Defendant Rapak, no notice was provided by Coca-Cola to Pepsi of alleged infringement, and that consequently, Pepsi cannot be

held liable for pre-filing damages. The Court addresses those two arguments in turn.

*1. The relevant device*

**\*29** Defendants first object to the sufficiency of Coca-Cola's alleged "actual notice" on grounds that the offset dip strip bag that was the subject of Coca-Cola's communications is not wholly identical to the accused Tube Bag now alleged to be infringing. In support of this position, Defendants cite the testimony of Mr. Blackstock, in which he admits that Coca-Cola's communications preceded the modification of the bag to incorporate a tube, rather than a strip. (See Defs. Ex. 51.) Defendants urge that this product disparity forecloses a showing by Coca-Cola "of a specific charge of infringement by a _specific accused product or device._" _See Amsted Indus. Inc., 24 F.3d at 186-87_ (emphasis supplied).

Coca-Cola responds to this argument initially by placing great weight on the statement by the Federal Circuit in _SRI International, Inc.,_ that: "The actual notice requirement of § 287(a) is satisfied when the recipient is informed of the identity of the patent and _the activity that is believed to be an infringement,_ accompanied by a proposal to abate the infringement, whether by license or otherwise." _127 F.3d at 1470_ (emphasis supplied). It appears to be Coca-Cola's position that this recitation of the standard by the Federal Circuit either eliminated or discounted the requirement that actual notice be directed toward "a specific accused product or device." _See Amsted Indus. Inc., 24 F.3d at 186-87._ With that "activity standard" as a backdrop, Coca-Cola argues that the accused device is so similar to the offset dip strip bag at issue in its communications that the manufacture of the respective bags constitutes the same "activity." Coca-Cola additionally directs the Court's attention to two decisions of the District Court for the Southern District of New York holding that identification of products within the same "class" or "family" are sufficient to satisfy the "actual notice" requirement contemplated by 35 U.S.C. § 287(a). _See Novo Nordisk A/S v. Becton Dickinson & Co., 96 F.Supp.2d 309, 320 (S.D.N.Y.2000); Accuscan, Inc. v. Xerox Corp., Case No. 96 Civ. 2579, 1998 WL 60991, at \*34-\*35 (S.D.N.Y. Feb. 11, 1998)._[FN17]

> FN17. In their Reply, Defendants take issue with, _inter alia,_ Coca-Cola's statement that the two devices exhibit only "minor changes," and argue that the cited holdings

Slip Copy
Slip Copy, 2004 WL 4910334 (N.D.Ga.)
(Cite as: Slip Copy)

of the District Court for the Southern District of New York were implicitly rejected by the Federal Circuit in *Gart v. Logitech, Inc.,* 254 F.3d 1334, 1347 (Fed.Cir.2001).

As to the first point raised by Defendants, the Court concludes that the magnitude of changes, to the extent relevant for purposes of § 287(a) notice, presents a question of fact that cannot be resolved on the record presently before the Court.

As to the second point, the Court cannot accept Defendants' reading of *Gart* to foreclose actual notice from ever applying to any infringing product that exhibits anything other than complete and total identity with the one cited in the "notice" at issue. Although the Federal Circuit apparently did reject the appellant's argument that certain allegedly similar (but distinctly denominated) devices were encompassed by the notice provided by the patentee, it did not provide an explanation in support of that holding, and the Court will not ascribe to that rejection a meaning not so much as alluded to by the Federal Circuit. *See* 254 F.3d at 1346-47. Indeed, the Court notes that the Federal Circuit's statement that "we hold that the district court erroneously found that neither the 1995 letter nor the 1996 letter effected actual notice under section 287(a), *at least as to* the products referenced in those letters[,]" suggests an openness to the possibility that certain products not particularly referenced in the subject communications *could* be held to fall within the charge of infringement levied in the communications. *See id.* at 1346 (emphasis supplied).

The Court begins its evaluation of the parties' respective positions by recognizing that the law surrounding the "specific accused product or device" prong of the § 287 "actual notice" inquiry is not well-developed. Construed most strictly, that language could well support Defendants' position that any alteration of the device referenced in the cited communications (*e.g.,* to contain a tube rather than a strip) entirely precludes a patentee from establishing the requisite "actual notice." The Court concludes, however, that such a restrictive application of the standard would be inconsistent with the "flexible" conception of § 287(a) notice established by the Federal Circuit. *See SRI Int'l, Inc.,* 127 F.3d at 1470; *see also Wokas v. Dresser Indus., Inc.,* 978 F.Supp.

839, 844-45 (N.D.Ind.1997) (holding that letter "at least raise[d] an issue of fact as to whether it constitute[d] actual notice" where letter generally referred to allegedly infringing products as "vapor recovery hoses, nozzle spouts, and seals contained in my patent number 4,165,485 are now being or planned to be marketed").

**\*30** As Coca-Cola points out, demanding complete identity between the device to which the "actual notice" relates and the allegedly infringing product would permit an infringer to make even the most insubstantial "tweaks" to a device-*e.g.,* altering a particular structure in its color or size-and entirely escape the impact of notice which unambiguously relates a charge of infringement. Such a result is not supported by the language of the statute, and would impose upon patentees the extraordinarily onerous and unwarranted burden of dissecting each iteration of a competitor's product to determine if any minute change compels an additional, supplemental notice of infringement. Moreover, such a rule seems in tension with the Federal Circuit's recognition that the "actual notice" inquiry should be applied with some degree of flexibility. *See SRI Int'l, Inc.,* 127 F.3d at 1470 (explaining that "there are numerous possible variations in form and content" of communications that can satisfy the actual notice requirement); *cf also Japan Gas Lighter Ass'n v. Ronson Corp.,* 257 F.Supp. 219, 240 (D.N.J.1966) ("it seems obvious that two versions of a product may be both the same and different depending on the level of generality at which they are compared").

At the same time, however, the Court does not agree with Coca-Cola's position that the articulation of the "actual notice" standard in the *SRI International, Inc.* decision, 127 F.3d at 1470, all but eliminates the Federal Circuit's previous admonition that § 287(a) "actual notice" requires affirmative communication by the patentee "of a specific charge of infringement by a *specific accused product or device." See Amsted Indus. Inc.,* 24 F.3d at 186-87 (emphasis supplied). The "activity that is believed to be an infringement" could well be read to incorporate the requirement that the "activity" be production of the same or substantially the same product, and the Federal Circuit's decision in *SRI International, Inc* does not support a conclusion that such a requirement has been entirely "read out" of the rule. Likewise, the Court finds that the Southern District of New York's "same class" or "same family of products" standard advocated by Coca-Cola pays insufficient attention to an alleged infringer's right to have some clear understanding of which of its products are purported

Slip Copy                                                                                                 Page 25
Slip Copy, 2004 WL 4910334 (N.D.Ga.)
**(Cite as: Slip Copy)**

to infringe the accuser's patent, and the Court declines to adopt a reading of the "specific accused product or device" that would extend the impact of a particular notice to all devices falling within the same amorphous "class" of products.

The Court finds that some intermediate standard would best serve the competing policy considerations underlying § 287(a). Specifically, the Court concludes that the requirement of notice of infringement directed towards a "specific accused product or device" is satisfied where the accused device is merely a modification or evolution of that referenced in the notice of infringement and fails to exhibit a substantial functional change from the device so referenced. Such a standard, in the view of the Court, pays due regard to the rights of accused infringers to have a sufficiently clear understanding of what "specific product" (as opposed to a "family" or "class" of products) is alleged to be infringing, while at the same time avoiding the imposition upon patentees of the burden of constantly evaluating each embodiment of a competitor's product to determine whether a minute "tweak" in design mandates a supplemental notice of infringement. The Court concludes that this intermediate standard adequately reflects the potential variations of "actual notice" acknowledged by the Federal Circuit, see, e.g., SRI Int'l, Inc., 127 F.3d at 1470, as well as the flexibility in the concept of what iterations of a product may fairly be said to constitute the same "specific accused product or device[.]" See Amsted Indus. Inc., 24 F.3d at 186-87; cf. Japan Gas Lighter Ass'n, 257 F.Supp. at 240 ("it seems obvious that two versions of a product may be both the same and different depending on the level of generality at which they are compared").

