# Tab G

Westlaw.

Not Reported in F.Supp.2d                                                          Page 1
Not Reported in F.Supp.2d, 2002 WL 433614 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
<u>Briefs and Other Related Documents</u>
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
In re: ELONEX PHASE II POWER
MANAGEMENT LITIGATION
**No. C.A. 01-082 GMS, C.A. 01-083 GMS, C.A. 01-084 GMS, C.A. 01-085 GMS, C.A. 01-086 GMS, C.A. 01-087 GMS, C.A. 01-088 GMS, C.A. 01-089 GMS, C.A. 01-090 GMS, C.A. 01-091 GMS, C.A. 01-092 GMS, C.A. 01-093 GMS, C.A. 01-095 GMS, C.A. 01-096 GMS, C.A. 01-097 GMS, C.A. 01-098 GMS, C.A. 01-099 GMS, C.A. 01-100 GMS, C.A. 01-101 GMS, C.A. 01-102 GMS, C.A. 01-103 GMS, C.A. 01-104 GMS.**

March 20, 2002.

MEMORANDUM AND ORDER
<u>SLEET</u>, District J.

I. INTRODUCTION

*1 On February 13, 2001, the plaintiffs, Elonex I.P. Holdings, Ltd. and EIP Licensing, B.V. (collectively "Elonex"), filed this action against certain companies that manufacture and sell computer systems or computer monitors. [FN1] The complaint alleges infringement of U.S. Patent Numbers 5,389,952 (" the '952 patent"), 5,648,799 ("the '799 patent"), and 5,649,719 ("the '719 patent"). The lawsuit relates to technology that concerns power management in computer monitors.

> FN1. In December 1998, Elonex I.P. Holdings Ltd. and Elonex PLC filed a related lawsuit against another group of defendants on substantially the same grounds ("Elonex Phase I litigation").

Presently before the court is the defendants' consolidated motion for summary judgment. [FN2] The issues in the consolidated motion concern marking and notice under 35 U.S.C. § 287(a).

> FN2. The twelve moving defendants are: Acer America Corporation, Acer Communication & Multimedia America

Inc., Acer Communication and Multimedia, Inc., Acer Inc. (collectively "Acer"); ADI Corporation, ADI Systems, Inc. (collectively "ADI"); Apple Computer, Inc. ("Apple"); Bizcom Electronics, Inc. ("Bizcom"); Chuntex Electronics Co., Ltd, CTX International, Inc. (collectively "Chuntex"); Daewoo Electronics Co., Ltd., Daewoo Electronics Corporation of America (collectively "Daewoo"); Gateway, Inc. ("Gateway"); LG Electronics, Inc., LG Electronics U.S.A., Inc., LG Electronics Alabama, Inc. (collectively "LGE"); Lite-On Technology Corporation, Lite-On Technology International, Inc. (collectively "Lite-On"); Sceptre Technologies, Inc. ("Sceptre"); Tatung Co., and Tatung Co. of America, Inc. (collectively "Tatung").

II. STANDARD OF REVIEW

The court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Boyle v. County of Allegheny, Pennsylvania, 139 F.3d 386, 392 (3d Cir.1998) Thus, the court may grant summary judgment only if the moving party shows that there are no genuine issues of material fact that would permit a reasonable jury to find for the non-moving party. See Boyle, 139 F.3d at 392. A fact is material if it might affect the outcome of the suit. Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986)) An issue is genuine if a reasonable jury could possibly find in favor of the non-moving party with regard to that issue. Id. In deciding the motion, the court must construe all facts and inferences in the light most favorable to the non-moving party. Id.; see also Assaf v. Fields, 178 F.3d 170, 173-174 (3d Cir.1999)

With these standards in mind, the court will briefly describe the facts and procedural history that led to the motions presently before the court.

III. BACKGROUND

The patents-in-suit are a family of related patents

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 2
Not Reported in F.Supp.2d, 2002 WL 433614 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

directed to the field of power management in computer monitors and systems. The first of the patents-in-suit, the '952 patent, was issued on February 14, 1995. The '799 patent was issued on July 15, 1997. Finally, on March 9, 1999, the '719 patent was issued. Elonex I.P. Holdings, Ltd. ("EIPH") is the assignee of the '952, '799 and '719 patents. Elonex PLC ("PLC") is an affiliate of EIPH and the parent of EIP Licensing. The holding/parent company, EIPH, contends that its affiliate, PLC, was EIPH's exclusive licensee with respect to these patents during much of the time period in question.[FN3]

> FN3. During 1995, however, pursuant to its powers under the license, PLC allegedly sublicensed its rights as the exclusive licensee to Elonex Technologies, Inc. ("Elonex Technologies").

By virtue of its license, PLC had the exclusive right to license and sub-license throughout all parts of the world, and to make, sell and have made all goods protected by the patents. PLC also had the right to prosecute and settle any claims on behalf of itself or EIPH. On May 13, 1996, PLC granted the first license under the patents-in-suit to Hewlett-Packard Company ("Hewlett-Packard"). PLC's exclusive licensee rights terminated on October 15, 1999.

**\*2** On February 13, 2001, Elonex brought an infringement suit against numerous companies which had not taken part in the Elonex Phase I litigation.[FN4]

> FN4. Elonex joined Bizom and Sceptre as defendants on September 18, 2001.

### IV. DISCUSSION

### A. Marking

Each of the moving defendants asserts that Elonex failed to mark its products and, absent actual notice, is therefore barred from collecting pre-suit damages. Section 287(a) limits a patentee's ability to recover if the patentee or "persons making, offering for sale, or selling within the United States any patented article for or under [the patentee]" failed to mark the patented article. 35 U.S.C. § 287(a). If a patentee or someone acting "for or under" it does fail to so mark, Section 287(a) allows the patentee to recover "on

proof that the infringer was notified of the infringement and continued to infringe thereafter." *Id.* In that event, damages may be recovered only after such notice. *See id.* The plaintiffs bear the burden of proving their compliance with Section 287(a) before they may collect pre-suit damages. *See Nike, Inc. v. Wal-Mart Stores, Inc. et al.,* 138 F.3d 1437, 1446 (Fed.Cir.1998).

In support of their argument on this issue, the moving defendants join in Compal Electronics Inc.'s ("Compal") earlier motion for summary judgment on this issue. The court decided that motion on February 20, 2002. In its decision, the court held that there remains an issue of material fact with regard to whether Elonex had a duty to mark prior to May 13, 1996. The court thus declined to grant summary judgment based on the pre-May 13, 1996 period. The court further found that Elonex's duty to mark began at least as early as May 13, 1996. It is undisputed that Elonex did not mark after that date. Thus, the court concluded that, absent actual notice, Elonex is not entitled to damages from the period of May 13, 1996 to February 13, 2001, the date on which Elonex filed suit. Under the law of the case, the court will apply the same holding to this motion.

### B. *Lans* Actual Notice

With the exception of Bizcom and Sceptre, the moving defendants next assert that notice of infringement, either oral or written, from an entity other than Elonex is ineffective. In support of their argument, the moving defendants join in Compaq Computer Corporation's ("Compaq") and Compal's earlier motion for summary judgment on this issue.

The court also addressed this issue in its February 20, 2002 decision. Specifically, the court found that PLC, as Elonex's exclusive licensee with substantially all the rights in the patents-in-suit, was competent to give notice. This ruling is now the law of the case and thus applies to this motion as well.

In that decision, the court declined to decide whether Elonex Technologies was also capable of giving actual notice. However, the court did determine that, for Elonex Technologies to be capable of giving actual notice, PLC must have given it a written assignment of substantially all the rights in the patents-in-suit. Given Elonex's continued lack of proof on this essential element, the court now decides that Elonex Technologies was not capable of giving actual notice.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 3
Not Reported in F.Supp.2d, 2002 WL 433614 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

**\*3** Elonex has failed to adduce any contemporaneous written evidence that PLC, or any other capable entity, assigned substantially all the rights in the patents-in-suit to Elonex Technologies at any time. Instead, Elonex continues to maintain that PLC granted a sublicense to Elonex Technologies, making Elonex Technologies the exclusive licensee. However, as the court noted in its February 20, 2002 decision, Elonex Technologies must not only be the exclusive licensee, it must also hold substantially all the rights in the patents-in-suit. See *Speedplay Inc., v. Bebop, Inc.,* 211 F.3d 1245, 1250 (Fed.Cir.2000). As Elonex has failed to point to a written assignment to Elonex Technologies, or any document setting forth the extent of a purported assignment, the court concludes that Elonex has failed to meet its burden of establishing a genuine issue of material fact that Elonex Technologies was competent to give actual notice of infringement. The court thus concludes that Elonex Technologies could not have given actual notice of infringement.

