**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

LG. PHILIPS LCD CO., LTD.,                )
                                          )
                    Plaintiff,            )    C.A. No. 05-292 (JJF)
                                          )
        v.                                )    **DEMAND FOR JURY TRIAL**
                                          )
TATUNG COMPANY; TATUNG                    )
COMPANY OF AMERICA, INC.;                 )    **REDACTED - PUBLIC VERSION**
CHUNGHWA PICTURE TUBES, LTD.;             )
AND VIEWSONIC CORPORATION,                )
                                          )
                    Defendants.           )

---

**DEFENDANTS' ANSWERING BRIEF IN OPPOSITION TO**
**PLAINTIFF'S MOTION FOR ENTRY OF FINAL JUDGMENT,**
**INCLUDING ENHANCED DAMAGES, ATTORNEYS FEES AND**
**EXPENSES AND PRE-JUDGMENT INTEREST**

OF COUNSEL:

Teresa M. Corbin
Glenn W. Rhodes
Howrey LLP
525 Market Street, Suite 3600
San Francisco, California 94105
(415) 848-4900

Julie S. Gabler
Howrey LLP
550 South Hope Street, Suite 1100
Los Angeles, California 90071
(213) 892-1800

Dated: September 25, 2006

Robert W. Whetzel (#2288)
whetzel@rlf.com
Steven J. Fineman (#4025)
fineman@rlf.com
Matthew W. King (#4566)
king@rlf.com
Richards, Layton & Finger
One Rodney Square, P.O. Box 551
Wilmington, DE 19899
(302) 651-7700
Attorneys for Defendants/Counterclaimants
Tatung Company, Tatung Company of
America, Chunghwa Picture Tubes, Ltd, and
Viewsonic Corporation

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. iv

INTRODUCTION .................................................................................................................1

NATURE AND STAGE OF THE PROCEEDING.........................................................................4

SUMMARY OF ARGUMENT ...............................................................................................5

STATEMENT OF FACTS .....................................................................................................8

       A.     The Parties. ...............................................................................................8

       B.     The '002 Patent. .......................................................................................8

       C.     LPL Attempts To License Its Portfolio Of 447 United States LCD
            Patents In 2002.........................................................................................9

       D.     LPL Files Suit Against CPT And Others In California In August
            2002.......................................................................................................10

       E.     LPL Files The Delaware Action In 2005....................................................11

       F.     LPL Seeks Preliminary Injunctive Relief On The '121 Patent, Only
            To Later Drop That Patent In The Face Of Overwhelming
            Evidence Of Invalidity. ............................................................................12

ARGUMENT....................................................................................................................13

  I.     THE COURT SHOULD NOT ENTER JUDGMENT UNTIL ALL POST-
       TRIAL MOTIONS HAVE BEEN RESOLVED. ...................................................13

       A.     Defendants Will Raise Significant Issues That Will Undoubtedly
            Cast Doubt On The Appropriateness Of The Jury Verdict.........................13

            1.     As The Trial Evidence Demonstrated, The Court's Claim
                 Construction Contained A Flaw....................................................14

            2.     LPL's Litigation Conduct Warrants A New Trial. .........................14

       B.     Entry Of Judgment Should Be Delayed Because The Amount Of
            Damages Is Incorrect. ..............................................................................15

            1.     The Jury's Finding With Respect To Actual Notice Is
                 Incorrect As A Matter of Law......................................................15

2.   The Jury Only Reached LPL's Proposed Damages Figure Because LPL's Damages Expert Ambushed Defendants At Trial And Testified That He Relied Upon Information That Was Not Disclosed In His Expert Report, And Which He Expressly Denied Relying Upon During His Deposition. .............15

3.   The Damages Award Should Not Be Entered Against All Defendants. ....................................................................................16

II.   LPL IS NOT ENTITLED TO ENHANCED DAMAGES. ...................................16

A.   The Totality Of The Circumstances Requires Denial Of LPL's Application For Enhanced Damages. ........................................................17

1.   LPL Cannot Identify Any Evidence Of Deliberate Copying.........18

2.   Defendants Exercised The Appropriate Level Of Care In Light Of LPL's Decision Not To Enforce Their Rights Under The '002 Patent. ..................................................................19

3.   Defendants Did Not Engage In Any Litigation Misconduct. ........21

4.   No Record Evidence Supports A Finding That A Trebled Or Doubled Damages Award Would Not Impact CPT. ................26

5.   As Reflected By The Jury Verdict, The Present Case Was Close And The Claim Construction Was, And Remains A Disputed Issue. ............................................................................27

6.   LPL's Delay In Bringing Suit On The '002 Patent Negates Any Weight Given To The Duration Of Infringement. .................30

7.   Defendants Had No Need To Take Any Remedial Action In Light Of LPL's Decision Not To Prosecute Its Claims Under The '002 Patent. ..................................................................30

8.   Defendants Did Not Have Any Motivation To Harm LPL............31

9.   Defendants Did Not Attempt To Conceal Infringement................31

III.   LPL HAS NOT DEMONSTRATED A BASIS FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES.................................................................32

A.   This Case Is Not An Exceptional Case. .......................................................33

B.   Even If The Court Determines That This Case Is Exceptional, The Court Should Exercise Its Discretion And Not Award Attorneys' Fees And Expenses. ...............................................................................34

ii

IV.   LPL'S REQUEST FOR PRE-JUDGMENT INTEREST SHOULD BE
      DENIED..................................................................................................................35

      A.    LPL Is Not Entitled To Pre-judgment Interest For Any Period Of
            Time Prior To The Filing Of The Complaint.............................................36

      B.    If The Court Determines That Pre-judgment Interest Is
            Appropriate, LPL Should Be Limited To Interest At The One Year
            Treasury Bill Rate. ...................................................................................36

      C.    If The Court Determines That Pre-judgment Interest Is
            Appropriate, LPL Should Be limited To Simple Interest, Or At
            Most, Interest Compounded Annually.......................................................38

CONCLUSION.................................................................................................................40

## TABLE OF AUTHORITIES

### CASES

*Allen Archery, Inc. v. Browning Mfg. Co.,*
898 F.2d 787 (Fed. Cir. 1990)...................................................................................................37

*Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.,*
246 F.3d 1336 (Fed. Cir. 2001)................................................................................................35

*Cybor Corp. v. FAS Technologies, Inc.,*
138 F.3d 1448 (Fed. Cir. 1998)...........................................................................................33, 34

*Espeed, Inc. v. Brokertec USA, L.L.C.,*
417 F. Supp. 2d 580, 600 (D. Del. 2006)..................................................................................34

*Forest Labs, Inc. v. Abbott Labs,*
339 F.3d 1324 (Fed. Cir. 2003).................................................................................................33

*Gart v. Logitech, Inc.,*
254 F.3d 1334 (Fed. Cir. 2001)...........................................................................................15, 18

*Gen. Motors Corp. v. Devex Corp.,*
461 U.S. 648 (1983).............................................................................................................35, 36

*Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.,*
166 F. Supp. 2d 1008 (D. Del. 2001)........................................................................................19

*IMX, Inc. v. Lendingtree, LLC,*
C.A. No. 03-1067-SLR 2006 U.S. Dist. LEXIS 284 (D. Del. Jan. 6, 2006) ............................20

*Joy Tech., Inc. v. Flakt, Inc.,*
954 F. Supp. 796 (D. Del. 1996)...............................................................................................37

*Kaufman Co., Inc. v. Lantech, Inc.,*
926 F.2d 1136 (Fed. Cir. 1991).................................................................................................37

*Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.,*
383 F.3d 1337 (Fed. Cir. 2004).................................................................................................19

*Laitram Corp. v. NEC Corp.,*
115 F.3d 947 (Fed. Cir. 1997)...........................................................................................37, 38

*Lucent Tech., Inc. v. Newbridge Networks, Inc.,*
168 F. Supp. 2d 269, 275-76 (D. Del. 2001) ............................................................................34

*Markman v. Westview Instruments, Inc.,*
52 F.3d 967 (Fed. Cir. 1995)....................................................................................................17

*Mobil Oil Co. v. Amoco Chems. Corp.,*
915 F. Supp. 1333 (D. Del. 1994)............................................................................37

*nCube Corp. v. SeaChange Int'l, Inc.,*
313 F. Supp. 2d 361 (D. Del. 2004).........................................................................27

*nCube Corp. v. Seachange Int'l, Inc.,*
436 F.3d 1317 (Fed. Cir. 2006).........................................................................17, 27

*Novartis Pharm. Corp. v. Abbott Labs., Inc.,*
294 F. Supp. 2d 557 (D. Del. 2003).........................................................................28

*Philips Elec. N. Am. Corp. v. Contec Corp.,*
C.A. No. 02-123-KAJ, 2004 WL 1622442 (D. Del. July 12, 2004)............................37

*Philips Electronics North America Corp. v. Contec Corp.,*
312 F. Supp. 2d 649 (D. Del. 2004)....................................................................18, 38

*Phillips Petroleum Co. v. Rexene Corp.,*
C.A. No. 90-209-LON, 1997 WL 781856 (D. Del. Sept. 4, 1997)..............................37

*Read Corp. v. Portec, Inc.,*
970 F.2d 816 (Fed. Cir. 1992).........................................................................17, 31

*Rite-Hite Corp. v. Kelley Co., Inc.,*
56 F.3d 1538 (Fed. Cir. 1995)..................................................................................38

*Schering Corp. v. Precision-Cosmet Co.,*
614 F. Supp. 1368 (D. Del. 1985)............................................................................37

*Soverain Software LLC v. Amazon.com, Inc.,*
383 F. Supp. 2d 904 (E.D. Tex. 2005).............................................................15, 18, 33

*Symbol Tech., Inc. v. Proxim Corp.,*
C.A. No. 01-801-SLR, 2004 WL 1770290 (D. Del. July 28, 2004).......................37, 38

*Tristrata Tech., Inc. v. ICN Pharm., Inc.,*
314 F. Supp. 2d 356 (D. Del. 2004)................................................................. *passim*

## STATUTES AND OTHER AUTHORITIES

35 U.S.C. § 284............................................................................................15, 34

35 U.S.C. § 285....................................................................................................31

35 U.S.C. §287 (a) .................................................................................................14

Fed. R. Civ. P. 58 ............................................................................................................12, 13

7 CHISUM, CHISUM ON PATENTS § 20.03[4][a][iii] (1999) ...............................................35

Robert L. Harmon, *Patents and the Federal Circuit* 893 (6th ed. 2003) .........................17

vi

## INTRODUCTION

This is an unusual case where the outcome was so unsupported that to enter judgment against the Defendants would be a miscarriage of justice. Through LPL's misconduct and misstatements to the jury, LPL extracted a verdict to which it is not entitled. Given the circumstances, the Defendants should be released from the burden of having judgment entered until the Court has the opportunity to address the post-trial motions through briefing and oral argument.

