# EXHIBIT C

```
                                                              1

 1              IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF DELAWARE
 2

 3   LG. PHILIPS LCD CO. LTD.,      )
                                    )
 4              Plaintiff,          )
                                    ) C.A. NO: 05-292 JJF
 5   v.                             )
                                    )
 6   TATUNG COMPANY, TATUNG         )
     COMPANY OF AMERICA, INC.,      )
 7   CHUNGWA PICTURE TUBES LTD.,    )
     and VIEWSONIC CORPORATION,     )
 8                                  )
                Defendants.         )
 9

10              United States District Court
                844 King Street
11              Wilmington, Delaware
                Courtroom 4B
12
                Wednesday, November 16, 2005
13              2:30 p.m.

14   BEFORE:  THE HONORABLE JOSEPH J. FARNAN, JR.
              United States District Court Judge
15

16   APPEARANCES:

17        RICHARD D. KIRK, ESQ.
            THE BAYARD FIRM
18        and GAP BONO, ESQ.
            McKENNA, LONG & ALDRICH
19          For the Plaintiff

20
          ROBERT W. WHETZEL, ESQ.
21        and MATTHEW W. KING, ESQ.
            RICHARDS, LAYTON & FINGER
22               and
          CHRISTINE A. DUDZIK, ESQ.
23          HOWREY, LLP
            For the Defendants
24
```

1  additional time.
2          MS. DUDZIK: Good afternoon, Your
3  Honor. We are asking for a two months
4  extension of time in which to file our
5  responsive brief to the preliminary injunction
6  motion.
7          We believe that this time is
8  reasonable and necessary to formally prepare
9  the papers that we need to respond to the
10 motion. Particularly to say for the local
11 counsel has said that we needed to prepare for
12 the declarations that we need to prepare to
13 show the invalidity basis for the patent in
14 suit.
15         They have claimed that they're
16 entitled to a presumption of validity in this
17 case, which is one of those standards for the
18 preliminary injunction. We have evidence and
19 have found substantiated proof that there are
20 documents showing that the patent is invalid
21 under 102(b) for on sale bar. We are working
22 up that evidence. Most of that documentation,
23 however, is located in China and Taiwan because
24 the defendant, CPT and Tatung, are both Taiwan

1  corporations. The plaintiff is a Korean
2  corporation and the other two defendants were
3  Tatung USA and Viewsonic.
4       The evidence we have discovered is
5  located in Taiwan. We are having those
6  documents translated. We believe that they'll
7  show the product was on sale a year before the
8  filing date in the United States, which would
9  be a statutory bar to the validity.
10      From there we will need to prepare
11 declaration. The witness will be -- most
12 likely that we will need will be, only manner
13 in speaking, we'll need the translations done
14 for him as well.
15      We believe that we also have
16 evidence in the United States from the
17 third-party supplier that we would be able to
18 substantiate the on sale in the United States.
19 We are presently locating and talking with
20 those third-party suppliers that they can go
21 back to their documentation to substantiate the
22 sale in the United States.
23      So those are some of the issues
24 that we need to prepare. We think the two

