## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

LG. PHILIPS LCD CO., LTD.,                    )
                                              )
                    Plaintiff,                )     C.A. No. 05-292 (JJF)
                                              )
            v.                                )     **DEMAND FOR JURY TRIAL**
                                              )
TATUNG COMPANY; TATUNG                        )
COMPANY OF AMERICA, INC.;                     )     **REDACTED - PUBLIC VERSION**
CHUNGHWA PICTURE TUBES, LTD.;                 )
AND VIEWSONIC CORPORATION,                    )
                                              )
                    Defendants.               )

## DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR
## MOTION FOR ATTORNEYS' FEES AND EXPENSES

OF COUNSEL:

Teresa M. Corbin
Glenn W. Rhodes
Howrey LLP
525 Market Street, Suite 3600
San Francisco, California 94105
(415) 848-4900

Julie S. Gabler
Howrey LLP
550 South Hope Street, Suite 1100
Los Angeles, California 90071
(213) 892-1800

Dated: October 10, 2006

Robert W. Whetzel (#2288)
whetzel@rlf.com
Steven J. Fineman (#4025)
fineman@rlf.com
Matthew W. King (#4566)
king@rlf.com
Richards, Layton & Finger
One Rodney Square, P.O. Box 551
Wilmington, DE 19899
(302) 651-7700
Attorneys for Defendants/Counterclaimants
Tatung Company, Tatung Company of
America, Chunghwa Picture Tubes, Ltd, and
ViewSonic Corporation

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ........................................................................................................... 1

NATURE AND STAGE OF THE PROCEEDING ............................................................... 3

SUMMARY OF ARGUMENT .......................................................................................... 4

STATEMENT OF FACTS ................................................................................................ 5

     A.    The '121 Patent ............................................................................................... 5

     B.    LPL Alleges Infringement Of The '121 And '002 Patents ................................. 5

     C.    After Nearly Six Months Pass, LPL Moves For A Preliminary
         Injunction ...................................................................................................... 6

     D.    The November 16 And December 8 Hearings -- Defendants Raise The
         Issue Of On-Sale Bar ..................................................................................... 6

     E.    Defendants Seek Discovery Relating To Its On-Sale Bar Defense --
         The February 8, 2006 Hearing ....................................................................... 7

     F.    LPL's Belated And Incomplete Production Of Documents Reflects
         The Development Of The '121 Technology ...................................................... 8

     G.    To Avoid A Charge Of Contempt, LPL Finally Produces Documents
         That Substantiate The On-Sale Bar ............................................................... 11

     H.    The April 25 Hearing -- LPL Takes No Position On The Validity Of
         The '121 Patent ........................................................................................... 12

     I.     LPL Withdraws All Claims On The '121 Patent And Later Provides
         Defendants With A Covenant Not To Sue On The '121 Patent ..................... 15

     J.     The Documents Produced By LPL Reveal That The '121 Patent Is
         Invalid In Light Of The On-Sale Bar ............................................................ 16

ARGUMENT ............................................................................................................... 17

I.    DEFENDANTS ARE ENTITLED TO RECOVER THEIR ATTORNEYS'
    FEES AND EXPENSES INCURRED IN CONNECTION WITH THE
    DEFENSE OF LPL'S CLAIMS ON THE '121 PATENT ....................................... 17

     A.    Defendants Are The Prevailing Parties On All Claims On The '121
         Patent .......................................................................................................... 18

B.    The Present Case Is Exceptional Under 35 U.S.C. § 285. ................................18

    1.    LPL's Assertion Of The '121 Patent Claim Against Defendants
          Was Baseless And Unjustified In Light Of The Invalidity Of The
          Patent. ..........................................................................................................19

    2.    LPL's Litigation Misconduct Warrants A Finding Of An
          Exceptional Case. .......................................................................................21

          a.    LPL Thwarted CPT's Discovery Of LPL's On-Sale Bar
                Activities. ..........................................................................................22

          b.    LPL's Last Minute Abandonment Of Its '121 Patent
                Claim Evidences LPL's Unjustifiable Litigation Tactics
                And Warrants An Award Of Fees To CPT Under 35
                U.S.C. § 285. ....................................................................................23

C.    Defendants Should Be Awarded Their Attorneys' Fees And Expenses
      To Prevent The Injustice Of Having To Pay To Defend LPL's Claims
      On The '121 Patent. ..............................................................................................24

CONCLUSION ....................................................................................................................27

## TABLE OF AUTHORITIES

**CASES**

*Automated Bus. Cos., Inc. v. NEC Am., Inc.,*
202 F.3d 1353 (Fed. Cir. 2000)...................................................................................................17

*Brassler, U.S.A. I, L.P. v. Stryker Sales Corp.,*
267 F.3d 1370 (Fed. Cir. 2001)...................................................................................................25

*Callaway Golf Co. v. Slazenger,*
384 F. Supp. 2d 735 (D. Del. 2005)............................................................................................18

*Cent. Soya Co., Inc. v. Geo. A. Hormel & Co.,*
723 F.2d 1573 (Fed. Cir. 1983)...................................................................................................17

*Eltech Sys. Corp. v. PPG Indus., Inc.,*
903 F.2d 805 (Fed. Cir. 1990).....................................................................................................17

*Forest Labs., Inc. v. Abbott Labs.,*
339 F.3d 1324 (Fed. Cir. 2003)...................................................................................................19

*Haynes Int'l, Inc. v. Jessop Steel Co.,*
8 F.3d 1573 (Fed. Cir. 1993), *reh'g granted on other grounds,*
15 F.3d 1076 (Fed. Cir. 1994).....................................................................................................19

*Hoffman-La Roche Inc. v. Invamed Inc.,*
213 F.3d 1359 (Fed. Cir. 2000)...................................................................................................17

*Hughes v. Novi Am., Inc.,*
724 F.2d 122 (Fed. Cir. 1984)................................................................................................20, 21

*Impax Labs., Inc. v. Aventis Pharm., Inc.,*
333 F. Supp. 2d 265 (D. Del. 2004)............................................................................................18

*Interspiro USA, Inc. v. Figgie Int'l, Inc.,*
18 F.3d 927 (Fed. Cir. 1994).......................................................................................................17

*Loctite Corp. v. Fel-Pro, Inc.,*
667 F.2d 577 (7th Cir. 1981) ......................................................................................................21

*Mathis v. Spears,*
857 F.2d 749 (Fed. Cir. 1988)................................................................................................17, 25

*Motorola, Inc. v. Interdigital Technology Corp.,*
121 F.3d 1461 (Fed. Cir. 1997)...................................................................................................21

*Multi-Tech, Inc. v. Components, Inc.,*
708 F. Supp. 615 (D. Del. 1989) ............................................................................................ 17

