EXHIBIT A

1

```
 1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF DELAWARE
 2

 3    LG. PHILIPS LCD CO. LTD.,       )
                                      )
 4                    Plaintiff,      )
                                      ) C.A. NO: 05-292 JJF
 5    v.                              )
                                      )
 6    TATUNG COMPANY, TATUNG          )
      COMPANY OF AMERICA, INC.,       )
 7    CHUNGWA PICTURE TUBES LTD.,     )
      and VIEWSONIC CORPORATION,      )
 8                                    )
                      Defendants.     )
 9

10                 United States District Court
                   844 King Street
11                 Wilmington, Delaware
                   Courtroom 4B
12
                   Wednesday, November 16, 2005
13                 2:30 p.m.

14    BEFORE:  THE HONORABLE JOSEPH J. FARNAN, JR.
                 United States District Court Judge
15

16    APPEARANCES:

17          RICHARD D. KIRK, ESQ.
            THE BAYARD FIRM
18          and GAP BONO, ESQ.
            McKENNA, LONG & ALDRICH
19          For the Plaintiff

20
            ROBERT W. WHETZEL, ESQ.
21          and MATTHEW W. KING, ESQ.
            RICHARDS, LAYTON & FINGER
22                   and
            CHRISTINE A. DUDZIK, ESQ.
23          HOWREY, LLP
            For the Defendants
24
```

1    additional time.

2              MS. DUDZIK:  Good afternoon, Your

3    Honor.  We are asking for a two months

4    extension of time in which to file our

5    responsive brief to the preliminary injunction

6    motion.

7              We believe that this time is

8    reasonable and necessary to formally prepare

9    the papers that we need to respond to the

10   motion.  Particularly to say for the local

11   counsel has said that we needed to prepare for

12   the declarations that we need to prepare to

13   show the invalidity basis for the patent in

14   suit.

15             They have claimed that they're

16   entitled to a presumption of validity in this

17   case, which is one of those standards for the

18   preliminary injunction  We have evidence and

19   have found substantiated proof that there are

20   documents showing that the patent is invalid

21   under 102(b) for on sale bar.  We are working

22   up that evidence.  Most of that documentation,

23   however, is located in China and Taiwan because

24   the defendant, CPT and Tatung, are both Taiwan

1    that if you grant them deposition discovery,
2    the preliminary injunction motion will be here
3    next June and it may still not be ready for the
4    Court's decision. Because in terms of
5    scheduling, because I know they'll want to
6    schedule Mr. Bohanan's deposition and we have
7    to work to do that and there will be delays on
8    that. And then when they put in their expert,
9    I'll have to run him around to try to get a
10   time when they are available to produce him.
11   There will be further delays. And every time
12   they put in a declarant. And it will be six
13   months from now and they still will not have
14   filed their opposition to this PI motion.
15            Because I can guarantee you that
16   something will happen and they'll file another
17   application to this Court because they've had a
18   track record of it time and time again. They
19   do it in every case we've had against them.
20   And it's their modus operandi.
21            And so my concern is I understand
22   the Court wants to make sure that there's an
23   adequate record on the preliminary injunction
24   motion and I understand that. And the Court

1    want to five them adequate time to develop the

2    defenses they've laid out for the Court.   And

3    I'm willing to give them the document they've

4    requested in a reasonable time.   We can produce

5    that in two weeks.

6              THE COURT:   Do you want discovery

7    against all the products they sell?

8              MR. BONO:   Your Honor, if they're

9    going to claim that these two products are no

10   longer being sold but they're being sold under

11   a different -- but the real situation is

12   they're now being sold under a new product

13   number, a new model number, but it's really

14   essentially the same product, I think that

15   would be an inappropriate defense for this

16   preliminary injunction motion on their part

17   because they're real playing fast and loose

18   with what the point here is.

19             The point here is we bought these

20   products that were being sold here in Delaware

21   right before we filed this lawsuit and they're

22   available in the market.   Now they come in and

23   say, you know, we changed the model number on

24   these products so we're not selling these

# EXHIBIT B

1

1          IN THE UNITED STATES DISTRICT COURT

2          IN AND FOR THE DISTRICT OF DELAWARE

3                          - - -

4    L.G. PHILIPS LCD CO., Ltd        :     CIVIL ACTION
                                      :
5                                     :
              Plaintiff               :
6                                     :
         vs.                          :
7                                     :
     TATUNG                           :
8                                     :
              Defendant               :     NO. 05-292 (JJF)
9                          - - -

10                              Wilmington, Delaware
11                              December 8, 2005
                                1:30 o'clock, p.m.
12                              Scheduling Conference

13                          - - -

14   BEFORE:  HONORABLE JOSEPH J. FARNAN, JR., U.S.D.C.J.

15                          - - -

16   APPEARANCES:

17           THE BAYARD FIRM
             BY:  RICHARD D. KIRK ESQ. and
18                ASHLEY STITZER, ESQ.

19                    -and-

20           McKENNA LONG & ALDRIDGE LLP
             BY:  GASPARE J. BONO, ESQ.,
21                MATTHEW T. BAILEY.
                  (Washington, DC)
22
                       Counsel for Plaintiff
23

24                              Leonard A. Dibbs
                                Official Court Reporter
25

12

1  right?

