IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LG. PHILIPS LCD CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 05-292 (JJF) |
| | ) | |
| v. | ) | **DEMAND FOR JURY TRIAL** |
| | ) | |
| TATUNG COMPANY; TATUNG | ) | |
| COMPANY OF AMERICA, INC.; | ) | |
| CHUNGHWA PICTURE TUBES, LTD.; | ) | **REDACTED - PUBLIC VERSION** |
| AND VIEWSONIC CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF RENEWED
MOTION FOR JUDGMENT AS A MATTER OF LAW OR,
IN THE ALTERNATIVE, A NEW TRIAL**

OF COUNSEL:

Teresa M. Corbin
Glenn W. Rhodes
Howrey LLP
525 Market Street, Suite 3600
San Francisco, California
(415) 848-4900

Julie S. Gabler
Howrey LLP
550 South Hope Street, Suite 1100
Los Angeles, California 90071
(213) 892-1800

Dated: October 10, 2006

Robert W. Whetzel (No. 2288)
whetzel@rlf.com
Steven J. Fineman (No. 4025)
fineman@rlf.com
Matthew W. King (No. 4566)
king@rlf.com
Richards, Layton & Finger
One Rodney Square, P.O. Box 551
Wilmington, DE 19899
(302) 651-7700
Attorneys for Defendants/
Counterclaimants Tatung Company,
Tatung Company of America,
Chunghwa Picture Tubes, Ltd., and
ViewSonic Corporation

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................... iiii

NATURE AND STAGE OF PROCEEDING ................................................................ 1

SUMMARY OF ARGUMENT .................................................................................... 2

ARGUMENT ............................................................................................................ 4

    I.   LEGAL STANDARDS ................................................................................... 4

        A.  Judgment As A Matter Of Law ................................................................ 4

        B.  Motion For New Trial ............................................................................. 5

    II.  NO REASONABLE FACTFINDER COULD HAVE FOUND INFRINGEMENT
        BY CPT ....................................................................................................... 6

        A.  The "Interconnecting" Element ............................................................. 10

        B.  CPT's Accused Products Perform The Functions Of The Interconnecting
            Element In A Different *Way* Than The Patent Teaches ........................... 10

        C.  CPT's Accused Products Lack The Two-Point Testing Function ........... 13

            1.   Two-Point Testing Is One Of The Two Functions Of "Interconnecting" ..... 13

            2.   LPL Misled The Jury Into Ignoring The Testing Function ............................ 16

            3.   CPT's Accused Products Do Not Have The Two-Point Testing Function ... 18

        D.  Regardless Of The Function, Way And Result Of The Interconnecting
            Element, The Prior Art Discloses The Structure Used In The Accused
            Products, And Thus, There Can Be No Infringement Under The Doctrine
            Of Equivalents ..................................................................................... 19

            1.   *Okawa* Discloses The Structure Of The Accused Products ............................ 19

        E.  There Can Be No Infringement Under The Doctrine Of Equivalents
            Because Interconnection With Conductors, As Claimed In The Patent,
            Cannot Be Expanded To Cover Separate Classes Of Materials Like
            Semiconductors ................................................................................... 20

        F.  There Can Be No Infringement Even If The "Function, Way, Result" Test
            Is Not Used To Guide The Insubstantial Difference Inquiry ...................... 21

III. THE "VIA A RESISTANCE" ELEMENT. ............................................................ 22

    A. Literal Infringement. ................................................................................. 22

    B. Infringement Under The Doctrine Of Equivalents. ............................... 25

IV. NO REASONABLE JURY COULD HAVE FOUND THE '002 PATENT
    VALID ....................................................................................................... 26

V. ANTICIPATION. ................................................................................................. 26

    A. The *Okawa* Reference. ............................................................................ 27

        1. LPL's Defense To Invalidity. ...................................................... 27

            a. *Okawa* Is Not Limited To MIM-Diodes. ...................... 27

            b. *Okawa* Teaches The Removal Of The Outer Guard Ring. ...................... 29

    B. The *Kawamura* Reference. ..................................................................... 30

        1. *Kawamura* Employs Outer ESD Guard Rings. ......................... 31

        2. *Kawamura* Is Prior Art. ............................................................. 31

VI. OBVIOUSNESS ................................................................................................ 33

    A. The *Oritsuke* And *Yudasaka* References. ............................................. 34

CONCLUSION ........................................................................................................... 37

## TABLE OF AUTHORITIES

### CASES

*ACLARA BioSciences, Inc. v. Caliper Techs. Corp.,*
No. 99-1968, 2000 WL 1639507 (N.D. Cal. Oct. 27, 2000) ....................................................9

*ATD Corp. v. Lydall, Inc.,*
159 F.3d 534 (Fed. Cir. 1998).................................................................................. *passim*

*Advanced Display System, Inc. v. Kent State University,*
212 F.3d 1272 (Fed. Cir. 2000)....................................................................................30

*Akzo N.V. v. ITC,*
808 F.2d 1471 (Fed. Cir. 1986)....................................................................................27

*Atlas Powder Co. v. Ireco, Inc.,*
190 F.3d 1342 (Fed. Cir. 1999)....................................................................................30

*B.F. Goodrich Co. v. Aircraft Braking System Corp.,*
72 F.3d 1577 (Fed. Cir. 1996).....................................................................................33

*Bayer AG v. Elan Pharm. Research Corp.,*
212 F.3d 1241 (Fed. Cir. 2000).....................................................................................6

*Berndt v. Kaiser Aluminum & Chemical Sales, Inc.,*
789 F.2d 253 (3rd Cir. 1986) .......................................................................................6

*Bristol-Myers Squibb Co. v. Ben Venue Laboratories, Inc.,*
246 F.3d 1368 (Fed. Cir. 2001)....................................................................................29

*Cable Electric Products, Inc. v. Genmark, Inc.,*
582 F. Supp. 93 (N.D. Cal. 1984) .................................................................................36

*Canton Bio Medical, Inc. v. Integrated Liner Tech., Inc.,*
216 F.3d 1367 (Fed. Cir. 2000).....................................................................................21

*Checkpoint System, Inc. v. ITC,*
54 F.3d 756 (Fed. Cir. 1995).......................................................................................26

*Computer Access Tech. Corp. v. Catalyst Enterprises, Inc.,*
273 F. Supp. 2d 1063 (N.D. Cal. 2003) ...........................................................................5

*Constant v. Advanced Micro-Devices, Inc.,*
848 F.2d 1560 (Fed. Cir. 1988).....................................................................................27

iii

*DMI, Inc. v. Deere & Co.*,
  802 F.2d 421 (Fed. Cir. 1986)................................................................................30

*Default Proof Credit Card System, Inc. v. Home Depot U.S.A., Inc.*,
  412 F.3d 1291 (Fed. Cir. 2005)...............................................................................7

*Desper Products, Inc. v. QSound Laboratories, Inc.*,
  157 F.3d 1325 (Fed. Cir. 1998)...............................................................................6

*DyStar Textilfarben GmbH & Co. Deutschland KG v. C.H. Patrick Co.*,
  C.A. No. 06-1088, 2006 WL 2806466 (Fed. Cir. Oct. 3, 2006)...............................33

*Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*,
  149 F.3d 1309 (Fed. Cir. 1998)...............................................................................9

*Fenner v. Dependable Trucking Co., Inc.*,
  716 F.2d 598 (9th Cir. 1983) ..................................................................................5

*Fineman v. Armstrong World Industrial, Inc.*,
  980 F.2d 171 (3d Cir. 1992)....................................................................................5

*Freedman Seating Co. v. America Seating Co.*,
  420 F.3d 1350 (Fed. Cir. 2005)...............................................................................9

*Glaxo Group Ltd. v. Apotex, Inc.*,
  376 F.3d 1339 (Fed. Cir. 2004)..............................................................................27

*Graham v. John Deere Co.*,
  383 U.S. 1 (1966)..................................................................................................33

*Graver Tank & Manufacturing Co. v. Linde Air Products Co.*,
  339 U.S. 605 (1950)................................................................................................6

*Hanson v. Shell Oil Co.*,
  541 F.2d 1352 (9th Cir. 1976) .................................................................................5

