**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| LG.PHILIPS LCD CO., LTD., | |
| Plaintiff/Counterclaim Defendant, | |
| v. | Civil Action No. 05-292 (JJF) |
| TATUNG COMPANY;<br>TATUNG COMPANY OF AMERICA, INC.;<br>CHUNGHWA PICTURE TUBES, LTD.;<br>AND VIEWSONIC CORPORATION, | |
| Defendants/Counterclaim Plaintiffs. | |

**PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO
DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND EXPENSES**

THE BAYARD FIRM
Richard D. Kirk (#922)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899-5130
(302) 655-5000
rkirk@bayardfirm.com
Counsel For Plaintiff,
LG.PHILIPS LCD CO., LTD.

OF COUNSEL:
Gaspare J. Bono
Matthew T. Bailey
Cass W. Christenson
Timothy K. Halloran
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C. 20006
(202) 496-7500

October 23, 2006

## TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................... 1

I.    NATURE AND STAGE OF THE PROCEEDINGS ....................................... 2

II.   SUMMARY OF ARGUMENT ....................................................................... 3

III.  STATEMENT OF FACTS .............................................................................. 4

      A.   LPL Brings Suit in Good Faith to Enforce the '002 and '121 Patents ................. 4

      B.   LPL Moves for a Preliminary Injunction on the '121 Patent Based on
           LPL's Strong Likelihood of Success on the Merits ............................................. 5

      C.   The Parties Agree to An Expedited Trial Regarding the '002 and '121
           Patents ................................................................................................................. 5

      D.   Defendants Initially Pursue an On-Sale Bar Defense Based on an Alleged
           Sale of CPT's Own Product, But Fail To Uncover Proof ................................... 6

      E.   LPL's Multiple, Good Faith Document Productions ........................................... 7

      F.   Defendants Misrepresent that Their Document Production Is Complete,
           Change Their On-Sale Bar Theory, and Ignore Discovery Rulings .................... 7

      G.   Defendants Change Their On-Sale Bar Theory Yet Again and Stipulate
           that LPL Conducted Discovery in Good Faith ..................................................... 9

      H.   Defendants Seek LPA's Documents from LPL, Admitting That LPL's
           Documents Are Insufficient To Prove Their On-Sale Bar Defense .................. 11

      I.   LPL Drops the '121 Patent to Avoid Postponement of Trial, While
           Disputing Defendants' On-Sale Bar Allegations ............................................... 13

      J.   Defendants Seek To Bring the '121 Patent Back Into the Case and Delay
           Trial, Reaffirming That They Do Not Have Sufficient On-Sale Bar
           Evidence ............................................................................................................ 14

      K.   LPL Prevails Overwhelmingly at Trial on the '002 Patent, and Provides a
           Covenant Not to Sue on the '121 Patent ............................................................ 15

IV.   ARGUMENT ................................................................................................ 16

      A.   Defendants' Motion Violates the Court's Prior Order and Rule 54 ................... 16

      B.   Defendants Have Not "Prevailed" Regarding The '121 Patent and Thus
           Cannot Recover Attorneys' Fees ....................................................................... 17

i

C. This Case is Not Exceptional Regarding the '121 Patent ..................................... 19

 1. Defendants Cannot Meet Their High Burden to Demonstrate That This Case Was Brought in "Subjective Bad Faith" and is "Objectively Baseless" .......................................................................... 20

  a. Defendants Fail To Show "Subjective Bad Faith" by LPL ......... 20

  b. Defendants Fail To Show "Objectively Baseless" Litigation by LPL ...................................................................................... 23

   (1) LPL's '121 Patent Claims Are Meritorious ..................... 23

   (2) Defendants' Unproven On-Sale Bar Defense Presents Unresolved Questions of Law and Fact that Defendants Ignore ............................................................ 27

  c. Courts Consistently Hold that Validity Defenses, Even When Proven, Do Not Make a Case Exceptional or Warrant Attorneys' Fees .......................................................................... 28

  d. LPL's Withdrawal of the '121 Patent Claims Cannot Be Bad Faith ................................................................................... 30

 2. Defendants' Allegations of Misconduct are Baseless ............................ 31

  a. Defendants' Allegations of Discovery Misconduct Contradict Their Express Admission of LPL's Good Faith and, In Any Event, Are Insufficient to Recover Fees .................. 31

  b. LPL's Decision to Drop the '121 Patent to Avoid Postponement of Trial Does Not Make This Case Exceptional ................................................................................. 33

D. Justice Requires Awarding Attorneys' Fees to LPL, Not Defendants ................. 35

CONCLUSION ...................................................................................................................... 36

## TABLE OF AUTHORITIES

**Cases** **Page**

*A1 Computer Servs., Inc. v. Standard Parking Sys.*,
  No. 96 Civ. 2695 (DAB), 1998 WL 34382271 (S.D.N.Y. Nov. 3, 1998) .................. 22, 28, 31

*Abbott Labs. v. Tosoh Corp.*,
  No. 95 C 1896, 1998 WL 173297 (N.D. Ill. Apr. 8, 1998).................................. 30, 34

*Akers v. Nicholson*,
  409 F.3d 1356 (Fed. Cir. 2005)................................................................. 17

*Arbrook, Inc. v. American Hosp. Supply Corp.*,
  645 F.2d 273 (5th Cir. 1981) ............................................................. 28, 29, 32

*Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*,
  393 F.3d 1378 (Fed. Cir. 2005)........................................................... 20, 22, 24

*Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Res.*,
  532 U.S. 598 (2001)................................................................................ 17

*Callaway Golf Co. v. Slazenger*,
  384 F. Supp. 2d 735 (D. Del. 2005)................................................... *passim*

*Cambridge Prods., Ltd. v. Penn Nutrients, Inc.*,
  962 F.2d 1048 (Fed. Cir. 1992)................................................................. 33

*Culpepper-Smith v. U.S.*,
  No. CIV.A. 96-CV-5855, 1998 WL 544964 (E.D. Pa. Aug. 24, 1998).................... 16

*eSpeed, Inc. v. Brokertec USA, L.L.C.*,
  417 F. Supp. 2d 580 (D. Del. 2006)........................................................... 35

*Ferag AG v. Quipp Inc.*,
  45 F.3d 1562 (Fed. Cir. 1995)................................................................... 26

*Forest Labs. Inc. v. Abbott Labs.*,
  339 F.3d 1324 (Fed. Cir. 2003)................................................................. 35

*Get-A-Grip, II, Inc. v. Hornell Brewing Co., Inc.*,
  Nos. Civ. A. 99-1332, et al., 2002 WL 234289 (E.D. Pa. Feb. 15, 2002) ........................ *passim*

*Hoffmann-La Roche, Inc. v. Invamed, Inc.*,
  213 F.3d 1359 (Fed. Cir. 2000)................................................................. 22

*Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*,
  343 F. Supp. 2d 272 (D. Del. 2004)........................................................... 24

*Hughes v. Novi American, Inc.*,
   724 F.2d 122 (Fed.Cir.1984) ............................................................................. 29

*Impax Labs. v. Aventis Pharms., Inc.*,
   333 F. Supp. 2d 265 (D. Del. 2004) ................................................................... 21

*In re Caveney*,
   761 F.2d 671 (Fed. Cir. 1985) ............................................................................ 26

*In re Columbia Univ. Patent Litig.*,
   343 F. Supp. 2d 35 (D. Mass. 2004) ............................................................. 18, 19

*Inland Steel Co. v. LTV Steel Co.*,
   364 F.3d 1318 (Fed. Cir. 2004) .......................................................................... 17

*Insituform of N. Am. Inc. v. Midwest Pipeliners Inc.*,
   26 U.S.P.Q.2d 1125 (S.D. Ohio 1992) ............................................................... 32

*ISCO Int'l, Inc. v. Conductus, Inc.*,
   279 F. Supp. 2d 489 (D. Del. 2003) ................................................................... 19

*Kastar v. K Mart Enters.*,
   190 U.S.P.Q. 550 (E.D.N.Y. 1976)) ................................................................... 30

*Larchmont Eng'g, Inc. v. Toggenburg Ski Ctr., Inc.*,
   444 F.2d 490 (2d Cir. 1971) ............................................................................... 34

*McNeil-PPC, Inc. v. L. Perrigo Co.*,
   337 F.3d 1362 (Fed. Cir. 2003) .............................................................. 19, 21, 28

*Merck & Co., Inc. v. Mylan Pharms., Inc.*,
   79 F. Supp. 2d 552 (E.D. Pa. 2000) ............................................................. 32, 33

*Mycogen Plant Science, Inc. v. Monsanto Co.*,
   61 F. Supp. 2d 199 (D. Del. 1999) ..................................................................... 20

*Netscape Commc'ns Corp. v. Konrad*,
   295 F.3d 1315 (Fed. Cir. 2002) .......................................................................... 24

*Pfaff v. Wells Elecs., Inc.*,
   525 U.S. 55 (1998) .............................................................................................. 24

*Rolco Int'l v. Paper Converting Mach. Co.*,
   212 U.S.P.Q. 472 (E.D. Wis. 1981) ................................................................... 30

*Scaltech, Inc. v. Retec/Tetra, LLC*,
   269 F.3d 1321 (Fed. Cir. 2001) .......................................................................... 25

*Serio-US Indus., Inc. v. Plastic Recovery Techs. Corp.*,
459 F.3d 1311 (Fed. Cir. 2006) ................................................................ 35

*Shelcore, Inc. v. CBS, Inc.*,
220 U.S.P.Q. 459 (D.N.J. 1983) .......................................................... 34, 35

*Stephens v. Tech Int'l, Inc.*
393 F.3d 1269 (Fed. Cir. 2004) ........................................................... 19, 22

*Super Sack Mfg. Corp. v. Chase Packaging Corp.*,
57 F.3d 1054 (Fed. Cir. 1995) ................................................................ 23

*Tenax Corp. v. Tensar Corp.*,
22 U.S.P.Q.2d 1264 (D. Md. 1991) ................................................. 19, 33, 36

*True Center Gate Leasing, Inc. v. Sonoran Gate, L.L.C.*,
402 F. Supp. 2d 1093 (D. Ariz. 2005) .................................................. 18, 23

## **Statutes and Rules**

35 U.S.C. § 102 ............................................................................... 26

35 U.S.C. § 282 ............................................................................... 21

35 U.S.C. § 285 .......................................................................... *passim*

Fed. R. Civ. P. 54 ........................................................................ 4, 16

## **INTRODUCTION**

Defendants' motion was filed without leave of Court, contrary to the Court's Order prohibiting any further submissions concerning the '121 Patent. In any event, Defendants cannot request fees because they are not prevailing parties. As a matter of law, only prevailing parties can seek fees, and LPL is the only prevailing party in this case.

