LG Philips LCD Co., LTD   v.
Tatung Company, et al.

# 1

121 19:11; 20:23
12:58 25:14
17 4:13; 5:19; 17:9
17th 6:14, 16, 17
185 15:21

# 2

2006 195:21
2006 4:13; 5:5, 19; 6:7, 14
21 18:4
21 21:4
21 22:5, 18, 19, 21
21st 18:2, 9; 19:5, 6, 22;
20:18
24th 6:7
28 5:5; 17:10
29 17:15
29th 4:19; 5:24
3rd 18:8; 20:6; 22:5

# 3

30th 5:22; 6:1; 17:16;
18:15
31 17:9
37 4:15; 5:2, 18
3rd 18:8; 20:6; 22:5

# 4

4:00 4:19

# 9

9:30 6:1

# A

a.m 6:1
able 12:4; 19:8
accept 12:16
access 14:18
achieved 22:10
actually 9:7; 15:4; 13:8;
19:6
additional 20:14
Additionally 19:18
address 14:21
adjudicated 23:22
afternoon 33:22
afternoon 4:22
afternoon 522
afternoon 5:23
Again 5:17; 6:2, 8; 8:2;
19:22; 21:24
against 7:7; 21:4
aggressively 20:8

ago 15:14
agree 12:1; 24:10
agreement 12:5
ahead 19:9
allocate 6:3; 15:19
allocated 4:23, 24
allocation 4:21
allow 18:3; 24:12
always 22:9
ambiguity 8:19
amorphous 9:16
amount 18:17
appeal 14:7
appear 7:4, 6; 20:22
applicable 17:12
application 5:9
applied 20:7; 22:16
apprised 15:13
appropriate 17:13
April 17:10
area 21:6
argue 23:18
arguing 16:5
argument 18:21
arguments 22:11
around 23:23
assigned 17:13
assume 17:11, 19
available 11:12, 14; 25:8

# B

back 1525:8
back 12:21; 14:8, 23;
15:2; 20:10; 22:4
bar 24:4
basically 17:17
become 13:16
becomes 4:22; 13:20
begin 18:12
bit 10:7
Bohanan 5:9
BONO 4:9
BONO 7:18; 8:3, 12, 24;
9:3; 14:14; 15:10; 16:18;
17:5, 19; 18:6, 10; 21:19;
24:20; 25:12
both 8:18; 9:1, 20; 13:2, 8;
23:15
boxes 22:16, 20, 22;
23:5, 7, 7, 11
brick 7:7
brief 14:4; 24:12
briefing 6:5
briefly 21:20
briefs 11:1; 20:10
bring 5:24; 12:21
bringing 15:4
bullet 6:19, 21
Bullets 6:19, 19
buy 14:24; 15:1; 19:9

# C

call 6:5, 18
called 8:17, 17
came 23:12
can 5:20; 6:16, 17, 21;
9:15; 13:12; 15:8, 19, 20;
16:2; 21:14; 23:14, 18;
25:8
caption 6:21
captioned 6:12
care 12:7; 16:7, 8
cares 7:13
carved 10:14
case 6:3; 22:12; 23:20;
24:9
cases 24:2
certain 4:23, 24
certainly 20:24; 23:14
CF 8:18
chance 8:5; 9:23; 10:1
Chicago 15:4
Circuit 20:24
cited 5:3
claims 4:5
clarification 8:13; 11:6;
17:4
clarifications 7:19
clarify 8:15; 18:6
clear 13:20; 22:3
clearly 19:10; 20:20
comment 7:16
commercial 4:7
completed 19:5
complexity 25:6
complied 5:6
compromise 14:16, 20
concern 19:1
concerned 9:5
concerning 4:18
concerns 11:4
conduct 9:21; 10:10
conducted 9:22
conjunction 5:4
consider 6:23; 21:10
considered 11:9
contained 22:22
contempt 4:24; 5:1; 9:12
context 13:5; 14:5; 16:10
counsel 14:21, 22
counsel's 14:17
COURT 14:17
COURT 6:17
COURT 7:22; 8:4, 22; 9:2,
4, 8; 10:4, 8; 11:17; 12:3,
6, 24; 13:11; 15:7, 15;
16:13, 21; 17:14, 22; 18:1,
14, 23; 22:14; 23:4, 8, 11;
24:18, 21, 24; 25:14
Court's 8:19
CPT's 5:15

Critical 6:12; 23:3
current 25:6

# D

D.C 11:19
dad 12:9
damage 10:15; 15:12
damaged 15:6
damages 4:2, 4; 6:8;
10:17; 25:3
damaging 15:2
date 6:14; 17:24; 18:2, 8,
9, 16; 20:6; 23:3
dates 16:22; 17:1, 5, 11,
13, 16; 18:1, 6, 9
day 12:10; 19:17
days 10:18; 17:17, 20;
18:19
deadline 17:8, 9, 10;
22:6, 9, 10, 12
deal 6:9; 21:14
decide 8:8; 10:6; 13:3
decision 7:9
decisions 10:23
declaration 5:8
defendant 6:16, 21
defendants 2321
defendants 4:5, 20; 5:4,
7, 13
defense 5:1; 12:15
defraud 24:7
Delaware 15:5
deliveries 12:11
denied 5:9
deny 22:13
denying 6:24
deposition 17:8, 10
depositions 18:12
detail 8:6; 16:24
detailed 6:17, 22; 7:4
differences 157:4
different 8:16
disassembled 14:24;
15:13
discernible 10:11
disclosures 19:21
discoverable 7:5
discovered 19:22; 20:16
discovery 4:1, 4, 11; 6:9,
12; 10:5, 17, 21; 13:13;
17:23; 19:17; 20:8, 11, 13;
21:7; 23:16, 17
discuss 15:11
discussed 14:22; 18:10,
10
discussion 11:20
dispute 4:17
disputes 10:5; 16:3; 25:3
document 20253
document 18:12; 19:17;
20:17

documents 1720:17
documents 5:8; 19:5, 13,
18, 24; 20:5, 20; 22:9, 20,
22, 23, 23; 23:7
done 13:22
dots 6:19
down 10:10; 23:22
driving 12:9
drove 12:8
Dudzac 20:13
due 6:6; 21:5; 23:19
during 14:1, 2, 3

# E

earlier 20:14
effect 22:11
either 6:24; 7:24; 12:6;
20:1
else 24:19, 21
embodiment 19:11;
20:22
end 14:3; 25:1
enforced 21:3, 4
engaged 10:22
enough 7:8
enter 6:23
entire 20:23
entitled 21:1
especially 22:3
essentially 232:5
essentially 16:10; 18:2
establishing 22:12
everybody 24:5
evidence 5:2, 21; 6:6;
14:3; 16:3; 20:21; 23:20
evidentiary 13:6, 18
example 11:10
exchange 10:19
exchanges 13:8
excluded 213:8
expedition 13:6
experienced 13:12
export 17:9, 10
exposition 8:11
extent 10:22

