IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LG. PHILIPS LCD CO., LTD.,⁣ )
)
        Plaintiff, )   C. A. No. 05-292 (JJF)
)
    v. )
)
TATUNG COMPANY; )
TATUNG COMPANY OF AMERICA, INC.; )
CHUNGHWA PICTURE TUBES, LTD.; )
AND VIEWSONIC CORPORATION, )

        Defendants.

## DEFENDANTS FIRST SET OF INTERROGATORIES (NOS. 1-20)

Defendants, Chunghwa Picture Tubes, Ltd., Tatung Company, Tatung Company of America Inc., and Viewsonic Corporation (collectively referred to herein as "Defendants"), by counsel and pursuant to Federal Rule of Civil Procedure Rule 33, propounds these interrogatories to Plaintiff, LG Philips LCD Co., Ltd. ("Plaintiff" or "LPL"). Each interrogatory shall be answered separately and fully in writing, under oath, and the answers served upon the undersigned counsel within thirty (30) days of service hereof.

### DEFINITIONS

1.    "Defendants" refers to the Defendants in the above captioned lawsuit: Tatung Company, Tatung Company of America, Inc., Chunghwa Picture Tubes, Ltd., and Viewsonic Corporation.

2.    "Plaintiff" and/or "LPL" refers to the Plaintiff in the above captioned lawsuit, LG Philips LCD Co. Ltd., and its affiliates.

3.    "The '121 Patent" means United States Patent No. 6,738,121, entitled "Tape carrier package with dummy bending part and liquid crystal display employing the same," attached as Exhibit A to the Plaintiff's Complaint in Civil Action No. 05-292 (JJF).

4.     "The '002 Patent" means United States Patent No. 5,019,002, entitled "Method of manufacturing flat panel backplanes including electrostatic discharge prevention and displays made thereby," attached as Exhibit B to the Plaintiff's Complaint in Civil Action No. 05-292 (JJF).

5.     "Patents-in-Suit" refers either individually or collectively to United States Patent No. 6,738,121 and United States Patent No. 5,019,002.

6.     "Affiliate(s)" means any corporation or other entity that controls, is controlled by or is under common control with the identified corporation or entity, including without limitation partnerships, parents, subsidiaries and divisions.

7.     "Any" means each and every.

8.     The connectives "and," "or," and "and/or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these interrogatories (or, if applicable, document requests) all information that might otherwise be construed to be outside of their scope.

9.     "Communication" means, without limitation, every manner or means of statement, utterance, notation, disclaimer, transfer or exchange of information between two or more persons of any nature whatsoever, by or to whomever, whether oral or written or whether face-to-face, by telephone, email, mail, personal delivery or otherwise, including but not limited to, e-mails, letters, correspondence, conversations, memoranda, dialogue, discussions, meetings, interviews, consultations, agreements and other understandings.

10.     "Concern" and "concerning" are used in their broadcast sense and embrace all matter relating to, referring to, describing, discussing, evidencing or constituting the referenced subject.

11.     "Discuss," "discussing," "relate to," "relating to," "support," or "supporting" means in any way directly or indirectly, in whole or in part, discussing, referring to, regarding, constituting, concerning, about, pertaining to, relating to, reflecting, considering, underlying, modifying, amending, confirming, mentioning, endorsing, evidencing, summarizing,

2

memorializing, describing, discussing, analyzing, evaluating, representing, supporting, qualifying, terminating, revoking, canceling, or negating.

12.    "Document" means all types of documents and things embraced within Federal Rule of Civil Procedure 34 and includes, without limitation, any writing and each original, or a copy in the absence of the original, and every copy bearing notes or markings not present on the original or copy, of the following items, however produced or reproduced, namely: books, accounting records of any nature whatsoever, agreements, communications, correspondence, facsimiles, telegrams, emails, cable, telexes, memoranda, recordings, studies, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, diaries, letters, forecasts, statistical statements, graphs, laboratory or engineering reports and records, notebooks, charts, plans, sketches, drawings, video tapes, films, slides, information bearing photographic products of any nature whatsoever, photo-records, microfilms, tape recordings, minutes or records of meetings or conferences, expressions or statements of policy, lists of persons attending meetings or conferences, reports or summaries of interviews, reports or summaries of investigations, opinions or reports of consultants, patent studies, or opinions of counsel, records, reports or summaries of negotiations, sales literature of any nature whatsoever, brochures, catalogues, catalogue sheets, pamphlets, periodicals, advertisements, circulars or trade letters, press releases, trade releases, publicity releases, new product releases, reprints, drafts of any documents, working papers, indices, original or preliminary notes, computer printouts, floppy disks, hard drives, CD-ROMs, magnetic tapes and other data compilations from which information can be obtained or translated, if necessary by the Defendant through detection devices into reasonably usable form. The term document also refers to any tangible object other than a document as described above, and includes objects of every kind of nature such as, but not limited to, prototypes, models, and specimens.

13.    "Identify" used in respect to a company or corporate entity means to set forth:

A.    the full name of the company;

3

  B. the full name of the division or office involved, if applicable; and

  C. the address of the company and of the division or office involved, if applicable.

14. "Identify" used in respect to a document or thing means:

  A. to provide a brief description of such document or thing, including date, author, recipients, type, and content or substance;

  B. to identify the custodian of the document or thing;

  C. to identify the place where the document or thing may be inspected; and

  D. if a copy of the document has been supplied to Defendants, so state and specifically identify the copy supplied by reference to production numbers or other identifying information.

