IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LG.PHILIPS LCD CO., LTD., <br><br> Plaintiff/Counterclaim Defendant, <br><br> v. <br><br> TATUNG COMPANY; <br> TATUNG COMPANY OF AMERICA, INC.; <br> CHUNGHWA PICTURE TUBES, LTD.; <br> AND VIEWSONIC CORPORATION, <br><br> Defendants/Counterclaim Plaintiffs. | Civil Action No. 05-292 (JJF) |

**UNREPORTED CASES TO PLAINTIFF LG.PHILIPS LCD CO., LTD.'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR NEW TRIAL OR REMITTITUR ON THE JURY'S DAMAGES VERDICT**

**FILED UNDER SEAL**

THE BAYARD FIRM
Richard D. Kirk (#922)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899-5130
(302) 655-5000 (Telephone)

Counsel for Plaintiff
LG.PHILIPS LCD CO., LTD.

OF COUNSEL:
Gaspare J. Bono
Lora A. Brzezynski
Cass W. Christenson
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C. 20006
(202) 496-7500 (Telephone)
(202) 496-7756 (Facsimile)
October 23, 2006

640241v1

Westlaw.

Not Reported in F.Supp.2d                                                                 Page 1
Not Reported in F.Supp.2d, 2002 WL 1489555 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

Briefs and Other Related Documents
Advanced Display Systems, Inc. v. Kent State UniversityN.D.Tex.,2002.Only the Westlaw citation is currently available.
United States District Court, N.D. Texas, Dallas Division.
ADVANCED DISPLAY SYSTEMS, INC. Plaintiff,
v.
KENT STATE UNIVERSITY, et al. Defendants.
Nos. 3-96-CV-1480-BD, 3-96-CV-1608-BD.

July 10, 2002.

Company that developed and promoted polymer-free liquid crystal displays (LCDs) brought action against patent owner and its licensee seeking declaration of patent invalidity. Owner and licensee brought action for infringement, and actions were consolidated. Following initial judgment for company and reversal by Court of Appeals, 212 F.3d 1272, jury in second trial found patent was valid, enforceable, and infringed by company's devices and methods. Patent owner and licensee moved for entry of judgment on the verdict, and company moved for judgment as a matter of law or for a new trial. The District Court, Kaplan, United States Magistrate Judge, held that: (1) patent terms were sufficiently definite to meet enablement requirement; (2) verdicts finding both literal infringement and infringement under the doctrine of equivalents were not fatally inconsistent; (3) reasonable royalty for infringement was improperly calculated; (4) owner and licensee were entitled to enhanced damages; (5) owner and licensee were entitled to prejudgment interest on award of compensatory damages; (6) injunction was sufficiently specific; and (7) declaration of validity would not be limited to those defenses actually rejected by the jury.

Ordered accordingly.
West Headnotes
[1] Patents 291 ⌲101(6)

291 Patents
    291IV Applications and Proceedings Thereon
        291k101 Claims
            291k101(6) k. Ambiguity, Uncertainty or Indefiniteness. Most Cited Cases
Patent claim directed to polymer-free liquid crystal display (LCD) device, which defined "visible spectrum" to include wavelengths between about 350 nanometers (nm) and 850 nm, was sufficiently definite to meet enablement requirement, even if light with wavelength above 750 nm was infrared and thus not visible, in view of testimony that patent included broader range to account for individual differences in ability to perceive the visible spectrum and supporting testimony regarding the phenomenon of "psychophysics." 35 U.S.C.A. § 112, para. 2.

[2] Patents 291 ⌲101(6)

291 Patents
    291IV Applications and Proceedings Thereon
        291k101 Claims
            291k101(6) k. Ambiguity, Uncertainty or Indefiniteness. Most Cited Cases
Term "stable," as used in limitation requiring that cell wall structure and liquid crystal cooperate to form focal conic and twisted planar textures that were stable in the absence of a field, in patent claim directed to polymer-free liquid crystal display (LCD) device, was sufficiently definite to meet enablement requirement, although patent did not specify how long cell had to remain stable in the absence of a field, as one skilled in the art could still determine the meaning of the term. 35 U.S.C.A. § 112, para. 2.

[3] Patents 291 ⌲101(6)

291 Patents
    291IV Applications and Proceedings Thereon
        291k101 Claims
            291k101(6) k. Ambiguity, Uncertainty or Indefiniteness. Most Cited Cases
Term "pulse" as used in limitation describing electric field pulse of a specified magnitude, in patent claim directed to polymer-free liquid crystal display (LCD) device, was sufficiently definite to meet enablement requirement; testimony of patentee's experts that allegedly similar patent did not involve a "pulse" did not show ambiguity in term, as distinction between patents was adequately explained by one skilled in the art, who testified that, unlike patent at issue, similar patent did not specify any particular magnitude. 35 U.S.C.A. § 112, para. 2.

[4] Patents 291 ⌲101(6)

291 Patents
    291IV Applications and Proceedings Thereon

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                         Page 2
Not Reported in F.Supp.2d, 2002 WL 1489555 (N.D.Tex.)
**(Cite as: Not Reported in F.Supp.2d)**

291k101 Claims
    291k101(6) k. Ambiguity, Uncertainty or Indefiniteness. Most Cited Cases
Limitation in patent claim directed to polymer-free liquid crystal display (LCD) device requiring a means for addressing said liquid crystal material was sufficiently definite to meet enablement requirement; patent provided that addressing means could be of any type known in the art, and, in describing preferred embodiments of the patent, specification made clear that material could be addressed in various ways and incorporated in other types of cells. 35 U.S.C.A. § 112, para. 2.

**[5] Patents 291 ⚞314(6)**

291 Patents
   291XII Infringement
      291XII(C) Suits in Equity
         291k314 Hearing
            291k314(6) k. Findings and Determination. Most Cited Cases
Although the requirements of literal patent infringement and infringement under the doctrine of equivalents are unquestionably different, they are not necessarily fatally inconsistent, and jury verdict finding both types of infringement did not require a new trial, although verdict would be reformed and court would enter judgment only on finding of literal infringement.

**[6] Patents 291 ⚞319(1)**

291 Patents
   291XII Infringement
      291XII(C) Suits in Equity
         291k319 Damages
            291k319(1) k. In General. Most Cited Cases
Reasonable royalty damages awarded to patent owner and licensee for infringement could not include amount based on up-front payments paid to infringer by licensees of infringing technology, absent evidence that such payments reflected amount that patent owner and licensee would have demanded for patented technology in a hypothetical negotiation with infringer, at the time the infringement occurred. 35 U.S.C.A. § 284.

