# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

LG.PHILIPS LCD CO., LTD.,

          Plaintiff/Counterclaim Defendant,

    v.

TATUNG COMPANY;
TATUNG COMPANY OF AMERICA, INC.;
CHUNGHWA PICTURE TUBES, LTD.;
AND VIEWSONIC CORPORATION,

          Defendants/Counterclaim Plaintiffs.

Civil Action No. 05-292 (JJF)

**REDACTED**

---

### PLAINTIFF LG.PHILIPS LCD CO., LTD.'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR NEW TRIAL OR REMITTITUR ON THE JURY'S DAMAGES VERDICT

THE BAYARD FIRM
Richard D. Kirk (#922)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899-5130
(302) 429-4208 (Telephone)

Counsel for Plaintiff
LG.PHILIPS LCD CO., LTD.

OF COUNSEL:
Gaspare J. Bono
Lora A. Brzezynski
Cass W. Christenson
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C.  20006
(202) 496-7500 (Telephone)
(202) 496-7756 (Facsimile)
October 23, 2006

# TABLE OF CONTENTS

Page

I.      NATURE AND STAGE OF THE PROCEEDINGS ................................................ 1

II.     SUMMARY OF ARGUMENT ......................................................................... 1

III.    STATEMENT OF FACTS .............................................................................. 3

        A.      The Testimony of LPL's Expert, Arthur Cobb, and CPT's Expert, Michael
                Wagner, Fully Support the Jury's Damage Award to LPL ........................... 3

                1.      Mr. Cobb Entirely Supported the Jury's Award .......................... 3

                2.      Mr. Wagner Agreed with Mr. Cobb on Several Key Points ............ 4

        B.      LPL Notified CPT of the '002 Patent in 2002 .......................................... 5

        C.      LPL's Closing Argument Was Completely Proper, and CPT's Objections
                Are Either Meritless or Untimely ......................................................... 5

IV.     DEFENDANTS FAIL TO ESTABLISH ANY BASIS TO GRANT A NEW
        TRIAL OR ORDER A REMITTITUR ................................................................ 6

        A.      Defendants Fail To Establish Any Basis for a New Trial Due To
                Misconduct ..................................................................................... 6

        B.      Defendants Fail To Establish Any Basis for a New Trial or Remittitur
                Regarding the Jury's Damages Award .................................................. 7

V.      THE JURY'S DAMAGE AWARD IS WELL-SUPPORTED IN THE RECORD .......... 8

        A.      Substantial Evidence, Including the Testimony of CPT's Damages Expert
                Mr. Wagner, Supports Mr. Cobb's Royalty Calculations and Amount ......... 8

                1.      Mr. Cobb's Testimony Was Reliable and Admissible,
                        ........................................................................................ 9

                        a.      Mr. Cobb's     Yield Rate Assumption Is Well-Supported ....... 10

                        b.      Mr. Cobb's Yield Rate Assumption Is Verifiable, and
                                Scientific Testing Is Not Required ................................. 12

                        c.      Mr. Wagner's Opinions Confirm the Reasonableness of a
                                Yield Rate Assumption and that Hearsay May Be
                                Considered .............................................................. 15

                2.      Defendants Failed to Meet Their Burden of Proving the
                        Availability of Non-Infringing Alternative Products ................... 16

        B.      The Jury Properly Adopted Mr. Cobb's     Cost Sharing Approach, a
                Royalty Rate Supported by Testimony of LPL and Mr. Wagner .............. 18

-i-

**REDACTED**

**TABLE OF CONTENTS**
(continued)

Page

VI.   CPT'S NOTICE ARGUMENT FAILS BOTH FACTUALLY AND LEGALLY ......... 19

    A.   The Jury Correctly Determined that CPT Had Notice in February 2002 ............ 19

        1.   LPL's February 2002 Letters Put CPT on Notice of the '002 Patent ...... 19

        2.   CPT Ignores the Undisputed Evidence of Notice in June 2002............... 21

        3.   Notice to Defendants Other than CPT Has No Bearing on Damages...... 23

    B.   Notice Should Be Deemed Unnecessary for Method Claims............................ 23

VII.  THE JURY'S VERDICT IS NOT TAINTED BY TRIAL MISCONDUCT ................. 24

    A.   LPL Did Not Solicit Improper Testimony from Mr. Cobb................................ 24

    B.   LPL Did Not Engage in Improper "Exhibit Stuffing" ................................... 26

    C.   LPL Did Not Prejudice the Jury During Closing Argument............................ 29

        1.   Zealous Advocacy is Not a Basis for a New Trial.................................. 29

        2.   LPL's Counsel Did Not Misstate the Law During Closing .................... 29

        3.   LPL's Counsel Did Not Make Prejudicial, Disparaging, or
           Personal Comments Regarding CPT or the Evidence ............................ 34

        4.   LPL's Counsel Did Not Prejudicially Mislead the Jury Regarding
           CPT or the Evidence ............................................................................ 38

VIII. CONCLUSION ............................................................................................................ 40

# TABLE OF AUTHORITIES

## CASES

*Advanced Display Sys., Inc. v. Kent State Univ.*,
    Nos. 3-96-CV-1480-BD, et al., 2002 WL 1489555 (N.D. Tex. July 10, 2002) ...................... 23

*Alholm v. American Steamship Co.*,
    144 F.3d 1172 (8th Cir. 1998) .......................................................................................... 31

*American Med. Sys., Inc. v. Medical Eng'g Corp.*,
    6 F.3d 1523 (Fed. Cir. 1993) ........................................................................................... 23

*Amstead Indus., Inc. v. Buckeye Steel Castings Co.*,
    24 F.3d 178 (Fed. Cir. 1994) ........................................................................................... 21

*Anastasio v. Schering Corp.*,
    838 F.2d 701 (3d Cir. 1988) ....................................................................................... 31, 32

*Aoki Technical Lab., Inc. v FMT Corp.*,
    No. Civ 96-42-JD, 2000 WL 33667069 (D.N.H. Apr. 24, 2000) ..................................... 22

*Articulate Sys., Inc. v. Apple Computer, Inc.*,
    53 F. Supp. 2d 78 (D. Mass. 1999) ................................................................................. 22

*Boston Scientific Scimed, Inc. v. Cordis Corp.*,
    434 F. Supp. 2d 308 (D. Del. 2006) ................................................................................. 22

*Blanche Road Corp. v. Bensalem Twp.*,
    57 F.3d 253 (3d Cir. 1995) .............................................................................................. 33

*C.P. Interests, Inc v. Cal. Pools, Inc.*,
    238 F.3d 690 (5th Cir. 2001) ..................................................................................... 25, 26

*Ceeco Mach. Mfg., Ltd. v. Intercole, Inc.*,
    817 F. Supp. 979 (D. Mass. 1992) ............................................................................ 20, 22

*Coca-Cola Co. v. Pepsico, Inc.*,
    No. CIVA 102-CV-2887-RWS, 2004 WL 4910334 (N.D. Ga. Sept. 29, 2004) ................ 24

*Cooper Distributing Co. v. Amana Refrigeration, Inc.*,
    180 F.3d 542 (3rd Cir. 1999) .................................................................................... 25, 40

*Cryovac, Inc v. Pechiney Plastic Packaging, Inc.*,
    430 F. Supp. 2d 346 (D. Del. 2006) ................................................................. 11, 12, 13, 14

*Crystal Semiconductor Corp. v. Tritech Microelecs., Int'l, Inc.*,
    246 F.3d 1336 (Fed. Cir. 2001) ...................................................................................... 23

## TABLE OF AUTHORITIES
### (continued)

Page

*Cummins v. Lyle Indus.*,
  93 F.3d 362 (7th Cir. 1996) ............................................................... 12, 13, 14

*Draper v. Airco, Inc.*,
  580 F.2d 91 (3d Cir. 1978) .................................................................. 33, 36

*Dunn v. HOVIC*,
  1 F.3d 1371, *modified*, 13 F.3d 58 (3d Cir. 1993) ................................ 29, 36, 38

*In re Elonex Phase II Power Management Litigation*,
  Nos. C.A. 01-082 GMS, et al., 2002 WL 433614 (D. Del. Mar. 20, 2002) ............ 23

*Falkowski v. Johnson*,
  148 F.R.D. 132 (D. Del. 1993) ............................................................. 33, 34, 36

*Fineman v. Armstrong World Industries, Inc.*,
  980 F.2d 171 (3d Cir. 1992) ................................................................ 36, 37

*Fleck v. KDI Sylvan Pools, Inc.*,
  981 F.2d 107 (3d Cir. 1992) ................................................................. 38

*Forest Labs., Inc. v. Ivax Pharmaceuticals., Inc.*,
  237 F.R.D. 106 (D. Del. 2006) .............................................................. 24

*Fuji Photo Film Co. v. Jazz Photo Corp.*,
  249 F. Supp. 2d 434, (D.N.J. 2003), *aff'd*, 394 F.3d 1368 (Fed. Cir. 2005) ............ 16

*Gargoyles, Inc. v. United States*,
  37 Fed. Cl. 95, *aff'd*, 113 F.3d 1572 (Fed. Cir. 1997) .............................. 14

*Gart v. Logitech, Inc.*,
  254 F.3d 1334 (Fed. Cir. 2001) ............................................................ 20, 21

*Greate Bay Hotel & Casino v. Tose*,
  34 F.3d 1227 (3d Cir. 1994) ................................................................. 28

*Hanson v. Alpine Valley Ski Area, Inc.*,
  718 F.2d 1075 (Fed. Cir. 1983) ............................................................ 23, 24

*Hill v. Reederei F. Laeisz G m b H*,
  435 F.3d 404, 423 (3d. Cir. 2006), *cert. denied*, ___ S. Ct. ___,
  74 U.S.L.W. 3704, 2006 WL 1583462 (Oct. 2, 2006) ....................................... 9

*Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*,
  426 F. Supp. 2d 211 (D. Del. 2006) ........................................................ 7

**TABLE OF AUTHORITIES**
(continued)

Page

*Inter Medical Supplies, Ltd. v. EBI Medical Systems, Inc.,*
   181 F.3d 446 (3d Cir. 1999) ............................................................... 12, 14, 15, 33

*Joy Technologies, Inc. v. Flakt, Inc.,*
   820 F. Supp. 802 (D. Del. 1993), *aff'd*, 60 F.3d 843 (Fed. Cir. 1995) ........................ 6

*Kaufman Co. v. Lantech, Inc.,*
   926 F.2d 1136 (Fed. Cir. 1991) ................................................................... 16, 17

