UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

L.G. PHILIPS LCD CO., LTD.,

       Plaintiff,

vs.

TATUNG COMPANY; TATUNG COMPANY OF AMERICA, INC.; CHUNGHWA PICTURE TUBES, LTD; AND VIEWSONIC CORPORATION,

       Defendant.

CASE NO. 05-292-(JFF)

**PLAINTIFF L.G. PHILIPS LCD COMPANY, LTD.'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON DAMAGES UNDER 35 U.S.C. § 287**

**<u>UNREPORTED CASES</u>**

1 OF 4

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1728351 (D.Del.)
(Cite as: 2000 WL 1728351 (D.Del.))

Page 1

**H**
Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
MOSEL VITELIC CORP., Plaintiff,
v.
MICRON TECHNOLOGY, INC., Defendant.
MICRON TECHNOLOGY, INC., Counter-Plaintiff,
v.
MOSEL VITELIC CORP. and MOSEL VITELIC,
INC., Counter-Defendants.
**No. CIV.A. 98-449-GMS.**

Feb. 25, 2000.

Lewis H. Lazarus, Richard D. Kirk, Morris, James,
Hitchens & Williams, Wilmington, for Mosel Vitelic
Corp., United Memories Inc., plaintiffs.

Richard K. Herrmann, Blank, Rome, Comisky &
McCauley, Wilmington, for Micron Technology,
Inc., defendants.

MEMORANDUM AND ORDER

SLEET, District J.

*1 On January 7, 2000, Micron Technology, Inc.
("Micron") filed several motions for summary
judgment in this action for patent infringement. In its
first motion, Micron seeks to limit the time period for
which Mosel Vitelic Corp. and Micron Technology,
Inc. (collectively referred to as "Mosel") can recover
monetary damages for any infringement of U.S.
Patent Nos. 5,481,581 and 5,245,583 (respectively,
"the '581 patent" and "the '583 patent"). These two
patents contain both method and apparatus claims.
Mosel, however, has elected to assert only the
method claims against Micron.

According to Micron, Mosel and its licensees have
manufactured or sold products which embody claims
of the '581 and '583 patents without marking them as
such. See 35 U.S.C. § 287 (1994). Mosel does not
contest this assertion. As a result, Micron contends,
Mosel's damages period should begin on the dates
when it provided Micron with actual notice of the
computer company's potentially infringing activities.
See American Medical Sys., Inc. v. Medical Eng'g
Corp., 6 F.3d 1523, 1538-39 (Fed.Cir.1993) (relying
on Devices for Medicine, Inc. v. Boehl, 822 F.2d

1062, 1066 (Fed.Cir.1987)). These dates are
undisputed. They are July 31, 1998 for the '583 patent
and March 15, 1999 for the '581 patent.

In light of Mosel's failure to properly mark products
which would have placed others on notice of the
patents in suit and, thus, their method claims, the
court will grant Micron's motion for partial summary
judgment. See Fed.R.Civ.P. 56(c) (1999) (stating that
summary judgment may be "rendered forthwith if ...
there is no genuine issue as to any material fact and
that the moving party is entitled to a judgment as a
matter of law").

As the Federal Circuit explained in American
Medical Systems,
The purpose behind the marking statute [35 U.S.C.
§ 287] is to encourage the patentee to give notice
to the public of the patent. The reason that the
marking statute does not apply to method claims is
that, ordinarily, where the patent is directed to only
a method or process[,] there is nothing to mark.
Where the patent contains both apparatus and
method claims, however, to the extent that there is
a tangible item to mark by which notice of the
asserted method claims can be given, a party is
obligated to do so if it intends to avail itself of the
constructive notice provisions of [S]ection 287(a).
6 F.3d at 1538-39.

In its papers, Mosel does not contest that it and its
licensees made or sold tangible items which, if
marked, could have provided notice of the asserted
method claims of the '581 and '583 patents. Instead,
Mosel argues that it is only asserting method claims
against Micron. Thus, Mosel argues, this case is
distinguishable from American Medical Systems
because, there, the plaintiff was asserting both
method and apparatus claims against the defendant.
See id. at 1539. The court, however, finds this
distinction to be immaterial.

*2 As the American Medical Systems court made
clear, regardless of whether a plaintiff is asserting
method claims, apparatus claims, or both, that party
must properly mark its products in order to obtain the
benefits of the constructive notice provisions set forth
in Section 287. Id. at 1538-39. In fact, the only time
that the notice provisions of the federal statute do not
come into play is when the patent is directed to only a
method or a process. See, e.g., Bandag, Inc. v.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1728351 (D.Del.)
(Cite as: 2000 WL 1728351 (D.Del.))

*Gerrard Tire Co., Inc.,* 704 F.2d 1578, 1581 (Fed.Cir.1983) (relying on *Wine Ry. Appliance Co. v. Enterprise Ry. Equip. Co.,* 297 U.S. 387 (1936)); *see also American Medical Sys.,* 6 F.3d at 1538 ("[W]here the patent is directed to *only* a method or process[,] there is nothing to mark .") (emphasis added).

Here, however, the '581 and '583 patents contain *both* method *and* apparatus claims. Moreover, products which embody claims from both of these patents were actually made and sold by Mosel or its licensees. Had these products been properly marked, the public (including Micron) would have been referred directly to either the '581 patent or the '583 patent. *See* 28 U.S.C. § 287(a). As a result, potential infringers (innocent or otherwise) would have been placed on constructive notice of not only the apparatus claims but also the method claims as well.

The Federal Circuit could not have made this point any more clear when it made the following statement in *American Medical Systems,*

Where the patent contains both apparatus and method claims, ... to the extent that there is a tangible item to mark by which notice of the asserted method claims can be given, a party is obligated to do so if it intends to avail itself of the constructive notice provisions of [S]ection 287(a).

6 F.3d at 1538-39.

As previously discussed, Mosel does not contest that both it and its licensees either made or sold products which, if properly marked, could have placed others on notice of the '581 and '583 patents and, thus, their method claims. Consequently, under *American Medical Systems,* Mosel cannot now avail itself of the constructive notice provisions of the marking statute.

Thus, to the extent that it is able to prove infringement at trial, Mosel may only recover damages for the time period beginning on the date when Micron received actual notice of its potentially infringing activities. Again, these uncontested dates are July 31, 1998 for the '583 patent and March 15, 1999 for the '581 patent.

For these reasons, IT IS HEREBY ORDERED that:

1. The First Motion for Summary Judgment (D.I.490) filed by Micron Technology, Inc. is GRANTED;

2. The relevant damages period for any infringement of U.S. Patent No. 5,481,581 by Micron Technology, Inc. begins on March 15, 1999; and

3. The relevant damages period for any infringement of U.S. Patent No. 5,245,583 by Micron Technology, Inc. begins on July 31, 1998.

Not Reported in F.Supp.2d, 2000 WL 1728351 (D.Del.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                    Page 1
Not Reported in F.Supp.2d, 2001 WL 66345 (D.Del.)
**(Cite as: 2001 WL 66345 (D.Del.))**

# H

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
HONEYWELL INTERNATIONAL INC., and
Honeywell Intellectual Properties, Inc.,
Plaintiffs,
v.
HAMILTON SUNDSTRAND CORPORATION,
Defendant.
**No. Civ.A. 99-309 GMS.**

Jan. 4, 2001.

Josy W. Ingersoll, Young Conaway Stargatt &
Taylor LLP, Wilmington, DE, Jonathan F. Putnam,
Lee Ann Stevenson, Kirkland & Ellis, New York,
NY, Robert J. Krupka, Kirkland & Ellis, Los
Angeles, CA, for Plaintiff, of counsel.

Richard D. Kirk, Morris, James Hitchens &
Williams LLP, Wilmington, DE, Richard F. Ziegler,
David H. Herrington, Justin S. Anand, Cleary,
Gottlieb, Steen & Hamilton, New York, NY, William
E. McCracken, G. Christopher Braidwood, Thomas
Miller, Marshall O'Toole, Gerstein, Murray & Borun,
Chicago, IL, for Defendant, of counsel.

*MEMORANDUM AND ORDER*

SLEET, J.

**\*1** Honeywell International Inc. ("Honeywell") filed
this suit against Hamilton Sundstrand ("Sundstrand")
in May of 1999 alleging that Hamilton Sundstrand
Corporation ("Sundstrand") is infringing Honeywell
patents: 4,380,893, 4,428,194 and the 4,337,615 ((the
" '893 patent," " '194 patent," and the " '615 patent,"
respectively). [FN1] The lawsuit relates to
technology for auxiliary power units ("APU"). An
APU is a small gas turbine engine, usually placed in
the tail section of an airplane, that generates
electricity for use while the aircraft is on the ground
or in flight. An APU also provides compressed air for
both starting the aircraft's main engine and
environmental control of cabin air.

FN1. On January 2, 2001, Honeywell

advised the court that it has decided to no
longer pursue its claims under the '615
patent. As a result, the court will not
consider this patent in its analysis.

Presently before the court is Sundstrand's Motion for
Summary Judgment wherein Sundstrand contends (1)
that all of Honeywell's patents-in-suit are invalid
because Honeywell offered the covered inventions
for sale more than one year before applying for the
patents and (2) that Honeywell cannot obtain
damages for any purported infringement occurring
before February 1999 because Honeywell failed to
mark its own products with the patent numbers.
Because there are genuine issues of material fact
relating to Honeywell's alleged sale of the inventions
more than one year before applying for the patents,
the court will deny Sundstrand's motion as to this
issue. The court will, however, grant Sundstrand's
motion to limit the damages period because
Honeywell failed to mark its products.

