# EXHIBIT A

# REDACTED
# PAGES 386 - 544

LG Philips LCD Co., LTD v.
Tatung Company, et al.
Case 1:05-cv-00292-JJF   Document 486-2   Filed 12/21/2006   Page 3 of 6
Trial Volume 3
July 19, 2006

[8] A: That's correct.

[9] Q: Is CMO more cooperative than CPT?

[10] A: That's correct.

[11] Q: So would it be fair to say that if [12] CPT had responded to your letter immediately [13] that they could have the same status as CMO, [14] they don't have to worry about being sued, they [15] don't have to worry about being licensed, they [16] don't have to worry about doing anything, is [17] that fair to say?

[18] A: For certain parts, the answer is [19] yes. For certain parts the answer is no.

[20] Q: Now, AUO is another company in [21] Taiwan that makes LCDs; right?

[22] A: That's correct.

[23] Q: And you haven't sued AUO for [24] patent infringement, have you?

Page 643

[1] A: That's correct.

[2] Q: You didn't sue them for patent [3] infringement for the '002; right?

[4] A: That's correct.

[5] Q: And you believe they infringe the [6] '002 patent; right?

[7] A: That's correct.

[8] Q: And they don't have permission to [9] use the '002 patent; right?

[10] A: That's correct.

[11] Q: Handstar is another LCD [12] manufacturer in Taiwan; correct?

[13] A: That's correct.

[14] Q: And you believe they infringe the [15] '002 patent; right?

[16] A: We did think so, however, we have [17] not contacted Handstar.

[18] Q: And Quanta is also an LCD [19] manufacturer in Taiwan; right?

[20] A: Correct.

[21] Q: And you believe they also infringe [22] the '002 patent; right?

[23] A: That's correct.

[24] Q: And they haven't taken a license,

Page 644

[1] have they?

[2] A: Correct.

[3] Q: And they don't have permission to [4] use the '002 patent, do they?

[5] A: We have not, however, I might [6] mention that Quanta or AUO have certain business [7] relationships with my company, just simply by [8] the fact that they are infringing our patent we [9] do not right away attack them without [10] considering anything else. There are certain [11] things that we have to consider and perhaps even [12] compromise.

[13] Q: You believe Sharp infringes the [14] '002 patent; right?

[15] A: That's correct.

[16] Q: You haven't sued them either; [17] right?

[18] A: That's correct. However, we have [19] ongoing negotiation conducting right now.

[20] Q: But you haven't given them a [21] license, have you?

[22] A: That's correct.

[23] Q: And you believe Fujitsu infringes [24] the '002 patent; right?

Page 645

[1] A: Correct.

[2] Q: And you haven't given them a [3] license; right?

[4] A: Yes, we have not. However, we [5] continued negotiation with them and later [6] Fujitsu merged with Sharp, which made it — the [7] point moot with Fujitsu licensing.

[8] Q: And those negotiations have been [9] going on for quite some time, haven't they?

[10] A: That's correct.

[11] Q: Now, LPL is always competing with [12] Samsung for first position, aren't they?

[13] A: That's correct.

[14] Q: And you believe that Samsung also [15] uses the '002 technology; is that correct?

[16] A: Correct.

[17] Q: But Samsung is too complicated to [18] sue; right?

[19] A: No, that's not true. I didn't [20] mean that. In fact, Samsung and us did have [21] close licensing agreements at one time, and also [22] there was a great deal of possibility that we [23] would enter into the same sort of cross [24] licensing agreement again. In that aspect, in

Page 646

[1] that perspective I said it was complex [2] situation.

[3] Q: And that's your answer?

[4] INTERPRETER KIM: Excuse me, the [5] cross licensing that we entered with Samsung was [6] a certain part of display technology.

[7] Q: And that's your answer; correct?

[8] A: That's correct.

[9] Q: I would like to refer you to your [10] deposition testimony that you gave on July 3rd, [11] and this is from page 66, lines 19 to 22, and [12] page 67 lines 1 to 6.

[13] "QUESTION: What do you mean when [14] it says it's too complicated for LPL to sue [15] Samsung?

[16] "ANSWER: The relationship between [17] Samsung and LG is such that if LPL would sue [18] Samsung, it's just as if LG Electronics within [19] LG Corporation, LG Group would sue Samsung. So [20] at the various battles that that would incur it [21] would be an all out war so we do not, we [22] acknowledge this without saying, we know this [23] without saying."

[24] A: Yes, that's correct. However, the

Page 647

[1] background of that answer was that there was [2] that possibility of entering into cross [3] licensing contract that I have mentioned.

[4] INTERPRETER PARK: If I may, I [5] would like to make a correction to the latter [6] part of the answer.

