**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

LG. PHILIPS LCD CO., LTD.,                )
                                          )
                    Plaintiff,            )       C.A. No. 05-292 (JJF)
                                          )
        v.                                )
                                          )       **REDACTED - PUBLIC VERSION**
TATUNG COMPANY;                           )
TATUNG COMPANY OF AMERICA, INC.;          )
CHUNGHWA PICTURE TUBES, LTD.;             )
AND VIEWSONIC CORPORATION,                )
                                          )
                    Defendants.           )

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR NEW TRIAL**
**OR REMITTITUR ON THE JURY'S DAMAGES VERDICT**

OF COUNSEL:

Teresa M. Corbin
Glenn W. Rhodes
Howrey LLP
525 Market Street, Suite 3600
San Francisco, California 94105
(415) 848-4900

Julie S. Gabler
Howrey LLP
550 South Hope Street, Suite 1100
Los Angeles, California 90071
(213) 892-1800

Dated: October 30, 2006

Robert W. Whetzel (#2288)
whetzel@rlf.com
Steven J. Fineman (#4025)
fineman@rlf.com
Matthew W. King (#4566)
king@rlf.com
Richards, Layton & Finger
One Rodney Square, P.O. Box 551
Wilmington, DE 19899
(302) 651-7700
Attorneys for Defendants/Counterclaimants
Tatung Company, Tatung Company of
America, Chunghwa Picture Tubes, Ltd, and
ViewSonic Corporation

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iii

INTRODUCTION ............................................................................................... 1

I.    THE JURY'S FINDING THAT LPL PROVIDED EFFECTIVE NOTICE OF
INFRINGEMENT TO CPT AS OF FEBRUARY 27, 2002 IS INCORRECT AS
A MATTER OF LAW, ENTITLING DEFENDANTS TO A NEW TRIAL ..................... 1

    A.   The Undisputed Facts Demonstrate That LPL Had Not Provided Notice As Of
February 27, 2002. ..................................................................................... 1

    B.   The Events Of The June 11, 2002 Meeting Are Not Relevant To This Court's
Review Of The Propriety Of The Jury's Finding of Actual Notice As Of
February 27, 2002. ..................................................................................... 3

    C.   LPL's Last Minute Election To Pursue Only Method Claims At Trial Cannot
Retroactively Save Their Deficient So-Called "Notice" Letters. ...................... 4

    D.   LPL's Failure To Identify Any CPT Products Is Fatal ..................................... 6

II.   DEFENDANTS ARE ENTITLED TO A NEW TRIAL BECAUSE MR. COBB
TESTIFIED OUTSIDE THE SCOPE OF HIS EXPERT REPORT ............................. 6

III.  LPL ENGAGED IN IMPROPER EXHIBIT STUFFING ENTITLING
DEFENDANTS TO A NEW TRIAL ................................................................... 8

IV.  DEFENDANTS ARE ENTITLED TO A NEW TRIAL DUE TO LPL'S
MISCONDUCT DURING TRIAL ..................................................................... 10

    A.   The Jury Instructions Did Not Cure The Prejudice Caused By LPL's
Misconduct During Closing Argument. ........................................................ 10

    B.   LPL's Statements Concerning Notice Encouraged Error. ............................... 11

    C.   Defendants Did Not Waive Their Objections To LPL's Closing Argument ........ 12

V.   THE DAMAGES AWARD MUST BE VACATED BECAUSE IT IS NOT
SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE ....................................... 13

    A.   The Yield Rate Testimony Was Purely Speculative And/Or Undisclosed Prior
To Trial ..................................................................................................... 14

    B.   Mr. Wagner's Rebuttal Opinion Did Not Relieve LPL Of Its Burden Of Proof
Concerning Yield Rate ............................................................................... 16

VI. LPL'S CONDUCT IN LITIGATING THE INVALID '121 PATENT SUPPORTS A REMITTITUR OF THE DAMAGES AWARD ...................................17

CONCLUSION.........................................................................................................17

# TABLE OF AUTHORITIES

## CASES

*Amsted Indus. Inc. v. Buckeye Steel Casting Co.*,
24 F.3d 178 (Fed. Cir. 1994)..................................................................................................*passim*

*Anastasio v. Schering Corp.*,
838 F.2d 701 (3d Cir. 1988)..................................................................................................13

*Bruton v. U.S.*,
391 U.S. 123 (1968)..............................................................................................................11

*Dunn v. HOVIC*,
1 F.3d 1362 (3rd Cir. 1993) .................................................................................................13

*Dunn v. HOVIC*,
13 F.3d 58 (3rd Cir. 1993) ...................................................................................................13

*Fineman v. Armstrong*,
980 F.2d at 171 (3d Cir. 1992)..........................................................................................11, 12

*Fineman v. Armstrong World Indus.*,
774 F. Supp. 266 (D. N.J. 1991) ..........................................................................................10

*Fleck v. KDI Sylvan Pools, Inc.*,
981 F.2d 107 (3d Cir. 1992).................................................................................................13

*Greate Bay Hotel & Casino v. Tose*,
34 F.3d 1227 (3d Cir. 1994)..................................................................................................10

*Johnson v. Elk Lake School Dist.*,
283 F.3d 138 (3d Cir. 2002)..................................................................................................11

