## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LG. PHILIPS LCD CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 05-292 (JJF) |
| | ) | |
| v. | ) | **DEMAND FOR JURY TRIAL** |
| | ) | |
| TATUNG COMPANY; TATUNG | ) | |
| COMPANY OF AMERICA, INC.; | ) | **REDACTED - PUBLIC VERSION** |
| CHUNGHWA PICTURE TUBES, LTD.; | ) | |
| AND VIEWSONIC CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR
## MOTION FOR ATTORNEYS' FEES AND EXPENSES

OF COUNSEL:

Teresa M. Corbin
Glenn W. Rhodes
Howrey LLP
525 Market Street, Suite 3600
San Francisco, California 94105
(415) 848-4900

Julie S. Gabler
Howrey LLP
550 South Hope Street, Suite 1100
Los Angeles, California 90071
(213) 892-1800

Dated: October 30, 2006

Robert W. Whetzel (#2288)
whetzel@rlf.com
Steven J. Fineman (#4025)
fineman@rlf.com
Matthew W. King (#4566)
king@rlf.com
Richards, Layton & Finger
One Rodney Square, P.O. Box 551
Wilmington, DE 19899
(302) 651-7700
Attorneys for Defendants/Counterclaimants
Tatung Company, Tatung Company of
America, Chunghwa Picture Tubes, Ltd, and
ViewSonic Corporation

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 2

    I.    LPL HAS FAILED TO REBUT DEFENDANTS' ARGUMENT THAT THEY SHOULD RECOVER THEIR ATTORNEYS' FEES AND EXPENSES. ........................................................................................................ 2

        A.    Defendants Prevailed On All Claims On The '121 Patent. ................................. 3

        B.    LPL's Actions Render This Case Exceptional Under Section 285 .................... 6

            1.    LPL's Litigation On The '121 Patent Was Objectively Baseless And Brought In Subjective Bad Faith ......................................................... 6

                a.    LPL's Own Documents Confirm That LPL Knew, Or Should Have Known, That The '121 Patent Was Invalid And LPL Makes No Effort To Refute This Overwhelming Evidence Of Invalidity. ......................................................... 8

                b.    LPL's Abandonment Of Its Claims On The '121 Patent, Coupled With Its Provision Of A Covenant Not To Sue, Constitutes Compelling Evidence That The '121 Patent Is Invalid. ................................................................................. 11

            2.    LPL Engaged In Litigation Misconduct That, In And Of Itself, Warrants An Award Of Attorneys' Fees In Defendants' Favor. ............. 13

        C.    Defendants' Motion Was Properly Filed Pursuant To The Briefing Schedule Entered By The Court. .................................................................... 16

        D.    Defendants, Not LPL, Are Entitled To Recover Their Attorneys' Fees And Expenses ............................................................................................ 17

CONCLUSION ............................................................................................................. 19

i

# TABLE OF AUTHORITIES

## CASES

*Akers v. Nicholson,*
409 F.3d 1356 (Fed. Cir. 2005)............................................................................................4

*Buckhannon Bd. and Care Home, Inc. v. W. Va. Dept. of Health and Human Res.,*
532 U.S. 598 (2001)............................................................................................................3

*Calloway Golf Co. v. Slazenger,*
384 F. Supp. 2d 735 (D. Del. 2005).................................................................................4, 8

*Forest Labs., Inc. v. Abbott Labs.,*
339 F.3d 1324 (Fed. Cir. 2003)............................................................................................6

*Get-A-Grip, II, Inc. v. Hornell Brewing Co., Inc.,*
C.A. No. 99-1332, C.A. No. 00-3937, 2002 WL 234289 (E.D. Pa. Feb. 15, 2002) .......................7

*Haynes Int'l, Inc. v. Jessop Steel Co.,*
8 F.3d 1573 (Fed. Cir. 1993)................................................................................................6

*Hoffman-La Roche Inc. v. Invamed Inc.,*
213 F.3d 1359 (Fed. Cir. 2000)............................................................................................8

*Rice Serv., Ltd. v. U.S.,*
405 F.3d 1017 (Fed. Cir. 2005)............................................................................................4

*Samsung Elec. Co., Ltd. v. Rambus, Inc.,*
440 F. Supp. 2d 495 (E.D. Va. 2006) ..................................................................................6

*Semtek Int'l Inc. v. Lockheed Martin Corp.,*
531 U.S. 497 (2001)............................................................................................................4

*Serio-US Indus., Inc. v. Plastic Recovery Techs. Corp.,*
459 F.3d 1311 (Fed. Cir. 2006)............................................................................................6

*Tenax Corp v. Tensar Corp.,*
22 U.S.P.Q. 2d 1264 (D. Md. 1991) ....................................................................................4

