# EXHIBIT A

*LG Philips LCD Co., LTD   v.*
*Tatung Company, et al.*

*Hearing*
*April 25, 2006*

*Hawkins Reporting Service*
*715 N King Street*
*Suite 3*
*Wilmington, DE  19801*
*(302) 658-6697*

*Original File LGPHIL~1.TXT, 76 Pages*
*Min-U-Script® File ID: 0101360872*

**Word Index included with this Min-U-Script®**

Page 35

[1] until March 17th when we first [2] produced documents showing the volume of those [3] transactions and the amounts of those [4] transactions, the costs, the price of those [5] transactions, we know we didn't tell you until [6] March 17th, but we're going to continue to [7] oppose your motion, that you didn't do any [8] third-party discovery, we are going to say LG [9] America is a third party so there is no way for [10] you to get this.

[11] THE COURT: I get it. I [12] understand what the support is.

[13] Is there any other matters that [14] the defendant wants to present at this time [15] before I hear from the plaintiff.

[16] MS. GABLER: I believe that's it, [17] Your Honor.

[18] THE COURT: Thank you. Who is the [19] judge assigned in California?

[20] MS. GABLER: Judge Marshal.

[21] MR. BONO: May it please the [22] Court, Your Honor.

[23] THE COURT: Good morning.

[24] MR. BONO: Good morning. The

Page 36

[1] first issue I would like to address, Your Honor, [2] is our request for the summary information that [3] is at issue and I think to clarify the issue for [4] the Court, may I hand up to the Court a brief [5] summary of the four items that we have requested [6] and are seeking.

[7] THE COURT: Yes.

[8] MR. BONO: Thank you, Your Honor.

[9] THE COURT: Mr. Bono, do you have [10] a copy for my law clerk, please.

[11] MR. BONO: Yes, absolutely.

[12] THE COURT: Thank you.

[13] MR. BONO: I apologize. There is [14] one typo on it that I hand wrote in.

[15] But in the first paragraph here, [16] Your Honor, I simply summarize the four items [17] that we have been requesting from CPT that they [18] have refused to give us.

[19] The first item is a list showing [20] which modules and products, which use which [21] types of tape carrier packages. Now, as we have [22] been striving to do since the beginning of this [23] case as Your Honor instructed months ago is to [24] try to narrow the focus of this case for trial

Page 37

[1] and to come up with representative products and [2] claims that we can take to trial.

[3] And so we have asked CPT to give [4] us in a simple document, and we had raised this [5] several times with them now for months, of just [6] saying this model number and it uses this CPT [7] supplied by a certain supplier. And without [8] that information, we are really unable to come [9] up with representative products to narrow the [10] scope of this case.

[11] Now, on the other side CPT has [12] requested LPL to give them a list and they [13] fought very hard for it, for us to list our [14] modules with the identification of the tape [15] carrier package used in each model.

[16] Pursuant to their demand we in [17] fact produced that list to them. So in effect [18] they have asked us for the same information, we [19] gave it to them, we have asked for similar [20] information from them and they are refusing to [21] give it to us. And we would ask that they be [22] required to give us this list which is very [23] simple to put together which just identifies [24] their module numbers and then what TCP product

Page 38

[1] is in each of those modules. And that would be [2] with respect to the '121 patent.

[3] The second item on our list is a [4] list identifying —

[5] THE COURT: Now, with respect to [6] that request, you have heard counsel contend [7] that the '121 patent has a validity problem by [8] virtue of an on-sale bar.

[9] MR. BONO: I have heard that, Your [10] Honor, yes.

[11] THE COURT: And with all the [12] notice that they contend they have given to [13] plaintiff, your view is that that is not a [14] sustainable contention?

[15] MR. BONO: Our argument is, Your [16] Honor, that there is insufficient proof and [17] evidence showing that the product that they're [18] talking about has the particular TCP package in [19] it that they contend was sold.

[20] THE COURT: Just so I'm clear, [21] your client's position is that that's not in the [22] packet, the module —

[23] MR. BONO: Your Honor, to be [24] clear —

Page 39

[1] THE COURT: Right.

[2] MR. BONO: — that product which [3] they're talking about used two different TCP [4] packages, one was the TCP package that does not [5] contain the invention, and some contained the [6] invention.

[7] THE COURT: So let's focus on the [8] ones that contained the invention.

[9] MR. BONO: Yes.

[10] THE COURT: Have you learned in [11] your dealings with your client whether or not [12] the invention packet was on sale as understood [13] under the patent laws prior to the critical [14] date?

[15] MR. BONO: I have been unable to [16] ascertain that fact from the client.

[17] THE COURT: One way or the other?

