IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LG. PHILIPS LCD CO., LTD., | ) |
| | ) |
| Plaintiff, | ) C.A. No. 05-292 (JJF) |
| | ) |
| v. | ) **DEMAND FOR JURY TRIAL** |
| | ) |
| TATUNG COMPANY; | ) |
| TATUNG COMPANY OF AMERICA, INC.; | ) **REDACTED - PUBLIC VERSION** |
| CHUNGHWA PICTURE TUBES, LTD.; | ) |
| AND VIEWSONIC CORPORATION, | ) |
| | ) |
| Defendants. | ) |

**APPENDIX OF TRIAL TRANSCRIPT EXCERPTS CITED IN DEFENDANTS'
REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR NEW
TRIAL OR REMITTITUR ON THE JURY'S DAMAGES VERDICT**

OF COUNSEL:

Teresa M. Corbin
Glenn W. Rhodes
Howrey LLP
525 Market Street, Suite 3600
San Francisco, California 94105
(415) 848-4900

Julie S. Gabler
Howrey LLP
550 South Hope Street, Suite 1100
Los Angeles, California 90071
(213) 892-1800

Robert W. Whetzel (#2288)
whetzel@rlf.com
Steven J. Fineman (#4025)
fineman@rlf.com
Matthew W. King (#4566)
king@rlf.com
Richards, Layton & Finger
One Rodney Square, P.O. Box 551
Wilmington, DE 19899
(302) 651-7700
Attorneys for Defendants/Counterclaimants
Tatung Company, Tatung Company of
America, Chunghwa Picture Tubes, Ltd, and
Viewsonic Corporation

Dated: November 1, 2006

*LG Philips LCD Co., LTD   v.*
*Tatung Company, et al.*

*Trial Volume 1*
*July 17, 2006*

*Hawkins Reporting Service*
*715 N King Street*
*Suite 3*
*Wilmington, DE  19801*
*(302) 658-6697*

Original File 71706L-1.TXT, 289 Pages
Min-U-Script® File ID. 1774722659

**Word Index included with this Min-U-Script®**

Page 25

[1] MS. GABLER: Some of them predate
[2] the filing of this lawsuit for that matter.
[3] MR. BONO: May I explain, Your
[4] Honor?
[5] THE COURT: Yes.
[6] MR. BONO: This came up, these are
[7] of CPT financial results as I explained, they
[8] did come directly from their website and the
[9] circumstances of this was our damages expert
[10] referred to these websites with public documents
[11] in his report, and they asked us to produce the
[12] sites, website information that he had looked at
[13] and not just make general statements, so in
[14] response to their request we produced those
[15] documents, but these are all CPT produced
[16] documents.
[17] I know of no article published by
[18] third parties, these are all their own reported
[19] financial results, that's why their letter —
[20] THE COURT: If they're all in that
[21] category, I'll overrule the objection and find
[22] there is no prejudice.
[23] MS. GABLER: Your Honor, the final
[24] category on late produced documents are the

Page 26

[1] photographs that they marked as Plaintiffs 28
[2] through 31, and these are photographs that
[3] apparently plaintiffs took of some of CPT's
[4] products, but those were never produced in the
[5] case either in conjunction with expert reports,
[6] prior expert depositions or in any manner. We
[7] became aware of them for the first time at 5:30
[8] on Saturday evening in the first draft of their
[9] exhibit list.
[10] MR. BONO: Your Honor, these are
[11] as you recall in this case, Your Honor ordered
[12] CPT to produce actual modules and I believe that
[13] they produced about thirty to thirty-five actual
[14] modules in discovery, and these are for purposes
[15] of presentation to the jury, you can't take
[16] apart every module given the time constraints.
[17] And so we took photos of the actual modules that
[18] CPT produced in discovery, and these are very
[19] narrowly tailored to the specific products that
[20] are going to be talked about by our expert.
[21] That's what that is.
[22] THE COURT: And the photo, you
[23] represented that the photo has no modification
[24] to the actual — to the product that's produced?

Page 27

[1] MR. BONO: Yes, Your Honor.
[2] There's no modification whatsoever.
[3] MS. GABLER: Your Honor, if LG
[4] Philips wants to use some of these items as
[5] demonstratives, I don't think we have
[6] necessarily the same kind of objection to that.
[7] But the idea that they're submitting them as
[8] evidence that was never disclosed, and certainly
[9] wasn't disclosed in advance of expert reports,
[10] or expert depositions, we have a problem with
[11] having that on the exhibit list as something
[12] that then could go back to the jury room.
[13] THE COURT: Well, as I understand
[14] it, they're using those as demonstratives. So,
[15] and you actually have the product?
[16] MR. BONO: Oh, yes. We produced
[17] the actual product.
[18] THE COURT: I'll overrule the
[19] objection. You can use the picture for the
[20] jury's ease in understanding.
[21] MR. BONO: Thank you.
[22] THE COURT: All right.
[23] MS. GABLER: Okay. And then I
[24] have a couple other —

