IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LG. PHILIPS LCD CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-292 (JJF) |
| | ) | |
| TATUNG COMPANY; | ) | **DEMAND FOR JURY TRIAL** |
| TATUNG COMPANY OF AMERICA, INC.; | ) | |
| CHUNGHWA PICTURE TUBES, LTD.; | ) | |
| AND VIEWSONIC CORPORATION, | ) | **REDACTED - PUBLIC VERSION** |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' BRIEF IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE A NEW TRIAL AND IN FURTHER SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ENTRY OF FINAL JUDGMENT, INCLUDING ENHANCED DAMAGES, ATTORNEYS' FEES AND EXPENSES, AND PRE-JUDGMENT INTEREST**

OF COUNSEL:
Teresa M. Corbin
Glenn W. Rhodes
Howrey LLP
525 Market Street, Suite 3600
San Francisco, CA 94105
(415) 848-4900

Julie S. Gabler
Howrey LLP
550 South Hope Street, Suite 1100
Los Angeles, CA 90071
(213) 892-1800

William D. Coston
Venable LLP
575 7th Street, NW
Washington, DC 20004
(202) 344-4813

Dated: September 18, 2007

Robert W. Whetzel (#2208)
whetzel@rlf.com
Steven J. Fineman (#4025)
fineman@rlf.com
Richards, Layton & Finger
One Rodney Square, P.O. Box 551
Wilmington, DE 19899
(302) 651-7700
Attorneys for Defendants/Counterclaimants
Tatung Company, Tatung Company of America,
Chunghwa Picture Tubes, Ltd., and ViewSonic
Corporation

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ...................................................................................................... 1

ARGUMENT ............................................................................................................. 2

I.  THIS COURT SHOULD GIVE FULL RETROACTIVE EFFECT TO THE FEDERAL CIRCUIT'S RULING ON WILLFUL INFRINGEMENT. ........................... 2

II.  DISCUSSION OF THE *SEAGATE* CASE ........................................................ 3

III. LPL'S WILLFULNESS CASE FAILS IN LIGHT OF *SEAGATE* ....................... 6

    A.  LPL'S Arguments For Willfulness Fail Under *Seagate's* Objectively Reckless Test. ........................................................................................ 10

        1.  LPL's First Basis For Willfulness Fails In Light Of *Seagate* -- Notice And Defendants' Failure To Determine Whether They Infringed The Patents. ................................................................................................. 11

        2.  LPL's Second Basis For Willfulness Fails In Light Of *Seagate* -- Copying Of The '002 Patent. .................................................................. 13

        3.  LPL's Third Basis For Willfulness Fails In Light Of *Seagate* -- Steps To Conceal. ............................................................................... 14

        4.  LPL's Other Willfulness Arguments. ............................................... 15

    B.  Enhancement of Damages and Attorneys' Fees. ...................................... 15

CONCLUSION ......................................................................................................... 18

i

# TABLE OF AUTHORITIES

*Ashley v. Cunningham,*
No. 99-506-S 2002 U.S. Dist. LEXIS 7305 (D. Del. Apr. 10, 2002) ............................................2

*Coopers & Lybrand v. Sun-Diamond Growers of California,*
912 F.2d 1135 (9th Cir. 1990) ........................................................................................................3

*DSU Medical Corp. v. JMS Co., Ltd.,*
471 F.3d 1293 (Fed. Cir. 2006)......................................................................................................15

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.,*
344 F.3d 1359 (Fed. Cir. 2003), *cert. denied,* 541 U.S. 988 (2004)................................................2

*Harper v. Virginia Dept. of Taxation,*
509 U.S. 86 (1993).............................................................................................................................2

*Herman v. Hector I. Nieves Transport, Inc.,*
244 F.3d 32 (1st Cir. 2001) ................................................................................................................2

*Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.,*
26 F.3d 375 ........................................................................................................................................2

*Newport News Shipbuilding & Dry Dock Co. v. Garrett,*
6 F.3d 1547 (Fed. Cir. 1993).............................................................................................................2

*Read Corp. v. Portec, Inc.,*
970 F.2d 816 (Fed. Cir. 1992)........................................................................................................16

*Reynoldsville Casket Co. v. Hyde,*
514 U.S. 749 (1995)..........................................................................................................................2

*In re Seagate Tech., LLC,*
Docket No. 830, 2007 U.S. App. LEXIS 19768 (Fed. Cir. Aug. 20, 2007) ..........................*passim*

*Tristrata Tech., Inc. v. ICN Pharm., Inc.,*
314 F. Supp. 2d 356 (D. Del. 2004)................................................................................................16

*Underwater Devices Inc. v. Morrison-Knudsen Co., Inc.,*
717 F.2d 1380 (Fed. Cir. 1983)....................................................................................................1, 3

## INTRODUCTION

Chunghwa Picture Tubes, Ltd. ("CPT"), ViewSonic Corporation ("ViewSonic"), Tatung Company, and Tatung Company of America (collectively "the Tatung Companies") seek to apprise the Court of the recent *en banc* Federal Circuit holding in *In re Seagate Tech., LLC*, Docket No. 830, 2007 U.S. App. LEXIS 19768 (Fed. Cir. Aug. 20, 2007) (attached hereto as Exhibit A), wherein the Federal Circuit overturned the "due care" willful infringement test established in *Underwater Devices Inc. v. Morrison-Knudsen Co., Inc.*, 717 F.2d 1380 (Fed. Cir. 1983) and established a new objectively reckless standard for willfulness. CPT also seeks to explain the retroactive effects of the *Seagate* decision on the present matters before the Court.