**\*31** Applying that standard to the record before it, the Court determines that a genuine issue of material fact exists as to the whether the communications cited by Coca-Cola constitute "actual notice" of infringement under § 287(a). Coca-Cola adduced evidence from one Joseph Fuchs to the effect that Rapak merely "redesigned" the prior version of their offset dip strip bag to include a tube, and that such tube was the same size and placed in the same orientation as the previous dip strip. (See Coca-Cola Ex. 30 at 36-37.) The Court concludes that a reasonable jury might find the resultant product, the Tube Bag, to be merely a modification of the bag cited in Coca-Cola's earlier communications of infringement, and that the subject alteration did not constitute a substantial functional change from the offset dip strip device. Accordingly, to the extent that Defendants seek summary judgment

on the issue of pre-filing damages with respect to Rapak and the '493 Patent, their motion cannot be sustained.

### 2. Pepsi

Coca-Cola does not contend that the subject communications of infringement were made directly to Pepsi. Rather, the undisputed facts show that Coca-Cola's allegations of infringement were directed to Mr. Schwan at Rapak. (See Coca-Cola Co.'s Resp. to Defs.' Statement of Material Facts at 47-48.) Defendants argue that this characteristic of Coca-Cola's communications precludes Coca-Cola from establishing the requisite pre-filing "actual notice" because accusations of infringement under § 287(a) must be made to the *infringer* by the *patentee* itself. See Lans, 252 F.3d at 1327 ("In other cases, this court addressed situations where notification came from someone associated with the alleged infringer and concluded that notice of infringement must come from the patentee, not the infringer.") (internal punctuation omitted); Amsted Indus. Inc., 24 F.3d at 187 ("It is irrelevant ... whether the defendant knew of the patent or knew of his own infringement. The correct approach to determining notice under section 287 must focus on the action of the patentee, not the knowledge or understanding of the infringer."); American Med. Sys., Inc. v. Medical Eng'g Corp., 6 F.3d 1523, 1537, n. 18 (Fed.Cir.1993) ("The notice of infringement must therefore come from the patentee, not the infringer."); see also AT & T Corp. v. Microsoft Corp., 290 F.Supp.2d 409, 412 (S.D.N.Y.2003).

Coca-Cola does not take issue with the settled rule relied upon by Defendants, but rather makes the assertion in its papers that Rapak was acting as Pepsi's agent in its receipt of the communications. (See Coca-Cola Resp. No. 4 at 11, n.2; Coca-Cola Co.'s Resp. to Defs.' Statement of Material Facts at 47-48.)

At least some courts have stated that agency principles may permit a patentee to establish "imputed notice" *vis-a-vis* the infringer by communicating accusations of infringement to that party's "agent." See Maxwell v. J. Baker, Inc., 805 F.Supp. 728, 734-35 (D.Minn.1992); see also In re Elonex Phase II Power Mgmt. Litig., Case No. C.A. 01-082, 2002 WL 433614, at \*3 (D.Del.2002).[FN8] Where such a view has been adopted, the courts have clarified that the "agency" at issue must encompass the authority to receive notices of infringement, and

Slip Copy                                                                                                Page 26
Slip Copy, 2004 WL 4910334 (N.D.Ga.)
(Cite as: Slip Copy)

that the patentee bears the burden of establishing such authority. *See Maxwell,* 805 F.Supp. at 734-35; *see also In re Elonex Phase II Power Mgmt. Litig.,* 2002 WL 433614, at *3.

> FN18. The Court notes that the Federal Circuit, since the *Maxwell* decision, has foreclosed a patentee's reliance on "agency" principles in the determination of whether notice *from* the patentee's "agent" constitutes notice within the meaning of § 287(a). *See Lans,* 252 F.3d at 1327-28 (rejecting application of agency principles in context of party relating notice of infringement on grounds that, *inter alia,* such a rule would create "troublesome determinations about the sufficiency of relationships between the notifier and the patentee"). Many of the same problems associated with the application of agency principles in that context, at least with respect to affiliated but legally distinct business entities or persons, appear equally as troublesome in the context of recipient-agents. Nevertheless, because the Court finds that Coca-Cola has failed to proffer evidence necessary to create a genuine issue of material fact regarding Rapak's agency in this case, it need not resolve the issue.

*32 In the instant case, the Court finds evidence of Rapak's authority to accept charges of infringement on behalf of Defendant Pepsi lacking. The only evidence that Coca-Cola appears to rely upon in support of such agency is that showing its accusations of infringement were indeed related by Rapak to Pepsi. (*See* Coca-Cola Resp. No. 4 at 11, n.2; Coca-Cola Co.'s Resp. to Defs.' Statement of Material Facts at 47-48.) Were such evidence deemed sufficient to create a genuine issue of material fact regarding Rapak's "agency," the well-settled rule that the patentee must *itself* relate "actual notice" to the infringer would cease to have any practical meaning. *See Lans,* 252 F.3d at 1327; *Amsted Indus. Inc.,* 24 F.3d at 187; *American Med. Sys., Inc.,* 6 F.3d at 1537, n. 18. Accordingly, to the extent that Defendants seek summary judgment as to the unavailability of pre-filing damages related to the '493 Patent with respect to Defendant Pepsi, their motion will be granted.

B. The '421 Patent

As it relates to the '421 Patent, the parties do not seem to dispute the fact that no § 287(a) notice was provided to Defendants regarding the Tube Bag's alleged infringement thereof. Rather, they disagree as to whether such notice was required as a precondition of collecting pre-filing damages. Specifically, Coca-Cola claims that because the only claim alleged to be infringed by the Tube Bag is a "method" claim, no such notice is required.

In support of its position, Coca-Cola cites two 1983 decisions by the Federal Circuit holding that where a party asserts only "method" claims within a patent containing both method and apparatus claims, no § 287(a) notice is necessary to collect pre-filing damages. *See Hanson v. Alpine Valley Ski Area, Inc.,* 718 F.2d 1075, 1082-83 (Fed.Cir.1983); *see also Bandag, Inc. v. Gerrard Tire Co., Inc.,* 704 F.2d 1578 (Fed.Cir.1983). Defendants counter by stating that the Federal Circuit's more recent decision in *American Medical Systems, Inc,* supercedes the rule announced in the cited opinions. *See American Med. Sys., Inc.,* 6 F.3d at 1538-39.

After a careful examination of the relevant decisions, the Court cannot accept Defendants' reading of *American Medical Systems, Inc.* The language of the opinion Defendants rely on in support of their argument is:

Where the patent contains both notice apparatus and method claims, however, to the extent that there is a tangible item to mark by which notice of the asserted method claims can be given, a party is obligated to do so if it intends to avail itself of the constructive notice provisions of section 287(a).

*American Med. Sys., Inc.,* 6 F.3d at 1538-39. Read out of context, that statement could well be understood to overrule the holding of *Hanson* relied upon by Coca-Cola. A close reading of the opinion, however, illustrates that the *American Medical Systems, Inc* Court left *Hanson* undisturbed.

*33 First, the Federal Circuit began its discussion of § 287 in *American Medical Systems, Inc.* by emphasizing that its prior decisions had recognized that "in ... *Hanson,* a distinction was made between cases in which only method claims are asserted to have been infringed and in cases where a patentee alleges infringement of both the apparatus and method claims of the same patent." *See* 6 F.3d at 1538. Moreover, in applying the above-quoted "rule" to the case before it, the Federal Circuit again emphasized that "[i]n this case, both the apparatus and method claims of the ... patent were asserted...."