With these principles in mind, the court holds that the date of the first communication from PLC itself is the date on which each defendant had actual notice of infringement. Accordingly, the court finds that each defendant had actual notice as follows: [FN5] (1) Acer will be charged with actual notice as of June 21, 1996; (2) ADI Corporation will be charged with actual notice as of April 30, 1999 [FN6]; (3) Apple will be charged with actual notice as of April 27, 1999; (4) Chuntex will be charged with actual notice as of April 30, 1999; (5) Daewoo will be charged with actual notice as of January 13, 1999; (6) Gateway will be charged with actual notice as of June 21, 1996; (7) LGE will be charged with actual notice as of January 13, 1999; and (8) Tatung will be charged with actual notice as of June 21, 1996.[FN7] As the court will discuss below, a material issue of genuine fact exists with regard to whether Lite-On received an allegedly misaddressed letter from PLC on June 21, 1996. Thus, the court cannot determine Lite-On's earliest date of actual notice on this motion.

> FN5. The defendants concede these dates as the first date they received a communication from PLC. The issue of whether this notice was adequate under 35 U.S.C. § 287(a) is not before the court on this motion.

> FN6. As the court will discuss below in Section C, whether this actual notice to ADI Corporation may be imputed to its

subsidiary, ADI Systems, remains a question of fact.

> FN7. The earliest communication from PLC in each case was a written communication. Accordingly, the court expresses no opinion on whether oral notice may suffice under 35 U.S.C. 287(a).

### C. No Notice

Five defendants move for summary judgment on the grounds that they received no notice. The parties have subdivided this issue into two categories: (1) "imputed notice" and (2) "wrong address." [FN8] The court will discuss each category in turn.

> FN8. Although Bizcom and Sceptre characterize their argument as "no notice," the issue is whether notice to Compal can be imputed to them. Thus, the court will not treat Bizcom's and Sceptre's arguments as a separate "no notice" category.

### 1. Imputed Notice

ADI Systems, Lite-On Technology International, Inc., Bizcom and Spectre argue that letters sent to their respective corporate parents should not be imputed to them as subsidiaries. Daewoo argues that a letter sent to an unrelated entity cannot constitute notice. Daewoo's sole argument on this point concerns a letter sent by Elonex Technologies. The court has already determined that Elonex Technologies was not capable of providing actual notice.

Notice to an agent with authority to receive notices of infringement may be sufficient under Section 287(a). See *Maxwell v. J. Baker, Inc.,* 805 F.Supp. 728, 734 (D.Minn.1992). However, in such a case, the plaintiff bears the burden of proving the agent's authority to accept such notice on behalf of the alleged infringer. See *id; see also* 7 DONALD S. CHISUM, CHISUM ON PATENTS § 20.03[7][c][iv] (1978) (explaining that the agent or employee of the accused infringer must have had the appropriate scope of authority to receive notice of infringement.)

### a. Lite-On

**\*4** Elonex offers evidence which it contends raises at least a genuine issue of material fact as to whether

© 2006 Thomson/West. No Claim to Orig. U.S Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 433614 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Lite-On Technology Corporation is Lite-On Technology International, Inc.'s actual agent. Specifically, Elonex offers Fred Lin's ("Lin") deposition testimony that Lite-On International has no legal department and thus relies on legal advice from its parent, Lite-On Technology Corporation. Additionally, Elonex points to Lin's testimony that Lite-On International has never negotiated a patent license, nor does it have the authority to do so without its parent's knowledge and approval. Finally, Lin testified that Lite-On Technology has entered into at least two patent licenses. One of these licenses related to computer monitors and covered Lite-On Technology's subsidiaries.

In response, Lite-On International argues that Elonex has offered no evidence that Lite-On Technology's in-house counsel had any authority to receive notice on behalf of its subsidiaries before the subsidiary retained them on that matter. Lite-On International further argues that Lite-On Technologies had no duty to report to its subsidiary, even assuming an agency relationship, because the notice did not arise within the scope of the alleged agency relationship The court concludes, however, that the allegations that this subsidiary had no authority to address licensing issues on its own, and that its parent was responsible for entering into a license on behalf of its subsidiaries, raise material issues of fact with regard to actual agency.

### b. ADI

Elonex next argues that ADI Corporation was also its subsidiary's agent. In support of this allegation, Elonex points to Stephen M.S. Chou's ("Chou") deposition testimony on behalf of ADI that he understood ADI Corporation's licensing negotiations with Elonex to cover all of ADI Corporation's affiliates.[FN9] ADI Systems attempts to refute this evidence by arguing that Elonex has offered no evidence that ADI Corporation could have effectively bound ADI Systems by signing a license.

> FN9. Elonex also offers evidence that ADI Corporation and ADI Systems were closely interrelated. ADI Systems denies that this evidence establishes that ADI Corporation was competent to receive notice of infringement on behalf of ADI Systems.

The court concludes that, based on Chou's statements, a reasonable fact-finder could determine that ADI

Corporation came to the license negotiation table with authority to bind its affiliates. Following that premise, a reasonable fact-finder could also determine that, if ADI Corporation had authority to license ADI Systems, it may have reasonably had the authority to accept notice of infringement on behalf of ADI Systems.[FN10]

> FN10. In passing, ADI Corporation notes that the licensing negotiations took place approximately two weeks after PLC had ceased to be an exclusive licensee. This is of no moment for the purpose of establishing notice, however, as PLC had communicated with ADI Corporation as early as April 30, 1999.

### c. Bizcom and Sceptre

Bizcom and Sceptre are Compal's subsidiaries. They argue that, because they were not explicitly mentioned in PLC's communications to Compal, they received no pre-suit notice of infringement. In response, Elonex argues that its notice to Compal must be imputed to Bizcom and Sceptre under an agency theory. In support of its agency theory, Elonex has brought forth several facts. Specifically, Compal general counsel John Chyi ("Chyi") testified at his deposition that he understood that, assuming Compal needed a license, such a license would cover Bizcom and Sceptre as well. Further, Chyi testified that Compal would be responsible for negotiating with any company that contacted Sceptre or Bizcom about licensing Compal products. Based on this evidence, the court finds that whether Compal was Bizcom and Sceptre's agent raises a genuine issue of material fact.

*5 In the alternative, Elonex argues that each of the above parent corporations had apparent authority to act on behalf of their subsidiaries. However, apparent agency cannot be established by the representations or conduct of the purported agent. See e.g., _Select Creations, Inc. v. Paliafito America, Inc._, 830 F.Supp. 1223, 1235 (E.D.Wis.1993). Rather, it is the statements or acts of the principle, here, each of the subsidiaries, that must cause the third party to believe that agency exists. See id. On the present facts, Elonex has offered no evidence with regard to any party that the subsidiaries led Elonex to believe that agency existed between them and their parent corporations. Accordingly, the court concludes that no reasonable fact-finder could conclude that the parent corporations had apparent authority to act on

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

behalf of their subsidiaries.

Finally, Elonex alternatively argues that the court should apply the principles applicable to Federal Rule of Civil Procedure 15(c). Borrowing from Rule 15(c) case law, Elonex argues that it may recover pre-suit damages so long as the moving defendants share an "identity of interest" with their respective corporate parents. The court must decline Elonex's invitation to apply Rule 15(c) principles to a Section 287(a) analysis.