The jury's verdict on infringement was based on the thinnest of reeds – a finding of infringement under the doctrine of equivalents, and this finding itself on the thinnest of evidence. The only evidence presented on the doctrine of equivalents was directed to the claim term "interconnecting." To arrive at their conclusion, the jury had to believe two things that are wrong as a matter of law and/or unsupported by the record: (1) that CPT's use of diodes (semiconductors) did not literally meet "electrically connecting with conductors," but that "semiconductors" were equivalent to conductors and (2) that they could ignore the testing function of "interconnecting" as disclosed in the '002 patent. Moreover, the Court recognized an issue with respect to the construction of the term "resistance" as used in claims 1 and 8 of the '002 patent. The Court, after listening to the testimony of Defendant's expert, Dr. Web Howard, questioned Dr. Howard outside the presence of the jury, on the Court's construction of the term "resistance." In response to the Court's inquiry as to how Dr. Howard would define the term if the Court believed that "resistance" was not limited to a "resistor," Dr. Howard answered that the definition would need to encompass the requirements of the patent, namely, (1) limiting a current surge so as not to cause destruction of the TFT, and (2) allowing testing (the "interconnection" feature expressed in the patent). Dr. Howard testified that the diodes used by CPT (and not

discussed in the '002 patent in the context of the outer guard ring) achieve neither stated requirement of the claim term.

Nevertheless, the jury also found the infringement willful, relying on a deliberate copying theory that LPL has itself labeled as "circumstantial evidence," but was in fact based on unsupported speculation set forth for the first time in LPL's closing argument. Additionally, LPL deliberately went outside Mr. Cobb's expert report on the issue of damages in direct contravention of the Court's order, intentionally misstated the law in closing argument on the issue of the notice required for damages to begin to accrue, and made intentional and unjustified misrepresentations to the jury during closing argument.

Under the briefing schedule entered by the Court, Defendants' post-trial motions will be filed on or before October 10, 2006 and all post-trial briefing will be completed by October 30, 2006. At that time, the Court will have been provided with a detailed explanation as to why the jury's verdict does not withstand scrutiny. Then, the Court will be able to make a decision, based on a complete record, as to whether it is appropriate to enter judgment on the jury's verdict, vacate the verdict in whole or in part, or order a new trial.

Not surprisingly, LPL would prefer that the Court not review the trial record, or LPL's conduct, before making a determination on the issues of pre-judgment interest, enhanced damages and attorneys' fees, and then enter judgment immediately. The reason for LPL's rush to judgment is transparent – the jury's verdict should ultimately be vacated, and enhanced damages and attorneys' fees would not be appropriate in either event. LPL cannot identify any cognizable prejudice it would suffer if the Court delays entry of judgment until after it has considered Defendant's post-trial motions. If, after consideration of Defendants' post-trial

2

motions, the Court decides to enter the jury's verdict, LPL will not have suffered any prejudice in the interim.

## NATURE AND STAGE OF THE PROCEEDING

The trial of this matter took place over nine days in July. On July 27, the jury returned a verdict finding no literal infringement of the '002 patent. The jury found that all four Defendants infringed the '002 patent under the doctrine of equivalents and that, based on their finding that all four Defendants had actual notice of the '002 patent as of February 27, 2002, the infringement was willful. The jury then awarded $52.477M in damages against CPT.

During the trial the Court raised questions concerning the claim construction of the term "resistance" suggesting that the infringement argument advocated by LPL was not one the Court intended and was one now understood to be incorrect.

The Court has not yet entered final judgment. LPL has filed the instant motion asking the Court to enter judgment on the jury's verdict and award exemplary damages, attorneys' fees and pre-judgment interest. The Court has entered a briefing schedule for this motion and for Defendants' post-trial motions. The Court also has stayed briefing of LPL's motion for a permanent injunction. Defendants respectfully submit that their post-trial motions should be addressed prior to the entry of judgment in this case, and that the Court should only enter judgment once consideration has been made of all post-trial motions.

4

## SUMMARY OF ARGUMENT

1.    LPL is not entitled to the jury verdict received it and justice is best served by delaying entry of judgment until the post-trial motions are briefed and decided.    LPL intentionally misstated the law on notice to convince the jury to give a date for the commencement of damages (February 27, 2002). At that time, LPL had not provided CPT with any indication of any claim of the '002 patent that it alleged was infringed by any CPT product. The notice date proffered by LPL cannot hold as a matter of law. Additionally, there is no doubt that LPL went outside of its damage expert's (Mr. Cobb's) report in ambushing CPT on the damage issue.

Equally compelling as a basis for delaying entry of judgment until all motions are briefed and heard is the evidence on infringement.    LPL strenuously argued that "semiconductors" are a kind of "conductor" and that the Court's construction of "interconnecting" encompassed interconnection through diodes (semiconductors).    The jury found no literal infringement, but found infringement under the doctrine of equivalents.    The only evidence presented at trial on the doctrine of equivalents pertained to interconnecting.    The jury had to ignore the testing function described and claimed in the '002 patent in arriving at its conclusion. Moreover, the Court recognized difficulties in its construction of the "resistance" claim limitation. The Court asked Defendants' expert, Dr. Howard, whether the Court's claim construction order was flawed and how it could be fixed.    Dr. Howard explained that "resistance" needed to include in its construction the requirements of the patent – namely, that the resistance minimize current flow and be of a specified resistance, neither of which is met by the use of a diode. Dr. Howard further noted that the implementation of the resistance limitation required considering the testing function of the device disclosed in the '002 patent.

5

2.    LPL is not entitled to enhanced damages.  The award of enhanced damages is reserved for the most egregious cases – this is not such a case.  Here, the totality of circumstances demonstrate that this was a close case, there is no evidence of Defendants having engaged in deliberate copying, Defendants exercised the appropriate level of due care in light of LPL's decision not to timely enforce its rights under the '002 patent, and Defendants did not engage in any litigation misconduct.  As a result, LPL is not entitled to an award of enhanced damages.

The jury concluded that LPL infringed the '002 patent – under the doctrine of equivalents – but not literally.  These findings demonstrate the closeness of the case.  LPL attempts, but fails, to spin unconvincing, circumstantial evidence of deliberate copying into an enhanced damages award, but LPL failed to adduce any evidence that Defendants deliberately copied technology covered by the '002 patent.  Also, Defendants were compelled to defend against LPL's claims of infringement under both the '002 patent and the '121 patent through May 1, 2006. On May 1, 2006, LPL finally withdrew its claims under the '121 patent, in light of compelling evidence of invalidity.  It is against this background that LPL seeks enhanced damages.  While Defendants believe that the Court should vacate the jury's verdict, in whole or in part, following consideration of defendant's post-trial motions, and should delay ruling on this issue until such time, the record no evidence nonetheless militates strongly in favor of denying LPL's request for enhanced damages.

3.    For the same reasons that LPL should not recover enhanced damages, LPL should not be entitled to recover attorneys' fees or expenses.  This case presented close issues of infringement and validity.  LPL has offered no basis on which to determine that this case is exceptional other than to point to the jury's finding of willfulness.  First, there is no record

6

evidence to suggest that any non-CPT Defendants received any notice of infringement of the '002 patent prior to February 27, 2002. Second, the jury's finding that CPT had actual notice of LPL's claims of infringement is incorrect as a matter of law. The February letters do not satisfy the prerequisites for actual notice. For these reasons, this case is not exceptional. In any event, the Court should exercise its discretion and deny LPL's application for attorneys' fees and expenses. The closeness of the case, and the failure of LPL to adduce any evidence of deliberate copying, weigh heavily in favor of a denial of LPL's request for attorneys' fees and expenses.

4.    In light of the defects in the damages verdict, and LPL's delay in prosecuting its claims, LPL should not be allowed to recover pre-judgment interest. LPL did not commence litigation on the '002 patent for nearly three years after it purportedly gave notice to Defendants. LPL should not reap a windfall from this delay. To the extent the Court is inclined to award pre-judgment interest, the Court should limit the recovery period to the time period after the filing of the complaint, and should use the U.S. Treasury bill rate, compounded annually, to calculate the amount of interest. LPL's request for pre-judgment interest, compounded quarterly, is not supported by the record.

RLF1-3062271-2

## STATEMENT OF FACTS

### A.    The Parties.

Plaintiff LG.Philips LCD Co., Ltd. ("LPL") is a corporation organized under the laws of the Republic of Korea, having a business located in Seoul, Korea.  Defendant Chungwha Picture Tubes, Ltd. ("CPT") is a Taiwanese corporation, having a place of business in Taoyuan, Taiwan. LPL and CPT manufacture LCD panels and modules which are used to make certain LCD Display Products.  CPT's LCD panels are incorporated into LCD products including televisions, laptop computers and monitors.  Defendant Tatung Co. ("Tatung") is a Taiwanese corporation, having a place of business in Taipei, Taiwan.  Tatung Co. of America ("TUSA") is a California corporation, having a place of business in Long Beach, California.  Defendant ViewSonic Corporation ("ViewSonic") is a Delaware corporation, having a place of business in Walnut, California.