1  months with a final order and it could be a
2  jury trial. The jury trial would be some time
3  in around like June of 2006.
4          Do you have any other questions
5  about the options?
6          MR. BONO: No, Your Honor. I
7  understand. Do you want comment from us or --
8          THE COURT: Well, I think you ought
9  to talk to your client, and maybe to each
10 other, and maybe you could actually agree.
11 Wouldn't that be a beautiful thing if you could
12 just agree with each other.
13         I've decided lawyers have a hard
14 time, particularly in these cases that are
15 contested.
16         Do you have any questions about it?
17         MS. DUDZIK: I don't think right
18 off the bat, but I just wanted to bring to the
19 attention there is another patent involved in
20 this lawsuit.
21         THE COURT: Oh, yeah. Here's what
22 I would also do, if there's two patents, let's
23 say that they get crazy and they insert a host
24 of claims, I'd make them go to representative

```
 1                IN THE UNITED STATES DISTRICT COURT

 2                IN AND FOR THE DISTRICT OF DELAWARE

 3                              - - -

 4   L.G. PHILIPS LCD CO., Ltd        :   CIVIL ACTION
                                      :
 5                                    :
                Plaintiff             :
 6                                    :
           vs.                        :
 7                                    :
     TATUNG                           :
 8                                    :
                Defendant             :   NO. 05-292 (JJF)
 9
                                    - - -
10
                                        Wilmington, Delaware
11                                      December 8, 2005
                                        1:30 o'clock, p.m.
12                                      Scheduling Conference

13                              - - -

14   BEFORE:  HONORABLE JOSEPH J. FARNAN, JR., U.S.D.C.J.

15                              - - -

16   APPEARANCES:

17           THE BAYARD FIRM
             BY:  RICHARD D. KIRK ESQ. and
18                ASHLEY STITZER, ESQ.

19                    -and-

20           McKENNA LONG & ALDRIDGE LLP
             BY:  GASPARE J. BONO, ESQ.,
21                MATTHEW T. BAILEY.
                  (Washington, DC)
22
                         Counsel for Plaintiff
23

24                                      Leonard A. Dibbs
                                        Official Court Reporter
25
```

```
 1  right?
 2          MR. BONO:  Yes, your Honor.
 3          I've also be thinking about the possibility of a
 4  nonjury trial.
 5          That's why I raised the issue.  You had raised
 6  that subject last time around.
 7          THE COURT:  Sure.
 8          The defendant is thinking about a jury trial.
 9          MS. DUDZIK:  Right.
10          THE COURT:  You want confusion, I understand.
11  It's okay to say it.
12          You would be surprised, I'm sometimes much more
13  confused.  You can really screw up my records and get
14  yourself to the Court of Appeals.
15          I'm really open to whatever you want to do.
16          What I want to do is make sure that I've offered
17  you this and you accepted it.
18          We're going to trial in July.  That's the one
19  thing that is going to happen here.  Whatever we've got to
20  do, we'll do.
21          I don't want to mislead you in any way.  Nothing
22  is going to stop that from happening.
23          How about defendants?
24          MS. DUDZIK:  There is one issue that I raised
25  earlier with counsel that I just want to bring the Court's
```

1  attention.
2          We are still interested in streamlining this
3  case. One of the ways we were contemplating was to
4  potentially file an early Summary Judgement Motion on the
5  on-sale bar.
6          We could do that and get a ruling quickly on
7  that. We may be able to dispose of one of the patents in the
8  case.
9          That was our thought that potentially by the end
10 of January or so to have a Summary Judgement Motion ready to
11 go on that and inform the Court that we would like to be able
12 to present it early on, to see if that would work.
13         THE COURT: Are the facts undisputed?
14         MS. DUDZIK: I think they will be when we get
15 them together. We'll know -- if there is going to be a big
16 dispute on it, we won't file a Summary Judgement Motion that
17 we don't think we're going to win. Let's put it that way.
18         From what I've seen so far they are looking
19 pretty promising for us. I want to alert the Court that that
20 is something that we are contemplating. It's a way of
21 streamlining the case.
22         THE COURT: And I have a high regard for true
23 Summary Judgement Motions and have actually been able to
24 dispose of them expeditiously.
25         As experienced practitioners though, 98 percent are

```
 1  explanation.
 2              With that little bit of background and letting
 3  you know that I'm an expert.  I'll be anxious to see the
 4  motion.  RCA versus Data General is my on-sale bar case.
 5              MR. BONO:  I feel compelled.  I don't think it's
 6  a legal issue.
 7              An on-sale bar defense is highly factual.
 8              THE COURT:  That's what -- didn't I just tell her
 9  that?
10              MR. BONO:  I feel compelled.
11              THE COURT:  I was trying to be very direct.  If
12  you have all that, it is factual.  That's why I'm an expert.
13  I understand all that.
14              Actually, the best parts of that case, and I hate
15  to tell stories.  This is so good though.
16              I was so new in '85 or '86.
17              '85, it happened in my first year.  It was the
18  first or second patent case.  All these people came to
19  testify.  The guy that started Data General.  Doctor Wang,
20  the guy from Wang computers.  He testified.
21              I was so inexperienced, and we had just had our
22  fifth child.  My wife had decided that it would be a great
23  thing, computers were just coming out and to get him a
24  computer.  Nobody knew what to buy.  PC's were just coming
25  out.  And so after he got done testifying, I said, Doctor
```

*LG Philips LCD Co., LTD   v.*
*Tatung Company, et al.*

*Hearing*
*April 25, 2006*

*Hawkins Reporting Service*
*715 N King Street*
*Suite 3*
*Wilmington, DE  19801*
*(302) 658-6697*

Original File LGPHIL~1.TXT, 76 Pages
Min-U-Script® File ID: 0101360872

**Word Index included with this Min-U-Script®**

tremely essential to CPT's case. Again, at [8] this point we have evidence that over 15,000 [9] sales of modules, more than one module involved [10] in that patent, happened before the critical [11] date. More than 7,000 of those sales are sales [12] of a product that LPL itself manufactured. The [13] remaining 8,000 plus sales are sales of Sharp or [14] CPT panels.