*S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.,*
781 F.2d 198 (Fed. Cir. 1986) ............................................................................................... 17

*Serio-US Indus., Inc. v. Plastic Recovery Techs. Corp.,*
459 F.3d 1311 (Fed. Cir. 2006) ........................................................................................ 18, 19

*Stephens v. Tech Int'l, Inc.,*
393 F.3d 1269 (Fed. Cir. 2004) ............................................................................................. 20

*Tenax Corp. v. Tensar, Corp.,*
22 U.S.P.Q. 2d 1264 (D. Md. 1991) ..................................................................................... 18

## STATUTES AND OTHER AUTHORITIES

7 Chisum on Patents § 20.03 (1999) ...................................................................................... 18

iii

## INTRODUCTION

LPL commenced this action on an invalid patent -- the '121 patent was clearly invalid in light of sales of the claimed invention prior to the critical date. LPL knew, or should have known, of the pre-critical date sales when the case was commenced. During the case, LPL denied any invalidating pre-critical date sales, steadfastly blocked discovery on this issue, and produced evidence only under threat of contempt of Court. Throughout discovery, LPL engaged in foot-dragging in an effort to delay Defendants' inevitable discovery of on-sale bar evidence within LPL's control. While Defendants were preparing for trial on two patents, including extensive discovery and participation in the *Markman* hearing on both the '002 and '121 patents, LPL continued its charade of prosecuting an invalid patent. LPL's actions demonstrate that this is a truly exceptional case, and that an award of Defendants' attorneys' fees is necessary and appropriate.

On April 25, 2006, in the face of substantial evidence of pre-critical date sales, and when questioned by the Court, LPL was unable or unwilling to take *any* position on the on-sale bar -- a telling change from LPL's prior representations that the '121 patent was valid and enforceable. The Court ordered LPL to provide discovery to Defendants relating to the on-sale bar or dismiss its claims of infringement on the '121 patent. On May 1, 2006, LPL withdrew its claims on the '121 patent -- in the form of a dismissal without prejudice. On August 10, 2006, LPL provided Defendants with a covenant not to sue on all claims of the '121 patent.

For approximately one year, LPL cast a dark yet baseless shadow of patent infringement over Defendants on the '121 patent. This action caused damage to Defendants' goodwill and reputation. LPL obtained an expedited trial on the '002 patent vis-à-vis its claim of irreparable harm for Defendants' alleged infringement of the '121 patent -- a patent LPL knew, or should have known, was invalid. After Defendants spent millions of dollars in the defense of LPL's

claims of infringement on the '121 patent, LPL withdrew its claims approximately two months before trial. LPL caused substantial prejudice to Defendants in both this case and the marketplace.

In sum, LPL obtained an expedited trial in reliance on the '121 patent claims, only to later drop those claims in their entirety. This tactic consumed substantial resources of Defendants. Although the damage to Defendants cannot be precisely measured, Defendants' attorneys' fees and expenses for defending LPL's baseless prosecution of the '121 patent can be quantified. Defendants should be awarded their attorneys' fees and expenses incurred in the defense of LPL's claims of infringement on the '121 patent.

2

## NATURE AND STAGE OF THE PROCEEDING

On May 13, 2005 LPL commenced this action by filing a complaint against Defendants Tatung Company, Tatung Company of America, Inc., Chunghwa Picture Tubes, Ltd. and ViewSonic Corporation alleging infringement of United States Patent Nos. 6,738,121 (the " '121 patent") and 5,019,002 (the " '002 patent"). Defendants filed their answers and affirmative defenses and counterclaims on September 2, 2005.

On November 1, 2005, LPL moved for a preliminary injunction on the '121 patent seeking to enjoin Defendants from selling, or offering for sale, certain products that allegedly infringed the '121 patent. Following a November 16, 2005 hearing, the parties were scheduled for an expedited trial set to commence in July 2006. Extensive discovery ensued in the months that followed, including several hearings on discovery disputes. During an April 25, 2006 hearing that addressed LPL's discovery deficiencies, the Court ordered LPL to provide discovery to Defendants on the issue of on-sale bar, or dismiss its claims of infringement on the '121 patent. On May 1, 2006, LPL dismissed all of its claims on the '121 patent.

On May 16, 2006, the Court ordered that all issues relating to the '121 patent would be addressed by the Court after the July trial. On July 27, 2006, the jury returned a verdict in favor of LPL finding that the '002 patent was valid and infringed under the doctrine of equivalents. On August 10, 2006, LPL provided Defendants with a covenant not to sue on all claims of the '121 patent. Now, Defendants seek their attorneys' fees and expenses incurred in connection with the defense of LPL's claims of infringement on the '121 patent. This is Defendants' Opening Brief in Support of Their Motion for Attorneys' Fees and Costs.

## SUMMARY OF ARGUMENT

Plaintiff's commencement and prosecution of its claims of infringement on the '121 patent, while it knew or should have known that the '121 patent was invalid, necessitates a finding that this case is exceptional. Notwithstanding the fact that Defendants repeatedly informed Plaintiff that the '121 patent was invalid, Plaintiff proceeded with its claims on the '121 patent. After months of discovery recalcitrance, and facing a finding of contempt, Plaintiff finally produced documents that confirmed Defendants' contention that Plaintiff had been pursuing claims of infringement on an invalid patent. Shortly thereafter, Plaintiff dismissed all claims on the '121 patent, and later provided Defendants with a covenant not to sue on every claim of the '121 patent. Defendants should be entitled to recover their attorneys' fees and expenses incurred in connection with the defense of Plaintiff's claims of infringement on the '121 patent.

4

## STATEMENT OF FACTS

### A.    The '121 Patent.

U.S. Patent No. 6,738,121 ('121 patent) claims a tape carrier package (TCP) comprising one or more bending parts and one or more dummy bending parts, and a liquid crystal display device comprising such a TCP. The '121 patent issued from Application Serial No. 09/814,828, filed March 23, 2001, which claims priority to Korean Application No. P2000-17026, filed March 31, 2000. The inventors, Sai Chang Yun and Eun Yeong An, assigned their invention to LG. Philips LCD Co., Ltd. ("LPL") on December 8, 2000. The prosecution of the '121 patent was handled by McKenna Long & Aldridge LLP ("McKenna") -- LPL's trial counsel in the instant action. The '121 patent issued on May 18, 2004.