2          MR. BONO:  Yes, your Honor.

3          I've also be thinking about the possibility of a

4  nonjury trial.

5          That's why I raised the issue.  You had raised

6  that subject last time around.

7          THE COURT:  Sure.

8          The defendant is thinking about a jury trial.

9          MS. DUDZIK:  Right.

10          THE COURT:  You want confusion, I understand.

11  It's okay to say it.

12          You would be surprised, I'm sometimes much more

13  confused.  You can really screw up my records and get

14  yourself to the Court of Appeals.

15          I'm really open to whatever you want to do.

16          What I want to do is make sure that I've offered

17  you this and you accepted it.

18          We're going to trial in July.  That's the one

19  thing that is going to happen here.  Whatever we've got to

20  do, we'll do.

21          I don't want to mislead you in any way.  Nothing

22  is going to stop that from happening.

23          How about defendants?

24          MS. DUDZIK:  There is one issue that I raised

25  earlier with counsel that I just want to bring the Court's

1    attention.

2                We are still interested in streamlining this

3    case.  One of the ways we were contemplating was to

4    potentially file an early Summary Judgement Motion on the

5    on-sale bar.

6                We could do that and get a ruling quickly on

7    that.  We may be able to dispose of one of the patents in the

8    case.

9                That was our thought that potentially by the end

10   of January or so to have a Summary Judgement Motion ready to

11   go on that and inform the Court that we would like to be able

12   to present it early on, to see if that would work.

13               THE COURT:  Are the facts undisputed?

14               MS. DUDZIK:  I think they will be when we get

15   them together.  We'll know -- if there is going to be a big

16   dispute on it, we won't file a Summary Judgement Motion that

17   we don't think we're going to win.  Let's put it that way.

18               From what I've seen so far they are looking

19   pretty promising for us.  I want to alert the Court that that

20   is something that we are contemplating.  It's a way of

21   streamlining the case.

22               THE COURT:  And I have a high regard for true

23   Summary Judgement Motions and have actually been able to

24   dispose of them expeditiously.

25               As experienced practioners though, 98 percent are

16

1   explanation.

2           With that little bit of background and letting

3   you know that I'm an expert.  I'll be anxious to see the

4   motion.  RCA versus Data General is my on-sale bar case.

5           MR. BONO:  I feel compelled.  I don't think it's

6   a legal issue.

7           An on-sale bar defense is highly factual.

8           THE COURT:  That's what -- didn't I just tell her

9   that?

10          MR. BONO:  I feel compelled.

11          THE COURT:  I was trying to be very direct.  If

12  you have all that, it is factual.  That's why I'm an expert.

13  I understand all that.

14          Actually, the best parts of that case, and I hate

15  to tell stories.  This is so good though.

16          I was so new in'85 or'86.

17          '85, it happened in my first year.  It was the

18  first or second patent case.  All these people came to

19  testify.  The guy that started Data General.  Doctor Wang,

20  the guy from Wang computers.  He testified.

21          I was so inexperienced, and we had just had our

22  fifth child.  My wife had decided that it would be a great

23  thing, computers were just coming out and to get him a

24  computer.  Nobody knew what to buy.  PC's were just coming

25  out.  And so after he got done testifying, I said, Doctor

EXHIBIT C

*LG Philips LCD Co., LTD   v.*
*Tatung Company, et al.*

*Hearing*
*February 8, 2006*

*Hawkins Reporting Service*
*715 N King Street*
*Suite 3*
*Wilmington, DE   United States of America   19801*
*(302) 658-6697*

Original File LGPHIL~1.TXT, 43 Pages
Min-U-Script® File ID: 1609914391

**Word Index included with this Min-U-Script®**

[16] document production and you understand all the [17] consequences on both sides, that's okay.

[18] So you feel real comfortable with [19] February 15th, and I tell you what we are going [20] to do with your concern about their deficient [21] production.

[22] MR. BONO: I would feel more [23] comfortable with next Friday, but I think I can [24] meet Wednesday.

[1] THE COURT: We'll make it next [2] Friday. Actually you know what we'll do, we'll [3] give you a weekend to have all those associates [4] in there billing. This is like the bane of [5] their existence, and the thrill of partners [6] existence, Mr. King understands, all that extra [7] cash coming in. It's great, isn't it? So we'll [8] do — so we got Wednesday the 15th, so we have [9] Thursday the 16th, 17th, 18th, the 20th is a [10] federal holiday, so we'll give you that, so they [11] can bill double time if they do that, and we'll [12] make it the 21st of February.