*Hopper v. Hallmark Cards, Inc.*,
  87 F.3d 983 (8th Cir. 1996) .....................................................................................4

*Johnson & Johnston Associates Inc. v. R.E. Serv. Co., Inc.*,
  285 F.3d 1046 (Fed. Cir. 2002)...............................................................................7

*In re Kahn*,
  441 F.3d 977 (Fed. Cir. 2006).................................................................................34

*Landes Construction Co., Inc. v. Royal Bank of Can.,*
    833 F.2d 1365 (9th Cir. 1987) ........................................................................................5

*Lighting World, Inc. v. Birchwood Lighting, Inc.,*
    382 F.3d 1354 (Fed. Cir. 2004)......................................................................................21

*Lockheed Martin Corp. v. Space System/Loral, Inc.,*
    324 F.3d 1308 (Fed. Cir. 2003)........................................................................................7

*Lucent Techs., Inc. v. Extreme Networks, Inc.,*
    229 F.R.D. 459 (D. Del. 2005) ........................................................................................5

*Mahn v. Harwood,*
    112 U.S. 354 (1884)........................................................................................................8

*McNulty v. Citadel Broad. Co.,*
    58 Fed. Appx. 556 (3d Cir. 2003).....................................................................................5

*Medichem, S.A. v. Robalo, S.L.,*
    437 F.3d 1157 (Fed. Cir. 2006)..................................................................................31, 32

*Minn. Mining & Manufacturing Co. v. Johnson & Johnson Orthopaedics, Inc.,*
    976 F.2d 1559 (Fed. Cir. 1992)......................................................................................26

*Montgomery Ward & Co. v. Duncan,*
    311 U.S. 243 (1940)........................................................................................................5

*New England Braiding Co., Inc. v. A.W. Chesterton Co.,*
    970 F.2d 878 (Fed. Cir. 1992)........................................................................................26

*Novartis Pharm. Corp. v. Abbott Laboratories, Inc.,*
    294 F. Supp. 2d 557 (D. Del. 2003).................................................................................9

*Nystrom v. TREX Co., Inc.,*
    424 F.3d 1136 (Fed. Cir. 2005)........................................................................................7

*PSC Computer Products, Inc. v. Foxconn International, Inc.,*
    355 F.3d 1353 (Fed. Cir. 2004)........................................................................................8

*Pannu v. Iolab Corp.,*
    155 F.3d 1344 (Fed. Cir. 1998)........................................................................................4

*Reeves v. Sanderson Plumbing Prod., Inc.,*
    530 U.S. 133 (2000)........................................................................................................4

*Spence v. Board of Education of Christina Sch. District*,
  806 F.2d 1198 (3d Cir. 1986)...............................................................................................5

*Standard Havens Products, Inc. v. Gencor Industrial, Inc.*,
  953 F.2d 1360 (Fed. Cir. 1991)..............................................................................20, 27, 30

*Telemac Cellular Corp. v. Topp Telecom, Inc.*,
  247 F.3d 1316 (Fed. Cir. 2001)...................................................................................13, 17

*University of Rochester v. G.D. Searle & Co., Inc.*,
  358 F.3d 916 (Fed. Cir. 2004)..............................................................................................7

*Vehicular Tech. Corp. v. Titan Wheel International, Inc.*,
  212 F.3d 1377 (Fed. Cir. 2000)................................................................................*passim*

*Wang v. Hsu*,
  No. C-87-2981-THE, 1991 U.S. Dist. LEXIS 4398 (N.D. Cal. March 1, 1991)........................5

*Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*,
  520 U.S. 17 (1997)....................................................................................................*passim*

*Wilson Sporting Goods Co. v. David Geoffrey & Associates*,
  904 F.2d 677 (Fed. Cir. 1990)............................................................................................19

## STATUTES

35 U.S.C. § 102................................................................................................................29

35 U.S.C. § 103(a) ...........................................................................................................37

35 U.S.C. § 282................................................................................................................29

## NATURE AND STAGE OF PROCEEDING

Defendants respectfully submit the following brief in support of their renewed motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a) and alternative motion for a new trial pursuant to Federal Rule of Civil Procedure 59(a). Following a nine day trial, the jury reached a verdict that Claims 1 and 8 of LPL's '002 patent were infringed by CPT's accused products under the doctrine of equivalents, and that the '002 patent was not anticipated or rendered obvious by the prior art references presented by CPT. Because this verdict is unsupported by the evidence presented at trial applied to a correct interpretation of the law, CPT asks the Court to grant judgment that the '002 patent is not infringed and/or or is invalid, or alternatively, to order a new trial. The issues presented here were first raised in CPT's motion for judgment as a matter of law at the close of LPL's case-in-chief, as well as in CPT's motion for judgment as a matter of law presented at the close of evidence on July 26, 2006. D.I. 394; 403.

1

## SUMMARY OF ARGUMENT

1.     In this case, LPL accused CPT of infringing two claims of the patent-in-suit. However, LPL failed to present evidence at trial sufficient to support its infringement claims. It was therefore patently unreasonable for the jury to find that CPT's accused products infringe the asserted claims under the doctrine of equivalents, and CPT respectfully requests that the Court grant judgment of non-infringement as a matter of law.

2.     The dispute over infringement in this case hinges on two elements that are included in both asserted claims: (1) "interconnecting;" and (2) "via a resistance."[1]  In order to render a verdict of infringement, the jury was required to find both of these elements in CPT's accused products, either literally or through the doctrine of equivalents.  From the evidence presented at trial, no reasonable fact finder could have found either of these elements, either literally or under the doctrine of equivalents, in CPT's products.  CPT is therefore entitled to judgment of non-infringement as a matter of law.

3.     CPT also respectfully submits that LPL erroneously argued that the *Kawamura* reference (which was published prior to the '002 patent's filing date and anticipates claim 1 of the '002 patent) was not prior art, without presenting sufficient evidence that the '002 patent was

_____

[1] Claim 1 of the patent-in-suit recites as follows:

A method of manufacturing active matrix display backplanes and displays therefrom, comprising:

  providing a substrate;

  forming a pattern of pixels on said substrate;

  forming a plurality of row and column intersecting pixel activation lines, ***interconnecting*** substantially all of said row lines to one another and substantially all of said column lines to one another;

  forming an outer electrostatic discharge guard ring on said substrate coupled to said interconnected row and column lines ***via a resistance*** to provide protection from electrostatic discharges between said row and column activation lines during manufacture of the displays; and

  removing said outer guard ring and row and column interconnections prior to completion of the display.

  (Emphasis added).  Claim 8 depends from claim 1, and thus contains each of these limitations by extension.  PTX 1.

conceived before *Kawamura*'s publication date. Due to this failure by LPL, the jury should have been instructed that the *Kawamura* reference was prior art that must be considered as part of its invalidity analysis. In light of LPL's improper argument, it is impossible to know whether the jury properly considered the *Kawamura* reference in determining whether the '002 patent was invalid. Therefore, at a minimum, CPT respectfully submits that the Court should order a new trial on invalidity in view of this reference.

4.    CPT also submits that no reasonable jury could find claim 1 of the '002 patent not anticipated by the *Okawa* reference. LPL contradicted the plain language of the *Okawa* reference when it argued the reference is limited to a special kind of diode not claimed in the '002 patent. Furthermore, LPL contradicted the law when it argued that the jury should not consider an element found implicitly (as opposed to explicitly) within the *Okawa* reference. Therefore, CPT is entitled to judgment of invalidity of claim 1 as a matter of law.

5.    Finally, CPT submits that no reasonable jury could find claim 8 of the '002 patent not rendered obvious by the combination of the *Kawamura* reference or the *Okawa* reference, both of which disclose outer guard rings, with the *Yudasaka* reference or the *Oritsuke* reference, both of which disclose inner guard rings. Combining these inner and outer guard ring references is, as LPL's expert testified, as obvious as combining a raincoat and an umbrella on a rainy day. Therefore, CPT is entitled to judgment of obviousness of claim 8 as a matter of law.

## ARGUMENT

I.    **LEGAL STANDARDS.**

A.    **Judgment As A Matter Of Law.**

Rule 50 of the Federal Rules of Civil Procedure governs judgment as a matter of law.