Defendants' entire motion, moreover, hinges on a disputed, unproven assumption – that the '121 Patent is invalid because of an alleged on-sale bar. Defendants have not prevailed on this defense, which would have to be proved by clear and convincing evidence. Before LPL provided a covenant not to sue, thus mooting all issues concerning the '121 Patent, numerous legal and factual issues regarding the '121 Patent were disputed and unresolved. Defendants previously conceded as much when they repeatedly sought additional discovery that they contended was necessary to support their alleged on-sale bar defense. Indeed, as recently as May 15, 2006, Defendants' counsel represented to the Court that additional discovery is "necessary to assert a defense" concerning the on-sale bar issue. D.I. 195 at 4. Contradicting their consistent position throughout this litigation – that further discovery and evidence is needed to establish an on-sale bar – Defendants now, having lost at trial, assert that the '121 Patent is invalid despite their lack of proof. Because Defendants are not prevailing parties, the Court should deny the motion without reaching the merits.

Further, LPL brought suit on the '121 Patent in good faith based on strong claims. Defendants, therefore, cannot show *either* subjective bad faith *or* objectively baseless claims, *both* of which are required. LPL dropped the '121 Patent to avoid an indefinite extension of discovery, which threatened to postpone trial. Proceeding to the expedited trial date without delay was LPL's primary goal – a goal vindicated by the jury's verdict that Defendants are willful infringers.

Defendants' allegations of discovery misconduct by LPL are likewise meritless. Defendants inconsistently accuse LPL of *withholding* documents, while at the same time arguing for an on-sale bar based on the documents *produced by LPL*. Indeed, Defendants' misconduct arguments contradict Defendants' own prior stipulation expressly agreeing that LPL's discovery efforts reflected good faith. Defendants' accusations, therefore, do not withstand scrutiny.

Based on the jury's overwhelming verdict in favor of LPL, and the jury's well-supported findings of willful infringement by each Defendant, justice requires awarding attorneys' fees to LPL, not to Defendants. In sum, Defendants have not prevailed on the merits of the '121 Patent, nor have they identified any valid basis upon which to award them fees. Accordingly, Defendants' motion should be denied in all respects.

## I.    NATURE AND STAGE OF THE PROCEEDINGS

In May 2005, Plaintiff LG.Philips LCD Co., Ltd. ("LPL") filed its Complaint alleging that Defendants Chunghwa Picture Tubes, Ltd. ("CPT"), Tatung Company ("Tatung"), Tatung Company of America, Inc. ("Tatung America"), and ViewSonic Corporation ("ViewSonic") (collectively, "Defendants") directly and indirectly infringe U.S. Patents No. 5,019,002 ("the '002 Patent") and No. 6,738,121 ("the '121 Patent"). D.I. 1. In November 2005, LPL moved for a preliminary injunction regarding the '121 Patent. *See* D.I. 21-24. The Court offered the parties the choice of continuing to litigate LPL's motion, or proceeding to trial in nine (9) months. D.I. 32. The parties agreed to the expedited trial date. D.I. 33.

At a discovery hearing on April 25, 2006, Defendants asked the Court to extend the discovery period so that they could pursue further evidence regarding their disputed on-sale bar defense. The Court gave LPL the option of dropping the '121 Patent from the case, or enduring prolonged discovery regarding that patent. On May 1, 2006, to avoid any possible delay in the

trial date, LPL dropped the '121 Patent while continuing to dispute Defendants' on-sale bar allegations.  D.I. 179, 180.

After LPL dropped the '121 Patent, Defendants asked the Court to delay the trial date and again sought further discovery necessary to their on-sale bar theory.  D.I. 195.  The Court rejected Defendants' request and ordered that any remaining issues regarding the '121 Patent would be addressed after trial on a schedule set by the Court.  D.I. 197.  The Court also ordered that no further applications concerning the '121 patent could be made without leave of Court.  *Id*. Accordingly, the parties proceeded to trial on the '002 Patent.

Trial was conducted before a jury from July 17, 2006 through July 27, 2006.  On July 27, the jury returned a verdict in favor of LPL and against each of the Defendants, finding that each Defendant infringed the '002 Patent directly, indirectly, and willfully, and rejecting Defendants' validity challenges.  D.I. 405.  On August 3, LPL provided Defendants with a Covenant Not To Sue on all claims of the '121 Patent, mooting all claims and issues related to that patent.[1]

On September 1, 2006, LPL filed its motion for entry of final judgment.  D.I. 437, 438. In its motion, LPL also sought enhanced damages, attorneys' fees, and expenses based on the Defendants' willful infringement, litigation misconduct, and pre-judgment interest.  D.I. 437, 438.  On October 10, 2006, without leave of Court, Defendants filed a motion and opening brief seeking their attorneys' fees and expenses related to the '121 Patent.  D.I. 463, 464.

## II.    <u>SUMMARY OF ARGUMENT</u>

1.    Defendants' motion was filed without leave in violation of the Court's order. Accordingly, it should be denied as premature.  The motion also is defective because it fails to

---

[1] A copy of the Covenant Not to Sue was sent to Defendants by e-mail on August 3, and an original was delivered by hand on August 10.  *See* D.I. 418.

quantify any fee amount, contrary to Fed. R. Civ. P. 54. If the Court reaches the merits of the motion, however, it should also be denied on substantive grounds.

2.    To recover attorneys' fees under 35 U.S.C. § 285, one must be a "prevailing party." A party has not prevailed unless it has received some relief on the merits. Because Defendants did not receive any relief on the merits of the '121 Patent, they are not prevailing parties. As a matter of law, Defendants' motion must fail.

3.    A second prerequisite to relief under 35 U.S.C. § 285 is that the case must be "exceptional." Defendants must prove that this case is exceptional by clear and convincing evidence. Defendants fail to carry that burden, however, because they cannot show that LPL brought suit in bad faith and that this action was baseless. Defendants likewise have not demonstrated that LPL engaged in discovery misconduct. Nor does LPL's decision to drop the '121 Patent, in order to avoid delay, render this case exceptional. Defendants fail to establish any basis for finding an exceptional case.

4.    Equitable considerations favor an award of attorneys' fees to LPL, not to Defendants. The jury expressly found that Defendants infringed LPL's '002 Patent directly, indirectly, and willfully – *i.e.*, in bad faith. Under these circumstances, no injustice will result from denying Defendants their attorneys' fees.

## III.    STATEMENT OF FACTS

### A.    LPL Brings Suit in Good Faith to Enforce the '002 and '121 Patents

LPL is a leader in the liquid crystal display ("LCD") industry. *See* Trial Tr. at 589:2-590:20 (Ex. A). LPL's reputation as a top-tier innovator is well-established, and LPL consistently develops and patents new and valuable technology related to LCDs. *See id.* LPL developed and owns the '121 Patent. *See* D.I. 1. In general, the '121 Patent relates to the use of a tape carrier package ("TCP") to improve brightness performance in LCDs. LPL filed its

4

application for the '121 Patent on March 23, 2001, and the patent was issued to LPL on May 18, 2004. *See id.*

CPT is a direct competitor of LPL. *See* PTX 67 at CPT-D 38937. After the '121 Patent issued, LPL obtained LCD products containing CPT modules that infringe the '121 Patent. After confirming that CPT's modules infringe LPL's patents, specifically including the '121 Patent, LPL filed this lawsuit in good faith. *See* D.I. 1.

### B. LPL Moves for a Preliminary Injunction on the '121 Patent Based on LPL's Strong Likelihood of Success on the Merits

Because CPT so clearly infringes the '121 Patent, LPL moved for a preliminary injunction regarding the '121 Patent. *See* D.I. 21-24. LPL supported its motion for preliminary injunction with, among other things, a detailed declaration by William Bohannon, an industry expert with more than twenty-five years of experience. *See* D.I. 23 at ¶ 4. Mr. Bohannon reviewed the '121 Patent, including its file history and relevant prior art. *Id.* at ¶ 10. He also conducted an in-depth comparison of Defendants' LCD products, specifically a Tatung monitor and a ViewSonic monitor, to the claims of the '121 Patent by disassembling Defendants' products and carefully studying their electrical components, including their TCPs. *Id.* at ¶¶ 11-12. Mr. Bohannon concluded that Defendants' products literally infringed several claims of the '121 Patent. *Id.* at ¶¶ 21, 26. LPL explained in detail the basis for an injunction, including why LPL had a strong likelihood of success on the merits as to infringement and validity. *See* D.I. 22 at 9-22. LPL sought by its motion, therefore, to preclude CPT from continuing its ongoing, clear infringement of the '121 Patent.

### C. The Parties Agree to An Expedited Trial Regarding the '002 and '121 Patents

After Defendants requested additional time to respond to LPL's motion for preliminary injunction (*see* D.I. 25), the Court scheduled a hearing for November 16, 2005. At the hearing,

the Court gave the parties two options: (1) the parties could continue to litigate the motion for preliminary injunction, in which case "the trial would be scheduled to commence approximately twenty-four (24) months from the date of the decision [on the motion];" or (2) the parties could "[p]roceed to a full disposition with trial in (9) months" and have "all post-trial matters . . . resolved by September 2006." D.I. 32. LPL's goal was to resolve this case promptly so that LPL could obtain and enforce money damages and a permanent injunction to remedy Defendants' infringement. Accordingly, LPL embraced the Court's offer to expedite the entire case for trial in nine months. Defendants also agreed to proceed to trial within nine months on both the '002 and '121 Patents. *See* D.I. 33. The expedited trial date was of critical importance to LPL.