# F

fact 25:2
facts 6:6
fails 23:20
fair 16:2
faith 24:7
father 12:8
February 182:8
February 21:8
February 5:5; 18:2, 8, 9;
20:6, 18; 22:5, 5, 18, 19,
21
Federal 20:24

feeling 15:17
fewer 21:20
figure 11:21
figured 17:18
file 6:21; 7:19; 23:14
filed 723:14
final 7:9; 17:3
finally 20:3
fine 15:19; 16:11
first 1616:11
first 226:11
first 7:23; 15:11; 17:23;
19:4; 22:24
folks 10:11
formal 23:14; 24:14
forth 6:17; 14:23; 20:10;
23:15
forty-five 10:18
forward 21:12, 17
four 5:12; 12:11
fourth 22:1
frame 122:1
frame 14:1
frame 7:12
Friday 4:13; 6:7
front 21:22
full 13:5
fully 23:21
fun 15:9
further 6:24; 8:10; 23:16
future 21:5

**G**

GABLER 51:5
GABLER 9:6; 10:3, 24;
12:2, 4, 20; 13:10; 14:22;
16:12, 19; 17:24; 18:5, 20;
19:1; 22:4, 19; 23:6, 9;
24:16, 22
game 13:16
gamesmanship 10:8
given 7:6
giving 12:13
glass 5:11, 14; 8:14, 20;
11:8; 12:22
glasses 8:15
Good 3:15
Good 415
Good 55
good 8:3; 24:7
granted 4:11; 5:11, 13;
6:13; 8:13, 22; 9:4; 24:5
granting 6:24; 8:20
guy 13:18

**H**

happen 21:15
happens 24:1
happy 15:10

harsh 13:18
hear 9:8, 11; 16:13;
18:21, 24
heard 9:7; 12:23; 15:11;
21:12; 24:3
hearing 4:18, 22; 5:5, 20,
21; 6:2; 8:1, 9; 9:10, 11,
12, 22; 10:1; 12:18; 13:20;
15:17; 16:5, 9; 18:11; 20:5;
21:22; 24:9, 11
hearings 1511
hearings 10:10, 19;
20:14
held 5:21
helps 15:5
Honor 7:19, 21; 8:12, 13;
9:6; 11:1, 9; 14:15; 17:4;
18:5, 20; 19:2; 21:19, 20,
22; 22:3, 8, 13; 24:20, 23;
25:12
Honor's 12:23; 17:5;
21:9; 22:5
hopefully 25:1
hour-and-a-half 15:23
hours 4:23

**I**

illogical 12:14
immediately 8:9
important 15:20
inch-and-a-half 23:10
indicated 18:11; 19:10,
19
indication 22:24
indications 19:7
indulgence 12:23
information 6:8; 10:7;
15:14; 19:16; 20:2
infringement 10:21
initial 19:21
inspect 12:1; 14:13
inspection 11:8, 16;
12:16; 20:18
instance 9:23; 11:20
instances 11:10
instead 6:22; 18:11
instruments 19:19. 23;
23:1
intended 13:14
Interested 7:14; 21:1;
24:8, 9
interpose 6:4
intervention 13:15
into 24:6
invalid 21:2; 23:21, 23
invalidate 20:23
invalidity 5:3
involved 19:15
irrational 12:15
issue 4:8; 9:7; 12:22;
15:3; 18:22; 21:21; 23:19,
19; 25:6

issued 1725:6
issued 185:6
issued 4:15
issues 4:11; 6:13; 7:12;
10:11; 15:18; 16:7, 8;
18:13; 19:2
items 6:19; 7:3; 12:17

**J**

judge 10:13
judges 24:3
jumping 7:17

**K**

K 5:9
keep 9:21; 14:2
keeps 25:10
key 18:2, 8
kind 7:11; 9:15, 20; 10:14;
12:12; 16:9
kinds 23:23
Korean 22:22

**L**

language 6:20
largely 4:1
last 18:11; 19:17; 20:5;
21:22, 23
lawyers 11:21; 13:12;
14:9
LCD 5:15
lead 20:1
least 15:18; 20:17
letter 2320:17
letter 5:4, 5, 12; 11:1;
20:10; 21:23
letters 721:23
letters 6:4; 7:15; 13:8
letting 21:11. 16
life 15:21
light 17:7
limited 21:6; 24:13
listen 13:24
listening 13:7
litigation 21:3
little 10:7; 20:9
local 14:17; 24:12
location 19:22
logical 14:10
long 15:21
longer 17:11
look 67:11
looming 17:5
lot 247:5
lot 10:19; 13:21; 17:16;
24:1
LPL 11:12; 19:7, 16, 20;
22:24; 23:2

**M**

magistrate 10:12, 12
maintain 14:19; 21:14
making 12:19, 20
many 13:8; 20:20; 22:20,
20
March 4:13, 13, 19, 19;
5:18, 21; 6:7, 14, 16, 17;
17:9, 9, 15; 18:15, 19; 25:1
market 15:1
master 9:19, 22; 10:14,
18
matter 4:10; 8:11
matters 5:3
may 10:17; 15:16; 23:23;
25:7
mean 22:15; 23:18; 25:4
meantime 21:16
mechanism 9:17
middle 9:17
might 20:9
moment 15:14
money 13:22
month 18:19
more 7:2; 8:5, 10; 10:6;
13:2; 15:15, 16; 23:9; 25:7
morning 6:1; 18:21;
21:24
motion 21:13; 22:14;
23:15; 24:10, 15

**N**

nature 16:16
necessary 4:22; 6:3
need 8:18; 12:7; 16:24
new 17:12; 20:15
next 14:6
nineteen 5:15
noncompliance 6:6
None 18:9
nonjudicial 13:14
nonsense 9:24
notion 13:12

**O**

o'clock 4:20
objection 16:10
objections 6:18, 22;
7:20, 23; 8:1, 7
obviously 11:2
occur 5:18; 18:4
off 17:6
offer 11:8, 15
offered 20:17
office 11:19; 14:17

older 10:6
once 24:4
one 5:14; 7:10; 8:16, 17;
9:16, 16, 18; 10:13; 11:2,
5, 12, 13, 14, 14, 20;
12:16; 14:12; 17:3; 18:7;
19:9; 20:17
online 15:1; 19:9
only 11:2, 12; 12:16; 13:3;
14:11; 19:12; 22:7
open 15:1
operable 18:16
opportunity 138:16
opportunity 4:21; 5:1;
7:16, 20; 11:3; 12:13;
24:13
options 9:19
order 4:14, 14, 18; 5:2,
7; 6:15, 24; 11:18; 16:22;
17:1, 6; 22:15; 23:13; 25:9
ordered 6:13; 13:23
orders 13:24; 14:3, 6;
16:17
original 17:5
originally 17:8
others 7:6; 21:4
Otherwise 12:3, 6
ought 8:8, 9; 12:7, 8;
13:2, 3
out I33
out 7:17; 8:6; 10:14;
11:19, 22; 14:15; 16:14;
17:15, 20, 23; 18:3, 17;
19:14; 21:18; 25:3, 8, 10
over 7:6; 16:5; 20:16, 16