15. "Identify" used with respect to a natural person means to state:

  A. the full name;

  B. the present or last known business and residence addresses;

  C. the last known employer or job affiliation; and

  D. the last known occupation and business position or title held.

16. "Import" or "importation" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

17. "Make" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

18. "Offer to sell" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

19. "Person" means any natural person, firm, association, partnership, corporation, or other form of legal entity.

4

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that on December 16, 2005 copies of the

foregoing document were served via email and U.S. first class mail to the following:

Richard D. Kirk
The Bayard Firm
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899-5130
Facsimile: (302) 658-6395

Gaspare J. Bono
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C. 20006
Facsimile: (202) 496-7756

Christine A. Dudzik

# Exhibit 9

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LG.PHILIPS LCD CO., LTD.,

Plaintiff,

v.

TATUNG COMPANY;
TATUNG COMPANY OF AMERICA, INC.;
CHUNGHWA PICTURE TUBES, LTD.;
AND VIEWSONIC CORPORATION,

Defendants.

Civil Action No. 05-292 (JJF)

## PLAINTIFF LG.PHILIPS LCD CO., LTD'S OBJECTIONS AND RESPONSES TO DEFENDANTS' FIRST SET OF DOCUMENT REQUESTS

Plaintiff LG.Philips LCD Co., Ltd. ("LPL"), by counsel and pursuant to Fed. R.

Civ. P. 34, responds as follows to Defendants Tatung Company ("Tatung"), Tatung

Company of America, Inc. ("Tatung America"), Chunghwa Picture Tubes, Ltd. ("CPT"),

and ViewSonic Corporation ("ViewSonic") (collectively referred to herein as

"Defendants") First Set of Document Requests.

### PRELIMINARY STATEMENT

1.      LPL makes the objections and responses herein (collectively "Responses")

based solely on its current knowledge, understanding, and belief as to the facts and the

information available to it as of the date of the Responses. Additional discovery and

investigation may lead to additions to, changes in, or modifications of these Responses.

LPL reserves the right to produce subsequently discovered information and to introduce

such subsequently discovered information at the time of any hearing or trial in this action.

614568v1

2.    By agreeing to produce any relevant and non-privileged categories of documents or things in its possession, custody, or control, LPL represents not that any such documents or things actually exist, but that it will make a diligent search and reasonable inquiry to ascertain whether such documents exist and are producible.

3.    By producing documents or things responsive to a Request, LPL does not admit to their authenticity, relevance, or admissibility at trial or any other proceedings in this case. LPL provides such documents without prejudice to its right to object to the introduction of such documents at trial or any other proceeding in this case.

4.    LPL does not waive any objection made in these Responses, nor any claim of privilege, whether expressly asserted or not, by providing any information or identifying any document or thing in response to the Requests. Any inadvertent disclosure of information or inadvertent identification or production of any document shall not constitute waiver of any applicable privilege as to the document identified or produced by LPL.

5.    Any documents made available for inspection and copying in connection with these Responses will be produced at a mutually agreeable time and place or, if no such agreement can be reached, at McKenna Long & Aldridge LLP, 1900 K Street, NW, Washington, DC 20006. Unless otherwise agreed, LPL objects to providing copies of any such documents without prior arrangements being made to reimburse LPL for any copying expenses that may be incurred.

6.    LPL incorporates by reference the following General Objections within each of the individual Objections and Responses to these Requests. All Responses to the Requests are made subject to each and without waiving any of such objections. LPL's

61456lv1

2

specific Objections for any Request are not intended to preclude, override, or withdraw any of the General Objections to that Request.

## GENERAL OBJECTIONS

These general objections apply to each Request and thus, for convenience, are not repeated after each Request, but rather are set forth herein and are hereby incorporated into each response. By responding to any particular Request with the phrase "Subject to and without waiving these objections," we are incorporating by reference not only the specific objections but also these general objections.

1.    LPL objects to each Request to the extent it seeks documents subject to the attorney-client privilege, work product doctrine, and other applicable privileges or immunities from discovery. LPL does not by these responses waive any claim of privilege or work product.

2.    LPL objects to each Request to the extent it seeks discovery of documents containing trade secrets or other confidential research, development or commercial information and will only produce such documents in accordance with an appropriate Protective Order entered in this action. However, to the extent that any Request calls for the production of confidential documents of third parties that are in Plaintiff's possession, Plaintiff shall attempt to obtain the consent of such third party prior to production. If Plaintiff cannot obtain such consent, Plaintiff will not produce the documents.

3.    LPL objects to these Requests to the extent that they request documents that are: a) not in the Plaintiff's possession; b) already in Defendants' possession; c) in

the public domain; or d) more easily obtainable from other sources by the exercise of ordinary due diligence as required by any applicable rule, as unduly burdensome, oppressive, and designed to harass.

4.    LPL objects to these Requests as unduly burdensome, oppressive, and designed to harass to the extent that they request documents in the possession of others, as such documents are beyond the scope of LPL's "custody and control."

5.    LPL objects to these Requests to the extent that they request documents not related specifically to the patents-in-suit, not relevant to the claims and defenses in this case, and/or not reasonably calculated to lead to the discovery of admissible evidence.

6.    LPL objects to these Requests to the extent that they lack any appropriate limitation as to time frame and/or geographic scope, making such Requests overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

7.    LPL objects to these Requests to the extent that they request documents other than those that are in its possession, custody or control as such Requests are beyond the requirements of the Federal Rules of Civil Procedure.