**[7] Patents 291 ⚞319(3)**

291 Patents
   291XII Infringement
      291XII(C) Suits in Equity

291k319 Damages
    291k319(3) k. Right to Increase Damages Awarded. Most Cited Cases
Patent owner and licensee were entitled to treble damages for competitor's willful infringement of patent directed to polymer-free liquid crystal display (LCD) device, as jury implicitly found that competitor did not rely on competent legal advice when it took infringing actions, and, although jury in first trial had found in favor of competitor, competitor used improper litigation tactics to secure that verdict. 35 U.S.C.A. § 284.

**[8] Patents 291 ⚞319(4)**

291 Patents
   291XII Infringement
      291XII(C) Suits in Equity
         291k319 Damages
            291k319(4) k. Interest. Most Cited Cases
Patent owner and licensee were entitled to prejudgment interest on award of compensatory damages representing reasonable royalty rate in patent infringement action, as there was no evidence that royalty rate included prejudgment interest; interest would be awarded at average prime rate from date that patent issued and infringement commenced, until the date of judgment.

**[9] Patents 291 ⚞319(4)**

291 Patents
   291XII Infringement
      291XII(C) Suits in Equity
         291k319 Damages
            291k319(4) k. Interest. Most Cited Cases
Pre-judgment interest was not recoverable on award of enhanced damages in patent infringement action. 35 U.S.C.A. § 284.

**[10] Patents 291 ⚞287(6)**

291 Patents
   291XII Infringement
      291XII(C) Suits in Equity
         291k287 Persons Liable
            291k287(6) k. Corporate Officers, Agents, and Stockholders. Most Cited Cases
President of patent infringer who willfully induced infringement was jointly and severally liable for compensatory and enhanced damages awarded to patent owner and licensee for infringement.

**[11] Patents 291 ⚞317**

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 3
Not Reported in F.Supp.2d, 2002 WL 1489555 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

291 Patents
   291XII Infringement
      291XII(C) Suits in Equity
         291k317 k. Permanent Injunction. Most Cited Cases

Permanent injunction entered in patent infringement action, which referred to claims of patent and prohibited any further infringement by competitor, was sufficiently specific to provide adequate notice of conduct enjoined, even if it did not include limiting language requested by competitor to exclude competitor's new product, since any determination that new product did not infringe patent would be premature. Fed.Rules Civ.Proc.Rule 65(d), 28 U.S.C.A.

[12] Declaratory Judgment 118A ⇐385

118A Declaratory Judgment
   118AIII Proceedings
      118AIII(G) Judgment
         118Ak385 k. Declaratory Relief. Most Cited Cases

Declaratory relief requested by patent owner and licensee in their successful infringement action, as to validity of patent, would not be limited to those defenses that were actually considered and rejected by the jury; rather, owner and licensee were entitled to declaration that patent was valid and enforceable in all respects, as patents were entitled to presumption of validity until adjudged invalid, and, to extent that other defenses existed, infringer was precluded from litigating them under doctrine of collateral estoppel. 35 U.S.C.A. § 282.

*MEMORANDUM OPINION AND ORDER*
KAPLAN, Magistrate J.

*1 Kent Display Systems, Inc. ("KDS"), Kent State University ("KSU") and Kent Research Corporation ("KRC"), collectively referred to as "Kent," have filed a motion for entry of judgment on the verdict and other relief in this patent case. Advanced Display Systems, Inc. ("ADSI") and Dr. Bao Gang Wu ("Wu"), collectively referred to as "ADS," have filed a motion for judgment as a matter of law or, alternatively, for a new trial. For the reasons stated herein, both motions are granted in part and denied in part.

I.

KSU owns a patent on a polymer-free liquid crystal display ("LCD") device using cholesteric visible material that is stimulated and sustained through a single electric field pulse of sufficient duration and voltage to create a contrast between the material's light reflecting and light scattering textures. (U.S. Patent No. 5,453,863, also known as the "West patent"). [FN1] The patent is licensed through KRC to KDS. In early 1996, Kent learned that ADSI was promoting a polymer-free LCD and threatened suit to enforce its patent. This prompted ADSI to file a declaratory judgment action to declare the West patent invalid. After settlement negotiations failed, Kent sued ADSI and its president, Dr. Bao Gang Wu, for infringement. The two cases were consolidated and proceeded to trial in November 1997.

> FN1. LCDs are used in a variety of electro-optic products, such as digital watches and notebook computer screens, to display images and information.

Following two weeks of testimony and extensive deliberations, a jury found that the West patent was invalid for anticipation and obviousness and was not infringed. The court entered a final judgment in favor of ADS. On appeal, the Federal Circuit Court of Appeals reversed and remanded for a new trial. *Advanced Display Systems, Inc. v. Kent State University,* 212 F.3d 1272 (Fed.Cir.2000), *cert. denied,* 532 U.S. 904, 121 S.Ct. 1226, 149 L.Ed.2d 136 (2001). This decision was based, in large part, on the deposition testimony of Hongxi "Victor" Zhou, a former ADSI engineer, taken in another case. Zhou testified that ADSI's own efforts to develop a polymer-free LCD had been wholly unsuccessful until Dr. Zvi Yaniv, the former president of KDS, visited ADSI in early 1994 and brought with him a prototype of Kent's cholesteric LCD and its electrical driver. While Yaniv was at lunch, Zhou and other ADSI engineers were instructed to surreptitiously disassemble the prototype, photograph its component parts, and then reassemble the device in such a manner so as to avoid any indication of tampering. Within a month, ADSI had replicated the circuitry necessary to operate the device and filed its own patent application for a polymer-free LCD.

Although Zhou testified to essentially the same facts during the first trial, his prior deposition was never produced to Kent. In fact, ADSI's former counsel claimed that Zhou's deposition was subject to an oral protective order by a state court judge and characterized the photograph of Kent's prototype as "attorney work product" on its privilege log.[FN2] The

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1489555 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

Page 4

Federal Circuit found this evidence potentially outcome determinative on the issues of non-obviousness and infringement and chastised ADSI's counsel for their role in the cover-up. In reversing and remanding the case for a new trial, the court wrote:

> FN2. Despite the fact that this photograph was taken more than two years before ADSI filed suit, counsel refused to produce the picture because the original print was photocopied by attorney. The Federal Circuit condemned this conduct as an "egregious discovery ploy." *Advanced Display Systems,* 212 F.3d at 1288-89 ("This court ... is unable to find any legal principle that even remotely supports the notion that an otherwise discoverable document alchemically metamorphisizes into privileged work product simply because an attorney photocopies it.").

*2 From the record below, it appears to this court that ADS's development of its LCD technology consisted of deceitful and conniving machinations that amounted to nothing short of corporate espionage. Regretfully, the conduct of ADS's counsel in defending such actions was equally egregious. Indeed, to say that counsel's conduct during discovery raises the collective eyebrow of this court would be to understate the severity of their transgressions.
*Id.* at 1288.