*Konstantopoulos v. Westvaco Corp.,*
   112 F.3d 710 (3d Cir. 1997) ............................................................................ 28

*Laplace-Bayard v. Batlle,*
   295 F.3d 157 (1st Cir. 2002) ........................................................................... 25

*Lewis v. Rego Co.,*
   757 F.2d 66(3d Cir. 1985) .............................................................................. 11

*Lucent Techs., Inc. v. Newbridge Networks Corp.,*
   168 F. Supp. 2d 181 (D. Del. 2001) ....................................................... 6, 7, 31, 32

*Micro Chem., Inc. v. Lextron, Inc.,*
   317 F.3d 1387 (Fed. Cir. 2003) ............................................................. 12, 14, 17

*Monsanto Co. v. Ralph,*
   382 F.3d 1374 (Fed. Cir. 2004) ......................................................................... 7

*Montgomery County v. Microvote Corp.,*
   320 F.3d 440 (3d Cir. 2003) ........................................................................... 13

*Mosaid Tech., Inc. v. Samsung Elecs. Co.,*
   362 F. Supp. 2d 526 (D.N.J. 2005) .................................................................... 21

*Motorola, Inc. v. Interdigital Technology Corp.,*
   930 F. Supp. 952 (D. Del. 1996), *aff'd in part, rev'd in part,*
   121 F.3d 1461 (Fed. Cir. 1997) .................................................................. 38, 39

*nCUBE Corp. v. SeaChange International, Inc.,*
   313 F. Supp. 2d 361 (D. Del. 2004), *aff'd*, 436 F.3d 1317 (Fed. Cir. 2006) .................. 7

*Oiness v. Walgreen Co.,*
   88 F.3d 1025 (Fed. Cir. 1996) ........................................................................... 8

*Philips Electronics N. Am. Corp. v. Contec Corp.,*
   312 F. Supp. 2d 649 (D. Del. 2004), *aff'd*, 277 Fed. Appx. 981 (Fed. Cir. 2006) ........ 21, 24

640243v1

**TABLE OF AUTHORITIES**
(continued)

Page

*Price v. Delaware Department of Corrections*,
    40 F. Supp. 2d 544 (D. Del. 1999)...........................................................................7

*Rapine v. Harrah's Atlantic City*,
    No. 2:04-CV-00590-LDD, 2006 U.S. Dist. LEXIS 11543 (E.D. Pa. Mar. 21, 2006)..............17

*Remington Arms Co. v. Modern Muzzleloading, Inc.*,
    No. 2:97-CV-00660, 1999 WL 281341 (M.D.N.C. Feb. 9, 1999)...........................................19

*Riles v. Shell Exploration and Production Co.*,
    298 F.3d 1302 (Fed. Cir. 2002).................................................................................16

*Schatzman v. Martin Newark Dealership, Inc.*,
    233 F. Supp. 2d 620 (D. Del. 2002)..........................................................................8

*Slimfold Manufacturing Co. Inc. v. Kinkead Industries, Inc.*,
    932 F.2d 1453 (Fed. Cir. 1991)...............................................................................18

*Spruill v. National Railroad Passenger Corp.*,
    No. 93-4706, 1995 WL 534273 (E.D. Pa. Sept. 5, 1995)......................................................36

*SRI International, Inc. v. Advanced Technology Laboratories, Inc.*,
    127 F.3d 1462 (Fed. Cir. 1997)...............................................................................20

*Starceski v. Westinghouse Electric Corp.*,
    54 F.3d 1089 (3d Cir. 1995).................................................................................8

*State Contracting & Engineering Corp. v. Condotte America, Inc.*,
    346 F.3d 1057 (Fed. Cir. 2003)...............................................................................7

*Stryker Corp. v. Intermedics Orthopedics., Inc.*,
    96 F.3d 1409 (Fed. Cir. 1996)...............................................................................17

*Tashjian v. Boston & Maine R.R.*,
    80 F.2d 320 (1st Cir. 1935)...........................................................................29, 30, 33

*Tenneco Automotive Operating Co. v. Visteon Corp.*,
    375 F. Supp. 2d 360 (D. Del. 2005).....................................................................19, 21

*In re TMI Litigation*,
    193 F.3d 613 (1999), *amended by* 199 F.3d 158 (3d Cir. 2000)........................................28

*Tracinda Corp. v. DaimlerChrysler AG*,
    362 F. Supp. 2d 487 (D. Del. 2005)...................................................................24, 25, 26

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Tristrata Technology, Inc. v. Mary Kay, Inc.*,
   423 F. Supp. 2d 456 (D. Del. 2006)..................................................... 17

*Waldorf v. Shuta*,
   142 F.3d 601 (3d Cir. 1998)............................................................ 40

## STATUTES AND RULES

35 U.S.C. § 287................................................................................. 23

Fed. R. Evid. 602............................................................................. 22

Fed. R. Evid. 703................................................................................ 9

## OTHER AUTHORITIES

11 Charles A. Wright, Arthur R. Miller, & Mary Kay Kane,
   *Federal Practice & Procedure* § 2815 (2d ed. 1995) ................................. 7

Plaintiff LG.Philips LCD Co., Ltd. ("LPL") submits this brief in opposition to the Motion for New Trial or Remittitur on the Jury Damages Verdict filed by Defendants Chunghwa Picture Tubes, Ltd. ("CPT"), Tatung Company, Tatung Company of America, Inc., and ViewSonic Corporation (collectively, "Defendants").

## I.    NATURE AND STAGE OF THE PROCEEDINGS

In May 2005, LPL filed its Complaint for patent infringement against Defendants CPT, Tatung, Tatung America, and ViewSonic. On July 27, 2006, the jury unanimously returned a verdict in favor of LPL and awarded LPL the full amount of damages that LPL requested at trial, $52,477,000.00. The jury also found that Defendants' infringement was willful. On September 1, 2006, LPL filed a motion for entry of judgment on the verdict, also seeking enhanced damages, attorneys' fees and expenses, and pre-judgment interest. LPL's motion is fully briefed. On October 10, 2006, Defendants filed three motions that collectively seek judgment as a matter of law, a new trial, a remittitur, and unquantified attorneys' fees and expenses.

## II.    SUMMARY OF ARGUMENT

1.    Neither a new trial or remittitur is warranted because the damage award is fully supported by substantial evidence in the record. LPL's damages expert, Arthur Cobb, relied on considerable evidence by the inventor and several LPL engineers to support his assumption, which was quite conservative considering the testimony

.    Indeed, CPT's expert reached a                                based on the evidence indicating a                                . CPT's own designee admitted that

Further, CPT's expert conceded that Mr. Cobb correctly calculated

Accordingly, the jury's damage award is not only reasonable but largely undisputed.

**REDACTED**

2.     A new trial also is not warranted because Mr. Cobb never testified outside the scope of his report. His                                    remained consistent from his report to his deposition to the trial. His underlying opinions never changed and was at all times relied on by substantial, verifiable evidence. Further, LPL never solicited improper testimony from Mr. Cobb. The simply confirmatory testimony of an additional conversation with two plant engineers was solicited on cross examination in response to direct questions by CPT's counsel.

3.     The undisputed evidence establishes that LPL's February 2002 letters were sufficiently specific to put CPT on notice that all of the products it manufactured using the claimed method infringed the patent. In addition, CPT never disputed the fact that LPL gave additional notice at a June 2002 meeting. The evidence demonstrates that LPL took multiple affirmative steps to notify CPT of the '002 Patent in 2002, and therefore there is no basis for overturning the jury's conclusion that notice was complete as of February 27, 2002.

4.     LPL's Exhibits 12 and 13 were not "stuffed" exhibits as they were simply excerpts from a larger book of the *very same* images contained on four CDs produced by CPT and admitted as PTX's 4-7 without objection. Further, Defendants waived any objection they had by never objecting to these Exhibits, unlike other exhibits, until the last day of trial, thereby denying LPL the opportunity to cure any alleged prejudice. A new trial should thus be denied.

5.     LPL's closing argument was not improper and did not contain misstatements of the law. Further, any potential prejudice caused by the alleged statements were cured by the Court's jury instructions. The fact that Defendants engaged in similar conduct during their opening and closing arguments also establishes that Defendants' allegations are meritless. Defendants also have waived all objections that they failed to raise during the trial because they denied the Court the ability to correct for any alleged error.

640241v1

-2-

**REDACTED**

III.    **STATEMENT OF FACTS**

    A.    **The Testimony of LPL's Expert, Arthur Cobb, and CPT's Expert, Michael Wagner, Fully Support the Jury's Damage Award to LPL**

        1.    Mr. Cobb Entirely Supported the Jury's Award

LPL's expert, Arthur Cobb, relied on multiple, reliable sources to support his assumption of a                              attributable to the use of the '002 Patent technology.  The evidence at trial reflects that actual yield rate benefits are

neither party had supporting documents, Mr. Cobb testified that he relied on the best evidence and the kind of evidence reasonably relied on by experts.  *Id.* at 1037:4 - 1038:6.

    Mr. Cobb also

    Mr. Cobb reached a damages amount of $52,477,000, the amount of the jury award.  *Id.* at 1058:7 - 1059:10.

**REDACTED**

2.     Mr. Wagner Agreed with Mr. Cobb on Several Key Points

CPT's expert, Michael Wagner, testified at trial concerning the amount of a reasonable

royalty and agreed with Mr. Cobb concerning many fundamental points.[1]  Mr. Wagner testified,

for example, regarding the

Mr. Wagner also confirmed that, among competitors,                          is appropriate.

Moreover, Mr. Wagner testified that he believed that a              was a reasonable

assumption to make in this case.

                              Mr. Wagner assumed that the '002 Patent offered

                for his opinions regarding a reasonable royalty for all accused products.  *Id* at

1903:7 - 1904:3.

_____

[1] Mr. Wagner also generally agreed that

**REDACTED**

**B.**     **LPL Notified CPT of the '002 Patent in 2002**

In February 2002, LPL sent two letters to CPT regarding the '002 Patent. First, on February 8, 2002, LPL sent a letter specifically informing CPT of the '002 Patent and other patents for which CPT needed to discuss licensing terms with LPL. *See* PTX 46 (Ex. 3). After CPT failed to respond, LPL sent another letter on February 27, further confirming that LPL objected to CPT's infringement of LPL's patents identified in the February 8 letter, including the '002 Patent. *See* PTX 142 (Ex. 4); Trial Tr. 608:23 - 609:17.