STANDARD OF REVIEW

"Summary judgment is appropriate only when 'there
is no genuine issue as to any material fact and ... the
moving party is entitled to a judgment as a matter of
law." ' *Rodime v. SeagateTech.* Inc., 174 F.3d 1294,
1301 (1999) (quoting Fed.R.Civ.P. 56(c)). In
reviewing the motion, the court must draw all
reasonable inferences in favor of the non-movant. *See
id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S.
242, 255 (1986). With this standard in mind, the
court will address the defendant's motion.

DISCUSSION

*Invalidity because of sales more than a year prior to
patent applications*

Sundstrand challenges the validity of all the patents
in suit by alleging that Honeywell offered the
covered inventions for sale more than one year before
applying for the patents. To support this contention,
Sundstrand points to an unspecified contract between
Honeywell and Boeing to show that the invention
was offered for sale. Sundstrand also alleges that
there are diagrams that show that the products at
issue were ready for patenting prior to one year
before Honeywell filed its patent applications.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 2
Not Reported in F.Supp.2d, 2001 WL 66345 (D.Del.)
**(Cite as: 2001 WL 66345 (D.Del.))**

In contrast, Honeywell argues that Sundstrand cannot establish by clear and convincing evidence that the patents were on sale prior to the critical date. In particular, Honeywell argues that there are disputed factual issues as to whether there was a definite commercial offer for sale and whether the products at issue where actually the products allegedly offered for sale.

*2 Section 102(b) of the Patent Act prohibits granting a patent for an invention that was "on sale" in the U.S. more than one year before the patent application date. 35 U.S.C. § 102(b). The "critical date" in a Section 102(b) inquiry is defined as exactly one year before a patent application is filed. *Id.* The on-sale bar applies when two conditions are satisfied before the critical date of one year before the filing date of the application: 1) a product embodying the claimed invention is the subject of a commercial offer for sale; and 2) the claimed invention is ready for patenting. *See Pfaff v. Well® Electronics, Inc.*, 525 U.S. 55, 67 (1998). A claimed invention is ready for patenting if it is reduced to practice or if there is "proof that prior to the critical date the inventor had prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention." *Id.* Whether an invention was on sale more than one year before the patent's application date is a question of law for the court to decide based on underlying factual determinations. *See Abbot Lab. v. Geneva Pharm., Inc.*, 182 F.3d 1315, 1317 (Fed.Cir.1999), *cert. denied*, 120 S.Ct. 796 (2000); *Ferag AG v. Quipp Inc.*, 45 F.3d 1562, 1566 (Fed.Cir.1995).

After considering the submissions of the parties, the court will deny summary judgment as to this issue. Although the question of whether a patentee has violated Section 102(b) is a question of law, it is based on underlying factual determinations. For example, under the first prong of the *Pfaff* standard, it is not clear that there was a definite offer for sale for the actual product embodied in the patents at issue here. Although Sundstrand claims it is undisputed that there was a contract to sell the product in dispute before the critical date, Honeywell counters that the offer to which Sundstrand refers is not specific enough to show that the sale was for the products embodied in the claims of the '893 and '194 patents. Clearly, the court's resolution of this Section 102(b) dispute must await a jury's determination of the facts underlying the dispute.

As to the second prong of *Pfaff*, whether the invention was ready for patenting, Sundstrand offers

a pre-critical date diagram which it alleges could be used by an inventor skilled in the art to make a device which contains all of the elements in the patent. In contrast, Honeywell has adduced sufficient evidence showing that one skilled in the art would *not* be enabled to make a device based on the diagrams. Because there are underlying factual issues that need to be determined, the court cannot rule as a matter of law that the '893, and '194 patents were on sale one year before the critical date.

*Limiting Damages Based on the Failure to Mark*

Sundstrand also argues that Honeywell's failure to mark its products before February 1999 limits damages in the event that Sundstrand is found to have infringed Honeywell's patents. In contrast, Honeywell contends that it was not required to mark the products because the patents at issue involve method patents.

*3 A patentee must mark his patent number on products practicing the patent in order to collect damages arising from infringement. 35 U.S.C. § 287(a). The penalty for failure to mark is that the patentee's damages will be limited to the time frame subsequent to actual notice. *See Bandag, Inc. v. Gerrard Tire Co.*, 704 F.2d 1578, 1581 (Fed.Cir.1983). The purpose behind the marking statute is to put the public on notice of the patent. *See Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 162 (1989). Only where there is no device to mark are patentees excused from the marking statute's requirements. *See American Med. Sys. v. Medical Eng'g Corp.*, 6 F.3d 1523, 1538 (Fed.Cir.1993), *cert. denied*, 511 U.S. 1070 (1994).

*893 Patent*

First, the court will grant Sundstrand's motion with regard to the '893 patent. In its papers Honeywell concedes that it has failed to mark the '893 patent. *See* Honeywell's Opposition Brief, at 28 n. 3 (D.I.130). Specifically, Honeywell says that "Sundstrand admits that Honeywell gave sufficient notice of its infringement claims with regard to the ... '893 patent [s] on February 3, 1999. Accordingly, Honeywell's damages claims with regard to each of those patents runs from that day forward." *Id.* As a result of this admission, the court will grant the motion for summary judgment with regard to Honeywell's failure to mark the '893 patent. The period of damages with regard to this patent shall commence on February 3, 1999.

*'194 Patent*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 66345 (D.Del.)
(Cite as: 2001 WL 66345 (D.Del.))

The '194 patent covers a method for controlling surge rather than an apparatus. Generally, the marking statute does not apply to patent claims which are directed only to a method or process, because there is nothing to mark. *See American Med. Sys. Inc. v. Medical Eng'g Corp.,* 6 F.3d at 1538. If there is a tangible item to mark, however, the patentee should mark the product. *See Id.* at 1538-39. Moreover, a plaintiff cannot maintain an entitlement to damages where it asserts infringement of an apparatus patent and a method patent in which the claimed method is the use of the apparatus. *American Bank Holographics v. Upper Deck Co.,* 1997 WL 30886 at *2.

Honeywell claims that its '893 and '194 patents are *not* one patent with both method and apparatus claims. Instead, it argues that they are two are separate and distinct patents--one for an apparatus and one for a method. Honeywell specifically points to the patent examiner's decision to separate the patents at the application stage because the two patents claimed "materially different inventions." Thus, Honeywell contends that the '194 patent is distinguishable from the patent in *American Medical Systems* which involved a single patent with both apparatus and method claims. The plaintiff in *American Medical Systems* contended that it did not have to mark the product because it was only asserting methods claims. The court was unpersuaded by this argument and held that a party should mark the tangible product even if only method claims are asserted. *See id.* at 1538-9.

*4 The court is not persuaded by Honeywell's argument and will grant the defendant's motion for summary judgment for failure to mark the '194 patent. The purpose of Section 287(b) is described in *American Medical Systems:*

The purpose behind the marking statute [35 U.S.C. § 287] is to encourage the patentee to give notice to the public of the patent. The reason that the marking statute does not apply to method claims is that, ordinarily, where the patent is directed to only a method or process[,] there is nothing to mark. Where the patent contains both apparatus and method claims, however, to the extent that there is a tangible item to mark by which notice of the asserted method claims can be given, a party is obligated to do so if it intends to avail itself of the constructive notice provisions of [S]ection 287(a). 6 F.3d at 1538-39. After considering the purpose of the statute and the *American Medical Systems,* the court is compelled to grant summary judgment. In

this case, there is something to mark--Honeywell's APU. The '893 and '194 refer to the same product. Honeywell could have marked the product. Thus, the court will grant summary judgment for failure to mark. As a result, the damages period for all three patents in suit runs from February 3, 1999.

For these reasons, IT IS HEREBY ORDERED that:

1. Sundstrand's Motion for Summary Judgment (D.I.101) is DENIED in part and GRANTED in part;
    A. Sundstrand's Motion is DENIED as to the issue of the plaintiff's alleged offer to sell products embodied by the patents-in-suit more than one year before the patent application date;
    B. Sundstrand's Motion is GRANTED as to the issue of limiting damages because of Honeywell's failure to mark its products;
    1. The relevant damages period for any infringement of the '893 and '194 patents begins on February 3, 1999.

Not Reported in F.Supp.2d, 2001 WL 66345 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 2001 WL 34889110 (Partial Expert Testimony) Deposition of Dennis A. Staats New York, New York (Jan. 11, 2001)Original Image of this Document (PDF)

END OF DOCUMENT

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 281341 (M.D.N.C.)
(Cite as: 1999 WL 281341 (M.D.N.C.))

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, M.D. North Carolina.
REMINGTON ARMS COMPANY, INC., Plaintiff,
v.
MODERN MUZZLELOADING, INC., Defendant.
No. 2:97CV00660.

Feb. 9, 1999.

ORDER

OSTEEN, District J.