[7] "The reason I said that, the [8] background for my answer is there is still — [9] there still remains the possibility that we may [10] enter into cross license agreement with them."

[11] INTERPRETER KIM: No objection.

[12] BY MR. RHODES:

[13] Q: Now, you stated that everybody in [14] the industry infringes the '002 patent; right?

[15] A: That's correct.

[16] Q: You don't really know that all [17] these companies infringe the '002 patent, do [18] you?

[19] INTERPRETER KIM: Counsel, did you [20] mean — could you repeat your last question?

[21] MR. RHODES: More than happy to.

[22] BY MR. RHODES:

[23] Q: You don't really know that [24] everyone in the industry infringes the '002

Page 648

[1] patent, do you?

[2] A: Well, perhaps not 100 percent, but [3] to the extent 90 percent or even 99 percent I [4] know.

[5] Q: Well, again, I would like to [6] direct your attention to your deposition that [7] you gave on July 3rd, and specifically page 111, [8] lines 16 to 18, lines 21 to 22, and page 112, [9] lines 1 to 3.

[10] "QUESTION: What is the basis for [11] the statement that everyone in the industry [12] infringes the '002 patent?

[13] "ANSWER: I don't know the legal [14] aspects, I only know purely from the [15] technological aspects, infringement has to do [16] with legal aspects and so I cannot say. I [17] cannot talk about that."

[18] A: That's correct.

[19] Q: Now, earlier you testified about [20] this meeting that LPL had with CPT in June of [21] 2002; right?

[22] A: Could you repeat the question?

[23] Q: You testified this morning about

[24] having a meeting with CPT in June of 2002;

Page 649

[1] correct?
[2] A: That's correct.
[3] Q: Incidentally, you speak English, [4] don't you?
[5] A: Yes, a little bit.
[6] Q: And you read English; right?
[7] A: Yes, to a little extent.
[8] Q: In fact, when you prepared with [9] Mr. Bono for your deposition, you spoke to him [10] in English; right?
[11] A: On certain occasions I did, and [12] other — and on other occasions I used the [13] interpreter.
[14] Q: Now, during that meeting in June, [15] 2002 with CPT, you were speaking English with [16] them; is that correct?
[17] A: That is correct.
[18] Q: Now, at that meeting in June of [19] 2002 with CPT, that was a general introduction, [20] not a deep technical discussion; right?
[21] A: Yes. However, we had already [22] prepared claim charts and since they were aware [23] of the technical — and since they were aware of [24] the problems since February, we have provide

Page 650

[1] them with enough technical information by that [2] time.
[3] Q: But you'll agree that CPT was not [4] prepared to have a technical meeting and [5] technical discussions with you; right?
[6] A: I thought that since they have had [7] six months period — excuse me, four months [8] period, I thought that they would have [9] understood our technology sufficiently.
[10] Q: Well, let me direct you to your [11] deposition testimony from July 3rd, 2006, again, [12] page 122, lines 1 to 6.
[13] "ANSWER: And another thing was [14] that this was the first meeting, so I don't [15] believe that CPT was prepared to have a [16] technical meeting with technical discussions. [17] So rather than having any deep technical [18] discussions, I believe that we gave a general [19] introduction."
[20] A: That's correct.
[21] Q: Could we put PTX 46 up on the [22] screen.
[23] Now, Mr. Lee, we talked about this [24] letter this morning; right?

Page 651

[1] A: Yes, that's true.
[2] Q: Now, if you look at PTX 46, if [3] you'll just read through that for a mom-

ent, will [4] you please tell me where it says infringe or [5] infringement in that letter anywhere?
[6] A: Yes. In this letter we are simply [7] saying that we are willing to offer licenses for [8] all our technology.
[9] Q: In fact, in the second paragraph [10] it says as examples you may wish to review U.S. [11] patent numbers and it list eight patents; right?
[12] A: Yes, that's correct.
[13] Q: And if you look at the next [14] paragraph, it says, "Should your company wish to [15] discuss the above identified patents." Correct?
[16] A: That's correct.
[17] Q: And it says, "We will be happy to [18] visit your company on any one day between March [19] 14 and March 15." Right?
[20] A: That's correct.
[21] Q: And those were dates of your [22] choosing; correct?
[23] A: That's correct.
[24] Q: You didn't ask CPT for any