*Lans v. Digital Equip. Corp.*,
252 F.3d 1320 (Fed. Cir. 2001).............................................................................................11

*Laplace-Bayard v. Batlle*,
295 F.3d 157 (1st Cir. 2002)...................................................................................................9

*Merck & Co., Inc. v. MediPlan Health Consulting, Inc.*,
434 F. Supp. 2d 257 (S.D.N.Y. 2006)......................................................................................5

*Mosaid Tech. Inc. v. Samsung Elec. Co., Ltd.*,
362 F. Supp. 2d 526 (D. N.J. 2005) .........................................................................................3

*Philips Elecs. N. Am. Corp. v. Contec Corp.*,
312 F. Supp. 2d 649 (D. Del. 2004)..................................................................1, 3

*Procter & Gamble Co. v. Paragon Trade Brands, Inc.*,
989 F. Supp. 547 (D. Del. 1997)....................................................................14, 17

*Reeves v. Sanderson Plumbing Prods., Inc.*,
530 U.S. 133 (2000)................................................................................................4

*Rochez Bros., Inc. v. Rhoades*,
527 F.2d 891 (3d Cir. 1975)..........................................................................14, 17

*Spence v. Bd. of Educ.*,
806 F.2d 1198 (3d Cir. 1986)...............................................................................17

*Spruill v. Nat'l R.R. Passenger Corp.*,
No. 93-4706, 1995 WL 534273 (E.D. Pa. Sept. 5, 1995) ....................................12

*Uniboard Aktiebolag v. Acer Am. Corp.*,
118 F. Supp. 2d 19 (D. D.C. 2000) ........................................................................4

## STATUTES

35 U.S.C. §287(a) .......................................................................................... *passim*

iv

## INTRODUCTION

As demonstrated in their opening brief, Defendants are entitled to a new trial on at least the issues of notice and damages. The jury's finding on notice was wrong as a matter of law, and should be vacated. The jury's finding on damages was tainted by its notice finding, based on speculation and irrevocably prejudiced by LPL's violation of pretrial orders concerning the scope of expert testimony and LPL's misconduct during closing argument. LPL litigated this case in blatant disregard of the Court's pretrial orders and directives. It presented testimony beyond the scope of its pretrial expert disclosures, stuffed exhibits and repeatedly made prejudicial and incorrect arguments to the jury. LPL was on notice of the consequences of its actions – the ordering of a new trial at its expense. Defendants respectfully request that the Court enforce its pretrial order, declare a mistrial based on LPL's misconduct and order a new trial at LPL's expense.

I. **THE JURY'S FINDING THAT LPL PROVIDED EFFECTIVE NOTICE OF INFRINGEMENT TO CPT AS OF FEBRUARY 27, 2002 IS INCORRECT AS A MATTER OF LAW, ENTITLING DEFENDANTS TO A NEW TRIAL.**

A. **The Undisputed Facts Demonstrate That LPL Had Not Provided Notice As Of February 27, 2002.**

The facts concerning notice are not in dispute – the parties only disagree as to the propriety of the conclusion drawn. Defendants assert that as a matter of law the undisputed facts do not satisfy the notice requirements of 35 U.S.C. §287(a). *Amsted Indus. Inc. v. Buckeye Steel Casting Co.*, 24 F.3d 178, 186-87 (Fed. Cir. 1994) (only finding sufficient notice once the patent holder specifically claimed that defendant's center plate infringed the '269 patent and attached a photo copy of the specific accused device); *Philips Elecs. N. Am. Corp. v. Contec Corp.*, 312 F. Supp. 2d 649, 652 (D. Del. 2004), *aff'd*, 177 Fed. Appx. 981 (Fed. Cir. 2006) (finding insufficient a letter enclosing copies of two patents and inviting a meeting to discuss the patents

because the letter did not contain either a specific charge of infringement or a specific accused product or device).

It is undisputed that:

1.  There are both method and apparatus claims in the '002 patent (Ex. I (PTX 001));

2.  LPL's complaint contained broad allegations of infringement of the '002 patent demonstrating an intent to preserve the option of proceeding on both the method and apparatus claims (D.I. 1 (complaint));

3.  LPL did not mark its products (Ex. H to Defendants' Opening Brief; Plaintiff's Response to Defendants' First and Second Sets of Interrogatories, No. 4);

4.  LPL did not notify Defendants until July 14, 2006, just 3 days prior to the start of trial, that it only intended to assert at trial two method claims from the '002 patent (D.I. 370);

5.  There were only two relevant communications between LPL and CPT on or before February 27, 2002 – the February 8 letter (Ex. J (PTX 46)) and the February 27 letter (Ex. K (PTX 142));

6.  Neither letter identified any specific CPT products (Exs. J & K (PTX 46 & 142), Trial Tr. 655:14-17 (Ho Lee testimony: "Q: Alright.  But you will agree that there's no specific CPT products identified in either one of those letters; right? A: That's correct."));

7.  Neither letter identified any specific patent claims (Exs. J & K (PTX 46 & 142), Trial Tr. 655:18-21 (Ho Lee testimony: "Q: And there are no specific claims of any of those patents set out in those letters; right? A: That's correct.")); and

8.  Neither letter stated that LPL did not intend to assert the apparatus claims in the '002 patent (Exs. J & K (PTX 46 & 142)).