*True Ctr. Gate Leasing, Inc. v. Sonoran Gate, L.L.C.,*
402 F. Supp. 2d 1093 (D. Ariz. 2005) ..................................................................................5

## INTRODUCTION

Defendants have demonstrated that the '121 patent was invalid, and that LPL knew or should have known as much prior to commencing the present litigation. Notwithstanding this demonstration, LPL's answering brief is noticeably devoid of any statements to the contrary. LPL instead cobbles together references to Defendants' alleged failure to prove invalidity by clear and convincing evidence, and how the '121 patent is entitled to a presumption of validity. Yet, LPL never once affirmatively asserts that the '121 patent is valid and enforceable, nor does LPL affirmatively assert that it was unaware of the evidence of invalidity prior to commencing the present action. Moreover, LPL remarkably asserts that its production of revealing documents under threat of contempt, somehow refutes a finding of litigation misconduct. LPL's arguments are without merit.

LPL commenced the instant action and sought preliminary, injunctive relief in the face of substantial evidence within its control of invalidating pre-critical date sales. Despite its efforts to stonewall Defendants' discovery requests, LPL was ordered to produce documents and witnesses that would have revealed LPL's baseless litigation or to dismiss its claims. LPL chose to dismiss its claims. Now, after LPL has furnished Defendants with a covenant not to sue that provides Defendants with almost the identical relief they would have received had LPL not dismissed its claims on the '121 patent, LPL seeks to burden Defendants with the cost of this litigation. The Court should not countenance such behavior. Defendants should be awarded their attorneys' fees and expenses incurred in connection with their defense of LPL's baseless claims of infringement on the '121 patent.

## ARGUMENT

### I.    LPL HAS FAILED TO REBUT DEFENDANTS' ARGUMENT THAT THEY SHOULD RECOVER THEIR ATTORNEYS' FEES AND EXPENSES.

Defendants have set forth in great detail the bases for their entitlement to a recovery of their attorneys' fees and expenses incurred in connection with the defense of LPL's claims of infringement on the '121 patent. Based upon documents produced from LPL's own files, Defendants have demonstrated that the '121 patent is invalid. Even a cursory pre-suit investigation would have revealed the on sale bar. Nonetheless, LPL proceeded with the litigation and compelled Defendants to incur substantial attorneys' fees and expenses.

As its primary defense to Defendants' motion for attorneys' fees and expenses, LPL does not assert that the '121 patent is valid or that it conducted a reasonable investigation. Instead, LPL makes a technical argument that Defendants are not "prevailing parties" -- an argument that does not withstand scrutiny in light of the factual predicate for Defendants' motion. Thereafter, LPL suggests that Defendants have failed to establish that the '121 litigation was baseless -- an argument based largely upon LPL's assertion that Defendants have not proven invalidity by clear and convincing evidence. Yet, LPL never in its brief affirmatively asserts -- presumably because it cannot -- that the '121 patent is valid or that a reasonable investigation was undertaken. This omission speaks volumes.

LPL's decision not to rebut Defendants' contention of invalidity, viewed in combination with its decision to provide Defendants with a covenant not to sue on the '121 patent is compelling evidence that LPL knew, or should have known, that the '121 patent was invalid. For these reasons, the Court should award Defendants their attorneys' fees and costs incurred in connection with the defense of LPL's baseless litigation on the '121 patent.

2

## A.    Defendants Prevailed On All Claims On The '121 Patent.

In May, 2005 LPL commenced the present action against Defendants alleging claims of infringement of two patents -- the '121 patent and the '002 patent. On September 2, 2005, Defendants answered the complaint, raised invalidity of the '121 patent as an affirmative defense, and counterclaimed for a declaration of invalidity on the '121 patent. D.I. 12, 14, 16. Having been ordered to provide discovery that would expose LPL's baseless litigation on an invalid patent or dismiss its claims on the '121 patent, LPL dismissed its claims. Thereafter, LPL provided Defendants with a covenant not to sue. As a result, Defendants received virtually all of the relief they sought through their counterclaims on the '121 patent. Notwithstanding Defendants' indisputable victory, LPL asserts that Defendants are not the prevailing party with respect to the claims on the '121 patent. LPL is mistaken.