[18] MR. BONO: Yes, Your Honor. We [19] know that the — both packages were in the [20] product and the client has been unable to [21] identify for us which TCP was in which of those [22] modules prior to the critical date. We know the [23] module number that's at issue was on sale prior [24] to the critical date, but we don't know whether

Page 40

[1] the modules that were sold prior to the date [2] contained the invention TCP. That's what they [3] don't have information on, Your Honor. I have [4] quizzed them repeatedly.

[5] THE COURT: Now, the defendants [6] contend that in addition to the client's [7] knowledge that your law firm has a relationship [8] on the prosecution side of intellectual property [9] with the client.

[10] MR. BONO: That's correct, Your [11] Honor.

[12] THE COURT: And what you're [13] telling me is even with that relationship, [14] you're unable to get this information about the [15] '121 patent products sold by the client?

[16] MR. BONO: Yes, Your Honor. We [17] did not have at the time — at the time I was [18] not involved in the patent prosecution, but at [19] the time of the patent prosecution we had no [20] knowledge about the product being sold prior to [21] the critical date.

[22] THE COURT: No, I hope you [23] wouldn't have.

[24] MR. BONO: Right. The situation

Page 41

[1] is —

[2] THE COURT: What I'm interested in [3] knowing is because of that relationship and [4] because of that prosecution work, you haven't [5] been able to shed any additional light on — as [6] attorneys your knowledge about the issue raised [7] by defendant for purposes of this litigation.

[8] MR. BONO: That's correct, Your [9] Honor, I have investigated this and I have [10] spoken with the client about this issue, and [11] they are unable to say whether the particular [12] TCP which contains the invention was contained [13] in the modules sold prior to March 23, that were [14] sold in the U.S.

[15] I have quizzed them repeatedly, [16] and they don't have documentation

LG Philips LCD Co., LTD v.
Tatung Company, et al.
Case 1:05-cv-00292-JJF   Document 488-2   Filed 12/21/2006   Page 4 of 7
Hearing
April 25, 2006

and still being [21] produced out of LPL in the California action and [22] CFT has had almost no damages discovery against [23] LPL and that's one of the primary reasons that [24] the trial date was delayed.

Page 68

[1] THE COURT: And what do you on a [2] scale of one to ten, one being the least [3] connected, ten being the most connected, would [4] you rate the California case to this case.

[5] MR. BONO: It's hard for me to [6] say, Your Honor. Certainly the sales [7] information that CPT produced in that case are [8] relevant to this matter. The discovery on CPT's [9] distribution network is relevant to this matter [10] because it really fundamentally talking about [11] the same LCD modules, obviously the California [12] case deals with different patents than this [13] case, but as far as the modules, the general [14] modules that we're talking about, they do [15] overlap so the sales information is related.

[16] As far as the —

[17] THE COURT: So it's four or so?

[18] MR. BONO: Yes, Your Honor, four [19] or five.

[20] THE COURT: Would that be your [21] view, also?

[22] MS. GABLER: I would say ten, Your [23] Honor.

[24] THE COURT: Ten.

Page 69

[1] And those cases are '02 and '03 [2] cases, and are they all consolidated for trial [3] in October?

[4] MS. GABLER: No, Your Honor.

[5] THE COURT: Which case is going to [6] trial with Judge Marshal in October?

[7] MS. GABLER: The lead case against [8] CPT and Tatung is going to trial October 3rd.

[9] THE COURT: Is that the '02 case.

[10] MS. GABLER: That's the '02 case, [11] yes, Your Honor. And then the customer cases [12] were consolidated with that main case for [13] purposes of discovery but not for trial. But [14] those cases are also pending before Judge [15] Marshal so we do expect her to tee those up [16] fairly quickly after having a resolution in the [17] main case since the discovery was basically [18] completed in terms of the customers also, so it [19] wasn't that the discovery was trailing.

[20] THE COURT: But Judge Marshal is [21] intending to try the '02 case in October of 2006 [22] now?

[23] MS. GABLER: October 3rd, yes, [24] Your Honor.

Page 70

[1] THE COURT: Okay. I'm going to [2] recess and come back and give you my answers.

[3] MR. BONO: Can we correct one [4] thing?

[5] THE COURT: Yes.

[6] MR. BONO: Counsel was incorrect [7] on that was the reason for the postponement.

[8] THE COURT: Don't worry, whatever [9] the reason was it's an '02 case going to trial [10] in 2006 in a district with a three, four or five [11] on a plaintiff's summation and a ten on the [12] defendants, it's like when I was out there last [13] June I heard how many cases go to trial in other [14] districts, I like to fall out of my chair.

[15] We will be in recess.

[16] (A brief recess was taken.)

[17] THE COURT: All right. Be seated, [18] please. Okay. Here is how we're going to [19] proceed. Each side will designate one lawyer [20] and one lawyer only to deal with the ongoing [21] issues in this litigation.