Page 28

[1] THE COURT: What else do you have,
[2] because we've got to get the jury up here.
[3] MS. GABLER: In relation to the
[4] number of exhibits, Mr. Bono, came up here and
[5] said —
[6] THE COURT: Well, here's what I'm
[7] going to do about the number of exhibits.
[8] Because how do I know?
[9] What I'll do is if the exhibit
[10] list is crafted as Mr. Bono says, and for
[11] instance, Exhibit 20 is a book or a technical
[12] document, not a compilation of technical
[13] documents, your objection is going to be
[14] overruled.
[15] If I find out during the course of
[16] the trial that there has been stuffing of
[17] individual exhibits, in other words, the
[18] marshaling of numerous exhibits into one exhibit
[19] number, then I'll either deal with it at trial,
[20] or it could be the cause of a mistrial after the
[21] verdict on a post-trial application.
[22] But what I'm going to do, I'm
[23] going to accept his representation, caution him
[24] that it's not to be a stuffing exercise, that

Case 1:05-cv-00292-JJF    Document 489    Filed 12/21/2006    Page 4 of 16

Trial Volume 1                                              LG Philips LCD Co., LTD  v.
July 17, 2006                                               Tatung Company, et al.

### Page 29

[1] they should truly be an exhibit numbered as one
[2] exhibit. As you would number a book, you would
[3] number all 300 pages of the book.
[4]     If it turns out to be different
[5] than that, then there will be a sanction.
[6]     MS. GABLER: Your Honor, I can
[7] represent to you that the numbers I read into
[8] the record that are just above point four in the
[9] letter on Page 4, each and every one of those is
[10] not a situation where they have numbered a
[11] document that goes together or like your example
[12] like a book.
[13]     That is not the case —
[14]     THE COURT: Well, we'll see.
[15]     MS. GABLER: — in any of those.
[16] But we are concerned, Your Honor, that if they
[17] then can pick and choose among what is now 400,
[18] more than 400 exhibits, that that is presenting
[19] us a problem, also.
[20]     THE COURT: Well, if you're
[21] correct and it's truly 400 individual exhibits
[22] that have been randomly compiled to make it fit
[23] within the 150 exhibits list, —
[24]     MS. GABLER: Right.

### Page 30

[1]     THE COURT: — and if you get an
[2] adverse verdict, you're probably going to get a
[3] new trial. If they're foolish enough to do
[4] that.
[5]     But I'm not going to play with
[6] that this morning of commencement of the trial.
[7] And I put them on notice.
[8]     If that's what's going on, if
[9] they're successful and prevail in trial, there
[10] will be a new trial. It's that simple.
[11]     Mr. Bono, you'll be careful with
[12] that list and make sure it's not as your friends
[13] on the other side describe it.
[14]     MR. BONO: Thank you, Your Honor.
[15] The list is as I've described it to the Court.
[16] We have properly compiled the composite
[17] exhibits.
[18]     THE COURT: The only question is
[19] when do you start using it?
[20]     MS. GABLER: It's the composite
[21] exhibits. So, for example, there are some where
[22] there are 69 separate exhibits for 69 separate
[23] products in one exhibit. And it's our position
[24] that those are 69 exhibits, not one exhibit.

### Page 31

[1]     THE COURT: I understand.
[2]     MS. GABLER: Right.
[3]     THE COURT: All right. Anything
[4] else?
[5]     MS. GABLER: Yes. We have a
[6] couple other points of clarification.
[7]     First, LPL has provided the
[8] witness list as they were required to do on the
[9] 15th, and ours will be coming in to Your Honor
[10] on time by 5:00 p.m. tonight. We wanted to
[11] clarify.
[12]     Your Honor, at the pretrial, had
[13] talked about the fact that you couldn't call
[14] witnesses out of order, and we just want to
[15] clarify that if someone is listed on the list,
[16] they do actually have to be called; correct?
[17]     THE COURT: If — I'm not
[18] understanding your question.
[19]     MS. GABLER: Okay. They have
[20] listed out a number of witnesses on their list.
[21] So when we are putting in our list today, if
[22] they have somebody on their list that we want to
[23] conduct cross-examination on, for example that
[24] they're calling live, in reliance on the fact

### Page 32

[1] that they have listed them on their list, we are
[2] not going to include —
[3]     THE COURT: I've already discussed
[4] this. Don't you remember my whole example that
[5] you've got to go one, two, three, four, five?
[6] You can't skip.
[7]     And if you run out of time, you
[8] run out of time at the end of the list. So
[9] that's how you prioritize your witnesses and all
[10] that.
[11]     Now, you may not see the last five
[12] because they may run out of time. I don't know,
[13] but I thought I clarified that already.
[14]     MS. GABLER: Okay. That was — I
[15] appreciate the clarification. And in terms of
[16] witnesses that are appearing by video, if their
[17] depositions are designated, you have to play the
[18] entire designation; right, whatever has been
[19] disclosed?
[20]     THE COURT: Tell me why you
[21] wouldn't.
[22]     MS. GABLER: We would not plan to.
[23] This, again, just goes to how we prepare our
[24] witness list.