*In re Seagate* did not issue until August 20, 2007, thirteen months after the jury's July 27, 2006 verdict and nine months after the final post-trial briefing (October 30, 2006) was completed in this case. This revised and heightened standard by which willfulness is now to be judged provides grounds for granting judgment as a matter of law, or a new trial on the issue of willful infringement.[1] Defendants therefore submit this supplemental brief in support of their Renewed Motion For Judgment As A Matter Of Law Or In The Alternative A New Trial. If the Court denies the motion for judgment as a matter of law on willfulness then, in the alternative, a new trial as to the limited issue of willfulness should be granted to enable a trier of fact to analyze the facts under the new *Seagate* willfulness standard. Finally, as there is no evidence in the record to support a finding of "objective recklessness" on behalf of any of the defendants, the Court should deny LG. Philips LCD Co., Ltd.'s ("LPL") request for enhanced damages and attorneys' fees and

---

[1] The standards by which judgment as a matter of law and a new trial should be granted are fully set forth in Defendants' Opening Brief In Support Of Renewed Motion For Judgment As A Matter Of Law Or, In The Alternative, A New Trial (D.I. 460) and Defendants' Opening Brief In Support Of Their Motion For New Trial or Remittitur On The Jury's Damages Verdict (D.I. 462), which are incorporated herein by reference. Defendants also incorporate by reference their Answering Brief in Opposition to Plaintiff's Motion for Entry of Final Judgment, Including Enhanced Damages, Attorneys' Fees and Expenses and Pre-Judgment Interest (D.I. 450).

1

expenses. (*See* D.I. 438, Plaintiff LPL's Memorandum of Law In Support of Motion for Entry of Final Judgment, Including Enhanced Damages, Attorneys' Fees and Expenses, and Pre-Judgment Interest.)

**ARGUMENT**

**I.    THIS COURT SHOULD GIVE FULL RETROACTIVE EFFECT TO THE FEDERAL CIRCUIT'S RULING ON WILLFUL INFRINGEMENT.**

This Court should apply the Federal Circuit's decision in *Seagate* to LPL's infringement claims. A rule of federal law, once announced and applied to the parties to a controversy, must be given full retroactive effect in all pending cases. *See Harper v. Virginia Dept. of Taxation*, 509 U.S. 86, 97 (1993) (adopting a strict rule requiring retroactive application of a new Supreme Court decision to all civil cases still open on direct review); *see also Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749 (1995) (when the Court applies a new legal rule to the parties before it, then "other courts must treat the same rule as 'retroactive', applying it ... to [all] pending cases, whether or not [those cases] involve predecision events").

The Federal Circuit applies this approach to retroactivity with respect to its own decisions. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 344 F.3d 1359, 1370 n.4 (Fed. Cir. 2003), *cert. denied*, 541 U.S. 988 (2004); *see also Newport News Shipbuilding & Dry Dock Co. v. Garrett*, 6 F.3d 1547, 1554 (Fed. Cir. 1993).[2]  This Court is bound by the

---

2 Likewise, the Third Circuit and District of Delaware normally apply decisions that reformulate federal civil law retroactively. *See Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 386 n.8 (3d Cir. 1994) ("Although both [*Harper* and *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529 (1991)] dealt with decisions issued by the Supreme Court, given the *ratio decidendi* of both cases, we suspect that other courts are probably correct that there is no cogent basis for distinguishing decisions handed down by the inferior federal courts.") (citing cases); *Ashley v. Cunningham*, No. 99-506-SLR, 2002 U.S. Dist. LEXIS 7305 (D. Del. Apr. 10, 2002) (applying a new rule of law handed down by the Third Circuit retroactively). Other circuit courts have also required that their decisions be given retroactive effect. *See Herman v. Hector I. Nieves Transport, Inc.*, 244 F.3d 32 (1st Cir. 2001) (citing cases where the First Circuit has applied its own decisions retroactively absent an explicit Supreme

2

decisions of the Federal Circuit on patent law issues, such as willful infringement. Therefore, the willfulness test established by *Seagate* is controlling in this case.