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Id.* at 1539. Nowhere in *American Medical Systems, Inc* did the Federal Circuit expressly overrule *Hanson*, and indeed, cited *Hanson* both there and in a subsequent decision with approval for the proposition now relied upon by Coca-Cola. *See id.* at 1538; *see also State Contracting and Eng'g Corp. v. Condotte Am., Inc.,* 346 F.3d 1057, 1074 (Fed.Cir.2003) (citing *Hanson* for proposition that "section 287 did not apply when only process claims were found infringed and the patent contained apparatus claims"). [FN19]

> FN19. The Court recognizes that the District Court for the District of Delaware has reached a contrary conclusion regarding the meaning of the *American Medical Systems, Inc.,SeePhilips Elecs. N. America Corp. v. Contec Corp.,* 312 F.Supp.2d 649, 651-52 (D.Del.2004); *see also Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.,* No. 99-309, 2001 WL 66345, at *3-*4 (D.Del. Jan.4, 2001). For the reasons stated above, however, the Court does read *American Medical Systems, Inc* as undermining the holding of *Hanson.*

Accordingly, the Court concludes that because only the method claims of the '421 Patent are asserted against the Tube Bag, § 287(a) is inapplicable *vis-a-vis* that patent and accused device. *See Hanson,* 718 F.2d at 1082-83. Defendants' motion, insofar as it seeks a contrary holding, must be denied.

In sum, Defendants' Motion for Summary Judgment (No. 4) that Coca-Cola Cannot, as a Matter of Law, Recover Pre-Filing Damages [85-1] is GRANTED in part and DENIED in part. Coca-Cola is not entitled to recover pre-filing damages (i) with respect to the alleged infringement by Evacufilm Bag, (ii) in connection with the alleged infringement of the '252 Patent, and (iii) from Pepsi, insofar as Pepsi is sought to be held liable for prefiling damages related to the '493 Patent. Coca-Cola may, however, be entitled to recover pre-filing damages (i) from Rapak, as such damages relate to the alleged infringement of the '493 Patent, as well as (ii) from both Defendants in connection with the alleged infringement of the '421 Patent, with infringement in both instances referring to the alleged infringement by the Tube Bag.

IV. Willful Infringement.

The Court turns next to resolve Defendants' final motion for summary judgment, Defendants' Motion

for Summary Judgment (No. 5) that Coca-Cola Cannot Establish Willful Infringement [86-1].

Section 284 of the Patent Act permits a court to "increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284. In application, this increased award has been held appropriate in circumstances where the defendant's infringing conduct was "willful." *SRI Int'l, Inc.,* 127 F.3d at 1464. "A finding of willfulness requires the fact-finder to find that clear and convincing evidence shows that the infringer acted in disregard of the patent and had no reasonable basis for believing it had a right to do the acts." *American Med. Svs., Inc.,* 6 F.3d at 1530. "When an infringer has actual notice of a patentee's rights, the infringer has an affirmative duty of due care to avoid infringement." *LNP Eng'g Plastics, Inc. v. Miller Waste Mills, Inc.,* 275 F.3d 1347, 1357 (Fed.Cir.2001)

**\*34** Whether an infringer's unlawful conduct is "willful" is "quintessentially a question of fact, for it depends on findings of culpable intent and deliberate or negligent wrongdoing." *Biotec Biologische Naturverpackungen GmbH & Co. v. Biocorp, Inc.,* 249 F.3d 1341, 1356 (Fed.Cir.2001). The determination must be made through evaluation of "the totality of the surrounding circumstances." *Ortho Pharm. Corp. v. Smith,* 959 F.2d 936, 944 (Fed.Cir.1992). "The totality of the circumstances may include not only such aspects as the closeness or complexity of the legal and factual questions presented, but also commercial factors that may have affected the infringer's actions." *SRI Int'l, Inc.,* 127 F.3d at 1465. Evidence of the infringer's good faith must also be considered. *Id*

One consistently important factor in the inquiry of whether an infringer's conduct was "willful" is the opinion of counsel. *See Comark Communications, Inc. v. Harris Corp.,* 156 F.3d 1182, 1191 (Fed.Cir.1998). Nevertheless, just as the absence of counsel's opinion regarding invalidity or lack of infringement does not require a finding of willfulness, *see Norian Corp. v. Stryker Corp.,* 363 F.3d 1321, 1332 (Fed.Cir.2004), the presence of counsel's opinion does not preclude such a finding. *Johns Hopkins Univ. v. CellPro, Inc.,* 152 F.3d 1342, 1364 (Fed.Cir.1998). Rather, the question becomes whether such opinion was "competent." *See id* Competence, while plainly not requiring that the opinion actually be "correct," looks to whether the opinion "is thorough enough, as combined with other factors, to instill a belief in the infringer that a court might reasonably hold the patent is invalid, not

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

infringed, or unenforceable." *Id.* (internal quotation omitted).

Here, Defendants point to several factors that they contend demonstrate the absence of willful infringement. First, they rely on several opinions of counsel directed at either the invalidity of the Coca-Cola Patents, or the lack of infringement of the accused devices. (Defs.Exs.40-49.) Second, they emphasize Rapak's initial presentation of a predecessor of the Tube Bag to Coca-Cola for the latter's evaluation, and its alteration of the product following Coca-Cola's assertion that the bag might infringe its Patents. (*See* Defs. Exs. 25, 28, 29.) Additionally, Defendants point out that Coca-Cola, after its June 21, 1999 correspondence directed at the Tube Bag's predecessor, made no further allegations of infringement until it initiated the instant lawsuit. (*See* Defs. Ex. 30.) [FN20]

> FN20. Coca-Cola urges that its silence following the June 21, 1999 letter is "completely irrelevant" to the willfulness inquiry. (*See* Coca-Cola Co.'s Opp'n to Defs.' Mot. for Summ. J. (No. 5) [97-1] [hereinafter, "Coca-Cola Resp. No. 5"] at 6-8.) The Court finds this contention lacks merit. The absence of any communication from Coca-Cola directed at the Tube Bag, as modified, and the Evacufilm Bag could have led Defendants to believe that Coca-Cola did not find the products to be infringing. Coca-Cola's actions and any inferences drawn by Defendants therefrom cannot be said to fall outside the "the totality of the surrounding circumstances" germane to the willfulness evaluation.

Coca-Cola responds to Defendants' arguments by pointing to evidence of what it contends to be Defendant Pepsi's commercial desperation to have a device comparable to its patented invention on the market,[FN21] and by attacking the cited opinions of counsel. (*See* Coca-Cola Exs. 33-39.) It states that the commercial need of Defendant Pepsi to introduce a bag containing an evacuation mechanism led Defendants to commit to their course of action prior to receiving feedback from counsel, and that Defendants intended to use the opinions, despite their alleged deficiencies, as mere shields to a finding of willful infringement. *See Arlington Indus., Inc. v. Bridgeport Fittings, Inc.,* 290 F.Supp.2d 508, 530 (M.D.Pa.2003) ("a favorable legal opinion will not insulate an infringer from a finding of willfulness if it

was obtained after the course of action was already decided or only as protection from an infringement lawsuit.")

> FN21. Like Coca-Cola's argument asserting the "irrelevancy" of its silence following the issuance of the June 21, 1999, Defendants' assertion that this evidence of commercial need is not germane to the willfulness inquiry cannot be accepted by the Court. *SRI Int'l, Inc.,* 127 F.3d at 1465 ("The totality of the circumstances may include commercial factors that may have affected the infringer's actions.").

*35 As Coca-Cola emphasizes, most of the cited opinions were issued well after the allegedly infringing activity began and Defendants had knowledge of the subject patents. Such belated evaluation of the implications of potential infringing activity are of little weight in the willfulness analysis. *See SRI Int'l, Inc.,* 127 F.3d at 1468 ("Prudent behavior generally requires that competent legal advice was obtained before the commencement of the infringing activity."); *American Med. Sys., Inc.,* 6 F.3d at 1531.

Coca-Cola goes on to identify deficiencies in the four remaining opinions of counsel. Coca-Cola first focuses on a June 2, 1999 opinion evaluating the Tube Bag in light of the '493 Patent, in which counsel determined that the "offset" placement of the tube in the Tube Bag precluded a determination of infringement. Coca-Cola points to virtually concurrent statements of Rapak's President that "what we were currently doing and had arranged violated this patent." (Coca-Cola Ex. 41.) It also emphasizes that a further "design around" recommended in a later opinion (the September 20, 1999 letter, discussed *infra*) implies counsel and the parties' lack of confidence in the relied upon "offset" orientation of the tube to avoid infringement.