Rule 15(c) permits notice of any kind, be it actual or constructive, whereas Section 287(a) requires actual notice in the absence of marking. *Compare Singletary v. Pennsylvania Dep't of Corrections, 266 F.3d 186, 189 (3d Cir.2001)* (listing means of imputing notice for purposes of Rule 15(c)) and *Lans v. Digital Equipment Corp., 252 F.3d 1320, 1327 (Fed.Cir.2001)* (discussing the purpose of actual notice under Section 287(a)). Further, the inquiry under Rule 15(c) is merely what the defendant knew, or should have known, regardless of how the defendant knew it. *See Singletary, 266 F.3d at 195.* It is clear that Section 287(a) requires a more stringent standard for imposing notice. Thus, the court concludes that Elonex's "identity of interest" standard under Rule 15(c) is not applicable to the present case.

### 2. Wrong Address

Lite-On next argues that, even if PLC's notice to Lite-On Technology Corporation was valid and could be imputed to Lite-On Technology International, PLC sent its June 21, 1996 communication to the wrong address. Specifically, they argue that Lite-On Technology Corporation moved in February 1996 and the June 21, 1996 letter which PLC addressed to its former address was never delivered to its new address. In opposition, Elonex argues that they have brought forth sufficient evidence to raise a genuine issue of material fact with regard to whether Lite-On received this letter.

Courts have held that evidence of properly addressed and transmitted mail raises a presumption of delivery and receipt. *See McGrady v. Nissan Motor Accpetance Corp., 40 F.Supp.2d 1323, 1337 (M.D.Ala.1998); In re Longardner & Assocs., 855 F.2d 455, 460 (7th Cir.1988).* In the present case, Elonex argues that there is evidence in the record that Lite-On Technology itself sent a communication with the allegedly former address on the letterhead after February 1996. Specifically, on December 16, 1996,

a Lite-On Technology Corporation attorney sent PLC a letter asking it to issue a debit note. The letterhead on the sample debit note enclosed for PLC's reference was the same address to which PLC sent the June 21, 1996 letter. Lite-On maintains that the former address appeared in a communication to PLC by mistake. However, on a motion for summary judgment, the court declines to determine what weight, if any, the sample debit note should receive. Accordingly, there remains a genuine issue of material fact with regard to whether Lite-On received PLC's June 21, 1996 letter.[FN11]

> FN11. Further, the court finds it noteworthy that a large corporation such as Lite-On apparently did not have procedures in place to ensure its continued receipt of mail in the months immediately following a change of address. Lite-On does not address this point in its briefs.

### V. CONCLUSION

*6 The court finds that there is a genuine issue of material fact as to whether Elonex had a duty to mark its products prior to May 13, 1996. However, at the latest, the duty to mark arose on May 13, 1996. It is undisputed that Elonex did not mark its products after that date. Thus, absent actual notice to the defendants, Elonex is not entitled to pre-suit damages from that date until it filed suit on February 13, 2001.

With regard to actual notice, the court concludes that the notice must have come from PLC, as Elonex Technologies was not competent to give notice. The court further concludes that there is a genuine issue of material fact with regard to whether the parent corporations of several of the defendants were their subsidiary's actual agents. Finally, there remains a genuine issue of material fact as to whether Lite-On Technology Corporation received a letter addressed to an allegedly former address.

For the foregoing reasons, IT IS HEREBY ORDERED that:
1. The Defendants' consolidated motion for summary judgment (D.I.396) is GRANTED in part and DENIED in part.
2. The court's February 20, 2002 decision is amended to reflect that Elonex Technologies was not competent to give Compaq Computer Corporation notice of infringement. Accordingly, April 27, 1999 is the first date that Compaq received notice from a competent party.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                   Page 6
Not Reported in F.Supp.2d, 2002 WL 433614 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

3. Lite-On's motion to strike (D.I.464) is declared moot.

D.Del.,2002.
In re Elonex Phase II Power Management Litigation
Not Reported in F.Supp.2d, 2002 WL 433614 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 2003 WL 25036776 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Defendant's Jean Company, Ltd. Affirmative Defenses and Oppposition to Plaintiffs' Motion for Entry of Default Judgment (Jun. 17, 2003) Original Image of this Document (PDF)
• 2003 WL 22331122 (Trial Motion, Memorandum and Affidavit) Memorandum and Order (May 6, 2003)
• 2003 WL 25036775 (Trial Motion, Memorandum and Affidavit) Defendant's Opening Brief in Support of Motion to Dismiss (Mar. 14, 2003) Original Image of this Document (PDF)
• 2003 WL 25036777 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Plaintiffs' Motion for Entry of a Default Judgment Against Jean Company, Ltd. (Jan. 31, 2003) Original Image of this Document (PDF)
• 2003 WL 24901158 () Declaration of William O. Kerr, Ph.D., in Support of Plaintiffs' Motion for Entry of A Default Judgment Against the Tvm Defendants (Jan. 30, 2003) Original Image of this Document (PDF)
• 2003 WL 24901157 () Declaration of William O. Kerr, Ph.D., in Support of Plaintiffs' Motion for Entry of A Default Judgment Against Jean Company, Ltd. (Jan. 24, 2003) Original Image of this Document (PDF)
• 2002 WL 33838488 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Responsive Claim Construction Brief (Aug. 30, 2002) Original Image of this Document (PDF)
• 2002 WL 33838489 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Opening Claim Construction Brief (Aug. 19, 2002) Original Image of this Document (PDF)
• 2002 WL 33829540 () Declaration of Tai Cho (May 8, 2002) Original Image of this Document (PDF)
• 2002 WL 33838490 (Trial Motion, Memorandum and Affidavit) Daewoo's Reply Brief on Defendants' Consolidated Motions for Partial Summary Judgments Regarding 35 U.S.C. | 287(a) (Mar. 11, 2002) Original Image of this Document (PDF)
• 2001 WL 35731794 (Trial Motion, Memorandum

and Affidavit) Reply Brief in Support of Compaq's Motion for Partial Summary Judgment That Plaintiffs Have Not Complied With Notice Provisions of 35 U.S.C. | 287(a) (Dec. 21, 2001) Original Image of this Document (PDF)
• 2001 WL 35724940 () Declaration of Michael Barnett Spiro in Support of Plaintiffs' Brief in Opposition to Defendant Compaq Computer Corporation's Motion for Partial Summary Judgment Regarding 35 U.S.C. | 287(a) (Dec. 14, 2001) Original Image of this Document (PDF)
• 2001 WL 35731795 (Trial Motion, Memorandum and Affidavit) Motion for Limited Reconsideration (Nov. 26, 2001) Original Image of this Document (PDF)
• 2001 WL 35731796 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Plaintiffs' Motion for Entry of A Default Judgment Against Compal Electronics, Inc. (Aug. 23, 2001) Original Image of this Document (PDF)
• 2001 WL 35731797 (Trial Pleading) Complaint (Feb. 13, 2001) Original Image of this Document (PDF)
• 1:01CV00099 (Docket) (Feb. 13, 2001)
• 1:01CV00086 (Docket) (Feb. 13, 2001)
• 1:01CV00083 (Docket) (Feb. 13, 2001)
• 2001 WL 35724941 () Expert Report of Jake Richter on Issues Relating to the Validity of the Patents-In-Suit (2001) Original Image of this Document (PDF)
• 2001 WL 35724942 () (Partial Testimony) (2001) Original Image of this Document (PDF)
• 2000 WL 35363283 (Trial Motion, Memorandum and Affidavit) Memorandum of Defendant Viewsonic Corporation in Support of Its Motion for Partial Summary Judgment of Noninfringement of the Method Claims (Nov. 20, 2000) Original Image of this Document (PDF)
• 2000 WL 35358348 () Declaration of Prof. William R. Michalson, Ph.D. Regarding Noninfringement of Method Claims (Nov. 19, 2000) Original Image of this Document (PDF)
• 2000 WL 35358347 () Expert Witness Statement of Paul J. Henon (Nov. 8, 2000) Original Image of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Tab H

Westlaw.

Not Reported in F.Supp.2d                                                                    Page 1
Not Reported in F.Supp.2d, 2004 WL 765872 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

**C**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern
Division.
LISLE CORPORATION, an Iowa corporation
Plaintiff,
v.
A.J. MANUFACTURING COMPANY, an Illinois
Corporation Defendant.
**No. 02 C 7024.**

April 7, 2004.