### B.    The '002 Patent.

United States Patent No. 5,019,002 (the "'002 patent") was issued to Scott Holmberg on May 28, 1991.  PTX 3.  The '002 patent was subsequently assigned to Alphasil on September 8, 1988 and then to Honeywell Corporation on April 4, 1989.  Trial Tr.[1] 600:20-602:2 (Ho Lee), PTX 2, 139.  LG Electronics, Inc. ("LGE") purchased the '002 patent from Honeywell in 1995 as part of a portfolio of seven patents for US$1.2M.  Trial Tr. 599:5-600:19 (Ho Lee), PTX 41. Subsequently, LGE transferred the '002 patent and a number of other patents to LPL in August 1999.  Trial Tr. 602:13-23 (Ho Lee), PTX 141.

The '002 patent was not the first invention directed to preventing damage from electrostatic discharge or testing.  There were a number of prior inventions, including several

---

[1] Excerpts of trial transcripts cited herein, as "Trial Tr. __" are attached hereto at Ex. A.

RLF1-3062271-2

relevant prior art Japanese patent applications such as Kawamura, Okawa, Oritsuke and Yudasaka. DTX 3-6, Trial Tr. 1608:2-1653:4 (Dr. Web Howard).

### C.    LPL Attempts To License Its Portfolio Of 447 United States LCD Patents In 2002.

On February 8, 2002, LPL sent its first communication to CPT about LCD patents. In this letter, LPL identified a few patents as "examples" of those in its portfolio, and invited CPT to consider licensing the entirety of the mostly undisclosed portfolio. Trial Tr. 650:21-651:16 (Ho Lee), 1183:7-10 (Belle Chang), PTX 46. This letter was sent to CPT during the Chinese New Year National Holiday (February 9-17, 2002), when CPT was closed for 10 days. Trial Tr. 1183:7-23 (Belle Chang). The February 8 letter did not state that LPL believed CPT was infringing any of LPL's patents, did not identify any CPT products, did not attach any of LPL's patents and did not identify any claims of any of LPL's patents allegedly infringed by one or more of CPT's products. Trial Tr. 650:21-651:23, 655:6-21, 657:2-10 (Ho Lee), PTX 46. On February 27, 2002, LPL sent a second letter to CPT, this time making the bald, unsubstantiated statement that LPL believes CPT is infringing some of LPL's patents. Trial Tr. 652:8-655:2 (Ho Lee), PTX 142. Like the prior letter, the February 27 letter to CPT did not identify any CPT products, did not attach any of LPL's patents and did not identify any claims of any of LPL's patents allegedly infringed by one or more of CPT's products. Trial Tr. 655:6-21, 657:11-15 (Ho Lee), PTX 142. The February 8 and February 27 letters from LPL to CPT are the only two communications introduced at trial that occurred on or before February 27, 2002 – the date the jury found CPT had actual notice of LPL's claims that CPT was infringing the '002 patent.

Neither the February 8 nor the February 27, 2002 letters were sent to Tatung, TUSA or ViewSonic. DTX 115 & 116. No evidence was presented at trial of any communications by LPL to Tatung, TUSA or ViewSonic concerning the '002 patent prior to February 27, 2002 – the

9

date the jury found Tatung, TUSA and ViewSonic had actual notice of LPL's claims that each of them were infringing the '002 patent.

Between March 7 and July 30, 2002, LPL and CPT exchanged at least nine written communications, most of which concerned arrangements for a face-to-face meeting. DTX 117-126, PTX 143-146, Trial Tr. 609:18-613:7, 657:16-661:16 (Ho Lee). A meeting took place on June 11, 2002 wherein LPL presented claim charts to CPT on several patents. Trial Tr. 613:3-614:15, 615:10-616:3 (Ho Lee), PTX 47. LPL's June 11 presentation materials did not include any slides or claim charts directed to the '002 patent. PTX 47. Ho Lee testified at trial that he spoke about the '002 patent at the June 11 meeting using claim charts directed to the '449 patent. Trial Tr. 617:2-620:3 (Ho Lee), PTX 47. Mr. Lee's testimony was inconsistent with the documentary record. PTX 47.

On June 11, in connection with LPL's continued attempts to get CPT to license its 447 U.S. LCD patents, LPL provided to CPT a draft license agreement providing for a 2.5% running royalty rate for all 447 U.S. patents. Trial Tr. 620:4-23 (Ho Lee), PTX 50, DTX 58. At the time LPL provided the draft license agreement to CPT, LPL had not yet identified to CPT all of the patents that would be included within the proposed license, and the proposed license itself did not identify the patents to be covered by the license. Trial Tr. 657:16-661:16 (Ho Lee), 1185:11-1186:9 (Belle Chang), DTX 58, 120-125, PTX 142, 145 and 146. Finally, on July 30, 2002, for the very first time, and in response to CPT's request that it be provided with a list of patents it was expected to license, LPL provided to CPT a complete list of the 447 patents it wanted CPT to license. DTX 124 & 125, Trial Tr. 1186:10-1191:11 (Belle Chang), 657:16-661:16 (Ho Lee).

### D.    LPL Files Suit Against CPT And Others In California In August 2002.

In August 2002, LPL and LGE filed suit against CPT and some of its customers, on six U.S. patents – 4,624,737; 5,825,449; 6,272,537; 6,020,942; 6,002,457 and 5,926,237 – included

10

within those 447 identified in the July 30, 2002 letter. Trial Tr. 1193:10-1195:10 (Belle Chang), 661:13-663:14, 663:19-665:12 (Ho Lee), DTX 48 & 125. The '002 patent was not included in the California lawsuit. *Id.*

During the course of the California litigation, CPT discovered that four of the six patents-in-suit were unenforceable at the time the suit was filed for failure to comply with the requirements for terminally disclaiming patent terms rejected for double patenting. DTX 32-35. CPT filed a motion for summary judgment on this issue, which the California court granted on the grounds that LPL and LGE lacked Constitutional standing to sue CPT on those four patents in August 2002. DTX 20.

Although evidence of the terminal disclaimers and unenforceability issues of four of the six patents-in-suit in California was excluded from trial over Defendants' objections, Defendants maintain that this conduct is relevant to both LPL's and CPT's state of mind concerning the merits of LPL's claims of infringement by CPT of the '002 patent.

### E.    LPL Files The Delaware Action In 2005.

On May 13, 2005, LPL filed suit in Delaware against CPT, Tatung, TUSA and ViewSonic on two patents – the '121 and the '002. DTX 86. LPL had not mentioned the '002 patent to CPT since July 30, 2002 when the '002 patent was included within the list of 447 U.S. patents that LPL offered to license to CPT for a 2.5% running royalty rate. Trial. Tr. 1191:12-1192:2 (Belle Chang). LPL did not provide any warning to CPT that it was going to file suit on the '002 and '121 patents in 2005. Trial Tr. 1192:3-6 (Belle Chang). LPL also did not identify any products that it believed infringed the '002 patent or any claims of the patent it believed were infringed prior to filing suit on May 13, 2005. Trial Tr. 1192:20-1193:9 (Belle Chang).

11

**F.    LPL Seeks Preliminary Injunctive Relief On The '121 Patent, Only To Later
Drop That Patent In The Face Of Overwhelming Evidence Of Invalidity.**

In November 2002, LPL sought a preliminary injunction against Defendants on only the

'121 patent, claiming irreparable harm. LPL did not make any irreparable harm allegations as to

the '002 patent.

Defendants informed the Court that their early investigation had uncovered strong

evidence of third-party sales of modules using tape carrier packages ("TCPs") incorporating the

'121 technology prior to the critical date. Defendants' continued investigation through the close

of discovery and into the deficiency letter process resulted in the belated disclosure by LPL of

evidence that LPL itself had sold products in the United States embodying the '121 prior to the

critical date. Those sales by LPL, which totaled thousands of units, combined with the pre-

critical date sales of Sharp products which also embodied one or more of the claims of the '121

patent, established overwhelmingly that LPL knew or should have known through a reasonable

pre-litigation investigation that the '121 patent was invalid under the on sale bar.

12

## ARGUMENT

### I.    THE COURT SHOULD NOT ENTER JUDGMENT UNTIL ALL POST-TRIAL MOTIONS HAVE BEEN RESOLVED.

LPL urges the Court to enter judgment pursuant to Fed. R. Civ. P. 58. Defendants submit that it would be more efficient and appropriate to delay entry of judgment until such time as Defendants' post-trial motions have been adjudicated. These motions will provide a basis for the Court to vacate, in whole or in part, the special jury verdict that was returned on July 27, 2006. As a result, the Court should delay entering judgment only until such time as it considers Defendants' post-trial motions – motions that will be filed in approximately two weeks pursuant to the Court's briefing schedule.

### A.    Defendants Will Raise Significant Issues That Will Undoubtedly Cast Doubt On The Appropriateness Of The Jury Verdict.[2]

As will be argued fully in Defendants' Rule 50 and 59 motions to be filed on October 10, the special jury verdict contains a number of findings that are incorrect as a matter of law and/or are not supported by the evidence. These issues include the findings of infringement under the doctrine of equivalents, the findings of validity, the findings of actual notice as of February 27, 2002 and the findings of willfulness. Additionally, should the jury's findings of infringement under the doctrine of equivalents and validity stand, the misconduct of LPL during the trial and, especially during closing statements, warrants a new trial on, at a minimum, the issues of damages and actual notice. The misconduct includes the testimony of Mr. Cobb that was outside the scope of his expert report and pre-trial disclosures, argument to the jury as to weight to be accorded to objections by Defendants' counsel, misstatements made during closing argument as to the statutory requirements of actual notice, and exhibit stuffing.

---

[2] Through this brief, Defendants intend only to set forth in summary fashion some of the issues that will be more fully addressed in Defendants' post-trial motions.