[15] Back when we first brought the [16] on-sale bar issue to Your Honor's attention back [17] in November and December of last year, the only [18] on-sale issues CPT was aware of at that point [19] was the on-sale issue involving its own panels. [20] Subsequent to that, and in terms of the LPL [21] documents, not until February 21st and then [22] again on March 17th did we even know that there [23] was third-party discovery to do in relation to [24] sales of LPL panels because they had

### Page 16

[1] systematically withheld that information.

[2] They held those documents, they [3] are Korean language documents evidencing those [4] sales until February 17th, and then February 21 [5] knowing at that point that it would have been [6] impossible for us to follow-up on third-party [7] discovery, and then produced a boat load of [8] other documents on this subject on March 17th, [9] again, almost a month after the point Your Honor [10] had said we could not issue another subpoena to [11] follow up on third-party discovery.

[12] Again, as Mr. Rhodes indicated, [13] while we are not in a situation where we're [14] looking to make excuses to delay the trial of [15] this matter, we should be afforded a consistent [16] opportunity to do the discovery necessary to [17] properly defendant ourselves that involves [18] third-party discovery and LPL has consistently [19] used a strategy of using fast track as both a [20] sword and a shield.

[21] They should not be allowed to [22] profit from this. They should not be allowed to [23] be in a situation where they have been able to [24] actively and purposefully defeat CPT's attempt

### Page 17

[1] to defend itself by knowingly withholding [2] documents that with evidence necessitate [3] third-party discovery until a point where CPT [4] was prohibited from doing that discovery. [5] That's not justice, Your Honor. It puts us in a [6] situation here today, we are forced in addition [7] to asking Your Honor to resolve the pending [8] discovery matters, we're also in a situation [9] where we're going to ask Your Honor to remove [10] from the calendar the July 17th trial date and [11] come up with a trial date that will allow the [12] parties to do the discovery that they need to [13] do.

[14] This also includes resolving the [15] damages issue which Your Honor tabled on March [16] 1st at that hearing, put that on the side, [17] suggested that maybe we need a special master [18] for that, but no special master has been [19] appointed, so those issues continue to be [20] pending and need to be resolved.

[21] And then we would also like to [22] discuss with Your Honor some issues in terms of [23] depositions, in terms of number of hours for [24] 30(b)(6) depositions and timing of those

### Page 18

[1] depositions. I'm happy to hold those until [2] later in the hearing if Your Honor would like to [3] discuss those issues separately or I could [4] address them now.

[5] THE COURT: You can address them [6] now.

[7] MS. GABLER: Okay. In terms of [8] third party — I'm sorry, in terms of 30(b)(6) [9] and party depositions, both the personal [10] depositions of parties and then 30(b)(6), [11] originally Your Honor had indicated that we [12] would be allocated thirty hours of 30(b)(6) [13] testimony to be taken of each party.

[14] At the February 8th hearing, [15] Mr. Bono indicated that he wanted to proceed at [16] that point with the discovery against Tatung [17] America and Viewsonic telling the Court that the [18] issues there were really separate with those [19] parties, that they were really only sales [20] companies, that we were really looking only for [21] damage discovery from them and not really [22] technical discovery and, therefore, those [23] depositions maybe should be proceeding, not [24] waiting for the documents issues to be resolved.

### Page 19

[1] We agree with Mr. Bono that the [2] issues concerning the defendants other than CPT [3] are separate and more narrow. CPT is the only [4] manufacturer at issue in this case, and the [5] patents at issue don't have anything to do with [6] what happens after the manufacturing process, so [7] while there is discovery to be had from the [8] three other defendants concerning issues that go [9] to damages, what's coming into the U.S., things [10] like that, we don't believe that the amount of [11] time necessary to explore those issues should be [12] the same amount of time as is necessary to [13] explore the much larger range of issues that [14] impacts both CPT and LPL.

[15] So our proposal is simply this, [16] right now their thirty hours of deposition per [17] party, we believe that we need about forty hours [18] of deposition of LPL and CPT is willing to make [19] its own witnesses available for forty hours of [20] depositions as we believe the number of hours of [21] 30(b)(6) deposition to LPL and CPT should be the [22] same.

[23] However, as to the other three [24] defendants we believe that ten hours of

### Page 20

[1] deposition testimony should be sufficient as [2] that only goes to damages and importation [3] issues, not the broader range of issues and that [4] those depositions to allow thirty hours for each [5] of those other three defendants would simply be [6] harassment.