### B.    LPL Alleges Infringement Of The '121 And '002 Patents.

On May 13, 2005, LPL filed an action for alleged patent infringement, including willful infringement, of the '121 and '002 patents. LPL alleged that Defendants "infringed, actively induced and/or contributed to the infringement of the '121 Patent by making, using causing to be used, offering to sell, causing to be offered for sale, selling, causing to be sold, importing and/or causing to be imported products that infringe one or more claims of the '121 Patent in this judicial district and elsewhere in the United States." D.I. 1 at ¶ 23. LPL alleged that "[s]uch infringing products include[d] at least the product identified as a Tatung monitor L17AMTN ... and at least the product identified as a ViewSonic monitor ES710." LPL made similar allegations with respect to the '002 patent. D.I. 1 at ¶ 28.

5

### C.    After Nearly Six Months Pass, LPL Moves For A Preliminary Injunction.

On November 1, 2005, LPL moved the Court for preliminary, injunctive relief.[1]    In support of this application, LPL filed an opening brief and two supporting declarations.    In its opening brief, LPL argued that it would likely withstand any challenge to the validity of the '121 patent, would likely succeed in proving infringement, and would suffer irreparable harm unless the Court enjoined Defendants from further alleged infringement.    D.I. 22 at 9-27.    In support of these arguments, LPL filed the declarations of William K. Bohannon and Jon Hwan Kim.    D.I. 23 and 24.    For his part, Mr. Bohannon declared that in his opinion, Tatung monitor L17AMTN and ViewSonic monitor VE710S infringed claims 1, 2, 5-9 and 14 of the '121 patent.    D.I. 23 at ¶15.

Mr. Kim, the Manager of Intellectual Property Team 1 of LPL, declared under penalty of perjury that the alleged infringement must be stopped because "Defendants' infringement also fosters a false impression that the '121 Patent is not valid."    D.I. 24 at ¶33.    Mr. Kim further declared that "Defendants' infringement of LPL's '121 Patent further undermines LPL's reputation and goodwill by calling into question the validity and enforceability of LPL's patents in general."    D.I. 24 at ¶35.

### D.    The November 16 And December 8 Hearings -- Defendants Raise The Issue Of On-Sale Bar.

At the November 16, 2006 hearing, LPL continued to press for expedited proceedings on the '121 patent, at the same time arguing that depositions of its declarants Kim and Bohannon were unnecessary.    Defendants expressed their view that the '121 patent was invalid due to the

---

[1] LPL's preliminary injunction motion was filed nearly six months after the complaint in this action, apparently timed such that Defendants' answering brief fell due on the same date the parties were required to file numerous summary judgment briefs in a related action pending in the Central District of California.    D.I. 25 at ¶3.    Defendants requested that LPL stipulate to an extension of time for Defendants to respond, but LPL would only agree to a three day extension.

6

on-sale bar, stating: "[w]e have evidence and have found substantiated proof that there are documents showing that the patent is invalid under 102(b) for on sale bar." 11/16/05 Tr. at 3.[2] Defendants further explained that they were attempting to obtain additional evidence from third parties. LPL's counsel did not respond substantively on this issue.[3] Instead, LPL cast meritless aspersions on Defendants by declaring that intentional delay was their "modus operandi" and accusing them of "playing fast and loose." 11/16/05 Tr. at 25-26.

On December 8, 2005, the Court held a scheduling conference. Defendants again informed the Court that they continued to believe that the '121 patent was invalid because of the on-sale bar, and that they believed an early summary judgment motion could streamline the case. 12/8/05 Tr. at 13. LPL's only response was that "I don't think [on-sale bar is] a legal issue. An on-sale bar defense is highly factual." 12/8/05 Tr. at 16.

### E. Defendants Seek Discovery Relating To Its On-Sale Bar Defense -- The February 8, 2006 Hearing.

Through discovery, Defendants specifically requested documents related to conception and reduction to practice of the '121 invention (Requests 12-16), earliest sales date of LPL products incorporating the '121 technology (Requests 10, 11, and 20), and publications related to the subject matter claimed in the '121 patent (Request 18).[4] On the document production deadline of February 3, 2006, LPL produced a total of 1,316 pages of documents largely comprised of publicly available prosecution histories, but failed to produce any substantively responsive documents. Defendants complained of LPL's failure to produce any documents in

---

[2] Relevant transcript pages from the hearings held on November 16, 2005, December 8, 2005, February 8, 2006, March 1, 2006 and April 25, 2006 are attached hereto as Exs. A-E respectively.

[3] After the hearing, and given LPL's representations that expedited treatment of their claims was necessary, the Court ordered an expedited schedule in light of the parties' determination that such a schedule would be preferable to a preliminary injunction hearing.

[4] Ex. 1 (Defendants' First Set of Document Requests served December 16, 2005).

7

the above-mentioned categories in a letter to the Court dated February 7, 2006. D.I. 111. In its own letter to the Court also dated February 7, 2006, LPL explained that review of foreign language documents requiring translation was the cause for the delayed production. D.I. 110. Even though the case was filed in May 2005 and LPL presumably had access to documents prior to filing the action, LPL purported to justify its failure to respond to the most basic of document requests by the need for translation of foreign language documents.

On February 8, 2006, the Court held a hearing to address certain discovery issues that had arisen between the parties. Defendants addressed LPL's failure to produce documents in response to Defendants' discovery requests. LPL represented that the production would consist of approximately "a box to a box and a half, not ten boxes," "probably three quarters of a box to a box would be in Korean," and that the documents would be produced "on a rolling basis as soon as they're ready to be produced, so it will not be at the 21st when [Defendants] get all these documents." 2/8/06 Tr. at 17-18. The Court ultimately held that February 21, 2006 would be the cut-off for document production. Specifically, the Court explained that "you're going to cleanse your soles [sic] by February 21st of all that you think you should have produced, you're going to write all those neat letters back and forth about you didn't do this, you didn't do that, we're not happy with that, then I'm going to see you within a week of February 21st about deficiencies." 2/8/06 Tr. at 9-10; *see also* at 12 ("In my world, February 21 is when all documents should be produced.").

F.    **LPL's Belated And Incomplete Production Of Documents Reflects The Development Of The '121 Technology.**

Defendants received a second production from LPL between February 15-20, 2006 including a limited number of Korean documents which provided some information as to the development of the '121 technology. The documents relating to the '121 technology involved

8

only one LPL module, LB121S1-A2. Several of the documents were email communications discussing the development of the LB121S1-A2 module and its TCP. The central individual in nearly every email either sending or receiving the communications is Ki Ryong Jung, an employee of LPL (but not a named inventor on the '121 patent.)[5] *See, e.g.*, Ex. 4 (LPLII 07583), Ex. 5 (07613-07615), Ex. 6 (07674), Ex. 7 (07676), and Ex. 8 (11631-11632)[6]. Moreover, the technical documents relating to the conception and reduction to practice of the '121 patent produced by LPL bear a closer resemblance to the figures in an earlier Korean patent application - the '166 application - than those of the '121 patent. *See, e.g.*, Ex. 9 (LPLII 11602-11615). Interestingly, the '166 application was nowhere to be found in LPL's second production which purportedly included prior art documents related to the '121 patent.