[13] MR. BONO: Your Honor, I [14] appreciate the extra time from the Court. I [15] don't think that should affect — if the [16] defendants are going to talk about —

[17] THE COURT: Hold on a second, I [18] want to get to that problem. I'm going to get [19] you to yelling at each other after February [20] 21st. In other words, you're going to cleanse [21] your soles by February 21st of all that you [22] think you should have produced, you're going to [23] write all those neat letters back and forth [24] about you didn't do this, you didn't do that,

[1] we're not happy with that, then I'm going to see [2] you within a week of February 21st about [3] deficiencies.

[4] MR. BONO: That's very well, but [5] Your Honor, before we pick that date, I'm happy [6] with that, I don't want that to be — for the [7] defendants to bootstrap that into an excuse to [8] delay depositions.

[9] THE COURT: Well, it is. They've [10] already gotten that by having to get beyond [11] February 3rd or 2nd or whatever.

[12] MR. BONO: Your Honor, but in the [13] proposals we've exchanged proposed deposition [14] schedules among the parties.

[5] THE COURT: Well, if you agree.

[16] MR. BONO: I just want to say —

[17] THE COURT: It's okay.

[18] MR. BONO: — the way the [19] proposals — we have to have a conference call [20] tomorrow to firm up the schedule, but the [21] proposed dates are we

have offered our witnesses [22] starting March 8th, okay, March 8th, our [23] 30(b)(6) witnesses, and we have a couple of fact [24] witnesses that will also be scheduled right

[1] around that time.

[2] They have proposed that we can [3] start taking Tatung Company of America and [4] Viewsonic, which are the U.S. companies which [5] are going to have minimal technical information, [6] they're really only going to have some product [7] information, some sales information, and they [8] have proposed that those depositions start [9] during the weeks of February 21 and 28.

[10] And what I'm suggesting is the [11] completion of our document production which [12] really, really should not affect the scheduling [13] of the beginning of those depositions in those [14] weeks because they're basically U.S. and sales [15] companies.

[16] THE COURT: See, you're making it [17] too complicated for kind of an intellectual [18] deficient person like myself. Let me make it [19] clear to you, I don't care, so start taking [20] depositions as long as you all agree. But if [21] somebody objects, then the way my world works [22] since I manage the case attempting to make your [23] lives less stressful, you got to get beyond the [24] document production problems and then you can

[1] have at each other on depositions because what I [2] don't want to hear is in April or May that we [3] got to go back and depose somebody because this [4] just happened or that just happened because in [5] my world, that doesn't happen. In my world, [6] February 21 is when all documents should be [7] produced.

[8] I'm going to give you an [9] expeditious come back to Court, tell me your [10] problems about deficiencies, put everything on a [11] short leash for the further production or the [12] representation that there is no further [13] production, and typically in my world [14] depositions would begin.

[15] If you can get them to agree to [16] start the week of the 28th, that's fine, but if [17] I'm asked to delay depositions because the [18] document production isn't complete, then I do [19] it. Because the way I order things if you don't [20] have all your documents and the drop dead date [21] and all the disputes resolved, how can you go to [22] depositions? I don't know, but sometimes you [23] can.

[24] If you can agree to do that, go

[1] ahead and go. But if you can't agree to do [2] that, then it stops. But it doesn't get pushed [3] out until April, it gets pushed out from [4] February 28th to what's it, March 2nd or [5] something.

[6] MR. BONO: I appreciate, Your [7] Honor, under the Court's — I don't want to make [8] it —

[9] THE COURT: Stressful.

[10] MR. BONO: Under the Court's [11] current scheduling order, we have agreed and the [12] Court endorsed it that we would complete [13] 30(b)(6) depositions and fact depositions by [14] March 17th. And so —

[15] THE COURT: I don't mean to [16] interrupt you, but just let me ask this [17] question: What else did you agree to? February [18] 3rd was document production.

[19] MR. BONO: Your Honor, I [20] appreciate that.

[21] THE COURT: Okay.

[22] MR. BONO: If we could work out a [23] situation where that date moves back a week, I'm [24] not arguing about that.

[1] THE COURT: I know you're not.

[2] MR. BONO: I really —

[3] THE COURT: I just —

[4] MR. BONO: I'll be happy to work [5] it out.

[6] THE COURT: I just keep trying to [7] bring it back to how I view things. If there is [8] disputes and I have to work them out, because [9] that's the only way I can be consistently — I [10] hate the word — fair, but consistent, let's [11] just say even if I'm unfair, at least I'm [12] consistent, the only way I can do that is if I [13] have a perspective that certain things close, [14] other things begin, unless the parties agree.