Rule 50(a)(1) provides as follows:

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

Furthermore, Rule 50(b) provides:

> If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion.

A motion under Rule 50(a) may be renewed at any time prior to ten days after entry of judgment, and may alternatively request a new trial. *Id.*

To prevail on a renewed motion for judgment as a matter of law (JMOL) following a jury trial, the moving party "must show that the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusion(s) implied [by] the jury's verdict cannot in law be supported by those findings." *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1348 (Fed. Cir. 1998) (internal quotation omitted); *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 149 (2000) (*quoting* Fed. R. Civ. P. 50(a)). "[I]n entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record." *Reeves*, 530 U.S. at 150. In reviewing all of the evidence, the Court may <u>not</u> accord the nonmovant the benefit of any unreasonable inferences. *See Hopper v. Hallmark Cards, Inc.*, 87 F.3d 983, 988

(8th Cir. 1996). Allowable (reasonable) inferences are those that may be drawn from the evidence without resort to speculation. *Id.*

**B.    Motion For New Trial.**

The Court's power to set aside the verdict has long been regarded as "an integral part of trial by jury as we know it." *Wang v. Hsu*, No. C-87-2981-THE, 1991 U.S. Dist. LEXIS 4398, at *21 (N.D. Cal. Mar. 1, 1991). A new trial is warranted when: (1) the verdict is against the weight of evidence; (2) damages are excessive; or (3) for other reasons, the trial was not fair to the moving party. *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940); *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 206-07 (3d Cir. 1992).

A motion for new trial may also raise questions of law arising out of errors in admission or exclusion of evidence or instructions to the jury. *McNulty v. Citadel Broad. Co.*, 58 Fed. Appx. 556, 563 (3d Cir. 2003). The existence of substantial evidence "does not . . . prevent a court from granting a motion for a new trial pursuant to . . . Rule 59 if the verdict is against the clear weight of evidence." *Landes Constr. Co., Inc. v. Royal Bank of Can.*, 833 F.2d 1365, 1371 (9th Cir. 1987); *Spence v. Bd. of Educ. of Christina Sch. Dist.*, 806 F.2d 1198, 1205 (3d Cir. 1986). The court may also grant a new trial to prevent a miscarriage of justice. *Hanson v. Shell Oil Co.*, 541 F.2d 1352, 1359 (9th Cir. 1976); *Fenner v. Dependable Trucking Co., Inc.*, 716 F.2d 598, 602 (9th Cir. 1983); *Lucent Techs., Inc. v. Extreme Networks, Inc.*, 229 F.R.D. 459, 461 (D. Del. 2005).

In determining whether the jury's verdict is against the clear weight of the evidence, the court may weigh the evidence and assess the credibility of witnesses. *Landes*, 833 F.2d at 1371; *Computer Access Tech. Corp. v. Catalyst Enters., Inc.*, 273 F. Supp. 2d 1063, 1066 (N.D. Cal. 2003). The court is not required to view the evidence in the light most favorable to the

prevailing party. *Landes*, 833 F.2d at 1371; *Berndt v. Kaiser Aluminum & Chem. Sales, Inc.*, 789

F.2d 253, 257-58 (3d Cir. 1986).

## II.    NO REASONABLE FACTFINDER COULD HAVE FOUND INFRINGEMENT BY CPT.

The jury was instructed on both literal infringement and the doctrine of equivalents:

> If you decide that CPT's manufacturing methods do not literally infringe an asserted patent claim, you must then decide whether CPT's methods infringe an asserted claim under what is called the Doctrine of Equivalents. Under the Doctrine of Equivalents, the method can infringe an asserted patent claim if it includes steps that are identical or equivalent to the requirements of the claim. If the method is missing an identical or equivalent step to even one step of the asserted patent claim, the method cannot infringe the claim under the Doctrine of Equivalents.

Trial Tr. 2240:19-2241:8.[2]   The jury found that defendants did *not* infringe the '002 patent

literally.   The jury's finding of infringement was therefore based on its application of the

doctrine of equivalents. This verdict is fatally flawed, however, as there was no evidence before

the jury that would allow it to find that defendants' method "performs substantially the same

function in substantially the same way to obtain the same result" as the claim limitations.

To literally infringe a method patent claim, the accused process must literally contain

each and every one of the claim limitations (also called claim elements). *Desper Prods., Inc. v.*

*QSound Labs, Inc.*, 157 F.3d 1325 (Fed. Cir. 1998). If any claim limitation is absent from the

accused method, there is no infringement as a matter of law. *See Bayer AG v. Elan Pharm.*

*Research Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000). If there is no literal infringement, a jury

may find infringement under the doctrine of equivalents. *Warner-Jenkinson Co., Inc. v. Hilton*

*Davis Chem. Co.*, 520 U.S. 17, 40 (1997); *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339

U.S. 605, 608 (1950).

---

[2] All trial transcript pages cited herein are attached at Ex. A.

Under the doctrine of equivalents, the plaintiff must prove that there are, at most, merely "insubstantial differences" between each element of the asserted claim and the accused method. *See Warner-Jenkinson*, 520 U.S. at 40; *Graver Tank*, 339 U.S. at 608. That is, for every claim element that is not literally found in the accused method, the differences between the claim element and the accused method must be insubstantial to one of ordinary skill in the art. *Id.* This "insubstantial difference" inquiry requires determining whether the accused method "performs substantially the <u>same function</u> in substantially the <u>same way</u> to obtain the <u>same result</u>" as the claim limitation. *Warner-Jenkinson*, 520 U.S. at 38-40 (emphasis added); *see Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1321 (Fed. Cir. 2003).

The doctrine of equivalents, however, cannot be applied so broadly as to disrupt the public notice function of a patent. *See Nystrom v. TREX Co., Inc.*, 424 F.3d 1136, 1142-43 (Fed. Cir. 2005). The claims of a patent "define the invention to which the patentee is entitled the right to exclude." *Id.* at 1142. They give "notice to the public of the extent of legal protection afforded by the patent, so that interested members of the public, *e.g.*, competitors of the patent owner, can determine whether or not they infringe." *Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc.*, 412 F.3d 1291, 1302-03 (Fed. Cir. 2005); *see also Univ. of Rochester v. G.D. Searle & Co., Inc.*, 358 F.3d 916, 922 n.5 (Fed. Cir. 2004) ("We and the Supreme Court have frequently used the term "public notice" in connection with claims and discussion of the doctrine of equivalents, the point being that the public is entitled to notice of what the inventor has claimed and the Patent and Trademark Office has agreed should be the subject of a patent's limited right to exclude."); *Johnson & Johnston Assocs. Inc. v. R.E. Serv. Co., Inc.*, 285 F.3d 1046, 1052 (Fed. Cir. 2002) (patent claims serve public notice function of informing others of

the scope of patent protection). As further explained by the Federal Circuit in *PSC Computer*

*Prod., Inc. v. Foxconn Int'l, Inc.*, 355 F.3d 1353, 1359-60 (Fed. Cir. 2004):

> Suitable notice to the public, however, requires that the public understand the language of both the claims and the written description. We have repeatedly explained that, in the absence of a compelling reason to do otherwise, claims must be interpreted as one of ordinary skill in the art would understand them. . . .
>
> Taken together, then, one of ordinary skill in the art should be able to read a patent, to discern which matter is disclosed and discussed in the written description, and to recognize which matter has been claimed. "The presumption is, and such is generally the fact, that what is not claimed was not invented by the patentee, but was known and used before he made his invention. But, whether so or not, his own act has made it public property if it was not so before." *Mahn v. Harwood*, 112 U.S. 354, 361 (1884). The ability to discern both what has been disclosed and what has been claimed is the essence of public notice. It tells the public which products or processes would infringe the patent and which would not. Were the patentee allowed to reclaim some specifically-disclosed-but-unclaimed matter under the doctrine of equivalents, the public would have no way of knowing which disclosed matter infringed and which did not.