### D. Defendants Initially Pursue an On-Sale Bar Defense Based on an Alleged Sale of CPT's Own Product, But Fail To Uncover Proof

The Court held a scheduling conference on December 8, 2005. At that hearing, Defendants' counsel indicated that Defendants already had evidence warranting "an early Summary Judgment Motion on the on-sale bar," regarding the '121 Patent, based on "an actual sale with a[n] invoice." Dec. 8, 2005 Tr. at 13:2-5; 14:11-13 (Ex. B). Defendants made these claims based solely on a single CPT invoice. *See* D.I. 134 at 3. The Court put Defendants on notice that the on-sale bar is "a hard thing to prove unless you've got the invoice and delivery." Dec. 8, 2005 Tr. at 15:23-16:1 (Ex. B). The Court also emphasized that "We're going to trial in July. . . . Nothing is going to stop that from happening." *Id*. at 12:18-22.

On January 20, 2006, Defendants issued a subpoena to Greg Zafiris of Pixelworks, seeking evidence needed to support their on-sale bar defense. *See* D.I. 80. The Pixelworks subpoena sought evidence to establish delivery of CPT's products to Paneltronix (a predecessor entity of Pixelworks) prior to the critical date for the on-sale bar – March 23, 2000 – based on a

single transaction "reflected in CPT Invoice No. K00224." *Id*. Mr. Zafiris subsequently

informed LPL's counsel that Pixelworks did not have any documents responsive to the subpoena.

### E.     LPL's Multiple, Good Faith Document Productions

Given the expedited schedule, the Court set prompt discovery deadlines. *See* D.I. 62.

LPL worked diligently and in good faith, reviewing and/or translating thousands of documents,

including foreign language documents, to meet the Court's deadlines and ensure that all

responsive documents were produced. LPL produced documents as promptly as it could.

LPL produced documents multiple times and on a rolling basis, including document

productions on at least February 3, 15, 16, 17, 18, and 20; March 16 and 31; and April 19. LPL

produced more than 104,000 pages of documents in this case alone.[2] Included among LPL's

productions were the specific documents upon which Defendants now rely to assert invalidity of

the '121 Patent based on an alleged on-sale bar. Defendants' agree that LPL produced all of

those documents between February 15, 2006 and March 16, 2006. *See* D.I. 464 at 13 n.11.

### F.     Defendants Misrepresent that Their Document Production Is Complete, Change Their On-Sale Bar Theory, and Ignore Discovery Rulings

The Court initially set February 3, 2006 as the deadline for the parties to complete

document production. *See* D.I. 62. On February 8, 2006, the Court held a hearing to address the

status of discovery. During the hearing, Defendants' counsel represented to the Court that they

had "completed our document production on Friday [Feb. 3]." Feb. 8, 2006 Tr. at 5:17-19 (Ex.

C). LPL disputed Defendants' position that the Defendants had produced all of their documents

by February 3. *See id*. at 6:21-7:8. As of February 3, Defendants had produced fewer than

---

[2] LPL also produced nearly 100,000 more pages of documents in the related California litigation, which the parties agreed would be deemed produced in this case.

30,000 pages of documents.  After February 3, Defendants produced more than 60,000 additional pages of documents, not including expert discovery.

The Court extended the document production deadline until February 21.  *See id.* at 20:12-15.  The Court emphasized, however, that the February 21 deadline would not change, and that it applied to all documents, including documents subpoenaed from third-parties.  Defendants' counsel responded that applying the February 21 deadline to third-parties was agreeable, stating:  "No problem, I just wanted to make sure that we were clear."  *Id.* at 21:3-4.  The Court confirmed that:  "We are all clear.  Any document that's in this case is [produced by] the 21st," and "[n]othing will be in this case after that . . . no matter how prejudicial, [or] how beneficial, they just won't be in the case."  *Id.* at 21:5-12.

Shortly after the February 8 hearing, when the Pixelworks subpoena did not yield any evidence of an on-sale bar, Defendants switched course and pursued a new on-sale bar theory.  Defendants new theory was that third-party sales supported an on-sale bar defense.  In mid-February, Defendants issued two new third-party subpoenas to CPT customers seeking evidence of pre-critical date sales.[3]  *See* D.I. 116, 117.  Defendants also -- for the first time -- issued a subpoena regarding pre-critical date sales of modules manufactured by Sharp.  D.I. 121.  Defendants then filed a letter asking the Court to extend the February 21 deadline so that they could seek these and other additional third-party documents.  D.I. 118.  LPL objected to the extension as inconsistent with the Court's ruling at the February 8 hearing.  D.I. 119.  Nevertheless, Defendants continued issuing third-party subpoenas through February 21.  *See* D.I. 120, 122, 123, 124.

---

[3] As of February 8, Defendants had issued one third-party subpoena, to Pixelworks, concerning their initial on-sale bar theory.

Despite the February 21 deadline and their representation that their document production was completed on February 3, Defendants continued producing documents, including third-party documents, after February 21.  *See, e.g.,* D.I. 134 at 4-5 (listing Defendants' untimely productions, including February 23, 24, 28, and March 17).  Defendants produced documents as late as June 30, 2006.  *See, e.g*., June 30, 2006 Letter from Heather Fan to Cass Christenson (Ex. D).

On February 24, 2006, the Court denied Defendants' request to extend the production deadline for the same reasons that the Court had already stated at the February 8 hearing.  *See* D.I. 125.  Despite the Court's letter ruling, Defendants continued producing documents.  *See* D.I. 134 at 4-5.  LPL objected to Defendants' untimely subpoenas and production and moved to quash all outstanding subpoenas and to exclude the untimely produced documents from the case. *See* D.I. 128.

### G.   Defendants Change Their On-Sale Bar Theory Yet Again and Stipulate that LPL Conducted Discovery in Good Faith

On March 1, 2006, the Court held another discovery hearing.  The Court granted LPL's motion to quash CPT's untimely subpoenas, again affirming that "any subpoena issued by any party for documents . . . after February 21, 2006 is quashed.  And . . . any document provided after February 21 is excluded."[4]  Mar. 1, 2006 Tr. at 3:16-21 (Ex. E).  The Court also ordered Defendants to produce discovery that had been withheld, including mother glass samples,

---

[4]  Defendants filed a motion to reconsider the Court's ruling and again sought to extend discovery.  *See* D.I. 134.  Defendants' motion to reconsider was denied as moot after LPL dropped the '121 Patent from the case.  *See* D.I. 185.  However, Defendants' improper conduct continued.  For example, Defendants also continued producing documents, including on February 23, 24, 28, and March 17.  *See id*. at 4-5.  Defendants also failed to produce multiple responsive documents that subsequently were identified by witnesses during depositions.  *See* D.I. 438 at 9-13 (discussing Defendants' litigation misconduct).  Also, during depositions, Defendants repeatedly coached witnesses and gave improper instructions not to answer, forcing LPL to move to compel and seek sanctions.  *See id*.

module samples, and numerous documents related to LPL's infringement analysis on the '121 Patent, such as mechanical drawings and specifications related to Defendants' TCPs. *See id*. at 5:10-7:2; D.I. 32; *see also* D.I. 128 at 2-5 (listing discovery that Defendants had withheld as of February 28). Additionally, the Court scheduled a contempt hearing to address any non-compliance with its rulings in the event that the parties failed to comply.[5] *See* D.I. 132.

In response to the Court's March 1 rulings, counsel for the parties met and conferred several times and exchanged additional discovery. LPL did everything possible to comply fully with the letter and spirit of the Court's rulings. LPL confirmed that it had produced all existing documents in its possession that Defendants sought. In addition, LPL took the extra step of creating and producing various charts and summaries to provide additional information extracted from LPL's databases. *See* LPL's March 31, 2006 Submission Regarding the Court's March 1, 2006 Discovery Rulings (Ex. F). When Defendants requested supplementation, moreover, LPL provided supplemental summaries to include broader date ranges. *See id*. LPL even investigated and responded to new discovery requests raised for the first time by Defendants *after* the March 1 hearing. *See id*. at 7. LPL confirmed for Defendants, in detail, its supplemental search and production efforts. *Id*.

In late March, Defendants changed their on-sale bar theory yet again, suggesting that LPL (or a predecessor entity, LG Electronics Inc.) had made sales to LG.Philips LCD America, Inc. ("LPA"), a U.S. subsidiary of LPL, before the critical date. On March 29, Defendants specifically requested -- for the first time -- documents that might belong to LPA. *See* March 29, 2006 Letter from Christine Dudzik to Cass Christenson (Ex. G). Defendants' document requests

---

[5] The Court also temporarily stayed damages discovery and ordered the parties to produce their outstanding documents and things by March 17, 2006. Mar. 1, 2006 Tr. at 4:3-7:17 (Ex. E).

specifically sought LPL's own documents (not documents from LPA), and the discovery period had ended.[6]

After several extensions, the contempt hearing was set for April 25, 2006. In advance of the hearing, counsel for the parties continued their discussions and further narrowed their areas of disagreement. As a result of these discussions, counsel agreed to submit a joint pre-hearing filing, rather than unilateral filings. In light of LPL's diligent efforts to respond to all discovery requests, Defendants expressly stipulated that LPL had acted in good faith: "*In light of their good faith efforts, the parties agree that no party should be held in contempt concerning the Court's discovery rulings*." D.I. 177 at 1-2 (emphasis added). The parties continued to dispute Defendants' requests for discovery from LPA, which was addressed at an April 25 hearing.