**P**

p.m 25:14
page 5:12
pages 15:21
paid 24:6
panel 20:15, 15, 15, 17,
21; 23:2, 2
panels 19:7
papers 7:8; 10:19
Part 14:23; 15:9
particularly 11:7
parties 19:14; 20:7
party 1720:7
patent 19:11; 20:23; 21:2,
2; 23:21, 22; 24:2, 5
pay 13:21, 23; 14:6
penalty 13:5
people 15:20; 24:7
period 4:4
permitted 23:16
place 7:10; 16:22; 22:16
plaintiff 4:12; 5:10, 20
plaintiff's 5:12; 6:11
plan 21:8
please 21:8
plus 18:7

point 11:1, 5; 17:21; 21:9.
13; 22:7
position 21:14; 22:5
possession 14:19
potentially 21:4
preferred 20:22
prehearing 6:5
present 5:2, 20
presentations 9:13
presented 7:15; 24:4
presenting 6:5
prevail 10:2
prior 19:24; 20:5; 23:3
prioritizing 21:1
process 7:10; 13:15;
16:15, 16; 18:3; 21:6;
23:19
produce 5:14; 9:12, 24;
11:12; 13:19; 14:16; 19:12
produced 5:19; 6:14;
11:18; 13:3, 4, 4, 21; 19:6,
8; 22:20
producing 20:20
product 5:16; 8:14, 16,
21
production 2021
production 5:18; 11:6, 9;
19:4; 22:6
productions 21:12, 17
products 5:15; 6:12
proportionately 17:15
proposed 6:5
prosecution 4:9, 23
provided 2023
provided 23:1
public 4:9
purposes 24:8
pursuant 4:15; 5:17
pursuing 20:12
purview 25:10
push 18:16
pushed 17:15, 20; 18:3
pushing 7:6
put 7:9; 9:9; 10:22; 16:21;
17:1; 24:14
putting 15:2

## Q

quash 22:15, 15; 23:13
quashed 1923:13
quashing 21:10, 15
quickly 815

## R

raised 18:7
rather 6:16; 21:2
rationale 14:9
reach 12:5; 25:5
read 2425:5

read 7:22; 13:7; 18:7
reading 23:13
realize 10:6
really 7:1; 12:21, 22;
16:4; 21:5
reason 19:23
reasonable 14:15, 18, 19
reasons 11:15; 23:24
rebut 11:3
received 20:19
receiving 19:24
recessed 25:14
reconsider 24:10
reconsideration 21:8,
13; 22:2
record 13:18
reduce 5:22
refer 16:23
referenced 20:13
regard 220:13
regard 4:1, 5; 5:7, 10;
11:7; 19:3
regarding 20:4
regards 21:6
relate 4:6
related 4:7, 8, 9; 5:8; 6:12
relevant 20:4
rely 13:12
remain 22:16; 23:14
remedies 1123:14
remember 24:3
report 17:9
request 5:8, 11; 6:11;
8:14; 9:24; 22:13
requested 5:12; 6:9;
8:23; 9:5
requests 199:5
requests 4:1, 10; 6:22;
8:7
reserved 16:9
resolution 18:15, 18;
25:5
resolved 7:11; 9:18;
18:13
resolving 7:14
respond 4:14; 6:16; 7:21
response 14:9
revealed 19:20
right 19:20
right 8:24; 9:2, 9; 13:13;
16:12; 21:11; 22:14; 24:18
risk 9:10; 10:23
risking 15:2
road 23:22
royalties 24:6
Rule 4:15; 5:2, 18
ruled 21:17, 20, 21, 23,
24
rules 7:21; 13:14; 24:12
ruling 17:7; 21:9, 23
rulings 1123
running 23:23

## S

sale 4:8; 19:7, 10; 20:5,
11, 12, 21; 24:4
same 7:11; 18:17
sample 15:6
samples 5:11, 14, 16;
11:7, 11; 12:21
sanctions 4:16
scheduling 17:6
seat 7:17
seated 1:17
second 10:13
seek 21:8
send 10:11
sense 12:19, 20
separated 6:9; 25:3
separately 6:10
serious 12:7
set 4:21; 6:17; 22:8
sets 16:22
setting 23:15
settled 10:20
Several 13:10; 19:2;
22:20
shall 5:18
Sharp 20:15
shipping 15:5
short 145:3
short 4:3
show 23:21
shows 14:4
side 8:17, 18; 9:16, 17;
11:2, 23; 15:18; 24:11
sided 11:2
sides 9:1, 20
silly 13:11; 16:5
simply 7:4; 22:11
sits 15:4
sold 23:3
solutions 15:16
somebody 13:19, 23
somehow 13:16
someone 12:14
sort 22:12
Specifically 5:13; 23:17
specified 9:1
spend 10:17
state 9:16
stay 4:3
stayed 11:19
stop 25:9
stopped 25:4
stress 5:22; 12:10
stressed 14:1
subpoena 174:1
subpoena 18:22; 19:14,
23; 21:12, 16
subpoenaed 20:1
subpoenas 20:4, 12;

21:11
success 4:7
successful 12:17
sudden 24:5
sufficient 19:13
supplier 19:20
supposed 14:5; 17:2
sure 12:10
system 14:8

## T

table 17:7
talk 7:2; 8:5; 12:13; 15:15
talking 10:16; 23:24;
25:5, 9
TCB 19:20
TCP 22:24
Technical 6:13
terms 11:6; 15:3; 20:3;
21:15
Texas 19:19, 23; 23:1
TFT 8:17
thinking 25:7
third 19:14
third-party 18:22; 20:4,
8; 22:6
thirty 10:18; 17:17, 20;
18:19
thought 13:15; 14:15, 20
three 17:4; 21:21; 22:16,
21; 23:5, 7, 11
three-layer 7:7
times 21:21
today 13:7
together 8:2; 15:2
told 11:24
took 18:18
towards 15:16
transactions 19:15
transcript 14:4; 16:23
travel 5:23
trial 9:23
trial 13:24; 14:1, 2, 6;
15:8; 16:1, 6
truck 12:8, 9
true 11:17
truly 9:18
try 13:18
try 14:14; 16:2; 19:14;
21:4; 25:5
trying 5:22; 7:1
turn 22:1
turn 20:16
turned 20:16
two 5:15; 7:18; 8:15; 9:18;
24:2

## U

ugly 10:2, 2

unclear 20:9
understood 23:5, 13
up 17:5
use 4:9; 6:20

## V

validating 21:1
validity 4:6; 10:21
various 20:4, 10
vehicle 9:14
versus 5:4
violating 14:2

## W

wait 14:3
wall 7:7, 8
Washington 11:19
way 7:10; 25:2
Wednesday 4:19
week 21:23
what's 15:22
whole 15:20; 17:16; 24:6
William 8:9
willing 18:21
withheld 5:16
within 11:10; 22:21, 23
witnesses 13:20
words 9:10; 10:5; 11:23;
16:16
work 816:16
work 136:16
work 8:5; 14:14; 15:16;
16:4, 14; 25:8
worked 17:23