8.    LPL objects to Defendants' "Definitions and Instructions" to the extent that they purport to impose obligations not required under the Federal Rules of Civil Procedure.

9.    LPL objects to the Defendants' "Definitions and Instructions" to the extent of conflicting definitions. LPL will respond using the definitions in paragraph A

of the Definitions and Instructions in Defendants' First Set of Document Requests, subject to LPL's objections regarding same.

10. LPL objects to instruction E as vague and ambiguous, including, for example, with respect to the term "any of your agents or representatives."

11. LPL objects to instructions C-F to the extent that they impose unreasonable burdens not required by the Federal Rules of Civil Procedure. LPL will respond to these Requests pursuant to applicable Rules of the Federal Rules of Civil Procedure.

## DOCUMENT REQUESTS

### REQUEST NO. 1:

All documents and things relating or referring to or discussing the Defendants or Defendant's accused products.

### OBJECTIONS AND RESPONSE

LPL objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPL objects to this Request as unduly burdensome to the extent it seeks the production of documents already in the public domain or in possession of the Defendants. LPL further objects to this Request because it is overly broad and unduly burdensome, including, for example, because the Request lacks any limitation in scope, context, or time frame. Subject to and without waiving these objections, LPL will produce non-privileged, relevant documents that are responsive to the Request, to the extent such documents exist.

documents that "relate to any opinion expressed by William K. Bohannon." Subject to and without waiving these objections, LPL will produce non-privileged, relevant documents that are responsive to the Request, to the extent such documents exist.

### REQUEST NO. 64:

All documents and things referred to, relied upon, confirm or refute Plaintiff's answers to Defendant's First Set of Interrogatories served herewith.

### OBJECTIONS AND RESPONSE

LPL objects to this Request to the extent it seeks documents subject to the attorney-client privilege and work product doctrine. LPL also objects to this Request as overly broad, vague and ambiguous in seeking unspecified documents for all Interrogatory answers. Subject to and without waiving these objections, LPL will produce non-privileged, relevant documents that are responsive to the Request, to the extent such documents exist.

January 17, 2006

THE BAYARD FIRM

Richard D. Kirk (#922)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899-2306
(302) 655-5000
Attorneys For Plaintiff
LG.PHILIPS LCD CO., LTD.

614358v1

47

OF COUNSEL:
Gaspare J. Bono
Matthew T. Bailey
Cass W. Christenson
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
(202) 496-7500

# Exhibit 10

# HOWREY LLP

550 South Hope Street
Suite 1100
Los Angeles, CA 90071-2627
www.howrey.com

Julie S. Gabler
Partner
T 213.892.1852
F 213.892.2300
gablerj@howrey.com

March 15, 2006

**Via Facsimile**

Cass W. Christenson, Esq.
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C. 20006

> Re:    *LG. Philips LCD Co., Ltd. v. Tatung Company et al.*
>        Civil Action No. 05-292 (JJF)

Dear Mr. Christenson:

I write to respond to your letter of March 13 to Christine Dudzik. This letter is the latest round of your unnecessary and harassing communications concerning CPT's production of documents and things. Unlike LPL, CPT already has made substantial progress toward complying with the Court's March 1 Order by producing both the mother glass samples and most of the module samples ordered produced. Further, CPT was not ordered to produce any additional documents – rather, we were ordered to *either* supplement our production *or* file detailed objections. We do not need to be reminded yet again of the March 17 deadline. We believe LPL could be (and should be) making better use of its time by focusing on curing its own deficiencies rather than sending CPT one or more letters each business day concerning a produce-or-object deadline that has not yet arrived.

I will respond to the balance of your letter by section.

### I.    Product Samples

Since the Court's March 1 Order, CPT has moved forward with its supplementation of its production of sample modules. On March 3, the Monday after the Court's order, CPT produced 12 of the 14 samples it was ordered to produce. The two remaining samples, the CLAA150XE01 and CLAA150XG06, are still in transit between CPT and Howrey. We expect to timely produce them to your Washington, D.C. office by March 17. Since March 1, we have never suggested that we were not going to produce these samples.

We were surprised by your statements that, in essence, characterized our March 6 production of additional module samples beyond those LPL chose to include in its February 28 letter (and thus that were subject to the Court's March 1 Order) as some sign of CPT's bad faith. To the contrary, CPT's production of additional module samples it was intending to produce all along, even though they are beyond those subject to the March 1 Order, is a sign of nothing but CPT's good faith. CPT has continued to collect and produce module samples. In fact, CPT

DM_US\8324182.v1

# HOWREY.

Cass W. Christenson, Esq.
March 15, 2006
Page 2

intends to produce several other sample modules by March 17 in addition to the two above-identified modules ordered by the Court. This production will complete CPT's production of available sample modules. CPT is not withholding samples of any modules, whether ordered produced or not, that are currently in CPT's possession, custody or control.

Your statements about "gaps" in CPT's production of module samples are not well taken. CPT gave extensive deposition testimony in the California action concerning how and when module numbers are assigned to products during R&D, products that have gone end-of-life and other facts relevant to why certain modules that advanced far enough through R&D to be assigned a CLAA number were either never sold or were sold, but have gone end-of-life and CPT has no samples in its inventory. Thus, the alleged "gaps" in CPT's production of samples are not gaps.

Additionally, the mother glass samples are being produced as C/F side and TFT side separately, so there are two mother glass samples per module. Yesterday I notified Mr. Bono that 51 mother glass samples were ready to be picked-up from CPT's factories. These samples are for 26 products currently being manufactured by CPT. CPT has produced samples of 34 modules, some of which are no longer being manufactured and thus CPT does not have mother glass samples available for those modules.