After the parties conducted additional limited discovery, a second trial was held from December 3-20, 2001. This time, the jury found that the West patent was valid and enforceable and that 22 devices or methods made, used, or sold by ADSI infringed claims 1-8 and 10 of the patent both literally and under the doctrine of equivalents. The jury also found that ADSI and Wu induced others to infringe the patent and acted willfully. A total of $1.5 million in damages was awarded as a reasonable royalty to compensate KDS for such infringement. Kent now moves for entry of judgment on the verdict while ADS seeks judgment as a matter of law or, alternatively, a new trial. Both motions have been briefed by the parties and are ripe for determination.

II.

The jury returned a verdict in favor of Kent and against ADS as to all claims and defenses raised in this case. As a result, the court is required to "promptly approve the form of the judgment and the clerk shall thereupon enter it." Fed. R. Civ. P. 58. By contrast, a party is entitled to judgment as a matter of law if "there is no legally sufficient evidentiary basis" to submit an issue to the jury. Fed. R. Civ. P. 50(a)(1); *Conkling v. Turner,* 18 F.3d 1285, 1300 (5th Cir.1994). A mere "scintilla" of evidence is insufficient. There must be a conflict in substantial evidence to create an issue of material fact. *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (en banc). A Rule 50(a) motion should be granted only "if the facts and inferences point so strongly and overwhelmingly in favor of the moving party ... that reasonable jurors could not have arrived at a contrary verdict." *Crist v. Dickson Welding, Inc.,* 957 F.2d 1281, 1285 (5th Cir.), *cert. denied,* 506 U.S. 864, 113 S.Ct. 187, 121 L.Ed.2d 132 (1992); *Shipman,* 411 F.2d at 374. The entire record must be viewed in the light most favorable to the party opposing the motion. *Resolution Trust Corp. v. Cramer,* 6 F.3d 1102, 1109 (5th Cir.1993).

III.

Five issues are raised by the cross-motions filed by Kent and ADS: (1) whether the West patent is invalid for indefiniteness; (2) whether a new trial is required because of inconsistent verdicts on the claims of literal infringement and infringement under the doctrine of equivalents; (3) whether the evidence supports damages in the amount of $1.5 million; (4) whether Kent is entitled to enhanced damages, pre-judgment and post-judgment interest, and injunctive and declaratory relief; and (5) whether Wu is jointly and severally liable for any damage award. The court will address each issue in turn.

A.

*3 The West patent claims, *inter alia*
A light modulating polymer-free reflective cell comprising cell wall structure and a chiral nematic liquid crystal light modulating material having positive dielectric anisotropy and a pitch length effective to reflect light in the *visible spectrum,* said cell wall structure and liquid crystal cooperating to form focal conic and twisted planar textures that are *stable* in the absence of a field, and a *means for addressing* said liquid crystal material, said means adapted to selectively establish an electric field *pulse* of a magnitude effective to transform at least a

Case 1:05-cv-00292-JJF    Document 471-2    Filed 10/23/2006    Page 6 of 16

Not Reported in F.Supp.2d                                                                          Page 5
Not Reported in F.Supp.2d, 2002 WL 1489555 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

portion of said liquid crystal from a focal conic texture to a light reflecting twisted planar texture, and an electric field *pulse* of a magnitude effective to transform at least a portion of the liquid crystal from a light reflecting twisted planar texture to a focal conic texture.

(ADS App. at 300-01) (emphases added). ADS contends that the patent is invalid because the terms "visible spectrum," "stable," "pulse," and "addressing means" lack a clear and definite meaning.[FN3]

> FN3. In an attempt to impose reasonable limits on post-trial briefing, the court restricted the opening briefs of each party to 30 pages. See Order, 1/29/02 at 1, ¶ 2. ADS now requests an opportunity to submit additional briefing on the issue of invalidity for indefiniteness in order to provide "more detailed support from the record and supporting case law ..." (ADS Mem. at 24-26, n. 48-51). Ordinarily, the court would not hesitate to modify these briefing limitations to allow for a full and fair presentation of the issues. However, ADS has elected to devote the first five pages of its opening brief to attacking opposing counsel and rehashing arguments that already have been rejected by the Federal Circuit and this court. Had ADS been more prudent in its briefing decisions, it could have adequately presented its arguments and authorities in the space allotted.

1.

A patent specification must contain "a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains ... to make and use the same ..." 35 U.S.C. § 112, ¶ 2. More particularly, the specification must "distinctly claim[ ] the subject matter which the applicant regards as his invention." *Id.* The claims must have a clear and definite meaning when construed in light of the entire patent document. *Miles Laboratories, Inc. v. Shandon Inc.,* 997 F.2d 870, 874-75 (Fed.Cir.1993), *cert. denied,* 510 U.S. 1100, 114 S.Ct. 943, 127 L.Ed.2d 232 (1994). A claim is sufficiently definite if one skilled in the art would understand the bounds of the claim when read in light of the specification. *North American Vaccine, Inc. v. American Cyanamid Co.,* 7 F.3d 1571, 1579 (Fed.Cir.1993), *cert. denied,* 511 U.S. 1069, 114 S.Ct. 1645, 128 L.Ed.2d 365 (1994); *Miles Laboratories,* 997 F.2d at 875. A patent that fails to meet this requirement is invalid for indefiniteness. See *Exxon Research and Engineering Co. v. United States,* 265 F.3d 1371, 1375 (Fed.Cir.2001). However, a patent is presumed to be valid once it has issued. In order to overcome this presumption, a party must present clear and convincing evidence of invalidity. 35 U.S.C. § 282; *North American Vaccine,* 7 F.3d at 1579.

2.

[1] The West patent defines the "visible spectrum" to include wavelengths between "about 350 [nanometers] and 850 [nanometers]." (ADS App. at 296). ADS argues that this term is indefinite because light with a wavelength above 750 nm is infrared and, therefore, not visible. (*See* ADS Sur-Reply at 9). The court disagrees. Although there is some evidence that the visible spectrum encompasses a range of wavelengths with an upper limit of 750 nm, Dr. West testified that his patent includes a broader range to account for individual differences in the ability to perceive the visible spectrum. (Kent Reply App. at 987). This conclusion is supported by Dr. Meyer's testimony regarding the phenomenon of "psychophysics." (*See* ADS Reply App. at 54).[FN4] ADS has failed to show by clear and convincing evidence that the wavelengths contained in the West patent do not encompass the "visible spectrum" as that term is used in the specification.

> FN4. In technical terms, psychophysics is "[t]he science of the general relations between mind and body" such as "the investigation of the relations between physical stimuli and psychic action in the production of sensations." Oxford English Dictionary Online, http://dictionary.oed.com/cgi/entry/00191666/00191666se2. As more simply explained by Dr. Meyer, the phenomenon involves "testing of many people to see what they would report ." (ADS Reply App. at 54).