After multiple requests, CPT finally agreed to meet with LPL. Accordingly, LPL and CPT met in June 2002 at CPT's offices in Taiwan. *See* Trial Tr. 613:3-14. At that meeting, LPL made a detailed presentation explaining how CPT's products infringed the '002 Patent. Mr. Ho Lee testified at trial that the '002 Patent was discussed during this meeting and that LPL accused specific CPT products of infringing the '002 Patent. *See id.* at 613:15 - 614:10; 615:19 - 617:14; 618:24 - 620:3; PTX 47 (Ex. 5). CPT offered no evidence to contradict Mr. Lee's testimony.

**C.**     **LPL's Closing Argument Was Completely Proper, and CPT's Objections Are Either Meritless or Untimely**

After LPL delivered a completely proper closing argument, Defendants had all night to prepare their closing and rebut LPL's closing. Defendants nevertheless objected to four issues from LPL's closing: (1) alleged misstatements of the law regarding anticipation; (2) alleged misstatements of the law regarding patent notice; (3) alleged comments on Defendants' witnesses; and (4) alleged improper comments on the Defendants' objections to the evidence.

With respect to the first two issues, the Court did not conclude that any such misstatement of law had occurred, but nonetheless, stated that the jury instructions would cure any such issues. Trial Tr. 2099:15-18. The Court then further instructed the jury regarding the law of notice and anticipation. In addition, with respect to the other two issues, the Court stated

that he would ensure that the jury instructions addressed the Defendants' objections. *Id.* at 2101:5-9. The Court then gave the requested instruction to the jury. *See, e.g., id.* at 2223:1-18. Although Defendants attempt to raise several new objections for the first time in its post-trial motion, such objections are untimely and have been waived.

## IV.    DEFENDANTS FAIL TO ESTABLISH ANY BASIS TO GRANT A NEW TRIAL OR ORDER A REMITTITUR

### A.    Defendants Fail To Establish Any Basis for a New Trial Due To Misconduct

Defendants fail to establish any basis for a new trial. A new trial based on the greater weight of the evidence is reserved for rare cases involving partiality, prejudice, mistake, or corruption. *See Joy Techs., Inc. v. Flakt, Inc.*, 820 F. Supp. 802, 805 (D. Del. 1993) (Farnan, J.), *aff'd*, 60 F.3d 843 (Fed. Cir. 1995). "Only if the verdict is so unreasonable as to offend the conscience of the Court should the Court disturb the verdict." *Id.* (citing *Motter v. Everest & Jennings, Inc.*, 883 F.2d 1223, 1230 (3d Cir. 1989)). "Specifically, the Court cannot grant a new trial 'merely because the [C]ourt would have weighed the evidence differently and reached a different conclusion.'" *Lucent Techs., Inc. v. Newbridge Networks Corp.*, 168 F. Supp. 2d 181, 257 (D. Del. 2001) (Farnan, J.) (quoting *Wilson v. Phila. Det. Ctr.*, 986 F. Supp. 282, 287 (E.D. Pa. 1997)). Motions for new trial based on the weight of the evidence, therefore, are viewed cautiously to avoid merely substituting the court's judgment for that of the jury. *See Joy Techs.*, 820 F. Supp. at 805 ("A jury verdict is not to be set aside merely on the basis of the Court substituting its judgment for that of the jury."). Rather than reweighing evidence, the Court should deny a new trial in all but the exceptional case in which a new trial is necessary to avoid a miscarriage of justice, or if the verdict "cries out to be overturned" or "shocks [the Court's] conscience." *Lucent Techs., Inc.*, 168 F. Supp. 2d at 251 (citing *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1353 (3d Cir. 1991)).

640241v1

-6-

Similarly, a new trial is not warranted based on alleged attorney misconduct except in cases where the conduct is so egregious that the jury could not have rendered a fair verdict. *Lucent Techs*, 168 F. Supp. 2d at 260 (defendants must show "that the attorney's conduct constitutes misconduct, and not merely aggressive advocacy, and that the misconduct is prejudicial in the sense of affecting a substantial right"). A party's failure to object during closing argument, moreover, waives any right to seek a new trial based on allegedly improper comments in closing. *See nCUBE Corp. v. SeaChange Int'l, Inc*, 313 F. Supp. 2d 361, 386 (D. Del. 2004) (Farnan, J.), *aff'd,* 436 F.3d 1317 (Fed. Cir. 2006). Because the jury's verdict in this case is well-supported and untainted, and Defendants failed to object at trial in any event, the Court should deny a new trial.

### B. Defendants Fail To Establish Any Basis for a New Trial or Remittitur Regarding the Jury's Damages Award

Defendants also fail to establish any basis for a remittitur. A jury has broad discretion to award damages based on the evidence presented at trial. Indeed, the jury's award of a reasonable royalty "must be upheld unless the amount is 'grossly excessive or monstrous,' clearly not supported by the evidence, or based only on speculation or guesswork." *State Contracting & Eng'g Corp. v. Condotte Am., Inc*, 346 F.3d 1057, 1072 (Fed. Cir. 2003) (quoting *Brooktree Corp. v. Advanced Micro Devices, Inc*, 977 F.2d 1555, 1580 (Fed. Cir. 1992)); *see also Monsanto Co v. Ralph*, 382 F.3d 1374, 1383 (Fed. Cir. 2004) ("jury's award of damages is entitled to deference"); *Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 426 F. Supp. 2d 211, 215 (D. Del. 2006).

Similarly, a remittitur is inappropriate unless the damages awarded are so excessive as to "shock the conscience of the court." *Price v. Del. Dep't of Corr.*, 40 F. Supp. 2d 544, 551 (D. Del. 1999) (quoting 11 Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, *Federal*

*Practice & Procedure* § 2815 (2d ed. 1995) ("Remittitur is said to be proper 'where no clear

judicial error or pernicious influence can be identified, but where the verdict is so large as to

shock the conscience of the court.'")). Remittitur is reserved for a damage award so "'excessive

as . . . to exceed "any rational appraisal or estimate of the damages that could be based upon the

evidence before the jury."'" *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1101 (3d Cir.

1995) (citing *Brunnemann v. Terra Int'l, Inc.*, 975 F.2d 175, 178 (5th Cir. 1992)). Any remittitur

should, moreover, reflect the "highest amount the jury could have 'properly awarded based on

the relevant evidence.'" *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1030 (Fed. Cir. 1996) (citation

omitted).

   Because the jury's damage award in this case is well-supported, the Court should deny a

remittitur. The royalty amount is consistent with the evidence at trial, including Mr. Cobb's

detailed expert testimony and calculations. Trial Tr. 1058:7 - 1063:10. Further, CPT's own

expert conceded that Mr. Cobb

                                                                        The

Court thus should deny Defendants' request for a new trial or remittitur concerning the jury's

damage award. *See Schatzman v. Martin Newark Dealership, Inc*, 233 F. Supp. 2d 620, 624 (D.

Del. 2002) (Farnan, J.) (denying remittitur because verdict was supported by lay and expert

testimony).

**V.    THE JURY'S DAMAGE AWARD IS WELL-SUPPORTED IN THE RECORD**

   **A.    Substantial Evidence, Including the Testimony of CPT's Damages Expert
   Mr. Wagner, Supports Mr. Cobb's Royalty Calculations and Amount**

   Mr. Cobb relied on qualified expert and lay witness testimony in reaching his

            including the testimony of the inventor

                 and on information Mr. Cobb received from several knowledgeable and

640241v1

-8-

REDACTED

informed engineers at LPL. Significantly, Mr. Cobb's opinions also are largely supported by CPT's own expert, Mr. Wagner, and rely on appropriate methodology and assumptions commonly made by expert witnesses. The Court should reject CPT's unfounded attacks on Mr. Cobb, whom the jury implicitly found to be a more credible witness than Mr. Wagner on the primary issue disputed by the experts --

The jury's damages award is entirely consistent with the                        and is supported by substantial evidence.

1.    Mr. Cobb's Testimony Was Reliable and Admissible.

As the Court ruled after Defendants' ill-advised voir dire of Mr. Cobb during trial, "[a] damage witness can rely on other expert testimony and fact testimony in the record, that's what he's testified he's done as most damages experts do."[2] Trial Tr. 1000:3-8; *see also* Fed. R. Evid. 703; *Hill v. Reederei F. Laeisz G m b H.*, 435 F.3d 404, 423 (3d Cir.) (citing Rule 703, which provides that "the facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing"), *cert. denied*, ___ S. Ct. ___, 74 U.S.L.W. 3704, 2006 WL 1583462 (Oct. 2, 2006). This Court found that Mr. Cobb could rightfully rely on the testimony in the record to establish the yield rate savings. Defendants now rely on the same argument that already failed at trial.

LPL showed the jury substantial and cumulative evidence to support the $52,477,000 damage award, and in particular the                        is specifically challenged by Defendants. Mr. Cobb's analysis was thorough and fully-supported by reliable evidence, the very kind of

---

[2] The Court also correctly denied Defendants' motion in limine (D.I. 306) that sought to preclude Mr. Cobb from testifying regarding his yield rate assumption. *See* D.I. 368.

REDACTED

evidence reasonably relied upon by experts in the field and also relied upon by CPT's damages expert, Mr. Wagner.

      a.  <u>Mr. Cobb's</u>       <u>Assumption Is Well-Supported</u>

_____

3

*(footnote continued on next page)*

640241v1

**REDACTED**

. In addition

to their personal knowledge and experience, Mr. Cobb testified that

Experts may rely on evidence, even if not otherwise admissible, if of the type regularly relied on

by experts in the field. *Cryovac, Inc. v. Pechiney Plastic Packaging, Inc.*, 430 F. Supp. 2d 346,

363 (D. Del. 2006); *Lewis v. Rego Co.*, 757 F.2d 66, 73-4 (3d Cir. 1985). Information regularly

relied on by damage experts includes hearsay evidence from employees of the party for which

---

*(footnote continued from previous page)*

[4] Mr. Cobb also recalled on redirect after seeing a video of                on cross that

[5] Defendants suggest that because Mr. Cobb did not identify at his deposition the names of the two LPL
employees to whom                          the evidence was unreliable. Defendants fail to advise
the Court that
        . almost *three weeks prior* to Mr. Cobb's deposition and that Mr. Cobb specifically reminded defense

*(footnote continued on next page)*

REDACTED

they are testifying. *Micro Chem., Inc. v. Lextron, Inc*, 317 F.3d 1387, 1390, 1392 (Fed. Cir. 2003) (affirming admissibility of an expert who based his opinion on statements made by employees of the parties and who did not independently investigate the industry at issue nor personally review the parties' financial statements); *Inter Med Supplies, Ltd. v. EBI Med. Sys*, *Inc.*, 181 F.3d 446, 462-63 (3d Cir. 1999).