*1 For the reasons set forth in the memorandum opinion filed contemporaneously herewith,

IT IS HEREBY ORDERED that Defendant's Motion For Summary Judgment [62] is granted in part and denied in part. Defendant's motion for summary judgment of no literal infringement is granted; Defendant's motion for summary judgment of non-infringement under the doctrine of equivalents is denied; Defendant's motion for summary judgment for invalidity is denied; Defendant's motion for summary judgment to limit Plaintiff's recoverable damages for failing to comply with the statutory notice requirement is denied. The court finds that in no event will damages be awarded prior to March 7, 1997, the date of the second letter.

Defendant's motion for summary judgment for inequitable conduct has been rendered moot by the court's earlier denial of Defendant's Motion to Amend Answer and Counterclaim.

IT IS FURTHER ORDERED that Plaintiff's Motion For Partial Summary Judgment of Infringement [65] is denied.

MEMORANDUM OPINION

This matter comes before the court on Plaintiff and Defendant's cross motions for summary judgment.

For the reasons discussed herein, the court will grant in part and deny in part motions for summary judgment.

I. FACTUAL AND PROCEDURAL BACKGROUND

On June 18, 1997, Plaintiff Remington Arms Company, Inc. (Remington), filed a complaint against Defendant Modern Muzzleloading, Inc. (Modern), alleging infringement of its United States Letters Patent No. 5,606,817 ('817 patent). (Compl.¶ ¶ 6-7.) Defendant timely filed an answer denying infringement and asserting the affirmative defense of invalidity on the ground that the patent was obvious. [FN1] (Answer & Countercl.) In addition, Defendant filed a motion for the court to construe disputed claim language found in the '817 patent, as required by *Markman v. Westview Instruments, Inc., 116 S.Ct. 1384 (1996).* (Def.'s Mot. Claim Interpretation.) Specifically, Defendant requested that this court interpret the meaning of "forward longitudinal section" found in claim one. Thereafter, pursuant to Fed.R.Civ.P. 56(a), the parties submitted cross motions for summary judgment. Defendant moves this court to grant summary judgment in its favor on the issues of invalidity based upon obviousness, non-infringement, inequitable conduct, and limitation on recoverable damages, should this court find that Defendant's rifle does in fact infringe the '817 patent. (Def.'s Mem. Supp. Mot. Summ. J. at 1.) Plaintiff has filed a motion for partial summary judgment on the issue of literal infringement or infringement under the doctrine of equivalents. (Br. Supp. Mot. Partial Summ. J. Infringement at 1.)

> FN1. Defendant also filed a motion for leave to amend its answer to add the affirmative defense of inequitable conduct, which the court recently denied. (Order dated December 17, 1998.)

On December 10, 1998, the court held a hearing in accordance with *Markman v. Westview Instrument, Inc., 116 S.Ct. 1384 (1996),* to construe disputed claim language of the '817 patent. After reviewing the briefs submitted by the parties in support of their claim construction and the testimony and evidence presented during the hearing, the court found that "forward longitudinal section" should be construed as requiring that the first cam cut be parallel to the long axis of the bolt. [FN2]

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 281341 (M.D.N.C.)
(Cite as: 1999 WL 281341 (M.D.N.C.))

> FN2. On December 31, 1998, the parties were orally notified of the court's construction of the disputed claim language. A memorandum opinion and order have been filed.

*2 In light of this court's construction of the disputed claim language pursuant to *Markman*, the parties' cross motions for summary judgment are the matters now pending before this court and are ripe for decision.

## II. DISCUSSION

### A. Standard for Summary Judgment.

An issue may be decided on motion for summary judgment when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505 (1986). Furthermore, it is well settled that "summary judgment ... is entirely appropriate, in a patent as in any other case." *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1116 (Fed.Cir.1985); *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 835 (Fed.Cir.1984). The movant, however, bears the burden of proving the absence of any genuine issue of material fact. *SRI Int'l*, 775 F.2d at 1116. The district court must view the evidence in the light most favorable to the non-moving party "and must resolve all doubt over factual issues in favor of the party opposing summary judgment." *Id.* Moreover, the court is cognizant of the fact that "[t]hough speedy and inexpensive, summary judgment is nonetheless a 'lethal weapon' capable of 'overkill." ' *Id.*

### 1. Legal Standards For Determining Patent Infringement.

Pursuant to 35 U.S.C. § 271(a), "whoever without authority makes, uses or sells any patented invention, within the United States during the term of the patent therefor, infringes the patent." The patentee carries the burden of proving patent infringement by a preponderance of the evidence. *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 837 F.2d 1044, 1054 (Fed.Cir.), *cert. denied*, 488 U.S. 825 (Fed.Cir.1988).

In determining patent infringement, a two-step analysis is employed. "First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process."

*Carroll Touch, Inc. v. Electro Mechanical Sys., Inc.*, 15 F.3d 1573, 1576 (Fed.Cir.1993). With regard to step one, the Supreme Court has held that claim construction is a matter of law to be decided by the court. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed.Cir.1995) (en banc), *aff'd*, 517 U.S. 370 (1996). The second step of the analysis, which requires deciding whether the accused device infringes upon a properly construed claim, is a question of fact. *Fromson v. Advance Offset Plate, Inc.*, 720 F.2d 1565, 1569 (Fed.Cir.1983). With this framework in mind, the court now turns to the propriety of summary judgment on the issue of infringement.

### 2. Summary Judgment On the Issue of Patent Infringement.

Both Plaintiff and Defendant have independently moved this court for summary judgment on the issue of infringement. Defendant contends that as a matter of law its DISC Rifle does not infringe the '817 patent either literally or under the doctrine of equivalents. [FN3] (Def.'s Mem. Supp. Mot. Summ. J. at 2.) Plaintiff, on the other hand, alleges that as a matter of law, Defendant's accused rifle infringes Plaintiff's patent either literally or under the doctrine of equivalents.(Br. Supp. Pl.'s Mot. Partial Summ. J. Infringement at 7.) In light of the fact that both parties move for summary judgment on the issue of infringement, the court will address the motions concurrently.

> FN3. There are two types of infringement-- literal infringement and infringement under the doctrine of equivalents. *LRC Elec., Inc. v. John Mezzalingua Assoc., Inc.*, 974 F.Supp. 171, 184 (N.D.N.Y.1997).

a. Defendant is entitled to summary judgment for no literal infringement.

*3 It is well established that absent any dispute as to the relevant facts regarding the accused product, "the question of literal infringement collapses to one of claim construction and is thus amenable to summary judgment." *Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1578 (Fed.Cir.1996); *see also Johnston v. IVAC Corp.*, 885 F.2d 1574, 1579 (Fed.Cir.1989) ("[A] mere dispute over the meaning of a term does not itself create an issue of fact."). [FN4]

> FN4. Since the parties dispute merely the meaning of the terms in the patent rather

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 3
Not Reported in F.Supp.2d, 1999 WL 281341 (M.D.N.C.)
(Cite as: 1999 WL 281341 (M.D.N.C.))

than the relevant facts, and in light of this court's construction of the disputed claim language, summary judgment on the issue of literal infringement is appropriate.

In order to establish literal infringement, every element of the patent claim must be met. *See Mannesmann Demag Corp. v. Engineered Metal Prods. Co.,* 793 F.2d 1279, 1282, 230 U.S.P.Q. 45, 46 (Fed.Cir.1986). Defendant argues that there can be no literal infringement as a matter of law since the DISC Rifle does not contain a first cam cut having a forward longitudinal section. [FN5] In light of the court's construction of the claim language "forward longitudinal section" as reguiring that the cam cut be parallel to the axis of the bolt, the accused rifle does not literally contain a "forward longitudinal section." [FN6]

> FN5. There is evidence in the record which suggests that Defendant disputes whether 1) the DISC Rifle is attached to a receiver, and 2) whether the DISC Rifle has a firing pin head. Since Defendant has failed to raise these arguments in its motion for summary judgment or response to Plaintiff's summary judgment brief, the court shall deem these objections to have been waived. For purposes of the parties' cross motions for summary judgment, the court will assume that the only claim element in dispute is whether the DISC Rifle literally contains a forward longitudinal section or its substantial equivalent. The court, therefore, finds that the DISC Rifle contains the other claim limitations found in claim one of the '817 patent.

> FN6. Plaintiff contends that there is literal infringement as a matter of law, even under Defendant's narrow definition of forward longitudinal section since "[p]ortions of both section A and A' of the cam cut are parallel to the longitudinal axis of the bolt." (Pl .'s Resp. Def.'s Mot. Summ. J. at 6-7.) This argument is not persuasive because the '817 claim language expressly requires "a first cam cut ... having a forward longitudinal section," and not a first cam cut having portions of its section parallel to the axis of the bolt, as Plaintiff suggests. (Def.' s Reply Pl.'s Resp. Def.'s' Mot. Summ. J. at 2-4.)

Therefore, since there can be no literal infringement as a matter of law, the court shall grant Defendant's

motion for summary judgment on the grounds of no literal infringement and simultaneously deny Plaintiff's motion for partial summary judgment on the grounds of literal infringement.

b. Cross motions for summary judgment on the grounds of non-infringement and infringement under the doctrine of equivalents should be denied.