Page 652

[1] convenient dates for them; right?
[2] A: Yes, we didn't ask that, however, [3] we didn't hear the answer for this letter, [4] either.
[5] Q: You know what Chinese New Years [6] is, don't you?
[7] A: Yes, of course I do.
[8] Q: Now, can you put up PTX 142 for [9] me, please. And just put both letters on the [10] screen. And if you can enlarge PTX 142 a little [11] bit so we can read it.
[12] And I would like to refer your [13] attention to PTX 142 which is on the right-hand [14] side of the screen. And the first line it says, [15] "On February 8, we wrote to you and asked for a [16] meeting to discuss the unauthorized use of [17] technology owned by LG Philips LCD Company by [18] Chunghwa Picture Tubes."
[19] A: That's correct.
[20] Q: And that first sentence of that [21] letter is incorrect; right?
[22] A: Well, there may be a little bit of [23] difference of opinion regarding the expression [24] that is used, but I think largely the substance

Page 653

[1] is correct.
[2] Q: Well, let's look at the second [3] sentence of that paragraph. "In that letter, we [4] asked for a meeting to discuss the issue of [5] patent infringement with CPT."
[6] A: That's correct.

[7] Q: And that sentence isn't correct, [8] either, is it?
[9] A: Well, you may not say it is 100 [10] percent correct, but you say it's more or less [11] the same vein.
[12] MR. RHODES: And can you put — [13] Defendants' Exhibit 58, please?
[14] INTERPRETER PARK: If I may, if I [15] could make a correction to the last statement by [16] the witness.
[17] I wouldn't think that it is 100 [18] percent identical in meaning, but more or less, [19] I would think it is the same meaning.
[20] MR. RHODES: Put those back up.
[21] INTERPRETER KIM: I respectfully [22] disagree, but the Korean rendition is on the [23] record.
[24] BY MR. RHODES:

Page 654

[1] Q: The February 27th letter says, in [2] that letter, February 8th 2002, we asked for a [3] meeting to discuss this issue of patent [4] infringement with CPT.
[5] Which part of the February 8th [6] letter is identical to that sentence?
[7] A: Well, it may not be identical. It [8] is some softened out. And in large sense, I [9] think that's, more or less, the same substance [10] if you read, as example, you may wish to review.
[11] Q: Okay. So my understanding is that [12] may wish to review is identical with the issue [13] of patent infringement.
[14] That's your answer; is that [15] correct?
[16] A: Not true. It's not exactly [17] identical. However, in February 8th letter, we [18] asked him to reply by February 26th.
[19] If they had — if they had replied [20] by that time for that letter, then we would have [21] used different expression. Since they had not, [22] we sort of expended the expression to a stronger [23] connotation, because there was no reply.
[24] Although that was — the substance

Page 655

[1] was more or less the same, we made it stronger. [2] Since we have made it stronger.
[3] Q: Okay. And you've already said [4] that you know what Chinese New Year's is; right?
[5] A: That's correct.
[6] Q: Now, looking at both of those [7] letters, PTX 46 and PTX 142, neither one of [8] those letters identifies a single CPT product, [9] does it?
[10] A: True. However, on the February [11] 27th letter, we do mention unauthorized use of [12] technology. This refers to the general product [13] by CPT.

**Page 1301**

[1] Q: On cross-examination, counsel [2] suggested that there was some connection between [3] the diodes that you left out of the drawing. Do [4] you recall that?

[5] A: Yes.

[6] Q: Is there a connection between [7] these diodes that you omitted from this figure?

[8] A: Actually the connection is made [9] through the outer ring on this area.

[10] Q: And there is no separate [11] connection between the diodes other than through [12] the outer guard ring as you just pointed to with [13] the pointer?

[14] A: In the drawing, possibly you can [15] tell that some other layers are joined together. [16] But the way that I put it in the simple [17] explanation is to show that this way is the most [18] complete way.

[19] MR. KRAMER: Thank you very much. [20] No further questions.

[21] THE COURT: All right. Thank you. [22] You may step down.

[23] MR. RHODES: Your Honor, as our [24] next witness, we call Mr. Youngwoo Cho. And

**Page 1302**

[1] this will be a short videotape deposition.

[2] Mr. Cho is an LPL employee.

[3] (Beginning of video excerpt:)

[4] Q: Does the patent team conduct [5] regular patent searches of competitors?

[6] A: It does not.

[7] Q: Has the patent team ever analyzed [8] any patents owned by a competitor?

[9] A: Yes, but it was in the past, on a [10] number of occasions.

[11] Q: Mr. Cho, I'd like you to use that [12] piece of paper, the same piece of paper, I [13] haven't written anything on it, to draw a [14] diagram how LPL's products connecting the outer [15] ring to the gate lines, I ask you to draw the [16] diagram according to your understanding in as [17] much detail as possible that reflects a coupling [18] between the outer guard ring and the gate line [19] in LPL products.