2

Actual notice requires "the affirmative communication of a *specific charge of infringement* by a *specific accused product or device*." *Mosaid Tech. Inc. v. Samsung Elec. Co., Ltd.*, 362 F. Supp. 2d 526, 557 (D. N.J. 2005), *citing Amsted Indus.*, 24 F.3d at 187. This requires identification of specific claims of specific patents being asserted against specific accused products. *Amsted Indus.*, 24 F.3d at 187 (holding that a letter that merely notified defendant, and others in the industry, of the patent holder's ownership, with general advice not to infringe, was insufficient under the notice statute); *Philips Elecs. N. Am. Corp.*, 312 F. Supp. 2d at 652 (letter enclosing copies of two patents and inviting a meeting not sufficient under section 287). It is squarely within the province of this Court to determine as a mater of law that these undisputed facts do not constitute notice under section 287(a) and thus, that the jury's finding of notice as of February 27, 2002 is unsupported by substantial evidence and must be reversed, necessitating a new trial. Defendants respectfully ask the Court to make these findings and order a new trial.

**B.     The Events Of The June 11, 2002 Meeting Are Not Relevant To This Court's Review Of The Propriety Of The Jury's Finding of Actual Notice As Of February 27, 2002.**

Nothing more clearly underscores LPL's acknowledgement of the jury's error in finding sufficient notice as of February 27, 2002 than LPL's repeated focus on a meeting that took place almost *four months later* on June 11, 2002. In no less than five places in its answering brief, LPL argues that the jury was correct in finding notice as of February 27, 2002 because of what took place *four months later* at a June 11, 2002 meeting between LPL and CPT. *See* LPL's Answering Brief at 2, 5, 20, n.12, 21-22.

The jury found sufficient notice as of February 27, 2002 – nothing that happened after this date is relevant to the issue of whether the jury's finding that LPL had provided actual notice as of February 27, 2002 was correct as a matter of law.

3

Further, to the extent LPL is inviting the Court to find actual notice as of June 11, 2002, such an invitation is improper. The facts surrounding the June 11 meeting are disputed. The documents from that meeting (specifically PTX 47, Ex. 5 to LPL's Answering Brief) are inconsistent with Mr. Lee's testimony about the meeting.[1] Since the facts concerning whether or not the '002 patent was discussed or discussed sufficiently at the June 11, 2002 meeting are in dispute, and the resolution of the dispute involves weighing the credibility of witnesses, a new trial is appropriate. *See* LPL's Answering Brief in Opposition to Defendants' Motion of Partial Summary Judgment on Damages under 35 USC §287 (D.I. 324) at 15; *Reeves v. Sanderson Plumbing Prods., Inc.* 530 U.S. 133, 150 (2000) (Courts do not make credibility determinations or weigh the evidence). The Court should reverse the jury's finding on actual notice, hold as a matter of law that actual notice was not provided as of February 27, 2002 and order a new trial on the issue.

## C.    LPL's Last Minute Election To Pursue Only Method Claims At Trial Cannot Retroactively Save Their Deficient So-Called "Notice" Letters.

In order to satisfy the actual notice requirements of 35 U.S.C. §287(a), a communication must be specific enough to put the accused infringer on notice of the accusations – the specific accusations – being made against it. *Mosaid Tech.*, 362 F. Supp. at 557 ("This duty is more onerous than merely marking one's products because '[a]ctual notice requires the affirmative communication of a *specific charge of infringement* by *a specific accused product or device*.'") (citing *Amstead Indus., Inc.*, 24 F.2d at 187). "In other words, patentees must do more than provide general advice not to infringe a patent." *Id*; *see also Uniboard Aktiebolag v. Acer Am.*

---

[1] The documents from the June 11, 2002 meeting (specifically PTX 47) show that LPL discussed the '737, '449 and the side-mount patents at this meeting. All of these patents were asserted by LPL in the California litigation filed in August 2002. None of the slides reflect any discussion of the '002 patent. Mr. Lee's testimony that he used slides concerning the '449 patent to also discuss the '002 patent is inconsistent with the documents. CPT's records also do not reflect any discussion of the '002 patent at the June 11, 2002 meeting.

4

*Corp.*, 118 F. Supp. 2d 19, 26 (D. D.C. 2000) ("It is not asking too much of a patentee who receives a monopoly grant under his patent for a 17-year period that he either mark his product or serve actual notice upon a claimed infringer if he seeks to recover damages.").

It is undisputed that there are both method and apparatus claims in the '002 patent. Ex. I (PTX 001). It is also undisputed that LPL's complaint contained broad allegations of infringement of the '002 patent evidencing an intent to preserve both method and apparatus claims. D.I. 1 (complaint). It is further undisputed that LPL did not identify which patent claims it believed CPT was infringing in the letters of February 8 and 27. Exs. J & K (PTX 46 & 142), Trial Tr. 655:18-21 (Ho Lee testimony: "Q: And there are no specific claims of any of those patents set out in those letters; right? A: That's correct."). Based on these three undisputed facts, no one reading the two February 2002 letters could know which claims – method, apparatus or both – LPL claimed to be infringed.