On April 25, 2006, the Court ordered LPL to provide discovery to Defendants on the on sale bar defense or drop the '121 patent from the case. 4/25/06 Tr. at 71 (Ex. A). On May 1, 2006 LPL purported to withdraw its claims for infringement on the '121 patent without prejudice. In response, Defendants noted the inherent prejudice that would result if LPL were allowed to withdraw its claims on the '121 patent without prejudice. The Court declined to address the issue at that time, but instead, held that issues relating to the '121 patent would be resolved following trial on the '002 patent. D.I. 197. In the interim, and following trial, LPL provided Defendants with a covenant not to sue. Against this backdrop, LPL nonetheless asserts that Defendants "have not prevailed regarding the '121 Patent because they obtained no relief on the merits." AB at 17.[1]

LPL relies primarily upon the Supreme Court's decision in *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dept. of Health and Human Res.*, 532 U.S. 598 (2001) (and cases that rely

---

[1] LPL's answering brief (D.I. 470) is cited hereinafter as "AB at ___."

upon *Buckhannon*) for the proposition that a party must obtain "a judicial *imprimatur* tantamount to a judgment in favor of that party on the merits of the original claim." *Akers v. Nicholson*, 409 F.3d 1356, 1359 (Fed. Cir. 2005). LPL incorrectly asserts, however, that "Defendants fail to qualify as prevailing parties as they have not obtained any court ordered decree, enforceable judgment on the merits, or award of damages." AB at 18. The Federal Circuit has held that the threshold requirement set forth in *Buckhannon* "requires a plaintiff to have obtained a court order carrying sufficient 'judicial *imprimatur*' to materially change the legal relationship of the parties .... The threshold can also be met by other court action 'equivalent' to a judgment on the merits or a court-ordered consent decree." *Rice Serv., Ltd. v. U.S.*, 405 F.3d 1017, 1026 (Fed. Cir. 2005).

This is not a case where Defendants obtained the functional equivalent of an adjudication on the merits through voluntary cessation by LPL. Here, the Court ordered LPL to either provide Defendants with discovery related to the '121 patent, or dismiss its claims for infringement. LPL, of course, withdrew all claims on the '121 patent pursuant to the Court's order, in lieu of having its baseless litigation exposed.

It is well-settled that a dismissal with prejudice constitutes the requisite judicial *imprimatur* necessary to elevate a party's status to that of a prevailing party. *See Calloway Golf Co. v. Slazenger*, 384 F. Supp. 2d 735, 746 (D. Del. 2005); *Tenax Corp v. Tensar Corp.*, 22 U.S.P.Q.2d 1264, 1266 (D. Md. 1991). Courts have determined that a stipulation of dismissal with prejudice is akin to an adjudication on the merits. *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505 (2001). The same rationale applies to the instant action. The Court ordered LPL to provide discovery or dismiss its claims for infringement -- action that satisfies the judicial *imprimatur* requirement. The covenant not to sue provides Defendants with

4

protection from future litigation in the same manner as a stipulation of dismissal with prejudice. Under the circumstances here, a court-ordered dismissal coupled with a covenant not to sue is sufficient for the prevailing party requirement.[2]

If, as LPL contends, the withdrawal of the '121 claims lacks judicial *imprimatur*, then the purported dismissal also lacks finality and the Court retains jurisdiction to dismiss LPL's claims with prejudice. As stated in their May 15, 2006 letter to the Court, Defendants understood the Court's April 25, 2006 Order to mean that LPL would either provide discovery or dismiss all claims on the '121 patent with prejudice. D.I. 195. Conversely, LPL stated in its May 16, 2006 letter to the Court that it believed "withdrawing the claims is the functional equivalent of amending the complaint under Rule 15." D.I. 196. LPL's position cannot be correct. LPL never sought leave to amend, was never granted leave to amend, and never filed an amended complaint. And, such an amendment would not have affected Defendants' counterclaims on the '121 patent. The Court reserved decision on this dispute until after the trial on the '002 patent, and can readily address the issue at this point.

If the Court were to accept LPL's argument, a party could commence a baseless action for patent infringement, litigate the action for several years at substantial cost to the opposing party, provide a covenant not to sue the day before a jury was prepared to return a verdict, and avoid any potential liability for attorneys' fees. The Court should not set such a precedent, but

---

[2] The cases relied upon by LPL are inapposite. By way of example, in *True Ctr. Gate Leasing, Inc. v. Sonoran Gate, L.L.C.*, 402 F. Supp. 2d 1093 (D. Ariz. 2005) the Court ultimately held that the implementation of a covenant not to sue divested the Court of subject matter jurisdiction. In addressing fairness of the dismissal, the Court noted that "[t]his is not a case where the plaintiff sought from the start to establish the invalidity of patents and invested substantial resources in that effort only to have the rug pulled out from under it by a last-minute covenant not to sue." *Id.* at 1100. Here, Defendants have invested substantial resources, and LPL provided the covenant not to sue after trial on the '002 patent.

5

instead should declare that LPL's claims on the '121 patent have been dismissed with prejudice and that Defendants prevailed on such claims.[3]

**B.    LPL's Actions Render This Case Exceptional Under Section 285.**

When an alleged infringer seeks to recover attorneys' fees under Section 285, the Federal Circuit has found that an exceptional case may exist where there is misconduct in securing the patent, litigation misconduct *or* the litigation is brought in subjective bad faith and is objectively baseless. *See Serio-US Indus., Inc. v. Plastic Recovery Techs. Corp.*, 459 F.3d 1311, 1322 (Fed. Cir. 2006) (emphasis added). Here, LPL commenced baseless litigation and engaged in litigation misconduct -- each of which form an independent basis to determine that the present case is exceptional.