[22] The first issue that we're going [23] to deal with presented by the parties is the [24] '121 patent. And I'm going to order that

Page 71

[1] counsel for the plaintiff make a determination [2] whether or not they want to pursue infringement [3] claims under that patent by Monday, May 1. You [4] can drop the patent from the case.

[5] If I maintain the infringement [6] claims under that patent, then I'm going to [7] allow the defendants to have discovery against [8] that patent on the issue of an on-sale bar [9] through May 12th of 2006. That discovery can [10] include document production from the subsidiary [11] of plaintiff as well as three 30(b)(6) [12] depositions of the plaintiff and one deposition [13] of counsel that prosecute the patent, [14] understanding that they're from the firm [15] involved in this litigation.

[16] If there is any additional [17] discovery to be taken, it will be discussed [18] after that discovery is complete, it will be [19] discussed at a discovery conference scheduled [20] for May 15th at 9:30 a.m. here in the courtroom.

[21] With regard to the damages [22] discovery, we're going to allow commencement of [23] that discovery immediately. Any issues [24] concerning that discovery, plaintiffs shall

Page 72

[1] provide by Wednesday, May the 3rd, and defendant [2] can provide any issues it has, this is a written [3] submission, and respond to plaintiff's [4] submission on Monday, May the 8th.

[5] With regard to the plaintiff's [6] pending request as presented this morning and in [7] papers filed yesterday, I'm going to take that [8] up in a written order that will be entered by [9] the end of this week. There is going to be some [10] relief granted on that request and I'm just [11] going to take a look at the, a more detailed [12] look at the California dockets and take a look [13] at the papers submitted from the California case [14] and then I'll enter my order on that request.

[15] With regard to the enlargement of [16] discovery as requested by defendant, I'm going [17] to take that under advisement until the [18] completion of the discovery on the '121 on-sale [19] bar defense on May 12th.

[20] The parties should continue to [21] understand the trial in this matter is going to [22] commence on July 17th, 2006, and that all the [23] other dates that have been targeted by both [24] parties to some extent more so by defendants

Page 73

[1] including the — I don't think there is any [2] significance in the reconsideration motion, I'm [3] just holding that, and I'll certainly hold it [4] now until we get to May 12th.

[5] With regard to the claim [6] construction, depending on the resolution of the [7] '121 patent, we'll enter the claim construction [8] on whatever terms remain from the thirteen in [9] very expeditious fashion. I don't think it's [10] going to have that much of an impact on the case [11] in any event, it may have some.

[12] And we'll get the — the parties [13] should be anticipating that expert reports, [14] which is a date that was targeted, are initiated [15] and completed probably at this time again [16] waiting to find out about the '121 patent, [17] Friday, June 16th, with depositions to occur the [18] week of the 19th and the 26th of June.

[19] And for present purposes, that [20] covers I think the decisions that I want to make [21] at this time. The protective order issue, I'm [22] sorry, the protective order issue, counsel can [23] be in contact with the other courts and if there [24] is any desire to move other than the Central

Page 74

[1] District of California case materials here, that [2] should be presented also by May 5th, Friday, May [3] 5th, 2006, so I'll have some understanding of [4] what's being moved into this case. And again, I [5] don't see a problem with that unless it's [6] abused, and hopefully that order

EXHIBIT B

*LG Philips LCD Co., LTD   v.*
*Tatung Company, et al.*

---

*Hearing*
*November 16, 2005*

---

*Hawkins Reporting Service*
*715 N King Street*
*Suite 3*
*Wilmington, DE   United States of America   19801*
*(302) 658-6697*

*Original File 11PHIL~1.TXT, 47 Pages*
*Min-U-Script® File ID: 2713535128*

**Word Index included with this Min-U-Script®**

may not be selling it.

[9] THE COURT: Let's assume they're [10] not selling it but they're selling five other [11] models that are infringing but your preliminary [12] injunction doesn't address those other five.

[13] MR. BONO: I assume that after the [14] papers are submitted we have to address this [15] issue with the Court and whether we have to —

[16] THE COURT: Then you're wasting my [17] time.

[18] MR. BONO: To our knowledge these [19] models are still being sold, Your Honor. We've [20] looked at it yesterday and we determined that [21] the models are still being sold.

[22] THE COURT: But you understand that [23] you can only have an application that's [24] directed at not a moving target but a

Page 22

[1] stationary target. The target you've chosen [2] are two models, one each from the defendants?

[3] MR. BONO: Yes, Your Honor. One [4] from Tatung and one Viewsonic, yes, which both [5] contain a CPT module, yes, Your Honor. And to [6] our knowledge —

[7] THE COURT: That's all you're [8] litigating in the preliminary injunction [9] application?

[10] MR. BONO: Yes, Your Honor. [11] Without having any further information, yes.