Page 33

[1] In some instances, they have
[2] designated many hours of video testimony. So we
[3] just want to make sure that if they're playing
[4] that, if we counter — if the deposition
[5] designation is witness number four, and it has
[6] 27 hours of designation, I guess we're going to
[7] hear 27 hours of witness four. We won't get to
[8] any other witnesses.
[9]     MS. GABLER: Okay. Thank you.
[10] The final points this morning,
[11] we're not sure if LPL has a jury consultant with
[12] them today, but we do have one. And we didn't
[13] know whether or not Your Honor had any objection
[14] to the jury consultant sitting at counsel's
[15] table during jury selection.
[16]     THE COURT: No. You can do that.
[17]     MS. GABLER: And we would like
[18] Your Honor to rule that no mention of the
[19] presence of jury consultants, either ours or
[20] theirs, if they have one, can be made in front
[21] of the jury.
[22]     THE COURT: Why would anybody do
[23] that?
[24]     MS. GABLER: Just making sure.

Page 34

[1]     THE COURT: Okay. The jury can
[2] come to side-bar when we do the individual voir
[3] dire, so they can hear that. You have a jury
[4] consultant.
[5]     MR. BONO: No, Your Honor, not
[6] here today.
[7]     THE COURT: You're not going to
[8] talk about theirs, are you?
[9]     MR. BONO: No, Your Honor. I
[10] didn't know about it.
[11]     THE COURT: I'm not going to talk
[12] about it, either.
[13]     MS. GABLER: Okay. In the event
[14] that LPL tries to admit during the trial through
[15] a witness one of these stuffed exhibits, what
[16] objection would you like us to be making at the
[17] time that's happening to preserve the mistrial
[18] issue.
[19]     THE COURT: Well, on the issue of
[20] stuffing, you have a continuing objection. So
[21] there's no need to have to stand up and
[22] implicate yourself each time in front of the
[23] jury.
[24]     MS. GABLER: Okay.

Page 35

[1]     THE COURT: You have a continuing
[2] stuffing objection. You don't have to do
[3] anything about it.
[4]     It's going to come in at their
[5] peril if they are, in fact, stuffing.
[6]     MS. GABLER: Okay.
[7]     THE COURT: I think that's on the
[8] record. You have that objection.
[9]     MS. GABLER: Great. I think
[10] that's my new favorite objection. Thank you.
[11]     THE COURT: You're welcome. All
[12] right. Yes.
[13]     MR. BONO: I just have one issue,
[14] Your Honor.
[15]     THE COURT: Sure.
[16]     MR. BONO: We informed the Court
[17] on Friday in light of the trial management, that
[18] order, that we had withdrawn certain claims in
[19] the case and narrowed the case to Claims 1 and 8
[20] of the '002 patent, and we have served on the
[21] other side a covenant not to sue as to the other
[22] claims. And I noticed in some of their opening
[23] statement demonstratives like there was mention
[24] of other claims other than Claim 1 and 8.

Page 36

[1]     And it's our position that there's
[2] no judicial claim before this Court.
[3]     THE COURT: If you're only trying
[4] 1 and 8, that's all they're going to talk about
[5] is 1 and 8.
[6]     MS. CORBIN: Your Honor, can I
[7] address this?
[8]     THE COURT: Are you going to use
[9] something other than Claim 1 and 8?
[10]     MS. CORBIN: Yes, Your Honor,
[11] because obviousness is an important issue in
[12] this case. And there are claims in this patent
[13] that are directed to inner claims alone, inner
[14] rings alone, outer rings alone. And then the
[15] combination of those rings.
[16]     And, for example, one of those
[17] claims, Claim 10, which was an independent claim
[18] that was an inner ring claim only has been
[19] admitted by their expert to be completely
[20] anticipated.
[21]     THE COURT: Well, I don't think
[22] Mr. Bono is arguing that in the presentation of
[23] invalidity claims, that you can't attack the
[24] claims of the patent. That's not what you are

*LG Philips LCD Co., LTD   v.*
*Tatung Company, et al.*

---

*Trial Volume 2*
*July 18, 2006*

---

*Hawkins Reporting Service*
*715 N King Street*
*Suite 3*
*Wilmington, DE   19801*
*(302) 658-6697*

Original File 71806P-1.TXT, 285 Pages
Min-U-Script® File ID: 1730991655

**Word Index included with this Min-U-Script®**

# REDACTED
# PAGES 539 - 544

*LG Philips LCD Co., LTD   v.*
*Tatung Company, et al.*

*Trial Volume 3*
*July 19, 2006*

*Hawkins Reporting Service*
*715 N King Street*
*Suite 3*
*Wilmington, DE  19801*
*(302) 658-6697*

Original File 71906P~1.TXT, 167 Pages
Min-U-Script® File ID: 1541627046

**Word Index included with this Min-U-Script®**

Page 575

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LG PHILIPS LCD CO., LTD.,  ) Volume 3
    Plaintiff,             ) C.A. No. 05-292-JJF
v.                         )
TATUNG COMPANY, TATUNG     )
COMPANY OF AMERICA, INC., )
CHUNGHWA PICTURE TUBES    )
LTD., and VIEWSONIC       )
CORPORATION,              )
    Defendants.           )

Wednesday, July 19, 2006
9:35 a.m.
Courtroom 4B
844 King Street
Wilmington, Delaware