## II.    DISCUSSION OF THE *SEAGATE* CASE.

On August 20, 2007 the Federal Circuit, sitting *en banc*, unanimously overturned twenty-four years of precedent and rejected the standard for willfulness set forth in *Underwater Devices Inc.*, 717 F.2d 1380. Prior to this holding, a potential infringer with actual notice of another's patent was held to have an affirmative duty to exercise due care to determine whether infringement existed. Initially, "[s]uch an affirmative duty include[d], *inter alia*, the duty to seek and obtain competent legal advice from counsel before the initiation of any possible infringing activity." *Id.* at 1389-90. Over time, the case law evolved to evaluate willfulness and its duty of care under the totality of the circumstances with advice of counsel remaining a crucial factor. *In re Seagate*, 2007 U.S. App. LEXIS 19768, at *15-16. In *Seagate*, the Federal Circuit abolished the rule that an accused infringer must exercise "due care" to avoid infringement after receiving notice of a patent to avoid a finding of willful infringement of that patent. *Id.* at *22. The Court likened *Underwater Devices'* duty of due care standard to negligence, concluding that a standard akin to negligence failed to comport with the general understanding of willfulness in a civil context, which generally requires a higher level of culpable behavior. *Id.* at *21-22. The Court placed a new heightened burden on the accusing party and held "that proof of willful infringement permitting enhanced damages requires at least a showing of *objective recklessness*." *Id.* at *22 (emphasis added).

The *Seagate* case began in 2000 when Convolve and MIT sued Seagate alleging willful infringement of three patents. Shortly after the complaint was filed, Seagate received three

---

Court holding as to the effect of decisions made by courts of appeals); *Coopers & Lybrand v. Sun-Diamond Growers of California*, 912 F.2d 1135, 1138 (9th Cir. 1990) (applying Ninth Circuit ruling retroactively).

3

written opinions about the asserted patents from independent outside counsel. *Id.* at *7. In 2003, pursuant to the Court's scheduling order, Seagate notified plaintiff that it intended to rely on those opinions of counsel in defense to plaintiff's willfulness claims. *Id.* at *8. Plaintiff sought to compel all communications relating to those opinions, including communications between trial counsel and Seagate. *Id.* The District Court granted plaintiff's motion. *Id.* Thereafter, plaintiff propounded document requests to trial counsel and even noticed depositions of trial counsel. *Id.* at *10. After the district court denied Seagate's request for a stay and interlocutory appeal, Seagate petitioned for a writ of mandamus. The Federal Circuit granted the writ and stayed the pending district court case.

The Court took this opportunity to correct the "abusive gamesmanship that the 'due care' standard apparently has facilitated." *Id.* at *62 (Newman concurring). The Court also saw this as an opportunity to comport willfulness under patent law with Supreme Court precedent requiring that willfulness "includes reckless behavior." *Id.* at *20-21.

In its opinion, the Federal Circuit also provided some guidance as to how the new objective recklessness test should be applied: "to establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *Id.* at *22-23. Under this objective standard, "[t]he state of mind of the accused infringer is *not* relevant to this objective inquiry." *Id.* at 23 (emphasis added). Furthermore, because the affirmative duty of due care standard was abandoned, the Court "reemphasize[d] that there is no affirmative obligation to obtain opinion of counsel." *Id.* at 22. Rather, the Court directed that, in assessing recklessness, the standards of commerce should be among the factors considered. *Id.* at *23 n. 5.

4

If the patentee is able to overcome the objectively reckless standard and demonstrate that others in the industry would classify the behavior as reckless, the patentee then "must also demonstrate that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer." *Id.* at *23.

This change in the law reemphasizes that a finding of willfulness is reserved for extreme situations. Furthermore, the burden of making this showing is placed entirely on the accusing party. The patentee can no longer send out mass mailings listing multiple patents and then later claim that infringement was willful because the defendant failed to "exercise due care" after that notice. *See, e.g.,* DTX 125. The Federal Circuit's new standard also puts an end to another favorite tactic of plaintiffs, making clear that post-complaint activities are not grounds for finding willfulness. A defendant's allegedly reckless conduct occurring after the complaint is filed is appropriately dealt with through injunctive relief; it cannot, by itself, serve as grounds for willfulness. To this point the *en banc* court stated:

> However, when a complaint is filed, a patentee must have a good faith basis for alleging willful infringement. Fed. R. Civ. Pro. 8, 11(b). So a willfulness claim asserted in the original complaint *must necessarily be grounded exclusively in the accused infringer's pre-filing conduct.* By contrast, when an accused infringer's post-filing conduct is reckless, a patentee can move for a preliminary injunction, which generally provides an adequate remedy for combating post-filing willful infringement. *See* 35 U.S.C. § 283; *Amazon.com, Inc. v. Barnesandnoble.com, Inc.,* 239 F.3d 1343, 1350 (Fed. Cir. 2001). A patentee who does not attempt to stop an accused infringer's activities in this manner should not be allowed to accrue enhanced damages based solely on the infringer's post-filing conduct. Similarly, if a patentee attempts to secure injunctive relief but fails, it is likely the infringement did not rise to the level of recklessness.