Next, Coca-Cola takes issue with the September 20, 1999 opinion by the same attorney, which evaluates the Tube Bag in view of the '421 Patent and determines that the "non-flat" tube in the relevant device would undermine a claim of infringement. First, Coca-Cola points out that the "flat" limitation relied upon by counsel does not appear in independent claim 1 of the '421 Patent. It goes on to emphasize that the opinion confuses the evacuation form with the relevant liquid channels in determining that the Tube Bag does not meet certain limitations of

Slip Copy                                                                                                    Page 29
Slip Copy, 2004 WL 4910334 (N.D.Ga.)
(Cite as: Slip Copy)

the '421 Patent, and notes that the opinion fails to acknowledge the liquid channels flowing alongside the peripheries of the tube despite the statement in the '421 Patent that "a single rib or protrusion 30 of sufficient height would be sufficient to achieve the objectives of the invention." (*See* '421 Patent.)

Turning to opinions rendered by Pepsi's counsel, Coca-Cola first criticizes an opinion finding a lack of infringement of the '421 Patent by the Tube Bag, issued October 7, 1999. It states that Defendants could not have reasonably relied on that opinion because it fails to actively consider the impact of prosecution history on the infringement analysis,[FN22] and further fails to engage in a claim-by-claim evaluation of the patent. *See* Coca-Cola Resp. No. 5 at 20-21; *see also Underwater Devices Inc. v. Morrison-Knudsen Co., 717 F.2d 1380, (Fed.Cir.1983)* (failure to, *inter alia,* consider prosecution history found to render opinion incompetent); *cf Westvaco Corp. v. Int'l Paper Co., 991 F.2d 735, 744 (Fed.Cir.1993)* (concluding that opinion was competent because "the claims are not discussed as a group, but are separately analyzed")[FN23]

> FN22. In reply, Defendants point out that the relevant opinion begins by stating "we have reviewed Patent No. 5,941,421 and its prosecution file history...." (*See* Defs.' Ex. 26.) That bald assertion, however, does not entirely eclipse the opinion's alleged failure to actually analyze the impact of the prosecution history on the infringement analysis. Moreover, while Defendants cite *Graco, Inc. v. Binks Manufacturing Co., 60 F.3d 785, 793 (Fed.Cir.1995),* for the proposition that "the failure to discuss the prosecution history in detail does not render an opinion incompetent [,]" that case involved an opinion that did indeed consider the impact of the prosecution history on the infringement analysis, albeit implicitly. Defendants have not directed the Court to any portion of the October 7, 1999 opinion that evinces similar consideration.

> FN23. Coca-Cola also argues that the "correction" of the opinion in separate correspondence renders the opinion incompetent. The cited "correction," however, only states that "we learned recently that apparently the free end of the dip tube used in the Rapac [*sic* ] Bag in Box

product will move into communication with the spout opening in the side of the bag when the bag is full." (*See* Defs. Ex. 49.) Coca-Cola does not assert, nor does it point the Court to any evidence that such a statement is indicative of a withholding of information from counsel by Defendants, and thus that characteristic of the October 7, 1999 letter is not considered by the Court in its evaluation of Defendants' motion for summary judgment. *Compare Comark Communications, Inc., 156 F.3d at 1191.*

*\*36* Finally, Coca-Cola attacks the October 18, 1999 opinion from Pepsi's counsel concluding that the '421 Patent is invalid for obviousness in view of references not considered by the Patent Office. Coca-Cola criticizes this opinion for, *inter alia,* failing to take into account the "clear and convincing" burden Defendants would have to overcome to establish patent invalidity, as well as the objective factors of non-obviousness applied by the courts. (*See* Defs. Ex. 48.)

Defendants respond to Coca-Cola's criticisms, and urge that the "deficiencies" identified by Coca-Cola are insufficient to create a serious question regarding the competency of counsel's evaluations. Among other things, Defendants emphasize that the opinions' reliance on the liquid channel flowing through the "offset" tube was not inconsistent with the language of the Coca-Cola Patents, which never *expressly* reference the existence of liquid channels flowing alongside the liquid passage means. Defendants insist that the failure to take these peripheral channels into account, while perhaps incorrect, does not establish the "incompetency" of the opinions.

The Court, after reviewing the relevant opinions of counsel, agrees with Defendants that the cited opinions do not reflect glaring examples of incompetency. Indeed, many of the purported errors within the opinions appear more superficial than material, and a reasonable jury could certainly conclude that the opinions undermine the existence of willful culpability on the part of Defendants. Nevertheless, viewing the evidence of record as a whole, and taking into account the "totality of the circumstances" standard established by the Federal Circuit, the Court concludes that a reasonable jury *could* find by clear and convincing evidence that Defendants did not discharge their affirmative duty of due care to avoid infringement. *See Ortho Pharm. Corp., 959 F.2d at 944.* The record contains evidence, such as Pepsi's commercial desperation to bring an

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 30
Slip Copy, 2004 WL 4910334 (N.D.Ga.)
**(Cite as: Slip Copy)**

evacuation assisted bag to market, and a Rapak representative's apparent acknowledgement of the infringement of the Tube Bag, that must be considered by the Court in assessing whether the "totality" of the circumstances supports a finding of willfulness, and which create genuine questions of material fact as to that issue. *See id., Arlington Indus., Inc.,* 290 F.Supp.2d at 530 ("a favorable legal opinion will not insulate an infringer from a finding of willfulness if it was obtained after the course of action was already decided or only as protection from an infringement lawsuit"). Accordingly, Defendants' Motion for Summary Judgment (No. 5) that Coca-Cola Cannot Establish Willful Infringement [86-1] is DENIED.

### Plaintiff's Motion for Partial Summary Judgment

Coca-Cola moves for summary judgment requesting that the Court dismiss certain counterclaims and defenses asserted by Defendants in reliance on the actions of one Christopher Rutter ("Mr.Rutter"). Specifically, Coca-Cola asks that the Court (i) dismiss Defendants' counterclaims and defenses alleging that Mr. Rutter is a joint inventor of the subject matter claimed in the patents-in-suit; (ii) dismiss Defendants' counterclaims and defenses alleging that Mr. Rutter invented subject mater claimed in the patents-in-suit before the inventors enumerated therein; and (iii) dismiss Defendants' counterclaims and defenses alleging that Coca-Cola engaged in inequitable conduct during prosecution of the patents-in-suit to the extent such counterclaims and defenses are based upon activities of Mr. Rutter that predated the patents-in-suit. (*See* The Coca-Cola Company's Mot. for Partial Summ. J. [89-1].)

*37 Although the parties' vehemently disagree as to the legal implications of Mr. Rutter's conduct, the facts as they relate to Mr. Rutter's actions are largely undisputed. Mr. Rutter, a consultant in the packaging industry, [FN24] attended a meeting with certain Coca-Cola representatives in April of 1982. (*See* Rutter Declaration, Def. Ex. 6, ¶ 8.) At the time of that meeting, Coca-Cola had developed a "general understanding" of the desirability of avoiding manual insertion of dip tubes in their syrup dispensation bags, and was interested in automating that process during bag manufacture. (*See* Def. Ex. 9 at 19; *see also* Def. Ex. 6, ¶ 7.) Mr. Rutter informed Coca-Cola representatives that he was aware of a bag making machine employed by a company known as Champion Packaging that could be adapted to insert a dip tube to a bag at manufacture. (*See* Def. Ex. 6, ¶

8.) In particular, he stated that he was aware of a "gap" station in the relevant bag making machine between the spout welding station and the station at which the bag walls were to be welded together. (*See* Def. Ex. 6, ¶ 8.) He invited Coca-Cola representatives to the Champion Packaging facility to view the machine "and discuss the possibility of having a special unit designed that could" perform the automated insertion of the dip tube at the intermediate station. (Def.Ex. 6, ¶ 8.)

> FN24. Mr. Rutter is currently employed by Defendant Rapak, but at the time of the relevant meeting, was not so employed.