Jon O. Nelson, Janice V. Mitrius, Matthew P. Becker,
Phoebe K. Phillips, Banner & Witcoff, Ltd., Chicago,
IL, for Plaintiff.
Thomas John Ring, Peter A. Tomaras, John Sheldon
Letchinger, Gary R. Gillen, Jonathan A. Harris,
Wildman, Harrold, Allen & Dixon, James J. Conlon,
James J. Conlon & Associates, Chicago, IL, for
Defendant.

*MEMORANDUM OPINION AND ORDER*
COAR, J.
**\*1** Plaintiff Lisle Corporation ("Plaintiff" or "Lisle")
filed suit against Defendant A.J. Manufacturing
Company ("Defendant" or "A.J.") alleging that it
infringed U.S. Patent No. 5,287,776 (the " '776
patent") by manufacturing and selling a specialized
automotive inner tie rod tool. Following a jury trial,
the jury returned a verdict in favor of the Plaintiff on
February 12, 2004. The jury determined that the '776
patent was valid and that Defendant owed Plaintiff a
3 percent royalty on sales. This Court entered
judgment of a 3 percent royalty, but it did not specify
in the judgment the dollar amount that Defendant
owed Plaintiff for sales. On February 25, 2004, the
Court enjoined Defendant from producing or selling
infringing tools for the life of the patent.

There are three issues presently before the Court: (1)
Plaintiff's Motion to Amend the Judgment; (2)
Defendant's Objections to Plaintiff's Bill of Costs;
and (3) Defendant's Motion to Stay the Injunction
pending appeal. The Court addresses these motions in
the foregoing opinion.

I. PLAINTIFF'S MOTION TO AMEND

JUDGMENT

Plaintiff seeks to amend the judgment to include a
specific accounting of damages, prejudgment interest,
and costs. As respects the issue of costs, the judgment
need not be amended for Plaintiff to recover its costs.
Plaintiff's Bill of Costs will be addressed below along
with Defendant's Objections to the Bill of Costs. The
other two issues addressed in Plaintiff's Motion,
specific accounting of damages and prejudgment
interest, will be resolved below.

A. Specific Accounting of Damages

According to the jury's verdict, Lisle is entitled to a
reasonable royalty of 3 percent on sales of the
infringing tools through the date of the injunction.
The parties agree that the royalty amount from the
Defendant's sales through January 12, 2004 is
$25,760.48. Defendant's sales numbers from January
12, 2004 through the date of the injunction (February
25, 2004) are as yet undetermined. Consequently, the
Plaintiff seeks an amended judgment that orders
Defendant A.J. to pay damages in the amount of
$25,760.48 for sales through January 12, 2004 plus a
3 percent royalty on sales in the period from January
12, 2004 to February 25, 2004.

The Court assumes that the reason Plaintiff seeks to
amend the judgment to include the specific
accounting of damages is to diminish uncertainty in
the amount of the royalty.[FN1] While the amended
judgment Plaintiff requests would not eliminate
uncertainty, it limits the uncertainty to approximately
six weeks of sales. The Court can perceive no
mischief in granting this request. The judgment will
be amended to include a damage amount of
$25,760.48 plus a 3 percent royalty on sales in the
period from January 12, 2004 to February 25, 2004.

> FN1. Plaintiff would be well-advised to
> specify the underlying reasons for its
> motions in the future.

B. Prejudgment Interest

Plaintiff's Motion also requests that the Court amend
the judgment to include an award of prejudgment
interest. In patent cases, the Supreme Court has

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                         Page 2
Not Reported in F.Supp.2d, 2004 WL 765872 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

declared that "prejudgment interest should ordinarily be awarded." _General Motors Corp. v. Devex Corp._, 461 U.S. 648, 655, 103 S.Ct. 2058, 76 L.Ed.2d 211 (1983); _see also Shott v. Rush-Presbyterian St. Luke's Medical Center_, 338 F.3d 736, 745 (7th Cir.2003) ("in most cases prejudgment interest is an element of full compensation"). Defendant opposes the award of prejudgment interest in this case based on the Plaintiff's six-year delay in filing this action to protect its patent. The Supreme Court's decision in _General Motors_ offers some support for denying prejudgment interest based on unnecessary delays. _See General Motors_, 461 U.S. at 657 ("it may be appropriate to limit [or deny] prejudgment interest ... where the patent owner has been responsible for undue delay in prosecuting the lawsuit"). In the years since _General Motors_, however, the Federal Circuit has adhered to the rule that delays by the patentee do not justify denying prejudgment interest "absent prejudice to the Defendants." _Lummus Indus., Inc. v. D.M. & E. Corp._, 862 F.2d 267, 275 (Fed.Cir.1988) _cited in Crystal Semiconductor Corp. v. Tritech Microelectronics, Int'l., Inc._, 246 F.3d 1336, 1361-62 (Fed.Cir.2001). Other than the amount of the interest that accrued with the passage of time, the Defendant has not alerted the Court of any prejudice it has suffered. Consequently, the Court finds that an award of prejudgment interest is justified in this case.

C. Calculating the Amount of Prejudgment interest

*2 Plaintiffs seek prejudgment interest in the amount of $5,314.22. Plaintiff arrived at this amount by applying the applicable prime rate from the year to its royalty of the annual sales and compounding the interest annually. Defendants object to this calculation and urge that Plaintiff be awarded prejudgment interest in the amount of $878.07. Defendant A.J. asserts that this amount represents simple interest, but it does not provide a source for the interest rate it applied to reach this amount. A simple arithmetic calculation (interest amount/principle = interest rate) reveals a rate of 3.4 percent, but the Defendants do not offer a source for this interest rate.

"The rate of prejudgment interest and whether it should be compounded or uncompounded are matters left largely to the discretion of the district court." _Bio-Rad Laboratories, Inc. v. Nicolet Instrumental Corp._, 807 F.2d 964, 969 (Fed.Cir.1986). As a general matter, the Court finds that prejudgment interest should be compounded. During the period of infringement, the Defendant retained the royalties

that should have been paid to Plaintiff. Compound interest more accurately accounts for the Defendant's increased financial obligation to Plaintiff over time and it comes closer to fully compensating Plaintiff for the infringement of its patent.

Defendant's only argument against compounding the interest is that it results in an interest amount that is nearly 20 percent of the total judgment amount. This argument yields no principle of general application and, if accepted, it would impose a de facto limit on prejudgment interest awards that is inconsistent with the case law. _See, e.g., In re Oil Spill by the Amoco Cadiz off the Coast of France on Mar. 16, 1978_, 954 F.2d 1259, 1335 (7th Cir.1992) (awarding $65 million in damages and $148 million in prejudgment interest). The Court rejects Defendants argument and will compound the interest in this case.

This leaves only the question of what interest rate should apply. The Seventh Circuit provides support for Plaintiff's suggestion of applying the prime rate. _See Gorenstein Enterprises, Inc. v. Quality Care-USA, Inc._, 874 F.2d 431, 436 (7th Cir.1989). The Seventh Circuit announced:
[W]e suggest that district judges use the prime rate for fixing prejudgment interest where there is no statutory interest rate. That is a readily ascertainable figure which provides a reasonable although rough estimate of the interest rate necessary to compensate plaintiffs not only for the loss of the use of their money but also for the risk of default.

_Id._ Consequently, the Court will apply the prime rate that was in effect at the time the royalties accrued.

Plaintiff's calculations of the prejudgment interest, a summary of which is attached to its Motion as Exhibit F, are accurate. The Court will amend the judgment to award Plaintiff $5,314.22 in prejudgment interest.

II. PLAINTIFF'S BILL OF COSTS

*3 Plaintiff timely filed its Bill of Costs on March 15, 2004 seeking recovery of $12,004.69 in costs associated with this action. Plaintiff seeks recovery of the filing fee ($150.00), the fee for service of process ($102.00), the court reporter's fees for producing transcripts ($1,956.90), witness fees ($258.09), photocopying costs ($3606.20), and other costs ($5,931.50). Defendant objects to Plaintiff taxing the court reporter's fees and the portion of the photocopying costs related to color photo-copies

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                      Page 3
Not Reported in F.Supp.2d, 2004 WL 765872 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

($847.30).