1.    **As The Trial Evidence Demonstrated, The Court's Claim Construction Contained A Flaw.**

As was demonstrated during the Court's questioning during the testimony of Defendants' technical expert Dr. Howard, a difficulty was created in the Court's opinion accompanying the claim construction order on the term "resistance." Trial Tr. 1584:14-1597:22, DTX 9 and 10. In the opinion, the Court defined resistance as a circuit component with a specified resistance. As Dr. Howard explained during the Court's questioning on July 25, the only way he understands that definition in this patent is as a resistor – which the Court seemed to exclude in its opinion accompanying the claim construction order. *Id.* The Court asked Dr. Howard how this mistake could be fixed, and Dr. Howard said that resistance should be defined as resistor. *Id.* Dr. Howard went on to state that he was not limiting the scope of the term to the one embodiment described in the patent specification, but that the definition had "to serve the function of having a significant effect, minimizing the surge current." Trial Tr. 1590:2-1593:14 (Dr. Web Howard). If this correction was made, CPT could not infringe the '002 patent because CPT uses a diode, not a resistor, and a diode and a resistor are not functionally equivalent.

2.    **LPL's Litigation Conduct Warrants A New Trial.**

There are two instances of LPL's litigation misconduct that are so egregious that the jury verdict should not be allowed to stand in light of such action. First, and as discussed in Section I.B.2 *supra*, LPL's expert witness testified at trial to information that was not included in his expert report and was not disclosed during his deposition. Second, LPL's counsel made prejudicial remarks in his closing argument that undoubtedly influenced the findings of the jury. Both of these issues will be addressed in greater detail in Defendants' post-trial motions.

14

**B.**     **Entry Of Judgment Should Be Delayed Because The Amount Of Damages Is Incorrect.**

The Court should delay entering judgment for several straightforward reasons – the amount awarded is incorrect as a matter of law and the damages award was rendered based on improper and unreliable expert testimony compounded by improper remarks made by LPL's counsel during closing argument.

**1.**     **The Jury's Finding With Respect To Actual Notice Is Incorrect As A Matter of Law.**

The jury found that all four Defendants had actual notice of LPL's claims of infringement of the '002 patent as of February 27, 2002. This finding is incorrect as a matter of law as to all four Defendants. First, absolutely no evidence was presented that LPL contacted ViewSonic, Tatung or TUSA at any time prior to February 27, 2002 concerning the '002. Thus, no reasonable jury could have found these three Defendants had any awareness at all of the '002 patent as of February 27, 2002. Second, neither the February 8 nor the February 27 letter taken separately or together satisfy the requirements of 35 U.S.C. §287 (a) that LPL provide CPT "a specific charge of infringement by a specific accused product or device." *Soverain Software LLC v. Amazon.com, Inc.*, 383 F. Supp. 2d 904, 908 (E.D. Tex. 2005) (citing *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1345 (Fed. Cir. 2001)). As such, the jury's finding is incorrect as a matter of law as to CPT. Thus, the jury's findings of actual notice as to all four Defendants should be reversed, resulting in the damage award being vacated and the willfulness finding being baseless.

**2.**     **The Jury Only Reached LPL's Proposed Damages Figure Because LPL's Damages Expert Ambushed Defendants At Trial And Gave Testimony That Relied Upon Information That Was Not Disclosed In His Expert Report, And Which He Expressly Denied Relying Upon During His Deposition.**

In direct contradiction to his expert report and deposition testimony, Mr. Cobb testified at trial that he relied on the unsupported hearsay testimony of three individuals – Mr. Ho Lee, Mr.

15

J.J. Kim and Mr. Tsung I.L. Park – to support the yield rate used in his damages model. Mr. Cobb had not spoken to any of these three individuals prior to serving his expert report on June 2, 2006 or prior to his deposition on June 29, 2006 (just 18 days prior to the start of trial). In fact, LPL had not even disclosed that Mr. J.J. Kim and Mr. Tsung I.L. Park were knowledgeable about any aspect of this case in their Rule 26 disclosures so Defendants never had an opportunity to cross-examine these individuals. Ex. B, hereto. As such, Mr. Cobb's reliance at trial on the undisclosed hearsay testimony of these three individuals was an ambush – entirely undisclosed to Defendants prior to Mr. Cobb's trial testimony.

At the pre-trial hearing, the Court instructed the parties that expert testimony outside the scope of pre-trial disclosures would not be allowed and that any party offering such testimony would be subject to a new trial at its expense. D.I. 375, Pre-trial Tr. 7:23-24, 8:1-23. In their October 10 briefing Defendants will be asking the Court to enforce its pre-trial ruling and, at a minimum, award Defendants a new trial at LPL's expense on the issue of damages.

### 3.    The Damages Award Should Not Be Entered Against All Defendants.

LPL argues that the Court should enter judgment in favor of LPL, but fails to state against whom judgment should be entered. This request is directly contrary to the trial record wherein the Court and LPL's counsel made clear that a damages award was sought against only CPT and not any other defendant. Trial Tr. 1924:15-1926:12, 1138:5-13. The Court should not enter judgment for damages against the non-CPT .

## II.    LPL IS NOT ENTITLED TO ENHANCED DAMAGES.

It is well-settled that the district court is vested with discretion in making the determination whether an award of enhanced damages is appropriate.    35 U.S.C. § 284. Notwithstanding LPL's efforts to portray the award of enhanced damages as routine, "[c]ourts should not automatically enhance damages following a finding of willful infringement because

16

punitive damage penalties deter innovation." *Tristrata Tech., Inc. v. ICN Pharm., Inc.*, 314 F. Supp. 2d 356, 360 (D. Del. 2004) (citing Robert L. Harmon, *Patents and the Federal Circuit* 893 (6th ed. 2003)). As a result, "punitive damage awards should only be given 'in cases where conduct is so obnoxious as clearly to call for them.'" *Id.* Indeed, "[e]nhanced damages punish a willful infringer, and thus, require a finding of an increased level of culpability, or, in other words, "'bad faith infringement'." *Id.* Here, there is no evidence of such bad faith infringement.

**A.    The Totality Of The Circumstances Requires Denial Of LPL's Application For Enhanced Damages.**

To assist the district court in analyzing the propriety of enhanced damages, the Federal Circuit has identified a list of factors that should be considered "when evaluating bad faith infringement: ... 1) whether the infringer deliberately copied the patentee's invention; 2) whether the infringer knew of the patents and had a good faith belief that it was not infringing or that the patents were invalid; 3) the infringer's behavior in litigation; 4) the infringer's size and financial condition; 5) whether it was a close case; 6) the duration of the infringing conduct; 7) remedial action taken by the infringer; 8) the infringer's motivation for infringement; and 9) whether the infringer attempted to conceal its misconduct." *Id.* (citing *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992) *abrogated on other grounds by*, *Markman v. Westview Instruments, Inc.*, 52 F. 3d 967 (Fed. Cir. 1995) (en banc)). Certain of these factors -- (1) no proof of deliberate copying, (5) the closeness of the case and (8) no motivation, and (9) no activities to conceal alleged infringement – are more important than the others. *Id.* at 362 (relying on these factors in finding enhanced damages not appropriate.); *nCube Corp. v. Seachange Int'l, Inc.*, 436 F.3d 1317, 1325 (Fed. Cir. 2006) (affirming finding of enhanced damages and recognizing that "[m]ost importantly, the court found that the case for literal infringement was not close.").

17

Each of the important factors identified above (as well as the other factors) support CPT's position. LPL's arguments find no support in the record or otherwise. The Court should exercise its discretion to decline enhanced damages.

### 1.    LPL Cannot Identify Any Evidence Of Deliberate Copying.

LPL conducted extensive discovery in preparation for the trial of this matter. LPL requested, and Defendants produced, millions of pages of documents. LPL deposed numerous witnesses, and examined witnesses at trial. Notwithstanding this detailed investigation, LPL has wholly failed to identify a single instance of witness testimony or document evidence to support its allegation that Defendants copied or made deliberate use of the technology covered by the '002 patent. LPL acknowledges this point through its use of the words "suggests" and "circumstantial" in referring to the scant "evidence" that LPL contends supports its argument that Defendants copied LPL's technology. *See* Op. Brf. at 5 ("The evidence at trial strongly suggests that CPT deliberately made use ...."; "This circumstantial evidence of deliberate copying supports ....").

LPL's entire argument that CPT copied LPL's technology is based upon the fact that CPT was purportedly able to increase yield rates for manufacturing LCD products by using both an inner and outer guard ring – increases that purportedly occurred after CPT was allegedly put on notice of the '002 patent.[3] This same type of argument has been specifically rejected by this Court. In *Tristrata Tech., Inc.*, 314 F. Supp. 2d at 361, 356, the Court explained that it was "not persuaded that ICN's development of products that fall within the preferred embodiments of the '157 and '776 patents, subsequent to ICN's receipt of letters from Tristrata putting them on

---

[3] As will be discussed more fully in Defendants' post-trial motions, the jury's finding that actual notice was given on February 27, 2002 runs contrary to well-settled law. *See, Gart v. Logitech, Inc.*, 254 F.3d 1334, 1345 (Fed. Cir. 2001); *Philips Elec. N. Am. Corp. v. Contec Corp.*, 312 F. Supp. 2d 649, 652 (D. Del. 2004); *Soverain Software LLC*, 383 F. Supp. 2d at 908.

18

notice of its patents, is conclusive proof of deliberate copying." Like the plaintiff in *Tristrata*,

LPL failed to adduce any evidence that CPT manufactured its products based on the technology

set forth in the '002 patent. *Id.* ("Although Tristrata introduced substantial evidence at trial

establishing infringement by ICN, Tristrata presented no proof that ICN developed its Viquin,

Glyquin, and Glyquin XM products based on the non-obvious advances of the '157 and '776

patents.").