[7] In terms of the number of party [8] depositions, again, Your Honor allocated four [9] party depositions to be taken of each of the [10] four — of each of the five parties in addition [11] to the 30(b)(6) hours. Again, in that [12] situation, we would like to ask the Court to [13] change that order and allow six depositions of [14] LPL witnesses and six depositions of CPT [15] witnesses, but only to allow two depositions of [16] Viewsonic, Tatung and Tatung America.

[17] And, again, the justification for [18] this is the same, the issues are much narrower [19] as to the other three defendants, we're not [20] trying to have an advantage of CPT versus LPL, [21] but as to the other three defendants the issues [22] are much narrow, the discovery burden should not [23] be the same.

[24] In terms of the damages discovery,

### Page 21

[1] again, those issues were postponed on March 1, [2] Your Honor at that point had suggested a [3] magistrate to resolve those issues. We don't [4] know if Your Honor would like to continue with [5] that proposal or if you would like yourself to [6] take those issues up.

[7] Counsel have not had much success [8] or really any success in any meet and confers on [9] those issues as we have been largely taken up [10] trying to resolve the issues that were put [11] before the Court and continuing on March 1 in [12] terms of the Court's order at that time.

[13] So we would like at this point [14] either to be sent to a magistrate to resolve [15] those damages issues —

[16] THE COURT: We don't have any [17] magistrates, we only have one —

[18] MS. GABLER: Or a special master.

[19] THE COURT: We only have a special [20] master, we have a —

[21] MS. GABLER: A special master, we [22] would like to proceed before some-

body or those [23] issues up before Your Honor so we can get those [24] resolved and move forward with that aspect of

###### Page 22

[1] the case. Your Honor had suggested on March 1 [2] that those issues sounded like they would take [3] about forty-five days. We're willing to proceed [4] on that kind of time line with the aim of [5] resolving those issues in about forty-five days.

[6] In terms of expert dates, Your [7] Honor's schedule originally had indicated that [8] you wanted to have issued your Markman ruling [9] before the expert reports were due. We believe [10] that's sound management of the schedule. We [11] haven't had any guidance from Your Honor yet in [12] terms of when he would expect his Markman [13] ruling, but obviously we would like the expert [14] dates to reflect that schedule.

[15] The final bullet on my letter from [16] yesterday is the protective order. You may [17] recall back in December Mr. Bono raised with the [18] Court that because there were other pending [19] litigations between the parties, most pointedly [20] the litigation in California that at that point [21] was set for trial in February, that he asked [22] Your Honor to rule that documents produced in [23] that case could be deemed produced in this case [24] so the parties did not have to go to the burden

###### Page 23

[1] and expense of reproducing documents in this [2] case. That made sense, we agreed to that, that [3] was Your Honor's order.

[4] Since that time, the California [5] case was continued as you may or may not be [6] aware and it is now set for trial October 3rd of [7] this year.

[8] There is also additional [9] litigation between the parties that has been [10] proceeding in various jurisdictions, and in the [11] California case a variety of discovery issues [12] have been reopened or are continuing to be [13] pending.

[14] At this point it makes sense, Your [15] Honor, for documents produced in Delaware to [16] also be deemed admitted and produced in these [17] other cases, not just have it be a one-way order [18] as it was when the Delaware case assumed to be [19] preceding to trial after the California case, so [20] we would like to ask Your Honor to amend his [21] order and to deem all documents produced in [22] Delaware to be produced in the other litigations [23] so we're not faced with the same inefficiency [24] that Your Honor recognized earlier of having to

###### Page 24

[1] reproduce documents that are being produced in [2] Delaware in either the California case or —

[3] THE COURT: Isn't that a decision [4] for the other judges if they want those [5] documents in their case? That's not my [6] decision. I can say I want documents admitted [7] in my case from other cases that the parties are [8] engaged in. I can't tell a California judge or [9] a judge in Minnesota to accept documents from my [10] case, they have to make that decision.

[11] But I would have no issue if the [12] judge wanted to accede to some request that they [13] would take into their case Delaware documents.

[14] MS. GABLER: I can understand [15] that, Your Honor. Then we would like to ask [16] that the documents produced in the other cases [17] pending between the parties are also deemed [18] admitted in Delaware, not just those documents [19] produced in the California case, and we will [20] make our other petition to the other various [21] judges.