Since LPL's documents relating to development of the '121 technology focused exclusively on the LB121S1-A2 module, Defendants purchased two of these modules from an LCD retailer on February 23.[7] The source TCPs have bending parts and dummy bending parts as disclosed in the '121 patent. The model number listed on the TCPs is                This

**REDACTED**

---

[5] Prior to receiving any documents from LPL, Defendants conducted a prior art search related to the '121 patent and identified a Korean application, KR2001-0065166 ('166 application), filed on December 29, 1999 and assigned to LPL. Ex. 2. The sole inventor listed is Ki Ryong Jung. The invention covers every aspect disclosed in the '121 patent. The '166 application was not listed as a foreign reference or in the foreign application priority data for the '121 patent. The December 29, 1999 Korean application was produced by LPL on March 17, 2006 under bates numbers LPLII 102795-102802 only after Defendants specifically demanded information related to the application in a deficiency letter. *See* D.I. 129. LPL makes no reference to the '166 application or Ki Ryong Jung in its privilege log. *See* Ex. 3.

[6] Citations to Exhibits 1-33 refer to the exhibits attached to the Declaration of Steven Yovits in Support of Defendants' Motion for Attorneys' Fees and Expenses filed contemporaneously herewith and cited hereinafter as "Ex. ___."

[7] Tellingly, Defendants were able to procure two samples of the LB121S1-A2 immediately while LPL, the manufacturer of the LB121S1-A2 module, purportedly did not have any samples of the module. *See* Ex. 10 (Letter from Cass Christenson to Julie Gabler and Christine Dudzik dated March 27, 2006).

9

model number was consistent with the TCP part number **REDACTED** in LPL's

documents which is described as a TCP with two dummy bending parts. Ex. 11 at LPLII 07164.

    LPL's documents show that the

Ex. 12 (LPLII 05928), Ex. 13 (05935-

05936) and Ex. 14 (05998).

**REDACTED**    Ex. 15 (LPLII 07105).

Ex. 16 (LPLII 07096-07098).

    Based on the documents produced by LPL through February 2006, it was clear that LPL

planned mass production of products incorporating the '121 technology for late 1999. LPL's

failure to produce any requested documents related to the first offer for sale or sale of an LPL

product incorporating the claimed TCP raised Defendants' suspicions that LPL's LB121S1-A2

incorporating the '121 technology was sold prior to the March 23, 2000 critical date.[8] These

suspicions prompted Defendants to specifically repeat their request in a deficiency letter to the

Court dated February 28, 2006 (D.I. 129) and in a letter to LPL's counsel dated March 7, 2006

(Ex. 17). In the February 28, 2006 letter to the Court, Defendants specifically addressed LPL's

failure to produce documents relating to the '121 patent, and most importantly, its failure to

produce documents relating to the invalidity of the '121 patent. D.I. 129.

---

[8] Defendants recognized that LPL was stonewalling their discovery efforts. As a result, Defendants commenced limited third-party discovery in an effort to obtain documents relating to modules manufactured by third parties. Given its pattern of suppression, not surprisingly LPL moved to quash these subpoenas by letter dated February 28, 2006. D.I. 128. The Court granted this request on March 1, 2006. 3/1/06 Tr. at 3. Defendants sought reconsideration of this order, but the motion for reconsideration was never decided on the merits because it was deemed moot by the Court in light of LPL's withdraw of its claims on the '121 patent. D.I. 134, 180 and 185.

10

On March 1, 2006, the Court held a hearing and ordered LPL to produce documents relating to Defendants' "claims on the questions that relate to validity, which are the questions of commercial success and questions related to the on sale issue, and questions related to the prosecution, [and] questions related to the public use matters." 3/1/06 Tr. at 4. The Court then held that "if there is any dispute concerning the order, there will be a hearing on March -- this is a Wednesday, March 29th at 4:00 o'clock, at which time defendants will have an opportunity -- and I'll set a time allocation if the hearing becomes necessary, it will be certain hours allocated to the prosecution of the contempt, and certain time allocated to defense of the contempt will have an opportunity to present its evidence that the Rule 37 order on matters of invalidity as cited in the defendants' letter in conjunction with this hearing, February 28, 2006 letter, haven't been complied with." 3/1/06 Tr. at 4-5.

### G.    To Avoid A Charge Of Contempt, LPL Finally Produces Documents That Substantiate The On-Sale Bar.

Faced with a potential contempt hearing, on March 17, 2006 LPL produced a batch of documents including sales of REDACTED (Ex. 28, LPLII 102785-102786) and sales of the LB121S1-A2 module. Ex. 28 (LPLII 102328-102347).

Ex.

28 (LPLII 102785).        REDACTED

Ex. 28 (LPLII 102328-102347).

*Id.* Not coincidentally, this shipment was made a day after the filing of LPL's '166 application seeking patent protection in Korea for the '121 technology. Since Korea is a jurisdiction wherein novelty is destroyed by

11

public use or sale in the country prior to filing a patent application[9], the timing of the first shipment of LB121S1-A2 modules is <u>exactly</u> consistent with knowledge by LPL that this module incorporated the technology disclosed in the '166 application (which covers every aspect disclosed in the '121 patent).  In all, a total of     LB121S1-A2 modules were sold by LPL to LPLA in the United States prior to the March 23, 2000 critical date for the '121 patent.

    The March 2006 production included a list of REDACTED that LPL uses in REDACTED      Ex. 28 (LPLII 102754-102758).  There are many instances wherein a single TCP is used in several different modules.  It is clear in this document, however, that REDACTED      There is no other TCP listed that LPL suggests can potentially be used as the source TCP in the LB121S1-A2.

### H. The April 25 Hearing -- LPL Takes No Position On The Validity Of The '121 Patent.

    After Defendants reviewed LPL's March production of documents, it became clear that LPL was still withholding documents.  By way of example, LPL produced virtually no manufacturing or production documents, and particularly absent were documents dated after 1999.  D.I. 165.  Similarly, LPL did not produce sales related documents, including purchase orders or invoices generated by LPL or LPLA.  As a result, Defendants wrote to the Court, described LPL's discovery deficiencies and requested a hearing.  D.I. 165.  A hearing was set for April 25, 2005.

    During the hearing of April 25, 2006, LPL claimed that the LB121S1-A2 module used two different TCPs, one that contains the invention and one that does not.  4/25/06 Tr. at 39.  LPL further claimed that this use of two different TCPs obscured a determination whether modules containing part 56 were sold prior to the critical date.  *Id.*, 39:18-40:4.  Although there

---

[9] Article 29(1) of the Patent Act of the Republic of Korea.