[15] But see, you already have gone [16] past, not you personally, if they're deficient, [17] they have gone by it, too, you all have gone by [18] February 3rd, so ultimately you have gone past [19] my world dates.

[20] MR. BONO: I understand, Your [21] Honor.

[22] THE COURT: Okay.

[23] MR. BONO: I understand, and I'll [24] try to work it out with the other side.

[1] THE COURT: So you may go by March [2] 17th.

[3] MR. BONO: Very well, I don't have [4] an issue with that per se in working this out.

[5] THE COURT: Okay. Or you can [6] agree.



Tatung Company, et al.
Case 1:05-cv-00292-JJF    Document 466-2    Filed 10/18/2006    Page 14 of 24
February 8, 2006

[7] MS. GABLER: Your Honor, we would [8] prefer to hold the depositions scheduled, we did [9] exchange dates.

[10] THE COURT: So you ought to be [11] able to make it.

[12] MS. GABLER: Counsel was correct, [13] that was in the process of moving it forward, [14] but it's definitely our position that we want [15] the document issues resolved before we proceed [16] with depositions.

[17] THE COURT: So the date is [18] February 21st, a Tuesday, by five o'clock, [19] Wilmington, Delaware time when everything has to [20] be produced, which means that if there is [21] deficiencies — and these are all documents in [22] the case; right?

[23] MS. GABLER: Yes. Can I flag one [24] issue in this area, Your Honor, before we go on?

Page 16

[1] THE COURT: Sure.

[2] MS. GABLER: It's maybe a point of [3] clarification with counsel. I know you are [4] translating documents right now to determine [5] whether or not certain things are relevant and [6] will be produced, but you intend to produce them [7] as foreign language documents; is that correct?

[8] MR. BONO: Yes.

[9] MS. GABLER: Yes. Okay. So our [10] concern is that if their production is [11] continuing through the 21st, and I have asked [12] Mr. Bono to estimate how many pages or boxes of [13] documents he anticipates adding to his [14] production, currently it's about one-third of a [15] box which they produced, and he told me it was [16] closer to one box than ten boxes and was unable [17] to estimate beyond that, and has represented [18] that a substantial portion of these documents [19] are going to be foreign language documents, so [20] if that, in fact, is the case, we are going to [21] need more than seven or ten days to figure out [22] what we have to know if we have a dispute about [23] what's in their production.

[24] They have the bulk of our

Page 17

[1] documents now and to the extent that they think [2] there are deficiencies, whatever additional [3] production we're making would be very small, so [4] basically they have this whole time period to [5] figure out if they have got issues with things [6] that we produced as foreign language documents, [7] but if we're now in a situation where we're [8] only going to have seven days to figure out what's in [9] possibly up to ten boxes of foreign language [10] documents, we'[11] re probably not going to be able to

identify disputes by the 28th.

[12] MR. BONO: Your Honor, my best [13] estimate at this point is we're talking about a [14] box to a box-and-a-half, not ten boxes.

[15] THE COURT: In Korean?

[16] MR. BONO: I would say probably [17] three quarters of a box to a box would be in [18] Korean, yes. That's my best es-[19]timate at this [19] point.

[20] THE COURT: Three quarters of a [21] box ought to be able to be translated in a [22] week. I have had cases where you had German and [23] Japanese.

[24] MS. GABLER: Right.

Page 18

[1] THE COURT: Actually answering [2] documents and they were able to do it.

[3] MR. BONO: Just so we know, I'm [4] not going to hold off the rest of the production [5] until the 21st, as soon as documents —

[6] THE COURT: As soon as you have [7] them you are going to produce them, you have a [8] drop dead date of the 21st.

[9] MR. BONO: I'm going to produce [10] some of these on a rolling basis as soon as [11] they're ready to be produced, so it will be not [12] be at the 21st when you get all these documents.

[13] MS. GABLER: Well, assuming that [14] that representation holds true and we receive [15] the bulk of them or all of them by the 15th, [16] we're obviously much more likely by the 28th to [17] have gotten them all translated and then [18] reviewed them to know if we have a dispute.

[19] THE COURT: You have to hire more [20] people. I mean, I hate to say that, but if [21] I assume you're already set up for the [22] translation?

[23] MS. GABLER: Yes, we do have an [24] firm, an outside firm.

Page 19

[1] THE COURT: This is just great for [2] the economy.

[3] MS. GABLER: It is. Isn't it [4] fabulous?

[5] THE COURT: I feel like —

[6] MS. GABLER: All of us who didn't [7] learn our parents' native languages are [8] regretting it now.

[9] THE COURT: That's fantastic. I'm [10] trying to learn my thousand words in Italian and [11] my mother and grandmother spoke Italian in the [12] house except when we were present. Isn't that [13] something? What were they thinking.