Hence, the doctrine of equivalents cannot be applied so broadly that one of skill in the art cannot

determine with confidence the scope of the patent. If a competitor cannot read a patent and

know whether its own method would infringe that patent under the doctrine of equivalents as

well as literally, then the patent system devolves into a game of hide and seek and stifles industry

development and creativity. *See id.*

To avoid the injustice that would result from an overbroad application of the doctrine of

equivalents, courts have placed limitations on it. For example, this Court has explained that:

> By its very definition, the doctrine of equivalents necessarily deals with subject matter that is beyond the literal scope of the claim. As such, the doctrine of equivalents, if applied too broadly, can undermine the public's reliance on the patent's claim language and create a situation in which competitors will never know whether their actions infringe a granted patent. Mindful of these considerations, the Federal Circuit has cautioned that application

> of the doctrine of equivalents should be the exception and not the
> rule in patent infringement actions.

*Novartis Pharm. Corp. v. Abbott Labs., Inc.*, 294 F. Supp. 2d 557, 563 (D. Del. 2003) (citations

and quotations omitted).   In addition, because each element contained in a patent claim is

material to defining the scope of the patented invention, the doctrine of equivalents cannot be

applied if doing so would vitiate any claim limitation.   *Warner-Jenkinson*, 520 U.S. at 29;

*Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1362 (Fed. Cir. 2005), *cert. denied*,

126 S. Ct. 1167 (2006).

The analysis of whether an accused device infringes a claim element under the doctrine

of equivalents begins by determining the <u>functions</u> of that claim element.   When ascertaining the

functions of a claim element, it is necessary to look primarily to the specification of the patent.

*See Vehicular Tech. Corp. v. Titan Wheel Int'l, Inc.*, 212 F.3d 1377, 1382 (Fed. Cir. 2000).   It is

improper to limit the functions of a claim element to those described in the claims; rather, it is

necessary to look to the entire "descriptive text of the specification." *ATD Corp. v. Lydall, Inc.*,

159 F.3d 534, 544 n.2 (Fed. Cir. 1998).   Thus, it is often inevitable that a determination of the

functions of a claim element will be separate from—and in effect add to—the court's claim

construction order.   The Federal Circuit has confirmed that "any analysis of infringement under

the doctrine of equivalents *necessarily* deals with subject matter that is 'beyond,' 'ignored' by,

and not included in the literal scope of a claim." *Ethicon Endo-Surgery, Inc. v. U.S. Surgical

Corp.*, 149 F.3d 1309, 1317 (Fed. Cir. 1998) (emphasis in original).

Thus, it is appropriate and necessary to look outside a court's claim construction order

when conducting a doctrine of equivalents analysis; doing so does not amount to an attempt to

reargue or contradict the claim construction order.   *See ACLARA BioSciences, Inc. v. Caliper

Techs. Corp.*, No. 99-1968, 2000 WL 1639507, at *10 (N.D. Cal. Oct. 27, 2000) ("While the

Court's definition of the term 'trench' in its *Markman* Order might have established that the LabChips do not *contain* a trench for the purposes of literal infringement, the Court's claim construction does not foreclose the possibility that a covered structure might be *equivalent* to a trench for purposes of infringement under the doctrine of equivalents.") (emphasis in original).

In determining the functions of a claim limitation, all significant functions, not just the single most important one, should be considered. *See Vehicular Tech.*, 212 F.3d at 1380. Extrinsic evidence such as inventor testimony and party witness testimony is also given some weight in determining the functions of a claim element. *See id.*

### A.    The "Interconnecting" Element.

The dispute over infringement in this case boils down to two limitations of the asserted claims, one of which is the "interconnecting" element. Both of the asserted claims require "interconnecting substantially all of said row lines to one another and substantially all of said column lines to one another." PTX 1, '002 patent at col. 9, lns. 2-4, 35 (emphasis added). There is no evidence in the trial record from which a reasonable jury could conclude that CPT's accused products infringe the "interconnecting" element under the doctrine of equivalents.

### B.    CPT's Accused Products Perform The Functions Of The Interconnecting Element In A Different *Way* Than The Patent Teaches.

As noted above, infringement under the doctrine of equivalents requires that the accused product perform the same function in *substantially the same way* as the patent teaches. Setting aside for the moment the parties' disagreements about the function of the "interconnecting" element, no reasonable jury could have found infringement under the doctrine of equivalents because none of the functions that LPL identified for the element are accomplished in the same way that the patent discloses.

LPL's expert, Dr. Schlam, was inconsistent in his identification of the function of the interconnecting element. His first assertion was that the function of interconnecting is simply "interconnecting." Trial Tr. at 393:16-20 ("And in this case the function is that interconnecting, so certainly we're talking about interconnecting."). As part of this argument, he stated that the "way" the accused products accomplish this interconnecting function is through their REDACTED *Id.* at 393:20-22. And, even though the Court had ruled that the patent accomplishes interconnecting through REDACTED

*Id.* at 393:20-22 ("The way in this case is through these semiconductors *when it's conducting.*") (emphasis added). In other words, REDACTED of the accused products do not work the same way as the conductors taught by the patent. Thus, accepting Dr. Schlam's assertion that the function of the interconnecting element is "interconnecting," the "way" in which the accused products accomplish this function is substantially different from that taught in the patent.

Dr. Schlam then changed direction and argued instead that the function of the interconnecting argument is dispersal of charge, or ESD protection. *Id.* at 396:9-15 ("Q. Does the way Chunghwa connects their products allow you to disperse charge? A. Certainly. They interconnected them through REDACTED (emphasis added).

Unfortunately for LPL, Dr. Schlam's second approach fares no better than his first one; no reasonable jury could have found that CPT's accused products perform the ESD protection function in the same way that the patent discloses. Regarding this function of ESD protection,

Dr. Schlam testified that the way taught in the patent is to disperse the built-up charge through <u>all</u> the interconnected row (or column) lines:

> Q. And you also mentioned that it was the purpose, why would you electrically connect these row lines and column lines?
>
> A. So we didn't get into a whole lot of detail on what the guard rings really do. When you generate a charge, an electrostatic charge somewhere near a particular TFT, you want to protect that TFT. You want that charge to disperse, and therefore, you want to connect all of these lines together so that you don't have a concentration of charge at one particular TFT which can create that damage we looked at earlier. So you need this conduction to occur to <u>disperse the charge over the entire array</u> and, therefore, there isn't enough charge at one particular TFT to create damage.

*Id.* at 395:16-396:8 (emphasis added). This happens because in the patent, substantially all of the gate lines and substantially all of the row lines are interconnected all the time. *Id.*

In contrast, CPT's accused products cannot perform the ESD protection function in this way because the gate lines (and source lines)

REDACTED

*Id.* at 393:20-22.

*See id.* at

1495:11-1496:4. Thus, CPT's accused products cannot disperse electrostatic charges throughout the entire array. Instead, as Dr. Howard testified, the charge in CPT's accused products is

*Id.* at 1493:15-19

REDACTED

1494:24-1495:7

REDACTED

1685:1-4

REDACTED

Thus, there was no evidence from which a reasonable jury could have concluded that CPT's accused products perform the ESD protection function in the same way as the patent.

## C.    CPT's Accused Products Lack The Two-Point Testing Function.

### 1.    Two-Point Testing Is One Of The Two Functions Of "Interconnecting".

When considering infringement under the doctrine of equivalents, a jury must consider whether the accused products accomplish the *same function*, in the same way, to obtain the same result as the claim element in question. *Warner-Jenkinson*, 520 U.S. at 39-40. Accordingly, the jury was obliged first to determine the *functions* of the "interconnecting" element.