### H. Defendants Seek LPA's Documents from LPL, Admitting That LPL's Documents Are Insufficient To Prove Their On-Sale Bar Defense

At the April 25 hearing, Defendants represented that they needed third party discovery regarding LPA to answer unresolved issues raised by LPL's documents.[7] Apr. 25, 2006 Tr. at 5:17-18 (Ex. H). Specifically, Defendants told the Court that they needed "follow up" discovery on the following unresolved issues:

> getting documents from LPL America that talk about what happened to those 7,000 units of the '121 product that [LPA allegedly] purchased before the critical date, also if there are any other modules that might have been embodiments of that patent we just don't know.

[6] LPL's March 31, 2006 submission explained in detail that any documents that might be possessed by LPA did not come within the scope of Defendants' document requests. *See* Ex. F at 11-14. Moreover, Defendants had never served a subpoena on LPA, even though Defendants were aware of LPA from publicly available securities filings. *See id.* at 2-3.

[7] Defendants' "Statement of Facts" recites that the "[r]esponsive documents cited herein were produced [between] February 15, 2006 . . . and March 16, 2006." D.I. 464 at 13 n.11. Before the April 25 hearing, therefore, Defendants had the LPL documents that they now argue, for the first time, are sufficient to show an on-sale bar.

> It also involves documents regarding *the particular relationship between LPL and LPL America. That may turn out to be quite important*. And it also involves some third-party documents . . . from Texas Instruments to find out *when exactly the tape carrier package was developed, when the mass shipments started to happen of the tape carrier package to LPL*, and finally, Your Honor, it also involves getting some documents from other third parties about the COMDEX show so we can see exactly what happened there, what the nature of the exhibits were and whether there were offers for sale.

*Id*. at 5:20-6:16 (emphasis added).

LPL's counsel agreed that Defendants could not prove an invalidating sale based on LPL's documents because "there is insufficient proof and evidence showing that the product that they're talking about [the LB121S1-A2] has the particular TCP package in it that they contend was sold" before the critical date. *Id*. at 38:15-19. LPL's counsel explained further that the LB121S1-A2 "used two different TCP packages, one was the TCP package that does not contain the invention [Part 55], and some contained the invention [Part 56]." *Id*. at 39:2-6. LPL itself did not have records detailing the TCP information for the disputed shipments to LPA. *Id*. at 41:15-22.

Despite having stipulated that LPL had acted in good faith (D.I. 177), Defendants counsel attacked LPL at the hearing. Apr. 25, 2006 Tr. at 11:19-18:4 (Ex. H). Defendants' counsel accused LPL of intentionally withholding the information that LPL had produced. LPL's counsel rejected Defendants' unfounded allegations as "[a]bsolutely false." *Id*. at 42:6-7.

With Defendants seeking substantial and time-consuming discovery to pursue their on-sale bar allegations, which could have jeopardized the trial date, the Court, *sua sponte*, presented LPL with a choice. The Court stated that LPL could drop the '121 Patent or else Defendants could reopen discovery on the '121 Patent:

> [C]ounsel for the plaintiff [shall] make a determination whether or
> not they want to pursue infringement claims under [the '121]
> patent by Monday, May 1. *You can drop the patent from the case*.
>
> If I maintain the infringement claims under that patent, then
> I'm going to allow the defendants to have discovery . . . on the
> issue of an on-sale bar through May 12th of 2006. . . .

*Id*. at 71:1-9.  Since Defendants indicated that they might need more time to take discovery on

the '121 Patent, the Court left open the possibility that discovery on the '121 Patent could

continue further, as necessary, after May 12: "If there is any additional discovery to be taken, it

will be discussed after that discovery is complete . . . ." *Id*. at 71:16-18 (emphasis added); *see

also* D.I. 181.  The Court did not impose any conditions on LPL if it elected to drop the '121

Patent, and Defendants did not request any such conditions.

## I.    LPL Drops the '121 Patent to Avoid Postponement of Trial, While Disputing Defendants' On-Sale Bar Allegations

On May 1, LPL filed a Notice of Voluntary Withdrawal, dropping the '121 Patent from

the case "without prejudice."  D.I. 180.  In its accompanying letter to the Court, LPL made clear

that it was not conceding anything regarding the merits of its claims:

> *LPL does not concede anything by withdrawing its claims under
> the '121 patent*.  LPL believes that is has stated a meritorious claim
> for patent infringement of its '121 patent.  Moreover, LPL
> believes, on the basis of everything that is known to date, that
> defendants could not successfully prove an invalidating on-sale bar
> for the '121 patent by clear and convincing evidence.

D.I. 179 (emphasis added).  Additionally, LPL emphasized its concern that protracted discovery

regarding the '121 Patent threatened to delay the trial, a result LPL wanted to avoid:

> [T]he discovery preparatory to and ensuing battle over the on-sale
> bar for the '121 patent would be a time consuming distraction from
> LPL's real objective, which is getting to trial in July on
> Defendants' infringing products.  LPL is concerned that CPT
> would use the discovery process outlined by the court as to the on-
> sale bar issue in an effort to attempt (again) to postpone the trial.

> Therefore, the withdrawal of Count I is a practical decision that in
> no way should be construed as a concession by LPL.

*Id.* (emphasis added).

LPL dropped the '121 Patent according to the schedule set by the Court and well in advance of trial. Despite LPL's requests to begin depositions sooner, depositions did not begin until May 18, when Defendants produced their first witness for deposition. LPL thus dropped the '121 Patent weeks before depositions started and no witnesses were deposed in this case concerning the '121 Patent. Trial preparation, including the pretrial hearing, Pretrial Order, exhibits, and witness preparation, was focused exclusively on the '002 Patent.[8]

**J.     Defendants Seek To Bring the '121 Patent Back Into the Case and Delay Trial, Reaffirming That They Do Not Have Sufficient On-Sale Bar Evidence**

Two weeks after LPL dropped the '121 Patent from the case, Defendants sought to delay the trial, contending that they were prejudiced "by the fast-track procedure the Court has imposed on the parties." D.I. 195 at 1. Defendants also renewed their request for "discovery as to the on-sale bar issues raised by CPT at the April 25th hearing." *Id.* at 3. Despite LPL having narrowed the issues for trial by dropping one patent, Defendants contended that "maintaining the July 17 trial date is now an unrealistic goal if CPT is to be given a fair opportunity to defend itself . . . ." *Id.* Defendants sought to continue litigation and discovery regarding the '121 Patent, which they said required *months of further discovery to support an on-sale bar defense*:

> CPT . . . is now at least three-weeks behind on discovery that it
> could have pursued that is directed to the '121 patent's on-sale bar
> issues. . . . [D]iscovery relating to the on-sale bar issue will lie
> with third-parties such as LPL America or Texas Instruments

---

[8] Defendants nonetheless attempted to inject into the trial irrelevant and unfounded arguments regarding the '121 Patent and other collateral patent litigation in California. LPL filed a motion in limine to preclude evidence or references at trial to these patents not in suit and collateral litigation. D.I. 318. The Court granted LPL's motion and properly precluded references to the '121 Patent at trial. D.I. 368.

> (Japan). . . . *[O]btaining information that CPT is entitled to in*
> *preparing its defense may take months. CPT requests a trial date*
> *based on giving CPT the ability to complete the discovery*
> *necessary to assert a defense.*

*Id*. at 4 (emphasis added).

LPL promptly objected to Defendants' request for delay. D.I. 196. LPL's letter to the Court explained that "LPL did nothing more and nothing less than 'drop the patent from the case,'" as allowed by the Court. *Id*. LPL's letter further explained that its withdrawal of claims regarding the '121 Patent "is not tantamount to dismissing them under Rule 41, and is certainly not tantamount to dismissing them with prejudice," but rather "is the functional equivalent of amending the complaint under Rule 15." *Id*.

On May 16, the Court rejected Defendants' request for further discovery on the '121 Patent. *See* D.I. 197. The Court's Order reminded Defendants that "[t]he schedule in this case was set by the express preference of the parties, not imposed on the parties by the Court." *Id*. at 2. The Court found "that no undue prejudice will be incurred by either party by proceeding to trial in July on the '002 patent." *Id*. The Court specifically prohibited any further applications concerning the '121 Patent absent leave of Court. *See id*. ("The issues Defendants contend exist regarding the '121 patent will be addressed after the July trial on a schedule set by the Court. No further applications concerning the '121 patent shall be made without leave of the Court.").

### K.     LPL Prevails Overwhelmingly at Trial on the '002 Patent, and Provides a Covenant Not to Sue on the '121 Patent

Trial regarding the '002 Patent was conducted before a jury from July 17, 2006 through July 27, 2006. On July 27, the jury returned a verdict in favor of LPL and against each of the Defendants, finding that each Defendant infringed LPL's '002 Patent directly, indirectly, and willfully, and rejecting Defendants' validity challenges. *See* D.I. 405. The jury awarded LPL damages in excess of fifty million dollars. *See id*. Subsequently, to ripen the case for entry of

final judgment, LPL provided Defendants with a covenant not to sue on the '121 Patent.  *See* D.I.

418; *see also* LPL's Covenant Not to Sue (Ex. I).  Based on Defendants' willfulness, LPL has

moved for enhanced damages and other relief.  In response, and after losing on nearly every

issue presented to the jury, Defendants filed the instant motion.  *See* D.I. 463, 464.

## IV.    ARGUMENT

### A.    Defendants' Motion Violates the Court's Prior Order and Rule 54

The last time Defendants attempted to litigate issues related to the '121 Patent, the Court

could not have been more clear:  "*No further applications concerning the '121 patent shall be*

*made without leave of the Court.*"  D.I. 197 (emphasis added).  The Court ruled that any issues

related to the '121 Patent would be addressed only with the Court's permission, and "on a

schedule set by the Court."  *Id.*  The Court's ruling precluding further submissions on the '121

Patent preceded LPL's covenant not to sue on that patent, which has now mooted the '121 Patent

issues.  Defendants motion was filed without leave and should be denied.