# Exhibit 2

# McKenna Long
# & Aldridge LLP
#### Attorneys at Law

Atlanta

Denver

Los Angeles

Philadelphia

1900 K Street, NW • Washington, DC 20006
202.496.7500 • Fax: 202.496.7756
www.mckennalong.com

San Diego

San Francisco

Washington, DC

Brussels

CASS W. CHRISTENSON
(202) 496-7218

March 7, 2006

EMAIL ADDRESS
cchristenson@mckennalong.com

Via E-Mail

Christine A. Dudzik, Esq.
Howrey, LLP
321 North Clark Street, Suite 3400
Chicago, IL 60610

Re:     LG.Philips LCD Co., Ltd. v. Tatung Co., et al. (C.A. No. 05-292 JJF)

Dear Christine:

I write to confirm that LG.Philips LCD Co., Ltd. ("LPL") is taking steps to ensure compliance with the Court's instructions at the March 1, 2006 hearing. LPL already has produced many documents responsive to Defendants' discovery requests, including documents referenced in Defendants' February 28, 2006 letter to the Court. Nonetheless, we are working diligently to make sure that LPL produces any remaining documents addressed in Section II of the Defendants' February 28, 2006 letter, including:

## Documents Related to Defendants' Accused Products

1.     Documents related to Defendants' products accused of infringing the '121 Patent, including documents reflecting any competitive analyses or testing of Defendants' accused products.

## Documents Related to Research and Development Regarding the '121 and '002 Patents

2.     Technical documents describing the conception and reduction to practice of the '121 Patent, including documents generated after March 2000.

3.     Documents regarding the '121 Patent that describe how problems associated with brightness differences were corrected by the claimed invention, including any laboratory notebooks describing experiments related to the '121 patent and how the TCP reduces brightness difference of the LCD screen, or how a dummy bending part reduces a thermal expansion force and thermal contraction force generated when thermal pressing the output pad part on the LCD.

4.     Articles, papers, or publications related to the subject matter claimed in the '121 Patent that were authored by the named inventors or other LPL employees, including Korean Patent Application No. 2001-0065166.

Christine A. Dudzik, Esq.
March 7, 2006
Page 2

5.    Technical documents related to the '121 patented technology, including documents generated after December 27, 1999, and including documents that describe the enablement and operability of the claimed invention, or any documents generated by Texas Instruments, including formal specifications, drawings, or protocols of a TCP as claimed in the '121 Patent.

6.    Technical documents related to the conception and reduction to practice of the '002 Patent, including any related documents obtained from Honeywell when LPL acquired the rights to the '002 Patent.

7.    Documents related to the '002 Patent that were obtained from Scott Holmberg.

<u>Documents Related to the Prosecution and Validity of the '121 and '002 Patents</u>

8.    Documents related to the validity or enforceability of the '121 and '002 Patents, including documents beyond the publicly available prosecution history.

<u>Documents Describing LPL's First Sale or Other Public Disclosure of the Invention Claimed in the '121 Patent</u>

9.    Documents that demonstrate LPL's use of the TCP as claimed in the manufacturing of its LCD panels, or LPL's first public use, offer for sale, sale, printed publication, or other first public disclosure of a TCP as claimed in the '121 Patent.

After we have completed our review, we will confirm for you, with respect to each category above, whether LPL already has produced all responsive documents. If there are additional responsive documents as to any category above, we will also send to you, as soon as possible, those documents. If we discover any additional responsive documents that need to be logged, we will promptly provide you with an updated privilege log.

Very Truly Yours,

Cass W. Christenson

CWC:ea

cc:    Matthew W. King, Esq.
       Richard D. Kirk, Esq.

# Exhibit 3

Atlanta

Denver

Los Angeles

Philadelphia

# McKenna Long
# &Aldridge LLP
### Attorneys at Law

1900 K Street, NW • Washington, DC 20006
202.496.7500 • Fax: 202.496.7756
www.mckennalong.com

San Diego

San Francisco

Washington, DC

Brussels

CASS W. CHRISTENSON
(202) 496-7218

EMAIL ADDRESS
cchristenson@mckennalong.com

March 27, 2006

BY E-MAIL

Julie S. Gabler, Esq.
Howrey LLP
525 Market Street, #3600
San Francisco, CA 94105-2708

Christine A. Dudzik, Esq.
Howrey LLP
321 North Clark Street, #3400
Chicago, IL 60610

Re:    LG.Philips LCD Co., Ltd. v. Tatung Co., et al. (C.A. No. 05-292 JJF)

Dear Julie and Christine:

To facilitate our teleconference tomorrow, I write to provide information reflecting LPL's compliance with the March 1 hearing and rulings concerning document production. LPL has now fully supplemented its production and provided the responsive documents and things, specifically including the discovery granted by the Court at the March 1 hearing. LPL has complied fully with the Court's March 2 order.

In addition, LPL has created and produced detailed summaries that previously did not exist to provide information that you requested. We provided these summaries to maximize cooperation and full disclosure. Accordingly, we do not believe that there is any reason to conduct an evidentiary hearing next week concerning LPL's compliance.

I.    LPL HAS PROVIDED THE DISCOVERY ADDRESSED IN SECTION II OF DEFENDANTS' FEBRUARY 28 LETTER TO THE COURT

LPL has diligently addressed and responded to all of the discovery issues summarized in Defendants' February 28 letter to the Court (Section II) and restated in my March 7 letter to you.

Julie S. Gabler, Esq.
Christine A. Dudzik, Esq
March 27, 2006
Page 2

As reflected below, LPL has now responded fully to every discovery issue in Section II of your
February 28 letter. Below is a summary of LPL's compliance regarding these issues.

<u>Documents Related to Defendants' Accused Products</u>

1.    <u>Documents related to Defendants' products accused of infringing the '121 Patent,
including documents reflecting any competitive analyses or testing of Defendants' accused
products</u>.

      LPL has diligently searched for any additional responsive documents and determined that
any documents responsive to this request were produced by February 21. LPL's document
production for this category is therefore complete.

<u>Documents Related to Research and Development Regarding the '121 and '002 Patents</u>

2.    <u>Technical documents describing the conception and reduction to practice of the
'121 Patent, including documents generated after March 2000</u>.

      LPL has diligently searched for any additional responsive documents and determined that
any documents responsive to this request were produced by February 21. LPL's document
production for this category is therefore complete.

3.    <u>Documents regarding the '121 Patent that describe how problems associated with
brightness differences were corrected by the claimed invention, including any laboratory
notebooks describing experiments related to the '121 patent and how the TCP reduces brightness
difference of the LCD screen, or how a dummy bending part reduces a thermal expansion force
and thermal contraction force generated when thermal pressing the output pad part on the LCD</u>.

      LPL has diligently searched for any additional responsive documents and determined that
any documents responsive to this request were produced by February 21. LPL's document
production for this category is therefore complete.

4.    <u>Articles, papers, or publications related to the subject matter claimed in the '121
Patent that were authored by the named inventors or other LPL employees, including Korean
Patent Application No. 2001-0065166</u>.