## II.    Product Information

Contrary to your representations, the Court did not order production of the documents you listed in this section of your letter. The Court clearly stated that many of the documents LPL sought seemed to be "pushing against the wall, and it's a three-layer brick wall...." March 1 Hearing Transcript at 6:15-7:12. For this reason, the Court expressly allowed CPT to file objections by March 17 in lieu of producing further documents. CPT intends to timely file objections to these categories of documents by March 17. As we've told you several times in the past, documents (i) and (ii) do not exist. If they were created now, they would be work product. In relation to category (iii), we have produced many documents in this category and will, in conjunction with our detailed objections, identify the bates ranges of many of those documents. We also believe that there are documents LPL seeks in this category that do not exist and/or are not in CPT's possession, custody or control and, as such, are not properly sought from CPT.

## III.    Technical Discovery

Again, contrary to your representations, the Court did not order production of the documents you listed in this section of your letter. CPT has been evaluating its previous production and identifying any holes it believes should be filled. However, CPT will continue to reinforce that it already has produced hundred if not thousands of pages of documents (hard copy and electronic) responsive to these categories.

03-15-06   09:24   From-HOWREY, LLP                    213B9223D1        T-120  P.004/004  F-802



Cass W. Christenson, Esq.
March 15, 2006
Page 3

In regard to the mask files, although LPL repeatedly has claimed that CPT has not produced all of the mask files, LPL has never identified any mask files that it believes have been withheld. If you have a list of mask files you believe have not been produced, please provide that list immediately. However, as with the categories of documents identified in Section II above, CPT may decide to file detailed objections in lieu of or in conjunction with any supplementation provided by March 17. Additionally, we note that your March 13 letter appears to try to expand the scope of the Court's March 1 Order. Such an expansion is not appropriate. As previously stated, CPT will produce additional documents and/or file objections to the eleven categories of documents identified in bullet points in LPL's February 28 letter by the Court Ordered deadline.

Very truly yours,

Julie S. Gabler

DM_US\8324182 v1

# Exhibit 11

# HOWREY LLP

550 South Hope Street
Suite 1100
Los Angeles, CA 90071-2627
www.howrey.com

Julie S. Gabler
Partner
T 213.892.1852
F 213.892.2300
gablerj@howrey.com

March 7, 2006

**Via Facsimile**

Gaspare J. Bono, Esq.
Cass W. Christenson, Esq.
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C. 20006

     Re:    *LG. Philips LCD Co., Ltd. v. Tatung Company et al.*
           *Civil Action No. 05-292 (JJF)*

Dear Messrs. Bono and Christenson:

     I write to continue our meet and confer on the mother glass issue. As we have indicated in the past, we do not believe that samples of the mother glass provide LPL's counsel with any information not already available through the inspection of the mask files, product specifications, array specifications, operational specifications and other technical documents previously provided, as well as deposition testimony provided in the California action. Additionally, as we've previously indicated, mother glass is large (many are the size of a double bed), fragile and expensive – not an ideal combination for international shipping. Although CPT receives shipments of the C/F mother glass from a vendor in Taiwan, CPT itself does not ship C/F mother glass and does not have access to a sufficient number of containers to ship the requested samples to LPL. Further, CPT neither ships nor receives shipments of TFT mother glass.

     Given all of the above (as well as our previous correspondence on this issue), we continue to believe that LPL's request is overly broad and unduly burdensome. That said, in the interest of compromise and in keeping with the Court's request that the parties make every reasonable effort to reach agreement on the outstanding discovery disputes, we have continued to explore reasonable options for making samples of the C/F and TFT sides of the various mother glasses currently used by CPT available to counsel for LPL. To this end, we will offer for inspection in Taiwan samples of both the C/F and TFT mother glass for each of CPT's products currently in mass production (the only products for which CPT has mother glass samples available). We anticipate be able to make between twenty and thirty samples available for inspection. March 16 and 17 (Taiwan time) are convenient dates for CPT to host the inspection.

I-147   P.003/003   F-506

# HOWREY.

Gaspare J. Bono, Esq.
Cass W. Christenson, Esq.
March 7, 2006
Page 2

Please let us know if these dates work for you. If they do not, please suggest alternative dates. Also, please provide a list of LPL's proposed attendees at the inspection.

Very truly yours,

Julie S. Gabler

# Exhibit 12

# HOWREY LLP

550 South Hope Street
Suite 1100
Los Angeles, CA 90071-2627
www.howrey.com

Julie S. Gabler
Partner
T 213.892.1852
F 213.892.2300
gablerj@howrey.com

March 8, 2006

**Via Facsimile**

Cass W. Christenson, Esq.
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C. 20006

Re:     *LG. Philips LCD Co., Ltd. v. Tatung Company et al.*
        Civil Action No. 05-292 (JJF)

Dear Mr. Christenson:

Contrary to the assertions in your March 8 letter, CPT has not "refus[ed] to produce mother glass samples." To the contrary, CPT has offered the mother glass samples for inspection pursuant to Federal Rule of Civil Procedure 34. Inspection at CPT's manufacturing facilities in Taiwan is the only reasonable and practicable way to accommodate LPL's overly broad and unduly burdensome request. As we have repeatedly informed LPL, mother glass is very large – often the size of a double bed – and extremely fragile. In the regular course of business, CPT does not ship mother glass to anyone. In fact, CPT has never shipped mother glass to anyone. In the California action, LPL arranged for shipping one sample mother glass to the U.S. and we understand that LPL's shipping attempt was unsuccessful and the mother glass arrived broken.