3.

*4 [2] Next, ADS contends that the term "stable" is indefinite because the West patent does not specify how long the cell must remain stable in the absence of a field. Although the patent itself does not

Not Reported in F.Supp.2d                                                                     Page 6
Not Reported in F.Supp.2d, 2002 WL 1489555 (N.D.Tex.)
**(Cite as: Not Reported in F.Supp.2d)**

expound on the stability requirement, one skilled in the art may still be able to determine the meaning of the term. Claims may be sufficiently definite even when some degree of testing or experimentation is required to define the boundaries of the claimed invention. See Exxon Research and Engineering, 265 F.3d at 1380 (claim limitation specifying that catalyst should be treated "for a period sufficient to increase substantially the initial catalyst activity" not invalid for indefiniteness where persons skilled in the art could perform periodic activity checks to determine if limitation was met); Application of Caldwell, 50 C.C.P.A. 1464, 319 F.2d 254, 258 (U.S.Ct. Cust. & Pat.App.1963) (upholding claim language referring to aspirin dosage in "an effective amount ... for stimulating growth"). The mere fact that the West patent does not specify how long the cell must remain stable in the absence of a field does not make the patent invalid for indefiniteness.

4.

[3] ADS further contends that the term "pulse" as used in the West patent is ambiguous and therefore indefinite. In support of this argument, ADS points out that although the West patent and the Haas patent both apply voltages above and below the nematic threshold to achieve changes in state, Kent's experts testified that only the method described in the West patent involves a "pulse." Without a more precise definition of this critical term, ADS maintains that it is impossible to determine "what kind of electrical signal can be used without infringement." (ADS Mem. at 25).

This simplistic argument ignores the plain language of the patent specification. The West patent claims an "electric field pulse of a magnitude effective to transform at least a portion of said liquid crystal from a focal conic texture to a light reflecting twisted planar texture" and back again. (ADS App. at 300-01). As Dr. Meyer testified, the Haas patent does not describe a pulse because it does not specify any particular magnitude. (Id. at 42, 319 F.2d 254). In light of this logical explanation by one skilled in the art, the court is not persuaded that the term "pulse" is indefinite.

5.

[4] Finally, ADS contends that the West patent is indefinite because it fails to describe a specific "means for addressing" the liquid crystal material.

Such is not the case. The patent provides that "[t]he addressing means can be of any type known in the art, such as an active matrix, a multiplexing circuit, electrodes and lasers ..." (Id. at 296, 319 F.2d 254). In describing the preferred embodiments of the patent, the specification makes clear that:

[T]he material can be addressed in various ways and incorporated in other types of cells. For example, instead of being addressed by externally activated electrodes, the material can be addressed by an active matrix, a multiplexing scheme or other type of circuitry, all of which will be evident to those working in the art.

*5 (Id. at 297, 319 F.2d 254). This description is more than adequate to satisfy the requirements of section 112.

In sum, ADS has failed to prove by clear and convincing evidence that the West patent is invalid for indefiniteness. Judgment as a matter of law is not proper on this ground.

B.

Alternatively, ADS seeks a new trial because the jury found that all the accused devices infringed claims 1-8 and 10 of the West patent both literally and under the doctrine of equivalents. (Jury Charge at 44, 46). According to ADS, these verdicts are "fatally inconsistent" because the doctrine of equivalents applies only where there is no literal infringement.

The court agrees that the doctrine of equivalents applies only where there is no literal infringement. See Hormone Research Foundation v. Genetech, Inc., 904 F.2d 1558, 1564 (Fed.Cir.1990), cert. denied, 499 U.S. 955, 111 S.Ct. 1434, 113 L.Ed.2d 485 (1991). A patent is infringed if every limitation set forth in a claim is present in an accused product either literally or by a substantial equivalent. Seal Flex, Inc. v. Athletic Track and Court Construction, 172 F.3d 836, 842 (Fed.Cir.1999); Jurgens v. McKasy, 927 F.2d 1552, 1560 (Fed.Cir.), cert. denied, 502 U.S. 902, 112 S.Ct. 281, 116 L.Ed.2d 232 (1991). Literal infringement occurs when every element of the patented device is literally present in the accused device. Texas Instruments v. U.S. International Trade Commission, 805 F.2d 1558, 1562 (Fed.Cir.1986). By contrast, the equitable doctrine of equivalents permits a finding of infringement where the accused device, although not literally infringing, performs the same function in substantially the same way to achieve the same result

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                            Page 7
Not Reported in F.Supp.2d, 2002 WL 1489555 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

as the patented device. *Graver Tank & Manufacturing Co. v. Linde Air Products Co.,* 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950); *Malta v. Schulmerich Carillons, Inc.,* 952 F.2d 1320, 1325 (Fed.Cir.1991), *cert. denied,* 504 U.S. 974, 112 S.Ct. 2942, 119 L.Ed.2d 566 (1992). Stated differently, infringement under the doctrine of equivalents is shown if the differences between the accused and patented devices are insubstantial to one of ordinary skill in the art. *Warner-Jenkinson Co. v. Hilton Davis Chemical Co.,* 520 U.S. 17, 40, 117 S.Ct. 1040, 1053, 137 L.Ed.2d 146 (1997); *Catalina Marketing International, Inc. v. Coolsavings.com, Inc.,* 289 F.3d 801, 812 (Fed.Cir.2002).

[5] Although the requirements of literal infringement and infringement under the doctrine of equivalents are unquestionably different, they are not necessarily "fatally inconsistent." Indeed, the Federal Circuit has tacitly approved the common practice of submitting patent cases under both theories. *See, e.g. Southwest Software, Inc. v. Harlequin Inc.,* 226 F.3d 1280, 1282 (Fed.Cir.2000); *Mahurkar v. C.R. Bard, Inc.,* 79 F.3d 1572, 1575 (Fed.Cir.1996); *Laitram Corp. v. NEC Corp.,* 62 F.2d 1388, 1395 (Fed.Cir.1995); *Joy Technologies v. Flakt, Inc.,* 820 F.Supp. 802, 807-08 (D.Del.1993), *aff'd,* 38 U.S.P.Q.2d 1216, 1218 (Fed.Cir.1995), *cert. denied,* 516 U.S. 1172, 116 S.Ct. 1264, 134 L.Ed.2d 212 (1996); *Goodwall Construction Co. v. Beers Construction Co.,* 824 F.Supp. 1044, 1054-55 (N.D.Ga.1992), *aff'd,* 991 F.2d 751, 757-58 (Fed.Cir.1993). Absent controlling authority to the contrary, the court will not disturb the verdict merely because the jury found both literal infringement and infringement under the doctrine of equivalents. Instead, the court will reform the verdict and enter judgment on the finding of literal infringement.