The recollection of an individual with technical experience (such as Ho Lee and Scott Holmberg) is also sufficient evidence on which to base an expert opinion, even if there is no data confirming that recollection. *Cryovac*, 430 F. Supp. 2d at 351, 363 (permitting an expert opinion based on the over twenty year recollection of an individual without any supporting test results or laboratory data). Further, unlike the expert in *Cummins v. Lyle Indus.*, 93 F.3d 362 (7th Cir. 1996), who could not identify the persons with whom he had spoken,

[6] Accordingly, Mr. Cobb based his yield rate assumption on sufficient, reliable evidence.

      b.    <u>Mr. Cobb's Yield Rate Assumption Is Verifiable, and Scientific Testing Is Not Required</u>

Independent testing or verification of the information supporting an expert's opinion is not a prerequisite for admissibility of that opinion. *Micro Chem*, 317 F.3d at 1392 (affirming the admissibility of opinion testimony by an expert who did not independently investigate the

---

*(footnote continued from previous page)*

counsel of that during his deposition

[6]

**REDACTED**

industry nor personally review the parties' financial statements); *Cryovac*, 430 F. Supp. 2d at 351, 363 (allowing expert testimony that relied on the recollection of a third party without any test results or laboratory data to confirm that recollection).

That the '002 patent is responsible for an increased yield rate is undisputed.

Defendants' expert, Mr. Wagner, agreed with Mr. Cobb that,

7

Defendants' reliance on *Montgomery County v. Microvote Corp*., 320 F.3d 440 (3d Cir. 2003) is misplaced. In that case, unlike here, the expert witness had no knowledge whatsoever about the source or basis for the documents that were the entire basis for his opinion. *Id.* at 448-49. Similarly, Defendants' reliance on a product liability case, *Cummins*, 93 F.3d 362, where testing is particularly important in showing the feasibility of alternative designs, is simply

---

7

640241v1                              -13-

**REDACTED**

inapplicable here. Even in *Cummins*, however, the court cautioned that they were not suggesting "hands-on testing" is a prerequisite to the admission of expert testimony. *Id.* at 369.

As with the defendant in *Micro Chemical*, Defendants here confuse the "requirement for sufficient facts and data with the necessity for a reliable foundation in principles and method, and end up complaining that [the] testimony was not based on 'reliable facts.'" *Micro Chem.*, 317 F.3d at 1392. It is the fact-finder's role to weigh the credibility of information forming the basis of an expert's opinion. *Id.* at 1392-93 (affirming the admissibility of expert opinion testimony that relied on disputed facts); *Inter Med. Supplies*, 181 F.3d at 462-63 (explaining that evaluating the credibility of conflicting expert opinions is for the jury to determine); *Cryovac*, 430 F. Supp. 2d at 351, 363 (noting that an expert's reliance on the recollection of a third party without any documentary corroboration goes to the weight, not admissibility of the expert's testimony).

In addition, approximation and uncertainty is inherent to the hypothetical negotiation analysis: "it is critical to keep in mind . . . that '[t]he whole notion of a reasonable royalty is a device in the aid of justice, by which that which is really incalculable shall be approximated.'" *Gargoyles, Inc. v. United States*, 37 Fed. Cl. 95, 103 (quoting *Cincinnati Car Co. v. N.Y. Rapid Transit Corp.*, 66 F.2d 592, 595 (2d Cir. 1933)), *aff'd*, 113 F.3d 1572 (Fed. Cir. 1997).

Defendants' criticism of Mr. Cobb's basis and assumptions is therefore surprising. CPT's own expert, Mr. Wagner,                                            . Even though

**REDACTED**

evidence at trial supported                          Mr. Cobb concluded          was

appropriate. *Id.* at 1038:21-24. It was then the jury's role to weigh the credibility of the experts

and other evidence at trial to decide on an appropriate rate. *Inter Med. Supplies*, 181 F.3d at 462-

63. That the Defendants disagree with the jury's decision

in an exercise that is inherently an approximation is no basis to overturn the damage award.

    c. <u>Mr. Wagner's Opinions Confirm the Reasonableness of a Yield<br>Rate Assumption and that Hearsay May Be Considered</u>

  Mr. Wagner assumed                          , comparable to the       that Mr. Cobb

assumed based on all available information. Significantly, moreover, Mr. Wagner testified that

his       assumption was *reasonable based on the evidence indicating a yield benefit range*

                                        Mr. Cobb relied on this same reasonable basis

in selecting the                               . Mr. Wagner's testimony confirms that

Mr. Cobb had a proper basis for making his assumptions and forming his opinions in this case.

  Mr. Wagner also relied on hearsay for purposes of certain opinions, including

information far less reliable than that relied on by Mr. Cobb. During his deposition and at trial,

  Mr. Wagner also admitted at deposition that he based his opinion

  CPT cannot fairly contend that Mr. Cobb could not have relied on direct discussions

**REDACTED**

with LPL employees that had personal knowledge concerning LPL's manufacturing operations.

In sum, the jury reasonably selected Mr. Cobb's            model as more appropriate than

Mr. Wagner's       model based on all of the evidence and the jury's own credibility

determinations.  The Court should uphold the jury's verdict and deny a new trial on damages.

2.    Defendants Failed to Meet Their Burden of Proving the Availability of
       Non-Infringing Alternative Products

The Defendants have the burden of establishing an acceptable non-infringing alternative

to the patented technology.  *Fuji Photo Film Co. v. Jazz Photo Corp.*, 249 F. Supp. 2d 434, 456

n.27 (D.N.J. 2003), *aff'd*, 394 F.3d 1368 (Fed. Cir. 2005).  An "acceptable" non-infringing

substitute "must not have a disparately higher price than or possess characteristics significantly

different from the patented product." *Kaufman Co. v. Lantech, Inc.*, 926 F.2d 1136, 1142 (Fed.

Cir. 1991).  While the Defendants expert testified about

Defendants failed to establish that           was an "acceptable" non-infringing alternative to the

patented technology.  Indeed, Defendants' experts offered no evidence that the precise

characteristics of        technology are the same as the patented technology and most

importantly, offered no testimony that the relative cost of         technology is the same or lower

than the patented technology.[8]  Trial Tr. 1581:18 - 1584:5 (CPT's expert, Dr. Howard, never

testified

---

[8] Defendants' reliance on *Riles v. Shell Exploration and Production Co*, 298 F.3d 1302 (Fed. Cir. 2002),
is misplaced.  First, the *Riles* court merely stated that the existence of acceptable non-infringing
alternatives may have altered the expert's damages calculation.  *Id.* at 1312.  Further, the court found the
expert's damages model to be flawed because he included the defendant's complete oil platform in its
calculations, even though the patented method was only one part of the defendant's platform construction.
*Id.* at 1313.  Thus, the court concluded that the expert improperly calculated the potential value of the
patented method at the time of infringement.  *Id.*  There are no such similar allegations here.  Rather, Mr.
*(footnote continued on next page)*

REDACTED

On the other hand, Mr. Cobb testified regarding the relative cost of the infringing

technology by the Defendants as compared with the cost of alternatives.  Specifically, Mr. Cobb

testified that if CPT did not use the patented technology,

                                                    Thus,

was not a viable non-infringing alternative at least because the cost of such alternative would

have a disparately higher price than the patented product.  *Kaufman*, 926 F.2d at 1142.  In light

of Mr. Cobb's testimony, it was reasonable for the jury to conclude that        was not a cost-

effective alternative to the patented technology.[9]  In any event, Mr. Cobb's testimony was

admissible and reliable

                                          Trial Tr. 1062:15 - 1068:13;

*see Tristrata Tech., Inc. v. Mary Kay, Inc.*, 423 F. Supp. 2d 456, 464 (D. Del. 2006) (Farnan, J.)

(expert not required to rule out all alternative explanations for expert testimony to be reliable).

        Importantly, the jury verdict and the finding of willfulness further undermines the

Defendants' position.  *See Stryker Corp. v. Intermedics Orthopedics, Inc.*, 96 F.3d 1409, 1418

n.3 (Fed. Cir. 1996) (stating that the jury's finding of willfulness undermines Defendants'

argument that there were non-infringing alternatives).  Here, not only did the jury find

---

*(footnote continued from previous page)*

Cobb based his damage model on a hypothetical negotiation at the time of infringement and determined a reasonable royalty that was directly linked to the patented method.  Trial Tr. 1068:8-17.

[9] The jury can reject expert testimony presented during the trial.  *Micro Chem.*, 317 F.3d at 1392 (jury is entitled to hear the expert testimony and decide whether to accept or reject it); *Rapine v. Harrah's Atlantic City*, No. 2:04-CV-00590-LDD, 2006 U.S. Dist. LEXIS 11543, at *20 (E.D. Pa. Mar. 21, 2006) ("the jury was free to reject [the expert's] testimony in reaching its conclusions").  In light of its verdict, it is clear that the jury was not persuaded by the Defendants' cursory evidence on        technology.

640241v1

**REDACTED**

willfulness by the Defendants,

. Defendants' willful infringement of the patented technology belies their argument that

was an acceptable non-infringing alternative.  In light of the above, Defendants clearly

have not met their burden of establishing that there was an acceptable non-infringing alternative

to the patented technology.

**B.      The Jury Properly Adopted Mr. Cobb's      Cost Sharing Approach, a
         Royalty Rate Supported by Testimony of LPL and Mr. Wagner**

Although Defendants *do not* attack Mr. Cobb's      cost sharing approach, Defendants

remarkably argue for remittitur to their expert's damage calculations.  Those calculations

included an effective cost savings rate

                                                                Instead, the

substantial weight of the evidence supports the jury's adoption of a      cost sharing rate.[10]

Defendant's expert Mr. Wagner testified that a

---

[10] Indeed, courts have endorsed awarding 100% of the infringer's profits realized in the form of cost
savings in cases like this where the invention is primarily a manufacturing advantage.  *Slimfold Mfg Co ,
Inc  v. Kinkead Indus., Inc* , 932 F.2d 1453, 1458-59 (Fed. Cir. 1991).