The fact that this court has found that there is no literal infringement does not end the issue of patent infringement. Under the doctrine of equivalents, "[a]n accused product that does not literally infringe a patent claim may nevertheless infringe a patent claim where differences between the accused product and the claimed invention are insubstantial." *See LRC Elec., Inc. v. John Mezzalingua Assoc., Inc.,* 974 F.Supp. 171, 184 (N.D.N.Y.1997); *see also Warner-Jenkinson Co. v. Hilton Davis Chemical Co.,* ___ U.S. ___, 117 S.Ct. 1040, 1046 (1997). [FN7]

> FN7. Although the doctrine of equivalents is generally considered to be the exception and not the rule in patent infringement cases, it "exists to prevent a fraud on a patent." *See Wilson Sporting Goods Co. v. David Geoffrey & Assoc.,* 904 F.2d 677, 684, 14 U.S.P.Q.2d 1942, 1948 (Fed.Cir.1990); *Laitram Corp. v. Cambridge Wire Cloth Co.,* 863 F.2d 855, 857 (Fed.Cir.1988) ("[T]he doctrine ... 'temper[s] unsparing logic and prevent[s] an infringer from stealing the benefits of the invention." ') (citations omitted); *Ethyl Molded Prod. Co. v. Betts Packaging, Inc.,* Civ. A. No. 85-111, 1988 WL 122168, *35 (E.D.Ky.1988) ("[T]he doctrine of equivalents serves a critical function of precluding an infringer from making insubstantial changes to avoid the literal claims, and still appropriate the heart of the invention .").

Despite the existence of an alternative theory of patent infringement, the doctrine of equivalency is considered to be the exception and not the rule, because of its equitable nature. *See J .M. Huber Corp. v. Positive Action Tool of Ohio Co.,* 881 F.Supp. 279, 283 (S.D.Tex.1995); *Joel H. Eisenberg v. Alimed, Inc.,* Civ. A. No. 91-12413-NG, 1994 WL 568747, *5 (D.Mass. Sept. 29, 1994) ("[B]ecause the analysis is so fact bound, summary judgment is usually inappropriate when infringement depends on [the doctrine of equivalents] theory."); *Aid Pack, Inc. v. Beecham, Inc.,* 641 F.Supp. 692, 694 (D.Mass.1986) ("Usually, when the issue of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 281341 (M.D.N.C.)
(Cite as: 1999 WL 281341 (M.D.N.C.))

infringement depends on the doctrine of equivalence, summary judgment is inappropriate because of the factual nature of the inquiry.").

Furthermore, it is well settled that "[a] finding of equivalence is a determination of fact." *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,* 339 U.S. 605, 609, 70 S.Ct. 854, 857, 85 U.S.P.Q. 328, 330 (1950). With these caveats in mind, the court will consider a motion for summary judgment on the grounds of infringement or non-infringement with caution.

**\*4** The test for infringement under the doctrine of equivalents is as follows: "Infringement may be found under the doctrine of equivalents if every limitation of the asserted claim, or its 'equivalent,' is found in the accused subject matter, where an 'equivalent' differs from the claimed invention only insubstantially ." *Ethicon Endo-Surgery, Inc. v. United States Surgical Corp.,* 149 F.3d 1309, 1315, 47 U.S.P.Q.2d 1272, 1276 (Fed.Cir.1998). Moreover, the Supreme Court, in a landmark decision, established a three-part test for determining infringement under the doctrine of equivalents. *Graver Tank,* 339 U.S. at 608, 70 S.Ct. at 856.

According to the Supreme Court, "an accused product infringes a claimed invention under the doctrine of equivalents when the accused product 'performs substantially the same function in substantially the same way to obtain the same result." ' *LRC Elec., Inc.,* 974 F.Supp. at 184-85 (citations omitted); *see also Ethyl Molded Prod. Co. v. Betts Packaging, Inc.,* Civ. A. No. 85- 111, 1988 WL 122168, \*35 (E.D.Ky.1988) ("The doctrine protects the patentee from devices that differ in name, form or shape from the patented invention, yet perform substantially the same function in substantially the same way to obtain substantially the same result as the claimed product or process.").

According to Defendant, summary judgment for non-infringement under the doctrine of equivalents is appropriate since "[t]he DISC Rifle ... does not have a forward longitudinal section, nor is there an equivalent section which extends parallel to the long axis of the bolt." (Def.'s Reply Pl.'s Resp. Mot. Summ. J. at 5.) Plaintiff, on the other hand, contends that the DISC Rifle does have a section which is equivalent to the '817 patent's forward longitudinal section. In particular, Plaintiff alleges that infringement under the doctrine of equivalents exists as a matter of law since "the cam cut structure in the DISC Rifle is the substantial equivalent to the forward longitudinal section and rearwardly

extending transverse section in the patent." (Br. Supp. Pl.'s Mot. Partial Summ. J. Infringement at 13.)

In determining whether or not the DISC Rifle infringes under the equivalency doctrine, this court must first determine whether every element of independent claim one in the '817 patent is met either literally or under the doctrine of equivalents by the DISC Rifle.

For purposes of ruling on the parties' motions for summary judgment and in the absence of any argument presented by Defendant disputing the existence of the remaining claim limitations other than a forward longitudinal section, the court finds as a matter of law that the DISC Rifle literally contains every element of claim one, except the following: The DISC Rifle does not contain a forward longitudinal section as defined by this court to require that the cam cut be parallel to the axis of the bolt.

Moreover, this court finds that Defendant is not entitled to summary judgment of non-infringement and Plaintiff is not entitled to summary judgment for infringement under the doctrine of equivalents because genuine issues of fact exist as to whether the cam cut on the side of the DISC Rifle performs the same function, in the same way, to obtain the same result as the cam cut on the element in the '817 patent.

**\*5** Furthermore, the Federal Circuit has held that "the traditional function, way, result tripartite test is not 'the' test for infringement under the doctrine of equivalents. Rather a finding of infringement under the doctrine 'requires proof of insubstantial differences between the claimed and accused products or processes." ' *Roton Barrier, Inc. v. Stanley Works,* 79 F.3d 1112, 1126 (Fed.Cir.1996); *see also* Robert L. Harmon, Patents and the Federal Circuit § 6.3(a)(ii) at 277 (4th ed. 1998) (Finding that the decision in *Hilton Davis Chem. Co. v. Warner-Jenkinson Co .,* "seems simply to have elevated substantiality of the differences to the focus of the equivalency inquiry, in place of the more familiar three-part test of similarity in function, way, and result.").

Plaintiff has presented ample evidence which is sufficient to defeat Defendant's motion for summary judgment. Testimony from Plaintiff's firearms expert witness, David Byron, establishes that genuine issues of material fact exist with regard to whether the cam cut in the DISC Rifle is the substantial equivalent to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 281341 (M.D.N.C.)
(Cite as: 1999 WL 281341 (M.D.N.C.))

the forward longitudinal section for purposes of applying the doctrine of equivalents. [FN8] In Byron's expert opinion, "[t]he cam cut on the DISC Rifle guides and controls rotational and longitudinal movement of the bolt assembly" just like the first cam cut on the '817 patent. (Decl. Byron, Aug. 31, 1998 at 3.) Byron has testified that "[t]he cam cut structure in the DISC Rifle is also the substantial equivalent to the forward longitudinal section and rearwardly extending transverse section in the patent." Id. Byron's expert report further discloses that he ran tests which established that the first cam cut on the DISC Rifle performs a camming function. (Decl. Byron, Sept. 30, 1998 at 3.) [FN9] ("The facts for the function, way, and result analysis ... were verified by tests I performed on the DISC Rifle.")

> FN8. In finding that genuine issues of fact exist with regard to the issue of infringement/non-infringement under the doctrine of equivalents, this court is persuaded by the fact that Defendant's original argument for non-infringement by equivalency, alleged in its first motion for summary judgment (withdrawn Apr. 15, 1998), was based on a false statement that the cam cut in the DISC Rifle did not perform a guiding function. (Def.'s Mem. Supp. Mot. Summ. J. Non-Infringement filed March 23, 1998; notice of withdrawal Apr. 15, 1998); see also Pl.'s Resp. Def.'s Summ. J., Ex. 9-- Perdelwitz Dep. at 95-97 (Perdelwitz stated that the screw and slot on the DISC Rifle serve a camming function and that the interaction of the bolt-retaining screw and the slot guides the movement of the bolt. Perdelwitz's testimony shows the falsity of Knight's statement.). Defendant's present motion for summary judgment has completely abandoned this argument. (Def.'s Mem. Supp. Mot. Summ. J. at 8-9.)

> FN9. According to Byron's preliminary report, for purposes of applying the doctrine of equivalents, any arguable differences in the DISC Rifle and the '817 patent are insubstantial. (Decl. Byron, Aug. 31, 1998, Ex. A--Byron Report at 7.)

Moreover, deposition testimony from Defendant's expert, James Carlson, indicates that the cam cut on the DISC Rifle performs the same function as the cam cut in the '817 patent. (Br. Supp. Pl.'s Mot. Partial Summ. J. Infringement, Ex. 7--Carlson Dep. at 63.) Carlson's admission that the purpose of the cut

in the left side of the bolt of the DISC Rifle is to retain the bolt in the receiver and to serve as a camming surface for the interaction with the spring detent or bolt screw raises a genuine issue of material fact, which precludes a finding of non-infringement. Id.