[20] A: I'm not good at drawings, but I [21] will give it a try.

[22] Q: Go ahead.

[23] A: This is my understanding and this [24] is the gate lines and this is the guard ring and

**Page 1303**

[1] this is the resistance, via resistance this is [2] connected like this.

[3] Q: Can you mark the gate lines with [4] gate lines?

[5] A: In English?

[6] Q: English, yes. [7] Can you mark the resistance with [8] resistance?

[9] MR. LI: All right. Let's mark [10] that as Cho Exhibit 5.

[11] Q: Mr. Cho, I see a line connecting [12] four gate lines together. Does that mean all [13] the gate lines connect together by that line?

[14] A: Which one were you referring to?

[15] Q: I see four gate lines on Exhibit [16] 5; correct?

[17] A: Yes.

[18] Q: And there's a horizontal —[19] there's a line, let's mark this line with the [20] letter A so we can talk about it. Can you mark [21] that line with the letter A?

[22] Does line A connect all the gate [23] lines together in LPL products?

[24] THE WITNESS: Yes, but my thinking is

**Page 1304**

[1] that these are connected based on my engineering [2] experience, but it does not relate to any legal [3] interpretation.

[4] Q: And you have testified you do not [5] know the structure of resistance on Exhibit 5; [6] correct?

[7] A: Correct. I told you that I don't [8] have specific or clear recollection of that.

[9] Q: Is line A a line of conductive [10] material?

[11] A: Yes.

[12] Q: What's the reason to connect all [13] the gate lines with line A?

[14] A: My understanding is that there are [15] two reasons: First reason is that if the [16] electrostatic occurs, these lines are there to [17] distribute and discharge the said electrostatic. [18] And number two reason is that this is for the [19] purpose of testing so that we could apply a [20] voltage to this line and use this is a — for [21] testing purposes.

[22] Q: So for testing purposes, if you [23] apply a voltage on one gate line, that voltage [24] will be applied to all the gate lines; correct?

**Page 1305**

[1] A: As far as I understand that, yes. [2] That is correct.

[3] Q: Does LPL use a similar [4] configuration as Exhibit 5 for its source line [5] coupling to the outer guard ring?

[6] A: Yes.

[7] (Conclusion of videotape excerpt:)

[8] MR. RHODES: Your Honor, we move [9] into evidence DTX 001.

[10] THE COURT: All right. It will be [11] admitted subject to anybody's objection.

[12] MR. BONO: Your Honor, there was a [13] section of the deposition that the defendants [14] were supposed to read in, and they neglected to [15] do so. And it's a significant piece of [16] testimony prior to the drawing being made.

[17] This is lines 137, 4 through 137, [18] 11.

[19] THE COURT: Let's see if we can [20] get it played, if you have that.

[21] MS. CORBIN: Could you give me [22] those again?

[23] MR. BONO: 137, 4 to 137, 11.

[24] MS. CORBIN: You say our

**Page 1306**

[1] designation or yours?

[2] MR. BONO: It was in your [3] designation.

[4] MS. CORBIN: Okay. [5] I apologize, Your Honor. Can we [6] just read the few lines into the record?

[7] THE COURT: Sure. Yes.

[8] MR. BONO: I would represent that [9] this testimony was prior to Mr. Cho making the [10] drawing —

[11] MS. CORBIN: Okay.

[12] MR. BONO: — that was shown.

[13] MS. CORBIN: Okay. So the [14] question was: "Correct, Mr. Cho?

[15] "Answer: I don't know to what [16] level of detail you want me to draw this [17] diagram. And I don't know whether this would be [18] accurate or not. But based on what I heard from [19] engineers, the engineers within our company, the [20] outer guard ring is connected to the gate lines [21] via resistance. And solely based on that, I [22] don't know how accurately I can draw this [23] diagram."

[24] THE COURT: All right. Thank you.

**Page 1307**

[1] MR. RHODES: Your Honor, our next [2] witness is going to be a video of Scott [3] Holmberg. Scott Holmberg is the listed inventor [4] on the '002 patent.

[5] And as an additional matter, Your [6] Honor, we do have one demonstrative, which is [7] just Claim 1 of the patent that we'd like to put [8] up over here while we play this deposition, so [9] that they can refer to that.

[10] THE COURT: Sure. You can do [11] that.

[12] MR. RHODES: It is going to be [13] about two hours, and we apologize for that, but [14] he's not available and we need to put this into [15] evidence.

[16] (Beginning of video excerpt.)

[17] THE VIDEOGRAPHER: This is the [18] digital videotape deposition of Scott H. [19] Holmberg, being taken on behalf of

# REDACTED
# PAGES 1321 - 2210