More than four years elapsed before LPL finally stated, just 3 days prior to the start of trial, that it only intended to assert two method claims at trial. At no point prior to July 14, 2006 – more than 4 years after the February 2002 letters – did LPL tell CPT it was not asserting apparatus claims of the '002 patent. D.I. 370. In fact, LPL's complaint allegations evidenced intent to pursue both method and apparatus claims at trial. D.I. 1. LPL's last-minute decision to pursue only method claims at trial cannot retroactively save its otherwise deficient February 2002 letters. *Merck & Co., Inc. v. MediPlan Health Consulting, Inc.*, 434 F. Supp. 2d 257, 262-63, n.5 (S.D.N.Y. 2006) (plaintiffs who made broad allegations in their complaint, thereby preserving the option of proceeding on both method and product claims, could not avoid the marking requirements of 35 U.S.C. § 287(a) by asserting only method claims at trial). Like in *Merck*, LPL's complaint included broad allegations of infringement of all claims of the '002

5

patent, not just the method claims. D.I. 1. It wasn't until July 14 – just three days before trial – that LPL ever informed Defendants that it intended to proceed on only method claims at trial. D.I. 370. On this record, notice under section 287 was required.

### D. LPL's Failure To Identify Any CPT Products Is Fatal.

It is undisputed that the February 2002 letters do not identify any CPT products. Exs. J & K (PTX 46 & 142, Trial Tr. 655:14-17 (Ho Lee testimony: "Q: Alright. But you will agree that there's no specific CPT products identified in either one of those letters; right? A: That's correct."). LPL argues that its failure to identify *any* products should be excused because it was not possible for it to identify *every* product. Answering Brief at 21. This argument misses the mark. CPT has not asserted (and the case law does not support) that every single product must be identified in order for notice to be sufficient under 35 U.S.C. § 287(a). The issue here is that LPL identified no products. *Zero is not enough.* LPL points to no case law to the contrary. In the absence of a specific charge of infringement as to even one of CPT's products, LPL's February 2002 letters are insufficient as a matter of law and the jury's finding of notice as of February 27, 2002 must be vacated.

### II. DEFENDANTS ARE ENTITLED TO A NEW TRIAL BECAUSE MR. COBB TESTIFIED OUTSIDE THE SCOPE OF HIS EXPERT REPORT.

Prior to trial, Defendants moved *in limine* to preclude Mr. Cobb from testifying outside the scope of his expert report or deposition. (D.I. 291). The Court denied Defendants' motion because the Court's practice "is that that application is made post-trial." (Pretrial Tr. 7:23-24). The Court continued:

> If either party solicits testimony from an expert in the form of opinion or otherwise, *that goes outside of what the reports and the disclosures were,* that can be briefed post-trial. And depending -- normally it's filed by a party who is not prevailing. If I find there's been a violation of the rule and the pretrial order, *I'll simply order a new trial with the losing side on that motion paying for the first*

6

> *trial, and incidental costs to that first trial, including attorneys'* *fees.* ***So you have to be very careful in presenting opinion*** ***testimony that you don't go outside the expert report, because*** ***you could be vulnerable to the post-trial procedure of losing the*** ***verdict and being faced with the cost.*** And I assume it's substantial just looking around the room here. So you want to avoid that at all costs. So that's why I'm denying that. I don't need any further briefing because I just don't have that practice.

(*Id.*, Pre-trial Tr. 8:1-23) (emphasis added).

During the trial, as Defendants had predicted, Mr. Cobb testified outside the scope of his pretrial disclosures. Specifically, Mr. Cobb took the stand and claimed that his ultimate opinion on yield rates attributable to the '002 patent was supported by previously undisclosed conversations he had with LPL plant engineers after his deposition was concluded. Trial Tr. 1133:9-1135:4, 1145:12-1147:4. Making matters even more prejudicial for Defendants, these LPL engineers were never disclosed by LPL as knowledgeable on yield or any other fact relevant to this case. Ex. E to Opening Brief. LPL then compounded the resulting prejudice by arguing this evidence to the jury in closing argument as the basis of Mr. Cobb's opinions. Trial Tr. 2081:2-21. LPL then caused even greater prejudice by arguing that Defendants had tried to hide these previously undisclosed "bases" of Mr. Cobb's opinion by objecting on cross and redirect when Mr. Cobb affirmatively inserted this information into the record. Trial Tr. 2081:21-23. The result of LPL's misconduct is that the jury was led to believe that Mr. Cobb properly relied on the opinions of LPL Fab engineers who were never subject to cross-examination (at trial or in deposition) in arriving at his yield rate conclusions. This amounts to trial by ambush. It was extremely prejudicial to Defendants and in direct violation of this Court's pretrial directives concerning the proper scope of expert testimony. A new trial is necessary.

7

III.  **LPL ENGAGED IN IMPROPER EXHIBIT STUFFING ENTITLING DEFENDANTS TO A NEW TRIAL.**

On the first day of trial, the Court granted Defendants a "continuing stuffing objection," specifically stating that the objection was preserved as a continuous objection and that Defendants need not raise the issue during trial. Trial Tr. 34:13-35:8 ("MS. GABLER: Okay. In the event that LPL tries to admit during the trial through a witness one of these stuffed exhibits, what objection would you like us to be making at the time that's happening to preserve the mistrial issue?  THE COURT:  Well, on the issue of stuffing, you have a continuing objection. So there's no need to have to stand up and implicate yourself each time in front of the jury. MS. GABLER: Okay. THE COURT: You have a continuing stuffing objection. You don't have to do anything about it. Its going to come in at their peril if they are, in fact, stuffing. MS. GABLER: Okay. THE COURT: I think that's on the record. You have that objection.") Previously, the Court had cautioned LPL to review its exhibit list carefully and to correct any stuffing problems. Trial Tr. 28:15-30:13. LPL ignored the Court's instructions and proceeded to use several stuffed exhibits at trial, including PTX 12 and 13 (Exs. L & M). Understanding that their stuffing objections were preserved, Defendants did not raise any stuffing objections during the trial. Trial Tr. 34:13-35:8. Now, LPL claims that because Defendants relied on the Court's ruling and treated the stuffing objection as a preserved continuous objection that need not be raised during the trial, Defendants either waived their stuffing objections or somehow prejudiced LPL by not re-raising them until the close of evidence. This argument is specious.