**1.    LPL's Litigation On The '121 Patent Was Objectively Baseless And Brought In Subjective Bad Faith.**

LPL does not dispute that a determination as to whether litigation is unjustified, frivolous or brought in bad faith involves a determination of whether the plaintiff knew or should have known that its action was baseless, but pursued its claim anyway. *See Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1330 (Fed. Cir. 2003) (citing *Haynes Int'l, Inc. v. Jessop Steel Co.*, 8 F.3d 1573, 1579 (Fed. Cir. 1993)) ("A frivolous infringement suit is one in which the patentee knew or, on reasonable investigation, should have known, was baseless."). Similarly, LPL does not make any effort to refute Defendants' factual assertions demonstrating that LPL knew, or should have known, that the '121 patent was invalid.

---

[3] If necessary, the Court has subject matter jurisdiction to dismiss LPL's claims of infringement on the '121 patent with prejudice because the covenant not to sue does not divest the Court of jurisdiction to adjudicate claims of patent infringement raised by LPL. *See Samsung Elec. Co., Ltd. v. Rambus, Inc.*, 440 F. Supp. 2d 495, 504 (E.D. Va. 2006) ("there is no authority for the proposition that a covenant not to sue stands as a jurisdictional bar to bringing a subsequent infringement claim") (footnote omitted).

6

In response to Defendants' assertion that LPL knew, or should have known, that the '121 patent was invalid prior to commencing this litigation, it would be expected that LPL would, if it could, deny such an accusation. LPL does not make any such denial. *See* AB at 20-22. Instead, LPL argues that it did not bring this action in subjective bad faith because (1) the '121 patent is presumed valid, and (2) knowledge of an invalidity defense is not the same as knowing that a patent is invalid. AB at 21. LPL's arguments are not persuasive.

First, LPL cannot rely upon a presumption of validity when faced with overwhelming evidence of invalidity. If LPL reviewed its internal documents, and correctly concluded that LPL had made numerous sales prior to the critical date, it could not proceed with litigation relying upon a presumption of validity that had been rebutted.[4] This is especially so where the evidence of pre-critical date sales was entirely within LPL's possession, and was never disclosed to the PTO. LPL could not ignore plain evidence that demonstrated an on sale bar.

Second, LPL argues that, technically, "knowledge of an invalidity defense is not the same thing as knowing that a patent is invalid." *See* AB at 22. LPL's reliance on *Get-A-Grip, II, Inc. v. Hornell Brewing Co., Inc.*, C.A. No. 99-1332; C.A. No. 00-3937, 2002 WL 234289, at *2 (E.D. Pa. Feb. 15, 2002) is misplaced. *Get-A-Grip* involved invalidity arguments relating to prior art -- issues on which reasonable minds could differ. Understandably, parties may disagree as to whether a certain piece of prior art impacts the validity of a patent. Where a party is aware of certain prior art, and does not believe such prior art invalidates its patent, that party has not necessarily acted in bad faith by proceeding with claims of patent infringement even if a court or jury ultimately determines that the patent is invalid. Here, contrary to LPL's assertion that

---

[4] LPL's failure to produce documents until the end of discovery (and beyond) demonstrates that either LPL conducted a pre-suit investigation and proceeded notwithstanding this evidence, or it failed to conduct such an investigation.

7

Defendants' on sale bar defense raises "unresolved and complex legal and factual issues," the documents plainly evidence an on sale bar. Defendants' efforts to create strawman factual disputes are disingenuous. No reasonable minds could differ on this issue.

Finally, LPL's reliance on *Calloway Golf Co.* and *Hoffman-La Roche Inc. v. Invamed Inc.*, 213 F.3d 1359 (Fed. Cir. 2000) (and its progeny) for the proposition that simple inadequacy of a pre-suit investigation is insufficient to make a case exceptional is unavailing. None of the cases cited by LPL involved invalidity based on an on sale bar, and they are all distinguishable from the present circumstances in that the parties in each of those respective cases did, in fact, conduct a pre-suit investigation. LPL has made no showing that it conducted a reasonable pre-suit investigation and, indeed, proffered (through a declaration of its Manager of Intellectual Property Team 1 submitted in November 2005 in connection with its application for a preliminary injunction) that the '121 patent was valid. *See* D.I. 23 at ¶¶ 33, 35. If LPL conducted a reasonable pre-suit investigation, it would have reached the inescapable conclusion that the '121 patent is invalid.

a.  **LPL's Own Documents Confirm That LPL Knew, Or Should Have Known, That The '121 Patent Was Invalid And LPL Makes No Effort To Refute This Overwhelming Evidence Of Invalidity.**