[12] THE COURT: So you're saying [13] without further information then you don't [14] really have the need for preliminary [15] injunction.

[16] MR. BONO: No, Your Honor. To our [17] knowledge those products are still being sold [18] in the US market, yes.

[19] THE COURT: Well, let's assume that [20] they're selling those two and let's assume [21] they're selling ten other models. Your [22] application is only directed to two. The other [23] ten won't be subject to any order of the court, [24] so what have you gained? Unless you're trying

Page 23

[1] to develop an immediacy in your litigation, [2] then you should be asking for something else. [3] But if it's not going to foreclose them from [4] infringing of your patent claims, what do you [5] gain? That's what I don't understand.

[6] MR. BONO: Your Honor, I don't have [7] sufficient information as to their other models [8] to address that question of the Court. We [9] don't have it at this point. Whether they have [10] other models will infringe or not, I don't [11] know.

[12] THE COURT: If I were them, I [13] wouldn't tell you about them in the context of [14] the preliminary injunction application either. [15] I would understand if I was on the other side [16] of you that all you asked for are these two [17] models to be enjoined.

[18] MR. BONO: I understand, Your [19] Honor.

[20] THE COURT: And save all the rest [21] for later.

[22] MR. BONO: For another day.

[23] THE COURT: That's what later is, [24] another day.

Page 24

[1] MR. BONO: Yes, Your Honor.

[2] THE COURT: Tell me this, I know [3] you're frustrated because I read your papers, [4] that you think they engaged in delay on the [5] other side of the case and you think that they [6] are doing that repeatedly in the central [7] district in California and the way they handled [8] the service delay here and in other ways.

[9] And so when you sat down, is that [10] what made you think that a preliminary [11] injunction would be a good idea? Because is it [12] the delay frustration that they're still out [13] there selling and you're not able to get them [14] into a final decision? Because there are other [15] recommendations if that's what you're trying [16] to convince me of.

[17] MR. BONO: No, that was not part of [18] our thinking as far as seeking the preliminary [19] injunction. But as far as our opposition to [20] their claim for the extension and for [21] deposition discovery, yes, that's part of my [22] thinking because I know their game plan.

[23] And I can guarantee to this court [24] as sure as we're sitting here this afternoon,

Page 25

[1] that if you grant them deposition discovery, [2] the preliminary injunction motion will be here [3] next June and it may still not be ready for the [4] Court's decision. Because in terms of [5] scheduling, because I know they'll want to [6] schedule Mr. Bohanan's deposition and we have [7] to work to do that and there will be delays on [8] that. And then when they put in their expert, [9] I'll have to run him around to try to get a [10] time when they are available to produce him. [11] There will be further delays. And every time [12] they put in a declarant. And it will be six [13] months from now and they still will not have [14] filed their opposition to this PI motion.

[15] Because I can guarantee you that [16] something will happen and they'll file another [17] application to this Court because they've had a [18] track record of doing it time and time again. They [19] do it in every case we've had against them. [20] And it's their modus operandi.

[21] And so my concern is I understand [22] the Court wants to make sure that there's an [23] adequate record on the preliminary injunction [24] motion and I understand that. And the Court

Page 26

[1] want to five them adequate time to develop the [2] defenses they've laid out for the Court. And [3] I'm willing to give them the document they've [4] requested in a reasonable time. We can produce [5] that in two weeks.

[6] THE COURT: Do you want discovery [7] against all the products they sell?

[8] MR. BONO: Your Honor, if they're [9] going to claim that these two products are no [10] longer being sold but they're being sold under [11] a different — but the real situation is [12] they're now being sold under a new product [13] number, a new model number, but it's really [14] essentially the same product, I think that [15] would be an inappropriate defense for this [16] preliminary injunction motion on their part [17] because they're real playing fast and loose [18] with what the point here is.

[19] The point here is we bought these [20] products that were being sold here in Delaware [21] right before we filed this lawsuit and they're [22] available in the market. Now they come in and [23] say, you know, we changed the model number on [24] these products so we're not selling these

Page 27

[1] anymore. Now we're selling the X5s. And low [2] and behold, I can virtually guarantee to the [3] Court that these other products that they're [4] now making have this tape carrier package with [5] the dummy package in it because that's the way [6] things are done now to remove this problem with [7] the brightness variation.

[8] And so what they're basically doing [9] is they changed the package of their product, [10] they put a little bit different model number, [11] maybe they moved the name "Viewsonic" from the [12] left side to right side, they put a little [13] different color gray on the way they package it [14] and say this is our new product so we no longer [15] sell the one you're seeking an injunction [16] against.

[17] I think that's inappropriate [18] because if essentially what's in their product [19] is the same thing, I think that it would be [20] fair for us, just like they want information [21] from us, that we be entitled to have the [22] information on their other products that [23] contain the tape carrier package and the dummy [24]