BEFORE: THE HONORABLE JOSEPH J. FARNAN, JR.
United States District Court Judge

APPEARANCES:
    THE BAYARD FIRM
    BY: RICHARD D. KIRK, ESQ.
        -and-
    McKENNA, LONG & ALDRIDGE, LLP
    BY: GASPARE J. BONO, ESQ.
    BY: CASS W. CHRISTENSON, ESQ.
    BY: ADRIAN P.J. MOLLO, ESQ.
    BY: LORA BRZEZYNSKI, ESQ.
    BY: TYLER GOODWYN, ESQ.
        Counsel for the Plaintiff

Page 576

APPEARANCES CONTINUED:
    RICHARDS, LAYTON & FINGER
    BY: ROBERT W. WHETZEL, ESQ.
        -and-
    HOWREY LLP
    BY: GLENN W. RHODES, ESQ.
    BY: TERESA M. CORBIN, ESQ.
    BY: JULIE S. GABLER, ESQ.
    BY: STEVEN YOVITS, ESQ.
    BY: HEATHER H. FAN, ESQ.
    BY: SUZANNE B. DRENNON, ESQ.
        Counsel for the Defendants

Page 577

[1] THE CLERK: All rise.

[2] THE COURT: All right. Good [3] morning.

[4] Bring the jury in.

[5] (Jury entering the courtroom at [6] 9:35 a.m.)

[7] THE COURT: All right. Be seated, [8] please.

[9] Good morning.

[10] THE JURY: Good morning.

[11] THE COURT: We're ready to [12] continue on with the plaintiff's case. You will [13] notice we got the temperature a little bit [14] adjusted, so hopefully it's a little bit better [15] today.

[16] Mr. Bono.

[17] MR. BONO: Your Honor, before we [18] call our next witness, I'd like to to move in [19] evidence Plaintiff's Exhibit 127 and 130.

[20] THE COURT: All right. They'll be [21] admitted subject to any objections.

[22] MR. BONO: All right. We would [23] now like to present the testimony of Vincent Liu [24] by deposition. And can I explain to the jury

Page 578

[1] who this witness is?

[2] THE COURT: Yes, you may.

[3] MR. BONO: We're going to show you [4] now the deposition of Chunghwa [5] Picture Tubes, [5] who designated Mr. [6] Vincent Liu to testify on its [6] behalf on the subjects of manufacturing and use [7] of guard rings.

[8] (Beginning of videotape excerpt:)

[9] Q: Have you gone by any other names [10] except Vincent?

[11] A: Where have I used the name? In [12] Taiwan?

[13] Q: Anywhere in the world.

[14] A: My nickname called Wenne. That's [15] in Taiwanese.

[16] Q: Have you ever been deposed in this [17] case before?

[18] A: No.

[19] Q: Have you ever been deposed at any [20] time before?

[21] A: No.

[22] Q: Do you think that — do you think [23] that the use of two guard rings would increase [24] the yield rate by more than three percent?

Page 579

[1] A: 3 percent? I don't know.

[2] Q: Good morning, Mr. Liu. [3] Could you please state your full [4] name for the record, your full name in Chinese?

[5] A: Liu Wen Hsiung.

[6] Q: So without the outer guard ring, [7] there's extra cost in manufacturing TFT arrays [8] due to damage by ESD?

[9] A: Yes.

[10] Q: So when did they decide to add the [11] outer guard ring — I'm sorry. When did they [12] decide to add the inner guard ring?

[13] A: That was in 2002.

[14] Q: And in the man — manufacturing [15] process, the array large substrate will be [16] bonded to a color filter large substrate; is [17] that correct?

[18] A: Yes.

[19] Q: After they're bonded together, if [20] we're looking at this particular example, it [21] would be cut, and this particular example would [22] result in six cut panels; is that correct?

[23] A: Yes.

[24] Q: The — each of the six cut panels

Page 580

[1] after they have been cut from the large [2] substrate still includes an outer guard ring; is [3] that correct?

[4] A: After the cut outer guard ring [5] still exists.

[6] Q: So we're calling that the panel [7] after it's been cut but prior to grinding of [8] edges and shaping of corner?

[9] A: Yes.

[10] Q: Now, for the products that you [11] have no personal knowledge of, where would the [12] best place be for you to go to find whether each [13] of those other products has or had an outer [14] guard ring prior to grinding the edges and [15] shaping the corners?

[16] A: You can tell from the mask file.

[17] Q: So the best source for finding [18] whether a product has an inner guard ring is the [19] mask file?

[20] A: Yes.

[21] Q: The best source for finding [22] whether a product has the outer guard ring is [23] the mask file?

[24] A: Yes.

Page 581

[1] Q: Can you tell me, based on your [2] personal knowledge and based on the modules that [3] you know of, did the modules which — which had [4] two guard rings ever have predecessors that only [5] had one guard ring?

[6] A: According to my knowledge, all of [7] these products were later designed.

[8] Q: Later than what?

[9] A: In the recent two years.

[10] Q: So products — when you say [11] "recent two years," are you saying from 2004 [12] onward?

[13] A: Yes.

[14] Q: Could it have been earlier?

[15] A: Possibly.

[16] Q: How much earlier?

[17] A: Wouldn't be earlier than 2002.

[18] Q: Do you know if — do you know [19] whether any of the products at the T1 fab before [20] 2002 used only an outer guard ring?