*In re Seagate,* 2007 U.S. App. LEXIS 19768, at *30 (emphasis added).

5

## III.   LPL'S WILLFULNESS CASE FAILS IN LIGHT OF *SEAGATE.*

LPL argued to the jury that they should find defendants to be willful infringers because they were aware of the '002 patent prior to the filing of this lawsuit and "[t]here is no evidence in this case that they took any due care to avoid infringement of the patent." Trial Tr. 2056:2-9; 2064:17-21; (*see also* D.I. 438 at 4, Plaintiff LPL's Memorandum of Law In Support of Motion For Entry of Final Judgment, Including Enhanced Damages, Attorneys' Fees and Expenses, and Pre-Judgment Interest (quoting *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1464 (Fed. Cir. 1997)) ("a person having knowledge of an adverse patent has an affirmative duty to exercise due care to avoid infringement")). The Court instructed the jury that the standard by which they should assess willfulness was due care.[3] Trial Tr. 2245-46. This is the reason for the jury's verdict finding each defendant willful. The jury verdict is no longer valid as the standard argued and instructed is now incorrect as a matter of law. LPL's duty of care argument is no longer the standard by which willfulness is to be judged.

In this case, CPT mounted a vigorous defense on noninfringement and invalidity grounds. The jury found no literal infringement and the finding of infringement under the doctrine of equivalents is itself the subject of the defendants' renewed motion for judgment as a matter of law. LPL's argument must necessarily be that it was willful infringement for CPT to design a

---

[3] The willfulness jury instruction in this case focused largely on the duty of due care. The jury was instructed that "where ... an alleged infringer has actual notice of another's patent right, he has an affirmative duty of due care not to infringe a valid and enforceable patent." Trial Tr. 2245:2-6. The jury was further instructed that to prove willfulness, LPL must show that defendants had actual knowledge of the '002 patent and had no reasonable basis for believing that their method did not infringe LPL's patent or that LPL's patent was invalid. Trial Tr. 2245:12-20. To determine willfulness, the jury was instructed it should consider the totality of the circumstances, including, but not limited to, the following factors: whether the defendants intentionally copied the method used to manufacture the accused product; whether defendants exercised due care to avoid infringing the '002 patent; and whether defendants presented a substantial defense to infringement, including a defense that the patent is invalid. Trial Tr. 2245:21-2246:8.

6

product that did not interconnect the gate lines and source lines by the method literally disclosed in the '002 patent. Even if the Court upholds the jury's finding of infringement under the doctrine of equivalents, which the record does not support, this cannot be objective recklessness.

In any event, the evidence of the defendants' pre-litigation conduct will not support a finding that CPT's, ViewSonics' or the Tatung Companies' behavior was *objectively* reckless under *Seagate*. LPL first contacted CPT by letter dated February 8, 2002, offering to license its LCD patent portfolio, and identifying a set of eight exemplary patents, including the '002 patent, for suggested review. LPL made no allegation of infringement. PTX 46. By letter dated February 27, 2002, LPL raised the issue of patent infringement for the first time but did not identify any specific patents or products. PTX 142. Over the next three months the parties worked on scheduling a face to face meeting that ultimately took place in Taipei on June 11, 2002. At that meeting LPL presented claim charts to CPT on several patents. Trial Tr. 613:3-614:15, 615:10-616:3 (Ho Lee), PTX 47. LPL's June 11 presentation materials did not include any slides or claim charts directed to the '002 patent. PTX 47.[4] During the meeting, LPL offered to license its LCD patents and provided CPT with its standard form license agreement.[5] The draft agreement did not include a list of the patents to be licensed. Since LPL set a deadline

---

[4] Ho Lee testified at trial that he spoke about the '002 patent at the June 11 meeting using claim charts directed to the '449 patent. Trial Tr. 617:2-620:3 (Ho Lee), PTX 47. Mr. Lee's uncorroborated testimony was unsupported by the documentary record. Moreover, Mr. Lee testified that the only discussion regarding the '002 patent was based upon a picture of CPT's 14-inch LCD panel in LPL's '449 patent claim chart from which Mr. Lee stated one could see Trial Tr. 615:19-620:3; PTX 47. There was no discussion regarding any specific '002 patent claims relative to CPT's Outer guard rings were known in the prior art, (*see* the Okawa reference, DTX 4) so the fact that CPT

[5] The terms of the license were onerous and included

REDACTED

of July 26 to take a license, CPT wrote to LPL on July 22, 2002 requesting additional time and stating that it was continuing to analyze the claims charts but wanted a list of the patents to be licensed so it could assess their value. DTX 124. LPL then provided, for the first time, a complete list of the 447 patents it wanted CPT to license on July 30, 2002. DTX 124 & 125, Trial Tr. 1186:10-1191:11 (Belle Chang), 657:16-661:16 (Ho Lee).