Mr. Rutter did not suggest the creation of an entirely new syrup dispensation bag, but rather advanced his proposal of automated insertion with respect to a bag previously conceived by Coca-Cola that was contemporaneously being field tested by Coca-Cola. (*See* Def. Ex. 6, ¶ 7.) The bag, which is portrayed in a photograph of which Defendants appear to concede the authenticity, is similar to that described in U.S. Patent No. 4,286,636 (hereinafter, "Credle'636"). (*See* Def. Ex. 6, ¶ 8.) In addition, Coca-Cola informed Mr. Rutter that they were also considering a "redesign" of that bag that would have added an "elbow" pivot in the dip tube used in that device near the device's shutoff valve (a design feature that would have allowed the bag to collapse into a relatively flat shape). (*See* Def. Ex. 6, ¶ 8.) In either iteration of the bag, however, the dip tube was to terminate coaxially into the spout opening. (The Coca-Cola Co.'s Statement of Undisputed Material Facts [89-1], ¶ 10; Defs.' Resp. to the Coca-Cola Co.'s Statement of Undisputed Material Facts [98-1], ¶ 10.) [FN25]

> FN25. Although Defendants assert that the dip tube in the relevant device does at some points exist transverse to the spout opening, they do not seem to dispute Coca-Cola's statement that the tube coaxially terminates at one end inside or at the spout.

Ms. Boone, the named inventor of the Coca-Cola Patents, [FN26] was not present at the April 1982 meeting between Mr. Rutter and Coca-Cola representatives. She did, however, receive a memorandum prepared by Veronica Gliniak ("Ms.Gliniak"), a Coca-Cola Vice President, who was present at the meeting. (*See* Defs. Ex. 61, 65, 75 & 76.) That memorandum, as it relates to the proposal of Mr. Rutter, states that:

Page 31

FN26. Mladomir Tomic is also enumerated as an inventor of the Coca-Cola Patents. Beyond pointing out his designation as a co-inventor on the patents, Defendants do not direct any of their arguments regarding the defenses now before the Court on communications between Mladomir Tomic and Mr. Rutter. Consequently, for ease of reference, the discussion above refers to Ms. Boone as the "named inventor" of the patented invention.

For our [Coca-Cola's] use, it is proposed that dip-tube be preassembled by the bag supplier but syrup be filled through an unsealed portion of the bag. *38 (Def. Ex. 75 at CO39455.)

Apart from receipt of that memorandum, Ms. Boone testified that she does not recall having any contact with Mr. Rutter, or learning of his meeting with Coca-Cola until long after she allegedly conceived of the patented invention. (Coca-Cola Summ. J. Ex. 9 at 50-52.) Mr. Rutter testified that he had "various discussions" with Ms. Boone, but stated that he could not recall precisely when those conversations took place, nor could he recollect ever disclosing his conception of the bag to Ms. Boone. (Def. Ex. 60 at 34.)

Approximately five years after the 1982 meeting, Coca-Cola became involved in a patent interference proceeding between various inventors (including one its own engineers, Mr. Credle) who were attempting to patent a bag that contained an evacuation form unit that laid flat inside the bag, extending transversely from the spout, and which was inserted during bag manufacture. (See Def. Ex. 63.) According to Defendants, Coca-Cola learned that its inventor would likely not prevail in a contest of priority, and consequently turned its efforts to having the patent declared invalid as either anticipated by or obvious in light of the prior art.

Coca-Cola enlisted the assistance of Mr. Rutter as a witness in the proceedings before the Patent Office, preparing an affidavit for his signature to establish these unpatentable attributes of the sought-to-be-patented inventions. (See Def. Ex. 65.) This affidavit stated that Mr. Rutter had "discuss[ed] the possibility of having a special unit designed that could insert the dip tube between the walls of the bag at the station located between the spout welding station, and a subsequent station at which the edges of the bag

walls were welded together to form a bag." (Def. Ex. 61.) Mr. Rutter testified moreover that it was "obvious" and "immediately apparent" to him to insert the dip tube contained in Coca-Cola's bag while the bag was being manufactured. (Def Ex. 61.)

Coca-Cola, relying in part on the affidavit, argued before the Patent Office that Mr. Rutter had "conceived of the invention" at issue in the interference proceeding in April of 1982, and had "reduced the invention to practice in late 1982 or the early part of 1983[,]" therefore rendering his concept "prior art" within the meaning of 35 U.S.C. § 102(g). (Defs.Exs.62.)

According to Defendants, at the conclusion of the interference proceedings, the Board of Patent Appeals and Interferences determined that an inventor employed by a company known as Liqui-Box had priority over the relevant invention. After the Liquid-Box inventor's patent application was returned to the Patent Examiner to determine the patentability of the described invention, Coca-Cola wrote the inventor's counsel and demanded that it make the Patent Office aware of, inter alia, Mr. Rutter's conception (referred to therein as "the Pongrass et al. prior art"). (Defs.Ex. 101.) It stated that such disclosure was mandated by the "dut[y] of candor" owed to Patent Office by all applicants. (Defs.Ex. 101.) Coca-Cola did not, however, direct the Patent Office to Mr. Rutter's conception during its own prosecution of the patents-in-suit.

### 1. Joint Inventorship

*39 Coca-Cola argues that Mr. Rutter cannot be considered the joint inventor of the device recited in its Patents as a matter of law. Defendants disagree, contending that there exists at least a genuine issue of material fact as to this issue.

"Patent issuance creates a presumption that the named inventors are the true and only inventors." Ethicon, Inc. v. United States Surgical Corp., 135 F.3d 1456, 1460 (Fed.Cir.1998). Accordingly, a person claiming to be an unnamed joint inventor of a device bears the burden of establishing his or her status as such by clear and convincing evidence. Id. at 1461. "Inventorship is a question of law, applied to relevant facts." C.R. Bard, Inc. v. M3 Sys., Inc., 157 F.3d 1340, 1352 (Fed.Cir.1998).

According to the Federal Circuit, a party claiming to be a joint-inventor must establish:

Slip Copy
Slip Copy, 2004 WL 4910334 (N.D.Ga.)
(Cite as: Slip Copy)

Page 32

that he or she (1) contribute[d] in some significant manner to the conception or reduction to practice of the invention, (2) ma[d]e a contribution to the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention, and (3) d[id] more than merely explain to the real inventors well-known concepts and/or the current state of the art.

*Pannu v. Iolab Corp.*, 155 F.3d 1344, 1351 (Fed.Cir.1998). As a consequence, "[t]o constitute joint inventorship, both individuals' work must rise to the level of inventorship and each inventor's contribution must contain the necessary element of conception." See *Murdock Webbing Co. v. Dalloz Safety, Inc.*, 213 F.Supp.2d 95, 99 (D.R.I.2002) (*citing Ethicon, Inc.*, 135 F.3d at 1460).

Joint inventors need not physically work together or at the same time, need not each make the same type or amount of contribution, nor must they make a contribution to the subject matter of every claim of the patent. See *35 U.S.C. § 116*. Some level of dependency on the part of the alleged joint-inventors is required, however; "joint inventorship under *Section 116* requires at least some quantum of collaboration or connection." *Kimberly-Clark Corp. v. Proctor & Gamble Distrib., Co.*, 973 F.2d 911, 917 (Fed.Cir.1992).

Coca-Cola contends that Mr. Rutter's alleged contribution to the development of the patented device does not suffice to qualify him as a joint inventor under the foregoing standard for two reasons. First, it asserts that Mr. Rutter's proposal was insufficiently "inventive," citing Mr. Rutter's own testimony that Coca-Cola had previously recognized the desirability of automated insertion of a dip tube in a syrup dispensation device during manufacture, and emphasizing that the precise details of a methodology for accomplishing this result were not disclosed by Mr. Rutter at the April 1982 meeting. Second, it contends that there was insufficient communication between Mr. Rutter and Ms. Boone to meet even the low threshold of collaboration or connection required to qualify Mr. Rutter as a co-inventor of the patented invention.

*40 Defendants respond principally by pointing to the affidavit Coca-Cola prepared for Mr. Rutter's signature in the late-1980's interference proceeding, as well as Coca-Cola's arguments before the Patent Office in that proceeding. While not disputing that Coca-Cola had previously recognized the desirability of inserting a dip tube in a syrup dispensation device

during manufacture, Defendants argue that Coca-Cola was unaware of how to accomplish such insertion, and that the papers before the Patent Office show that Coca-Cola credited Mr. Rutter with conceiving of such an "invention." Moreover, Defendants point out that there was not an entire absence of "connection" between Mr. Rutter and Ms. Boone during the relevant time period, directing the Court's attention to Ms. Boone's receipt of the so-called "Gliniak Report" referencing Coca-Cola's April 1982 meeting with Mr. Rutter, as well as Ms. Boone's testimony that she became aware during 1982 of Coca-Cola's interest in inserting a dip tube into the syrup dispensation bag during manufacture.