Rule 54(d) of the Federal Rules of Civil Procedure
permits the prevailing party to tax its costs as a
matter of course. Costs for the fees specified in 28
U.S.C. § 1920 are presumptively awarded to the
prevailing party. See FASA Corp. v. Playmates Toys,
Inc., 108 F.3d 140, 144 (7th Cir.1997). Should the
losing party seek to challenge taxation of those fees
enumerated in Section 1920, it must affirmatively
demonstrate that those fees were not necessary to the
litigation. Both of the items that Defendant objects to
in Plaintiff's Bill of Costs are specifically allowed for
in 28 U.S.C. § 1920. See 28 U.S.C. § 1920(2)
(allowing recovery of transcript costs); id 1920(4)
(allowing recovery of copying costs).

In order to resolve both of Defendant's objections to
Plaintiff's Bill of Costs, then, it becomes necessary
for the Court to answer whether the transcripts and/or
the color photocopies were "necessarily obtained for
use in the case." In the affidavit attached to the Bill
of Costs, Plaintiff asserts that the court transcripts
were necessary "to prepare and respond to pre- and
post-trial motions." (Pl. Aff. Support Bill Costs, ¶ 7)
Defendant responds that Plaintiff "did not utilize the
transcript at any time during the district court action"
and Plaintiff "did not request daily transcripts during
trial or use transcripts in post-trial motions." (Def.
Objections Bill Costs, at 1) Plaintiff has filed a
response in which it asserts that it used the transcripts
to: prepare for the January 29, 2004 evidentiary
hearing and to prepare for trial; prepare for
examination of Joe Chrzanowski; and prepare Lisle's
Opposition to A.J.'s Motion to stay the injunction.

Transcripts need not be submitted to the court in
order for them to be necessarily obtained for use in
the case. Plaintiff's assertion that the transcripts were
used in connection with the above listed tasks is
sufficient to justify an award of costs for the
transcripts. As noted above, costs that are specified in
Section 1920 are presumptively awarded to the
prevailing party. Defendant's blank assertions that
Plaintiff did not need or use the transcripts do not
defeat the presumption. Defendant's objection to the
costs of the transcript is overruled.

Plaintiff's taxation of photocopies included 458 color
photocopies it made to prepare for depositions and
trial exhibits. As with the objection to the transcript
fees, the Defendant asserts that Plaintiffs color
photocopies were not necessarily obtained for use in
this case because they were not attached to its briefs
or submitted as exhibits at trial. These facts, while

they may be true, do not support Defendant's
assertion that Plaintiff "did not rely on color copies at
any time during this litigation." (Def. Obj. Bill Costs
at 1) Plaintiff's use of color photocopies is reasonable
in this patent case and Defendant's objection is
overruled.

**\*4** The Court will tax $12,004.69 in costs against
Defendant A.J. Manufacturing Company.

### III. DEFENDANT'S MOTION TO STAY INJUNCTION PENDING APPEAL.

On February 25, 2004, this Court entered a
permanent injunction against Defendant A.J.
Manufacturing Company that prohibits it from
making, using, selling, offering for sale, or importing
infringing tools for the life of the patent. The same
day, A.J. filed its Motion to Stay the injunction
pending the appeal.

In 1987, the Supreme Court set forth the four factors
a court should weigh in considering a stay pending
appeal: "(1) whether the stay applicant has made a
strong showing that he is likely to succeed on the
merits; (2) whether the applicant will be irreparably
injured absent a stay; (3) whether issuance of the stay
will substantially injure the other parties interested in
the proceeding; and (4) where the public interest
lies." Hilton v. Braunskill, 481 U.S. 770, 776, 107
S.Ct. 2113, 95 L.Ed.2d 724 (1987). In the context of
injunctions against patent infringers, the Federal
Circuit has cautioned that the result should come
from a weighing of all four elements. "The
magnitude of the threatened injury to the patent
owner is weighed, in light of the strength of the
showing of likelihood of success on the merits,
against the injury to the accused infringer if the
preliminary decision is in error... No one element
controls the result." H.H. Robertson, Co. v. United
Steel Deck, Inc., 820 F.2d 384, 390 (Fed.Cir.1987).
Where a patent has been found to be infringed,
however, the presumption is in favor of sustaining the
injunction. See Richardson v. Suzuki Motor Co., 868
F.2d 1226, 1247 (Fed.Cir.1990).

#### A. Likelihood of Success on the Merits of the Appeal

The district court engages in a peculiar calculus when
it attempts to discern a party's likelihood of success
on the merits of an appeal. While this Court is
confident in the decisions that it has made during the
course of this litigation, it nevertheless recognizes

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                   Page 4
Not Reported in F.Supp.2d, 2004 WL 765872 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

that the Federal Circuit employs a de novo standard of review on some of the legal issues that will be presented in the appeal. As the Defendant notes in its motion, the Court arrived at its construction of the claims of the patent in suit with some difficulty. *Lisle Corp v. A.J. Mfg. Co.,* No. 02 C 7024, Order of Oct. 31, 2003, at 9 (slip op.). Claim construction is one of the areas of the law where the Federal Circuit employs a de novo standard of review. *See Microsoft Corp. v. Multi-Tech Systems, Inc.,* 357 F.3d 1340, 1345-46 (Fed.Cir.2004). If the Federal Circuit reaches a different conclusion on how the claims of the patent in suit should be constructed, the resulting determination of infringement would be in doubt. Given the professed difficulties that this Court had in arriving at its claim construction, the Defendants have a fair likelihood of success on the merits of an appeal of the claim construction ruling.

This Court does not find that the Defendants have much likelihood of success on the merits of an appeal based on the public use issue, however. In order to prevail on that issue, the Defendants would have to persuade the Federal Circuit that there was insufficient evidence in the record to support the jury's conclusion that the alleged public use was experimental and therefore not a disqualifying public use. *See Juicy Whip, Inc. v. Orange Bang, Inc.,* 292 F.3d 728, 736-37 (Fed.Cir.2002). While this is a difficult standard to meet for any issue, it is particularly difficult where, as here, the Defendant was required to establish the prior public use by clear and convincing evidence. *See id.* at 738. Given the high burden of proof and the difficult standard of review on appeal, the Court finds that the Defendant is unlikely to prevail on the appeal of the experimental use issue.

### B. Irreparable Harm to the Defendant from the Injunction

**\*5** Defendant asserts that this injunction will irreparably harm its relationship with Snap-On Tools, one of its biggest clients. Defendant does not spell out the nature of this irreparable damage. Instead, it relies on the assertion that it will "lose face if it is not permitted to continue selling one of the tools in its line." (Def. Motion Stay, at 2) This speculative loss of goodwill is insufficient to establish irreparable harm that would support staying the injunction. Even if an injunction were to destroy the business entirely, the injunction should nonetheless issue. *See Windsurfing Intern., Inc. v. AMF, Inc.,* 782 F.2d 995, 1003 n. 12 (Fed.Cir.1986) ("One who elects to build

a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected."). The Federal Circuit acknowledged that this harsh rule cannot be applied mechanically, however, and where a party puts forth credible evidence of serious, irreparable harm, a stay pending appeal remains appropriate. *See Standard Havens Products, Inc. v. Gencor Indus., Inc.,* 897 F.2d 511, 515 (Fed.Cir.1990). In *Standard Havens,* the Federal Circuit reversed the denial of a stay where the request was supported by affidavits from corporate officers indicating that the injunction would result in "employee layoffs, immediate insolvency, and, possibly, extinction." *Id.* In this case, the Defendant's own motion merely asserts a loss of goodwill and (in its reply brief, which is too late to present a new argument) the specter of lost business with one customer. These asserted harms (which are not clearly supported by any evidence) are insufficient to support a stay of the injunction.