Indeed, the plaintiff in *Tristrata* actually had some documentary evidence to support its

claim of deliberate copying, and the Court nonetheless held that there was insufficient evidence

to support a finding of deliberate copying.[4] Here, there is no such evidence. LPL's entire

argument is based upon unfounded speculation and innuendo. Moreover, LPL's speculation that

CPT's deliberate copying was motivated by pressure being applied by its customer base is

misplaced. Even if true, which it is not, this fact would militate against awarding enhanced

damages. *See Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 166 F. Supp. 2d 1008, 1041

(D. Del. 2001) ("The court also finds that enhancement is inappropriate because, although the

jury found that Sundstrand's infringement was willful, there is evidence that Sundstrand was

partially motivated by economic pressure in the form of customer dissatisfaction."), *vacated on

other grounds and remanded*, 370 F.3d 1131 (Fed. Cir. 2004).

### 2. Defendants Exercised The Appropriate Level Of Care In Light Of LPL's Decision Not To Enforce Their Rights Under The '002 Patent.

LPL argues, in direct contravention of *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH

v. Dana Corp.*, 383 F.3d 1337, 1341 (Fed. Cir. 2004), that this Court should draw an adverse

inference against CPT based on its lawful decision to maintain the attorney client privilege and

not disclose opinions of counsel and award exemplary damages to LPL. This argument should

---

[4] In *Tristrata*, the plaintiff identified a training manual that utilized terms that were
identical to those found in the patents-in-suit.

19

not be countenanced. The Court correctly barred LPL from making this type of argument to the jury when the Court granted Defendants' Motion *in Limine* #2 on this issue. D.I. 228, 329. LPL now asks this Court to make the very same type of unwarranted and inappropriate adverse inference and use CPT's decision to maintain privilege as a basis to award exemplary damages. LPL cites *Lucent Techs., Inc.*, a case decided before *Knorr-Bremse*, in support of its argument that, in essence, CPT's decision not to waive privilege is grounds for awarding exemplary damages. Op. Brf. at 7-9. To the extent *Lucent Techs, Inc.* can be read to support this argument, it has been effectively overruled by the Federal Circuit's opinion in *Knorr-Bremse*. *Knorr-Bremse* is the leading case on adverse inference and it counsels against the result advocated by LPL. *See also*, *IMX, Inc. v. Lendingtree, LLC*, C.A. No. 03-1067-SLR, 2006 U.S. Dist. LEXIS 284, at *4 (D. Del. Jan. 6, 2006) (applying *Knorr-Bremse* to preclude plaintiff from "seeking to draw an adverse inference or suggesting any adverse evidentiary presumption as to the nature of an opinion on infringement").

Contrary to LPL's representations, CPT exercised the appropriate degree of care in responding to LPL's communications in light of LPL's failure to prosecute its claims. CPT was allegedly informed in the spring of 2002 that "if Chunghwa Picture Tubes did not have any way to resolve [the patent dispute] through amicable negotiation, then we don't have any other way than resorting to a drastic measure." Trial Tr. 611:22-612:2 (Ho Lee). Thereafter, the parties scheduled a meeting which ultimately took place at CPT's offices in Taiwan. Trial Tr. 613:4-11. During this meeting, LPL claims that CPT was informed that it "was infringing eight patents that were held by LG Philips LCD, including '002 patent." Trial Tr. 613:18-19 (Ho Lee). After the June meeting, CPT wrote to LPL and explained that they needed additional time to evaluate LPL's patents.

In August 2002, LPL commenced litigation in California against CPT in an effort to enforce those patents that LPL believed were being infringed by CPT. Specifically, LPL alleged in its complaint in California that CPT had infringed the following patents: 4,624,737; 5,825,449; 6,373,537; 6,020,942; 6,002,457; and 5,926,237. Trial Tr. 664:8-665:9 (Ho Lee). LPL's intentional omission of the '002 patent led CPT to the logical conclusion that LPL did not believe that CPT infringed the '002 patent, or did not intend to enforce the '002 patent. Indeed, LPL did not commence the present litigation asserting claims under the '002 patent until May 2005. Given that LPL threatened to commence litigation against CPT, and then did so, CPT was certainly justified in believing that LPL had determined that it could not, or did not want to, enforce its rights under the '002 patent against CPT.

The jury concluded that CPT did not literally infringe the claims of the '002 patent. This finding, in and of itself, justifies Defendants' good faith belief that they did not infringe the '002 patent. CPT had no reason to form any different conclusion.

### 3.      Defendants Did Not Engage In Any Litigation Misconduct.

LPL argues, without basis, that Defendants have engaged in litigation misconduct. This charge is simply not true. This was a hotly contested case in which both sides won and lost numerous motions that resulted from various instances of the parties' inability to reach agreement. A party's refusal to concede a point that is ultimately decided against it does not, by itself, demonstrate any sort of misconduct. It shows vigilant advocacy, nothing more.

LPL wholly fails to establish any misconduct by CPT warranting enhanced damages. Indeed, LPL casts aspersions of litigation misconduct against Defendants in an apparent attempt to deflect attention away from LPL's own conduct in this case – including obtaining an expedited trial under questionable circumstances, engaging in discovery recalcitrance, and, most

21

importantly acting improperly during trial, often in direct contravention of the Court's pre-trial warnings. As a result, this factor weighs heavily in favor of a denial of enhanced damages.

LPL's first allegation of litigation misconduct allegedly arises from CPT's purported efforts to "delay trial and inflict substantial additional expense on LPL." Op. Brf. at 9. Remarkably, LPL argues in a footnote that "[a]fter agreeing to an expedited trial, CPT repeatedly requested postponement of the trial date, ignoring its own agreement and the Court's consistent statements that the date was firm." Op. Brf. at 9 n. 4. LPL has conveniently omitted any discussion as to why the Court and the parties were engaged in expedited litigation – namely, LPL's representation that it would be irreparably harmed if it was not granted preliminary injunctive relief with respect to *the '121 patent – the patent LPL was forced to abandon in the face of overwhelming evidence of an on sale bar.*

In November 2005, LPL moved for a preliminary injunction with respect to the 121 patent. D.I. 21. A hearing was held on November 16, 2005 during which time the Court offered the parties a choice between a preliminary injunction schedule or an expedited trial schedule. At no point during the hearing did LPL suggest a need to move quickly with the litigation of the '002 patent. Indeed, the prosecution of LPL's claims under the '002 were only addressed when Defendants' counsel reminded the Court that there was a second patent at issue. 11/16/05 Tr. at 40:17-20.[5]

During this November hearing, Defendants advised the Court that they believed that the '121 patent was invalid due to an on sale bar. 11/16/05 Tr. at 3:18-4:22. Defendants explained that they had evidence, and were compiling additional evidence, that would demonstrate that one

---

[5] Excerpts of hearing transcripts cited herein as "mm/dd/yy Tr. ___" are attached hereto as Ex. C.

or more products sold by third-parties embodying the '121 technology were on sale at least a year before the filing date in the United States. *Id.*

During a hearing held on December 8, 2005, Defendants suggested that the '121 patent could be disposed of quickly in light of the on sale bar defense. Defendants suggested that an early summary judgment motion presented to the Court in January 2006 could dispose of this matter. 12/8/05 Tr. at 12:24-13:12. In referring to the on sale bar defense, LPL argued that "I don't think it's a legal issue. On sale bar defense is highly factual." 12/8/05 Tr. at 16:5-7. Thereafter, LPL systematically withheld documents that would have proven without question that Defendants were entitled to judgment on the invalidity of the '121 patent because not only were third parties such as Sharp selling products embodying the '121 patent prior to the critical date, but *LPL itself* was selling products in the United States embodying the '121 patent in this same time period. As Defendants argued at the April 25, 2006 hearing, "not until February 21st and then again on March 17th did we even know that there was third-party discovery to do in relation to sales of LPL panels because they had systematically withheld that information." 4/25/06 Tr. at 15:21-16:1.

Based upon the documents that were produced to Defendants on March 17, 2006, and certain documents that were produced between March 17 and the hearing on April 25, it became evident that LPL "was in a position that it knew that it had an on-sale bar to its patent before it started filing suit against defendants in this case." 4/25/06 Tr. at 25:19-22. When pressed by the Court on this issue, LPL's counsel was unable to state one way or the other whether its patent was invalid under the on sale bar. 4/25/06 Tr. at 38:5-42:16. As a result, the Court ordered LPL to make a decision whether to allow Defendants to have further discovery relating to the on sale bar defense with respect to the '121 patent, or to withdraw its claims for infringement of the '121

23

patent. D.I. 181. Less than a week later, LPL dismissed its claims on the '121 patent. D.I. 180. Thus, the entire basis for LPL's representation to the Court that expedited treatment of this action was necessary had been eroded by LPL's tacit admission that it sought a preliminary injunction, wasted the Court and Defendants' resources and engaged in months of needless litigation, either all the while knowing the patent to be invalid, or without conducting a reasonable investigation prior to filing suit. LPL's argument that *Defendants* caused LPL to incur unnecessary costs should not be countenanced.

The remaining examples LPL proffers of Defendants' alleged litigation misconduct are equally unavailing. First, LPL argues that Defendants' deposition practice constitutes misconduct. LPL is merely rehashing arguments raised by LPL in motions to compel that were filed on May 25, 2006 and May 26, 2006, respectively, that were denied by the Court during the pretrial conference. (D.I. 198, D.I. 199, D.I. 368). As more fully described by Defendants in their responses to Plaintiff's motions to compel, many of the difficulties experienced during the litigation process arose as a result of LPL's practice of asking and re-asking questions that confused the witnesses who were predisposed to confusion due to language and cultural differences.[6] Where mistakes were made in Rule 30(b)(6) testimony, those mistakes were promptly corrected by the same witness (*e.g.*, Milton Kuan), or a replacement witness was provided (*e.g.*, Pearlyn Lim). LPL tries to make much of Mr. Kuan's confusion during his first day of deposition concerning sales by system brand owners. Op. Brf. at 11. Mr. Kuan started his second day of deposition by going on the record to correct mistakes he had made the day before. This is not a case of "false denials" – this is a situation of a very nervous witness who

---

[6] As set forth in Defendants' responses, Defendants offered to cure any differences by offering additional witnesses for deposition. Instead of complying with this Court's obligation to meet and confer (which would have obviated LPL's concerns), LPL moved the Court in an effort to cast an undeserved shadow over Defendants.