[22] THE COURT: I would have to know [23] about that, what that boat is carrying before I [24] would allow — there were synchronization in my

###### Page 25

[1] mind between my case and the California case, [2] particularly since that had an earlier trial [3] date. But before I would admit wholesale [4] documents from other cases, I would have to know [5] what that universe was, what's on that load that [6] would be dropped here. But I'm not adverse to [7] it.

[8] MS. GABLER: Would you like a [9] written submission on that, Your Honor, to go [10] over that?

[11] THE COURT: I think you can [12] probably agree to it, but if you can't, yes.

[13] MS. GABLER: And then our final [14] point, Your Honor, is based on the documents [15] that LPL produced March 17th, and then some of [16] the documents that they have produced since then [17] in our ongoing meet and confer, it's now evident [18] to us in terms of the LPL panel, the '121 [19] product that Mr. Yovits referred to that LPL was [20] in a position that it knew that it had an [21] on-sale bar to its patent before it started [22] filing suit against defendants in this case on [23] that basis and knew it was asserted —

[24] THE COURT: Did the attorneys for

###### Page 26

[1] LPL know that?

[2] MS. GABLER: An invalid patent, [3] the client knew it. I'm not addressing the [4] counsel.

[5] THE COURT: When did the attorneys [6] — you're certain that the client knew it, that [7] there is a clear on-sale bar, and we have been [8] in litigation since the summer here.

[9] MS. GABLER: Correct.

[10] THE COURT: When would it be your [11] position the attorneys found out about it, and [12] proceeded with the case despite the fact that [13] there is at least contended to be a clear [14] on-sale bar case? We are talking about the '121 [15] patent?

[16] MS. GABLER: Right, we are talking [17] about the '121 patent. Your Honor, it's not [18] possible for me to know for sure when LPL's [19] lawyers did learn about it.

[20] THE COURT: When did you first [21] tell them?

[22] MS. GABLER: When did we first [23] tell them?

[24] THE COURT: Yes.

###### Page 27

[1] MS. GABLER: The first time we [2] became aware of the LPL product was in documents [3] that they produced on February 17th and 21st in [4] Korean, so at the time we translated them, which [5] was then the last week of February was the first [6] time we became aware that they appeared to have [7] themselves sold a product in terms of the meet [8] and confer that that happened between then and [9] after —

[10] THE COURT: You told them the [11] period you sold this product prior to the [12] critical date and you have an on-sale bar [13] problem?

[14] MS. GABLER: Yes.

[15] THE COURT: So at least that would [16] be sometime around the first week of March?

[17] MS. GABLER: Right, the latest [18] would be at that point. They certainly [19] indicated they were taking a lot of time [20] translating documents. You'll remember, Your [21] Honor, at the February 8th hearing Mr. Bono [22] indicated they were still in the process of [23] translating Korean documents and they would be [24] producing those as soon after that as they

###### Page 28

[1] could. That production he indicated at that [2] time would be rolling and would be underway [3] almost immediately.

[4] The first of those documents [5] trickled in to CPT on February 17th, so I would [6] suggest, Your Honor, that at least as of the [7] time they started reviewing those documents [8] earlier in February that counsel at that point [9] had to be aware of what was in the documents [10] that they were reviewing for relevance before [11] producing them here.

Page 35

[1] until March 17th when we first produced [2] documents showing the volume of those [3] transactions and the amounts of those [4] transactions, the costs, the price of those [5] transactions, we know we didn't tell you until [6] March 17th, but we're going to continue to [7] oppose your motion, that you didn't do any [8] third-party discovery, we are going to say LG [9] America is a third party so there is no way for [10] you to get this.

[11] THE COURT: I get it. I [12] understand what the support is.

[13] Is there any other matters that [14] the defendant wants to present at this time [15] before I hear from the plaintiff.

[16] MS. GABLER: I believe that's it, [17] Your Honor.

[18] THE COURT: Thank you. Who is the [19] judge assigned in California?

[20] MS. GABLER: Judge Marshal.

[21] MR. BONO: May it please the [22] Court, Your Honor.

[23] THE COURT: Good morning.

[24] MR. BONO: Good morning. The

Page 36

[1] first issue I would like to address, Your Honor, [2] is our request for the summary information that [3] is at issue and I think to clarify the issue for [4] the Court, may I hand up to the Court a brief [5] summary of the four items that we have requested [6] and are seeking.

[7] THE COURT: Yes.

[8] MR. BONO: Thank you, Your Honor.

[9] THE COURT: Mr. Bono, do you have [10] a copy for my law clerk, please.

[11] MR. BONO: Yes, absolutely.

[12] THE COURT: Thank you.