REDACTED                                    (Ex. 21, LPLII 06286-06288)

(Ex. 22, LPLII 06474-06476)

REDACTED

[10] All of this information was contained within the documents that LPL

delayed in producing to Defendants because they needed "to be reviewed."[11]

During the hearing, the following colloquy occurred between the Court and LPL's

counsel:

> THE COURT: Now, with respect to that request, you have heard
> counsel contend that the '121 patent has a validity problem by
> virtue of an on-sale bar.
>
> MR. BONO: I have heard that, Your Honor, yes.
>
> THE COURT: And with all the notice that they contend they have
> given to plaintiff, your view is that that is not a sustainable
> contention?
>
> MR. BONO: Our argument is, Your Honor, that there is
> insufficient proof and evidence showing that the product that
> they're talking about has the particular TCP package in it that they
> contend was sold.
>
> THE COURT: Just so I'm clear, your client's position is that
> that's not in the packet, the module --
>
> MR. BONO: Your Honor, to be clear --

---

[10] LPL's counsel acknowledged that part 56 was only used in the LB121S1-A2 module. *See* Ex. 10 (Letter from Cass Christenson to Julie Gabler and Christine Dudzik dated March 27, 2006).

[11] Responsive documents cited herein were produced on February 15, 2006 (Ex. 23, LPLII 01317-08046); February 16, 2006 (Ex. 24, LPLII 08047-12141); February 17, 2006 (Ex. 25, LPLII 12142-13241); February 18, 2006 (Ex. 26, LPLII 13242-102210); February 20, 2006 (Ex. 27, LPLII 102211-102291); and March 16, 2006 (Ex. 28, LPLII 102292-102833).

13

THE COURT: Right.

MR. BONO: -- that product which they're talking about used two different TCP packages, one was the TCP package that does not contain the invention, and some contained the invention.

THE COURT: So let's focus on the ones that contained the invention.

MR. BONO: Yes.

THE COURT: Have you learned in your dealings with your client whether or not the invention packet was on sale as understood under the patent laws prior to the critical date?

MR. BONO: I have been unable to ascertain that fact from the client.

THE COURT: One way or the other?

MR. BONO: Yes, Your Honor. We know that the -- both packages were in the product and the client has been unable to identify for us which TCP was in which of those modules prior to the critical date. We know the module number that's at issue was on sale prior to the critical date, but we don't know whether the modules that were sold prior to the date contained the invention TCP. That's what they don't have information on, Your Honor. I have quizzed them repeatedly.

4/25/06 Tr. at 38-41.

Thereafter, the Court inquired as to whether LPL's trial counsel had any additional information given the firm's role as LPL's prosecution counsel:

THE COURT: Now, the defendants contend that in addition to the client's knowledge that your law firm has a relationship on the prosecution side of intellectual property with the client.

MR. BONO: That's correct, Your Honor.

THE COURT: And what you're telling me is even with that relationship, you're unable to get this information about the '121 patent products sold by the client?

MR. BONO: Yes, Your Honor. We did not have at the time -- at the time I was not involved in the patent prosecution, but at the

14

time of the patent prosecution we had no knowledge about the product being sold prior to the critical date.

THE COURT: No, I hope you wouldn't have.

MR. BONO: Right. The situation is --

THE COURT: What I'm interested in knowing is because of that relationship and because of that prosecution work, you haven't been able to shed any additional light on -- as attorneys your knowledge about the issue raised by defendant for purposes of this litigation.

MR. BONO: That's correct, Your Honor, I have investigated this and I have spoken with the client about this issue, and they are unable to say whether the particular TCP which contains the invention was contained in the modules sold prior to March 23, that were sold in the U.S.

I have quizzed them repeatedly, and they don't have documentation either in their manufacturing facilities or anywhere else which would say that the module numbers sold here contain the particular TCP, that contained the invention as opposed to that contained in the TCP prior to the invention. I have asked them repeatedly.

4/25/06 Tr. 40-42. At the end of the hearing, the Court ordered LPL to provide discovery to Defendants or withdraw its claims on the '121 patent.[12]

## I.    LPL Withdraws All Claims On The '121 Patent And Later Provides Defendants With A Covenant Not To Sue On The '121 Patent.

On May 1, 2006, LPL filed a Notice of Voluntary Withdrawal of Claims Relating to U.S. Patent No. 6,738,121. D.I. 180. Through this notice, LPL purported to withdraw without prejudice its claims for patent infringement on the '121 patent. On May 15, 2006, Defendants filed a letter submission wherein they described in detail how LPL's actions had prejudiced

---

[12] Based upon the facts set forth herein, and LPL's inability to provide contrary evidence, Defendants submit that the '121 patent is invalid in light of the on-sale bar, and that LPL knew, or should have known prior to commencing the present action, that the '121 patent was invalid. In the event the Court determines that further factual development is necessary, the Court may order additional discovery and/or an evidentiary hearing that would further illustrate the invalidity of the '121 patent.

15

Defendants. D.I. 195. On May 16, 2006, the Court issued an order holding that "[t]he issues Defendants contend exist regarding the '121 patent will be addressed after the July trial on a schedule set by the Court." D.I. 197. On August 10, 2006, LPL provided Defendants with a covenant not to sue on all claims of the '121 patent. D.I. 418.

### J. The Documents Produced By LPL Reveal That The '121 Patent Is Invalid In Light Of The On-Sale Bar.

The documents produced by LPL primarily relate to the LPL LB121S1-A2 module. The source TCP for the LPL LB121S1-A2 module has bending parts and dummy bending parts as disclosed in the '121 patent. Ex. 29 (LPLII 07106). The model number listed on the TCP of the modules procured by Defendants is        This model number is consistent with the TCP part number        which is described in LPL's documents as a TCP

REDACTED

                         Ex. 16 (LPLII 07096-07098).

Based upon the sales information produced by LPL, at least     LB121S1-A2 modules were sold by LPL to LPLA in the United States prior to the March 23, 2000 critical date. Ex. 19 (LPLII 102328-102347). Given that     is the only source TCP listed on

           and the only TCP that can be used with the LB121S1-A2 module, the record is clear that LPL made sales prior to the critical date that invalidate the '121 patent.