[14] But anyway, you're going to file [15] your deficiency letters against each other on [16] the 28th and I'm going to see you on the 1st of [17] March, which is a

Wednesday, at 12:30.

[18] Actually, you know what I'll do? [19] I'm in a trial, I'll make it for 12:30. There [20] might be some minor adjustment based on the [21] nature of that trial, we'll schedule for [22] March the 1s 12:30 to get your answers on [23] your disputes that will be filed by the close of [24] business on the 28th.

Page 20

[1] MS. GABLER: Your Honor, can we [2] ask for another question?

[3] THE COURT: Sure.

[4] MS. GABLER: There are some [5] third-party subpoenas that have been issued and [6] those productions are pending and for the ones [7] we issued, we're pretty optimistic we are going [8] to get those documents in by the end of February [9] and will produce them. Is that February 21st [10] date going to be considered the drop dead as [11] applied to third parties, also?

[12] THE COURT: All the documents in [13] this case, all the documents in the case are [14] going to be here by February 21st or they're not [15] in the case.

[16] MS. GABLER: Okay.

[17] THE COURT: You know, as lawyers, [18] that whole third-party subpoena thing is a real [19] problem for judges to manage. So I have decided [20] over last year to just make it part of document [21] production. If you don't get it, you [22] don't get it. Cases are finite pieces of [23] litigation for parties and they ought to be [24] cutoff dates. I mean, I'm sure if we allowed

Page 21

[1] discovery for ten years, there is something out [2] there that we would be able to find.

[3] MS. GABLER: No problem, I just [4] wanted to make sure that we were clear.

[5] THE COURT: We are all clear. Any [6] document that's in this case is the 21st.

[7] MS. GABLER: Okay.

[8] THE COURT: Nothing will be in [9] this case after that. So with all that notice [10] and warning and all the understanding no matter [11] how prejudicial, how beneficial, they just won't [12] be in the case. Everybody should be fully [13] alert.

[14] Now, so when I looked at that, I [15] said if we don't have document production, these [16] other matters, and a lot of what was in issue [17] had to do with that, the deposition matters I'm [18] just not going to take up yet. I'm just not [19] going to address them because I'm through [20] the other part.

[21] There are the interrogatories and [22] answers issue. One of the disputes is are [23] interrogatories okay, I guess in the

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE


LG. PHILIPS LCD CO. LTD.,            :
                                     :
        Plaintiff,                   :
                                     : Civil Action
                                     : No. 05-292
v.                                   :
TATUNG COMPANY, TATUNG COMPANY OF :
AMERICA, INC., CHUNGHWA PICTURE      :
TUBES LTD., and VIEWSONIC            :
CORPORATION,                         :
                                     :
        Defendants.                  :
- - - - - - - - - - - - - - - - - - -


                 Wednesday, March 1, 2006
                 12:30 p.m.
                 Courtroom 4B

                 844 King Street
                 Wilmington, Delaware

BEFORE:   THE HONORABLE JOSEPH J. FARNAN, JR.
          United States District Court Judge



APPEARANCES:




          THE BAYARD FIRM
          BY:  RICHARD D. KIRK, ESQ.

              -and-

          McKENNA LONG & ALDRIDGE
          BY:  GASPARE J. BONO, ESQ.
          BY:  CASS W. CHRISTENSON, ESQ.


                    Counsel for the Plaintiff

2

APPEARANCES CONTINUED:


                RICHARDS, LAYTON & FINGER
                BY:  ROBERT W. WHETZEL, ESQ.

                    -and-

                HOWREY, LLP
                BY:  JULIE S. GABLER, ESQ.


                    Counsel for the Defendant

1              THE COURT:  All right.  Be seated,

2      please.

3                   Good afternoon.

4                   MR. BONO:  Good afternoon.

5                   MS. GABLER:  Good afternoon.

6              THE COURT:  I have taken a look at

7      the letters that were filed and we're going to

8      have to work through this quickly because I'm in

9      the middle of a trial.

10                  What I'm going to do is give you

11     some rulings and some remedies, and then in the

12     time frame I'll give you, you'll have the

13     opportunity to try to work out your differences

14     on a short time frame, but if you don't, we'll

15     have you back for the hearings.

16                  Now, what I'm going to do first is

17     any subpoena issued by any party for documents

18     that is -- that was issued after February 21,

19     2006 is quashed.  And any requests for

20     production or any document provided after

21     February 21 is excluded.

22                  With regard to -- we'll turn first

23     the letter from defendants, which essentially

24     when I read through it has a lot to do with

1    discovery requests largely with regard to the

2    question of damages.

3              I'm going to stay for a short

4    period of time all damages discovery and with

5    regard to defendants' claims on the questions

6    that relate to validity, which are the questions

7    of commercial success and questions related to

8    the on sale issue, and questions related to the

9    prosecution, questions related to the public use

10   matter, all of the requests are going to on

11   those issues be granted for discovery.