The initial step in determining the function of a claim element is to look to the specification. *Vehicular Tech.*, 212 F.3d at 1382; *ATD*, 159 F.3d at 544. The '002 patent specification discusses the function of "interconnecting." *See* PTX 1, '002 patent at col. 2, lns. 30-36. In that discussion, the '002 patent incorporates by reference U.S. Patent Application No. 948,224 (which issued as U.S. Patent No. 4,820,222 ("the '222 patent") (DTX 2)). *Id.* The '222 patent is therefore considered part of the '002 patent, just as if the words of the '222 patent had been reproduced in the '002 patent in the section where "interconnecting" is discussed. *See* PTX 1, '002 patent at col. 2, lns. 30-36 (and associated portion of corresponding Certificate of Correction); *see also Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1329 (Fed. Cir. 2001) ("When a document is 'incorporated by reference' into a host document, such as a patent, the referenced document becomes effectively part of the host document as if it were explicitly contained therein."). Thus, in examining the portion of the '002 specification that

discusses "interconnecting," it is necessary to look to the '222 patent. The patentee may not at its own option ignore the '222 patent, which would be the same as ignoring the '002 patent's discussion of the term. *See id.* The specification of the '222 patent makes clear that one of the functions of "interconnecting" the row or column lines is to allow two-point testing of the entire display:

> The cost of manufacturing the display backplanes and hence the displays also can be reduced by serial loop testing of the row and column bus lines during manufacture. Each of the row and column bus lines is serially interconnected in a serpentine fashion at the opposite edges of the display. This allows all the row and all the column bus lines to be tested merely by contacting the two free ends of each of the serially interconnected row and column bus lines. Further, by applying the proper voltage to the ends of both the row and column bus lines, all the pixels or subpixels will be activated to provide one whole display test of all the pixels or subpixels at once.

DTX 2, '222 patent at col. 2, lns. 56-68 (emphasis added). One of ordinary skill in the art, having read the specification, which includes the '222 patent, would therefore be on notice that a function of "interconnecting" is the achievement of two-point testing, and could safely conclude that a method without this function would not infringe.

Thus, it is clear from the '002 specification (incorporating the '222 patent by reference) that one of the functions of "interconnecting" the row or column lines is two-point testing. The extrinsic evidence confirms precisely this.

REDACTED

Scott Holmberg, the inventor of the patent-in-suit, made clear that protection from electrostatic discharge is merely one of the functions of interconnecting the row or column lines, and that <u>testing</u> must be mentioned in any discussion of the function of interconnecting:

Right.  But the – the reason that you interconnect substantially all of the said row lines to one another and substantially all of the column lines to one another is to attempt to protect each of the pixels from electrostatic discharge.

A.    That is one of the reasons.

Q.    What are the other reasons?

A.    Testing of – testing.

Q.    And could you explain that?

A.    You know, whether you hook them in serpentine or you hook them in all parallel on one side, you want to be able to use the minimum number of contacts to drive the display so that you can test it to make sure that there is no shorts or open lines in a display.

Trial Tr. at 1328:16-1329:7 (Scott Holmberg testimony).

REDACTED

REDACTED

### 2.    **LPL Misled The Jury Into Ignoring The Testing Function.**

Despite the fact that the inventor of the '002 patent

REDACTED

LPL encouraged the jury to nevertheless find infringement of the "interconnecting element." LPL did not do this by presenting factual evidence to dispute either the inclusion of the "two-point testing" function in the '002 patent's specification or by presenting evidence that the accused products have this function. Rather, LPL and its expert, Dr. Schlam, urged the jury to make the incorrect *legal* determination that the specification should not be consulted in determining an element's function and that <u>only</u> the claim language should be consulted. This is against the clear and repeated holdings of the Federal Circuit as exemplified by *ATD* and *Vehicular Technologies*.

LPL misdirected the jury through explicit argument in closing, and also through the presentation of Dr. Schlam's expert testimony. During cross-examination regarding his doctrine of equivalents analysis, Dr. Schlam testified as follows:

> Q.    The '002 patent incorporates the '222 patent; correct?
>
> A.    Yes, but I believe the claims stand on their own.
>
> Q.    So you don't believe that the claims, the meaning of the claims is informed by the specification?
>
> A.    Well, I think the claims are quite clear. If you want to put them up on the screen, we can go over them if you would like.
>
> Q.    Could you please answer – so you do not think it's important to be informed about the meanings of the claim by reading the entire specification?
>
> A.    Well, I read the entire specification, but my understanding is that the claims are the most important, and if the claims are clear, you don't – you shouldn't allow some item in the

> specification to change the intent of the claims. And in this case
> the claims refer to testing – to electrostatic protection, not testing.

Trial Tr. at 479:5-480:2. Thus, in direct contravention of *Vehicular Technologies, ATD, Ethicon*

and other cases, LPL's expert opined that there is infringement under the doctrine of equivalents

without considering the specification in his determination of the function of the

"interconnecting" element.[3] As discussed in *ATD*, it is legally incorrect to confine the analysis

of function to the claims only. 159 F.3d at 544 n.2.

LPL's counsel compounded the legal error in closing argument, urging the jury to ignore

the testing function:

> Testing. What does testing have to do with Claim 1? If you look
> at the Claim 1, in Claim 1, the elements, you will have it back in
> the jury room, the word testing does not appear. There is no
> requirement for testing to find infringement under Claim 1. That is
> perhaps the biggest technical distraction that they have presented
> you in this case.

Trial Tr. at 2206:2-9. Thus, LPL's counsel argued to the jury, contrary to the law, that because

the word "testing" does not appear in the asserted claims, testing cannot be involved in the

infringement analysis under the doctrine of equivalents. The Federal Circuit has made clear that

it is improper to look only to the claims when determining a claim element's function. *See ATD*,

159 F.3d at 544 n.2.

---

[3] In fact, Dr. Schlam never even bothered to read the entire specification of the '002 patent (which includes the specification of the '222 patent):

Q. But you never read the '222 patent prior to the time you submitted your expert report on June 2nd, 2006, wherein you opined that CPT infringed Claim 1, correct?

A. I think I said I glanced at it quickly. I didn't study it carefully.

Q. What you said is that you looked at the title page; correct?

A. I said that. Yes. Did I say anything else?

Q. You said you had not read it carefully.

A. Right.

Trial Tr. at 476:4-477:16.; *Telemac Cellular*, 247 F.3d at 1329.

3.    **CPT's Accused Products Do Not Have The Two-Point Testing Function.**

CPT's accused products lack the required function of two-point testing. Scott Holmberg, the inventor of the patent-in-suit, acknowledged that the two-point testing function cannot be accomplished by CPT's accused products:

> Q.    So I'm asking you to assume that the gate – the source lines are connected to the outer guard ring in exactly the same way as these gate lines are depicted, which is each gate line and each source line is individually connected to the outer guard ring through a diode.
>
> A.    The way you stated, you couldn't test it.

Trial Tr. at 1351:16-24 (Scott Holmberg testimony).

REDACTED

*Id.* at 1486:11-1487:2 (Dr. Web Howard testimony).

Thus, had the jury applied the appropriate law to the facts, it necessarily would have found that testing is an important function of interconnecting and that

REDACTED                    and that

therefore, CPT's accused products do not infringe the asserted claims under the doctrine of

equivalents.   The Court should find that there is no infringement under the doctrine of equivalents as a matter of law.[4]

**D.**   **Regardless Of The Function, Way And Result Of The Interconnecting Element,** REDACTED

It is axiomatic that the scope of a claim may not be expanded under the doctrine of equivalents so far that it encompasses the prior art.   *Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*, 904 F.2d 677, 683 (Fed. Cir. 1990) ("Even if this [function, way, result] test is met, however, there can be no infringement if the asserted scope of equivalency of what is literally claimed would encompass the prior art.").

REDACTED

(DTX 4)                                        Thus, if the scope of the "interconnecting" element is stretched under the doctrine of equivalents far enough to cover the accused products, it impermissibly covers the prior art.

REDACTED

REDACTED

*Id.* at 1954:10-20. Such an argument contradicts the plain language of *Okawa*, which teaches the use of "a diode with reversible breakdown properties" to interconnect the source and gate lines. DTX 4, *Okawa* at 3. *Okawa* does not in any way limit its teaching to MIM diodes. *See id.*

REDACTED

There is no evidence in the record from which a jury could reasonably conclude one of ordinary skill would believe otherwise.

### E.   There Can Be No Infringement Under The Doctrine Of Equivalents Because Interconnection With Conductors, As Claimed In The Patent, Cannot Be Expanded To Cover Separate Classes Of Materials Like Semiconductors.