Additionally, Defendants' motion is procedurally defective as it fails to comply with Rule

54, which requires a motion for attorneys' fees to "state the amount or provide a fair estimate of

the amount sought."  Fed. R. Civ. P. 54(d)(2)(B); *see also* Fed. R. Civ. P. 54 Advisory

Committee Notes to 1993 Amendments ("What is required is the filing of a motion sufficient to

alert the adversary and the court that there is a claim for fees and the amount of such fees (or a

fair estimate)."); *Culpepper-Smith v. U.S.*, No. CIV.A. 96-CV-5855, 1998 WL 544964, at *8

(E.D. Pa. Aug. 24, 1998) ("Under Rule 54(d)(2)(B), plaintiff's motion is deficient in that it . . .

failed to 'provide a fair estimate of the amount sought.'").[9]  In any event, as shown below,

Defendants' motion fails on the merits.

---

[9] Copies of all unpublished cases cited herein are attached as Ex. J.

**B.    Defendants Have Not "Prevailed" Regarding The '121 Patent and Thus Cannot Recover Attorneys' Fees**

LPL is entitled to an award of attorneys' fees in this case, not the Defendants.  The Court should award attorneys' fees in this case to LPL based on the jury's verdict concluding that each Defendant directly, indirectly, and willfully infringes the '002 Patent, for the reasons set forth in LPL's pending motion.[10]  Defendants, as willful infringers, should pay fees and are not prevailing parties.

A Defendant must be the "prevailing party" in order to seek attorneys' fees under 35 U.S.C. § 285.  *See, e.g.*, *Inland Steel Co. v. LTV Steel Co.*, 364 F.3d 1318, 1319-20 (Fed. Cir. 2004).  In this case, LPL is the only prevailing party.  In contrast, Defendants seek fees based on hotly contested and unresolved issues concerning Defendants' purported "on-sale bar" defense. As a matter of law, Defendants have not "prevailed" on any claims or defenses, and, therefore, cannot recover attorneys' fees.

Defendants have not prevailed regarding the '121 Patent because they obtained no relief on the merits.  The Supreme Court has held that one must "receive at least some relief on the merits of his claim before he can be said to prevail."  *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Res.*, 532 U.S. 598, 603 (2001) (citation omitted). Accordingly, the Federal Circuit has explained, "[t]o qualify as 'prevailing,' then, a party must have obtained a court-ordered consent decree based on a settlement, an enforceable judgment on the merits, or an award of even 'nominal' damages."  *Akers v. Nicholson*, 409 F.3d 1356, 1359 (Fed. Cir. 2005) (quoting *Buckhannon*, 532 U.S. at 603-04).

---

[10] *See* D.I. 437, 438, 452 (LPL's motion seeking attorneys' fees and supporting briefs).

Defendants fail to qualify as prevailing parties as they have not obtained any court ordered decree, enforceable judgment on the merits, or award of damages. Instead, Defendants received only a covenant not to sue, which is not relief on the merits, and Defendants thus are not prevailing parties within the meaning of 35 U.S.C. § 285. *See True Center Gate Leasing, Inc. v. Sonoran Gate, L.L.C.*, 402 F. Supp. 2d 1093, 1101 (D. Ariz. 2005). Although a covenant not to sue "accomplishes the major part of what [Defendants] sought to achieve," it is "a form of voluntary conduct" and not "relief from the court on the merits of their claims" regarding the '121 Patent. *Id.* (citation omitted). A covenant not to sue divests the Court of subject matter jurisdiction concerning the '121 Patent and does not operate as an adjudication on the merits. *See id.* Defendants "are, therefore, not prevailing parties for the purposes of § 285." *Id.*; *see also In re Columbia Univ. Patent Litig.*, 343 F. Supp. 2d 35, 49 (D. Mass. 2004) (holding that covenant not to sue did not make defendants "prevailing parties for the purposes of § 285").

Defendants contend -- without citing any authority -- that LPL's covenant not to sue "is tantamount to a dismissal with prejudice," amounting to an adjudication on the merits. D.I. 464 at 18. Defendants are incorrect. A covenant not to sue is fundamentally different from a dismissal with prejudice. Specifically, a covenant not to sue does not operate as an adjudication on the merits.[11] *See True Center Gate Leasing, Inc.*, 402 F. Supp. 2d at 1101; *In re Columbia Univ. Patent Litig.*, 343 F. Supp. 2d at 49. Further, the covenant not to sue divests the Court of subject matter jurisdiction, and Defendants, therefore, cannot litigate or prevail on the merits as a matter of law.[12] *See True Center Gate Leasing, Inc.*, 402 F. Supp. 2d at 1097, 1101. Because

---

[11] Further, LPL withdrew the '121 Patent "without prejudice." D.I. 180. "A dismissal without prejudice is not an adjudication on the merits . . . ." *Venuto v. Witco Corp.*, 117 F.3d 754, 760 (3d Cir. 1997).

[12] Accordingly, Defendants' request for additional discovery on the '121 Patent is improper. *See* D.I. 464 at 15 n.12. Any dismissal for lack of subject matter jurisdiction, moreover, would not be an adjudication

*(footnote continued on next page)*

there is no dismissal with prejudice in this case, Defendants' reliance on cases involving dismissals with prejudice is misplaced.  *See* D.I. 464 at 18 (citing *Tenax Corp. v. Tensar Corp.*, 22 U.S.P.Q.2d 1264 (D. Md. 1991), and *Callaway Golf Co. v. Slazenger*, 384 F. Supp. 2d 735 (D. Del. 2005)).  And, because Defendants are not prevailing parties, the Court should deny their motion without reaching the exceptional case issue.

### C.    This Case is Not Exceptional Regarding the '121 Patent

Not only have Defendants not prevailed in this case, but they do not even address many substantive issues regarding the '121 Patent.  Defendants do not, for example, refute that they infringe the '121 Patent.  Nor do Defendants assert any single defense to liability regarding the '121 Patent, other than an "on sale bar" defense.  Defendants' mere assertion of this single disputed defense cannot support an award of attorneys fees in this case to Defendants, the willful infringers of the '002 Patent.  Further, Defendants cannot show that LPL brought an "objectively baseless" case in "subjective bad faith" as required under Section 285.  Finally, Defendants fail to show any litigation misconduct warranting an exceptional case fee award.  Courts routinely reject Defendants' motions for fees even when Defendants have prevailed, unlike Defendants in this case.  *See, e.g., Stephens v. Tech Int'l, Inc.*, 393 F.3d 1269, 1276 (Fed. Cir. 2004) (reversing fee award to defendant); *McNeil-PPC, Inc. v. L. Perrigo Co.*, 337 F.3d 1362, 1372-73 (Fed. Cir. 2003) (reversing fee award to defendant); *Callaway Golf Co.*, 384 F. Supp. 2d at 747 (defendant "failed to show by 'clear and convincing evidence' that [plaintiff] brought this suit in bad faith"); *ISCO Int'l, Inc. v. Conductus, Inc.*, 279 F. Supp. 2d 489, 512 (D. Del. 2003) ("the instant infringement suit was not so baseless that one could characterize it as improper or an abuse of

---

*(footnote continued from previous page)*

on the merits.  *See, e.g., St. Pierre v. Dyer*, 208 F.3d 394, 400 (2d Cir. 2000); *Figueroa v. Buccaneer Hotel, Inc.*, 188 F.3d 172, 182 (3d Cir. 1999).

the judicial process"); *Mycogen Plant Science, Inc. v. Monsanto Co.*, 61 F. Supp. 2d 199, 272 (D. Del. 1999) (denying fee request because defendants did not show that plaintiff "engaged in 'extraordinary misconduct' and acted 'in bad faith' when it filed its complaint in this lawsuit").

>    1.    Defendants Cannot Meet Their High Burden to Demonstrate That This Case Was Brought in "Subjective Bad Faith" and is "Objectively Baseless"

The U.S. Court of Appeals for the Federal Circuit recently confirmed that an infringer seeking an award of fees against a patent holder for meritless litigation faces an extraordinarily heavy burden. *See Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005). Specifically, Defendants must prove both that: "(1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless." *Id*. "There is a presumption that the assertion of infringement of a duly granted patent is made in good faith." *Id.* at 1382. Because of this presumption, Defendants must prove by clear and convincing evidence that improper conduct makes this an exceptional case. *See id*. Defendants fail to establish either of these two requirements. The Court should, therefore, deny Defendants' motion.

>    a.    Defendants Fail To Show "Subjective Bad Faith" by LPL

Defendants do not -- and cannot -- offer *any* evidence of subjective bad faith by LPL. LPL brought this action in good faith, as confirmed by the jury's verdict that Defendants are willful infringers. LPL sought recovery for Defendants' willful infringement of both the '121 and '002 Patents, and dropped the '121 Patent only when it became the subject of contentious discovery that threatened to delay the trial. After the jury awarded LPL the entire damages sought by LPL, a covenant not to sue was provided in order to avoid any delay in entry of final judgment. *See* D.I. 418. LPL has proven Defendants' subjective bad faith (willful infringement) by clear and convincing evidence. Defendants, in contrast, merely make hollow, unfounded accusations.

Based entirely on documents that LPL itself produced to Defendants, which underscores LPL's good faith in this case, Defendants incorrectly conclude "it is evident that LPL knew, or should have known, that the '121 patent was invalid." D.I. 464 at 19. This contention is unconvincing for several reasons. First, the '121 Patent is presumed valid. *See Impax Labs. v. Aventis Pharms., Inc*., 333 F. Supp. 2d 265, 271 (D. Del. 2004) (citing 35 U.S.C. § 282). The Federal Circuit has made clear that a patent holder may rely on the presumption of validity in good faith, even though an invalidity defense may be later proven. *See McNeil-PPC, Inc.,* 337 F.3d. at 1372-73 ("although the claims at issue have now been held to be invalid, they had not been held to be invalid at the time that they were asserted"). CPT's assertion of an on-sale bar defense, therefore, does not establish any bad faith. *See id.* at 1372 ("Given the existence of patents issued by the PTO with a presumption of validity, the present lawsuit was not found to have been brought in bad faith.").