      LPL has diligently searched for any additional responsive documents and determined that
any documents responsive to this request, other than documents concerning Korean Patent
Application No. 2001-0065166, were produced by February 21.

      As part of its recent supplemental production, LPL produced a copy of Korean Patent
Application No. 2001-0065166 and any related documents. *See* LPLII 102795-102833.
Accordingly, the responsive documents have been produced for this category and LPL's
production for this category is therefore complete.

Julie S. Gabler, Esq.
Christine A. Dudzik, Esq.
March 27, 2006
Page 3

    5.    Technical documents related to the '121 patented technology, including documents generated after December 27, 1999, and including documents that describe the enablement and operability of the claimed invention, or any documents generated by Texas Instruments, including formal specifications, drawings, or protocols of a TCP as claimed in the '121 Patent.

    LPL has diligently searched for any additional responsive documents and determined that any documents responsive to this request were produced by February 21. LPL's document production for this category is therefore complete.

    6.    Technical documents related to the conception and reduction to practice of the '002 Patent, including any related documents obtained from Honeywell when LPL acquired the rights to the '002 Patent.

    LPL has diligently searched for any additional responsive documents and determined that any documents responsive to this request were produced by February 21. LPL's document production for this category is therefore complete.

    7.    Documents related to the '002 Patent that were obtained from Scott Holmberg

    Any responsive documents obtained from Mr. Holmberg were produced by February 21. LPL's document production for this category is therefore complete.

**Documents Related to the Prosecution and Validity of the '121 and '002 Patents**

    8.    Documents related to the validity or enforceability of the '121 and '002 Patents, including documents beyond the publicly available prosecution history.

    LPL has diligently searched for any additional responsive documents and determined that any documents responsive to this request were produced by February 21. LPL's document production for this category is therefore complete.

**Documents Describing LPL's First Sale or Other Public Disclosure of the Invention Claimed in the '121 Patent**

    9    Documents that demonstrate LPL's use of the TCP as claimed in the manufacturing of its LCD panels, or LPL's first public use, offer for sale, sale, printed publication, or other first public disclosure of a TCP as claimed in the '121 Patent.

    LPL has diligently searched for any additional responsive documents and determined that any existing documents responsive to this request were produced by February 21. Further, after confirming that LPL had no additional existing documents responsive to this request, LPL created and produced several summaries and charts to provide additional information. Although these documents did not previously exist, LPL prepared these documents to provide information

Julie S. Gabler, Esq.
Christine A. Dudzik, Esq.
March 27, 2006
Page 4

sought by Defendants concerning tape carrier packages and LPL products. Specifically, LPL has provided the following summaries:

(1) a summary of worldwide shipment information, by product / model, for the period of December 1, 1999 to March 31, 2000 (*see* LPLII 102292-102327);

(2) a summary of U.S. shipment information, by product / model, for the period from December 1, 1999 to December 31, 2005 (*see* LPLII 102328-102753);

(3) a list of LPL products (by model) that reflect one or more claims of the '121 Patent, and the tape carrier packages (by part no. / supplier) used for such products (*see* LPLII 102754-102758);

(4) TCP drawings related to the various TCPs listed in the above summary (3) (*see* LPLII 102759-102784); and

(5) a summary of LPL's orders of TCP "Part 56" from Texas Instruments, including dates (*see* LPLII 102785-102786).

Therefore, LPL has provided the documents responsive to this category, as well as several summaries providing additional responsive information regarding this category, and LPL's production for this category is complete.

## II.    THE ADDITIONAL DISCOVERY REQUESTED IN YOUR MARCH 7 LETTER

In your March 7, 2006 letter, you raised several specific types of discovery that Defendants wanted from LPL. As stated in my March 9, 2006 letter, some of the requests in your March 7 letter raised new discovery issues, including requests for product and TCP samples. Although we objected to such new requests, in the spirit of cooperation, and without waiving our objections, we investigated the extent to which LPL has responsive documents and things for all of the categories listed in your March 7 letter. Each category is discussed below.

### Documents Relevant to Commercial Success

Your March 7 letter addresses "documents going to the commercial success issue." As indicated in my March 9 letter, LPL already has produced many documents responsive to this request, including sales summaries, profit information, financial statements, annual reports, articles, industry data, and DisplaySearch reports. Additionally, LPL produced many similar types of documents in the California case. LPL has diligently searched for any additional responsive documents and determined that any documents responsive to this request were produced by February 21. LPL's document production for this category is therefore complete.

### Sub-Categories of Documents and Things Included Within Category No. 9

Julie S. Gabler, Esq.
Christine A. Dudzik, Esq.
March 27, 2006
Page 5

Your March 7 letter requests that LPL produce "five sub-categories of documents and things" regarding "Category No. 9" above, corresponding to my March 7 letter. As stated below, LPL has investigated each of your requested "sub-categories" to resolve these issues.

1.   Documents evidencing LPL's first offer for sale, sale, public use, printed publications, and/or other first public disclosure in the U.S. of the LB121S1-A2 module and any other LPL modules using TCP model number TB5657486B (a.k.a. TMC57486BTB56) made by Texas Instruments, or any other TCP embodying any claim of the '121 Patent.

LPL has diligently searched for any additional responsive documents and determined that LPL has no additional documents to produce. As stated above, however, LPL has prepared and produced summaries with responsive information (e.g., which LPL products have which TCPs, and sales of such products since December 1, 1999). LPL's document production for this category is therefore complete.

2.   All correspondence between LPL and Texas Instruments concerning TCP model number TB5657486B (a.k.a. TMC57486BTB56).

LPL has diligently searched for any additional responsive documents and determined that LPL has no additional documents to produce. LPL's document production for this category is therefore complete.

3.   Two product samples of the LB121S1-A2 module and any other LPL modules incorporating Texas Instruments TCPs TB5557486B (a.k.a. TMC57486BTB55) and TB5657486B (a.k.a. TMC47486BTB56).

Without waiving our objections to this belated request, LPL has diligently searched for these samples and determined that the LB121S1-A2 was the only LPL module that used this Texas Instruments TCP and that LPL has no samples to produce. LPL's production for this category is therefore complete.

4.   All sales documents, including but not limited to transaction level documents such as invoices and shipping documents, evidencing pre-March 23, 2000 sales of LPL modules incorporating TCPs.

LPL has diligently searched for any additional responsive documents and determined that LPL has no additional documents to produce, including pre-March 23, 2000 invoices or shipping documents. As stated above, however, LPL has prepared and produced summaries with responsive information (e.g., which LPL products have which TCPs, and sales of such products since December 1, 1999). LPL's document production for this category is therefore complete.

Julie S. Gabler, Esq.
Christine A. Dudzik, Esq.
March 27, 2006
Page 6

    5.    <u>Product samples for all modules incorporating TCPs that were offered for sale,
sold, used publicly, disclosed in printed publications and/or otherwise first publicly disclosed
prior to March 23, 2000.</u>

Without waiving our objections to this belated request, LPL has diligently searched for
these samples and determined LPL has no such samples to produce. LPL's production for this
category is therefore complete.