Again, contrary to the assertions in your March 8 letter, the Court did not order production of mother glass or module samples at McKenna's Washington, D.C. office. Instead, Judge Farnan expressly stated that he "was going to order all produced at the Washington, D.C. office, but I stayed out of that in the one instance where that was a discussion because I can't believe the lawyers can't figure that out themselves." March 1 Hearing Transcript, at 11:17-22. Judge Farnan then went on to say in the context of CPT's module inspection offer, "if someone is illogical or irrational and that's your defense that they wouldn't accept inspection and there is only one of the items, you're going to be successful at the hearing." *Id.*, at 12:14-18. We believe that LPL's demand that CPT ship – for the very first time – twenty to thirty mother glass samples to the United States, many of which are the size of double beds, is just as "illogical or irrational" as LPL's previous demand that CPT give up its only sample of a particular module rather than share it with LPL by offering it for inspection.

DM_US\8321867.v1

03-08-06   17:39   From-HOWREY, LLP                    2198922301         T-088  P.003/003  F-768

# HOWREY

Cass W. Christenson, Esq.
March 8, 2006
Page 2

LPL's unproductive, blatant mischaracterizations aside, CPT's offer remains open. We look forward to scheduling a mutually convenient time for the inspection of the mother glass samples at CPT's facilities in Taiwan. If the dates suggested by CPT do not work for you, please propose alternative dates.

Very truly yours,

Julie S. Gabler

# Exhibit 13

# HOWREY LLP

550 South Hope Street
Suite 1100
Los Angeles, CA 90071-2627
www.howrey.com

Julie S. Gabler
Partner
T 213.892.1852
F 213.892.2300
gablerj@howrey.com

March 9, 2006

Via Facsimile

Cass W. Christenson, Esq.
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C. 20006

Re:    *LG. Phillps LCD Co., Ltd. v. Tatung Company et al.*
       Civil Action No. 05-292 (JJF)

Dear Mr. Christenson:

I write in response to your letter of today's date concerning CPT's offer of inspection of the mother glass samples and LPL's rejection of that offer. I also write to correct your latest round of misstatements and mischaracterizations.

First, Long River is not a shipping company. Long River is a patent, trademark and law office that LPL uses for patent applications in Taiwan. (*See* http://www.longriver.com.tw/en/). Long River does not represent CPT. When CPT produced a limited number of much smaller mother glass samples in the California case, LPL arranged for Long River to pick-up the samples at each of CPT's factories (in Taoyuan and Lungtan, Taiwan) and then arranged for those samples to be shipped to the United States. LPL paid for the samples and paid for the shipping. If LPL prefers this approach in lieu of the proffered inspection, then CPT is agreeable to this arrangement in the Delaware case. CPT will package the samples in Taoyuan and Lungtan and Long River can pick them up and ship them to your Washington, D.C. office. The samples will be available for pick-up on Tuesday morning, March 14 (Taiwan time). There will be approximately 80 samples to pick-up (in my previous correspondence I mistakenly understated the number of samples).

This arrangement is consistent with the statements we have made to you all along: namely, that CPT does not have any experience shipping mother glass. Receiving C/F mother glass is not the same as shipping C/F and TFT mother glass.

Second, LPL's contention that CPT's offer for inspection is not sufficient because LPL intends to conduct testing on mother glass samples and transport mother glass samples from Washington, D.C. to Los Angeles for depositions of CPT's witnesses and to Delaware for use at trial is disingenuous and misleading. Putting aside the impracticality of many of the representations you are making as us to proposed uses of the mother glass samples, prior to today, LPL had never told CPT that it intended to conduct testing on the samples and/or use the samples at trial or in deposition. As such, it is disingenuous to suggest, as you do in your letter, that CPT

DM_US\7322504.v1

' 03-09-06    08:19pm    From-HOWREY, LLP                              T-154    P.009/008    F-515

# HOWREY.

Cass W. Christenson, Esq.
March 9, 2006
Page 2

made an offer for inspection knowing that such an offer would defeat the purposes for which LPL sought the discovery.

CPT reiterates that it already has produced mask files, module samples and hundreds if not thousands of pages of technical specification documents, including operational specifications, all of which show, in detail, the structure CPT's products. CPT's employees already have been examined at length in depositions on CPT's manufacturing processes, the mask files and the technical specifications (Mr. He alone was deposed for four full 7 hour days), and LPL will have an opportunity to depose CPT witnesses again in this case. This information provides sufficient basis for LPL to evaluate CPT's products and should preclude the award of most of the sanctions that, according to your March 9 letter, you intend to seek.

We trust that this compromise will resolve the issue and we will instruct our client to expect Long River to pick-up the mother glass samples on or after Tuesday morning, March 14 (Taiwan time).