C.

*6 At the conclusion of the trial, the jury awarded $1.5 million in damages to KDS as compensation for the infringing activities of ADS. (Jury Charge at 49). This sum is based largely on the testimony of Ed J. Lynch, a certified public accountant, and purportedly represents reasonable royalty damages. ADS now contends that this damage award is not supported by the evidence.

1.

Section 284 of the Patent Act provides, in pertinent part:
Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.

35 U.S.C. § 284. Compensatory damages under this statute may be established by one of three methods: (1) lost profits; (2) an established royalty; or (3) a reasonable royalty. *Mobile Oil Corp. v. Amoco Chemicals Corp.,* 915 F.Supp. 1333, 1340 (D.Del.1994). In the absence of an established royalty, a reasonable royalty may be determined by reference to "a hypothetical royalty resulting from arm's length negotiations between a willing licensor and a willing licensee." *Trell v. Marlee Electronics Corp.,* 912 F.2d 1443, 1445 (Fed.Cir.1990) (citation omitted).

2.

[6] The evidence adduced at trial showed that ADSI realized $881,000 from the foreign and domestic sales of its 22 accused devices. According to Lynch, a reasonable royalty for the alleged infringement of the West patent was five percent of these sales, or $44,073. (ADS App. at 81; ADS Reply App. at 122, 143). ADS does not dispute this aspect of the damage calculation. However, Lynch also noted that, unlike Kent, ADSI included other types of fees in its license agreements. For example, ADSI received $10,305,500 in up-front "technology transfer fees," "license fees," and "development fees" from third-party licensees. (*See* ADS App. at 84, 87). Lynch concluded that "a 50 percent sharing ratio of these paid-up fees is appropriate and that amount is $2,082,750." (*Id.* at 101).[FN5] The jury ultimately awarded KDS $1.5 million in reasonable royalty damages.

> FN5. Some of these fees were not considered by Lynch in calculating damages "[b]ecause of the nature of the payment." (ADS App. at 101).

ADS argues that "[t]he methodology used and the assumptions employed by Mr. Lynch clearly did not meet the standards for expert testimony established by *Daubert....*" (ADS Mem. at 5). In response, Kent maintains that the damages suggested by Lynch represent a reasonable "lump-sum" royalty payment

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                             Page 8
Not Reported in F.Supp.2d, 2002 WL 1489555 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

that KDS could have demanded in addition to a running royalty. See *Studiengesellschaft Kohle, m.b.H. v. Dart Industries, Inc.*, 862 F.2d 1564, 1568 (Fed.Cir.1988), citing *Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1561-63 (Fed.Cir.1983). Although "lump-sum" payments may be used to calculate a reasonable royalty, there is no evidence that any of the $10.3 million in fees paid to ADSI qualified as such. In fact, Lynch eschewed any analogy to a "lump sum paid-up royalty," instead referring to his 50 percent figure as a "sharing ratio" or "forced sharing." (*Id.* at 76, 84-85, 101, 107).

*7 Moreover, Lynch's damages figure was derived from two faulty premises. The first was that ADSI's licensing arrangements were relevant to the calculation of what *KDS* would have demanded in a hypothetical negotiation between the parties. (*Id.* at 137-138). See *Leesona Corp. v. United States*, 220 Ct.Cl. 234, 599 F.2d 958, 969 (Ct.Cl.), *cert. denied*, 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979) ("The proper measure [of damages] is what the [patent] owner has lost, not what the taker has gained."). A hypothetical royalty cannot be based on something that the patentee itself never insisted upon. See *Dow Chemical Co. v. United States*, 226 F.3d 1334, 1348 (Fed.Cir.2000). The second shortcoming in Lynch's analysis was his reliance on Victor Zhou's deposition. According to Lynch, this deposition:
played a great role in looking at what a forced sharing should be, in my opinion, because it was-the way the deposition read, and I'm speaking particularly of the '97 deposition that I read, shows that there was a copying and photographing and a taking.
So if I assume that what I am being told is right about the basis and the alleged infringement of the West patent, it influenced what percentage sharing between a patent holder and an alleged infringer that I came to. And, in fact, I have never come to a ratio this high for sharing, nor did I ever expect I would, but I have never seen circumstances quite like I've seen in this case.

(ADS App. at 107). Assuming *arguendo* that Lynch's "sharing ratio" constitutes a royalty, that figure was based on what the parties might have negotiated had they known the facts that had come to light *by the time of trial*. (See *id.* at 112, 137) (testifying that "the payment for the two million really comes from subsequent things that happened" and that "[b]ased on what we know today," parties "should have agreed" to a forced sharing). However, "[a] reasonable royalty determination for purposes of making a damages evaluation must relate to *the time infringement occurred*, and not be an after-the-fact assessment." *Unisplay, S.A. v. American Electronic Sign Co.*, 69 F.3d 512, 518 (Fed.Cir.1995) (emphasis added). Lynch's opinion testimony, formulated with the wisdom of 20-20 hindsight, violated this cardinal rule. See *id.*

Kent counters that the $1.5 million jury verdict can be upheld even without Lynch's testimony based on ADSI's license agreements and a 1994 business plan projecting millions of dollars in anticipated sales. As previously noted, the license agreements are not relevant to the calculation of damages. Moreover, the only evidence linking these agreements or the ADSI business plan to a hypothetical royalty was Lynch's testimony. The documents themselves cannot support the jury award in a vacuum. See *Unisplay, S.A.*, 69 F.3d at 518-19.

For these reasons, the evidence is insufficient to support an award of compensatory damages in excess of $44,037. The court will reform the verdict accordingly.

D.

*8 Kent also seeks enhanced damages under section 284 of the Patent Act. This statute authorizes the court to "increase the amount of damages up to three times the amount found or assessed." 35 U.S.C. § 284. The determination whether to award such damages involves a two-step process. First, there must be a factual determination that the infringer has engaged in conduct warranting an award of enhanced damages. *Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1570 (Fed.Cir.1996); *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed.Cir.1992). A finding of willful infringement, such as was rendered in this case, is sufficient to meet the first prong of the test. *Jurgens*, 80 F.3d at 1570. Next, the court must determine whether and to what extent to increase damages. *Id.*; *Read Corp.*, 970 F.2d at 826. Factors relevant to this decision include:
(1) whether the infringer deliberately copied the ideas or design of another, (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed, (3) the infringer's behavior as a party to the litigation, (4) the infringer's size and financial condition, (5) the closeness of the case, (6) the duration of the infringer's misconduct, (7) any remedial action by the infringer, (8) the infringer's motivation for harm, and (9) whether the infringer attempted to conceal its

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00292-JJF   Document 471-2   Filed 10/23/2006   Page 10 of 16

Not Reported in F.Supp.2d                                                                                                     Page 9
Not Reported in F.Supp.2d, 2002 WL 1489555 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

misconduct.