**REDACTED**

Further, Mr. Wagner essentially stipulated to the royalty base, conceding that Mr. Cobb had correctly calculated the royalty base, i.e., the total amount of infringing CPT products sold in the U.S. since 2002. *Id.* at 1894:7 - 1895:10. Accordingly, once the jury credited the evidence of a                         the resulting damages were easily calculated by multiplying the cost savings amount by the royalty base, and then multiplying the result by         The jury's royalty calculation, therefore, is not only reasonable but substantially undisputed.

## VI.    CPT'S NOTICE ARGUMENT FAILS BOTH FACTUALLY AND LEGALLY

### A.    The Jury Correctly Determined that CPT Had Notice in February 2002

#### 1.    LPL's February 2002 Letters Put CPT on Notice of the '002 Patent

Defendants' Motion repeats the same unconvincing notice arguments they made at earlier stages of this litigation, both pre- and post-trial. *See, e.g.*, D.I. 220; 366; 450 at 15. To avoid unnecessary repetition, LPL respectfully directs the Court to its earlier, detailed responses to those arguments. *See, e.g.*, D.I. 324; 452. LPL's previous arguments demonstrate that the jury's verdict is consistent with the law and supported by substantial evidence,[11] and that the Court should decline the invitation to substitute CPT's view of the evidence for that of the jury.

The jury's verdict is supported by unrebutted evidence showing that LPL took several affirmative steps to notify CPT of the '002 Patent in 2002, even though such notice presumably was not required concerning the method claims at issue. LPL's communications included letters

---

[11] Disputes concerning the sufficiency of notice, like the dispute in this case, present classic issues of fact. *See Tenneco Auto. Operating. Co. v. Visteon Corp.*, 375 F. Supp. 2d 360, 365 (D. Del. 2005) (citing *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996)); *see also Remington Arms Co. v. Modern Muzzleloading, Inc.*, No. 2:97CV00660, 1999 WL 281341, at *12 (M.D.N.C. Feb. 9, 1999) ("the court finds that when viewed together, the two letters raise disputable issues of fact as to whether they constitute sufficient notice of a charge of infringement"). The Court gave the jury detailed instructions on the issue of notice, as proposed by Defendants. Joint Proposed Jury Instr. § 5.8; Trial Tr. 1914:6-10. The jury heard all of the evidence on this issue, applied the Court's instructions, and concluded that LPL's February 8 and February 27 letters combined to provide adequate notice.

REDACTED

on February 8 and February 27, 2002, and a follow up meeting at CPT's offices on June 11,
2002. *See* Ex. 3; Ex. 4 (referring to LPL's February 8 letter requesting "a meeting to discuss the
issue of patent infringement" with CPT and advising that LPL "will take legal action" if CPT
continues "unauthorized use of [LCD] technology owned by" LPL without negotiating a
license); Trial Tr. 608:23 - 609:17. LPL's February 8 and February 27 letters, taken together,
notified CPT that: (1) LPL owned the '002 Patent and CPT should review that patent and other
LPL patents; (2) LPL believed that CPT was infringing the '002 Patent; and (3) LPL was willing
to discuss a license with CPT concerning LPL's '002 Patent and other patents, and intended to
enforce its patent rights if necessary.

As of February 27, 2002, therefore, CPT was on notice that LPL was asserting the '002
Patent based on CPT's manufacturing of its LCD products.[12] The Federal Circuit has explained
that the purpose of the notice requirement is "to assure that the accused infringer knew of the
adverse patent and the alleged infringement during the period in which its liability accrues."
*Gart*, 254 F.3d at 1345; *see also Ceeco Mach Mfg., Ltd. v. Intercole, Inc.*, 817 F. Supp. 979, 986
(D. Mass. 1992). By February 27, 2002, CPT was "notified, with sufficient specificity," that
LPL believed CPT "may be an infringer." *SRI Int'l, Inc.*, 127 F.3d at 1470. The Court should
uphold the jury's verdict given that the notice evidence in this case is consistent with the
intended purpose of the notice requirement.

---

[12] In LPL's February 8 letter, LPL expressly offered to discuss with CPT further details concerning LPL's
patents and CPT's products, consistent with the Federal Circuit's observation that an accused infringer
should communicate directly with the patent holder to address any questions. *See Gart v. Logitech, Inc.*,
254 F.3d 1334, 1345-46 (Fed. Cir. 2001) (citing *SRI Int'l, Inc. v. Advanced Tech. Labs*, 127 F.3d 1462,
1470 (Fed. Cir. 1997)). Subsequently, in June 2002, LPL indeed traveled to CPT's offices in Taiwan to
discuss the accused process, resulting CPT products, and LPL's '002 Patent and other patents.

CPT's form-over-substance assertion that LPL should have specified product model numbers in LPL's correspondence is misplaced. *See* D.I. 462 at 20-21. LPL was not in a position to have identified every product that resulted from CPT's accused process, nor was it necessary to do so. As the evidence showed, CPT makes dozens of infringing products using the same manufacturing methods. CPT was made aware that LPL was asserting that its LCD products made using the '002 methods were accused of infringing. Notice depends on all facts and circumstances, and need not specifically list each individual accused product. *See, e.g.*, *Gart*, 254 F.3d at 1347; *Tenneco Auto. Operating Co.*, 375 F. Supp. 2d at 365. This is true even in cases in which the patent holder asserts device claims and accuses specific products. In this case, LPL did not accuse discrete, isolated products of infringing such that CPT needed to know which specific products were involved. Rather, LPL accused CPT's methods, which in turn involved a broad range of products, all known to CPT. The cases that CPT relies on, therefore, are distinguishable because they involved infringement of device claims by isolated, individual products. *See, e.g., Amstead Indus., Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 180 (Fed. Cir. 1994) (railroad car component); *Philips Elecs. N. Am. Corp. v. Contec Corp.*, 312 F. Supp. 2d 649, 650 (D. Del. 2004) (remote control unit and transmittor), *aff'd*, 177 Fed. Appx. 981 (Fed. Cir. 2006); *Mosaid Tech., Inc. v. Samsung Elecs. Co.*, 362 F. Supp. 2d 526, 531-33 (D.N.J. 2005) (dynamic random access memory chips).

    2.    <u>CPT Ignores the Undisputed Evidence of Notice in June 2002</u>

CPT is incorrect that a specific product needs to be identified for notice to be effective. In any event, even under CPT's hypertechnical version of notice law, CPT had further notice in

June 2002, long before LPL filed its complaint. CPT's brief completely ignores this fact.[13] The unrebutted evidence establishes that in June 2002, LPL met with CPT representatives in Taiwan. *See* Trial Tr. 613:3-14. At that meeting, LPL made a detailed presentation explaining how CPT's products infringed the '002 Patent. Mr. Ho Lee specifically testified that the '002 Patent was discussed during this meeting, and that LPL accused specific CPT products of infringing the '002 Patent.[14] *See* Trial Tr. 613:15 - 614:10; 615:19 - 617:14; 618:24 - 620:3; *see also* Ex. 5. *No witness contradicted this testimony.*[15] Accordingly, the sole evidence is that LPL had notified CPT that its products infringed the '002 Patent in 2002. The Court should, therefore, reject CPT's request for a new trial. CPT failed to submit any evidence to warrant relitigating the notice issue, or suggesting any notice date after June 2002. As a result, no reasonable juror could have agreed with CPT's position that notice occurred in May 2005, and CPT's motion fails to meet the high standard for a new trial.

---

[13] CPT also does not seek any remittitur for any difference in damages if calculated from June 2002 instead of from March 1, 2002. Having failed to raise the issue in its opening brief, moreover, CPT cannot address the June 2002 notice evidence, or propose a new remittitur, for the first time in its reply brief. *Boston Scientific Scimed, Inc. v. Cordis Corp.*, 434 F. Supp. 2d 308, 314 (D. Del. 2006) (reply briefs may not raise legal issues that could have been, but were not, raised in opening briefs).

[14] The law does not require notice to be in writing and oral communications can convey notice. *See, e.g., Aoki Technical Lab., Inc. v. FMT Corp.*, No. Civ. 96-42-JD, 2000 WL 33667069, at *2 (D.N.H. Apr. 24, 2000) (unreported); *Articulate Sys., Inc. v. Apple Computer, Inc.*, 53 F. Supp. 2d 78, 82-83 (D. Mass. 1999); *Ceeco Mach. Mfg.*, 817 F. Supp. at 985.

[15]

REDACTED

3.     Notice to Defendants Other than CPT Has No Bearing on Damages

The jury determined notice specifically as to CPT, not all Defendants. *See* D.I. 462 at

n.5. The date of notice to Tatung, Tatung America, and ViewSonic, has no bearing on the

amount of damages that CPT owes. Because CPT induced all the other Defendants' infringing

sales, the 2002 notice to CPT entitles LPL to recover for all post-2002 infringing sales and

imports by Tatung, Tatung America, and Viewsonic.[16] "A party that induces or contributes to

infringement is jointly and severally liable with the direct infringer for all general damages."

*Crystal Semiconductor Corp. v. Tritech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1361 (Fed. Cir.

2001); *see also Advanced Display Sys., Inc. v. Kent State Univ.*, Nos. 3-96-CV-1480-BD, et al.,

2002 WL 1489555, at *9 (N.D. Tex. July 10, 2002). Accordingly, the date that Tatung, Tatung

America, and ViewSonic received notice will not impact the final judgment or the amount of

damages.

**B.     Notice Should Be Deemed Unnecessary for Method Claims**

Because LPL asserted only method claims, the marking requirement in 35 U.S.C. § 287

should not apply, mooting Defendants' arguments regarding notice and damages. The Federal

Circuit has declined to apply the marking statute when a patentee asserted only method claims.[17]

---

[16] LPL notified Tatung and ViewSonic of the infringement no later than August 2002, long before filing suit. *See* Trial Tr. 622:18 - 624:7; PTX 48 (Ex. 10); PTX 49 (Ex. 11). The corporate and business relationships among Tatung, Tatung America, Viewsonic, and CPT, and other evidence, also support finding that CPT had authority to receive notice on behalf of the other Defendants and that notice could be imputed to them as a result. Trial Tr. 753:21-24; 755:17 - 756:17; 757:19-21; 758:19-24; PTX 105 at T-D 11 (Ex. 12); PTX 148 (Ex. 13). *See In re Elonex Phase II Power Mgmt. Litig.*, Nos. C.A. 01-082 GMS, et al., 2002 WL 433614, at *3 (D. Del. Mar. 20, 2002) ("Notice to an agent with authority to receive notices of infringement may be sufficient under Section 287(a)."). Because CPT does not raise this issue in its brief, however, the Court need only address the verdict of notice to CPT, which should be upheld.