Deposition testimony from other defense witnesses also raises genuine issues of fact. (Pl.'s Resp. Def.'s Mot. Summ. J., Ex. 12--Hengstenberg Dep. at 119.) Eric Hengstenberg, Modern's engineering manager, conceded that while the ear was added primarily for safety purposes, there was a secondary purpose for the bolt handle to interact with the ear on the closing. Id. [FN10]

> FN10. Even though the DISC Rifle performs functions other than the guiding movement of the bolt, this alone does not preclude a finding of infringement. See Amstar Corp. v. Envirotech Corp., 730 F.2d 1476, 1482 (Fed.Cir.1984) ("[I]nfringement cannot be avoided by the mere fact that the accused device ... performs additional functions.") (citation omitted).

The record is replete with evidence which suggests patent infringement or, at the very minimum, raises genuine issues of fact. See Amstar Corp. v. Envirotech Corp., 730 F.2d 1476, 1482 (Fed.Cir.1984) ("[C]onsideration of the infringement issue may be benefitted by recognition of the findings made in considering the validity issue."). The court finds significant that Defendant's DISC Rifle was unlike any of Defendant's rifles before it, in that Defendant followed Plaintiff in placing a similar cam cut on the side of its firearms bolt body. (Br. Supp. Pl.'s Mot. Partial Summ. J. Infringement at 3.) Furthermore, Defendant's own expert said that Plaintiff's '817 patent was revolutionary. (Pl.'s Resp. Def.'s Mot. Summ. J. Ex. 2--Carlson Dep. at 92-93); see also Amstar Corp., 730 F.2d at 1483 ("Important to determination of the infringement issue, also, are the findings establishing the pioneer nature of the [patentee's] inventions."). In addition, Plaintiff's commercial embodiment came out in early 1996 and Defendant's employees first inspected the new Remington 700 ML in or around January 1996 at the annual shot show. Defendant then promptly began work upon a new ML rifle that would incorporate features similar to the 700 ML. (Br. Supp. Pl.'s Mot. Partial Summ. J. Infringement at 3.)

*6 Perhaps most compelling of all for the court is the deposition testimony from Dale Watley, former chief

Not Reported in F.Supp.2d                                                                Page 6
Not Reported in F.Supp.2d, 1999 WL 281341 (M.D.N.C.)
(Cite as: 1999 WL 281341 (M.D.N.C.))

executive officer of Modern, who stated he saw a prototype bolt of the DISC Rifle with a cut which was parallel to the axis of the bolt. (Pl.'s Resp. Def.'s Mot. Summ. J., Ex. 14--Watley Dep. at 44.) _[FN11]_ These additional factors are clearly relevant and further suggest that Defendant's DISC Rifle may infringe Plaintiff's patent.

> FN11. Watley testified that the prototype bolt for the DISC Rifle, which contained a cut parallel to the axis of the bolt, was designed to give consideration to making a DISC Rifle that would 1) use a percussion cap instead of a disc, and 2) produce more rearward movement of the bolt to create more space to insert a percussion cap in a DISC Rifle. (Pl.'s Resp. Def.'s Mot. Summ. J., Ex. 14--Watley Dep. at 44-46.) It is interesting to note that the '817 patent calls for a percussion cap. A reasonable jury could find that Defendant infringed Plaintiff's patent, thus, the court is precluded from granting Defendant's motion for summary judgment of non-infringement.

Moreover, the physical appearance of the 700 ML and the DISC Rifle is irrelevant to the infringement analysis because the comparison of the accused device to the language of the patent claim determines if the patent has been infringed. _Amstar Corp._, 730 F .2d at 1481. The differences in structure between Plaintiff's 700 ML and Defendant's DISC Rifle does not impede a finding of infringement under the doctrine of equivalents. See _Marvel Specialty Co. v. Bell Hosiery Hills, Inc._, 330 F.2d 164, 176 (4th Cir.1964) (Finding that "the single blade of the Mend-More is in fact the fair equivalent of the circular series of work-engaging elements claimed in the patent" despite the structural differences of the two inventions.).

Defendant's argument that the strongest evidence of non-infringement comes from the fact that the PTO granted Defendant a patent for its DISC Rifle is not persuasive. (Def.'s Resp. Pl.'s Mot. Summ J. at 13.) It is well settled that the issuance of a patent raises the presumption of validity, not infringement. See _Atlas Powder Co. v. E.I. DuPont De Nemours & Co._, 750 F.2d 1569, 1581 (Fed.Cir.1984); see also _Hoechst Celanese Corp. v. BP Chem. Ltd._, 78 F.3d 1575, 1582 (Fed.Cir.1996) ("The fact of separate patentability presents no legal or evidentiary presumption of noninfringement."); _Sure Plus Mfg. Co. v. Kobrin_, 719 F.2d 1114, 1117 (11th Cir.1983) (Defendant's receipt of a patent on its DISC Rifle

"does not of itself tend to negative infringement."). The case law makes it clear that the patentability of Defendant's DISC Rifle does not foreclose a finding of infringement.

The court also finds that a genuine issue of fact exists with regard to Defendant's argument that the DISC Rifle operates in a substantially different manner because loading the DISC Rifle is different from loading the 700 ML rifle. Plaintiff's expert witness, David Byron, has testified that the bolt operation on the two rifles is equivalent and only the loading operation is different. (Reply Supp. Pl.'s Mot. Partial Summ. J., Ex. 3--Byron Dep. at 62.) Additionally, Defendant's reliance on a videotape of loading the DISC Rifle versus loading Plaintiff's commercial embodiment of the '817 patent is irrelevant. (Reply Supp. Pl.'s Mot. Partial Summ. J. Infringement at 5-6.) It is well settled that comparing the accused device to the commercial embodiment of the patent instead of the patent claim language constitutes clear error. See _Amstar Corp._, 730 F.2d at 1481 ("The law of infringement requires that the asserted claims be compared with the products or processes accused of infringement.").

*7 Despite the fact that the loading of the two firearms differs, this court cannot say as a matter of law that the two rifles operate in a substantially different way when the depositions, pleadings, and affidavits raise genuine issues of material fact regarding whether or not infringement by equivalency exists.

Plaintiff has introduced evidence establishing that the first cam cut of the DISC Rifle, just like the '817 patent, guides and restricts the movement and location of the bolt through the physical interaction of the cam cut and the screw or spring detent, to achieve the proper functioning of the firearm. (Decl. Byron, Aug. 31, 1998 at 7.) Thus, Plaintiff has raised genuine issues of material fact as to whether the first cam cut and cam follower in the DISC Rifle have 1) substantially the same functions as those described in the patent, and 2) perform those functions in substantially the same way in order to achieve the same result. _[FN12]_ Therefore, Defendant's motion for summary judgment of non-infringement is denied.

> FN12. The test for infringement under the doctrine of equivalents is often referred to as the means, way, result three-part test for infringement. See _Graver Tank & Mfg. Co. v. Linde Air Prods. Co._, 339 U.S. 605, 608, 70 S.Ct. 854, 856 (1950).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 281341 (M.D.N.C.)
(Cite as: 1999 WL 281341 (M.D.N.C.))

Giving due consideration to the fact that summary judgment is rarely appropriate on the issue of infringement, particularly under the doctrine of equivalents, [FN13] and, in light of evidence introduced by Defendant indicating that the DISC Rifle and '817 patent are not substantially equivalent, Plaintiff's motion for partial summary judgment must likewise be denied.

FN13. See _J.M. Huber Corp. v. Positive Action Tool of Ohio Co._, 881 F.Supp. 279, 283 (S.D.Tex.1995).

According to Defendant's technical expert Dr. J.W. Carlson's report, the bolt of the DISC Rifle functions differently than the '817 rifle. (Br. Supp. Pl.'s Mot. Partial Summ. J. Infringement, Ex. 7--Carlson Dep. at 60-61.) Defendant has introduced evidence that a significant difference in function exists by reason of the amount of movement in the bolt in the '817 patent as compared to the DISC Rifle. (Br. Supp. Pl.'s Mot. Partial Summ. J. Infringement, Ex. 4, at 4.) ("[T]he bolt in the accused rifle only moves approximately .075 inches forwardly or rearwardly while the claimed bolt moves at least 1.5 to 2 inches.") This alone raises a genuine issue of material fact as to the insubstantiality of the differences between the DISC Rifle and Plaintiff's rifle.

Defendant's evidence also suggests that the difference between the accused and patented rifle is substantial because the bolt in the DISC Rifle cannot be interchanged for the bolt in the '817 patent and still function properly. _Id._ ("[T]he accused bolt could not be substituted or interchanged for the claimed bolt."); [FN14] see also Robert L. Harmon, Patents and The Federal Circuit § 6.3(a)(ii) at 280 (4th ed. 1998) ("[T]he known interchangeability of substitutes ... is an important objective factor bearing on whether the accused device is substantially the same as the patented invention.") Finally, Defendant has introduced evidence which tends to prove that unlike the DISC Rifle, the forward longitudinal section [FN15] to the cam cut in the '817 patent was added "to move the bolt back and forth and reciprocate it," because a different means of replacing the percussion cap is being used. (Reply Supp. Pl.'s Mot. Partial Summ. J., Ex. 3--Byron Dep. at 91.)

FN14. Defendant also maintains that there can be no equivalency because the purpose of the longitudinal movement in Plaintiff's rifle is to provide space to insert a percussion cap on the nipple. (Def.'s Resp.