The Court was crystal clear that if a party used an exhibit that was later found to be "stuffed" that the use of that exhibit could cause a mistrial. Trial Tr. 28:15-21 ("If I find out during the course of the trial that there has been stuffing of individual exhibits, in other words, the marshaling of numerous exhibits into one exhibit number, then I'll either deal with it at trial,

8

or it could be the cause of a mistrial after the verdict on a post-trial application."); *Id.* at 28:22-30:13. Fully on notice of the issue, LPL proceeded to use stuffed exhibits after the Court had warned against such a practice. LPL cannot now complain of a problem of its own making and expect the Court to relieve it of the consequences of its own judgment call. *See, e.g., Laplace-Bayard v. Batlle*, 295 F.3d 157, 164 (1st Cir. 2002) (charging plaintiff with the consequences of its own judgment calls in proceeding to signpost the use of particular testimony when a motion *in limine* was pending to exclude that testimony).

LPL argues that because CPT produced its mask files grouped together on four CDs, rather than producing one CD for each mask file, that CPT somehow conceded that the entirety of CPT's mask files should be considered one "book." This argument is nonsensical. If this were true, then paper documents that happened to be produced in the same physical box or series of boxes also should be considered one "book" and thus could be admitted as one exhibit at trial. Obviously, this is not the case. LPL's argument is not made more convincing because the separate documents at issue were produced electronically on the smallest number of disks possible.

The mask files for a product are, in essence, the blueprint for that product. Each set of mask files is the blueprint for a different product. Although some products are similar to one another, no two sets of mask files are identical. Just as the collection of an architect's blueprints for 57 different homes (or 42 classes of homes) are a library, not a single book, CPT's mask files for its 57 accused products (or 42 classes of accused products) are a library, not a single book. As such, LPL was required to treat the mask files for each product as a separate trial exhibit. LPL's failure to do so, especially in the face of the Court's clear directive, constitutes exhibit stuffing entitling Defendants to a new trial.

9

Finally, the four prong test from *Greate Bay Hotel & Casino* is not applicable here. *Greate Bay Hotel & Casino v. Tose*, 34 F.3d 1227, 1236 (3d Cir. 1994). In *Greate Bay Hotel & Casino*, the Third Circuit applied the four part test to determine whether the district court committed reversible error by allowing a party to call witnesses and introduce exhibits not previously identified pursuant to the Court's pretrial order. *Id.* The instant dispute is clearly distinguishable. Here, Defendants raised and the Court granted a continuous stuffing objection to be decided on an exhibit-by-exhibit basis during and/or post-trial. Trial Tr. 28:15-21 ("If I find out during the course of the trial that there has been stuffing of individual exhibits, in other words, the marshaling of numerous exhibits into one exhibit number, then I'll either deal with it at trial, or it could be the cause of a mistrial after the verdict on a post-trial application."). There is no basis for applying a test applicable to the admission of undisclosed witnesses and exhibits to a situation that involved disclosed, but stuffed, exhibits to which a continuous objection had already been granted pretrial. The Court limited each side to 150 exhibits. LPL's exhibit stuffing resulted in Plaintiff unfairly getting forty-one (41) more exhibits than Defendants. On this record, Defendants respectfully request that the Court enforce its pretrial ruling and declare a mistrial based on LPL's exhibit stuffing.

## IV.    DEFENDANTS ARE ENTITLED TO A NEW TRIAL DUE TO LPL'S MISCONDUCT DURING TRIAL.

### A.    The Jury Instructions Did Not Cure The Prejudice Caused By LPL's Misconduct During Closing Argument.

LPL seems to argue that jury instructions are magic cure-alls that can effectively correct just about any misconduct. This type of reasoning is not only faulty, it is extremely undesirable. Curative jury instructions are intended to band-aid small, isolated problems that can be directly targeted and addressed by a specific instruction. *Fineman v. Armstrong World Indus.*, 774 F. Supp. 266, 270 (D. N.J. 1991) (cautionary instructions are used to eliminate prejudice resulting

10

from improper statements by counsel are only effective up to a point and may not cure repeated exposure to prejudicial information). There may be exceptional situations where a new trial is warranted because inappropriate conduct by an attorney cannot be cured with instructions – the "nonadmissible declaration cannot be wiped from the brains of the jurors." *Cf Johnson v. Elk Lake School Dist.*, 283 F.3d 138, 148 (3d Cir. 2002), *citing Bruton v. U.S.*, 391 U.S. 123, 129 (1968). They are not intended to be blank check permission slips for parties to make end runs around the standards long observed by the District of Delaware. *Id.* If a new trial is not granted, LPL will have established a new, much lower, standard of conduct for trials in this jurisdiction.