Utilizing only those documents produced by LPL, Defendants have demonstrated that the '121 patent was invalid in light of the on sale bar.[5] The documents produced by LPL reflect that

---

[5] LPL argues, without merit, that Defendants' continued efforts to seek discovery of LPL regarding the on sale bar is evidence that Defendants cannot demonstrate invalidity of the '121 patent based on the present record. This is an incorrect and improper inference. Defendants were preparing for trial, and any reasonable party defending itself in litigation would make every effort to collect as much information as possible to support its position -- especially where LPL had withheld evidence on this issue until the close of the discovery period. Similarly, LPL's argument relating to Defendants' multiple theories of on sale bar ("AB at 25-26") is of no effect. Based upon the documents produced from LPL's files, invalidating sales were made prior to the critical date.

8

the '121 technology was incorporated in LPL module LB121S1-A2. This module contained

TCP part number REDACTED LPL admitted that this TCP embodied

the claims of the '121 patent. 4/25/06 Tr. at 38-40 (Ex. A). These same documents show that

the LB121S1-A2 module was scheduled to begin mass production between November and

December of 1999. Exs. 12 (LPLII 05928), 13 (05935-05936), 14 (05998)[6]. A document titled

"LB121S1-A2 TCP meeting" dated September 21, 1999 reveals that        was to be used in

the mass production. Ex. 15 (LPLII 07105). A bill of materials (BOM) list dated October 13,

1999 also lists REDACTED Ex. 16 (LPLII 07096-

07098).

These documents demonstrate LPL's intention to mass produce and

offer for sale modules incorporating the technology of the '121 patent as early as

REDACTED Equally important, these documents

make clear that sales of the LB121S1-A2 module prior to the critical date would constitute an on

sale bar.

The documents also reflect sales of        to LPL from        (Ex. 18,

LPLII 102785-102786) and sales of the LB121S1-A2 module. Ex. 19 (LPLII 102328-102347).

sales show that a large shipment was received on REDACTED

Ex. 18 (LPLII 102785). Sales of the LB121S1-A2 module were

also consistent with LPL's mass production plan wherein REDACTED

Ex. 19 (LPLII 102328-102347). The first large shipment of

LB121S1-A2 modules containing REDACTED Id. In all, LPL's

---

[6] Citations to exhibits (other than transcript pages which are attached hereto) refer to the exhibits attached to the Declaration of Steve Yovits filed on October 10, 2006 (D.I. 465).

9

documents indicate that    REDACTED

In response to the overwhelming evidence of invalidity presented by Defendants, LPL offers virtually no refutation.[7]  LPL's sole response to this evidence is its contention that Defendants cannot demonstrate that          was "used in every single one of the products shipped to the U.S. in late 1999."[8]  AB at 27.  LPL is wrong.  Exhibit 16 lists          s the source TCP for the LB121S1-A2 module.

REDACTED

Tellingly, LPL does not offer any documents, declarations or other evidence of any nature to support its naked argument that the modules sold in the United States did not contain the technology claimed in the '121 patent.  Moreover, LPL ignores the fact that the          nipment of LB12151-A2 modules to LG.Philips LCD America was made just one day after the filing of LPL's '166 application seeking protection in Korea for the same technology as claimed in the '121 patent.  The timing of this filing reflects LPL's understanding that the LB12151-A2 module incorporated technology disclosed in the '166 patent application (and ultimately, the '121 patent).  LPL makes no effort to address this strong evidence of LPL's wrongdoing.

To the contrary, LPL merely suggests certain purportedly "unresolved" issues that "undermine Defendants' exceptional case arguments" (AB at 27-28).  LPL makes no effort to establish how these allegedly unresolved issues undermine Defendants' arguments.  By way of example, one of the allegedly unresolved issues raised by LPL is "[w]hether shipments between

---

[7] LPL asserts that the late production of these documents evidences its good faith.  AB at 21.  This is simply not credible.

[8] Of course, a single pre-critical date sale would suffice to invalidate the patent. Defendants do not need to demonstrate that part 56 was used in every product.

10

LPL (or its predecessor) and LPLA constitute 'sales' for on-sale bar purposes." AB at 28. This issue is a red herring. The sales between LPL and LG.Philips LCD America are not exempt from the on sale bar. If LPL was able to make a genuine argument to the contrary on this point, it should have done so. LPL is certainly in a capable position to argue the nature of the relationship of the parties -- indeed it did so when *opposing* discovery of documents from LG.Philips America. *See* D.I. 166 at 12 ("Recognizing this, and that LPA and LPL are separate entities ...."). The Court should give no credence to any of LPL's allegedly "unresolved" issues because LPL does not, because it cannot, establish how any of these issues undermine Defendants' arguments.