[21] A: 15 inch.

[22] Q: And the inner guard ring was added [23] to the outer guard ring to provide extra [24] protection from ESD damage; is that correct?

Page 582

[1] A: Yes.

[2] Q: And we previously said that the [3] manufacturing costs would go up if guard rings [4] were not used. Am I correctly making that [5] statement?

[6] A: Yes.

[7] Q: Does CPT track the manufacturing [8] yield rate of each of its products?

[9] A: Yes.

[10] Q: In considering whether to add one [11] or two guard rings to a product, does CPT [12] consider the effect on yield — on manufacturing [13] yield?

[14] A: Yes.

[15] Q: And would the yield rate increase [16] by using an inner ESD guard ring?
[17] A: To compare to what when you say [18] "increase"?
[19] Q: Let's say no guard ring.
[20] A: Yes.
[21] Q: And would the field rate increase [22] if two guard rings were used?
[23] A: Should be.
[24] Q: Can you estimate how much would

Page 583

[1] the increase be?
[2] A: Cannot.
[3] Q: Is there any way that CPT could [4] tell what the increase in yield rate would be [5] from the use of guard rings?
[6] A: To my personal knowledge, I do not [7] know, but for sure it would increase.
[8] Q: Even though CPT knows that there [9] would be an increase in the yield rate from the [10] use of the guard ring, CPT doesn't know the [11] exact rate of the increase; is that correct.
[12] A: It can be put that way.
[13] Q: Can you describe the grinding [14] process to me.
[15] A: Grinding at the edges and shaping [16] at the corners there's a machine to remove the [17] outer short ring — oh, using the whetstone.
[18] Q: Is the entire outer guard ring [19] removed?
[20] A: Yes.
[21] Q: What would happen — well, is [22] there an inspection to determine whether the [23] entire outer guard ring has been removed?
[24] A: Yes.

Page 584

[1] Q: And what would happen if the [2] inspection revealed that a portion of the outer [3] guard ring remained?
[4] A: To regrind it.
[5] (End of videotape testimony.)
[6] MR. BONO: Your Honor, plaintiff [7] would now like to call Mr. Ho Lee as its next [8] witness. I'll get Mr. Lee.
[9] THE CLERK: Please state and spell [10] your full name for the record.
[11] THE WITNESS: My name is Ho Lee. [12] H-O, L-E-E.
[14] HO LEE, [15] the deponent herein, having first [16] been duly affirmed on oath, was [17] examined and testified as follows:
[18] THE CLERK: Could I have the [19] interpreters stand up, please. Please state and [20] spell your full names for the record.

[21] THE INTERPRETER: Chol W. Kim, [22] C-H-O-L, W, K-I-M, certified court in-[23] terpreter.
[23] THE INTERPRETER: My name is Ann [24] Park, last name is spelled P-A-R-K. I'm also a

Page 585

[1] certified court interpreter.
[2] (Chol W. Kim and Ann Park were [3] both sworn by the clerk as court in-[4] terpreters.)
[4] MR. BONO: Your Honor, would you [5] like a set of the exhibit notebooks for Your [6] Honor's use?
[7] THE COURT: You can hand them to [8] my law clerk, please.
[9] DIRECT EXAMINATION.
[10] BY MR. BONO:
[11] Q: Mr. Lee, good morning. Would you [12] please introduce yourself to the members of the [13] jury.
[14] A: My name is Ho Lee. I started [15] working for LG Electronics in 1983. For eleven [16] years starting from 1983 until 1993, I have [17] worked as a LCD engineer.
[18] Q: Mr. Lee, let me ask you this [19] question at this point. By whom are you [20] presently employed?
[21] A: Presently I am working for LG [22] Electronics.
[23] Q: What is your current position?
[24] A: I am the manager of IP.

Page 586

[1] Q: And how long have you had that [2] position?
[3] A: From 2002 until now. From 2005 [4] until now.
[5] Q: Prior to the current position that [6] you hold, what was your previous position?
[7] A: From 1994 until 2004, I have [8] worked at LG Philips as an IP manager.
[9] Q: Let me correct it. Did you begin [10] your employment with LG Philips in 1999?
[11] A: I'm sorry, counsel. You are [12] correct. From '90 — 1994 until 1999, I was the [13] IP manager for LG Electronics.
[14] Q: And starting in 1999, did you [15] become employed with LG Philips?
[16] MR. RHODES: Objection; leading.
[17] THE COURT: Objection is [18] overruled.
[19] THE WITNESS: Yes. That is correct.
[20] We, that is, the LG Electronics, with Philips in [21] Netherlands established LG Philips in 1999. [22] That's when.
[23] So although this exactly same [24] work, the name was changed from LG

Electronics

Page 587

[1] to LG Philips in 1999.
[2] Q: Now, I'd like to talk a little bit [3] about LG Philips —
[4] THE INTERPRETER: If I may, [5] interpreter would like to correct the last [6] witness statement as it has been. It was [7] changed to LG Philips, LCD.
[9] BY MR. BONO:
[10] Q: Mr. Lee, I would like you to tell [11] the jury about what LG Philips produces and a [12] little bit about the company LG Philips?
[13] MR. RHODES: Objection. I think [14] this is cumulative evidence that was covered [15] yesterday, Your Honor.
[16] THE COURT: All right I'll [17] overrule the answer. You can ask the question.
[18] MR. BONO: Yes.
[19] THE WITNESS: As you can see here, [20] from 2002 until 2005, we have received customer [21] satisfaction award.
[22] Especially the Organization Code [23] Display Research is one of the most well-known [24] research organizations in LCD business. One of