Then, in August 2002, LPL and LG Electronics, Inc. filed suit in California against CPT and the Tatung Companies on six of the U.S. patents first identified in the February 8 letter and included within the 447 patents identified in the July 30, 2002 letter. Trial Tr. 1193:10-1195:10 (Belle Chang), 661:13-663:14, 663:19-665:12 (Ho Lee), DTX 48 & 125. The '002 patent was not included in the California lawsuit.[6] Id. Having never provided claims charts on the '002 patent identifying products that it believed infringed and failing to file suit on the '002 patent in the California lawsuit in August 2002, LPL did not mention the '002 patent again until May 13, 2005, when without warning it filed this lawsuit in Delaware. DTX 86. Trial Tr. 1191:12-1193:9 (Belle Chang). In the *Seagate* decision, the Federal Circuit has moved to eliminate the "abusive gamesmanship" inherent in the due care standard. *In re Seagate*, 2007 U.S. App. LEXIS 19768, at *62 (Newman concurring). LPL can no longer argue as it did to the jury that, because it identified the '002 patent on a list of other patents offered for license, CPT was on notice and failed to "exercise due care." Nor can LPL base a willfulness finding, or a request for enhanced damages, on post-complaint activities or the failure to obtain an opinion of counsel. (*See* D.I. 438 at 7-8, Plaintiff LPL's Memorandum of Law in Support of LPL's Motion for Entry of Final Judgment, Including Enhanced Damages, Attorneys' Fees and Expenses, and Pre-Judgment Interest). There is no evidence in the record from which one could conclude, applying

---

6 The California complaint alleged infringement of U.S. Patent Nos. 4,624,737; 5,825,449; 6,373,537; 6,020,942; 6,002,457 and 5,926,237.

8

the standards of commerce, that even though it had never received any claims charts or specific allegations of infringement of the '002 patent, CPT's pre-complaint behavior in entering into licensing negotiations with LPL and then turning its attention to its defense and the patents-in-suit in the California litigation once it was filed, was objectively reckless.

Likewise, LPL did not put forth any evidence under which one could conclude that the Tatung Companies' or ViewSonic's behavior was *objectively* reckless under *Seagate*. LPL sent the same form letter to ViewSonic and Tatung Company on August 12, 2002, alleging that CPT LCD panels infringed LPL's patents and that the sale of products containing CPT infringing panels was also an act of infringement. LPL encouraged these CPT customers to seek another LCD supplier. PTX 48 (Tatung Company) and PTX 49 (ViewSonic). This form letter did not identify any specific patents that were allegedly infringed, or any specific CPT LCD models that were allegedly infringing. The letter made no mention of the '002 patent at all. That same month, August 2002, LPL sued CPT and the Tatung Companies on six U.S. patents in the Central District of California. In April 2003, LPL sued ViewSonic on the same six patents.

Contrary to LPL's closing statement, LPL never sent any notice whatsoever to ViewSonic or the Tatung Companies that referenced the '002 patent and certainly never provided any claims charts reading specific claims of the '002 patent onto specific CPT panels that could form the basis of an investigation or inquiry by these non-manufacturer defendants. The first time that these defendants were made aware of the '002 patent was when they received the complaint in this case, which was filed in May 2005. Under *Seagate*, the willfulness determination should focus on pre-filing conduct. Having no information regarding the '002 patent, there is no pre-filing conduct on the part of ViewSonic or the Tatung Companies that could be considered objectively reckless. Moreover, though not the focus of the willfulness

9

inquiry, once sued ViewSonic and the Tatung Companies relied on the manufacturer, CPT, who mounted a vigorous defense on both noninfringement and invalidity grounds.

No reasonable jury could therefore have concluded under the *Seagate* standard, based on the facts presented, that CPT, ViewSonic or the Tatung Companies willfully infringed the '002 patent, and judgment should be entered in their favor. In the alternative, the Court should grant defendants a new trial as to the issue of willfulness.

### A. LPL'S Arguments for Willfulness Fail Under *Seagate's* Objectively Reckless Test.

At trial, and in its post-trial motions, LPL set forth its arguments for why it believed defendants were willful infringers. LPL's arguments for a finding of willfulness were as follows:

1. Defendants received notice of the '002 patent and failed to determine whether they infringed the patents. Trial Tr. 2056:2-9; 2056:13-2059:9; 2063:22-24; 2064:11-21; (*see also* D.I. 438 at 7-9, Plaintiff LPL's Memorandum of Law In Support of Motion For Entry of Final Judgment, Including Enhanced Damages, Attorneys' Fees and Expenses, and Pre-Judgment Interest).

2. CPT copied the patents-in-suit. Trial Tr. 2059:14-2064:10; (*see also* D.I. 438 at 5-7, Plaintiff LPL's Memorandum of Law In Support of Motion For Entry of Final Judgment, Including Enhanced Damages, Attorneys' Fees and Expenses, and Pre-Judgment Interest).