After reviewing the record and the arguments of the parties, the Court concludes that Defendants have failed to come forward with any evidence that would amount to clear and convincing evidence supporting Mr. Rutter's co-inventorship of the patented device. The affidavit and argument proffered by Coca-Cola in the interference proceeding, and cited by Defendants, does indeed create a close question as to whether Mr. Rutter's conception was "inventive" in the abstract. A careful review of applicable precedent, however, illustrates that such abstract "inventiveness" is not the focus of the joint inventorship inquiry. Rather, the cases make clear that for an individual to have "contribute[d] in some significant manner to the conception or reduction to practice of the invention," *Pannu*, 155 F.3d at 1351, there must be some nexus between the "inventiveness" of that parties' conception and the communication and/or connection with the alleged co-inventor. See, e.g., *Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1473 (Fed.Cir.1997); *Murdock Webbing Co.*, 213 F.Supp.2d at 99 ("To constitute joint inventorship, both individuals' work must rise to the level of inventorship and each inventor's contribution must contain the necessary element of conception."). Were the rule to be otherwise, virtually any contact between two inventors at all related to the field of the relevant invention could qualify those persons as joint inventors, notwithstanding that the communication related nothing more than the current state of the art. Cf. *Fina Oil & Chem., Co.*, 123 F.3d at 1473 ("a person will not be a co-inventor if he or she does no more than explain to the real inventors concepts that are well known and the current state of the art").

In the instant case, the only evidence cited by Defendants that could be said to demonstrate the relation of Mr. Rutter's concept to the named inventor of the patents-in-suit is the Gliniak Report.[FN27] As

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

related previously, however, that Report, as it relates to Mr. Rutter's alleged invention, states only that:

> FN27. Defendants point to Ms. Boone's statement that she became aware in 1982 of Coca-Cola's desire to automate the process of dip tube insertion during bag manufacture. As Defendants concede, however, that desire pre-existed Coca-Cola's meeting with Mr. Rutter in April 1982, and there is no evidence that the information related to Ms. Boone had any connection to Mr. Rutter's proposal. Moreover, while Defendants state that Mr. Rutter claimed to have "various conversations" with Ms. Boone during the relevant time period, a review of the cited testimony shows that Mr. Rutter did not recall ever relating his concept to Ms. Boone during those alleged conversations. (Def. Ex. 60 at 34.) Such amorphous contact between two alleged co-inventors does not suffice to create a genuine issue of material fact on the issue of joint inventorship.

*41 For our [Coca-Cola's] use, it is proposed that dip-tube be preassembled by the bag supplier but syrup be filled through an unsealed portion of the bag. (Def. Ex. 75 at CO39455.) That statement does little, if anything, more than relate that someone at the April 1982 meeting proposed a device that would purportedly satisfy Coca-Cola's pre-existing desire to achieve an automated process by which a dip tube would be inserted into the syrup dispensation bag during manufacture. It provides absolutely no "inventive" details about how that result would be achieved. The Court concludes that the communication of such a bare proposal, as a matter of law, cannot satisfy the requirement that an alleged co-inventor "contribute[d] in some significant manner to the conception or reduction to practice of the invention[.]" *Pannu, 155 F.3d at 1351.*

Further underscoring the propriety of this determination is that the very feature Defendants contend rendered Mr. Rutter's idea "inventive"-*i.e.*, a method for inserting an evacuation structure during bag assembly-was held by the Patent Office in the prosecution of the Coca-Cola Patents to be an unpatentable concept in light of, *inter alia,* the prior art recited in the Maynard Patent. (*See* Coca-Cola Summ. J. Ex. 17 at 3 (rejecting claims in part because the Maynard Patent disclosed an evacuation structure "which is placed in a thermoplastic container *before*

*the complete sealing thereof*" ) (emphasis supplied.) ) As the Fourth Circuit held in *Levin v. Septodont Inc., 63 U.S.P.Q.2d 1395, 1400 (4th Cir.2002),* "the significance of an alleged joint inventor's contribution [under *Pannu* ] should be assessed by asking whether the contribution helped to make the invention patentable." Here, the prosecution history before the Court reveals that the limitation recited in the Coca-Cola Patents of an evacuation structure secured to the bag walls during manufacture did not assist in the obtainment of the relevant patents, and for this additional reason, the Court concludes that Mr. Rutter cannot be said to be the joint inventor of the patented invention under the Federal Circuit's *Pannu* standard.

In sum, the record before the Court engenders no genuine issues of material fact as to whether Mr. Rutter is the joint inventor of the patents-in-suit. Accordingly, insofar as Coca-Cola seeks summary judgment with respect to this defense, its motion will be granted.

## II. Anticipating Prior Art

Coca-Cola has additionally moved for summary judgment on the issue of whether its Patents are invalid as "anticipated" by Mr. Rutter's conception. As discussed previously, for prior art to anticipate a patented invention, it must contain each and every limitation contained within the relevant patent. *Schering Corp., 339 F.3d at 1377.* In the instant case, Coca-Cola argues that Mr. Rutter's proposal was made only with reference to a bag or bags that would contain a dip tube terminating coaxially in the bag spout, and thus that the proposed device fails to meet the requirement that the liquid channels formed by the liquid passage means be "transversely disposed" to the spout opening and "substantially perpendicular" to the longitudinal axis of the spout.

*42 Defendants do not appear to dispute Coca-Cola's assertion that the alleged conceived device contains a tube that terminates coaxially in the spout, but rather counter by again pointing to Coca-Cola's arguments before the Patent Office in the late-1980's interference proceeding. Specifically, Defendants point out that Coca-Cola argued that the dip tube in the relevant bag would be "flexibly secured to extend transverse to the spout" and "would ... lie flat in the collapsed bag...." (Defs. Ex. 70 at 3.) Defendants argue that these statements preclude Coca-Cola from now arguing that the bag at issue fails to satisfy the cited limitations. The Court does not agree.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                       Page 34
Slip Copy, 2004 WL 4910334 (N.D.Ga.)
**(Cite as: Slip Copy)**

Initially, the Court recognizes that the cited statements by Coca-Cola concerned the flexible tube at issue in the relevant product, and were not directed at the liquid channels created by the evacuation form *vis-a-vis* the spout. (*See* Defs. Ex. 70 at 3.) Moreover, the relevant statements at no point referred to liquid channels, or an evacuation form, that was "substantially perpendicular" to the longitudinal axis of the spout. (*See* Defs. Ex. 70.)

In any event, the undisputed facts show that the evacuation member at issue in the relevant device, and the liquid channel(s) it provides, terminate in the spout in a coaxial fashion, running substantially parallel through the spout opening. (*See* Coca-Cola Summ. J. Ex. 19.) Accordingly, the channels are not oriented "at substantially a ninety-degree angle to the longitudinal axis of the spout." (March 27, 2003 Order [44-1] at 8 (defining "substantially perpendicular").)

Given that the undisputed facts demonstrate that the bag sought to be modified by Mr. Rutter fails to meet this limitation of the Coca-Cola Patents, Defendants' anticipation argument fails as a matter of law. Accordingly, insofar as Coca-Cola seeks summary judgment on that defense, its motion will be granted.

### III. Inequitable Conduct

Defendants contend that Coca-Cola, by failing to disclose Mr. Rutter's conception during its prosecution of its Patents before the Patent Office, engaged in "inequitable conduct," rendering the patents-in-suit unenforceable. Coca-Cola denies such inequitable conduct, and argues that it is entitled to summary judgment on this defense.