### C. Harm of a Stay to Other Parties

In patent litigation, a patent holder benefits from a presumption of irreparable harm prior to trial if it makes a "clear showing that the asserted patent is ... []valid and that it is infringed." *Novo Nordisk of North America, Inc. v. Genentech, Inc.,* 77 F.3d 1364, 1367 (Fed.Cir.1996) (discussing preliminary injunctions in patent cases). Here, Plaintiff has obtained an enforceable (but appealable) judgment that their patent is valid and that the Defendant infringed it, so the presumption is clearly in favor of harm to the Plaintiff. Additionally, Plaintiff presented testimony at trial that it is its practice *not* to license its patented products to any third party. Permitting the Defendant to continue to produce the infringing product pending appeal seriously erodes the Plaintiff's ability to exclude others from utilizing the invention disclosed by its patent.

Plaintiff also asserts that staying the injunction would further harm the interests of one of the inventors, Gerald McKim. Mr. McKim is entitled to a five percent royalty on all sales of Plaintiff's products covered by the patent, but he is arguably not entitled to any royalty from Defendant's sales of products covered by the patent. While the harm to Mr. McKim is not as compelling as the harm to the Plaintiff patent holder in this case, it is nonetheless an injury that would flow from staying the injunction.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 765872 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

### D. Public Interest Considerations

*6 Defendant asserts that the public interest in encouraging future innovation and competition favors the grant of a stay in this case. Specifically, Defendant asserts that "refusing a stay may discourage future innovators from legitimate efforts to design around issued patents." (Def. Motion Stay, at 3) While the public interest in promoting invention is strong, the public interest in the enforcement of valid patents is stronger. As Plaintiff points out, Defendant's position "muddles the distinction between encouraging innovation by promoting new, non-infringing design arounds and discouraging infringing products or failed attempts to design around." (Pl. Opp. Motion Stay, at 6-7) (emphasis omitted).[FN2] The public interest favors denying the stay.

> FN2. Defendant's only other public interest argument in support of a stay is that it would damage the distributor (Snap-On Tools) to whom Defendant sells the infringing tool. This argument was presented for the first time in a Defendant's reply brief, which is too late for presentation of new arguments. Moreover, this argument is not properly considered as part of the public interest analysis; it should be addressed to the third factor in the stay analysis: the harm to other parties interested in the litigation. Since it arrives too late, the Court will not consider it in either place.

### E. Weighing the Equities of the Stay

As outlined above, the only factor favoring a stay pending appeal is the Defendant's fair likelihood of success on the appeal of the claim construction issue. The harm to the Plaintiff's ability to exclude others from using its invention is greater than the alleged irreparable harm Defendant will suffer from the injunction. In the face of a jury determination that the patent is valid and this Court's determination that the patent was infringed, the Court concludes the equities of this case favor denying the stay.

### CONCLUSION

For the reasons given in this opinion, Plaintiff's Motion to Amend the Judgment is granted; Defendant's Objections to Plaintiff's Bill of Costs are overruled; and Defendant's Motion to Stay the

Injunction Pending Appeal is denied.

N.D.Ill.,2004.
Lisle Corp. v. A.J. Mfg. Co.
Not Reported in F.Supp.2d, 2004 WL 765872 (N.D.Ill.)

Briefs and Other Related Documents (Back to top)

• 2004 WL 2257739 (Trial Motion, Memorandum and Affidavit) Lisle's Response to A.J.'s Objections to Lisle's Bill of Costs (Mar. 25, 2004) Original Image of this Document (PDF)
• 2004 WL 2257738 (Trial Motion, Memorandum and Affidavit) A.J.'s Reply in Support of Its Motion for Stay (Mar. 10, 2004) Original Image of this Document (PDF)
• 2004 WL 3728546 (Trial Motion, Memorandum and Affidavit) Lisle's Motion to Amend Judgment to Include a Specific Accounting of Damages, Prejudgment Interest, and Costs (Feb. 27, 2004) Original Image of this Document (PDF)
• 2004 WL 3728547 (Trial Motion, Memorandum and Affidavit) A.J.'s Motion for Stay Pending Appeal (Feb. 25, 2004) Original Image of this Document (PDF)
• 2004 WL 2257735 (Trial Motion, Memorandum and Affidavit) Lisle's Memorandum Regarding Relevant Evidence for a Determination of a Reasonable Royalty (Jan. 28, 2004) Original Image of this Document with Appendix (PDF)
• 2004 WL 2257736 (Trial Motion, Memorandum and Affidavit) A.J.'s Memorandum of Law Regarding Claim Scope (Jan. 28, 2004) Original Image of this Document (PDF)
• 2004 WL 2257732 (Trial Motion, Memorandum and Affidavit) Aj's Response to Lisle's Objection to Proposed Jury Instruction 6.7 (Reduction to Practice) (Jan. 21, 2004) Original Image of this Document (PDF)
• 2004 WL 2257733 (Trial Motion, Memorandum and Affidavit) AJ's Response to Lisle's Objections to AJ's Proposed Special Interrogatories (Jan. 21, 2004) Original Image of this Document with Appendix (PDF)
• 2003 WL 24286675 (Trial Motion, Memorandum and Affidavit) AJ's Motions in Limine (Oct. 17, 2003) Original Image of this Document (PDF)
• 2003 WL 23820205 (Trial Motion, Memorandum and Affidavit) Lisle's Memorandum in Opposition to A.J.'s Motion to Strike Lisle Expert Report with Respect to Infringement by Equivalence (Oct. 3, 2003) Original Image of this Document with Appendix (PDF)
• 2003 WL 24290863 () (Deposition) (Oct. 2, 2003)

Not Reported in F.Supp.2d                                                                                      Page 6
Not Reported in F.Supp.2d, 2004 WL 765872 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

Original Image of this Document (PDF)
• 2003 WL 24286676 (Trial Motion, Memorandum and Affidavit) Lisle Corporation's Motion to Compel Deposition Testimony and the Production of Documents and Things of Allan Casey (Sep. 23, 2003) Original Image of this Document (PDF)
• 2003 WL 23820200 (Trial Motion, Memorandum and Affidavit) Aj's Response to Lisle's Statement of Undisputed Material Facts in Support of Its Opposition to A.J.'s Motion for Summary Judgment (Sep. 15, 2003) Original Image of this Document (PDF)
• 2003 WL 23820202 (Trial Motion, Memorandum and Affidavit) Aj's Memorandum of Law in Reply on Its Motion for Summary Judgment (Sep. 15, 2003) Original Image of this Document (PDF)
• 2003 WL 23820203 (Trial Motion, Memorandum and Affidavit) Lisle's Memorandum in Reply to A.J.'s Opposition to Lisle's Motion for Summary Judgment of Infringement of U.S. Patent No. 5,287,776 (Sep. 15, 2003) Original Image of this Document (PDF)
• 2003 WL 23820194 (Trial Motion, Memorandum and Affidavit) Lisle's Memorandum in Opposition to A.J.'s Motions for Summary Judgment of Non-Infringement and Invalidity of U.S. Patent No. 5,287,776 (Sep. 8, 2003) Original Image of this Document (PDF)
• 2003 WL 23820197 (Trial Motion, Memorandum and Affidavit) Aj's Response to Lisle's Statement of Undisputed Material Facts (Sep. 8, 2003) Original Image of this Document (PDF)
• 2003 WL 23820198 (Trial Motion, Memorandum and Affidavit) AJ's Memorandum of Law in Opposition to Lisle's Motion for Summary Judgment of Infringement of U.S. Pat. No. 5,287,776 (Sep. 8, 2003) Original Image of this Document (PDF)
• 2003 WL 23820204 (Trial Motion, Memorandum and Affidavit) Aj's Amended Memorandum of Law in Support of Its Motion for Summary Judgment of Non-Infringement and Invalidity of U.S. Pat. No. 5,287,776 (Aug. 27, 2003) Original Image of this Document (PDF)
• 2003 WL 24286671 (Trial Motion, Memorandum and Affidavit) AJ's Amended Motion for Summary Judgment of Non-Infringement and Invalidity of U.S. Pat. No. 5,287,776 (Aug. 27, 2003) Original Image of this Document (PDF)
• 2003 WL 24286672 (Trial Motion, Memorandum and Affidavit) AJ's Amended Memorandum of Law in Support of its Motion for Summary Judgment of Non-Infringement and Invalidity of U.S. Pat. No. 5,287,776 (Aug. 27, 2003) Original Image of this Document (PDF)
• 2003 WL 24282901 () Expert Witness Rebuttal Statement of Marvin Negley (Aug. 15, 2003)