24

was being bullied by an aggressive litigator and froze. LPL was in no way prejudiced by the less than 24 hour gap between Mr. Kuan's original testimony concerning CPT's knowledge about third-party sales and his corrected testimony the following day.

LPL's other examples of "false denials" are trumped up charges that are the result of LPL's decision not to conduct third-party discovery. Throughout the depositions, LPL repeatedly sought admissions from Defendants' witnesses, particularly their Rule 30(b)(6) witnesses, concerning facts about which the companies did not have personal knowledge (not sufficiently detailed personal knowledge). One example used by LPL is the issue of CPT's knowledge that its panels are incorporated into products sold by others in the United States. It is undisputed that CPT has almost no sales directly into the United States. It is also undisputed that CPT sells products to system integrators and/or system brand owners who sell their products in markets other than the United States. CPT simply does not know specifics about where its panels are sold after they leave CPT's possession. The fact that CPT knows that some of its panels are used in Dell, HP, IBM or any other U.S. headquartered brand that sells products globally, does not tell CPT anything about where a particular unit incorporating a CPT panel is sold. LPL refused to believe this simple fact and, instead of taking third-party depositions of companies in the distribution chain, repeatedly accused CPT of lying about what it knows. "U.S. Brand" simply does not equal "U.S. sale" – this fundamental miscalculation by LPL is at the heart of its wrongful allegations of "false denials." LPL's baseless accusations do not establish litigation misconduct.

Second, Defendants were justified in their efforts to prevent LPL from using Teresa Wong as a translator/advocate at trial, and in their efforts to preclude the use of the word "DiKang" as "resistance." Simply because the Court ruled against Defendants on those two

issues does not mean Defendants engaged in litigation misconduct. Defendants had reasonable good faith concerns over the accuracy of the translation process and the apparent advocacy of the interpreter in this case.

Third, Defendants produced documents as maintained in the ordinary course of business. LPL's complaint that sales printouts where provided "without subtotals or totals" is a complaint that Defendants did not maintain their documents in the ordinary course in a manner that would have been most advantageous to LPL in this litigation. Op. Brf. at 10. This complaint is specious. Defendants produced records as they were maintained in accordance with the Rules. Defendants cannot be charged with exemplary damages because they designed their sales reports without subtotals.

Finally, and as will be described in greater detail in Defendants' post-trial motions, it was LPL, not Defendants, who engaged in misconduct during trial. LPL points to one instance where a witness volunteered information that the Court ultimately determined was outside the scope of permissible testimony regarding the California litigation. Such action is not tantamount to litigation misconduct. Conversely, LPL's failure to disclose the bases for its expert's opinions, compounded with the improper expert testimony and improper closing argument, does constitute litigation misconduct. This factor strongly weighs in favor of a denial of LPL's request for enhanced damages.

### 4. No Record Evidence Supports A Finding That A Trebled Or Doubled Damages Award Would Not Impact CPT.

LPL has no basis to assert that doubling or trebling the damages award would be insignificant to CPT. In support of this proposition, LPL points to a CPT statement that "this case" has no material effect on CPT's business operations. That statement evidences nothing about the impact, or lack thereof, of an enhanced damages award as CPT's profitability. Indeed,

26

LPL has not provided any evidence to support an argument that a damages award in the amount of $100 million or $150 million would be insignificant to CPT. To the contrary, the damages expert's testimony shows increasingly narrow profit margins on CPT's LCD panel in recent years. Trial Tr. 1022:7-12 ("not a strong increase year"), 1024:3-11 ("... 2005, as we saw in the first chart, was not a strong profit year ... the business becomes less profitable.") (Art Cobb), 1842:21-1845:6, 1872:4-1874:18, 1859:22-1860:18 (Mike Wagner).    This factor does not support LPL's claims for enhanced damages.

### 5.    As Reflected By The Jury Verdict, The Present Case Was Close And The Claim Construction Was, And Remains A Disputed Issue.

Throughout its brief, LPL cites to this Court's holding in *nCube Corp. v. SeaChange Int'l, Inc.*, 313 F. Supp. 2d 361, 390 (D. Del. 2004) to support its application for enhanced damages. The *nCube* case and the present case are inapposite for many reasons, but the most important reason is that the present case was close, whereas the *nCube* case was not. *See nCube Corp. v. SeaChange Int'l, Inc.*, 313 F. Supp. 2d 361 (D. Del. 2004) (finding that "the case for literal infringement was not a close one where the jury found literal infringement on each of the asserted claims of the '804 patent."), *aff'd*, 436 F.3d 1317 (Fed. Cir. 2006). The Federal Circuit held that this single factor was the most important in affirming this Court's award of enhanced damages. *nCube Corp.*, 436 F. 3d at 1325. The closeness of the present case (evidenced by the fact that the jury found no literal infringement of any claim by any defendant), by itself, warrants a denial of enhanced damages.

The jury's verdict presents the best evidence that the present case was a close case. Specifically, the jury determined that "the method CPT uses to manufacture its LCD modules using only outer guard rings" does not literally infringe Claim 1 of the '002 patent. D.I. 405. Similarly, the jury concluded that "the method CPT uses to manufacture its LCD modules using

27

both inner and outer guard rings" does not literally infringe Claim 1 or Claim 8 of the '002 patent. In short, the jury concluded that neither of the two asserted claims in this action were literally infringed.

While it is true that the jury did return a verdict finding that CPT infringed the '002 patent under the doctrine of equivalents, it is equally true that "[b]y its very definition, the doctrine of equivalents necessarily deals with subject matter that is beyond the literal scope of the claim." *Novartis Pharm. Corp. v. Abbott Labs., Inc.*, 294 F. Supp. 2d 557, 563 (D. Del. 2003), *aff'd*, 375 F.3d 1328 (Fed. Cir. 2004). By its nature, a finding of infringement under the doctrine of equivalents represents a determination by the jury that the case was a close case.

Under the doctrine of equivalents, the analysis begins with a determination of the functions of a specific claim element. Here, both Claims 1 and 8 require "interconnecting substantially all of said row lines to one another and substantially all of said column lines to one another." PTX 1. The Court construed the term "interconnecting" to mean "electrically connecting with conductors," and the Court further explained that "conductors" are "lines, shorts or jumpers." Since the jury was charged with determining that the accused products accomplish the same function, in the same way, to obtain the same result as the claim element at issue, the jury was obligated to determine the function of the "interconnecting" element.

The '002 patent specification only references "interconnecting" in connection with the '222 patent. In fact, the '222 patent is incorporated by reference into the '002 patent. The specification of the '222 patent demonstrates that the primary purpose of "interconnecting" the row or column lines is to allow two-point testing of the entire display. DTX 2. CPT's products lack the required function of two-point testing. Trial Tr. 1351:1-24 (Scott Holmberg video), 1486:5-1487:16 (Dr. Web Howard). As a result, the jury could only find that CPT infringed

28

under the doctrine of equivalents if it ignored the primary function of "interconnecting." Moreover, the jury would need to ignore the fact that the ESD protection (an agreed upon function of interconnecting) is performed in a different way than the patent discloses.

The jury's verdict also turned on the Court's interpretation of the "via a resistance" element. The Court defined "resistance" to mean "a circuit component that has a specified resistance to the flow of electric current and is used to minimize the current surge from an electrostatic discharge." D.I. 217 at 13, D.I. 218 at 4. Thus, the function of the "resistance" is to "minimize the current surge from an electrostatic discharge." CPT's products do not minimize the current surge from an electrostatic discharge – the diodes maximize the current surge. Trial Tr. 1579:1-6 (Dr. Web Howard). This issue was so close that the Court inquired of Defendants' expert, Dr. Howard, as to how the Court erred in its claim construction. Trial Tr. 1586:2-18 (Dr. Web Howard).

The jury also returned a verdict finding that the '002 patent was valid. This ruling is not supported by the record or the jury's other findings – namely that the '002 patent was infringed under the doctrine of equivalents. The evidence at trial demonstrated conclusively that if CPT's use of diodes was found to infringe, then the '002 patent must be invalid because CPT is practicing the prior art, namely the Japanese reference Okawa. Trial Tr. 1605:24-1623:6 (Dr. Web Howard). In other words, the jury could not consistently find both infringement under the doctrine of equivalents and validity over Kawamura, Okawa, Oritsuke and Yudasaka. DTX 3-6, Trial Tr. 1608:2-1653:4 (Dr. Web Howard). For this reason, all or part of the jury's verdict cannot stand – either the patent is not infringed, or it is invalid. On the record before this Court, the '002 patent cannot be both valid and infringed.

29

Given the fact that the Court was concerned about its claim construction during trial, the jury's express rejection of LPL's claim of literal infringement and the inevitable difficult determination as to the application of the doctrine of equivalents and the jury's inconsistent finding of infringement under doctrine of equivalents and validity over Kawamura, Okawa, Oritsuke and Yudasaka, this case was undeniably close.

### 6.    LPL's Delay In Bringing Suit On The '002 Patent Negates Any Weight Given To The Duration Of Infringement.

This factor should be given little or no weight in light of LPL's decision to wait to prosecute its claims under the '002 patent. As more fully described in Section II.A.2, *supra*, LPL did not include the '002 patent in its California litigation, nor did it seek preliminary injunctive relief in connection with its application for such relief on the '121 patent. Defendants cannot fairly be characterized as having engaged in bad faith infringement when LPL had seemingly abandoned its claim under the '002 patent. A plaintiff should not benefit from a delay of its own making.

### 7.    Defendants Had No Need To Take Any Remedial Action In Light Of LPL's Decision Not To Prosecute Its Claims Under The '002 Patent.