[13] MR. BONO: I apologize. There is [14] one typo on it that I hand wrote in.

[15] But in the first paragraph here, [16] Your Honor, I simply summarize the four items [17] that we have been requesting from CPT that they [18] have refused to give us.

[19] The first item is a list showing [20] which modules and products, which use which [21] types of tape carrier packages. Now, as we have [22] been striving to do since the beginning of this [23] case as Your Honor instructed months ago is to [24] try to narrow the focus of this case for trial.

Page 37

[1] and to come up with representative products and [2] claims that we can take to trial.

[3] And so we have asked CPT to give [4] us in a simple document, and we had raised this [5] several times with them now for months, of just [6] saying this model number and it uses this CPT [7] supplied by a certain supplier. And without [8] that information, we are really unable to come [9] up with representative products to narrow the [10] scope of this case.

[11] Now, on the other side CPT has [12] requested LPL to give them a list and they [13] fought very hard for it, for us to list our [14] modules with the identification of the tape [15] carrier package used in each model.

[16] Pursuant to their demand we in [17] fact produced that list to them. So in effect [18] they have asked us for the same information, we [19] gave it to them, we have asked for similar [20] information from them and they are refusing to [21] give it to us. And we would ask that they be [22] required to give us this list which is very [23] simple to put together which just identifies [24] their module numbers and then what TCP product

Page 38

[1] is in each of those modules. And that would be [2] with respect to the '121 patent.

[3] The second item on our list is a [4] list identifying —

[5] THE COURT: Now, with respect to [6] that request, you have heard counsel contend [7] that the '121 patent has a validity problem by [8] virtue of an on-sale bar.

[9] MR. BONO: I have heard that, Your [10] Honor, yes.

[11] THE COURT: And with all the [12] notice that they contend they have given to [13] plaintiff, your view is that that is not a [14] sustainable contention?

[15] MR. BONO: Our argument is, Your [16] Honor, that there is insufficient proof and [17] evidence showing that the product that they're [18] talking about has the particular TCP package in [19] it that they contend was sold.

[20] THE COURT: Just so I'm clear, [21] your client's position is that that's not in the [22] packet, the module —

[23] MR. BONO: Your Honor, to be [24] clear —

Page 39

[1] THE COURT: Right.

[2] MR. BONO: — that product which [3] they're talking about used two different TCP [4] packages, one was the TCP package that does not [5] contain the invention, and some contained the [6] invention.

[7] THE COURT: So let's focus on the [8] ones that contained the invention.

[9] MR. BONO: Yes.

[10] THE COURT: Have you learned in [11] your dealings with your client whether or not [12] the invention packet was on sale as understood [13] under the patent laws prior to the critical [14] date?

[15] MR. BONO: I have been unable to [16] ascertain that fact from the client.

[17] THE COURT: One way or the other?

[18] MR. BONO: Yes, Your Honor. We [19] know that the — both packages were in the [20] product and the client has been unable to [21] identify for us which TCP was in which of those [22] modules prior to the critical date. We know the [23] module number that's at issue was on sale prior [24] to the critical date, but we don't know whether

Page 40

[1] the modules that were sold prior to the date [2] contained the invention TCP. That's what they [3] don't have information on, Your Honor. I have [4] quizzed them repeatedly.

[5] THE COURT: Now, the defendants [6] contend that in addition to the client's [7] knowledge that your law firm has a relationship [8] on the prosecution side of intellectual property [9] with the client.

[10] MR. BONO: That's correct, Your [11] Honor.

[12] THE COURT: And what you're [13] telling me is even with that relationship, [14] you're unable to get this information about the [15] '121 patent products sold by the client?

[16] MR. BONO: Yes, Your Honor. We [17] did not have at the time — at the time I was [18] not involved in the patent prosecution, but at [19] the time of the patent prosecution we had no [20] knowledge about the product being sold prior to [21] the critical date.

[22] THE COURT: No, I hope you [23] wouldn't have.

[24] MR. BONO: Right. The situation

Page 41

[1] is —

[2] THE COURT: What I'm interested in [3] knowing is because of that relationship and [4] because of that prosecution work, you haven't [5] been able to shed any additional light on — as [6] attorneys your knowledge about the issue raised [7] by defendant for purposes of this litigation.

[8] MR. BONO: That's correct, Your [9] Honor, I have investigated this and I have [10] spoken with the client about this issue, and [11] they are unable to say whether the particular [12] TCP which contains the invention was contained [13] in the modules sold prior to March 23, that were [14] sold in the U.S.