16

## ARGUMENT

**I.  DEFENDANTS ARE ENTITLED TO RECOVER THEIR ATTORNEYS' FEES AND EXPENSES INCURRED IN CONNECTION WITH THE DEFENSE OF LPL'S CLAIMS ON THE '121 PATENT.**

Section 285 provides that the "court in exceptional cases may award reasonable attorney fees to the prevailing party." Under Section 285, attorneys' fees are available not just to patentees, but also to accused infringers, such as Defendants, who prevail in the litigation. *Eltech Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d 805, 811 (Fed. Cir. 1990). Section 285 serves to remedy injustice to a party that has expended significant sums defending itself against unfounded claims of patent infringement, and to serve as a deterrent against the bringing of unwarranted suits for patent infringement. *Automated Bus. Cos., Inc. v. NEC Am., Inc.*, 202 F.3d 1353, 1355 (Fed. Cir. 2000); *Cent. Soya Co., Inc. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983); *Mathis v. Spears*, 857 F.2d 749, 754 (Fed. Cir. 1988).

Under Section 285, a court must first determine, as a factual matter, whether a case is "exceptional," and then determine whether to exercise its discretion to award attorneys' fees to the prevailing party. *Interspiro USA, Inc. v. Figgie Int'l, Inc.* 18 F.3d 927, 933 (Fed. Cir. 1994). A court should also weigh considerations such as the commission of inequitable conduct before the U.S. Patent and Trademark Office ("the USPTO"), the closeness of the case, the tactics of counsel, the conduct of the parties including evidence of bad faith, and any other factors that may contribute to a fair reallocation of the burdens of litigation between winner and loser. *Hoffman-La Roche Inc. v. Invamed Inc.*, 213 F.3d 1359, 1365 (Fed. Cir. 2000); *S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*, 781 F.2d 198 (Fed. Cir. 1986); *Multi-Tech, Inc. v. Components, Inc.*, 708 F. Supp. 615, 620 (D. Del. 1989). The methodology of assessing a reasonable award under Section 285 is clearly within the discretion of the district court. *Mathis*, 857 F.2d at 754.

17

**A.    Defendants Are The Prevailing Parties On All Claims On The '121 Patent.**

After nearly completing discovery, including production of documents, preparation of interrogatory responses, working with experts on issues relating to infringement and invalidity, participation in the *Markman* hearing and preparation for depositions, and a mere two months before the start of trial, LPL withdrew all claims on the '121 patent. Subsequently, on August 10, 2006, LPL provided Defendants with a covenant not to sue on all claims of the '121 patent. D.I. 418. Such action is tantamount to a dismissal with prejudice. Defendants are thus the "prevailing party" for purposes of the '121 infringement claim. *See Tenax Corp. v. Tensar, Corp.*, 22 U.S.P.Q.2d 1264, 1266 (D. Md. 1991) ("a party has prevailed within the meaning of Sec. 285, if, after discovery, a claim is dismissed with prejudice," citing cases); *see also Callaway Golf Co. v. Slazenger*, 384 F. Supp. 2d 735, 746 (D. Del. 2005) (holding that a defendant who has obtained from a claimant a voluntary dismissal with prejudice can be classified as a "prevailing party."); 7 Chisum on Patents § 20.03[4][c][v] (1999).

**B.    The Present Case Is Exceptional Under 35 U.S.C. § 285.**

Among the types of conduct that may render a case "exceptional" are "inequitable conduct before the P.T.O., misconduct during litigation, vexatious or unjustified litigation, and frivolous suit." *Impax Labs., Inc. v. Aventis Pharm., Inc.*, 333 F. Supp. 2d 265, 284 (D. Del. 2004) (citation omitted). When an alleged infringer seeks to recover attorneys' fees under Section 285, the Federal Circuit has found that an exceptional case may exist where there is misconduct in securing the patent, litigation misconduct or the litigation is brought in subjective bad faith and is objectively baseless. *See Serio-US Indus., Inc. v. Plastic Recovery Techs. Corp.*, 459 F.3d 1311, 1322 (Fed. Cir. 2006). Any of these factors alone may merit the court determining that a case is "exceptional." Here, LPL's assertion of the '121 claim against

18

Defendants in light of the known on-sale bar and its conduct during the litigation of this claim support a determination that the case is exceptional.

1.    **LPL's Assertion Of The '121 Patent Claim Against Defendants Was Baseless And Unjustified In Light Of The Invalidity Of The Patent.**

LPL's assertion and ultimate abandonment of its claims on the '121 patent, under threat of having to provide discovery that would further expose LPL's knowledge of its own pre-critical date sales, demonstrates that this litigation was unjustified, warranting an exceptional case determination. Whether litigation is unjustified depends upon whether the plaintiff knew or should have known that its action was baseless, but pursued its claim anyway. *See Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1330 (Fed. Cir. 2003); citing *Haynes Int'l, Inc. v. Jessop Steel Co.*, 8 F.3d 1573, 1579 (Fed. Cir. 1993) ("A frivolous infringement suit is one in which the patentee knew or, on reasonable investigation, should have known was baseless."), *reh'g granted on other grounds*, 15 F.3d 1076 (Fed. Cir. 1994)). In determining whether the plaintiff undertook the litigation in bad faith, the court will consider decisions during the litigation process (such as restraining orders, preliminary injunction, dismissal of other claims) that indicate that the plaintiff's claims were reasonable or showed a sign of success. *Serio-US Indus.*, 459 F.3d at 1320-1322.

Based upon the documents produced from LPL's own files, it is evident that LPL knew, or should have known, that the '121 patent was invalid. Specifically, a shipment of the LB12151-A2 modules were sold to LG. Philips LCD America in December 1999. Ex. 19 (LPLII 102328-102347). The first large shipment    REDACTED

*Id.* This shipment was made just one day after the filing of LPL's '166 application seeking protection in Korea for the same technology as claimed in the '121 patent. The timing is reflective of LPL's knowledge that this module incorporated technology disclosed in the '166

19

REDACTED

application. A total of _____ LB121S1-A2 modules were sold by LPL to LG. Philips LCD America in the United States prior to the March 23, 2000 critical date. *Id.*

Notwithstanding these invalidating sales prior to the critical date, on May 13, 2005 LPL commenced the present litigation and later sought to preliminarily enjoin Defendants on November 1, 2005. D.I. 21. During discovery, LPL attempted to withhold this evidence from Defendants. Defendants specifically requested documents that related to conception and reduction to practice of the '121 technology, earliest sales date of LPL products incorporating the '121 technology and publications related to the subject matter claimed in the '121 patent. Ex. 1. On February 3, 2006 (the document production deadline), LPL produced only 1,316 pages of documents largely comprised of publicly available prosecution histories. The Court extended the deadline to produce documents until February 21, 2006, and LPL finally began producing substantively responsive documents on the days leading up to the deadline; however, LPL was still withholding critical documents. On March 17, 2006, when LPL finally produced responsive documents under threat of contempt, the obvious on-sale bar and LPL's knowledge of it came to light. This information was known, accessible and within LPL's control at all times *before* LPL asserted the '121 patent against Defendants in this case. Despite Defendants having raised the on-sale bar issue in November and December 2005, LPL continued to press the '121 claim in an expedited fashion until the charade was unmasked in late April 2006.