12             And the plaintiff will have until

13   March -- it's a Friday, March 17, 2006 to

14   respond to that order.  And the order is being

15   issued pursuant to Rule 37, but with no

16   sanctions at this time.

17             And if there is any dispute

18   concerning the order, there will be a hearing on

19   March -- this is a Wednesday, March 29th at 4:00

20   o'clock, at which time defendants will have an

21   opportunity -- and I'll set a time allocation if

22   the hearing becomes necessary, it will be

23   certain hours allocated to the prosecution of

24   the contempt, and certain time allocated to the

1    defense of the contempt will have an opportunity

2    to present its evidence that the Rule 37 order

3    on matters of invalidity as cited in the

4    defendants' letter in conjunction with this

5    hearing, February 28, 2006 letter, haven't been

6    complied with.

7              Now, with regard to defendants'

8    request for documents related to declaration of

9    William K. Bohanan, the application is denied.

10             Now, with regard to plaintiff, the

11   request for the mother glass samples is granted

12   as requested on page four of plaintiff's letter.

13   Specifically it's granted that defendants

14   produce one, mother glass samples for each of

15   CPT's LCD products, and two, the nineteen

16   product samples that have been withheld.

17             Again, that order is pursuant to

18   Rule 37 and the production shall occur by March

19   17, 2006.  If it isn't produced, there will be a

20   hearing at which plaintiff can present its

21   evidence.  The hearing will be held on March the

22   30th, I'm trying to reduce your stress of

23   travel, so you'll be here in the afternoon on

24   the 29th, so I'm going to bring you on the

EXHIBIT E

*LG Philips LCD Co., LTD    v.*
*Tatung Company, et al.*

*Hearing*
*April 25, 2006*

*Hawkins Reporting Service*
*715 N King Street*
*Suite 3*
*Wilmington, DE  19801*
*(302) 658-6697*

Original File LGPHIL~1 TXT, 76 Pages
Min-U-Script® File ID. 0101360872

**Word Index included with this Min-U-Script®**

Page 35

[1] until March 17th when we first [2] produced [3] documents showing the [3] volume of those [3] transactions and the amounts of those [4] transactions, the costs, the price of those [5] transactions, we know we didn't tell you until [6] March 17th, but we're going to continue to [7] oppose your motion, that you didn't [8] do any [8] third-party discovery, we are going to say LG [9] America is a third party so there is no way for [10] you to get this.

[11] THE COURT: I get it I [12] understand what the support is.

[13] Is there any other matters that [14] the defendant wants to present at this time [15] before I hear from the plaintiff.

[16] MS. GABLER: I believe that's it, [17] Your Honor.

[18] THE COURT: Thank you. Who is the [19] judge assigned in California?

[20] MS. GABLER: Judge Marshal

[21] MR. BONO: May it please the [22] Court, Your Honor

[23] THE COURT: Good morning

[24] MR. BONO: Good morning The

Page 36

[1] first issue I would like to address, Your Honor, [2] is our request for the summary information that [3] is at issue and I think to clarify the issue for [4] the Court, may I hand up to the Court a brief [5] summary of the four items that we have requested [6] and are seeking.

[7] THE COURT: Yes.

[8] MR. BONO: Thank you, Your Honor

[9] THE COURT: Mr. Bono, do you have [10] a copy for my law clerk, please

[11] MR. BONO: Yes, absolutely

[12] THE COURT: Thank you

[13] MR. BONO: I apologize There is [14] one typo on it that I hand wrote in

[15] But in the first paragraph here, [16] Your Honor, I simply summarize the four items [17] that we have been requesting from CPT that they [18] have refused to give us

[19] The first item is a list showing [20] which modules and products, which use which [21] types of tape carrier packages. Now, as we have [22] been striving to do since the beginning of this [23] case as Your Honor instructed months ago is to [24] try to narrow the focus of this case for trial

Page 37

[1] and to come up with representative products and [2] claims that we can take to trial.

[3] And so we have asked CPT to give [4] us in a simple document, and we had raised this [5] several times with them now for months, of just [6] saying this model

number and it uses this CPT [7] supplied by a certain supplier. And without [8] that information, we are really unable to come [9] up with representative products to narrow the [10] scope of this case

[11] Now, on the other side CPT has [12] requested LPL to give them a list and they [13] fought very hard for it, for us to list our [14] modules with the identification of the tape [15] carrier package used in each model.

[16] Pursuant to their demand we in [17] fact produced that list to them. So in effect [18] they have asked us for the same information, we [19] gave it to them, we have asked for similar [20] information from them and they are refusing to [21] give it to us. And we would ask that they be [22] required to give us this list which is very [23] simple to put together which just identifies [24] their module numbers and then what TCP product

Page 38

[1] is in each of those modules. And that would be [2] with respect to the '121 patent.