The Court has ruled that the literal meaning of "interconnecting," as it appears in the asserted claims, is "electrically connecting with conductors." D.I. 218, Claim Construction Order at 1. LPL's expert argued that the accused products infringe the asserted claims under the doctrine of equivalents

REDACTED

---

[5] The only other way in which LPL attempted to distinguish *Okawa* from the accused products was to argue that
Such a distinction is legally insufficient. *See Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 953 F.2d 1360, 1369 (Fed. Cir. 1991) (holding that a reference is deemed to contain what is implicitly found within it). Aside from this legally incorrect argument and its factually incorrect argument regarding the types of diodes *Okawa* discloses, LPL argued no distinction between the accused products and *Okawa*. Trial Tr. at 1952-53; 2215-16.

REDACTED

electrically connecting with conductors. Trial Tr. at 393:4-394:4. Such a finding is incorrect as a matter of law.

Where there are separate classes of materials, such as conductors, semiconductors and insulators, and the patentee's claim covers one of them, it is not permissible to recapture the other classes of materials under the doctrine of equivalents. *See Freedman Seating Co.*, 420 F.3d at 1362 (holding that recapture of non-claimed classes of materials would undermine the public notice function of patents). Both Dr. Schlam, LPL's expert, and Scott Holmberg, the inventor of the '002 patent, acknowledged that there are three classes of electrical materials: conductors, semiconductors and insulators. Trial Tr. at 491:3-11 (Dr. Schlam acknowledging the three categories of materials); 1403:19-1404:1 (Mr. Holmberg acknowledging the three categories of materials). In addition, both Mr. Holmberg and Dr. Schlam admitted that semiconductors and conductors are not interchangeable in thin film transistor devices like those at issue in this case. Trial Tr. at 493:6-14; 1406:14-18. Thus, it is impermissible as a matter of law for the claims, which require electrically connecting with conductors, to be expanded under the doctrine of equivalents REDACTED

## F.    There Can Be No Infringement Even If The "Function, Way, Result" Test Is Not Used To Guide The Insubstantial Difference Inquiry.

As explained above, the inquiry in a doctrine of equivalents analysis is whether there are "insubstantial differences" between the claim element under consideration and the accused device. *Warner-Jenkinson*, 520 U.S. at 39-40. In the majority of cases, this "insubstantial difference" inquiry is guided by the "function, way, result" test discussed above. *See id.* However, there have been cases in which the insubstantial difference inquiry has been conducted independently of the function, way, result test. *See, e.g., Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1357 (Fed. Cir. 2004). An important factor in this independent

insubstantial difference inquiry is whether or not the claim element is <u>interchangeable</u> with what is used in the accused product. *See Canton Bio Med., Inc. v. Integrated Liner Tech., Inc.*, 216 F.3d 1367, 1370 (Fed. Cir. 2000).

REDACTED

Thus, even if the insubstantial difference inquiry is not guided by the function, way, result test, no reasonable jury could find that the accused products infringe the asserted claims under the doctrine of equivalents.

## III.    THE "VIA A RESISTANCE" ELEMENT.

### A.    Literal Infringement.

The jury's finding of literal infringement of the "resistance" element is irreconcilable with a correct application of the law to the evidence presented at trial. There is no evidence in the record from which a reasonable jury could find literal infringement of the element, which the Court defined as "a circuit component that has a specified resistance to the flow of electric current and is used to minimize the current surge from an electrostatic discharge." D.I. 218, Claim Construction Order at 2. LPL's primary infringement argument did not attempt to apply the Court's definition to the accused products. Rather, LPL encouraged the jury to expand the scope of "resistance" beyond any definition that could be given (and therefore beyond what the law allows). In arguing that <u>everything</u> has a resistance,[6] LPL obviated the need to apply the claim term to the accused methods; in other words, LPL argued that the jury should read "via a

---

[6] For example, LPL's expert argued that even a piece of clothing has a resistance. Trial Tr. at 505:13-14 ("I can measure the resistance of your clothing.").

resistance" out of the claim, and that the claim should be interpreted as requiring connection to the guard ring via *anything*. *See* Trial Tr. at 498:13-20 and 505:3-13 (Dr. Schlam testimony that anything with "determinable" resistance satisfies the "resistance" element and that "you can [determine] the resistance of anything") (emphasis added). It is impermissible to read a claim limitation out of the claim entirely. *See Warner Jenkinson,* 520 U.S. at 29.[7]

Unlike its first argument, which defined "resistance" to cover anything and everything, LPL's second argument did attempt to apply the Court's claim construction to the accused methods, albeit incorrectly. REDACTED Trial Tr. at 500:6-13. However, this contradicts the Court's claim construction that "resistance" means "a circuit component that has a specified resistance." D.I. 218, Claim Construction Order at 2. A "specified" resistance must be interpreted as a constant resistance if it is to have any meaning at all. If it is simply interpreted as a "measurable" resistance, then "resistance" is effectively read out of the claim, as Dr. Schlam acknowledged that everything, even a piece of clothing, has a resistance that can be measured. Trial Tr. at 505:11-14

REDACTED

This argument contradicts the claim language, which says that the "resistance" couples the interconnected gate lines and interconnected source lines to the guard

---

[7] To the extent the Court's construction of "resistance" to mean "a specified resistance" instead of "a resistor," as defendants have proposed, necessitates such a broad interpretation as to read the term out of the claim, the claim must be found invalid as a matter of law. *See Warner Jenkinson,* 520 U.S. at 29.

ring.

REDACTED

Tr. at 496:24-497:7.

REDACTED

*Id.* at 408:2-22 (emphasis added).                    called a "specified resistance," and

no reasonable jury could find literal infringement.

Finally, LPL ignored the portion of the Court's construction that requires "resistance" to

"minimize the current surge from an electrostatic discharge."

REDACTED

---
8

REDACTED

REDACTED

and thus, his testimony should be given no credence. Instead of basing this denial on the structure of the accused products, he simply described what he believed someone designing an LCD display would "want" to do. Trial Tr. at 406:18-19 ("You don't want to maximize.").

REDACTED

## B.    Infringement Under The Doctrine Of Equivalents.

Even if LPL had offered any evidence of infringement under the doctrine of equivalents, which it did not, no reasonable jury could have found infringement of the "via a resistance" element under the doctrine of equivalents. As noted above, the relevant inquiry under the doctrine of equivalents is whether the accused products perform the same function, in the same way, to obtain the same result as each of the claim limitations. In its claim construction, the Court provided the "function" of the accused products by stating that "resistance" means "a circuit component that has a specified resistance to the flow of electric current and is used to minimize the current surge from an electrostatic discharge." D.I. 218, Claim Construction Order

at 2. Thus, the function of the "resistance" is "to minimize the current surge from an electrostatic discharge." Because the Court specified this function in its claim construction (and therefore, the function must be taken into account when considering literal infringement), the analysis of infringement under the doctrine of equivalents is the same as the analysis of literal infringement.

REDACTED

## IV. NO REASONABLE JURY COULD HAVE FOUND THE '002 PATENT VALID.

While issued patents are presumed valid under 35 U.S.C. § 282, this presumption of validity is merely a procedural device, not substantive law. *DMI, Inc. v. Deere & Co.*, 802 F.2d 421, 427 (Fed. Cir. 1986). The presumption may be overcome through the production of clear and convincing evidence supporting the legal conclusion of invalidity. *See New England Braiding Co., Inc. v. A.W. Chesterton Co.*, 970 F.2d 878, 882 (Fed. Cir. 1992) (holding that the presumption of validity is not "evidence"); *Checkpoint Sys., Inc. v. ITC*, 54 F.3d 756, 761 (Fed. Cir. 1995).

## V. ANTICIPATION.

Anticipation under 35 U.S.C. § 102 requires that each and every element of the claimed invention be disclosed in a single prior art reference. *Minn. Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc*, 976 F.2d 1559, 1565 (Fed. Cir. 1992). The claimed elements must

be either inherent or expressly disclosed in the prior art reference. *Id.; Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1570 (Fed. Cir. 1988). However, the test for anticipation does not require that the prior art reference duplicate word for word what is in the claims. *Akzo N.V. v. ITC,* 808 F.2d 1471, 1479 & n.11 (Fed. Cir. 1986).