Further, knowledge of an invalidity defense is not the same thing as knowing that a patent is invalid. *See Get-A-Grip, II, Inc. v. Hornell Brewing Co., Inc*., Nos. Civ. A. 99-1332, et al., 2002 WL 234289, at *2 (E.D. Pa. Feb. 15, 2002). In *Get-A-Grip*, the Court specifically rejected an argument "that plaintiff was obligated to terminate the action upon warning from [defendant] that invalidating prior art existed" because, without a pre-suit "judicial determination [of invalidity]," defendant could not show "by clear and convincing evidence that plaintiff knew or should have known of the invalidity." *Id*. Denial of Defendants' motion is particularly appropriate concerning CPT's latest "on-sale bar" defense, which raises unresolved and complex

21

legal and factual issues.  Further, CPT's "on-sale" bar defense has continuously shifted and evolved during this case.[13]

        To show subjective bad faith, Defendants would need to show that LPL knowingly brought this action in bad faith.  *See Stephens*, 393 F.3d at 1274 ("pertinent inquiry" in analyzing frivolous suit allegation is whether patent holder "knew or should have known that it could not successfully assert [the patent]" but "pursued its infringement claim anyway").  This is simply not the case.  Defendants do not cite any evidence that LPL failed to do an appropriate pre-suit inquiry or that LPL lacked any subjective expectation of success when it brought this case.  Even if Defendants could show that LPL's pre-suit investigation was insufficient – which they cannot – that would not make the case exceptional.  *See, e.g., Callaway Golf Co.*, 384 F. Supp. 2d at 747 ("'Even if plaintiffs' pre-suit investigation was unreasonable, an unreasonable investigation alone does not demonstrate that the ensuing litigation was vexatious, unjustified, or brought in bad faith.'") (quoting *Hoffmann-La Roche, Inc. v. Invamed, Inc.,* 213 F.3d 1359, 1363 (Fed. Cir. 2000)); *Get-A-Grip*, 2002 WL 234289, at *2; *A1 Computer Servs., Inc. v. Standard Parking Sys.*, No. 96 Civ. 2695 (DAB), 1998 WL 34382271, at *5 (S.D.N.Y. Nov. 3, 1998) ("simple inadequacy of prefiling inquiry is insufficient [to make a case exceptional]; the additional element of bad faith is necessary.").  Accordingly, Defendants' motion necessarily fails without addressing their failure to show that this case is objectively baseless.  *See Brooks Furniture Mfg., Inc.*, 393 F.3d at 1381 ("Since we conclude that the first requirement (subjective bad faith) is not satisfied here, we need not decide whether the second (objectively baseless) standard was met.").

---

[13] As explained above, Defendants first contended that an on-sale bar existed as a result of CPT's own sales.  Defendants next asserted an on-sale bar based on sales by third-parties.  Finally, Defendants argued for an on-sale bar based on alleged sales by LPL or a predecessor entity.

b.   Defendants Fail To Show "Objectively Baseless" Litigation by LPL

The Court does not need to reach this issue, but, in any event, Defendants necessarily cannot show that LPL pursued "objectively baseless" litigation when LPL obtained a verdict of willful infringement against Defendants on the '002 Patent and the only issue raised as to the '121 Patent is an unresolved and contested "on-sale" bar defense. Many disputed issues of fact and law would need to be resolved to assess the validity of the '121 Patent. LPL has provided a covenant not to sue, and there is no longer any subject matter jurisdiction concerning the '121 Patent. *See, e.g.*, *True Center Gate Leasing, Inc.*, 402 F. Supp. 2d at 1096-97. Accordingly, the court should not address the merits of the '121 Patent claims and defenses. *See id.* at 1097 (citing *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1058-60 (Fed. Cir. 1995)).

Defendants' exceptional case argument rests on the mere assumption that the '121 patent is invalid, a defense that Defendants never proved in this case. The Defendants' argument is based on circumstantial evidence, conjecture, and an incomplete record (as Defendants recognized when they sought further discovery attempting to uncover clear and convincing evidence). Merely asserting an unproven defense is insufficient to show bad faith litigation by clear and convincing evidence, and, therefore, the Court should deny Defendants' motion. *See, e.g., Get-A-Grip*, 2002 WL 234289, at *2.

(1)   LPL's '121 Patent Claims Are Meritorious

Defendants cannot prove by clear and convincing evidence that LPL's claims are objectively baseless. Tellingly, Defendants' brief is silent regarding the likelihood that Defendants infringe the '121 Patent. Indeed, Defendants implicitly *conceded* infringement when they initially argued that CPT itself had sold an infringing TCP in the U.S. before the critical

23

date. *See* D.I. 134 at 3. As set forth in detail in LPL's preliminary injunction motion papers, moreover, LPL had a great likelihood of success in showing that Defendants infringe the '121 Patent. LPL's motion papers included an expert declaration confirming Defendants' infringement of the '121 Patent. *See* D.I. 23. LPL's strong infringement case undermines Defendants' "exceptional case" argument.

In addition to ignoring the merits of LPL's infringement claims, Defendants do not assert in their brief that the '121 Patent claims are anticipated, obvious, or unenforceable for any reason other than the purported on-sale bar defense. Defendants never proved their on-sale bar defense in this case, and their motion relies on dubious assumptions improperly construing circumstantial evidence in the light most favorable to Defendants. The Court should disregard Defendants' assumptions, which are at odds with settled presumptions of patent validity and good faith litigation.

LPL is entitled to a presumption that it pursued its claims in this case, including the '121 Patent claims, in good faith. *See Brooks Furniture Mfg., Inc.*, 393 F.3d at 1382. In addition, LPL is entitled to a presumption that the '121 Patent is valid. Defendants, therefore, have the burden to prove any "on-sale bar" defense by clear and convincing evidence. *See, e.g.*, *Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 343 F. Supp. 2d 272, 290 (D. Del. 2004) (citing *Netscape Commc'ns Corp. v. Konrad*, 295 F.3d 1315, 1320 (Fed. Cir. 2002)). To meet this heavy burden, Defendants would have to show several elements, including that the relevant product was "the subject of a commercial offer for sale," and that the invention was "ready for patenting." *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 67 (1998). That test is not met unless the invention that is the subject matter of the offer for sale "satisf[ies] each claim limitation of the

patent." *Scaltech, Inc. v. Retec/Tetra, LLC*, 269 F.3d 1321, 1329 (Fed. Cir. 2001). Defendants have never met this burden.

During the course of this case, CPT has shifted through three *different* and equally *unproven* theories of "on-sale" bar, apparently now arguing only the third theory. Defendants' brief refers to "having raised the on-sale bar issue in November and December 2005," but fails to mention that this was a *different* on-sale bar argument from the one now made using discovery obtained from LPL. *See* D.I. 464 at 20. In November and December 2005, Defendants argued that there was an on-sale bar based on a purported sale by CPT itself to the U.S. Subsequently, however, this original "CPT sale" argument faltered after Defendants failed to uncover the evidence needed to prove an on-sale bar by clear and convincing evidence. *See* section III.D., *supra*.

Defendants second theory – based on alleged sales by third-parties – was equally unsuccessful and Defendants did not even issue third-party subpoenas in time to obtain discovery within the Court-ordered discovery deadline – a deadline with which Defendants had expressly agreed. *See* section III.F., *supra*. The Court, therefore, quashed Defendants' untimely subpoenas and excluded Defendants' untimely produced documents. *See* March 1, 2006 Tr. at 3:16-21 (Ex. E).

Defendants now argue a third on-sale bar theory based on alleged sales between LPL (or its predecessor) and a related entity in the U.S., LPA.[14] This "LPL / predecessor-subsidiary" on-sale bar defense, however, also lacks clear and convincing evidence. In addition, this defense is subject to legal limitations that insulate inter-company transactions from on-sale bar allegations

---

[14] LPL was formed from predecessor entities in September 1999. It has never been clear whether Defendants allege sales to LPA by LPL or by a predecessor entity.

in certain circumstances.[15]   The Federal Circuit has held that "one cannot make a contract with

himself," and thus "a sale or offer to sell under 35 U.S.C. § 102(b) must be between two separate

entities." *In re Caveney*, 761 F.2d 671, 676 (Fed. Cir. 1985).  Moreover, "[w]here . . . the parties

to an alleged sale are related," "it is more difficult to determine whether the inventor is

attempting to commercialize his invention; accordingly, in such cases whether there is a statutory

bar depends on whether the seller so controls the purchaser that the invention remains out of the

public's hands."  *Ferag AG v. Quipp Inc*., 45 F.3d 1562, 1567 (Fed. Cir. 1995).

     LPL's documents, moreover, do not show clear and convincing evidence of an on-sale

bar.  Indeed, Defendants previously recognized that the existing evidence is insufficient to prove

an on-sale bar by clear and convincing evidence when they repeatedly pressed to embark on a

"scorched-earth" discovery campaign in search of a specific product that contained the specific

'121 invention and was sold in the U.S. before the critical date.  If LPL's documents already

conclusively reflected an on-sale bar, as Defendants now argue, Defendants would not have

pursued discovery on these same issues.  Yet, during the April 25 hearing and again in their May

15 letter to the Court, Defendants insisted that *additional discovery* was "*necessary to assert a

defense*."  D.I. 195 at 4 (emphasis added).  Defendants should not be heard now to make the

opposite argument that the existing documents are sufficiently probative.

---

[15] Defendants' counsel implicitly acknowledged that, in light of this line of cases, Defendants could not
prove an on-sale bar without further discovery when he requested discovery of, among other things,
"documents regarding the particular relationship between LPL and LPL America.  That may turn out to
be quite important."  Apr. 25, 2006 Tr. at 6:3-6 (Ex. H).