LPL has complied fully with the Court's instructions at the March 1, 2006 hearing and the
Court's March 2, 2006 Order. LPL has diligently collected and produced all responsive
documents. In addition to producing these documents, LPL has provided additional information
by creating several summaries responsive to Defendants' discovery requests. As set forth above,
without waiving its objections, LPL in good faith responded to the requests in your March 7
letter, even where LPL disagrees with the propriety of those requests.

We look forward to discussing this with you further in our teleconference tomorrow.

Very truly yours,

Case W. Christenson

CWC:ea

cc:    Matthew King, Esq.
       Richard Kirk, Esq.

# Exhibit 4

03-07-06    09:49pm    From-HOWREY, LLP                                    T-148   P.002/004  F-507

# HOWREY.LLP

550 South Hope Street
Suite 1100
Los Angeles, CA 90071-2677
www.howrey.com

Julie S. Gabler
Partner
T 213.892.1852
F 213.892.2300
gablerj@howrey.com

March 7, 2006

**Via Facsimile**

Cass W. Christenson, Esq.
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C. 20006

     Re:    *LG. Philips LCD Co., Ltd. v. Tatung Company et al.*
              Civil Action No. 05-292 (JJF)

Dear Mr. Christenson:

     I write in response to your letter of today's date concerning the categories of documents LPL intended consider supplementing by March 17. Your letter is inconsistent with the Court's March 1 ruling is several respects. Further, to the extent your letter was intended to place any limits on or in any way alter the Court's order, CPT does not agree with your limitations and characterizations and does not waive its right to seek a contempt holding and sanctions against LPL.

     The Court clearly ordered LPL to produce documents relevant to commercial success by March 17 or risk severe sanctions at the contempt hearings. *See* March 1 hearing transcript at 4:3-16. Your letter does not address this category of documents. If LPL does not produce all previously withheld documents going to the commercial success issue, CPT will seek sanctions at the upcoming contempt proceedings.

     Second, we want to make clear what documents are included within category No. 9 in your letter. Category No. 9 should include at least the following five sub-categories of documents and things:

     (1)     Documents evidencing LPL's first offer for sale, sale, public use printed publications and/or other first public disclosure in the United States of the LB121S1-A2 module and any other LPL modules using TCP model number TB5657486B (a.k.a. TMC57486BTB56) made by Texas Instruments, or any other TCP embodying any claim of the '121 patent. CPT believes that the LPL modules that could be included within this request are at least the LB121S1, LB121S1-A2, LB121S1-A2(S), LB163H1-A1, LC064N1, LCA4VE02A, LCA4VE02A(S), LCB3SE11A(S), LM151X1, LM151X1-B2GW, LM151X1-D2MN, LM151X1-D2MN(S), LM151X2, LM151X2(S), LM151X3-A2, LM181E1, LM181E1-B2MN, LM181E1-B2MN(S), LM181E1-C2MN, LM181E1-C2MN(S), LM181E3, LM181E3-A2, LM181E3-A2(S), LM220W1-A2MN, LM220W1-A2MN(S), LP064V1, LP104S2, LP104S2(S),

**HOWREY**

LP104S2-B1AD, LP104S3, LP104V2, LP104V2(S), LP104V2-W, LP104V2-W(S), LP121S1, LP121S2, LP121S2-A2, LP121S3, LP121S3-A, LP121S3-A(S), LP121S4, LP121SA, LP121SA-A2QT, LP121SA-A2QT(S), LP121SB, LP121SL, LP121SP, LP121SP-B1PC, LP121SQ, LP121XQ, LP133X1, LP133X2, LP133X2(S), LP133X2-A, LP133X2-A(S), LP133X2-B, LP133X2-B(S), LP133X3, LP133X3(S), LP133X4, LP133X4(S), LP133X4-D1PC, LP133X4-D1PC(S), LP133X4-P1, LP133X4-P2, LP133X5, LP133X5-A2|B, LP133X6-A2|B(S), LP133X6, LP133X7, LP133X7-A2, LP133X7-A2(S), LP133X7-B2DL, LP133X7-B2DL(S), LP141X2, LP141X2(S), LP141X3, LP141X3(S), LP141X3-A, LP141X4, LP141X4(S), LP141X4-B1CQ, LP141X4-C1NC, LP141X5, LP141X5-A, LP141X5-B1NC, LP141X5-B1NC(S), LP141X6, LP141X6-A11B, LP141XA, LP141XA-A1, LP141XA-A1(S), LP150X1, LP150X1(S), LP157E1-A2TS and LP157E1-A2TS(S);

(2)    All correspondence between LPL and Texas Instruments concerning TCP model number TB5657486B (a.k.a. TMC57486BTB56);

(3)    Product two samples of the LB121S1-A2 module and any other LPL modules incorporating Texas Instruments TCPs TB5557486B (a.k.a. TMC57486BTB55) and TB5657486B (a.k.a. TMC57486BTB56) [i.e., two LB121S1-A2 modules that incorporate the Texas Instruments' TCP TB5657486B (a.k.a. TMC57486BTB56) and two LB121S1-A2 modules that incorporate the Texas Instruments' TCP TB5557486B (a.k.a. TMC57486BTB55) plus two samples of any additional LPL modules incorporating either of those above-identified Texas Instruments TCPs];

(4)    All sales documents, including but not limited to transaction level documents such as invoices and shipping documents, evidencing pre-March 23, 2000 sales of LPL modules incorporating TCPs, including but not limited to the LB121S1, LB121S1-A2, LB121S1-A2(S), LB163H1-A1, LC064N1, LCA4VE02A, LCA4VE02A(S), LCB3SE11A(S), LM151X1, LM151X1-B2GW, LM151X1-D2MN, LM151X1-D2MN(S), LM151X2, LM151X2(S), LM151X3-A2, LM181E1, LM181E1-B2MN, LM181E1-B2MN(S), LM181E1-C2MN, LM181E1-C2MN(S), LM181E3, LM181E3-A2, LM181E3-A2(S), LM220W1-A2MN, LM220W1-A2MN(S), LP064V1, LP104S2, LP104S2(S), LP104S2-B1AD, LP104S3, LP104V2, LP104V2(S), LP104V2-W, LP104V2-W(S), LP121S1, LP121S2, LP121S2-A2, LP121S3, LP121S3-A, LP121S3-A(S), LP121S4, LP121SA, LP121SA-A2QT, LP121SA-A2QT(S), LP121SB, LP121SL, LP121SP, LP121SP-B1PC, LP121SQ, LP121XQ, LP133X1, LP133X2, LP133X2(S), LP133X2-A, LP133X2-A(S), LP133X2-B, LP133X2-B(S), LP133X3, LP133X3(S), LP133X4, LP133X4(S), LP133X4-D1PC, LP133X4-D1PC(S), LP133X4-D1PC, LP133X4-P1, LP133X4-P2, LP133X5, LP133X5-A2|B, LP133X6-A2|B(S), LP133X6, LP133X7, LP133X7-A2, LP133X7-A2(S), LP133X7-B2DL, LP133X7-B2DL(S), LP141X2, LP141X2(S), LP141X3, LP141X3(S), LP141X3-A, LP141X4, LP141X4(S), LP141X4-B1CQ, LP141X4-C1NC, LP141X5, LP141X5-A, LP141X5-B1NC, LP141X5-B1NC(S), LP141X6, LP141X6-A11B, LP141XA, LP141XA-A1, LP141XA-A1(S), LP150X1, LP150X1(S), LP157E1-A2TS and LP157E1-A2TS(S); and

03-07-06   06:44pm   From-HOWREY, LLP                              T-149  P.004/004  F-507

# HOWREY.

Cass W. Christenson, Esq.
March 7, 2006
Page 3

    (5)    Product samples for all modules incorporating TCPs that were offered for sale, sold, used publicly, disclosed in printed publications and/or otherwise first publicly disclosed prior to March 23, 2000.