Very truly yours,

Julie S. Gabler

DM US\3Z2504 v1

# HOWREY

550 SOUTH HOPE STREET
SUITE 1100
LOS ANGELES, CA 90071-2627
PHONE: 213.892.1800 • FAX: 213.892.2300

### FACSIMILE COVER SHEET

| | | | | |
|---|---|---|---|---|
| *DATE:* | March 9, 2006 | | | |
| *TO:* | *NAME:* | Cass W. Christenson, Esq. | | |
| | *COMPANY:* | McKenna Long & Aldridge LLP | | |
| | *FAX NUMBER* | (202) 496-7756 | *PHONE NUMBER:* | (202) 496-7211 |
| | *CITY:* | Washington, D.C. | | |
| *FROM:* | *NAME:* | Julie S. Gabler, Esq. | | |
| | *DIRECT DIAL NUMBER:* | (213) 892-1852 | *USER ID:* | 5322 |
| | *NUMBER OF PAGES, INCLUDING COVER:* | 3 | *CHARGE NUMBER:* | 01450.0012.000000 |

☐ *ORIGINAL WILL FOLLOW VIA:*

☐ *REGULAR MAIL*    ☐ *OVERNIGHT DELIVERY*    ☐ *HAND DELIVERY*    ☐ *OTHER:* _____

☐ *ORIGINAL WILL NOT FOLLOW*

*SUPPLEMENTAL MESSAGE:*

*THE INFORMATION CONTAINED IN THIS TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.*

*IF THERE ARE ANY QUESTIONS OR PROBLEMS WITH THE TRANSMISSION OF THIS FACSIMILE, PLEASE CALL 213.892.2348.*

# Exhibit 14

Atlanta

Denver

Los Angeles

Philadelphia

# McKenna Long
## &Aldridge LLP
### Attorneys at Law

1900 K Street, NW • Washington, DC 20006
202.496.7500 • Fax: 202.496.7756
www.mckennalong.com

San Diego

San Francisco

Washington, DC

Brussels

March 13, 2006

**VIA E-MAIL**

Christine A. Dudzik, Esq.
Howrey LLP
321 North Clark Street, Suite 3400
Chicago, IL 60610

Re:     *LG.Philips LCD Co., Ltd. v. Tatung Co., et al.*
        Civil Action No. 05-292-JJF

Dear Christine:

I write to address certain product samples and product information that Defendants have not produced despite the Court's order and our repeated requests. In addition, I am writing to confirm that we await the technical information that we need and requested as set forth in our February 28, 2006 letter to the Court. We expect Defendants to provide the information and samples for each of the three areas addressed in this letter no later than March 17, 2006.

## I. Product Samples

For several months, we have requested module and other samples for all of CPT's products. On February 21, CPT first produced module samples, providing thirteen (13) samples. In the February 21 cover letter, your office identified an additional nineteen (19) module samples that were not produced. Of the additional nineteen samples, the cover letter stated that fourteen (14) would not be produced at all and that the other five (5) would be produced only in Chicago, without explanation. We subsequently requested that CPT produce all of the additional module samples, consistent with our ongoing request for a sample of each and every CPT module.

As you know, during the March 1 hearing, the Court ordered Defendants to produce the nineteen (19) product samples of which were aware as of the March 1 hearing. Subsequently, after the March 1 hearing, we received samples that correspond to numbers 6-8 and 11-19 in my February 22 letter. We understand that products corresponding to numbers 1-5 in my February 22 letter are available for inspection at your Chicago office. On March 7, however, we learned for the first time that CPT had not previously identified or produced all of its module samples. Ms. Doi's March 6 letter, for example, refers to the enclosure of five (5) new module models not included among the nineteen (19) modules previously identified as withheld. We are concerned that CPT may have additional module products for which we have no samples. Indeed, Ms. Gabler recently informed us that CPT may have approximately eighty (80) motherglass samples

for its products, rather than the twenty to thirty samples that she originally identified for CPT's product lines. Further, there are apparent gaps in the model numbers for which we have samples. For example, we received a sample for model CLAA150XA03, but it does not appear that you produced CLAA150XA01 or CLAA150XA02. Likewise, you shipped to us modules CLAA190EA03, CLAA190EA03H, and CLAA190EA05, but it does not appear that you produced CLAA190EA01, CLAA190EA02, or CLAA190EA04. These examples are only illustrations; they are not a comprehensive list of the apparent gaps in your production of product samples. In addition, we have not received samples for module numbers 9-10 (CLAA150XE01 and CLAA150XG06) that correspond to my February 22 letter. Please identify all outstanding models and produce all remaining samples immediately.

## II.  Product Information

For many months, since December, we have been asking for comprehensive lists reflecting basic product information needed to identify and discuss possible representative models and claims for this case. We have requested this information in correspondence and during telephone calls. When Defendants did not provide this information, we raised this issue in our February 7 and 28 letters to the Court. We still need this information.

Specifically, we have requested repeatedly: (i) a list, in English, of which LCD modules and products use which types of TCPs; (ii) a list, in English, of which LCD modules and products are manufactured using ESD guard rings; and (iii) product information, including, for example, information relating to the motherglass used to make LCD panels. You have neither provided this information, nor offered any reason for your failure to do so. Accordingly, we reiterate -- again -- our request that you provide this information immediately.

## III.  Technical Discovery

As set forth in the February 28 letter to the Court, we believe that we are missing critical technical information and discovery on various subjects. You have asked for clarification regarding only one bullet point, and Defendants presumably now understand what we seek. All of the requested documents, including the documents that reflect and relate to the manufacturing steps, methods, and processes used by CPT and related to guard rings and/or ESD protection, for example, should be produced. As additional examples, Defendants should produce: (i) documents concerning the removal of all guard rings for all of CPT's product lines for the relevant time period, including, but not limited to, documents showing how guard rings are removed for each product; (ii) mask works and files for all of CPT's products (we do not have mask files for all products despite our repeated requests); and (iii) all schematic circuit diagrams related to all products. We look forward to receiving this and other technical information and documents as requested in our February 28 letter.