*Johns Hopkins University v. CellPro, Inc.*, 152 F.3d 1342, 1352, n. 16 (Fed.Cir.1998), citing *Read Corp.*, 970 F.2d at 827. Although the court has discretion in making this determination, it must articulate reasons for not enhancing a damage award where there has been a finding of willful infringement. *Tate Access Floors, Inc. v. Maxcess Technologies, Inc.*, 222 F.3d 958, 972 (Fed.Cir.2000); *Jurgens*, 80 F.3d at 1572.

[7] Despite the findings of willful infringement and willful inducement of infringement, ADS argues that damages should not be enhanced because it mounted a good faith challenge to the West patent based on the opinions of counsel and a prior jury verdict in its favor. As to the first argument, the jury was specifically instructed to consider whether ADSI and Wu relied in good faith on the opinions of counsel in determining the issue of willfulness. (Jury Charge at 33-34).[FN6] Given the resolution of this issue in light of these instructions, the court will not disturb the implicit finding that ADS did not rely on competent legal advice in acting as it did. *Jurgens*, 80 F.3d at 1572.

> FN6. The jury instruction read, in pertinent part:
> The affirmative duty of care normally entails obtaining advice of legal counsel, although the absence of such advice does not mandate a finding of willfulness. Exercising due care, ADS may continue the accused infringement without risk of being found on that basis alone a willful infringer, if in good faith it believes it had a legitimate defense ....
> In deciding whether ADS and Wu had a reasonable basis for reaching a good faith conclusion that they could act as they did, you may consider whether ADS and Wu received and relied upon an opinion of counsel, and whether or not that opinion was competent ....
> (Jury Charge at 33-34). The jury was also instructed that oral opinions could be accorded less weight than written ones and that any opinion was not relevant unless ADSI and Wu specifically relied on it in acting as they did. (*Id.* at 34).

Nor could ADS have justifiably relied on the prior jury verdict. Any such reliance was tainted by the improper litigation tactics used to secure that verdict. Indeed, the gross misconduct of ADS and its former counsel in this litigation is the overriding factor militating in favor of a full award of enhanced damages. These tactics, which were soundly condemned by the Federal Circuit, need not be reiterated in this opinion. See *Advanced Display Systems*, 212 F.3d at 1276-80, 1285-86, 1288-89. Suffice it to say that the actions of ADS and its former counsel in covering up knowledge of potentially relevant evidence were sufficiently egregious to warrant the imposition of treble damages. See *Read*, 970 F.2d at 827, 831 (bad faith in conduct of litigation may be considered in assessing degree of culpability of infringer once willfulness is found). The court will treble the amount of actual damages legally recoverable and award KDS enhanced damages in the sum of $132,219.

E.

*9 As part of its motion, Kent seeks pre-judgment interest on all compensatory damages awarded by the jury and post-judgment interest on all sums provided in the judgment. ADS concedes that Kent is entitled to post-judgment interest. Such interest is due on "any money judgment in a civil case," including punitive damages. 28 U.S.C. § 1961(a); see also *Brown v. Petrolite Corp.*, 965 F.2d 38, 51 (5th Cir.1992).

[8][9] However, ADS opposes any award of pre-judgment interest because the jury was asked to determine "[w]hat amount of money, *if paid now in cash*, would represent a reasonable royalty adequate to compensate KDS for such infringement or inducement of infringement." (Jury Charge at 49) (emphasis added). This argument is rendered moot by virtue of the fact that the court has reformed the verdict to award damages based only on a reasonable royalty for infringing sales. There is absolutely no evidence that these royalties, totaling $44,073, include pre-judgment interest. Therefore, KDS is entitled to interest on this sum "to ensure that [it] is placed in as good a position as [it] would have been had the infringer entered into a reasonable royalty agreement." *Electro Scientific Industries, Inc. v. General Scanning, Inc.*, 247 F.3d 1341, 1354 (Fed.Cir.2001).[FN7] Pre-judgment interest will be awarded at the average prime rate from September 26, 1995, the date the West patent issued and the infringement commenced, until the date of judgment. See *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1066 (Fed.Cir.1983) (district court properly exercised discretion in awarding interest at prime rate

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                         Page 10
Not Reported in F.Supp.2d, 2002 WL 1489555 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

where patent holder was shown to have borrowed money at or above prime rate).

> FN7. Pre-judgment interest is not recoverable on the award of enhanced damages. *Lam, Inc. v. Johns-Manville Corp.,* 718 F.2d 1056, 1066 (Fed.Cir.1983).

F.

[10] The jury found that Wu willfully induced infringement of the West patent. (Jury Charge at 47-48). Consequently, he is jointly and severally liable for compensatory and enhanced damages. See *Crystal Semiconductor Corp. v. TriTech Microelectronics International, Inc.,* 246 F.3d 1336, 1361 (Fed.Cir.2001). Wu's argument that any jury award against him is precluded by the mandate rule has been raised previously and rejected by the court.

G.

The remaining issues involve the scope of injunctive or declaratory relief in this case. ADS recognizes that, based on the jury's verdict, Kent is entitled to a permanent injunction and a declaratory judgment. However, ADS maintains that any injunction must be limited to the accused devices and any other products or methods that "use cholesteric liquid crystals with a pitch length that reflects visible color." (ADS Mem. at 27). ADS further contends that the West patent should be declared valid and enforceable only with respect to those defenses that were actually litigated at trial.

1.

Injunctions in patent cases are subject to the requirements of Rule 65(d) of the Federal Rules of Civil Procedure. This rule provides:
Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

*10 Fed. R. Civ. P. 65(d); *see also KSM Fastening Systems, Inc. v. H.A. Jones Co.,* 776 F.2d 1522, 1525 (Fed.Cir.1985) A permanent injunction must be sufficiently specific to provide adequate notice of the conduct enjoined. *Signtech USA, Ltd. v. Vutek, Inc.,* 174 F.3d 1352, 1359 (Fed.Cir.1999), citing *Additive Controls & Measurement Systems Inc. v. Flowdata Inc.,* 986 F.2d 476, 479-80 (Fed.Cir.1993).