[17] A post-*Hanson* decision of the Federal Circuit applying the marking requirement to method claims is distinguishable, moreover, because both method and apparatus claims were asserted in that case. *See Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1538-39 (Fed. Cir. 1993). By contrast, the patent at

*(footnote continued on next page)*

*See Hanson*, 718 F.2d at 1082-83. Recently, moreover, at least one trial court also has declined to apply the statute to method claims. *See Coca-Cola Co v. Pepsico, Inc*, No. CIVA 102-CV-2887-RWS, 2004 WL 4910334, at *32-33 (N.D. Ga. Sept. 29, 2004); *but see, e.g., Philips Elec. N. Am. Corp*, 312 F. Supp. 2d at 652.

## VII.    THE JURY'S VERDICT IS NOT TAINTED BY TRIAL MISCONDUCT

### A.    LPL Did Not Solicit Improper Testimony from Mr. Cobb

Defendants are not entitled to a new trial because Mr. Cobb testified fully within the scope of his expert report. Experts do not exceed the scope of their expert report when their "testimony [is] consistent with and not materially different from the opinions contained" within the report. *Tracinda Corp. v. DaimlerChrysler AG*, 362 F. Supp. 2d 487, 507-08 (D. Del. 2005) (Farnan, J.). Indeed, expert witnesses "should be 'permitted a certain degree of latitude,' may 'explain the opinions and conclusions' in their reports, and may provide 'reasonable explanations.'" *Forest Labs., Inc. v. Ivax Pharms., Inc*, 237 F.R.D. 106, 113 (D. Del. 2006) (Farnan, J.) (citation omitted).

Mr. Cobb's trial testimony was completely consistent with and materially the same as the opinions offered in his expert report. At trial, Mr. Cobb testified that the appropriate yield rate for calculating damages          . Trial Tr. 1038:23-24. Mr. Cobb included that very same          in his expert report,                    , and discussed the same during his deposition. Cobb Dep. 11:23 - 12:2 (Ex. 6). Similarly, Mr. Cobb identified the sources of information in his report, Cobb Rep. at 34-37 (Ex. 7), and

---

*(footnote continued from previous page)*

issue in *Hanson* covered both a method and an apparatus, and only the method claims were found infringed. *Hanson v. Alpine Valley Ski Area, Inc*, 718 F.2d 1075, 1076 (Fed. Cir. 1983).

**REDACTED**

Defendants object to Mr. Cobb's testimony, *solicited on cross*, that he

.[18]  Indeed, Mr. Cobb's

ultimate opinion and analysis at trial was consistent with the opinions and analysis disclosed in

his report and did *not* change                                                    CPT

cannot fairly criticize Mr. Cobb for testimony that was *solicited by the Defendants* on cross-

examination.  *See Cooper Distrib. Co. v. Amana Refrigeration, Inc.*, 180 F.3d 542, 551 (3d Cir.

1999) (finding "meritless" an argument that the admission of testimony elicited on cross-

examination that allegedly violated a pre-trial order was reversible error); *see also Laplace-*

*Bayard v. Batlle*, 295 F.3d 157, 164-65 (1st Cir. 2002) (finding that an 'expert' opinion elicited

on cross-examination from a witness not characterized as an expert should not be excluded on

the basis of no Fed. R. Civ. P. 26(a)(2)(B) disclosure).  LPL only briefly and appropriately

followed up on redirect after CPT's counsel broached the issue.  *See C.P. Interests, Inc. v. Cal.*

*Pools, Inc.*, 238 F.3d 690, 698-99 (5th Cir. 2001) (once defendant cross-examined plaintiff's

expert on issues beyond the scope of the expert report, plaintiff was entitled to redirect on those

same issues); *Tracinda*, 362 F. Supp. 2d at 513 (party who opened the door to privileged

testimony may not then prevent opposing party's use of that information).

At the pre-trial hearing, the Court explained: "If either party *solicits* testimony from an

expert . . . that goes outside of what the reports and the disclosures were, that can be briefed post-

trial."  July 7, 2006 Tr. 8:1-5 (Ex. 14) (emphasis added).  CPT, not LPL, *solicited* the testimony

---

[18] Defendants wrongly suggest that Mr. Cobb relied on only the ·
Mr. Cobb referred to substantial other evidence that Defendants ignore.  Trial Tr. 1029:16 - 1038:6.

**REDACTED**

challenged by the Defendants. Mr. Cobb merely responded to direct questions posed on cross-examination. Trial Tr. 1134:15 - 1135:4

. Defendants' question opened the door on cross-examination to the issue

and LPL was within its rights to ask Mr. Cobb to explain                on redirect. *C P. Interests,* 238 F.3d at 698-99; *Tracinda,* 362 F. Supp. 2d at 513.[19] In light of the above, Mr. Cobb's testimony was not outside the scope of his expert report, and, thus, Defendants are not entitled to a new trial.

> **B.    LPL Did Not Engage in Improper "Exhibit Stuffing"**

Defendants neglect to inform the Court that they have already made, and the Court has already rejected on the second to last day of trial, their "stuffing" attack against Exhibits 12 and 13. As argued by LPL during trial, Exhibits 12 and 13 are not compilation exhibits, and Defendants have waived any objections they may have had to these Exhibits. Trial Tr. 1927:23 - 1929:1; 1933:6 - 1934:3. The Court so ruled, and Defendants' renewed objection now should again be denied.

In order to avoid an unnecessary burden to the jury, the Court, and the parties, LPL originally proposed that the case proceed on representative products. Defendants rejected LPL's recommendation. As a result, LPL was required to admit at trial (among other evidence) mask file (or .str file) images for each of CPT's 42 classes of infringing LCD modules. Defendants would have this Court believe that this evidence could only be presented through 42 exhibits, one for each accused class of modules. Defendants are incorrect. Defendant CPT produced four

---

[19] Defendants made this same objection at trial, which was overruled by the Court. Trial Tr. 1146:4-17.

**REDACTED**

CDs of .str files that show the structure of the TFT array for each of the 42 accused infringing module classes. Those CDs were admitted *without objection* as LPL Exhibits 4 through 7.

For simplicity, LPL created Exhibits 12 and 13 as subsets of Exhibits 4-7. Exhibit 12 contained

and Exhibit 13 contained

. All of these images were taken from the contents of Exhibits 4 through 7, analogous to using the most relevant chapters of a larger book.[20]

Further, Defendants waived any objections to Exhibits 12 and 13 by not raising them in a timely manner. Defendants' written objections to LPL's exhibits (served on the evening of July 17) made objections to 32 of LPL's exhibits on the grounds that they contained "multiple documents." *See* CPT's Objections to LPL's 7/15/06 Trial Exhibits (Ex. 15). Defendants' written objections did not include a "multiple document" objection to Exhibit 12 or Exhibit 13. After receiving these objections, LPL made precautionary edits to its exhibits to address Defendants' objections. LPL served Defendants the following day with revised exhibits and an updated and annotated exhibit list. *See* LPL's 7/18/06 Revised and Annotated LPL Exhibit List (Ex. 16). Where, as here, Defendants did not object to Exhibits 12 and 13 as "multiple documents," and considering LPL took steps to address Defendants objections to those exhibits to which Defendants had objected, it would be highly prejudicial to allow Defendants to

---

[20] Indeed, rather than prejudicing Defendants, Exhibits 12 and 13 were likely of great aid to them. The in their native form, as contained on the LPL Exhibits 4 through 7,
. By creating Exhibits 12 and 13, LPL gave Defendants

**REDACTED**

surreptitiously hold these two, and only these two, "stuffing" objections in reserve, just to spring them on LPL on the last day of trial.

Finally, not only were Exhibits 12 and 13 properly admissible exhibits, but Defendants were not prejudiced by LPL's use of these exhibits.[21]  Generally a four prong test is applied to determine whether a court abused its discretion in admitting or excluding evidence that is in violation of a pretrial order.  The factors are: (1) the prejudice or surprise to other party; (2) the ability to cure the prejudice; (3) the extent of disruption of the orderly and efficient trial of the case; and (4) the bad faith or willfulness of the non-compliance.  *Greate Bay Hotel & Casino v. Tose*, 34 F.3d 1227, 1236 (3d Cir. 1994).

By delaying their objections until the last day of trial, Defendants denied LPL any opportunity to cure the claimed prejudice.[22]  Their delay likewise prevents the Court from measuring the "extent of disruption of the orderly and efficient trial of the case."  Considering Defendants' objection came long after LPL's use of the exhibits, LPL clearly offered them in good faith.  LPL did not engage in any improper "exhibit stuffing."

---

[21] Defendants' claim that they were prejudiced because the alleged stuffing made it difficult to determine which products LPL planned to focus on at trial is without merit.  LPL's exhibit list clearly indicated that LPL intended to focus on                    .  *See* Ex. 16 at Exhibit Nos. 8-11, 14-17, 20-25, 28-33.  Likewise, Defendants were not prejudiced because, as they claim, they honored the 150 exhibit limit.  Considering Defendants' exhibit list tallied only 126 at the outset, and Defendants eventually admitted only 33 of those 126 exhibits, Defendants clearly did not need space for more exhibits.

[22] If the evidence is critical, then it is only to be excluded in extreme circumstances of willful deception and flagrant disregard.  *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997); *see also In re TMI Litig*, 193 F.3d 613, 721 (1999), *amended by* 199 F.3d 158 (3d Cir. 2000).

**REDACTED**

C.      **LPL Did Not Prejudice the Jury During Closing Argument**

     1.      Zealous Advocacy is Not a Basis for a New Trial

CPT cites isolated excerpts from statements made over the course of a 100 minute closing argument that followed 8 days of trial. Individually and collectively, the statements that CPT objects to reflect, at most, zealous advocacy that was both appropriate and, given the conduct of CPT's counsel, necessary. CPT simply cannot show any misconduct by counsel nor any conduct that improperly prejudiced the jury. *Dunn v. HOVIC*, 1 F.3d 1371, 1377 ("at least for civil trials, . . . improper comments during closing arguments rarely rise to the level of reversible error.") (quoting *Littlefield v. McGuffey*, 954 F.2d 1337, 1346 (7th Cir. 1992)), *modified,* 13 F.3d 58 (3d Cir. 1993).