Pl.'s Mot. Summ. J. at 10.) Moreover, Defendant points out that two inches is needed to accommodate the insertion but that the DISC Rifle eliminates the need to retract the bolt assembly to insert the percussion element. _Id._

FN15. "Forward longitudinal section" has been construed by the court to require that the section be parallel to the axis of the bolt.

*8 Based upon the record, the court finds that Defendant has raised a genuine issue of fact as to whether the differences between the DISC Rifle and the '817 rifle are substantial so as to preclude a finding of infringement as a matter of law under the doctrine of equivalents. Therefore, the court denies Defendant's motion for summary judgment on non-infringement and Plaintiff's motion for partial summary judgment of infringement.

B. Summary Judgment on the Issue of Patent Invalidity Should Be Denied.

In addition to its argument for non-infringement, Defendant alleges that Plaintiff's '817 patent is invalid on the grounds of obviousness. (Def.'s Mem. Supp. Mot. Summ. J. at 9-10.) Pursuant to 35 U.S.C. § 103, "[a] patent claim is invalid ... where the subject matter of the claim would have been obvious to one of ordinary skill in the art at the time the challenged invention was made." _LRC Elec._, 974 F.Supp. at 183. It has long been recognized that the issuance of a patent raises a presumption of validity, which can only be rebutted by clear and convincing evidence. _Intel Corp. v. United States Int'l Trade Comm'n_, 946 F.2d 821, 829, (Fed.Cir.1991); see also 35 U.S.C. § 282 (codifying the statutory presumption of validity).

Although the issue of obviousness is a question of law, it is nevertheless "premised on a number of factual determinations." _LRC Elec._, 974 F.Supp. at 183. In addressing the matter of obviousness, courts examine the following four factors:
  (1) the scope and content of the prior art, (2) the differences between the claims and the prior art, (3) the level of ordinary skill in the pertinent art, and (4) secondary considerations of obviousness such as commercial success, long felt but unsolved need, and the failure of others to solve the problem at hand, and copying of the invention by others.
_Id._ Giving due consideration to the above factual inquiries, the test for obviousness is "whether the combined teachings of the prior art, taken as a whole,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 281341 (M.D.N.C.)
(Cite as: 1999 WL 281341 (M.D.N.C.))

would have rendered the claimed invention obvious to one of ordinary skill in the art." *Id.* at 184.

In the present matter, Defendant alleges that the combination of the Rodney, Andersson, Schuerman, and two Koon patents as prior art renders the '817 patent obvious and invalid as a matter of law. (Def.'s Mem. Supp. Mot. Summ. J. At 14-15.) Having considered the alleged prior art patents cited by Defendant along with expert witness testimony, depositions, affidavits, and other evidence submitted by both parties, the court finds that genuine issues of fact exist regarding the issues of obviousness, i.e., the scope and content of the prior art, its relevancy to the '817 patent, and the secondary considerations of obviousness. Therefore, Defendant's motion for summary judgment for invalidity must be denied.

Plaintiff has introduced evidence which suggests that the alleged prior patents relied on by Defendant do not constitute relevant art. (Decl. Byron, Sept. 30, 1998 at 4.) According to Plaintiff's expert witness, "the L-shaped slots disclosed in the four patents are guide slots and thus perform a different function than the camming function performed by the first cam cut disclosed in the '817 patent ." *Id.* Even Defendant's own patent expert, Dr. Carlson, concedes that these prior art patents do not relate to an ML firearm and disclose guide slots that have materially different functions than the cam cuts. (Pl.'s Resp. Def.'s Mot. Summ. J., Ex. 2--Carlson Dep. at 69-86.)

*9 Plaintiff has introduced expert testimony that Modern's prior art is directed toward breech loading rifles and has nothing to do with ML firearms. (Decl. Byron, Sept. 30, 1998 at 4.) Defendant, on the other hand, maintains that breech loading rifles constitute prior art since the "rifle disclosed in the '817 patent was developed from [Plaintiff's] well known Model 700 Rifle which is a breech loading firearm." ' (Reply Pl.'s Resp. Def.'s Mot. Summ. J. at 7, n. 6.)

Additionally, Plaintiff's expert has stated that "there is no evidence of any motivation or connection between the Rodney patent and the four guide slot patents to make obvious the combination of the patents by a person of ordinary skill in the art." (Decl. Byron, Sept. 30, 1998 at 5.) Defendant admits in its brief that "Remington's particular combination of elements might be considered novel in the literal sense of the term." (Def.'s Mem. Supp. Mot. Summ. J. at 14.) Finally, this court adheres to the admonition that "[c]are must be taken to avoid hindsight reconstruction by using 'the patent in suit as a guide through the maze of prior art references, combining

the right references in the right way so as to achieve the result of the claims in suit." ' *Grain Processing Corp. v. American Maize-Prods. Co.,* 840 F.2d 902, 907 (Fed.Cir.1988) (citations omitted). [FN16]

> FN16. In rejecting Defendant's initial request for re-examination, the PTO stated: [A]lmost any valid claim in a U.S. patent can be separated into a plurality of sections and have each individual element or item met by some prior art reference. To conclude that this invalidates the claim is not in any way support by 35 U.S.C. 103 or its intention to apply to what would be obvious to one of ordinary skill in the art. (Pl.'s Resp. Def.'s Mot. Summ. J., Ex. 6-- copy of PTO Order Denying Request For Reexamination at 11.).

In light of this disputed evidence, reasonable minds could differ as to whether there is anything in Defendant's cited art references to teach or suggest the combination of the prior art to produce Plaintiff's patented invention. *See ACS Hosp. Sys., Inc. v. Montefiore Hosp.,* 732 F.2d 1572, 1577, 221 U.S.P.Q. 929, 933 (Fed.Cir.1984) ("Obviousness cannot be established by combining the teachings of the prior art to produce the claimed invention, absent some teaching or suggestion supporting the combination."). Thus, genuine issues of material fact exist as to whether the '817 patent would have been obvious to one of ordinary skill in the art, especially in light of the strong presumption of patent validity and the heavy burden required to overcome it.

Moreover, this court is not persuaded by Defendant's argument that the fact that the PTO granted Defendant's second request for re-examination is indicative of invalidity. Courts addressing this same argument have held that "the grant by the examiner of a request for reexamination is not probative of unpatentability. The grant of a request for reexamination, although surely evidence that the criterion for reexamination has been met ..., does not establish a likelihood of patent invalidity." *Hoechst,* 78 F.3d at 1584. [FN17] Therefore, the fact that the PTO granted Defendant's request for re-examination is not dispositive and does not conclusively establish invalidity as a matter of law. [FN18]

> FN17. According to the PTO's 1994 annual report, "89% of the reexamination requests were granted that year, but only 5.6% ... were completely rejected." *Hoechst Celanese Corp. v. BP Chem. Ltd .,* 78 F.3d

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1575, 1584 n. 2 (Fed.Cir.1996).

FN18. Moreover, this court is cognizant of the fact that Defendant's initial request for re-examination was denied by the PTO because the prior art cited did not raise a substantial new question of patentability. (Pl.'s Resp. Def.'s Mot. Summ. J., Ex. 6-- copy of Order Denying Request For Reexamination at 12.)

Recognizing "[t]he difficulty of determining subjectively at some removed time whether a particular invention would have been obvious to a person of ordinary skill in the art," the Fourth Circuit has considered objective evidence of obviousness. *See Marvel Specialty Co., 330 F.2d at 172* (regarding the secondary considerations as indicia of obviousness or non-obviousness which may be relevant to the issue of invalidity); *see also Graham v. John Deere Co., 383 U.S. 1, 17-18, 86 S.Ct. 684, 694 (1966)* (Finding that "[s]uch secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented.").

\*10 Additional evidence of non-obviousness found in the record consists of the following secondary factors: Commercial success, [FN19] industry acclaim, and the copying of the 700 ML embodiment of the patent. These secondary considerations of non-obviousness further reinforce that disputed issues remain which must be resolved by the trier of fact.

FN19. *See Marvel Specialty Co. v. Bell Hosiery Mills, Inc., 330 F.2d 164, 172 (4th Cir.1964).*

Defendant's own ML expert, Dr. Carlson, has admitted that the 700 ML achieved significant commercial success in the ML market by "start[ing] a minor revolution" in the ML industry. (Pl.'s Resp. Def.'s Mot. Summ. J., Ex. 2-- Carlson Dep. at 92-93.) (The 700 ML represented "a departure from tradition" and "was a revolution that broadened the scope of the muzzleloading firearms sales market."); *see also id.,* Exs. 18 & 19 (The 700 ML "is simply a stroke of genius.") ("There are some who think the definition of a primitive muzzle loader is any rifle built prior to the Remington 700 ML."). Defendant, however, maintains that Plaintiff "has failed to establish a sufficient legal relationship between the proported [sic] evidence of non-obviousness and the

claimed invention." *See* Reply Pl.'s Resp. Def.'s Mot. Summ. J. at 8. Therefore, a disputable issue of fact exists which precludes a finding of invalidity as a matter of law.

There is evidence in the record of long felt need in the market. The background section of the '817 patent expressly states: "Despite the advances that have been made over the decades, a continuing need exists for a cocking and firing mechanism for muzzleloading firearms that provides a combination of ease of cocking with minimization of the lock time of the firearm upon firing." (Br. Supp. Pl.'s Mot. Partial Summ. J. Infringement; Ex. 1(copy of the '817 patent), col.1, 11.51-55.)