This is not a case where a single misstep during trial could be corrected with an instruction specifically focused on the problematic exhibit, statement or witness. Here, the general, non-specific jury instructions given almost 24 hours after LPL's closing argument could not cure the pervasive misconduct that occurred in this case. As appellate courts have uniformly recognized, this Court – the trial court – is in the best position to evaluate the prejudice caused by LPL's conduct. *Fineman v. Armstrong*, 980 F.2d at 171, 207 (3d Cir. 1992) (affirming grant of motion for new trial based on prejudicial conduct of counsel and because the verdict was against the weight of the evidence). Defendants respectfully ask that this Court sanction LPL for its conduct by ordering a new trial free from this type of blatant, pervasive misconduct.

## B.    LPL's Statements Concerning Notice Encouraged Error.

As the Federal Circuit has made clear, "the correct approach to determining notice under section 287 must focus on the action of the patentee, not the knowledge of the infringer." *Amsted Indus.*, 24 F.3d at 187; *see also Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1327 (Fed. Cir. 2001) (same). Even if the defendant knew of his own infringement, the patent holder is not entitled to damages prior to filing the lawsuit unless he marked his products or complied with the requirements of section 287. *Amsted Indus.*, 24 F.3d at 187.

11

The challenged statements in LPL's closing argument were prejudicial because they encouraged the jury to define "notice" using the common or ordinary meaning of "awareness" rather than the specific meaning ascribed by the statute and case law. Trial Tr. 2058:6 ("had to get the message"). The statute and case law are clear that notice requires "the affirmative communication of a *specific charge of infringement* by a *specific accused product or device.*" *Amsted Indus.*, 24 F.3d at 187. LPL's recitation of the law in a manner directly at odds with the actual statutory requirements (*i.e.*, encouraging the jury to apply a common, ordinary meaning to the term and to focus on CPT's knowledge rather than on the sufficiency of LPL's actions) encouraged error necessitating a new trial.

C.    **Defendants Did Not Waive Their Objections To LPL's Closing Argument.**

LPL asserts that the issues raised in Sections IV.D-G of Defendants' Opening Brief were waived because they were not raised during trial. The issue of waiver in this context is intensely fact specific. As such, appellate courts properly defer to trial court decisions concerning the effect of the resulting prejudice and the appropriate cure, including the issuance of a mistrial and the ordering of a new trial. *See, e.g., Fineman,* 980 F.2d at 207.

In fact, many courts have found that objections during closing argument were not required to preserve the issue. *See, e.g., Fineman.,* 980 F.2d at 207 n.26 (holding that district court did not abuse its discretion in considering improper closing statements despite lack of simultaneous objections as the defense "was not required to object to each and every objectionable remark because requiring such action would have unnecessarily created even more prejudice to [the defense] in the eyes of the jury"); *Spruill v. Nat'l R.R. Passenger Corp.*, No. 93-4706, 1995 WL 534273, at *8 (E.D. Pa. Sept. 5, 1995) (holding that objection to every instance of misconduct during opposing counsel's closing argument not necessary to preserve issue),

12

*citing Anastasio v. Schering Corp.*, 838 F.2d 701, 706 n.11 (3d Cir. 1988) (failure to object only one factor in determining prejudicial effect of comments).

The cases relied upon by LPL do not require a finding of waiver. In *Dunn v. HOVIC*, 1 F.3d 1362, 1371, 1378, *op. mod. in part*, 13 F.3d 58 (3rd Cir. 1993), the Third Circuit expressed its belief that aspects of plaintiff's closing argument "crossed the line," but declined to find that the trial court had abused its discretion in declining to order a mistrial. The challenged statements in *Dunn* were less pervasive and less objectionable than those at issue here. Specifically, the challenged statements in *Dunn* did not involve misstatements of law, did not argue expert opinion and evidence that was not disclosed prior to trial, and did not repetitiously attack defense counsel. *Id.* at 1376.[2]

## V.    THE DAMAGES AWARD MUST BE VACATED BECAUSE IT IS NOT SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE.

It is undisputed that LPL failed to come forward with any documentary evidence supporting its claim that the '002 patent *by itself* was responsible for a 5% increase in the yield LPL experienced in the mass production operations of its Fabs (factories). Trial Tr. 1114:18-1115:5. It is also undisputed that LPL never conducted any testing in mass-production context (such as a Fab) to determine yield with and without the guard ring technology claimed in the '002 patent. Trial Tr. 668:24-669:8 (pilot testing by R&D group, not in Fab). It is further undisputed that LPL never manufactured LCDs without using the '002 technology. Trial Tr. 1115:6-15. It is also undisputed that there are four pieces of guard ring prior art that predate the '002 patent. (DTX 3-6). It is further undisputed that there are many ESD reducing technologies in use in Fabs in addition to guard ring technology.

---

[2] *Fleck v. KDI Sylvan Pools, Inc.*, 981 F.2d 107, 116 (3d Cir. 1992), another case relied upon by LPL, concerns a party's failure to object to the entry of a directed verdict. As such, it is inapposite to the instant issue.