> **b.    LPL's Abandonment Of Its Claims On The '121 Patent, Coupled With Its Provision Of A Covenant Not To Sue, Constitutes Compelling Evidence That The '121 Patent Is Invalid.**

LPL commenced this action on May 13, 2005 alleging infringement of the '121 and '002 patents. On November 1, 2005, LPL moved for a preliminary injunction on the '121 patent seeking to enjoin Defendants from selling, or offering for sale, certain products that allegedly infringed the '121 patent. LPL did not seek preliminary injunctive relief on the '002 patent, nor did LPL seek expedited treatment of its claims for infringement on the '002 patent. To the contrary, LPL squarely focused its attention on the '121 patent. As a result of LPL's representation that the '121 patent was valid and infringed, and that LPL would suffer irreparable harm if the Court did not preliminarily enjoin Defendants, the Court scheduled an expedited trial on the '121 patent.

On May 1, 2006, LPL filed a Notice of Voluntary Withdrawal of Claims Relating to U.S. Patent No. 6,738,121 ("Notice"). D.I. 180. In a cover letter filed with the Notice, LPL stated that "the discovery preparatory to an ensuing battle over the on-sale bar for the '121 patent

would be a time consuming distraction from LPL's real objective, which is getting to trial in July on Defendants' infringing products." D.I. 179. Thus, LPL asserts that five months after seeking the extraordinary remedy of a preliminary injunction based on alleged imminent and irreparable harm, it then decided to forego any adjudication on the '121 patent to avoid a few weeks of discovery on the '002 patent. This argument is not credible.

LPL's assertion that it withdrew its claims on the '121 patent for fear of burdensome discovery is belied by the record. During the April 25, 2006 hearing, the Court ruled that if LPL did not dismiss the '121 patent, Defendants would be allowed "to have discovery against that patent on the issue of an on-sale bar through May 12th of 2006 ... [t]hat discovery can include document production from the subsidiary of plaintiff as well as three 30(b)(6) deposition of the plaintiff and one deposition of counsel that prosecute the patent, understanding that they're from the firm involved in this litigation." 4/25/06 Tr. at 71 (Ex. A). In short, the Court ordered limited document discovery and four depositions -- hardly the burdensome discovery LPL has attempted to paint.

Similarly, LPL's argument that it feared losing its trial date is belied by the record. Only a few minutes after identifying the limited discovery that the Court would allow Defendants on the '121 patent, the Court stated that "[t]he parties should continue to understand the trial in this matter is going to commence on July 17th, 2006 ...." 4/25/06 Tr. at 72 (Ex. A). The Court could not have been clearer -- trial would proceed on July 17.

Any lingering doubt as to whether LPL knew its litigation was baseless is resolved by LPL's provision to Defendants of a covenant not to sue. By LPL's logic, it was free to pursue claims for infringement of the '121 patent after trial on the '002 patent because its claims were allegedly withdrawn without prejudice. Yet, on August 3, 2006, LPL provided Defendants with

12

a covenant not to sue on the '121 patent. LPL's only justification for this action is its claim that it provided the covenant not to sue to "ripen the case for entry of final judgment."[9]  In other words, LPL now contends that it is willing to allow Defendants to practice the '121 technology free of charge, and indefinitely suffer the allegedly extensive irreparable harm earlier alleged by LPL, just to allow for the possibility that final judgment could conceivably be entered a few days or weeks earlier.  LPL's *ex post facto* arguments created to cover the baseless prosecution of a patent that LPL knew, or should have known was invalid at the time it commenced this action, does not refute Defendants' charge that LPL engaged in baseless litigation.

2.    **LPL Engaged In Litigation Misconduct That, In And Of Itself, Warrants An Award Of Attorneys' Fees In Defendants' Favor.**

In their opening brief, Defendants documented LPL's efforts to stonewall discovery of evidence relating to the on sale bar.  Although LPL asserts that Defendants' allegations of discovery misconduct are "false and disingenuous," and cites to its own proclamation that these assertions are "absolutely false," the record tells a different story.

Not until February 21, 2006 did LPL produce any documents reflecting that LPL had sold products embodying some or all of the claims of the '121 patent prior to the March 23, 2000 critical date, and that LPL had purchased products embodying some or all of the claims of the '121 patent.  Moreover, these critical facts were omitted from LPL's initial disclosures and interrogatory responses.[10]  By producing documents to Defendants at the eleventh hour, LPL

---

[9] LPL offers no explanation as to how providing the covenant not to sue even accomplishes this goal.  If the '121 claims were withdrawn as LPL contends, there should have been no concern as to lack of finality.