Page 588

[1] the most fair organizations in LCD business.
[2] I'm meaning to say display [3] research. Display research.
[4] THE COURT: Mr. Bono, could I see [5] you for a minute?
[6] (Beginning of conference held at [7] side-bar.)
[8] THE COURT: This portion of the [9] trial is not sealed; correct?
[10] MR. BONO: Oh, I'm sorry. I [11] forgot to mention.
[12] We spoke this morning and none of [13] the testimony this morning is of a confidential [14] nature, so we agreed on that. I'm sorry I [15] didn't say that before.
[16] THE COURT: We just have some [17] people outside that want to come back in.
[18] MR. BONO: Oh, yes.
[19] MR. RHODES: No problem.
[20] MR. BONO: I forgot to mention it.
[21] THE COURT: No problem.
[22] MR. BONO: Thank you, Your Honor.
[23] (Conclusion of conference held at [24] side-bar.)

Page 589

[1] BY MR. BONO:
[2] Q: Has LG Philips received any [3] technology awards?
[4] A: Yes. If you could look at the [5]

[24] having a meeting with CPT in June of 2002;

Page 649

[1] correct?

[2] A: That's correct.

[3] Q: Incidentally, you speak English, [4] don't you?

[5] A: Yes, a little bit.

[6] Q: And you read English; right?

[7] A: Yes, to a little extent.

[8] Q: In fact, when you prepared with [9] Mr. Bono for your deposition, you spoke to him [10] in English; right?

[11] A: On certain occasions I did, and [12] other — and on other occasions I used the [13] interpreter.

[14] Q: Now, during that meeting in June, [15] 2002 with CPT, you were speaking English with [16] them; is that correct?

[17] A: That is correct.

[18] Q: Now, at that meeting in June of [19] 2002 with CPT, that was a general introduction, [20] not a deep technical discussion; right?

[21] A: Yes. However, we had already [22] prepared claim charts and since they were aware [23] of the technical — and since they were aware of [24] the problems since February, we have provide

Page 650

[1] them with enough technical information by that [2] time.

[3] Q: But you'll agree that CPT was not [4] prepared to have a technical meeting and [5] technical discussions with you; right?

[6] A: I thought that since they have had [7] six months period — excuse me, four months [8] period, I thought that they would have [9] understood our technology sufficiently.

[10] Q: Well, let me direct you to your [11] deposition testimony from July 3rd, 2006, again, [12] page 122, lines 1 to 6.

[13] "ANSWER: And another thing was [14] that this was the first meeting, so I don't [15] believe that CPT was prepared to have a [16] technical meeting with technical discussions. [17] So rather than having any deep technical [18] discussions, I believe that we gave a general [19] introduction."

[20] A: That's correct.

[21] Q: Could we put PTX 46 up on the [22] screen.

[23] Now, Mr. Lee, we talked about this [24] letter this morning; right?

Page 651

[1] A: Yes, that's true.

[2] Q: Now, if you look at PTX 46, if [3] you'll just read through that for a mom-ent, will [4] you please tell me where it says infringe or [5] infringement in that letter anywhere?

[6] A: Yes. In this letter we are simply [7] saying that we are willing to offer licenses for [8] all our technology.

[9] Q: In fact, in the second paragraph [10] it says as examples you may wish to review U.S. [11] patent numbers and it list eight patents; right?

[12] A: Yes, that's correct.

[13] Q: And if you look at the next [14] paragraph, it says, "Should your company wish to [15] discuss the above identified patents." Correct?

[16] A: That's correct.

[17] Q: And it says, "We will be happy to [18] visit your company on any one day between March [19] 14 and March 15." Right?

[20] A: That's correct.

[21] Q: And those were dates of your [22] choosing; correct?

[23] A: That's correct.

[24] Q: You didn't ask CPT for any

Page 652

[1] convenient dates for them; right?

[2] A: Yes, we didn't ask that, however, [3] we didn't hear the answer for this letter, [4] either.

[5] Q: You know what Chinese New Years [6] is, don't you?

[7] A: Yes, of course I do.

[8] Q: Now, can you put up PTX 142 for [9] me, please. And just put both letters on the [10] screen. And if you can enlarge PTX 142 a little [11] bit so we can read it.

[12] And I would like to refer your [13] attention to PTX 142 which is on the right-hand [14] side of the screen. And the first line it says, [15] "On February 8, we wrote to you and asked for a [16] meeting to discuss the unauthorized use of [17] technology owned by LG Philips LCD Company by [18] Chunghwa Picture Tubes."

[19] A: That's correct.

[20] Q: And that first sentence of that [21] letter is incorrect; right?

[22] A: Well, there may be a little bit of [23] difference of opinion regarding the expression [24] that is used, but I think largely the substance

Page 653

[1] is correct.