3. Defendants attempted to conceal their infringement. Trial Tr. 2056:9-12; 2064:22-2067:9; (*see also* D.I. 438 at 17-19, Plaintiff LPL's Memorandum of Law In Support of Motion For Entry of Final Judgment, Including Enhanced Damages, Attorneys' Fees and Expenses, and Pre-Judgment Interest).

10

As explained below, all of the grounds for LPL's arguments have been vitiated by the Federal Circuit's holding in *Seagate*.

1. **LPL's First Basis For Willfulness Fails In Light Of *Seagate* -- Notice And Defendants' Failure To Determine Whether They Infringed The Patents.**

LPL's argument that defendants received notice and failed to take due care to determine whether they infringed the '002 patent fails to meet the new objectively reckless test set forth in *Seagate*. Specifically, under *Seagate*, "[t]he state of mind of the accused infringer is not relevant to this objective inquiry." *Id.* at 23. Furthermore "there is no affirmative obligation to obtain opinion of counsel." *Id.* at 22. Therefore, the fact that CPT was aware of the '002 patent and did not produce an opinion of counsel is irrelevant. The facts demonstrate that LPL, after including the '002 patent in a list of patents offered for license to CPT, (1) failed to produce claim charts or slides for the '002 patent setting forth the claims allegedly infringed or the products allegedly infringing, (2) filed a lawsuit on several other patents, but not the '002 patent, and (3) did not mention the '002 patent after July 2002 for nearly three years before suddenly filing its Complaint in this case in May 2005. As set forth above, with regard to the Tatung Companies and ViewSonic, there is no evidence in the record of any communication prior to the filing of the complaint about the '002 patent at all. It is LPL's burden to show by clear and convincing evidence that defendants' actions satisfy *Seagate*'s objectively reckless standard. The evidence of record does not satisfy LPL's *Seagate* burden of proving objectively reckless pre-filing conduct by CPT, the Tatung Companies, or ViewSonic, and a reasonable jury could not find that any of the defendants willfully infringed based on this factor.

Certainly, there is no possibility that LPL could have met its first hurdle of proving by clear and convincing evidence an objectively high likelihood that CPT's LCD panels were infringing a valid patent. CPT mounted a vigorous defense. The jury found no literal

11

infringement. The defendants posit that, where there is no literal infringement, it is doubtful except possibly in the most extreme cases that one could ever prove by clear and convincing evidence an objectively high likelihood of infringing a valid patent. This is not that case. The facts adduced at trial showed that 1) various designs for inner and outer guard rings were known in the prior art, 2) it was known to those of ordinary skill in the art that ESD was a problem both during and after manufacture, 3) it was known to those of skill in the art that an inner guard ring protected against ESD after manufacture and for the life of the panel,    **REDACTED**

**REDACTED**                    the combination of the inner and outer guard rings was obvious. Trial Tr. 1453:20-1458:11; 1605:24-1606:9; 1608:13-1609:9; 1641:19-1651:12. From these facts, objectively one would conclude that either the patent was not infringed or it was invalid, not that there was an objectively high likelihood that CPT's panels were infringing a valid patent. Furthermore, LPL's own expert testified that combining the use of an inner and outer guard ring was as obvious as the combination of wearing a raincoat and carrying an umbrella in a downpour. Trial Tr. 1649:20-1650:5; 1972:5-1973:20. Having failed to meet the first part of the test, there is no way to show that CPT or the other defendants knew or should have known of this objectively high risk. Under these circumstances, there is no evidence to support and no reasonable jury could find under the *Seagate* standard that CPT, the Tatung Companies or ViewSonic willfully infringed the '002 patent and judgment should be entered in their favor.

12

2. **LPL's Second Basis For Willfulness Fails In Light Of *Seagate* --
Copying Of The '002 Patent.**

As an initial matter, LPL's supposed evidence of copying is grossly lacking.[7] LPL wholly failed to identify a single instance of witness testimony or document evidence to support its allegation that CPT copied or made deliberate use of the technology covered by the '002 patent, and LPL's entire argument is based on unfounded speculation and innuendo.[8] LPL's entire copying argument rests on the coincidental fact that CPT            **REDACTED**

sometime shortly after LPL sent its first letter referencing the '002 patent to CPT. Trial Tr. 2059:14-2063:21. There was no record evidence that the recipient of that letter or any attendees of the June meeting between CPT and LPL ever interacted in any way with the engineers who were resolving the ESD problem that CPT started experiencing once they began sending their panels for final assembly to China, a production change that happened several months before                        The record reflects that CPT learned

**REDACTED**                        well

before LPL's letter referencing the '002 patent. From 1998 until April of 2002, the LCD panels were manufactured and assembled in Taiwan. Around April of 2002, CPT began shipping its panels to China, where they would be finally assembled.