Applicants appearing before the Patent Office are required to conduct themselves with candor, good faith, and honesty. *See Molins PLC v. Textron, Inc.,* 48 F.3d 1172, 1178 (Fed.Cir.1995). A breach of that duty constitutes "inequitable conduct." *Id.* A party contending that an adversary's failure to disclose the prior art amounts to inequitable conduct "must offer clear and convincing proof of the materiality of the prior art, knowledgeable chargeable to the applicant of that prior art and of its materiality, and the applicant's failure to disclose the prior art, coupled with an intent to mislead the PTO." *Id.*

"Materiality ... embraces *any* information that a reasonable examiner would substantially likely consider important in deciding whether to allow an application to issue as a patent." *Akron Polymer Container Corp. v. Exxel Container, Inc.,* 148 F.3d 1380, 1382 (Fed.Cir.1998) (internal quotations omitted, emphasis in original). Information is not material when it "is not as pertinent as that considered by the examiner, or is merely cumulative to that considered by the examiner[ ]" *Molins PLC,* 48 F.3d at 1179.

**\*43** Questions of materiality and intent to deceive are ones of fact. *ATD Corp. v. Lydall, Inc.,* 159 F.3d 534, 546 (Fed.Cir.1998); *see also Halliburton Co. v. Schlumberger Tech. Corp.,* 925 F.2d 1435, 1439 (Fed.Cir.1991). Once established, however, "the court must weigh them to determine whether the equities warrant a conclusion that inequitable conduct occurred." *Molins PLC,* 48 F.3d at 1178. This balancing, committed to the discretion of the District Court, proceeds on a sliding scale-"the more material the omission, the less culpable the intent required, and vice versa." *Akron Polymer Container Corp.,* 148 F.3d at 1383 (quotations omitted). "In light of all circumstances, an equitable judgment must be made concerning whether the applicant's conduct is so culpable that the patent should not be enforced." *Molins LPC,* 48 F.3d at 1178.

Coca-Cola appears to predicate its request for summary judgment on the issue of inequitable conduct solely on the absence of materiality.[FN28] It states that the Rutter prior art is entirely "cumulative" of the prior art already before the PTO in the form of the Credle '636 Patent (which, according to Coca-Cola, "effectively" disclosed the bag that Mr. Rutter proposed to modify) and the Maynard Patent, which appears to recite an evacuation structure placed in the relevant container before the container is completely sealed.

> FN28. In its Reply, Coca-Cola also alludes to the fact that it lacked an intent to deceive, and contends that the marginal materiality of the omitted prior art, could it be said to exist at all, is insufficient to "tip the balance" in favor of a finding of inequitable conduct on the "sliding scale" referenced by the Federal Circuit. (*See* Coca-Cola Reply in Supp. of Mot. for Partial Summ. J. [105-1] [hereinafter, "Coca-Cola Reply"] at 17-18.) Coca-Cola did not raise this contention in its opening memorandum, however, and the Court declines to address this contention to which Defendants had no opportunity to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 35
Slip Copy, 2004 WL 4910334 (N.D.Ga.)
**(Cite as: Slip Copy)**

respond

Defendants respond by pointing out that Coca-Cola, following the late-1980's interference proceedings, demanded that its adversary disclose the Rutter concept to the Patent Office based on the "dut[y] of candor" owed to the PTO. (Defs.Ex. 101.) It contends that this correspondence could permit a reasonable fact-finder to determine that the Rutter conception was likewise "material" in Coca-Cola's own prosecution of the patents-in-suit. Moreover, it states that the Rutter prior art was not "cumulative" of the references already before the Patent Office, arguing that the Maynard Patent cited by Coca-Cola does not meet the "transversely disposed" and "substantially perpendicular" limitations Defendants urge are present in the Rutter conception.

After considering the parties' arguments and the record before it, the Court concludes that Coca-Cola's entitlement to summary judgment based on the absence of "materiality" presents a close question. On the one hand, the Court agrees with Coca-Cola that the Rutter conception was plainly *more* material to the invention at issue in the proceedings taking place before the Patent Office in the late-1980's than to the patents-in-suit. The arguments in support of patentability in those proceedings appeared to concentrate on claims related to an evacuation form unit that laid flat inside the bag and which was inserted during the manufacture of the bag-characteristics that seem to closely parallel the attributes of the product allegedly conceived by Mr. Rutter (*See* Def. Ex. 63.) Consequently, the relevance of the correspondence cited by Defendants in support of their materiality argument is considerably discounted by the differences between the disparate inventions described in the respective patent applications.

**\*44** Furthermore, the Court agrees with Coca-Cola that the bag allegedly conceived by Mr. Rutter failed to satisfy at least the "substantially perpendicular" limitation of the patents-in-suit, thus undermining Defendants' position that the undisclosed device's inclusion of that feature distinguished it from the prior art disclosed to the Patent Office (making it non-cumulative).

Nevertheless, the Court concludes that a reasonable jury might find the undisclosed Rutter prior art constituted "information that a reasonable examiner would substantially likely consider important in deciding whether to allow an application to issue as a patent." *Akron Polymer Container Corp.*, 148 F.3d at

1382. Mr. Rutter's conception appears to combine the features recited in the Credle '636 Patent and those disclosed in the Maynard Patent. As a consequence, the Court concludes that Coca-Cola is not entitled to summary judgment under the rule that "a withheld reference may be highly material when it discloses a more complete combination of relevant features, even if those features are before the patent examiner in other references." *Semiconductor Energy Lab. Co. v. Samsung Elecs. Co.*, 4 F.Supp.2d 477, 482 (E.D.Va.1998). Thus, to the extent Coca-Cola seeks summary judgment on the defense of inequitable conduct, its motion must be denied.

In sum, The Coca-Cola Company's Mot. for Partial Summ. J. [89-1] is GRANTED in part and DENIED in part. It is granted insofar as it seeks (i) dismissal of counterclaims and defenses alleging that Mr. Rutter is a joint inventor of the subject matter claimed in the patents-in-suit, as well as (ii) dismissal of counterclaims and defenses alleging that Mr. Rutter invented subject mater claimed in the patents-in-suit before the inventors enumerated therein. It is denied to the extent Coca-Cola requests dismissal of Defendants' counterclaims and defenses alleging that Coca-Cola engaged in inequitable conduct during prosecution of the patents-in-suit.

Defendants' Motions Related to Plaintiff's Damages
Theories

Finally, the Court turns to resolve the Motion of Defendants for Bifurcation of Trial on the Issues of Liability and Damages and to Stay Discovery on Damages [50] and the Motion by Defendants to Preclude Coca-Cola from Changing its Theory on Damages or, in the Alternative, for Bifurcation of Trial on the Issues of Liability and Damages, and a Stay of Discovery on Damages [51]. The latter motion, filed just two days after the former, appears to be a mere duplicate of the first motion except that it adds an alternative request that the Court entirely preclude Coca-Cola from altering its damages theory from one based on "reasonable royalty" to one based on "lost profits." Given that duplication, the Court treats the common requests found in both motions together.

Turning first to the requested stay of discovery on damages, the Court observes that Defendants claim to have been informed of Coca-Cola's alteration of its damages theory in mid-September 2003. (*See* Mem. of Defs. in Supp. of their Mot. to Preclude Coca-Cola from Changing its Theory on Damages or, in the

Alternative, for Bifurcation of Trial on the Issues of Liability and Damages and a Stay of Disc. on Damages at 9.) It appears from the record, moreover, that discovery has continued in this action through at least August 2004. Consequently, in order to avoid the consideration of a stay that would be largely if not entirely moot given intervening events, the Court will deny the Motions with the right to re-file to the extent they seek such a stay.

*45 As it relates to the issue of bifurcation of the trial, the Court informs Defendants that their request for bifurcation will be considered following the parties' submission of the consolidated pretrial report mandated by the local rules. *See* L.R. 16.4.B.8, NDGa (stating that consolidated pretrial order shall include "[a]n expression of the parties' preference, supported by reasons, for a unified or bifurcated trial."). Accordingly, the Court likewise denies Defendants' Motions, to the extent they seek bifurcation, with leave to submit their positions at a later date.

Finally, Defendants seek to preclude Coca-Cola from changing its theory of damages to one based on "lost profits." In support of this request, Defendants cite Coca-Cola's previous interrogatory response plainly providing:
Plaintiff states that it will not seek damages based upon a claim of lost profits but will pursue damages pursuant to a theory of reasonable royalty.