Original Image of this Document (PDF)
• 2003 WL 24282903 () Affidavit of Marvin Negley (Aug. 15, 2003) Original Image of this Document (PDF)
• 2003 WL 24286669 (Trial Motion, Memorandum and Affidavit) AJ's Motion for Summary Judgment of Non-Infringement and Invalidity of U.S. Pat. No. 5,287,776 (Aug. 15, 2003) Original Image of this Document (PDF)
• 2003 WL 24286670 (Trial Motion, Memorandum and Affidavit) AJ's Memorandum of Law in Support of its Motion for Summary Judgment of Non-Infringement and Invalidity of U.S. Pat. No. 5,287,776 (Aug. 15, 2003) Original Image of this Document (PDF)
• 2003 WL 24286673 (Trial Motion, Memorandum and Affidavit) Lisle's Motion for Summary Judgment of Infringement of U.S. Patent No. 5,287,776 (Aug. 15, 2003) Original Image of this Document (PDF)
• 2003 WL 24286674 (Trial Motion, Memorandum and Affidavit) Lisle's Memorandum of Law in Support of its Motion for Summary Judgment of Infringement of U.S. Patent No. 5,287,776 (Aug. 15, 2003) Original Image of this Document (PDF)
• 2003 WL 24282935 () Expert Report of Jon Rau for Defendant AJ Manufacturing Regarding Invalidity of U.S. Pat. No. 5,287,776 (Aug. 4, 2003) Original Image of this Document (PDF)
• 2003 WL 23820191 (Trial Motion, Memorandum and Affidavit) A.J.'s Reply on its Motion for Reconsideration (Jul. 14, 2003) Original Image of this Document with Appendix (PDF)
• 2003 WL 24290864 () (Deposition) (Jul. 8, 2003) Original Image of this Document (PDF)
• 2003 WL 24282902 () Declaration of Robert E. Griffin (Jun. 30, 2003) Original Image of this Document (PDF)
• 2003 WL 23820185 (Trial Motion, Memorandum and Affidavit) Lisle Corporation's Brief on Claim Construction (Jun. 9, 2003) Original Image of this Document (PDF)
• 2003 WL 23820186 (Trial Motion, Memorandum and Affidavit) A.J. Manufacturing Company, Inc.'s Markman Brief in Support of its Motion for Interpetation of Disputed Claim Language (Jun. 9, 2003) Original Image of this Document (PDF)
• 2002 WL 32682856 (Trial Pleading) Answer (Oct. 11, 2002) Original Image of this Document (PDF)
• 2002 WL 32993870 (Trial Pleading) Answer (Oct. 11, 2002) Original Image of this Document (PDF)
• 2002 WL 32682851 (Trial Pleading) Plaintiff Lisle Corporation's Complaint (Oct. 1, 2002) Original Image of this Document with Appendix (PDF)
• 2002 WL 32993871 (Trial Pleading) Plaintiff Lisle Corporation's Complaint (Oct. 1, 2002) Original

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Page 7

Not Reported in F.Supp.2d, 2004 WL 765872 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

Image of this Document (PDF)
• <u>1:02CV07024</u> (Docket) (Oct. 01, 2002)
• <u>2002 WL 32991918</u> () (Transcript) (2002) Original
Image of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Tab I

Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1990 WL 156519 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.)

Page 1

**H**
Only the Westlaw citation is currently available.
  United States District Court, N.D. Illinois, Eastern
                Division.
  Robert L. MENDENHALL and CMI Corporation,
            Plaintiffs,
                v.
  BARBER-GREENE COMPANY, Defendant.
           **No. 80 C 6747.**

           Oct. 5, 1990.

     *MEMORANDUM OPINION*
WILL, District Judge.
**\*1** Plaintiffs ask for a modification of the judgment against defendants for $4,457,066 to include prejudgment interest totalling $5,214,546. We grant the request, but only in part.

"[P]rejudgment interest should ordinarily be awarded under [35 U.S.C. § 284] absent some justification for withholding such an award ...." *General Motors Corp. v. Devex Corp., 461 U.S. 648, 657 (1983).* And the Federal Circuit has determined that prejudgment interest on lost profits is to be treated no differently than interest on royalties. *Gyromat Corp. v. Champion Spark Plug Co., 735 F.2d 549, 556 (Fed.Cir.1984).* Defendant Barber-Greene, however, argues that in this case an award of prejudgment interest, on top of the award that it assumes the jury made to Mendenhall and CMI for replacement parts, would doubly compensate plaintiffs for delay. We see a number of problems with Barber-Greene's argument, not the least of which is that no legal authority supports it.

Barber-Greene cites *Aro Mfg. Co. v. Convertible Top Co., 377 U.S. 476, 512 (1964)* (*Aro II* ) and *King Instrument Corp. v. Otari Corp., 767 F.2d 853 (Fed.Cir.1985),* but those cases stand for a principle unrelated to the one which Barber-Greene would like to establish. Barber-Greene correctly cites *Aro II* and *King Instrument* for the principle that "after a patentee has collected from ... a direct infringer damages sufficient to put him in the position he would have occupied had there been no infringement, he cannot thereafter collect actual damages from a person liable only for contributing to the same infringement." *Aro II, 377 U.S. at 512;* *quoted at King Instrument, 767 F.2d at 866.* But that principle

was not violated in the present case, since the plaintiffs have not sought recovery on lost parts sales for which they have previously collected damages.

Pursuant to the "entire market value" theory, plaintiffs had to establish that CMI would have made the spare parts sales but for Barber-Greene's infringement. *King Instrument, 767 F.2d at 866.* Barber-Greene does not now argue that plaintiffs' evidence on this issue was insufficient. Rather, it seeks to establish that awards for spare parts and prejudgment interest are inconsistent. That issue, however, was not even considered in either *Aro II* or *King Instrument,* and we do not see any merit to it. It is well established, as enunciated in *Aro II,* that a party may not receive damages from a contributory infringer when it has also been compensated for the same loss by the direct infringer. But whether prejudgment interest should be awarded is a separate question and unrelated to the principle that full satisfaction received from one tortfeasor prevents recovery from another.

Barber-Greene's second argument against awarding prejudgment interest has more merit. Barber-Greene contends that, after it raised significant questions regarding the validity and enforceability of plaintiffs' patents, it was plaintiffs who created the delay for which they now want compensation by seeking and obtaining a stay of proceedings in this court to return to the Patent Office for reissue proceedings. That stay lasted for more than three years: from April 14, 1982 until June 4, 1985. Accordingly, defendant urges that no interest be awarded prior to June 4, 1985.

**\*2** To grant interest in this case from 1980 on, ignoring that the plaintiffs obviously felt it necessary to return to the Patent Office to attempt to resolve their own doubts as to validity and enforceability, created by defendant's admittedly significant contentions, would be to award interest for a delay which the plaintiffs requested and obtained believing it was in their best interests to do so.

Among the cases cited by plaintiffs, *G.M. v. Devex Corp., supra,* and *Gyromat Corp. v. Champion Spark Plug, supra,* simply stand for the propositions that prejudgment interest should ordinarily be awarded, in both lost profits and royalties cases, and that trial courts have considerable discretion in determining

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                 Page 2
Not Reported in F.Supp., 1990 WL 156519 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

the period and the amount.  Plaintiffs have also directed our attention to *Scott Paper Co. v. Moore Business Forms, Inc.,* 594 F.Supp. 1051 (D.Del.1984) and *Lemelsor v. Mattel, Inc.,* 1990 WL 16785, 1990 U.S.Dist. LEXIS 1267 (N.D.Ill.), as examples of cases where prejudgment interest was awarded for the entire period of the litigation, including hiatuses for reissue proceedings. But *Scott Paper* recognized the conclusion that we have reached here-that prejudgment interest may be inappropriate in cases where the reissue proceedings create a delay, deliberately produced by the plaintiffs, and largely or exclusively for their own benefit, see 594 F.Supp. at 1083-and *Lemelsor,* to the extent that it is contrary, does not persuade us that prejudgment interest should be awarded for the period of the reissue proceedings in this case.