As described more fully in Section II.A.2, *supra*, LPL determined not to enforce its rights under the '002 patent until May 2005. Defendants, who believed that they did not infringe the '002 patent, had no reason to change their operations. Moreover, Defendants quickly learned that LPL was attempting to enforce an invalid patent (the '121 patent) after they already had been forced to spend several years defending the California action as to four patents that also were invalid at time of suit. DTX 20, 32-35. For these reasons, Defendants were justified in not taking any remedial action.

30

### 8.    Defendants Did Not Have Any Motivation To Harm LPL.

LPL's sole argument to support its finding that Defendants were motivated to harm LPL is the fact that the parties are competitors. Without more, this fact cannot support a finding of enhanced damages. If the Court were to conclude that merely being a competitor weighs in favor of enhancing damages, virtually every defendant would be saddled with trebled or doubled damages awards. Such a result cannot be squared with *Read Corp.*, 970 F.2d 816. Moreover, the undisputed evidence at trial established that system brand owners and system integrators prefer to use more than one panel supplier. Trial Tr. 1787:2-1789:5 (Oliver Shih), 1796:12-1798:6 (Mike Lee), 1762:17-1763:17, 1765:8-1766:16 (Jeff Volpe). LPL did not present any evidence that CPT took specific sales away from LPL and did not seek damages for lost profits. CPT's damages expert testified that while the two companies are competitors, they do not always directly compete for sales. Trial Tr. 1868:22-1869:15 ("They seem to operate in slightly different spaces in the industry, they don't appear to normally directly compete ....") (Mike Wagner). On this record, no motivation to harm has been shown that would support an award of exemplary damages.

### 9.    Defendants Did Not Attempt To Conceal Infringement.

The seventh factor announced by the *Read* court is whether "the infringer attempted to conceal its misconduct." *Tristrata*, 314 F. Supp. 2d at 360. Defendants never made any effort to conceal their activities. LPL distorts the record in an effort to create a finding of concealment where one does not exist.

The sole basis for LPL's contention that Defendants concealed infringement is selective references to deposition testimony that has been cobbled together in an effort to manufacture some unidentified act of concealment. The issues of which LPL complain arise from significant language and cultural differences – the witnesses were native speakers of Chinese with little or

31

no understanding of English. These difficulties, compounded by LPL's improper practice of asking and re-asking the same question in an effort to confuse the witnesses, contributed to the need to clarify responses in certain instances.

By way of example, LPL argues that Mr. Kuan provided false testimony in "an effort to avoid liability." Op. Brf. at 17. Specifically, LPL argued that Mr. Kuan testified that CPT did not "know that LCD products sold in the U.S. incorporate CPT modules" and cited his deposition transcript at pages 687, lines 11-14. Op. Brf. at 17. Then, LPL argued that it learned that CPT "knows that LCD products sold in the U.S. incorporate CPT modules" and cited to Mr. Kuan and Mr. Tsai's testimony in support. Op. Brf. at 18. Neither of these citations support LPL's statement that CPT knew that LCD products sold in the U.S. incorporate CPT modules. *See* Trial Tr. at 700:7-13 (Milton Kuan), 726:22-727:5 (John Tsai). Moreover, for those instances where Mr. Kuan was mistaken, he corrected his responses the very next day during the continuation of his deposition. Mr. Kuan, like all of Defendants' witnesses, were not accustomed to American litigation practice and were very careful in responding to questions. But Defendants never attempted to conceal any acts of infringement and notwithstanding the language and cultural differences, fulfilled their discovery obligations.

## III. LPL HAS NOT DEMONSTRATED A BASIS FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES.

Under 35 U.S.C. § 285, a Court may award reasonable attorneys' fees only in exceptional cases. This departure from the traditional practice of allowing litigants to each bear their own attorneys' fees is reserved for those specific cases where the facts are so egregious as to warrant punitive relief. A determination whether to award attorneys' fees under Section 285 involves a two-step process by which the Court should first determine whether LPL has proven by clear and convincing evidence that this case is exceptional, and if so, whether an award of attorneys' fees

32

is appropriate. *Forest Labs, Inc. v. Abbott Labs*, 339 F. 3d 1324, 1227-28 (Fed. Cir. 2003). LPL

has failed to present the Court with a reasoned basis as to why this case is exceptional, and has

also failed to justify an award of attorneys' fees in any event.

### A.    This Case Is Not An Exceptional Case.

Notwithstanding the fact that a determination as to whether a case is exceptional is a

prerequisite for recovering attorneys' fees, LPL glosses over this threshold determination. *See*

Op. Brf. at 20-23. LPL's only showing on this issue is its statement that "[w]ilful infringement

alone is sufficient to justify a finding that a case is exceptional." Op. Brf. at 20. While a finding

of willful infringement may, in some circumstances not present in the instant case, constitute a

sufficient basis for determining that a case is exceptional, "a finding of willful infringement does

not require a finding that a case is exceptional." *Cybor Corp. v. FAS Technologies, Inc.*, 138 F.

3d 1448, 1460 (Fed. Cir. 1998). Aside from its bald statement that this case is exceptional

because the jury determined that the infringement was willful, LPL has no support for its

conclusion that this case is exceptional. For all of the reasons set forth in Section II, *supra*, this

is not an exceptional case.

Moreover, LPL's brief highlights one of the reasons the Court should delay entry of

judgment, and consider Defendants' post-trial motions, before addressing the issues of enhanced

damages, attorneys' fee and pre-judgment interest. LPL argues that "[t]he jury concluded that

each Defendant engaged in willful infringement and LPL seeks fees against each Defendant,

jointly and severally" (Op. Brf. at 23), but there is no record evidence whatsoever that

demonstrates that the non-CPT Defendants had any communication with LPL regarding the '002

patent on or before February 27, 2002 -- the date reflected in the jury verdict as the notice date.

LPL will not be able to come forward with any record evidence to support the jury's finding that

any of the non-CPT Defendants had any actual notice of the '002 patent as of February 27, 2002.

33

Thus, the jury's verdict of willfulness must be vacated as to those Defendants, and LPL's sole reliance on the finding of willfulness for its claim of exceptional case, necessitates a finding that this case is not exceptional and, accordingly, a denial of LPL's application for attorneys' fees. For the reasons briefly addressed herein, and which will be described in greater detail in Defendants' post-trial briefs, CPT also did not have actual notice of the '022 patent. In short, the February 8, 2002 and February 27, 2002 letters do not constitute actual notice to CPT as a matter of law. *See e.g., Sovergain Software LLC*, 383 F. Supp. 2d at 908.

**B.    Even If The Court Determines That This Case Is Exceptional, The Court Should Exercise Its Discretion And Not Award Attorneys' Fees And Expenses.**

The decision whether or not to award attorneys' fees is committed to the discretion of this Court, and even a finding that this case is exceptional does not mandate the award of attorneys' fees. *Cybor Corp.*, 138 F.3d at 1471. Since many factors influence the proper determination of this issue, the trial court should weigh considerations such as the closeness of the case, the tactics of counsel, the conduct of the parties, and any other facts that may contribute to a fair allocation of the burdens of litigation as between winner and loser." *Espeed, Inc. v. Brokertec USA, L.L.C.*, 417 F. Supp. 2d 580, 600 (D. Del. 2006). The Court may utilize the factors set forth in the enhanced damages analysis in determining whether an award of attorneys' fees is appropriate. *Tristrata Tech., Inc.*, 314 F. Supp. 2d at 362 (citing *Lucent Tech., Inc. v. Newbridge Networks, Inc.*, 168 F. Supp. 2d 269, 275-76 (D. Del. 2001)).

For all of the reasons discussed more fully in Section II *supra*, and most importantly the closeness of the case, the Court should not award LPL its attorneys' fees. Indeed, the jury concluded that Defendants did not literally infringe the '002 patent. Defendants' only liability in this action arises from a finding of infringement under the doctrine of equivalents – a finding that, by its nature, renders this case a close one. Moreover, LPL wholly failed to demonstrate

34

any evidence of deliberate copying by Defendants. This omission also weighs in favor of a denial of LPL's application for attorneys' fees. Finally, Defendants were compelled to litigate two patent infringement actions on an expedited schedule as a result of LPL's representations to this Court that a preliminary injunction was necessary to protect LPL's rights in *the '121 patent* – representations that proved to be without basis in light of LPL's eleventh hour decision to withdraw its claims for infringement of the '121 patent in the face of overwhelming on sale bar evidence.

## IV.    LPL'S REQUEST FOR PRE-JUDGMENT INTEREST SHOULD BE DENIED.

The decision whether to award pre-judgment interest is vested in the discretion of the district court. The Supreme Court has expressly held that 35 U.S.C. § 284 does not require an award of pre-judgment interest. *See Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 656-57 (1983); *see also* 7 CHISUM, CHISUM ON PATENTS § 20.03[4][a][iii] (1999). In *General Motors*, the Court explained that there are circumstances where the award of pre-judgment interest would be inappropriate. The Court specifically noted that "it may be appropriate to limit pre-judgment interest, or perhaps even deny it altogether, where the patent owner has been responsible for undue delay in prosecuting the lawsuit." *Gen. Motors Corp.*, 461 U.S. at 657; *see also Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F. 3d 1336, 1361-62 (Fed. Cir. 2001) ("Crystal's two year delay in initiating the present suit caused the damages owed by TriTech and OPTi to escalate. The record contains sufficient evidence for the district court to determine that Crystal's delay was self-serving and resulted in prejudice to the Defendants. Thus, the district court acted within its discretion in denying Crystal pre-judgment interest.").

Where, as here, a patent holder contends that the alleged infringer was put on notice in February 2002, purportedly learned within a few months that the alleged infringer did not believe that its products infringed the patent at issue and rejected licensing overtures, and then waited

35

until May 2005 to commence litigation on that particular patent, an award of pre-judgment interest would constitute an unfair windfall.