[15] I have quizzed them repeatedly, [16] and they don't have documentation

either in [17] their manufacturing facilities or anywhere else [18] which would say that the module number sold here [19] contained the particular TCP, that contained the [20] invention as opposed to that contained in the [21] TCP prior to the invention. I have asked them [22] repeatedly.

[23] THE COURT: Now, your friends on [24] the other side say that you did know at some

### Page 42

[1] point in February, or I'm sorry, I think I used [2] the date before the first week of March of this [3] year, and that after you got the knowledge, you [4] have in this case knowingly withheld it so that [5] they can't discover on it.

[6] MR. BONO: Your Honor, that is [7] absolutely false. Absolutely false.

[8] THE COURT: Who would have been [9] responsible other than yourself for conducting [10] the inquiry into the '121 on-sale bar issue with [11] the client?

[12] MR. BONO: Mr. Christenson did [13] that with me as well.

[14] THE COURT: So it was the two of [15] you?

[16] MR. BONO: Yes, Your Honor.

[17] THE COURT: Now, are there other [18] lawyers in the case that have been recited to me [19] pending in other jurisdictions who have worked [20] on the client's litigation that might be [21] tangental in some measure to this case other [22] than you and Mr. Christenson?

[23] MR. BONO: I'm not sure that I [24] understand the question.

### Page 43

[1] THE COURT: I asked them who works [2] on the case on the defendants for them and they [3] gave me some names, started with Mr. Rhodes, and [4] on your side, I'm trying to understand, is it [5] just the two of you or are there others like [6] some associates that have been doing [7] investigation in document production for you and [8] that type of thing?

[9] MR. BONO: In the California case, [10] Your Honor, that case is primarily being handled [11] by another law firm, Morgan, Lewis & Brokius, [12] and while our firm is co-counsel with Morgan, [13] Lewis, Morgan, Lewis is the lead counsel and our [14] activity in supporting them has been peripheral.

[15] THE COURT: Now, I know the name. [16] I know they have a Philadelphia office. Do they [17] have an office in California?

[18] MR. BONO: Yes, Your Honor, they [19] have an office in California and in Washington.

[20] THE COURT: Is their California [21] office the office that is prosecuting that [22] litigation?

[23] MR. BONO: California, Washington [24] and Philadelphia. They have lawyers from all

### Page 44

[1] three offices handling that.

[2] THE COURT: Okay. In your view, [3] the same question that I asked your friends on [4] the other side, who is responsible for the state [5] of the discovery progress that we have today, is [6] it the attorneys for the client on the other [7] side?

[8] MR. BONO: On the other side? [9] Your Honor, I believe it's both, from what I [10] could tell. Obviously the clients are taking [11] certain positions from their side and so are the [12] attorneys. But I have been — we have been [13] dealing with the attorneys on that side and [14] quite frankly I can't ascertain whether the [15] positions are being dictated by the client or [16] whether the attorneys are taking certain [17] positions as being — taking the lead and taking [18] the positions in discovery.

[19] THE COURT: And do you similarly [20] believe that there is an inconsistency leading [21] or resulting in an ongoing injustice and you [22] being able to discover against the defendants?

[23] MR. BONO: Your Honor, they have [24] fought our discovery quite a bit. In looking at

### Page 45

[1] the discovery we want, we have worked very, very [2] hard over the past couple of months to work out [3] our discovery disputes and have narrowed it down [4] to what you see on that one page.

[5] THE COURT: These are our —

[6] MR. BONO: The first paragraph is [7] our issues for discovery against them, and the [8] second paragraph is what the one issue that they [9] want against us which deals with LPL America.

[10] THE COURT: But the deficiencies [11] in defendant's discovery as in the letter I got [12] yesterday, are you aware that Mr. King and [13] Mr. Kirk exchanged letters?

[14] MR. BONO: Yes, Your Honor.

[15] THE COURT: That is the state of [16] deficiency that you allege against defendants, [17] and that's essentially the paragraph one.

[18] MR. BONO: Yes, Your Honor, [19] correct. Yes. We have narrowed it down, both [20] sides have done a substantial amount of work in [21] discussions in order to — pursuant to Your [22] Honor's orders to work out the discovery between [23] us and I believe we have done that, and that the [24] remaining discovery issue is contained on this

### Page 46

[1] one page in both directions, yes, Your Honor.

[2] THE COURT: And you still want to [3] go to trial in July?

[4] MR. BONO: Yes, Your Honor. Yes. [5] And, you know, it's our position that the [6] posture that the defendants find themselves in [7] that they allude to in their argument is really [8] one of their own making. While they seek to [9] shift the blame to us by these wild and [10] unsubstantiated accusations that we withheld [11] document and we're doing all these nefarious [12] things, none of that is true, Your Honor.