A frivolous suit, like LPL's assertion of the '121 patent here, is one which "the patentee knew or, on reasonable investigation, should have known was baseless." *See Stephens v. Tech Int'l, Inc.*, 393 F.3d 1269, 1273-74 (Fed. Cir. 2004). A party's maintenance of an infringement suit on a patent, despite knowledge of pre-critical date sales, constitutes an exceptional case under Section 285. *See Hughes v. Novi Am., Inc.*, 724 F.2d 122, 125 (Fed. Cir. 1984) (granting

20

award of attorneys' fees based, in part, on litigation being maintained despite evidence of sales which barred the grant of patent being brought to light seven months prior to trial).  Further, discovery abuses, such as a patentee's obstruction of discovery of evidence of on-sale bar activities, committed in the course of a frivolous suit support an exceptional case finding.  *Id.*; *see also Loctite Corp. v. Fel-Pro, Inc.*, 667 F.2d 577, 584-85 (7th Cir. 1981) (affirming a fee award where patentee only partially answered interrogatories and concealed evidence in discovery).

This case is similar to *Hughes* in that LPL maintained its '121 claims for nearly six months after it was put on notice that there was an on-sale bar, and reasonably should have known that its patent was invalid.[13]

### 2.    LPL's Litigation Misconduct Warrants A Finding Of An Exceptional Case.

A case may be exceptional under Section 285 based upon a party's litigation misconduct. *See Motorola, Inc. v. Interdigital Tech. Corp.*, 121 F.3d 1461, 1468 (Fed. Cir. 1997).  In this case, LPL repeatedly resorted to improper litigation tactics in an attempt to sustain its meritless claims under the '121 patent.  Amongst other efforts, LPL:

(1)    thwarted CPT's investigation into LPL's sale of products containing the technology embodied in the '121 prior to the critical date of the '121 patent by refusing to produce key witnesses for depositions and obstructing efforts to obtain documents revealing these sales;

---

[13] Interrogatory No. 9 of Defendants' first set of interrogatories served on LPL on December 16, 2006 specifically requests information describing any offer for sale or sale of products incorporating the subject matter of the '121 patent prior to March 23, 2000.  Ex. 30. LPL responded on January 17, 2006 that it is continuing to investigate this matter and would supplement if and when information becomes available.  Ex. 31.  LPL supplemented the response on February 28, 2006 -- after already producing documents to Defendants reflecting that mass production of modules using '121 technology was scheduled for late 1999 -- stating that it had no knowledge of any offer for sale or sale in the United States prior to the March 23, 2000 critical date.  Ex. 32.

(2)    substantially delayed production of documents confirming the pre-critical date
        sales, asserting the need to translate documents notwithstanding having Korean
        counsel actively involved in the case; and

(3)    abandoned its '121 patent infringement claim when pressed under Court order to
        provide further, in depth discovery of its on-sale bar activities.

LPL's pervasive efforts to shield evidence of the pre-critical date sales further warrant a finding

of an exceptional case, and an award of attorneys' fees.

### a.    LPL Thwarted CPT's Discovery Of LPL's On-Sale Bar Activities.

Throughout this lawsuit, LPL has attempted to impede CPT's investigation into LPL's

sales of products containing the technology embodied in the '121 patent prior to its critical date.

Although the on-sale bar issue had been raised at the inception of the case, it was not until

February 21, 2006 (the document production cut-off date) that LPL produced documents

reflecting that LPL itself sold products embodying some or all of the claims of the '121 patent

prior to the March 23, 2000 critical date, and that LPL purchased TCPs from Texas Instruments

embodying some or all of the claims of the '121 patent prior to March 23, 2000.  One such

document on February 21 shows that LPL received a "Buyer Comment" on a product containing

some or all of the claims of the '121 patent from a "Buyer:  Open Market" on or before

December 27, 1999.  Ex. 33 (LPLII 012010-11).  Another such document is an LPL bill of

materials dated October 13, 1999 showing that LPL used a Texas Instruments TCP, embodying

all of the claims of the '121 patent, prior the critical date.  Ex. 16 at LPLII 07098.

LPL did not disclose any facts concerning either LPL's pre-March 23, 2000 sales of

modules incorporating TCPs embodying some or all of the claims of the '121 patent or LPL's

purchases of TCPs from Texas Instruments in either its Rule 26(a) Initial Disclosure Statement

or its discovery responses.  Moreover, LPL failed to identify relevant third parties, including

22

those who purchased the module from LPLA in the relevant time period, as having knowledge of those sales.

Had LPL disclosed any of these facts prior to the <u>last day</u> of the document discovery period, Defendants would have pursued third-party discovery from purchasers of these products concerning their pre-March 23, 2000 purchases. However, LPL did not disclose these facts until February 21 -- when it was too late for CPT to pursue third-party document discovery on these issues. 2/8/06 Tr. at 20. To compound their misconduct, after LPL finally (and belatedly) produced the responsive documents that illustrated the pre-critical date sales to third parties, LPL moved to quash Defendants' third-party discovery as being untimely. D.I. 128.

> **b.     LPL's Last Minute Abandonment Of Its '121 Patent Claim Evidences LPL's Unjustifiable Litigation Tactics And Warrants An Award Of Fees To CPT Under 35 U.S.C. § 285.**

On May 13, 2005, LPL alleged that Defendants infringed its '121 and '002 patents. LPL's aggressive pursuit of its assertion that Defendants infringed the '121 patent is evidenced by its motion for preliminary injunction filed on November 1, 2005. In its motion, LPL represented to this Court that a preliminary injunction was warranted because LPL would succeed on the merits of its patent infringement claim and would withstand any challenge to the validity of the '121 patent.

But thereafter LPL abandoned its '121 patent infringement claim when pressed by Defendants for discovery on its on-sale bar activities. Defendants sought further discovery after it determined that LPL had sold approximately         units of the product containing the technology embodied in the '121 patent to its American subsidiary prior to the critical date of the '121 patent. Ex. 19 (LPLII 102328-102347). When pressed by the Court on that issue, LPL's counsel admitted that he had been "unable to ascertain that fact from the client," despite the fact that his firm is also prosecution counsel for LPL. 4/25/06 Tr. at 39. Rather than provide

REDACTED

discovery on its on-sale bar activities, LPL filed a Notice of Voluntary Withdrawal of Claims Relating to U.S. Patent No. 6,738,121. D.I. 180.