[3] The second item on our list is a [4] list identifying —

[5] THE COURT: Now, with respect to [6] that request, you have heard counsel contend [7] that the '121 patent has a validity problem by [8] virtue of an on-sale bar.

[9] MR. BONO: I have heard that, Your [10] Honor, yes

[11] THE COURT: And with all the [12] notice that they contend they have given to [13] plaintiff, your view is that that is not a [14] sustainable contention?

[15] MR. BONO: Our argument is, Your [16] Honor, that there is insufficient proof and [17] evidence showing that the product that they're [18] talking about has the particular TCP package in [19] it that they contend was sold.

[20] THE COURT: Just so I'm clear, [21] your client's position is that that's not in the [22] packet, the module —

[23] MR. BONO: Your Honor, to be [24] clear —

Page 39

[1] THE COURT: Right.

[2] MR. BONO: — that product which [3] they're talking about used two different TCP [4] packages, one was the TCP package that does not [5] contain the invention, and some contained the [6] invention

[7] THE COURT: So let's focus on the [8] ones that contained the invention

[9] MR. BONO: Yes.

[10] THE COURT: Have you learned in [11] your dealings with your client whether

or not [12] the invention packet was on sale as understood [13] under the patent laws prior to the critical [14] date?

[15] MR. BONO: I have been unable to [16] ascertain that fact from the client

[17] THE COURT: One way or the other?

[18] MR. BONO: Yes, Your Honor. We [19] know that the — both packages were in the [20] product and the client has been unable to [21] identify for us which TCP was in which of those [22] modules prior to the critical date We know the [23] module number that is at issue was on sale prior [24] to the critical date, but we don't know whether

Page 40

[1] the modules that were sold prior to the date [2] contained the invention TCP. That's what they [3] don't have information on, Your Honor I have [4] quizzed them repeatedly.

[5] THE COURT: Now, the defendants [6] contend that in addition to the client's [7] knowledge that your law firm has a relationship [8] on the prosecution side of intellectual property [9] with the client

[10] MR. BONO: That's correct, Your [11] Honor.

[12] THE COURT: And what you're [13] telling me is even with that relationship, [14] you're unable to get this information about the [15] '121 patent products sold by the client?

[16] MR. BONO: Yes, Your Honor. We [17] did not have at the time — at the time I was [18] not involved in the patent prosecution, but at [19] the time of the patent prosecution we had no [20] knowledge about the product being sold prior to [21] the critical date

[22] THE COURT: No, I hope you [23] wouldn't have

[24] MR. BONO: Right The situation

Page 41

[1] is —

[2] THE COURT: What I'm interested in [3] knowing is because of that relationship and [4] because of that prosecution work, you haven't [5] been able to shed any additional light on — as [6] attorneys your knowledge about the issue raised [7] by defendant for purposes of this litigation.

[8] MR. BONO: That's correct, Your [9] Honor, I have investigated this and I have [10] spoken with the client about this issue, and [11] they are unable to say whether the particular [12] TCP which contains the invention was contained [13] in the modules sold prior to March 23, that [14] were sold in the U.S.

[15] I have quizzed them repeatedly, [16] and they don't have documentation

LG Philips LCD Co., LTD    v.
Tatung Company, et al.

Hearing
April 25, 2006

either in [17] their manufacturing fac- ilities or anywhere else [18] which would say that the module number sold here [19] contained the particular TCP, that con- tained the [20] invention as opposed to that contained in the [21] TCP prior to the invention. I have asked them [22] re- peatedly.

[23] THE COURT: Now, your friends on [24] the other side say that you did know at some

---

**Page 42**

[1] point in February, or I'm sorry, I think I used [2] the date before the first week of March of this [3] year, and that after you got the knowledge, you [4] have in this case knowingly withheld it so that [5] they can't discover on it

[6] MR. BONO: Your Honor, that is [7] absolutely false. Absolutely false

[8] THE COURT: Who would have been [9] responsible other than yourself for conducting [10] the inquiry into the '121 on-sale bar issue with [11] the client?

[12] MR. BONO: Mr Christenson did [13] that with me as well.

[14] THE COURT: So it was the two of [15] you?

[16] MR. BONO: Yes, Your Honor

[17] THE COURT: Now, are there other [18] lawyers in the case that have been recited to me [19] pending in other jurisdictions who have worked [20] on the client's litigation that might be [21] tangential in some measure to this case other [22] than you and Mr. Christenson?

[23] MR. BONO: I'm not sure that I [24] understand the question

---

**Page 43**

[1] THE COURT: I asked them who works [2] on the case on the defendants for them and they [3] gave me some names, started with Mr. Rhodes, and [4] on your side, I'm trying to understand, is it [5] just the two of you or are there others like [6] some associates that have been doing [7] investigation in document production for you and [8] that type of thing?