## A.    The *Okawa* Reference.

As noted above, LPL does not dispute that the *Okawa* reference, which was published nearly a year before the '002 patent application was filed, is prior art. *See* DTX 4, *Okawa*, at cover page. As explained by Dr. Howard, the prior art *Okawa* reference includes descriptions of each and every limitation present in claim 1, as set out in Appendix 1, Table 1.

### 1.    LPL's Defense To Invalidity.

LPL made two arguments against the *Okawa* reference being invalidating prior art. *See, e.g.*, Trial Tr. at 2072:20-23. First, LPL argued that the "MIM-diode" used in *Okawa* to couple the gate and source lines to the guard ring is not equivalent to using a "conductor" as required in claim 1 of the '002 patent. Second, LPL argued that the *Okawa* reference did not *explicitly* state that the outer guard ring is removed. *See id.* at 1710:6-1716:15. Because LPL's attempts to differentiate claim 1 from *Okawa* on these two points are unfounded, CPT requests judgment as a matter of law that claim 1 of the '002 patent is invalid.

#### a.    *Okawa* Is Not Limited To MIM-Diodes.

LPL mischaracterized the *Okawa* reference as teaching the use of only "MIM-diodes" to interconnect the source and gate lines. LPL's focus on one example in *Okawa* that used a MIM-diode is legally flawed. An anticipation analysis requires examining the entire reference. *Standard Havens Prods., Inc.*, 953 F.2d at 1369; *Glaxo Group Ltd. v. Apotex, Inc.*, 376 F.3d 1339, 1348 (Fed. Cir. 2004). As is readily apparent from the reference, *Okawa* teaches the use of "a diode with reversible breakdown properties" to interconnect the source and gate lines. DTX

4, *Okawa*, p. 3. In providing "one example" of its invention in more detail, *Okawa* describes the use of a MIM-diode for this purpose, but there are many other types of diodes with "reversible breakdown properties," including, for example, the silicon diodes used in CPT's products. *See, e.g.*, Trial Tr. 1727:1-14; 1990:6-20 (Dr. Howard testimony).

Moreover, LPL's argument on this point is inconsistent with its position on infringement. The *Okawa* prior art reference discloses the use of diodes with reversible breakdown properties,

REDACTED

Trial Tr. at 472:17-22. Therefore, LPL should not have been heard to argue that *Okawa* lacked this limitation of claim 1 of the '002 patent. A claim must be interpreted the same way for

REDACTED

infringement and validity.  *See, e.g., Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246

F.3d 1368, 1375 (Fed. Cir. 2001) (holding that a patent owner "cannot have an expression be

limiting in [the validity] context and non-limiting in [the infringement context]").

### b.    *Okawa* Teaches The Removal Of The Outer Guard Ring.

LPL's only other point of distinction between the *Okawa* reference and claim 1 of the

'002 patent was its argument that the *Okawa* reference does not explicitly teach removal of the

outer guard ring.  Trial Tr. at 1952:22-24 (Dr. Schlam testimony).  This assertion is incorrect; the

*Okawa* reference does explicitly discuss removing the outer ESD guard ring:  "[T]he said

connection [to the outer ESD ring] is *removed after the manufacturing process is completed.*"

DTX 4, *Okawa* p. 2, emphasis added; Trial Tr. 1714:3-1715:14.

Setting aside this factual error, LPL also committed legal error.  In closing argument,

LPL's counsel argued that removal of the outer guard ring was only implicit in *Okawa* (factually

incorrect), and that implicit disclosure is insufficient (legally incorrect):

> What did Dr. Howard tell you in his testimony?  I found this quite
> fascinating.  When he was asked about removal of the guard ring,
> he said, Well, it's implicit in Okawa.  Not explicit.[10]  Well, if *it's*
> *only implicit, it isn't clear and convincing.*  He also said he had to
> interpret the figures in the text in order to reach his conclusion.

Trial Tr. 2074:9-23.

Such an argument is a misstatement of the law.  As the Federal Circuit has explained, an

anticipation reference "need not duplicate word for word what is in the claims.  Anticipation can

occur when a claimed limitation is 'inherent' *or otherwise implicit* in the relevant reference."

---

[10] In addition to giving the jury the wrong legal standard for anticipation, LPL also
misquoted Dr. Howard.  Dr. Howard specifically stated that the removal of the guard ring was
explicit:

Q. [T]here's no explicit reference about removing it, is there?
A. Well, it's explicit.
Trial Tr. 1715:8-12.

*Standard Havens Prods.*, 953 F.2d at 1369 (emphasis added). Invalidity by anticipation is found where each element of a claimed invention is found in a prior art document, either expressly or implicitly, such that a person of ordinary skill in the art could practice the invention without undue experimentation. *Atlas Powder Co. v. Ireco, Inc.*, 190 F.3d 1342, 1347 (Fed. Cir. 1999).

In addition to advocating an incorrect legal standard to the jury with respect to implicit disclosure, LPL misled the jury into believing that it could not combine *Okawa's* description of the prior art with its description of the claimed invention to find anticipation. Trial Tr. 1714:7-8; 1716:7-12. The law is clear that an anticipation analysis requires examining the entire reference. *Standard Havens Prods., Inc.*, 953 F.2d at 1369. Anticipation is determined by what one of ordinary skill in the art would understand to be in the reference, either explicitly or implicitly. *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000); *Atlas Powder Co*, 190 F.3d at 1347. The *Okawa* reference teaches that the outer guard ring is removed; the fact that the teaching is discussed in the prior art section of the reference is irrelevant.

### B.    The *Kawamura* Reference.

Contrary to LPL's misleading statements to the jury, *Kawamura* is prior art to the '002 patent. Furthermore, as explained during trial by Dr. Howard, *Kawamura* discloses an outer ESD guard ring that is identical to the outer ring of claim 1 except that the interconnected rows and columns in *Kawamura* are connected to the outer ring via diodes instead of via a "specified resistance." In light of the jury's finding that CPT's diodes infringe the '002 patent, no reasonable jury could then deny that claim 1 of the '002 patent is invalid in light of the *Kawamura* reference. As explained by Dr. Howard at trial, the prior art *Kawamura* reference includes descriptions of each and every limitation present in claim 1, as set out in Appendix 2.

### 1.    *Kawamura* Employs Outer ESD Guard Rings.

LPL's only substantive argument presented to the jury for distinguishing *Kawamura* from claim 1 of the '002 patent was that *Kawamura* did not teach removable outer ESD guard rings, but rather applied only to permanent inner ESD guard rings. *Kawamura* clearly teaches removing the ESD guard ring. *Kawamura* specifically states, "the electrical short-cuts established by the third and fourth wirings *can be removed at any point in time by etching...*" DTX 3, *Kawamura*, p. 8. One of ordinary skill in the art reading the *Kawamura* reference would have immediately understood the reference to teach removing the guard ring by the physical process of etching. Trial Tr. 1719:23-1720:7. Moreover, one of ordinary skill would have recognized that *Kawamura* disclosed an "outer guard ring." Trial Tr. at 1718:13-17.

### 2.    *Kawamura* Is Prior Art.

The filing date of the '002 patent is July 12, 1988. While presenting their case in chief, defendants offered the *Kawamura* reference, which was published on May 11, 1988, as invalidating prior art. During LPL's closing argument, counsel stated that *Kawamura* is not prior art, citing inventor Scott Holmberg's testimony that he conceived and reduced his invention to practice before the May 11, 1988 publication of *Kawamura*. Trial Tr. at 2070:15-2071:22.

The Federal Circuit has held that an inventor's testimony of conception and reduction to practice prior to the patent-in-suit's application date must be corroborated by independent evidence. *Medichem, S.A. v. Robalo, S.L.*, 437 F.3d 1157, 1170-71 (Fed. Cir. 2006). Presumably with this requirement in mind, LPL's counsel stated that there is an independent

REDACTED

REDACTED

*Medichem*, 437 F.3d at 1172-73 ("Where a laboratory notebook authored by a non-inventor is offered into evidence pursuant to authentication by an inventor, where the author of the notebook has not testified at trial or otherwise attested to its authenticity, and where the notebook has not been signed or witnessed and has not been maintained in reasonable accordance with good laboratory practices sufficient to reasonably ensure its genuineness under the circumstances, then the corroborative value of the notebook is minimal.").