(2)     Defendants' Unproven On-Sale Bar Defense Presents
Unresolved Questions of Law and Fact that Defendants
Ignore

LPL always has contested Defendants' on-sale bar arguments in this case. Defendants are thus mistaken in arguing that LPL or its counsel have "no position" regarding the "on-sale bar" defense. As LPL's counsel has repeatedly stated to the Court, LPL contests this defense. *See, e.g.*, Apr. 25, 2006 Tr. at 38:15-19 (Ex. H); D.I. 179. LPL consistently has disputed the "on-sale bar" defense, including when LPL dropped the '121 Patent claims, stating that "LPL does not concede anything by withdrawing its claims under the '121 patent," and "on the basis of everything that is known to date . . . defendants could not successfully prove an invalidating on-sale bar for the '121 patent by clear and convincing evidence." D.I. 179 at 1. Similarly, when providing a covenant not to sue on the '121 Patent, LPL again confirmed that it "in no way concedes Defendants' allegations that the aforementioned claims of the '121 patent are invalid, unenforceable, or not infringed. To the contrary, LPL categorically rejects all such claims by Defendants." Ex. I.

Numerous legal and factual issues regarding the '121 Patent – and for which Defendants bear the burden of proof – remain unresolved. The documents do not show, for example, which TCP part number was used in any specific product shipped to the U.S. before the critical date. Circumstantially, Defendants argue and assume that Part 56 was used in every single one of the products shipped to the U.S. in late 1999, but there is no clear and convincing evidence to this effect and the predecessor TCP (part 55) did not contain the invention. In addition, factual issues remain concerning whether a transfer of products between related companies supports an on-sale bar. Each of these unresolved issues independently undermines Defendants' exceptional case arguments. The disputed "on-sale bar" issues thus include, for example:

27

- Whether any pre-critical date offer or sale in fact contained a TCP with every element of the '121 claims;

- When the Part 56 TCP was developed by Texas Instruments;

- When mass shipments of the TCP from Texas Instruments to LPL began;

- The nature of the relationship between LPL and LPA;

- Whether shipments between LPL (or its predecessor) and LPA constitute "sales" for on-sale bar purposes; and

- Whether LPA subsequently made any invalidating sale.

Defendants' own requests for further discovery expressly acknowledge that at least these issues remain unresolved. *See* Apr. 25, 2006 Tr. at 5:17-6:16 (Ex. H); *see also* D.I. 195.

          c.    <u>Courts Consistently Hold that Validity Defenses, Even When Proven, Do Not Make a Case Exceptional or Warrant Attorneys' Fees</u>

"A patentee should not be penalized for simply pursuing an infringement suit, even if his patent is later found to be invalid." *A1 Computer Servs., Inc.*, 1998 WL 34382271, at *5. Critically, the '121 Patent was *never* deemed to be invalid or unenforceable. Even if the '121 Patent had been fully litigated and found to be invalid, however, Defendants would not be entitled to fees.

The Federal Circuit has "not previously held any party liable for attorney fees for . . . enforcing a presumptively valid patent, even where that patent was later invalidated, in the absence of clear and convincing evidence of inequitable conduct or misconduct during litigation." *McNeil-PPC, Inc.*, 337 F.3d at 1372. Any ultimate finding of invalidity, moreover, "cannot be used to bootstrap the argument that they were asserted in bad faith, absent clear and convincing evidence that [patent holder] had reason to believe that the claims were invalid or not infringed." *Id.* at 1373; *see also Arbrook, Inc. v. American Hosp. Supply Corp.*, 645 F.2d 273, 279 (5th Cir. 1981) ("We have found all of the relevant patent claims invalid, but it is far from

clear that their invalidity, apparent after a full trial, should have been obvious to all parties all along."). As the U.S. Court of Appeals for the Fifth Circuit explained in reversing an award of fees, "[t]hat a patent plaintiff has lost on the merits is not enough to warrant a fee award under [section] 285; such awards are proper only when the plaintiff has acquired his patent by fraud or brings an infringement suit with no good faith belief that his patent is valid and infringed." *Arbrook, Inc.*, 645 F.2d at 279. Defendants' reliance on their unresolved on-sale bar defense, therefore, is misplaced regardless of whether Defendants' on-sale bar defense has any merit.

Likewise, Defendants mistakenly attempt to draw a false analogy between this case and *Hughes v. Novi American, Inc.*, 724 F.2d 122 (Fed. Cir. 1984). *See* D.I. 464 at 21 (incorrectly contending that "This case is similar to *Hughes* . . . "). Another court in this Circuit recently rejected a similar argument. *See Get-A-Grip,* 2002 WL 234289, at *2. The defendant in *Get-A-Grip*, like Defendants here, incorrectly cited *Hughes* to argue that "the plaintiff was obligated to terminate the action upon warning from [defendant] that invalidating prior art existed." *Id.* at *2. The Court rejected the defendant's argument as misapplying *Hughes*, because the plaintiff in *Hughes* had asserted a patent previously held invalid in a prior, separate litigation. *See id.* As the Court further explained, therefore, "the *Hughes* plaintiff could not rely on the statutory presumption of validity." *Id.* As in *Get-A-Grip*, and unlike in *Hughes*, "no judicial determination had been made prior to this action" and Defendant had merely asserted an unproven defense. *Id.* This Court, like the court in *Get-A-Grip*, should conclude that "Defendant has not shown by clear and convincing evidence that plaintiff knew or should have known of the invalidity of the patent at issue" and thus Defendants have "failed to establish this case as exceptional." *Id.*

       d.    <u>LPL's Withdrawal of the '121 Patent Claims Cannot Be Bad Faith</u>

Defendants' argument that LPL somehow acted inappropriately by dropping the '121 Patent claims is unpersuasive. *See* D.I. 464 at 23-24. Dropping a patent claim does not imply any concession regarding the merits of the claim. *See Rolco Int'l v. Paper Converting Mach. Co.*, 212 U.S.P.Q. 472, 474 (E.D. Wis. 1981) (party that voluntarily dismissed its complaint had not, "tacitly or otherwise, admitted to the invalidity of its patent"). "To the contrary, voluntary dismissal is generally deemed 'an indication of *good faith*.'" *Callaway Golf Co.*, 384 F. Supp. 2d at 747 (quoting *Kastar v. K Mart Enters.*, 190 U.S.P.Q. 550, 555 (E.D.N.Y. 1976)) (emphasis added). Thus, "[c]ourts have denied motions for attorneys' fees when the plaintiffs voluntarily and in good faith dismissed their cases." *Abbott Labs. v. Tosoh Corp.*, No. 95 C 1896, 1998 WL 173297, at *8 (N.D. Ill. Apr. 8, 1998). LPL dropped its claims at the Court's invitation while confirming LPL's good faith belief in its position.

At the April 25 hearing, exercising sound case management, the Court allowed LPL to moot further contentious and time-consuming discovery regarding the '121 Patent and go to trial on the willfully infringed '002 Patent. *See* Apr. 25, 2006 Tr. at 70:22-71:20 (Ex. H). Had LPL not dropped its '121 Patent claims, the Court would have allowed Defendants to extend the discovery period at least until May 12, including additional document production and depositions. *See id.* In addition, the Court stated discovery might be prolonged even further: "If there is any additional discovery to be taken, it will be discussed after that discovery is complete . . . ." *Id.* LPL was keenly aware that Defendants would seek any reason to delay the trial and the jury's verdict. Defendants' confirmed that LPL made the correct choice to drop the '121 Patent when, in response to the withdrawal of that patent, Defendants renewed their request for further "discovery as to the on-sale bar issues raised by CPT at the April 25th hearing," and asked that the trial date be delayed so that Defendants could "complete the discovery necessary

to assert a defense." D.I. 195 at 3-4. LPL, therefore, should not be punished for following a

course expressly suggested by the Court, particularly when the alternative risked indefinite delay

and contentious discovery. *See, e.g., A1 Computer Servs.*, 1998 WL 34382271, at *7 ("an award

of fees here would penalize plaintiff for seeking to voluntarily dismiss a lawsuit that it has now

concluded should be dismissed").

        2.     <u>Defendants' Allegations of Misconduct are Baseless</u>

            a.     <u>Defendants' Allegations of Discovery Misconduct Contradict</u>
                  <u>Their Express Admission of LPL's Good Faith and, In Any Event,</u>
                  <u>Are Insufficient to Recover Fees</u>

      Defendants' allegations of discovery misconduct by LPL are false and disingenuous.

Defendants purport to assert that LPL "thwarted" Defendants' on-sale discovery because, they

contend, LPL "belatedly" produced documents upon which Defendants now rely. D.I. 464 at 22-

23. As shown above, however, LPL acted in good faith throughout discovery and worked

diligently to ensure that all responsive documents were produced as promptly as possible. As

LPL's counsel previously explained to the Court, Defendants' unwarranted accusations of

stonewalling are "[a]bsolutely false." Apr. 25, 2006 Tr. at 42:6-7 (Ex. H).

      Moreover, Defendants' accusations are flatly contradicted by Defendants' express

stipulation, in advance of the April 25 hearing, that LPL acted in "good faith" regarding the

Court's discovery rulings and should not be held in contempt. D.I. 177. Notably, Defendants

agreed to that stipulation on April 24 – *more than one month after LPL produced all of the*

*documents upon which Defendants now rely*. *See* D.I. 464 at 13 n.11 (stating that the documents

relied upon by Defendants were produced between February 15 and March 16). Likewise, while

Defendants now purport to take issue with LPL's initial disclosures and interrogatory responses

(*see id*. at 22-23), the stipulation acknowledging LPL's good faith came long after Defendants

received those discovery papers.[16]  Nor did Defendants raise any issue regarding the accuracy of LPL's discovery responses at the April 25 hearing, or in their letter to the Court after LPL dropped the '121 Patent (D.I. 195).[17]  Defendants' change of position, after losing at trial, rings hollow.

Additionally, Defendants' assertion that LPL "compound[ed]" its supposed "misconduct" when LPL moved to quash Defendants' untimely subpoenas is nonsensical.  D.I. 464 at 23.  The only misconduct regarding Defendants' subpoenas was Defendants' repeated refusal to obey the Court's deadlines for production of third-party documents.  Accordingly, at the March 1 hearing, the Court quashed Defendants' untimely subpoenas and excluded any documents produced after February 21.  Mar. 1, 2006 Tr. at 3:16-21 (Ex. E).