Very truly yours,

Julie S. Gabler

DM_US\8\3212239.v1

# Exhibit 5

Atlanta

Denver

Los Angeles

Philadelphia

# McKenna Long
# &Aldridge LLP
### Attorneys at Law

1900 K Street, NW • Washington, DC 20006
202.496.7500 • Fax: 202.496.7756
www.mckennalong.com

San Diego

San Francisco

Washington, DC

Brussels

CASS W. CHRISTENSON
(202) 496-7218

EMAIL ADDRESS
cchristenson@mckennalong.com

March 9, 2006

VIA E-MAIL AND FACSIMILE

Julie S. Gabler, Esq.
Howrey LLP
550 South Hope St., Suite 1100
Los Angeles, CA 90071

Re: <u>LG.Philips LCD Co., Ltd. v. Tatung Co., et al.</u> (C.A. No. 05-292 JJF)

Dear Julie:

I write to respond to your March 7, 2006 letter that we received yesterday regarding LPL's supplemental document production.

Preliminarily, we disagree that my March 7 letter confirming LPL's good faith compliance efforts is inconsistent with the Court's rulings in any way, as you suggest without explanation. The purpose of your letter appears to be to threaten "to seek a contempt holding and sanctions against LPL" regardless of LPL's compliance. My March 7 letter lists all (nine) types of documents that Defendants identified in Section II ("Technical and Patent Documents") of their February 28 letter as alleged areas of deficiencies in LPL's document production. Although we obviously dispute Defendants' assertions in their February 28 letter, we nonetheless intend to address all of the discovery that Defendants identified for supplementation.

In your March 7 letter, you purport to reserve the right to seek additional and unspecified documents. To the extent that Defendants believe additional documents should be produced, however, we can only understand and respond to the issues identified by you for consideration. Your letter identifies two areas of discovery, commercial success and on-sale bar discovery.

You threaten sanctions if LPL does not produce unspecified "documents going to the commercial success issue." Because "commercial success" was referenced in Section I ("Damages Related Documents") of Defendants' February 28 letter, I did not refer to this category in my prior letter. Nonetheless, LPL is agreeable to producing documents responsive to this category. LPL already has produced many such responsive documents in this case, including sales summaries, profit information, financial statements, annual reports, articles, industry data and Display Search reports. LPL also has produced many similar documents in the

Julie Gabler
March 9, 2006
Page 2

California case. Further, we will produce other available information on this issue by the March 17 deadline.

The other area addressed in your letter is category no. 9 in my March 7 letter, which relates to public use and on-sale bar issues. As stated in my letter, LPL will supplement its production on this issue to provide documents that Defendants requested in their February 28 letter to the Court. Defendants cannot, however, attempt to recast their discovery requests or make new discovery demands long after the deadline for doing so.

Your March 7 letter, however, unfairly attempts to do just that -- you expand the scope of discovery sought from LPL and introduce entirely new discovery issues. For the first time, for example, Defendants are requesting (in paragraphs (3) and (5) of your letter) multiple samples of numerous LPL modules, including modules sold before March 23, 2000 and incorporating any tape carrier packages. Defendants have never previously raised requests for samples in any document requests, letters, meet and confer discussions, or communications with the Court before or during any discovery hearings. Further, the Court made clear at the March 1 hearing that new requests for production are untimely and not proper. This last-minute demand for new discovery -- asserted only nine days before the supplemental production deadline -- appears calculated to prejudice LPL and manufacture disputed issues for the contempt hearing. It is unfair for Defendants to propound new requests for production in the form of paragraphs (3) and (5) of your March 7 letter.

With respect to paragraphs (1), (2), and (4) of your letter, we are continuing to investigate whether any additional discoverable information or documents are available.

Very truly yours,

Cass W. Christenson

cc:     Christine A. Dudzik, Esq.
        Matthew King, Esq.
        Richard D. Kirk, Esq.

# Exhibit 6

# HOWREY LLP

321 North Clark Street
Suite 3400
Chicago, IL 60610
www.howrey.com

Christine A. Dudzik
Partner
T 312 595 2254
F 312 595 2250
dudzikc@howrey.com
File 01450.0012 000000

March 29, 2006

Cass W. Christenson
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006

Re:    *L.G. Philips LCD Co., Ltd. v. Tatung Company et al.*
       **Civil Action No. 05-292 (JJF)**

Dear Cass:

This letter summarizes the major CPT points in our discussion yesterday during our meet and confer regarding LPL's document production and the areas CPT believes documents exist and should be produced.

    I.    Documents Relating to the Development of and First Sale of a LPL
           LCD Incorporating a TCP Falling Within the Scope of the '121 Patent

LPL has produced no documents which evidence when the TCP referred to as Part 56 incorporated into a LPL product was first sold. Nor has LPL produced any documents evidencing when LPL first sold additional LCDs incorporating other TCP's falling within the scope of the '121 patent prior to the critical date. LPL's production of a computer print-out summary of various pre-March 23, 2000 sales information does not fulfill LPL's obligation to produce the underlying documents and information.

We believe documents evidencing LPL's formal change over to TCP Part 56 and other similar TCPs exist at LPL as part of their manufacturing protocol and must be produced. Those documents include documents such as: TCP assembly specifications; TFT Gate and Source Driver Specs and Data Sheets; Material Specifications; Package and Label Information; Approval and Data Sheets for TFTs; TFT Driver Specs; TCP purchase specifications; and TFT/LCD Operational and Manufacturing Specs. At your request, we are providing examples of

# HOWREY.

Cass W. Christenson
March 29, 2006
Page 2

CPT documents showing TCP specifications and assembly information that fall within the category of documents requested by CPT. *See*, for example, CPT-D 2333-340; 23552-71; 23799-803; 23779-798; 23963-82 and 23851-902. These and other similar LPL documents should have been produced regarding the first production and sale of LP121S1-A2 incorporating TCP Part 56. CPT's request also includes documents and samples sufficient to determine the identity of the TCPs incorporated into all other LPL LCDs sold prior to the critical date identified at LPLII 102328-347. This would also include documents describing the TCP and the third-party supplier, including TCP specifications from those third parties.