Very truly yours,

Cass W. Christenson

cc:     Julie Gabler, Esq.
        Richard D. Kirk, Esq.
        Matthew W. King, Esq.

# Exhibit 15

Atlanta

Denver

Los Angeles

Philadelphia

# McKenna Long
# &Aldridge LLP
Attorneys at Law

1900 K Street, NW • Washington, DC 20006
202.496.7500 • Fax: 202.496.7756
www.mckennalong.com

San Diego

San Francisco

Washington, DC

Brussels

GASPARE J. BONO
(202) 496-7211

EMAIL ADDRESS
jbono@mckennalong.com

March 16, 2006

VIA E-MAIL

Julie S. Gabler, Esq.
Howrey LLP
550 South Hope St., Suite 1100
Los Angeles, CA 90071

   Re:  LG.Philips LCD Co., Ltd. v. Tatung Co., et al. (C.A. No. 05-292 JJF)

Dear Julie:

   I write to respond to that portion of your March 15, 2006 letter to Cass Christenson specifically requesting an "immediate" list of mask files that CPT has not produced.

   Your request seems unnecessary, as CPT presumably already knows what discovery and mask files have or have not been produced. Asking us to compile a list of mask files that we do not have is unfair at best. To compile a complete list of what we do not have, we would need from you a complete list of all mask files for all products during the relevant time period (since 1999). Please provide this list, including ".str" file names and assembly mask identifiers, as soon as possible. In addition, please specify the time period during which CPT was producing motherglass using each disclosed mask file and provide the information that we requested long ago so that we can identify and understand, for example, which mask work files relate to which products, during which time periods.

   Although we cannot identify all missing mask works and files, our review of CPT's production confirms that we are missing several mask files. Of the mask files, (".str files") that were produced, it is unclear whether those files represent masks produced from 1999 forward. Please be reminded that all .str files used in production of motherglass panels must be produced. The time period includes 1999 and runs to the present day. For example, in the period from 1999 to date a single module may have undergone several revisions and design changes. Consequently, a 27 inch monitor, in production since 1998, may have been manufactured using various LCD panels/modules. Each subsequent panel/module may represent an improvement over its predecessor. The mask files used to create the original and each subsequent LCD panel may be different. Accordingly, each of the .str files used to create all masks of all versions of every module must be produced.

Julie Gabler
March 16, 2006
Page 2

In addition to missing mask files, our review identified additional problems related to CPT's production of mask files and module samples. You are asked to please address these problems immediately. The lists below are not complete and should not be construed as a limitation on our request for module samples and mask works for all products.

At least the following str files have not been produced:

D040WA_1A.str
D040WA_2A.str
CLAA040WA.str
D070WQA01_060120.str
E070WA03_051208.str
D080WA01_050422.str
D090WA01_050107.str
D090WD01_1A.str
D090WD01_2A.str
D090WD01_3A.str
F260WA01_1029.str
F260WA01_0425.str
F320WA02.str
C320WA01.str
C320WA02.str
C320WA03.str
C320WA04.str
C320WA05.str
G320WA01.str
G320WA02.str
G320WA03.str
F370WA02.str
F370WA03.str
G370WA02.str
N154WB_0929.str
N170ES_1227.str
G170EA_4S_Final.str
F201WA2.str
G201WA_0831.str
D141EB02.str (not to be confused with D141EB2.str)

We cannot identify any of the .str files used to manufacture the LCD panels of any of the physical samples you provided to us. If you have produced these .str files, please provide us with their file names. Please note, as explained above, we understand that a single module can be produced using alternative mask files, and that each alternative mask file would have a unique name. For example, the CLAA260WA01 module could be produced with at least either the

Julie Gabler
March 16, 2006
Page 3

F260WA01_129.str or the F260WA01_0425.str mask files. There may be other .str files that could also be used to produce the CLAA260WA01. For your convenience, the following is a list of modules you produced in this litigation. Please identify every .str file that has been used to produce each of the following modules from the period of 1999 to date:

> CLAA170EA03Q
> CLAA150XC01Y
> CLAA260WA01
> CLAA300WA11Y
> CLAA320WA01
> CLAA130VA01Y
> CLAA150XG01
> CLAA201WA01
> CLAA370WA01
> CLAA150XC01D
> CLAA150XA03
> CLAA190EA03
> CLAA181XA01
> CLAA150PB03
> CLAA150XP03
> CLAA154WAOGA
> CLAA190EA03H
> CLAA190EA03H
> CLAA130VA01
> CLAA150PB01
> CLAA150XC01
> CPT150XG05S
> CLAA150XG09D
> CLAA150XH01
> CLAA150XP
> CLAA150XP02
> CLAA154WA01
> CLAA170EA02
> CLAA170EA03
> CLAA170EA07

Please provide us with the same information for every module produced from 1999 to date, including but not limited to, information for the following modules:

> CLAA018QQA01
> CLAA018QCA01
> CLAA022QVA01
> CLAA040WQA01

Julie Gabler
March 16, 2006
Page 4

CLAA070WA03
CLAA070VA01
CLAA090WA01
CLAA090VA01
CLAA121WA01/01A
CLAA140WA01/01A
CLAA141XD05
CLAA140WB02/02A
CLAA154WA01Q/01AQ
CLAA154WA05/05A
CLAA154WA06/06A
CLAA150XP01/01P
CLAA150XP02/02A
CLAA170EA07Q
CLAA170EA08Q
CLAA170ES01
CLAA190EA05
CLAA150XP03
CLAA170EA09
CLAA170E09
CLAA201VA02
CLAA201WA01
CLAA260WA01
CLAA320WA01
CLAA370WA01
CLAA141PA01
CLAA141XG02
CLAA141XP03
CLAA154WA06A
CLAA170EA01