[11] ADS argues that the injunction must include language limiting its scope to the accused devices and any other products or methods that "use cholesteric liquid crystals with a pitch length that reflects visible color." (ADS Mem. at 27). Without this language, ADS fears that it may be subject to contempt for selling a new "Black and White" cholesteric liquid crystal display product that is similar to the patented invention but does not reflect color in the visible spectrum. The court appreciates this concern. However, it is beyond the scope of this proceeding to determine whether this new ADS product infringes the West patent.[FN8] Nor does the language requested by ADS make the injunction any more specific or less vague. The patent, as construed by the court, says what it says. The injunction will refer to the claims of the West patent and prohibit any further infringement by ADS. This satisfies the specificity requirements of Rule 65(d). See *KSM Fastening Systems,* 776 F.2d at 1526 (permanent injunction in a patent case enjoins the making, use, or sale both of devices actually found to infringe as well as any other devices that are no more than colorably different from the infringing products).

> FN8. The parties dispute whether "white" is a color in the visible spectrum covered by the West patent. Clearly, this issue cannot be resolved on the basis of letter briefs.

2.

[12] ADS also wants to limit the scope of declaratory relief to those defenses that were actually considered and rejected by the jury. Such a declaration would provide that the West patent is "not invalid for obviousness, for failure to name the correct inventors, for failure to contain a sufficient written description, for failure to disclose the best mode, and for failure to obtain an enabling disclosure." (ADS Prop. Jmt. at 2). However, there is no sound reason for the court to enter a declaratory judgment leaving open the possibility that the West patent may be invalid on some other ground. A patent is entitled to a presumption of validity until it is adjudged invalid. 35 U.S.C. § 282; *North American Vaccine,* 7 F.3d at

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1489555 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

Page 11

1579. All the invalidity defenses raised by ADS have been rejected by either the court or the jury. [FN9] To the extent that any other defenses exist, ADS is precluded from litigating them under the doctrine of collateral estoppel. See *Pall Corp. v. Fisher Scientific Co.*, 962 F.Supp. 210, 213 (D.Mass.1997), citing *Zip Dee, Inc. v. Dometic Corp.*, 905 F.Supp. 535, 537-38 (N.D.Ill.1995). Accordingly, Kent is entitled to a declaration that the West patent is valid and enforceable in all respects.

   FN9. The court has determined that West patent is not invalid by anticipation or indefiniteness. See Orders, 12/3/01 & 12/4/01; *supra* at § III-A. The jury rejected the defenses of obviousness, inequitable conduct, failure to name all inventors, failure to adequately describe the patented invention, failure to meet the enablement requirement, and failure to disclose the best mode for practicing the invention. (Jury Charge at 38-43).

CONCLUSION

Kent's motion for entry of judgment and ADS's motion for judgment as a matter of law or, alternatively, for new trial are granted in part and denied in part. The court will enter judgment as follows:

*11 1. KDS shall have and recover actual damages against ADSI and Wu, jointly and severally, in the amount of $44,073, together with pre-judgment interest at the average prime rate from September 26, 1995 until the date of judgment, and post-judgment interest at the legal rate until paid;

2. KDS shall have and recover enhanced damages against ADSI and Wu, jointly and severally, in the amount of $132,219, together with post-judgment interest at the legal rate from the date of judgment until paid;

3. ADSI and Wu, along with their officers, agents, servants, employees, attorneys, successors in interest and assigns, and any persons, corporations, organizations, or entities in active concert or participation with them who receive actual notice of this injunction by personal service or otherwise, are hereby permanently enjoined and restrained from directly or indirectly making, using, selling, offering for sale in the United States or importing into the United States, and from causing to be made, used, sold, or offered for sale in the United States or imported into the United States, any devices or methods that may infringe claims 1-8 and 10 of the West patent, including, without limitation, any of the 22 devices accused in this action, and from offering or advertising so to do, and from otherwise in any way infringing or inducing, aiding and abetting, or contributing to the infringement of any claim of the West patent;

4. Claims 1-8 and 10 of the West patent are valid and enforceable in all respects; and

5. All costs of court are taxed against ADSI and Wu, jointly and severally.

The parties are directed to confer on a form of proposed judgment, including the calculation of pre-judgment and post-judgment interest. A proposed final judgment must be hand delivered to the chambers of the magistrate judge by *July 19, 2002*. The judgment must be approved as to form by all counsel of record.

The court determines that this is an exceptional case warranting an award of reasonable attorney's fees to Kent as the prevailing party. See 35 U.S.C. § 285. The Supreme Court has admonished that "[a] request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). Ideally, the parties should be able to stipulate to a reasonable fee. *Id.*, 103 S.Ct. at 1941. With this admonishment in mind, counsel are directed to confer on the amount of attorney's fees and costs to be awarded in this case. If agreement cannot be reached, Kent shall file an application for attorney's fees and costs by *August 5, 2002*. The fee application must be supported by detailed and itemized records of the time spent and services performed by each attorney, the hourly rate charged for each service, and the costs incurred in connection with this case. Any fees awarded must be proportionate to the amount of the judgment and the results obtained on behalf of the client. In addition, counsel must exercise appropriate billing judgment in writing-off any excessive, redundant, or otherwise unnecessary time. Kent is directed to keep these and the other *Johnson* factors in mind when preparing its fee request.

*12 SO ORDERED.

N.D.Tex.,2002.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1489555 (N.D.Tex.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 12

Advanced Display Systems, Inc. v. Kent State University
Not Reported in F.Supp.2d, 2002 WL 1489555 (N.D.Tex.)

Briefs and Other Related Documents (Back to top)

• 3:96cv01480 (Docket) (May. 24, 1996)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Westlaw.**

Not Reported in F.Supp.2d                                                                 Page 1
Not Reported in F.Supp.2d, 2000 WL 33667069 (D.N.H.), 2000 DNH 099
(Cite as: Not Reported in F.Supp.2d)

Briefs and Other Related Documents
Aoki Technical Laboratory, Inc. v. FMT Corp., Inc.D.N.H.,2000.
NOT FOR PUBLICATION
United States District Court, D. New Hampshire.
AOKI TECHNICAL LABORATORY, INC.
v.
FMT CORPORATION, INC.
No. CIV. 96-42-JD.

April 24, 2000.

ORDER
DICLERICO, District J.

*1 Aoki moves for partial summary judgment seeking, pursuant to 35 U.S.C.A. § 287(a), a judgment limiting FMT's potential damages to allegedly infringing sales that occurred after Aoki received notice from FMT of its patents and infringement claim in January of 1996. In response, FMT contends that § 287(a) does not apply and that it provided actual notice to Aoki in June of 1991.[FN1] FMT also moves to strike the declaration of Michael Hoffman submitted by Aoki in support of its motion, and Aoki objects.

> FN1. FMT also requests partial summary judgment in its favor as part of its objection to Aoki's motion. FMT's request, however, is not included in the title of the motion and will not be considered as a cross-motion for summary judgment. See LR 7.1(a).