     2.      LPL's Counsel Did Not Misstate the Law During Closing

Defendants argue that LPL's counsel misstated the law with respect to patent notice and anticipation. As discussed below, however, the statements made by LPL's counsel were not improper and were not statements of the law, much less misstatements of the law. Moreover, even if any such statements were improper, which they were not, the Court's jury instructions cured any such improper statements. At the outset, it is clear that a party's closing arguments can contain attorney argument and need not be a precise recitation of the law. For example, in *Tashjian v. Boston & Maine R.R.*, 80 F.2d 320, 321 (1st Cir. 1935), the Court stated:

> Statements of law in an argument are not to be judged by the standards which apply to a charge to the jury. The function of the argument is quite different; it is to state the contentions of the party on the law and on the facts. Its purpose is to persuade not to instruct. . . . [T]his does not mean that every statement of law in it and every illustration used must be meticulously sound and correct. Moreover, in the present case the defendant's argument was followed by that of the plaintiff, who had every opportunity to point out any alleged errors which the defendant's counsel had made, and by the charge of the judge which authoritatively stated the law to the jury.

Consistent with that position, LPL's closing argument contained statements regarding LPL's

position based on the facts and law. Such conduct is not improper.

In addition, a careful review of the closing argument excerpts relied upon by Defendants

reveals that the portions at issue do not even contain any statements of the law. For example, the

first excerpt cited by Defendants states:

> Now, they're going to argue to you that this doesn't constitute
> sufficient notice. I don't know what kind of notice you need to
> give them, but they had to get the message that we were telling
> them they were infringing the '002 patent.

Trial Tr. 2058:3-8. In this excerpt, the first sentence is not a statement of law, but rather an

accurate prediction of Defendants' closing arguments. As the second sentence begins, "I don't

know what kind of notice you need to give them . . .", it is unclear how that sentence could be

construed as a statement of the law. *Id.* at 2058:5. While LPL's counsel made the statement that

Defendants "had to get the message" that LPL thought they were infringing, that statement must

be taken in context with the rest of the closing, including LPL's counsel's later statement that the

February letters as a whole constituted legally sufficient notice. *Id.* at 2058:6.

Defendants further complain about the statement that "You don't, in your first

correspondence, right out of the bat accuse people of infringement . . . But it specifically put

them on notice of the '002 patent." *Id.* at 2056:24 - 2057:1-5. Once again, these sentences do

not contain any summary or statement of the law. Such statements are proper legal argument,

which is the function of closing arguments. *Tashjian*, 80 F.2d at 321.

The statements made by LPL's counsel regarding invalidity were similarly benign.

Specifically, in the first several sentences of the relevant portion of the argument, LPL's counsel

merely summarizes Dr. Howard's testimony. Trial Tr. 2074:3-13. (When [Dr. Howard] was

asked about removal of the guard ring, he said "Well, it's implicit in Okawa. Not explicit."). In

the next sentence, LPL's counsel argues that the evidence presented by the Defendants, i.e. Dr. Howard's testimony, does not meet their burden. *See id.* at 2074:14-15 ("Well, if its only implicit, it isn't clear and convincing."). There is simply nothing improper about those statements; they are appropriate legal argument.

In addition, the case law in relation to anticipation talks specifically about inherency, which is defined as necessarily present. *See, e.g., Lucent Techs., Inc.*, 168 F. Supp. 2d at 233 ("For an element to be inherent in a prior art reference it must necessarily be present in the reference."). During the closing argument, LPL's counsel discussed whether removal of the outer guard ring was "implicit," not whether it was "inherent." Defendants' arguments are misplaced and are nothing more than an attempt to blur this important distinction.

Moreover, LPL's counsel did not misstate the law during his closing argument because he correctly cited the testimony of Defendants' expert. Specifically, as cited by LPL's counsel,

" LPL's counsel correctly summarized his testimony. Therefore, and perhaps most importantly, the argument by LPL's counsel that Defendants had not met their burden of clear and convincing evidence was appropriate in light of that testimony.

In any event, the Court gave detailed jury instructions requested by Defendants, which mooted Defendants' unfounded concerns. *See Anastasio v. Schering Corp.*, 838 F.2d 701, 706 (3d Cir. 1988) (denying request for new trial based on improper statements during closing argument where judge made curative remarks); *Alholm v. Am. S.S. Co.*, 144 F.3d 1172, 1181-82 (8th Cir. 1998) (no new trial granted and ABA Model Rules not violated where instruction cured

counsel vouching for credibility of witnesses and making derogatory remarks). Indeed, the Court clearly intended for any such statements to be addressed and cured by the jury instructions.[23] Trial Tr. 2099:15-18. ("As to the misstatement of law, that's cured by the instructions given by the Court that the jury is to pay attention to no one other than my instructions about the law.").

In this case, the Court gave clear instructions regarding the law of notice and anticipation. The Court also gave a specific instruction that "The evidence in this case includes only what the witnesses said while they were testifying under oath . . . Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections that they may have made during the trial are not evidence." *Id.* at 2223:1-3, 10-14. In the *Anastasio* case, the court found no error in the lower court's denial of a new trial when the court issued the general instruction that "statements of counsel do not constitute evidence." *See Anastasio*, 838 F.2d at 706. Similarly, counsel's statements do not warrant a new trial.

In addition, with respect to these statements made by LPL's counsel, Defendants acknowledge that they objected to the statements after the conclusion of plaintiff's closing arguments. Trial Tr. 2096:18-23. With respect to notice and anticipation, the Court gave the instructions to the jury after Defendants objected to the closing argument, and ensured that there was an instruction covering all of the statements objected to by Defendants at that time. *Id.* at 2100. Because the Court addressed Defendants' objections to statements made by LPL's counsel regarding notice and invalidity by including relevant instructions to the jury, a new trial is not warranted. *See Lucent Techs*, 168 F. Supp. 2d at 261 (denying motion for new trial where "the

---

[23] In addition, at no time either at trial or in their post-trial briefs have Defendants challenged the Court's ruling regarding the jury instructions or suggested that the jury instructions were inadequate to cure the alleged error.

Court gave the jury a cautionary instruction regarding the exhibit"); *Inter Med. Supplies*, 181

F.3d at 464 (denying motion for new trial where the complaining party received the curative

instruction it requested).

The cases relied upon by Defendants to support the grant of a new trial on these grounds

are factually distinguishable. In *Blanche Road Corp. v. Bensalem Twp.*, 57 F.3d 253, 264 (3d

Cir. 1995), for example, the court held that counsel for the plaintiff "was able to get before the

jury information that was inadmissible as evidence" and even argued repeatedly with the court

regarding several rulings in the presence of the jury. *Id.* In addition, in *Blanche Road*, "counsel

for Plaintiffs pursued a pattern of misconduct from opening statement through final argument."

*Id.* There are no such allegations here.

Defendants also rely on *Draper v. Airco, Inc.*, 580 F.2d 91, 96-97 (3d Cir. 1978), a case

that had no allegations that counsel misstated the law. Rather, in *Draper*, the court found that

counsel for the plaintiff committed several improprieties during closing arguments, including

attempting to prejudice the jurors "through repeated inappropriate references to the defendants'

wealth," making prejudicial references to facts not in evidence, and making "prejudicial,

vituperative and insulting references to opposing counsel." *Id.* at 95. As none of these

allegations are made here, the *Draper* case is irrelevant.[24]

Finally, in *Falkowski v. Johnson*, 148 F.R.D. 132, 137 (D. Del. 1993), the court

commented that "any curative effect of the Court's instructions [regarding counsel's previous

---

[24] Defendants further rely on *Draper*, 580 F.2d at 97, for the proposition that the jury could be prejudiced by misstatements made by counsel "where, as here, the instruction is not given to the jury on the same day as counsel's misstatements." However, an instruction to the jury was not made on the same day as LPL's counsel's closing argument because Defendants failed to object to the statements of law until the following day. Defendants should not be permitted to benefit from their own inaction. Further, because Defendants followed LPL's counsel's closing argument and had all night to prepare, Defendants had every opportunity to point out any alleged errors in LPL's counsel's closing. *See Tashjian*, 80 F.2d at 321.

improper comments] was mitigated by the [] counsel's oft-repeated statements that he might make mistakes because of his out-of-state status." The court was concerned that those statements implied that counsel's improper comments would be acceptable in another jurisdiction, which would make the jury less likely to follow the curative instructions of the court. *Id.* Here, LPL's counsel did not make (and there are no allegations that counsel made) any comments during his closing argument that would undermine the Court's instructions.

3.    LPL's Counsel Did Not Make Prejudicial, Disparaging, or Personal Comments Regarding CPT or the Evidence

Defendants object to LPL's statements regarding certain evidence to which CPT objected during the trial. As outlined above, however, the Court clearly intended for the jury instructions to address the objections raised by Defendants to such statements. Specifically, after the conclusion of LPL's closing argument, Defendants objected to the statements made during closing regarding defense counsel's objections to the evidence during trial. Defendants argued that the proposed jury instructions did not include a relevant instruction. Trial Tr. 2100:9-14. In response, the Court agreed to ensure that such an instruction was included. ("If it is not in there, I will give it because it should be in there that they should not pay attention to objections by attorneys . . . My law clerk tells me that in the instructions for this case, my typical instruction which I believe covers the instruction offered by the defendants is included.") *Id.* at 2100:16-19; 2101:5-9. As was evidently the Court's intention, the jury instruction therefore cured any issues related to the statements at issue.

Defendants also argue that LPL accused the Defendants of trying to hide evidence. However, the fact that Defendants used similar language during their opening and closing statements (and really even more egregious language to impugn the integrity of LPL, LPL's counsel, and the evidence), shows their allegations are meritless:

640241v1

-34-

CPT's counsel:    I think when we get to the close of this case, you will agree with me that *LPL is simply a bully on King Street*, that they are unfairly trying to block Taiwan or LCD manufacturers from making products that are better and cheaper.

Trial Tr. 227:19-24 (emphasis added).

CPT's counsel:    And here again, plaintiff is just ignoring and *wanting to do the Houdini trick* about what it is that the resistance is.

*Id.* at 266:6-8 (emphasis added).

CPT's counsel:    Do not let them read words out of the claim and do not let them mischaracterize what it is that their patent teaches . . . *They are stretching the truth*, don't let them. Find the truth for yourselves.

*Id.* at 287:2-4, 10-11 (emphasis added).

CPT's counsel:    What's *misleading* is telling you that it's oversimplified, and you can dismiss all that . . . .

*Id.* at 2108:23-24; 2109:1 (emphasis added).

CPT's counsel:    It's just the *lack of intellectual integrity* that I have seen now over these many days of this trial.