Moreover, the evidence raises genuine issues of fact as to whether there was any copying of the 700 ML embodiment of the patent. The record reveals that within the same time frame after seeing Remington's ML rifle, Defendant began to design its own ML rifle. *See* Br. Supp. Pl.'s Mot. Partial Summ. J. Infringement at 3. [FN20] Of all the secondary evidence, however, the court finds it particularly noteworthy that the original prototype bolt for the DISC Rifle was parallel to the axis of the bolt. (Pl.'s Resp. Def.'s Mot. Summ. J., Ex. 14--Watley Dep. at 44.); *see also General Am. Transp. Corp. v. Cryo-Trans, Inc., 93 F.3d 766, 774 (Fed.Cir.1996)* (In finding that the patent was valid, the court heavily relied on secondary considerations of non-obviousness, with particular emphasis on the fact that the original prototype infringed the patent.).

FN20. The record indicates that Defendant inspected the 700 ML in or around January 1996 at the annual shot show and then began work on its own ML rifle. In November 1996, the DISC Rifle was marketed and achieved immediate success in the marketplace. (Br. Supp. Pl.'s Mot. Partial Summ. J. Infringement at 3-4.)

The disputed evidence submitted by the parties in conjunction with the presumption of validity afforded patents renders the issue of invalidity particularly inappropriate for summary disposition. The court finds that the issue of patent invalidity is best handled by submitting the matter to a jury. Therefore, Defendant's motion for summary judgment on invalidity is denied.

C. Summary Judgment Limiting the Amount of Damages Recoverable from Defendant.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 281341 (M.D.N.C.)
(Cite as: 1999 WL 281341 (M.D.N.C.))

**\*11** In the event the DISC Rifle is found to have infringed the '817 patent, Defendant nevertheless contends that Plaintiff's damages should be limited to those occurring after the filing of the complaint as a matter of law for failing to comply with the statutory notice requirement.

Pursuant to 35 U.S.C. § 287(a):
> In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.

The parties do not dispute that Plaintiff failed to mark its patent. (Pl.'s Resp. Def.'s Mot. Summ. J. at 18-19.) The parties, however, contest whether Plaintiff complied with the statutory notice requirement. *Id.* In particular, Defendant contends that the two letters sent by Plaintiff do not constitute actual notice as a matter of law rendering summary judgment appropriate.

Courts faced with the identical issue have held that "notice must be of 'the infringement,' not merely notice of the patent's existence or ownership. Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device." *Amsted Indus. Inc. v. Buckeye Steel Castings Co.,* 24 F.3d 178, 187 (Fed.Cir.1994). The courts, however, recognize that "the notice need not necessarily include the word 'infringement.' " *Wokas v. Dresser Indus., Inc.,* 978 F.Supp. 839, 844 (N.D.Ind.1997); *see also Ceeco Mach. Mfg., Ltd. v. Intercole, Inc.,* 817 F.Supp. 979, 987 (D.Mass.1992) ("[T]he cases do not require the charge of infringement to be direct.").

Although Plaintiff's '817 patent was not issued until March 4, 1997, Plaintiff sent Defendant a letter dated January 30, 1997, notifying Defendant of its pending patent application. Plaintiff's letter informed Defendant that it had recently developed and introduced a muzzleloading rifle. Plaintiff indicated that its two patent applications on ML rifles had been allowed and Plaintiff "expect[ed] patents to issue later this year." Copies of the allowed claims for each patent application were enclosed in the letter. (Pl.'s Resp. Def.'s Mot. Summ. J., Ex. 3.)

The letter also informed Defendant that its DISC Rifle "may fall within the scope of the allowed claims of at least one of the Remington applications." *Id.*

*see also Wokas,* 978 F.Supp. at 844, n. 3 (Finding that "[g]iven the right context, the words 'contained in' or similar words could be read synonymously with 'infringement.' "). Finally, Plaintiff "suggest[ed] that [Defendant] suspend [its] marketing plans for [its] muzzle loader product until evaluating the scope of the allowed claims of the Remington application" in an effort to avoid litigation for patent infringement. (Pl.'s Resp. Def.'s Mot. Summ. J., Ex. 3.)

**\*12** The statutory requirement for actual notice is satisfied "when the recipient is informed of the identity of the patent and the activity that is believed to be an infringement, accompanied by a proposal to abate the infringement, whether by license or otherwise." *See SRI Int'l, Inc. v. Advanced Tech Lab, Inc.,* 127 F.3d 1462, 1470 (Fed.Cir.1997). Moreover, it is firmly established "that there can be no infringement of a patent prior to its issuance." *See Black and Decker (U.S.), Inc. v. Home Prod. Mktg., Inc.,* 929 F.Supp. 1114, 1120 (N.D.Ill.1996); *Mixing Equip. Co. v. Innova-Tech, Inc.,* Civ. A No. 85-535, 1986 WL 14541, \*2 (E.D.Pa. Dec. 19, 1986) (Noting that the Supreme Court has found that a patentee's right to exclude others from the use and sale of its invention for seventeen years "is created by the patent, and no suit can be maintained by the inventor against anyone for using it before the patent is issued.") (citation omitted); *see also Gustafson, Inc. v. Intersystems Indus. Prod., Inc.,* 897 F.2d 508, 510 (Fed.Cir.1990) (Holding that "no damages are payable on products manufactured and sold before the patent issued."); *Thomson Mach. Co. v. LaRose,* 306 F.Supp. 681, 696 (E.D.La.1969) ("Until ...a patent [is] issued, the patentee has established no monopoly to an invention."). [FN21]

> FN21. *See also Thomson Mach. Co. v. LaRose,* 306 F.Supp. 681, 697 (E.D.La.1969) ("Neither knowledge of an application for patent or of the pendency thereof can operate to accelerate the grant rights under a patent to begin before the actual grant date nor create a period of exclusive right in advance of, in addition to, or in enlargement of the period of seventeen years authorized by law.").

In light of the fact that the January 30, 1997, letter was sent prior to the issuance of the patent, the court holds as a matter of law that the letter standing alone cannot satisfy the statutory requirement for actual notice under § 287(a). Despite this finding, Defendant is still not entitled to summary judgment on its motion to limit damages to the date of the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 281341 (M.D.N.C.)
(Cite as: 1999 WL 281341 (M.D.N.C.))

lawsuit.

Plaintiff mailed a second letter, dated March 7, 1997, which informed Defendant that the '817 patent had been issued. A copy of the patent was also enclosed. [FN22] Viewing the evidence in the light most favorable to the non-moving party, and giving due consideration to the purpose behind the actual notice requirement, [FN23] it cannot be said that as a matter of law Plaintiff's two letters fail to satisfy the statutory notice requirement. See Maxwell v. K Mart Corp., 880 F.Supp. 1323, 1339 (D.Minn.1995) (Adopting a totality of the circumstance approach to the statutory notice requirement and finding that Plaintiff's communications to the alleged infringer, when viewed collectively, raised a genuine issue as to whether actual notice was given.); see also Wokas, 978 F.Supp. at 845-46 (Finding that the written statements and admissions when viewed together raised genuine issues of fact as to whether actual notice of infringement was given.); 35 U.S.C. § 287(b)(5)(A) ("For purposes of this subsection, notice of infringement means actual knowledge, or receipt by a person of a written notification, or a combination thereof.").

> FN22. This court notes that Plaintiff's second letter was mailed to Defendant three days after the '817 patent was issued.

> FN23. See SRI Int'l v. Advanced Tech. Lab., Inc., 127 F.3d 1462, 1470 (Fed.Cir.1997) (Finding that the actual notice requirement "is designed to assure that the recipient knew of the adverse patent during the period in which liability accrues, when constructive notice by marking is absent.").

Despite Defendant's position that neither letter standing alone satisfies the actual notice requirement of the statute, the court finds that when viewed together, the two letters raise disputable issues of fact as to whether they constitute sufficient notice of a charge of infringement. See Accuscan, Inc. v. Xerox Corp., No. 96 Civ. 2579(HB) 1998 WL 603217, *11 (S.D.N.Y. Sept. 11, 1998) ("[I]t is well established that whether § 287 was complied with is an issue of fact for the jury."). There is no dispute that the second letter merely identified the patent number and provided a copy of the patent. The court nevertheless finds that the two letters read together might satisfy the actual notice requirement. [FN24] Therefore, Defendant's motion to limit damages to after the filing of the complaint is denied. [FN25]

> FN24. The court rejects Defendant's argument that its motion for summary judgment should be granted because Plaintiff failed to plead compliance with the statutory notice requirement. See Maxwell v. Baker, Inc., 805 F.Supp. 728, 732 (D.Minn.1992) (Granting Defendant's partial summary judgment to limit the recovery of damages where Plaintiff failed to plead notice of infringement to Defendant.) The court finds no support in either the statute or other case law for the Maxwell court's statutory construction. Since the Maxwell decision is not binding precedent, the court declines to adopt its rationale and finds that there is no technical pleading requirement in the statute. Thus, failure to plead compliance with the notice statute is not a sufficient ground for granting summary judgment. Because this court finds that there is no requirement that a party plead notice of infringement, Plaintiff's motion to amend its complaint to comply with this technical pleading requirement is rendered moot.