As plaintiff, LPL had the burden of proof on every element of its case, including the basis of its damages model. *Rochez Bros., Inc. v. Rhoades*, 527 F.2d 891, 894 (3d Cir. 1975) ("The plaintiff has the burden of proving every element of his case, including damages that flowed from the alleged injury."); *Procter & Gamble Co. v. Paragon Trade Brands, Inc.*, 989 F. Supp. 547, 599 (D. Del. 1997) (the claimant bears the burden of proof on the issue of damages in an infringement case). LPL simply did not carry its burden in this case.

## A.    The Yield Rate Testimony Was Purely Speculative And/Or Undisclosed Prior To Trial.

Nowhere in Mr. Cobb's pretrial disclosures did LPL reveal a reliable or verifiable basis for attributing a 5% yield increase to the '002 patent. No documents were produced by LPL or relied upon by Mr. Cobb. In its Answering Brief, LPL argues that Mr. Cobb's yield rate testimony at trial was not speculative because it was based on six sources. Answering Brief at 3. As demonstrated below, LPL's argument is unavailing because each of those six "sources" was itself speculative, irrelevant and/or not disclosed prior to trial.

First, LPL argues that Mr. Cobb's reliance on his conversation with Jason Cho and John Kim, employees in LPL's IP (Legal) department who had never worked in an LPL Fab and had no personal knowledge about yield rates for any period of time, demonstrates that Mr. Cobb's yield rate testimony was not speculative. LPL's argument is completely at odds with Mr. Cobb's own deposition testimony wherein he admitted that

REDACTED

Ex. B (Cobb Depo) at 12:23-13:17, 46:19-25, 47:2-5, 47:10-13, 67:16-20, 75:25-76:7, 76:18-22, 79:1-5; Trial Tr. 1124:1-1125:3. Mr. Cobb's blind reliance on unqualified lay opinion that was based on undisclosed hearsay sources only underscores the speculative nature of his opinions.

14

Second, LPL argues that the testimony of CPT engineer Vincent Liu and '002 inventor Scott Holmberg demonstrate that Mr. Cobb's yield rate testimony was not speculative. Mr. Liu testified that guard rings generally, not the '002 patent specifically, were understood to increase yield. Trial Tr. 582:15-583:12. The '002 patent is not the first or the only art concerning guard rings. Trial Tr. 1608:2-7, 1611:14-23, 1627:20-23; DTX 003-6. In this trial alone, evidence concerning four prior art references on guard rings was admitted. Trial Tr. 1608:2-1653:14; DTX 003-6. Thus testimony that guard rings as a class increase yield by some unknown and indeterminate amount does not make Mr. Cobb's testimony that the yield rate increase experienced by LPL is at least 5% any less speculative. Mr. Holmberg's testimony concerned the yield benefits he experienced in his early work in developing the '002 patent is not probative of LPL's yield rates. Trial Tr. 541:11-542:9 (yield rates from 1987-1989 time period). Mr. Holmberg admitted that his production runs never resulted in total yield rates even half as great as those experienced in the industry today. Trial Tr. 541:11-542:9 (total yield rates "in the ten, twenty percent range" at most for a four-by-five inch display). This testimony also does not make Mr. Cobb's testimony less speculative because it is not probative of yield rate increases that may or may not be achievable in modern Fab environments and certainly does not support a specific finding of yield increases at any LPL Fab over any period of time. Trial Tr. 1117:8-1122:19 (describing Mr. Holmberg's work as taking place in "antiquity" and stating that Mr. Cobb did not understand Mr. Holmberg to be saying that his yield experiences were transferable to the modern Fab environment).

Third, LPL argues that Mr. Cobb's undisclosed reliance on Mr. Ho Lee, Mr. J.J. Kim and Mr. Tsung I.L. Park renders his opinion non-speculative. Mr. Cobb arrived at his 5% yield opinion without consulting with Messrs. Lee, J.J. Kim and Tsung I.L. Park. Ex. A (Cobb

15

Report), Ex. B (Cobb Depo) at 12:23-13:17, 46:19-25, 47:2-5, 47:10-13, 67:16-20, 75:25-76:7, 76:18-22, 79:1-5; Trial Tr. 1133:20-1135:4 (didn't speak to Fab engineers until after his deposition). In fact, at his deposition – the last expert disclosure LPL or Mr. Cobb made in this case prior to trial – Mr. Cobb testified that he had not spoken to Mr. Lee and was not even aware of the names of any LPL Fab engineers. Ex. B (Cobb Depo) at 12:23-13:17, 46:19-25, 47:2-5, 47:10-13, 67:16-20, 75:25-76:7, 76:18-22, 79:1-5; Trial Tr. 1104:9-13. As disclosed pretrial, Mr. Cobb's opinion was in no way based on Messrs. Lee, J.J. Kim and Tsung I.L. Park. Moreover, Messrs. J.J. Kim and Tsung I.L. Park were never subject to cross examination because they were never disclosed pretrial, so the reasonableness of Mr. Cobb's belated reliance on their opinions could not have been tested. LPL cannot cure the speculative opinions of Mr. Cobb by pointing to undisclosed testimony outside the scope of Mr. Cobb's and LPL's pretrial disclosures.