[10] LPL's only defense to this intentional omission is to argue that Defendants did not raise the issue of LPL's deficient written discovery responses during the discovery conferences. This argument is baseless.  LPL's stonewalling compelled Defendants to review documents while preparing to defend both the '121 and '002 patents.  The magnitude of LPL's misconduct only became apparent late in the discovery process -- at or about the time the Court ordered LPL

13

attempted to prevent Defendants from taking certain third party discovery. Indeed, LPL moved to quash third party subpoenas seeking discovery relating to the on sale bar. In short, LPL used every available opportunity to prevent Defendants from learning the facts concerning the sale bar.

LPL relies mainly on an April 24, 2006 joint submission to rebut Defendants' claims of discovery misconduct. LPL claims that the joint submission provides that "LPL acted in 'good faith' regarding the discovery rulings and should not be held in contempt." AB at 31. The joint submission simply does not state what LPL claims it states. The joint submission provides in relevant part as follows: "Counsel have met and conferred regarding the issues set forth in their March 31 submissions to the Court. The parties have resolved and narrowed additional discovery issues. In light of their good faith efforts, the parties agree that no party should be held in contempt concerning the Court's discovery rulings." D.I. 177. First, the joint submission does not exculpate LPL for its failure to disclose facts relating to the on sale bar *prior to* the March 1 hearing. Second, the reference to good faith refers to the parties' efforts following the March 1, 2006 hearing to comply with the Court's directions. Finally, LPL cannot claim that it did not engage in litigation misconduct in light of the Court having ordered LPL to provide discovery or dismiss its claim. Dismissal of a claim is the ultimate sanction for improper conduct.

LPL is also mistaken that its actions during discovery cannot constitute an adequate basis for a recovery of attorneys' fees and expenses. *See* AB at 32 (citing cases). LPL's actions did not constitute mere discovery defalcations -- they constituted litigation misconduct. LPL

---

to dismiss its claims for failure to comply with discovery. At that juncture, complaints of insufficient Rule 26 disclosures were overshadowed by even more egregious discovery failures.

14

purposely withheld discovery on the on sale bar defense to temporarily prevent Defendants from learning that the claims of the '121 patent were invalid.

From the inception of this litigation, LPL has prosecuted its claims of infringement on the invalid '121 patent to obtain expedited relief. On November 1, 2005, LPL moved for a preliminary injunction on the '121 patent seeking to enjoin Defendants from selling, or offering for sale, certain products that allegedly infringed the '121 patent. Defendants sought a reasonable extension of time to prepare a response -- LPL refused. As a result, the Court held a hearing on November 16, 2005 to address Defendants' request for additional time to respond. At this hearing, the Court specifically asked LPL whether the application for a preliminary injunction was merely a vehicle to achieve expedited treatment of this litigation:

> THE COURT:  Tell me this, I know you're frustrated because I read your papers, that you think they engaged in delay on the other side of the case and you think that they are doing that repeatedly in the central district in California and the way they handled the service delay here and in other ways.
>
> And so when you sat down, is that what made you think that a preliminary injunction would be a good idea? Because is it the delay frustration that they're still out there selling and you're not able to get them into a final decision? Because there are other recommendations if that's what you're trying to convince me of.
>
> MR. BONO:  No, that was not part of our thinking as far as seeking the preliminary injunction.

11/16/05 Tr. at 24 (Ex. B). Notwithstanding this unambiguous representation to the Court that LPL was seeking a preliminary injunction -- and not seeking an expedited trial -- LPL later flatly contradicted this representation after its ruse was exposed.

In its May 1, 2006 letter to the Court wherein LPL purportedly withdrew all claims for infringement on the '121 patent, LPL represented to the Court that "the discovery preparatory to and ensuing battle over the on-sale bar for the '121 patent would be a time consuming distraction

15

from LPL's real objective, which is getting to trial in July on defendants' infringing products."

D.I. 179. Thus, LPL acknowledged that it was not concerned with the alleged irreparable harm it

claimed to be suffering as a result of Defendants' alleged infringement of the '121 patent, but

instead was interested in proceeding to trial on the '002 patent. Nearly one year ago to the day,

LPL represented to this Court that it would suffer irreparable harm if Defendants were not

enjoined from allegedly infringing the '121 patent because, among other reasons, LPL's

customers and industry members might infer that LPL's patents do not represent new

technology, the alleged infringement undermines LPL's reputation and goodwill, and other

market participants would be emboldened to infringe the '121 patent. D.I. 24 (Declaration of

Jong Hwan Kim); D.I. 22 (Preliminary Injunction Brief). Yet, on August 3, 2006 LPL provided

Defendants with a covenant not to sue on the '121 patent. LPL's only explanation for this act

was "to ripen the case for entry of final judgment." AB at 15-16. LPL's statements cannot be

reconciled with its actions.