[2] Q: Well, let's look at the second [3] sentence of that paragraph. "In that letter, we [4] asked for a meeting to discuss the issue of [5] patent infringement with CPT."

[6] A: That's correct.

[7] Q: And that sentence isn't correct, [8] either, is it?

[9] A: Well, you may not say it is 100 [10] percent correct, but you say it's more or less [11] the same vein.

[12] MR. RHODES: And can you put — [13] Defendants' Exhibit 58, please?

[14] INTERPRETER PARK: If I may, if I [15] could make a correction to the last statement by [16] the witness.

[17] I wouldn't think that it is 100 [18] percent identical in meaning, but more or less, [19] I would think it is the same meaning.

[20] MR. RHODES: Put those back up.

[21] INTERPRETER KIM: I respectfully [22] disagree, but the Korean rendition is on the [23] record.

[24] BY MR. RHODES:

Page 654

[1] Q: The February 27th letter says, in [2] that letter, February 8th 2002, we asked for a [3] meeting to discuss this issue of patent [4] infringement with CPT.

[5] Which part of the February 8th [6] letter is identical to that sentence?

[7] A: Well, it may not be identical. It [8] is some softened out. And in large sense, I [9] think that's, more or less, the same substance [10] if you read, as example, you may wish to review.

[11] Q: Okay. So my understanding is that [12] may wish to review is identical with the issue [13] of patent infringement.

[14] That's your answer; is that [15] correct?

[16] A: Not true. It's not exactly [17] identical. However, in February 8th letter, we [18] asked him to reply by February 26th.

[19] If they had — if they had replied [20] by that time for that letter, then we would have [21] used different expression. Since they had not, [22] we sort of expended the expression to a stronger [23] connotation, because there was no reply.

[24] Although that was — the substance

Page 655

[1] was more or less the same, we made it stronger. [2] Since we have made it stronger.

[3] Q: Okay. And you've already said [4] that you know what Chinese New Year's is; right?

[5] A: That's correct.

[6] Q: Now, looking at both of those [7] letters, PTX 46 and PTX 142, neither one of [8] those letters identifies a single CPT product, [9] does it?

[10] A: True. However, on the February [11] 27th letter, we do mention unauthorized use of [12] technology. This refers to the general product [13] by CPT.

Case 1:05-cv-00292-JJF    Document 489    Filed 12/21/2006    Page 12 of 16
LG Philips LCD Co., LTD   v.
Tatung Company, et al.
Trial Volume 3
July 19, 2006

[14] Q: All right. But you will agree [15] that there's no specific CPT products identified [16] in either one of those letters; right?

[17] A: That's correct.

[18] Q: And there are no specific claims [19] of any of those patents set out in those [20] letters; right?

[21] A: That's correct.

[22] MR. RHODES: Go to Exhibit 58. [23] PTX 58.

[24] BY MR. RHODES:

Page 656

[1] Q: Now, this is a copy of the patent [2] license agreement draft proposal that you gave [3] to CPT at the June meeting; correct?

[4] A: That's correct.

[5] Q: And in that license agreement, you [6] were proposing a royalty rate of 2.5 percent; [7] right?

[8] A: That's correct.

[9] Q: And that was supposed to be a [10] licensing rate for the entire LPL portfolio [11] relating to LCDs; right?

[12] A: That's correct.

[13] Q: Now, when we were looking at the [14] February 8th letter earlier, PTX 46, did I [15] identify the patents that LPL wanted to license [16] to CPT?

[17] A: Which contract and which letter?

[18] Q: Well, let's go back. It's PTX 46. [19] Incidentally there was 447 or so [20] patents in LPL's portfolio at that time; isn't [21] that right?

[22] A: Yes, although I don't quite [23] remember the precise number. It sounds right.

[24] Q: I don't remember the precise

Page 657

[1] number, but it sounds right to me, too.

[2] Now, did you identify all the [3] patents in your portfolio in the February 8th [4] letter to CPT?

[5] A: Does the counsel mean this [6] particular letter?

[7] Q: Yes, this letter. Did you [8] identify it?

[9] A: No, just — we identified just [10] few.

[11] Q: All right. Let's go to PTX 142. [12] Now, did you provide CPT with the [13] list of the patent portfolio that you wanted [14] them to license in this — this letter?

[15] A: No, we did not.

[16] Q: And let's go to PTX 145. [17] And that is a March 26th, 2002 [18] letter to CPT. Now, again you didn't supply the [19] list of all the patents you wanted CPT to [20] license in this letter, either, did you?

[21] A: That's correct.

[22] Q: And let's go to PTX 146.

[23] A: However, they never required or [24] asked us for such information.

Page 658

[1] Q: And that's your testimony?

[2] A: That's my supplemental [3] explanation.

[4] Q: Okay. Let's go to PTX 146. [5] Now, you didn't supply the list of [6] patents in that letter, either, did you?

[7] A: That's correct.

[8] Q: And if we can go to DTX 120. Now, [9] we're up to May 17th, 2002.

[10] Did you supply the list of all the [11] 400-plus patents in this letter?

[12] A: We did not.

[13] Q: And if we can go to DTX 121. [14] Now, we're up to May 31st, 2002. [15] Did you supply the list of 400-plus patents to [16] CPT in this letter?