**REDACTED**

---

7 A more detailed discussion of the shortcoming of LPL's copying argument is set forth in Defendants' Answering Brief in Opposition to Plaintiff's Motion for Entry of Final Judgment, Including Enhanced Damages, Attorneys' Fees and Expenses and Pre-Judgment Interest. *See* D.I. 450 at 18-19.

8 Tatung and ViewSonic were not accused of copying LPL's technology.

13

**REDACTED**

As described

is the same as the prior art

above,

Okawa reference and is not a configuration described in the '002 patent.  Trial Tr. 1608:13-

1609:9.  Rather, the patent describes an entirely different connection with conductors, i.e. lines,

shorts or jumpers,                    **REDACTED**

PTX 1, *See e.g.*, Col. 5, ll: 65-68; Col. 6, ll: 6-9, 42-43; and Col. 8, ll: 5-7.  Also, LPL's expert

conceded that inner guard rings were well known in the prior art and it was well known that the

benefit of an inner guard ring was to continue to protect the TFT circuitry after manufacture

when ESD could still be a problem.  Trial Tr. 1980:22-1982:14.

**REDACTED**

Thus, LPL's copying argument is inconsistent with the evidence of

record and as such does not support a finding of objective recklessness or willful infringement.

3.   **LPL's Third Basis For Willfulness Fails In Light Of *Seagate* -- Steps To Conceal.**

Defendants never made any effort to conceal their activities and LPL distorts the record

by claiming concealment of infringement where witnesses faced deposition testimony difficulties

14

due to language and cultural differences.[9] However, completely aside from this distortion, the new *Seagate* standard for willfulness shows that alleged concealment should not be considered. The focus for willfulness is on pre-complaint activities. *In re Seagate*, 2007 U.S. App. LEXIS 19768, at *30.

### 4.    LPL's Other Willfulness Arguments.

To the extent that LPL is arguing in its Motion for Entry of Final Judgment, Including Enhanced Damages, Attorneys' Fees and Expenses and Pre-Judgment Interest that the other factors it mentions in support of enhancing damages and awarding attorneys' fees also go to a finding of willfulness, those other factors are not relevant under the new *Seagate* standard. For example, CPT's alleged litigation misconduct and alleged ongoing infringement after the filing of this lawsuit are post-complaint activities, and cannot by themselves serve as grounds for willfulness. *In re Seagate*, 2007 U.S. App. LEXIS 19768, at *30.

### B.    Enhancement of Damages and Attorneys' Fees.

The change in the law under *Seagate* also affects LPL's Motion for Entry of Final Judgment, Including Enhanced Damages, Attorneys' Fees and Expenses, and Pre-Judgment Interest. LPL's basis for its motion was that defendants willfully infringed the '002 by failing to act with reasonable care and infringing in disregard of LPL's patent rights, and that defendants engaged in misconduct related to the case, including falsely denying facts in an attempt to avoid liability. (D.I. 438 at 2-3, Plaintiff LPL's Memorandum of Law In Support of Motion For Entry

---

[9] For a more detailed discussion of how defendants did not conceal infringement, *see* D.I. 450 at 31-32, Defendants' Answering Brief in Opposition to Plaintiff's Motion for Entry of Final Judgment, Including Enhanced Damages, Attorneys' Fees and Expenses and Pre-Judgment Interest. Additionally, LPL sought to exploit before the jury the fact that CPT and the other defendants sought to distinguish direct sales from downstream sales of CPT products -- a distinction critical to the determination of whether a sale constituted direct infringement or was an infringing sale by a third party allegedly induced by one of the defendants, which required a separate legal analysis under *DSU Medical Corp. v. JMS Co., Ltd.*, 471 F.3d 1293 (Fed. Cir. 2006).

of Final Judgment, Including Enhanced Damages, Attorneys' Fees and Expenses, and Pre-Judgment Interest). LPL's Enhanced Damages motion focused on nine factors that it claimed support enhanced damages: (1) whether the infringer deliberately copied the patentee's invention; (2) whether the infringer knew of the patents and had a good faith belief that it was not infringing or that the patent was invalid; (3) the infringer's behavior in litigation; (4) the infringer's size and financial condition; (5) whether it was a close case; (6) the duration of the infringing conduct; (7) remedial action taken by the infringer; (8) the infringer's motivation for infringement; and (9) whether the infringer attempted to conceal its misconduct. *Tristrata Tech., Inc. v. ICN Pharm., Inc.*, 314 F. Supp. 2d 356, 360 (D. Del. 2004) (citing *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992), *abrogated on other grounds, Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc)).