(Coca-Cola Interrog. Resp. 13.) Coca-Cola does not oppose Defendants' Motion seeking this preclusion, and the Court will accordingly grant Defendants' Motion insofar as it requests such relief.[FN29]

> FN29. The Court observes that this result significantly ameliorates the complexity associated with the damages issue Defendants rely on in support of their bifurcation request.

To summarize, Defendants' Motions, to the extent they seek a stay of discovery on the issue of damages [50-2; 51-3] are DENIED with the right to re-file. Insofar as they seek bifurcation of the trial on issues of liability and damages [50-1; 51-2], such Motions are DENIED with leave to resubmit the issue in a proposed Pretrial Order. Lastly, to the extent Defendants seek to entirely preclude Coca-Cola from changing its damages theory to one based on "lost profits," their Motion [51-1] is GRANTED.

Conclusion

In sum, with respect to the Motion of Defendants for Bifurcation of Trial on the Issues of Liability and Damages and to Stay Discovery on Damages [50] and the Motion by Defendants to Preclude Coca-Cola from Changing its Theory on Damages or, in the Alternative, for Bifurcation of Trial on the Issues of Liability and Damages, and a Stay of Discovery on Damages [51], to the extent the Motions seek a stay of discovery on the issue of damages [50-2; 51-3], they are DENIED with the right to re-file. Insofar as they seek bifurcation of the trial on issues of liability and damages [50-1; 51-2], such Motions are DENIED with leave to resubmit the issue in a proposed Pretrial Order. To the extent Defendants seek to entirely preclude Coca-Cola from changing its damages theory to one based on "lost profits," their Motion [51-1] is GRANTED.

Defendants' Motion to File Under Seal their Benchbook of Exhibits Accompanying their Memorandum in Opposition to Coca-Cola's Motion for Partial Summary Judgment [100-1] is GRANTED nunc pro tunc. Defendants' Unopposed Motion for Leave to File Briefs In Excess of Fifteen Pages in Reply to Coca-Cola's Oppositions to Defendants' Motions for Summary Judgment [107-1] is likewise GRANTED nunc pro tunc.

Defendants' Motion for Summary Judgment (No. 1) that the Dip Tube Bag Does Not Infringe [82-1] is DENIED. Defendants' Motion for Summary Judgment (No. 2) that the Evacufilm Bag Does Not Infringe [83-1] is DENIED. Defendants' Motion for Summary Judgment (No. 3) that the Coca-Cola Patents are Invalid [84-1] is DENIED. Defendants' Motion for Summary Judgment (No. 4) that Coca-Cola Cannot, as a Matter of Law, Recover Pre-Filing Damages [85-1] is GRANTED in part and DENIED in part. It is granted insofar as Defendants seek to preclude Coca-Cola from recovering pre-filing damages with respect to (i) the alleged infringement by Evacufilm Bag, (ii) the alleged infringement of the '252 Patent, and (iii) Defendant Pepsi, insofar as Defendant Pepsi is sought to be held liable for pre-filing damages related to the '493 Patent. It is denied to the extent Defendants seek summary judgment with respect to (i) Defendant Rapak's liability for pre-filing damages related to the alleged infringement of the '493 Patent, as well as with respect to (ii) Defendants Rapak and Pepsi's liability for pre-filing damages related to the alleged infringement of the '421 Patent, with infringement in both instances referring to the alleged infringement by the Tube

Bag. Defendants' Motion for Summary Judgment (No. 5) that Coca-Cola Cannot Establish Willful Infringement [86-1] is DENIED.

**\*46** Finally, Coca-Cola Company's Motion for Partial Summary Judgment [89-1] is GRANTED in part and DENIED in part. It is granted insofar as it seeks (i) dismissal of counterclaims and defenses alleging that Mr. Rutter is a joint inventor of the subject matter claimed in the patents-in-suit, as well as (ii) dismissal of counterclaims and defenses alleging that Mr. Rutter invented subject mater claimed in the patents-in-suit before the inventors enumerated therein. It is denied to the extent Coca-Cola requests dismissal of Defendants' counterclaims and defenses alleging that Coca-Cola engaged in inequitable conduct during prosecution of the patents-in-suit.

SO ORDERED.

N.D.Ga.,2004.
Coca-Cola Co. v. Pepsico, Inc.
Slip Copy, 2004 WL 4910334 (N.D.Ga.)

Briefs and Other Related Documents (Back to top)

• 2005 WL 987382 (Trial Motion, Memorandum and Affidavit) Reply Brief in Support of the Coca-Cola Company's Motion in Limine to Preclude Defendants from Rearguing Claim Construction Issues at Trial (Mar. 8, 2005) Original Image of this Document (PDF)
• 2005 WL 987386 (Trial Motion, Memorandum and Affidavit) Reply Brief in Support of the Coca-Cola Company's Motion in Limine to Exclude Defendants' Use of the Coca-Cola Company's Patented Bag-In-Box (Mar. 8, 2005) Original Image of this Document (PDF)
• 2005 WL 987390 (Trial Motion, Memorandum and Affidavit) Reply Brief in Support of the Coca-Cola Company's Motion to Preclude Opinions from Defendants's Experts Not Disclosed in Their Expert Reports (Mar. 8, 2005) Original Image of this Document (PDF)
• 2005 WL 987393 (Trial Motion, Memorandum and Affidavit) Reply Brief in Support of the Coca-Cola Company's Motion in Limine to Exclude Prior Art Not Cited in or Supported by the Defendants' Claim Charts (Mar. 8, 2005) Original Image of this Document (PDF)
• 2005 WL 987395 (Trial Motion, Memorandum and Affidavit) Reply Brief in Support of the Coca-Cola Company's Motion in Limine to Limit the Testimony of Allan Myerson (Mar. 8, 2005) Original Image of this Document (PDF)

• 2005 WL 987403 (Trial Motion, Memorandum and Affidavit) Reply Brief in Support of the Coca-Cola Company's Motion Exclude Testimony from John Alex (Mar. 8, 2005) Original Image of this Document (PDF)
• 2005 WL 987405 (Trial Motion, Memorandum and Affidavit) Reply Brief in Support of the Coca-Cola Company's Motion for a Separate Trial Outside the Presence of the Jury on Inequitable Conduct (Mar. 8, 2005) Original Image of this Document (PDF)
• 2004 WL 3728244 () (Partial Testimony) (Jul. 29, 2004) Original Image of this Document (PDF)
• 2004 WL 3728243 () (Partial Testimony) (Jul. 28, 2004) Original Image of this Document (PDF)
• 2004 WL 3728245 () (Partial Testimony) (Jul. 27, 2004) Original Image of this Document (PDF)
• 2004 WL 3728246 () (Partial Testimony) (Jul. 27, 2004) Original Image of this Document (PDF)
• 2004 WL 3728277 () (Partial Testimony) (Jul. 27, 2004) Original Image of this Document (PDF)
• 2003 WL 24286324 () Expert Report of John L. Alex Relating to Infringement Issues (Dec. 29, 2003) Original Image of this Document (PDF)
• 2003 WL 24286328 () Expert Report of Mark A. Smith Relating to Infringement Issues (Dec. 29, 2003) Original Image of this Document (PDF)
• 2003 WL 24286327 () Expert Report of William S. Credle, Jr. (Dec. 22, 2003) Original Image of this Document (PDF)
• 2003 WL 24286326 () (Partial Testimony) (Dec. 15, 2003) Original Image of this Document (PDF)
• 2003 WL 24286329 () Videotape Deposition of E. Bruce Nauman, Ph.D. (Nov. 11, 2003) Original Image of this Document (PDF)
• 2003 WL 24286325 () Expert Report of John L. Alex Relating to Validity Issues (Sep. 29, 2003) Original Image of this Document (PDF)
• 2003 WL 24298542 () Expert Witness Report of Dr. E. Bruce Nauman (Sep. 26, 2003) Original Image of this Document (PDF)
• 1:02cv02887 (Docket) (Oct. 22, 2002)
• 2002 WL 32993775 () Expert Witness Report of Dr. E. Bruce Nauman (2002) Original Image of this Document (PDF)
• 2002 WL 32993776 () Expert Report of Mark A. Smith Relating to Infringement Issues (2002) Original Image of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.