The delay in this case, for the sake of the reissue proceedings, was created by plaintiffs for their benefit.  Barber-Greene did not seek reissue or to delay the trial until the reissue proceedings were completed.  And the reissue proceedings were not for Barber-Greene's benefit.  In fact, because of the reissue proceedings, Barber-Greene and its parent, Astec, effectively lost the opportunity to challenge the validity and enforceability of plaintiffs' patents, either in this court or in the Astec case in Tennessee.

We conclude, therefore, that plaintiffs are entitled to interest beginning only from the day they succeeded in obtaining the reissue patents that resolved the significant contentions raised by defendant.  We also conclude that interest should be calculated using the prime rate applicable each month from June 1985 until the date of judgment, May 21, 1990.

We apply the prime rate even though CMI has asked for a higher-than-prime rate.  The Federal Circuit has accorded trial courts discretion to choose between a statutory rate below prime, *Gyromat Corp v Champion Spark Plug Co., supra;* the prime rate, *Studiengesellschaft Kohle, M.B.H. v. Dart Industries, Inc.,* 862 F.2d 1564 (Fed.Cir.1988); or a higher rate established by showing that the damaged party borrowed money at higher than prime during the damage period. *Lam, Inc. v. Johns-Manville Corp.,* 718 F.2d 1056 (Fed.Cir.1983).  The guiding principle is that damages should be awarded "consistent with Congress' overriding purpose of affording patent owners complete compensation." *General Motors v Devex, supra* at 655.

**\*3** Although it presented evidence as to the average interest payment on its outstanding debt per quarter,

CMI has not established that it ever borrowed money at a rate above the prime rate.  Damage awards are necessarily based on estimates but CMI has made too many unexplained assumptions in arriving at its requested rate.  CMI has not produced evidence or even argument to show either that it would not have been subject to higher-than-prime interest payments if it had captured the infringing sales made by Barber-Greene or that it was paying a higher-than-prime rate for the new money it borrowed during the infringement period.  We find, therefore, that the prime sufficiently compensates CMI for the delay between infringement and damage payment without the additional possibly unwarranted assumptions made to arrive at the higher rate.

Delay prevented CMI from having the use of the profits the jury found it would have made absent Barber-Greene's infringement.  It also prevented CMI from making interest on interest, which may only be compensated by awarding compounded prejudgment interest. *See Gorenstein Enterprises v. Quality Care-USA,* 874 F.2d 431, 437 (7th Cir.1989). Interest should be compounded monthly in order fully to compensate for delay.  We find that CMI's proposed of method of allocating sales to quarters according to the time in which they were made by Barber-Greene is a reasonable one.

Whether interest should be simple or compound is again left to our discretion. *Bio-Rad Laboratories, Inc. v. Nicolet Instrument Corp.,* 807 F.2d 964, 969 (Fed.Cir.1986).  CMI has asked that interest be compounded daily.  Barber-Greene (1) opposes any payment of interest (2) contends that if interest is to be paid, none at all should be paid on parts sales because parts sales, as the evidence disclosed, are speculative, and (3) that if interest is paid on parts sales, then no less than 38 percent of the total sales should be allocated to parts, based on CMI's records and attributed to later years than original unit sales. CMI asserts, without explanation, that only 10 percent of the jury's damage judgment should be attributed to parts.  The jury, it should be noted, made no allocation between parts and units.

We conclude that interest should be awarded on the total damages at the prime rates charged monthly by banks on short-term business loans, with interest compounded monthly from June 1985 to May 21, 1990.  Based on the various calculations submitted to us, we believe that amount to be $2,038,611.77. If the parties disagree with that conclusion, they have fifteen days to file objections.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1990 WL 156519 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

Judgment having previously been entered on May 21, 1990 in the amount of $4,457,066 based on the jury's verdict, that judgment will be amended by the addition of interest.

Finally, an injunction will be entered enjoining defendant from infringing the relevant claims of U.S. Patents Nos. Re 31,904 and Re 31,905 by the manufacture, use, sale or installation of direct-fired, parallel flow drum mixers with center-feed recycle inlets or recycle kits for installation on a direct-fired, parallel flow drum mixer, until expiration of those patents and from service or repair of any infringing drum mixer or recycle kits but only until this judgment is satisfied. Once plaintiffs have been paid their damages, further repairs will not constitute infringement and defendant should not be prevented from making them.

**\*4** A copy of the proposed judgment order and injunction is attached. Any objections thereto should likewise be filed within fifteen days. Thereafter appropriate orders will enter.

### ORDER AND JUDGMENT

WILL, District Judge.
This action was tried to the court and jury. The parties stipulated that the validity and enforceability of plaintiffs' U.S. Patents Nos. Re 31,904 and 31,905 were not an issue in this case, those issues having been decided in plaintiffs' favor in another action between plaintiffs' and defendant's parent, Astec Industries, Inc., *Robert L. Mendenhall and CMI Corporation v. Astec Industries, Inc.,* No. CIV-1-86-729, United States District Court for the Eastern District of Tennessee. The parties also stipulated that defendant Barber-Greene Co. infringed claims 1-18 of plaintiffs' U.S. Patent No. Re 31,905.

After hearing the evidence and the arguments of counsel, the jury made the following findings:

1. That defendant Barber-Greene Company infringed claim 1 of plaintiffs' U.S. Patent No. Re 31,904 by each of its 100 sales after August 5, 1980 of a direct-fired, parallel flow drum mixer with center-feed recycle inlet and its 54 sales after August 5, 1980 of a recycle kit for installation on a direct-fired, parallel flow drum mixer.

2. That plaintiff CMI Corporation would have made 35 of defendant's 100 sales of a direct-fired parallel flow drum mixer with center-feed recycle inlet if defendant Barber-Greene had not infringed plaintiffs'

U.S. Patents No. Re 31,904 and Re 31,905.

3. That plaintiff CMI Corporation's lost profits for the 35 sales it lost to defendant Barber-Greene Company would have been $4,457,066.

Upon consideration of the jury's findings, the parties' stipulations, the evidence presented at trial, and the parties' briefs on the issue of prejudgment interest, the court's findings of fact and conclusions of law are as follows:

1. Plaintiffs Robert L. Mendenhall and CMI Corporation are the owners of U.S. Patent Nos. Re 31,904 and Re 31,905, and have the right to recover all damages for infringement of these patents.

2. That plaintiffs' U.S. Patents Nos. Re 31,904 and Re 31,905 are valid and enforceable.

3. That defendant Barber-Greene Company infringed claim 1 of U.S. Patent No. Re 31,904 and claims 1-18 of U.S. Patent No. Re 31,905.

4. That plaintiffs Robert L. Mendenhall and CMI Corporation are entitled to judgment against defendant Barber-Greene Company in the amount of $6,495,677.77 consisting of jury damages of $4,457,066, judgment for which was entered May 21, 1990, plus prejudgment interest of $2,038,611.77.

5. That defendant Barber-Greene Company's counterclaim for declaratory judgment contesting the ownership, validity, infringement and enforceability of the patents in suit is dismissed.

6. That defendant Barber-Greene Company and its officers, agents, servants, and employees are hereby enjoined from infringing claim 1 of U.S. Patent No. Re 31,904 and claims 1-18 of U.S. Patent No. Re 31,905 by their manufacture, use, sale, and installation of Barber-Greene's direct-fired, parallel flow drum mixers with center-feed recycle inlets or recycle kits for installation on a direct-fired, parallel flow drum mixer, until expiration of those patents, and from service or repair of those infringing drum mixers or recycle kits until the judgment is satisfied. 35 U.S.C. § 283.

**\*5** 7. That plaintiffs shall recover their costs from defendant.

N.D.Ill.,1990.
Mendenhall v. Barber-Greene Co.
Not Reported in F.Supp., 1990 WL 156519 (N.D.Ill.)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                            Page 4
Not Reported in F.Supp., 1990 WL 156519 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**


END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.