## A.    LPL Is Not Entitled To Pre-judgment Interest For Any Period Of Time Prior To The Filing Of The Complaint.

As discussed in Section I.B.1, LPL did not provide Defendants with actual notice of their claims of infringement of the '002 patent prior to the filing of the complaint. As Defendants will demonstrate in their post-trial motions, neither damages nor interest should accrue – if at all – any earlier than the filing of this action in 2005.

Moreover, LPL's delay in commencing this action provides a basis for denying pre-judgment interest for the period prior to the filing of this suit. LPL asserts that it notified Defendants about many patents including the '002 patent, but no licensing negotiations ensued. Nonetheless, LPL did not pursue claims of infringement of the '002 patent against any of the Defendants. Indeed, LPL commenced litigation in California in 2002 under certain patents, but did not seek to enforce rights under the '002 patent.

Nearly three years passed before LPL commenced the present action seeking damages for infringement of the '002 patent. Given this inexplicable delay, LPL should not be entitled to recover pre-judgment interest from the date the jury found to be the notice date (February 27, 2002) to the date of the filing of the complaint (May 13, 2005). Otherwise, LPL will benefit unjustly from a delay of its own making.

## B.    If The Court Determines That Pre-judgment Interest Is Appropriate, LPL Should Be Limited To Interest At The One Year Treasury Bill Rate.

Pre-judgment interest should be awarded only "where necessary to afford the plaintiff full compensation for the infringement." *See Gen. Motors Corp.*, 461 U.S. at 654. It serves to compensate the patent holder for the "foregone use of the money between the date of infringement and the date of judgment." *Id*. at 648-649. In requesting pre-judgment interest

36

based on the prime rate, LPL presumably seeks lost interest on money borrowed during the infringement period. *See, e.g., Mobil Oil Co. v. Amoco Chems. Corp.*, 915 F. Supp. 1333, 1371 (D. Del. 1994). Yet, LPL failed to adduce any record evidence that it borrowed money during the alleged infringement period which might otherwise support an award of an interest at the prime rate.

The district court has broad discretion in determining what rate of interest should be applied in an award of pre-judgment interest. *Joy Tech., Inc. v. Flakt, Inc.*, 954 F. Supp. 796, 808 (D. Del. 1996); *Kaufman Co., Inc. v. Lantech, Inc.*, 926 F.2d 1136, 1144 (Fed. Cir. 1991). Given LPL's failure to make any factual showing to support its request for interest at the prime rate, the Court should limit LPL's recovery to interest at the Treasury Bill rate. *See Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 955 (Fed. Cir. 1997); *Allen Archery, Inc. v. Browning Mfg. Co.*, 898 F. 2d 787, 789 (Fed. Cir. 1990); *Phillips Petroleum Co. v. Rexene Corp.*, C.A. No. 90-209-LON, 1997 WL 781856, at *28 (D. Del. Sept. 4, 1997) ("The Court, in its discretion, agrees with Rexene that the prevailing U.S. Treasury Bill rate is the appropriate interest rate for determining pre-judgment interest."); *Symbol Tech., Inc. v. Proxim Corp.*, C.A. No. 01-801-SLR, 2004 WL 1770290, at *10 (D. Del. July 28, 2004) ("Mindful of its discretion, the court concludes that Symbol is entitled to simple interest based upon the United State Treasury Bill One Year Constant Rate ..."); *Joy Tech.*, 954 F. Supp. at 808 (awarding pre-judgment interest at the Treasury Bill rate); *Schering Corp. v. Precision-Cosmet Co.*, 614 F. Supp. 1368, 1384 (D. Del. 1985) (awarding pre-judgment interest at the Treasury Bill rate after finding that plaintiff offered no showing that would justify a higher rate).

In *Laitram*, the Federal Circuit affirmed the district court's award of pre-judgment interest at the U.S. Treasury bill rate, compounded annually. *Laitram Corp.*, 115 F.3d at 955.

37

The Federal Circuit noted that "[t]he district court found that there was no evidence that Laitram,

borrowed money at a higher rate, what the rate was, or that there was a causal connection

between any borrowing and the loss of the use of the money awarded as a result of NEC's

infringement." *Id.* The Court should reach the same result here as the District Court did in

*Laitram,* based on the same findings.

### C.    If The Court Determines That Pre-judgment Interest Is Appropriate, LPL Should Be limited To Simple Interest, Or At Most, Interest Compounded Annually.

LPL seeks pre-judgment interest at the prime rate, compounded quarterly. Based on

established precedent, and the damages model proffered by LPL, quarterly compounding is not

appropriate.

At trial LPL sought, and the jury awarded, $52.477M in compensatory damages based on

a damages calculation proffered by LPL's expert Mr. Cobb. The damages model was based

upon annual, not quarterly, sales figures. As a result, the record is devoid of any evidence that

would suggest how the Court would calculate interest compounded quarterly as LPL requests.

Moreover, LPL has failed to offer any evidence as to why it is entitled to interest compounded

quarterly as opposed to simple interest or interest compounded annually. Indeed, it is well-

settled that pre-judgment interest may consist of simple interest or interest compounded annually

In *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1555 (Fed. Cir. 1995), the Federal

Circuit sitting en banc determined that there is no requirement that interest be compounded, and

held that the district court did not abuse its discretion in awarding simple interest in lieu of

compound interest. *See also, Symbol Tech.*, 2004 WL 1770290, at *10 (awarding simple

interest); *Laitram Corp.*, 115 F.3d at 955 (affirming award of interest compounded annually);

*Philips Elec. N. Am. Corp. v. Contec Corp.*, C.A. No. 02-123-KAJ, 2004 WL 1622442, at *2 (D.

Del. July 12, 2004) (compounding interest annually), *aff'd,* 177 Fed. Appx. 981 (Fed. Cir. 2006).

38

Here, if the Court is inclined to award pre-judgment interest to LPL, which it should not, such an award should be limited to simple interest or interest compounded annually.

In summary, Defendants submit that pre-judgment interest should be denied in its entirety, or limited to the time period after the filing of the complaint in this action.[7] In the alternative, Defendants submit that pre-judgment interest at the one-year U.S. Treasury rate, compounded annually is more appropriate than the methodology suggested by LPL.[8]

---

[7] As Defendants will demonstrate in their post trial motions, a new trial is warranted on this damages issue and the amount of damages, if any, will be determined in a subsequent proceeding.

[8] If the Court awards pre-judgment interest, Defendants respectfully request an opportunity to review or present the calculated amount of interest once an appropriate methodology has been determined.

RLF1-3062271-2

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny in all respects Plaintiff's Motion for Entry of Final Judgment, Including Damages, Attorneys' Fees and Expenses, and Pre-Judgment Interest.

OF COUNSEL:

Teresa M. Corbin
Glenn W. Rhodes
Howrey LLP
525 Market Street, Suite 3600
San Francisco, California 94105
(415) 848-4900

Julie S. Gabler
Howrey LLP
550 South Hope Street, Suite 1100
Los Angeles, California 90071
(213) 892-1800


Dated: September 25, 2006

Robert W. Whetzel (#2288)
whetzel@rlf.com
Steven J. Fineman (#4025)
fineman@rlf.com
Matthew W. King (#4566)
king@rlf.com
Richards, Layton & Finger
One Rodney Square, P.O. Box 551
Wilmington, DE 19899
(302) 651-7700
Attorneys for Defendants/Counterclaimants Tatung Company, Tatung Company of America, Chunghwa Picture Tubes, Ltd, and Viewsonic Corporation

40

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 25, 2006, I electronically filed the foregoing

document with the Clerk of Court using CM/ECF which will send notification of such filing, and

hand delivered to the following:

> Richard D. Kirk
> The Bayard Firm
> 222 Delaware Avenue, Suite 900
> P.O. Box 25130
> Wilmington, DE 19899

I hereby certify that on September 25, 2006, I sent the foregoing document by Electronic

Mail, to the following non-registered participants:

> Gaspare J. Bono
> Matthew T. Bailey
> Andrew J. Park
> Adrian Mollo
> McKenna Long & Aldridge LLP
> 1900 K Street, NW
> Washington, DC 20006

> Steven J. Fineman (#4025)
> fineman@rlf.com
> Richards, Layton & Finger
> One Rodney Square
> P.O. Box 551
> Wilmington, DE 19899

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 25, 2006, I electronically filed the foregoing

document with the Clerk of Court using CM/ECF which will send notification of such filing, and

hand delivered to the following:

> Richard D. Kirk
> The Bayard Firm
> 222 Delaware Avenue, Suite 900
> P.O. Box 25130
> Wilmington, DE 19899

I hereby certify that on September 25, 2006, I sent the foregoing document by Electronic

Mail, to the following non-registered participants:

> Gaspare J. Bono
> Matthew T. Bailey
> Andrew J. Park
> Adrian Mollo
> McKenna Long & Aldridge LLP
> 1900 K Street, NW
> Washington, DC 20006

> Steven J. Fineman (#4025)
> fineman@rlf.com
> Richards, Layton & Finger
> One Rodney Square
> P.O. Box 551
> Wilmington, DE 19899

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 6, 2006, I electronically filed the foregoing

document with the Clerk of Court using CM/ECF which will send notification of such filing, and

hand delivered to the following:

>       Richard D. Kirk
>       The Bayard Firm
>       222 Delaware Avenue, Suite 900
>       P.O. Box 25130
>       Wilmington, DE  19899

I hereby certify that on October 6, 2006, I sent the foregoing document by Electronic

Mail, to the following non-registered participants:

>       Gaspare J. Bono
>       Matthew T. Bailey
>       Andrew J. Park
>       Adrian Mollo
>       McKenna Long & Aldridge LLP
>       1900 K Street, NW
>       Washington, DC  20006

>       Steven J. Fineman (#4025)
>       Fineman@rlf.com
>       Richards, Layton & Finger
>       One Rodney Square
>       P.O. Box 551
>       Wilmington, DE  19899
>       (302) 651-7700

RLF1-2917974-1