[13] The problem they face is one of [14] their own making which goes back two or three [15] months in this matter when Your Honor set [16] certain deadlines. It's not our doing at all.

[17] Your Honor, we have cooperated and [18] gone out of our way to produce documents and [19] summaries and additional information to the [20] defendants above and beyond what we were [21] required to do. They asked us for the summary [22] information on the modules and the CPTs and the [23] TCPs that are in the product. We worked to [24] produce it. They wanted summary sales

### Page 47

[1] information. They wanted it expanded during the [2] time period, we went out and we produced it to [3] them. We have given them on a timely basis all [4] the documents that they said they wanted, some [5] of which I believe they were not entitled to, [6] but to cooperate we have given it to them [7] completely.

[8] They knew about, for example, they [9] knew about LPL America before this case was even [10] filed. They received documents that were [11] produced in the California case which shows that [12] LPL Korea had a relationship with LPL America, [13] and that sales were made between the two [14] entities. They knew that information long ago, [15] even before this case was filed.

[16] Also, when we produced our first [17] set of document production, we produced the [18] — it is the Form 20(f) document which shows that [19] LPL America existed and it was operated as a [20] sales entity in the U.S. They had every — [21] they had that information, they chose not to [22] pursue it on their own. They could have when [23] they answered added LPL America to this case.

[24] If you look at our caption, we had

### Page 48

[1] to sue both Tatung Company and

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

COPY

LG PHILIPS LCD CO., LTD.,       )
                                )
            Plaintiff,          ) C.A. No.  05-292-JJF
                                )
v.                              )
                                )
TATUNG COMPANY, TATUNG          )
COMPANY OF AMERICA, INC.,       )
CHUNGHWA PICTURE TUBES          )
LTD., and VIEWSONIC             )
CORPORATION,                    )
                                )
            Defendant.          )


                    Friday, July 7, 2006
                    2:01 p.m.
                    Courtroom 4B



                    844 King Street
                    Wilmington, Delaware


BEFORE:  THE HONORABLE JOSEPH J. FARNAN, JR.
         United States District Court Judge



APPEARANCES:

         THE BAYARD FIRM
         BY:  RICHARD D. KIRK, ESQ.

            -and-

         McKENNA, LONG & ALDRIDGE, LLP
         BY:  GASPARE J. BONO, ESQ.
         BY:  CASS W. CHRISTENSON, ESQ.
         BY:  ADRIAN P.J. MOLLO, ESQ.

               Counsel for the Plaintiff

```
 1                    All right.  With regard to motions,
 2   there's a number of motions.  Let me start with
 3   the motions in limine.  That might be a good
 4   place.
 5                    Motions in limine.  Docket Item 227
 6   is denied.
 7                    Docket Item 228 is granted.
 8                    Docket Item 229 is denied.
 9                    Docket Item 230 is denied.
10                    Docket Item 231 is denied.
11                    Docket Item 295, which, in essence,
12   amends Docket Item 232, is granted.
13                    Docket Item 233 is denied.
14                    I'm going to reserve judgment with
15   regard to Docket Item 285, 289, 292, and 304.
16   The reason being, some of them aren't finished
17   with the filings of the ones I just mentioned.
18                    Docket Item 291, although it falls
19   in that category, I only have the opening motion.
20   I'm going to deny it because it's a motion in
21   limine that defendant's requesting that the
22   plaintiffs not be able to go outside their expert
23   report.  And my practice is that that application
24   is made post-trial.
```

```
 1            If either party solicits testimony
 2  from an expert in the form of opinion or
 3  otherwise, that goes outside of what the reports
 4  and the disclosures were, that can be briefed
 5  post-trial.  And depending -- normally it's filed
 6  by a party who is not prevailing.
 7            If I find there's been a violation
 8  of the rule and the pretrial order, I'll simply
 9  order a new trial with the losing side on that
10  motion paying for the first trial, and incidental
11  costs to that first trial, including attorneys'
12  fees.
13            So you have to be very careful in
14  presenting opinion testimony that you don't go
15  outside the expert report, because you could be
16  vulnerable to the post-trial procedure of losing
17  the verdict and being faced with the cost.  And I
18  assume it's substantial just looking around the
19  room here.
20            So you want to avoid that at all
21  costs.  So that's why I'm denying that.  I don't
22  need any further briefing because I just don't
23  have that practice.
24            With regard to the other motions, as
```