Having delayed so long in dismissing its unjustified allegations of infringement of the '121 patent, LPL unnecessarily subjected CPT to substantial effort and expense that required CPT to: (i) acquire evidence that the '121 patent is invalid; (ii) locate expert witnesses to counter LPL's allegations as to the '121 patent; (iii) prepare for depositions relating to the '121 patent; (iv) participate in a *Markman* hearing in the '121 patent; and (v) prepare a trial presentation to demonstrate the noninfringement, invalidity and unenforceability of the '121 patent. In so doing, LPL again revealed its vexatious and unjustifiable litigation tactics, further justifying this Court's finding of an exceptional case and award of attorneys' fees in favor of CPT.

In sum, LPL sued on the '121 patent, made accusations of irreparable harm based on that patent without conducting a reasonable investigation of its on-sale bar activities, and then dropped its claims to avoid further discovery of its on-sale bar activities. Defendants expended a significant amount of effort and resources to obtain discovery on the pre-critical date sales of products embodying the '121 patent from the inception of suit until May 1, 2006, and to otherwise defend itself in this litigation against the '121 patent infringement claim and preliminary injunction motion, only for LPL to abandon this claim, shortly before trial.

LPL's single-minded pursuit of its allegations of infringement of the '121 patent until the eve of trial, as well as its disregard for the costs and burden to which it subjected Defendants in defending those claims, further justify an award of attorneys' fees to CPT.

C. **Defendants Should Be Awarded Their Attorneys' Fees And Expenses To Prevent The Injustice Of Having To Pay To Defend LPL's Claims On The '121 Patent.**

Under the circumstances presented here, the exercise of this Court's discretion to award attorneys' fees is fully justified. It would be inequitable to deny Defendants' recovery of their

24

attorneys' fees and expenses incurred in defending LPL's claims on the '121 patent given LPL's prior knowledge of the on-sale bar and subsequent efforts to hide such information during discovery. As stated by the Federal Circuit in *Mathis v. Spears*:

> In the present case, a wrong has been done. [Plaintiff] severely injured [defendant], having forced it to defend at monstrous expense, its right freely to compete, subjecting [the defendant] to a totally unwarranted suit .... The only deterrent to the equally improper bringing of clearly unwarranted suits on obviously invalid or unenforceable patents is Section 285. No award under Section 285 can fully compensate a defendant subjected to bad faith litigation, *e.g.*, for loss of executives' time and missed business opportunities .... Moreover, when confronted with litigation brought in bad faith, a court's exercise of its inherent power to rectify, at least in part, the injustice done the defendant serves additionally to defend the Court and the judicial process against abuse.

*Mathis*, 857 F.2d at 754.

Likewise, in *Brasseler,* the court noted that, "[the defendant] would not have incurred any of the fees generated in defense of this suit had [the patentee] not committed inequitable conduct in pursuit of its patent and had it not filed a claim for infringement of that patent, known by [the patentee] to have been improperly obtained. Thus, [the patentee] should be charged with the expense of defending against this frivolous lawsuit." *Brassler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1386 (Fed. Cir. 2001). For the same reason, and for its vexatious and bad faith litigation tactics throughout this lawsuit, LPL should be ordered to pay all of the attorneys' fees and associated expenses, incurred by Defendants in defending itself against LPL's claims on the '121 patent.

Not only did Defendants incur substantial attorneys' fees and expenses to defend against LPL's meritless patent infringement claims, but Defendants necessarily suffered business losses attributable to the hours necessarily devoted to this litigation by Defendants' employees. LPL's baseless lawsuit also interfered with Defendants' relationships with customers for its Liquid

Crystal Display ("LCD") products, casting doubt on their ability to continue supplying products under existing and pending supply contracts.

In these circumstances, even an award of attorneys' fees and expenses will not fully compensate Defendants for having to defend against LPL's unjustified accusations of infringement of the '121 patent. However, this Court can exercise its discretion under Section 285 to achieve a more equitable result by correcting at least a portion of the substantial harm suffered by Defendants at the hands of LPL and its wrongful lawsuit.[14]

---

[14] Through this motion, Defendants seek only an adjudication of their entitlement to attorneys' fees and expenses -- not a determination of the amount to which they are entitled to recover. Defendants will make a separate submission regarding the amount of attorneys' fees and expenses with supporting documentation as directed by the Court.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion for Attorneys' Fees and Expenses.

OF COUNSEL:

Teresa M. Corbin
Glenn W. Rhodes
Howrey LLP
525 Market Street, Suite 3600
San Francisco, California 94105
(415) 848-4900

Julie S. Gabler
Howrey LLP
550 South Hope Street, Suite 1100
Los Angeles, California 90071
(213) 892-1800


Dated:  October 10, 2006

Robert W. Whetzel (#2288)
whetzel@rlf.com
Steven J. Fineman (#4025)
fineman@rlf.com
Matthew W. King (#4566)
king@rlf.com
Richards, Layton & Finger
One Rodney Square, P.O. Box 551
Wilmington, DE  19899
(302) 651-7700
Attorneys    for    Defendants/Counterclaimants
Tatung Company, Tatung Company of America,
Chunghwa Picture Tubes, Ltd, and ViewSonic
Corporation

27

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 10, 2006, I electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send notification of such filing, and hand delivered to the following:

> Richard D. Kirk
> The Bayard Firm
> 222 Delaware Avenue, Suite 900
> P.O. Box 25130
> Wilmington, DE 19899

I hereby certify that on October 10, 2006, I sent the foregoing document by Electronic Mail, to the following non-registered participants:

> Gaspare J. Bono
> Matthew T. Bailey
> Andrew J. Park
> Adrian Mollo
> McKenna Long & Aldridge LLP
> 1900 K Street, NW
> Washington, DC 20006

> Steven J. Fineman (#4025)
> Fineman@rlf.com
> Richards, Layton & Finger
> One Rodney Square
> P.O. Box 551
> Wilmington, DE 19899

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 18, 2006, I electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send notification of such filing, and hand delivered to the following:

> Richard D. Kirk
> The Bayard Firm
> 222 Delaware Avenue, Suite 900
> P.O. Box 25130
> Wilmington, DE 19899

I hereby certify that on October 18, 2006, I sent the foregoing document by Federal Express, to the following non-registered participants:

> Gaspare J. Bono
> Matthew T. Bailey
> Andrew J. Park
> Adrian Mollo
> McKenna Long & Aldridge LLP
> 1900 K Street, NW
> Washington, DC 20006

> Matthew W. King (#4566)
> King@rlf.com
> Richards, Layton & Finger
> One Rodney Square
> P.O. Box 551
> Wilmington, DE 19899