[9] MR. BONO: In the California case, [10] Your Honor, that case is primarily being handled [11] by another law firm, Morgan, Lewis & Brokius, [12] and while our firm is co-counsel with Morgan, [13] Lewis, Mor- gan, Lewis is the lead counsel and our [14] activity in supporting them has been peripheral

[15] THE COURT: Now, I know the name. [16] I know they have a Philadelphia office Do they [17] have an office in California?

[18] MR. BONO: Yes, Your Honor, they [19] have an office in California and in Washington.

[20] THE COURT: Is their California [21]

office the office that is prosecuting that [22] litigation?

[23] MR. BONO: California, Washington [24] and Philadelphia. They have lawyers from all

---

**Page 44**

[1] three offices handling that.

[2] THE COURT: Okay In your view, [3] the same question that I asked your friends on [4] the other side, who is responsible for the state [5] of the dis- covery progress that we have today, is [6] it the attorneys for the client on the other [7] side?

[8] MR. BONO: On the other side? [9] Your Honor, I believe it's both, from what I [10] could tell. Obviously the clients are taking [11] certain positions from their side and so are the [12] attorneys. But I have been — we have been [13] dealing with the attorneys on that side and I [14] quite frankly I can't ascertain whether the [15] positions are being dictated by the client or [16] whether the attorneys are taking certain [17] positions as being — taking the lead and taking [18] the posi- tions in discovery.

[19] THE COURT: And do you similarly [20] believe that there is an inconsistency leading [21] or resulting in an ongoing injustice and you [22] being able to discover against the defendants?

[23] MR. BONO: Your Honor, they have [24] fought our discovery quite a bit. In looking at

---

**Page 45**

[1] the discovery we want, we have worked very, very [2] hard over the past couple of months to work out [3] our discovery disputes and have narrowed it down [4] to what you see on that one page.

[5] THE COURT: These are our —

[6] MR. BONO: The first paragraph is [7] our issues for discovery against them, and the [8] second paragraph is what the one issue that they [9] want against us which deals with I PL America.

[10] THE COURT: But the deficiencies [11] in defendant's discovery as in the letter I got [12] yesterday, are you aware that Mr. King and [13] Mr Kirk exchanged letters?

[14] MR. BONO: Yes, Your Honor.

[15] THE COURT: That is the state of [16] deficiency that you allege against defen- dants, [17] and that's essentially the paragraph one

[18] MR. BONO: Yes, Your Honor, [19] cor- rect Yes We have narrowed it down, both [20] sides have done a substantial amount of work in [21] discussions in order to — pursuant to Your [22] Honor's orders to work out the discovery bet- [23] ween us and I believe we have done

that, and that the [24] remaining dis- covery issue is contained on this

---

**Page 46**

[1] one page in both directions, yes, Your Honor

[2] THE COURT: And you still want to [3] go to trial in July?

[4] MR. BONO: Yes, Your Honor Yes. [5] And, you know, it's our position that the [6] posture that the defendants find themselves in [7] that they allude to in their argument is really [8] one of their own making While they seek to [9] shift the blame to us by these wild and [10] unsubstantiated accusations that we wi- thheld [11] document and we're doing all these nefarious [12] things, none of that is true, Your Honor

[13] The problem they face is one of [14] their own making which goes back two or three [15] months in this matter when Your Honor set [16] certain deadlines It's not our doing at all.

[17] Your Honor, we have cooperated and [18] gone out of our way to produce documents and [19] summaries and ad- ditional information to the [20] defen- ndants above and beyond what we were [21] required to do They asked us for the summary [22] information on the mod- ules and the CPTs and the [23] TCPs that are in the product. We worked to [24] produce it. They wanted summary sales

---

**Page 47**

[1] information. They wanted it ex- panded during the [2] time period, we went out and we produced it to [3] them. We have given them on a timely basis all [4] the documents that they said they wanted, some [5] of which I believe they were not entitled to, [6] but to cooperate we have given it to them [7] completely

[8] They knew about, for example, they [9] knew about LPL America before this case was even [10] filed. They received documents that were [11] produced in the California case which shows that [12] LPL Korea had a relationship with LPL America, [13] and that sales were made between the two [14] entities They knew that information long ago, [15] even before this case was filed.

[16] Also, when we produced our first [17] set of document production, we pro- duced the [18] it is the Form 20(f) document which shows that [19] LPL America existed and it was operated as a [20] sales entity in the U S They had every — they [21] had that information, they chose not to pursue [22] it on their own They could have when they [23] answered added LPL America to this case

[24] If you look at our caption, we had

---

**Page 48**

[1] to sue both Tatung Company and