REDACTED

REDACTED

The jury should not be permitted to rely on LPL's prejudicial and unsubstantiated statements during closing argument regarding the date of invention in place of actual evidence, and a new trial should be ordered to determine the validity of the '002 patent.  *See* Trial Tr. at 2072:4-18

REDACTED

## VI.  <u>OBVIOUSNESS</u>

Under 35 U.S.C. § 103(a), an inventor is not entitled to a patent "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a). Obviousness under section 103 is determined after establishing the scope and content of prior art, the differences between the prior art and the claims at issue, and the level of ordinary skill in the pertinent art. *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966). When a combination of prior art references is used to establish obviousness, there must be some motivation to combine the references, but a suggestion to modify the art to produce the claimed invention need not be expressly stated in the prior art. *B.F. Goodrich Co. v. Aircraft Braking Sys. Corp.*, 72 F.3d 1577, 1582 (Fed. Cir. 1996). In fact, the Federal Circuit has held that motivation to combine may even be found through "consideration of common knowledge and common sense." *DyStar Textilfarben GmbH & Co. Deutschland KG v. C.H. Patrick Co.*, C.A. No. 06-1088, 2006 WL

2806466, at *11 (Fed. Cir. Oct. 3, 2006). Moreover, in considering motivation to combine, the problem need not be the specific problem solved by the invention, but the general problem that confronted the inventor before the invention was made. *In re Kahn*, 441 F.3d 977, 988 (Fed. Cir. 2006).

### A.  The *Oritsuke* And *Yudasaka* References.

Japanese Patent Application No. S63-10558 by R. Oritsuke ("*Oritsuke*") (DTX 5) discloses an inner ring that is identical to that claimed by the '002 patent. Like the '002 patent, *Oritsuke* uses a conductor ring coupled to the row and column lines through one or more transistors, or shunt switching elements. *Oritsuke*, moreover, discusses the requirements of the shunt switching elements so as not to unduly load the external drive circuits. DTX 5, *Oritsuke* p. 5, ¶ 2. Japanese Patent Application No. S59-126663 to K. Yudasaka ("*Yudasaka*") (DTX 6) is very similar to *Oritsuke*, in that it teaches an inner ring coupled to row and column lines via shunt switching elements. CPT presented *Oritsuke* and *Yudasaka* references to the jury for purposes of demonstrating the obviousness of claim 8, which recites as follows:

> 8.  The method as defined in claim 1 including forming an inner electrostatic discharge guard ring on said substrate coupled to said row and column lines via shunt switching elements to provide protection for electrostatic discharges between said row and column activation lines during manufacture of the displays and thereafter.

Claim 8 essentially combines the use of an outer ESD guard ring with an inner ESD guard ring. As Dr. Howard explained during trial, the *Kawamura* and *Okawa* references describe the use of an outer ESD ring and the *Oritsuke* and *Yudasaka* references describe the use of an inner ESD ring, as shown in Appendices 3 (Table 3) and 4 (Table 4).

As discussed above, the inner ESD guard ring as required by claim 8 is identical to that of *Oritsuke* and *Yudasaka*, and is thus old technology. Furthermore, the outer ring of the '002

patent is old technology taught by *Kawamura* and *Okawa*. Thus, the only alleged "new" or "inventive" aspect in these claims is the combination of two old and known components, the inner and outer guard rings.

The evidence presented at trial shows that it would have been obvious to one of ordinary skill in the art to combine the outer guard rings taught by *Kawamura* or *Okawa* with the inner guard rings taught by *Oritsuke* or *Yudasaka*. LPL's own expert, Dr. Schlam, testified during his deposition (played for the jury) that combining the use of inner and outer ESD guard rings would be obvious:

> Q.    So you are aware – do these test results form part of the basis of your opinion that the combination of the inner ring and the outer ring together provide more ESD protection than the inner ring alone?
>
> A.    Not necessarily test results.  It's something that's quite *obvious* in the world of electronics.

Trial Tr. 1649:20-1650:5.  Dr. Schlam also testified that the use of inner and outer guard rings would be as obvious as combining the use of a raincoat and an umbrella in the rain.  *Id.* at 1972:5-1973:20.

Because both guard rings are used for the common purpose of protecting active matrix displays from electrostatic discharge damage, and the advantages of protecting against ESD damage both during and after the manufacturing process were known in the art, one skilled in the art would have the motivation to combine the outer ring and inner ring prior art references. Howard Trial Tr. 1641:19-1642:9 ("...because one of ordinary skill in the art working at that time, if presented with these inventions, would recognize that each offered benefit, and they could clearly have been combined.  And since there was so much concern about yield and perfection of displays it would be, to me, obvious to one of those people to combine them.").

Thus, it would have been obvious for one of ordinary skill in the art to combine the outer and inner ring technologies taught by the prior art, rendering claim 8 of the '002 patent invalid.

It is a "basic principle of obviousness that a patentable invention is not found in an aggregation of devices or techniques well known in the field that are combined in a manner substantially similar to their known and expected uses." *Cable Elec. Prods., Inc. v. Genmark, Inc.*, 582 F. Supp. 93, 97 n.4 (N.D. Cal. 1984). As Dr. Howard testified, combining the outer guard rings of *Kawamura* or *Okawa* with the inner guard rings of *Yudasaka* and *Oritsuke* required "no inventive contribution." Trial Tr. at 1647-48.

The jury therefore erred as a matter of law in finding the '002 patent nonobvious, and defendants are entitled to a judgment of invalidity or, in the alternative, a new trial.

## CONCLUSION

For the foregoing reasons, CPT respectfully requests that the Court grant judgment of non-infringement and invalidity of the '002 patent as a matter of law, or in the alternative, grant a new trial.

OF COUNSEL:

Teresa M. Corbin
Glenn W. Rhodes
Howrey LLP
525 Market Street, Suite 3600
San Francisco, California 94105
(415) 848-4900

Julie S. Gabler
Howrey LLP
550 South Hope Street, Suite 1100
Los Angeles, California 90071
(213) 892-1800

Robert W. Whetzel (#2288)
whetzel@rlf.com
Steven J. Fineman (#4025)
fineman@rlf.com
Matthew W. King (#4566)
king@rlf.com
Richards, Layton & Finger
One Rodney Square, P.O. Box 551
Wilmington, DE 19899
(302) 651-7700
Attorneys for Defendants/Counterclaimants
Tatung Company, Tatung Company of America,
Chunghwa Picture Tubes, Ltd, and ViewSonic
Corporation

Dated: October 10, 2006

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 10, 2006, I electronically filed the foregoing

document with the Clerk of Court using CM/ECF which will send notification of such filing, and

hand delivered to the following:

> Richard D. Kirk
> The Bayard Firm
> 222 Delaware Avenue, Suite 900
> P.O. Box 25130
> Wilmington, DE 19899

I hereby certify that on October 10, 2006, I sent the foregoing document by Electronic

Mail, to the following non-registered participants:

> Gaspare J. Bono
> Matthew T. Bailey
> Andrew J. Park
> Adrian Mollo
> McKenna Long & Aldridge LLP
> 1900 K Street, NW
> Washington, DC 20006

> Steven J. Fineman (#4025)
> Fineman@rlf.com
> Richards, Layton & Finger
> One Rodney Square
> P.O. Box 551
> Wilmington, DE 19899

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 18, 2006, I electronically filed the foregoing

document with the Clerk of Court using CM/ECF which will send notification of such filing, and

hand delivered to the following:

> Richard D. Kirk
> The Bayard Firm
> 222 Delaware Avenue, Suite 900
> P.O. Box 25130
> Wilmington, DE 19899

I hereby certify that on October 18, 2006, I sent the foregoing document by Federal

Express, to the following non-registered participants:

> Gaspare J. Bono
> Matthew T. Bailey
> Andrew J. Park
> Adrian Mollo
> McKenna Long & Aldridge LLP
> 1900 K Street, NW
> Washington, DC 20006

> Matthew W. King (#4566)
> King@rlf.com
> Richards, Layton & Finger
> One Rodney Square
> P.O. Box 551
> Wilmington, DE 19899