In any event, Defendants' discovery-related allegations are legally insufficient for them to recover fees.  Courts have observed that when a party is "somewhat slow to respond to discovery requests," that "is not conduct that clearly and convincingly shows bad faith, and an award of attorney fees on this basis would also be improper."  *Insituform of N. Am. Inc. v. Midwest Pipeliners Inc.*, 26 U.S.P.Q.2d 1125, 1132 (S.D. Ohio 1992); *see also Merck & Co., Inc. v. Mylan Pharms., Inc.*, 79 F. Supp. 2d 552, 556-57 (E.D. Pa. 2000).  Further, to the extent Defendants had any issue with LPL's discovery conduct, "[t]he proper remedy for improper conduct in the course of discovery lies under Rule 37 and not under § 285."  *Get-A-Grip*, 2002 WL 234289, at *3; *see also Arbrook, Inc.*, 645 F.2d at 279 (same); *Merck & Co., Inc.*, 79 F.

---

[16] LPL served its initial disclosures on December 16, 2005; its interrogatory answers on January 17, 2006; and its supplemental interrogatory answers on February 28, 2006.

[17] Furthermore, LPL's discovery responses are entirely consistent with the clear statement by LPL's counsel at the April 25 hearing that LPL lacks any evidence confirming whether pre-critical date shipments contained the TCP that included the '121 invention.

Supp. 2d at 556-57 (same).  The Court previously has denied Defendants' motion to compel,

which sought witness testimony not documents.  *See* D.I. 245 (Defendants' motion); D.I. 333 at

9:24-10:1 (denial of Defendants' motion).  There is no basis to award Defendants fees based on

LPL's good faith actions during discovery.

> b. <u>LPL's Decision to Drop the '121 Patent to Avoid Postponement of
> Trial Does Not Make This Case Exceptional</u>

The fact that LPL dropped the '121 Patent to avoid delay, at the Court's invitation, does

not make this case exceptional.  Defendants contend that an award of fees is warranted because

LPL allegedly "abandoned" the '121 Patent on the "eve of trial" to avoid providing discovery,

and because Defendants invested "substantial effort and expense" in defending against the '121

Patent.  *See* D.I. 464 at 23-24.  Neither contention has merit.

As explained above, LPL brought suit on the '121 Patent in good faith and continually

disputed Defendants' on-sale bar allegations.  LPL dropped the '121 Patent to avoid prolonged

discovery and maintain the expedited trial date – a consistent and important goal of LPL for

reasons now validated by the jury.  The '121 Patent was removed from this case weeks before

the first deposition took place, and months before trial.  Thus, Defendants' assertion that the

patent was dropped on "the eve of trial" is incorrect.  Even if LPL had dropped the patent closer

to trial, however, that would not entitle Defendants to attorneys' fees.  *See, e.g., Cambridge

Prods., Ltd. v. Penn Nutrients, Inc*., 962 F.2d 1048, 1049-51 (Fed. Cir. 1992); *Tenax Corp*., 22

U.S.P.Q.2d at 1268-69.

Given that LPL dropped the '121 Patent well before any depositions began, let alone trial,

Defendants' claims that they spent substantial effort "prepar[ing] for depositions relating to the

'121 patent" and "prepar[ing] a trial presentation . . . [regarding] the '121 patent" appear suspect.

D.I. 464 at 24.  Defendants fail to state anywhere in their motion papers even an estimate as to

the amount of such fees purportedly incurred.  In any event, Defendants' litigation expenditures are not recoverable.  In *Callaway Golf Co. v. Slazenger*, 384 F. Supp. 2d 735 (D. Del. 2005), for example, after Callaway voluntarily dismissed its patent infringement claim, Dunlop sought attorneys' fees, accusing "Callaway of protracting 'the infringement litigation for two years, knowing full well that its claim lacked sufficient legal or factual support and the patent claims allegedly infringed were invalid.'"  *Id.* at 747.  Callaway responded that it brought suit in good faith but ultimately dropped its claim for several strategic reasons "aside from the quality of its infringement claim."  *Id.*  After noting that "voluntary dismissal is generally deemed 'an indication of good faith,'" the court rejected Dunlop's motion for fees, explaining:  "The fact that Dunlop incurred expense in hiring experts to defend against Callaway's patent claim is insufficient to support a finding that this case is exceptional."  *Id.* (citation omitted).  Numerous courts have reached the same result on similar facts.  *See, e.g., Abbott Labs. v. Tosoh Corp.*, No. 95 C 1896, 1998 WL 173297, at \*1 (N.D. Ill. Apr. 8, 1998) (denying defendants' motion for attorneys' fees where plaintiff voluntarily dismissed suit "[a]fter extensive discovery"); *Shelcore, Inc. v. CBS, Inc.*, 220 U.S.P.Q. 459, 467 (D.N.J. 1983) (no fees awarded where plaintiff dropped one of two patents before trial and Defendant "contend[ed] that it incurred great expense in preparing to meet the withdrawn claim, including expenses relating to discovery, searches of prior art and proposed jury charges"); *Larchmont Eng'g, Inc. v. Toggenburg Ski Ctr., Inc.*, 444 F.2d 490, 491 (2d Cir. 1971) (no fees awarded even though plaintiff voluntarily dismissed claim after "[e]xtensive pretrial discovery").[18]  In sum, LPL's dropping of the '121 Patent does not make this an exceptional case.

---

[18] To the extent Defendants contend they are entitled to attorneys' fees simply because LPL sued on two patents but subsequently dropped one of them, Defendants are incorrect.  *See, e.g., SL Waber, Inc. v. American Power Conversion Corp.*, 135 F. Supp. 2d 521, 527 (D.N.J. 1999) (where plaintiff sued on two

*(footnote continued on next page)*

### D.     Justice Requires Awarding Attorneys' Fees to LPL, Not Defendants

Even if Defendants had prevailed on the '121 Patent and proved an exceptional case, moreover, that would still not warrant an award of attorneys' fees to Defendants.  *See eSpeed, Inc. v. Brokertec USA, L.L.C.*, 417 F. Supp. 2d 580, 599 (D. Del. 2006) (finding case exceptional, but denying attorneys' fees to prevailing defendant).  Indeed, in the context of fee awards to accused infringers, the Federal Circuit has observed that "§ 285 is limited to circumstances in which it is necessary to prevent 'a gross injustice' to the accused infringer[.]'" *Id*. (quoting *Forest Labs. Inc. v. Abbott Labs*., 339 F.3d 1324, 1329 (Fed. Cir. 2003)).  In making this determination, the Court may consider "'intangible as well as tangible factors:  the degree of culpability of the infringer, the closeness of the question, litigation behavior, and any other factors whereby fee shifting may serve as an instrument of justice.'"  *Serio-US Indus., Inc. v. Plastic Recovery Techs. Corp.*, 459 F.3d 1311, 1322 (Fed. Cir. 2006) (citation omitted); *see also eSpeed, Inc.*, 417 F. Supp. 2d at 599-600.

As explained more fully in LPL's pending motion for attorneys' fees, the relevant considerations in this case support an award of fees to LPL, not to Defendants.  *See* D.I. 438, 452.  Defendants' culpability favors awarding fees to LPL as evidenced by the jury's findings that each Defendant infringed willfully.  *See* D.I. 405.  Additionally, the case was not a close one, as shown by the fact that LPL prevailed on nearly every issue presented to the jury.  *See id*.

---

*(footnote continued from previous page)*

patents but later dropped one of them and provided a covenant not to sue, there was "no sound justification" for awarding fees to defendant who had "merely alleged, but not proven, inequitable conduct and bad faith on [plaintiff's part" regarding the dropped patent; *Shelcore, Inc.*, 220 U.S.P.Q. at 467-68 (refusing to award fees where plaintiff withdrew one of two asserted patents).  Indeed, the *SL Waber* court noted that, since defendant received a covenant not to sue regarding the withdrawn patent, defendant "should consider the costs and attorneys' fees it has incurred in defending against ... the '991 patent money well spent."  135 F. Supp. 2d at 528.

Moreover, Defendants' litigation misconduct – including, for example, misstatements of fact under oath to conceal infringement, which were proven to be false at trial – tilts in LPL's favor. *See* D.I. 438, 452. And, based on their bad faith, infringing conduct, Defendants have no equitable basis to seek recovery. *See Tenax Corp.*, 22 U.S.P.Q.2d at 1269 (concluding that an award of fees to a willful infringer was unjustified "even if the patentee had engaged in inequitable conduct before the PTO.").[19] Under these circumstances, no "gross injustice" will result from denying Defendants' motion.

## CONCLUSION

Accordingly, for all the foregoing reasons, LPL respectfully requests that the Court deny Defendants' motion in all respects, and award LPL such relief as the Court deems just and proper.

---

[19] The cases cited by Defendants to support their purported equitable argument are inapposite, as they involve accused infringers who were awarded attorneys' fees after prevailing on the merits. *See* D.I. 464 at 24-26. In *Mathis v. Spears*, 857 F.2d 749 (Fed. Cir. 1988), after an eight-day bench trial, the court found all asserted patents invalid and unenforceable for inequitable conduct. *See id.* at 751. In *Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 267 F.3d 1370 (Fed. Cir. 2001), defendant obtained summary judgment based on an on-sale bar, and, after a subsequent evidentiary hearing, the court awarded Defendant fees after finding inequitable conduct in prosecuting the patent. *See id.* at 1377-78. Here, contrastingly, Defendants improperly *assume* invalidity of the '121 Patent, and Defendants have not even alleged inequitable conduct.

October 23, 2006

THE BAYARD FIRM

/s/ Richard D. Kirk (rk0922)
Richard D. Kirk (#922)
222 Delaware Avenue
Suite 900
Post Office Box 25130
Wilmington, Delaware 19899-5130
rkirk@bayardfirm.com
(302) 655-5000

Counsel for Plaintiff
LG.PHILIPS LCD CO., LTD.

OF COUNSEL:
Gaspare J. Bono
Matthew T. Bailey
Cass W. Christenson
Timothy K. Halloran
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C. 20006
(202) 496-7500