### 2.    Documents Regarding LPL's Analysis of Defendants' Accused Products

LPL has produced no documents regarding CPT, ViewSonic, Tatung, or Tatung USA or the LCD accused products. Nor is there any indication of any such analysis listed in LPL's Privilege Log. You indicated that you would check to see if the Privilege Log needed supplementation.

### 3.    LPL's Data Base

It became apparent during our conversation that LPL has a data base containing information regarding the identity of the LPL LCD sales and part numbers, including the TCP used in each LCD. We asked that you inquire as to whether LPL will produce that data base to CPT or provide CPT access. This data base contains relevant information and should have been produced, particularly in view of LPL's claims that no "source" documents can be located regarding the first production and sale of a TCP falling within the scope of the '121 patent.

### 4.    Honeywell Documents

The only document evidencing LPL's purchase of the '002 patent is the assignment found in the prosecution history. LPL did not produce the original contract and terms of the agreement, internal correspondence regarding the purchase; press releases; and Honeywell communications regarding the negotiation and purchase of the '002 patent. You indicated you would ask LPL regarding these documents and get back to us.

### 5    LG. Philips America

It came to our attention that LPL has not produced, nor requested LG. Philips America to produce any relevant documents in this case, particularly documents regarding LPL's first sale of LP121S1-A2 incorporating TCP Part 56 and other LPL sales incorporating a TCP falling under the scope of the '121 patent before the critical date. Sales of LB121S1 to LG. Philips America were made as shown in the computer print-outs supplied by CPT. LG. Philips America falls under the definition of "LPL" and "affiliates" as defined in CPT's First Request for Interrogatories. LG. Philips America is a subsidiary of LPL as indicated in LPL's recent Form 6-

# HOWREY

Cass W. Christenson
March 29, 2006
Page 3

K. LG. Philips America sales of LPL's LP121S1-A2 to entities in the U.S. are highly relevant to the issues in this case.

Relevant documents from LG. Philips America and any other affiliate, subsidiary, division or other entity that controls or is under control of LPL should have been produced. We believe this request requires immediate supplementation by LPL, otherwise we intend to pursue this lack of compliance at the hearing next week.

Unless LPL can agree to supplement its production regarding the above categories, CPT requests that a LPL knowledgeable representative be present during the hearings next week to answer any questions the Court or CPT counsel may have regarding the adequacies of LPL's production and the existence of the requested documents.

We look forward to discussing the above on Thursday, March 30th at 3:00 p.m. EST during our meet and confer in an attempt to resolve our disputes with the goal of attempting to narrow the issues or eliminate the hearing altogether.

Very truly yours,

Christine A. Dudzik

CAD:keb

cc:    Glenn Rhodes
       Julie Gabler
       Richard Kirk
       Robert Whetzel

# Exhibit 7

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LG. PHILIPS LCD CO., LTD., | ) |
| | ) |
| Plaintiff, | ) C.A. No. 05-292 (JJF) |
| | ) |
| v. | ) |
| | ) |
| TATUNG COMPANY, | ) |
| TATUNG COMPANY OF AMERICA, INC., | ) |
| CHUNGHWA PICTURE TUBES, LTD., | ) |
| AND VIEWSONIC CORPORATION, | ) |
| | ) |
| Defendants. | ) |

## DEFENDANTS FIRST SET OF DOCUMENT REQUESTS (NOS. 1-64)

Defendants, Chunghwa Picture Tubes, Ltd., Tatung Company, Tatung Company of America Inc., and Viewsonic Corporation (collectively referred to herein as "Defendants") request that Plaintiff produce the documents and things described in the following requests which are within its possession, custody, or control. Defendants will examine the documents at the offices of its counsel, or where the documents are maintained by Plaintiff, or at any other mutually agreeable location where suitable examination and photocopying facilities exist or can be arranged. By accepting photocopies, Defendants are not waiving its right to examine originals where necessary.

Where Plaintiff withholds documents for reasons of attorney-client privilege, work-product immunity or the like, Defendants request that it be served with a list of such documents prepared in accordance with applicable case law, including at least the names and titles or functions of the authors; any recipients; the date; the basis for withholding; and a description of the document and its subject matter sufficient to allow Defendants to contest the claim. Defendants will accept confidential documents under a suitable protective order.

DM_US\8276927.v4

In cases where Plaintiff believes that there is no responsive document, or where it has been destroyed, Defendants ask Plaintiff to produce the best available documents from which the information sought by the request may be derived.

The following definitions are applicable to terms employed in these requests:

### DEFINITIONS AND INSTRUCTIONS

A.    "LGL" and/or "Plaintiff" shall mean LG. Philips LCD Co., Ltd.

B.    Plaintiff should refer to Defendants' First Set of Interrogatories to Plaintiff for the definition or meaning of terms used herein, which definitions and meanings are incorporated herein by reference.

C.    All document requests and corresponding definitions of terms are for purposes of discovery only, and not to be construed as limiting or reflecting Defendants' position in this case regarding claim construction or any other issue. Defendants specifically reserve the right to use different terms, or to assert different meanings, for all purposes in this case (including for example, with respect to claim construction, infringement analysis, and validity analysis).

D.    If Plaintiff believes that any Document Request contained in this set of Document Requests is unclear, unintelligible or because of its wording otherwise prohibits or prevents Plaintiff from responding to that Document Request, Defendants request that Plaintiff immediately request clarification of that Document Request from the Defendants.

E.    In producing documents described below, Plaintiff should furnish all documents within its possession, custody or control or that of any of your agents or representatives.

F.    In response to the following set of Document Requests, as to each document withheld in whole or in part from production on the basis of a claim of privilege or immunity, Defendant shall state the following outlined information. Defendant is requested to submit this information on the date and at the time of production of documents and things responsive to these Requests

1.  identification of the document being withheld, including separately each copy or draft;

2.  the nature of and basis for the privilege or immunity asserted;

3.  the kind of document (e.g., letter, memorandum, facsimile, etc.);

4.  the number of pages comprising the document;

5.  the present location and custodian of the document;

6.  the date it bears, if any, as well as the date it was prepared if different;

7.  the date the document was prepared;

8.  whether the document was sent, and if so, the date it was sent;

9.  the name, address, and title of its author, its addressee, each person to whom a copy has been sent or who received a copy, and each person known to have read the document; and

10. a description of the subject matter and/or contents of the document.

G.    These requests shall be deemed to be continuing and responses to these Document Requests are subject to supplementation in accordance with Fed. R. Civ. P. 26(e).

## DOCUMENT REQUESTS

### REQUEST NO. 1:

All documents and things relating or referring to or discussing the Defendants or Defendant's accused products.

### REQUEST NO. 2:

All documents and things relating to, referring to, supporting any allegation of, or discussing infringement or claims of infringement of the patents-in-suit, their foreign counterparts, or related family patent rights by any entity or individual.

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that on December 16, 2005 copies of the foregoing document were served via email and U.S. first class mail to the following:

Richard D. Kirk
The Bayard Firm
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899-5130
Facsimile: (302) 658-6395

Gaspare J. Bono
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C. 20006
Facsimile: (202) 496-7756

Christine A. Dudzik

DM_US\8276927 v4

# Exhibit 8