CPT-D 06302 and 06304 refer to abbreviated module identifiers. Consequently, it is impossible to determine whether you have produced all .str files used to produce the following modules during the period of 1999 to date. Please identify every .str file that has been used to produce each of the following modules from the period of 1999 to date:

13VA01
15"XG
15"XG6
15"XA
170EA02
150XA03
150XH01

Julie Gabler
March 16, 2006
Page 5

150XG01
141XC
141XD12
14XF
141XF
141X

It is not possible to determine which module or array mask the following .str files, which were produced, are associated with. Please identify every module made using the following .str files during the period of 1999 to date. The following list should not be construed as a limitation on our request for a complete list of all mask files for all products during the relevant time period (since 1999).

DA22QA-1A.str
DA22QA-2A.str
DA22QA-3A.str
055WA01.str
D090WB01.str
E141WB02.str
D150X1U.str
D150X2U.str
D150X3U.str
D150X4U.str
D150X5U.str
D150X6U.str
E150XH.str
D150G1C.str
D150G2C.str
D150G3C.str
D150G4C.str
D150G5C.str
D150G6C.str
D150XJ01.str
D150XJ3.str
E190EB-E1.str
E190EB-E2.str
E201VA02.str
F201VA05.str
F260WA01.str
E295WA01.str
F295WA11.str
F170EC3.str
F170ED_GAP10.str

Julie Gabler
March 16, 2006
Page 6

F141XD02.str
D150XY2.str
F150XA.str
E150XG2.str
E154WA_OK.str
F154WB.str
F171WA2.str
D181XB.str
E181XA.str
C141YA.str
D090WB01.str
E141WB02.str
D150X1U.str
D150X2U.str
D150X3U.str
D150X4U.str
D150X5U.str
D150X6U.str
E150XH.str
D150G1C.str
D150G2C.str
D150G3C.str
D150G4C.str
D150G5C.str
D150G6C.str
D150XJ01.str
D150XJ3.str
E190EB-E1.str
E190EB-E2.str
E201VA02.str
F201VA05.str
F260WA01.str
E295WA01.str
F295WA11.str
F170EC3.str
F170ED_GAP10.str
D150XY2.str
F150XA.str
E150XG2.str
E154WA_OK.str
F154WB.str
F171WA2.str
D181XB.str
E181XA.str

Julie Gabler
March 16, 2006
Page 7

C141YA.str
D090WB01.str
E141WB02.str
D150X1U.str
D150X2U.str
D150X3U.str
D150X4U.str
D150X5U.str
D150X6U.str
E150XH.str
D150G1C.str
D150G2C.str
D150G3C.str
D150G4C.str
D150G5C.str
D150G6C.str
D150XJ01.str
D150XJ3.str
E190EB-E1.str
E190EB-E2.str
E201VA02.str
F201VA05.str
F260WA01.str
E295WA01.str
F295WA11.str
F170EC3.str
F170ED_GAP10.str
D150XY2.str
F150XA.str
E150XG2.str
E154WA_OK.str
F154WB.str
F171WA2.str
D181XB.str
E181XA.str
C141YA.str
D141EB2.str
D150X1Z.str
D150X2Z.str
D150X3Z.str
D150X4Z.str
D150X5Z.str
D150X6Z.str
D181EA.str

Julie Gabler
March 16, 2006
Page 8

        D190EA01.str
        D150X1U.str
        D150X2U.str
        D150X3U.str
        D150X4U.str
        D150X5U.str
        D150X6U.str
        E190EB.str
        F260WA01.str
        D090WB01_1A.str
        D090WB01_2A.str
        D150X1U.str
        D150X2U.str
        D150X3U.str
        D150X4U.str
        D150X5U.str
        D150X6U.str
        D150XP.str
        D190EA05.str
        F154WA.str
        F154WB.str
        F170EA.str
        F295WB11.str

The file names of the following .str files (which were produced on a CD labeled "CPT-D 18726") appear to be scrambled. The character set used to record these names may not be supported by our own character sets. Please either record the file names in a standard character set (such as Times Roman), or provide us with the character set used to create these files. If the file names are correct, it is not possible to determine which module or array mask the following .str files are associated with. Consequently, please identify every module made using the following .str files during the period of 1999 to date:

        ^NTC000258.str
        ^NTC000259.str
        018QQA01¥ú,n1I-±.str
        070VA01 ¥ú,n1IAÉ T701V2111_050315i]for TPN).str
        090WA01¥ú,n1IAÉ.str
        150XP01_DNP_050602.str
        154WA04-ARRAY.str

Julie Gabler
March 16, 2006
Page 9

The following files are .dwg files. They are not mask files. Please provide us with a cross reference associating these .dwg files to corresponding .str files and corresponding modules:

17EA_NEWTFT GASO.dwg
295WA01.dwg
AU_GUARD.dwg
GASO_140WA01.dwg
guard.dwg
Guard_Gate_141WB01.dwg
GUARD_S.dwg
GUARD_SOURCE_I_E141WB01.dwg

Thank you for your immediate attention to these matters.

Very truly yours,

Gaspare J. Bono

cc:     Christine A. Dudzik, Esq.
        Matthew King, Esq.
        Richard D. Kirk, Esq.