*Standard of Review*

"Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Atmel Corp. v. Information Storage Devices, Inc.*, 198 F.3d 1374, 1378 (Fed.Cir.1999) (citing Fed.R.Civ.P. 56(c)). The evidence is viewed in the light most favorable to the nonmoving party, and all reasonable inferences are drawn in its favor. See *Optical Disc Corp. v. Del Mar Avionics*, 208 F.3d 1324, 2000 WL 354753 at *7 (Fed.Cir. Apr. 7, 2000). Summary judgment will not be granted as long as a reasonable jury could return a verdict in favor of the nonmoving party. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Summary judgment motions are considered in light of the parties' substantive evidentiary burdens at trial. See *id.* at 254. The patentee, FMT in this case, has the burden of proving compliance with the marking statute, § 287(a). See *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed.Cir.1996). If the moving party, without the burden of proof on the issue for summary judgment, shows with record support that there is no material factual issue and that it is entitled to summary judgment, then the nonmoving party must show either that the moving party is not entitled to judgment as a matter or law or that material facts are in dispute. *Vivid Tech., Inc. v. American Science*, 200 F.3d 795, 806-07 (Fed.Cir.1999).

*Discussion*

Aoki contends that FMT's infringement damages, if any, must be limited because it was not given notice of infringement until January of 1996. The marking statute, § 287(a),[FN2] encourages patentees to notify the public of their patents by tying the accrual of damages for infringement to notice requirements. See *Maxwell*, 86 F.3d at 1112. Notice under the statute may be provided constructively, by marking the product with the patent number, or by actual notice to the infringer. See *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1469 (Fed.Cir.1997). FMT does not dispute that the products made by its licensee, Constar, were not marked with the patent numbers.[FN3] Instead, FMT contends that it gave actual notice and that the marking statute does not require marking because of the nature of the patents and the products made.

> FN2. 35 U.S.C.A. § 287(a) provides as follows:
> Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them, or importing any patented article into the United States, may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.," together with the number of the patent, or when, from the character of the article, this can not be done,

Case 1:05-cv-00292-JJF    Document 471-2    Filed 10/23/2006    Page 15 of 16

Not Reported in F.Supp.2d                                                                                               Page 2
Not Reported in F.Supp.2d, 2000 WL 33667069 (D.N.H.), 2000 DNH 099
(Cite as: Not Reported in F.Supp.2d)

by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice. In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.

FN3. Claim one in each of three patents, U.S. Patent No. 4,432,530 (" '530 patent"), U.S. Patent No. 4,521,369 (" '369 patent"), and U.S. Patent No. 4,588,620 (" '620 patent"), is at issue in this case.

"Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device." *Amsted,* 24 F.3d at 187. "Although there are numerous possible variations in form and content, the purpose of the actual notice requirement is met when the recipient is notified, with sufficient specificity, that the patent holder believes that the recipient of the notice may be an infringer." *SRI,* 127 F.3d at 1470. While an informational letter providing notice of a patent to an entire industry is insufficient, *see Amsted,* 24 F.3d at 187, it is not necessary that "the patentee threatens suit, demands cessation of infringement, or offers a license under the patent," *SRI,* 127 F.3d at 1470.

*2 FMT asserts that Aoki was given actual notice of infringement when Frederick Feddersen, president of FMT, saw an Aoki machine at the National Plastics Exposition in June of 1991 and talked with an Aoki representative, Mr. Tsugami. Feddersen says that he noticed that mechanics were taking preforms out of the machine and they looked like they had flat bottoms. He asked Mr. Tsugami if he could have a preform, and Tsugami said no because they were confidential. Feddersen then asked Tsugami if the bottom of the preforms were thinner than the side walls. Feddersen says that Tsugami smiled and asked him if he was from FMT, which Feddersen admitted. Tsugami said he had heard of FMT from the Nissei case, and Feddersen responded that that was one of the reasons he wanted to see the configuration of the bottom of the preform. Feddersen then offered Aoki a license and said that if Aoki did not negotiate a license with FMT and FMT were successful in the Nissei case, FMT would then file a suit against Aoki. In his deposition, Tsugami said he did not recall the conversation with Feddersen, but he did not deny that it might have occurred.

Aoki does not address the Feddersen notice, at all. Instead, Aoki says, "Prior to January 11, 1996, there is no dispute that there is absolutely *no evidence* that FMT ever communicated 'a specific charge of infringement by a specific accused product' to Aoki." Contrary to Aoki's assertion, the Feddersen and Tsugami discussion is at least some evidence of actual notice. Feddersen says that he offered Aoki a license, and in the context of the conversation a reasonable inference that could be draw is that the license would permit Aoki to use FMT's patent covering flat bottomed preforms with thicker side walls than bottoms. An offer of a license is actual notice. *See Ralston Purina Co. v. Far-Mar-Co., Inc.,* 772 F.2d 1570, 1577 (Fed.Cir.1985). In addition, Feddersen threatened suit, which, under the circumstances, also could reasonably be interpreted to mean an infringement suit under the same patents at issue in the Nissei case. *See SRI,* 127 F.3d at 1470.

Based on the present state of the record, the discussion, supported by Feddersen's affidavit and deposition testimony, at least presents a triable issue as to whether actual notice occurred at that time. Therefore, FMT has shown that Aoki did not establish that it is entitled to partial summary judgment with respect to limiting FMT's damages under § 287(a). *See Vivid Tech.,* 200 F.3d at 806-07.

Given the triable question as to actual notice, which would predate the Constar license, Aoki is not entitled to partial summary judgment based on the alternative issue of the marking requirement under § 287(a). Therefore, the remaining issues as to whether the marking statute applies to the patented preform or the patented mold-core rod combination made by Constar under license from FMT will not be addressed in the context of this motion. In addition, since the declaration of Michael Hoffman, submitted by Aoki in support of its motion for partial summary judgment, was not necessary to resolve the motion and was not considered by the court, it is also not necessary to consider FMT's motion to strike the declaration.

*Conclusion*

*3 For the foregoing reasons, the plaintiff's motion for partial summary judgment (document no. 299) is denied. The defendant's motion to strike (document no. 322) is denied.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 33667069 (D.N.H.), 2000 DNH 099
**(Cite as: Not Reported in F.Supp.2d)**

Page 3

SO ORDERED.

D.N.H.,2000.
Aoki Technical Laboratory, Inc. v. FMT Corp., Inc.
Not Reported in F.Supp.2d, 2000 WL 33667069 (D.N.H.), 2000 DNH 099

Briefs and Other Related Documents (Back to top)

• 1997 WL 33782602 (Trial Pleading) Anbwer to Second Amended Complaint (Dec. 12, 1997)
• 1997 WL 33782601 (Trial Pleading) Second Amended Complaint for Declaratory Judgment of Patent Invalidity, Unenforceability and Noninfringement (Aug. 28, 1997)
• 1:96cv00042 (Docket) (Jan. 22, 1996)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.