*Id.* at 2174:14-16 (emphasis added).

CPT's counsel:    And I think that's what this is all about. It's just intimidation. It's *strong arm tactics*. It's to *bully* in a marketplace that I was talking about in opening statement.

*Id.* at 2183:15-19 (emphasis added); *see also id.* at 2191:3-7; 2193:15-17 (similar quote).

Defendants argue that the types of arguments made by LPL's counsel "are an overt appeal to the passions and prejudices of a jury, rather than argument based on relevant evidence." *See* D.I. 462 at 33. However, given the statements made by Defendants, it is difficult to understand how the jury could have been improperly influenced by any alleged statements made by LPL's counsel.

Defendants' reliance on *Draper,* 580 F.2d at 96, is again misplaced. In *Draper*, there were "repeated vituperative and insulting references to the defendants and defendants' counsel" during the trial. *Id.* Specifically, plaintiff's counsel referred to defendants as being in an "evil league" and "part of [a] conspiracy" and that the decedent in the case had more money than defendant's attorney "and His whole gang." *Id.* Here, Defendants' accusations that LPL is a bully, for example, undermine Defendants' arguments.[25]

Defendants' accusation that LPL's counsel gave his personal assessment of the witnesses and evidence is equally unavailing. *See Dunn*, 1 F.3d at 1377. Moreover, the fact that the types of statements made by LPL's counsel were similar or identical to statements made by Defendants' counsel establishes that Defendants' arguments have no merit:

> CPT's counsel:    *I'm going to point this out to you. This is the first time in my career* in doing this kind of stuff that we didn't hear one single witness from LPL. Did you notice that?

Trial Tr. 2178:5-8 (emphasis added).

> CPT's counsel:    And I think working together on this case, we're going to be able to give to you a clear and understandable case. And if you just

---

[25] In addition, Defendants have not made any accusations resembling the outrageous conduct found in the cases they cited. In *Falkowski*, 148 F.R.D. at 136, counsel stated that opposing counsel had a "high tolerance for pain" in representing "people such as defendants." Possibly of greater importance, however, was plaintiff's counsel's implication through a series of remarks that defendant had insurance and would not be paying damages. *Id.* In *Fineman v. Armstrong World Industries, Inc.*, 980 F.2d 171, 208-09 (3d Cir. 1992), counsel continued to rely on misstatements of fact in closing argument even after the court gave instruction to the jury to disregard. Plaintiff's counsel also alleged that the motive for defense counsel lying was his fee. "Well, [defense counsel] has earned his million dollars, I couldn't do it, I really couldn't." *Id.* at 209 (alteration in original). In *Spruill v. Nat'l R.R. Passenger Corp.*, No. 93-4706, 1995 WL 534273 (E.D. Pa. Sept. 5, 1995), the court concluded that defense counsel engaged in "egregious" leading of his witnesses leading to three sidebar conferences, interfered with plaintiff's cross-examination of witnesses requiring a sidebar, disrespected the rulings of the court, approached the jury during closing despite being denied permission, attacked two witnesses, mimicked a witness, spoke as though he were one of the jury, interrupted constantly during defense counsel's closing argument, jumped up and down during defense counsel's closing argument requiring a sidebar conference, and accused the defendant of deliberately injuring plaintiff. *Id.* at **1-8.

> listen to the evidence all the way through the end, *I'm confident that you're going to come to the right decision.*

*Id.* at 230:2-7 (emphasis added).

> CPT's counsel:    You know, *I think you all get it* . . . But *I have been troubled by that statement quite a bit.* And I think what troubles me most about it is the lack of intellectual integrity, or intellectual honesty that went into that statement.

*Id.* at 2173:7-8, 12-16 (emphasis added). Defendants' counsel repeated the "I think you get it" theme multiple times. *See id.* at 2175:16-19; 2177:16-20; 2197:11-12, 16-18.

> CPT's counsel:    *I didn't really find that to be very credible myself,* because as we know from Claim 1 . . . the last step is removing the outer guard ring . . . Well, *I think you get this.*

*Id.* at 2187:7-13 (emphasis added).

Once again, as evidenced above, Defendants engaged in the same conduct during the trial that they claim to be improper. Notably, in the *Fineman* case relied upon by the Defendants, plaintiff's trial counsel stated that, "I have a certain calmness about me today because of you, that is because I trust you. I have come to know you over almost three months and I think I know what type of people you are and I know, I don't think, I don't hope, but I just know that you are going to do the right thing." *Fineman*, 980 F.2d at 209. These statements are very similar to Defendants' theme of "I think you get it." Thus, given the statements by Defendants, it is difficult to understand how the jury could have been improperly influenced by any alleged statements made by LPL's counsel, and in any event, LPL's counsel's statements did not violate either the ABA's Model Rules of Professional Responsibility or the Delaware Local Rules.

      4.     <u>LPL's Counsel Did Not Prejudicially Mislead the Jury Regarding CPT or the Evidence</u>

Sections IV(E), IV(F), and IV(G) of Defendants' brief raises, for the first time, additional issues regarding LPL's closing argument.[26] Defendants failed to raise these issues during the trial, even though Defendants did raise other objections after the conclusion of LPL's closing argument. Defendants' belated objections to these issues are insufficient. When a party fails to raise objections to the closing argument during the trial while the Court has the ability to correct for any resulting error, the objections are waived. *See Dunn*, 1 F.3d at 1377 (finding that when a party fails to timely object to improper closing argument, the court of appeals reviews for plain error only, "[the exercise of which] is seldom justified in reviewing argument of counsel in a civil case." (alteration in original) (citation omitted)); *Fleck v. KDI Sylvan Pools, Inc.*, 981 F.2d 107, 116 (3d Cir. 1992) ("It is axiomatic that a party who fails to object to errors or to raise issues at trial waives the right to complain on appeal. This requirement is imposed so that courts have an opportunity to avoid errors, thus obviating an appeal."); *Motorola, Inc. v. Interdigital Tech. Corp.*, 930 F. Supp. 952, 984 (D. Del. 1996), *aff'd in part, rev'd in part*, 121 F.3d 1461 (Fed. Cir. 1997). Because Defendants failed to raise these issues during the trial, when they could have been cured, such objections are untimely and have been waived.

     Nonetheless, Defendants' arguments also fail in substance. First, Defendants argue that LPL's counsel misled the jury by making statements about Defendants' failure to call certain LPL foreign employees as witnesses. In addition, Defendants argue that they were unable to call LPL's foreign employees as witnesses because they were not included on the Defendants' witness lists, and thus, would not be permitted to testify. However, in the Joint Proposed Pre

---

[26] Defendants' objections in Section IV(D) of its Motion, that LPL's counsel allegedly gave his personal view of the evidence, are also raised for the first time and are waived.

Trial Order filed on July 7, 2006, Defendants' witness list included Mr. Joo-Sup Kim, Mr.

Young Woo Cho, Mr. Jong Hwan Kim, as well as three other LPL employees residing in Korea.

D.I. 279. Moreover, LPL's counsel was merely responding to Defendants' counsel's comments

regarding LPL's alleged failure to call those same individuals as witnesses, implying that LPL

was trying to hide similar evidence. Trial Tr. 2180:8-12 ("Now, Mr. Joo-Sup Kim is their

current IP manager at LPL. He has been here in this courtroom during the whole trial. Did he

get up there and talk to you directly about this case? No."). Moreover, even if LPL's counsel

did comment on Defendants' failure to call certain witnesses, such conduct is not improper.

Defendants further object to statements of LPL's counsel regarding the

presented at trial. Importantly, however, the drawings independently created by LPL accurately

depicted the same information contained in CPT's mask files. Therefore, LPL did not mislead

the jury. Defendants argue in their brief that

If that statement is true, however, (and

LPL contends that it is not) then the time for Defendants to object to those exhibits was when

those exhibits were exchanged or used at trial. Because Defendants failed to object to that

evidence in a timely manner, Defendants' belated objection has been waived. *Motorola*, 930 F.

Supp. at 984.

Finally, Defendants argue that LPL's counsel misled the jury when he juxtaposed a

calculation of the royalty damages from a worldwide royalty license with the $52 million sought

by LPL in this case. Contrary to Defendants' suggestion, however, LPL was not suggesting that

it would be entitled to a worldwide royalty base. In fact, LPL's counsel explicitly stated that

Moreover, testimony regarding the worldwide royalty license was

**REDACTED**

actually referred to during the cross examination of Dr. Wagner, CPT's expert, and LPL's counsel merely mentioned that evidence to explain it to the jury. If Defendants wanted to raise an objection to the evidence, they should have done so when it was admitted. *See Cooper Distrib. Co.*, 180 F.3d at 552 ("once the statement was admitted, the court did not abuse its discretion in allowing Amana's counsel to refer to it in his closing argument"); *Waldorf v. Shuta*, 142 F.3d 601, 629 (3d Cir. 1998) (stating that even if counsel had objected to statements made during closing argument about evidence presented by witness, the court "would have permitted the statements" because counsel "was simply restating information that had already been presented to the jury.") In light of the above, LPL did not prejudice the jury during its closing argument. Therefore, Defendants are not entitled to a new trial.

## VIII.  <u>CONCLUSION</u>

Accordingly, for all the foregoing reasons, Defendants' Motion should be denied.

Dated: October 23, 2006

THE BAYARD FIRM

 /s/ Richard D. Kirk (rk0922)
Richard D. Kirk (#922)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899-5130
(302) 655-5000

Counsel for Plaintiff
LG.PHILIPS LCD CO., LTD.

OF COUNSEL:
Gaspare J. Bono
Lora A. Brzezynski
Cass W. Christenson
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C. 20006
(202) 496-7500

640241v1

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on October 23, 2006, he electronically

filed the foregoing document with the Clerk of the Court using CM/ECF, which will send

automatic notification of the filing to the following:

Robert W. Whetzel, Esq.
Matthew W. King, Esq.
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

The undersigned counsel further certifies that copies of the foregoing document

were sent on October 23, 2006 by email and by hand to the above counsel and by email

and first class mail to the following non-registered participants:

Christine A. Dudzik, Esq.
Thomas W. Jenkins, Esq.
Howrey LLP
321 North Clark Street
Suite 3400
Chicago, IL  60610

Teresa M. Corbin, Esq.
Glenn W. Rhodes, Esq.
Julie Gabler, Esq.
Howrey LLP
525 Market Street
Suite 3600
San Francisco, CA  94105

/s/ Richard D. Kirk (rk0922)
Richard D. Kirk

602380v1