> FN25. The court, however, finds that in no event may Plaintiff be awarded damages prior to March 7, 1997, the date of the second letter, in light of the fact that at the time of the mailing of the letter dated January 30, 1997, the '817 patent had not yet been issued.

D. Summary Judgment on the Issue of Inequitable Conduct.

*13 In light of the court's order denying Defendant's motion for leave to amend to add an inequitable conduct defense, Defendant's motion for summary judgment of unenforceability based upon inequitable conduct is rendered moot.

III. CONCLUSION

For the reasons stated above, the court grants in part and denies in part the cross motions for summary judgment.

Specifically, the court grants Defendant's Motion for Summary Judgment of no literal infringement and denies its motion for summary judgment for 1) non-infringement under the doctrine of equivalents, 2) invalidity, and 3) to limit the amount of Plaintiff's recoverable damages. Defendant's Motion for Summary Judgment based upon inequitable conduct

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 281341 (M.D.N.C.)
**(Cite as: 1999 WL 281341 (M.D.N.C.))**

has been rendered moot by the court's order denying its motion to amend the answer and counterclaim to add the affirmative defense of inequitable conduct.

For the reasons stated above, Plaintiff's motion for partial summary judgment of infringement is denied.

An order in accordance with this memorandum opinion shall be filed contemporaneously herewith.

Not Reported in F.Supp.2d, 1999 WL 281341 (M.D.N.C.)

**Motions, Pleadings and Filings (Back to top)**

• 2:97cv00660 (Docket) (Jun. 18, 1997)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 33667069 (D.N.H.), 2000 DNH 99
(Cite as: 2000 WL 33667069 (D.N.H.))

Page 1

**H**

**Motions, Pleadings and Filings**

NOT FOR PUBLICATION

United States District Court, D. New Hampshire.
AOKI TECHNICAL LABORATORY, INC.
v.
FMT CORPORATION, INC.
No. CIV. 96-42-JD.

April 24, 2000.

ORDER

DICLERICO, District J.

*1 Aoki moves for partial summary judgment seeking, pursuant to 35 U . S.C.A. § 287(a), a judgment limiting FMT's potential damages to allegedly infringing sales that occurred after Aoki received notice from FMT of its patents and infringement claim in January of 1996. In response, FMT contends that § 287(a) does not apply and that it provided actual notice to Aoki in June of 1991. [FN1] FMT also moves to strike the declaration of Michael Hoffman submitted by Aoki in support of its motion, and Aoki objects.

> FN1. FMT also requests partial summary judgment in its favor as part of its objection to Aoki's motion. FMT's request, however, is not included in the title of the motion and will not be considered as a cross-motion for summary judgment. See LR 7.1(a).

Standard of Review

"Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Atmel Corp. v. Information Storage Devices, Inc., 198 F.3d 1374, 1378 (Fed.Cir.1999) (citing Fed.R.Civ.P. 56(c)). The evidence is viewed in the light most favorable to the nonmoving party, and all reasonable inferences are drawn in its favor. See Optical Disc Corp. v. Del Mar Avionics, 208 F.3d 1324, 2000 WL 354753 at *7 (Fed.Cir. Apr. 7, 2000). Summary judgment will not be granted as long as a reasonable jury could return a verdict in favor of the

nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Summary judgment motions are considered in light of the parties' substantive evidentiary burdens at trial. See id. at 254. The patentee, FMT in this case, has the burden of proving compliance with the marking statute, § 287(a). See Maxwell v. J. Baker, Inc., 86 F.3d 1098, 1111 (Fed.Cir.1996). If the moving party, without the burden of proof on the issue for summary judgment, shows with record support that there is no material factual issue and that it is entitled to summary judgment, then the nonmoving party must show either that the moving party is not entitled to judgment as a matter or law or that material facts are in dispute. Vivid Tech., Inc. v. American Science, 200 F.3d 795, 806-07 (Fed.Cir.1999).

Discussion

Aoki contends that FMT's infringement damages, if any, must be limited because it was not given notice of infringement until January of 1996. The marking statute, § 287(a), [FN2] encourages patentees to notify the public of their patents by tying the accrual of damages for infringement to notice requirements. See Maxwell, 86 F.3d at 1112. Notice under the statute may be provided constructively, by marking the product with the patent number, or by actual notice to the infringer. See SRI Int'l, Inc. v. Advanced Tech. Labs., Inc., 127 F.3d 1462, 1469 (Fed.Cir.1997). FMT does not dispute that the products made by its licensee, Constar, were not marked with the patent numbers. [FN3] Instead, FMT contends that it gave actual notice and that the marking statute does not require marking because of the nature of the patents and the products made.

> FN2. 35 U.S.C.A. § 287(a) provides as follows: Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them, or importing any patented article into the United States, may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.," together with the number of the patent, or when, from the character of the article, this can not be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice. In the event of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 33667069 (D.N.H.), 2000 DNH 99
(Cite as: 2000 WL 33667069 (D.N.H.))

Page 2

failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.

FN3. Claim one in each of three patents, U.S. Patent No. 4,432,530 (" '530 patent"), U.S. Patent No. 4,521,369 (" '369 patent"), and U.S. Patent No. 4,588,620 (" '620 patent"), is at issue in this case.

"Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device." *Amsted,* 24 F.3d at 187. "Although there are numerous possible variations in form and content, the purpose of the actual notice requirement is met when the recipient is notified, with sufficient specificity, that the patent holder believes that the recipient of the notice may be an infringer." *SRI,* 127 F.3d at 1470. While an informational letter providing notice of a patent to an entire industry is insufficient, *see Amsted,* 24 F.3d at 187, it is not necessary that "the patentee threatens suit, demands cessation of infringement, or offers a license under the patent," *SRI,* 127 F.3d at 1470.

*2 FMT asserts that Aoki was given actual notice of infringement when Frederick Feddersen, president of FMT, saw an Aoki machine at the National Plastics Exposition in June of 1991 and talked with an Aoki representative, Mr. Tsugami. Feddersen says that he noticed that mechanics were taking preforms out of the machine and they looked like they had flat bottoms. He asked Mr. Tsugami if he could have a preform, and Tsugami said no because they were confidential. Feddersen then asked Tsugami if the bottom of the preforms were thinner than the side walls. Feddersen says that Tsugami smiled and asked him if he was from FMT, which Feddersen admitted. Tsugami said he had heard of FMT from the Nissei case, and Feddersen responded that that was one of the reasons he wanted to see the configuration of the bottom of the preform. Feddersen then offered Aoki a license and said that if Aoki did not negotiate a license with FMT and FMT were successful in the Nissei case, FMT would then file a suit against Aoki. In his deposition, Tsugami said he did not recall the conversation with Feddersen, but he did not deny that it might have occurred.

Aoki does not address the Feddersen notice, at all. Instead, Aoki says, "Prior to January 11, 1996, there is no dispute that there is absolutely *no evidence* that FMT ever communicated 'a specific charge of infringement by a specific accused product' to Aoki." Contrary to Aoki's assertion, the Feddersen and Tsugami discussion is at least some evidence of actual notice. Feddersen says that he offered Aoki a license, and in the context of the conversation a reasonable inference that could be draw is that the license would permit Aoki to use FMT's patent covering flat bottomed preforms with thicker side walls than bottoms. An offer of a license is actual notice. *See Ralston Purina Co. v. Far-Mar-Co., Inc.,* 772 F.2d 1570, 1577 (Fed.Cir.1985). In addition, Feddersen threatened suit, which, under the circumstances, also could reasonably be interpreted to mean an infringement suit under the same patents at issue in the Nissei case. *See SRI,* 127 F.3d at 1470.

Based on the present state of the record, the discussion, supported by Feddersen's affidavit and deposition testimony, at least presents a triable issue as to whether actual notice occurred at that time. Therefore, FMT has shown that Aoki did not establish that it is entitled to partial summary judgment with respect to limiting FMT's damages under § 287(a). *See Vivid Tech.,* 200 F.3d at 806-07.

Given the triable question as to actual notice, which would predate the Constar license, Aoki is not entitled to partial summary judgment based on the alternative issue of the marking requirement under § 287(a). Therefore, the remaining issues as to whether the marking statute applies to the patented preform or the patented mold-core rod combination made by Constar under license from FMT will not be addressed in the context of this motion. In addition, since the declaration of Michael Hoffman, submitted by Aoki in support of its motion for partial summary judgment, was not necessary to resolve the motion and was not considered by the court, it is also not necessary to consider FMT's motion to strike the declaration.

Conclusion

*3 For the foregoing reasons, the plaintiff's motion for partial summary judgment (document no. 299) is denied. The defendant's motion to strike (document no. 322) is denied.

SO ORDERED.

Not Reported in F.Supp.2d, 2000 WL 33667069 (D.N.H.), 2000 DNH 99

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 33667069 (D.N.H.), 2000 DNH 99
**(Cite as: 2000 WL 33667069 (D.N.H.))**

Page 3

**Motions, Pleadings and Filings (Back to top)**

• 1997 WL 33782602 (Trial Pleading) Anbwer to Second Amended Complaint (Dec. 12, 1997)

• 1997 WL 33782601 (Trial Pleading) Second Amended Complaint for Declaratory Judgment of Patent Invalidity, Unenforceability and Noninfringement (Aug. 28, 1997)

• 1:96cv00042 (Docket) (Jan. 22, 1996)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.