**B.    Mr. Wagner's Rebuttal Opinion Did Not Relieve LPL Of Its Burden Of Proof Concerning Yield Rate.**

In order to mask the lack of evidentiary basis for LPL's 5% yield contention, LPL argues that Mr. Wagner's *rebuttal* report on damages somehow *de facto* relieved LPL from meeting its burden of proof on yield. Contrary to LPL's representations, this is not a dispute as to whether a 4% or 5% yield increase was supported by the record. Answering Brief at 15. Neither yield rate increase was supported. Mr. Wagner did not testify that 4% was supported –

REDACTED

[3] Mr. Wagner's *assumption*, an assumption

---

[3] Trial Tr. at 1903:14-20

REDACTED

Trial Tr. at 1844:3-14                                          (emphasis added);

16

that was made in order to enable him to even offer a *rebuttal* opinion since there was no reliable yield rate evidence in the record, is not proof of a yield increase of at least 4%. Mr. Wagner's starting point for his rebuttal opinion in no way diminishes LPL's burden of proving every element of its case, including the basis of its 3-5% yield increase theory. *Rochez Bros.,* 527 F.2d at 894; *Procter & Gamble*, 989 F. Supp. at 599. LPL did not meet its burden. As a result, the damages award cannot stand.

## VI.   LPL'S CONDUCT IN LITIGATING THE INVALID '121 PATENT SUPPORTS A REMITTITUR OF THE DAMAGES AWARD.

As argued in Defendants' briefing in support of their Motion for Attorneys' Fees and Expenses, LPL knew or should have known had it conducted an appropriate pretrial investigation that the '121 patent was invalid due to the on sale bar. Defendants incurred approximately $1,000,000 in fees defending LPL's baseless claims of infringement on the '121 patent for almost one year. LPL's conduct in pursuing infringement claims on the '121 patent – a patent it should have known was invalid as of late 1999 – provides further basis to remit the verdict herein. *Spence v. Bd. of Educ.*, 806 F.2d 1198, 1201 (3d Cir. 1986) (remittitur is well established device employed when the trial judge finds that a damage award is clearly unsupported and/or excessive).

## CONCLUSION

For all of the foregoing reasons, as well as those highlighted in Defendants' Opening Brief, Defendants have demonstrated that the jury's damages award is excessive, clearly erroneous, and against the great weight of the evidence and thus, Defendants are entitled to a new trial or to a remittitur.

---

REDACTED

17

Defendants have further demonstrated that they are entitled to a new trial based on the repeated and severe distortions and misstatements made by LPL's counsel during closing argument necessitate a new trial. Counsel's misconduct was highly prejudicial, at times misstating settled legal principles on key issues in the case. LPL's counsel even unfairly impugned the integrity of defense counsel, completely without a basis to do so, by stating to the jury that defense counsel was trying to trick them and hide evidence from them. The number and severity of these misstatements make it more than reasonably probable that the jury was unfairly biased and prejudiced against the defense in coming to their verdict. Ordering a new trial under these circumstances is fully with the sound discretion of the trial court. Defendants respectfully request that the Court grant a new trial so that a jury can render a verdict untainted by the passion and prejudice urged on them by LPL during the trial now at issue.

18

OF COUNSEL:
Teresa M. Corbin
Glenn W. Rhodes
Howrey LLP
525 Market Street, Suite 3600
San Francisco, California 94105
(415) 848-4900

Julie S. Gabler
Howrey LLP
550 South Hope Street, Suite 1100
Los Angeles, California 90071
(213) 892-1800

Dated:  October 30, 2006

Robert W. Whetzel (#2288)
whetzel@rlf.com
Steven J. Fineman (#4025)
fineman@rlf.com
Matthew W. King (#4566)
king@rlf.com
Richards, Layton & Finger
One Rodney Square, P.O. Box 551
Wilmington, DE  19899
(302) 651-7700
Attorneys    for    Defendants/Counterclaimants
Tatung Company, Tatung Company of America,
Chunghwa Picture Tubes, Ltd, and ViewSonic
Corporation

19

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on October 30, 2006, I electronically filed the foregoing

document with the Clerk of Court using CM/ECF which will send notification of such filing, and

hand delivered to the following:

> Richard D. Kirk
> The Bayard Firm
> 222 Delaware Avenue, Suite 900
> P.O. Box 25130
> Wilmington, DE 19899

I hereby certify that on October 30, 2006, I sent the foregoing document by electronic

mail, to the following non-registered participants:

> Gaspare J. Bono
> Matthew T. Bailey
> Andrew J. Park
> Adrian Mollo
> McKenna Long & Aldridge LLP
> 1900 K Street, NW
> Washington, DC 20006

> Steven J. Fineman (#4025)
> Fineman@rlf.com
> Richards, Layton & Finger
> One Rodney Square
> P.O. Box 551
> Wilmington, DE 19899

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 21, 2006, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, which will send notification of such filing to, and also hand delivered same to:

> Richard D. Kirk, Esquire
> The Bayard Firm
> 222 Delaware Avenue, Suite 900
> Wilmington, DE  19899

I HEREBY CERTIFY that on December 21, 2006, I caused the foregoing document to be served by Federal Express to the following non-registered participants:

> Gaspare J. Bono, Esquire
> McKenna Long & Aldrige LLP
> 1900 K Street, NW
> Washington, DC  20006

> Steven J. Fineman (#4025)
> fineman@rlf.com
> Richards, Layton & Finger
> One Rodney Square
> PO Box 551
> Wilmington, DE  19899