C.    **Defendants' Motion Was Properly Filed Pursuant To The Briefing Schedule Entered By The Court.**

On May 1, 2006, LPL purported to dismiss its claims on the '121 patent without

prejudice. Defendants wrote to the Court on May 15, 2006 and identified the numerous reasons

that LPL should not be entitled to dismiss the claims on the '121 patent without prejudice. LPL

filed a letter response on September 16, 2006. That same day the Court entered an order holding

that "[t]he issues Defendants contend exist regarding the '121 patent will be addressed after the

July trial on a schedule set by the Court." On September 13, 2006, the Court entered an order

setting October 10, 2006 as the deadline to file post-trial motions. As the prevailing party on all

16

claims on the '121 patent, Defendants properly moved for attorneys' fees and expenses pursuant to the schedule set by the Court.[11]

LPL also argues incorrectly that Defendants' motion is "deficient" because Defendants did not identify the amount, or a fair estimate, of the amount of the attorneys' fees they are seeking. As Defendants stated in footnote 14 of their opening brief, Defendants only seek an adjudication of their entitlement to their attorneys' fees and expenses, and offered to make a separate submission regarding the amount of attorneys' fees and expenses together with supporting documentation. In either event, and to cure any alleged "deficiency," Defendants state that $1 million dollars is a fair estimate of the fees and expenses incurred in connection with the defense of the '121 patent.

### D.    Defendants, Not LPL, Are Entitled To Recover Their Attorneys' Fees And Expenses.

The Court should award Defendants their attorneys' fees and expenses incurred in defense of LPL's claims on the '121 patent to make Defendants whole and to prevent a gross injustice. Unlike LPL's claim for attorneys' fees on the '002 patent, this case was not close and LPL engaged in abhorrent behavior in proceeding on an invalid patent.[12] Not only did LPL press claims on an invalid patent, it moved for a preliminary injunction on the '121 patent. Based upon LPL's representation that it was suffering irreparable harm, the Court entered an expedited trial schedule. Thus, Defendants were compelled to defend themselves on a short trial track -- a

---

[11] LPL's assertion that the instant motion is premature does not square with its purported desire to "ripen the case for entry of final judgment."

[12] In its answering brief, LPL argues that it, not Defendants, should be awarded attorneys' fees in this case. For all of the reasons set forth in Defendants' opposition to LPL's motion for attorneys' fees and expenses, LPL should not be awarded attorneys' fees, but also for the reasons sets forth herein. LPL engaged in baseless litigation that wasted both judicial and party resources, and caused a significant increase in the cost of this litigation. LPL should not be rewarded for such behavior.

17

classic strategy for a plaintiff with a weak patent. Section 285 allows for recovery of attorneys'
fees in exceptional cases -- LPL's actions certainly make this case exceptional.

18

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion for Attorneys' Fees and Expenses.

OF COUNSEL:

Teresa M. Corbin
Glenn W. Rhodes
Howrey LLP
525 Market Street, Suite 3600
San Francisco, California 94105
(415) 848-4900

Julie S. Gabler
Howrey LLP
550 South Hope Street, Suite 1100
Los Angeles, California 90071
(213) 892-1800


Dated: October 30, 2006

Robert W. Whetzel (#2288)
whetzel@rlf.com
Steven J. Fineman (#4025)
fineman@rlf.com
Matthew W. King (#4566)
king@rlf.com
Richards, Layton & Finger
One Rodney Square, P.O. Box 551
Wilmington, DE 19899
(302) 651-7700
Attorneys for Defendants/Counterclaimants Tatung Company, Tatung Company of America, Chunghwa Picture Tubes, Ltd, and ViewSonic Corporation

19

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 30, 2006, I electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send notification of such filing, and hand delivered to the following:

> Richard D. Kirk
> The Bayard Firm
> 222 Delaware Avenue, Suite 900
> P.O. Box 25130
> Wilmington, DE 19899

I hereby certify that on October 30, 2006, I sent the foregoing document by electronic mail, to the following non-registered participants:

> Gaspare J. Bono
> Matthew T. Bailey
> Andrew J. Park
> Adrian Mollo
> McKenna Long & Aldridge LLP
> 1900 K Street, NW
> Washington, DC 20006

> Steven J. Fineman (#4025)
> Fineman@rlf.com
> Richards, Layton & Finger
> One Rodney Square
> P.O. Box 551
> Wilmington, DE 19899

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 21, 2006, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, which will send notification of such filing to, and also hand delivered same to:

> Richard D. Kirk, Esquire
> The Bayard Firm
> 222 Delaware Avenue, Suite 900
> Wilmington, DE 19899

I HEREBY CERTIFY that on December 21, 2006, I caused the foregoing document to be served by Federal Express to the following non-registered participants:

> Gaspare J. Bono, Esquire
> McKenna Long & Aldrige LLP
> 1900 K Street, NW
> Washington, DC 20006

> Steven J. Fineman (#4025)
> fineman@rlf.com
> Richards, Layton & Finger
> One Rodney Square
> PO Box 551
> Wilmington, DE 19899