[17] A: We did not.

[18] Q: All right. Let's go to DTX 123. [19] Now we're up to July.

[20] Now, in this letter you state [21] that, We provided CPT our standard licenses [22] agreement during our June 11 meeting.

[23] Do you see that?

[24] A: Yes, I did.

Page 659

[1] Q: And you didn't supply the list of [2] 400-plus patents to CPT in this letter, either; [3] right?

[4] A: That's correct.

[5] Q: Then let's go to DTX 125. [6] Now, we're up to July 30th, 2002. [7] And the second paragraph, the last sentence, it [8] says a list of patents available for licensing [9] is attached to this letter.

[10] A: That's correct.

[11] Q: And if we go to Page 2 of that [12] exhibit. Is that a list of the LPL patents that [13] you wanted CPT to pay a 2.5-percent royalty for?

[14] A: That's correct.

[15] Q: And if we go to Page 2 of that [16] exhibit.

[17] And this is the last page of the [18] three-page document of DTX 124. And that's the [19] remainder of the patents that you wanted CPT to [20] license at that 2.5-percent royalty; correct?

[21] A: That's correct.

[22] Q: Okay. So starting in February of [23] 2002, when you first sent the letter to CPT, in [24] February, you didn't give them a list with all

Page 660

[1] the patents; correct?

[2] A: Correct.

[3] Q: And in March you didn't give them [4] a list, either; right?

[5] A: Correct.

[6] Q: Didn't give them one in April, [7] either; correct?

[8] A: Correct.

[9] Q: You didn't give them one in May?

[10] A: Correct.

[11] Q: And you gave them a proposed [12] license agreement in June; right?

[13] A: Correct.

[14] Q: And then on July 30th, you gave [15] them a list?

[16] A: Correct.

[17] MR. RHODES: Can we have DTX 124, [18] please?

[19] BY MR. RHODES:

[20] Q: Now, earlier you said they never [21] asked for one; correct?

[22] A: Yes. That's correct. [23] However, I meant in May.

[24] Q: Oh, I see. Now, if we look at

Page 661

[1] Paragraph 3 with respect to the license [2] agreement, We are concerned about the licensed [3] patents most. Thus, we need more information, [4] such as the Patent List, to estimate the value [5] of them.

[6] A: Yes. That's correct.

[7] Q: And they said, We need more [8] information and time for this matter. We would [9] like to extend the date you had stated on July [10] 5, 2002.

[11] Do you see that?

[12] A: That's correct.

[13] Q: And then on July 30th, you finally [14] gave them a list of 447 patents to analyze; [15] right?

[16] A: That's correct.

[17] Q: Now, if we could put DTX 48 up. [18] Actually don't put that up yet.

[19] Now, Mr. Lee, you gave them a list [20] at the end of July for a proposed licensing [21] agreement in 2002; correct?

[22] A: Correct.

[23] Q: And they asked for more time; [24] right?

Page 662

[1] A: Correct.

[2] Q: And that list was 447 odd patents; [3] right?

[4] A: Correct.

[5] Q: And less than a month later, you [6] sued CPT; right?

[7] A: Correct.

[8] Q: And you sued them in California; [9] right?

*LG Philips LCD Co., LTD   v.*
*Tatung Company, et al.*

*Trial Volume 5*
*July 21, 2006*

*Hawkins Reporting Service*
*715 N King Street*
*Suite 3*
*Wilmington, DE  19801*
*(302) 658-6697*

Original File 72106P~1.TXT, 253 Pages
Min-U-Script® File ID: 1464390088

**Word Index included with this Min-U-Script®**

REDACTED
PAGES 1100-2083

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 1, 2006, I electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send notification of such filing, and hand delivered to the following:

>  Richard D. Kirk
>  The Bayard Firm
>  222 Delaware Avenue, Suite 900
>  P.O. Box 25130
>  Wilmington, DE 19899

I hereby certify that on November 1, 2006, I sent the foregoing document by electronic mail, to the following non-registered participants:

>  Gaspare J. Bono
>  Matthew T. Bailey
>  Andrew J. Park
>  Adrian Mollo
>  McKenna Long & Aldridge LLP
>  1900 K Street, NW
>  Washington, DC 20006

>  Matthew W. King (#4566)
>  King@rlf.com
>  Richards, Layton & Finger
>  One Rodney Square
>  P.O. Box 551
>  Wilmington, DE 19899

RLF1-2917974-1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 21, 2006, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, which will send notification of such filing to, and also hand delivered same to:

>   Richard D. Kirk, Esquire
>   The Bayard Firm
>   222 Delaware Avenue, Suite 900
>   Wilmington, DE 19899

I HEREBY CERTIFY that on December 21, 2006, I caused the foregoing document to be served by Federal Express to the following non-registered participants:

>   Gaspare J. Bono, Esquire
>   McKenna Long & Aldrige LLP
>   1900 K Street, NW
>   Washington, DC 20006

>   /s/ Steven J. Fineman
>   Steven J. Fineman (#4025)
>   fineman@rlf.com
>   Richards, Layton & Finger
>   One Rodney Square
>   PO Box 551
>   Wilmington, DE 19899

RLF1-3030396-1