Even under the old, duty of care standard, LPL's argument for enhanced damages and attorneys' fees could not be supported. Now, under the new, objective recklessness standard, LPL's motion for enhanced damages and attorneys' fees must fail. LPL discusses each of the nine factors above, but stresses that it is entitled to enhanced damages because defendants failed to act with reasonable care and have infringed in disregard of LPL's rights. (D.I. 438 at 2, Plaintiff LPL's Memorandum of Law In Support of Motion For Entry of Final Judgment, Including Enhanced Damages, Attorneys' Fees and Expenses, and Pre-Judgment Interest). LPL also stresses that it deserves enhanced damages because defendants have engaged in litigation misconduct. *Id.* LPL's arguments for attorneys' fees are based on the same reasons. *Id.* at 3.

For the reasons elaborated above, any argument that LPL deserves enhanced damages and attorneys' fees because defendants failed to act with reasonable care necessarily fails under the *Seagate* standard. Moreover, as explained, LPL's allegations of copying are unsupportable.

16

Additionally, LPL argues that CPT's ongoing infringement and lack of remedial action, even after the '002 patent was filed, supports enhanced damages. (*Id.* at 15-16; D.I. 452 at 15, Plaintiff LPL's Reply Memorandum in Support of Motion For Final Judgment, Including Enhanced Damages, Attorneys' Fees and Expenses, and Pre-Judgment Interest). Under *Seagate*, post-filing behavior can no longer, by itself, serve as grounds for willfulness, nor can it carry weight in a determination of enhanced damages and attorneys' fees. Thus, for example, defendants' alleged ongoing infringement after the filing of this lawsuit is the type of conduct that should be addressed through injunctive relief, and LPL should not be allowed to accrue enhanced damages based on post-filing conduct. *In re Seagate*, 2007 U.S. App. LEXIS 19768, at *30. In *Seagate*, the Federal Circuit emphasized that, where an accused infringer's post-filing conduct is reckless, it should be addressed by seeking a preliminary injunction. Here, LPL did file a motion for preliminary injunction but did not base that motion on infringement of the '002 patent; rather, LPL based the motion on the other patent then in suit, the '121 patent. Since LPL did not move for preliminary injunction, *Seagate* instructs that LPL should not now be allowed to accrue enhanced damages based on post-filing conduct. *In re Seagate,* 2007 U.S. App. LEXIS 19768, at *30.

17

## CONCLUSION

For the foregoing reasons CPT, ViewSonic and the Tatung Companies each ask that judgment as a matter of law be entered in its favor as to the issue of willfulness. In the alternative, defendants ask that a new trial be ordered so that a jury may consider the facts under the appropriate willfulness test. Finally, in light of this new precedence, LPL's request for enhanced damages and attorneys' fees and expenses should be denied.

OF COUNSEL:

Teresa M. Corbin
Glenn W. Rhodes
Howrey LLP
525 Market Street, Suite 3600
San Francisco, California 94105
(415) 848-4900

Julie S. Gabler
Howrey LLP
550 South Hope Street, Suite 1100
Los Angeles, California 90071
(213) 892-1800

William D. Coston
Venable LLP
575 7th Street, NW
Washington, DC 20004
(202) 344-4813

Dated: September 18, 2007

Robert W. Whetzel (#2288)
whetzel@rlf.com
Steven J. Fineman (#4025)
fineman@rlf.com
Richards, Layton & Finger
One Rodney Square, P.O. Box 551
Wilmington, DE 19899
(302) 651-7700
Attorneys for Defendants/Counterclaimants
Tatung Company, Tatung Company of America,
Chunghwa Picture Tubes, Ltd., and ViewSonic
Corporation

18

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 18, 2007, I electronically filed the foregoing

document with the Clerk of Court using CM/ECF which will send notification of such filing, and

hand delivered to the following:

> Richard D. Kirk
> The Bayard Firm
> 222 Delaware Avenue, Suite 900
> P.O. Box 25130
> Wilmington, DE 19899

I hereby certify that on September 18,2007, I sent the foregoing document by Electronic

Mail, to the following non-registered participants:

> Gaspare J. Bono
> Matthew T. Bailey
> Andrew J. Park
> Adrian Mollo
> McKenna Long & Aldridge LLP
> 1900 K Street, NW
> Washington, DC 20006

Steven J. Fineman (#4025)
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
fineman@rlf.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 25, 2007, I electronically filed the foregoing

document with the Clerk of Court using CM/ECF which will send notification of such filing, and

hand delivered to the following:

> Richard D. Kirk
> The Bayard Firm
> 222 Delaware Avenue, Suite 900
> P.O. Box 25130
> Wilmington, DE 19899

I hereby certify that on September 25, 2007, I sent the foregoing document by Electronic

Mail, to the following non-registered participants:

> Gaspare J. Bono
> Matthew T. Bailey
> Andrew J. Park
> Adrian Mollo
> McKenna Long & Aldridge LLP
> 1900 K Street, NW
> Washington, DC 20006

> Steven J. Fineman (#4025)
> Richards, Layton & Finger
> One Rodney Square
> P.O. Box 551
> Wilmington, DE 19899
> fineman@rlf.com